# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC.<br><br><div align="center">Plaintiffs,</div><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br><div align="center">Defendant.</div> | Case No. 1:13-cv-01215-EGS<br><br>**PUBLIC.RESOURCE.ORG, INC.'S COUNTERCLAIM FOR DECLARATORY JUDGMENT, ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF, AND JURY DEMAND**<br><br>Filed:   August 6, 2013 |
| PUBLIC.RESOURCE.ORG, INC.,<br><br><div align="center">Counterclaimant,</div><br>v.<br><br>AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC.<br><br><div align="center">Counterdefendants.</div> | |

1

## COUNTERCLAIM FOR DECLARATORY RELIEF

Defendant-Counterclaimant Public.Resource.Org, Inc. ("Public Resource"), by and through counsel, hereby counterclaims against Plaintiffs-Counterdefendants American Society for Testing and Materials, d/b/a/ ASTM International ("ASTM"), National Fire Protection Association, Inc. ("NFPA"), and American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc. ("ASHRAE") as follows:

## INTRODUCTION

1.      As part of its mission to protect and promote the right of the public to know and speak the laws that govern it, Public Resource has undertaken to make certain edicts of government widely available to the public on a noncommercial basis.

2.      Legislatures and administrative agencies have frequently enacted into law, and enforced, construction, fire, and other public safety codes.

3.      Public safety codes govern essential aspects of everyday life. They often carry civil or criminal penalties. They are laws.

4.      Plaintiffs-Counterdefendants develop standards, of which some are safety codes. From time to time Plaintiffs-Counterdefendants promote incorporation of safety codes into law. From time to time they advocate to governments and regulatory bodies the adoption or incorporation of safety codes into law.

5.      From time to time, Plaintiffs-Counterdefendants have succeeded in persuading government entities, such as legislatures and agencies, to incorporate safety codes into law.

6.      Plaintiffs-Counterdefendants believe that they have a privileged relationship to the safety codes that they have developed and have persuaded government entities to incorporate into law.

7.      Plaintiffs-Counterdefendants believe that copyright law gives them a privileged relationship to the safety codes that they have developed and have persuaded government entities to incorporate into law.

8.      Plaintiffs-Counterdefendants believe that copyright law gives them the power to deny others the lawful opportunity to make reproductions in copies of certain safety codes that the law incorporates.

9.      Plaintiffs-Counterdefendants believe that copyright law gives them the power to deny others the lawful opportunity to prepare derivative works based upon certain safety codes that the law incorporates.

10.     Plaintiffs-Counterdefendants believe that copyright law gives them the power to deny others the lawful opportunity to distribute to the public, by sale or other transfer of ownership, or by rental, lease, or lending, copies of certain safety codes that the law incorporates.

11.     By claiming the power under copyright law to deny others the lawful opportunity to engage in certain activities with respect to certain safety codes that the law incorporates, Plaintiffs-Counterdefendants function as gatekeepers to certain public interactions with portions of the law.

12.     Plaintiffs-Counterdefendants claim the power to set the conditions under which the public shall have access to the safety codes that the law incorporates, and at what price the public may gain certain privileges to interact with those codes.

13.     Copyright does not give any person or entity the power to control or limit access to, or use of, the content of law.

14.     Copyright does not give any person or entity the power to control or limit access to, or use of, or interaction with, the content of law incorporated by reference.

15.    Standards development organizations (SDOs) like the Plaintiffs-Counterdefendants are free to assert copyright in original, creatively expressed standards, including safety codes, to the extent that government entities have not incorporated those standards into law.

16.    SDOs are free to sell publications of, or access to, the standards they developed, whether or not government entities have incorporated them into law, in any format they choose.

17.    The law does not permit Plaintiffs-Counterdefendants to prohibit Public Resource, or any member of the public, from accessing, translating, reformatting, annotating, or publishing the law.

18.    The law does not permit Plaintiffs-Counterdefendants to prohibit Public Resource, or any member of the public, from reproducing or distributing for free accurate copies of safety codes that the law incorporates, whether or not those copies contain Plaintiffs-Counterdefendants' names or logos.

## **PARTIES**

19.    Defendant-Counterclaimant Public Resource is a California nonprofit corporation with its principal place of business at 1005 Gravenstein Highway North, Sebastopol, California 95472.

20.    Plaintiff-Counterdefendant ASTM is a Pennsylvania not-for-profit corporation with its principal place of business at 100 Barr Harbor Drive, West Conshohocken, Pennsylvania 19428.

21.    Plaintiff-Counterdefendant NFPA is a Massachusetts not-for-profit corporation with its principal place of business located at One Batterymarch Park, Quincy, Massachusetts 02169.

22.     Plaintiff-Counterdefendant ASHRAE is a New York not-for-profit corporation with its principal place of business located at 1791 Tullie Circle N.E., Atlanta, Georgia 30329.

## JURISDICTION AND VENUE

23.     This Court has subject-matter jurisdiction over the counterclaim pursuant to 17 U.S.C. § 101 et seq. (the Copyright Act); 15 U.S.C. § 1121 (the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (exclusive federal copyright jurisdiction); and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

24.     This Court has personal jurisdiction over ASTM, NFPA, and ASHRAE in that each Plaintiff-Counterdefendant resides, may be found in, or transacts business in this District. On information and belief, each Plaintiff-Counterdefendant maintains an office in Washington, DC for the conduct of its regular activities.

25.     This Court also has personal jurisdiction over each Plaintiff-Counterdefendant because each submitted to such jurisdiction for purposes of this these counterclaims by filing the underlying case against Public Resource in this District.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and § 1400 because each Plaintiff-Counterdefendant resides and may be found in this District, and because a substantial part of the events giving rise to this counterclaim, including the filing of this lawsuit, occurred in this District.

## FACTS

I.   **Public Resource's Operations**

27.     Public Resource is a tax-exempt, non-profit, public interest organization. Its mission is to improve public access to government records and the law.

28.     To accomplish this mission, Public Resource acquires copies of such records, including legal decisions, tax filings, statutes, and regulations, and publishes them online in easily accessible formats that make them more useful to readers, entirely free of charge.

29.     The Judicial Conference of the United States and members of both houses of Congress, among others, have recognized Public Resource's contributions to the public interest.

30.     Public Resource operates the websites public.resource.org, law.resource.org, house.resource.org, and bulk.resource.org.

31.     Public Resource also operates a program that helps the public access U.S. Government-produced videos (such as training films), called FedFlix, which Public Resource originally developed in a joint venture with the National Technical Information Service and subsequently in cooperation with the Archivist of the United States. FedFlix content has been viewed more than 24 million times on YouTube.com.

32.     Public Resource hosts copies of safety codes that various government entities have incorporated into law, such as building codes, fire safety codes, pipeline safety standards, and food safety standards, at law.resource.org.

33.     Public Resource reformats some of the laws it publishes, including some public safety codes, in order to make them easier to find, more useful, and more accessible to the public.

34.     This reformatting includes putting codes into standard Hypertext Markup Language (HTML), converting graphics into the standard Scalable Vector Graphics format, and converting mathematical formulas into the standard Math Markup Language.

35.     These steps make the codes, including the diagrams and formulas they contain, viewable with many different kinds of computer hardware and software, more accessible to people with disabilities, and easier to translate and annotate.

36.     Public Resource applies rigorous quality control and proofreading when it reformats codes.  It has done so with the safety codes at issue in this case.

37.     Government employees, construction contractors, engineers, and other individuals use the codes Public Resource publishes to learn about and follow the law, and to evaluate others' compliance with the law.

38.     Lowering barriers to access to safety codes that the law incorporates means that students, factory workers, tradespeople, buyers, landlords, tenants, public interest organizations, journalists, and concerned citizens will be more likely to read, understand, apply, and improve the law.

