# Exhibit 19



**PUBLIC.RESOURCE.ORG** ~ *A Nonprofit Corporation*

## Public Works for a Better Government

July 30, 2013

Hon. Joshua McKoon, Chairman
Georgia Code Revision Commission
319–A Coverdell Legislative Office Building
Atlanta, Georgia 30334

Hon. David Ralston
Speaker of the House
House of Representatives of Georgia
Atlanta, Georgia 30334

Hon. David Shafer
President Pro Tempore
Georgia State Senate
321 State Capitol
Atlanta, GA 30334

Dear Senator McKoon, Speaker Ralston, and President Pro Tempore Shafer:

Public.Resource.Org is in receipt of the communication of July 25, 2013 from Senator McKoon concerning your notice of purported copyright infringement. Your notice claims copyright infringement for the publication of the Official Code of Georgia Annotated. Your letter claims "all copyrightable aspects of the Official Code of Georgia Annotated are copyrighted under United States copyright law" and disclaims any copyright "in the statutory text itself or in the number of the Code sections."

We respectfully decline to remove the Official Code of Georgia Annotated and respectfully reject the distinction between "the statutory text itself" and additional materials, as both are integral part and parcel of the only Official Code of Georgia Annotated, such material constituting the official law as published by the State.

It is a long–held tenet of American law that there is no copyright in the law. This is because the law belongs to the people and in our system of democracy we have the right to read, know, and speak the laws by which we choose to govern ourselves. Requiring a license before allowing citizens to read or speak the law would be a violation of deeply–held principles in our system that the laws apply equally to all.

This principle was strongly set out by the U.S. Supreme Court under Chief Justice John Marshall when they stated "the Court is unanimously of opinion that no reporter has or can have any copyright in the written opinions delivered by this Court, and that the judges thereof cannot confer on any reporter any such right." Wheaton v. Peters, 33 U.S. (8 Pet.) 591 (1834). The Supreme Court specifically extended that principle to state law, such as the Official Code of Georgia Annotated, in Banks v. Manchester (128 U.S. 244, 1888) , where it stated that "the authentic exposition and interpretation of

the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute."

This principle has become embedded clearly throughout our country. The Court of Appeals for the Sixth Circuit has stated that "any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book, whether such book be the property of the state or the property of an individual." Howell v. Miller, 91 F. 129, 137 (6th Cir. 1898) (Harlan, J.).

These strong precedents are reflected in the official policy statement of the U.S. Copyright Office:

> "Edicts of government, such as judicial opinions, administrative rulings, legislative enactments, public ordinances, and similar official legal documents are not copyrightable for reasons of public policy. This applies to such works whether they are Federal, State, or local as well as to those of foreign governments."  Compendium II: Copyright Office Practices § 206.01 (1984)

The principle that there is no copyright in the law, and that no license is therefore needed, has been fundamental to the evolution of our legal system. West Law could never have built that magnificent edifice of American jurisprudence, the Federal Reporter, if each court had imposed restrictions on promulgation. If citizens are required to obtain a permission before repeating the law, does that not strike at the very heart of our rights of free speech under the First Amendment? If ignorance of the law is no excuse, how can we restrict dissemination of those laws?

The distinction between "the statutory text itself" and additional materials perhaps would have some bearing if the publication in question were the independent commercial endeavor of a publication firm. If such a firm were to copy the state statutes and compile that information with additional analyses and summaries and were to do so as a strictly commercial endeavor, we understand and respect that this material would be their private property.

However, the publication in question is not by some independent endeavor, it is by the Official Georgia Code Revision Commission and the document is clearly labeled as the official Official Code of Georgia Annotated. Your hired sub–contractor states this clearly in their marketing materials:

> "The **Official Code of Georgia Annotated (OCGA)** provides users with the <u>official</u> Georgia statutes, fully annotated and including guidance from the Georgia Code Commission. If you live or work in Georgia, the OCGA is the essential reference you need to guide you quickly and efficiently in understanding the Georgia statutory scheme." [Emphasis in the Original]

The Official Code of Georgia Annotated is a publication of the State and it is the definitive statement by the State of the law. Any lawyer would ignore this publication and any of its components at his or her peril. Any citizen wishing to read the Official Official Code of Georgia Annotated would have trouble distinguishing between the "statutory text itself" and those materials outside the box. No matter how you slice that cheese, it all looks the same. The Official Code of Georgia Annotated, every component of it, is the official law.

Your letter also notes that "the unannotated Georgia Code…is available to the public at no charge at www.legis.ga.gov." In addition to numerous technical and usability deficiencies, this site is subject to two different terms of use. The first, which must be accepted before entering the site, stresses that only "the latest print version" of the Code is official and authoritative. The second set of terms has 8 parts and 35 subparts and permits only "insubstantial" uses and even prohibits use of the Code in "newsletters" and "articles." As you can see, when copyright prohibits citizens from speaking the law of the land, substantial concerns are raised under the U.S. and Georgia Constitutions.

A similar situation occurred in the great state of Oregon when we received a Cease and Desist notice on April 7, 2008 for publishing online the Oregon Revised Statutes. As with the present situation, lawyers for that state demanded licenses as a condition to publication and attempted to make a distinction between the law and the additional organization of that material by the Legislative Counsel of Oregon.

I am pleased to tell you that the State of Oregon decided that this was an issue that should be decided by the people of Oregon and their elected officials. The Speaker of the House and the Senate President called a hearing of the Legislative Counsel Committee, listened to citizens and to their own legislative counsel, kindly invited us to speak, and at the end of the day unanimously waived any assertion of copyright in the Oregon Revised Statutes.

Not only was copyright waived, something very special happened. With the restrictions on use of the Oregon Revised Statutes lifted, a law student at the Lewis & Clark Law School was able to take this material and develop a vastly better version of the Oregon Revised Statutes for the people of his state to use. Restricting use of the codes restricts innovation, making it harder for citizens and lawyers to know and understand the law. Restrictions on the Official Code of Georgia Annotated hurts democracy and the citizens of Georgia by making their laws less accessible.

In Oregon, the assertion of copyright dated back to the 1940s and the state had carried that policy forward. When the people of Oregon looked at the issue in the light of our modern era, the decision was very clear. Is it not time, in light of developments such as the Internet, to revisit those restrictions?

Our publication of the Official Code of Georgia Annotated should be encouraged, not threatened. Our publication of the Official Code of Georgia Annotated is unimpeachable act, not one that should be prosecuted. I would be more than happy to come to Georgia to discuss the matter with you, and would strongly encourage you to discuss the issue with the people of Georgia.

Sincerely yours,

Digitally signed by Carl Malamud
DN: cn=Carl Malamud, o=Public.Resource.Org, ou, email=carl@media.org, c=US
Date: 2013.07.30 10:50:23 -07'00'

Carl Malamud
Public.Resource.Org

