# Exhibit 20



**PUBLIC.RESOURCE.ORG** ~ *A Nonprofit Corporation*

**Public Works for a Better Government**

July 15, 2013

Hon. Ben Ysura
Secretary of State
State of Idaho
PO Box 83720
Boise ID 83720–0080

Hon. Brent Hill
President Pro Tempore of the Senate
Idaho State Legislature
1010 South 2nd East
Rexburg, Idaho 83440

Hon. Scott Bedke
Speaker of the House
Idaho State Legislature
P.O. Box 89
Oakley, ID 83346

Idaho Code Commission
P.O. Box 388
Boise, ID 83701

Dear Secretary Ysura, President Pro Tempore Hill, Speaker Bedke, and Members of the Idaho Code Commission:

Public.Resource.Org is in receipt of the communication of July 12, 2013 from Mr. Bradlee R. Frazer of Hawley Troxell Ennis & Hawley LLP concerning your notice under 17 U.S.C. § 512(c)(3), the Digital Millennium Copyright Act. Your notice claims copyright infringement for the publication of the Idaho Code without having secured from you first a "royalty–free copyright license ... to reproduce and display the native, underlying statutory code content." In addition, your letter claims additional rights, for which you apparently will not grant any license, for all text which falls outside of the red boxes you drew on the Idaho Code, constituting what you describe as "analyses, summaries and reference materials."

We respectfully decline to remove the Idaho Code and respectfully reject the distinction between "native" code and additional materials, as both are integral part and parcel of the only official Idaho Code, such material constituting the official laws of Idaho as published by the state.

It is a long-held tenet of American law that there is no copyright in the law. This is because the law belongs to the people and in our system of democracy we have the right to read, know, and speak the laws by which we choose to govern ourselves. Requiring a license before allowing citizens to speak the law would be a violation of deeply-held principles in our system that the laws apply equally to all.

This principle was strongly set out by the U.S. Supreme Court under Chief Justice John Marshall when they stated "the Court is unanimously of opinion that no reporter has or can have any copyright in the written opinions delivered by this Court, and that the judges thereof cannot confer on any reporter any such right." Wheaton v. Peters, 33 U.S. (8 Pet.) 591 (1834). The Supreme Court specifically extended that principle to state law, such as the Idaho Code, in Banks v. Manchester (128 U.S. 244, 1888) , where it stated that "the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute."

This principle has become embedded clearly throughout our country. The Court of Appeals for the Sixth Circuit has stated that "any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book, whether such book be the property of the state or the property of an individual." Howell v. Miller, 91 F. 129, 137 (6th Cir. 1898) (Harlan, J.).

These strong precedents are reflected in the official policy statement of the U.S. Copyright Office:

> "Edicts of government, such as judicial opinions, administrative rulings, legislative enactments, public ordinances, and similar official legal documents are not copyrightable for reasons of public policy. This applies to such works whether they are Federal, State, or local as well as to those of foreign governments."

U.S. Copyright Office, Compendium II: Copyright Office Practices § 206.01 (1984)

The principle that there is no copyright in the law, and that no license is therefore needed, has been fundamental to the evolution of our legal system. West Law could never have built that magnificent edifice of American jurisprudence, the Federal Reporter, if each court had required a license to publish. If citizens are required to obtain a license before repeating the law, does that not strike at the very heart of our rights of free speech under the First Amendment? If ignorance of the law is no excuse, how can we restrict promulgation of those laws?

The distinction between "native" content ("the law") and additional materials perhaps would have some bearing if the publication in question were the independent commercial endeavor of a publication firm. If such a firm were to copy the state statutes and compile that information with additional analyses and summaries and were to do so as a strictly commercial endeavor, we understand and respect that this material would be their private property.

However, the publication in question is not by some independent endeavor, it is by the Idaho Code Commission and the document is clearly labeled as the official Idaho Code. Your vendor states in its marketing materials that this document is "the only official

source" for Idaho law. The Idaho Code is a publication of the State and it is the definitive statement by the State of the law. Any lawyer would ignore this publication any of its components at his or her peril. Any citizen wishing to read the Official Idaho Code would have trouble distinguishing between the material you outlined in red and those materials outside the box. No matter how you slice that cheese, it all looks the same. The Official Idaho Code, every component of it, is the law.

A similar situation occurred in the great state of Oregon when we received a Cease and Desist notice on April 7, 2008 for publishing online the Oregon Revised Statutes. As with the present situation, lawyers for that state demanded licenses as a condition to publication and attempted to make a distinction between the law and the additional organization of that material by the Legislative Counsel of Oregon.

I am pleased to tell you that the State of Oregon decided that this was an issue that should be decided by the people of Oregon and their elected officials. The Speaker of the House and the Senate President called a hearing of the Legislative Counsel Committee, listened to citizens and to their own legislative counsel, kindly invited us to speak, and at the end of the day unanimously waived any assertion of copyright in the Oregon Revised Statutes.

Not only was copyright waived, something very special happened. With the restrictions on use of the Oregon Revised Statutes lifted, a law student at the Lewis & Clark Law School was able to take this material and develop a vastly better version of the Oregon Revised Statutes for the people of his state to use. Restricting use of the codes restricts innovation, making it harder to use the materials. Restrictions on the Idaho Code hurts democracy and the citizens of Idaho by making their laws less accessible.

In Oregon, the assertion of copyright dated back to the 1940s and the state had carried that policy forward. When the people of Oregon looked at the issue in the light of our modern era, the decision was very clear. Let us not forget that Section 73–210 of the Idaho Code, asserting copyright in the Idaho Code, was added in 1949 and this right was authorized and empowered in the Session Laws of 1947. Is it not time, in light of developments such as the Internet, to revisit those restrictions?

Our publication of the Idaho Code should be encouraged, not threatened. Our publication of the Idaho Code is the clean potato, not one that should be prosecuted by expensive law firms in federal courts. I would be more than happy to come to Idaho to discuss the matter with you, and would strongly encourage you to discuss the issue with the people of Idaho.

Sincerely yours,

Digitally signed by Carl Malamud
DN: cn=Carl Malamud, o=Public.Resource.Org, ou, email=carl@media.org, c=US
Date: 2013.07.15 10:24:46 -07'00'

Carl Malamud
Public.Resource.Org