**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL; | Case No. 1:13-cv-01215-TSC |
| NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and | **DEFENDANT-COUNTERCLAIMANT PUBLIC.RESOURCE.ORG, INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER** |
| AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS, | Action Filed:   May 23, 2014 |
| Plaintiffs-Counterdefendants, | |
| v. | |
| PUBLIC.RESOURCE.ORG, INC., | |
| Defendant-Counterclaimant. | |

This is a dispute between several national standards organizations, on the one hand, and a one-person nonprofit entity, on the other, over a specific legal question:  whether it violates copyright law to post national codes that federal and state governments have incorporated into their laws.

The parties are not commercial competitors.  Except in this case they are not antagonists.  They both seek to promote the public interest:  one by creating codes and securing their adoption into law, and the other by publicizing those legally-incorporated codes and empowering the public to understand, interpret, and comment on them.

Unfortunately, while the parties have long since agreed on the overall form of a protective order to govern discovery materials in this case, Plaintiffs-Counterdefendants ("Plaintiffs") insist on restrictions that, while typical of commercial disputes between potential competitors and large organizations, are simply not necessary here.  Plaintiffs cannot justify their proposal, particularly given that it would unfairly prejudice Defendant-Counterclaimant Public

1

Resource.Org ("Public Resource") by preventing its President, Carl Malamud, from viewing many documents and lending his expertise to support the defense and counterclaim.  By contrast, Public Resource's proposed protective order (attached as Exhibit A) is more narrowly-tailored to the circumstances of this case, provides Plaintiffs with ample protection, and contains appropriate safeguards against over-designation.  Accordingly, Public Resource opposes Plaintiffs' motion for protective order and asks the Court to enter instead Exhibit A.

## INTRODUCTION

Public Resource is a nonprofit entity committed to promoting the public's right to know and speak about the laws that govern us.  Public Resource increases public access to the law by acquiring primary legal materials—including court decisions, statutes and regulations—and posting them on the Internet so that the public may more easily access, use, understand, and engage with the law.[1]  By lowering barriers to access to and engagement with the law, Public Resource helps students, educators, government employees, public interest organizations, journalists, and concerned citizens read, understand, apply and improve the law and to participate in government.

Plaintiffs are not-for-profit corporations that, among other things, develop and publish standards.  Plaintiffs represent their work as a mission to improve public welfare by providing engineers, tradespeople, and governments with standards that promote safety.  Plaintiffs work hand-in-glove with governmental employees in developing standards, and national, federal, state, and local governments have incorporated by reference into law the standards that are at issue in

---

[1] Public Resource operates the websites https://public.resource.org, https://law.resource.org, https://house.resource.org, and https://bulk.resource.org.

this case.[2]

The parties have met and conferred but are unable to resolve three issues regarding the appropriate scope of the protective order in this action.[3]

**First,** the parties dispute whether this case requires a two-tiered protective order, which would allow a party to declare that some discovery materials are so confidential and sensitive that they cannot be shared with non-legal officers or employees of a party. Such an order would result in concrete prejudice to Public Resource because it could be used to prevent Public Resource's founder and sole employee, Carl Malamud, from viewing documents crucial to Public Resource's defense and counterclaim. Mr. Malamud is an expert in the processes of standards development and the operations of standards organizations, including Plaintiffs. Indeed, he is likely to serve as an expert witness in the case. Public Resource's counsel will necessarily rely on Mr. Malamud's expertise to understand fully Plaintiffs' claims and discovery materials. Denying Mr. Malamud access to discovery materials will severely prejudice Public Resource's ability to defend itself in this lawsuit. Plaintiffs' offer to consider isolated exceptions to the confidentiality provisions upon request—introducing a game of "Mother May I?" into the litigation—is woefully inadequate.

Plaintiffs offer little of substance to justify their demand, relying instead on unwarranted speculation that because Mr. Malamud believes he has a right to post the standards at issue here—a right supported by prevailing case law—he will necessarily "disregard" a protective order issued by this Court. *See* Mot. at 7-8. But the fact that Public Resource posts *public* standards that the law has expressly incorporated—the legality of which is the central issue in

---

[2] *See*, *e.g.*, The National Archives and Records Administration, *Incorporation by Reference*, http://www.archives.gov/federal-register/cfr/ibr-locations.html (last visited July 23, 2014).

