## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>       Plaintiffs/<br>       Counter-Defendants,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>       Defendant/<br>       Counter-Plaintiff. | Case No. 1:13-cv-01215-TSC |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Plaintiffs are the developers of original, technical standards whose purpose is to advance public safety, ensure compatibility across products and services, facilitate training, and spur innovation.  In flagrant violation of copyright laws and Plaintiffs' rights, Defendant Public Resource engaged in wholesale copying of Plaintiffs' copyrighted standards, posted them in downloadable format on its website, and encouraged the public to make further copies and create derivative works based on the standards.

Notwithstanding Public Resource's justifications for its conduct, this case is not about providing the public with access to the law or enabling the public to engage with the law. Plaintiffs make all of their standards that have been incorporated by reference in federal regulations available to the public at no cost on a read-only basis.  In addition, Plaintiffs sell paper and electronic copies of their standards to the general public at reasonable prices.  Thus,

contrary to Defendant's claims, Plaintiffs' standards already are available to members of the public who are interested in understanding, interpreting, and commenting on them.

Instead, this case is about a one-man organization which seeks to invalidate the copyrights in Plaintiffs' standards and disrupt an established private standards development system that provides substantial public benefits, including safety, efficiency, and costs savings, to government entities and to the public in general.

Having forced Plaintiffs to bring this lawsuit to protect their intellectual property rights by engaging in widespread copying of their standards, Public Resource now objects to certain provisions in Plaintiffs' reasonable and balanced proposed protective order.  Meanwhile, the provisions that Public Resource insists upon would provide its sole employee with access to Plaintiffs' highly confidential financial and strategic documents, which he has no need to see and which would expose Plaintiffs to significant harm, would place overly burdensome requirements on Plaintiffs when they seek to protect their confidential information, and would put Public Resource in a position to be able to broadcast to the general public all manner of information it obtains from Plaintiffs in discovery.  As a result, the Court should reject Defendant's proposed terms and enter Plaintiffs' proposed protective order.

I.   **Good Cause Exists for Restricting Mr. Malamud's Access to Plaintiffs' Highly Confidential Documents.**

   A.   **Allowing Mr. Malamud to Access Plaintiffs' Highly Confidential Documents Will Cause Harm to Plaintiffs.**

Public Resource does not dispute that a two-tiered protective order is appropriate where the parties are competitors.  Yet Public Resource is competing with Plaintiffs by offering itself up as a source through which members of the public can download copies of hundreds of Plaintiffs' standards that they would otherwise obtain directly from Plaintiffs or their authorized

resellers.  The standards Plaintiffs create and sell are the source of the vast majority of their revenue.  Public Resource is not only competing with Plaintiffs, but competing with them by making unauthorized copies of Plaintiffs' most important products.  For this reason alone, a two-tiered protective order is warranted.  *See Alexander v. FBI*, 1998 U.S. Dist. LEXIS 11489, *11 (D.D.C. 1998) (stating that it is appropriate to limit disclosure of highly sensitive information to attorneys and experts when there is a risk that a party might use it to gain competitive advantage).  There is also a risk that, in the course of his regular communications with reporters and other members of the public about this legal issue and specifically about Plaintiffs, Mr. Malamud would disseminate, even inadvertently, Plaintiffs' highly confidential information to others who would use it to gain a competitive advantage over Plaintiffs.  *See id.*; *see also FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) (even most rigorous efforts to preserve confidentiality may fail because "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so").

Mr. Malamud has demonstrated that he will disregard the law when he disagrees with it, including by posting copyrighted materials on his website because of his belief that they should not be protected by copyright.  Motion at 7-8.  Public Resource maintains that Mr. Malamud only posts materials that have been incorporated into law.  Opp. at 7.  However, Plaintiff ASTM has informed Public Resource through its discovery responses that Public Resource has in fact posted some standards that have not been incorporated into law and Mr. Malamud has not removed those standards from his website.  *See, e.g.*, May 23, 2014 letter from ASTM's counsel to Public Resource's counsel regarding ASTM's response to Interrogatory No. 1, attached as

Exhibit A.  Thus, Mr. Malamud has provided Plaintiffs and the Court with ample cause for concern regarding his intent to comply with a protective order.

