# EXHIBIT 9

**Fenwick**

**FENWICK & WEST LLP**

555 CALIFORNIA STREET, 12TH FLOOR   SAN FRANCISCO, CA 94104
TEL: 415.875.2300   FAX: 415.281.1350   WWW.FENWICK.COM

May 25, 2014

ANDREW P. BRIDGES

EMAIL ABRIDGES@FENWICK.COM
Direct Dial (415) 875-2389

**VIA E-MAIL**

Kelly M. Klaus                          Kenneth L. Steinthal
Jonathan H. Blavin                      Joseph R. Wetzel
Michael J. Mongan                       KING & SPALDING LLP
MUNGER, TOLLES & OLSON LLP              101 2nd Street, Suite 2300
560 Mission St., 27th Floor             San Francisco, CA 94105
San Francisco, CA 94104

Anjan Choudhury                         Jeffery S. Bucholtz
MUNGER, TOLLES & OLSON LLP              KING & SPALDING LLP
355 South Grand Avenue, 35th Floor      1700 Pennsylvania Avenue NW, Suite 200
Los Angeles, CA 90071                   Washington, D.C. 20006

**Re:    ASTM et. al v. Public.Resource.Org Discovery Responses**

Counsel,

After meeting and conferring with Plaintiffs on May 7th regarding discovery disputes we outlined in Public.Resource.Org's (Public Resource's) and Plaintiffs' discovery letters on May 2nd, Public Resource now states its positions on these issues with the objective of reaching an amicable solution.

**1.     Issues Addressed in Plaintiffs' Letter of May 2, 2014**

**(a)    Definition of a "copy"**

As used in the Copyright Act, the word "copies" has a specific definition under 17 U.S.C. § 101 and refers solely to material objects.  For this reason, Public Resource objects to Plaintiffs' use of the word "copy" in reference to non-material objects, and also to Plaintiffs' use of the word "copying."  Public Resource has suggested to Plaintiffs that they use the word "reproduce" or "reproductions" instead, and it reiterates its offer to respond to any discovery requests where it had previously objected to the word "copy" or "copying," if Plaintiffs provide an amended version of those requests that replaces the disputed terms accordingly.

**(b)    Definition of Trademark "Use" and "Trademarks"**

The term "use" when referring to trademarks has a specific function under the Lanham

May 25, 2014
Page 2

Act, where the definition of "use in commerce" refers to particular types of "use."  Public Resource objects to any reference to trademark "use" that goes beyond the types of "uses" that the "use in commerce" definition incorporates (apart from the "commerce" requirement).  As above, Public Resource would be amenable to Plaintiffs' providing amended requests with substitute wording such as "appear" or "include."

Based on the call, Public Resource believes the parties can agree to a definition of "Plaintiffs' Trademarks" to refer to the federally registered marks that paragraphs 61, 79, and 94 the Complaint specifically list.  To the extent that Plaintiffs seek discovery on names or logos that they have not federally registered, Public Resource would be open to amendments to the requests that list the specific names, terms, or logos regarding which Plaintiffs seek discovery.

**(c)** "Downloading," Rekeying Text," "Converting Graphics," Resetting Mathematical Formulas," and "Financial Contributions"

Public Resource has objected to these terms as being undefined and vague.  Nevertheless, as Public Resource has informed Plaintiffs, it has not withheld production of any documents on the basis of this objection but has instead responded by interpreting these terms as best it can.  Public Resource believes this clarifies the issue and there is no further dispute as to this issue at this time.

**(d)** The Public Resource Websites

Public Resource identified the websites relevant to this litigation as public.resource.org, bulk.resource.org, and law.resource.org.

Other websites that relate to Public Resource's mission to provide public domain materials to the public include: house.resource.org, bugs.resource.org (now inoperative), pacer.resource.org (now inoperative), wwlbd.org, yeswescan.org, and archimedespalimpsest.net.

In addition, Carl Malamud also operates or has participated in the operation of the following websites.  Defendant identifies these websites in the spirit of cooperation so that Plaintiffs may satisfy themselves that there is no relevant information in them: museum.media.org, town.hall.org, igotf.org, my.phone.org, infinite.simians.net, mappa.mundi.net, north.pole.org, fax.org, park.org, trusted.resource.org, undesign.org, and betterdogfood.com.

