# EXHIBIT 14

# Fenwick
**FENWICK & WEST LLP**

555 CALIFORNIA STREET, 12TH FLOOR   SAN FRANCISCO, CA 94104
TEL: 415.875.2300   FAX: 415.281.1350   WWW.FENWICK.COM

September 5, 2014

KATHLEEN LU

EMAIL KLU@FENWICK.COM
Direct Dial (415) 875-2434

**VIA E-MAIL**

Jonathan H. Blavin
Munger, Tolles & Olson LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907

      Re:    <u>ASTM, et al. v. Public.Resource.Org</u>

Dear Mr. Blavin:

      This letter is in response to your letter of August 22, 2014, regarding the above-captioned matter.

**1.    NFPA's Report on Proposals (ROPs) and Report on Comments (ROCs)**

      Public Resource appreciates NFPA's production of the ROPs and ROCs, but maintains that the ROPs and ROCs alone do not satisfy Public Resource's discovery requests for which NFPA has offered these reports. In particular, these documents are simply summaries of the actual communications or documents implicated by some of Public Resource's requests for production, and do not include the actual communications or documents themselves. For instance, Public Resource's request no. 10 calls for actual communications, including meeting and conference call minutes and notes. Moreover, Public Resource's requests nos. 12, 13, and 15 call for all responsive documents and communications, not simply summaries.

**2.    NFPA's production of its database that tracks incorporation by reference**

      Public Resource appreciates NFPA's agreement to produce its database that tracks certain instances of incorporation by reference of the standards at issue. As Public Resource stated in its letter of May 23, to the extent that NFPA discovers that it possesses documents that identify relevant legal authorities, NFPA is obligated to produce those documents.

**3.    NFPA's production of its most recent unaudited financial statement**

      Public Resource appreciates NFPA's agreement to produce its most recent unaudited financial statement. NFPA stated that this is the only document that includes revenue projections for any of the standards at issue. If in the course of further investigation NFPA discovers that other documents exist that contain revenue projections for any of the standards at issue, it is

Jonathan H. Blavin
September 5, 2014
Page 2

obligated to produce them.

**4.     NFPA's production of licenses and agreements**

As Public Resource stated in its letter of May 23, for all responses in which NFPA has agreed to produce responsive agreements or licenses, including Public Resource's requests nos. 2, 4, 6, and 18, the agreements or licenses that are produced must be complete and effective, which means they must be signed.  However, Plaintiffs have expressed concern that, in instances where the number of responsive (signed or assented) agreements or licenses is high for any one particular form, this could result in a burdensome production.  Public Resource therefore proposes that for form agreements where there were no changes to the agreements from the form, NFPA may produce one form agreement plus a list of signatories.  Public Resource reserves the right to request the production of the executed agreement for any particular signatories.

**5.     NFPA's refusal to produce relevant and responsive documents**

Public Resource rejects NFPA's proposal to exclude from its production documents related to this lawsuit or the possibility of legal action against Public Resource or Mr. Malamud, as well as NFPA's proposal to exclude Maureen Brodoff as a custodian.  NFPA's position appears to disregard whether the document or communication in question is privileged or not, and instead proposes to exclude a large number of documents that are not only responsive to Public Resource's requests, but directly relevant to Public Resource's defenses. Such an omission would significantly prejudice Public Resource.  Documents related to this lawsuit or the possibility of legal action against Public Resource or Mr. Malamud are likely to contain evidence regarding Public Resource's counterclaims and defenses, including NFPA's waiver, estoppel, copyright misuse, trademark misuse, lack of irreparable injury, lack of likelihood of confusion, and Public Resource's fair use.  Maureen Brodoff is similarly likely to have non-privileged documents that are relevant to Public Resource's counterclaims and defenses, as Ms. Brodoff has regularly made public statements regarding the effect to NFPA's business model of free access to its standards.  See, for instance, the following public statements: https://www.youtube.com/watch?v=py8EIjCSF6Y&list=PL773105AC9C53263F&index=37&feature=plpp_video; https://www.youtube.com/watch?v=LPI_j4VMbJ4&list=PL773105AC9C53263F&index=36&feature=plpp_video.  The issues that Ms. Brodoff discusses are business issues, not legal advice, and she has published and spoken on these issues for over a decade, therefore she should be expected to hold a significant number of non-privileged documents and communications.

Similarly, Public Resource rejects NFPA's proposal that it will not include on a privilege log any documents that are protected by the attorney-client privilege or the work product doctrine that were created on or after January 1, 2013.  This apparently arbitrary date is over 8 months before when Plaintiffs filed suit against Public Resource and lacks any reasonable

Jonathan H. Blavin
September 5, 2014
Page 3

justification.  As with the category of documents discussed in the paragraph above, communications prior to the filing of this lawsuit are likely to contain both legal and business determinations. The business determinations are not privileged, and are directly relevant to some of Public Resource's defenses.  NFPA, and Plaintiffs generally, must log all communications for which they assert privilege prior to the filing of the complaint in this action, so that Public Resource is provided fair opportunity to evaluate those communications and challenge the assertion of privilege where necessary.

Related to this issue, Public Resource requests that NFPA informs it of the date that Plaintiffs entered into a common interest agreement, so as to allow Public Resource to determine the scope of any asserted privilege.

