# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>          Plaintiffs/<br>          Counter-Defendants,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>          Defendant/<br>          Counter-Plaintiff. | Case No. 1:13-cv-01215-EGS |

## DECLARATION OF CHRISTIAN DUBAY
## IN SUPPORT OF PLAINTIFF NATIONAL FIRE PROTECTION ASSOCIATION

I, Christian Dubay, declare as follows:

1. I am Vice President, Codes and Standards, and Chief Engineer for Plaintiff National Fire Protection Association ("NFPA"). My duties include managing and administering the NFPA standards development process. I have held this position since 2007. The following facts are based upon my own personal knowledge, and if called upon to do so, I could and would testify competently hereto.

2. I understand that Public Resource has requested production of the assignments of rights from persons who participated in the standards development processes for the standards at issue in this case. I also understand that Public Resource has asked the Court to compel production of these documents.

24652454.2

3. The NFPA does not accept comments or proposals in the standards development process without receiving an assignment of rights from the contributor. In addition, the NFPA requires persons who sit on committees in the standards development process to execute an assignment of rights.

4. The NFPA generally requires all assignments of rights to be executed on its standard form agreement. In all my time at NFPA, I am aware of only one instance in which a contributor to a NFPA standard did not use the standard form to assign his rights to the NFPA; however, this individual was required to assign all rights to NFPA.

5. Prior to 2010, the signed assignment forms were submitted physically by contributors. These documents are physically stored by the NFPA, as part of the paper and microfilm records from the standards development process from each standard. These records are voluminous and as a result some are stored offsite. For example, the records for one round of the National Electrical Code standards development process typically fill over 30 file boxes. When all the standards at issue in the case are considered, the total amount of paper records would number in the hundreds of boxes and run to tens of thousands of pages.

6. Producing the physical copies of the executed assignment of rights forms would be an onerous and burdensome undertaking. This would require physically retrieving the paper and microfilm records, and reviewing these to identify the assignments of rights forms. This would take more than a thousand hours of staff time.

7. For standards development since 2010, the records are stored electronically. These records are similarly voluminous to the pre-2010 records, and reviewing them to identify assignments of rights forms would require a similar amount of effort and staff time.

8. I understand that Public Resource has also asked for documents sufficient to identify the contributions in support of the standards at issue in this case, as well as documents concerning contributions and offers of contributions to the standards process for the standards at issue in this case.

9. The NFPA Reports on Proposals ("ROPs") and Reports on Comments ("ROCs") provide sufficient information to answer these requests. These reports function as comprehensive records of the standards development process, including the identities of all contributors to the process.

10. The ROPs and ROCs compile and reproduce every proposal and every comment that is received or developed when the standards are being revised or developed. These documents also identify the individuals or entities that made each proposal or comment.

11. When multiple entities submit the identical proposal or comment, such as through a letter-writing campaign, the ROP or ROC prints that proposal or comment along with the identities of those who submitted it.

12. The ROPs and ROCs also identify the members of each committee involved in the standards development process and the votes of the committee on each proposal and comment.

13. While there are additional documents used in the standards development process, such as agendas, minutes, sign in sheets, and materials distributed at the meetings, the information in these documents is generally duplicative of the information that is ultimately compiled in the ROPs and ROCs.

14. For standards developments that took place prior to 2010, documents beyond the ROPs and ROCs are physically stored, in a site separate from the NFPA headquarters, in either

paper or microfilm copies. For the standards development processes since 2010, the documents are stored electronically. These documents are extremely voluminous, as described above in paragraph 5.

15.     Producing these records would be an extremely onerous task. Transporting the physical documents to a site where they can be reviewed, reviewing them and copying them for production would take a significant amount of cost and staff time. In addition, reviewing the electronic records from the post-2010 time period would be extremely burdensome and time-consuming, given the volume of the documents.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 30, 2014

_____
Christian Dubay