**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL; <br><br> NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and <br><br> AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS, <br><br>        Plaintiffs/ <br>       Counter-Defendants, <br><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br>        Defendant/ <br>       Counter-Plaintiff. | Case No. 1:13-cv-01215-TSC-DAR |

## PLAINTIFF ASTM'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY

Plaintiff/Counter-Defendant American Society for Testing and Materials d/b/a ASTM International ("ASTM") opposes the Motion to Compel Discovery filed by Defendant/Counter-Plaintiff Public.Resource.Org, Inc. ("Public Resource"). The Court should deny Public Resource's Motion because Public Resource failed to comply with Local Civil Rule 7(m), which requires parties to make a good faith effort to narrow the areas of disagreement and to determine if there is opposition to the relief sought before filing a non-dispositive motion. Even if the Court does not deny Public Resource's Motion on that basis, the Motion should be denied because Public Resource should not be permitted to force ASTM to conduct burdensome, expensive searches for certain categories of documents that are of limited or no relevance or to produce documents that are not in ASTM's possession, custody or control.

I.   **The Court Should Deny Public Resource's Motion for Failure to Comply with Local Civil Rule 7(m).**

Local Civil Rule 7(m) requires that, "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." L. CIV. R. 7(m). The purpose of the Rule is to facilitate the informal resolution of disputes without court intervention, or "at least to reduce or narrow the issues the Court will consider." *United States ex rel. Pogue v. Diabetes Treatment Cntrs. of Am.*, 235 F.R.D. 521, 529 (D.D.C. 2006). The Rule also requires that a party "shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." L. CIV. R. 7(m). A non-dispositive motion that does not comply with the Local Rule will be denied. *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999).

As explained in detail below, Public Resource never informed Plaintiffs that it would be filing a motion to compel, let alone "discuss[ed] the anticipated motion" with Plaintiffs. L. CIV. R. 7(m). Because it failed to initiate the required discussion, Public Resource also failed to include a statement in its Motion regarding whether the Motion was opposed.

ASTM served its objections and responses to Plaintiffs' Requests for Production on March 24, 2014. *See* Declaration of Kathleen Lu (Dkt. No. 41-2) ("Lu Decl."), Ex. 5. ASTM and Public Resource began discussing issues related to ASTM's document production shortly thereafter, in April 2014. *See* Declaration of Jordana S. Rubel ("Rubel Decl."), attached as Exhibit A hereto, ¶4. In May 2014, the parties exchanged letters regarding their discovery responses and objections and their planned document productions, then discussed the issues raised in those letters in a telephone conference, and finally exchanged letters in which they stated their positions on the issues they had discussed. *Id.* at ¶5; *see also* Lu Decl., Exs. 7-9.

After not having heard anything further from Public Resource's counsel relating to its responses and objections to Public Resource's Requests for Production since May 2014, on August 15, 2014, ASTM's counsel sent a letter to Public Resource's counsel stating that it assumed that Public Resource's silence on these issues indicated its agreement to ASTM's proposals and providing a list of custodians and search terms that ASTM proposed using to search its electronic documents.  *See* Lu Decl., Ex. 10.

On August 22, 2014, Public Resource responded to ASTM's letter indicating that it did not agree to ASTM's proposals and proposing additional search terms for use by ASTM.  *See* Lu Decl., Ex. 22.  On August 28, ASTM's counsel responded to the portion of Public Resource's letter that discussed proposed custodians and search terms and proposed a compromise to resolve this dispute.  *See* Lu Decl., Ex. 13.  This was the last communication ASTM's counsel had with Public Resource's counsel relating to ASTM's responses to Public Resource's discovery requests prior to Public Resource's filing of its Motion.

