# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL; <br><br> NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and <br><br> AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS, <br><br>       Plaintiffs/ <br>       Counter-Defendants, <br><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br>       Defendant/ <br>       Counter-Plaintiff. | Case No. 1:13-cv-01215-TSC-DAR |

## DECLARATION OF JORDANA S. RUBEL
## IN SUPPORT OF ASTM'S OPPOSITION TO MOTION TO COMPEL DISCOVERY

I, Jordana S. Rubel, declare as follows:

1.      I am an attorney at the law firm of Morgan, Lewis & Bockius LLP.  I serve as counsel for Plaintiff American Society for Testing and Materials ("ASTM") in this action.  I am a member in good standing of the bar of this Court.  The matters set forth herein are based upon my own personal knowledge, and if called upon to do so, I could and would testify competently thereto.

2.      Attached hereto as Exhibit 1 is a true and correct copy of "Defendant-Counterclaimant Public.Resource.Org., Inc.'s Response to Plaintiff-CounterDefendants' First Set of Requests for Production of Documents and Things (Nos. 1-35)."

3.     Attached hereto as Exhibit 2 is a true and correct copy of "Plaintiff American Society for Testing and Materials' Objections and Responses to First Set of Interrogatories."

4.     ASTM and Public.Resource.Org, Inc. ("Public Resource") began discussing issues related to ASTM's document production in April 2014.

5.     In May 2014, ASTM and Public Resource's counsel exchanged letters regarding their respective discovery responses and their planned document productions, discussed those issues in a telephone conference, and exchanged a second round of letters stating their positions after the telephone conference.

6.     Public Resource's counsel never informed ASTM's counsel of its intent to file a motion to compel prior to its filing of the motion.

7.     Public Resource's counsel did not discuss any alleged deficiencies in ASTM's document production with ASTM's counsel in any telephone conference or in-person communications after May 2014.

8.     Attached hereto as Exhibit 3 is a true and correct copy of the form license agreement to which customers must agree when downloading copies of ASTM's standards, which ASTM has produced in this litigation.

9.     Attached hereto as Exhibit 4 is a true and correct copy of the form license agreement to which members of the public must agree to view copies of ASTM's standards that have been incorporated by reference into federal regulations at no cost on ASTM's Reading Room.  ASTM has produced this document in this litigation.

10.     Attached hereto as Exhibit 5 is a true and correct copy of the form agreement that ASTM members must agree to when initiating or renewing their memberships with ASTM on an annual basis.  ASTM has produced this document in this litigation.

2

11.     I am familiar with Public Resource and its website located at

https://law.resource.org.

12.     Attached hereto as Exhibit 6 is a true and correct copy of an essay that is posted

on the Public Resource website at https://law.resource.org.  Public Resource produced this

document in this litigation.

13.     Attached hereto is as Exhibit 7 is a true and correct copy of a certificate Public

Resource attached to one of the ASTM standards at issue.  I caused this copy to be made from

the website https://law.resource.org/pub/us/cfr/manifest.us.html.

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct.

Executed on October 2, 2014

Jordana S. Rubel

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL; <br><br> NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and <br><br> AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC. <br><br><div align="right">Plaintiffs,</div><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br><div align="right">Defendant.</div> | Case No. 1:13-cv-01215-EGS <br><br> **DEFENDANT-COUNTERCLAIMANT PUBLIC.RESOURCE.ORG, INC.'S RESPONSE TO PLAINTIFF-COUNTERDEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-35)** <br><br> Filed:   August 6, 2013 |
| PUBLIC.RESOURCE.ORG, INC., <br><br><div align="right">Counterclaimant,</div><br> v. <br><br> AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL; <br><br> NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and <br><br> AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC. <br><br><div align="right">Counterdefendants.</div> | |

**PROPOUNDING PARTY**:         Plaintiffs-Counterdefendants American Society for Testing and Materials d/b/a ASTM International; National Fire Protection Association, Inc.; and American Society of Heating, Refrigerating, and Air-Conditioning Engineers, Inc.

**RESPONDING PARTIES**:        Defendant-Counterclaimant Public.Resource.Org, Inc.

**SET NUMBER**:                One (Nos. 1-35)

Defendant-Counterclaimant Public.Resource.Org, Inc. ("Public Resource") responds to Plaintiffs-Counterdefendants American Society for Testing and Materials d/b/a ASTM International; National Fire Protection Association, Inc.; and American Society of Heating, Refrigerating, and Air-Conditioning Engineers, Inc.'s (collectively "Plaintiffs") First Set of Requests for the Production of Documents and Things as follows:

## <u>GENERAL OBJECTIONS</u>

1.      Public Resource objects to the requests to the extent that they are overly broad, unduly burdensome or oppressive, and to the extent they are inconsistent with, or purport to impose obligations on Public Resource beyond those set forth by, the Federal Rules of Civil Procedure, particularly Rule 34(b)(2)(D)-(E), the Local Rules of the U.S. District Court for the District of Columbia, the Federal Rules of Evidence, or any applicable regulations and case law, particularly to the extent that compliance would force Public Resource to incur a substantial expense that outweighs any likely benefit of the discovery.  Public Resource's responses, regardless of whether they include a specific objection, do not constitute an adoption or acceptance of the definitions and instructions that Plaintiffs seek to impose.

2.      Public Resource objects to each individual request to the extent that it seeks documents and information that are neither relevant to the Litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Such objections may be made to applicable requests in the short form "irrelevant".

1

3.      Public Resource objects to the requests to the extent that they purport to require production of "all documents" concerning various matters, on grounds that such requests are overly broad, unduly burdensome, duplicative, and seek production of irrelevant documents.  To the extent that Public Resource produces documents in response to such requests, they will be limited to documents sufficient to show matters that are appropriately discoverable.

4.      Public Resource objects to the requests to the extent that they seek documents and information that are not in Public Resource's possession, custody or control.  Public Resource objects to the requests on the grounds that they seek to impose obligations on Public Resource that are unduly burdensome, especially to the extent that the requested materials are publicly available or otherwise equally available to Plaintiffs, or are burdensome to search for or obtain. To the extent any documents are currently available to the public (including Plaintiffs) on the Public Resource Website, Public Resource expressly reserves the right to request cost-shifting, consistent with Section 14.A of the parties' Joint Meet-And-Confer Report filed on December 30, 2013 (Dkt. No. 29) ("Joint Meet-And-Confer Report"), prior to incurring any cost associated with producing such documents.  Public Resource further objects to the extent that the requests are overbroad.  To the extent that Public Resource agrees to produce any documents, Public Resource will produce only documents in its possession, custody or control.

5.      Public Resource objects to the requests to the extent that they seek documents and information that are protected by the attorney-client privilege, work-product doctrine, common interest privilege, or other applicable privileges or protections.  Public Resource will not produce such documents or information, and any inadvertent production is not a waiver of any applicable privilege or protection.

6.      Public Resource objects to the requests to the extent they purport to require Public Resource to provide more information than the rules and laws of the court require in claiming attorney-client privilege, work product protection, or other privileges or protections. Furthermore, Public Resource will neither produce nor log privileged communications made between Public Resource and outside counsel, or any documents protected by the work product

doctrine after commencement of the Litigation.  All such communications or documents were intended to be confidential and privileged, and they have been treated as such.  In light of the voluminous nature of such communications, including them in Public Resource's privilege log would be unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

7.      Public Resource objects to the requests on the grounds that they seek documents and information that contain or reflect sensitive private, financial or other non-public information of third parties.  Public Resource will not provide such documents or information until entry of an appropriate protective order.

8.      Public Resource objects to the requests to the extent that they purport to require Public Resource to produce documents or communications containing any information received from a third party under a nondisclosure agreement or other confidentiality obligation, or to the extent they seek documents containing confidential information that would impinge on any right to privacy and free speech of individuals, including, but not limited to, rights conferred by the federal or California state constitutions.  Public Resource also objects to producing the contents of any part of any agreement between it and a third party, which, by its terms, is subject to confidentiality.  Public Resource will provide confidential information only after entry of an appropriate protective order, and only to the extent Public Resource can do so consistently with its legal and confidentiality obligations.

9.      Public Resource objects to the requests, and each and every instruction and definition, to the extent that the scope of materials Plaintiffs seeks is not limited to a relevant and reasonable period of time.  Except as specifically noted, Public Resource's production of documents will be limited to the period between April 13, 2007 and the date of production.

10.     Public Resource objects to each request to the extent it is vague, ambiguous, or fails to describe the requested documents with reasonable particularity, on the grounds that such request requires Public Resource to speculate as to the documents Plaintiffs seek.

11.     Public Resource objects to the definition of "Public Resource," "Defendant," "You" and "Your" on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome, particularly to the extent that it purports to include any affiliates, assignees, joint ventures, partners, principals, employees, officers, agents, legal representatives or consultants when such persons are acting outside a capacity of representing Public Resource; or any person "purporting to act on [Public Resource's] behalf" who is not an agent of Public Resource.

12.     Public Resource objects to the definition of "Plaintiffs' Trademarks" on the grounds that it assumes factual or legal conclusions that have not yet been adjudicated.

13.     Public Resource objects to Plaintiffs' Instruction No. 15 to the extent that it is inconsistent with, or purports to impose obligations on Public Resource beyond those set forth by, the Federal Rules of Civil Procedure, particularly Rule 34, the Local Rules of the U.S. District Court for the District of Columbia, the Federal Rules of Evidence, or any applicable regulations and case law.

14.     Public Resource objects to each request to the extent that it is unreasonably cumulative and/or redundant of another document request.

15.     Public Resource objects to each request to the extent that it is compound, complex or otherwise unintelligible.

16.     Public Resource objects to each request to the extent that it calls for a legal conclusion in connection with the identification of potentially responsive documents.  Public Resource's responses and/or production of documents pursuant to Plaintiffs' requests shall not be construed as agreement with or the provision of any legal conclusion concerning the meaning or application of any terms used in such requests.

17.     Public Resource's statement that it will produce documents in response to any request for production is not a representation that any such documents exist, but rather that responsive, non-privileged documents will be produced if such documents are discovered in the course of a reasonably diligent search, consistent with the General Objections and based upon Public Resource's understanding of the request.

18.     Public Resource objects to the use of the phrases "including but not limited to" and "includes, but is not limited to" as overly broad and unduly burdensome.

19.     Public Resource objects to the requests to the extent they purport to require Public Resource to produce all documents as Concordance upload files, with metadata in an ASCII delimited .dat file.  Consistent with Section 14.A of the Joint Meet-And-Confer Report, Public Resource reserves the right to produce documents in another reasonably usable format, including native format, where appropriate.

20.     Public Resource objects to each request to the extent it seeks to impose any continuing duty to supplement or provide further responses, or otherwise seeks to impose on Defendant discovery obligations exceeding or inconsistent with the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the District of Columbia, the Federal Rules of Evidence, or any applicable regulations and case law.

21.     Public Resource objects to Plaintiffs' instruction that all responsive documents be produced within thirty (30) days after service of Plaintiffs' requests.  Public Resource will produce documents on a rolling basis.

22.     Without waiving any of the foregoing General Objections, each of which is expressly incorporated into each of Public Resource's objections and responses below as if fully stated there, Public Resource responds to each request subject to the following additional express reservation of rights:

    a)     The right to object on any applicable ground to the admission into evidence or other use of any of the documents produced in response to any request at the trial of this matter, at any other proceeding in this matter or in any other action; and

    b)     The right to object on any applicable ground at any time to any demand for further responses to any request or to any other discovery procedures involving or relating to the subject matter of any request.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1:

All documents relating to Public Resource obtaining copies of any of the Standards at Issue, or any other standards issued by any Plaintiff.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable time period or scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous.  Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public Resource objects that use of the term "copies" renders the request vague and ambiguous, requires legal conclusions, and is argumentative with respect to whether an electronic file is a "copy" within the definition in Section 101 of the Copyright Act.

Subject to, and without waiving, the foregoing objections, Public Resource responds as follows:  Public Resource will produce responsive, non-privileged documents that refer to Public Resource obtaining copies of standards issued by Plaintiffs, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.

## REQUEST FOR PRODUCTION NO. 2:

All licenses, including but not limited to shrinkwrap or clickwrap licenses, that Public Resource entered into in connection with obtaining copies of any of the Standards at Issue, or any other standards issued by any Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable time period or scope.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous.  Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public Resource further objects that use of the terms "shrinkwrap" and "clickwrap" renders the request vague and ambiguous and impermissibly requires Public Resource to speculate as to the documents Plaintiffs seek.  Public Resource objects that use of the term "copies" renders the request vague and ambiguous, requires legal conclusions, and is argumentative with respect to whether an electronic file is a "copy" within the definition in Section 101 of the Copyright Act.  Public Resource objects to this request as unreasonably duplicative of Request No. 1.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it is not aware of any responsive documents.


**REQUEST FOR PRODUCTION NO. 3:**

All documents relating to Public Resource's copying of any of the Standards at Issue, or any other standards issued by any Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable time period or scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous.  Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public Resource

objects that use of the term "copying" renders the request vague and ambiguous, requires legal conclusions, and is argumentative with respect to whether an electronic file is a "copy" within the definition in Section 101 of the Copyright Act.

Subject to, and without waiving, the foregoing objections, Public Resource responds as follows:  Public Resource will produce responsive, non-privileged documents that refer to Public Resource copying standards issued by Plaintiffs, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.


**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to Public Resource's posting of copies of any Standards at Issue, or any other standards issued by any Plaintiff, on the Public Resource Website or the Internet Archive Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable time period or scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous.  Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public Resource objects that use of the term "copies" renders the request vague and ambiguous, requires legal conclusions, and is argumentative with respect to whether an electronic file is a "copy" within the definition in Section 101 of the Copyright Act.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public sources, including but not limited to the Public Resource Website and the Internet Archive Website.  Public Resource objects to the Request to the extent

that it purports to require production of documents not in Public Resource's possession, custody or control.

Subject to, and without waiving, the foregoing objections, Public Resource responds as follows:  Public Resource will produce responsive, non-privileged documents that reference standards issued by Plaintiffs that are available on the Public Resource Website, including the archived version of the Public Resource Website available on the Internet Archive Website, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.

**REQUEST FOR PRODUCTION NO. 5:**

All documents relating to any use by Public Resource of Plaintiffs' Trademarks, regardless of whether you consider it to be a use in commerce, a trademark use, or a fair use.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable time period or scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that the request is overbroad, oppressive, unduly burdensome, vague and ambiguous to the extent it purports to require the production of "all" documents related to "any use" of Plaintiffs' Trademarks and fails to specify the documents sought with reasonable particularity.  Public Resource objects that the request is vague and ambiguous and impermissibly requires Public Resource to speculate as to the documents Plaintiffs seek, including to the extent the definition of "Plaintiffs' Trademarks" renders the meaning of the phrase "any use by Public Resource of Plaintiffs' Trademarks" vague, ambiguous, circular and unintelligible and requires Public Resource to assume facts or legal conclusions not yet adjudicated.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from

public sources, including but not limited to the Public Resource Website and the Internet Archive Website.

Subject to, and without waiving, the foregoing objections, and to the extent that Public Resource understands the request, Public Resource responds as follows:  Public Resource will produce responsive, non-privileged documents containing Plaintiffs' names and logos, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.


**REQUEST FOR PRODUCTION NO. 6:**

All documents relating to Public Resource's efforts to reformat any Standards at Issue, or any other standards issued by any Plaintiff, including by rekeying text, converting graphics, resetting mathematical formulas, or adding metadata to the document headers. This request includes, but is not limited to, documents concerning the processes employed by Public Resource and any quality control measures Public Resource used to prevent the content of the Standards at Issue from being altered.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous. Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public Resource objects that use of the terms "rekeying text", "converting graphics", and "resetting mathematical formulas" renders the request vague and ambiguous and impermissibly requires Public Resource to speculate as to the documents Plaintiffs seek.  Public Resource objects that the request is compound, complex and unintelligible.  Public Resource objects to the Request to the extent that it assumes facts or legal conclusions not yet adjudicated.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds as follows:  Public Resource will produce responsive, non-privileged documents sufficient to explain the process employed by Public Resource to reformat standards issued by Plaintiffs, if any, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to show the number of times each of the Standards at Issue has been viewed and/or downloaded from the Public Resource Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects to the request to the extent it seeks information whose disclosure would impinge on any right of privacy or free speech or free association, including, but not limited to, rights conferred by the Constitution.  Public Resource objects to the request as overbroad and unduly burdensome to the extent it purports to require Public Resource to furnish website statistics not reasonably available to it.  Public Resource objects to the Request to the extent that it assumes facts not yet adjudicated.

Subject to, and without waiving, the foregoing objections, Public Resource responds as follows:  Public Resource will produce a report specifying the numbers of times each Standard at Issue was downloaded per month for the period from April 13, 2007 to the date of production.

