IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


AMERICAN SOCIETY FOR          )
TESTING AND MATERIALS,        )
ET AL.,                       )
                              )
          Plaintiff,          )      CV No. 13-1215
                              )
                              )      Washington, D.C.
       vs.                    )      September 16, 2014
                              )      1:30 p.m.
PUBLIC.RESOURCE.ORG, INC,     )
                              )
          Defendant.          )
_____)


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs:          Kevin Fee, Esq.
                             Michael F. Clayton, Esq.
                             Jordana S. Rubel, Esq.
                             American Society for Testing
                             Morgan, Lewis & Bockius, LLP
                             1111 Pennsylvania Avenue, NW
                             Washington, D.C. 20004
                             (202)739-3001

                             Jonathan Blavin, Esq.
                             National Fire Protection
                             Munger, Tolles & Olson
                             560 Mission St, 27th Floor
                             San Francisco, CA 94105

                             Kenneth Steinthal, Esq.
                             American Society of Heating
                             King & Spalding, LLP
                             101 Second Street
                             Suite 2300
                             (415)318-1211
                             San Francisco, CA 94105

APPEARANCES CONTINUED:

For the Defendant:          Corynne McSherry, Esq.
                            Mitchell L. Stoltz, Esq.
                            Electronic Frontier Foundation
                            Public Resources.org Esq.
                            U.S. Department of Justice
                            20 Massachusetts Avenue, NW
                            Washington, D.C. 20530
                            (202)616-5084


                            David Halperin, Esq.
                            RepublicReport.org
                            1530 P Street NW, 1st Floor
                            Washington, D.C. 20005
                            (202)905-3434


Court Reporter:             William P. Zaremba, RMR, CRR
                            U.S. Courthouse
                            333 Constitution Avenue, NW
                            Room 6511
                            Washington, D.C. 20001
                            (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1              P R O C E E D I N G S

 2         DEPUTY CLERK:  Civil action 13-1215,

 3    American Society for Testing and Materials, et al., versus

 4    Public.Resource.Org, Incorporated.

 5         Counsel, please step forward to the podium and

 6    state your appearances, please, for the record.

 7         MS. McSHERRY:  Corynne McSherry for the Electronic

 8    Frontier Foundation, representing Public Resource.org.

 9    And with me are my colleagues, Mitch Stoltz and

10    David Halperin.

11         THE COURT:  Would you pronounce your last name

12    again for me, please.

13         MS. McSHERRY:  Sure.  McSherry.

14         THE COURT:  McShin?

15         MS. McSHERRY:  McSherry.

16         THE COURT:  All right.

17         MR. FEE:  Good morning, Your Honor.  I'm Kevin Fee

18    from Morgan Lewis on behalf of ASTM.  And I'm joined by my

19    colleagues, Mike Clayton and Jordana Rubel.

20         THE COURT:  Good afternoon.

21         RIGHT SPEAKER:  Good afternoon, Your Honor.

22    I'm Jonathan Blavin from Munger, Tolles & Olson, on behalf

23    of National Fire Protection Association, Inc.

