1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
2

3      American Society for Testing,)
       Materials, et al.           )      File No:  CV 13-1215
4                                   )
                    Plaintiffs,     )
5                                   )      Date:  December 4, 2014
       vs.                          )      Time:  11:30 a.m.
6                                   )
       Public.Resource.Org, Inc.,   )      MOTION HEARING
7                                   )
                    Defendant.      )
8      _____

9
       American Educational         )
10     Research Association,         )
       Inc., et al.                 )      File No:  CV 14-857
11                                  )
                    Plaintiffs,     )
12                                  )      Date:  December 4, 2014
       vs.                          )      Time:  11:30 a.m.
13                                  )
       Public.Resource.Org, Inc.,   )      MOTION HEARING
14                                  )
                    Defendant.      )
15
       _____
16     _

17                     TRANSCRIPT OF MOTION HEARING
                             HELD BEFORE
18                   THE HONORABLE TANYA S. CHUTKAN
                     UNITED STATES DISTRICT JUDGE
19

20     _____

21

22     APPEARANCES:

23
       For the Plaintiff:     J. Kevin Fee (ASTM)
24                            Morgan, Lewis
                              1111 Pennsylvania Avenue N.W.
25                            Washington, D.C.  20004

Kelly Klaus (NFPA)
Munger, Tolles & Olson, LLP
560 Mission Street
27th Floor
San Francisco, CA  94105-2907

Jonathan Hudis (AERA, APA, NCME)
Kathleen Cooney-Porter
Oblon, Spivak
1940 duke Street
Alexandria, VA  22314

Kenneth Steinthal (ASHRAE)
King & Spalding, LLP
101 Second Street
Suite 2300
San Francisco, CA  94105

For the Defendant:        Mitchell Stoltz
                          Electronic Frontier Foundation
                          815 Eddy Street
                          San Francisco, CA  94109


Court Reporter:           Janice Dickman, RMR, CRR
                          Official Court Reporter
                          U.S. Courthouse, Room 6523
                          333 Constitution Avenue, NW
                          Washington, DC  20001
                          202-354-3267

1          THE COURT:  One minute, still, of good morning.

2     Sorry for the delay.  We had a lengthy argument this

3     morning.

4          THE CLERK:  Civil action 13-1215, American Society

5     for Testing Materials, et al., versus Public.Resource.Org,

6     Incorporated, and American Educational Research Association

7     Incorporated, et al., versus Public.Resource.Org, Inc.,

8     CV 14-857.  Counsel, please step forward to the podium and

9     state your appearances for the record.

10          MR. FEE:  Good morning, Your Honor.  Kevin Fee

11     from Morgan, Lewis on behalf of ASTM.

12          THE COURT:  Good morning.

13          MR. KLAUS:  Good morning, Your Honor.  Kelly Klaus

14     from Munger, Tolles and Olson on behalf of the National Fire

15     Protection Association.

16          THE COURT:  Good morning.

17          MR. STOLTZ:  Good morning, Your Honor.  Mitchell

18     Stoltz on behalf of Public.Resource.Org, Incorporated.

19          THE COURT:  Good morning, Mr. Stoltz.  All right.

20     Let me just make sure I have -- so, Mr. Fee, Mr. Stoltz, and

21     we have one more.

22          MR. STEINTHAL:  Yeah, Kenneth Steinthal, from King

23     and Spalding, representing plaintiff American Society of

24     Heating, Refrigerating, and Air Conditioning Engineers.

25          MR. HUDIS:  Your Honor, we're in the 857 case.

1            THE COURT:  Please come forward.

2            MR. HUDIS:  Good morning, Your Honor.  Jonathan

3   Hudis for the plaintiffs in the 857 case, AERA, APA, and

4   NCME.

5            MS. COONEY-PORTER:  Kathleen Cooney-Porter from

6   Oblon, Spivak, same plaintiffs.

7            THE COURT:  Mr. Stoltz, are you here on that case

8   as well?

9            MR. STOLTZ:  Yes, I am, Your Honor.

10           THE COURT:  We have Miss Cooney-Porter and Mr.

11  Hudis for the 857, we have Mr. Fee, Mr. Klaus.  And is there

12  somebody else?

13           MR. STEINTHAL:  Mr. Steinthal.

14           THE COURT:  Your name wasn't on the list.  Okay.

15  I can't promise I'm going to remember all of this, but I'm

16  going to do my best.

17           First question I need to ask is, obviously, these

18  cases have not been consolidated.  And under the rules, it

19  doesn't appear that they have to be.  But I'm going to ask

20  the parties if they want them consolidated?

21           MR. HUDIS:  No, Your Honor.  On behalf of the

22  plaintiffs in the 857 case, no, we do not want

23  consolidation.

24           THE COURT:  Okay.  That's fine.

25           MR. STOLTZ:  Your Honor, on behalf of Public

1    Resource, we also do not want them consolidated.

2              THE COURT:  Great.  We're a consensus.  We will

3    not consolidate the cases.  But we are here on the joint

4    motion for a jury -- motion to strike the jury demand.  The

5    arguments are similar in the case.  And so let me hear

6    from -- who wants to go first?  Maybe I'll do it that way.

7              MR. HUDIS:  We settled on Mr. Fee.

8              THE COURT:  All right.  Mr. Fee, you drew the

9    short straw.

10             MR. FEE:  Thank you, Your Honor.  As you know,

11   this case involves three not-for-profit standards

12   development organizations that write standards to encourage

13   consistent practices among private actors, with the goals of

14   advancing public safety, ensuring compatibility, and

15   spurring innovation.  The cost of creating these standards

16   are underwritten, at least in part, by the licensing and

17   sale of the standards that are written by these SDOs, as

18   they're called.

19             From time to time government entities incorporate

20   by reference some of these standards.  You know, any

21   government throughout the United States.  And in those

22   circumstances, the SDOs make sure that these standards are

23   reasonably available to the public.  Just by way of example,

24   ASTM provides access to all standards that are incorporated

25   by reference by the federal government on a free online

1    reading room on its website.  As a result, the standards

2    that are incorporated by reference by government agencies

3    are easily accessible to the public as they are needed.

4         Nevertheless, the defendant in this case,

5    Public.Resource.Org has begun a campaign of copying

6    hundreds, if not thousands, of standards that have been

7    written by SDOs, without any license from any of the owners

8    of those copyrights.  Moreover, Public Resource encourages

9    the public to disregard the copyright ownership of the

10   plaintiffs in this case by encouraging them to make copies

11   of derivative works of the standards that are made available

12   on Public Resource's website.  As a result, the plaintiffs,

13   unfortunately, were required to bring this action to bring

14   this infringement to a stop.

15        Now, in the complaint, it's important to note,

16   that none of the plaintiffs sought any monetary relief in

17   the form of damages and only sought equitable relief in the

18   form of an injunction, plus the recovery of attorney fees.

19        THE COURT:  Let me stop you there, Mr. Fee.  Is it

20   your position that copyright infringement is a legal claim

21   or an equitable claim?

