# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL; <br><br> NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and <br><br> AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC. <br><br><div align="right">Plaintiffs,</div><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br><div align="right">Defendant.</div> | Case No. 1:13-cv-01215-TSC-DAR <br><br><br> **DEFENDANT-COUNTERCLAIMANT PUBLIC.RESOURCE.ORG, INC.'S OPPOSITION TO PLAINTIFF-COUNTERDEFENDANTS' MOTION TO COMPEL DISCOVERY** <br><br><br> Filed:   August 6, 2013 |
| PUBLIC.RESOURCE.ORG, INC., <br><br><div align="right">Counterclaimant,</div><br> v. <br><br> AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL; <br><br> NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and <br><br> AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC. <br><br><div align="right">Counterdefendants.</div> | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ....................................................................................................1

II.  BACKGROUND ....................................................................................................3

    A.  The Parties ................................................................................................3

    B.  The Litigation...........................................................................................4

    C.  Public Resource's Production and Discussions with Plaintiffs .............................4

III.  ARGUMENT ..........................................................................................................7

    A.  Plaintiffs' Claim of Need Falls Far Short of the Constitutional
        Standard. ...................................................................................................7

        1.  Plaintiffs Seek Information That the First Amendment Protects................8

        2.  Disclosure of Donor Identities Will Burden Public Resource's
            Donors and Chill Associational Rights.......................................................10

        3.  Plaintiffs Cannot Satisfy the Standard for Obtaining Material
            the First Amendment Privilege Protects. ...................................................12

        4.  The Information Sought Does Not Go to the "Heart of the
            Lawsuit"....................................................................................................14

    B.  Plaintiffs Discovery Demand Is Also Unduly Burdensome. ................................15

IV.  CONCLUSION......................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Fed'n of Labor and Cong. of Indus. Orgs. v. Fed. Election Comm'n,*
    333 F.3d 168 (D.C. Cir. 2003) ..........................................................................9, 12

*Authors Guild, Inc. v. Google Inc.,*
    954 F. Supp. 2d 282 (S.D.N.Y. 2013)......................................................................14

*Beinin v. Ctr. for Study of Popular Culture,*
    C 06-02298 JW, 2007 WL 1795693 (N.D. Cal. June 20, 2007)........................10, 11

*Brock v. Local 375, Plumbers Int'l Union of Am.,*
    860 F.2d 346 (9th Cir. 1988) ...............................................................................9, 10

*Campbell v. Acuff-Rose Music,*
    510 U.S. 569 (1994)..........................................................................................14, 16

*Eilers v. Palmer,*
    575 F. Supp. 1259 (D. Minn. 1984) ........................................................................11

*Gulfstream Aerospace Corp. v. Camp Sys. Int'l, Inc.,*
    428 F. Supp. 2d 1369 (S.D. Ga. 2006)....................................................................15

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Nat'l*
    *Right to Work Legal Def. & Ed. Found., Inc.,*
    590 F.2d 1139 (D.C. Cir. 1978)........................................................................2, 9, 12

*Kelly v. Arriba Soft Corp.,*
    336 F.3d 811 (9th Cir. 2003) ..................................................................................14

*NAACP v. Alabama,*
    357 U.S. 449 (1958).......................................................................................8, 9, 10

*NAACP v. Button,*
    371 U.S. 415 (1963)...................................................................................................9

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ................................................................................14

*Perry v. Schwarzenegger,*
    591 F.3d 1147 (9th Cir. 2010) ........................................................................9, 12, 13

*Ripon Soc., Inc. v. Nat'l Republican Party,*
    525 F.2d 567 (D.C. Cir. 1975)...................................................................................8

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984)....................................................................................................8

*Sundeman v. Seajay Soc'y, Inc.*,
    142 F.3d 194 (4th Cir. 1998) ...................................................................................14

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014)...............................................................................14, 16

*White v. W. Pub. Corp.*,
    No. 12 CIV. 1340 JSR, 2014 WL 3057885 (S.D.N.Y. July 3, 2014)...............14, 16

