**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL; | Case No. 1:13-cv-01215-TSC/DAR |
| NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and | **PUBLIC.RESOURCE.ORG, INC.'S REPLY IN SUPPORT OF MOTION FOR EXTENSION OF DISCOVERY** |
| AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC. | **PERIOD, CORRESPONDING MODIFICATION OF SCHEDULING ORDER, AND LEAVE TO TAKE MORE THAN TEN DEPOSITIONS** |
| Plaintiffs, | |
| v. | Complaint Filed:  August 6, 2013 |
| PUBLIC.RESOURCE.ORG, INC., | |
| Defendant. | |

| |
|---|
| PUBLIC.RESOURCE.ORG, INC., |
| Counterclaimant, |
| v. |
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL; |
| NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and |
| AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC. |
| Counterdefendants. |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT ...............................................................................................................3

I.     THERE IS GOOD CAUSE TO EXTEND THE DISCOVERY SCHEDULE BECAUSE PLAINTIFFS PRODUCED MORE THAN 92% OF THEIR DOCUMENTS WITHIN, OR AFTER, THE LAST MONTH OF DISCOVERY...................................................................................................3

     A.     Plaintiffs' Last-Minute Productions Included Many of The Most Significant Documents Produced In This Case ........................................4

     B.     Public Resource Could Not Reasonably Review Plaintiffs' Last-Minute Productions In Time To Proceed With Depositions Of Plaintiffs' Corporate Designees Pursuant To Rule 30(b)(6) Before The Original January 30 Close Of Discovery. ................................................5

     C.     Public Resource Could Not Reasonably Review Plaintiffs' Last-Minute Productions In Time To Determine Who To Depose From The Sixteen Individuals Identified In Plaintiffs' Initial Disclosures, Or Whether There Are Additional Witnesses Plaintiffs Failed To Disclose, Before The Original January 30 Close Of Discovery. ............................7

     D.     Plaintiffs Cannot Blame Public Resource for Plaintiffs' Own Failure to Produce Documents in a Timely Manner. ................................................8

     E.     Plaintiffs Have Compounded the Problems Their Untimely Productions Caused Because They Refuse to Cooperate in Good Faith in Rescheduling Depositions....................................................................9

     F.     Public Resource Has Been Diligent and Cooperative in Scheduling Depositions of Carl Malamud. ..............................................................10

     G.     Plaintiffs Cannot Complain Of Delay After Having Sat On Their Claims For Almost Three Years Prior To Filing The Complaint. .........................12

II.     THERE IS GOOD CAUSE TO EXTEND THE DISCOVERY SCHEDULE IN THE EVENT THE COURT GRANTS NFPA'S UNTIMELY MOTION TO AMEND THE COMPLAINT. ...................................................................13

III.     PUBLIC RESOURCE HAS GOOD CAUSE TO TAKE MORE THAN TEN DEPOSITIONS................................................................................................14

IV.     CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Authentic, Inc. v. Atrua Techs., Inc.*,
No. C 08-1423 PJH, 2008 WL 5120767 (N.D. Cal. Dec. 4, 2008) ........................................14

*Dag Enters., Inc. v. Exxon Mobil Corp.*,
226 F.R.D. 95 (D.D.C. 2005)....................................................................................................4

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
No. C-01-21151 JW(PVT), 2007 WL 3306496 (N.D. Cal. Nov. 6, 2007)..............................15

*Doe v. District of Columbia*,
No. Civ. A. 031789, 2005 WL 1278270 (D.D.C. May 27, 2005) ...........................................14

*Everlight Elecs. Co. v. Nichia Corp.*,
No. 12-CV-11758, 2013 WL 6713789 (E.D. Mich. Dec. 20, 2013) ........................................4

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) .................................................................................................12

*U.S. Nutraceuticals LLC v. Cynotech Corp.*,
No. 5:12-cv-366, 2014 WL 1918040 (M.D. Fla. May 13, 2014) .............................................4

RULES

Fed. R. Civ. P. 26............................................................................................................1, 3, 7, 14

Fed. R. Civ. P. 30(b) .................................................................................................................10

