**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL; <br><br> NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and <br><br> AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS, <br><br> Plaintiffs/ Counter-Defendants, <br><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br> Defendant/ Counter-Plaintiff. | Case No. 1:13-cv-01215-TSC-DAR |

**PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER AND REQUEST FOR EXPEDITED BRIEFING SCHEDULE**

Plaintiffs/Counter-Defendants American Society for Testing and Materials d/b/a ASTM International ("ASTM"), National Fire Protection Association, Inc. ("NFPA"), and American Society of Heating, Refrigerating, and Air Conditioning Engineers ("ASHRAE") (collectively, "Plaintiffs") respectfully move for entry of a protective order confirming that Plaintiffs need not produce Rule 30(b)(6) witnesses to testify regarding the assignments of copyrights by Plaintiffs' members, Plaintiffs' chain of title of copyright ownership for the standards at issue, or the assignors' authority to assign any copyrights to Plaintiffs. To allow the Court to rule on this Motion prior to the dates on which the depositions of Plaintiffs' designated witnesses have been noticed, Plaintiffs request that the Court order an expedited briefing schedule in connection with this Motion, with Defendant's response to be due on March 13 and Plaintiffs' reply to be due on

1

March 18.

In support of this Motion, Plaintiffs state as follows:

## INTRODUCTION AND BACKGROUND

Plaintiffs are three not-for-profit standards development organizations that create voluntary consensus standards to address the needs of the global business community. Standards are technical works that encourage consistent practices among private actors, which advances public safety, ensures compatibility across products and services, and provides additional and significant public benefits. Some of Plaintiffs' standards are incorporated by reference into regulations by federal, state or local governments. Dkt. 1 ¶¶ 1-2. Plaintiffs incur substantial costs to develop the copyrighted standards, and pay for the majority of these costs with revenues derived from selling and licensing their standards to interested parties. *Id.* ¶ 2. Defendant Public.Resource.Org, Inc. ("Public Resource") threatens the ability of the Plaintiffs to create and market voluntary consensus standards because it has copied Plaintiffs' copyrighted standards en masse and disseminated these unauthorized copies on its website in violation of the Copyright Act and trademark laws. *Id.* ¶ 3.

Public Resource has served deposition notices on each Plaintiff that indicate its intent to take depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) on various topics, including three topics that relate to chain of title of ownership of each Plaintiff's copyrights, the authority of individuals who participate in the standards development process to assign copyrights to Plaintiffs and the specific forms that these individuals have used to assign their copyrights to Plaintiffs (the "Assignment Topics").[1] *See* Exhibits A-C.

---

[1] These topics are Topics 2, 3 and 24 of the ASTM Notice; Topics 2, 3 and 26 in the ASHRAE notice; and Topics 2, 3 and 25 in the NFPA notice. These topics state in full:

    All elements of the Chain of Title of copyright ownership, including copyright authorship and ownership of

There is no legitimate question that Plaintiffs are the organizational authors of the works that Defendant has copied and posted to the Internet for all to copy for free. *See Veeck v. Southern Building Code Congress Int'l, Inc.*, 293 F.3d 791, 794 (5th Cir. 2002) (en banc) (describing the standard developing organization as the "organizational author" of the building codes it develops and stating that it "indisputably holds a copyright" in its codes). In fact, Public Resource has frequently acknowledged that Plaintiffs are the authors of the standards. *See, e.g.,* Transcript of 30(b)(6) Deposition of Public Resource at 280:14-282:11; 289:17-290:16 (attached as Exhibit D) and examples from Internet Archive of Plaintiffs' standards uploaded by Public Resource where Public Resource identified Plaintiffs as the authors of the standards (attached as Exhibit E). And it is undisputed that Plaintiffs own copyright registrations for each of those works and affixed copyright notices to those works. Dkt. 1 ¶¶ 58, 78, 93.

Although Public Resource does not purport to be the owner of any of the copyrights-at-issue, Public Resource apparently seeks evidence to support its theory that the assignments of rights by the individuals who were involved in the development of Plaintiffs' standards may in some way be defective. However, discovery on this issue would not lead to the discovery of admissible evidence as a matter of law. Courts in this District and elsewhere uniformly hold that a copyright infringer who does not claim to be the owner of the copyrighted material lacks standing to challenge the validity of an assignment. Additionally, allowing Public Resource to take discovery related to the chain of title of hundreds of standards and assignments made by

---

component parts of the Works-At-Issue in this case.

