# EXHIBIT D

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR TESTING AND
MATERIALS D/B/A ASTM INTERNATIONAL;
NATIONAL FIRE PROTECTION, INC.;
AND AMERICAN SOCIETY OF HEATING,
REFRIGERATING, AND AIR-CONDITIONING
ENGINEERS, INC.

      Plaintiffs,/
      Counter-Defendants,      Case No.:

vs.      1:13-cv-01215-EGS

PUBLIC.RESOURCE.ORG, INC.

      Defendant/
      Counter-Plaintiff
_____/


VIDEOTAPED DEPOSITION OF THE 30 b) 6) OF
PUBLIC.RESOURCE.ORG


DATE:      Thursday, February 26, 2015

TIME:      10:07

LOCATION:      1 Market Street, Spear Tower, Suite
      2000, San Francisco, California

Reported by:      Ashley Soevyn
      Certified Shorthand Reporter
      License Number 12019

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015

278

1  whether that capability is possible?
2  BY MR. REHN:
3      Q   Yes, using these links here.
4          MR. BRIDGES: Objection, may call for
5  speculation, may lack knowledge.
6          THE WITNESS: It's theoretically possible,
7  yes.
8  BY MR. REHN:
9      Q   So -- so -- and that same user, having
10 that -- a copy of that document saved on their
11 desktop, could, say, print a copy of that document
12 if they have a printer attached to their computer?
13         MR. BRIDGES: Objection, hypothetical,
14 lacks foundation, assumes facts not in evidence,
15 vague and ambiguous.
16         THE WITNESS: On -- on some computers,
17 yes.
18 BY MR. REHN:
19     Q   And on those computers from which people
20 can print PDFs that are saved to their desktop, they
21 can print as many copies as they like?
22         MR. BRIDGES: Objection, hypothetical,
23 lacks foundation, vague and ambiguous,
24 argumentative.
25         THE WITNESS: It's -- it's very

279

1  hypothetical. It's if -- if you have a printer on
2  your computer, you can print a piece of paper.
3  BY MR. REHN:
4      Q   And if you have a file that you've
5  accessed and saved to your desktop from the Internet
6  but is now saved on your computer, you can print
7  multiple copies of that file?
8          MR. BRIDGES: Objection, assumes many
9  facts not in evidence, lacks foundation,
10 hypothetical, vague and ambiguous.
11         THE WITNESS: I believe you accessed a URL
12 on the Internet and printed a file, so I would say
13 yes, you certainly were capable of doing that.
14         MR. BRIDGES: Let the record reflect that
15 the client was holding Exhibit 52 up in the air in
16 context with that response.
17 BY MR. REHN:
18     Q   If we could go and look at the information
19 underneath that box in the center, is that
20 information that you entered when you uploaded this
21 document to the Internet Archive website? For
22 example, where it says "description" and then it
23 says "legally binding document," would that be
24 information you entered?
25         MR. BRIDGES: Objection, vague and

280

1  ambiguous. Are you asking specifically about the
2  description?
3          MR. REHN: We'll start with the
4  description.
5          THE WITNESS: Yes.
6  BY MR. REHN:
7      Q   And we'll just go through it. Where it
8  says author, National Fire Protection Association,
9  did you enter that information?
10     A   Yes.
11     Q   When you -- I believe it -- was it the APC
12 call? What was it?
13     A   API, application programming interface.
14     Q   API call. So when you use the API, does
15 it give you an option to enter an author? Is that
16 one of the options that are identified there?
17     A   You can specify any piece of metadata and
18 a value associated with that metadata.
19     Q   And you identified National Fire
20 Protection Association as the author of this
21 document?
22     A   I did.
23     Q   So -- and that was consistent with your
24 understanding that the NFPA is the author of the
25 2011 NEC?

