# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL; | Case No. 1:13-cv-01215-TSC-DAR |
| | **PUBLIC.RESOURCE.ORG, INC.'S OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER AND REQUEST FOR EXPEDITED BRIEFING SCHEDULE** |
| NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and | |
| AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS, | |
| Plaintiffs/Counter-defendants, | Filed:        August 6, 2013 |
| v. | |
| PUBLIC.RESOURCE.ORG, INC., | |
| Defendant/Counterclaimant. | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .................................................................................................................1

I.    BACKGROUND ........................................................................................................1

II.    THE DISCOVERY AT ISSUE IS RELEVANT TO CENTRAL ISSUES IN
THIS CASE: OWNERSHIP AND FAIR USE..................................................................4

    A.    Alleged Infringers May Challenge a Plaintiff's Standing to Sue on the
Basis of Copyright Ownership..................................................................................5

        1.    A Copyright Owner Must Prove Ownership, and An Accused
Infringer May Test the Claim ......................................................................5

        2.    Plaintiffs Have Not Identified, and Cannot Identify, Relevant
Countervailing Law on Point.......................................................................8

    B.    The Scope and Strength of Plaintiffs' Purported Copyright Is Also
Relevant to Fair Use..............................................................................................11

III.    DOCUMENTS PRODUCED IN DISCOVERY SHOW SERIOUS DEFECTS
IN ALL THREE PLAINTIFFS' CLAIMS OF OWNERSHIP, REBUTTING
THE PRESUMPTION CREATED BY REGISTRATION.................................................11

    A.    Plaintiffs' Documents Rebut Their Assertions of Ownership. ..............................13

    B.    The Standards at Issue are Not "Works Made for Hire," Nor are they
Works of "Joint Authorship." ................................................................................15

IV.    WHETHER A DEFENDANT HAS STANDING TO DEFEND A
PLAINTIFF'S ASSERTION OF COPYRIGHT OWNERSHIP IS A
QUESTION FOR THE DISTRICT JUDGE ON THE MERITS, WHICH
PLAINTIFFS SHOULD HAVE BEEN RAISED BY A MOTION TO
STRIKE DEFENSES..................................................................................................16

V.    PLAINTIFFS' CLAIM OF UNDUE BURDEN IS SPECIOUS ......................................17

CONCLUSION..................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. FBI*,
    186 F.R.D. 71 (D.D.C.1998)....................................................................................4, 17

*Avianca, Inc. v. Corriea*,
    705 F. Supp. 666 (D.D.C. 1989), aff'd ...................................................................17

*Avianca, Inc. v. Harrison*,
    70 F.3d 637 (D.C. Cir. 1995)..................................................................................17

*Avirgan v. Hull*,
    118 F.R.D. 252 (D.D.C.1987)....................................................................................4

*Barefoot Architect, Inc. v. Bunge*,
    632 F.3d 822 (3d Cir. 2011)................................................................................9, 13

*Billy-Bob Teeth, Inc. v. Novelty, Inc.*,
    329 F.3d 586 (7th Cir. 2003) .........................................................................8, 9, 10

*Bucher v. Richardson Hospital Auth.*,
    160 F.R.D. 88 (N.D.Tex.1994) ................................................................................4

*Carol Wilson Fine Arts, Inc. v. Zifen Qian*,
    No. 3:14-CV-00587-AA, 2014 WL 6886295 (D. Or. Dec. 3, 2014)......................15

*Eden Toys v. Florelee Undergarment Co.*,
    697 F.2d 27 (2d Cir. 1982).......................................................................................9

*Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*,
    342 F.3d 149 (2d Cir. 2003).....................................................................................5

*FEC v. GOPAC, Inc.*,
    897 F.Supp. 615 (D.D.C. 1995)...............................................................................4

*Feist Publications, Inc. v. Rural Telephone Services Co.*,
    499 U.S. 340 (1991)...............................................................................................11

*Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of
Haverstraw, Inc.*,
    211 F.R.D. 658 (D.Kan. 2003).................................................................................4

*Hart v. Sampley*,
    1992 WL 336496 (D.D.C. June 24, 1992) ..........................................................8, 9, 10

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Health Ins. Ass'n of Am. v. Novelli*,
   211 F. Supp. 2d 23 (D.D.C. 2002) ........................................................................16

*Imperial Residential Designs, Inc. v. Palms Development Group, Inc.*
   70 F.3d 96 (11th Cir. 1995) ...................................................................................9

*In re Napster, Inc. Copyright Litigation*,
   191 F. Supp. 2d 1087 (N.D. Cal. 2002) ..............................................................5, 6

*Int'l Code Council, Inc. v. Nat'l Fire Prot. Ass'n, Inc.*,
   2006 WL 850879 (N.D. Ill. Mar. 27, 2006)................................................... *passim*

*Isaac v. Shell Oil Co.*,
   83 F.R.D. 428 (E.D. Mich. 1979) .........................................................................17