39.     These activities enhance public safety, improve education in science, engineering, and the trades, and encourage participation in government and in public policy debates.

40.     The growth of the Internet provides a tremendous opportunity for government to inform its citizens in a broad and timely manner about the legal standards they must meet in carrying out daily activities. It also allows business enterprises, university professors and students, non-profits, and citizens to better organize and use this information.

41.     Public access to safety codes can be crucial when, for example, there is an industrial accident such as the West, Texas fertilizer plant explosion; a natural disaster such as the Moore, Oklahoma tornado; or when a homebuyer simply wishes to evaluate whether her builder complied with the law in constructing a house.  In these and similar situations, improving

public access to and familiarity with the relevant safety codes can help the public identify and prevent dangerous conditions before injury occurs.

42.    Public Resource does not publish privately drafted safety codes, except to the extent that national, federal, state, or local governments have incorporated them into law.

43.    Where a government has incorporated a privately drafted safety code, and the SDO that drafted the code has adopted and published a new version of the code, and no government has incorporated the new version into law, Public Resource does not publish the new version, because the new version is not law.

44.    Public Resource maintains an agent, registered with the U.S. Copyright Office, to receive notifications of claimed copyright infringement, pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(c)(2).  Public Resource provides contact information for that agent at https://public.resource.org/copyright_policy.html.

45.    Public Resource does not sell any copies of the law or charge for any access to the law.  This includes copies of, or access to, safety codes that the law incorporates.

46.    Like many charities, Public Resource offers for sale items bearing its logo, such as stickers, T-shirts, and books by its founder. To date, Public Resource has made less than $100 in revenue from the sale of any items. Public Resource does not sell any items containing the text of any standard.

47.     Except as described in the preceding paragraph, all of Public Resource's funding comes from charitable donations. No text or links soliciting donations appear on pages where safety codes are displayed within Public Resource's websites.

48.    Plaintiffs-Counterdefendants have no good-faith basis to believe Public Resource sells copies of any standard.

49.     Plaintiffs-Counterdefendants have no good-faith basis to believe Public Resource sells any item bearing the name or logo of any SDO.

## II.     Plaintiffs-Counterdefendants' Operations

50.     Plaintiffs-Counterdefendants have multiple motivations to develop and disseminate standards, including safety codes.

51.     Industry participants who are members of an SDO have incentives to promote the SDO to develop standards.

52.     Standards help foster uniform practices within an industry. That uniformity reduces waste and lowers costs for members of the industry. For example, standards allow multiple providers of parts and labor to contribute to a construction or manufacturing project while reducing the coordination required.

53.     In a 2009 document entitled "The Key to Energy Efficiency in Buildings," ASHRAE stated that "development of codes and standards" is one of the "overall least cost and technically sound methods for improving efficiency."

54.     Standards can enhance the reputation of an industry, such as by demonstrating the industry's commitment to quality, safety, or self-regulation.

55.     Members of an industry that comply with standards can gain a competitive advantage over noncompliant competitors by explaining the benefits of compliance to potential clients.

56.     The development of standards by SDOs reduces duplication of effort by members of an industry.

57.     The efficiencies and other benefits of standards created by SDOs give members of SDOs incentives to fund the SDOs.

58.     Industry participants that are members of SDOs such as Plaintiffs-Counterdefendants have incentives to encourage the SDOs of which they are members to develop standards.

59.     An industry participant involved in the standard-writing process can influence an SDO to adopt a standard similar to what that participant already practices.  In this manner, an industry participant can gain an advantage over competitors.

60.     The law does not incorporate the majority of standards developed by SDOs.

61.     Industry uses many standards that the law does not incorporate.

62.     SDOs update standards regularly regardless of whether the law incorporates such updates.

63.     For example, Public Resource has posted the 2002 version of NFPA 13, Standard for the Installation of Sprinkler Systems.

64.     The federal government has incorporated the 2002 version of NFPA 13 into federal regulations.

65.     NFPA drafted a 2013 version of NFPA, and it sells that version.

66.     The 2013 version of NFPA 13 is not incorporated into federal regulations.

67.     Public Resource has not posted the 2013 version of NFPA 13.

68.     Plaintiffs-Counterdefendants have multiple ways to fund the development and dissemination of standards, including safety codes.

69.     On information and belief, Plaintiff-Counterdefendant ASTM receives revenue from member fees.

70.     On information and belief, Plaintiff-Counterdefendant NFPA receives revenue from member fees.

71.     On information and belief, Plaintiff-Counterdefendant ASHRAE receives revenue from member fees.

72.     On information and belief, Plaintiff-Counterdefendant ASTM receives revenue from training and conferences.

73.     On information and belief, Plaintiff-Counterdefendant NFPA receives revenue from training and conferences.

74.     On information and belief, Plaintiff-Counterdefendant ASHRAE receives revenue from training and conferences.

75.     On information and belief, Plaintiff-Counterdefendant ASTM receives revenue from corporate sponsorships.

76.     On information and belief, Plaintiff-Counterdefendant NFPA receives revenue from corporate sponsorships.

77.     On information and belief, Plaintiff-Counterdefendant ASHRAE receives revenue from corporate sponsorships.

78.     On information and belief, Plaintiff-Counterdefendant ASTM receives revenue from advertising.

79.     On information and belief, Plaintiff-Counterdefendant NFPA receives revenue from advertising.

80.     On information and belief, Plaintiff-Counterdefendant ASHRAE receives revenue from advertising.

81.     On information and belief, Plaintiff-Counterdefendant ASTM receives revenue from the sale of copies of materials other than standards.

82.     On information and belief, Plaintiff-Counterdefendant NFPA receives revenue from the sale of copies of materials other than standards.

83.     On information and belief, Plaintiff-Counterdefendant ASHRAE receives revenue from the sale of copies of materials other than standards.

84.     On information and belief, Plaintiff-Counterdefendant ASTM receives revenue from the sale of printed copies of standards that the law does not incorporate.

85.     On information and belief, Plaintiff-Counterdefendant NFPA receives revenue from the sale of printed copies of standards that the law does not incorporate.

86.     On information and belief, Plaintiff-Counterdefendant ASHRAE receives revenue from the sale of printed copies of standards that the law does not incorporate.

87.     On information and belief, Plaintiff-Counterdefendant ASTM receives revenue from the sale of printed copies of safety codes that the law incorporates.

88.     On information and belief, Plaintiff-Counterdefendant NFPA receives revenue from the sale of printed copies of safety codes that the law incorporates.

89.     On information and belief, Plaintiff-Counterdefendant ASHRAE receives revenue from the sale of printed copies of safety codes that the law incorporates.

90.     Other publishers receive revenue from the sale of copies of purely factual data that is not subject to copyright, such as price lists, tide tables, or scientific datasets.

91.     Other publishers receive revenue from the sale of copies of material that is in the public domain.

92.     On its 2011 Form 990 filing with the Internal Revenue Service, ASTM stated that it received revenue from, among others, the following sources: Proficiency Test Programs

($7,144,532); Membership Dues & Assessments ($2,123,002); Inspection Fees ($1,955,581); and Seminars and Symposiums ($1,314,089).

93.     On its 2011 Form 990 filing with the Internal Revenue Service, NFPA stated that it received revenue from, among others, the following sources: Membership Dues ($9,857,878); Government Grants and "Contract Income" ($3,134,251); Direct Support ($392,143); Training ($8,799,681); Meetings and Seminars ($2,304,090); Members Magazine ($1,301,011); and Investment Income ($3,029,862).