[3] *See* Declaration of Jordana S. Rubel (Dkt. No. 31-2) ("Rubel Decl."), Exs. 3-12.

this case—does not suggest that Mr. Malamud will disclose *private* and *confidential* discovery materials that a court order protects.  Moreover, even if he were some sort of scofflaw, Mr. Malamud could not possibly gain any advantage from such a disclosure.  Again, Public Resource is not in competition with Plaintiffs, and the ordinary concerns that might justify a two-tiered protective order simply do not apply here.

**Second**, the parties dispute whether the protective order should restrict the parties from using *public and non-confidential* materials that they produce for purposes other than this litigation.  Plaintiffs want to regulate the use of any material—not just confidential material—in their protective order.  *See* Mot., Ex. A (Dkt. No. 31-1) ("Plaintiffs' PO") ¶ 7 (proposing to restrict the parties from using "any information or documents obtained during discovery in this matter, regardless of whether the information and/or documents … are not assigned any confidentiality designation, for any purpose other than preparing for and conducting this litigation").  This proposed restriction would, in effect, designate *all* discovery materials as confidential, without any justification.  While Public Resource agrees on the need to restrict the parties' use of *confidential* information, that restriction should not automatically extend to use of *public* information, whether or not the parties produced it in discovery.  Therefore, the Court should enter a protective order that restricts only the parties' use of properly designated *confidential* materials produced in discovery.  *See* Ex. A ¶ 7.

**Third**, the parties dispute whether, and to what extent, the protective order should include safeguards against misuse of the confidential designation.  Given Plaintiffs' aggressive positions on access to confidential (and public) information, Public Resource has proposed two provisions designed to discourage over-designation.  The first provision would require the designating party to provide a brief statement indicating what information is confidential and why—particularly

4

where materials may include both public and nonpublic information.  *See id.* ¶ 1(h).  The second

provision would require the designating party—and not the challenging party—to seek court

protection in the event the parties are unable to resolve a dispute over confidentiality.  *See id.* ¶ 3.

This procedure is consistent with the burden of proof for seeking a protective order under Rule

26(c), *see HSqd v. Morinville*, 2013 WL 1149944, at *3 (D. Conn. Mar. 19, 2013), and is similar

to provisions contained in model protective orders other district courts have adopted.  *See*, *e.g.*,

Ex. B (Declaration of Andrew P. Bridges) ("Bridges Decl."), Ex. 1 ¶¶ 5.2, 6.3; *id.*, Ex. 2 ¶¶ 5.2,

6.3.

## **ARGUMENT**

A protective order is appropriate only "when essential to shield a party from significant

harm or to protect an important public interest" and must be tailored "so that it restricts access no

more than necessary."  *U.S. ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 118 (D.D.C.

2013) (citing *Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983)).  The

proponent bears the burden of demonstrating good cause for protection under Rule 26(c).

*Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998) ("The party requesting a protective order

must make a specific demonstration of facts in support of the request as opposed to conclusory or

speculative statements about the need for a protective order and the harm which will be suffered

without one."); *see also PHE, Inc. v. Dep't of Justice*, 139 F.R.D. 249, 252 (D.D.C. 1991)

(quoting *Avirgan v. Hull*, 118 F.R.D. 257, 261-62 (D.C. Cir. 1987)); *HSqd*, 2013 WL 1149944,

at *3; *Velocity Press, Inc. v. Key Bank, N.A.*, 2011 WL 5322415, at *1 (D. Utah Nov. 3, 2011);

*Design Basics, L.L.C. v. Strawn*, 2010 WL 4667240, at *1 (D. Kan. Nov. 9, 2010).  Plaintiffs

have failed to demonstrate good cause for a protective order that would restrict Public

Resource's access to discoverable information and prohibit Public Resource from using *public*

information produced in discovery.  As a result, the Court should deny Plaintiffs' motion and

enter the less restrictive protective order that Public Resource submits as Exhibit A to this

Opposition.