### B. Defendant Will Suffer No Prejudice If Mr. Malamud Cannot View Plaintiffs' Highly Confidential Documents.

Contrary to Public Resource's assertions, Public Resource's ability to defend itself in this lawsuit will not be prejudiced if Mr. Malamud cannot access the very narrowly defined category of Plaintiffs' Highly Confidential information.  Public Resource itself described the dispute in the case as a legal issue of "whether it violates copyright law to post national codes that federal and state governments have incorporated into their laws."  Opp. at 1.  Public Resource's ability to present a legal argument on this issue does not depend on Mr. Malamud's ability to view documents that reveal the Highly Confidential information of Plaintiffs, which are limited to "personal, technical, scientific, business or financial information" such as trade secrets, sales, business strategy and planning information, and commercial and financial information.  *See* Plaintiffs' Proposed Order at ¶ 1(b).

Public Resource's assertion that "Mr. Malamud is an expert in the processes of standards development and the operations of standards organizations, including Plaintiffs," Opp. at 3, is not credible.  The knowledge Mr. Malamud allegedly has gained about Plaintiffs' operations and personnel through the work he has done at Public Resource on the issues related to this litigation does not give him the experience or expertise necessary to meet the onerous requirements to qualify as an expert on the procedures and operations of standards development organizations in general or of Plaintiffs specifically.  *See generally Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

While Mr. Malamud may have been involved in task forces or committees that drafted "standards" relating to the Internet, his reliance on that involvement does not make him an expert

on Plaintiffs' standards at issue in this case, which are voluntary consensus standards accredited

by the American National Standards Institute ("ANSI").  The hallmark of ANSI-accredited

Standards Development Organizations ("SDOs") is adherence to a set of requirements or

procedures that foster openness, a balance of representation from different sectors, consensus,

and due process.  Mere involvement in a task force that drafted non-ANSI  accredited

"standards" does not make one an expert on voluntary consensus standards or the specific SDOs,

such as Plaintiffs, who develop such standards.  Public Resource also does not point to any

particular training or education Mr. Malamud has received related to SDOs like Plaintiffs.  Thus,

Mr. Malamud is in no way qualified to testify as an expert on issues related to SDOs in general

or on Plaintiffs' operations or personnel in particular.  Contrary to Public Resource's argument,

Mr. Malamud, a non-lawyer, is also not qualified to opine on the issue of the process of

incorporation by reference into federal and state regulations, which is an issue of administrative

law.

      Public Resource baldly asserts that Mr. Malamud's expertise is "most necessary with

respect to documents concerning Plaintiffs' finances and strategic planning," Opp. at 9.

However, Public Resource fails to provide any basis for claiming that Mr. Malamud has expert

qualifications with regard to finances or the strategic planning of SDOs like Plaintiffs, which are

the types of documents that potentially could be classified as Highly Confidential.  Public

Resource's counsel also provides no explanation as to why to litigate this case effectively it

requires Mr. Malamud's input, as opposed to that of any other potentially qualified expert, on

Plaintiffs' financial and strategic information.

      As Plaintiffs made clear in the parties' meet-and-confer discussions on this topic, in the

unlikely event that there are specific documents that Public Resource's counsel believes it cannot

understand without Mr. Malamud's expertise, Plaintiffs are willing to consider whether to

consent to Mr. Malamud viewing such documents on an ad hoc basis.  If the parties are unable to

reach an agreement on these individual documents, they can seek the Court's intervention.  This

process provides a sensible and practical means of addressing any dispute.

Whereas Plaintiffs have established that the parties are competitors and there is a

substantial risk of harm to Plaintiffs if their highly confidential documents or information were

viewed by Mr. Malamud, and Public Resource has not shown any prejudice to its ability to

litigate this case if Mr. Malamud cannot view this information, a two-tiered protective order is

warranted.

**II.    The Protective Order Should Not Require a Written Justification for Each
         Confidentiality Designation.**

Public Resource's proposal that a party must draft a statement explaining which specific

facts or elements within the designated material are confidential and why the confidentiality

designation is warranted for every document it designates as Confidential demonstrates that

Public Resource's intention to make the designation process prohibitively burdensome for

Plaintiffs.  Public Resource is unable to point to a single case in which a court has entered a

protective order that requires a party to go through such a burdensome process to protect its

confidential information, and Plaintiffs are aware of no such case.  None of the model orders

Public Resource submitted with its Opposition includes this type of provision.