**(e)** Rights of Privacy, Free Speech, and Free Association, and Plaintiffs' Request for Production Nos. 8, 9, and 12

As Public Resource has asserted throughout this litigation, it intends to maintain the constitutionally protected privacy, free speech, and free association rights of its members and

May 25, 2014
Page 3

donors.  Public Resource is a non-partisan organization dedicated to ensuring equal protection before the law by improving transparency and access to public domain documents.  This has proven to be a polarizing issue, and it is foreseeable that revealing the identities of donors to Public Resource, particularly those who work in government or in the industries that relate to Plaintiffs' standards, could provoke reprisals against the donors by employers or associates. Plaintiffs have requested the names of all donors to Public Resource since the date when it first posted one of the standards at issue on its website (Plaintiffs Requests for Production Nos. 8 and 9) as well as communications with donors regarding copying of the standards at issue (Plaintiffs Requests for Production No. 12), but Plaintiffs have provided no compelling reason for needing access to such a complete list of Public Resource's donors.  Although Plaintiffs indicated they may wish to question some donors, Plaintiffs also conceded that they were not seeking to depose every person who has donated.  Public Resource has already offered to conduct a broad search for documents (see below regarding Request No. 28) that would include communications that refer to Plaintiffs or the standards at issue, including communications with donors, so there is no compelling reason for Plaintiffs to seek additional donor information.  Although Public Resource maintains the importance of these constitutionally protected rights of its donors, in the spirit of cooperation Public Resource has agreed to provide documents sufficient to identify the date and amount of any donations that specifically mention the standards at issue that Public Resource received after the standards at issue first became available on the Public Resource website.

    **(f)**      Production of Documents in the Custody of Carl Malamud

Public Resource will produce documents in the custody of its sole employee, Carl Malamud.

    **(g)**      Plaintiffs' Request for Production No. 6

Public Resource has agreed to produce documents that explain the process Public Resource employed to reformat the standards at issue.   Beyond that, however, Plaintiffs have requested all documents relating to the reformatting of the standards at issue.  Public Resource objects to this request, among other reasons, because it will be unduly burdensome to produce all such documents.  Public Resource will not produce every single document that could possibly relate to the reformatting of the standards at issue or references the procedures used. Nevertheless, Public Resource is willing to conduct a reasonable search and to produce all documents directly relating to the reformatting of the particular standards at issue.

    **(h)**      Plaintiffs' Request for Production Nos. 15-25

Public Resource objects to Plaintiff's Requests for Production Nos. 15-25, which seek all documents related to Public Resource's counterclaims and defenses, on the grounds that these requests seek attorney work product, including the mental impressions of its attorneys. In addition, these requests are premature in that Public Resource is still in the process of

May 25, 2014
Page 4

researching and developing its counterclaims and defenses, and the vast majority of the documents responsive to this request are in Plaintiffs' possession, not Public Resource's possession.

      **(i)**    Plaintiffs' Request for Production No. 28

      In its response to Plaintiffs' RFP No. 28, Public Resource offered to produce responsive, non-privileged documents that expressly refer to the name of any Plaintiff, to the extent that such documents exist, relate to the matters specifically alleged in the Complaint, and can be located after a reasonable search for documents in Public Resource's possession, custody, or control, subject to Plaintiffs' agreement that they will produce all documents relating to Public Resource. Plaintiffs rejected this offer. In its letter of May 2nd, Public Resource re-affirmed this offer, but specified that the same qualifications to Public Resource's production would also apply to Plaintiffs: Public Resource will produce responsive, non-privileged documents that expressly refer to the name of any Plaintiff, to the extent that such documents exist, relate to the matters specifically alleged in the Complaint, and can be located after a reasonable search for documents in Public Resource's possession, custody, or control, subject to Plaintiffs' agreement that they will produce responsive, non-privileged documents that expressly refer to the name of Public Resource, Carl Malamud, or any of Public Resource's representatives, to the extent that such documents exist, relate to the matters specifically alleged in the Complaint, and can be located after a reasonable search for documents in Plaintiff's possession, custody, or control. Such an agreement would help ensure that production is complete, yet also relevant and not overly burdensome to Plaintiffs or Public Resource for either production or review. Public Resource again presented this offer to Plaintiffs during the meet-and-confer call on May 7th, and awaits a definitive response from Plaintiffs.