**6.     NFPA's custodians and search terms**

As stated above, Public Resource maintains that the ROPs and ROCs alone are not sufficient to satisfy the document requests for which they have been provided, particularly where "all documents and communications" are requested, and the ROPs and ROCs constitute only summaries of the requested documents and communications.  Moreover, there are a number of requests for which the ROPs and ROCs are not responsive.  For this reason, search terms must be run as to all of Public Resource's requests, not simply requests nos. 7-9, and appropriate custodians must be identified.

Regarding NFPA's identification of only three custodians – Don Bliss, Greg Cade, and Meghan Housewright – it is not credible that this limited number of custodians would be sufficient to respond to Public Resource's document requests, particularly given the size and scope of NFPA's operations.  In addition to Ms. Brodoff, NFPA should also add as custodians Jim Shannon, Jeff Sargent, and Tim McClintock.  Moreover, NFPA has promised to provide an organizational chart, which has not yet been provided.  Public Resource expects that this chart will help it identify additional custodians, though Public Resource nevertheless maintains that NFPA must take responsibility to identify a broader set of custodians that are more likely to produce a complete response to Public Resource's requests.  Public Resource reserves the right to identify additional custodians as discovery continues.

Regarding search terms, Public Resource proposes adding the following as general search terms:

Malamud
Public Resource
Public.Resource
Public.Resource.Org
"PRO" (restricted to all caps to target the acronym)

Jonathan H. Blavin
September 5, 2014
Page 4

    "P.R.O."
    Law.Resource.Org
    "code of federal regulations" (regardless of capitalization)
    IBR
    CFR
    incorporat! /5 reference
    Standard! /5 law

    For the government employee emails, Public Resource proposes that NFPA conduct a preliminary search of custodians email accounts to identify all .gov email addresses (which should be designed to capture all .gov addresses, including state and municipal address like .ca.gov addresses). Using that list of identified government email accounts, NFPA should add the email address they found and the names of the persons using such addresses to the final search terms list. This way, the final search will capture emails where (1) the government-affiliated person used a different (non-.gov) email address to communicate, or (2) the captured email displays a government employee's name but not email address. We propose adding to the government communications keywords list the following:

    incorporat! /5 standard
    incorporat! /5 reference
    refer! /5 standard
    includ! /5 standard
    adopt /5 standard
    IBR /5 standard
    standard /5 regulation
    NFPA /5 regulation
    NFPA /5 standard!
    NFPA /5 code
    NFPA /5 reference
    add! /5 standard!
    add! /5 code
    adopt! /5 standard!
    adopt! /5 code
    includ! /5 NFPA
    add! /5 NFPA
    adopt! /5 NFPA
    CFR
    IBR
    incorporat!
    refer! /5 code
    inclu! /5 code

Jonathan H. Blavin
September 5, 2014
Page 5

>       adopt /5 code
>       regul! /5 code

If NFPA believes any of these terms are overbroad, please explain your reasoning.

**7.     Public Resource's collection and production**

As an initial matter, Public Resource disputes NFPAs characterization of its position regarding document production. During the May 7 teleconference, Public Resource proposed a significant number of compromises with regard to Plaintiffs' requests for production, and stated explicitly at that teleconference concern regarding Plaintiffs' failure to reciprocate. With regard to Plaintiffs' requests for production nos. 15-25 concerning Public Resource's counterclaims and defenses, Public Resource objected on the grounds that the requests seek attorney work product, including the mental impressions of its attorneys, and these requests are premature in that Public Resource is still in the process of researching and developing its counterclaims and defenses, and the vast majority of the documents responsive to this request are in Plaintiffs' possession, not Public Resource's possession. However, Public Resource has already begun its rolling production, having produced over 166,000 pages to date, and as part of this rolling production documents responsive to these requests will be included, subject to the aforementioned objections and reserving all rights.

Regarding Plaintiffs' request for production no. 6, as stated previously, Public Resource objects to this request, among other reasons, because it will be unduly burdensome to produce every single document that could possibly relate to the reformatting of the standards at issue or that references the procedures used. Public Resource has agreed to produce documents that explain the process Public Resource employed to reformat the standards at issue generally, and Public Resource is willing to conduct a reasonable search and to produce all documents directly relating to the reformatting of the particular standards at issue.

Regarding Plaintiffs' request for production no. 31, Public Resource has clarified that it does not use Google Analytics or competing tools, and so the information that NFPA seeks is not available. Public Resource has gone beyond its obligations by offering to generate a report specifying the number of times each standard was downloaded. Public Resource is under no obligation to create a report that is any more detailed. NFPA has not provided any justification for why greater detail is necessary, or even relevant or useful to its claims. Similarly, the burden of producing Public Resource's server logs far outweighs any relevancy or value to NFPAs claims, especially given the limited issues that are actually contested in this case. Like donor information, production of server logs would compromise the constitutional rights and privacy rights of Public Resource's users. Moreover, there is no simple way to separate logs relating to the standards at issue from the logs relating to the many other resources on the Public Resource website. Finally, we are skeptical that you have any intent to review or make use of the server

Jonathan H. Blavin
September 5, 2014
Page 6

logs if they were provided to you, given the immense size of these logs, the technical knowledge required to understand them, and the dearth of value that they could provide in this case. Because the burden far outweighs the relevance, and because Public Resource has already agreed to generate a report regarding downloading of the standards at issue, Public Resource will not produce its server logs.

                            Sincerely,

                            FENWICK & WEST LLP


                            Kathleen Lu

KL:rp