In sum, Public Resource never threatened to file a motion to compel in any of the aforementioned letters, and the parties had not participated in any telephone or in-person communications regarding the discovery issues since May 2014.  Rubel Decl. ¶¶6-7.  As a result, Plaintiffs were surprised when they received the Motion to Compel on September 15, 2014, just one day before a hearing before Judge Chutkan on Plaintiffs' Motion for a Protective Order and Public Resource's Motion for an Extension of Time.  It appears as though Public Resource's decision to hastily file the Motion the day before the hearing before Judge Chutkan reflected either its insecurity regarding the strength of the positions it had taken in opposition to Plaintiffs' Motion for a Protective Order and a desire "to go on offense" and/or a realization that if its Motion for an Extension of Time was not granted, then it would have a very small window for

filing a motion to compel.  Neither of these rationales for filing the Motion excuses Public

Resource's non-compliance with Local Rule 7(m).

Moreover, Public Resource's failure to comply with the Local Rule was not a mere

technicality.  The correspondence between the parties clearly demonstrates that the parties were

not in fact at an impasse on all of the issues raised in Public Resource's Motion.  In fact, ASTM

agreed to produce certain categories of documents that Public Resource moves to compel in its

Motion.  Specifically, the search terms ASTM agreed to use in its August 28, 2014 letter include

several terms that are designed to identify documents relating to this litigation.  *See* Lu Decl., Ex.

13.  ASTM was also continuing to try to negotiate with Public Resource regarding search terms

and custodians, such that the door was still open for Public Resource to suggest specific search

terms that relate to the categories of documents it seeks to compel ASTM to produce.  *Id.*

Because Public Resource never advised Plaintiffs of its intention to file the Motion before

it was filed, Public Resource failed to comply with the Local Rule.  The Court should deny

Public Resource's Motion on that basis alone.

## II.   Public Resource's Requests for Production Are Overly Broad and Unduly Burdensome, Particularly In Light of the Limited Relevance of the Information They Would Provide to Public Resource's Claims and Defenses.

Federal Rule of Civil Procedure 26(b)(2)(iii) dictates that discovery shall be limited by

the Court "if it determines that . . . the burden or expense of the proposed discovery outweighs its

likely benefit, taking into account the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in the litigation, and the importance of the

proposed discovery in resolving the issues."  Therefore, even if a small subset of documents

sought by Public Resource might cross the low threshold of relevance, the marginal benefits of

this information to Public Resource must be weighed against the burden or expense that

4

discovery of this information would impose upon ASTM.  *See In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 302 (D.D.C.  2000) (denying motion to compel production of proposed discovery of marginal relevance due to burden it would impose on plaintiff).

As discussed in detail below, Public Resource's Requests for Production are extremely broad and would require ASTM to conduct extremely burdensome searches to identify documents that are, at most, marginally relevant to the issues in dispute in this case.  As a result, ASTM objected to searching for and producing certain categories of documents.  Far from simply asserting boilerplate objections regarding burden and relevance, as reflected in the correspondence between the parties, ASTM explained in detail the bases for its objections to Public Resource on numerous occasions and attempted to cooperate with Public Resource to narrow the requests so that they were reasonable in scope.[1]  Public Resource refused to compromise on any of these issues despite its inability to provide specific, persuasive reasons why the breadth of its requests was warranted.  Public Resource's attempt to impose onerous discovery burdens on ASTM in the hopes of finding additional documents that are of marginal relevance, at best, should be denied.

**A. Public Resource's Demand that ASTM Search For Each and Every License Agreement Signed by Thousands of Individuals is Unduly Burdensome.**

Public Resource requested that ASTM produce "[a]ll documents constituting, comprising or concerning licenses with respect to any Work-At-Issue."  *See Lu Decl.*, Ex. 2 (Request No. 18).  ASTM objected to this request on a number of grounds, including that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and the term "licenses" is vague and ambiguous.  *See Lu Decl.*, Ex. 5.

---

[1] To the extent Public Resource criticizes ASTM for asserting boilerplate burden and relevance objections, it is worth noting that Public Resource objected to many of Plaintiffs' Requests for Production using the exact same language that ASTM used in its objections to Public Resource's Requests for Production.  *See Rubel Decl.*, Ex. 1.