**REQUEST FOR PRODUCTION NO. 8:**

Documents sufficient to show the sources and amounts of all financial contributions Public Resource has received since the date when it first posted a copy of any of the Standards at Issue on the Public Resource Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Public Resource incorporates here each of the General Objections.  Public Resource objects that the request seeks irrelevant documents.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the term "financial contributions" renders the request vague and ambiguous.  Public Resource will interpret "financial contributions" to mean donations.  Public Resource objects that use of the term "copy" renders the request vague and ambiguous, requires legal conclusions, and is argumentative with respect to whether an electronic file is a "copy" within the definition in Section 101 of the Copyright Act.  Public Resource objects to the request to the extent it seeks information whose disclosure would impinge on any right of privacy or free speech or free association, including, but not limited to, rights conferred by the Constitution.  Public Resource will not produce documents that identify its donors.  Public Resource objects to the Request to the extent that it assumes facts or legal conclusions not yet adjudicated.

Subject to, and without waiving, the foregoing objections, Public Resource responds as follows:  Public Resource will produce non-privileged documents sufficient to identify the date and amount of donations that specifically mention the Standards at Issue and that were received by Public Resource since the Standards at Issue first became available through the Public Resource Website, to the extent such donations exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to identify the sources and amounts of all donations or revenues received via the Public Resource Website since the date when Public Resource first posted a copy of any of the Standards at Issue on the Public Resource Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Public Resource incorporates here each of the General Objections. Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable time period or scope. Public Resource objects that the request seeks irrelevant documents. Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections. Public Resource objects that use of the term "copy" renders the request vague and ambiguous, requires legal conclusions, and is argumentative with respect to whether an electronic file is a "copy" within the definition in Section 101 of the Copyright Act. Public Resource objects to the request to the extent it seeks information whose disclosure would impinge on any right of privacy or free speech or free association, including, but not limited to, rights conferred by the Constitution. Public Resource will not produce documents that identify its donors. Public Resource objects to the Request to the extent that it assumes facts or legal conclusions not yet adjudicated. Public Resource objects to this request as unreasonably duplicative of Request No. 8.

Subject to, and without waiving, the foregoing objections, Public Resource responds as follows: Public Resource will produce non-privileged documents sufficient to identify the date and amount of donations and revenue that specifically mention the Standards at Issue and that were received by Public Resource via the Public Resource Website since the Standards at Issue first became available through the Public Resource Website, to the extent such donations and revenue exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.

**REQUEST FOR PRODUCTION NO. 10:**

All documents referring or relating to, or comprising statements, inquiries, comments, or other communications by or from employees, customers, distributors, suppliers, or others, relating to the similarity or dissimilarity of the standards posted by Public Resource and the Standards at Issue or any logos relating thereto, or evidencing any confusion, suspicion, belief, or doubt on the part of said third parties as to the relationship either between Public Resource and one or more of Plaintiffs or between their respective products or services, including any misdirected complaints or inquiries.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Public Resource incorporates here each of the General Objections. Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable time period or scope. Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections. Public Resource objects that use of the terms "similarity" and "dissimilarity" renders the request vague and ambiguous. Public Resource objects that use of the terms "evidencing," "confusion", "suspicion", "belief" and "doubt" renders the request vague, ambiguous and unintelligible and purports to require Public Resource to speculate as to the beliefs of third parties. Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control. Public Resource objects that the request is compound, complex and unintelligible. Public Resource objects to the Request to the extent that it assumes facts or legal conclusions not yet adjudicated.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds as follows: Public Resource will produce responsive, non-privileged communications comparing the standards available through the Public Resource Website to the Standards at Issue, as well as any responsive, non-privileged communications sent to Public Resource but addressed to one or more of Plaintiffs, to the extent

such documents exist and can be located after a reasonable search for documents in Public

Resource's possession, custody or control.

**REQUEST FOR PRODUCTION NO. 11:**

All documents relating to communications regarding the Litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Public Resource incorporates here each of the General Objections.  Public Resource

objects to the request as overbroad and unduly burdensome, including to the extent it is not

limited to a reasonable time period or scope.  Public Resource objects that the request is

overbroad, oppressive, unduly burdensome, vague and ambiguous to the extent it purports to

require the production of "all" documents related to the "Litigation" and fails to specify the

documents sought with reasonable particularity.  Public Resource objects to the request to the

extent it seeks information protected by the attorney-client privilege, attorney work product

doctrine, or any other applicable privileges or protections.  Consistent with General Objection

No. 6, Public Resource will neither produce nor log privileged communications made between

Public Resource and outside counsel, as well as documents protected by the work product

doctrine or other privileges, to the extent they occurred or were made or created after

commencement of the Litigation.  Public Resource objects to the request to the extent it seeks

information whose disclosure would impinge on any right of privacy or free speech or free

association, including, but not limited to, rights conferred by the Constitution.  Public Resource

objects to the Request to the extent that it purports to require production of documents not in

Public Resource's possession, custody or control.  Public Resource objects to the request as

oppressive and unduly burdensome to the extent that it seeks documents that are equally

available to Plaintiffs from public or other sources, including but not limited to the Public

Resource Website.  Public Resource objects that the request is unreasonably duplicative of each

and every other request.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource will produce nonprivileged documents in response to this request, to the extent that such documents are not readily available to Plaintiffs from public  sources.  To the extent that such documents implicate communications with third parties, Public Resource shall produce such documents only after affording such third parties notice and the opportunity to object.

**REQUEST FOR PRODUCTION NO. 12:**

All documents relating to communications between You and existing or potential donors regarding Public Resource's plans to copy or post and/or Public Resource's actual copying or posting of any of the Standards at Issue or the standards of any Standards Development Organization on the Public Resource Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable time period or scope.  Public Resource objects that the request seeks irrelevant documents.  Public Resource objects that use of the undefined term "Standards Development Organization" renders the request vague, ambiguous and unintelligible, as well as overbroad, oppressive and unduly burdensome to the extent it purports to require the production of "all" documents related to copying or posting the standards of "any" Standards Development Organization.  Public Resource objects that use of the term "potential donors" renders the request vague and ambiguous.  Public Resource will interpret "potential donors" to mean persons from whom Public Resources solicited donations.  Public Resource objects that use of the terms "copy" and "copying" renders the request vague and ambiguous, requires legal conclusions, and is argumentative with respect to whether an electronic file is a "copy" within the definition in Section 101 of the Copyright Act.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any

16

other applicable privileges or protections.  Public Resource objects to the request to the extent it

seeks information whose disclosure would impinge on any right of privacy or free speech or free

association, including, but not limited to, rights conferred by the Constitution.  Public Resource

objects to this request as unreasonably duplicative of Request Nos. 3 and 4.

Subject to, and without waiving, the foregoing objections, and to the extent Public

Resource understands the request, Public Resource will not produce documents in response to

this request.


**REQUEST FOR PRODUCTION NO. 13:**

All documents relating to any communications sent or received by You, including

between You and any governmental agency or legislative body, regarding incorporation of

standards or codes by reference into any government laws, statutes, regulations, or ordinances.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Public Resource incorporates here each of the General Objections.  Public Resource

objects to the request as overbroad and unduly burdensome, including to the extent it is not

limited to a reasonable time period or scope.  Public Resource objects that use of the terms

"standards" and "codes" renders the request vague and ambiguous.  Public Resource will

interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public

Resource will interpret "codes" to be a synonym of "standards".  Public Resource objects that the

request is overbroad, oppressive, unduly burdensome, vague and ambiguous to the extent it

purports to require the production of "all" documents related to the "incorporation of standards

or codes" and fails to specify the documents sought with reasonable particularity.  Public

Resource objects to the request to the extent it seeks information protected by the attorney-client

privilege, attorney work product doctrine, or any other applicable privileges or protections.

Subject to, and without waiving, the foregoing objections, and to the extent Public

Resource understands the request, Public Resource responds as follows:  Public Resource will

produce responsive, non-privileged communications sent to or by Public Resource referring to

the incorporation by reference of standards issued by Plaintiffs into any government laws, statutes, regulations, or ordinances, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.

**REQUEST FOR PRODUCTION NO. 14:**

All documents identified in your responses to interrogatories or your initial disclosures in this Litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public Resource objects to this request as unreasonably duplicative of other requests.

Subject to, and without waiving, the foregoing objections, Public Resource responds as follows:  Public Resource will produce responsive, non-privileged documents specifically identified in its responses to interrogatories or Rule 26(a) initial disclosures in this Litigation, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.

**REQUEST FOR PRODUCTION NO. 15:**

All documents relating to Public Resource's counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports

to require production of "all documents" related to Public Resource's counterclaims without specifying such documents or counterclaims with reasonable particularity.  The request is vague, hopelessly overbroad and impossible to interpret objectively.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource.  Public Resource objects to this request as unreasonably duplicative of each and every other request.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.


**REQUEST FOR PRODUCTION NO. 16:**

All documents relating to Public Resource's defense that Plaintiffs lack ownership of the copyrights in the Standards at Issue.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports to require production of "all documents" related to Public Resource's defense that Plaintiffs lack ownership of the copyrights in the Standards at Issue without specifying such documents with reasonable particularity.  The request is vague, hopelessly overbroad and impossible to interpret objectively.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable

privileges or protections.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource. Public Resource objects to this request as unreasonably duplicative of each and every other request.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.


**REQUEST FOR PRODUCTION NO. 17:**

All documents relating to Public Resource's defense that the doctrine of fair use bars Plaintiffs' copyright claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports to require production of "all documents" related to Public Resource's defense that the doctrine of fair use bars Plaintiffs' copyright claims without specifying such documents with reasonable particularity.  The request is vague, hopelessly overbroad and impossible to interpret objectively. Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public

Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource. Public Resource objects to this request as unreasonably duplicative of each and every other request.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.

**REQUEST FOR PRODUCTION NO. 18:**

All documents relating to Public Resource's defense that the doctrine of copyright misuse bars Plaintiffs' copyright claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports to require production of "all documents" related to Public Resource's defense that the doctrine of copyright misuse bars Plaintiffs' copyright claims without specifying such documents with reasonable particularity.  The request is vague, hopelessly overbroad and impossible to interpret objectively.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource. Public Resource objects to this request as unreasonably duplicative of each and every other request.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.


**REQUEST FOR PRODUCTION NO. 19:**

All documents relating to Public Resource's defense that Defendant's lack of use in commerce bars Plaintiffs' trademark claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Public Resource incorporates here each of the General Objections. Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports to require production of "all documents" related to Public Resource's defense that Defendant's lack of use in commerce bars Plaintiffs' trademark claims without specifying such documents with reasonable particularity. The request is vague, hopelessly overbroad and impossible to interpret objectively. Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections. Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control. Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources. Public Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource. Public Resource objects to this request as unreasonably duplicative of each and every other request.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.

**REQUEST FOR PRODUCTION NO. 20:**

All documents relating to Public Resource's defense that lack of likelihood of confusion bars Plaintiffs' trademark claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports to require production of "all documents" related to Public Resource's defense that lack of likelihood of confusion bars Plaintiffs' trademark claims without specifying such documents with reasonable particularity.  The request is vague, hopelessly overbroad and impossible to interpret objectively.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource. Public Resource objects to this request as unreasonably duplicative of each and every other request.  Public Resource objects that the request is argumentative because Plaintiffs bear the burden of establishing likelihood of confusion, and even an absence of documents does not undermine Public Resource's defense.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.

**REQUEST FOR PRODUCTION NO. 21:**

All documents relating to Public Resource's defense that the doctrine of fair use bars Plaintiffs' trademark claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports to require production of "all documents" related to Public Resource's defense that the doctrine of fair use bars Plaintiffs' trademark claims without specifying such documents with reasonable particularity.  The request is vague, hopelessly overbroad and impossible to interpret objectively.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource.  Public Resource objects to this request as unreasonably duplicative of each and every other request.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.


**REQUEST FOR PRODUCTION NO. 22:**

All documents relating to Public Resource's defense that the doctrine of trademark misuse bars Plaintiffs' trademark claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports to require production of "all documents" related to Public Resource's defense that the doctrine of trademark misuse bars Plaintiffs' trademark claims without specifying such documents with reasonable particularity.  The request is vague, hopelessly overbroad and impossible to interpret objectively.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource. Public Resource objects to this request as unreasonably duplicative of each and every other request.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.


**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to Public Resource's defense that waiver and estoppel bars Plaintiffs' claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports to require production of "all documents" related to Public Resource's defense that waiver and

estoppel bars Plaintiffs' claims without specifying such documents with reasonable particularity. The request is vague, hopelessly overbroad and impossible to interpret objectively.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections. Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource.  Public Resource objects to this request as unreasonably duplicative of each and every other request.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.


**REQUEST FOR PRODUCTION NO. 24:**

All documents relating to Public Resource's defense that lack of irreparable injury bars Plaintiffs' demand for an injunction.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports to require production of "all documents" related to Public Resource's defense that defense that lack of irreparable injury bars Plaintiffs' demand for an injunction.  The request is vague, hopelessly overbroad and impossible to interpret objectively.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public

Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource.  Public Resource objects to this request as unreasonably duplicative of each and every other request.  Public Resource objects that the request is argumentative because Plaintiffs bear the burden of establishing irreparable injury, and even an absence of documents does not undermine Public Resource's defense.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.


## REQUEST FOR PRODUCTION NO. 25:

All documents relating to Public Resource's defense that an injunction would greatly harm the public interest.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it purports to require production of "all documents" related to Public Resource's defense that an injunction would greatly harm the public interest without specifying such documents with reasonable particularity.  The request is vague, hopelessly overbroad and impossible to interpret objectively.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public

Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource. Public Resource objects to this request as unreasonably duplicative of each and every other request. Public Resource objects that the request is argumentative because Plaintiffs bear the burden of establishing that an injunction would benefit the public interest, and even an absence of documents does not undermine Public Resource's defense.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will not produce any documents in response to this request.

**REQUEST FOR PRODUCTION NO. 26:**

All documents and things not produced in response to another document request that Public Resource intends to introduce or rely upon in the present litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Public Resource incorporates here each of the General Objections. Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it is not reasonably limited in time or scope and fails to specify the documents sought with reasonable particularity. Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections. Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control. Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources. Public Resource objects to the request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery by Public Resource. Public Resource expressly reserves the right to supplement its objections and responses during the course of discovery.

**REQUEST FOR PRODUCTION NO. 27:**

Documents sufficient to show any policy of Public Resource for the retention or destruction of records, documents, or files.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it is not reasonably limited in time or scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.

Subject to, and without waiving, the foregoing objections, Public Resource will produce non-privileged Public Resource document retention policies in place at the commencement of this Litigation, if any.

**REQUEST FOR PRODUCTION NO. 28:**

All documents relating to any Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad, oppressive and unduly burdensome to the extent it is not reasonably limited in time or scope and purports to require production of "all documents" related to "any" Plaintiff without specifying such documents with reasonable particularity.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections. Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.  Public Resource objects to the

request to the extent that it purports to require production of documents that have not yet been created or are the subject of ongoing discovery.  Public Resource expressly reserves the right to supplement its objections and responses to the extent it discovers additional documents that may support Public Resource's defense that an injunction would greatly harm the public interest. Public Resource objects to this request as unreasonably duplicative of each and every other request.

Subject to, and without waiving, the foregoing objections, Public Resource responds as follows:  Public Resource will produce responsive, non-privileged documents that expressly refer to the name of any Plaintiff, to the extent such documents exist, relate to the matters specifically alleged in the Complaint, and can be located after a reasonable search for documents in Public Resource's possession, custody or control, subject to Plaintiffs' agreement that they will produce all documents relating to Public Resource.

**REQUEST FOR PRODUCTION NO. 29:**

All current and past webpages from the Public Resource Website containing any reference to any Plaintiff, including all webpages that post or contain links to any of the Standards at Issue, or any other standards issued by any Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable time period or scope.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous.  Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public sources, including but not limited to webpages currently available on the Public Resource Website.  Public Resource objects that the volume of documents that are likely to be responsive to the request renders the request oppressive and

unduly burdensome to the extent that Instruction No. 28 purports to require Public Resource to produce documents as Concordance upload files, with metadata in an ASCII delimited .dat file. Consistent with General Objection No. 19, Public Resource will produce responsive, non-privileged documents, if any, in another reasonably usable format.

Subject to, and without waiving, the foregoing objections, Public Resource responds as follows:  Public Resource will produce current and past webpages from the Public Resource Website that contain any reference to any Plaintiff or any standards issued by any Plaintiff, to the extent such documents still exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.  To the extent such webpages are currently available to the public (including Plaintiffs) on the Public Resource Website or the Internet Archive Website, Public Resource expressly reserves the right to request cost-shifting, consistent with Section 14.A of the Joint Meet-and-Confer Report,  prior to incurring any cost associated with producing such documents.