24         THE COURT:  Good afternoon.

25         MR. STEINTHAL:  Your Honor, Kenneth Steinthal from
```

1    King & Spalding representing the Plaintiff, the American

2    Society of Heating, Refrigerating and Air Conditioning

3    engineers.

4            THE COURT:  All right, everyone.  We are here on a

5    dispute relating to a protective order, proposed protective

6    order.

7            I just want to point out that there's also a

8    Motion to Compel and a Motion to Strike, which I believe

9    have been filed that we're not going to do today.

10           So the first thing I want to get to is that I'm

11   going to refer this case to a Magistrate Judge for discovery

12   purposes after today, and so that Magistrate Judge may have

13   different procedures for how he or she wishes to handle

14   discovery disputes.

15           My preference in discovery disputes is to have the

16   parties contact chambers by telephone if they can't resolve

17   the discovery dispute, and I'd ask that the motion be filed

18   or set a hearing.  But I require that both parties meet and

19   confer to try to solve the issue.  And then if no solution

20   is possible or if you can't come to some kind of resolution,

21   then you jointly contact chambers.  I'm not sure how the

22   Magistrate will proceed, but that's been my -- that's my

23   procedure.  And I assume that will be what the Magistrate

24   does on this, unless they impose different requirements.

25           I have read the materials that you submitted by

1    both sides, including the exhibits and the proposed orders

2    in the language, and I have a couple questions.

3    What are the -- How many documents are we talking about from

4    the Plaintiffs that would be under two-tier level of

5    protection highly confidential?  How many documents are we

6    talking about?

7              MR. FEE:  Your Honor, I can only speak on behalf

8    of ASTM.  I don't think we really know the answer to that

9    question yet, because we have been working on search

10   protocols for reviewing certain e-mails and things of that

11   nature, but we anticipate that being a very small number.

12             We recognize that many of these documents will be

13   publicly available or should not be designated confidential

14   at all, and that most of the confidential documents would be

15   designated as confidential and not highly confidential.

16             THE COURT:  And can you explain to me what is the

17   harm that you think that you would suffer?  And if it's

18   different for the different Plaintiffs, I can hear from you

19   individually.  What is the harm that you think you would

20   suffer if these documents were not -- And let's say for the

21   moment that Mr. Malamud was able to see that, if there was

22   one tier of protection --

23             MR. FEE:  Sure.

24             THE COURT:  -- confidential, and Mr. Malamud was

25   able to see them, what do you think would be the harm that

1    you would suffer?

2          MR. FEE:  Well, we have two concerns with the

3    protective order along those lines, Your Honor.  The first

4    is, Mr. Malamud has already demonstrated a pattern of

5    publishing things on the Internet that are owned by others

6    without regard to whether or not the law permits him to do

7    so.

8          THE COURT:  Let me ask you a question:

9    Is there any history that Mr. Malamud or any prior

10   occurrence of Mr. Malamud disobeying a court order for

11   publication of documents?

12         MR. FEE:  I'm not aware of that, Your Honor.

13         And our second concern is, either intentionally or

14   unintentional, Mr. Malamud speaks on these topics, and

15   specifically about this litigation, all the time in public.

16   In fact, I think our reply brief on the motion for

17   protective order prompted seven Tweets alone.

18         And as many of the Courts have recognized in the

19   cases we've identified, it's hard for a person to

20   compartmentalize their memories and figure out, did I learn

21   this piece of information from something that was designated

22   as highly confidential or was it just confidential?

23         And as a result, we're very concerned, both given

24   his propensity for publicizing just about everything,

25   regardless of who owns it, and the recognition that he may

1   inadvertently disclose information through his many public

2   speaking and writings on this issue that -- pricing

3   information or things of that nature that would be very

4   sensitive for our client to have disclosed to its customers

5   and things of that -- and his competitors would be

6   disclosed.

7           THE COURT:  And is there any competitive harm that

8   you think you'd suffer, or it's just confidential price

9   information that you don't want out there?  But is there any

10  sort of competitive harm that would be done?

11          MR. FEE:  Your Honor, in the Alexander case we

12  cited, for example, it recognized both a two-tier protective

13  order would be appropriate to prevent competitors, if

14  they're on the other side, from using the information, but

15  also recognize that there's a threat associated with the

16  disclosure that might benefit a competitor who's not a party

17  to the case.

18          And so while we consider Mr. Malamud a competitor

19  because there's only two sources of these materials, our

20  authorized sources and his posting of them for free, we're