22        MR. FEE:  Your Honor, I think that question is

23   answered entirely based upon the remedies that are sought in

24   a particular case.  If -- and, for example, a copyright

25   plaintiff seeks a reward of actual damages, for example,

1    that would probably be considered a legal claim to which a

2    jury right would attach.  But the case has uniformly made

3    clear that in circumstances involving both copyright and

4    trademark infringement, as well as patent infringement, that

5    if the plaintiff or IP owner does not seek monetary relief,

6    then it is deemed to be an equitable claim and no jury right

7    attaches to that claim.

8              THE COURT:  Even if the claim is equitable,

9    overall, are there any legal issues remaining?

10             MR. FEE:  There are -- just want to make sure

11   we're talking about legal issues in the context of what

12   would enable a jury trial right here.  Certainly if there

13   are going to be legal issues that Your Honor is going to

14   have to decide.  In fact, we believe that this case is going

15   to be appropriate for summary judgment at some point in

16   time.

17             So we believe it will be a legal issue.  But if

18   we're talking about whether or not a claim like this has

19   legal claims that would subject the parties -- or, give the

20   parties a right to a jury trial, we don't think that there's

21   any legal claims in that context in this particular case.

22             THE COURT:  Did you find, in your research, any

23   cases that discussed whether infringement is a legal or

24   equitable claim?

25             MR. FEE:  I think all the cases we're referring to

1    discuss that, bearing in mind that what really is outcome

2    determinative in those cases is the remedy sought.  We've

3    cited case from the Seventh, Eighth and Ninth Circuit and

4    Federal Circuit, all which conclude that when an IP rights

5    owner does not seek monetary damages, then it's not -- it's

6    not a legal claim and equitable claim and no jury trial

7    right attaches.

8               THE COURT:  Please continue.

9               MR. FEE:  As I was saying, we didn't -- in the

10   complaint did not seek any actual damages and only seek the

11   injunction and attorney fees.  And for that reason we did

12   not demand a jury trial because no jury trial would be

13   available for such claims.

14              In response to the complaint, Public Resource

15   filed an answer and asserted affirmative defenses and did

16   also file a declaratory judgment counterclaim alleging both

17   noninfringement of the copyrights and the trademarks at

18   issue.  Now, ever since that was bought to our attention by

19   the filing of the answer and counterclaims, we've raised the

20   issue with Public Resource about the fact there aren't any

21   bases for a jury trial demand here.  We pointed out that all

22   of the courts that have ever addressed this issue have

23   concluded no jury trial attached to those types of claims

24   and they've never been able to cite a case holding

25   otherwise.  Nevertheless, we were unable to get them to

1    voluntarily dismiss their -- or, strike their jury trial

2    demand and, therefore, we're here today on this motion.

3          Now, as a starting point, as Your Honor probably

4    knows, the Seventh Amendment right to the jury trial is

5    limited only to suits at common law and does not include

6    cases in equity, as we've already talked about.  Now, courts

7    generally look at a two-step analysis to figure out whether

8    or not a case is a common law suit or an equity suit.

9    Typically they would first look at the claims at issue and

10   compare them to what would be a comparable claim in the 18th

11   century in England, which is, you know, before the courts in

12   England merged to a law in equity.

13         And then part two, and what even the Supreme Court

14   has said is by far the most important part is they would

15   examine the remedies in the case and determine whether they

16   were equitable in nature.  Now, the Seventh Circuit, I think

17   has said it most clearly through Judge Posner, but the

18   Supreme Court has said this as well, that where a suit seeks

19   just equitable relief, the first step of that two-pronged

20   analysis is not really important because it is not a suit at

21   common law, if only equitable relief is sought.  Therefore,

22   if -- the defendant does not have a right to a jury trial

23   when the plaintiff requests only equitable relief.  And as I

24   mentioned, courts have uniformly held that principle to

25   apply in connection with IP cases, including copyright and

1     trademark cases, like we have here.

2              And I'd briefly mention, as well, that although

3     we're requesting attorney fees, it's clear that the request

4     for attorney fees is also not deemed to make the claim a

5     legal claim and does not attach the jury trial right to that

6     claim, as well.

7              THE COURT:  Continue.

8              MR. FEE:  And although they don't expressly say

9     so, I don't believe that Public Resource is even arguing

10    here today that they have a right to a jury trial as a

11    result of any of the claims in the complaint.  What I

12    understand their argument to be primarily, at least, is that

13    because they brought a declaratory judgment action claim as

14    a counterclaim, that somehow entitles them to a jury trial

15    right.

16             THE COURT:  I'm not even sure if that's it, but

17    we'll be able to find out.

18             MR. FEE:  They'll be able to clarify it for us.

19    But what is clear with respect to our claims is that a

20    plaintiff does not assert -- or, asserts only equitable

21    relief, then there is no entitlement to a jury trial.

22             THE COURT:  What about if -- does Public Resource

23    get a jury -- are they allowed to assert a right to a jury

24    trial if you could have?

25             MR. FEE:  Right.  Well, I think that that is --

1    or, has been their primary argument.  I'm not sure if

2    they're continuing to make that one today.  But Your Honor,

3    I'm sure, is referring to the fact that in their opposition

4    to our motion to strike the jury demand, I think they argue

5    that their declaratory judgment claim entitled them to a

6    jury because even though we hadn't asserted a claim for

7    damages, we could have done so.  And that was really based

8    upon one single case, the *Lockwood* case from the Federal

9    Circuit.

10         Now, I think it's important to understand what's

11   going on in the *Lockwood* case, so we understand what the

12   holding of that case is.

13         THE COURT:  It's important and it's difficult.

14         MR. FEE:  Well, the *Lockwood* case was a patent

15   infringement case.

16         THE COURT:  In the 18th century, correct?

17         MR. FEE:  No.  The *Lockwood* case was more recent

18   than that.

19         THE COURT:  No, it just talked about 18th century.

20         MR. FEE:  Oh, yeah.  It goes back -- it does a lot

21   of 18th century analysis in it.  But it involved a patent

22   case, actually, where the plaintiff did seek damages

23   originally, unlike this case.  The counterclaims by the

24   defendant in that case included a declaratory judgment for

25   invalidity.  During the course of the case the district

1     court decided that summary judgment was appropriate on the

2     infringement issue and, therefore, the only claim that was

3     remained to be tried was a validity question and there was

4     no possibility of damages at that point in time.

5               Now, the other thing that's important about

6     *Lockwood* and is different from our case is it was the

7     patentholder was the one asking for the jury trial, not the

8     defendant.  And what the court in *Lockwood* did is it went

9     back and looked historically at how patent claims would have

10    been handled prior to the merger of law and equity courts

11    and it concluded under patent law, the decision as to

12    whether or not a case would be deemed -- or, tried in a

13    court of law or in a court of equity depended upon what

14    remedies were sought by the patentee.  And if the patentee

15    only sought equitable relief, then it would be heard in an

16    equitable court.  And if the patentee sought legal damages,

17    it would wind up in the court of law and it would have a

18    right to a jury trial.