**STATUTES**

15 U.S.C.A. § 1127 ...................................................................................................15

15 U.S.C. § 1051, *et seq.* (Lanham Act) .....................................................................4

**RULES**

Fed. R. Civ. P. 26(b)(1).........................................................................................1, 10

**OTHER AUTHORITIES**

U.S. Const. amend. I ........................................................................................ *passim*

I.     **INTRODUCTION**

Public.Resource.Org ("Public Resource") is a nonprofit organization dedicated to improving access to the law, from judicial opinions to state and federal regulations, including standards governments have incorporated by reference into law.  Plaintiff-Counterdefendants ("Plaintiffs") are standard-setting organizations that claim exclusive copyright in certain sets of standards that the federal government has incorporated into law.  They claim Public Resource's posting of such standards infringes their copyrights and trademarks.

Relying on a highly attenuated theory of relevance that fails the requirements of the First Amendment, Plaintiffs ask this Court to compel production of a broad set of documents in search of identities of persons who have donated money to the Defendant nonprofit organization. Plaintiffs have been forthright about their intent: they wish to interrogate the donors about why they choose to associate with Public Resource.

In other words, Plaintiffs seek to invade the associational rights of both Public Resource and its donors. Decades of unambiguous case law forbid that outcome.  Public Resource's work depends on donations and grants for its work. Many of its donors are, and wish to remain, anonymous. An organization cannot be compelled to disclose this kind of information without a showing that (1) the information is highly relevant to the claims or defenses in the litigation (a more demanding standard of relevance than that under Rule 26(b)(1)); (2) the compulsion of disclosure is crafted to avoid unnecessary interference with protected activities; and (3) the information is otherwise unavailable.

Plaintiffs have not made, and cannot make, that showing. To support their claim of relevance, Plaintiffs offer nothing more than vague speculation that perhaps some of Public Resource's donors are "paying" Public Resource to post the standards-at-issue; further speculation that, if so, a court could conclude that Public Resource was engaged in some

"commercial" use of the standards, and/or a "use in commerce"; and still more speculation that such a tinge of commerciality could deprive Public Resource of its fair-use defenses.

This elaborate speculation does not make sense.  As a practical matter, any donor who could afford to influence Public Resource could presumably afford to buy the standards. Moreover, given that Public Resource is open about its goal of posting standards incorporated by reference into law, every donation necessarily goes to support that outcome; there is no need to force Public Resource's donors to undergo the disclosure of their identities and the expense of a deposition in order to answer that question.  What is more, even if all of this speculation had any basis whatsoever, which it does not, Public Resource's supposed "commercial" use would still be fair and noninfringing.  In other words, the information sought hardly goes to "the heart of the lawsuit," as it must for this Court to compel its disclosure.  *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Nat'l Right to Work Legal Def. & Ed. Found., Inc*., 590 F.2d 1139, 1152 (D.C. Cir. 1978).

In addition, Plaintiffs have another, less intrusive way of obtaining information about Public Resource's "financial interest" in posting the standards: they can review the documents Public Resource has already produced, and they can depose Carl Malamud, Public Resource's principal.  In the unlikely event that information comes to light at that deposition that actually supports Plaintiffs' theory, they can then attempt to craft a specific discovery request that might pass Constitutional muster.  Public Resource offered Mr. Malamud for deposition months ago. Plaintiffs' failure to make reasonable efforts to determine whether there was any reasonable basis for their speculation before troubling the Court with this motion suggests, unfortunately, that their true motive has less to do with fact-finding than inhibiting support for Public Resource's work.

Finally, the search Plaintiffs demand would require that Public Resource engage in onerous searches for and review of documents that are affirmatively *un*likely to be relevant. Public Resource has searched for, *and produced*, communications, both with donors and with others, that are *about Plaintiffs*. Yet Plaintiffs also demand *all* of Public Resource's communications with its donors even if those communications *did not concern Plaintiffs*. It defies reason to suggest that communications that do not even mention the Plaintiffs will show that Public Resource "used its posting of *Plaintiffs' standards* to raise money." Mot. at 4 (emphasis added).