Fed. R. Civ. P. 30(b)(6)....................................................................................................... *passim*

Local Civil Rule 30.1 ................................................................................................................10

## INTRODUCTION

Defendant-counterplaintiff Public.Resource.Org ("Public Resource" or "Defendant") seeks an extension of the discovery period for multiple reasons, the most significant of which is the fact that Plaintiffs-Counterdefendants American Society for Testing and Materials d/b/a ASTM International ("ASTM"), National Fire Protection, Inc. ("NFPA") and American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc. ("ASHRAE" and, collectively with ASTM and NFPA, "Plaintiffs") collectively produced more than **92% of their documents** to Public Resource within, or after, the last month of discovery. These massive productions of tens of thousands of *critical* documents, ***beginning*** just one month prior to the close of discovery and continuing well past its close, alone provides good cause for an extension of discovery. Plaintiffs' failure to timely produce documents left Public Resource with the gargantuan task of digesting Plaintiffs' massive productions, identifying witnesses based on those documents (some of whom Plaintiffs did not disclose in their Rule 26 initial disclosures), *and* noticing and taking depositions of Plaintiffs' witnesses in three cities in the span of just ***one*** month. In short, Plaintiffs' document dumps left Public Resource with no reasonable means to complete depositions prior to the close of discovery. Plaintiffs' opposition brief completely ignores this point.

Instead, Plaintiffs now point the finger at Public Resource and rest on the frivolous notion that Public Resource is not entitled to an extension because it has somehow not been diligent. On top of this, Plaintiffs take the position that Public Resource's deposition notices served prior to the close of discovery were not timely. These assertions disregard that Public Resource previously had none of the key documents it needs to depose Plaintiffs' witnesses. Moreover, Public Resource's subsequent attempts to cooperate with Plaintiffs' counsel in scheduling depositions have been meet with stonewalling, as Plaintiffs have rebuffed Public Resource's

proposed deposition dates only to offer dates which they know that Plaintiff's counsel cannot accommodate.  Accordingly, Plaintiffs' delay tactics have only compounded the need for an extension.  Moreover, there is no risk of prejudice to Plaintiffs though granting Public Resource's requested extension, as Plaintiffs have had knowledge of Public Resource and its activities since at least 2008.

In addition to Plaintiff's delay tactics, NFPA's recently filed motion to amend the Complaint on February 3, 2015, after the close of discovery, also provides Public Resource with good cause for an extension of the discovery schedule.  Public Resource would suffer significant prejudice if the Court were to grant NFPA leave to amend without permitting Public Resource additional discovery regarding the new claim.

Finally, Public Resource has good cause to seek leave to take 20 depositions.  Public Resource will need to depose many of the 16 witnesses Plaintiffs collectively disclosed in their initial disclosures, in addition to witnesses Plaintiffs never disclosed that Public Resource identified in its review of the documents.  Public Resource has also noticed a deposition of at least one non-party.  Plaintiffs oppose increasing the deposition limit, relying on the fact that Public Resource has not yet taken any depositions, despite that this inability to do so sooner was purely result of Plaintiffs' own actions.  In light of the complex issues at stake and the history of Plaintiffs' recalcitrance in this case, Public Resource need not exhaust its current deposition limit before seeking leave to request further depositions.

In light of these facts, Public Resource has good cause for its requested extension of the discovery schedule and for leave to take 20 depositions.

**ARGUMENT**

**I.   THERE IS GOOD CAUSE TO EXTEND THE DISCOVERY SCHEDULE BECAUSE PLAINTIFFS PRODUCED MORE THAN 92% OF THEIR DOCUMENTS WITHIN, OR AFTER, THE LAST MONTH OF DISCOVERY.**

Plaintiffs produced *almost 46,000 documents* consisting of *more than 198,000 pages* within the last month of discovery.In fact, NFPA produced *an additional 405 documents* consisting of *more than 25,000 pages* on February 16, 2015—more than two weeks *after* the close of discovery.  *See* Reply Declaration of Andrew P. Bridges In Support Of Public Resource's Motion For Extension of Discovery Period, Corresponding Modification of Discovery Order, and Leave to Take More Than 10 Depositions ("Bridges Reply Decl.") ¶ 3.  All in all, Plaintiffs produced more than 92% of their documents within, or after, the final month of discovery.  In terms of page counts, Plaintiffs produced more than 86% of their production during, or after, the last month of discovery.  *Id*.  Moreover, these productions were not minor or tangential document productions that might simply tie out or "finalize" prior productions, notwithstanding Plaintiffs' misleading representations.  *See* Opp. at 6.  To the contrary, they represent the vast majority of documents that Plaintiffs produced during discovery.