The authority of persons executing copyright assignment forms in favor of You [Plaintiffs] to convey the copyright rights in their works or expression, including but not limited to evidence of authority of employees to assign copyrights they do not own individually.

The Bates numbers of at least one instance of every form of assignment with which You claim a person assigned any copyright in the Works-At-Issue to You.

Exhibits A-C.

thousands of individuals would be extremely burdensome for Plaintiffs.

In accordance with Local Rule 7(m), the parties conferred regarding Public Resource's deposition topics and were unable to resolve their dispute over whether Public Resource has standing to challenge the validity of the assignments. Accordingly, Plaintiffs now request that the Court issue a protective order pursuant to Federal Rule of Civil Procedure 26(c) providing that Plaintiffs need not produce 30(b)(6) deponents regarding the Assignment Topics and need not respond to any other discovery seeking similar information.

## ARGUMENT

Defendant seeks to increase the cost of this litigation improperly by attempting to create an issue where none exists, posing extremely burdensome and inappropriate discovery requests concerning Plaintiffs' copyright ownership and their "standing" to bring their copyright claims.

There can be no doubt that the Plaintiffs created the voluntary consensus standards that are the subject of this litigation. These standards are drafted, edited, and revised by the staff employees of the Plaintiff nonprofit organizations and their members, who participate in the development process through various committee structures, as well as, in some cases, other contributors who submit comments and proposals as part of the development process. Members of the nonprofit Plaintiffs and other contributors who participate in the creation of standards agree as a condition of participation that the copyrights to the standards will be owned by the nonprofit Plaintiffs. Plaintiffs know of no member of any of the Plaintiffs – or any other person – who claims to own any copyright interest in the relevant standards or who claims not to have assigned his/her copyrights in the standards to Plaintiffs. The published versions of the standards prominently feature the trademarks of the respective Plaintiffs[2] and include copyright notices

---

[2] Defendant has never indicated that it disputes the Plaintiffs' ownership of the trademarks that Plaintiffs allege Defendant has infringed.

alerting the public (as well as the individuals who participated in the creation of the standards) to the fact that the copyright is owned by each respective Plaintiff.  Plaintiffs also registered their copyrights with the U.S. Copyright Office.  The registrations afford Plaintiffs with *prima facie* evidence of ownership of the copyrights.  *See* 17 U.S.C. § 410(c)*; DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 81-82 (D.D.C. 2007) (stating certificate of copyright is *prima facie* evidence of ownership).

Notwithstanding that Defendant itself has recognized that Plaintiffs are the organizational authors of the copyrighted standards, *see, e.g.,* Exs. D and E, Defendant posed numerous and burdensome discovery requests concerning the minutest technicalities of Plaintiffs' relationships with their members, seeking, in part, for each of the hundreds of standards at issue in this case, (1) what specific person or persons created copyrightable text and (2) "assignments" of any copyrightable interest for every such person to Plaintiffs.  Defendant presumably propounded these requests for extensive discovery to attempt to prove that the copyright to some portion of the standards are owned by Plaintiffs' members (in either their individual or corporate capacity).

However, courts have uniformly rejected the attempts of copyright infringers to defend against infringement claims by challenging the validity of the copyright assignment to the plaintiff.  *See, e.g.*, *Billy-Bob Teeth v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003); *Hart v. Sampley*, Civ. A. No. 91-3068 (CRR), 1992 WL 336496, at *1 (D.D.C. June 24, 1992) ("Even if, as defendants suggest, the transfer was in some way defective, the defendants would not have standing to challenge the validity of the transfer because they were not parties to the agreement.").  There is no reason for this Court to depart from this precedent here.  Public Resource's desire to litigate the validity of every assignment by numerous authors in connection with the hundreds of standards that it copied is simply not relevant to any claim or defense in this

case because Public Resource does not have standing to raise any issues related to any deficiencies in the assignment process.  In addition to being irrelevant, the requested discovery would unduly burden Plaintiffs by making them respond to voluminous discovery to litigate tangential issues.