281

1          MR. BRIDGES: Objection, calls for a legal
2  conclusion, lacks -- calls for a legal opinion,
3  assumes facts not in evidence, lacks foundation,
4  vague and ambiguous.
5          THE WITNESS: I don't know the precise
6  meaning of the term "author." They were certainly
7  the source of this document.
8  BY MR. REHN:
9      Q   But you identified them as the author
10 here.
11         MR. BRIDGES: Objection, asked and
12 answered.
13         THE WITNESS: Just as you discussed
14 "downloads" as a term. Yes, I -- I use the word
15 "author."
16 BY MR. REHN:
17     Q   So it was your understanding when you
18 uploaded this document that the NFPA was the author
19 of this document?
20         MR. BRIDGES: Objection, asked and
21 answered and calls for a legal conclusion, lacks
22 foundation, assumes facts not in evidence, vague
23 and ambiguous.
24         THE WITNESS: I put the word "author," a
25 colon and National Fire Protection Association. As

282

1 to the technical meaning of the term "author,"
2 that's -- you folks are lawyers.
3 BY MR. REHN:
4   Q   Sure. But just in the way you understand
5 the term, that's what -- you understood that NFPA
6 was the author?
7       MR. BRIDGES: Objection, misstates
8 testimony, calls for a legal conclusion, lacks
9 foundation, vague and ambiguous.
10      THE WITNESS: I put the word "author,"
11 colon and National Fire Protection Association.
12 BY MR. REHN:
13  Q   And if we could turn to the next page,
14 you'll see a section titled, "Selected Metadata."
15  A   Yes, I see that.
16  Q   And do you see a -- a line that says,
17 "credits"?
18  A   I do.
19  Q   And what does that say?
20  A   It was uploaded by Public.Resource.Org.
21  Q   And do you always put that credits line in
22 documents that you upload to the Internet Archive?
23      MR. BRIDGES: Objection, argumentative.
24      THE WITNESS: I don't know if I always do.
25 BY MR. REHN:

283

1   Q   Do you always try to put that line when
2 you upload a document?
3       MR. BRIDGES: Same objection.
4       THE WITNESS: I -- I certainly did in this
5 case.
6 BY MR. REHN:
7   Q   Is that consistent with your general
8 practice when you upload documents to the Internet
9 Archive website?
10      MR. BRIDGES: Same objection.
11      THE WITNESS: I have often done that.
12 BY MR. REHN:
13  Q   And why do you do that?
14  A   Identifies who did the upload.
15  Q   So if you want to identify who did the
16 upload, this is how you would do it?
17  A   That's one way I would do it.
18  Q   And if you didn't want to identify who did
19 the upload, maybe you wouldn't put that line?
20      MR. BRIDGES: Objection, hypothetical,
21 lacks foundation.
22      THE WITNESS: It's one of the things I try
23 to do.
24 BY MR. REHN:
25  Q   And then on the next line it says,

284

1 "licensed URL," and then there is a URL for a
2 Creative Commons website that says, "public domain."
3 Did you put that there?
4       MR. BRIDGES: Objection, lacks foundation,
5 vague and ambiguous.
6       THE WITNESS: What it actually says is
7 "creativecommons.org/publicdomain/0/1.0."
8 BY MR. REHN:
9   Q   Slash?
10  A   Slash.
11  Q   And did you put that URL there when you
12 uploaded this document?
13  A   I specified in the API what the licensed
14 URL was going to be.
15  Q   Right. Do you always have to specify a
16 licensed URL when you use API, or is that just an
17 option you have?
18      MR. BRIDGES: Objection, lacks foundation,
19 vague and ambiguous --
20      THE WITNESS: If you don't --
21      MR. BRIDGES: -- and compound.
22      THE WITNESS: Repeat the question, please.
23 BY MR. REHN:
24  Q   When you use the API to upload a document
25 to the Internet Archive, do you always have to