*Jennings v. Family Management*,
   201 F.R.D. 272 (D.D.C. 2001)..........................................................................4, 17

*Latin Am. Mech. Rights Collection Agency, Inc. v. Marti, Flores,
   Prieto & Wachtel Adver., Inc.*,
   204 F. Supp. 2d 270 (D.P.R. 2002).......................................................................7

*Magnuson v. Video Yesteryear*,
   85 F.3d 1424 (9th Cir. 1996) .................................................................................9

*Minden Pictures, Inc. v. Pearson Educ., Inc.*,
   929 F. Supp. 2d 962 (N.D. Cal. 2013) ................................................................5, 9

*Oskar Systems, LLC v. Club Speed, Inc.*,
   745 F.Supp.2d 1145 (C.D. Cal. 2010) ..............................................................5, 10

*Smith v. Mikki More, LLC*,
   No. 13CV3888 DLC, 2014 WL 5042655 (S.D.N.Y. Oct. 9, 2014).........................15

*State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*,
   250 F.R.D. 203 (E.D. Pa. 2008)...........................................................................18

*Swatch Group Mgmt. Services Ltd. v. Bloomberg L.P.*,
   861 F.Supp.2d 336 (S.D.N.Y. 2012)......................................................................11

*T-Peg, Inc. v. Vermont Timber Works, Inc.*,
   2008 WL 879730 (D.N.H. Mar. 28, 2008) .............................................................5

**TABLE OF AUTHORITIES**
(Continued)

<u>Page(s)</u>

*Veeck v. Southern Building Code Congress International, Inc.*,
　　293 F.3d 791 (5th Cir. 2002) ...................................................................................12

*Viesti Associates, Inc. v. Pearson Educ., Inc.*,
　　2014 WL 1053772 (D. Colo. Mar. 19, 2014) ..........................................................5

*Waltzer v. Conner*,
　　No. 83 CIV. 8806 (SWK), 1985 WL 2522 (S.D.N.Y. Sept. 12, 1985) ...................17

*Yurman Studio, Inc. v. Castaneda*,
　　591 F. Supp. 2d 471 (S.D.N.Y. 2008)........................................................................8

STATUTES

17 U.S.C. § 101 ...................................................................................................................13

17 U.S.C. § 105...............................................................................................................13, 15

17 U.S.C. § 501(b) ........................................................................................................5, 8, 9

RULES

Fed. R. Civ. P. 26(c) ............................................................................................................4

Fed. R. Civ. P. 30(b)(6).................................................................................................17, 18

OTHER AUTHORITIES

3-12 Nimmer on Copyright § 12.02[C] ..........................................................................5, 10

Defendant-Counterclaimant Public.Resource.Org ("Public Resource") opposes Plaintiffs' emergency motion for protective order and request for expedited briefing schedule, which is neither based in good law, nor procedurally proper.

## INTRODUCTION

Plaintiffs' Motion is a thinly-veiled attempt to prevent Defendant-Counterclaimant Public Resource from exposing what appears to be a fundamental flaw in Plaintiffs' case.  One of the essential elements of any copyright claim is proof of ownership, and it appears, based on what Public Resource has learned so far, that Plaintiffs may be hard-pressed to offer that proof, because they did not do the necessary work of securing assignments (or work for hire agreements) from the myriad authors of the various parts of the standards at issue.  Without establishing ownership, they lack standing to bring this case at all.  Relatedly, Public Resource has asserted lack of ownership and fair use as affirmative defenses; information related to the authorship and ownership of the standards at issue is relevant to both defenses.

Given Plaintiffs' need to prove ownership of hundreds of works with diverse authorship, and the extensive document production they have already made, any additional burden of preparing deposition witnesses to testify on this topic is reasonable, proportional, and to be expected. Plaintiffs have been planning this lawsuit for years, and have had ample time to prepare to respond to discovery on this issue—especially given that one of the plaintiffs, NFPA, raised the same defense to a claim of infringement in a recent case.

Contrary to Plaintiffs' assertion, this line of inquiry could hardly be more relevant, and Public Resource is entitled to obtain the discovery necessary to pursue it.

## I.    BACKGROUND

Although Plaintiffs frame their motion as an "emergency motion" requesting expedited briefing schedule, they have known that Public Resource was seeking discovery on these issues

1

for a year and a half, and this particular issue has been the subject of active discovery for the past six months. Plaintiffs have already produced substantial documents concerning purported assignments or licenses from contributors.  It is only now that Public Resource has begun taking Plaintiffs' depositions that they seek to avoid answering questions about these documents and their context—apparently hoping to inhibit a challenge to their prima facie assertion of copyright ownership.