94.     On its 2011 Form 990 filing with the Internal Revenue Service, ASHRAE stated that it received revenue from, among others, the following sources: Membership Dues ($7,057,728); Exposition Income ($4,179,361); Meeting[s] and Seminar[s] ($2,660,096); and Special Projects ($1,127,856).

95.     As of June 24, 2012, ASHRAE was developing "a strategy for monetizing ASHRAE's standards development from a means other than the sale of the Society's standards." The minutes of the ASHRAE Advisory Committee Meeting on June 24, 2012, reflect that fact.

96.     This initiative ended by April 2013 because ASHRAE found that the republication of incorporated standards online posed "no credible threat to ASHRAE's standard development process." The minutes of the ASHRAE Advisory Committee Meeting on April 10, 2013, reflect that fact. Exhibit A is a true and correct excerpt from those minutes.

97.     In a document dated August 14, 2013, NFPA announced its intention to develop "products that provide explanatory content, 'just in time' learning, and customer workflow solutions" and "products that derive from our codes and standards," and to "enhance NFPA's identity as the authoritative source of adopted codes and standards." Exhibit B is a true and correct copy of that document, identified as "Content Strategy" and dated Aug. 14, 2013.

98.     Not all of the revenues that Plaintiff-Counterdefendant ASTM receives support standards development.

99.     Not all of the revenues that Plaintiff-Counterdefendant NFPA receives support standards development.

100.    Not all of the revenues that Plaintiff-Counterdefendant ASHRAE receives support standards development.

101.    For example, according to NFPA's 2011 Form 990 filing with the Internal Revenue Service, NFPA paid its Chief Executive Officer $1,044,035 in salary for the year, and $3,804,652 in total to its officers and directors.

102.    On information and belief, that compensation reflected many activities other than standards development.

103.    Plaintiff-Counterdefendant ASTM has encouraged legislatures and/or rulemaking bodies to incorporate standards developed by ASTM into law.

104.    Plaintiff-Counterdefendant NFPA has encouraged legislatures and/or rulemaking bodies to incorporate standards developed by NFPA into law.

105.    Plaintiff-Counterdefendant ASHRAE has encouraged legislatures and/or rulemaking bodies to incorporate standards developed by ASHRAE into law.

106.    For example, on February 28, 2011, Lynn G. Bellenger, then-President of ASHRAE, sent a letter to several members of the Ohio General Assembly, stating that ASHRAE "urges you to adopt as the new commercial building code in Ohio, ANSI/ASHRAE/IES Standard 90.1-2007 *Energy Standard for Buildings Except Low-Rise Residential Buildings*, which provides minimum requirements for the energy-efficient design of buildings except low-rise residential buildings." Exhibit C is a true and correct copy of that letter.

107.     As another example, the "Build Strong Coalition," of which NFPA is a member, testified before the U.S. House of Representatives Transportation and Infrastructure Committee, Subcommittee on Economic Development, Public Buildings and Emergency Management, on July 14, 2011, urging the subcommittee to enact federal incentives for states to adopt building codes.

108.     Plaintiffs-Counterdefendants make celebratory public statements when government entities incorporate standards into law.

109.     For example, ASTM's 2009 annual report (at page 11) boasted that "there were 2,000 references to ASTM standards in U.S. federal regulations," and lists several examples of new adoptions of ASTM standards by federal agencies.

110.     As another example, in the January 2007 edition of ASTM's "Standardization News," ASTM proclaimed that "Legislators at the federal and state levels continue to recognize the quality and relevance of ASTM International standards by choosing to reference them to accomplish their legislative and regulatory agendas."

111.     In a press release dated January 13, 2011, NFPA announced that the state of Wisconsin had "adopted the most recent edition" of NFPA 1, Fire Code. Exhibit D is a true and correct copy of that press release.

## III.     Safety Codes That The Law Incorporates

112.     Safety codes that the law incorporates have the force of law.

113.     In the July/August 2010 edition of its "Standardization News," ASTM stated that "voluntary standards in effect become law by being cited in legislation or in the vast bodies of regulation that government produces."  Exhibit E is a true and correct copy of that statement.

114.    In a document entitled "Content Strategy," dated August 14, 2013, NFPA noted that its codes had a "unique status, when adopted by reference, as 'law.'" Exhibit B is a true and correct copy of that document.

115.    Violations of some standards that government entities have incorporated into law can result in civil or criminal penalties.

116.    Standards that government entities have incorporated into law direct the actions of governments as well as private actors. For example, some energy codes apply to government-owned buildings.

117.    The process of incorporating a standard into law is deliberative.

118.    The process of incorporating a standard into law involves the time, attention, and judgment of legislators and/or administrative agencies.

119.    Incorporating a standard into law often involves the soliciting and consideration of public comments, as with other laws and regulations. For example, the California Building Standards Commission requests public comments on the incorporation of building codes. http://www.bsc.ca.gov/Home/New/Notices.aspx provides an example of such a request.

120.    A government entity's incorporation of a standard into law benefits the SDO that developed the standard.

121.    For example, a government entity's incorporation of a standard signals the entity's approval of the work of the SDO.

122.    In addition, SDOs compete with one another. The incorporation of a standard may give an SDO an advantage over its competitor.

123.    Incorporation also gives users of a standard a degree of confidence that the standard will continue to be relevant.

124.    Incorporation may also give a competitive advantage to suppliers of materials and labor that a standard requires, because the use of such materials and labor becomes a legal requirement.

125.    The safety codes that the Plaintiffs-Counterdefendants develop and that the law incorporates comprise rules.

126.    Many laws enacted by legislatures, and regulations promulgated by administrative agencies, are highly technical, contain technical jargon, or incorporate the results of scientific testing.

127.    For example, 47 C.F.R. § 73.319 contains a technical specification for certain kinds of FM radio broadcasting that includes frequency ranges and mathematical formulas.

128.    Many laws and regulations govern the behavior of those in a particular trade, profession, or other subset of society.

129.    The general public has an interest in the effect of these laws and regulations on society, and in compliance with the laws.

130.    For example, the general public has an interest in learning how well the codes that purport to establish minimum safety requirements for buildings and goods achieve their goals.

131.    The public cannot easily access many safety codes that the law incorporates. For example, while federal regulations require that a copy of all material incorporated by reference be deposited with the Office of the Federal Register, the public can view that deposited copy only by making an appointment with that office, in Washington DC, on a specific date and time, as the web page at http://www.archives.gov/federal-register/cfr/ibr-locations.html reveals.

132.    Incorporating a standard by reference into the Code of Federal Regulations requires the same rulemaking procedures as other forms of promulgation of federal regulations.

47 Fed. Reg. 34108 (Aug. 6, 1982), Sec. 51.1(c)(2), provides that incorporation by reference "[i]s not intended to detract from the legal or practical attributes of the system established by the Federal Register Act, the Administrative Procedure Act, the regulations of the Administrative Committee of the Federal Register, and the acts which require publication in the Federal Register."

133.    The National Technology Transfer and Advancement Act of 1995 instructs the National Institute of Standards and Technology to "emphasi[ze] where possible the use of standards developed by private, consensus organizations" but does not permit such use without public comment and other regulatory and due process requirements. Public Law 104-113, enacted March 7, 1996.

134.    ASTM has acknowledged that legislatures and administrative agencies, not private organizations, create laws, notwithstanding the laws' origins.

135.    On the homepage of its online "Reading Room" at www.astm.org/READINGLIBRARY/index.html, ASTM warns the public that "[a]s a non-governmental organization, ASTM does not control which ASTM standards (and versions thereto) are referenced in federal regulations or laws."

136.    In its "Intellectual Property Policy" adopted April 28, 1999, ASTM purports to prohibit any and all "inputting, uploading, downloading, reproducing, or transmitting ASTM IP," including standards incorporated into law, without ASTM's express permission.