I.      **PLAINTIFFS HAVE FAILED TO DEMONSTRATE GOOD CAUSE FOR RESTRICTING CARL MALAMUD'S ACCESS TO DISCOVERY MATERIALS.**

      A.     **Plaintiffs Cannot Meet Their Burden of Showing That Restricting Mr. Malamud's Access Is Necessary to Avoid Any Specific or Likely Harm.**

By default, materials produced in discovery—*i.e.*, information that is concededly relevant

and not privileged—should be freely accessible to all parties to the litigation.  *See D'Onofrio v.

SFX Sports Grp., Inc.*, 2009 U.S. Dist. LEXIS 44539, at *7 (D.D.C. Apr. 1, 2009).  "It is only

when the proponent of the protective order can show good cause, usually by demonstrating that

disclosure would be harmful, that the court will interfere and dictate what information can or

cannot be shared with which people and organizations, even if relevant and discoverable."  *Id.*

(citations omitted).

Plaintiffs have not met that standard with respect to their demand for an Attorneys' Eyes

Only designation.  Good cause for a two-tiered protective order may exist where confidential

information may be misused "to gain a competitive advantage over the producing party."  Mot.

at 6 (quoting *Alexander v. F.B.I.*, 1998 U.S. Dist. LEXIS 11489, at *11 (D.D.C. June 15, 1998)).

But there is no possibility of that here.  Plaintiffs devote much ink to discussing Public

Resource's use of *published* standards, but they have failed to identify any way in which Public

Resource is likely to misuse their proposed "Highly Confidential" materials—*i.e.*, their finances,

strategic plans and other sensitive information.  Courts have consistently denied two-tiered

orders in the absence of competitive or other harm.  *See, e.g.*, *Velocity Press*, 2011 WL 5322415,

at *1-2 (denying two-tiered protective order where defendant failed to allege competitive harm);

*Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, 2008 WL 839745, at *4 (D. Tenn. Mar.

27, 2008) (same).

Plaintiffs sidestep their inadequate showing of harm by insisting that a two-tiered protective order is "standard" in "commercial litigation."  Mot. at 6.  But this is not commercial litigation.  Nor is it between commercial competitors.  While Plaintiffs develop and sell standards, lobby governments to adopt those standards, conduct professional education, and hold conferences, Public Resource does none of these things.  Public Resource's mission is to promote access to and engagement with the law, and it has no interest in Plaintiffs' businesses except to the extent the law has expressly incorporated their standards.

Plaintiffs also resort to speculative attacks based on Mr. Malamud's well-documented public speaking and writing on the subject of public access to legal materials.  Mot. at 7.  Of course, Mr. Malamud's commitment to making the law accessible does not indicate that he is incapable of respecting a protective order issued by the Court.  Indeed, every single one of Plaintiffs' examples illustrates Mr. Malamud's respect for the law.  Mr. Malamud posts *only* those materials that have been incorporated into law.  Mot. at 7-8; Rubel Decl., Exs. 19-24.  "[T]ake-down notices from senior government officials in Georgia, Idaho, and Mississippi," Mot. at 7, are assertions that copyright can restrict publication of the law.  The validity of assertions like those is the ultimate issue in this case.  The parties' disagreement on this singular legal question is hardly ground to speculate that Public Resource or Mr. Malamud will "disregard" a protective order issued by this Court.[4]  *See* Mot. at 7-8.

---

[4] The cases Plaintiffs cite are inapposite.  *See FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980); *D'Onofrio*, 2009 U.S. Dist. LEXIS 44539, at *9.  Again, Plaintiffs have not explained how Public Resource is likely to misuse Plaintiffs' confidential information for competitive purposes.  To the extent Plaintiffs speculate that Mr. Malamud may inadvertently disclose their confidential information, *see* Mot. at 7, they have failed to articulate how this case differs from other cases with one-tier protective orders, let alone implicates heightened confidentiality concerns.

Plaintiffs have failed to demonstrate any specific harm from entering a standard protective order in this action. Without "pro[of] that the disclosure will result in a clearly defined and very serious injury to [their] business," Plaintiffs are not entitled to a two-tiered protective order. *PHE, Inc.*, 139 F.R.D. at 252 (quoting *John Does I–VI v. Yogi*, 110 F.R.D. 629, 632 (D.C. Cir. 1986)); *see also HSqd*, 2013 WL 1149944, at *3 (ordinary protective order sufficient where there was no evidence that the parties would fail to abide by the protective order); *Martinez v. City of Ogden*, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009) (same).