Public Resource also speculates that Plaintiffs will take overly aggressive positions when

making confidentiality designations.  Yet Public Resource fails to establish that the provisions

Plaintiffs proposed to address precisely this concern are inadequate.  Indeed, in Plaintiffs'

proposed protective order, before designating information as confidential, a party must: (1) have

a good faith belief that the material is in fact Confidential; and (2) make a reasonable inquiry to

determine whether the material is Confidential.  These provisions, which courts routinely include in protective orders, are more than sufficient to prevent misuse of confidentiality designations, which is any event purely speculative.  Thus, the Court should not enter a protective order that includes this unprecedented, burdensome requirement.

### III.   The Party Challenging a Confidentiality Designation Should Be Required to Bring a Motion Raising That Challenge.

As explained in Plaintiffs' opening brief, the parties differ considerably in size and in their missions and activities, such that Plaintiffs are much more likely than Public Resource to possess confidential documents warranting protection.  The provisions Public Resource has proposed make clear Public Resource's intent to take aggressive positions in challenging Plaintiffs' confidentiality designations.  It is therefore no surprise that Public Resource proposes that the designating party be required to bring a motion to preserve the confidentiality of any material whose designation has been challenged.

However, the more practical and efficient procedure is for the party challenging the designation to be required to bring the motion.  This will ensure that the party will only challenge designations where it claims a real need to disclose the document to individuals who are otherwise not permitted to view it and where the party has a legitimate basis for challenging the designation.  Plaintiffs' proposed protective order would not shift the burden of demonstrating good cause for a Confidentiality designation to the moving party; Plaintiffs' proposed order explicitly states that the burden of proving that a document is confidential or highly confidential remains with the party asserting such confidentiality or high confidentiality.  Plaintiffs' Proposed Order at ¶ 3.

The Court should reject Public Resource's proposal, which would increase the demand on the Court's limited resources, and would provide Public Resource with unwarranted tactical advantages related to the timing of its challenges of confidentiality designations.

**IV.     Use of Information Obtained in Discovery Should be Limited to This Litigation.**

Plaintiffs have requested that the Court include a provision in the protective order that: "The Parties and their attorneys shall not use any information or documents obtained during discovery in this matter, regardless of whether the information and/or documents are designated Confidential, Highly Confidential, or are not assigned any confidentiality designation, for any purpose other than preparing for and conducting this litigation, including any appeals." Plaintiffs' Proposed Order at ¶ 7.  This Court entered an order containing very similar language in *Klayman v. Judicial Watch* where the plaintiff was engaged in ongoing fundraising and advertising relating to the subject of the litigation.  2007 U.S. Dist. LEXIS 88044, *23 (D.D.C. Dec. 3, 2007) ("the Court shall issue an Order limiting the use of any information obtained during discovery in this matter to the strict context of this litigation.").  A similar order is warranted here, where Mr. Malamud regularly writes and tweets about the subject of this litigation, including in connection with fundraising activities.  *See, e.g.,* https://www.kickstarter.com/projects/publicresource/public-safety-codes-of-the-world-stand-up-for-safe/posts/641022 (Public Resource's effort on Kickstarter.com to raise $100,000 based on his copying of ASTM standards).

Public Resource indicated that it would agree to refrain from using Bates-stamped versions of documents produced in this action for any purpose other than this litigation. Plaintiffs' proposed provision simply adds that Public Resource also agree not to use information obtained in discovery, including deposition testimony and written discovery responses, for any

purpose other than this litigation.  Public Resource has provided no compelling reason why this addition would be objectionable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter Plaintiffs' proposed protective order.