      **(j)**    Plaintiffs' Request for Production No. 29

      In accordance with the agreement between the parties to reduce the burden of document production and review, Plaintiffs have identified specific Public Resource webpages that they would like to be produced in a Bates numbered format, and Public Resource agrees to produce the requested pages in such format.

      **(k)**    Plaintiffs' Request for Production No. 31

      Plaintiffs have clarified that, in addition to figures as to the number of times each standard at issue has been downloaded, they also seek Internet traffic reports such as Google Analytics reports. Public Resource does not use Google Analytics or competing tools.

      **(l)**    Plaintiffs' Interrogatory No. 4

      Public Resource objected to Plaintiff's Interrogatory No. 4 on the grounds that certain

May 25, 2014
Page 5

terms were vague and ambiguous, and that the Interrogatory was argumentative in that it requested information that had been provided in response to Interrogatory No. 2.  At the meet-and-confer teleconference with Plaintiffs on May 7th, Public Resource explained that any non-text elements (including logos) in standards are treated as diagrams, as discussed in Public Resource's response to Plaintiff's Interrogatory No. 2.   Public Resource has further agreed to amend its response to Plaintiff's Interrogatory No. 4 to state that non-text elements in standards are treated as diagrams.

     **(m)**     Plaintiffs' Interrogatory Nos. 7-11

Plaintiffs' Interrogatories Nos. 7-11 are contention interrogatories regarding Public Resource's counterclaims and defenses.  As with Plaintiffs' Requests for Production Nos. 15-25, Public Resource objects on the grounds that these interrogatories seek attorney work product, including its attorneys' mental impressions, that these requests are premature in that Public Resource is still in the process of researching and developing these counterclaims and defenses, and that the early stage of this litigation means that information and documents needed to fully support Public Resource's counterclaims and defenses are largely in Plaintiffs' possession.  Nevertheless, Public Resource agrees to provide the facts underlying its defenses that are presently known to it.

     **(n)**     Plaintiffs' Interrogatory No. 13

Plaintiffs' Interrogatory No. 13 seeks all instances in which Public Resource is aware of a third party having downloaded a standard at issue from the Public Resource website, and then having made "further copies" of that standard at issue or created derivative works based on that standard.  Public Resource has objected to the term "copies" as used in this interrogatory.  At the meet and confer on May 7th, Plaintiffs agreed to amend their request to replace "copies" with "reproductions."  After receiving this amended interrogatory, Public Resource will serve an amended answer.

     **(o)**     Plaintiffs' Interrogatory No. 14

Plaintiff's Interrogatory No. 14 requests identification of all uses Public Resource has made of Plaintiffs' trademarks.  Public Resource has objected to this interrogatory in part because the terms "trademark" and "use" are vague and ambiguous to the extent that they are not defined in reference to the Lanham Act's employment of these terms.  After meeting and conferring with Plaintiffs, Public Resource has agreed to identify all *appearances* of Plaintiffs' federally registered names and logos (as listed in paragraphs 61, 79, or 94 the Complaint) on the Public Resource website without conceding that they are trademark "uses."

     **(p)**     Plaintiffs' Requests for Admission Generally

May 25, 2014
Page 6

As I discussed above, Public Resource objects to Plaintiffs' use of the term "copy" or "copying" in a manner that does not accord with the Copyright Act.  After meeting and conferring, Plaintiffs have agreed to provide amended RFAs that appropriately replace these terms with "reproduction" or "reproducing," to which Public Resource will then provide amended responses.

**(q)**     Plaintiffs' Requests for Admission Nos. 6, 8, and 17

Because Public Resource found these RFAs to be vague and ambiguous, Public Resource further defined the requests as it understood them and responded accordingly.  After meeting and conferring, Public Resource agrees to provide amended responses that admit or deny each part of the RFAs, subject to Public Resource's objections.