As ASTM explained in its May 23 letter, Lu Decl., Ex. 8, ASTM enters into licenses with many different third parties.  One type of license is used by members of the public who want to view, download and/or print its standards.  ASTM has individual use, single site and multi-site licenses for use with these customers, but each category of customer must agree to the same licensing terms.  ASTM agreed to produce this form license agreement to which customers must agree when downloading copies of ASTM's standards and, indeed, has already produced this document.  *See* Rubel Decl. ¶8, Ex. 3.  ASTM also enters into licenses with members of the public who want to view copies of ASTM's standards that have been incorporated by reference into federal regulations at no cost on ASTM's Reading Room.  The terms of this license, which ASTM has already produced, do not vary based on the licensee.  *See* Rubel Decl. ¶9, Ex. 4.

Customers assent to the licenses with ASTM by agreeing to a click-through agreement on ASTM's website.  As explained in the declaration of Norma Jane Hair, Director of Information Technology at ASTM, it would be extremely burdensome for ASTM to obtain documents that show each individual customer who has assented to these license agreements over the internet.  *See* Declaration of Norma Jane Hair ("Hair Decl."), attached as Exhibit B hereto, ¶5.  ASTM is particularly reluctant to engage in an expensive, burdensome search process where Public Resource provided no persuasive explanation about what it can learn from reviewing each signed version of every license with thousands of customers that it cannot learn from reviewing the language of the form agreement.

ASTM also receives many requests from entities or individuals for permission to use portions of its standards in publications, presentations, and for other non-commercial purposes.  *See* Hair Decl. ¶6.  ASTM's granting of permission to use content from its standards at issue could be considered a "license."  It would be burdensome to search for and review each

communication relating to a permission request for over 200 standards at issue. *Id*. ASTM indicated in its May 23 letter that it would produce representative examples of these types of permissions, which is a reasonable compromise. *See* Lu Decl., Ex. 8.

Public Resource has separately asked for documents concerning revenue ASTM has earned from the publication, sale, distribution, display or other dissemination of any of the standards at issue, Lu Decl., Ex. 2 (Request No. 11), and ASTM has agreed to produce these documents. Thus, Public Resource does not need to see individual licenses to obtain information about Plaintiffs' revenues from the sale of the standards at issue or the alleged harm to Plaintiffs that will result from lost sales or licensing opportunities. Moreover, the prices for purchasing or downloading copies of the standards at issue are not even listed in the license agreements; they are listed on ASTM's website next to each of ASTM's standards. *See* Rubel Decl. ¶8, Ex. 3.

To support its onerous demand for copies for every license instead of the form licenses and representative samples of other licenses, Public Resource simply states that individual license agreements are relevant to the issue of whether Plaintiffs are entitled to injunctive relief and the market harm analysis of the fair use defense. However, Public Resource fails to provide any explanation for this statement. For an injunction to be appropriate, a plaintiff must show, among other things, that it has suffered an irreparable injury and that the remedies available at law are inadequate to compensate for that injury. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). Public Resource failed to explain what information it would obtain from reviewing individual licenses (and not available from the form licenses agreed to by the individuals) that relates to whether ASTM has suffered an irreparable injury or whether there are remedies available at law to compensate it for such an injury. Likewise, the fair use analysis includes an inquiry of whether the use of the copyrighted material affects the market for the

original.  *See Television Digest v. U.S. Tel. Ass'n*, 841 F. Supp. 5, 11 (D.D.C. 1993) (holding that the use of the copyrighted work was not a fair use as a matter of law because it supplanted part of the normal market for the copyrighted work).  Public Resource fails to explain what information it would obtain from reviewing individual signed licenses, as opposed to form licenses, that relates to the (frankly undeniable) question of whether Public Resource's copying and posting of ASTM's copyrighted standards affects ASTM's ability to sell those same standards.