**REQUEST FOR PRODUCTION NO. 30:**

All documents, including statements, press releases, or other communications, relating to any decision by Public Resource to post any of the Standards at Issue, or any other standards issued by any Plaintiff, on the Public Resource Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous.  Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.

Subject to, and without waiving, the foregoing objections, Public Resource responds as follows:  Public Resource will produce responsive, non-privileged documents referring to any decision by Public Resource to post on the Public Resource Website any standards issued by Plaintiffs, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.

**REQUEST FOR PRODUCTION NO. 31:**

All documents relating to any download from the Public Resource Website of any of the Standards at Issue, or any other standards issued by any Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous.  Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public Resource objects that use of the term "download" renders the request vague, ambiguous and unintelligible.  Public Resource objects to this request as unreasonably duplicative of Request No. 7.

Subject to, and without waiving, the foregoing objections, Public Resource responds that documents responsive to this request will be produced in response to Request No. 7.

**REQUEST FOR PRODUCTION NO. 32:**

All communications sent or received by You relating to the copying of any of the Standards at Issue, or any other standards issued by any Plaintiff, by You or any other person.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous.  Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public Resource objects that use of the term "copying" renders the request vague and ambiguous, requires legal conclusions, and is argumentative with respect to whether an electronic file is a "copy" within the definition in Section 101 of the Copyright Act.  Public Resource objects to this request as unreasonably duplicative of Request No. 3.

Subject to, and without waiving, the foregoing objections, Public Resource responds that it will produce responsive, non-privileged communications that expressly refer to Plaintiff and/or other persons copying any standard issued by any Plaintiff.


**REQUEST FOR PRODUCTION NO. 33:**

All documents that advertise or otherwise publicize Public Resource as an organization, or the Public Resource Website. This request includes, but is not limited to, press releases, announcements, articles, interviews, or speeches.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable time period or scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the terms "advertise" and "publicize" renders the request vague, ambiguous and unintelligible.  Public

Resource objects that the request seeks irrelevant documents, including documents relating to aspects of Public Resource that do not concern public laws or the incorporation by reference of standards issued by Plaintiffs into public laws.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will produce responsive, non-privileged documents that advertise the website located at https://law.resource.org, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.


**REQUEST FOR PRODUCTION NO. 34:**

All documents relating to Public Resource's efforts to determine whether the Standards at Issue, or any other standards issued by any Plaintiff, are incorporated into law, statute, regulation or ordinance by national, federal, state, or local governments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous.  Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as

oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will produce responsive, non-privileged documents that relate to Public Resource's efforts to determine whether standards issued by Plaintiffs are incorporated into any public laws, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.


**REQUEST FOR PRODUCTION NO. 35:**

All documents relating to any Plaintiff requesting, encouraging, or lobbying any national, federal, state or local government to incorporate any of the Standards at Issue into any law, statute, regulation, or ordinance.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Public Resource incorporates here each of the General Objections.  Public Resource objects to the request as overbroad and unduly burdensome, including to the extent it is not limited to a reasonable scope.  Public Resource objects to the request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections.  Public Resource objects that use of the term "standards" renders the request vague and ambiguous.  Public Resource will interpret "standards" to have the meaning set out in Paragraph 12 of the Complaint.  Public Resource objects that use of the terms "encouraging" and "lobbying" renders the request vague, ambiguous and unintelligible.  Public Resource objects to the Request to the extent that it purports to require production of documents not in Public Resource's possession, custody or control.  Public Resource objects to the request as oppressive and unduly burdensome to the extent that it seeks documents that are equally available to Plaintiffs from public and other sources.

Subject to, and without waiving, the foregoing objections, and to the extent Public Resource understands the request, Public Resource responds that it will produce responsive, non-privileged documents that refer to any Plaintiff requesting or lobbying any federal, state or local government to incorporate any of the Standards at Issue into any law, to the extent such documents exist and can be located after a reasonable search for documents in Public Resource's possession, custody or control.

Dated:  March  6, 2014                    Respectfully submitted,


                                          */s/ Andrew P. Bridges*
                                          Andrew P. Bridges (admitted)
                                          abridges @fenwick.com
                                          Kathleen Lu (admitted)
                                          klu@fenwick.com
                                          FENWICK & WEST LLP
                                          555 California Street, 12th Floor
                                          San Francisco, CA 94104
                                          Telephone:  (415) 875-2300
                                          Facsimile:   (415) 281-1350

                                          David Halperin (D.C. Bar No. 426078)
                                          davidhalperindc@gmail.com
                                          1530 P Street NW
                                          Washington, DC 20005
                                          Telephone: (202) 905-3434

                                          Mitchell L. Stoltz (D.C. Bar No. 978149)
                                          mitch@eff.org
                                          Corynne McSherry (admitted)
                                          corynne@eff.org
                                          ELECTRONIC FRONTIER FOUNDATION
                                          815 Eddy Street
                                          San Francisco, CA 94109
                                          Telephone: (415) 436-9333
                                          Facsimile:  (415) 436-9993

                                          Joseph C. Gratz
                                          jgratz@durietangri.com
                                          Mark A. Lemley
                                          mlemley@durietangri.com
                                          DURIE TANGRI LLP
                                          217 Leidesdorff Street
                                          San Francisco, CA 94111
                                          Telephone: (415) 362-6666
                                          Facsimile:  (415) 236-6300

                                          *Attorneys for Defendant-Counterclaimant*
                                          *Public.Resource.Org, Inc.*

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>        Plaintiffs/<br>        Counter-Defendants,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>        Defendant/<br>        Counter-Plaintiff. | Case No. 1:13-cv-01215-EGS |

**PLAINTIFF AMERICAN SOCIETY FOR TESTING AND MATERIALS' OBJECTIONS AND RESPONSES TO FIRST SET OF INTERROGATORIES**

Plaintiff/Counter-Defendant American Society for Testing and Materials ("ASTM") hereby objects, answers and otherwise responses to the First Set of Interrogatories (the "Interrogatories") of Defendant/Counter-Plaintiff Public.Resource.Org, Inc. ("Public Resource) as follows:

**PRELIMINARY STATEMENT**

1.      This litigation is in its early stages.  As such, in preparing these responses, ASTM has reviewed the documents and information reasonably available to it.  Discovery in this action is continuing and ASTM may learn of additional facts pertaining to the Interrogatories.  Therefore, ASTM reserves the right to change, amend, or supplement its objections and responses at a later date.  If further evidence is obtained which is not protected from discovery, ASTM reserves the right to present such evidence at the time of trial.

2.      ASTM's responses are made solely for purposes of this action, and not for purposes of any other action.  These responses are subject to all objections as to competence, relevance, materiality, propriety, admissibility, and any and all other objections and grounds that would require the exclusion of evidence disclosed herein if the evidence were produced and sought to be introduced into evidence in Court; all of which objections and grounds are specifically reserved, and may be interposed at the time of trial or other attempt to use one or more of these responses.

3.      ASTM's responses are made without in any way waiving or intending to waive, but on the contrary, preserving and intending to preserve, the following:

a.      All questions of authenticity, relevance, materiality, privilege and admissibility as evidence for any purpose of the information provided which may arise in any subsequent proceeding in, or the trial of, this or any other action;

b.      The right to object to the use of said information at any subsequent proceeding in, or the trial of, this or any other action, or any other grounds;

c.      The right to object on any other ground at any time to other interrogatories or other disclosure involving said information or subject matter thereof; and

d.      The right to make additions and/or amendments to these responses if further disclosure or investigation yields information called for in disclosure.

## **GENERAL OBJECTIONS**

The following General Objections apply to each and every separately-numbered Interrogatory and are incorporated by reference into each and every specific response as if set forth in full in each response.  From time to time, a specific response may repeat a General Objection for emphasis or some other reason.  The failure to repeat any General Objection in any specific response shall not be interpreted as a waiver of any General Objection to that response.

1.      ASTM objects to each Interrogatory to the extent that the Interrogatory attempts or purports to call for the production of any information or documentation that is privileged, that was prepared in anticipation of litigation or for trial, that reveals communications between ASTM and its co-Plaintiffs and their legal counsel, that otherwise constitutes attorney work product, privileged attorney-client communication, or that is otherwise privileged or immune from discovery. Inadvertent disclosure of any such information or documentation is not intended to and shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, or with respect to the subject matter thereof.  Nor shall such inadvertent production or disclosure waive the right of ASTM to object to the use of any such information during this action or in any other subsequent proceeding.

2.      ASTM objects to these Interrogatories, definitions, and instructions to the extent that they seek information or documents that include confidential, business proprietary information, trade secrets or other confidential research, development, financial or commercial information of ASTM.  No such confidential or proprietary information will be produced until an appropriate protective order is in place.

3.      ASTM objects to Public Resource's definitions and instructions to the extent they are beyond the scope of the Federal Rules, the Local Rules, and the Orders of this Court.

4.      ASTM objects to Public Resource's Interrogatories to the extent they are overly broad, unduly burdensome, or not relevant or likely to lead to any relevant evidence as to any party's claims, counterclaims, or defenses or the subject matter involved in the action.

5.      ASTM objects to the Interrogatories to the extent they seek documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6.      ASTM objects to the Interrogatories to the extent that they seek to impose obligations on ASTM that are unduly burdensome, especially to the extent they request information

3

that is already in the possession of Public Resource or is publicly available such that it could be derived or ascertained by Public Resource with substantially the same effort that would be required of ASTM.

7.     ASTM objects to the Interrogatories to the extent that they seek information that is not limited to a relevant and reasonable period of time.

8.     ASTM objects to Public Resource's Interrogatories to the extent that they seek to require ASTM to provide documentation other than that which may be obtained through a reasonably diligent search of ASTM's corporate records.

9.     ASTM objects to each of the Interrogatories to the extent it does not describe the information sought with sufficient particularity and/or is vague, ambiguous, or unlimited in scope.

10.     ASTM objects to each and every Interrogatory, definition, and instruction to the extent that it calls for a legal conclusion.  Any response by ASTM shall not be construed as providing a legal conclusion regarding the meaning or application of any terms or phrases used in Public Resource's Interrogatories, definitions, or instructions.

11.     ASTM objects to each and every Interrogatory, definition, and instruction to the extent that it contains subparts or a compound, conjunctive, or disjunctive request.

12.     ASTM objects to each and every Interrogatory, definition, and instruction to the extent that it is speculative, lacks foundation, or improperly assumes the existence of hypothetical facts that are incorrect or unknown to ASTM.

13.     ASTM objects to each and every Interrogatory to the extent that it requests ASTM to identify "all" facts, or "every" fact, responsive to the particular Interrogatory.  Discovery is ongoing, and the facts identified in ASTM's responses are exemplary, not exhaustive.

14.      ASTM objects to the definition of "You," "Your" or "ASTM" on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome to the extent these terms include any entity other than ASTM.

15.      ASTM objects to the definition of "Standard" as overbroad and unduly burdensome to the extent it includes standards that were not developed by ASTM and about which ASTM has not asserted a claim of infringement.

16.      ASTM objects to the definition of "Incorporated Standard" as overbroad and unduly burdensome to the extent it includes standards that have been incorporated into law by any jurisdiction outside the United States.  ASTM will construe "Incorporated Standard" as referring to any standard that a jurisdiction within the United States has incorporated into law, including through incorporation by reference.

17.      ASTM objects to the definition of "Promoted" as vague and ambiguous and overbroad and unduly burdensome to the extent it exceeds the commonly understood definition of the term.  ASTM will respond to Interrogatories with the term "Promoted" based on the ordinary meaning of the term.

18.      ASTM objects to the definition of "Publication" as vague and ambiguous and overbroad and unduly burdensome to the extent it exceeds the commonly understood definition of the term.  ASTM will respond to Interrogatories with the term "Publication" based on the ordinary meaning of the term.

19.      ASTM objects to the definition of "Access" as vague and ambiguous and overbroad and unduly burdensome to the extent it exceeds the commonly understood definition of the term.  ASTM will respond to Interrogatories with the term "Access" based on the ordinary meaning of the term.

20.     ASTM objects to the definition of "Legal Authority" as vague and ambiguous and overbroad and unduly burdensome.  ASTM will define "Legal Authority" to mean statutes, regulations or ordinances of government entities within the United States of America.

21.     ASTM objects to the definition of "Standards Process" as vague and ambiguous and overbroad and unduly burdensome.  ASTM will respond to Interrogatories with the phrase "Standards Process" by defining the term to mean the developing, creating, drafting, revising and editing of a Standard.

22.     ASTM objects to the definition of "Contribution" as vague and ambiguous and overbroad and unduly burdensome.  ASTM will respond to Interrogatories with the term "Contribution" by defining the term to mean the provision of assistance, advice, or labor.

23.     ASTM objects to the definitions of the terms "Identify" and "Identity" as overbroad and unduly burdensome to the extent they require ASTM to provide (a)  the home address and all former titles and the period of time the person held each title for any natural person; (b) to state, for business organizations, "the identity of all persons affiliated with the organization who have knowledge of the matter with respect to which it is named in an interrogatory answer;" (c) insofar as it purports to require ASTM to state "the documentary or testimonial evidence" with regard to any fact or circumstance and "the Persons with knowledge of the fact or circumstance," and (d) insofar as it purports to require ASTM, "when referring to advertising or promotion . . . to provide dates; medium; product, service, or feature being advertised or promoted; location (physical address; social media or World Wide Web site; print periodical page number; or analogous identifier); number of impressions, and cost."

24.     ASTM will make reasonable efforts to gather information responsive to Public Resource's Interrogatories as they understand and interpret each Interrogatory, subject to and limited by the objections they may have to each Interrogatory, within their possession, custody or

control, including those contained in these General Objections and all other objections made

herein, as well as any limitations agreed to by the parties.  If Public Resource asserts an

interpretation of any aspect of its Interrogatories different from that made by ASTM, ASTM

reserves the right to supplement its objections and/or responses if such interpretations made by

Public Resource are held to be the applicable interpretation.

25.     No express, incidental or implied admissions are intended by ASTM's responses

and objections.  The fact that ASTM agree to provide information and/or documents in response to

a particular Interrogatory is not intended and shall not be construed as an admission that ASTM

accepts or admits the existence of any such information and/or document set forth in or assumed by

such Interrogatory, or that any such information and/or document constitutes admissible evidence.

The fact that ASTM agrees to provide information and/or documents in response to a particular

Interrogatory is not intended and shall not be construed as a waiver by ASTM of any part of any

objection to such Interrogatory or any part of any general objection made herein.

## INTERROGATORIES

### INTERROGATORY 1:

Identify all Standards that you know or believe to have been incorporated, in whole or in

part, either expressly or by reference, in any Legal Authority.

### RESPONSE TO INTERROGATORY NO. 1:

ASTM incorporates the General Objections as if fully set forth herein.  ASTM objects to

this Interrogatory on the ground that it is overly broad and unduly burdensome, insofar as it seeks

information concerning "all Standards," without regard to whether the Standard was developed by

ASTM and without regard to whether ASTM has asserted a claim of infringement in connection

with the Standard.  ASTM further objects to this Interrogatory on the ground that "Legal

Authority" is vague and ambiguous and overly broad and unduly burdensome.  In responding to

this Interrogatory, ASTM will construe "Legal Authority" to refer to statutes, regulations, and ordinances of government entities within the United States of America.  ASTM further objects to this Interrogatory on the ground that the term "Identify" is overly broad and unduly burdensome.  ASTM also objects to this Interrogatory on the ground that it seeks information that is in the public domain, is equally available to Public Resource as it is to ASTM, or that could be derived or ascertained by Public Resource with substantially the same effort that would be required for ASTM.

Subject to and without waiving the foregoing objections, attached as Exhibit A is a list of the ASTM standards in connection with which ASTM asserted claims for infringement that ASTM has reason to believe are incorporated by reference by a Legal Authority.

**INTERROGATORY 2:**

Identify every Legal Authority that you know or believe to have incorporated, in whole or in part, either expressly or by reference, any part of any Standard in which you claim rights.

**RESPONSE TO INTERROGATORY NO. 2:**

ASTM incorporates the General Objections as if fully set forth herein.  ASTM objects to this Interrogatory on the ground that it is overly broad and unduly burdensome, insofar as it seeks information concerning any Standard in which ASTM claims rights without regard to whether ASTM has asserted a claim of infringement in connection with the Standard.  ASTM further objects to this Interrogatory on the ground that "Legal Authority" is vague and ambiguous and overly broad and unduly burdensome.  In responding to this Interrogatory, ASTM will construe "Legal Authority" to refer to statutes, regulations, and ordinances of government entities within the United States of America.  ASTM further objects to this Interrogatory on the ground that the term "Identify" is overly broad and unduly burdensome.  ASTM also objects to this Interrogatory on the ground that it seeks information that is generally available to the public, is equally available

to Public Resource as it is to ASTM, or that could be derived or ascertained by Public Resource

with substantially the same effort that would be required for ASTM. ASTM further objects to this

Interrogatory on the ground that it calls for legal conclusions.