21  also concerned about other competitors in the standard

22  development organizations having access to things like our

23  pricing, and our customers having access to things like our

24  pricing, strategies, which could impact our ability to

25  negotiate arrangements in the future.

1          THE COURT:  Has Mr. Malamud, as far as you're

2     aware, in the past posted pricing information or such kind

3     of information on publicly available Web sites or Tweets or

4     anything like that?

5          MR. FEE:  I'm not aware of him having access to

6     any of that information, so I'm certainly not aware of him

7     publishing in violation of any obligation.

8          THE COURT:  All right.  Thank you.

9          I have some questions for the Defendant.

10          All right.

11          So can you tell me, Counsel, what is, say, for

12     example, with regard to financial and strategic information,

13     what is the need that -- I understand, you know, as Counsel

14     for the Defendant, you obviously have a need for it, but why

15     the need that -- why is Mr. Malamud required to see this

16     information?

17          MS. McSHERRY:  That's an excellent question,

18     Your Honor.

19          This is a little bit of an unusual case in my

20     experience in that I think I've rarely had a client that was

21     so actively involved in his own defense, and was so capable

22     of being actively involved in his defense, in which --

23     I mean that Mr. Malamud knows -- and, frankly, knows more

24     than just about anyone on this team -- about

25     standards-development organizations, their operations, their

1    personnel, their process of standards development, the

2    process of incorporation by reference.  Of course, his

3    lawyers know a great deal now, too, but he has a very long

4    history of practical experience and know-how that is very

5    helpful for us and will be helpful for us as we evaluate

6    things like including financial information.  So looking

7    at -- If we look at, for example, funding mechanisms and how

8    those work, he will have the ability to place all that in

9    context for us, which will be extremely helpful.

10          And also, I would note that it's not clear to me

11   that the entire tier designation would be exclusively for

12   financial information.  But even if it is exclusively for

13   financial information, business information could be a lot

14   of things, and we really need his context.

15          If that answers your question, then I'd appreciate

16   it if I could also respond to some of what was said just

17   now just quickly.

18          THE COURT:  Yes.

19          MS. McSHERRY:  So with respect to the notion that

20   my client has a pattern of publishing things that are owned

21   by others, it's simply not true.  What he has is a

22   pattern of publish -- we have a copyright dispute here --

23          THE COURT:  Right.

24          MS. McSHERRY:  -- and we have a disagreement about

25   copyright, but that's very different from publishing things

1    that are confidential.  It's an entirely separate issue.

2    And my client actually doesn't have a pattern of doing that.

3              And to the contrary, over time, what he has a

4    pattern of is advising government agencies, for example,

5    when they have been disclosing confidential information in

6    public records, because what happens is sometimes he comes

7    across confidential information in the course of his work

8    making public records available, and he's worked really hard

9    to educate courts, the IRS, and others about confidential

10   information.  And that speaks to also to his ability to tell

11   the difference between confidential information and

12   nonconfidential information.

13             THE COURT:  What about Plaintiffs' allegations

14   that Mr. Malamud has continued to post or has material up in

15   the face of takedown requests from state governments?

16   I mean, how do you respond to that?

17             MS. McSHERRY:  So that, again, speaks to a

18   copyright dispute.

19             Mr. Malamud believes that he has the right under

20   the law to post that information, and he is under no court

21   order or anything else like that or threat of contempt or

22   sanctions.  There's no protective order applying to that

23   information.  He is merely doing his job, which is

24   publishing the law.

25             THE COURT:  But see, that sort of cuts very close

1   to the heart of this case, right?  I mean, this is a

2   copyright case.  The issue concerns what right, you know,

3   Mr. Malamud has to take the Defendant's material and post

4   it, and so the issue of the protective order and what is

5   confidential and what he can post is sort of very close to

6   the merits here.  And as I understand it, that's one of the

7   -- those are the Plaintiffs' concerns.  Once that bell is

8   rung, once the information is posted, it's kind of the horse

9   has bolted, so to speak.

10          And so my concern is that, you know, I have no

11  reason to doubt that Mr. Malamud will obey an order of this

12  Court.  But my concern is that we make it very clear what is

13  covered, and that there is no misunderstanding here about,

14  you know, what is confidential and what is not, and what can

15  be posted and what can't.

16          MS. McSHERRY:  Sure.