19              Now, in that particular case the court did go on,

20    then, to hold that it was up to the patentee, after

21    reviewing the 18th century history of patent law, to decide

22    whether or not it was going to pursue a legal claim or an

23    equitable claim and, therefore, would provide a right to a

24    jury trial if the patentee, or the IP owner, was the one who

25    wanted the patent trial to be before a jury.  It didn't give

 1   the accused infringer any say or any right into figuring out

 2   whether or not there should be a jury trial in this case.

 3           THE COURT:  Your argument is that if you wanted a

 4   jury trial in this case you couldn't use *Lockwood* to request

 5   it, is that right?

 6           MR. FEE:  Well, that's actually -- I don't think

 7   we need to go that far because we --

 8           THE COURT:  No, had you not requested -- in other

 9   words, I think you could use *Lockwood* even if you had

10   brought a different kind of suit.

11           MR. FEE:  That is possible.  It's not just my

12   interpretation of *Lockwood*, right, Your Honor, because as we

13   cited in our briefs and in the reply brief especially,

14   subsequent to *Lockwood* the Federal Circuit described what

15   its holding was in *Lockwood* and clarified this issue.  And

16   this is actually a case that we cited in our moving briefs,

17   but we didn't focus on this point quite as much because we

18   didn't anticipate that they would argue *Lockwood* should be

19   interpreted contrary to subsequent law.

20           THE COURT:  This is *Tech. Licensing*?

21           MR. FEE:  Yeah, that's the *Tech. Licensing* case.

22   And in that case the Federal Circuit -- let me find the

23   exact quote here because I think it's exactly on point about

24   what we're talking about here.  It says, quote, *Lockwood*

25   does not stand --

```
1              THE COURT:  Is that page -- what's the page number

2      there?

3              MR. FEE:  I'm sorry.  1290, Your Honor.

4              THE COURT:  Okay.

5              MR. FEE:  The court held, quote, "Lockwood does

6      not stand for the proposition that a counterclaim for

7      invalidity always gives rise to a right for a jury trial for

8      either party on the ground that it is an inverted

9      infringement action and that the patentee at common law had

10     the right to a jury by filing an infringement action and

11     seeking damages.

12              It says, "Instead, the more accurate reading of

13     Lockwood is, one, it preserves to the patentee," that is,

14     the IP owner, "the right to elect a jury by seeking damages

15     in the infringement action or a counterclaim.  And, two, the

16     action caused infringer or declaratory judgment

17     counterclaimant is entitled to a jury trial only if the

18     infringement claim, as asserted by the patentee, would give

19     rise to a jury trial.

20              "Thus, if the patentee seeks only equitable

21     relief, the accused infringer has no right to a jury trial,

22     regardless of whether the accused infringer asserts

23     invalidity as a defense or a separate case," as in this

24     case.

25              Except for that's a patent case, that's exactly
```

1    the circumstance we're faced with here.  We have an IP owner

2    who has not asserted damages case.  We have an accused

3    infringer who has a declaratory judgment counterclaim.  The

4    patentee, or in our case the IP owner, has not sought a jury

5    trial.  Under those circumstances, the Federal Circuit

6    question makes clear that there's no entitlement to a jury

7    trial, as does all the cases that we've cited that addresses

8    in the context of trademark and copyright cases.

9          So under those circumstances, Your Honor, we don't

10   think there's any basis for a jury demand in this case.

11         But I do also want to address one last argument

12   that -- or, case, at least, that's been relied upon by

13   Public Resource, and that is the *Sanofi* case.  That is,

14   again, another patent case where there was no possibility

15   that the patentee could have claimed damages because it was

16   a pharmaceutical case where the infringement claim was

17   bought before any infringement products were manufactured or

18   sold.  Under those limited circumstances, the court said

19   that a jury trial is available for a declaratory judgment of

20   noninfringement where the party claiming the patent rights

21   could choose either to pursue a legal or equity claim.

22         So, again, the court was looking at the patentee

23   or IP owners having the right to seek a jury trial, not the

24   defendant.  But Public Resource attempts to extrapolate from

25   that case this argument that you just mentioned, that if you

1    could have pursued a jury trial right, that somehow that

2    enables the declaratory judgment defendant or declaratory

3    judgment plaintiff to pursue a jury trial, as well.

4              THE COURT:  And *Sanofi* was decided before to *In re*

5    *Tech. License*.

6              MR. FEE:  That's another important point, Your

7    Honor.

8              THE COURT:  You can see *Tech. Licensing* may have

9    been trying to clear up any confusion.

10             MR. FEE:  Yes.  So, unless Your Honor has any

11   questions, we think it's pretty clear that there's no

12   entitlement to a jury trial here and we can step aside for

13   our opposing counsel.

14             THE COURT:  Thank you.

15             Mr. Stoltz?

16             MR. HUDIS:  Your Honor, what we decided to do was

17   all the plaintiffs arguments first, and then Mr. Stoltz

18   could answer everything at once.

19             THE COURT:  All right.  And that's fine with you?

20             MR. STOLTZ:  Yes, that's all right.

21             THE COURT:  That seems to make sense.  All right.

22   Thank you.

23             MR. HUDIS:  Good morning, Your Honor.  Jonathan

24   Hudis from Oblon and Spivak on behalf of the plaintiffs in

25   the 857 case, American Educational Research Association,

1    American Psychological Association, and the National Counsel

2    on Measurement in Education.  If Your Honor doesn't mind, I

3    will refer to them by their acronyms, AERA, APA, and NCME

4    against Public Resource.

5            We, too, are three nonprofit plaintiffs and for

6    the purposes of this lawsuit, our three clients combined to

7    produce, it is now in its multiple editions since the 1950s,

8    a standards of best practices in educational and

9    psychological testing.  And it is used by the federal

10   government and state agencies when they procure

11   psychological and educational testing batteries.

12           So instead of making up these best practices

13   themselves when procuring these testing batteries, they rely

14   on our clients to -- excuse me, just went dry.  They rely on

15   our clients to say if you are going to produce these tests

16   for us, you will comply with these best practices.

17           THE COURT:  Are these the standardize -- are you

18   all -- the standardized, is it the SAT or ACT?

19           MR. HUDIS:  Those tests, when they are used,

20   comply with best testing practices that our clients put

21   together.  So that when those tests are administered, you

22   have questions that are not biased, that the questions are

23   administered fairly, that the testing results are compiled

24   fairly, those kinds of things.

25           THE COURT:  Okay.

1          MR. HUDIS:  So when Public Resource decided that,

2     notwithstanding our copyright ownership, because the best

3     practices relied on by federal and state governments, that

4     this then becomes, quote, the law.  Of course, we dispute

5     that contention, and Mr. Malamud, the founder of Public

6     Resource, digitized our printed book.  He then put it up on

7     his website and then put it on Internet Archives website.