Plaintiffs' motion does not withstand minimal scrutiny, much less the scrutiny required by the Constitution. The Court should deny it.

## II.     **BACKGROUND**

### A.     **The Parties**

Public Resource is a California non-profit corporation that is dedicated to making primary legal materials and other important government records available to the public. As part of this work, Public Resource acquires and posts various codes and standards that have been incorporated into federal and state laws, such as building codes, fire safety codes, pipeline safety standards, and food safety standards. By improving public access to the legally governing codes, Public Resource helps citizens, businesses, journalists, consumer advocates, researchers, and others to educate themselves regarding laws that rule their lives and activities, laws that they must obey. To support this work, Public Resource relies on contributions from a variety of donors. Donors contribute at a variety of levels. Many choose to do so anonymously.

Plaintiffs are nonprofit organizations that develop standards that, in some instances, become the law of the land through a governmental process of "incorporation by reference."

Plaintiffs also engage in a variety of other activities, including training, conferences, certification, and publishing other, non-legal materials.

### B.      The Litigation

Plaintiffs filed a complaint against Public Resource on  August 6, 2013 regarding Public Resource's posting of standards that have been incorporated into public laws.  *See* Compl. ¶¶ 112–134.  On September 27, 2013, Public Resource filed its answer alleging several affirmative defenses and counterclaims seeking declaratory relief.  *See* Countercl. (ECF No. 21) ¶¶ 174–205; Affirmative and Other Defenses, ¶¶ 1–12.  Specifically, Public Resource seeks a declaration that its reproduction, reformatting, and posting of the standards-at-issue do not constitute copyright infringement.  *See id.* ¶¶ 187, 196–205. Public Resource also seeks a declaration that its reproduction of Plaintiffs' logos and names in the circumstances of this case does not violate the Lanham Act**.**  *See id.* ¶¶ 174–195.

### C.      Public Resource's Production and Discussions with Plaintiffs

Plaintiffs asked for "[a]ll documents relating to communications between You and existing or potential donors regarding Public Resource's plans to copy or post and/or Public Resource's actual copying or posting of any of the standards-at-issue or the standards of any Standards Development Organization on the Public Resource Website."  Mot. at 16.  In response, Public Resource searched for and produced communications that mention any of the standards-at-issue, including responsive nonprivileged communications with donors (along with responsive nonprivileged communications with non-donors) that mention Plaintiffs.  Decl. of Kathleen Lu in Opp'n to Plaintiffs' Mot. to Compel Discovery ("Lu Decl.") ¶ 2.

Public Resource expressly declined to produce donor information and communications that do not pertain to the Plaintiffs or the standards-at-issue. While some of Public Resource's

donors' identities are public, many others are not.  For some donors, privacy and anonymity are important conditions to their donations.  *See* Decl. of John Doe in Opp'n to Plaintiffs' Mot. to Compel Discovery ("Doe Decl.") ¶¶ 2–4 (statement by anonymous donor). Public Resource has therefore redacted the identities of these nonpublic donors from its productions but has produced or logged the communications themselves if they were responsive.  Lu Decl. ¶ 3.  Based on the communications they have reviewed, counsel for Public Resource has no reason to believe the identities of these donors are in any way relevant to this case.

During the meet-and-confer process, Plaintiffs sought to justify a further production by speculating that donors "paid" Public Resource to digitize the standards-at-issue.  *Id.* ¶ 5. Counsel for Public Resource have no reason to believe that any such communication exists but told Plaintiffs that, if Plaintiffs could point to such a communication, the parties could discuss the issue of the identity of the particular donor in the context of such a communication to avoid discussions resting on Plaintiffs' amorphous speculation.  *Id.*  Plaintiffs have declined to narrow the issues in that way, underscoring the breadth of their attack on donor privacy.