Plaintiffs cannot, and do not, dispute the enormous volume of documents Plaintiffs produced on or after December 30, 2014.  *See* Opp. at 4–5.  Instead, Plaintiffs' brief rests on misleading statements about their production, particularly two significant productions by NFPA.  First, it fails to include the more substantial of two document productions by NFPA on January 30, 2015 (i.e., the last day of discovery), which included 372 document compilations consisting of *more than 59,000 pages*.  *See* Bridges Reply Decl. ¶ 3; Opp. at 4, 6–7 & n.3 (disclosing only a 62-page production on January 30, 2015).  Second, as noted above, NFPA produced microfilms containing *an additional 25,000 pages,* which it had long delayed turning over, by delivering them to a vendor for processing and delivery to Defendant at the very end of discovery, and

delivery to Defendant occurred on February 16, 2015.  It is simply false for Plaintiffs to argue, as

Plaintiffs do, that NFPA "substantially completed its document production on January 5."  Opp. at

7.  Nor does it alter the fundamental fact that Plaintiffs collectively produced the vast majority of

their documents on or after December 30, 2014.

Plaintiffs' voluminous eleventh hour productions alone provide good cause to extend the

fact discovery schedule.  *See U.S. Nutraceuticals LLC v. Cynotech Corp.*, No. 5:12-cv-366, 2014

WL 1918040, at *5 (M.D. Fla. May 13, 2014) (granting discovery extension where plaintiffs

produced a "gigantic 'document dump' including 64,712 pages of documents" at the end of the

discovery period); *Everlight Elecs. Co. v. Nichia Corp.*, No. 12-CV-11758, 2013 WL 6713789, at

*3–4 (E.D. Mich. Dec. 20, 2013) (finding good cause for discovery extension where defendant

could not complete all necessary discovery, despite its due diligence, because plaintiffs "dumped

voluminous discovery responses" on the eve of the close of fact discovery); *see also* Opp. at 6

(citing *Dag Enters., Inc. v. Exxon Mobil Corp.,* 226 F.R.D. 95, 105 (D.D.C. 2005).  Here,

Plaintiffs' document dumps deprived Public Resource of the opportunity to identify key exhibits

and witnesses, and prepare for depositions prior to the close of fact discovery.  Plaintiffs'

opposition never comes to grips with this reality.

> **A.**     **Plaintiffs' Last-Minute Productions Included Many of The Most Significant Documents Produced In This Case**

It bears special emphasis that Plaintiffs waited to produce their most significant

documents as part of their last-minute data dumps, including:

- Copies of assignment forms that contain ***non-exclusive*** grant language, which is ineffective to transfer copyright and calls into question Plaintiffs' standing to assert copyright claims based on the standards (Plaintiffs had fiercely resisted, and delayed, producing these documents);

- Copies of ***incomplete*** grant forms, which again rebut the presumption that Plaintiffs own the copyrights over the standards at issue;

4

- Documents reflecting Plaintiffs' affirmative efforts to lobby government officials to incorporate the standards at issue into law;

- Documents reflecting coordination between Plaintiffs and other standards developing organizations on incorporation by reference issues generally;

- Documents discussing Plaintiffs' online reading rooms, which provide read-only access to their standards, as well as intentional limitations on the public's ability to use such reading rooms;

- Documents reflecting ongoing coordination between Plaintiffs and other standards developing organizations regarding Public Resource and Mr. Malamud's activities, including documents discussing this litigation; and

- Documents discussing the *lack* of financial harm to Plaintiffs as a result of Public Resource and Mr. Malamud's activities.