**I.        Legal Standard**

A protective order is necessary to prohibit discovery of information that is not "relevant to any party's claim or defense."  *See* Fed. R. Civ. P. 26(b)(1); *Peskoff v. Faber*, 230 F.R.D. 25, 28 (D.D.C. 2005).  To be relevant, information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Even if the Court were to find that the information was relevant, the Court may enter a protective order "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by, among other things, "forbidding the disclosure or discovery"; "prescribing a discovery method other than the one selected by the party seeking discovery"; or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c)(1).  To determine whether "good cause" for entry of a protective order exists, courts shall engage in "a balanced exercise of discretion," by considering whether "the harm to [the movant] outweighs its opponent's interest in discovering the facts." *Low v. Whitman*, 207 F.R.D. 9, 10, 13 (D.D.C. 2002).  While the movant bears the burden of showing its interests outweigh those of its opponent, Rule 26(c) grants courts "broad discretion" to determine whether and to what extent a protective order is required.  *See Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 19, 22 (D.D.C. 2007); *Peskoff*, 230 F.R.D. at 28 (district courts "must exercise their discretion in light of the relevant facts and circumstances of a particular case.").

The Federal Rules empower courts with this discretion to facilitate trial preparation while shielding parties from the widespread abuse of liberal discovery rules. *See Tavoulareas v. Wash. Post*, 111 F.R.D. 653, 658-589 (D.D.C. 1986) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)).[3] Thus courts "must construe Rule 26(c) so as 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 659 (quoting Fed. R. Civ. P. 1; *Wilk v. Am. Med. Assn.*, 635 F. 2d 1295, 1299 (7th Cir. 1980)).

II.  **The Information Public Resource Seeks Is Not Relevant to Any Claim or Defense Because Public Resource Lacks Standing to Challenge The Assignment of Copyrights to Plaintiffs by Their Committee Members.**

A protective order is necessary because Public Resource seeks to discover information about the chain of title for Plaintiffs' copyrights even though this information is not relevant to any claim or defense. *See Peskoff*, 230 F.R.D. at 28 ("[i]t bears emphasis that a party is only entitled to discovery of information relevant to the claims or defenses asserted in the case."). The only possible relevant use for the information in the Assignment Topics is to raise the defense that Plaintiffs lack standing to sue Public Resource because their standards-development contributors did not properly assign their copyrights in the works-at-issue. However, as a party who does not itself claim to be the copyright owner, Public Resource lacks standing to challenge the assignment of ownership in the works-at-issue in this matter.

A.  **Copyright Principles**

A few basic copyright principles are key to understanding Defendant's attempted tactic.

---

[3] The *Tavoulareas* court quoted the Supreme Court in full:

> Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).

Copyright ownership arises initially in the author(s) or creator(s) of a work.  17 U.S.C. §201(a).  Layered onto this simple and straightforward proposition are a series of provisions allocating and regulating copyright ownership.  The ownership of copyright created by "employees" within the "scope of employment" are "works made for hire," the copyright belonging as a matter of law to the "employer."  17 U.S.C. § 201(b).  And the ownership of copyright, once created, can only be transferred by a writing signed by the owner.  17 U.S.C. § 204.

The Assignment Topics relate to chain of title of ownership of each of the Plaintiffs' standards, the forms used to transfer ownership of the copyrights to Plaintiffs, and the authority of individuals who participated in the standards development process to assign their copyrights to Plaintiffs.  To prepare a deponent to discuss these issues, Plaintiffs would potentially have to conduct investigations into the identity of all of the members of the committees that created the copyrighted standards and all other contributors, including investigation into the nature of each person's contributions to those standards, the substance and location of the written assignments to Plaintiffs from each of those persons, and attempt to determine whether each member-assignor was acting within the scope of her outside employment during the respective standard development period and the scope of her authority from her employer to assign any copyrightable interest.  The only potential relevance of this information is to determine whether there was a flaw in the assignment documentation regarding the ownership of the works-at-issue.