285

1 specify a licensed URL?
2       MR. BRIDGES: Objection, vague and
3 ambiguous.
4       THE WITNESS: You can create an object
5 using the API without specifying a licensed URL.
6 BY MR. REHN:
7   Q   Does that have any effect on the
8 accessibility of that document on the Internet
9 Archive website?
10      MR. BRIDGES: Objection, may call for
11 speculation.
12      THE WITNESS: No, it does not.
13 BY MR. REHN:
14  Q   And what -- of these other things we've
15 looked at, do you always have to put credits?
16  A   No.
17  Q   Do you always have to put an author?
18  A   No.
19  Q   So you can select the categories that you
20 want to identify when you upload a document?
21  A   "Categories" is the wrong word. I can
22 specify metadata and their values.
23  Q   So you could decide to identify an author
24 or not, for example?
25      MR. BRIDGES: Objection, argumentative as

286

1  we've discussed, the word "author," vague and
2  ambiguous.
3      THE WITNESS: The person who writes the
4  API call specifies what metadata values will be
5  included.
6  BY MR. REHN:
7    Q  Sure. So let's go back to that licensed
8  URL line. You chose to specify that Creative
9  Commons URL that you read a short while ago?
10   A  Yes, I did.
11   Q  Do you -- why did you choose that URL?
12 What's the significance of that?
13   A  That is a Creative Commons CC0 universal
14 license.
15   Q  And what does that mean?
16   A  It means no rights asserted.
17   Q  Can you -- no rights asserted by whom?
18   A  By the creator of this Internet Archive
19 object, this identifier.
20   Q  So you're representing that you do not
21 assert any rights --
22      MR. BRIDGES: Objection.
23 BY MR. REHN:
24   Q  -- in the -- in the document?
25      MR. BRIDGES: Objection, misstates

287

1  testimony, lacks foundation.
2      THE WITNESS: By putting a CC0 license on
3  that, I am specifying that I assert no rights over
4  this object.
5  BY MR. REHN:
6    Q  Why does it say "public domain"?
7      MR. BRIDGES: Objection, misstates the
8  document.
9      THE WITNESS: It says public domain/0/1.0,
10 and that's the URL that the Creative Commons
11 organization assigned to the CC0 license.
12 BY MR. REHN:
13   Q  Does the CC0 license indicate that the
14 document is in the public domain?
15   A  No, it --
16      MR. BRIDGES: Objection, may call for
17 speculation, may call for a legal opinion, vague
18 and ambiguous.
19      THE WITNESS: No, it does not.
20 BY MR. REHN:
21   Q  So you were not representing that this
22 document is in the public domain?
23      MR. BRIDGES: Objection, lacks foundation,
24 vague and ambiguous.
25      THE WITNESS: I was asserting that the

288

1  creator of this object was not asserting any
2  rights.
3  BY MR. REHN:
4    Q  What do you mean by "creator of this
5  object"?
6    A  The person who exercised the API call that
7  resulted in the creation of this identifier; me in
8  this case.
9    Q  I'm going to mark Exhibit 53.
10      (Exhibit 53 marked for identification.)
11 BY MR. REHN:
12   Q  Do you recognize this document?
13   A  It appears to be an Internet Archive
14 screen dump like your previous exhibit.
15   Q  And this one is for the 2014 National
16 Electrical Code; is that right?
17   A  That is what it appears to be, yes.
18   Q  Now, this is -- looks pretty similar to
19 Exhibit 52. Would you agree with that?
20      MR. BRIDGES: Objection, lacks foundation,
21 vague and ambiguous.
22      THE WITNESS: There are some similarities.
23 BY MR. REHN:
24   Q  Like there's the box in the middle and
25 then there's options for how to view the book on the

289

1  left?
2    A  Yes.
3    Q  And then there's some information below
4  the box in the middle such as author, subject and so
5  forth?
6      MR. BRIDGES: Objection, lacks foundation,
7  vague and ambiguous.
8      THE WITNESS: Yes.
9  BY MR. REHN:
10   Q  And you put that information in this -- in
11 this as well when you used the API interface to
12 upload this document?
13      MR. BRIDGES: Objection, vague and
14 ambiguous.
15      THE WITNESS: Yes.
16 BY MR. REHN:
17   Q  So again, you have -- you -- you chose to
18 identify the author as National Fire Protection
19 Association?
20      MR. BRIDGES: Objection. To the extent
21 you're asking him a question with significance of
22 legal terms, I'll object on the ground that it
23 calls for a legal opinion.
24      THE WITNESS: Once again, I put the
25 identifier author, colon, and National Fire