In Public Resource's Answer and Counterclaim, filed in September 2013, Public Resource denied that the Plaintiffs owned the copyrights to the works at issue in this litigation. Dkt. 21, ¶ 58,78, 93.  Public Resource also listed as an affirmative defense that "[l]ack of ownership of the alleged copyrights bars Plaintiffs' copyright claims.  *Id.* at p. 48.  In February 2014, Public Resource served on Plaintiffs requests for executed assignment of rights agreements in its First Request for Production of Documents (Requests nos. 2 and 6).  Declaration of Andrew P. Bridges in Support of Public.Resource.Org's Opposition to Plaintiffs' Emergency Motion for Protective Order and Request for Expedited Briefing Schedule ("Bridges Decl.") ¶¶ 2-4, Exs. 1-3.  Plaintiffs served objections to these requests for production in March, 2014. Bridges Decl. ¶¶ 5-7, Exs. 4-6.  The parties met and conferred on this subject throughout the spring and summer of 2014, but were unable to reach agreement.  Bridges Decl. ¶ 8.  In September, Public Resource filed a motion to compel that addressed its request for production of these documents.  Dkt. 41.

Notably, Plaintiffs' oppositions to that motion [Dkts. 46-48] did not contest Public Resource's right to challenge their ownership of the copyrights at issue.  In fact, ASTM and ASHRAE both explicitly relied on a 2006 copyright infringement case in which NFPA, as a defendant successfully argued that that an alleged infringer has a right to mount a challenge to a

plaintiff's claim of copyright ownership.  Dkt. 47, p. 9 (citing *Int'l Code Council, Inc. v. Nat'l Fire Prot. Ass'n, Inc.*, 2006 WL 850879, at *18 n.33 (N.D. Ill. Mar. 27, 2006)); Dkt. 48, p. 8 (same).  Apparently forgetting its own litigation history, at the December 1 hearing on the motion, *NFPA* briefly suggested that an alleged infringer might not have a right to challenge the validity of copyright assignments.  *See* Bridges Decl. ¶ 9, Ex. 7 (Transcript of Hearing, Dec. 1, 2014, p. 49:04-12).  Plaintiffs did not pursue this argument further, however, and agreed to produce the purported assignment agreements in question [Dkt. 54, pp. 3-4; Dkt. 57, p.2; Dkts. 68 & 69].  Public Resource has finally received those documents and is has invested significant time in reviewing these purported assignment agreements.

To be clear, Plaintiffs have also known that Public Resource would seek deposition testimony regarding these purported assignments.  Public Resource served its first 30(b)(6) notices including topics addressing ownership and assignment on November 14, 2014 (topics 2 and 3).  Bridges Decl. ¶ 10, Ex. 8.  Plaintiffs served their objections in late December (in which ASHRAE and NFPA responded that they would designate a witness to address copyright ownership and assignment), and Public Resource served amended notices on January 30, 2015 (including an additional topic addressing copyright assignment and ownership).  Bridges Decl. ¶¶ 11 & 12, Exs. 9 & 10.

As this background suggests, there is no "emergency" need for protection here. Instead, in this motion, Plaintiffs try to evade important deposition testimony that Public Resource needs in order to complete discovery on a topic that has been an obvious part of this case from the outset, and that has already been the subject of one motion to compel.

## II.   THE DISCOVERY AT ISSUE IS RELEVANT TO CENTRAL ISSUES IN THIS CASE: OWNERSHIP AND FAIR USE

Plaintiffs' principal claim in the instant Motion is that the testimony Public Resource seeks is not relevant to any claim or defense. Nothing could be further from the truth.  The testimony at issue is crucial both to a central factor in any copyright case – ownership – and to Public Resource's fair use defense.

"A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."  *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658 (D.Kan. 2003).  Here, the information sought bears directly on Plaintiffs' claims, and multiple defenses by Public Resource.  Under Rule 26(c) of the Federal Rules of Civil Procedure, the party moving for a protective order must demonstrate "good cause" for limiting the discovery sought by the opponent. Fed.R.Civ.P. 26(c); *Jennings v. Family Management*, 201 F.R.D. 272, 275 (D.D.C. 2001).  The movant cannot rely on speculative or conclusory statements, and is required to articulate specific facts to support its request.  *Jennings v. Family Management*, 201 F.R.D. 272, 275 (D.D.C. 2001) (citing *Alexander v. FBI*,186 F.R.D. 71, 74 (D.D.C.1998)); *FEC v. GOPAC, Inc.*, 897 F.Supp. 615, 617 (D.D.C. 1995) (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C.1987)).  "In fact, '[t]he moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order.'" *Jennings v. Family Management*, 201 F.R.D. 272, 275 (D.D.C. 2001) (quoting *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998)) (also citing *Bucher v. Richardson Hospital Auth.*, 160 F.R.D. 88, 92 (N.D.Tex.1994) (stating that protective orders prohibiting depositions are "rarely granted" and then only if the movant shows a "particular and compelling need" for such an order))."

A.    **Alleged Infringers May Challenge a Plaintiff's Standing to Sue on the Basis of Copyright Ownership**

1.    **A Copyright Owner Must Prove Ownership, and An Accused Infringer May Test the Claim**

Only the copyright owner, or the owner of *exclusive* rights under the copyright, as of the time that the alleged infringement occurred, has standing to bring suit for copyright infringement.  *Oskar Systems, LLC v. Club Speed, Inc.*, 745 F.Supp.2d 1145, 1160 (C.D. Cal. 2010); 3-12 Nimmer on Copyright § 12.02[C].  "In order to maintain an action for copyright infringement, plaintiffs must demonstrate that they own the copyrights for the works in question."  *In re Napster, Inc. Copyright Litigation*, 191 F. Supp. 2d 1087, 1095 (N.D. Cal. 2002).  Although a copyright registration certificate conveys a prima facie presumption of the validity of that copyright and the facts in the certificate, this presumption is rebuttable – it is not conclusive proof.  *Id* at 1096.  This must be so, because "the Copyright Office's examination of copyright applications is 'necessarily limited,' . . . and should be 'distinguished from the Patent and Trademark Office's process for issuance of patents.' . . . '[T]he Office does not make factual determinations with respect to publication or any other act done outside of the Office." *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 166 (2d Cir. 2003) (quoting a letter to the court from Marybeth Peters, U.S. Register of Copyrights). Not surprisingly, courts have consistently held that a copyright defendant has the right to require the Plaintiff to meet that burden.  *See*, *e.g.*, *Viesti Associates, Inc. v. Pearson Educ., Inc.*, 2014 WL 1053772, at *7 (D. Colo. Mar. 19, 2014) (rejecting argument that defendant cannot challenge the validity of copyright assignments between plaintiffs and copyright owner); *Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 970 (N.D. Cal. 2013) (cases holding that a non-party to a copyright assignment cannot challenge the validity of an assignment pursuant to Section 204(a) are not applicable to standing challenges based on Section 501(b)); *T-Peg, Inc. v. Vermont*

*Timber Works, Inc.*, 2008 WL 879730, at *3-5 (D.N.H. Mar. 28, 2008) (ordering further briefing on the validity of the purported copyright assignment despite plaintiff's express argument that defendants lacked standing to challenge the validity of the assignment); *Int'l Code Council, Inc. v. Nat'l Fire Prot. Ass'n, Inc.*, 2006 WL 850879, at *18 n.33 (N.D. Ill. Mar. 27, 2006) (while "[t]here may be some doubt, as a policy matter, about the wisdom of permitting a non-author to challenge the copyright holder's right to enforce its copyright . . . the case law does appear to recognize an alleged infringer's right to mount such a challenge."); *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1100-01 (N.D. Cal. 2002).

Indeed, one of the Plaintiffs is intimately familiar with this type of challenge. Faced with a copyright lawsuit over its copying of a standard of the International Code Council ("ICC"), NFPA moved for summary judgment on the ICC's lack of ownership, based on concerns that closely mirror those at issue in this case. *See International Code Council, Inc. v. National Fire Protection Association*, No. 02 C 5610, 2006 WL 850879 (N.D. Ill. March 27, 2006).

ICC had sued NFPA for copying segments of the ICC model building code, and publishing them in the NFPA model building code.  NFPA moved for summary judgment in part on the grounds that ICC did not own the copyrights in the segments of their code that they were suing over—the ICC members did.  The ICC developed its model building code in a manner that appears to be very similar to the way the NFPA develops standards, as individuals from industry and government draft the language for the standards.  Like all three plaintiffs in this case, ICC had a practice of asking these individual authors to execute non-exclusive licenses to their contributions, rather than copyright assignments.  The court found that "[w]hen members of the public and industry groups submitted proposed language, they did not assign any copyright in the

language to ICC; instead, by using the comment submission form, they granted ICC a nonexclusive license to use the proposed language in its model building code." *Id.* at *6.

ICC claimed that it had standing based on certificates of registration for the copyrights at issue, but the court ruled that "[a] certificate of registration constitutes only *prima facie* evidence of the validity of copyright … the presumption may be rebutted.  And where, as in this case, it has been challenged, 'the burden of proof in the sense of the risk of nonpersuasion . . . remains . . . upon the party on whom it was originally cast.'" *Id.* at *17.  In a footnote, the court addressed the question of whether NFPA had standing to challenge the ICC's ownership of copyrights for the provisions at issue, and concluded that it did: "the court notes that the individuals and groups identified by NFPA as the 'real' authors of ICC's code have not themselves challenged ICC's title to it.  There may be some doubt, as a policy matter, about the wisdom of permitting a non-author to challenge a copyright holder's right to enforce its copyright.  ICC has not challenged NFPA's standing to voice this challenge, however, and the court need not address it at length beyond noting that the case law does appear to recognize an alleged infringer's right to mount such a challenge." *Id.* at *18, fn. 33.

NFPA's challenge was partially successful.  The court concluded that ICC "does not own any language it adopted without modification from public commentary into the [ICC model building code]." *Id.* at *23.  However, the court also concluded that there were sufficient factual disputes to preclude summary judgment.  *Id.*

Now that the shoe is on the other foot, NFPA wants to claim that it need not meet the same burden it demanded ICC meet. But whether the NFPA is a Plaintiff or a Defendant does not change the legal principle.  Plaintiffs' ownership (or lack thereof) affects Plaintiffs' standing to bring suit, and thus implicates a fundamental jurisdictional question.  *See Latin Am. Mech. Rights*

*Collection Agency, Inc. v. Marti, Flores, Prieto & Wachtel Adver., Inc.*, 204 F. Supp. 2d 270, 272 (D.P.R. 2002) (dismissing infringement claim with prejudice for lack of standing where evidence of plaintiff's chain of title to the copyright was "murky and unclear at best").  Public Resource has the right to investigate that question.

A defendant is entitled to discover and raise material facts demonstrating that, inter alia, the work at issue is an unprotectable combination of expressive elements created by third parties. *See Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 495 (S.D.N.Y. 2008) (denying summary judgment to copyright claimant on the issue of originality of a jewelry design, notwithstanding a copyright registration on the design).

### 2.    Plaintiffs Have Not Identified, and Cannot Identify, Relevant Countervailing Law on Point.

Seeking to avoid the overwhelming weight of case law on proof of ownership, Plaintiffs turn instead on several cases that address a different issue: whether, where the validity of a written memorandum of assignment is the sole issue, a defendant that was not a party to the memorandum lacks standing to challenge it.  These cases are inapplicable here for several reasons.

First, the cases that Plaintiffs cite all implicate technical challenges to the validity of assignment pursuant to Section 204(a), not challenges to standing to sue under Section 501(b) such as Public Resource addresses.  *See*, *e.g.*, *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592 (7th Cir. 2003) (defendant did not have standing "under § 204"); *Hart v. Sampley*, 1992 WL 336496, at *1 (D.D.C. June 24, 1992) (defendants did not have standing to challenge the validity of a written agreement that transferred ownership under Section 204). The relevant issue in this case is not whether the formalities of a written memorialization under Section 204 were complied with, but whether assignment actually occurred or was intended in the first place.  A

defendant is entitled to challenge the plaintiff's standing on that basis. *See Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 970 (N.D. Cal. 2013) (where a defendant challenges plaintiff's standing based on lack of ownership under 17 U.S.C. § 501(b), defendant's standing with respect to the writing requirement of § 204 is irrelevant).

Second, in each of these cases, the identified author *affirmatively agreed* that he or she intended to assign the copyright, regardless of whether the assignment complied with the procedural requirements of Section 204(a). *See, e.g.*, *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592 (7th Cir. 2003) (noting that the alleged author "executed a nunc pro tunc document in 2001 memorializing that as of May 31, 1996, he assigned his copyrights to Billy-Bob, Inc."); *Hart v. Sampley*, 1992 WL 336496, at *1 (D.D.C. June 24, 1992) (noting the existence of a written agreement to jointly own the copyright to the statute at issue); *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011) (noting that a memorandum of transfer was executed during the litigation to memorialize an oral transfer of copyright that occurred nine years prior); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428-9 (9th Cir. 1996) (holding that an oral transfer of copyright later secured by writing was "particularly compelling" where the transfer was between the same individual, from one of his businesses to another); *Imperial Residential Designs, Inc. v. Palms Development Group, Inc.* 70 F.3d 96, 97 (11th Cir. 1995) (author entered into written agreement memorializing prior oral transfer of copyright, and testified that he intended to transfer copyright previously by oral agreement); *Eden Toys v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982) (noting in particular that "the copyright holder appears to have no dispute with its [exclusive] licensee on this matter").

Third, these cases concerned works with a single author, in which the *only* issue raised was the validity of the assignment, not the question of whether there had ever been an

assignment in the first place. *See*, *e.g.*, *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592 (7th Cir. 2003) (concerning a single author, with no indication that existence of prior oral agreement for copyright transfer was questioned); *Hart v. Sampley*, 1992 WL 336496, at *1 (D.D.C. June 24, 1992) (same). In essence, this line of cases exists to protect individuals who meant to transfer copyright through oral agreement, and only subsequently executed the proper written agreement after the copyright registration was issued and the litigation had commenced. This is because a copyright owner ordinarily cannot sue for infringements that occurred before he or she was assigned the copyright at issue [*see, e.g., Oskar Systems, LLC v. Club Speed, Inc.,* 745 F.Supp.2d 1145, 1160 (C.D. Cal. 2010); 3-12 Nimmer on Copyright § 12.02[C]], and so if the assignee received only an oral assignment prior to when infringement began, and subsequently received a formal written assignment after litigation began, this error in formalities would terminate the litigation—unless the defendant is prevented from challenging this technical error.

In this case, by contrast, the ownership issue is not a matter of technical error. Indeed, it appears that for many, perhaps most, of the copyrightable contributions at issue in this case, there have been no copyright assignments at all. Though Plaintiffs convened the standards development process that led to the standards at issue, the standards are the original work of their authors, who include hundreds of government and private sector employees. For most or all contributions to the standards at issue there was no transfer of any copyright interest because (i) the purported "assignment" is actually a non-exclusive license, not an assignment at all, (ii) the assignment is missing and likely non-existent, (iii) the copyright could not be assigned because the author was a government employee or an employee without the authority to assign, or (iv) the assignment is not signed by the purported assignor. *See* Section III, *supra*.

10

**B.      The Scope and Strength of Plaintiffs' Purported Copyright Is Also Relevant to Fair Use**

Even if Plaintiffs are found to hold copyright in some portions of the standards at issue in this case, and those copyrights are enforceable, Public Resource's use is a fair use.  The tenuous, evanescent nature of Plaintiffs' purported copyright interest is central to the fair use analysis, and the lack of ownership over most or all of the contents of the standards is relevant to show that.

Plaintiffs' lack of ownership over significant portions of the standards limits the number of copyrightable elements in each standard.  Even if Plaintiffs can claim copyright over portions of a document, they cannot claim copyright over the entire document.  If copyrightable elements are minimal, the copyright is "thin."  *Feist Publications, Inc. v. Rural Telephone Services Co.*, 499 U.S. 340, 349 (1991).  A "thin" copyright in certain elements of selection and organization weighs in favor of a fair use finding, particularly under the second fair use factor: the nature of the copyrighted work.  *See Swatch Group Mgmt. Services Ltd. v. Bloomberg L.P.*, 861 F.Supp.2d 336, 341 (S.D.N.Y. 2012).  This is especially true for works such as the standards at issue here which, regardless of authorship, are riddled with uncopyrightable elements.  Thus, even if Plaintiffs could prove they have clear rights in portions of the standards at issue in this litigation, Public Resource is still entitled to discover just how much of these standards Plaintiffs actually own.

**III.      DOCUMENTS PRODUCED IN DISCOVERY SHOW SERIOUS DEFECTS IN ALL THREE PLAINTIFFS' CLAIMS OF OWNERSHIP, REBUTTING THE PRESUMPTION CREATED BY REGISTRATION.**

It is clear why Plaintiffs seek to avoid answering questions in deposition about their purported ownership of the standards at issue: their claims of ownership have serious factual

defects, and they know it.[1]  Unlike a typical copyright case, the standards at issue in this case contain a pastiche of contributions from hundreds of people and entities, including government employees and employees of other private entities.  The legal status of these contributions bears heavily on Plaintiffs' assertions of ownership.

Contrary to Plaintiffs' assertion, Plaintiffs have not established that they "created" each and every standard at issue in this litigation.  Motion for Protective Order at 4 (Dkt. No. 86).  Nothing in the Copyright Act gives a standards development organization privileged status as an "organizational author" that would supersede the rights of those who actually penned the text (or their employers).  Plaintiffs cite dicta in *Veeck v. Southern Building Code Congress International, Inc.* to support their claim that they are "organizational authors" of the standards at issue in this litigation, but there is no indication that this issue was contested in *Veeck*, nor were the model codes in *Veeck* necessarily produced in the same fashion as the standards at issue in this litigation.  A more appropriate citation would be to *Int'l Code Council, Inc. v. Nat'l Fire Prot. Ass'n, Inc.*, where the court held that ICC's building codes, which it said were created in a manner analogous to NFPA's building codes, had problems with the assignment of copyright.  2006 WL 850879, at *18 n.33 (N.D. Ill. Mar. 27, 2006).

Plaintiffs' claims that Public Resource has somehow acknowledged their "authorship" of the standards at issue simply because Public Resource listed the names of the organizations in metadata fields associated with the term "author" [Motion at p. 3] is silly and without legal effect.  As Public Resource President Carl Malamud stated in deposition, Public Resource listed

---

[1] While Plaintiffs' claims of copyright suffer from even more fundamental defects, *see Veeck v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002), only their claims of ownership, and specifically Public Resource's right to challenge those claims through discovery, are at issue in this motion.

the names of the Plaintiffs because the Plaintiffs were the source of the standards. Dkt. 86, Ex. D, p. 281:06-07. That was not a legal determination of "authorship" under copyright law.

To the extent Plaintiffs' assertions of ownership are based on their *own* status as authors, they must prove original authorship by their employees. To the extent they are based on assignment, they must prove that an assignment actually occurred. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 830 (3d Cir. 2011) ("For a writing to 'validate' a past transfer, the past transfer must have actually occurred."). And where contributions were made by federal government employees as part of their duties, there is no copyright to assert. 17 U.S.C. § 105. The documents already produced illustrate serious defects in Plaintiffs' claims of ownership under each of these legal theories, and Public Resource is entitled to discovery to rebut the presumption afforded by registration.

### A. Plaintiffs' Documents Rebut Their Assertions of Ownership.

Plaintiffs have relied, for different lengths of time, on language in their purported "assignments" that did not convey copyright from the actual authors of the standards. For instance, many of Plaintiffs' purported copyright "assignments" are actually nonexclusive copyright licenses, and therefore do not convey standing to sue Public Resource. The Copyright Act defines "a transfer of copyright ownership" as "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright . . . but not including a nonexclusive license." 17 U.S.C. § 101. Nonexclusive licenses are not transfers of copyright, and they do not convey standing to sue. Yet Plaintiffs include non-exclusive license language in many of their purported copyright "assignments." *See, e.g.*, Bridges Decl. ¶ 13, Ex. 11. Because these copyright "assignments" actually request nonexclusive rights, they are not assignments at all, but are actually nonexclusive licenses.

Documents produced in this litigation show that the Plaintiffs are aware that their assignment forms are problematic for them, and for many other standard development organizations.  Bridges Decl. ¶ 14, Ex. 12.  Indeed, NFPA used this very same defense in 2006 when it was sued by ICC.  There, the court in that case looked at nearly identical language that the ICC relied upon in its purported copyright "assignments," and held that they were not assignments but were rather nonexclusive licenses.  "When members of the public and industry groups submitted proposed language, they did not assign any copyright in the language to ICC; instead, by using the copyright submission form, they granted ICC a nonexclusive license to use the proposed language in its model building code." *International Code Council, Inc. v. National Fire Protection Association*, No. 02 C 5610, 2006 WL 850879 at *6 (N.D. Ill. March 27, 2006).

Plaintiffs claim that "it cannot be disputed . . . that participation in the standards development process of each Plaintiff requires every participant to agree to assign any copyrights in the standards to the relevant Plaintiff."  Motion at pp. 10-11.  To the contrary, in reviewing the documents produced by Plaintiffs, Public Resource has discovered that the mechanism that Plaintiffs use to ensure that every member assents to an assignment (or nonexclusive license, as the case may be) is faulty.  Plaintiffs' membership application and renewal process is designed to force members to agree to Plaintiffs' terms, but the process is not water-tight, and members get around it in various ways, such as by sending in requests for membership or renewal through informal channels.  Bridges Decl. ¶ 15, Ex. 13.  In many other cases, members have simply torn off the sections of the membership application that include assignment or license language, and they have sent in only their application information. Bridges Decl. ¶ 16, Ex. 14.

Moreover, many of Plaintiffs copyright assignments are invalid because they sought consent from individuals who did not personally own the copyright in their contributions.  This

included federal government employees acting in their official capacities, because there is no copyright in federal government works.  17 U.S.C. § 105; *See, e.g.*, Bridges Decl. ¶ 17, Ex. 15. It also includes assignments from employees of third parties who contributed to the works-at-issue as part of their employment, in which case the employer therefore owns the copyright. *See Carol Wilson Fine Arts, Inc. v. Zifen Qian*, No. 3:14-CV-00587-AA, 2014 WL 6886295, at *4 (D. Or. Dec. 3, 2014) (copyright held by employer and not employee under work for hire exception where employee's conduct fell within the scope of employment because it is the kind of work employee was hired to perform, occurred substantially within the authorized time and space limits and was actuated at least in part by purpose to serve employer).  *See, e.g.*, Bridges Decl. ¶ 18, Ex. 16.

**B.     The Standards at Issue are Not "Works Made for Hire," Nor are they Works of "Joint Authorship."**

NFPA's copyright registrations invoke copyright in the works as "works made for hire," but the works are manifestly not works made for hire, and NFPA has produced no work made for hire agreements.  Plaintiffs have alternatively floated the concept of "joint authorship" as their fallback ownership justification [Motion at p. 11, fn. 4], but their copyright registrations failed to identify any joint authors, exposing this last-ditch effort to be a mere pretext.  Plaintiffs' attempt to characterize their works as "joint authorship" is a desperate attempt to salvage their copyright claim, as Plaintiffs acknowledge that it would require the revenues from the sale of the standards to be split evenly among all the supposed joint authors.  It is rather dubious that Plaintiffs have shared any of these revenues with the thousands of contributors to these standards.  Moreover, classification as "joint authorship" is not a low bar—courts routinely require proof that every author involved intended the work to be a work of joint authorship, which would be a difficult task for Plaintiffs to accomplish considering the number of potential joint authors.  *Smith v.*

*Mikki More, LLC*, No. 13CV3888 DLC, 2014 WL 5042655, at *9 (S.D.N.Y. Oct. 9, 2014) (A

putative co-author must show that she (1) "made independently copyrightable contributions to

the work" and (2) that all participants "fully intended to be co-authors."); *Health Ins. Ass'n of*

*Am. v. Novelli*, 211 F. Supp. 2d 23, 29 (D.D.C. 2002) (purported joint author failed to establish

co-authors' intent that work at issue was a "joint work").  Although Plaintiffs claim that

"Plaintiffs would only need to obtain a *nunc pro tunc* assignment from a single author of each

work-at-issue because, to the extent any assignment is necessary, the works-at-issue would be

joint works [and] [e]ach author's rights in a joint work enable her to prosecute an infringement

action without joining other co-owners" [Motion at p. 11, fn. 4], this is wishful thinking on

Plaintiffs' part.  Plaintiffs would need to prove that every author intended their contributions to

be part of a work of joint authorship.  Otherwise, a single  *nunc pro tunc* assignment would give

Plaintiffs only so much of the work-at-issue as the author granting the assignment had created,

which may be a contribution so small that it is de minimis.

**IV.**     **WHETHER A DEFENDANT HAS STANDING TO DEFEND A PLAINTIFF'S ASSERTION OF COPYRIGHT OWNERSHIP IS A QUESTION FOR THE DISTRICT JUDGE ON THE MERITS, WHICH PLAINTIFFS SHOULD HAVE BEEN RAISED BY A MOTION TO STRIKE DEFENSES.**

      Whether a defendant has standing to defend a plaintiff's assertion of copyright ownership

is a question for the district judge on the merits, which plaintiffs should have raised by a motion

to strike, and it is not a question for the magistrate judge to determine by limitations on the scope

of discovery.  For a magistrate judge to limit discovery on this topic would be to foreclose the

district judge's authority to address the substantive standing question.

      This motion should be seen for what it is: a motion for reconsideration of the magistrate

judge's earlier rulings allowing defendant discovery into facts relating to ownership and

assignments, and the plaintiffs have failed to comply with the rules for seeking reconsideration.

## V.     **PLAINTIFFS' CLAIM OF UNDUE BURDEN IS SPECIOUS**

As the plaintiffs bear the burden of persuasion regarding their assertions of ownership over the hundreds of standards at issue in this case, and the documents they have already produced reveal serious defects in those assertions, testifying at deposition about the actual authorship of the standards and Plaintiffs' chain of title does not present an undue burden. Relevance, for purposes of discovery, is defined broadly. *Avianca, Inc. v. Corriea*, 705 F. Supp. 666, 676 (D.D.C. 1989), aff'd sub nom. *Avianca, Inc. v. Harrison*, 70 F.3d 637 (D.C. Cir. 1995). Limiting the scope of discovery requires good cause, not a mere showing of "inconvenience and expense." *Waltzer v. Conner*, No. 83 CIV. 8806 (SWK), 1985 WL 2522, at *1 (S.D.N.Y. Sept. 12, 1985); *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 431 (E.D. Mich. 1979). Attempts to limit the scope of a deposition requires "'extraordinary circumstances' based on 'specific facts' that would justify such an order." *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001) (quoting *Alexander v. FBI,* 186 F.R.D. 71, 74 (D.D.C.1998)).

In this case, Plaintiffs have already produced documents concerning copyright assignments and other issues bearing on their claims of ownership. In producing these documents, Plaintiffs and their counsel have presumably reviewed them for privilege and relevancy, and are familiar with their scope and general content. Plaintiffs have also produced committee proceedings and other documents addressing the identities of participants and the nature of their contributions. Finally, Plaintiffs have also designated witnesses for Rule 30(b)(6) depositions and prepared them to testify on several topics. Their assertion, at this late date, that preparing designees to answer questions at deposition about an additional topic reflected in numerous documents they have already reviewed and produced is not credible, and amounts to a mere plea of "inconvenience and expense" rather than the particularized showing required. *Avianca, Inc.*, 705 F. Supp. at 676.

In a litigation involving hundreds of documents, a Rule 30(b)(6) deponent is not required to memorize the contents of each document; they need only be reasonably familiar with the topic and be able to "point to documents . . . with some particularity." *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 218 (E.D. Pa. 2008). Given the scope of Plaintiffs' infringement allegations, the diverse and varied contributions made to the standards at issue, and the defects in title that are apparent from Plaintiffs' documents, the additional burden of preparing one or more witnesses to speak on this topic is entirely reasonable.

## <u>CONCLUSION</u>

For the reasons above, Public Resource respectfully requests that the Court deny the Plaintiffs' emergency motion for protective order.

18

Dated:  March 23, 2015

Respectfully submitted,

*/s/ Andrew P. Bridges*
Andrew P. Bridges (admitted)
abridges@fenwick.com
Kathleen Lu (pro hac vice)
klu@fenwick.com
Matthew B. Becker (pro hac vice)
mbecker@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW
Washington, DC 20005
Telephone: (202) 905-3434

Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
Corynne McSherry (pro hac vice)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile:  (415) 436-9993

*Attorneys for Defendant-Counterclaimant*
*Public.Resource.Org, Inc.*