137.    On information and belief, ASTM's online "Reading Room" does not provide access to safety codes that are incorporated into state law but not incorporated into federal law.

138.    The development and use of standards incorporated by reference can be costly for governments.

139.    For example, USASpending.Gov shows that as of August 8, 2013, the Federal

Government was spending $4,354,135 on NFPA materials, $3,054,914 on ASTM materials, and

$2,322,658 on ASHRAE materials.  On information and belief, a substantial portion of that

money was spent on the purchase of safety codes.

140.    The Sonoma County, California Permit and Resource Management Department

spent $30,000 to purchase copies of safety codes for its staff in a single three-year code cycle.

141.    Governments contribute the time and work of public employees to assist with the

development of standards by SDOs, including Plaintiffs-Counterdefendants.

142.    The costs that federal agencies bear to provide this assistance are significant.

143.    ASTM's July 2003 edition of "Standardization News" reported that federal

employees "agreed that obtaining support from their management to participate in development

activities is sometimes difficult."  That document is available at

http://www.astm.org/SNEWS/JULY_2003/howto_jul03.html.

144.    Governments often pay public employees' travel expenses to attend meetings of

SDOs.

145.    Plaintiffs-Counterdefendants charge fees for access to copies of standards

incorporated into law.

146.    For example, the ASHRAE Bookstore, at

http://www.techstreet.com/ashrae/products/1199725, sells print and electronic copies of the

ANSI/ASHRAE/IESNA Standard 90 1-2010, Energy Standard for Buildings Except for Low-

Rise Residential Buildings (I-P Edition), which is incorporated into the Code of Federal

Regulations at 10 CFR 433.2; 10 CFR 433.4(a)(1)(i); and 10 CFR 433.5(a)(1), for a list price of

$110.

147.    As another example, NFPA sells copies of the 2005 National Electrical Code, which is incorporated by reference at several places in the Code of Federal Regulations, for a list price of $89.50, at http://www.nfpa.org/codes-and-standards/document-information-pages?mode=code&code=70.

148.    On information and belief, these fees are an impediment to many members of the public who have an interest in the codes. In particular, the fees are an impediment for nonprofit organizations that analyze or seek to influence the law on behalf of the public.

149.    For example, Public Resource spent at least $121,776.08 to purchase copies of incorporated standards in 2012.

150.    Where Plaintiffs-Counterdefendants make incorporated standards available to the public in electronic form, they from time to time place contractual or technological restrictions on access to or use of those codes.

151.    One cannot easily search algorithmically, or analyze with the help of software, the copies of incorporated standards that Plaintiffs-Counterdefendants make available to the public in electronic form. This forecloses some useful methods of legal, policy, and economic analysis.

152.    The diagrams and equations in such copies cannot be resized or reformatted without loss of detail.

153.    When Plaintiffs-Counterdefendants provide free online access to safety codes incorporated in law, they apply technological means to prevent the public from copying or printing the codes.

154.    ASTM's online "Reading Room" at www.astm.org/READINGLIBRARY/index.html provides access to safety codes incorporated into the Code of Federal Regulations "for online reading" with "no print or download options."

155.    When NFPA makes standards available for free viewing on its website, it uses technological means to prevent visitors from copying or printing the standards.

156.    When ASHRAE makes standards available for free viewing on its website, it uses technological means, including a service called RealRead, to prevent visitors from copying or printing the standards.

157.    RealRead requires Java software in order to run. Java is not available by default in many computer operating systems and Web browsers, and it must often be downloaded from a third party.

158.    Plaintiffs-Counterdefendants place copyright notices and legal warnings on copies of standards, including standards that the law incorporates.

159.    By these notices and warnings Plaintiffs-Counterdefendants seek to discourage the public from sharing, annotating, or excerpting the incorporated standards.

160.    These notices and warnings do discourage the public from sharing, annotating, or excerpting the incorporated standards.

161.    For example, ASTM requires that anyone who accesses standards that government entities have incorporated into law through its "Reading Room" website must agree not to "publish, modify, transmit, reproduce, create new works from, distribute, sell, loan, nor in anyway [sic] exploit" them. This agreement does not state any exclusion from that agreement for educational, critical, and other uses that copyright law protects by the fair use doctrine.

162.    NFPA requires that anyone who accesses codes that government entities have incorporated into law through its website must assent to an agreement that purports to permit fair use of the code, but prohibits "the disabling, circumventing, or otherwise evading the read-only

or other technological measures that limit copying." The agreement thus purports to prohibit the public from making otherwise lawful uses of the codes.

163.    ASHRAE's website contains a "Terms of Use" page at https://www.ashrae.org/terms-of-use/, which asserts that "the site contains information, software, photos, video, graphics, sound or other materials (collectively, 'content') that are protected by copyrights."  The page further states "You may not modify, publish, transmit, participate in the transfer or sale, create derivative works, or in any way exploit, any of the content, in whole or in part."

164.    Under the Freedom of the Information Act, 5 U.S.C. § 552(a)(1), and regulations issued under it at 1 C.F.R. § 51.7(a)(4), materials, such as standards and technical requirements, that are incorporated by reference into a federal regulation are deemed effectively published only if such materials are reasonably available to and usable by the class of persons affected by the publication.

165.    Uncertainty over which uses are permitted by copyright law and by Plaintiffs-Counterdefendants' terms and contracts discourages the public from sharing, annotating, excerpting, quoting, and otherwise using safety codes that the law incorporates.

166.    Uncertainty over whether copyright law applies to safety codes that the law incorporates, and the risk of high civil damages (including the theoretical possibility of "statutory" damages), injunctions, criminal prosecution, and legal expenses discourage the public from sharing, annotating, excerpting, quoting, and otherwise using the codes.

167.    This discouragement diminishes the public's familiarity with, understanding of, and ability to engage constructively with these important pieces of public law.

168.     When the public faces obstacles in using the incorporated safety codes, the public's familiarity with, understanding of, and ability to engage constructively with these important pieces of public law may diminish.

169.     When the public faces costs in using the incorporated safety codes, the public's familiarity with, understanding of, and ability to engage constructively with these important pieces of public law may diminish.

170.     Public Resource's publication of safety codes that the law incorporates does not impair Plaintiffs-Counterdefendants' ability to develop standards.

171.     Public Resource's publication of the safety codes that the law incorporates, including safety codes in which Plaintiffs-Counterdefendants claim ownership, has given the public greater access to those codes.

172.     Public Resource's publication of the safety codes that the law incorporates, including safety codes in which Plaintiffs-Counterdefendants claim ownership, has given the public greater power to analyze and understand those codes.

173.     Public Resource's publication of the safety codes that the law incorporates, including safety codes in which Plaintiffs-Counterdefendants claim ownership, has lowered the cost of public access to the law.

## <u>COUNT I</u>

**[Declaratory Relief Pursuant to 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act) and the Copyright Act (U.S.C. Title 17)]**

174.     Defendant-Counterclaimant Public Resource incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

175.     The people are the authors of the law, regardless of who first pens the words that later become law through enactment by a legislature or public agency.

176.    The principle that the law must be public and available to citizens to read and speak has its roots in the concept of the rule of law itself.

177.    The legal principle that ignorance of the law is no defense presumes that all citizens have access to the law.

178.    The First, Fifth and Fourteenth Amendments to the U.S. Constitution require that all people have the power to read, speak, and disseminate the law.

179.    Laws and regulations are in the public domain and not subject to copyright.

180.    Laws and regulations do not lose their public domain status and become subject to copyright restrictions because private parties drafted them.

181.    Laws and regulations do not lose their public domain status and become subject to copyright restrictions because they incorporate material that private parties have drafted or prepared.

182.    There is only one way to express a particular law fully and authoritatively, namely with explicit reference to the language of the law and with explicit reference to any matters that the law incorporates within itself.

183.    Once the law incorporates material in itself, use of that material by the public or by private parties is lawful under copyright law through the doctrine of merger.

184.    Public Resource's purpose in using the safety codes at issue in this litigation is to facilitate scholarship, criticism, and analysis of public safety law; to inform the public about the laws that govern them; for educational purposes; and to encourage public engagement with public safety law.

185.    Upon their incorporation into law, incorporated expressions are factual as statements of the law. Public Resource publishes the safety codes in their entirety. Scholarship,

criticism, analysis, and other public engagement with the law is not possible without access to a complete code. Therefore, Public Resource publishes as much of the safety codes as is necessary to fulfill its purposes.

186.    Public Resource's use of the safety codes does not have an adverse effect on the market for public safety standards incorporated into law.

187.    Even if copyright law protects codes after they are incorporated into law, which it does not, Public Resource's use of such codes is a fair use and thus is not an infringement of copyright.

188.    There is a real and actual controversy between Public Resource and the Plaintiffs-Counterdefendants regarding whether Public Resource's copying, publication, and reformatting of certain codes constitutes copyright infringement of Plaintiffs-Counterdefendants' rights.

189.    The Plaintiffs-Counterdefendants are seeking an injunction against Public Resource that would hinder Public Resource's activities.

190.    Those activities are part of Public Resource's mission of making the law accessible to all.

191.    New codes that the Plaintiffs-Counterdefendants develop will likely – at their encouragement – continue to be incorporated into law.

192.    Access to future incorporated codes may accordingly be subject to Plaintiffs-Counterdefendants' claim of power to restrict the public's expression and distribution of, and access to, those codes.

193.    The Plaintiffs-Counterdefendants would therefore have the power to inhibit public discourse about and public use of the law.

194.    The controversy between Public Resource and the Plaintiffs-Counterdefendants is thus real and substantial and demands specific relief through a conclusive judicial decree.

195.    Public Resource is entitled to a declaratory judgment that its copying, publication, and reformatting of such of Plaintiffs' codes that are incorporated into the law of any U.S. jurisdiction do not infringe any copyright rights of Plaintiffs-Counterdefendants.

## COUNT II

**[Declaratory Relief Pursuant to 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act) and the Lanham Act (15 U.S.C. §§ 1051, *et seq.*)]**

196.    Defendant-Counterclaimant Public Resource incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

197.    Public Resource's reproduction of the logos and names of Plaintiffs-Counterdefendants that appear in safety codes that the law incorporates is not a use in commerce of those logos and names.

198.    Public Resource does not use the logos and names of Plaintiffs-Counterdefendants that appear in safety codes in connection with the sale, offer for sale, distribution, or advertising of goods or services.

199.    Public Resource's reproduction of the logos and names of Plaintiffs-Counterdefendants that appear in safety codes that the law incorporates is not likely to cause confusion, to cause mistake, or to deceive consumers as to the source, sponsorship, or affiliation of Public Resource, Public Resource's website, or the law (including incorporated codes) available through Public Resource's website.

200.    Plaintiffs-Counterdefendants have no evidence showing that the public has suffered any substantial mistake, deception, or confusion over whether Public Resource is the

source of, the sponsor of, or especially associated with the laws (incorporating codes) that Public Resource publishes.

201.     Plaintiffs-Counterdefendants have no evidence showing that the public has suffered any substantial mistake, deception, or confusion over whether Public Resource is the source of, the sponsor of, or affiliated with Plaintiffs-Counterdefendants and their goods, services, or commercial activities.

202.     Plaintiffs-Counterdefendants have no evidence showing that the public has suffered any substantial mistake, deception, or confusion over whether any of them is the source of, sponsors, or is affiliated with Public Resource's publishing activities.

203.     Plaintiffs-Counterdefendants have no evidence showing that, as a result of Public Resource's activities, the public has suffered any substantial mistake, deception, or confusion over whether any of them is, or is not, the source of a particular code that has been incorporated in the law.

204.     The controversy between Public Resource and the Plaintiffs-Counterdefendants is real and substantial and demands specific relief through a decree of a conclusive character.

205.     Public Resource is entitled to declaratory judgment that its reproduction in copies, publication, and reformatting of codes that are incorporated into the law of any U.S. jurisdiction that include the names or logos of one or more Plaintiff-Counterdefendant does not infringe any statutory or common law trademark rights of Plaintiffs-Counterdefendants and does not constitute unfair competition or false designation of origin.

## PUBLIC.RESOURCE.ORG, INC.'S ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF

Defendant Public.Resource.Org, Inc. ("Public Resource") responds to Plaintiffs' Complaint for Injunctive Relief as follows:

Defendant admits that this action purports to be by three not-for-profit standards developing organizations: American Society for Testing and Materials d/b/a/ ASTM International; National Fire Protection Association, Inc.; and American Society of Heating, Refrigeration, and Air-Conditioning Engineers, Inc.  Defendant admits that this action seeks injunctive relief for alleged copyright infringement, contributory copyright infringement and trademark infringement against Public.Resource.Org, Inc.  Defendant denies the remaining allegations of the preamble.

1.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 1 of the Complaint and therefore denies the allegations.

2.      Defendant admits that some standards are necessary for a well-functioning economy and a safe society. Defendant denies that this system imposes virtually no costs on governments or taxpayers while enabling government entities at every level to incorporate private standards into their regulations or statutes as they see fit, or that it is subject to the creators of the standards retaining the copyrights in the standards.  Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 2 of the Complaint and therefore denies the allegations.

3.      Defendant denies the allegations of paragraph 3 of the Complaint.

4.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 4 of the Complaint and therefore denies the allegations.

5.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 5 of the Complaint and therefore denies the allegations.

6.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 6 of the Complaint and therefore denies the allegations.

7.      Defendant admits the allegations of paragraph 7 of the Complaint.

8.      Defendant admits this purports to be an action for infringement and contributory infringement of federally registered copyrights in violation of 17 U.S.C. § 501, infringement of trademarks in violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and common law trademark infringement.  Defendant denies the remaining allegations of paragraph 8 of the Complaint.

9.      Defendant denies the allegations of paragraph 9 of the Complaint.

10.      Defendant denies the allegations of paragraph 10 of the Complaint.

11.      Defendant admits that it has participated in conferences, round tables, and meetings in the District of Columbia. Defendant denies the remaining allegations in paragraph 11 of the Complaint.

12.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 12 of the Complaint and therefore denies the allegations.

13.      Defendant admits that standards sometimes may be developed by government entities. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 13 of the Complaint and therefore denies the allegations.

14.      Defendant admits that some privately developed standards are incorporated by reference by government entities in statutes, regulations, and ordinances. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 14 of the Complaint and therefore denies the allegations.

15.      Defendant lacks information or belief sufficient to admit or deny that the United States standards development system has evolved over more than a century as a decentralized system of private organizations and therefore it denies the allegation. Defendant admits these

organizations develop standards in different ways, and for myriad of purposes. Defendant denies the remaining allegations of paragraph 15 of the Complaint.

16.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 16 of the Complaint and therefore denies the allegations.

17.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 17 of the Complaint and therefore denies the allegations.

18.     Defendant denies the allegations of paragraph 18 of the Complaint.

19.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 19 of the Complaint and therefore denies the allegations.

20.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 20 of the Complaint and therefore denies the allegations.

21.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 21 of the Complaint and therefore denies the allegations.

22.     Defendant admits the allegations in paragraph 22 of the Complaint.

23.     Defendant denies the allegations in paragraph 23 of the Complaint.

24.     Defendant admits that private-sector standards are developed in a variety of ways, and that some are developed by ad hoc business groups or consortia that convene to create standards for a specific business purpose and do not provide for public review or broad participation. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 24 of the Complaint and therefore denies the allegations.

25.     Defendant admits that some organizations that develop voluntary consensus standards are trade associations that fund their standards activities through membership or

participation fees. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 25 of the Complaint and therefore denies the allegations.

26.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 26 of the Complaint and therefore denies the allegations.

27.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 27 of the Complaint and therefore denies the allegations.

28.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 28 of the Complaint and therefore denies the allegations.

29.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 29 of the Complaint and therefore denies the allegations.

30.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 30 of the Complaint and therefore denies the allegations.

31.     Defendant denies the allegations that Plaintiffs' standards reflect the complex expression of multitude of ideas, and contain original and highly creative content. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 31 of the Complaint and therefore denies the allegations.

32.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 32 of the Complaint and therefore denies the allegations.

33.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 33 of the Complaint and therefore denies the allegations.

34.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 34 of the Complaint and therefore denies the allegations.

35.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 35 of the Complaint and therefore denies the allegations.

36.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 36 of the Complaint and therefore denies the allegations.

37.     Defendant admits a portion of these voluntary consensus standards have been incorporated by reference into the laws of government entities, and that government entities have used privately developed standards by incorporating the standards by reference into statues, regulations, and ordinances. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 37 of the Complaint and therefore denies the allegations.

38.     Defendant admits that in early part of the twentieth century, many state and local governments adopted codes on such common subjects as construction, fire safety, and electrical work. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 38 of the Complaint and therefore denies the allegations.

39.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 39 of the Complaint and therefore denies the allegations.

40.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 40 of the Complaint and therefore denies the allegations.

41.     Defendant admits the allegations of paragraph 41 of the Complaint.

42.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 42 of the Complaint and therefore denies the allegations.

43.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 43 of the Complaint and therefore denies the allegations.

44.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 44 of the Complaint and therefore denies the allegations.

45.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 45 of the Complaint and therefore denies the allegations.

46.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 46 of the Complaint and therefore denies the allegations.

47.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 47 of the Complaint and therefore denies the allegations.

48.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 48 of the Complaint and therefore denies the allegations.

49.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 49 of the Complaint and therefore denies the allegations.

50.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 50 of the Complaint and therefore denies the allegations.

51.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 51 of the Complaint and therefore denies the allegations.

52.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 52 of the Complaint and therefore denies the allegations.

53.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 53 of the Complaint and therefore denies the allegations.

54.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 54 of the Complaint and therefore denies the allegations.

55.      Defendant admits the allegations in paragraph 55 of the Complaint.

56.     Defendant denies that the U.S. Department of Agriculture (USDA) BioPreferred Program incorporates by reference ASTM D6866 – Standard Test Methods for Determining the Biobased Content of Solid, Liquid, and Gaseous Samples Using Radiocarbon Analysis – to calculate the biobased content included in a given material. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 56 of the Complaint and therefore denies the allegations.

57.     Defendant lacks information or belief sufficient to admit or deny whether over 1,200 ASTM standards, out of more than 12,000 total ASTM standards, are referenced in the Code of Federal Regulations, and therefore it denies the allegation. Defendant denies the remaining allegations of paragraph 57 of the Complaint.

58.     Defendant denies that ASTM owns or controls the copyrights and/or the relevant exclusive rights in the works at issue in this case under the United States copyright laws. Defendant further denies that Exhibit A is a list of the ASTM Standards that Defendant infringed by the acts complained of in the Complaint. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 58 of the Complaint and therefore denies the allegations.

59.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 59 of the Complaint and therefore denies the allegations.

60.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 60 of the Complaint and therefore denies the allegations.

61.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 61 of the Complaint and therefore denies the allegations.

62.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 62 of the Complaint and therefore denies the allegations.

63.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 63 of the Complaint and therefore denies the allegations.

64.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 64 of the Complaint and therefore denies the allegations.

65.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 65 of the Complaint and therefore denies the allegations.

66.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 66 of the Complaint and therefore denies the allegations.

67.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 67 of the Complaint and therefore denies the allegations.

68.     Defendant denies that NFPA standards are advisory and are made available for a wide variety of private and public uses. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 68 of the Complaint and therefore denies the allegations.

69.     Defendant admits that the municipal regulations of the District of Columbia incorporate the NEC by reference.  Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 69 of the Complaint and therefore denies the allegations.

70.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 70 of the Complaint and therefore denies the allegations.

71.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 71 of the Complaint and therefore denies the allegations.

72.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 72 of the Complaint and therefore denies the allegations.

73.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 73 of the Complaint and therefore denies the allegations.

74.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 74 of the Complaint and therefore denies the allegations.

75.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 75 of the Complaint and therefore denies the allegations.

76.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 76 of the Complaint and therefore denies the allegations.

77.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 77 of the Complaint and therefore denies the allegations.

78.     Defendant denies that NFPA owns or controls the copyrights and/or relevant exclusive rights in the works at issue in this case under the United States copyright laws. Defendant denies that Exhibit B is a list of certain of NFPA copyrighted works that Defendant has infringed by the acts complained of in the Complaint. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 78 of the Complaint and therefore denies the allegations.

79.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 79 of the Complaint and therefore denies the allegations.

80.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 80 of the Complaint and therefore denies the allegations.

81.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 81 of the Complaint and therefore denies the allegations.

82.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 82 of the Complaint and therefore denies the allegations.

83.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 83 of the Complaint and therefore denies the allegations.

84.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 84 of the Complaint and therefore denies the allegations.

85.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 85 of the Complaint and therefore denies the allegations.

86.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 86 of the Complaint and therefore denies the allegations.

87.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 87 of the Complaint and therefore denies the allegations.

88.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 88 of the Complaint and therefore denies the allegations.

89.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 89 of the Complaint and therefore denies the allegations.

90.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 90 of the Complaint and therefore denies the allegations.

91.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 91 of the Complaint and therefore denies the allegations.

92.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 92 of the Complaint and therefore denies the allegations.

93.     Defendant denies that ASHRAE owns or controls the copyrights and/or the relevant exclusive rights in the works at issue in this case under the United States copyright laws. Defendant denies that Exhibit C is a list of the ASHRAE Standards that Defendant has infringed by the acts complained of in the Complaint. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 93 of the Complaint and therefore denies the allegations.

94.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 94 of the Complaint and therefore denies the allegations.

95.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 95 of the Complaint and therefore denies the allegations.

96.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 96 of the Complaint and therefore denies the allegations.

97.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 97 of the Complaint and therefore denies the allegations.

98.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 98 of the Complaint and therefore denies the allegations.

99.     Defendant lacks information or belief sufficient to admit or deny whether the most expensive ASTM standard costs $71 and whether most ASTM standards cost between $25 and $35, and therefore it denies the allegations.  Defendant denies the remaining allegations of paragraph 99 of the Complaint.

100.     Defendant denies that NFPA sells its standards at a reasonable cost to professionals and tradespeople who use the standards. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 100 of the Complaint and therefore denies the allegations.

101.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 101 of the Complaint and therefore denies the allegations.

102.     Defendant admits that the specific details surrounding access to standards vary depending on the SDO at issue, the nature of the standard, and the audience that consumes it. Defendant denies the remaining allegations of paragraph 102 of the Complaint.

103.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 103 of the Complaint and therefore denies the allegations.

104.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 104 of the Complaint and therefore denies the allegations.

105.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 105 of the Complaint and therefore denies the allegations.

106.     Defendant denies that that 1 C.F.R. § 51.7(a)(4) of the Code of Federal Regulations states that any materials incorporated by reference at the federal level must be "reasonably available to and usable by the class of persons affected by the publication." Defendant denies that 1 C.F.R. §§ 5.2, 51.9(b)(4) requires that the Office of the Federal Register and the relevant agency each must maintain a hard copy of any material incorporated by reference that is available for public inspection. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 106 of the Complaint and therefore denies the allegations.

107.     Defendant admits that the Code of Federal Regulations does not provide a precise definition of the term "reasonably available." Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 107 of the Complaint and therefore denies the allegations.

108.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 108 of the Complaint and therefore denies the allegations.

109.     Defendant denies that OMB Circular 119-A also takes the position that incorporation by reference of a standard does not destroy the copyright in that standard. Defendant lacks information or belief to admit or deny the remaining allegations in paragraph 109 of the Complaint and therefore denies the allegations.

110.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 110 of the Complaint and therefore denies the allegations.

111.     Defendant denies the allegations of paragraph 111 of the Complaint.

112.     Defendant denies the allegations of paragraph 112 of the Complaint.

113.     Defendant admits that it sent packages including a packing slip informing the recipient of the cost Public Resource expended to obtain the standards and requesting comment. Defendant denies the remaining allegations in paragraph 113 of the Complaint.

114.     Defendant admits that its statements to the media made it clear that it intended to begin posting 73 standards incorporated by reference into federal regulations on the Internet in HTML format. Defendant lacks information or belief as to how Plaintiffs obtained Exhibit D sufficient to admit or deny, and therefore it denies the allegation.

115.     Defendant denies the allegations of paragraph 115 of the Complaint.

116.     Defendant denies the allegations of paragraph 116 of the Complaint.

117.    Defendant admits that it "rekeyed" some of the standards that government entities have incorporated by reference into law and that Plaintiffs claim Defendant infringed in this action and posted them on its website in html format.  Defendant also admits that it converted graphics within some of the standards that government entities have incorporated by reference into law, and that Plaintiffs claim Defendant infringed in this action, into the open Scalable Vector Graphics (SVG) format, which enables the images to be searched, indexed, scripted, and compressed. Defendant further admits that it reset mathematical formulas into the Math Markup Language application that integrates mathematical formulae into web pages and other documents to make it easier for members of the public to manipulate the standards.  Defendant also admits that it added metadata to the document "headers," which made the standards that government entities have incorporated by reference into law and that Plaintiffs claim Defendant infringed in this action more accessible and discoverable by Internet search engines, thereby increasing the number of people who might access the standards and disseminate them further.  Defendant denies that any of its efforts changed the content of the laws it posted to its website.  Defendant lacks information or belief as to how Plaintiffs obtained Exhibit E sufficient to admit or deny, and therefore it denies the allegation.  Defendant denies the remaining allegations in paragraph 117 of the Complaint.

118.    Defendant admits that its website has a page labeled "Public Safety Codes Incorporated By Law," with a separate section linking to copies of standards incorporated by reference by the District of Columbia, including the *National Electrical Code*. Defendant lacks information or belief as to how Plaintiffs obtained Exhibit F sufficient to admit or deny, and therefore it denies the allegation.  Defendant denies the remaining allegations in paragraph 118 of the Complaint.

119.    Defendant admits that, according to its website, standards have the force of law when they are incorporated by reference and:

> [t]he law belongs to the people, and cannot become the private property of some governmental or non-governmental organization, no matter how seemingly well-deserved are the rents one could extract from winning a monopoly concession on a parcel of the law. While standards bodies need money to carry out their valuable work, and while it is clear that these standards bodies create high-quality documents that are essential to our public safety, one cannot cordon off the public domain simply because of an institutional desire for funds.

Defendant denies the remaining allegations of paragraph 119 of the Complaint.

120.    Defendant lacks information or belief that standards that it claims were incorporated by reference into federal law have not in fact been incorporated into the Code of Federal Regulations, and therefore it denies the allegation. Defendant denies the remaining allegations in paragraph 120 of the Complaint.

121.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 121 of the Complaint and therefore denies the allegations.

122.    Defendant denies the allegations of paragraph 122 of the Complaint.

123.    Defendant denies the allegations of paragraph 123 of the Complaint.

124.    Defendant lacks information or belief as to how Plaintiffs obtained Exhibit G sufficient to admit or deny, and therefore it denies the allegation.  Defendant denies the remaining allegations in paragraph 124 of the Complaint.

125.     Defendant lacks information or belief as to how Plaintiffs obtained Exhibit H sufficient to admit or deny, and therefore it denies the allegation.  Defendant denies the remaining allegations in paragraph 125 of the Complaint.

126.     Defendant lacks information or belief as to how Plaintiffs obtained Exhibit I sufficient to admit or deny, and therefore it denies the allegation.  Defendant denies the remaining allegations in paragraph 126 of the Complaint.

127.     Defendant denies the allegations of paragraph 127 of the Complaint.

128.     Defendant lacks information or belief as to how Plaintiffs obtained Exhibit G sufficient to admit or deny, and therefore it denies the allegation.  Defendant denies the remaining allegations in paragraph 128 of the Complaint.

129.     Defendant admits that many of the documents Defendant displays on its website that Plaintiffs claim are infringing are not the current versions of the standards that have been published by the relevant Plaintiff, as Defendant publishes only the versions that are current or historical law.  Defendant admits that such documents do not contain any notation that indicates that they are not the current versions of the standards that have been published by the relevant Plaintiff, for the reason that those later versions are not current or historical law.  Defendant denies the remaining allegations of paragraph 129.

130.     Defendant admits that it has retyped the text of some of the standards that government entities have incorporated by reference into law, and that Plaintiffs claim Defendant infringed in this action, and converted many of the graphics into accessible formats, and it did this so that it could convert the standards into different formats.  Defendant denies that it redrew any graphics in a manner that altered the law at issue. Defendant lacks information or belief

sufficient to admit or deny the remaining allegations of paragraph 130 of the Complaint and therefore denies the allegations.

131.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 131 of the Complaint and therefore denies the allegations.

132.    Defendant denies the allegations of paragraph 132 of the Complaint.

133.    Defendant denies the allegations of paragraph 133 of the Complaint.

134.    Defendant denies the allegations of paragraph 134 of the Complaint.

135.    Defendant denies the allegations of paragraph 135 of the Complaint.

136.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 136 of the Complaint and therefore denies the allegations.

137.    Defendant denies the allegations of paragraph 137 of the Complaint.

138.    Defendant denies the allegations of paragraph 138 of the Complaint.

139.    Defendant denies the allegations of paragraph 139 of the Complaint.

140.    Defendant denies the allegations of paragraph 140 of the Complaint.

141.    Defendant denies the allegations of paragraph 141 of the Complaint.

## COUNT I

142.    Defendant repeats and incorporates here its responses to paragraphs 1-141 above.

143.    Defendant denies the allegations of paragraph 143 of the Complaint.

144.    Defendant denies the allegations of paragraph 144 of the Complaint.

145.    Defendant denies the allegations of paragraph 145 of the Complaint.

146.    Defendant denies the allegations of paragraph 146 of the Complaint.

147.    Defendant denies the allegations of paragraph 147 of the Complaint.

148.    Defendant admits that it rekeyed some the standards that government entities have incorporated by reference into law, and that Plaintiffs claim Defendant infringed in this action,

and displayed copies of these standards on its website. Defendant denies the remaining allegations of paragraph 148 of the Complaint.

149.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 149 of the Complaint and therefore denies the allegations.

150.    Defendant denies the allegations of paragraph 150 of the Complaint.

151.    Defendant denies the allegations of paragraph 151 of the Complaint

152.    Defendant denies the allegations of paragraph 152 of the Complaint.

153.    Defendant denies the allegations of paragraph 153 of the Complaint.

154.    Defendant denies the allegations of paragraph 154 of the Complaint.

155.    Defendant denies the allegations of paragraph 155 of the Complaint.

156.    Defendant denies the allegations of paragraph 156 of the Complaint.

## COUNT II

157.    Defendant repeats and incorporates here its responses to paragraphs 1-156 above.

158.    Defendant admits the allegation in paragraph 158 of the Complaint.

159.    Defendant denies the allegations of paragraph 159 of the Complaint.

160.    Defendant denies the allegations of paragraph 160 of the Complaint.

161.    Defendant denies the allegations of paragraph 161 of the Complaint.

## COUNT III

162.    Defendant repeats and incorporates here its responses to paragraphs 1-161 above.

163.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 163 of the Complaint and therefore denies the allegations.

164.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 164 of the Complaint and therefore denies the allegations.

165.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 165 of the Complaint and therefore denies the allegations.

166.    Defendant denies the allegations of paragraph 166 of the Complaint.

167.    Defendant denies the allegations of paragraph 167 of the Complaint.

168.    Defendant denies the allegations of paragraph 168 of the Complaint.

169.    Defendant denies the allegations of paragraph 169 of the Complaint.

170.    Defendant denies the allegations of paragraph 170 of the Complaint.

171.    Defendant denies the allegations of paragraph 171 of the Complaint.

172.    Defendant denies the allegations of paragraph 172 of the Complaint.

## COUNT IV

173.    Defendant repeats and incorporates here its responses to paragraphs 1-172 above.

174.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 174 of the Complaint and therefore denies the allegations.

175.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 175 of the Complaint and therefore denies the allegations.

176.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 176 of the Complaint and therefore denies the allegations.

177.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 177 of the Complaint and therefore denies the allegations.

178.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 178 of the Complaint and therefore denies the allegations.

179.    Defendant denies the allegations of paragraph 179 of the Complaint.

180.    Defendant denies the allegations of paragraph 180 of the Complaint.

181.    Defendant denies the allegations of paragraph 181 of the Complaint.

182.    Defendant denies the allegations of paragraph 182 of the Complaint.

183.    Defendant denies the allegations of paragraph 183 of the Complaint.

184.    Defendant denies the allegations of paragraph 184 of the Complaint.

## COUNT V

185.    Defendant repeats and incorporates here its responses to paragraphs 1-184 above.

186.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 186 of the Complaint and therefore denies the allegations.

187.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 187 of the Complaint and therefore denies the allegations.

188.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 188 of the Complaint and therefore denies the allegations.

189.    Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 189 of the Complaint and therefore denies the allegations.

190.    Defendant denies the allegations of paragraph 190 of the Complaint.

191.    Defendant denies the allegations of paragraph 191 of the Complaint.

192.    Defendant denies the allegations of paragraph 192 of the Complaint.

193.    Defendant denies the allegations of paragraph 193 of the Complaint.

194.    Defendant denies the allegations of paragraph 194 of the Complaint.

195.    Defendant denies the allegations of paragraph 195 of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant asserts the following defenses, whether affirmative or otherwise. Defendant reserves all further defenses that may now or in the future exist based on discovery and further factual investigation in the case.

1.     The Complaint and each claim within it fail to allege facts sufficient to state a cause of action.

2.     Plaintiffs have no copyrights in works that government entities have incorporated by reference into law.

3.     Lack of ownership of the alleged copyrights bars Plaintiffs' copyright claims.

4.     Defendant's lack of use in commerce bars Plaintiffs' trademark claims.

5.     The lack of likelihood of confusion bars Plaintiffs' trademark claims.

6.     The doctrines of copyright and trademark fair use bar Plaintiffs' claims.

7.     The doctrine of unclean hands bars Plaintiffs' claims.

8.     The doctrine of copyright misuse bars Plaintiffs' copyright claims.

9.     The doctrine of trademark misuse bars Plaintiffs' trademark claims.

10.    Waiver and estoppel bar Plaintiffs' claims.

11.    Lack of irreparable injury bars Plaintiffs' demand for injunction.

12.    Injunction would greatly harm the public interest and thus the public interest bars Plaintiffs' demand for injunction.

## PRAYER FOR RELIEF

WHEREFORE, Public Resource prays for judgment in its favor and against Plaintiffs-Counterdefendants as follows:

1.     That Plaintiffs-Counterdefendants take nothing by their claims and that the Court enter judgment in favor of Public Resource on both the complaint and the counterclaim;

2.     That the Court declare:

   a.   That Public Resource is not liable for copyright infringement for the copying, publication, and reformatting, to the present date, of safety codes in which Plaintiffs-Counterdefendants claim rights;

b.  That Public Resource is not liable for copyright infringement for any future copying, publication, and reformatting of safety codes in which Plaintiffs-Counterdefendants claim rights to the extent that such codes have been incorporated into the law of one or more jurisdictions within the United States;

3.  That the Court enter an order enjoining Plaintiffs-Counterdefendants, their agents, attorneys, and assigns from asserting any copyright claim against Public Resource in connection with publication of safety codes in which Plaintiffs-Counterdefendants claim rights, to the extent that such codes have been incorporated into the law of one or more jurisdictions within the United States;

4.  That the Court declare that Public Resource has not infringed any trademark right through the copying, publication, and reformatting of safety codes in which Plaintiffs-Counterdefendants claim rights, including Plaintiffs-Counterdefendants' names and logos contained within the codes;

5.  That the Court enter an order enjoining Plaintiffs-Counterdefendants, their agents, attorneys, and assigns from asserting any trademark or unfair competition claim against Public Resource for the reproduction and dissemination of Plaintiffs-Counterdefendants' names and logos as they appear in safety codes in which Plaintiffs-Counterdefendants claim rights;

6.  That the Court award Public Resource costs of suit, including reasonable attorneys' fees under the Copyright Act;

7.  That the Court award Public Resource attorneys' fees in this exceptional case under the Lanham Act; and

8.      That the Court grant any further relief it considers just and proper.


## **DEMAND FOR JURY TRIAL**

Defendant-Counterclaimant Public Resource requests trial by jury.

Dated:  September 27, 2013                    Respectfully submitted,


                                             */s/ Andrew P. Bridges*
                                             Andrew P. Bridges (admitted)
                                             abridges @fenwick.com
                                             Kathleen Lu (admission *pro hac vice* pending)
                                             klu@fenwick.com
                                             FENWICK & WEST LLP
                                             555 California Street, 12th Floor
                                             San Francisco, CA 94104
                                             Telephone:  (415) 875-2300
                                             Facsimile:   (415) 281-1350

                                             David Halperin (D.C. Bar No. 426078)
                                             davidhalperindc@gmail.com
                                             1530 P Street NW
                                             Washington, DC 20005
                                             Telephone: (202) 905-3434

                                             Mitchell L. Stoltz (D.C. Bar No. 978149)
                                             mitch@eff.org
                                             Corynne McSherry (admission *pro hac vice*
                                             pending)
                                             corynne@eff.org
                                             ELECTRONIC FRONTIER FOUNDATION
                                             815 Eddy Street
                                             San Francisco, CA 94109
                                             Telephone: (415) 436-9333
                                             Facsimile:  (415) 436-9993

                                             Joseph C. Gratz
                                             jgratz@durietangri.com
                                             Mark A. Lemley
                                             mlemley@durietangri.com
                                             DURIE TANGRI LLP
                                             217 Leidesdorff Street
                                             San Francisco, CA 94111
                                             Telephone: (415) 362-6666
                                             Facsimile:  (415) 236-6300

                                             *Attorneys for Defendant-Counterclaimant*
                                             *Public.Resource.Org, Inc.*

SF/5444350.9