**B.    Plaintiffs' Proposal Will Unfairly Prejudice Public Resource's Defense.**

In addition, Plaintiff's proposed restrictions will result in very concrete prejudice to Public Resource. Restricting Mr. Malamud's access to discovery materials "implicates [Public Resource's] due process rights to have a full and fair opportunity to litigate." *Martinez*, 2009 WL 424785, at *3; *see also Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 19, 24 (D.D.C. 2007) ("District courts must be [ ] chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor.") (quoting *Doe*, 697 F.2d at 1119). These concerns are particularly warranted here because, unlike Plaintiffs, Public Resource is a one-person not-for-profit organization with no in-house legal staff.

Plaintiffs' argument that Mr. Malamud lacks sufficient training or experience to be a testifying expert, *see* Mot. at 8, is premature and misses the mark. This case concerns the standards development process and the process of incorporation by reference. Mr. Malamud has a long record of work in standards development, including authoring six RFCs (Internet architecture standards adopted by the Internet Engineering Task Force (IETF)) and serving as the first ever paid consultant to the IETF and the Internet Architecture Board on questions of strategic direction and governance. Ex. C (Declaration of Carl Malamud) ("Malamud Decl.")

¶¶ 2-3.  Mr. Malamud has also served as Chairman and Executive Director of three well-regarded not-for-profit organizations active in the fields of Internet infrastructure standards: the Internet Systems Consortium, the Internet Multicasting Service, and the Jabber Software Foundation.  *Id.* ¶ 4.  He has advised the Judicial Conference of the United States, the Federal Trade Commission, and U.S. House and Senate committees on issues of standardization, technology, and promulgation of the law.  *Id.* ¶¶ 5-7.  And Mr. Malamud has gained knowledge of Plaintiffs' operations and personnel in the course of his work at Public Resource.

Through his seven years of work at Public Resource collecting and posting legal materials incorporated by reference, he is an expert in the incorporation process as well.  *Id.* ¶¶ 9-13.  Plaintiffs have indicated their intention to deny Mr. Malamud access to documents concerning the "finances and strategic planning" of standards development organizations.  Mot. at 8.  But it is on these subjects that Mr. Malamud's particular expertise is most necessary.  Under the circumstances, "[t]o deny [a party] the right to … assist in its [own] litigation … could well border on a denial of due process."  *Martinez*, 2009 WL 424785, at *3 (denying motion for two-tiered protective order) (citation and quotation omitted); *see also United States v. Kellogg Brown & Root Servs., Inc.,* 285 F.R.D. 133, 135 (D.D.C. 2012) ("The showing required under Rule 26(c) must be sufficient to overcome the other party's legitimate and important interests in trial preparation … '[T]rial preparation and defense are important interests, and great care must be taken to avoid their unnecessary infringement.'") (quoting *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985).

Plaintiffs' suggestion that they consider allowing Mr. Malamud access to documents "on an ad hoc basis," Mot. at 8, is no solution, as it would give Plaintiffs an effective veto over Mr. Malamud's ability to assist in the litigation.  Moreover, the proposed requirement that Public

Resource articulate a specific reason why Mr. Malamud must review particular materials would provide Plaintiffs with unprecedented and unwarranted insight into counsel's work product and litigation strategy. Indeed, this turns the standard for protective order on its head: Plaintiffs should consistently bear the burden of seeking extraordinary protection and not shift that burden to Public Resource to justify access to information necessary for the lawsuit.

Because Plaintiffs have failed to demonstrate good cause for a two-tiered protective order, and because such an order would prejudice Public Resource's ability to litigate this case, Public Resource respectfully requests that the Court deny Plaintiffs' motion and enter a less restrictive protective order in the form Public Resource submits as Exhibit A.[5]

## II. PLAINTIFFS' PROPOSED RESTRICTION ON THE USE OF DISCOVERABLE INFORMATION IS OVERBROAD AND UNDULY BURDENSOME.

Public Resource does not oppose restrictions on the use of properly designated confidential material produced in discovery. But Plaintiffs want to protect much more: they seek to restrict the use of "*any* information or documents obtained during discovery … *regardless* of whether the information and/or documents … are *not assigned any confidentiality designation*." Plaintiffs' PO ¶ 7 (emphasis added). This blanket restriction would apply to materials not designated as confidential, including materials that are already public, thereby chilling the parties' ability to participate in public discourse regarding this litigation,

---

[5] Plaintiffs' motion is silent on whether a two-tiered protective order is necessary to protect Plaintiffs from misuse of confidential information *by other Plaintiffs*. To the extent that a two-tiered protective order is necessary to address such concerns—and Public Resource does not take a position on the issue—Public Resource respectfully requests that the Court modify Plaintiffs' proposed order to grant Mr. Malamud access to material designated as "Highly Confidential." *See, e.g.*, *FTC v. Whole Foods*, 2007 WL 2059741, at *2-3 (D.D.C. July 6, 2007) (permitting employee access to highly confidential information where she had no role in competitive decision-making, and where disclosure of highly confidential information would not result in specific harm to the disclosing party); *see also Intervet v. Merial Ltd.*, 241 F.R.D. 55, 57-58 (D.D.C. 2007) (same).

which is already the subject of intense public interest.[6]   That is a gag order on all discovery, even non-confidential discovery, in the case.   Plaintiffs have not justified, and cannot justify, such an order.[7]

Plaintiffs' proposed language could also subject Public Resource to open-ended liability for using confidential materials even if Plaintiffs have not designated them as such.   To repeat: paragraph 7 of Plaintiffs' proposed order applies even to materials that "are ***not assigned*** any confidentiality designation."   Plaintiffs' PO ¶ 7 (emphasis added).   This improperly jeopardizes Public Resource in case of Plaintiffs' failure to identify information as confidential.   The Court should reject Plaintiffs' proposal.[8]

## III.   THE PROPOSED ORDER SHOULD CONTAIN SPECIFIC SAFEGUARDS AGAINST OVER-DESIGNATING DOCUMENTS AS CONFIDENTIAL

As discussed above, Plaintiffs' motion and proposed protective order take aggressive positions on protecting Plaintiffs' information, even if the information is already public.   Public Resource therefore justifiably fears that Plaintiffs may take similarly aggressive positions in their confidentiality designations.   *See In re ULLICO Inc. Litig.,* 237 F.R.D. 314, 317-18 (D.D.C.

---

[6] *See*, *e.g.*, Victor Li, "Who owns the law?  Technology reignites the war over just how public documents should be," ABA Journal (June 1, 2014), http://www.abajournal.com/magazine/article/who_owns_the_law_technology_reignites_the_war_over_just_how_public_document.

[7] Plaintiffs' cases do not support a broad provision restricting use of public information.  The restriction in *Seattle Times Co. v. Rhinehart* applied narrowly to categories of information likely to implicate confidentiality concerns, including "the financial affairs of the various plaintiffs, the names and addresses of Aquarian Foundation members, contributors, or clients, and the names and addresses of those who have been contributors, clients, or donors to any of the various plaintiffs."  467 U.S. 20, 27 & n.8 (1984).  The court in *Klayman v. Judicial Watch, Inc.* did not even discuss whether the restriction should apply to both public and nonpublic information.  247 F.R.D. 19 (D.D.C. 2007).

[8] Public Resource offered, in the spirit of compromise, to refrain from using Bates-stamped versions of documents produced in this action for any purpose other than this litigation, even if such documents are not expressly labeled Confidential or Highly Confidential.  Rubel Decl., Ex. 12.  Plaintiffs did not accept that offer.

2006) ("[O]verus[ing] the 'confidential' label … [would] provide a strategic advantage in the form of an unwarranted and unfair designation of 'confidential' for months."). To help ensure appropriate designations, Public Resource suggested two specific provisions that are consistent with the designating party's burden to demonstrate good cause for protection under Rule 26(c). *HSqd*, 2013 WL 1149944, at *3; *cf.* Mot. at 10.

First, the parties should produce a brief statement indicating which specific facts or elements within the designated material are confidential, along with a brief explanation why the designation is necessary.[9]  This procedure would establish the "specific facts" that must justify protection. *Univ. of Mass. v. Roslin Inst.*, 437 F. Supp. 2d 57, 60 (D.D.C. 2006).  This procedure is also necessary to determine which portion(s) of a document or transcript are confidential and which portion(s) are public and will prevent the parties from designating an entire document or transcript as confidential based on a single reference to confidential information.  For example, several district courts have adopted model stipulated protective orders providing that "[i]f only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s)." *E.g.*, Bridges Decl., Ex. 1 ¶ 5.2; *id.*, Ex. 2 ¶ 5.2. Moreover, the additional burden of providing a brief confidentiality statement is likely to be minimal.  The parties must already determine and code confidentiality designations on a document-by-document basis, and it is neither unreasonable nor unduly burdensome to require the parties to code one or two additional fields that can be exported from the document review database to create an automatic confidentiality log.

---

[9] Public Resource's proposed provision reads:  "All materials designated as "CONFIDENTIAL" under this Order must be accompanied by a statement explaining which specific facts or elements within the designated material are confidential, and explaining why such designation is warranted.  Where possible, confidential information must be separated from non-confidential material to limit over-designation."  Ex. A ¶ 1(h).

Public Resource's second proposal is to require the designating party to file a motion to retain confidential treatment in the event the parties are unable to resolve a challenge through the meet and confer process.  Again, this procedure is consistent with the principle that the party seeking protection under Rule 26(c) bears the burden of demonstrating good cause.  *HSqd*, 2013 WL 1149944, at *3.  It is also consistent with several model protective orders, which require the designating party to seek judicial confirmation of confidentiality designations.  *See*, *e.g.*, Bridges Decl., Ex. 1 ¶ 6.3 ("If the Parties cannot resolve a challenge without court intervention, the *Designating Party* shall file and serve a motion to retain confidentiality.") (emphasis added); *id.*, Ex. 2 ¶ 6.3. Plaintiffs argue that this procedure will result in frivolous litigation, Mot. at 11-12, but they ignore several safeguards built into the discovery process, including the requirement to meet and confer in good faith and potential sanctions (including possible fee-shifting) for confidentiality challenges made in bad faith or for some other improper motive.[10]

## CONCLUSION

Because a two-tiered protective order will prejudice Public Resource's ability to litigate its case but is not necessary to prevent any specific misuse of Plaintiffs' confidential information; because Plaintiffs' proposed order wrongly restricts the parties' use of non-confidential information; and because the protective order should contain safeguards against over-designation

---

[10] As an alternative to the above two provisions, Public Resource respectfully requests that the protective order include an express remedy in the event a party abuses the "Confidential" designation.  For example, the Hon. William Alsup of the Northern District of California routinely adds the following provision to stipulated protective orders in his cases:  "The parties must make a good-faith determination that any information designated "confidential" truly warrants protection under Rule 26(c) of the Federal Rules of Civil Procedure.  Designations of material as 'confidential' must be narrowly tailored to include only material for which there is good cause.  ***A pattern of over-designation may lead to an order de-designating all or most materials on a wholesale basis***."  *See*, *e.g.*, Bridges Decl., Ex. 3 ¶ 1 (emphasis added).  Not only would this deter a pattern of over-designation, but it would also provide a way to address gross abuse of the protective order without requiring any party to file a motion with respect to ***each*** improperly-designated document.

of confidential materials, Public Resource respectfully requests that the Court deny Plaintiffs'

motion and enter the more appropriate and narrowly-tailored protective order in the form Public

Resource submits as Exhibit A.

Dated:  July 24, 2014                               Respectfully submitted,


                                                   /s/ Andrew P. Bridges
                                                   Andrew P. Bridges (admitted)
                                                   abridges@fenwick.com
                                                   FENWICK & WEST LLP
                                                   555 California Street, 12th Floor
                                                   San Francisco, CA 94104
                                                   Telephone:   (415) 875-2300
                                                   Facsimile:    (415) 281-1350

                                                   David Halperin (D.C. Bar No. 426078)
                                                   davidhalperindc@gmail.com
                                                   1530 P Street NW
                                                   Washington, DC 20005
                                                   Telephone: (202) 905-3434

                                                   Mitchell L. Stoltz (D.C. Bar No. 978149)
                                                   mitch@eff.org
                                                   ELECTRONIC FRONTIER FOUNDATION
                                                   815 Eddy Street
                                                   San Francisco, CA 94109
                                                   Telephone: (415) 436-9333
                                                   Facsimile:  (415) 436-9993

                                                   *Attorneys for Defendant-Counterclaimant*
                                                   *Public.Resource.Org, Inc.*