Dated: August 13, 2014                    Respectfully submitted,

/s/ J. Kevin Fee

Michael F. Clayton (D.C. Bar: 335307)
J. Kevin Fee (D.C. Bar: 494016)
Jordana S. Rubel (D.C. Bar: 988423)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: 202.739.5215
Email: mclayton@morganlewis.com
       jkfee@morganlewis.com
       jrubel@morganlewis.com

*Counsel For American Society For Testing And Materials
d/b/a/ ASTM International*

/s/ Kelly Klaus

Anjan Choudhury (D.C. Bar: 497271)
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071
Tel: 213.683.9100
Email:  Anjan.Choudhury@mto.com

Kelly M. Klaus
Jonathan H. Blavin
Munger, Tolles & Olson LLP
560 Mission St., 27th Floor
San Francisco, CA 94105
Tel:  415.512.4000
Email: Kelly.Klaus@mto.com
       Jonathan.Blavin@mto.com

*Counsel for National Fire Protection Association, Inc.*

/s/ Kenneth Steinthal

Jeffrey S. Bucholtz (D.C. Bar: 452385)
King & Spalding LLP
1700 Pennsylvania Avenue, NW, Ste. 200
Washington, DC 20006-4707
Tel: 202.737.0500
Email: jbucholtz@kslaw.com

Kenneth L. Steinthal
Joseph R. Wetzel
King & Spalding LLP
101 Second Street, Ste. 2300
San Francisco, CA 94105
Tel: 415.318.1211
Email: ksteinthal@kslaw.com
         jwetzel@kslaw.com

*Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers*

# EXHIBIT A

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202.739.3000
Fax: 202.739.3001
www.morganlewis.com



**J. Kevin Fee**
Partner
202.739.5353
jkfee@morganlewis.com

May 23, 2014

**VIE EMAIL**

Andrew Bridges
Fenwick & West LLP
555 California Street
San Francisco, CA 94104
abridges@fenwick.com

Corynne McSherry
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
corynne@eff.org

Dear Counsel,

We have now had the opportunity to consider your letter of May 2, 2014 on behalf of
Public.Resource.Org ("Public Resource) regarding the discovery responses of the American
Society of Testing and Materials ("ASTM") and the points you raised during our May 7, 2014
telephone conference.

We share your objective of reaching amicable resolutions on the range of discovery issues that
will allow the parties to litigate this action without imposing unreasonable and unduly
burdensome discovery requests on one another.  ASTM believes that its prior responses to these
requests were reasonable and forthcoming.  Nevertheless, as outlined below, in an effort to
accommodate some of your concerns, we are willing to agree to produce additional documents in
response to certain of your requests.  Our agreement to produce any documents of a confidential
nature remains conditioned on the entry of an appropriate protective order by the Court.

That having been said, some of your requests are extremely broad, and/or of limited or no
relevance to the issues that will be litigated in this case.  For example, as demonstrated by Public
Resource's counterclaims in this case, Public Resource's position is that the standards at issue
are in the public domain because they were incorporated by reference into laws or are not

Almaty  Beijing  Boston  Brussels  Chicago  Dallas  Dubai*  Frankfurt  Harrisburg  Houston  Irvine  London  Los Angeles  Miami
Moscow  New York  Palo Alto  Paris  Philadelphia  Pittsburgh  Princeton  San Francisco  Tokyo  Washington  Wilmington

DB1/ 79151182.3                              *In association with Mohammed Buhashem Advocates & Legal Consultants



Andrew Bridges
Corynne McSherry
May 23, 2014
Page 2

protectable by copyright law due to the doctrine of merger.  Counterclaim ¶¶ 175-83.  In Public
Resource's words, "[t]he people are the authors of the law, regardless of who first pens the words
that later become law through enactment by a legislature or public agency."  Counterclaim ¶ 175.
Thus, the issue of whether ASTM was at least the initial owner of the copyright of the works it
claims were infringed by Public Resource is at most a side issue and not the focus of Public
Resource's defense.  Yet, Public Resource propounded extremely broad discovery requests that
seek information related to the initial ownership of the copyright in the works at issue that, as
written, would require ASTM to conduct exhaustive, expensive searches of thirty years of
records related to the authorship and ownership of hundreds of different standards.  While
searching for some subset of this information could arguably be warranted if ASTM's initial
ownership was genuinely the real issue in this case, given that Public Resource's legal position is
really premised on the impact of the incorporation by reference on ASTM's ownership of the
copyrights in the standards, Public Resource's requests seek to unnecessarily and unduly burden
ASTM for limited, if any, benefit to Public Resource.  Where ASTM believes that a request
seeks information or documents that are only marginally relevant to the issues in this case and
creates a considerable burden for ASTM, ASTM has maintained its objections.

Objections to Term "Contribution"

ASTM continues to object to the term "Contribution" on the grounds that the definition Public
Resource suggested is ambiguous and overly broad and it would be unduly burdensome for
ASTM to collect all such documents.  ASTM stated in its responses that it would construe the
term "Contribution" to mean provision of assistance, advice, or labor.

Based on our discussion, it seems that Public Resource's real interest is in obtaining documents
that will help it determine whether the Standards at Issue are original works of authorship and
who are the authors of the Standards at Issue.  ASTM has agreed to produce records related to
the development, creation, drafting, revision, editing and finalization of each of the Standards at
Issue that are in its possession or control and can be located after a reasonable search confined to
a reasonable time period, which should provide Public Resource with the information it needs.
Financial support or "effort" beyond what is described above is irrelevant to the issues of
whether the works are original and the ownership of the works.  Thus, ASTM continues to stand
on its previously articulated objections and will construe the term "Contribution" to mean the
provision of assistance, advice, or labor.

Request for Production No. 2

For the reasons described above, assignment documents are marginally relevant to the dispute
between the parties.  Since 2004, ASTM has required every member of ASTM to complete a
form click-through agreement transferring and assigning to ASTM any and all interest, including



Andrew Bridges
Corynne McSherry
May 23, 2014
Page 3

copyright, in the development or creation of ASTM standards or other intellectual property.
ASTM has agreed to produce a copy of that form agreement. Some of ASTM's members print
out and sign by hand the click-through agreement. ASTM retains those paper documents, which
consist of tens of thousands of pages, for a period of time consistent with its document retention
policy. To avoid the extreme burden and cost of sorting through these tens of thousands of pages
of documents to determine if they relate to the standards at issue and producing any such
documents, ASTM will make available for inspection at its office in Pennsylvania all paper
documents that constitute assignments of copyrights that can be located after a reasonable search
confined to a reasonable period of time. Once you have inspected these documents, upon your
request, ASTM will agree to bates label and produce copies of any documents that you identify
as responsive.

Request for Production No. 3

ASTM will produce documents showing the names and affiliations of people who contributed to
the development of the Standards at Issue to the extent that such documents can be located after
a reasonable search confined to a reasonable time period.

Request For Production No. 5

ASTM has no documents from which it is possible to identify every legal authority that
incorporates by reference the Standards at Issue. As ASTM has explained, it does not keep track
of the incorporation by reference of its standards. Thus, ASTM will not produce documents
responsive to this request.

Request For Production Nos. 8 and 9

ASTM continues to believe that Requests for Production Nos. 8 and 9, which seek "[a]ll
documents regarding Carl Malamud" and "[a]ll documents regarding Public Resource or its
representatives . . . including its legal representatives," without any limitations, are overly broad
and extremely burdensome. Not only are these documents likely to be of only marginal
relevance, most of the responsive documents are likely to be protected by the attorney-client
privilege and/or the attorney work product doctrine.

ASTM is willing to search for and produce non-privileged documents from the records of a few
select custodians at ASTM that reference Mr. Malamud or Public Resource, subject to the
following conditions. First, ASTM will exclude documents related to this lawsuit or the
possibility of taking legal action against Public Resource or Mr. Malamud from its production.
Second, Tom O'Brien, who is a Vice President and General Counsel at ASTM, will not be one of
ASTM's custodians. These limitations are intended to avoid the unnecessary and burdensome



Andrew Bridges
Corynne McSherry
May 23, 2014
Page 4

searching, collecting, reviewing, and logging of documents that are largely if not entirely protected by the attorney client privilege and/or work product doctrines.

Request For Production No. 11

As discussed during our call, ASTM did not agree to produce projections for future revenue from the Standards at Issue because it has no such documents.

Requests For Production Nos. 14 and 15

As stated previously, in response to Request for Production No. 14, ASTM will produce a representative sample of non-privileged documents that are in its possession or control and can be located after a reasonable search confined to a reasonable period of time relating to ASTM's requests for public participation in the development and creation of the Works-At-Issue.

With regard to Request for Production No. 15, as ASTM explained during our call, it already agreed to produce documents relating to the development, creation, drafting, revision, editing and finalization of each of the Standards at Issue that are in its possession or control and can be located after a reasonable search confined to a reasonable time period. This includes substantive comments or suggestions that were made by members of the relevant ASTM committee or the public that were ultimately not accepted. ASTM does not understand how any other offers to contribute to the standards development process that were not accepted are relevant to Public Resource's claims or defenses.

ASTM is not persuaded by Public Resource's speculative and implausible explanation that ASTM could have failed to record an actual contribution which could be discovered by analyzing all offers to contribute to the standard development process. The burden on ASTM to search for, identify, and produce all documents that relate to offers of contributions outweighs the remote possibility that the documents would reveal any such discrepancy. As a result, ASTM will not produce documents responsive to this request.

Request for Production No. 16

Request for Production No. 16 seeks all communications criticizing Plaintiffs' position. Public Resource's explanation for the relevance of this request is that ASTM staff may have communicated with members who expressed positions that are sympathetic to Public Resource's legal position or that commend Public Resource's actions. Public Resource has provided no basis for its speculation that any such communications exist. Searching for documents responsive to this fishing expedition would require ASTM to review all of its communications with its 30,000 members, which would be unduly burdensome. Even if ASTM were to find any



Andrew Bridges
Corynne McSherry
May 23, 2014
Page 5

such communications, it is not clear how the statements of a non-party would be relevant to the issues in this litigation.  As a result, ASTM will not produce documents responsive to this request.

Request for Production No. 17

This request seeks "[a]ll documents consisting, comprising, or concerning communications by You regarding this dispute or litigation."  As we discussed, to the extent this request calls for internal or other confidential communications, it primarily seeks information or documents protected by the attorney-client privilege or the work product doctrine, and for that reason is unduly burdensome.  If Public Resource agrees to the proposal outlined above regarding Requests For Production Nos. 8 and 9, ASTM would also be willing to produce communications with media and any other public-facing communications responsive to this request that can be located after a reasonable search of the files of the selected custodians identified with respect to Requests For Production Nos. 8 and 9.

Request for Production No. 18

Request for Production No. 18 seeks "all documents constituting, comprising, or concerning licenses with respect to any Work-At-Issue."  ASTM objected on several grounds, including that the term "licenses" is vague and ambiguous and the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Public Resource has not specified what licenses it believes are relevant to its claims or defenses. ASTM enters into licenses with many different third parties.  With respect to licenses ASTM enters into with  members of the public who want to view, download and/print its standards, ASTM grants individual user, single site, and multi-site licenses to its customers, but each category of customer must agree to the same form license agreement before it can download the relevant work.  Accordingly, ASTM has agreed to produce form licenses and a representative sample of non-privileged licenses to which customers must agree when they download copies of the Works-At-Issue that can be located after a reasonable search of the files of selected custodians confined to a reasonable period of time.  It is unclear what Public Resource thinks it can learn from reviewing the individual licenses that it will not be able to learn from reviewing the representative samples or whether any such benefit would justify the extreme burden it would place on ASTM to have to search for and produce each individual license.

In addition to the licenses with its customers, ASTM also enters into licenses with other third parties, including members of the public who want to view standards in ASTM's Reading Room and members of the public who seek authorization to use ASTM's standards or portions thereof. ASTM agrees to produce representative samples of these licenses as well, even though Public



Andrew Bridges
Corynne McSherry
May 23, 2014
Page 6

Resource has made no showing of the relevance of the individual licenses to its claims or defenses. Public Resource stated that the granting of permission to use the standards at issue could be relevant to whether an injunction is warranted because ASTM could be granting others permission to use the standards in the same way that Public Resource is using the standards. This baseless speculation does not justify the extreme burden it would place on ASTM to have to search for and produce each individual license. There are other, less burdensome ways in which Public Resource can determine if ASTM has ever granted any third party permission to use any of the standards at issue in the manner in which Public Resource has used them, including through an interrogatory.

Interrogatory No. 1

As explained during our call, Interrogatory No. 1 asked ASTM to identify all standards that it knows or believes to have been incorporated by reference in any statute or regulation. Public Resource pointed out that the list of standards ASTM provided in its response did not match the list of standards ASTM alleged in the complaint were infringed by Public Resource. The explanation for this is that Public Resource has posted some standards that ASTM does not believe were incorporated by reference in the regulations that Public Resource claims incorporated these standards.

Interrogatory No. 2

As ASTM stated previously, it does not keep track of which legal authorities have incorporated its standards. It reviewed the regulations that Public Resources claims incorporated ASTM standards by reference to check whether Public Resource's claims were accurate. Additionally, ASTM periodically references the National Institute of Standards and Technology database of standards that are referenced in the Code of Federal Regulations, which is available to the public.

Interrogatory No. 4

As discussed in our call, ASTM confirms that its response to Interrogatory No. 4 is complete and accurate.

Request for Admission No. 1

Request for Admission No. 1 asked ASTM to admit that it does not claim that Public Resource infringed any of ASTM's copyrights other than copyrights in the works listed in Exhibit A to the Complaint. ASTM denied this request because it believes Public Resource infringed ASTM's copyrights in additional works. However, ASTM confirms that its claims in the lawsuit are limited at this time to the ASTM standards that are listed in Exhibit A to the Complaint.



Andrew Bridges
Corynne McSherry
May 23, 2014
Page 7


Production of Public Resource Website Content

Your letter proposes that, in the interests of efficiency, Plaintiffs review Public Resource's
website content and make particular requests to Public Resource for Bates-stamped versions of
particular pages of the website. ASTM is willing to agree to this proposal and has already
identified specific pages from Public Resource's website that it would like Public Resource to
produce. ASTM expects that, to the extent Public Resource's requests to ASTM call for website
pages or other information that is made publicly available by ASTM, Public Resource will
likewise agree to review these materials and make particular requests for ASTM to produce
Bates-stamped versions of specific webpages.

Privilege Logs

Your letter proposes that, "so as to save unnecessary labor, all parties may refrain from logging
communications with counsel that post-date the filing of the complaint in this action." As
discussed above, we share your concern about the burden of logging privileged communications.
We are willing to accept your proposal, on the condition that we modify the time cut-off such
that parties will not be responsible for logging documents protected by the attorney-client
privilege and/or the attorney work-product doctrine created on or after January 1, 2013, which
we believe is the day after Public Resource posted Plaintiffs' standards on its website. As I
explained during our telephone conference, setting the cut-off date on the date the Complaint
was filed would impose unequal burdens on the parties because Plaintiffs have in their custody
or control many protected documents from the months in between the occurrence of the
infringement and the date on which they filed the Complaint, a time period when it is customary
for plaintiffs to research their potential claims and communicate frequently with counsel.

Custodians and Search Terms

As we explained on the call, we think it would be most efficient for the parties to finalize their
positions concerning requests for production before circulating proposed search protocols. We
will circulate proposed search terms once the parties have ironed out these discovery issues, and
can provide you with an organizational chart at that time. We expect that you will reconsider
your proposed search terms to make sure they correspond with the subject matter of ASTM's
requests for production.

Protective Order

As we discussed during our telephone conversation, ASTM does not agree with your proposed
edits to the draft protective order. In particular, ASTM: (i) disagrees with your proposal to delete



Andrew Bridges
Corynne McSherry
May 23, 2014
Page 8

the category for "Highly Confidential" documents; (ii) disagrees with your proposal that parties
must prepare a separate "statement" justifying each "Confidential" designation; and (iii)
disagrees with your proposal that the party producing a "Confidential" document must file a
motion with the Court to protect that document within 14 days from the date any confidentiality
designation is challenged by the receiving party.  From our conversation, it appears that you are
unwilling to change your position.  As a result, it appears as though the parties will need to raise
the outstanding issues regarding a protective order with the Court.  Please let us know if you
have any thoughts on the appropriate procedure for seeking the Court's input on these issues.
We will be in touch next week with our proposal.

*     *     *

To the extent you believe that this letter misstates any of Public Resource's positions, or
mischaracterizes our conversation on May 7, 2014, please let us know in writing.  We look
forward to receiving your response regarding Plaintiffs' discovery requests to Public Resource.

Sincerely,

J. Kevin Fee

JKF