## 2.     Issues Addressed in Public Resource's Letter of May 2, 2014

**(a)**     ASHRAE's Standards at Issue

Throughout ASHRAE's discovery responses, it repeatedly asserts that it will provide only documents pertaining to the 2010 edition of Standard 90.1.  Because ASHRAE appears to be suing Public Resource over three separate editions of Standard 90.1—2004, 2007, and 2010—Public Resource asserted that ASHRAE needs to provide documents for all three editions, not simply the most recent edition.  Similarly, ASHRAE lists its 1993 Handbook in Exhibit C to the Complaint.  If ASHRAE intends to include the 1993 Handbook in its suit against Public Resource, it must produce documents pertaining to this handbook.  ASHRAE responded during the teleconference on May 7th that it would provide copies of documents for the 2004 and 2007 versions of Standard 90.1 in addition to those 2010 versions that it had previously agreed to produce.  ASHRAE also responded that it does not consider its 1993 Handbook to be a "standard," and for that reason has not offered to provide responsive documents.  Public Resource maintains that ASHRAE's 1993 Handbook is a set of rules incorporated by reference under 10 CFR 434.701 and 10 CFR 434.4.02.2.2.5(a), and therefore the 1993 Handbook is properly referenced in any of Public Resource's requests that mention "standards."  Indeed, it is hard to see how ASHRAE could take the position that its 1993 Handbook is not properly referenced as a "standard," when in its own Requests for Production it states that "the term 'Standards at Issue' refers to the documents listed in Exhibits A, B, or C of the Complaint," and ASHRAE listed the 1993 Handbook in Exhibit C.  Because ASHRAE has indicated that the 1993 Handbook is one of the standards at issue in this lawsuit, ASHRAE must include material pertaining to the 1993 Handbook in its responses to all of Public Resource's requests that refer to "standards."

**(b)**     Public Resource's Definition of "Contribution"

All three Plaintiffs object to Public Resource's definition of "contribution" as it used the

May 25, 2014
Page 7

term in Public Resource's RFP Nos. 4 and 12-15, but Plaintiffs fail to provide a sufficient definition of their own.  ASTM offers a definition that does not include financial contributions, while the other Plaintiffs do not provide any definition.  In order to facilitate agreement on this matter, Public Resource suggests that the parties agree on the following definition: "contribution" means any assistance, advice, financial support, labor, effort, or expenditure of time that is provided toward a project or goal regarding a specific standard at issue.

    **(c)**    NFPA's "Report on Proposals" and "Report on Comments"

Public Resource is concerned by the number of responses to Public Resource's RFPs in which the NFPA indicated that it would provide only the "Report on Proposals" (ROP) and "Report on Comments" (ROC) for each standard at issue.  Although Public Resource recognizes that it has not yet received these reports and evaluated their contents, the breadth of requests to which NFPA lists them as being responsive strongly suggests that these documents will be insufficient to satisfy NFPA's obligations.  At the teleconference on May 7th, NFPA assured Public Resource that the ROP and ROC would be sufficient to respond to its requests.  Public Resource will evaluate these reports while reserving its objections and its right to request a broader production in response to these requests.

    **(d)**    Licenses and Agreements Produced by Plaintiffs

For all responses in which Plaintiffs have agreed to produce responsive agreements or licenses, including Plaintiffs' responses to Public Resource's RFP Nos. 2, 4, 6, 18, the agreements or licenses that are produced must be complete and effective, which means they must be signed.  Blank (unsigned) form agreements and licenses will not satisfy these requests.  Public Resource must receive agreements and licenses from which the assent of the parties to the agreement is evident.  Plaintiffs have expressed concern that, in instances where the number of responsive (signed or assented) agreements or licenses is high for any one particular form, this could result in a burdensome production.  Public Resource has therefore proposed that where the number of signed or assented agreements or licenses for any one particular form is especially high (such as in several hundred or more), the parties may evaluate the need for production on a case-by-case basis.

    **(e)**    Public Resource's Request for Production No. 3

With respect to Public Resource's RFP No. 3 (requesting documents sufficient to identify all persons who participated in the standards process of each work at issue), responsive documents should include the names of the individuals as well as their employer or affiliation, as the employer or affiliation is necessary for proper identification.  Additionally, ASHRAE's response to Public Resource's RFP No. 3 is insufficient in that it offers documents pertaining to only the 2010 edition of Standard 90.1, and ASHRAE does not mention the other works that it purportedly asserts in this litigation.  In the teleconference on May 7th, Plaintiffs all agreed to

May 25, 2014
Page 8

provide membership rosters for all standards at issue in this litigation, listing names and employers/affiliations to the extent that Plaintiffs have this information.

> **(f)**     Public Resource's Request for Production No. 5

With respect to Public Resource's RFP No. 5, Public Resource has requested documents sufficient to identify every legal authority that incorporates by reference each work at issue. Although there may be overlap between some documents that Public Resource possesses and responsive documents that Plaintiffs possess, Plaintiffs are likely to possess records regarding incorporation by reference that Public Resource does not.  In the teleconference on May 7th, Plaintiffs asserted that they did not possess any documents responsive to this request other than the ones they agreed to provide.  To the extent that Plaintiffs discover that they possess any additional documents identifying the relevant legal authorities, Plaintiffs must produce these documents.

> **(g)**     Public Resource's Request for Production No. 7

ASHRAE's response to Public Resource's RFP No. 7 (requesting communications with government entities regarding incorporation of standards into law) is insufficient to the extent that it promises only "*official*" written correspondence "by ASHRAE *to* government entities" regarding incorporation of only the 2010 edition of Standard 90.1.  As I noted above, ASHRAE must produce documents pertaining to every edition and standard that it intends to assert in this litigation.  Moreover, Public Resource's request plainly encompasses *unofficial* correspondence in addition to official correspondence, as well as all correspondence from government officials *to* ASHRAE regarding incorporation by reference, not simply correspondence sent by ASHRAE. In the teleconference on May 7th, ASHRAE agreed to supplement its responses to include both official and unofficial correspondence, both by ASHRAE to government entities and from government entities to ASHRAE, for all works listed in Exhibit C to the Complaint.

> **(h)**     Public Resource's Request for Production Nos. 8 and 9

Public Resource's RFP Nos. 8 and 9 (requesting all documents regarding Carl Malamud and Public Resource or its representatives) mirror Plaintiffs' RFPs No. 28 (requesting all documents regarding Plaintiffs).  In its response to Plaintiffs' RFP No. 28, Public Resource offered to produce responsive, non-privileged documents that expressly refer to the name of any Plaintiff, to the extent that such documents exist, relate to the matters specifically alleged in the Complaint, and can be located after a reasonable search for documents in Public Resource's possession, custody, or control, subject to Plaintiffs' agreement that they will produce all documents relating to Public Resource.  Plaintiffs rejected this offer.  Public Resource re-affirms this offer, but proposes that the same qualifications to Public Resource's production also apply to Plaintiffs: Public Resource will produce responsive, non-privileged documents that expressly refer to the name of any Plaintiff, to the extent that such documents exist, relate to the matters

May 25, 2014
Page 9

specifically alleged in the Complaint, and can be located after a reasonable search for documents in Public Resource's possession, custody, or control, subject to Plaintiffs' agreement that they will produce responsive, non-privileged documents that expressly refer to the name of Public Resource, Carl Malamud, or any of Public Resource's representatives, to the extent that such documents exist, relate to the matters specifically alleged in the Complaint, and can be located after a reasonable search for documents in Plaintiff's possession, custody, or control.  Such an agreement would help ensure that production is complete yet also relevant and not overly burdensome to Plaintiffs or Public Resource for either production or review.  Plaintiffs have objected on the grounds that they contend the information sought by Public Resource is not relevant.  Nevertheless, as structured above, this request plainly seeks documents and communications that are themselves relevant, or which would lead to the discovery of admissible evidence, particularly to the extent that it is limited to documents that relate to matters specifically alleged in the complaint.  Those documents are critically important to Public Resource's counterclaims and defenses, such as fair use, unclean hands, copyright misuse, trademark misuse, and lack of irreparable injury.

(i)     Public Resource's Request for Production No. 11

ASTM and NFPA's responses to Public Resource's RFP No. 11 (requesting documents concerning revenue or profit expectation for dissemination of the standards at issue) are insufficient to the extent that they offer to produce only documents that show revenue they have earned from the works at issue but not documents that shed light on expectations of future revenue.  NFPA's response is further insufficient in that it offers only annual year-end financial statements and reports for the past five years, when in fact it is asserting works at issue that date back to 1999.  ASHRAE's response to Public Resource's RFP No. 11 is insufficient to the extent that it offers to produce only documents showing past and anticipated revenue for the 2010 edition of Standard 90.1, as ASHRAE must produce documents for all editions and standards that ASHRAE intends to assert in this litigation.  In the teleconference on May 7th, ASTM and NFPA asserted that they do not maintain revenue projections but keep only "granular data," while ASHRAE stated that it would provide the revenue projections that it has for all the works that it asserts in Exhibit C to the Complaint.

(j)     Public Resource's Request for Production No. 12

ASHRAE's response to Public Resource's RFP No. 12 (requesting all documents concerning any contributions from any governmental entity, including agents and representatives, in connection with the standards process for each work at issue) is insufficient in that it offers documents pertaining to only the 2010 edition of Standard 90.1 and no other standards.  ASHRAE's response is likely also insufficient in that it is limited to reports from the Pacific Northwest National Laboratory, unless PNNL is the only government entity that contributed to any edition of the standards that ASHRAE intends to assert in this litigation.  If

May 25, 2014
Page 10

that is the case, ASHRAE should admit that the Pacific Northwest National Laboratory was the only government entity that contributed to the 2004, 2007, or 2010 editions of Standard 90.1 or to the 1993 ASHRAE Handbook.  Moreover, with regard to all Plaintiffs, Public Resource repeats its suggestion that "contribution" should be defined as any assistance, advice, financial support, labor, effort, or expenditure of time that is provided toward a project or goal.  In the teleconference on May 7th, ASHRAE responded that it would provide documents and communications pertaining to all the works that it asserts in Exhibit C to the Complaint and pertaining to all relevant government entities.

      **(k)**     Public Resource's Request for Production No. 13

Plaintiffs object to Public Resource's RFP No. 13 (requesting all documents concerning any contributions from any not-for-profit entity in connection with the standards process for each work at issue) on the grounds that the question of whether a contributor to the development of one of the works at issue qualifies as a not-for-profit entity is a legal question.  But there is no disputed legal issue on this point.  Plaintiffs may rely on a contributor's own characterization of itself as a not-for-profit entity (as, for example, on the entity's website) in order to respond to this request.

      **(l)**     Public Resource's Request for Production Nos. 14 and 15

Plaintiffs' responses to Public Resource's RFPs Nos. 14 and 15 (concerning requests of contributions and offers of contributions regarding any standard at issue) are insufficient in various respects.  Repeating Public Resource's earlier point, "contribution" should be defined as any assistance, advice, financial support, labor, effort, or expenditure of time that is provided toward a project or goal.  ASTM's answer to Public Resource's RFP No. 15 fails to state whether it will produce documents and, if so, which documents it will produce in compliance with this request.  In the teleconference on May 7th, ASTM stated that it did not believe that this request sought relevant information. But the question of whether the individuals and organizations who contributed to each work at issue and have properly assigned their contributions to Plaintiffs is central to the determination of whether Plaintiffs hold copyright in the works that underlie this lawsuit. Instances where individuals or organizations were solicited for contributions or offered contributions are very likely to lead to relevant, admissible evidence, because it is precisely these scenarios in which someone is likely to have contributed to a standard without an assignment of rights.  NFPA says that it will provide the same ROCs and ROPs, but as we have explained that is likely to be insufficient given the fact that this request asks for communications from individuals or entities to Plaintiffs, not simply general reports that may or may not comment on such communications.  ASHRAE failed to offer documents other than those related to the 2010 edition of Standard 90.1, but in the teleconference on May 7th it agreed to provide responsive documents for all the works that it asserts in Exhibit C to the Complaint.

May 25, 2014
Page 11

      **(m)**    Public Resource's Request for Production No. 16

Plaintiffs provided only very general objections and failed to indicate whether they will produce documents in response to Public Resource's RFP No. 16 (requesting all communications criticizing Plaintiffs' position in this litigation).  In the teleconference, Plaintiffs objected that this request does not seek relevant information.  To the contrary, this request is plainly likely to lead to the discovery of admissible evidence because, among other reasons, persons who have participated in the standard creation process or participated in lobbying activities are likely to be aware of factors related to their participation that would be relevant to this case, and they may also have raised those issues in communications criticizing Plaintiffs.  Those communications may also lead to the discovery of admissible evidence relating to Public Resource's counterclaims and defenses, such as fair use, unclean hands, copyright misuse, trademark misuse, and lack of irreparable injury.

      **(n)**    Public Resource's Request for Production No. 17

Plaintiffs' responses to Public Resource's RFP No. 17 (requesting all communications by Plaintiffs regarding this litigation) are insufficient because they provide only a few statements on Plaintiffs' websites.  This request encompasses not only general press releases but also communications to individuals and organizations.  For instance, this request would cover any communications to the American National Standards Institute (ANSI).  Similarly, the request would also call for communications in response to questions by the public or by the press.  In the teleconference on May 7th, Plaintiffs objected to the relevance of this request.  But responsive documents are likely to lead to the discovery of admissible evidence relating to Public Resource's counterclaims and defenses, such as fair use, unclean hands, copyright misuse, trademark misuse, and lack of irreparable injury.  Plaintiffs therefore must produce them.

      **(o)**    Public Resource's Interrogatory No. 2

ASTM's and ASHRAE's responses to Public Resource's Interrogatory No. 2 appeared deficient in that they do not list the particular legal authorities that have incorporated the standards at issue.  Public Resource believes that Plaintiffs must know which legal authorities have incorporated the standards at issue so as to respond to Public Resource's Interrogatory No. 1.  In the teleconference on May 7th, Plaintiffs clarified that they have no further sources of information as to which standards have been incorporated by reference, other than what they have already provided.  To the extent that Plaintiffs discover further information regarding incorporation of their standards that they were not previously aware was in their possession, Public Resource has requested that they supplement their responses.

      **(p)**    Public Resource's Interrogatory No. 3

NFPA and ASHRAE's responses to Public Resource's Interrogatory No. 3 (requesting

May 25, 2014
Page 12

identification of any person who participated in the standards process) are deficient.  NFPA simply provided general categories of persons, which is insufficient to actually identify anyone who participated in these processes, and Public Resource therefore requests either a supplement or a Fed. R. Civ. P. 33(d) response.  ASHRAE said that it will provide the membership roster for the project committee for the 2010 edition of Standard 90.1, but it failed to offer similar documents for the other editions or standards that it purports to assert in this litigation.  It must therefore provide more complete responses.  In the teleconference on May 7th, both NFPA and ASHRAE agreed to provide Public Resource with complete Rule 33(d) responses for all works listed in Exhibits B and C to the Complaint, respectively.

**(q)**     Public Resource's Interrogatory No. 4

ASTM's response to Public Resource's Interrogatory No. 4 (requesting identification of any communications in which Plaintiffs or someone acting on Plaintiffs' behalf promotes the incorporation of standards by reference) is deficient, at least to the extent that other organizations such as ANSI promote the incorporation by reference of ASTM's standards into law, and to the extent that ASTM's Washington D.C. office works with members of the government to promote the incorporation of its standards by reference.  ASHRAE's response is deficient to the extent that it generally admits that it promotes the incorporation by reference of its standards into law, but fails to identify such communications or state that it will provide documents identifying these communications.  In the teleconference on May 7th, Plaintiffs asserted that they had no additional responsive communications other than those they had identified. If Plaintiffs discover more responsive communications, they must supplement their responses.

**(r)**     Public Resource's Interrogatory No. 5

NFPA and ASHRAE's responses to Public Resource's Interrogatory No. 5 (requesting identification of all contributions that any person made to the standards process of their standards) were deficient because they failed to identify any specific contributions or individuals. In the teleconference on May 7th, both NFPA and ASHRAE agreed to provide Public Resource with complete Fed. R. Civ. P. 33(d) responses for all works they listed in Exhibits B and C to the Complaint, respectively.

**(s)**     Public Resource's Request for Admission

As we discussed in our call on April 21, the parties have agreed to cooperate to limit the number of times that they must repeat searches of their respective documents and records.  In order to accomplish this, Public Resource must know the scope of the claims and particular works that Plaintiffs are asserting in this lawsuit.  Both NFPA and ASHRAE admit that the claims that they currently assert against Public Resource are limited to the standards they listed in Exhibits B and C to the Complaint.  Previously, ASTM had made no such admission.  At the

May 25, 2014
Page 13

meet and confer on May 7th, however, ASTM clarified that its claims are limited to the standards listed in Exhibit A to the Complaint.

**3.**     **Protective Order**

After meeting and conferring on the matter, the parties have not been able to reach an agreement on the terms of the proposed protective order.  We believe the primary remaining issues of disagreement are 1) whether to eliminate the Highly Confidential designation, as we propose, and 2) whether the burden of preserving a confidentiality designation should be on the designating party, as we propose.  Plaintiffs stated in the May 7th teleconference that they would recommend how best to bring this matter to the attention of the Court for resolution.

Sincerely,

FENWICK & WEST LLP


/s/ Andrew P. Bridges