Public Resource hypothesizes that license agreements "may shed light on whether and on what terms Plaintiffs-Counterdefendants authorize government entities to incorporate their works into law or otherwise use them." Mot. at 5.  There are more direct methods of making that inquiry than requiring Plaintiffs to engage in the burdensome, expensive process of collecting and producing all documents relating to all individual licenses into which ASTM has entered that relate to the standards at issue.  For starters, Public Resource could request license agreements that authorize government entities to incorporate Plaintiff's works-at-issue into law or otherwise use them.  Responding to such a narrowly tailored request would not be unduly burdensome for ASTM because, as it stated in the Complaint, "ASTM has not voluntarily transferred or licensed any of its rights in these standards to any governmental agencies whose regulations incorporate ASTM's standards." Compl. ¶57.  Thus, this subset of documents that Public Resource is seeking simply does not exist.

Finally, Public Resource has identified no individual licenses that it needs to review in connection with its copyright or trademark misuse claims.  The form license agreements, which contain the terms of the license agreements into which ASTM has entered, provide Public Resource with any information that would be necessary to determine whether ASTM is licensing its standards in a manner that violates public policy.

Because Public Resource provides no credible explanation as to how information derived from individual licenses is relevant to its claims or defenses and not available from the already-produced form agreements, ASTM should not be required to engage in the burdensome process of searching for and producing the individual licenses.

**B. Public Resource's Demand That ASTM Search for Each and Every Individual Assignment Record Signed By Thousands of Individuals Is Unduly Burdensome.**

ASTM does not dispute that ownership of copyrights can be relevant to certain copyright infringement cases.  However, courts have questioned the wisdom of permitting a non-author, like Public Resource, to raise arguments about ownership as a means for challenging a copyright holder's right to enforce its copyright.  *See, e.g., Law Enforcement Training & Research Ass'n v. San Francisco*, 1991 U.S. App. LEXIS 21503, *3-4 (9th Cir. Sept. 4, 1991); *Int'l Code Council, Inc. v. Nat'l Fire Protection Assoc., Inc.*, 2006 U.S. Dist. LEXIS 13783, *66 n.33 (N.D. Ill. Mar. 27, 2006).  Moreover, Public Resource has written and commented extensively about the issues involved in this litigation and has never once discussed ownership of the copyrights as a genuine issue of dispute.  Instead, Public Resource's legal position is that the standards at issue are in the public domain because they were incorporated by reference into laws.  *See, e.g.,* Rubel Decl. ¶¶12-13, Exs. 6-7.

Given the marginal relevance of the ownership issue in this particular case, ASTM objects to broad requests propounded by Public Resource that would require ASTM to conduct exhaustive, expensive searches of records related to ownership of its standards.

ASTM members are the creators and authors of the ASTM standards.  In its May 23, 2014 letter to Public Resource, ASTM explained that since 2004, ASTM has required every member of ASTM to complete a form agreement on an annual basis transferring and assigning to ASTM any and all interest, including copyright, in the development or creation of ASTM

standards.  *See* Lu Decl., Ex. 8; *see also* Hair Decl. ¶7.  Most of ASTM's members indicate their acceptance of the terms of this agreement by "click through" on their computers.  *See* Hair Decl. ¶8.  ASTM agreed to produce a copy of this form agreement and, indeed, has already produced this document.  *See* Lu Decl., Ex. 8; *see also* Rubel Decl. ¶10, Ex. 5.

Some ASTM members print out and sign by hand the assignment agreement.  ASTM retains those paper documents for a period of time consistent with its document retention policy. *See* Hair Decl. ¶9.  As discussed in ASTM's May 23, 2014 letter, in compliance with Rule 34, ASTM made these paper documents, which number in the tens of thousands, available for inspection by Public Resource and invited Public Resource to request that ASTM produce copies of any specific documents within this category that Public Resource identifies as responsive.  *See* Lu Decl., Ex. 8; *see also White v. United States Catholic Conf.*, 1998 U.S. Dist. LEXIS 11832, *11 (D.D.C. May 26, 1998) ("Fed. R. Civ. P. 34 requires only that the documents be made available for inspection and copying.").  Although ASTM invited Public Resource to inspect its paper documents over four months ago, Public Resource has not taken advantage of this offer.  If Public Resource intended to rely on these documents in a significant manner, it is hard to imagine it would not have already inspected these documents.

Public Resource claims that looking at the form agreement does not evidence the assent of individual contributors, the specific terms of the assignment or any defects in the assignment. As explained above, each ASTM member completes the identical form agreement, so the terms of the assignment do not vary.  Likewise, any defect in the assignment would be based on a defect in the language of the form agreement and would be evident from the form agreement.[2]

---

[2] Furthermore, even if only one of the members who participated in drafting each standard at issue assigned its copyright to ASTM, that would be sufficient to make ASTM a joint owner of the copyright in each of the standards at issue and would give ASTM standing to assert its claims

ASTM believes that its representation, about which Norma Jane Hair has provided a sworn declaration, that all members must submit the assignment form to be approved for or to be able to renew their membership, should be sufficient to demonstrate that the individual contributors assented to the form agreement. *See* Hair Decl. ¶7.  ASTM is also willing to produce reports from its internal record-keeping system that indicate the name of each member who has clicked through the assignment form on ASTM's website or sent in a hard copy of the signed assignment form for the period of time in which it has used its current record-keeping system. *See* Hair Decl. ¶10.  ASTM believes these documents will be sufficient to respond to Public Resource's request.

Under these circumstances, where Public Resource does not claim to be one of the authors or owners of the copyrighted works-at-issue and Public Resource's position has always been that the standards-at-issue are in the public domain because they were incorporated by reference into laws, there is simply no justification for compelling ASTM to do anything more than what it has already done or offered to do.

C. **Public Resource's Demand that ASTM Search For and Produce Documents Relating to All Financial Contributions Made in Connection with the Development and Distribution of Hundreds of Standards is Unduly Burdensome.**

Public Resource requested that Plaintiffs produce the following categories of documents:

- Documents sufficient to identify all Contributions in support of the Standards Process for each Work at Issue;
- All documents concerning any Contributions received from any governmental entity in connection with the Standards Process of each Work at Issues;

---

of infringement of those standards.  *See, e.g., Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) ("a joint owner is not required to join his other co-owners in an action for infringement").  Thus, at most, ASTM should be required to produce one assignment form for each of the standards at issue.

- All documents concerning any Contributions received from any not for profit entity in connection with the Standards Process of each Work at Issues;
- All documents constituting, comprising or concerning communications requesting Contributions of any form from any Person in connection with the Standards Process of each Work at Issues; and
- All documents concerning offers of Contributions from any Person in connection with the Standards Process of each Work at Issues.

*See* Lu Decl., Ex. 2 (Request Nos. 4, 12, 13, 14, 15).  Contribution is defined as "assistance, advice, financial support, labor, effort, or expenditure of time" and "Standards Process" is defined as "development, creation, drafting, revision, editing, transmission, publication, distribution, display or dissemination of a standard."  *Id.*  Thus, Public Resource seeks production of all documents relating to the assistance, advice, financial support, labor, effort or expenditure of time by any individual or entity in connection with the development, creation, drafting, revision, editing, transmission, publication, distribution, display or dissemination of the 229 ASTM standards that are at issue in this litigation.

Despite the breadth of these requests, ASTM agreed to produce most of the categories of requested documents to the extent any such documents are within their possession or control. ASTM objected to the term "Contribution" on the grounds that it was ambiguous and that it would be unduly burdensome to collect all such documents.  ASTM stated in its responses to Public Resource's requests that it would construe the term Contribution to mean the provision of assistance, advice or labor.  *See* Lu Decl., Ex. 5.  In effect, ASTM excluded financial support, effort and expenditure of time from the definition of the term "Contribution."

Specifically, ASTM objects to having to search for and produce all documents that relate to financial contributions to the development, creation, drafting, revision, editing, transmission, publication, distribution, display and dissemination of each of the 229 ASTM standards at issue

in this litigation.  As ASTM has explained, ASTM has 143 different Technical Committees that draft the different ASTM standards, with each revision cycle of the standards taking 8-12 months to complete.  Compl. ¶51.  ASTM incurs substantial costs for the infrastructure it has developed to assist with the development of the standards, including resources for collaboration, organizing meetings and balloting, as well as for the publication and distribution of its standards, including costs for editorial, production, distribution, and promotion of its standards.  Compl. ¶53.

As drafted, Public Resource's document requests are overly broad and unduly burdensome.  They seek all documents relating to every financial expenditure made by ASTM or any other individual or entity in connection with the standard development and distribution process for the standards at issue.  This would include all documents related to membership fees paid by tens of thousands of members of ASTM's Technical Committees, all documents related to any donations ASTM receives that relate to its core activities of developing and distributing standards, and all documents related to the purchase of copies of the standards at issue.  It is not feasible for ASTM to search for and review all of documents in this broad category.

ASTM asked Public Resource several times to narrow its requests to cover only documents that are relevant to issues that are in dispute in this litigation.  Public Resource originally indicated that it sought documents related to "Contributions" to the standards at issue to determine whether the standards are original works of authorship and who are the authors of the standards.  Whether a person provided financial support relating to the creation process has no bearing on whether that person is an author of the work.  Unless the work for hire exception applies, the author of a work is "the person who 'actually created the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection.'" *Staggers v. Real Authentic Sound*, 77 F. Supp. 2d 57, 62 (D.D.C. 1998) (quoting *Cmty for*

*Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)).  Similarly, financial contributions relating to the distribution of a copyrighted work have no bearing on the ownership of the copyright in the work.  Thus, financial contributions related to the development and distribution of the standards at issue are not relevant to the issue of copyright authorship or ownership.

Public Resource claims in its Motion that financial contributions are relevant to Plaintiffs' allegations that they will suffer financial harm unless they can enforce the copyright in their standards, including Plaintiffs' allegations that more of their revenue comes from the sale and licensing of their standards than from financial contributions.  Mot. at 8.  However, Public Resource's requests seek documents that go far beyond simply providing documents sufficient to support Plaintiffs' allegations in the Complaint.  Although the Requests for Production Public Resource has propounded to date do not request such documents, if asked, ASTM would be willing to provide summary documents that show the total amount of income received from its sale and licensing of standards and the total amount of revenue received from other sources.

Public Resource also claims that financial contributions ASTM receives are relevant to whether Plaintiffs have suffered financial harm, which relates to whether Plaintiffs are entitled to injunctive relief and to the fair use analysis.  The chief financial harm that results from Public Resource's infringement is ASTM's inability to sell or license copies of its own standards due to Public Resource providing copies of those standards to the public for free and encouragement of the public to make free use of them.  Public Resource fails to explain how the financial harm ASTM has suffered or may suffer in the future based on Public Resource's infringing acts relates to any financial contributions ASTM received in connection with its development and distribution of the standards at issue. Similarly, the fair use analysis includes an inquiry of whether the use of the copyrighted material affects the market for the original.  *See Television*

*Digest*, 841 F. Supp. at 11 (holding that the use of the copyrighted work was not a fair use as a matter of law because it supplanted part of the normal market for the copyrighted work).  The financial contributions ASTM has received related to its creation and distribution of the standards do not relate to whether Public Resource's copying of the standards affects ASTM's ability to sell those standards.

If the crux of Public Resource's request is to determine whether any government entity or other entity has paid ASTM to develop any of the Standards at Issue, it is unduly burdensome for ASTM to have to produce all documents relating to financial contributions in connection with the Standards at Issue to answer that question.  Public Resource can obtain this information in a manner that is much less burdensome.  *See* Fed. R. Civ. P. 26(b)(2) (discovery of a document may be limited where it is obtainable from another source that is less burdensome).  ASTM should not be required to engage in an exhaustive, expensive search process to locate all documents relating to all financial contributions to hundreds of standards at issue to locate this subset of documents that are marginally relevant, at best.

### D.  ASTM Has Agreed to Produce Documents Relating to This Litigation.

Public Resource blatantly mischaracterizes the position ASTM has expressed regarding the search for and production of documents relating to this litigation.  In its August 28 letter, ASTM agreed to search the email records of four of its custodians for documents that include a number of different categories of search terms, including search terms designed to identify documents that relate to this litigation.  These search terms include: Malamud, Public Resource, Public.Resource, Public.Resource.org and P.R.O.  *See* Lu Decl., Ex. 13.  Thus, ASTM has explicitly agreed to search for documents that relate to this litigation.  ASTM could have

clarified its position on this point had Public Resource discussed this issue with ASTM prior to filing its Motion, as required by the Local Rules.

Many of the documents relating to this litigation or the possibility of taking legal action against Public Resource or Carl Malamud will be subject to the attorney-client, work product and/or common interest privilege. In particular, the vast majority of documents in the possession of ASTM's General Counsel, Thomas O'Brien, that discuss the litigation or the possibility of litigation will be privileged. As a result, in its May 23, 2014 letter, ASTM informed Public Resource that it would not include Mr. O'Brien as a custodian when searching for documents relating to the litigation. *See* Lu Decl., Ex. 8.

Courts routinely permit parties to exclude from production categories of documents that were likely prepared during litigation or in anticipation of litigation. *See, e.g., Arista Records LLC v. Lime Grp. LLC*, 2011 WL 813481 (S.D.N.Y. Feb. 28, 2011) (imposing limits on party's request to require opposing party to review documents referring to that party because "such a review is likely to involve communications that occurred during the pendency of this lawsuit and center on the subject of this lawsuit"); *S.E.C. v. Thrasher*, 1996 WL 125661 (S.D.N.Y. Mar. 20, 1996) (denying party's request for "production of all communications between defense counsel concerning the lawsuit"); *In re Imperial Corp. of Am.*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) (permitting party "to assert privilege and work-product protections on a categorical basis," which included party's request to categorically exclude any documents that were "prepared to assist in anticipated or pending litigation"). Thus, ASTM's exclusion of Mr. O'Brien's documents is justified.

Public Resource also mischaracterizes the parties' discussions regarding logging privileged documents. All of the parties agree that it would be unduly burdensome to log all

privileged communications; the only dispute relates to the date after which the parties will not

log privileged documents.  In its May 2, 2014 letter, Public Resource proposed that all parties

refrain from logging communications with counsel that post-date the filing of the complaint "so

as to save unnecessary labor."  *See* Lu Decl., Ex. 7.  Presumably, Public Resource chose that date

because the bulk of its communications with counsel occurred after that date.  In its May 23

letter, ASTM stated in response that it would agree to Public Resource's proposal not to log all

documents protected by the attorney-client privilege or work product protection but requested

that the cut-off date be January 1, 2013, which was the day after Public Resource posted

Plaintiffs' standards on its website, which triggered Plaintiffs' communications with counsel.  Lu

Decl., Ex. 8.  ASTM continues to believe that using the January 1, 2013 date will ease the

considerable burden of logging many privileged documents in its possession from the months

between the posting of Plaintiffs' standards and the date the Complaint was filed.

### E.  ASTM Does Not Have Documents in its Possession That Identify All Legal Authorities that Have Incorporated by Reference Its Standards.

In response to Public Resource's request to produce "documents sufficient to identify

every Legal Authority that incorporates each Work-at-Issue, either expressly or by reference,"

ASTM responded that the request seeks documents already in the possession of Public Resource,

in the public domain, or that are equally available to Public Resource as they are to ASTM.  *See*

Lu Decl., Ex. 5.

On its website, Public Resource purports to identify the jurisdiction or jurisdictions that

have incorporated by reference each of the Standards at Issue.  Thus, presumably Public

Resource has already identified the government regulations that incorporate by reference the

standards at issue that are owned by ASTM.  Additionally, Carl Malamud, Public Resource's

sole employee, claims to be an expert in the process of incorporation by reference based on his

seven years of work collecting and posting legal materials that have been incorporated by reference, Dkt. 33 at 9. If this is true, Mr. Malamud should be able to compile information about the jurisdictions that have incorporated by references each standard at issue just as easily as ASTM could compile this information.

Furthermore, as ASTM has explained to Public Resource repeatedly, including in phone calls, in its response to Interrogatory No. 2, and in its May 23, 2014 letter, ASTM does not keep track of the incorporation by reference of its standards. *See* Rubel Decl., Ex 2 and Lu Decl., Ex. 8. Thus, ASTM has no documents in its possession or control that identify all government agencies that have incorporated by reference the standards at issue. ASTM advised Public Resource that the National Institute of Standards and Technology maintains a database of standards referenced in the Code of Federal Regulations, which is available to the public and from which Public Resource can ascertain information about which ASTM standards have been incorporated by reference in federal regulations just as easily as ASTM can ascertain this information. *See* Rubel Decl., Ex. 2.

Public Resource's argument that Plaintiffs can identify the regulations in which standards have been incorporated by reference more easily than Public Resource can because they can "refer to their own communications with government entities and other records" amounts to nothing more than wild speculation. *See* Mot. at 12.

Although ASTM does not have any documents identifying which regulations have incorporated ASTM standards by reference, as discussed in its August 28, 2014 letter, ASTM agreed to produce communications between several identified custodians and government employees that contain specific terms relating to the incorporation by reference of ASTM's standards. *See* Lu Decl., Ex. 13. To the extent that any of these documents identify specific

Case 1:13-cv-01215-TSC-DAR  Document 47  Filed 10/02/14  Page 19 of 20

regulations in which ASTM's standards have been incorporated by reference, Public Resource

may refer to those documents just as easily as ASTM.

<strong><u>CONCLUSION</u></strong>

As discussed in detail above, the Court should deny Public Resource's Motion solely on

the ground that it failed to comply with the Local Rules.  Even if the Court considers the

substance of Public Resource's Motion, the Court should deny the Motion because any benefit of

the marginally relevant information Public Resource has requested is greatly outweighed by the

burden and expense that the discovery of this information would impose upon ASTM.

October 2, 2014                                  Respectfully submitted,

                                                 /s/ J. Kevin Fee
                                                 Michael F. Clayton (D.C. Bar: 335307)
                                                 J. Kevin Fee (D.C. Bar: 494016)
                                                 Jordana S. Rubel (D.C. Bar: 988423)
                                                 Morgan, Lewis & Bockius LLP
                                                 1111 Pennsylvania Ave., N.W.
                                                 Washington, D.C. 20004
                                                 Telephone: 202.739.5215
                                                 Email: mclayton@morganlewis.com
                                                 jkfee@morganlewis.com
                                                 jrubel@morganlewis.com

                                                 *Counsel For American Society For Testing And
                                                 Materials d/b/a/ ASTM International*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Opposition to Public Resource's Motion to Compel was served this 2nd day of October, 2014 via CM/ECF upon the following:

**Counsel for Public.Resource.Org, Inc.:**

Andrew Bridges

Kathleen Lu

David Halperin

Mitchell L. Stoltz

Corynne McSherry

Joseph Gratz

Mark Lemley

**Counsel for National Fire Protection Association, Inc.**

Anjan Choudhury

Kelly M. Klaus

Jonathan Blavin

Thane Rane

**Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers:**

Jeffrey Bucholtz

Kenneth Steinthal

Joseph Wetzel

Andrew Zee

_/s/ Jordana Rubel_____
Jordana Rubel