Subject to and without waiving the foregoing objections, ASTM responds that ASTM does

not keep track of all the Legal Authorities that have incorporated by reference ASTM's standards.

The National Institute of Standards and Technology purports to maintain a database of all

standards that are referenced in the Code of Federal Regulations, which is available to the public

at https://standards.gov/sibr/query/index.cfm?fuseaction=home.main.

**INTERROGATORY 3:**

Identify all Persons who participated in the Standards Process of any Standard in which you

claim rights.

**RESPONSE TO INTERROGATORY NO. 3:**

ASTM incorporates the General Objections as if fully set forth herein.  ASTM objects to this

Interrogatory on the ground that it is overly broad and unduly burdensome, insofar as it seeks

information concerning any Standard in which ASTM claims rights, without regard to whether

ASTM has asserted a claim of infringement in connection with the Standard and would require

ASTM to identify every person who played any role in the development, creation, drafting,

revision, editing, transmission, publication, distribution, display, or dissemination of hundreds of

different standards over the course of many decades.  ASTM further objects to this Interrogatory as

vague and ambiguous with respect to the meaning of the term "participated."  ASTM further

objects to this Interrogatory on the ground that the term "Identify" is overly broad and unduly

burdensome.  ASTM further objects that identification of the thousands of individuals who fall

within the scope of this Interrogatory is not reasonably calculated to lead to the discovery of

admissible evidence.

Subject to and without waiving the foregoing objections, ASTM responds that ASTM's standard development process potentially includes individuals from the following categories: ASTM subcommittee and technical committee members, other ASTM members, members of the ASTM Committee on Standards, members of the ASTM Committee on Technical Committee Operations, the ASTM Board of Directors, ASTM staff, and the general public.  ASTM members include individuals from a variety of trades, disciplines, and industries, including manufacturers, retailers, consumers, representatives from government agencies, academics, and researchers.  The voting membership of each ASTM Technical Committee is constituted to include a balance of relevant interests.  For example, producers or sellers of materials, products, systems or services covered within the scope of a given committee or subcommittee cannot exceed more than 50 percent of the voting membership of that committee or subcommittee.  ASTM staff also participates in the process of editing and publishing ASTM standards.

Pursuant to Fed. R. Civ. P. 33(d), ASTM will produce documents from which the identities of individuals who were involved in the development and creation of certain ASTM standards that ASTM alleges were infringed may be derived or ascertained.

**INTERROGATORY 4:**

Identify all communications in which You, or anyone acting on Your behalf, Promoted the incorporation of any of Standard, in whole or in part, either expressly or by reference, in any Legal Authority.

**RESPONSE TO INTERROGATORY NO. 4:**

ASTM incorporates the General Objections as if fully set forth herein.  ASTM objects to this Interrogatory on the ground that it is overly broad and unduly burdensome to the extent that it asks for ASTM to identify communications made by any person or entity other than ASTM.  ASTM further objects to this Interrogatory as unintelligible with respect to the phrase "the incorporation of

10

any of Standard", and will construe that phrase as "the incorporation of any Standard." ASTM further objects to this Interrogatory as overly broad and unduly burdensome insofar as it seeks information concerning any Standard, without regard to whether the Standard was developed by ASTM and without regard to whether ASTM has asserted a claim of infringement in connection with the Standard. ASTM further objects to this Interrogatory on the ground that the terms "Legal Authority," "Promoted," and "Identify" are overly broad and unduly burdensome. In responding to this Interrogatory, ASTM will construe "Legal Authority" to refer to statutes, regulations, and ordinances of government entities within the United States of America. In responding to this Interrogatory, ASTM will define "Promoted" based on the ordinary meaning of the term. ASTM further objects to the undefined term "communications" as vague and ambiguous.

Subject to and without waiving the foregoing objections, ASTM responds that ASTM does not actively promote the incorporation of its standards in laws by any U.S. government entity. Indeed, ASTM is aware of the incorporation by reference of less than 10 percent of ASTM's standards by the federal government. While it does not actively promote incorporation by reference, ASTM notifies its members and members of the public, which includes members of U.S. government entities, about its standards in several different ways. ASTM issues press releases regarding some of its newly published standards. ASTM also has a Standard Tracker program that allows members of the public to request to receive a notification when a new standard has been published by a specific committee or subcommittee. Consistent with the National Technology Transfer and Advancement Act's requirement that the federal government use privately developed or adopted technical standards where possible, representatives of the federal government sometimes contact ASTM or members of ASTM committees to ask if ASTM has developed standards related to specific topics, in which case ASTM will respond to such requests. At the request of a government employee or ASTM member, ASTM employees may inform representatives of a

federal agency that ASTM has developed a particular standard that relates to a topic that may be of

interest to that agency.  Additionally, if a federal agency has indicated an intention to incorporate

by reference an outdated ASTM standard, a member of the relevant ASTM technical committee

may also submit a comment to the proposed rulemaking to notify the agency that the committee has

approved a more recent version of the standard.

**INTERROGATORY 5:**

Identify all Contributions that any Persons made to the Standards Process of Your

Standards.

**RESPONSE TO INTERROGATORY NO. 5:**

ASTM incorporates the General Objections as if fully set forth herein.  ASTM objects to this

Interrogatory as overly broad and unduly burdensome insofar as it seeks information concerning all

ASTM Standards, without regard to whether ASTM asserted a claim of infringement in connection

with the Standard.  ASTM further objects to this Interrogatory as overly broad, unduly burdensome,

and not reasonably calculated to lead to the discovery of admissible evidence on the ground that the

terms "Contributions" and "Standards Process", as defined by Public Resource and used in this

Interrogatory, would require ASTM to identify every instance where any person offered any

assistance, advice, financial support, labor, effort, or expenditure of time in connection with the

development, creation, drafting, revision, editing, transmission, publication, distribution, display, or

dissemination of hundreds of different ASTM standards over the course of many decades.  ASTM

will construe "Standards Process" to mean the developing, creating, drafting, revision and editing of

a Standard.  ASTM will construe "Contribution" to mean the provision of assistance, advice, or

labor.  ASTM further objects to this Interrogatory on the ground that the term "Identify" is overly

broad and unduly burdensome.

Subject to and without waiving the foregoing objections, ASTM responds that ASTM publishes regulations, rules, and bylaws describing the actors who are involved in ASTM's standards development process. *See, e.g.,* http://www.astm.org/COMMIT/newcommit.html (collecting bylaws and regulations). Those documents are publicly available and speak for themselves. As described in those documents, there are several stages to the ASTM standards development process.

The process of developing each ASTM standard begins when an individual submits a work item request, which either requests the development of a new standard or a revision or amendment of an existing ASTM standard. The chair or sub-chair of the relevant ASTM committee may approve or deny the work item request or the subcommittee may be asked to approve the work item at a meeting or via letter ballot. If approved, the person who submitted the work item request normally becomes the task group chairperson. Other volunteers join with the task group chairperson to formulate the initial draft of the ASTM standard or revision.

Once the ASTM task group has drafted the work item and it has been reviewed and edited by ASTM staff, the ASTM task group requests a ballot, and circulates a draft document to all members of the relevant subcommittee for voting. Members of the ASTM subcommittee have an opportunity to provide input on the draft standard, including through submitting negative votes which must be resolved individually. If approved by the ASTM subcommittee, the draft standard is sent to the main ASTM committee, where all main members have an opportunity to vote on the item and submit negative votes (which must be resolved individually). While on main committee ballot, the draft item is concurrently open for peer review of the Society, where all ASTM members have an opportunity to submit negative votes (which must be resolved individually). All standards actions, including new standards as well as revisions, withdrawals and reapprovals of existing standards, must be approved by at least 66.7 percent of the voting subcommittee members

and 90% of the voting main committee members (excluding abstentions), with not less than 60

percent of the voting members returning ballots.  Members of the public also have the opportunity

to submit comments at any point in the process.  Finally, the Committee on Standards, which is

made up of nine ASTM members who are appointed by the Board of Directors, ensures that all

ASTM processes and procedures were followed, in which case it approves the standard or revision

for publication.

To the extent that ASTM has retained them, pursuant to Fed. R. Civ. P. 33(d), ASTM will

produce documents from which it will be possible to derive or ascertain the involvement of

individuals in the development and creation of the ASTM standards at issue in this litigation.

**INTERROGATORY 6:**

Identify all means by which the general public may Access Incorporated Standards in which

you claim rights.

**RESPONSE TO INTERROGATORY NO. 6:**

ASTM incorporates the General Objections as if fully set forth herein.  ASTM objects to

this Interrogatory as overly broad and unduly burdensome insofar as it seeks information

concerning all ASTM Standards, without regard to whether ASTM asserted a claim of

infringement in connection with the Standard.  ASTM further objects to this Interrogatory on the

ground that the term "general public" is vague and ambiguous.  ASTM further objects to this

Interrogatory as overly broad and unduly burdensome insofar as it includes Standards that have

been incorporated by reference by jurisdictions outside of the United States, and insofar as it

extends to "Access" by individuals outside the United States.  ASTM will define "Access" based

on the ordinary meaning of the term.  ASTM further objects to this Interrogatory on the ground

that the term "Identify" is overly broad and unduly burdensome.

14

Subject to and without waiving the foregoing objections, ASTM responds that there are many ways in which interested members of the public may access ASTM standards.  These include, but are not limited to, the following:  First, the standards may be purchased from ASTM or one of its authorized resellers.  ASTM publishes its standards in a variety of hard copy and digital formats.  For example, members of the public may purchase printed copies of a standard in book form or they may purchase an electronic ".pdf" file of the standard.  The cost of purchasing ASTM standards is reasonable.  The cost of purchasing most ASTM standards is between $25 and $35 and the most expensive ASTM standard costs $71.  Upon request, ASTM has made copies of some of its standards available at reduced rates or even at no cost to individuals or groups who have demonstrated that they have a need to use the standard and cannot afford the normal fee.

Second, jurisdictions that have incorporated ASTM standards by reference frequently make copies of those standards available for access by the public at no cost.  For example, the Code of Federal Regulations states that any materials incorporated by reference at the federal level must be "reasonably available to and usable by the class of persons affected by the publication."  1 C.F.R. § 51.7(a)(4).  In particular, the Office of the Federal Register and the relevant agency each must maintain a hard copy of any material incorporated by reference that is available for public inspection.  *See* 1 C.F.R. §§ 5.2, 51.9(b)(4).  State and local jurisdictions frequently have similar requirements that copies of standards incorporated by reference must be made available for inspection in government offices or designated depository libraries.

Third, members of the public may obtain copies of ASTM standards in a variety of other ways, including, but not limited to, through their employers, trade associations, contractors, local governments, or libraries.

Additionally, ASTM offers read-only access to standards that it is aware have been incorporated by reference into federal regulations on the reading room on the ASTM website.

15

This access allows any member of the public to view the standards without cost.  Similarly, when a federal agency proposes to incorporate by reference an ASTM standard in rulemaking, ASTM works with the relevant agency to provide the public with read-only access to the standard at no cost during the public comment period.

**INTERROGATORY 7:**

Identify all communications by You to the general public to identify or explain the means by which the general public may Access Incorporated Standards in which You claim rights.

**RESPONSE TO INTERROGATORY NO. 7:**

ASTM incorporates the General Objections as if fully set forth herein.  ASTM further objects to this Interrogatory on the ground that it is overly broad and unduly burdensome to the extent that it asks for ASTM to identify communications made by any person or entity other than ASTM.  ASTM further objects to this Interrogatory as overly broad and unduly burdensome insofar as it seeks information concerning all ASTM Standards, without regard to whether ASTM asserted a claim of infringement in connection with the Standard.  ASTM further objects to this Interrogatory on the ground that the undefined term "general public" is vague and ambiguous.  ASTM further objects to this Interrogatory as overly broad and unduly burdensome insofar as it includes Standards that have been incorporated by reference by jurisdictions outside of the United States, and insofar as it extend to "Access" by individuals outside the United States.  ASTM will define "Access" based on the ordinary meaning of the term.  ASTM further objects to the undefined term "communications" as vague and ambiguous.  ASTM further objects to this Interrogatory on the ground that the term "Identify" is overly broad and unduly burdensome.

Subject to and without waiving the foregoing objections, ASTM responds that it has a marketing department that advertises and promotes all ASTM publications and products, including through brochures and mailings sent to past purchasers of particular standards.  ASTM also has

16

several resellers who advertise and promote the sale of ASTM's standards.   Further, ASTM

maintains a website through which members of the public can purchase ASTM standards and view

copies of the ASTM standards posted in the reading room at no cost.

Dated: March 24, 2014               **FOR THE OBJECTIONS**

                                    Respectfully submitted:

                                    /s/ Michael Clayton
                                    Michael F. Clayton (D.C. Bar: 335307)
                                    J. Kevin Fee (D.C. Bar: 494016)
                                    Jordana S. Rubel (D.C. Bar: 988423)
                                    Morgan, Lewis & Bockius LLP
                                    1111 Pennsylvania Ave., N.W.
                                    Washington, D.C. 20004
                                    Telephone: 202.739.5215
                                    Email: mclayton@morganlewis.com
                                           jkfee@morganlewis.com
                                           jrubel@morganlewis.com

                                    *Counsel For American Society For Testing And Materials
                                    d/b/a/ ASTM International*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing ASTM's Objections and Responses to

Public Resource's First Set of Interrogatories was served this 24 day of March, 2014 via email upon the

following:

*Counsel for National Fire Protection Association, Inc.*

Anjan Choudhury (Anjan.Choudhury@mto.com)
Kelly M. Klaus (Kelly.Klaus@mto.com)
Jonathan H. Blavin (Jonathan.Blavin@mto.com)
Michael J. Mongan (Michael.Mongan@mto.com)

*Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers*

Jeffrey S. Buckholtz (jbuckholtz@kslaw.com)
Kenneth L. Steinthal (ksteinthal@kslaw.com)
Joseph R. Wetzel (jwetzel@kslaw.com)
Andrew Zee (azee@kslaw.com)

*Counsel for Public.Resource.Org, Inc.*

Andrew Bridges (abridges@fenwick.com)
Kathleen Lu (klu@fenwick.com)
David Halperin (davidhalperindc@gmail.com)
Mitchell L. Stoltz (mitch@eff.org)
Corynne McSherry (corynne@eff.org)
Joseph Gratz (jgratz@durietangri.com)
Mark Lemley (mlemley@durietangri.com)

/s/ Jordana Rubel
Jordana Rubel

# EXHIBIT A

| Designation | Edition | Title | Copyright Registration Number |
|---|---|---|---|
| ASTM A36 | 1977ae | Standard Specification for  Structural Steel | TX 464-573 |
| ASTM A36/A36M | 1997ae1 | Standard Specification for Carbon Structural Steel | TX 4-873-764 |
| ASTM A82 | 1979 | Standard Specification for Cold-Drawn Steel Wire for Concrete Reinforcement | TX 464-573 |
| ASTM A184 | 1979 | Standard Specification for Fabricated Deformed Steel Bar Mats for Concrete Reinforcement | TX 464-573 |
| ASTM A185 | 1979 | Standard Specification for Welded Steel Wire Fabric for Concrete Reinforcement | TX 464-573 |
| ASTM A203/A 203M | 1997 | Standard Specification for Pressure Vessel Plates, Alloy Steel, Nickel | TX 4-654-921 |
| ASTM A242 | 1979 | Standard Specification for High-Strength Low-Alloy Structural Steel | TX 464-573 |
| ASTM A285 | 1978 | Standard Specification for Pressure Vessel Plates, Carbon Steel, Low- and Intermediate-Tensile Strength | TX 464-573 |
| ASTM A325 | 1979 | Standard Specification for High-Strength Bolts for Structural Steel Joints | TX 464-573 |
| ASTM A333/A 333M | 1994 | Standard Specification for Seamless and Welded Pipe for Low-Temperature Service | TX 4-083-251 |
| ASTM A369/A 369M | 1992 | Standard Specification for Carbon and Ferritic Alloy Steel Forged and Bored Pipe for High-Temperature Service | TX 4-083-251 |
| ASTM A441 | 1979 | Standard Specification for High-Strength Low-Alloy Structural Manganese Vanadium Steel | TX 464-573 |
| ASTM A449 | 1978a | Standard Specification for Quenched and Tempered Steel Bolts and Studs | TX 464-573 |
| ASTM A475 | 1978(1984)e 1 | Standard Specification for Zinc-Coated Steel Wire Strand | TX 464-574 |
| ASTM A490 | 1979 | Standard Specification for Quenched and Tempered Alloy Steel Bolts for Structural Steel Joints | TX 464-573 |
| ASTM A496 | 1978 | Standard Specification for Deformed Steel Wire for Concrete Reinforcement | TX 464-573 |
| ASTM A497 | 1979 | Standard Specification for Welded Deformed Steel Wire Fabric for Concrete Reinforcement | TX 464-573 |
| ASTM A500 | 1978 | Standard Specification for Cold-Formed Welded and Seamless Carbon Steel Structural Tubing in Rounds and Shapes | TX 464-573 |
| ASTM A501 | 1976 | Standard Specification for Hot-Formed Welded and Seamless Carbon Steel Structural Tubing | TX 464-573 |
| ASTM A502 | 1976 | Standard Specification for Steel Structural Rivets | TX 464-573 |
| ASTM A514 | 1977 | Standard Specification for High-Yield Strength, Quenched and Tempered Alloy Steel Plate, Suitable for Welding | TX 464-573 |

| | | | |
|---|---|---|---|
| ASTM A516/A 516M | 1990(1996)e1 | Standard Specification for Pressure Vessel Plates, Carbon Steel, for Moderate and Lower-Temperature Service | TX 4-654-921 |
| ASTM A522/A 522M | 1995b | Standard Specification for Forged or Rolled 8 and 9 % Nickel Alloy Steel Flanges, Fittings, Valves, and Parts for Low-Temperature Service | TX 4-179-992 |
| ASTM A520 | 1972(1985) | Standard Specification for Supplementary Requirements for Seamless and Electric-Resistance-Welded Carbon Steel Tubular Products for High-Temperature Service Conforming to ISO Recommendations For Boiler Construction | TX 1-798-078 |
| ASTM A529 | 1975 | Standard Specification for Structural Steel with 42,000PSI (290 Mpa) Minimum Yield Point (1/2 in. (12.7 mm) Maximum Thickness | TX 464-573 |
| ASTM A570 | 1979 | Standard Specification for Hot-Rolled Carbon Steel Sheet and Strip, Structural Quality | TX 464-573 |
| ASTM A572 | 1979 | Standard Specification for High-Strength Low-Alloy Columbium-Vanadium Steels of Structural Quality | TX 464-573 |
| ASTM A588 | 1979a | Standard Specification for High-Strength Low-Alloy Structural Steel with 50, 000 psi Minimum Yield Point to 4 in. Thick | TX 464-573 |
| ASTM A611 | 1972(1979) | Standard Specification for Steel, Cold-rolled Sheet, Carbon, Structural | TX 464-573 |
| ASTM A615 | 1979 | Standard Specification for Deformed and Plain Billet-Steel Bars for Concrete Reinforcement | TX 464-573 |
| ASTM A616 | 1979 | Standard Specification for Rail-Steel Deformed and Plain Bars for Concrete Reinforcement | TX 464-573 |
| ASTM A617 | 1979 | Standard Specification for Axle-Steel Deformed and Plain Bars for Concrete Reinforcement | TX 464-573 |
| ASTM A618 | 1974 | Standard Specification for Hot-Formed Welded and Seamless High-Strength Low-Alloy Structural Tubing | TX 464-573 |
| ASTM A633 | 1979a | Standard Specification for Normalized High-Strength Low Alloy Structural Steel | TX 464-573 |
| ASTM B16 | 1992 | Standard Specification for Free-Cutting Brass Rod, Bar and Shapes for Use in Screw Machines | TX 3-614-178 |
| ASTM B21 | 1996 | Standard Specification for Naval Brass Rod, Bar, and Shapes | TX 4-497-885 |
| ASTM B42 | 1996 | Standard Specification for Seamless Copper Pipe, Standard Sizes | TX 4-497-885 |
| ASTM B68 | 1995 | Standard Specification for Seamless Copper Tube, Bright Annealed | TX 4-243-005 |

| ASTM B75 | 1997 | Standard Specification for Seamless Copper Tube | TX 4-737-834 |
|---|---|---|---|
| ASTM B88 | 1996 | Standard Specification for Seamless Copper Water Tube | TX 4-497-885 |
| ASTM B96 | 1993 | Standard Specification for Copper-Silicon Alloy Plate, Sheet, Strip, and Rolled Bar for General Purposes and Pressure Vessels | TX 3-883-920 |
| ASTM B111 | 1995 | Standard Specification for Copper and Copper-Alloy Seamless Condenser Tubes and Ferrule Stock | TX 4-243-005 |
| ASTM B122/B 122M | 1995 | Standard Specification for Copper-Nickel-Tin Alloy, Copper-Nickel-Zinc Alloy (Nickel Silver), and Copper-Nickel Alloy Plate, Sheet, Strip and Rolled Bar | TX 4-243-005 |
| ASTM B124 | 1996 | Standard Specification for Copper and Copper-Alloy Forging Rod, Bar, and Shapes | TX 4-497-885 |
| ASTM B152 | 1997a | Standard Specification for Copper Sheet, Strip, Plate, and Rolled Bar | TX 4-737-834 |
| ASTM B193 | 1987 | Standard Test Method for Resistivity of Electrical Conductor Materials | TX 2-348-166 |
| ASTM B209 | 1996 | Standard Specification for Aluminum and Aluminum Alloy Sheet and Plate | TX 4-475-108 |
| ASTM B224 | 1980e 1 | Standard Classification of Coppers | TX 1-228-879 |
| ASTM B280 | 1997 | Standard Specification for Seamless Copper Tube for Air Conditioning and Refrigeration Field Service | TX 4-497-885 |
| ASTM B283 | 1996 | Standard Specification for Copper and Copper-Alloy Die Forgings (Hot-Pressed) | TX 4-497-885 |
| ASTM B315 | 1993 | Standard Specification for Seamless Copper Alloy Pipe and Tube | TX 4-243-005 |
| ASTM B557 | 1984 | Standard Methods of Tension Testing Wrought and Cast Aluminum and Magnesium-Alloy Products | TX 1-689-871 |
| ASTM B580 | 1979 | Standard Specification for Anodized Oxide Coatings on Aluminum | TX 534-160 |
| ASTM B694 | 1986 | Standard Specification for Copper, Copper Alloy, and Copper-Clad Stainless Steel Sheet and Strip for Electrical Cable Shielding | TX 2-110-040 |
| ASTM B858 | 1995 | Standard Test Method for Determination of Susceptibility to Stress Corrosion Cracking in Copper Alloys Using an Ammonia Vapor Test | TX 4-243-005 |
| ASTM C5 | 1979(1997) | Standard Specification for Quicklime for Structural Purposes | TX 4-787-636 |
| ASTM C150 | 1999a | Standard Specification for Portland Cement | TX 7-685-927 |

| ASTM C177 | 1997 | Standard Test Method for Steady-State Heat Flux Measurements and Thermal Transmission Properties by Means of the Guarded Hot-Plate Apparatus | TX 4-811-646 |
|---|---|---|---|
| ASTM C236 | 1989(1993)e 1 | Standard Test Method for Steady-State Thermal Performance of Building Assemblies by Means of a Guarded Hot Box | TX 3-972-350 |
| ASTM C509 | 1984 | Standard Specification for Cellular Elastomeric Preformed Gasket and Sealing Material | TX 2-210-202 |
| ASTM C516 | 1980(1996)e 1 | Standard Specification for Vermiculite Loose Fill Thermal Insulation | TX 4-571-119 |
| ASTM C518 | 1991 | Standard Test Method for Steady-State Heat Flux Measurements and Thermal Transmission Properties by Means of the Heat Flow Meter Apparatus | TX 3-278-409 |
| ASTM C549 | 1981(1995)e 1 | Standard Specification for Perlite Loose Fill Insulation | TX 4-584-449 |
| ASTM C720 | 1989(1994)e 1 | Standard Specification for Spray Applied Fibrous Insulation for Elevated Temperature | TX 4-391-188 |
| ASTM D86 | 2007(a) | Standard Test Method for Distillation of Petroleum Products at Atmospheric Pressure | TX 7-685-941 |
| ASTM D129 | 1995 | Standard Test Method for Sulfur in Petroleum Products (General Bomb Method) | TX 4-862-934 |
| ASTM D257 | 1991 | Standard Test Method for DC Resistance of Conductance of Insulating Materials | TX 3-506-922 |
| ASTM D287 | 1992(1995) | Standard Test Method for API Gravity of Crude Petroleum and Petroleum Products (Hydrometer Method) | TX 4-623-459 |
| ASTM D323 | 1958(1968) | Standard Test Method for Vapor Pressure of Petroleum Products (Reid Method) | |
| ASTM D388 | 1998a | Standard Classification of Coals by Rank | TX 4-951-524 |
| ASTM D396 | 1998 | Standard Specification for Fuel Oils | TX 4-862-934 |
| ASTM D413 | 1982(1993)e 1 | Standard Test Method for Rubber Property--Adhesion to Flexible Substrate | TX 4-320-184 |
| ASTM D512 | 1989(1999) | Standard Test Methods for Chloride Ion In Water | TX 5-785-473 |
| ASTM D611 | 1982(1998) | Standard Test Methods for Aniline Point and Mixed Aniline Point of Petroleum Products and Hydrocarbon Solvents | TX 4-862-934 |
| ASTM D665 | 1998e 1 | Standard Test Method for Rust-Preventing Characteristics of Inhibited Mineral Oil in the Presence of Water | TX 4-862-934 |
| ASTM D814 | 1995 | Standard Test Method for Rubber Property--Vapor Transmission of Volatile Liquids | TX 4-320-184 |
| ASTM D975 | 1998b | Standard Specification for Diesel Fuel Oils | TX 4-862-934 |
| ASTM D975 | 2007(b) | Standard Specification for Diesel Fuel Oils | TX 7-685-915 |

| ASTM D976 | 1991(1995)e 1 | Standard Test Methods for Calculated Cetane Index of Distillate Fuels | TX 4-623-459 |
|---|---|---|---|
| ASTM D1072 | 1990(1994)e 1 | Standard Test Method for Total Sulfur in Fuel Gases | TX 4-768-933 |
| ASTM D1193 | 1977(1983) | Standard Specification for Reagent Water | TX 1-374-250 |
| ASTM D1217 | 1993(1998) | Standard Test Method for Density and Relative Density (Specific Gravity) of Liquids by Bingham Pycnometer | TX 4-862-934 |
| ASTM D1253 | 1986(1996) | Standard Test Method for Residual Chlorine in Water | TX 5-345-022 |
| ASTM D1266 | 1998 | Standard Test Method for Sulfur in Petroleum Products (Lamp Method) | TX 4-862-934 |
| ASTM D1298 | 1999 | Standard Test Method for Density, Relative Density (Specific Gravity), or API Gravity of Crude Petroleum and Liquid Petroleum Products by Hydrometer Method | TX 5-071-596 |
| ASTM D1335 | 1967(1972) | Standard Method of Test for Tuft Bind of Pile Floor Coverings | TX 626-132 |
| ASTM D1412 | 1993(1997) | Standard Test Method for Equilibrium Moisture of Coal at 96 to 97 Percent Relative Humidity and 30 Degrees Celsius | TX 4-768-933 |
| ASTM D1415 | 1988(1994) | Standard Practice for Rubber Property- International Hardness | TX 4-320-184 |
| ASTM D1480 | 1993(1997) | Standard Test Method for Density and Relative Density (Specific Gravity) of Viscous Materials by Bingham Pycnometer | TX 4-623-459 |
| ASTM D1481 | 1993(1997) | Standard Test Method for Density and Relative Density (Specific Gravity) of Viscous Materials by Lipkin Bicapillary Pycnometer | TX 4-623-459 |
| ASTM D1518 | 1985(1998)e1 | Standard Test Method for Thermal Transmittance of Textile Materials | TX 2-469-775 |
| ASTM D1535 | 1989 | Standard Test Method for Specifying Color by the Munsell System | TX 4-898-491 |
| ASTM D1552 | 1995 | Standard Test Method for Sulfur in Petroleum Products (High-Temperature Method) | TX 4-623-459 |
| ASTM D1687 | 1992(1996) | Standard Test Methods for Chromium in Water | TX 5-345-022 |
| ASTM D1688 | 1995 | Standard Test Methods for Copper in Water | TX 5-345-022 |
| ASTM D1835 | 1997 | Standard Specification for Liquefied Petroleum (LP) Gases | TX 4-623-459 |
| ASTM D1890 | 1996 | Standard Test Method for Beta Particle Radioactivity of Water | TX 5-369-432 |
| ASTM D1943 | 1996 | Standard Test Method for Alpha Particle Radioactivity of Water | TX 5-369-432 |
| ASTM D1945 | 1996 | Standard Test Method for Analysis of Natural Gas By Gas Chromatography | TX 4-768-933 |

| | | | |
|---|---|---|---|
| ASTM D1946 | 1990(1994)e 1 | Standard Practice for Analysis of Reformed Gas by Gas Chromatography | TX 4-768-933 |
| ASTM D2013 | 1986(1994) | Standard Method of Preparing Coal Samples for Analysis | TX 4-768-933 |
| ASTM D2015 | 1996 | Standard Test Method for Gross Calorific Value of Coal and Coke by the Adiabatic Bomb Calorimeter | TX 4-768-933 |
| ASTM D2036 | 1998 | Standard Test Method for Cyanides in Water | TX 5-369-432 |
| ASTM D2163 | 1991(1996) | Standard Test Method for Analysis of Liquefied Petroleum (LP) Gases and Propane Concentrates by Gas Chromatography | TX 4-623-459 |
| ASTM D2216 | 1998 | Standard Test Method for Laboratory Determination of Water (Moisture) Content of Soil and Rock by Mass | TX 5-929-602 |
| ASTM D2234 | 1998 | Standard Practice for Collection of a Gross Sample of Coal | TX 4-951-524 |
| ASTM D2247 | 1968(1973) | Standard Method for Testing Coated Metal Specimans at 100 Percent Relative Humidity | TX 648-346 |
| ASTM D2460 | 1997 | Standard Test Method for Alpha-Particle-Emitting Isotopes of Radium in Water | TX 5-369-432 |
| ASTM D2502 | 1992(1996) | Standard Test Method for Estimation of Molecular Weight (Relative Molecular Mass) of Petroleum Oils from Viscosity Measurements | TX 4-623-459 |
| ASTM D2503 | 1992(1997) | Standard Test Method for Relative Molecular Mass (Molecular Weight) of Hydrocarbons by Thermoelectric Measurement of Vapor Pressure | TX 4-623-459 |
| ASTM D2505 | 1988(1998) | Standard Test Method for Ethylene, Other Hydrocarbons, and Carbon Dioxide in High-Purity Ethylene by Gas Chromatography | TX 4-862-934 |
| ASTM D2597 | 1994(1999) | Standard Test Method for Analysis of Demethanized Hydrocarbon Liquid Mixtures Containing Nitrogen and Carbon Dioxide by Gas Chromatography | TX 5-071-596 |
| ASTM D2724 | 1987(1995) | Standard Test Methods for Bonded, Fused, and Laminated Apparel Fabrics | TX 5-435-937 |
| ASTM D2777 | 1998 | Standard Practice for Determination of Precision and Bias of Applicable Test Methods of Committee D-19 on Water | TX 5-345-022 |
| ASTM D2879 | 1997 | Standard Test Method for Vapor Pressure-Temperature Relationship and Initial Decomposition Temperature of Liquids by Isoteniscope | TX 5-345-022 |
| ASTM D2908 | 1974 | Standard Recommended Practice for Measuring Volatile Organic Matter in Water by Aqueous-Injection Gas Chromatography | TX 534-158 |

| ASTM D2986 | 1995a(1999) | Standard Practice for Evaluation of Air, Assay Media by the Monodisperse DOP (Dioctyl Phthalate) Smoke Test | TX 5-202-199 |
|---|---|---|---|
| ASTM D3173 | 1987(1996) | Standard Test Method for Moisture in the Analysis Sample of Coal and Coke | TX 4-951-524 |
| ASTM D3176 | 1989(1997) | Standard Practice for Ultimate Analysis of Coal and Coke | TX 4-951-524 |
| ASTM D3177 | 1989(1997) | Standard Test Methods for Total Sulfur in the Analysis Sample of Coal and Coke | TX 4-951-524 |
| ASTM D3178 | 1989(1997) | Standard Test Methods for Carbon and Hydrogen in the Analysis Sample of Coal and Coke | TX 4-951-524 |
| ASTM D3236 | 1988(1999) | Standard Test Method for Apparent Viscosity of Hot Metal Adhesives and Coating Materials | TX 5-071-596 |
| ASTM D3246 | 1996 | Standard Test Method for Sulfur in Petroleum Gas by Oxidative Microcoulometry | TX 5-071-596 |
| ASTM D3286 | 1996 | Standard Test Method for Gross Calorific Value of Coal and Coke by the Isoperibol Bomb Calorimeter | TX 4-951-524 |
| ASTM D3371 | 1995 | Standard Test Method for Nitriles in Aqueous Solution by Gas-Liquid Chromatography | TX 4-257-410 |
| ASTM D3454 | 1997 | Standard Test Method for Radium-226 in Water | TX 5-369-432 |
| ASTM D3588 | 1998 | Standard Practice for Calculating Heat Value, Compressibility Factor, and Relative Density of Gaseous Fuels | TX 4-951-524 |
| ASTM D3697 | 1992(1996) | Standard Test Method for Antimony in Water | TX 4-257-533 |
| ASTM D4057 | 1995e 1 | Standard Practice for Manual Sampling of Petroleum and Petroleum Products | TX 4-622-434 |
| ASTM D4084 | 1994 | Standard Test Method for Analysis of Hydrogen Sulfide in Gaseous Fuels (Lead Acetate Reaction Rate Method) | TX 4-768-933 |
| ASTM D4177 | 1995 | Standard Practice for Automatic Sampling of Petroleum and Petroleum Products | TX 4-622-434 |
| ASTM D4239 | 1997e 1 | Standard Test Methods for Sulfur in the Analysis Sample of Coal and Coke Using High Temperature Tube Furnace Combustion Methods | TX 4-951-524 |
| ASTM D4268 | 1993 | Standard Test Method for Testing Fiber Ropes | TX 5-435-937 |
| ASTM D4294 | 1998 | Standard Test Method for Sulfur in Petroleum and Petroleum Products by Energy-Dispersive X-Ray Fluorescence Spectrometry | TX 4-898-490 |
| ASTM D4329 | 1999 | Standard Practice for Fluorescent UV Exposure of Plastics | TX 5-996-821 |
| ASTM D4420 | 1994 | Standard Test Method for Determination of Aromatics in Finished Gasoline by Gas Chromatography | TX 4-622-434 |

| ASTM D4809 | 1995 | Standard Test Method for Heat of Combustion of Liquid Hydrocarbon Fuels by Bomb Calorimeter (Precision Method) | TX 4-622-434 |
|---|---|---|---|
| ASTM D4891 | 1989(1994)E 1 | Standard Test Method for Heating Value of Gases in Natural Gas Range by Stoichiometric Combustion | TX 4-951-524 |
| ASTM D4986 | 1998 | Standard Test Method for Horizontal Burning Characteristics of Cellular Polymeric Materials | TX 5-570-786 |
| ASTM D5257 | 1997 | Standard Test Method for Dissolved Hexavalent Chromium in Water by Ion Chromatography | TX 5-345-022 |
| ASTM D5489 | 1996a | Standard Guide for Care Symbols for Care Instructions Textile Products | TX 4-394-571 |
| ASTM D5673 | 1996 | Standard Test Method for Elements in Water by Inductively Coupled Plasma- Mass Spectrometry | TX 5-369-432 |
| ASTM D5865 | 1998a | Standard Test Method for Gross Calorific Value of Coal and Coke | TX 4-951-524 |
| ASTM D6216 | 1998 | Standard Practice for Opacity Monitor Manufacturers to Certify Conformance with Design and Performance Specifications | TX 5-202-199 |
| ASTM D6228 | 1998 | Standard Test Method for Determination of Sulfur Compounds in Natural Gas and Gaseous Fuels by Gas Chromatography and Flame Photometric Detection | TX 4-951-524 |
| ASTM D6420 | 1999 | Standard Test Method for Determination of Gaseous Organic Compounds by Direct Interface Gas Chromatography-Mass Spectrometry | TX 5-202-199 |
| ASTM D6503 | 1999 | Standard Test Method for Enterococci in Water Using Enterolert | TX 5-369-432 |
| ASTM E11 | 1995 | Standard Specification for Wire Cloth and Sieves for Testing Purposes | TX 5-135-299 |
| ASTM E29 | 1993a | Standard Practice for Using Significant Digits in Test Data to Determine Conformance with Specifications | TX 4-143-803 |
| ASTM E29 | 1990 | Standard Practice for Using Significant Digits in Test Data to Determine Conformance with Specifications | TX 3-460-670 |
| ASTM E72 | 1980 | Standard Methods of Conducting Strength Tests of Panels for Building Construction | TX 3-972-350 |
| ASTM E96 | 1995 | Standard Test Methods for Water Vapor Transmission of Materials | TX 4-391-188 |
| ASTM E145 | 1994e 1 | Standard Specification for Gravity-Convection and Forced- Ventilation Ovens | TX 4-952-491 |
| ASTM E154 | 1968(1979)e 1 | Standard Methods of Testing Materials for Use as Vapor Barriers Under Concrete Slabs and as Ground Cover in Crawl Spaces | TX 2-210-197 |

| | | | |
|---|---|---|---|
| ASTM E168 | 1988 | Standard Practices for General Techniques of Infrared Quantitative Analysis | TX 3-211-547 |
| ASTM E169 | 1987 | Standard Practices for General Techniques of Ultraviolet-Visible Quantitative Analysis | TX 3-211-547 |
| ASTM E185 | 1982 | Standard Practice for Conducting Surveillance Tests for Light-Water Cooled Nuclear Power Reactor Vessels | TX 1-210-036 |
| ASTM E260 | 1996 | Standard Practice for Packed Column Gas Chromatography | TX 5-202-197 |
| ASTM E283 | 1991(1999) | Standard Test Method for Determining Rate of Air Leakage Through Exterior Windows, Curtain Walls, and Doors Under Specified Pressure Differences Across the Specimen | TX 5-202-198 |
| ASTM E408 | 1971 | Standard Methods of Test for Total Normal Emittance of Surfaces Using Inspection-Meter Techniques | TX 565-130 |
| ASTM E424 | 1971 | Standard Methods of Test for Solar Energy Transmittance and Reflectance (Terrestrial) of Sheet Materials | TX 565-130 |
| ASTM E606 | 1980 | Standard Recommended Practice for Constant-Amplitude Low-Cycle Fatigue Testing | TX 1-187-015 |
| ASTM E681 | 1985 | Standard Test Method for Concentration Limits of Flammability of Chemicals | TX 2-794-050 |
| ASTM E695 | 1979(1997)e 1 | Standard Method of Measuring Relative Resistance of Wall, Floor, and Roof Construction to Impact Loading | TX 5-641-809 |
| ASTM E711 | 1987(1992) | Standard Test Method for Gross Calorific Value of Refuse-Derived Fuel by the Bomb Calorimeter | TX 3-689-742 |
| ASTM E773 | 1997 | Standard Test Method for Accelerated Weathering of Sealed Insulating Glass Units | TX 5-202-198 |
| ASTM E774 | 1997 | Standard Specifications for the Classification of the Durability of Sealed Insulating Glass Units | TX 5-202-198 |
| ASTM E775 | 1987(1992) | Standard Test Methods for Total Sulfur in the Analysis Sample of Refuse-Derived Fuel | TX 3-689-742 |
| ASTM E776 | 1987(1992) | Standard Test Method for Forms of Chlorine in Refuse-Derived Fuel | TX 3-689-742 |
| ASTM E885 | 1988 | Standard Test Methods for Analyses of Metals in Refuse-Derived Fuel by Atomic Absorption Spectroscopy | TX 3-689-742 |
| ASTM E1337 | 1990(1996) | Standard Test Method for Determining Longitudinal Peak Braking Coefficient of Paved Surfaces Using a Standard Reference Test Tire | TX 5-369-425 |
| ASTM E1625 | 1994 | Standard Test Method for Determining Biodegradability of Organic Chemicals in Semi-Continuous Activated Sludge (SCAS) | TX 4-780-430 |

| | | | |
|---|---|---|---|
| ASTM E1719 | 1997 | Standard Test Method for Vapor Pressure of Liquids by Ebulliometry | TX 4-755-309 |
| ASTM F462 | 1979(1999) | Standard Consumer Safety Specification for Slip-Resistant Bathing Facilities | TX 5-641-808 |
| ASTM F478 | 1992(1999) | Standard Specification for In-Service Care of Insulating Line Hose and Covers | TX 5-139-661 |
| ASTM F631 | 1980(1985) | Standard Method for Testing Full Scale Advancing Spill Removal Devices | TX 4-780-430 |
| ASTM F631 | 1993 | Standard Guide for Collecting Skimmer Performance Data in Controlled Environments | TX 4-780-430 |
| ASTM F682 | 1982a(1988) | Standard Specification for Wrought Carbon Steel Sleeve-Type Pipe Couplings | TX 3-278-410 |
| ASTM F715 | 1995 | Standard Test Methods for Coated Fabrics Used for Oil Spill Control and Storage | TX 4-780-430 |
| ASTM F722 | 1982(1988) | Standard Specification for Welded Joints for Shipboard Piping Systems | TX 3-278-410 |
| ASTM F808 | 1983(1988)e 1 | Standard Guide for Collecting Skimmer Performance Data in Uncontrolled Environments | TX 3-689-742 |
| ASTM F1003 | 1986(1992) | Standard Specification for Searchlights on Motor Lifeboats | TX 4-862-629 |
| ASTM F1006 | 1986(1997) | Standard Specification for Entrainment Separators for Use in Marine Piping Applications | TX 4-862-629 |
| ASTM F1007 | 1986(1996)e 1 | Standard Specification for Pipe-Line Expansion Joints of the Packed Slip Type for Marine Application | TX 4-862-629 |
| ASTM F1014 | 1992 | Standard Specification for Flashlights on Vessels | TX 4-862-629 |
| ASTM F1020 | 1986(1996)e 1 | Standard Specification for Line-Blind Valves for Marine Applications | TX 4-862-629 |
| ASTM F1120 | 1987(1998) | Standard Specification for Circular Metallic Bellows Type Expansion Joints for Piping Applications | TX 4-862-629 |
| ASTM F1121 | 1987(1998) | Standard Specification for International Shore Connections for Marine Fire Applications | TX 4-862-629 |
| ASTM F1122 | 1987(1998) | Standard Specification for Quick Disconnect Couplings | TX 4-862-629 |
| ASTM F1123 | 1987(1998) | Standard Specification for Non-Metallic Expansion Joints | TX 4-862-629 |
| ASTM F1139 | 1988(1998) | Standard Specification for Steam Traps and Drains | TX 4-862-629 |
| ASTM F1155 | 1998 | Standard Practice for Selection and Application of Piping System Materials | TX 4-862-629 |
| ASTM F1172 | 1988(1998) | Standard Specification for Fuel Oil Meters of the Volumetric Positive Displacement Type | TX 4-862-629 |
| ASTM F1173 | 1995 | Standard Specification for Thermosetting Resin Fiberglass Pipe and Fittings to be Used for Marine Applications | TX 4-862-629 |

| | | | |
|---|---|---|---|
| ASTM F1199 | 1988(1998) | Standard Specification for Cast (All Temperatures and Pressures) and Welded Pipe Line Strainers (150 psig and 150 Degrees F Maximum) | TX 4-862-629 |
| ASTM F1200 | 1988(1998) | Standard Specification for Fabricated (Welded) Pipe Line Strainers (Above 150 psig and 150°F) | TX 4-862-629 |
| ASTM F1201 | 1988(1998) | Standard Specification for Fluid Conditioner Fittings in Piping Applications Above Zero Degrees F | TX 4-862-629 |
| ASTM F1271 | 1990(1995)e 1 | Standard Specification for Impact Attenuation of Surfacing Materials Within the Use Zone of Playground Equipment | TX 4-862-629 |
| ASTM F1273 | 1991(1996)e 1 | Standard Specification for Tank Vent Flame Arresters | TX 4-862-629 |
| ASTM F1321 | 1992 | Standard Guide for Conducting a Stability Test (Lightweight Survey and Inclining Experiment) to Determine Light Ship Displacement and Centers of Gravity of a Vessel | TX 4-862-629 |
| ASTM F1471 | 1993 | Standard Test Method for Air Cleaning Performance of a High-Efficiency Particulate Air-Filter System | TX 3-936-504 |
| ASTM F1546/F 1546M | 1996 | Standard Specification for Fire Hose Nozzles | TX 4-862-629 |
| ASTM F1548 | 1994 | Standard Specification for the Performance of Fittings for Use with Gasketed Mechanical Couplings Used in Piping Applications | TX 4-862-629 |
| ASTM F1951 | 1999 | Standard Specification for Determination of Accessibility of Surface Systems Under and Around Playground Equipment | TX 5-641-808 |
| ASTM G21 | 1990 | Standard Practice for Determining Resistance of Synthetic Polymeric Materials to Fungi | TX 4-143-803 |
| ASTM G151 | 1997 | Standard Practice for Exposing Nonmetallic Materials in Accelerated Test Devices that Use Laboratory Light Sources | TX 4-755-309 |
| ASTM G154 | 2000a | Standard Practice for Operating Fluorescent Light Apparatus for UV Exposure of Nonmetallic Materials | TX 4-952-491 |
| ASTM F747 | 1997 | Standard Terminology Relating to Amusement Rides and Devices | TX 5-641-808 |
| ASTM F1193 | 2006 | Standard Practice for Quality, Manufacture, and Construction of Amusement Rides and Devices | TX 7-685-943 |
| ASTM F1950 | 1999 | Standard Specification for Physical Information to be Transferred With Used Amusement Rides and Devices | TX 5-641-808 |
| ASTM F1957 | 1999 | Standard Test Method for Composite Foam Hardness Durometer Hardness | TX 5-641-808 |

# EXHIBIT 3

## ASTM License Agreement

**IMPORTANT- READ THESE TERMS CAREFULLY BEFORE ENTERING THIS ASTM PRODUCT.**
By purchasing a subscription and clicking through this agreement, you are entering into a contract, and acknowledge that you have read this License Agreement, that you understand it and agree to be bound by its terms. If you do not agree to the terms of this License Agreement, promptly exit this page without entering the ASTM Product.

### 1. Ownership:

This Product is copyrighted, both as a compilation and as individual standards, articles and/or documents ("Documents") by ASTM ("ASTM"), 100 Barr Harbor Drive, West Conshohocken, PA 19428-2959 USA, except as may be explicitly noted in the text of the individual Documents. All rights reserved. You (Licensee) have no ownership or other rights in the ASTM Product or in the Documents. This is not a sale; all right, title and interest in the ASTM Product or Documents (in both electronic file and hard copy) belong to ASTM. You may not remove or obscure the copyright notice or other notices contained in the ASTM Product or Documents.

### 2. Definitions.

#### A. Types of Licensees:

(i) **Individual User:**
a single unique computer, with an individual IP address;

(ii) **Single-Site:**
one geographic location or to multiple sites within one city that are part of a single organization unit administered centrally; for example, different campuses of the same university within the same city administered centrally.

(iii) **Multi-Site:**
an organization or company with independently administered multiple locations within one city; or an organization or company located in more than one city, state or country, with central administration for all locations.

#### B. Authorized Users:

any individual who has subscribed to this Product; if a Site License, also includes registered students, faculty or staff member, or employee of the Licensee, at the Single or Multiple Site.

### 3. Limited License.

ASTM grants Licensee a limited, revocable, nonexclusive, non-transferable license to access, by means of one or more authorized IP addresses, and according to the terms of this Agreement, to make the uses permitted and described below, each ASTM Product to which Licensee has subscribed.

#### A. Specific Licenses:

(i) **Individual User:**

(a) the right to browse, search, retrieve, display and view the Product;

(b) the right to download, store or print single copies of individual Documents, or portions of such Documents, solely for Licensee's own use. That is, Licensee may access and download an electronic file of a Document (or portion of a Document) for temporary storage on one computer for purposes of viewing, and/or printing one copy of a Document for individual use. Neither the electronic file nor the single hard copy print may be reproduced in any way. In addition, the electronic file may not be distributed elsewhere over computer networks or otherwise. That is, the electronic file cannot be e mailed, downloaded to disk, copied to another hard drive or otherwise shared. The single hard copy print may only be distributed to others for their internal use within your organization; it may not be copied. The individual Document downloaded may not otherwise be sold or resold, rented, leased, lent or sub-licensed.

(ii) **Single-Site and Multi-Site Licenses:**

(a) the right to browse, search, retrieve, display and view the Product;

(b) the right to download, store or print single copies of individual Documents, or portions of such Documents for the Authorized User's personal use, and to share such copies with other Authorized Users of Licensee within Licensee's computer network;

(c) if an educational institution, Licensee is permitted to provide a hardcopy of individual Documents to individual students (Authorized Users) in a class at Licensee's location;

(d) the right to display, download and distribute hardcopies of Documents for training Authorized

ASTM001788

**B.** The ASTM Products are also available in Adobe Acrobat (PDF) format to Licensee and its Authorized Users, who are solely responsible for installing and configuring the appropriate Adobe Acrobat Reader software.
**C.** ASTM shall use reasonable efforts to make online access available on a continuous basis.  Availability will be subject to periodic interruption and downtime for server maintenance, software installation or testing, loading new files, and reasons beyond the control of ASTM. ASTM does not guarantee access, and will not be liable for damages or refunds if the Product becomes unavailable temporarily, or if access becomes slow or incomplete due to system back-up procedures, Internet traffic volume, upgrades, overload of requests to servers, general network failures or delays, or any other cause that may from time to time make the Product unavailable for the Licensee or Licensee's Authorized Users.

### 7. Terms and Fees.
**A.** The term of this Agreement is_____ ("Subscription Period"). Access to the Product is for the Subscription Period only. This Agreement will remain in effect thereafter for successive Subscription Periods so long as annual subscription fees, as such may change from time to time, are paid. Licensee and/or ASTM have the right to terminate this Agreement at the end of a Subscription Period by written notice given at least 30 days in advance.
**B. Fees:**

### 8. Verification.
ASTM has the right to verify compliance with this Agreement, at its expense, and at any time during the course of normal business hours. To do so, ASTM will engage an independent consultant, subject to a confidentiality agreement, to review Licensee's use of ASTM Product and/or Documents. Licensee agrees to permit access to its information and computer systems for this purpose. Verification will take place upon no less than 15 days notice, during normal business hours and in a manner that does not interfere unreasonably with LicenseeÕs operations. If verification reveals unlicensed or prohibited use of the ASTM Product or Documents, Licensee agrees to reimburse ASTM for the costs incurred in verification and reimburse ASTM for any unlicensed/prohibited uses. By invoking this procedure, ASTM does not waive any of its rights to enforce this Agreement or to protect its intellectual property by any other means permitted by law.

### 9. Passwords:
Licensee must immediately notify ASTM of any known or suspected unauthorized use(s) of its password(s), or any known or suspected breach of security, including the loss, theft or unauthorized disclosure of such password or any unauthorized access to or use of the ASTM Product. Licensee is solely responsible for maintaining the confidentiality of its password(s) and for ensuring the authorized access and use of the ASTM Product. Personal accounts/passwords may not be shared.

### 10. Disclaimer of Warranty: Unless specified in this Agreement, all express or implied conditions, representations and warranties, including any implied warranty of merchantability, fitness for a particular purpose or non-infringement are disclaimed, except to the extent that these disclaimers are held to be legally invalid.

### 11. Limitation of Liability: To the extent not prohibited by law, in no event will ASTM be liable for any loss, damage, lost data or for special, indirect, consequential or punitive damages, however caused regardless of the theory of liability, arising out of or related to the use of the ASTM Product or downloading of the ASTM Documents. In no event will ASTM's liability exceed the amount paid by Licensee under this License Agreement.

### 12. General.
**A. Termination:**
This Agreement is effective until terminated. Licensee may terminate this Agreement at any time by destroying all copies (hard, digital or in any media) of the ASTM Documents and terminating all access to the ASTM Product.
**B. Governing Law, Venue, and Jurisdiction:**
This Agreement shall be interpreted and construed in accordance with the laws of the Commonwealth of Pennsylvania. Licensee agrees to submit to jurisdiction and venue in the state and federal courts of Pennsylvania for any dispute which may arise under this Agreement. Licensee also agrees to waive any claim of immunity it may possess.
**C. Integration:**
This Agreement is the entire agreement between Licensee and ASTM relating to its subject matter. It supersedes all prior or contemporaneous oral or written communications, proposals, representations and

ASTM001790

warranties and prevails over any conflicting or additional terms of any quote, order, acknowledgment, or other communication between the parties relating to its subject matter during the term of this Agreement. No modification of this Agreement will be binding, unless in writing and signed by an authorized representative of each party.

**D. Assignment:**

Licensee may not assign or transfer its rights under this Agreement without the prior written permission of ASTM.

**E. Taxes.**

Licensee must pay any applicable taxes, other than taxes on ASTM's net income, arising out of Licensee's use of the ASTM Product and/or rights granted under this Agreement.

ASTM001791

# EXHIBIT 4

ASTM License Agreement (Reading Room)

The purpose of this site is to provide the public with access to ASTM International standards ("ASTM Documents") which have been referenced or incorporated into federal regulation or laws. Please use this site to review these standards. The ASTM Documents are provided as a public service, and you represent that you will not make any commercial use of the ASTM Documents available here. These ASTM Documents are available for review only, and hardcopies and printable versions will continue to be available for purchase. By clicking on any ASTM Document, you agree to be bound by the terms of this agreement both as to this and each subsequent use you make of the ASTM Document, and you are responsible for ensuring that the terms of this agreement are met.

IMPORTANT- READ THESE TERMS CAREFULLY BEFORE ACCESSING ANY ASTM DOCUMENT.
By accessing any ASTM Document you are entering into a contract, and acknowledge that you have read this License Agreement, that you understand it and agree to be bound by its terms. If you do not agree to the terms of this License Agreement, promptly exit this site.

License:
ASTM grants you, the ASTM visitor, a nonexclusive and nontransferable license to view online the content of the ASTM Document(s). The ASTM Document is designed to be viewed online only - there are no "print," "save," or "cut and paste" options - and the license granted to you by this agreement does not include the right to download, reproduce, store in a retrieval system, modify, make available on a network, use to create derivative works, or transmit the content of the ASTM Document in any form or by any means, electronic, mechanical, photocopying, recording, scanning, or otherwise.

This license is specifically granted conditioned on your completion of the on-line registration form and you represent that the information you provided is truthful and accurate.

Copyright:
This site and all of its content are protected by copyright pursuant to U.S. and international copyright laws. You may not copy or download any of the material contained on this site in whole or in part without the express authorization of ASTM. You may not publish, modify, transmit, reproduce, create new works from, distribute, sell, loan, nor in anyway exploit any of the material contained on this site in whole or in part, without the express authorization of ASTM.

Trademark:
Except as indicated, ASTM owns all trademarks, service marks, certification marks, and logos featured on this site, including the terms "ASTM," ASTM International" and the "American Society for Testing and Materials." Use of these marks without the express written permission of ASTM is expressly prohibited.

Indemnification:
You agree to indemnify and hold ASTM, its directors, officers, members, and employees harmless from any claims, demands, or damages, including attorney fees, asserted by any third party due to or arising out of your use of or conduct on the site or of any ASTM Document.

Disclaimer of Warranty and Liability:
ASTM MAKES NO REPRESENTATION THAT THE DOCUMENTS ON THIS SITE ARE THE MOST RECENT OR UP-TO-DATE VERSION OF THE ASTM STANDARDS CURRENTLY AVAILABLE. IT IS THE VISITOR'S RESPONSIBILITY TO DETERMINE IF THE DOCUMENT MEETS THEIR REQUIREMENTS OR PURPOSES.

ASTM SHALL NOT BE LIABLE FOR ANY DIRECT, SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES, INCLUDING WITHOUT LIMITATION, LOST REVENUES OR LOST PROFITS, WHICH MAY RESULT FROM THE USE OF, ACCESS TO, OR INABILITY TO USE THESE MATERIALS. UNDER NO CIRCUMSTANCES WILL THE TOTAL LIABILITY OF ASTM TO YOU BASED ON ANY CAUSE OF ACTION EXCEED $100.

Miscellaneous:
As a condition of your use of this site, you agree not to use the site for any purpose that is unlawful or prohibited by this agreement.

Use of the site by you is unauthorized in any jurisdiction that does not give effect to all provisions contained in this agreement.

ASTM001814

If any part of these terms and conditions is held to be invalid or unenforceable for any reason including, but not limited to, the warranty disclaimers and liability limitations specified above, then the invalid or unenforceable provision will be deemed superseded by a valid enforceable provision that most closely matches the intent of the original provision and the remainder of the agreement will remain in full force and effect.

A printed version of this agreement shall be admissible in judicial or administrative proceedings based upon or relating to this agreement to the same extent and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

These terms and conditions constitute the entire agreement between you and ASTM with respect to your use of the site. You acknowledge that, in providing you access to and use of the site, ASTM has relied on your agreement to be legally bound by these terms and conditions.

This agreement shall be construed and interpreted pursuant to the laws of the Commonwealth of Pennsylvania applicable to agreements wholly entered into and performed in Pennsylvania, excluding that body of law dealing with conflict of laws. Any legal action, suit, or proceeding arising out of or relating to this agreement or the breach thereof shall be instituted in a court of competent jurisdiction in Pennsylvania, and each party hereby consents and submits to the personal jurisdiction of such court, waives any objection to venue in such court and consents to the service of process by registered or certified mail, return receipt requested, at the last known address of such party.

You may not assign or transfer your rights or obligations under this agreement.

ASTM001815

# EXHIBIT 5

PARTICIPATING MEMBER



▼ All | Search ASTM | ▼ LANGUAGES  CONTACT  🛒 CART (0)

▼ PRODUCTS AND SERVICES    ▼ GET INVOLVED    ▼ ABOUT    ▼ NEWS

Get Involved / Membership / Membership Renewal



Digital Library Home
My Account
Help

# Membership Renewal

Welcome, Kara Laufer

*Thank you for renewing your Participating membership. Your 2012 Membership renewal fee is $75 U.S.*

You agree, by your participation in ASTM and enjoyment of the benefits of your annual membership, to have transferred and assigned any and all interest you possess or may possess, including copyright, in the development or creation of ASTM standards or ASTM IP to ASTM. For additional information, please see the ASTM IP Policy.

Click "Continue" to place your membership renewal in the ASTM shopping cart.

Home  About ASTM  Site Map  Account  Contact  Policies  Copyright/Permissions
Copyright © 2006 - 2012 ASTM, All Rights Reserved. ASTM International, 100 Barr Harbor Drive, PO Box C700, West Conshohocken, PA, 19428-2959 USA



▼ All | Search ASTM | ▼ LANGUAGES  CONTACT  🛒 CART (0)

▼ PRODUCTS AND SERVICES    ▼ GET INVOLVED    ▼ ABOUT    ▼ NEWS

Get Involved / Membership / Membership Renewal

Digital Library Home
My Account
Help

# Membership Renewal

Kara Laufer,

*Your membership entitles you to a free basic Volume from the Annual Book of ASTM Standards.*

1. Select Section of Interest:

2. Select Volume:

Note: Volume titles have been truncated for display purposes. Click here for a list of full volume titles and publication dates for Print/CD-ROM versions.

3. Select Format:

Click here to learn more about your Volume format options.

☑ No, I do not want a member volume

Click "Continue" to place your free Volume in your ASTM shopping cart.

CONTINUE

Home  About ASTM  Site Map  Support  Contact  Policies  Copyright/Permissions
Copyright © 2006 - 2012 ASTM, All Rights Reserved. ASTM International, 100 Barr Harbor Drive, PO Box C700, West Conshohocken, PA, 19428-2959 USA

ASTM001793

# EXHIBIT 6

12 Tables of Codes

# Twelve Tables of Codes

| DIRECTORY OF TABLES | |
| --- | --- |
| Table 01 | Table of Codes |
| Table 02 | Table of Authorities |
| Table 03 | Table of Revenue and Renumeration |
| Table 04 | Table of Pricing Variances |
| Table 05 | Table of Procurement |
| Table 06 | Table of Production |
| Table 07 | Table of Reverse Lookup |
| Table 08 | Table of Works Consulted |
| Table 09 | Table of Tweets |
| Table 10 | Table of Transformative Use |
| Table 11 | Table of Official Proceedings |
| Table 12 | Table of Requests for Comment |

## § 1. The Right To Know

The right to know the law, so as not to be ignorant, as ignorance of the law is no excuse.

The right to speak the law, so as to inform the citizenry.

The right to know and speak the law is the underpinning of government in ancient and modern times. The right to know and speak the law is the foundation of the doctrine of the Rule of Law, which provides:

- First, that the laws shall be public, that the arbitrary whims of individual men and women have no place in a society ruled by law. We declare ourselves to be nations of laws, not empires of men.
- Second, that the laws shall apply equally to all. There shall not be one minimum wage for people of color and another for white people. There shall not be one court for men and another for women. The vote shall not be reserved for the rich, disenfranchising the poor with poll taxes or other artificial barriers meant to come between a people and their government.
- Third, that there shall be due process under the law. Judgment shall only be applied after a fair and open proceeding; you shall know the charges levied against you and shall be provided counsel, so that you

PRO_00165980

may be heard.

When we fail to live up to the Rule of Law, we have failed as a society.
Despots may make excuses about extraordinary times or states of
emergency, but those reasons are given sheepishly and accepted grudgingly,
as we all know that a government that fails to live by the Rule of Law is one
that will eventually face the springtime of revolt.

## § 2. The Rule of Law

In the early days of the Roman Republic, the commoners rose against their
aristocratic masters and demanded that the laws by which they would be
judged should be made known. When the aristocrats resisted, preferring to
impose the law arbitrarily, the people quit the city of Rome, leaving the city
defenseless and without workers to keep it running.

The great secession led in 450 BCE to the promulgation of the Twelve
Tables of Law, which were inscribed on bronze tablets and placed in the
agoras for all to read. All citizens were expected to read and know the law,
indeed when the Gauls burnt the city in 390 BCE and the tablets were
destroyed, all the schoolchildren were able to recite them from memory and
they were easily reconstructed.

That the laws shall be written down and promulgated for all to know was a
universal value. In Greece, the laws of Solon were inscribed on wooden
cylinders and placed in the markets. Aristotle stated in *Politics* that "the rule
of law...is preferable to that of any individual...[H]e who bids the law rule
may be deemed to bid God and Reason alone rule, but he who bids man rule
adds an element of the beast; for desire is a wild beast, and passion perverts
the minds of rulers, even when they are the best of men. The law is reason
unaffected by desire."

In India, Ashoka the Great ruled from 269 BCE to 231 BCE and inscribed
the Code of the Dhamma on 50-foot pillars of stone throughout the land,
declaring in Edict Number 4 "that there should be uniformity in law and
uniformity in sentencing." Ashoka appointed Dhamma Officers who went out
into the provinces, reading the edicts aloud to the people and helping them to
understand his laws.

That the law should be known to all was fundamental, but equally important
was that the law should not be for sale. When the Barons of England

PRO_00165981

confronted King John in 1215 on the meadow of Runnymede, one of their chief complaints was that access to the courts had become matter of access to money and that judgments were for sale to those who chose to pay for them. This led to the most long-lasting provision of Magna Carta, one still in force in the United Kingdom and many other common law jurisdictions:

> Article 40: "To no one will we sell—to no one will we deny or delay —access to right or justice."

Likewise, in Japan, the 7th-century Prince Shokotu recognized that access to the law and justice should not be a matter of access to money. In the 17-Article Constitution, which is also still in effect, he instructed all Ministers and officials of state to observe the principles he set out:

> Article 5: "Of complaints brought by the people there are a thousand in one day. If in one day there are so many, how many will there be in a series of years? If the man who is to decide suits at law makes gain his ordinary motive, and hears causes with a view to receiving bribes, then will the suits of the rich man be like a stone flung into water while the complaints of the poor will resemble water cast upon a stone. Under these circumstances the poor man will not know where to take their complaints."

That all people should know their duties was expressed in China in the first printed book, *The Diamond Sutra,* which was dedicated to "universal free distribution." In the Chinese Buddhist tradition, one gains merit by copying or printing. The writing of the laws began in China in 536 BCE, when Xing Shu inscribed the code of punishments on a bronze tripod for all to see. Then, 20 years later a neighboring state inscribed the laws on an iron tripod, then private citizens copied them onto bamboo. For the next millennium, the Chinese government balanced the Confucian precepts of rule-by-man with the codified principles of rule-by-law.

As new governments were formed to throw off colonial and dynastic yokes, equality under the law and government by Rule of Law became guiding principles. The U.S. Constitution enshrined equality and due process into the fabric of the newly United States. John Adams explained in his *Dissertation on the Canon and Feudal Law* that the key to making this experiment in democracy work would be the participation of an informed citizenry:

> "Let us tenderly and kindly cherish, therefore, the means of knowledge. Let us dare to read, think, speak, and write. Let every

PRO_00165982

12 Tables of Codes

order and degree among the people rouse their attention and animate
their resolution. Let them all become attentive to the grounds and
principles of government, ecclesiastical and civil. Let us study the law
of nature; search into the spirit of the British constitution; read the
histories of ancient ages; contemplate the great examples of Greece
and Rome; set before us the conduct of our own British ancestors,
who have defended for us the inherent rights of mankind against
foreign and domestic tyrants and usurpers, against arbitrary kings and
cruel priests, in short, against the gates of earth and hell."

An informed citizenry requires the freedom to read and write the law. When
the issue came before the U.S. Supreme Court, it ruled unanimously in
*Wheaton v. Peters* (1834) that the law belonged to the people, not to the
government and certainly not to private citizens, stating "no reporter has or
can have any copyright in the written opinions delivered by this Court."

The principle that the law belongs to the people was repeatedly affirmed. In
*Banks v. Manchester* (1888), the Supreme Court rejected copyright claims
over state court opinions. In *Veeck v. Southern Bldg. Code Congress*
(2002), the 5th Circuit of the Court of Appeals rejected copyright claims
over model building codes that were incorporated into law in Texas, stating
"[P]ublic ownership of the law means precisely that 'the law' is in the 'public
domain' for whatever use the citizens choose to make of it."

In the 20th Century, governments all over the world have repeatedly
reaffirmed the importance of the Rule of Law and of fundamental human
rights, which include the right to know what our governments require of us.
This right has been particularly important in the formation of the European
Union. Article 15 of the Treaty on the Functioning of the European Union
emphasized the "right of access to documents of the Union's institutions,"
the Charter of Fundamental Rights of the European Union guarantees a "right
of access to documents," and the Treaty of Amsterdam firmly reaffirmed the
principle:

> Article 1: "The Union is founded on the principles of liberty,
> democracy, respect for human rights and fundamental freedoms, and
> the rule of law, principles which are common to the Member States."

The courts in Europe have repeatedly reaffirmed these principles. In the
United Kingdom, for example, in *Blackpool v. Locker* (1948), the King's
Bench refused to enforce regulations that were not available for the public to
read. In *Fothergill v. Monarch Airlines* (1981), the House of Lords stated

PRO_00165983

that "the need for legal certainty demands that the rules by which the citizen is bound should be ascertainable by him." In *Sunday Times v. United Kingdom* (1979), the European Court of Human Rights stated that "[T]he law must be adequately accessible: the citizen must be able to have an indication that is adequate in the circumstances of the legal rules applicable to a given case."

The Rule of Law is not a concept limited to western or northern countries, to developed countries, or any other lines drawn that divide our world into sectors. The Rule of Law unites our world around a basic truth, that all human beings have basic rights. The Universal Declaration of Human Rights (1948) states:

> Article 19: "Everyone has the right to freedom of opinion and expression; this right includes ... to seek, receive and impart information and ideas through any media and regardless of frontiers."

The rights of speech and expression are fundamental to any declaration of human rights. The right of access to justice is equally fundamental. There can be no human rights in any meaningful sense if we limit who is allowed to read the law and who is allowed to speak it. Human rights begin with all citizens knowing their duties and their rights under the law.

## § 3. Code is Law

Law has always been technical. Regulation of public safety and the promotion of standards for fair trade have always stood hand-in-hand with the regulation of the procedures of justice. When the Barons at Runnymede forced King John to agree to Magna Carta, the articles guaranteeing access to justice came right after the article proclaiming a system of uniform weights and measures:

> Article 35: "Let there be throughout our kingdom a single measure for wine and a single measure for ale and a single measure for corn, namely 'the London quarter,' and a single width of cloth (whether dyed, russet or halberjet) namely two ells within the selvedges and let it be the same with weights and measures."

England was not unique. In most of the ancient edicts of government, we see the regulation of technology for public safety and the promotion of trade sitting alongside the procedures of justice, the functioning of the divisions of

PRO_00165984

government, and other constitutional issues. In Ashoka's Second Edict he made provisions for the availability of important medical roots and fruits; in other edicts he established systems of irrigation and safe roads. In early Irish law we see provisions of family law sit alongside standards for beekeeping and the proper functioning of watermills.

As our modern era began, the provision of the public safety became an increasingly important function of government. Railways helped open up the United States, but at a tremendous cost in lives from manual hand brakes and link-and-pin couplers for the cars. With the passage of the Railroad Safety Appliance in 1893, the number of accidents fell dramatically as air brakes and automatic couplers became required on all trains.

In American cities, children were dying because milk was being adulterated with fillers such as chalk and kept in grossly unsanitary conditions. With the passage of the Food Act of 1899, the Board of Agriculture was finally able to issue the 1901 Sale of Milk Regulations, establishing standards of purity and hygiene, followed soon after by the Federal Foods and Drugs Act of 1906 which established the Food and Drug Administration.

Perhaps the most significant of the public safety regulations at the turn of the century were the fire codes. The impetus was the horrific New York Triangle Shirtwaist Factory Fire of 1911, where the exit doors were locked shut and 146 garment workers died from fire and smoke, many of them leaping to their deaths from the 10th floor of the factory, a scene so horrific that an observer called it "the day it rained children."

The fire led to the creation of a Committee on Public Safety led by Frances Perkins, and with the backing of Tammany Hall's Al Smith, to the promulgation of mandatory fire codes. Since then, groups such as the National Fire Protection Association have created the high quality building, fire, electrical, and other public safety codes required throughout the world. When those codes are ignored, we see tragedies such as the Bangladesh Tazreen Fashions fire of 2012, a fire that bore a striking and horrifying resemblance to the Triangle Shirtwaist fire 101 years earlier.

In our modern world, public safety regulations are a key function of government. Natural gas and oil, for example, power our modern cities, but those substances can cause grave harm. In the United States, we learned this repeatedly when the Texas City refinery explosion of 2005 killed 15 and injured 170, when the Deepwater Horizon oil spill of 2010 threw 4.9 billion gallons of oil into the Gulf, and when a 30-inch gas pipeline in San Bruno,

PRO_00165985

12 Tables of Codes

California, exploded and sent a blast of fire 1,000 feet high.

Technical regulations encompass a huge swathe of our modern life, a natural outcome of our technical society. Building and other codes, food safety, hazardous materials, the environment, occupational safety in factories and farms, and the safety of products are all subject to these regulations. While some may argue there is too much regulation and others argue there is too little, before we can have that discussion the citizenry must be informed.

## § 4. Indefensible Thunderbolts

*Ignorantia juris non excusat* is the well-established doctrine that ignorance of the law is no excuse. That citizens must be notified of the laws that affect them was the genesis of the Federal Register, an official gazette of the United States, established after the Supreme Court ruled in the *Hot Oil Case* (1935) that regulations that the government failed to publish were not valid. Notification of the citizenry of their rights and responsibilities is a requirement of lawmaking.

In most of the world, including the United States, there has arisen a system for technical laws known as incorporation by reference. The standards governing topics such as building codes or hazardous material transport are developed by ostensibly private bodies. The government then publishes a notice in an Official Gazette incorporating these standards into the law, but the text of the standards must often be purchased from a private body.

The private bodies that develop these standards have been delegated law-making authority from their governments. In most cases, these private bodies are created by their governments. The British Standards Institution, for example, was created by a Royal Charter in 1929 and represents the United Kingdom in numerous international forums, including the International Organization for Standardization (which it helped create) and the European Union's European Committee for Standardization (CEN). As the duly delegated agent for this form of European Union regulation, the British Standards Institution is required to adopt and publish EU standards without change, making the law available to citizens. The official United Kingdom repository of statutes lists hundreds of statutory instruments that mention British Standards Institution documents.

While technical standards have the force of law, the governmental bodies that promulgate these standards and a series of nonprofit organizations that have

PRO_00165986

12 Tables of Codes

sprung up besides them all to often maintain that the laws are their private property and can only be accessed after paying a fee. More insidiously, these organizations maintain that they continue to own the documents even after you have paid the fee, exercising controls such as restricting the ability to print the document, or copy it, or even to quote excerpts without their case-by-case prior written approval.

These restrictions on use are implemented through a number of techniques. Many standards are only available in a shrink-wrap license, an agreement that claims that by opening the packaging the reader agrees that they don't own the document but only "license" it and agree not to redistribute or quote without permission. For online distribution, many standards come with Digital Rights Management (DRM) software that ties the document to a specific computer and restricts the ability to copy text from the standard or print it.

These restrictions on use are proclaimed loudly and prominently, with watermarks being put on every page of some documents purchased, strident terms of use, and publicity campaigns reminiscent of the "FBI Warnings" stamped on the beginning of many movies. But, there is a world of difference between a privately created movie and a legal document carrying out the edicts of government. To proclaim ownership of edicts of government is a false proclamation, what is known in the law as the *Doctrine of Brutum Fulmen,* the use of an indefensible thunderbolt to make others give up their rights under the law.

The law belongs to the people, and cannot become the private property of some governmental or non-governmental organization, no matter how seemingly well-deserved are the rents one could extract from winning a monopoly concession on a parcel of the law. While standards bodies need money to carry out their valuable work, and while it is clear that these standards bodies create high-quality documents that are essential to our public safety, one cannot cordon off the public domain simply because of an institutional desire for funds.

An examination of the financial status of standards organizations reveals a wide variation in composition and revenue streams. In India, for example, less than 4% of revenue at the Bureau of Indian Standards (BIS) comes from the sales of documents. BIS, like the British Standards Institution, Underwriters Laboratories, Standards New Zealand, and many other organizations throughout the world, have a thriving business in certification and testing.

PRO_00165987

Some standards bodies, such as the National Fire Protection Association
and the International Organization for Standardization, depend more heavily
on the sale of standards documents. However, even in these cases there are
many other revenue streams and there are opportunities to adjust the
business models to more properly reflect the importance of their work
throughout society. And, in many cases, there is room for a fresh look at
expenses, such as million-dollar CEO salaries, some of the highest salaries in
the non-profit world.

Not all standards bodies have become addicted to these copious revenues
that accompany these indefensible thunderbolts. In some countries, such as
Thailand, Indonesia, and Ecuador, standards are freely available to citizens
as a matter of public policy. Many standards bodies thrive on an open
standards model, including key areas such as all the standards that govern
the operation of the Internet created by the Internet Engineering Task Force
and the World Wide Web Consortium, and the food safety standards
promulgated in the Codex Alimentarius by the World Health Organization
and the Food and Agriculture Organization of the United Nations.

One of the most insidious aspects of the current system is the wide variance
of the price of standards. A basket of 11 public safety standards published
by the International Organization for Standardization and also required by the
European Union was assembled and priced by Public.Resource.Org in the
retail outlets of 42 national standards bodies. Even within the European
Union the prices varied wildly, from $175 in the Former Yugoslav Republic
of Macedonia to in Lithuania to $2628 for the same standards in the United
Kingdom. Because access to the standards (and the national forwards to the
standards) is vital for economic activity across national borders, the
opportunistic pricing by money-hungry standards bodies becomes a tall
barrier to trade.

While extracting a tax on each reader of a standards document is an
impediment to the Rule of Law, the restriction on reuse of the documents is
even more serious. The law is the raw material of democracy, and being able
to work with these documents to create better ways to inform the citizenry is
crucial to the proper workings of justice, governance, and politics.

In many cases, the standards promulgated by standards bodies are only
available electronically on a web site that only works on a certain of browser,
or as a PDF file with a plugin that only runs on certain operating systems. In
many cases, the documents are so restricted in use that they won't work with
software used by the visually impaired, or the searching capabilities are so

PRO_00165988

12 Tables of Codes

restricted that lawyers, paralegals, policy analysts, legislative aides, and
government officials are unable to find the passages they need.

One of the most important reasons the law has no restrictions on use is so
that innovation may flourish in the marketplace, creating better solutions for
citizens, lawyers, government workers, and public safety professionals.
Restrictions on reuse have frozen the format of standards documents inside
dozens of old web sites and outmoded formats maintained by standards
organizations, many of whom run Internet sites that are littered with technical
errors and broken software.

Perhaps the most troubling indefensible thunderbolts are when the law is kept
secret and may not be consulted. In Estonia, one of the most advanced and
democratic societies and generally an exemplar of open government
practices, Eesti Standardikeskuse (EVS) received an order with payment via
PayPal from Public.Resource.Org for €3,208.68 for the purchase of 166
technical standards required under Estonian law. The next day, the order was
cancelled, the money returned, and a notice dispatched indicating that the
service was being refused. When we inquired as to why, the answer was a
curt 1-line response:

> "We would keep the circumstances to ourselves and we recommend
> to order the standards from another country."

Even in the case of European Union regulations, which must be adopted by
all European Union nations without change, there is a national foreword.
Other standards are developed specifically for Estonia and are only available
from EVS. Public.Resource.Org wrote to the Honorable Thomas Hendrik
Ilves, the President of Estonia and a leader in open government and asked
him for help. When he didn't answer, we wrote to the President's aide, and
then to the President's son, neither of whom answered. In a society governed
by the Rule of Law, should one have to know the President's son to be able
to purchase the law? In a modern democracy, should the government be able
to pick and choose who shall know the rules?

## § 5. This Law is Your Law

The U.S. Copyright Office, in the *Compendium of Copyright Office
Practices,* states:

> "Edicts of government, such as judicial opinions, administrative

PRO_00165989

rulings, legislative enactments, public ordinances, and similar official legal documents are not copyrightable for reasons of public policy."

In order to promote public education and public safety, equal justice for all, a better informed citizenry, the rule of law, world trade and world peace, Public.Resource.Org has undertaken to make technical edicts of government available on a noncommercial basis, as it is the right of all humans to know and speak the laws that govern them.

The focus in this release is on mandatory public safety standards. In many nations, public safety standards are expressly mandatory. In other countries, elaborate dances are undertaken to protect an illusion that the standards are somehow voluntary, but in each of the documents published there is a compelling public interest and the documents have been promulgated under the direction of government and play a key role in society.

A number of the documents released come directly from the standard bodies, because they make the documents available in draft or in final form. In other cases, such as China, the documents were submitted to the World Trade Organization, which maintains a portal with thousands of standards. These standards are made available to the public as part of the WTO's mandate to promote world trade by requiring full disclosure of the rules and standards governing trade with a country.

Many of the documented released were purchased directly from standards organizations after careful research. Most of the standards were ordered in paper format. For PDF files, such as those that were obtained from the World Trade Organization, the documents were fixed by properly embedding fonts and fixing technical errors.

One of the most important reasons for making standards available is to allow for transformative uses, proving better access and utility for citizens. Of the standards being published, several hundred have so far been rekeyed and reset by Public.Resource.Org into valid HTML files. Many of the graphics have been redrawn into the open Scalable Vector Graphics (SVG) format so that the graphics can be resized and manipulated. Likewise, mathematical formulas are being reset into the Math Markup Language (MML), providing better access for the visually impaired and better functionality for those wishing to cut and paste formulas.

A number of other transformative uses become possible when the documents have been rekeyed into valid HTML. Proper metadata is added to

PRO_00165990

12 Tables of Codes

the document headers, making them accessible and discoverable by search engines. Access protocols such as FTP and rsync allow bulk access and resynchronization to large collections of standards documents. Digital signatures allow users to verify that the documents have not been modified by comparing them to a known good version of the document.

All over the world, for centuries, nations have embraced the concept of the Rule of Law—the principle that prescribed law, rather than the whims and desires of any individual, should govern society. The Rule of Law is enshrined in ancient texts and in modern legislation, treaties, and judicial decisions. It is a central protection against tyranny and against a society where justice is arbitrary and some gain unfair advantage over others.

Only if the law is truly free and available can we expect people and enterprises to obey the law, to know their rights under the law, and to evaluate and participate in the work of improving the law. Only if the law is accessible to all, can we truly say that a society is governed by the Rule of Law.

By making technical standards governing building safety, transportation safety, energy safety, food and water safety, and other important areas readily available to all without restriction, we make society better. First responders and government officials can do more to protect citizens. Small enterprises can more easily and affordable comply with the law and build new businesses. Students, educators, scientists, engineers, policy advocates, journalists, and government workers can more easily read the standards and learn about technology, commerce, and government. They can work to improve the standards themselves, and they can improve upon the accessibility and usefulness of the standards by making searchable databases or better navigational tools.

Innovation and education will benefit by opening up this world, but at the root are basic issues of democracy and justice. We cannot tell citizens to obey laws that are only available for the rich to read. The current system acts as a poll tax on access to justice, a deliberate rationing and restriction of information critical to our public safety and economic progress.

The law must be easily available to all people, access to the legal system and the texts that make up the law should not be bought, or sold, or rationed. People must have the right—an unfettered right—to read the law.

People must also have the right to communicate the provisions of law to

PRO_00165991

12 Tables of Codes

others—to speak the law. When Justice Stephen Breyer said, "if a law isn't public, it isn't a law," he was expressing the long-standing doctrine of the Rule of Law, one that has become ever more important in our information age.

Nobody can deny you the right to read and know the law. Nobody can tell you that justice is for sale. Read the law and make it better. Make your society better and make it safer.

You own your government. The Rule of Law is the rule of the people.

The law is yours to read, yours to know, and yours to speak. This law is your law.

---

Published by Public.Resource.Org
Last Modified January 7, 2013

PRO_00165992

# EXHIBIT 7



# CERTIFICATE

## By Authority Of
### THE UNITED STATES OF AMERICA
## Legally Binding Document

By the Authority Vested By Part 5 of the United States Code § 552(a) and Part 1 of the Code of Regulations § 51 the attached document has been duly INCORPORATED BY REFERENCE and shall be considered legally binding upon all citizens and residents of the United States of America. _HEED THIS NOTICE_: Criminal penalties may apply for noncompliance.

**Document Name:** ASTM D975: Standard Specification for Diesel Fuel Oils

**CFR Section(s):** 40 CFR 1065.701

**Standards Body:** American Society for Testing and Materials

APPROVED

_Official Incorporator:_
THE EXECUTIVE DIRECTOR
OFFICE OF THE FEDERAL REGISTER
WASHINGTON, D.C.