17          But, fortunately, he's got a team of lawyers who

18  can help him with that.  Not that he needs it, frankly.  As

19  I said, he's quite good at making those distinctions for

20  himself.

21          And I would stress, Your Honor, that this is a

22  copyright case.  And we have a dispute that we will get to a

23  little bit down the line about whether copyright law permits

24  Mr. Malamud to engage in what he was doing.  But that is

25  very, very different from a dispute over whether he can have

1    access to the information he needs to participate in his own

2    defense, subject to a court order and sanctions, if for some

3    reason he discloses something he is not supposed to.

4            THE COURT:  Now, I'm guessing, but -- And I'd like

5    the parties to correct me if I am wrong, but there is a

6    symmetry in the terms of discovery volume.  I'm assuming

7    that the Plaintiffs are going to have a lot more in terms of

8    volume of discovery than the Defendant will in terms of

9    their production obligations.  Am I correct in that

10   assumption that the Plaintiffs are going to have a lot more

11   that they're producing than the Defendant?  Is that your

12   assumption?

13           MS. McSHERRY:  We hope so.  So far, that hasn't

14   been true, but we'll get there.

15           THE COURT:  And I realize the Plaintiffs allude to

16   that issue in their filings.  I'm not strongly persuaded on

17   that, because I believe that in many litigations that's

18   going to be the case, and it does appear that Plaintiffs

19   have adequate counsel to assist them in handling their

20   discovery obligations.

21           However, I am -- I'll tell you, I'm a little

22   troubled by -- I'm not troubled.  I'm not inclined at this

23   point to follow the method proposed by Mr. Malamud to have

24   the party -- you know, the challenging process be

25   Defendant's challenge a designation, and Plaintiffs have to

1    say why it is confidential.  And I'm also not inclined at

2    this stage to have Plaintiffs write a summary of why

3    materials are confidential.

4              I would like to have seen at this stage that all

5    parties are going to be acting in good faith and proceeding

6    in good faith and following court orders and following

7    deadlines.  And I think that unless I'm given reason to

8    think that they're not acting in good faith, I'm not going

9    to require the Plaintiffs to provide a summary for every

10   single document that they seek protection for.  So that's my

11   thinking right now.

12             And I did have --

13             MS. McSHERRY:  May I speak to that just briefly?

14             THE COURT:  Yes.

15             MS. McSHERRY:  So just to be clear, what we're

16   proposing isn't a paragraph for every document.  Really what

17   we're proposing is something very, very brief, a sentence,

18   perhaps even less.

19             And we think that it actually might streamline

20   things down the line, because -- and prevent challenges,

21   hopefully, to such designations, if we know in advance and

22   if both parties know in advance exactly what the basis for

23   the confidentiality claim is.  Then that could speed things

24   along and make it easier.

25             We don't have to meet and confer and consult and

1   what's the basis.  We know it's right there in the very

2   straightforward manner.

3          THE COURT:  So you're proposing something like a

4   privileged law for confidential documents?

5          MS. McSHERRY:  That would probably work.

6          MR. FEE:  Your Honor, when we first had this

7   discussion many months ago, I have asked then, and ever

8   since then, for an example of any protective order in any

9   case ever in the history of the United States to impose a

10  burden of this nature, and I have never received any example

11  like that.  They've never cited a case like that to you.

12         THE COURT:  But tell me what would be the

13  difficulty -- I mean, it's novel, I'll grant you.  But,

14  I mean, again, it's -- I guess it's harder for you to say

15  without being able to tell me how many documents we're

16  talking about; is that right?

17         MR. FEE:  Well, that's certainly part of it,

18  Your Honor.

19         But bear in mind, once we know the subject matter

20  of why a particular document may be confidential, there

21  could be numerous other reasons why that document is

22  confidential, too.

23         And I'm sure if we don't identify every single

24  reason in this log that we'd have to do, we'll hear that,

25  oh, you only said there was one reason; now you're making up

 1    other reasons.  It's going to make us go through every

 2    document, read every single word, and try to point out every

 3    single basis for claiming a document is confidential.  For

 4    no reason.

 5             Many of these documents are going to go them and

 6    they're going to say, a-ha, it's got confidential financial

 7    information on it.  Of course this is subject to a

 8    confidentiality order.

 9             THE COURT:  All right.

10             Do either of you want to address the point about

11    whether -- can you tell me, Defense Counsel, why -- what is

12    the basis for your requirement of the procedure where you

13    challenge a designation, and the Plaintiffs have to request

14    and give a basis for the confidentiality if you're also

15    asking that they do this confidentiality log.  I mean, that

16    seems to me a bit -- That's a lot.  So what would be the

17    added bonus of that procedure?  What would be the added --

18             I mean, it seems like you're putting in a

19    tremendous amount of work into -- for every single -- if you

20    think that confidentiality log would streamline the process

21    and cut down on the challenges, then why are you asking for

22    this additional procedure where they then have, once you

23    make a challenge, have to describe and sort of give a basis

24    for the confidentiality, if they have already done so in a

25    log.  It's sort of belts and suspenders.  What's the basis

1   for that?

2           MS. McSHERRY:  So we think of these things as

3   working together to help prevent over-designation.

4           So the confidentiality log helps everyone

5   understand right away what the basis for the confidentiality

6   is.

7           And then the procedure, effectively all we're

8   asking for is -- It's already true that it's going to be the

9   burden on the designating party to defend the designation.

10  So all that we propose that the designating party should

11  also have the burden of actually going to court and

12  defending that designation as opposed to waiting for us to

13  bring a motion.  Now, their argument is having us bring a

14  motion, assuming that we're the ones challenging it, will

15  streamline things, because it will cause the parties to

16  think hard about whether they want to do that and whether

17  it's worth it.

18          THE COURT:  And you won't be bringing a motion

19  without calling chambers.

20          MS. McSHERRY:  Of course not.  Absolutely not.

21          We actually think it can cut the other way,

22  however, and cause the designating party to think about

23  whether that given document requires confidentiality if they

24  know that there's a challenge.

25          THE COURT:  Now, let me ask you this:  How much --

1   Do you request change at all or do those rationales change

2   at all if I only have one layer of confidentiality?

3   In other words, if I have one tier which is confidentiality

4   with an order that your client not disclose information that

5   he's allowed to see because I only have one tier, then

6   do you request for this procedure -- for these procedures to

7   continue?

8           MS. McSHERRY:  Well, we think they're all valid

9   and important procedures.  I will not lie, however, and tell

10  you that for us --

11          THE COURT:  I don't want you to.

12          MS. McSHERRY:  -- for our defense having

13  Mr. Malamud being able to have access to these documents is

14  absolutely of paramount importance.

15          THE COURT:  Okay.

16          Is there anything else from the Plaintiffs before

17  I tell you what I think I'm deciding?

18          MR. FEE:  Your Honor, I think you probably

19  understand our position with respect to why the designating

20  parties should not have to move.  You know, it will prevent

21  sort of frivolous unnecessary motions that may be correct on

22  the merits but are of no consequence.  And that's even more

23  so true if Mr. Malamud is going to have access to all the

24  documentation.

25          THE COURT:  Okay.  Thank you, both sides.

1    I think you presented several procedural suggestions that

2    I'm going to pick from plan A and plan B, and we'll see if

3    this works.

4             Again, I -- you know, we're starting out here and

5    I'm going to anticipate that people work in good faith and

6    try to resolve disputes before running into court with a

7    motion or calling me, and I'm sort of presuming you all

8    innocent.  And, you know, obviously, if things don't work,

9    the Magistrate or myself may have to make changes.

10            But at this point, I am going to order that there

11   be -- the protective order have one level of protection.

12   It's confidential.  That Defense Counsel may share with

13   their client, Mr. Malamud.

14            And I am going to make it clear that the material

15   that is marked confidential cannot be disclosed or posted or

16   in any way used outside of this litigation.  And even if

17   used in this litigation, cannot be shown to anyone, even for

18   purposes of this litigation, other than your client, and so

19   there will be one layer of protection that's confidential.

20            The one thing we haven't talked about but I

21   haven't had any questions because I'm sort of -- unless you

22   all have any strong objections or questions you have of me,

23   I'm going to limit the use of discovery materials to

24   litigation purposes only.  If a party would like to use

25   discovery materials for some other purpose, that party can

1    move the Court and show good cause after meeting and

2    conferring with the other side.  If there's something that

3    the Defense wants to use outside of this litigation, first

4    step is to contact the other side.  If the two cannot agree,

5    then you come to the Court and show good cause why that

6    material can be used.

7           The protective order will not apply to already

8    public documents.  I think that's obvious why it should not,

9    and I'm not going to do that.

10          I like and I will use the language from

11   Plaintiff's Motion, Exhibit C, at paragraph 24, which begins

12   on page 13 and states:  "This order shall not be construed

13   TO apply to any information that:  (a) is available to the

14   public other than through a breach" -- well, there's a typo

15   in there, but "through a breach of this Order or other duty

16   of confidentiality; (b) a receiving party can demonstrate

17   was already known to the party at the time of disclosure and

18   was not subject to conditions of confidentiality; or (c)

19   a receiving party can demonstrate was developed by that

20   party independently or any disclosure by a designating party

21   or nonparty."

22          So I'm going to ask the parties to submit to me a

23   revised protective order based on my rulings today, and I'd

24   like that that language to be specifically included.

25          I also would like a warning included -- regarding

1    over-designations.  And this, obviously, is addressed mostly

2    to the Plaintiffs.  And this would come from ECF number 33,

3    Defendant's Opposition, page 13, note 10.

4            This is to make clear that I'm going to be looking

5    at any -- If there's any challenge to the designation of

6    material as confidential and I have reason to believe there

7    is over-designation, I'm going to be unhappy about that.

8            And this is footnote 10, which was a provision

9    that Judge Alsup in northern California used.  And it

10   states:  "The parties must make a good-faith determination

11   that any information designated confidential truly warrants

12   protection under rule 26(c) of the Federal Rules of civil

13   procedure.  Designations of material as confidential must be

14   narrowly tailored to include only material for which there

15   is good cause.  A pattern of over-designation may lead to an

16   order de-designating all or most materials on a wholesale

17   basis."

18           So I ask the parties to be mindful of that, to be

19   prepared; if it comes down to it, to explaining the reasons

20   for confidentiality designation.

21           Further, if there's a challenge to a

22   confidentiality designation that cannot be resolved by the

23   parties conferring, then the parties can contact the

24   Magistrate or the Judge, if it's assigned to a

25   Magistrate Judge, for resolution of that dispute.

1           I'm not going to require that a confidentiality

2    designation be accompanied by a statement setting forth the

3    basis for the designation.  The party challenging a

4    designation must move the Court for de-designation, assuming

5    that they have not been able to work it out with the other

6    side.

7           In the future, if there is a particular document

8    that is so sensitive that the parties believe they have good

9    cause to show why it should be attorneys' eyes only pursuant

10   to Federal Rule of Civil Procedure 26, the Plaintiffs or

11   Defendants, if there is a specific document that -- or piece

12   of information that requires that special protection, the

13   parties can move for that designation, but I'm not going to

14   just allow that on a regular basis.

15          And I'd ask the parties to submit via ECF and to

16   chambers in Word format a proposed order consistent with

17   these rulings, and I will get that back to you as soon as I

18   can once I can get a Word document.

19          I realize I've made a lot of rulings, and so it

20   may make take a little while to come to an agreement on what

21   exactly I meant.  But if you're not sure, you can get the

22   Court on the phone, and I will clarify.

23          But as we're sitting here now, is there any

24   confusion about anything that I've decided?

25          MR. FEE:  Not by me, Your Honor.

1                   THE COURT:  All right.

2                   MS. McSHERRY:  We're okay.  Thank you, Your Honor.

3                   THE COURT:  All right.  Good.

4                   So how soon do you think you can get me a proposed

5        order?

6                   MR. FEE:  End of the week for sure, I would think,

7        Your Honor.

8                   MS. McSHERRY:  Yeah.  Hopefully.  Why don't we say

9        Monday?

10                  THE COURT:  Why don't --

11                  MS. McSHERRY:  Why don't we say Monday, just in

12       case.  We've got a lot of travel.

13                  MR. FEE:  That's fine.

14                  DEPUTY CLERK:  September 20.

15                  THE COURT:  September 22nd, end of the day.

16                  MR. FEE:  Okay.

17                  MS. McSHERRY:  Okay.

18                  MR. FEE:  We're around, so I think that should be

19       fine.

20                  THE COURT:  Well, that's -- I appreciate your

21       optimism.

22                  All right.  Anything further?

23                  MS. McSHERRY:  Your Honor, we also have a Motion

24       to Extend Discovery.

25                  THE COURT:  Oh, yes.  That's a consent motion,

1  right?

2          MS. McSHERRY:  Uh-huh.  Yeah.

3          THE COURT:  That's a consent motion.  That motion

4  is granted.

5          MS. McSHERRY:  Okay.  Thank you.

6          THE COURT:  All right.  If there's nothing

7  further, thank you, all.

8          DEPUTY CLERK:  All rise.  This court is adjourned.

9          (Proceedings concluded at 2:20 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

        I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above–titled matter.

Date:__September 18, 2014____  /S/__William P. Zaremba_____

                                   William P. Zaremba, RMR, CRR