8          In distinction with the ASTM plaintiffs, they have

9     claims for copyright and trademark, our claims are limited

10    to copyright infringement and contributory copyright

11    infringement.  For purposes of the jury demand issue before

12    Your Honor, there is no difference.  In our case we did not

13    and chose not to ask for monetary relief.  When they

14    asserted their answer and counterclaims for declaratory

15    relief, Public Resource did not ask for money damages

16    either.

17          So, I'm reviewing for oral argument today and I'm

18    looking through all the papers that everybody had written

19    and filed with Your Honor and I come back to the Seventh

20    Amendment and it says, quote, "In suits at common law, where

21    the value in controversy shall exceed $20, the right to a

22    jury trial shall be preserved."  No one has asked for money;

23    not our plaintiffs, not Public Resource.  That should be the

24    end of the matter.

25          If we want to go further and have the two-step

1    process of comparing our claims and Public Resource's claims

2    to what their historical equivalents would be in 18th

3    century England before the merger of law and equity, this

4    is, as Mr. Fee said in his case and in our case, this is a

5    claim in equity.  Just because legal questions might be

6    answered, as they are in every case, that does not

7    necessarily mean and turn it into a legal case for purposes

8    of a jury demand.  For purposes of a jury demand it's got to

9    be the type of legal claim that requests money damages.  We

10   did not.

11          THE COURT:  What about Public Resource's argument

12   that because it asks for a legal question --

13          MR. HUDIS:  Well, Your Honor, that's what I just

14   addressed.  And I'll answer it again this way:  Just because

15   legal questions are answered in a copyright case, as they

16   are in every case, does not make it a legal claim.  Here we

17   agree with the arguments Mr. Fee made, which is it turns on

18   whether the relief sought is for money damages or equitable

19   relief, such as injunctions or declaratory relief.

20          So that argument, Your Honor, we would say is

21   without merit.  So, here all the parties have requested

22   equitable relief and as such a suit does not arise at law,

23   and we've cited all kinds of cases, as the ASTM plaintiffs

24   have done, that says in IP suits no right to a jury trial

25   exists where the plaintiffs seek only equitable relief.

1          Now, Public Resource has asserted affirmative

2     defenses.  Those affirmative defenses do not count toward

3     the right to a jury trial.  Their counterclaims only seeking

4     equitable relief do not count to the right to a jury trial.

5     And the fact that we, as the ASTM plaintiffs, did request

6     attorney fees and costs, that does not support the right to

7     a jury trial.

8          So, what does Public Resource say?  Now, we should

9     tell you, Your Honor, that you will look in our case for

10    briefing on *Lockwood* in vein.  You will not find citations

11    to *Lockwood* because it's not in there.  So, what do Public

12    Resource -- what does Public Resource cite?  They cite a

13    pair of insurance cases, one in the Ninth Circuit from 1939

14    and the other one from the D.C. Circuit in 1965.

15         And here's the argument that you addressed with

16    Mr. Fee, and the argument goes like this:  Well, our client,

17    quote, could have, unquote, requested legal remedies.  And

18    because we could have, then that turns their declaratory

19    judgment counterclaim into one of a legal request for a

20    remedy.  That is not true.

21         Those two insurance cases, Your Honor, in both

22    instances the insurance company sought declaratory relief

23    that they didn't have to pay on insurance policies.  So,

24    whether they were actually brought or could have been

25    brought by the defendants' counterclaim plaintiffs, they

1    could only assert the right to a money claim.  What is the

2    money claim?  The right to request payment on the policy.

3    We have the option and took the option of not seeking

4    monetary relief.  We have only sought injunctive relief.

5            So, the simple fact is, our client's choice to

6    seek only equitable remedies should end the inquiry.  So

7    contrary to the inapposite cases cited by Public Resource,

8    issues of which they say copyright ownership and fair use do

9    not give rise to the right to a jury trial.  And we cited

10   the Eighth Circuit, *Taylor versus Four Seasons* case for that

11   proposition.

12           The final argument Public Resource makes, at least

13   in our case, is that the filing order of the parties' claims

14   somehow turns their declaratory judgment counterclaim --

15           THE COURT:  Inverts the case?  He says because

16   it's supposed to be an inversion.

17           MR. HUDIS:  Correct.  And that's citing *Beacon*

18   *Theaters.  Beacon Theaters* does not support the argument

19   Public Resource is making.

20           All right.  In that case it was the declaratory

21   judgment, antitrust plaintiff saying we're not violating the

22   antitrust laws.  And the counterclaim asserted was for

23   antitrust money damages.  So, it is not the filing order and

24   this claim of inverse rights that determines the right to a

25   jury trial.  It is the nature of the claims asserted and

1    sought.

2          We assert rights to injunctive relief.  Public

3    Resource requests rights to declaratory relief, that they

4    are not violating the copyright laws.  No one is asking for

5    money damages.  That should end the inquiry.  We believe

6    that their jury demand in our case should be stricken.

7          Your Honor, if you have any other questions, I

8    would be glad to answer them.  Otherwise, I am do done with

9    my argument.

10          THE COURT:  Thank you.  I may have some, depending

11    on what I hear from Mr. Stoltz in this case.

12          MR. HUDIS:  Thank you, Your Honor.

13          THE COURT:  Thank you.

14          MR. STOLTZ:  Good afternoon, Your Honor.  Mitchell

15    Stoltz for Public.Resource.org.

16          The issue here today on this motion is Public

17    Resource's counterclaims for declaratory judgment in both of

18    the actions.  And those claims, in both cases, seek to apply

19    an important principle, that copyright law and trademark law

20    cannot be used to restrict access to binding edicts of

21    government.

22          THE COURT:  Hold on a second, Mr. Stoltz.  Nobody

23    brought claims for money damages in this case, right?

24          MR. STOLTZ:  That's correct.

25          THE COURT:  All right.  What is it you would have

1   a jury decide in this case?

2        MR. STOLTZ:  Possibly nothing.  And I agree with

3   Mr. Fee on this, this case is primarily a legal question

4   that we believe, as I believe ASTM does, you know, can be

5   resolved on summary judgment.  But, discovery is ongoing and

6   we just don't know.

7        THE COURT:  Tell me, Mr. Stoltz, I'm -- my

8   background is in trial, so I'm curious, as a practical

9   matter, for how such a trial would be.  You say possibly

10  nothing.  So, is it your position -- and I'm trying to

11  envision this playing out to a logical conclusion, being a

12  jury trial.  What would you have the jury sit and do?  What

13  would you have them consider?  What evidence would you have

14  them hear?

15       MR. STOLTZ:  I see several possibilities, Your

16  Honor, and discovery is ongoing, so we simply don't know if

17  any issues of material fact may arise.  But, I can think of

18  some possibilities.  An issue could be the credibility of

19  the witnesses, particularly employees and officers of the

20  plaintiffs, as to what their intent was with regard to

21  incorporation --

22       THE COURT:  Judges make findings in bench trials

23  all the time.  Credibility isn't an issue of fact for the

24  jury to determine independent of some jury determinable

25  issue.  I mean, credibility is simply what a jury does in

1    weighing the evidence that is before them.  My question is

2    what evidence would properly be before the jury in a case

3    like this?

4              MR. STOLTZ:  Again, Your Honor, testimony and

5    documents that go -- that will go to the plaintiffs' intent

6    to have their standards incorporated and made law.

7              THE COURT:  And the jury would be weighing these

8    factors for a decision on what?

9              MR. STOLTZ:  Decision on the -- potentially the

10   merger of idea and expression, potentially on fair use

11   factors.

12             THE COURT:  All right.  Now, I'm sorry, I didn't

13   mean to interrupt you so quickly.  But I must ask you this:

14   Could plaintiffs seek a jury trial in this case, even though

15   they didn't bring a claim for damages?

16             MR. STOLTZ:  No, Your Honor, I don't believe they

17   can, not -- having not brought a claim for damages.

18             THE COURT:  And could they seek, plaintiffs seek a

19   jury trial based on your counterclaim?

20             MR. STOLTZ:  Yes, Your Honor, I believe they

21   could.

22             THE COURT:  Why?

23             MR. STOLTZ:  Your Honor, the counterclaim stands

24   apart and alone from the plaintiffs' claims.  It is not a

25   mirror image there, it is not an inverse.

1        THE COURT:  But you haven't asked in your

2   counterclaim for money damages, right?  You haven't asked

3   for a jury trial -- I mean, plaintiffs haven't asked for a

4   jury trial on their claim.  You have filed a counterclaim in

5   which you have a not sought money damages.  So, on what

6   basis could the plaintiffs argue that they were entitled to

7   a jury trial on your counterclaim?  If they can't get one on

8   theirs, how would they get one on yours?

9        MR. STOLTZ:  The declaratory judgment is neither

10  legal nor equitable.  It takes its nature from the nature of

11  the underlying controversy.  Traditionally, before the

12  merger of law and equity, there was no such thing as

13  declaratory judgment and only a party claiming a patent or

14  copyright could initiate a case.

15       The availability of declaratory judgments means

16  that where there is controversy, a party accused of

17  infringement can bring a case, but just as in premerger, the

18  party bringing the claim can choose to proceed in law or in

19  equity and that choice is based -- cannot be based on

20  another party's claims.

21       THE COURT:  Do you have a case for that?

22       MR. STOLTZ:  The case for that is *Lockwood*, Your

23  Honor.

24       THE COURT:  Well, my reading of *Lockwood* doesn't

25  comport with yours.  And I think, even more importantly, my

1     reading of *Tech. Licensing* does not, which you simply say

2     shouldn't apply because it's not binding and not in keeping

3     with American and British jurisprudence.  But, I haven't --

4     my reading of *Lockwood* and my reading of the cases

5     subsequent to *Lockwood* don't come to that conclusion at all.

6          Can you explain, for example, why you didn't cite

7     *Lockwood* in opposition to the American Educational Research

8     Association's motion to strike?

9          MR. STOLTZ:  I'm sorry, Your Honor, I thought we

10    had.

11         THE COURT:  Maybe you had.  I know you cited it in

12    American Society for Testing's opposition.  I saw that.

13         MR. STOLTZ:  Well, *Lockwood*, I think, was informed

14    by the Supreme Court cases on the Seventh Amendment in civil

15    actions, specifically, *Beacon Theaters*, *Lee*

16    *Pharmaceuticals* -- I'm sorry, *Lee Pharmaceuticals* was a

17    Second Circuit case.  The *Dimick* case, as well.  And those

18    basically said there is -- where there is a Seventh

19    Amendment right, nothing the other party does can make that

20    right go away.  Which is really what I think plaintiffs are

21    trying to do in this case.

22         THE COURT:  Mr. Stoltz, do you concede, or do you

23    agree that because plaintiffs didn't bring a claim for

24    damages, you can't demand a jury trial based on their

25    complaint alone?  Let's start with that.

1          MR. STOLTZ:  Yes, we agree.

2          THE COURT:  Okay.  Do you agree that as a general

3    matter, the nature of the remedy sought is generally

4    controlling for purposes of the Seventh Amendment?

5          MR. STOLTZ:  Yes, but not with regard to

6    declaratory judgments.

7          THE COURT:  Is it your position that the sole

8    reason for the -- your right to a jury trial in this case is

9    because the plaintiff has asserted a declaratory judgment in

10   which it could have asked for a jury trial?  I'm not

11   following you.

12         MR. STOLTZ:  There is a controversy between the

13   parties in both cases about whether the standards

14   development organizations can assert a right to control

15   access to the law, the portions of the law that they had

16   originally drafted.  That -- Public Resource's claim, which

17   is in part a claim that that assertion is invalid and that

18   they in fact have no copyrights over materials that are

19   binding law of the United States or various states and

20   localities, is exactly the type of claim that's historically

21   been a legal claim at the election of the party bringing it,

22   Public Resource in this case.

23         THE COURT:  And your position that a -- your

24   position is the fact that there is a declaratory judgment

25   requested here, therefore, entitles you to a jury trial?  Is

1    that the distillation of your position?

2              MR. STOLTZ:  Yes, that's correct, Your Honor.

3              THE COURT:  And the case on which you base that is

4    *Beacon Theaters*?

5              MR. STOLTZ:  It's *Lockwood*, *Beacon Theaters*, *Lee*

6    *Pharmaceuticals*, and --

7              THE COURT:  Can you point me to the language in

8    *Lockwood* which you claim supports your position?  Because

9    I'll remind you that in *Lockwood*, the plaintiff patentee

10   demanded a jury trial.  Right?  That's not the case here.

11             MR. STOLTZ:  That's correct.  But the plaintiff

12   patentee's claim for damages was dismissed and not appealed.

13             THE COURT:  But there was a claim -- there was a

14   jury trial demand made by the plaintiff.  That's a

15   distinctive difference between that case and this one.  My

16   reading of *Lockwood* does not indicate to me that a

17   declaratory judgment in and of itself entitles a claimant to

18   a jury trial.

19             MR. STOLTZ:  Your Honor, *Lockwood* says where the

20   parties' positions have been inverted, meaning because --

21             THE COURT:  But have the parties' positions been

22   inverted in this case, Mr. Stoltz?  I understand you're

23   asserting that there is an inversion here, but I actually

24   don't see it.  There's maybe a half a way, but this is not

25   the classic inversion of the parties.  Or can you tell me

1    why it is?

2          MR. STOLTZ:  With regard to our counterclaims for

3    declaratory judgment, there is an inversion of the parties

4    because we are the plaintiffs on those claims.

5          THE COURT:  Right.

6          MR. STOLTZ:  And, thus, on those claims,

7    plaintiffs' actions cannot erase the jury right.

8          THE COURT:  I'm going to have to disagree with you

9    on that reading.  So *Lockwood* -- your position is that even

10   though the plaintiffs -- well, I did interrupt you.  Could

11   you tell me where, in *Lockwood*, you think that the language

12   in *Lockwood* supports your position?

13         MR. STOLTZ:  It's various places, Your Honor.  If

14   I could point you to page 977, where the court is

15   distinguishing some of the cases relied on by the plaintiff,

16   the declaratory judgment plaintiff.  And I -- I'm sorry, the

17   patentee.  Distinguishes the *Shubin* case by saying, "In

18   short, no claim for damages could have been brought."

19         THE COURT:  A claim for damages could have been

20   brought here.  And I'm going to point you to the court's

21   language in *Lockwood*, on page 976, where it says, "We

22   cannot, consistent with the Seventh Amendment, deny *Lockwood*

23   that same choice merely because the validity of his patents

24   comes before the court in a declaratory judgment action for

25   invalidity, rather than as a defense for an infringement

1    suit."

2         There there had been a claim for a jury trial and

3    the only way patent validity could be raised was through an

4    action for patent infringement by the patentee, that there

5    the patentee would have had the option to bring a case in a

6    court of law or court of equity.  And so the Federal Circuit

7    held that the alleged infringer couldn't usurp the

8    patentee's choice by bringing a claim for noninfringement

9    first.  That's not the situation we have here, isn't that

10   correct?

11        MR. STOLTZ:  I would argue that it is, Your Honor,

12   because before the merger of law in equity, the party

13   accused of infringement could not be a plaintiff because

14   there was no mechanism for that.  So when it speaks of the

15   patentee, I think -- again, referring to the principle from

16   *Beacon Theaters* and *Dimick*, is it's the party bringing the

17   claim who can choose a legal or equitable route.

18        THE COURT:  So how do you square that with *In re*

19   *Tech. Licensing's* explication of the *Lockwood* ruling?  Or

20   you just flat out think *In re Tech. Licensing* is wrong?

21        MR. STOLTZ:  Well, Your Honor, the portion quoted

22   by Mr. Fee is dicta, among other things.  *In re Tech.*

23   *Licensing* is a case where the patentee brought a claim for

24   damages, withdrew it, and then sought a jury trial.  There

25   was, in other words, a waiver of Seventh Amendment rights by

1    the same party asserting them.

2         THE COURT:  So the statement, thus, if the

3    patentee seeks only equitable relief, the accused infringer

4    has no right to a jury trial, regardless of whether the

5    accused infringer asserts invalidity as a defense or a

6    backup claim.  Is it your position that that claim is the

7    dictum?

8         MR. STOLTZ:  Yes, Your Honor, because the accused

9    infringer wasn't seeking jury trial in that case, the

10   patentee was.

11        THE COURT:  I'm going to let you go back to your

12   argument.  But -- continue.

13        MR. STOLTZ:  Two main points, Your Honor.  First,

14   I touched on this, the counterclaim for declaratory

15   judgment, the counterclaims in both cases for declaratory

16   judgment are -- stand separate and apart, as far as their

17   characterizations, legal or equitable.  That

18   characterization is not controlled by the claims that the

19   plaintiffs chose to bring.  And the reason for that is

20   several.  They're not mirror images.

21        ASTM denied a request for admission, where we ask

22   them to admit that the standards listed in the complaint

23   were the only standards on which they are making claims.

24   They denied that.  So although I don't know of others

25   standing here, discovery is ongoing and we don't know,

1    ultimately, what they're going to claim.  We sought

2    declaratory judgments of it before that request for

3    admission.  But we sought declaratory judgments, in part, to

4    resolve this controversy for all the standards incorporated

5    by law, by reference into law, published -- they were

6    published by the the plaintiffs.

7            THE COURT:  Is it your position that somehow that

8    something revealed in discovery is going to give you a right

9    to a jury trial?  I mean, you've mentioned several times

10   that discovery is ongoing, but I'm not sure why that is

11   relevant to whether you're entitled to a jury trial.

12           MR. STOLTZ:  On this particular point, Your Honor,

13   because we're not entirely sure what -- what documents ASTM

14   is claiming copyright infringement on or trademark

15   infringements.  They've given us a list, but they haven't

16   said that that list is exclusive.

17           THE COURT:  How does that impact or affect your

18   jury trial demand?

19           MR. STOLTZ:  It establishes that our declaratory

20   judgment claim is not a mirror image of the plaintiffs

21   claims.

22           THE COURT:  But you still aren't claiming money

23   damages.

24           MR. STOLTZ:  That's correct.  We're claiming a

25   determination of legal rights.

1          THE COURT:  And how would a jury ever be allowed

2     to decide that?

3          MR. STOLTZ:  Well, I mentioned several instances

4     where that might happen.  The other, Judge, I didn't

5     elaborate on, which is possible, is the fair use defense.

6          THE COURT:  Can you tell me of a case where a jury

7     has been allowed to decide issues like that?

8          MR. STOLTZ:  There have been many cases where a

9     jury has decided the fact underlying the fair use claim.

10         THE COURT:  No.  Where a jury has been allowed to

11    determine the legal question involved in a declaratory

12    judgment.

13         MR. STOLTZ:  I don't know one offhand, Your Honor.

14    But a declaratory judgment of fair use is a possibility.

15         THE COURT:  Let me ask a you a hypothetical, Mr.

16    Stoltz.  Say you have a case in which there is a jury demand

17    brought by the plaintiffs and the jury demandable claims for

18    money damages are dismissed by way of summary judgment.  All

19    that remains is the claim for injunctive relief.  There's no

20    counterclaim.  Should defendants, in that case, be allowed

21    to argue that the jury should decide the injunctive relief

22    claim because there had been a jury demand that was -- those

23    claims were dismissed?

24          I mean, in other words, do the defendants in that

25    case get to say, well, you know, they had a jury claim

1    before, now all we have left is a claim for injunctive

2    relief, which is normally triable by the court, but, you

3    know, we think we should be able to let a jury decide that.

4    Is that allowed?

5              MR. STOLTZ:  No, I don't believe it is.  No legal

6    issues would remain.

7              THE COURT:  Well, there's a question as

8    to whether -- say it's an antitrust case and there's a

9    question as to whether it's a violation of the antitrust

10   laws and there's going to be witnesses and there's going to

11   be a full-blown trial, but it's a matter of whether -- the

12   judge has to decide whether there's been a violation of the

13   antitrust laws and whether to issue an injunction to stop

14   it.  Does a jury get to weigh the witnesses and weigh the

15   evidence?  What do they do?

16             I'm having a hard time, as a practical matter,

17   figuring out what you would be asking a jury to consider and

18   find in a case like this, without a claim for money damages.

19             MR. STOLTZ:  We would be asking the jury to find

20   facts underlying various aspects --

21             THE COURT:  That would then bind the judge in

22   their declaratory ruling?

23             MR. STOLTZ:  In a declaratory ruling that would

24   foreclose money damages on a set of -- on a controversy.

25             THE COURT:  But money damages haven't been

1    requested here.  So why would we need to do that?  I'm

2    really not trying to be difficult.  I'm really trying to

3    understand, as a trial judge and a former trialer, how

4    that -- we can talk in theory, but I'm trying to figure out,

5    as a practical matter, what you're asking this court to

6    allow a jury to do?

7           MR. STOLTZ:  Well, if I could direct the court's

8    attention to the Judge Newman's dissent in the *In re*

9    *Technology Licensing* case.  She lists a litany of, in that

10   case, patent cases, but I think the point is relevant here,

11   in which an action for invalidity was tried by a jury, going

12   back, I think, about a century.  Says, "Jury trials on the

13   issue of patent validity appear from the early days of the

14   nation's jurisprudence."  I'm on page 1294.

15          "Jury trials involving patent validity are

16   pervasive in our legal history.  The reported cases raising

17   no issue of entitlement to a jury, depending on the remedy

18   for infringement.

19          THE COURT:  And I'm not sure how that is -- that's

20   a dissent in that case, but how is that applicable here?

21   Even if it weren't a dissent, how is that applicable to this

22   case?  You know, you're -- yeah.  I'm not -- I would like

23   that question answered first.

24          MR. STOLTZ:  So, Public Resource's counterclaims

25   are, in part, the equivalent of action for invalidity.

1    They're the very kind that Judge Newman is describing here.

2    And what this history reveals, whether or not cited in the

3    dissent or cited otherwise, is that those claims, which are

4    not claims for money damages, are historically tried to a

5    jury.

6              THE COURT:  But our Seventh Amendment

7    jurisprudence, across-the-board, is concerned with the

8    nature of the remedy sought.  I mean, not the hypothetical

9    remedies that could be available.  Right?

10             MR. STOLTZ:  I think the cases cited in Judge

11   Newman's dissent say otherwise.  And I think that also

12   leaves aside the holding of *Beacon Theaters* and *Dimick*,

13   which says in a close case, the tie goes to the party

14   seeking a jury trial because of the Seventh Amendment.

15             THE COURT:  You -- why does it matter?  Let me ask

16   you this:  Why does it matter that plaintiffs could have

17   sought money damages, given that they chose not to?

18             MR. STOLTZ:  Because Public Resource, as the

19   plaintiff on its own claims, stands in the shoes of the

20   hypothetical premerger plaintiff.

21             THE COURT:  Even if you had initiated this case,

22   Mr. Stoltz, you would not -- isn't it true that you still

23   wouldn't have had a claim for money damages?  I mean, it

24   would still be up to the plaintiffs to determine whether or

25   not a jury demand was available, based on whether they

1   sought damages, isn't that right?

2             MR. STOLTZ:  Well, no, Your Honor, because, again,

3   with respect to our counterclaims, the positions are

4   inverted.  Plaintiffs have said that -- plaintiffs have said

5   that they could have you sought money damages in this case.

6   So that is the situation.  That is the nature of the

7   controversy.

8             THE COURT:  This case appears to the court to be

9   in the conventional posture where the rights holder has sued

10  the alleged infringer.  Now, given this posture, why should

11  the court invert this case and consider what claims you, as

12  a defendant, could have brought if you had initiated the

13  case instead of the plaintiffs?

14            MR. STOLTZ:  Because our counterclaims stand apart

15  from the plaintiffs' claims and we brought them and we

16  stand -- we stand in the position of the plaintiffs on those

17  claims and they are not inverses.

18            THE COURT:  If you had brought these claims as a

19  plaintiff in a separate and stand alone case, would you be

20  standing here telling me that these claims, with no claim

21  for money damages, would entitle you to a jury trial?

22            MR. STOLTZ:  Yes.  Because I would probably, in

23  that case, show the court a letter or demand or something

24  the equivalent of what the ASTM plaintiffs wrote in their

25  moving papers, which is we could have sought money damages.

1          THE COURT:  But you don't.  It's the remedy.  I

2    think we are at a fundamental impasse here because my

3    understanding is it's the remedy sought.  Not what you could

4    have sought, but what you actually do seek.  And this --

5    telling me about -- pointing me to a piece of paper or

6    something that's going to be revealed in discovery, if you

7    don't ask for the damages, then you're not asking for the

8    remedy that entitles you to a jury trial.  If you don't ask

9    for the $20, you don't get the jury trial.  Unless there's a

10   whole body of case law out there that I'm unaware of that

11   says something different.

12          MR. STOLTZ:  Well, I would just point the court,

13   again, to the *Sanofi* case, interpreting *Lockwood*, said it

14   was focusing on the type of action the patentee could have

15   brought.  Because *Lockwood* could have sought damages.  In

16   addition to an injunction, he could have brought an action

17   at law and sought a jury trial.

18          THE COURT:  My reading of *Sanofi* is that it held

19   only that in cases where plaintiffs could not possibly seek

20   damages because the claim is for future infringement, no

21   jury right could ever attach.  That is not the same as

22   holding that if there could possibly be damages, the jury

23   right always attaches.  Those are two different things.

24   That's how I read it.

25          MR. STOLTZ:  I agree, Your Honor, but the basis of

1       that holding was the contrary conclusion in *Lockwood*.

2              THE COURT:  I think -- well, it's interesting

3       because *Sanofi*, as I mentioned to Mr. Hudis, was decided

4       before *Tech. Licensing*, the case in which you tell me, you

5       know, that it's incorrectly decided.  And it appears that if

6       there is any confusion -- and my reading of *Sanofi*, I don't

7       find it confusing, but to the extent there was any confusion

8       after *Sanofi*, *Tech. Licensing* cleared that up.

9              MR. STOLTZ:  Okay.  Your Honor, I think *Tech.*

10      *Licensing* stands for the proposition that a party, having

11      waived it's Seventh Amendment right, can't reclaim it.

12             THE COURT:  I think that the sticking point here

13      is -- is it your position, Mr. Stoltz, that it is not -- the

14      inquiry is not whether damages are actually sought, it's

15      whether damages could be sought?  Is that your point?

16             MR. STOLTZ:  In these circumstances, yes.

17             THE COURT:  All right.  I'm sorry.  I know I have

18      been jumping around.  I'm going to allow you to finish your

19      argument.

20             MR. STOLTZ:  Actually, I have nothing further,

21      Your Honor.

22             THE COURT:  Excuse me?

23             MR. STOLTZ:  I have nothing further.

24             THE COURT:  All right.  Thank you.

25             MR. STOLTZ:  Except possibly by way of rebuttal,

1    if the plaintiffs come back up.

2              THE COURT:  All right.  Mr. Fee?  Mr. Hudis?

3              MR. FEE:  Your Honor, I don't think we have

4    anything more to add, unless you have any questions for us.

5              THE COURT:  I don't.  Thank you.

6              MR. HUDIS:  Three quick points, Your Honor.  You

7    asked counsel a question, that if cases, one or the other

8    survive summary judgment and they went to trial, what, if

9    anything, would there be for the jury to decide?  Counsel's

10   answer was, "Possibly nothing."  And then, upon further

11   questioning from the court, Mr. Stoltz then listed a litany

12   of items that would occur during the trial; credibility of

13   witnesses, intent of the plaintiffs, whether their standards

14   would be incorporated by law.  These are all questions that

15   Your Honor could decide at a bench trial.

16             Mr. Stoltz then said it's the nature -- whether a

17   declaratory judgment action is legal or equitable is not the

18   claim itself, but the underlying controversy.  Well, we've

19   all, by now, argued, almost to a fare-thee-well, we look at

20   the underlying controversy, you look at the nature of the

21   relief sought.  Both sets of plaintiffs have asked for

22   infringement type -- excuse me, injunctive type relief;

23   that's equitable, not a claim for money damages.

24             Finally, Mr. Stoltz relies on a litany of cases

25   cited by Judge Newman in her dissent, all based upon the

1    fact that potentially the question of validity might be

2    giving rise to a jury trial.  Well, while Mr. Stoltz was

3    arguing before Your Honor, I looked at our pleadings.  There

4    is no assertion of invalidity against our copyright.

5              THE COURT:  I had a question on that.

6              MR. HUDIS:  So, Your Honor, those are the three

7    points I wish to make.  If Your Honor has no further

8    questions, we're done.

9              THE COURT:  Thank you.

10             MR. STOLTZ:  Could I make one additional point,

11   Your Honor?

12             THE COURT:  Very quick.

13             MR. STOLTZ:  Mr. Hudis mentioned the issues that I

14   mentioned that have a possibility of arising could be

15   decided by the court in a bench trial.  Of course that's

16   true.  Those are traditionally issues that are decided by

17   jury in the --

18             THE COURT:  If they are deciding the ultimate

19   issue.  Of course, in a normal jury trial where the jury is

20   asked to decide issues of liability or damages, it is the

21   jury's decision to assess the credibility of the witnesses

22   and assess the strength of the evidence.  Absolutely.  But

23   my question to you is:  To what purpose and to what end

24   would a jury be assessing the credibility of witnesses or

25   the weight of the evidence in an action for declaratory

1    relief?  And I -- in other words, would the jury then be

2    reporting to the judge that, okay, we think that you ought

3    to grant this declaratory judgment because we -- I'm just

4    not really understanding your -- I mean, I don't think I

5    need to reach this, okay?  I don't think I need to reach the

6    practical effect of allowing a jury in this case.

7          I think it's -- you know, fundamental

8    jurisprudence talks about the remedy controlling.  But as a

9    trial lawyer, former trial lawyer, and as a trial judge, I'm

10   trying to understand what you're asking for, what you're

11   asking this court to order, and the practical effect of

12   that, were this case to go to trial.  And I can't quite

13   discern that.

14         MR. STOLTZ:  Well, Your Honor, one possibility

15   would be whether a fairness defense applies.

16         THE COURT:  Isn't that a legal matter for -- isn't

17   that a legal matter for the judge to decide?

18         MR. STOLTZ:  Often, but not always.

19         THE COURT:  So, when we started out, when you

20   started arguing before me, Mr. Stoltz, I asked you -- my

21   first question was what would a jury decide?  And your

22   answer was perhaps nothing.  Who would decide what the jury

23   would decide?  Me?  The court?

24         MR. STOLTZ:  What I meant by that, Your Honor, was

25   it will come down to whether there are any disputed issues

1    of material fact after summary judgment.  There may be none.

2    We, frankly, expect that there will likely be none.

3             THE COURT:  So the right to a jury trial is

4    dependent on whether there are disputed issues of material

5    fact?  In other words, if you survive summary judgment, you

6    get a jury trial, regardless of what remedy you've sought?

7             MR. STOLTZ:  Not at all, Your Honor.  But, the --

8    a right to a jury trial is -- there's -- obviously, will

9    only come into play if a jury trial is necessary.

10            THE COURT:  But a jury trial is not granted on the

11   basis of necessity.  It's granted on the basis of the

12   Seventh Amendment right to a jury trial.  And the cases are

13   fairly clear that it is the remedy sought that determines

14   whether one gets a jury trial.  The $20, as Mr. Fee cites,

15   that no one is asking for in this case.  And if you're

16   asking the court to find some alternate basis because of

17   facts in dispute or the existence of disputed facts, I mean,

18   judges decide those things all the time in declaratory

19   judgment cases or other nonjury demandable context.

20            Are you saying that if a party in one of those

21   cases wants a jury, they get a jury because there are

22   disputed facts in evidence or that are in existence?

23            MR. STOLTZ:  No, Your Honor.  And I apologize for

24   this, for confusing you.

25            THE COURT:  No.  I'm really trying to figure out

1    not just whether -- not just the -- whether you're entitled

2    to jury trial here, but what you would have the jury decide.

3    I'm just struggling with that.

4             MR. STOLTZ:  Well, so another possibility, Your

5    Honor, and this illustrates the point, I think, plaintiffs

6    have more to prove on their affirmative claims than Public

7    Resource has because they're asking for an injunction, which

8    means they have to prove that the balance of harm tips in

9    their favor.  They have to prove irreparable injury and they

10   have to prove that the public interest favors an injunction.

11            Now, summary judgment can be granted on a lack of

12   irreparable injury, on a lack of the public interest

13   balance.  This happened in the *Perfect 10 versus Google*, the

14   Ninth Circuit case.  In that case -- in a case like that,

15   Public Resource's counterclaim would stand alone.

16            THE COURT:  And Public Resource could -- but I

17   think your point earlier was Public Resource's claim --

18   counterclaim standing alone wouldn't get a jury trial,

19   right?

20            MR. STOLTZ:  No, Your Honor.  In fact, I believe I

21   said the exact opposite.

22            THE COURT:  All right.  So what would -- so it

23   would be your position that, were this case to be dismissed

24   tomorrow in its entirety, that you could bring your

25   counterclaim as a standalone claim as a plaintiff and get a

1    jury trial, is that right?

2              MR. STOLTZ:  Yes.

3              THE COURT:  All right.  All right.

4              MR. STOLTZ:  Thank you.

5              THE COURT:  Thank you very much.

6              Is there anything further?

7              MR. FEE:  No, Your Honor.

8              THE COURT:  Thank you all.

9                        *   *   *

10

11

12

13         CERTIFICATE OF OFFICIAL COURT REPORTER

14

15         I, JANICE DICKMAN, do hereby certify that the above

16    and foregoing constitutes a true and accurate transcript of

17    my stenograph notes and is a full, true and complete

18    transcript of the proceedings to the best of my ability.

19                   Dated this 17th day of December, 2014.

20

21

22              _____

23              Janice E. Dickman, CRR, RMR
                Official Court Reporter
24              Room 6523
                333 Constitution Avenue NW
25              Washington, D.C. 20001