During conferences of counsel, Public Resource also explained that searching and reviewing donor communications that did *not* mention Plaintiffs would impose an undue burden. Contrary to Plaintiffs' assertions (Mot. at 4), Public Resource did explain, in a call on December 10, 2014, that Public Resource has *hundreds* of donors and that a search for all communications with all of them would be very burdensome.  Lu Decl. ¶ 6.  Since Public Resource does not segregate those communications, finding those communications would require hundreds of keyword searches (one or more per donor).  Conducting hundreds of keyword searches would be extremely burdensome.  Public Resource also explained on the call that it had attempted topical

keyword combinations such as "standards" and "donat*", but after review a subset of results, found only mis-hits and determined that those terms were too broad. *Id.*

Because Plaintiffs had raised questions about "large" donors (without defining "large") on the call, Public Resource evaluated whether it could conduct a review of communications with a subset of donors. Lu Decl. ¶ 7. It then offered to search for communications with donors who had given more than $50,000 (a total of seven donors, mostly foundations) that matched the keyword terms "standard and (donat* or contribut*)." *Id.* This search is already broad enough such that Public Resource would need to review hundreds of additional documents to search for all communications. *Id.* Plaintiffs rejected this offer. Lu Decl. ¶ 8.

Plaintiffs' proposed set of search terms "(Standard or standards) and (donat! or contribut! or giv! /s money or rais! /s money or rais! /s fund! or fundrais!)" is actually *impossible* to implement because (unlike Westlaw) the eDiscovery software for conducting searches does not have a "/s" (shorthand for "within the same sentence as") function. *Id.* While Public Resource is open to testing keyword suggestions from Plaintiffs (and stated as much on calls with Plaintiffs' counsel), it cannot test an impossible search.

Plaintiffs' proposed search string is still too broad because even a syntactically correct version of it would result in tens of thousands of documents that are not donor communications. *See* Lu Decl. ¶ 9. Nevertheless, Public Resource would be willing to use a similar search string that is syntactically possible and then use metadata to cull the results down to a smaller set of donor communications to review. Public Resource could use "w/5," a function that means "within 5 words of" in place of Plaintiffs' nonexistent "/s" function, to form a similar string: (Standard or standards) and (donat* or contribut* or giv* w/5 money or rais* w/5 money or rais*

w/5 fund* or fundrais*).[1]  While this search would result in many more documents to review than Public Resource's proposal of a search targeted at major donor communications, Public Resource is willing to compromise on this point by then using metadata (such as email address fields) to cull a smaller set of donor communications for review and then produce responsive nonprivileged communications that discuss Public Resource's posting of standards, with nonpublic donor identities redacted.

## III.   ARGUMENT

The discovery dispute before this Court boils down to two questions:

1.      Can Plaintiffs meet their burden under the First Amendment of showing that Public Resource's communications with its donors that do not mention any Plaintiff, as well as the identities of any Public Resource donors, are highly relevant to Plaintiffs' litigation against Public Resource; and,

2.      Can Plaintiffs justify additional highly burdensome searches and review beyond the searches and production Public Resource has already done?

The answer to both questions is no.

### A.      Plaintiffs' Claim of Need Falls Far Short of the Constitutional Standard.

Compelling Public Resource to hand over the names of its many donors would do serious harm to the First Amendment right of association of both Public Resource and its donors. Plaintiffs have made clear their intention to subject Public Resource's donors, including those who donate anonymously, to burdensome discovery and depositions.  Lu Decl. ¶ 5.  Disclosure will therefore effectively punish those donors for supporting Public Resource, inhibiting Public Resource's future fundraising and placing a substantial burden on Public Resource's (and its donors') constitutional right to associate and express their views on policy as a group. Plaintiffs

---

[1] The software Public Resource's counsel would use for such a search uses asterisks (*) instead of exclamation points (!) to represent wildcards.

cannot meet the high standard of need and relevance that would justify such an invasion of the First Amendment right of association.

### 1.   Plaintiffs Seek Information That the First Amendment Protects.

By demanding the identities of donors who have chosen to remain anonymous, Plaintiffs' motion strikes at the heart of First Amendment-protected associational activity.  Public Resource is engaged in communicative activities.  It raises awareness of the problems of poor and unequal access to important legal materials.  Public Resource's expressive activities include posting essays and position papers on its website, such as the essay "Twelve Tables of Codes," as well as speeches to the public and Congressional testimony.  Public Resource's work is sometimes controversial—in particular, drawing the ire of those who benefit from restricting access to legal materials, and those mistakenly who see Public Resource as an entity dedicated to infringing activity.  Accordingly, support for Public Resource's work can be controversial and is a form of political expression.

Courts have consistently recognized that the First Amendment protects these kinds of activities, because it protects the freedom to associate and express political views as a group.  For example, the Supreme Court long held that compelled disclosure of member and donor information burdens First Amendment rights.  *NAACP v. Alabama*, 357 U.S. 449, 462–63 (1958).  "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association . . . ."  *Id. at* 460.  "The express constitutional rights of speech and assembly are of slight value indeed if they do not carry with them a concomitant right of political association."  *Ripon Soc., Inc. v. Nat'l Republican Party*, 525 F.2d 567, 585 (D.C. Cir. 1975); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).  "[I]t is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters . . . ."  *NAACP*, 357 U.S. at 460.  Support of litigation is

itself a form of expression and association protected by the First Amendment. *NAACP v. Button*, 371 U.S. 415, 428–29 (1963).[2]

That protection extends to civil discovery requests that implicate the First Amendment rights of an association. "A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment privilege." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010), (compelling disclosure of internal campaign communications would "would likely have a chilling effect on political association," and ordering entry of a protective order); *see also Am. Fed'n of Labor and Cong. of Indus. Orgs. v. Fed. Election Comm'n*, 333 F.3d 168, 175 (D.C. Cir. 2003) ("The Supreme Court has long recognized that compelled disclosure of political affiliations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation.").

Although the First Amendment privilege against compelled disclosure is not absolute, it requires that anyone seeking information that the privilege protects satisfy a rigorous balancing test. *Am. Fed'n of Labor*, 333 F.3d at 176. That test involves two-part analysis. First, "[t]he party asserting the privilege 'must demonstrate . . . a 'prima facie showing of arguable first amendment infringement''" by demonstrating that discovery would "'result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights.'" *Perry*, 591 F.3d at 1160 (quoting *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349–50 (9th Cir. 1988)). Once a party resisting discovery makes this showing, the burden shifts to the

---

[2] To be clear, an organization has standing to assert the First Amendment associational rights of its members and donors as well as its own. *NAACP*, 357 U.S. at 458; *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., & its Locals 1093, 558 & 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978) ("Without doubt, the association itself may assert the right of its members and contributors to withhold their connection with the association.").

party seeking discovery to show that the discovery is highly relevant to the claims or defenses in

the litigation (a more demanding standard of relevance than that under Rule 26(b)(1)), carefully

tailored to avoid unnecessary interference with protected activities, and otherwise unavailable.

*Id.* at 1161.  In sum, the question is "whether the party seeking the discovery 'has demonstrated

an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent

effect . . . on the free exercise . . . of [the] constitutionally protected right of association.'" *Id.*

(quoting *NAACP*, 357 U.S. at 463).

Under any formulation of this test, privilege protects the identities of Public Resource's

donors, and Plaintiffs have not established a need for the information that overcomes the

privilege.

> **2.      Disclosure of Donor Identities Will Burden Public Resource's Donors and Chill Associational Rights.**

Plaintiffs seek to know the identities of people who support Public Resource.  Courts

facing similar facts have regularly found that the First Amendment protected such speech.  In

*Beinin v. Ctr. for Study of Popular Culture*, for example, a professor sued an online critic for

copyright infringement. No. C 06-02298 JW, 2007 WL 1795693 (N.D. Cal. June 20, 2007).  The

defendant then sought discovery of the names and email addresses of those who had expressed

support for the professor's case.  The court explained the threat this discovery request posed to

First Amendment rights:

> First, compelled disclosure might make the plaintiff, or future plaintiffs, reluctant
> to accept the support of unpopular groups, so that evidence of their support cannot
> be used against the plaintiff at trial. Second, the supporters themselves may desire
> anonymity, and may withhold support if they fear their names will be disclosed.

*See id.* at *3.  In particular, the court noted that, if the supporters had known their support would

"subject them to intrusive depositions or other discovery," they might have refrained from

offering that support.  *Id.* at *4.

10

That kind of intrusion is precisely what Plaintiffs contemplate. Plaintiffs have admitted that they intend to depose the donors, forcing those donors to invest time and financial resources in explaining their support for Public Resource.  That burden strikes at the core of First Amendment values. *See id.* at *3.

On top of that specific burden is the equally important likelihood that compelled disclosure will discourage donors from associating with Public Resource in the future. In *Eilers v. Palmer*, for example, the defendants sought the names of individuals who provided funding for a religious organization's legal defense.  Noting that "support of litigation is a form of expression and association protected by the first amendment," the court concluded that such disclosure would chill the exercise of associational rights.  *See* 575 F. Supp. 1259, 1261 (D. Minn. 1984).

The same is true on this instance.  Public Resource relies almost entirely on charitable donations to fund its work.[3] Some of Public Resource's work is controversial, and has invited legal threats and litigation, such as the instant litigation.  Thus, when donors choose to help fund that work, they are engaging in association and expression closely akin to the support at issue in *Eilers.* Although some donors consent to public identification and are named on Public Resource's website, many do not.  Involuntary disclosure of the names of such supporters would undoubtedly burden their associational rights, as well as Public Resource.

For example, some of Public Resource's large individual donors channel their donations through Donor Advised Funds and other charitable instruments in order not to make their support public.  Decl. of Carl Malamud in Opp'n to Plaintiffs' Mot. to Compel ("Malamud Decl.") ¶ 6. Another large donor has expressed in no uncertain terms his wish and expectation that his

---

[3] While Public Resource has made t-shirts and other memorabilia bearing its logo available for sale, it has generated less than $100 through those sales. Malamud Decl. ¶ 3.

contribution would be anonymous. *Id.* ¶ 7; *see generally Perry*, 591 F.3d at 1163 (declarations

established prima facie case of chilling effect on First Amendment rights).

Those who donate through the Internet have also expressed a desire for anonymity. From

May through July 2014, Public Resource conducted a series of fundraising campaigns through

the website indiegogo.com to raise funds for the scanning and posting of official state statutes in

four states. Malamud Decl. ¶ 8. One-third of the donors to these campaigns requested anonymity.

*Id.* Compelling disclosure of these donors' identities to Plaintiffs will discourage these donors

and many potential future donors from supporting Public Resource—the precise harm that the

First Amendment privilege seeks to avoid.

Plaintiffs suggest that disclosure will not be a problem because it can be subject to a

protective order.  This is beside the point: a protective order cannot suffice to overcome

constitutional interests.  Even if it could, a protective order will do nothing to alleviate the

burden on donors of facing intrusive and intimidating conduct by Plaintiffs in this litigation.

**3.      Plaintiffs Cannot Satisfy the Standard for Obtaining Material the
First Amendment Privilege Protects.**

Because Public Resource has identified and articulated the First Amendment interests at

stake and the harms that Plaintiffs threaten, the burden shifts to Plaintiffs to show that their need

for the information is compelling, that their requests are narrowly tailored, and that they have no

alternative path to obtain the information sought.  *Am. Fed'n of Labor*, 333 F.3d at 176; *Perry,*

591 F.3d at 1161 ("The request must also be carefully tailored to avoid unnecessary interference

with protected activities, and the information must be otherwise unavailable.").

A compelling interest is one goes to "the heart of the lawsuit."  *Int'l Union*, 590 F.2d at

1152.  Plaintiffs make a minimal attempt to meet this standard, merely speculating without

evidentiary support about the motives of Public Resource in soliciting donations.  Public

Resource has searched for and produced communications with donors that mention Plaintiffs.  If

the standards-at-issue motivated an anonymous donor to give, Plaintiffs should be able to point

to a communication from that donor in seeking to unmask him or her.  If Plaintiffs' insinuations

were true, instead of mere conjecture, then Public Resource would have already found and

produced donor communications supporting it.  No such communications exist.  Therefore,

Plaintiffs rely instead on communications between Public Resource and a *non-donor vendor* that

illustrate the uncontroversial premise that the continuing progress a nonprofit makes in its work

is relevant in procuring further funding.  No nonprofit can survive by taking in funding and

doing nothing with it.

Neither have Plaintiffs made any effort to meet the other part of the test:  a demonstration

that they cannot prove (or disprove) their theory without impinging on constitutional privileges.

*Id.* at 1152-53 (litigants "should have been required to attempt to seek information from other

likely and reasonably accessible sources" before seeking compelled disclosure of donor names).

Public Resource has offered to produce donor communications about Plaintiffs with nonpublic

donor identities redacted.  Lu Decl. ¶ 5.  If Plaintiffs' theories had any substance, they could

examine such documents and then, in the unlikely event that they were able to find a potential

"smoking gun," seek to justify further discovery on a case-by-case basis.

Similarly, rather than wasting judicial, party, and potentially third-party resources based

on unsupported speculation, the Plaintiffs could depose Mr. Malamud.  Mr. Malamud can speak

to whether any of his contributors expect a commercial benefit in exchange for their donation.

If Mr. Malamud's testimony supported Plaintiff's suppositions, which it will not, the Plaintiffs

could attempt to persuade the Court to compel further disclosure.  At the very least, Plaintiffs

13

should depose Mr. Malamud *before* attempting to burden the associational rights of Public

Resource and its donors.

### 4.    The Information Sought Does Not Go to the "Heart of the Lawsuit"

Plaintiffs' theory as to why the identities of Public Resource's donors could be highly

relevant to a fair use analysis under copyright also makes little sense as a matter of law.  Even

assuming that a nonprofit is engaged in "commercial" conduct when it points to progress toward

its stated goals as a fundraising message (a rule that would make practically all nonprofit

organizations "commercial" actors), that supposed commercial purpose would do little to

undermine Public Resource's fair use defense.

First, even if Public Resource could be said to engage in some form of "commercial"

activity, that would hardly preclude a fair use finding, particularly given the tremendous public

benefit of its work.  Indeed, the leading Supreme Court case on fair use, *Campbell v. Acuff-Rose

Music*, involved a for-profit defendant who directly sold to the public copies of the allegedly

infringing work and profit from these sales.  510 U.S. 569 (1994).  Numerous other cases finding

fair use involve for-profit entities that sold access to the material at issue.  *See, e.g., Swatch Grp.

Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014); *White v. W. Pub. Corp.*, No. 12

CIV. 1340 JSR, 2014 WL 3057885 (S.D.N.Y. July 3, 2014).

Moreover, Public Resource's activities are highly transformative.  Public Resource

recodes the law and posts it online in a more accessible format.  Given the transformativeness of

the use, any supposed commercial purpose would have little bearing on the analysis.  *See Perfect

10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1166 (9th Cir. 2007) (holding that commerciality is

unimportant when the challenged use is transformative); *Kelly v. Arriba Soft Corp.*, 336 F.3d

811, 818 (9th Cir. 2003) (commercial nature unimportant where use was not "exploitative");

*Sundeman v. Seajay Soc'y, Inc.*, 142 F.3d 194, 202–03 (4th Cir. 1998) (similar); *Authors Guild,*

*Inc. v. Google Inc.*, 954 F. Supp. 2d 282, 292 (S.D.N.Y. 2013) (similar); *Gulfstream Aerospace Corp. v. Camp Sys. Int'l, Inc.*, 428 F. Supp. 2d 1369, 1377 (S.D. Ga. 2006) (transformativeness, not commerciality, determined first fair use factor).

Likewise, the identities of Public Resource's donors are irrelevant to whether Public Resource used any of Plaintiffs' trademarks "in commerce," because the donors' identities cannot transform Public Resource's posting of materials on a public website for all to use into a sale of goods or services. *See* 15 U.S.C.A. § 1127.

Indeed, given the legal and logical holes in Plaintiffs theory of relevance, and their failure to pursue less burdensome means of proving or disproving that theory before filing this Motion, Public Resource fears that the only reason for seeking *all* anonymous donors' identities is to subject those donors to intrusion and harassment, thereby discouraging them, and future potential donors, from associating with Public Resource.

Plaintiffs have not satisfied, and cannot satisfy, the test for compelled disclosure.  The Court should deny Plaintiffs' motion for this reason alone.

**B.     Plaintiffs Discovery Demand Is Unduly Burdensome.**

Plaintiffs demand a search that is both highly burdensome and unlikely to find relevant documents.  Public Resource has already searched for communications that discuss any of the Plaintiffs.  By definition, this search would have turned up any donor communications that discussed the Plaintiffs.  Thus, the additional search Plaintiffs demand is only for donor communications that do *not* discuss plaintiffs.  Plaintiffs have failed to explain the relevance of those documents.  While Plaintiffs have speculated that Public Resource could have "used its posting of Plaintiffs' standards to raise money," they do not explain how communications that do not mention Plaintiffs would support such a theory.  *See* Mot. at 4.

Plaintiffs may have the erroneous impression that a defendant's mere intake of *any* funds could undermine fair use under copyright law. As noted above, even with respect to the standards-at-issue, that theory has no legal support; even a for-profit defendant's sale of copies of or access to the allegedly infringing work has little relevance where, as here, the use is highly transformative. *Campbell*, 510 U.S. 569; *Swatch*, 756 F.3d 73; *White*, 12 CIV. 1340 JSR, 2014 WL 3057885. Here, there is no dispute that Public Resource is a nonprofit and that it has never sold any copies of or access to the standards-at-issue in this case. At any rate, the notion that communications about Public Resource's *general* fundraising efforts, which do *not* mention Plaintiffs, could be relevant to fair use finds even less support under copyright law.

Plaintiffs' proposed search string has an even weaker connection to their rationale since they do not confine their proposal to donor communications, which is what Plaintiffs profess to be the bedrock of their relevance claim. Public Resource would need to apply a metadata analysis to separate the donor communications Plaintiffs claim interest in from the rest of the results of the broad keyword search Plaintiffs propose (with additional syntax corrections). While this would be an extra step from what Public Resource proposed and would result in greater burden of review, Public Resource would be willing to compromise to resolve this issue.

Thus, Public Resource would be willing to run the search "(Standard or standards) and (donat* or contribut* or giv* w/5 money or rais* w/5 money or rais* w/5 fund* or fundrais*),” use metadata to isolate donor communications, and then review those donor communications and produce, with nonpublic donor identities redacted, responsive nonprivileged communications that discuss Public Resource's posting of standards.

## IV.    <u>CONCLUSION</u>

For the reasons above, Public Resource respectfully requests that the Court deny Plaintiffs' motion.

16

Dated:  January 12, 2014

Respectfully submitted,

*/s/ Andrew P. Bridges*
Andrew P. Bridges (admitted)
abridges @fenwick.com
Kathleen Lu (pro hac vice)
klu@fenwick.com
Matthew B. Becker (pro hac vice)
mbecker@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW
Washington, DC 20005
Telephone: (202) 905-3434

Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
Corynne McSherry (pro hac vice)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile:  (415) 436-9993

*Attorneys for Defendant-Counterclaimant*
*Public.Resource.Org, Inc.*