These categories of documents all go to the heart of the dispute between Plaintiffs and Public Resource, but Plaintiffs withheld them until the very end of the discovery period.

**B.    Public Resource Could Not Reasonably Review Plaintiffs' Last-Minute Productions In Time To Proceed With Depositions Of Plaintiffs' Corporate Designees Pursuant To Rule 30(b)(6) Before The Original January 30 Close Of Discovery.**

Plaintiffs argue that Public Resource could have finished discovery on time if only it had been diligent enough.  For example, Plaintiffs complain that Public Resource postponed the depositions of two NFPA witnesses scheduled for January 9 and 13, 2015, resulting in "significant inconvenience" to Plaintiffs.  Opp. at 1.  But Plaintiffs fail to explain how Public Resource could have reviewed the 1,953 documents (7,984 pages) produced by NFPA on December 30, 2014 or the 586 documents (9,808 pages) produced by NFPA on January 5, 2015 before a January 9, 2015 deposition, particularly given that:

- Public Resource did not receive the productions until December 31 and January 6, respectively;

- Public Resource needed time to process and upload the production to its review platform before it could start reviewing documents;

- There were two holidays between NFPA's production and the scheduled deposition (New Year's Eve and New Year's Day); and

- Public Resource needed additional time to travel to Boston for the deposition.

And this ignores, of course, the prejudice Public Resource would have suffered had it deposed NFPA witnesses without the benefit of the more than 84,000 pages of documents NFPA still had not produced as of January 9, 2015.

At the same time that Public Resource had to contend with NFPA's last minute document dump, it also had to review and analyze the nearly 42,000 documents (89,565 pages) that ASTM shipped on December 31, 2014, which Public Resource's counsel received on January 2, 2015. Plaintiffs summarily argue that Public Resource had "ample time to take depositions before the close of discovery" (Opp. at 7) but even assuming that Public Resource deposed ASTM on January 30 (i.e., the last day of discovery), this would have required Public Resource to finish reviewing more than 1,500 documents a day every day for the entire month of January (including weekends) just to finish a first-level review of ASTM's documents.  And this ignores the need to review NFPA's massive productions during the same time period, let alone take NFPA's Rule 30(b)(6) deposition, ASHRAE's Rule 30(b)(6) deposition, and the depositions of each individual Plaintiffs had disclosed in their Amended Initial Disclosures.  In short, the notion that Public Resource could have reviewed Plaintiffs' voluminous productions and deposed witnesses about the documents in those productions within the span of *one* month is ludicrous.[1]

---

[1]   The timing of Plaintiff ASHRAE's document productions has been more reasonable in relation to NFPA and ASTM, and Public Resource was willing to begin depositions of ASHRAE much sooner.  However, in light of NFPA and ASTM's last-minute, voluminous productions, ASHRAE agreed to postpone the depositions of its own witnesses.

C.     **Public Resource Could Not Reasonably Review Plaintiffs' Last-Minute Productions In Time To Determine Who To Depose From The Sixteen Individuals Identified In Plaintiffs' Initial Disclosures, Or Whether There Are Additional Witnesses Plaintiffs Failed To Disclose, Before The Original January 30 Close Of Discovery.**

Plaintiffs' suggestion that Public Resource could have noticed, scheduled and completed depositions of fact witnesses prior to the discovery cutoff defies logic.  Public Resource timely served deposition notices on each of the three Plaintiffs pursuant to Rule 30(b)(6).  Plaintiffs oppose Public Resource's request to depose more than ten witnesses, and so, absent court intervention, Public Resource is limited to seven additional depositions.  But Plaintiffs concede that they collectively identified *sixteen* individuals in their Rule 26 disclosures, as amended.  Opp. at 3–4.  Plaintiffs apparently fault Public Resource for not selecting and deposing seven of these individuals prior to the discovery deadline, but Plaintiffs utterly fail to explain how Public Resource could reasonably select seven of the sixteen individuals to depose *without the benefit of the documents Plaintiffs produced in the last month of discovery*.  Plaintiffs cannot seriously suggest that Public Resource should have selected witnesses solely on the basis of the general descriptions included in Plaintiffs' amended initial disclosures.  *See* Bridges Decl., Ex. A.  Nor, in the absence of Plaintiffs' documents, could Public Resource evaluate whether, and to what extent, it would need to depose all sixteen of the individuals disclosed by Plaintiffs, let alone whether there are additional witnesses with relevant knowledge that Plaintiffs *failed* to timely disclose.  In fact, based on Plaintiffs' last minute productions, Public Resource identified *eight* individuals who are likely to have salient, non-duplicative knowledge relevant to the litigation and who were never disclosed by Plaintiffs, including seven individuals related to Plaintiffs and one non-party witness.  Of course, even if Public Resource could have somehow identified an appropriate set of witnesses, it plainly could not have questioned them about core documents absent sufficient time to review and digest Plaintiffs' belated productions.

**D.      Plaintiffs Cannot Blame Public Resource for Plaintiffs' Own Failure to Produce Documents in a Timely Manner.**

Plaintiffs' opposition brief sidesteps their obligation to produce documents in a timely manner in two ways.  First, Plaintiffs argue that their productions were delayed because "the parties were in the process of resolving objections to the relevant document requests."  Opp. at 5.  That may be true, but it is hardly Public Resource's fault that Plaintiffs chose to withhold or delay production on the basis of meritless objections.  It also misses the fundamental point of Public Resource's motion.  Regardless of whether they were justified or not, Plaintiffs failed to produce the vast majority of their documents until the last month of discovery.  All Public Resource is asking for is additional time to review Plaintiffs' untimely productions and depose witnesses on the documents in those productions.

Plaintiffs also attempt to blame Public Resource for allegedly failing timely to inspect assignment forms related to the development of NFPA's standards.  *See id.* at 4, 7.  But Plaintiffs again misconstrue the record.  Public Resource did not receive notice that NFPA would make documents available for inspection until December 16, 2014.  Public Resource promptly contacted NFPA to schedule an inspection to take place on December 26, 2014—offering to fly to Massachusetts only ten days after receiving notice from NFPA.  *See* Bridges Reply Decl. ¶ 6, Ex. B. When NFPA informed Public Resource that its offices would be closed on December 26, 2014, Public Resource attempted to reschedule the inspection for December 29, 2014.  *Id.*  NFPA refused to make the records available then for inspection.  Indeed, while NFPA now argues that Public Resource could not inspect records as a result of some unspecified holiday falling on December 29, 2014 (*see* Opp. at 7 n.4) at the time, NFPA could not even represent that the documents would be ready by December 29.  *See* Bridges Reply Decl. ¶ 6, Ex. B.  Indeed, NFPA's untimely response made clear that the assignment documents would not be available for inspection until ***January 5,***

*2015*—only eight days before the original date for the deposition of NFPA's Rule 30(b)(6)

designee on assignments.  *See* Bridges Reply Decl. ¶ 7, Ex. C.

> **E.      Plaintiffs Have Compounded the Problems Their Untimely Productions
> Caused Because They Refuse to Cooperate in Good Faith in Rescheduling
> Depositions.**

Public Resource served deposition notices pursuant to Federal Rule of Civil Procedure

30(b)(6) on November 14, 2014, noticing the depositions of Plaintiffs' corporate designees.  On

January 30, 2014 at 9:42 PM PST, Public Resource served deposition notices on Plaintiffs,

including amended Rule 30(b)(6) deposition notices and deposition notices of individual

witnesses.  As noted above, the delay in serving further deposition notices was directly related to

Plaintiffs' decision to delay production of documents needed to identify potential deponents until

the very end of discovery.  In recognition of the prejudice to Public Resource, Plaintiffs' counsel

agreed to accept service of deposition notices through January 30, 2015 and indicated that they

would work with Public Resource to schedule depositions following the close of fact discovery.

Counsel for Public Resource has also continually tried to reach out to and work with

Plaintiffs to schedule depositions on mutually agreeable dates since the close of fact discovery.

Plaintiffs have stonewalled these attempts in two ways:  they refuse to discuss the scheduling of

five party-related deponents, and they repeatedly "offer" other key deponents on dates when they

know that Defendant's lead counsel (who will conduct the depositions) is unavailable.  The record

shows that the organizing principle for NFPA's and ASTM's scheduling negotiations has been to

rebuff Defendant and to offer only dates which they know that Plaintiff's counsel cannot

accommodate.  Plaintiffs have also failed to identify corporate designees to testify on topics added

to Public Resource's amended Rule 30(b)(6) deposition notices.

In support of their refusal to make witnesses available, Plaintiffs argue that Public Resource has failed to comply with this Court's Local Civil Rule 30.1[2], which requires that a party notice depositions 7 or 14 days in advance of the deposition, and that Public Resource's deposition notices are not timely because they were served on the last day of discovery. But Plaintiffs' **agreed** to permit depositions after the close of discovery, and their contention that the deposition notices served by Public Resource on January 30, 2015 are untimely under Local Civil Rule 30.1 is frivolous. Moreover, Plaintiffs construe the close of discovery selectively to claim that only the depositions **they** want to go forward may occur after the close of discovery. *See* Opp. at 11.

In addition, Public Resource needs additional time to accommodate **Plaintiffs'** demand that certain party-related depositions occur outside the District of Columbia. Plaintiffs affirmatively chose to file this action in this forum, but ASHRAE and NFPA insist that depositions of their employees occur in Atlanta and Boston, respectively. Public Resource has agreed to accommodate Plaintiffs' requests in the spirit of compromise, but Plaintiffs' opposition brief fails to acknowledge the additional time needed to schedule depositions of a number of party-related witnesses in multiple locations.

### F.   Public Resource Has Been Diligent and Cooperative in Scheduling Depositions of Carl Malamud.

Despite Plaintiffs' contentions to the contrary, Public Resource has been diligent both in seeking to schedule depositions of Plaintiffs' witnesses and in making its employee Carl Malamud available for depositions. Plaintiffs falsely assert that Public Resource has "refused" to

---

[2]   Local Civil Rule 30.1 provides: "[s]ervice of a notice of deposition seven days in advance of the date set for taking the deposition shall constitute "reasonable notice" to a party as required by Rule 30(b), Federal Rules of Civil Procedure, unless the deposition is to be taken at a place more than 50 miles from the District of Columbia, in which case 14 days shall constitute reasonable notice."

appear for depositions, including for depositions that Plaintiffs noticed for January 29 and 30, 2015 and February 12 and 13, 2015.While Plaintiffs did notice Mr. Malamud's deposition for January 29 and 30, counsel for Public Resource notified Plaintiffs as early as December that a deposition of Mr. Malamud in late January was unworkable, given Public Resource's lead counsel's trial schedule. *See* Bridges Decl., ¶ 2. After previously notifying Plaintiffs of Mr. Malamud's unavailability since December, Public Resource again confirmed on January 27, 2015 that Mr. Malamud would not appear for depositions on January 29 and 30. Thus, Plaintiffs' characterization of Public Resource's inability to appear for depositions as a "refusal" to appear—on dates that Plaintiffs knew weeks in advance was unworkable—is disingenuous.

Moreover, Public Resource did agree to offer Mr. Malamud for a Rule 30(b)(6) deposition on February 12 and 13, 2015, and did not "unilaterally announce[] that it would not appear for the depositions," as Plaintiffs contend. *See* Opp. at 1.Rather, Public Resource on February 9, 2015 notified Plaintiffs that Mr. Malamud ***was prepared*** to go forward with the deposition, on the condition that Mr. Malamud's deposition be consolidated with his deposition in a related action, *AERA v. Public Resource. See* Bridges Decl., ¶ 9. Counsel for Public Resource notified Plaintiffs that it was otherwise improper and burdensome to require Mr. Malamud to sit for 4 days of depositions in two related cases. *See id.*. Nevertheless, and despite the coordination between the ASTM and AERA Plaintiffs, each set of Plaintiffs insisted on separate depositions of Carl Malamud in the separate cases, both in his capacity as an individual, and in his capacity as the sole employee and representative of Public Resource pursuant to Rule 30(b)(6), for a total of four days of deposition. Public Resource filed a Motion for a Protective Order on February 20, 2015, requesting that the Court stay the Rule 30(b)(6) and personal depositions of Carl Malamud that the Plaintiffs in this action had renoticed for February 26 and

27, 2015, pending this Court's ruling on Public Resource's Motion for Consolidation.  Because

the Court did not rule on the motion for protective order by the date of the deposition, Defendant

provided Mr. Malamud for deposition on February 26 and 27 and withdrew its motion for

protective order as moot.  Because coordinating the deposition of Defendant and Mr. Malamud

across both cases was a major reason for the motion for consolidation for purposes of discovery,

Defendant also withdrew its consolidation motion as moot.  Defendant has at all times acted

appropriately with respect to the discovery Plaintiffs have sought from it, but Plaintiffs refuse to

reciprocate.

> **G.      Plaintiffs Cannot Complain Of Delay After Having Sat On Their Claims For
> Almost Three Years Prior To Filing The Complaint.**

Plaintiffs concede that prejudice to the opposing party is a secondary factor in

determining good cause to modify the scheduling order and cannot outweigh Public Resource's

inability to complete discovery by January 30, 2015 despite diligent efforts to review Plaintiffs'

eleventh hour productions in a timely manner.  *See* Opp. at 6 ("Although the existence or degree

of prejudice to the party opposing the modification might supply additional reasons to deny a

motion, ***the focus of the inquiry is upon the moving party's reasons for seeking modification***.")

(quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (emphasis

added).

Even were prejudice to Plaintiffs a significant factor, Plaintiffs' own documents flatly

contradict Plaintiffs' assertion that they will suffer prejudice by a mere month's extension and

the extremely short delay in resolving the case.  Opp. at 11.  Plaintiffs learned about Public

Resource and its activities as early as 2008.  *See*, *e.g.*, Bridges Decl., Ex. E at NFPA-

PRO024355.  In February 2011, NFPA's former President, James Shannon, circulated ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ *See*, *e.g.*, *id.*, Ex. F at NFPA-

PRO022638–39.  In April 2011, NFPA began █████████████████████████████████

██████████████████████████████████████████ *Id.*, Ex. E at NFPA-PRO024356.

Yet Plaintiffs sat on their hands for ***two and a half years*** before filing this action in August 2013.

To cry foul at a month's extension now—particularly since Public Resource's request for an

extension is a direct result of ***Plaintiffs'*** own last-minute productions—is simply another attempt

to shut down appropriate discovery for their own strategic advantage.

## II.    THERE IS GOOD CAUSE TO EXTEND THE DISCOVERY SCHEDULE IN THE EVENT THE COURT GRANTS NFPA'S UNTIMELY MOTION TO AMEND THE COMPLAINT.

As Public Resource noted in its opening papers, NFPA seeks to amend the Complaint to

add a new claim for alleged copyright infringement of an additional standard.  Mot. at 6.

However, NFPA failed to seek leave to amend the Complaint prior to the discovery cutoff.

NFPA did not file its motion to amend the Complaint until February 3, 2015—more than two full

months ***after*** the parties' agreed upon deadline to serve written discovery and several days ***after***

Plaintiffs' unilaterally-imposed deadline to serve deposition notices.  *See* Plaintiff National Fire

Protection Association's Motion to Amend Complaint, Dkt. No. 74.  Public Resource does not

oppose NFPA's proposed amendment so long as Public Resource is afforded sufficient

opportunity to conduct discovery on the new claim.  *See* Public Resource's Opposition to

National Fire Protection Association, Inc.'s Motion to Amend Complaint, Dkt. No. 79.

However, Public Resource would suffer significant prejudice if the Court were to grant NFPA

leave to amend without permitting Public Resource additional discovery regarding the new

claim. *See generally id.*  Plaintiffs are silent on this point.

13

### III.    PUBLIC RESOURCE HAS GOOD CAUSE TO TAKE MORE THAN TEN DEPOSITIONS.

There are *three* Plaintiffs in this action, and they have collectively identified *sixteen*

individuals in their Rule 26 disclosures.  Public Resource has already served notice that it intends

to take the deposition of each Plaintiff pursuant to Rule 30(b)(6), as well as the deposition of

American National Standards Institute ("ANSI"), a non-party that is heavily involved in promoting

the adoption of standards.  Absent intervention by the Court, Public Resource will be limited to six

additional depositions.  In other words, Public Resource will be limited to deposing *two* witnesses

per Plaintiff, and *fewer than half* of the individuals that Plaintiffs themselves concede have

discoverable knowledge regarding this litigation.  Moreover, as noted in Section I.C., *supra*, Public

Resource has learned that there are additional witnesses who have salient, non-duplicative

knowledge of the underlying facts but that were never identified in Plaintiffs' initial disclosures.

Each of these particularized reasons are sufficient to demonstrate good cause to increase the

number of depositions Public Resource may take.  *See Doe v. District of Columbia*, No. Civ. A.

031789, 2005 WL 1278270, at *1 (D.D.C. May 27, 2005) (where a party reasonably believes it

needs more than 10 depositions, it is appropriate for the Court to grant leave for the party to take

more depositions); *see also* Opp. at 9 (good cause for leave to take more than ten depositions may

be made by "a particularized showing of the need for the additional discovery") (quoting

*Authentic, Inc. v. Atrua Techs., Inc.*, No. C 08-1423 PJH, 2008 WL 5120767, at *1 (N.D. Cal. Dec.

4, 2008).

Plaintiffs primary argument is that Public Resource has not yet taken any depositions and

so has failed to demonstrate the need to take more than ten.  But as noted above, Public

Resource's inability to take depositions prior to the original discovery cutoff was a direct result

of Plaintiffs' eleventh hour productions.  *See supra* Sections I.B. and I.C.  Moreover, Plaintiffs

14

have refused to cooperate in scheduling the depositions Public Resource noticed on January 30, 2015.  *See supra* Section I.E.  Plaintiffs cannot turn around and credibly argue that Public Resource should be denied the opportunity to question witnesses about discoverable information as a result of ***Plaintiffs'*** actions.  Even if there were a kernel of truth to Plaintiffs' argument— and again, it contradicts the discovery record—Plaintiffs' argument is inapposite.  Courts do not require a party to have taken depositions and exhausted its ten deposition limit before seeking leave for further depositions where, as here, the issues in the case are complex, there are numerous parties and non-parties, and there is justification for additional discovery.  *See Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C-01-21151 JW(PVT), 2007 WL 3306496, at *6 (N.D. Cal. Nov. 6, 2007) (it is "prejudicial to require Plaintiffs to choose the ten depositions to take before they know whether they will be granted more").  This action involves three Plaintiffs, numerous non-party witnesses and document custodians, and novel and complex copyright and trademark issues.  In light of the complex issues at stake and the history of Plaintiffs' recalcitrance in this case, the Court should not require Public Resource to exhaust its deposition limit before seeking leave to request further depositions.

IV.     **CONCLUSION**

    For the reasons Public Resource has explained, the Court should grant an extension of the discovery period to April 15, 2015, and permit Public Resource to take up to 20 depositions.

Dated:  February 27, 2015                    Respectfully submitted,

                                            */s/   Andrew P. Bridges*
                                            Andrew P. Bridges (admitted)
                                            abridges @fenwick.com
                                            Matthew Becker (admitted)
                                            mbecker@fenwick.com
                                            FENWICK & WEST LLP
                                            555 California Street, 12th Floor
                                            San Francisco, CA 94104
                                            Telephone:  (415) 875-2300
                                            Facsimile:   (415) 281-1350

                                            David Halperin (D.C. Bar No. 426078)
                                            davidhalperindc@gmail.com
                                            1530 P Street NW
                                            Washington, DC 20005
                                            Telephone: (202) 905-3434

                                            Mitchell L. Stoltz (D.C. Bar No. 978149)
                                            mitch@eff.org
                                            Corynne McSherry (admitted)
                                            corynne@eff.org
                                            ELECTRONIC FRONTIER FOUNDATION
                                            815 Eddy Street
                                            San Francisco, CA 94109
                                            Telephone: (415) 436-9333
                                            Facsimile:  (415) 436-9993

                                            *Attorneys for Defendant-Counterclaimant*
                                            *Public.Resource.Org, Inc.*