    B.  **Public Resource Lacks Standing to Challenge the Assignment of Copyrights to Plaintiffs by Their Committee Members.**

Courts routinely and uniformly hold that if there is no dispute between the assignor and the assignee as to the ownership of a copyright, an alleged infringer who has no claim to ownership lacks standing invoke 17 U.S.C. § 204 to challenge the assignment.  *See*, *e.g.*, *Barefoot Architect, Inc. v. Bunge*, 632 F. 3d 822, 829-30 (3d Cir. 2011) (rejecting infringers'

argument regarding the effectiveness of an assignment because concerns over the certainty of ownership are not compelling when each defendant "knew or should have known that they were at least potentially infringing someone's copyright—even if they perhaps could not be precisely sure whose."); *Billy-Bob Teeth*, 329 F. 3d at 591-93 (holding that infringer lacked standing to challenge validity of assignment); *Magnuson v. Video Yesteryear*, 85 F. 3d 1424 (9th Cir. 1996) (same); *Hart v. Sampley*, 1992 WL 336496, at *1 (D.D.C. June 24, 1992) (same).  As explained in *Imperial Residential Design v. Palms Development Group, Inc.*, "the chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." 70 F. 3d 96, 99 (11th Cir. 1995).  Thus, "where there is no dispute between the copyright owner and the transferee about the status of the copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.'" *Id.* at 99 (quoting *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982) (holding that third party infringer cannot challenge validity of another's license)).

In *Hart v. Sampley*, this Court entered judgment as a matter of law against defendants who sought to avoid liability for copyright infringement by asserting that plaintiffs, a sculptor and the Vietnam Veterans Memorial Fund, were not valid joint copyright holders of the statue at issue because of a defective transfer from the sculptor to himself and the Memorial.  *See* 1992 WL 336496, at *1 (D.D.C. June 24, 1992).  This Court held that "[e]ven if . . . the transfer was in some way defective, the defendants would not have standing to challenge the validity of the transfer because they were not parties to the agreement." *Id.* (citing *Eden Toys, Inc.*, 697 F. 2d at

36). For the same reason, defendants also lacked standing to challenge plaintiffs' transfer of title in the statue to the Department of the Interior. *Id.*

Similarly, in *Billy-Bob Teeth v. Novelty, Inc.*, the Seventh Circuit held that an alleged infringer did not have standing to challenge the assignment of a copyright when the alleged infringer did not claim to be the owner of the copyright. 329 F. 3d at 592-93. There, the plaintiff registered copyrights for two sets of joke false teeth that were authored by a dental student before he and his co-founder incorporated their company. *Id.* at 588. The district court entered judgment as a matter of law against the plaintiff, the incorporated company, based on its failure to prove that it owned the copyright. *Id.* at 590. The Seventh Circuit reversed, invoking the policy of 17 U.S.C. § 204 to hold that, regardless of whether the copyright had been assigned in accordance with 17 U.S.C. § 204, the infringing defendant lacked standing to attack the transfer because it was a third-party challenger, and there was no dispute between the co-founder and the plaintiff over copyright ownership. *Id.* at 592-93 (citing *Imperial Residential Design*, 70 F. 3d at 99).

These cases foreclose any potential defense by Public Resource in this litigation that Plaintiffs are not the owners of the copyrights in the works-at-issue because the copyrights were not properly assigned. Plaintiff nonprofits are the "organizational authors" of the standards at issue. *See Veeck*, 293 F.3d at 794. The standards are published under the name and trademark of the relevant Plaintiff, and the Plaintiffs have obtained copyright registrations for each of the standards. The founder and president of Public Resource has himself identified the Plaintiffs as the authors of every single one of the standards at issue. *See, e.g.,* Exs. D and E. Moreover, staff members from each Plaintiff participate in the standard development process. Additionally, it cannot be disputed (and Plaintiffs have produced voluminous documents that demonstrate) that

10

participation in the standards development process of each Plaintiff requires every participant to agree to assign any copyrights in the standards to the relevant Plaintiff.[4] As in *Hart*, *Billy-Bob Teeth*, and the other cases cited herein, the policy of 17 U.S.C. § 204(a) – to protect parties with legitimate claims of copyright ownership from fraud – is not implicated here because this case does not involve an ownership dispute between Plaintiffs and any assignor who may have contributed to the development of Plaintiffs' standards. Neither Public Resource nor its sole employee claim to own the copyright in any of the standards at issue in this case. *See* Transcript of 30(b)(6) Deposition of Public.Resource.Org, Inc. at 108:25-109:11 (attached as Exhibit F). As a third-party challenger without any claim to ownership of the copyrights at issue, Public Resource does not have standing to attack assignments between Plaintiffs and their committee members. Public Resource cannot avoid liability for its infringement based on any allegedly defective assignment.

Because the information Public Resource requested in the Assignment Topics regarding copyright ownership and chain of title is not "relevant to any party's claim or defense," a protective order is warranted. *See* Fed. R. Civ. P. 26(b)(1); *Peskoff*, 230 F.R.D. at 28.

---

[4] In the event that Plaintiffs were unable to show writings to confirm past intended assignments from committee members, Plaintiffs would be able to satisfy the requirements of § 204(a) if they secured a *nunc pro tunc* agreement that transferred any copyright ownership interest to a Plaintiff for each work-at-issue. *See Billy-Bob Teeth v. Novelty, Inc.*, 329 F. 3d 586, 591-92 (7th Cir. 2003). Plaintiffs would only need to obtain a *nunc pro tunc* assignment from a single author of each work-at-issue because, to the extent any assignment is necessary, the works-at-issue would be joint works. All co-authors of a joint work of authorship own all the rights in the work, subject to a duty of accounting to each other. *See Music v. Evie's Tavern*, --- F. 3d ----, 2014 WL 6602418, at *2 n.2 (11th Cir. Nov. 21, 2014) ("Coowners of a copyright [are] treated generally as tenants in common, with each coowner having an independent right to use or license the use of a work, subject to a duty of accounting to the other coowners for any profits.") (quoting H.R. Rep. 94-1476, at 121 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5736); 1 Nimmer & Nimmer, § 6.12[A] ("[A] joint owner is under a duty to account to the other joint owners of the work for a ratable share of the profits realized from his use of the work."). Each author's rights in a joint work enable her to prosecute an infringement action without joining other co-owners. *See id*. at *3 & n.2; *Davis v. Blige*, 505 F. 3d 90, 99 (2d Cir. 2007). Thus, if any co-owners assigned to Plaintiffs their rights in the joint works, or if Plaintiffs themselves were a co-author of the work based on the contributions of their employees, Plaintiffs would have standing to sue Public Resource for infringement of those works.

### III. Alternatively, Discovery Regarding Chain of Title and Copyright Assignments Would Be Unduly Burdensome.

Even if the information Public Interest seeks were somehow deemed relevant, a protective order is necessary to shield Plaintiffs from the unduly burdensome and expensive task of searching for information to substantiate the assignments made for the hundreds of works-at-issue. The harm to Plaintiffs outweighs Public Resource's interest in discovering the requested information it has requested. Plaintiffs already produced voluminous records showing their intellectual property policies and the written assignments of copyrights by their members over an extensive period of time, which support Plaintiffs' contention that their members routinely assign their copyrights in all contributions to the standards developing process to Plaintiffs. Indulging Public Resource in this resource-intensive fishing expedition for additional information about an issue that is unlikely to have any bearing on the forthcoming copyright infringement trial would not "secure the just, speedy and inexpensive determination" of this case that Rule 26(c) demands. *See Tavoulareas*, 111 F.R.D. at 658-589.

As discussed above, preparing witnesses to be deposed about the Assignment Topics would require Plaintiffs to investigate the chain of title for each of the hundreds of infringed works in this case. Among other things, this would potentially require Plaintiffs to conduct an investigation into the identity all of the members of the committees that created the copyrighted standards, including investigation into the nature of each person's contributions to those standards, the substance and location of the written assignments to Plaintiffs from each of those persons, and attempt to determine whether each member-assignor was acting within the scope of her outside employment during the respective standard development period and the scope of her authority from her employer to assign any copyrightable interest.

Plaintiffs have hundreds of standards development committees consisting of numerous

12

members from different employers. ASTM alone has over 30,000 members comprising 143 technical committees. Dkt. 1 ¶ 49. If even a small portion of these members engaged in the standards-development process for the hundreds of works at issue in this case, researching, acquiring and furnishing complete information on chain of title for every assignment from a contributing member to Plaintiffs would be a monumental task – and the law is clear that this evidence could only be relevant to questions regarding the duty, if any, of Plaintiffs to any co-authors. It would not provide any insight into the issues in this case, including the central issue of whether Public Resource infringed the copyrights of the works-at-issue.

Public Resource does not have a significant interest to justify miring Plaintiffs in this discovery dragnet. Plaintiffs possess *prima facie* evidence of ownership of the copyrights through their Certificates of Copyright Registration. *See* 17 U.S.C. § 410(c); *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 81-82 (D.D.C. 2007); *see also Arista Records, Inc. v. Flea World, Inc.*, 2006 WL 842883, at *9 (D.N.J. 2006) (finding that Plaintiffs in a copyright infringement action proved ownership of hundreds of copyrighted sound recordings on summary judgment by furnishing copyright registration certificates and declarations attesting to ownership). Moreover, there is no evidence that anyone other than Plaintiffs claims ownership in these copyrighted works.

Bearing in mind that Plaintiffs possess *prima facie* evidence of ownership for all the copyrights in this case and there is no evidence of any ownership dispute among the participants in the standards development process, Public Resource would need to run the gauntlet to rebut the presumption of ownership for the works at issue. Public Resource would need to show, for each work-at-issue, that each Plaintiff is not the organizational author, that not a single employee of Plaintiffs made any copyrightable contributions to the development of each standard, and that

not a single one of the many contributing committee members made a valid assignment to Plaintiffs.  Even if there were works for which all of the assignment documentation were lacking, and for which there were no evidence of copyrightable contributions by Plaintiffs' employees, Plaintiffs would only need to obtain an executed, written agreement from a single co-author to confirm past attempted assignments for those works.  Public Resource's speculative and legally groundless ends do not justify its onerous means.  Plaintiffs' interest in avoiding the burdensome discovery on the Assignment Topics, and the interest in the just, speedy, and inexpensive determination of this action, warrant this Court's protection.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and enter a protective order.  A proposed order is attached hereto as Exhibit G.

Dated: March 6, 2015                    Respectfully submitted,

/s/ J. Kevin Fee

Michael F. Clayton (D.C. Bar: 335307)
J. Kevin Fee (D.C. Bar: 494016)
Jordana S. Rubel (D.C. Bar: 988423)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: 202.739.5215
Email: mclayton@morganlewis.com
         jkfee@morganlewis.com
         jrubel@morganlewis.com

*Counsel For American Society For Testing And Materials d/b/a/ ASTM International*

/s/ Anjan Choudhury

Anjan Choudhury (D.C. Bar: 497271)
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071
Tel: 213.683.9100
Email:  Anjan.Choudhury@mto.com

Kelly M. Klaus
Jonathan H. Blavin
Michael J. Mongan
Munger, Tolles & Olson LLP
560 Mission St., 27th Floor
San Francisco, CA 94105
Tel:  415.512.4000
Email: Kelly.Klaus@mto.com
         Jonathan.Blavin@mto.com
         Michael.Mongan@mto.com

*Counsel for National Fire Protection Association, Inc.*

/s/ Joseph R. Wetzel

Jeffrey S. Bucholtz (D.C. Bar: 452385)
King & Spalding LLP
1700 Pennsylvania Avenue, NW, Ste. 200
Washington, DC 20006-4707

Tel: 202.737.0500
Email: jbucholtz@kslaw.com

Kenneth L. Steinthal
Joseph R. Wetzel
King & Spalding LLP
101 Second Street, Ste. 2300
San Francisco, CA 94105
Tel: 415.318.1211
Email: ksteinthal@kslaw.com
      jwetzel@kslaw.com

*Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers*

## **RULE 26(C) CERTIFICATION**

I certify that despite conferring in good faith with all other affected parties, I was unable to resolve this dispute without court action.

/s/ J. Kevin Fee
J. Kevin Fee

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion for Protective Order was served this 6th day of March, 2015 via CM/ECF upon the following:

*Counsel for National Fire Protection Association, Inc.*

Jonathan H. Blavin (Jonathan.Blavin@mto.com)
Anjan Choudhury (Anjan.Choudhury@mto.com)
Kelly M. Klaus (Kelly.Klaus@mto.com)
Nathan M. Rehn (Thane.Rehn@mto.com)

*Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers*

Jeffrey S. Bucholtz (jbucholtz@kslaw.com)
Kenneth L. Steinthal (ksteinthal@kslaw.com)
Joseph R. Wetzel (jwetzel@kslaw.com)
Blake Cunningham (bcunningham@kslaw.com)

*Counsel for Public.Resource.Org, Inc.*

Andrew Bridges (abridges@fenwick.com)
Kathleen Lu (klu@fenwick.com)
David Halperin (davidhalperindc@gmail.com)
Mitchell L. Stoltz (mitch@eff.org)
Corynne McSherry (corynne@eff.org)
Joseph Gratz (jgratz@durietangri.com)
Mark Lemley (mlemley@durietangri.com)

/s/ J. Kevin Fee
  J. Kevin Fee