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

290

1  Protection Association in -- in the HTML.
2  BY MR. REHN:
3     Q   And was -- and that was your understanding
4  at the time you uploaded this document, that the
5  National Fire Protection Association was the author
6  as you would use that word?
7     MR. BRIDGES: Objection, vague and
8  ambiguous, calls -- may call for a legal
9  conclusion, lacks foundation, assumes facts not in
10 evidence.
11    THE WITNESS: Again, I use the label
12 author and a colon and National Fire Protection
13 Association.
14 BY MR. REHN:
15    Q   And you -- you chose the word "author"?
16    A   Yes.
17    Q   And then under subject, there's a few
18 things listed, and the first one -- what is the
19 first one there?
20    MR. BRIDGES: Objection, vague and
21 ambiguous.
22    THE WITNESS: Subject, colon, required in
23 all 50 states, Public Safety Code, legally binding
24 document.
25 BY MR. REHN:

291

1     Q   And did you choose to put those items
2  there under -- under the heading subject?
3     A   Those are the keywords that we
4  previously -- previously discussed and as -- as I
5  told you, yes, I -- I chose those keywords.
6     Q   So the -- the subject line represents the
7  keywords that we looked at in the other document?
8     MR. BRIDGES: Objection, may be misleading
9  and vague and ambiguous.
10    THE WITNESS: Yes.
11 BY MR. REHN:
12    Q   And again, if -- if we compare it to
13 Exhibit 52, if -- if you look at Exhibit 52 you
14 put -- oh, I'm sorry.
15    MR. REHN: This is 53, right?
16    THE REPORTER: Yes.
17 BY MR. REHN:
18    Q   So if you look at 52, what's the subject
19 that you chose to put on Exhibit 52 when you
20 uploaded that document?
21    MR. BRIDGES: Objection, argumentative,
22 vague and ambiguous.
23    THE WITNESS: Public.Resource.Org.
24 BY MR. REHN:
25    Q   And then on Exhibit 53, what are the

292

1  subjects you chose to put?
2     MR. BRIDGES: Same objection.
3     THE WITNESS: It's what I just told you,
4  required in all 50 states, Public Safety Code,
5  legally binding document.
6  BY MR. REHN:
7     Q   Do you recall why -- you -- you said
8  earlier you don't have any recollection of why you
9  chose a different set of subjects here.
10    A   This was done at a different point in
11 time.
12    Q   What was the significance of that?
13    MR. BRIDGES: Objection, argumentative.
14    THE WITNESS: I did things differently on
15 two different days.
16 BY MR. REHN:
17    Q   Why did you do things differently when you
18 uploaded the 2014 National Electrical Code?
19    MR. BRIDGES: Objection, argumentative,
20 lacks foundation.
21    THE WITNESS: I don't know why I did it
22 differently.
23 BY MR. REHN:
24    Q   Do you remember any changes that happened
25 that would have led you to upload standards in a

293

1  different way by the time this one was uploaded?
2     MR. BRIDGES: Objection, vague and
3  ambiguous.
4     THE WITNESS: This was done at a -- at a
5  later point in time and I obviously typed different
6  things into the API column.
7  BY MR. REHN:
8     Q   And you don't remember why you did that?
9     A   No.
10    Q   Do you know why you put required in all 50
11 states?
12    A   Oh. No.
13    Q   Is -- was it your understanding that the
14 2014 National Electrical Code was required in all 50
15 states at the time you uploaded this document?
16    A   No, it was not.
17    Q   Did you have any concern that by putting
18 that, you might mislead somebody who used this
19 website?
20    MR. BRIDGES: Objection, vague and
21 ambiguous.
22    THE WITNESS: I had no concern because I
23 obviously was not paying attention to that
24 particular phrase right there.
25 BY MR. REHN: