UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL; <br><br> NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and <br><br> AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS, <br><br>     Plaintiffs/Counter-defendants, <br><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br>     Defendant/Counterclaimant. | Case No. 1:13-cv-01215-TSC-DAR <br><br> **PUBLIC.RESOURCE.ORG, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO SET EXPERT SCHEDULE** <br><br> Filed:   August 6, 2013 |

Defendant-Counterclaimant Public.Resource.Org ("Public Resource") opposes Plaintiffs' motion to re-set the expert schedule. Both Plaintiffs and Defendant have previously recognized that discovery closed in this case on January 30, 2015, and have otherwise followed the case schedule as set by this Court on November 25, 2014. Plaintiffs' failure to abide by the case schedule or seek amendment in a timely fashion is unexplained, and their motion to re-set the expert deadlines was filed over two months after their fact discovery in this case had completed. Plaintiffs' motion should be denied as untimely and unjustified.

## **INTRODUCTION AND BACKGROUND**

According to the case schedule set by this Court on November 25, 2014, fact discovery in this case closed on January 30, 2015, opening expert disclosures were due on March 2nd, and opposition expert disclosures were due on April 13th. Dkt. No. 58. Although Public Resource had sought an extension to the case schedule in January (Dkt. No. 71), Plaintiffs opposed Public Resource's motion—including the extension of dates for expert discovery (Dkt. No. 76). Subsequently the Court denied Public Resource's motion to extend the case schedule, although the Court allowed Public Resource to take three depositions that it had noticed in November 2014. Mar. 23, 2015 Minute Order.

This outcome was entirely consistent with Plaintiffs' opposition motion: the case schedule was not changed, fact discovery closed on January 30th, and Public Resource was allowed to take only those depositions that it had noticed at least two weeks prior to the close of fact discovery. *See* Dkt. No. 76 at 14 (Plaintiffs' opposition motion, stating that Plaintiffs opposed extending the case schedule as Public Resource proposed, but "Plaintiffs have agreed not to object to Defendant taking the depositions it noticed timely in advance of the close of fact discovery"). Yet Plaintiffs now express surprise that their success in opposing Public Resource's

motion to extend the case schedule has had the predictable result of retaining the case schedule as set by the Court on November 25, 2014.

Plaintiffs completed their fact discovery on February 27th with the deposition of Carl Malamud, prior to the March 2 deadline for opening expert disclosures.  *See* Dkt. No. 19 (Mar. 19, 2015 Hr'g Tr.) at 35:14-36:22 (counsel for each plaintiff responding to the Court that after taking the deposition of Carl Malamud, they have completed their fact discovery).  If Plaintiffs needed an extension of the case schedule on account of their delay in taking Mr. Malamud's deposition, they should have anticipated this or at the very least asked for an extension on March 2nd, the date that opening expert disclosures were due.[1]  In fact, Plaintiffs joined Public Resource in filing a joint status report on that very same day, March 2nd, demonstrating that Plaintiffs recognized the November 25, 2015 scheduling order was still operative at that time.  Similarly, if Plaintiffs had a concern about the opening expert disclosure deadline, it is not clear why Plaintiffs did not raise it with Public Resource when they were working together to prepare the joint status report.[2]

Plaintiffs' failure to prepare an expert report or even raise concerns with the expert schedule is especially surprising in light of their opposition to Public Resource's motion to extend the case schedule.  In their opposition motion, Plaintiffs proposed that in the alternative to denying Public Resource's motion, the Court should set opening expert disclosures for April

---

[1] In their motion, Plaintiffs continue to blame Public Resource for Plaintiffs' delay in completing their depositions.  Pl. Mot. at 3.  As Public Resource stated in its Reply in Support of its Motion to Extend the Case Schedule, Public Resource had made Mr. Malamud available for deposition on multiple days, but Plaintiffs refused to take his deposition on the dates provided.  Dkt. No. 82 at 10-12.  Regardless, the timing of Mr. Malamud's deposition does not explain why Plaintiffs failed to raise a concern about the expert schedule until months later.

[2] Plaintiffs argue that Public Resource had never told Plaintiffs prior to April 13 that the expert disclosure deadlines set by the court were still in effect.  *See* Pl. Mot. at 2.  Each party is independently responsible for following the case calendar, and it is not incumbent on Public Resource to keep Plaintiffs updated on the deadlines set by this Court.

10th (rather than the later date Public Resource had proposed). Presumably when Plaintiffs' counsel walked into the courtroom on March 19th, they knew there was a possibility that the Court would grant the alternative schedule that Plaintiffs had proposed, and they should therefore have been preparing opening expert disclosures in anticipation of that approaching date. Instead, Plaintiffs waited until April 10th to first raise a concern with Public Resource regarding the expert schedule, and it is not clear at this time whether Plaintiffs have done *any work* to have an expert report prepared.

Although Plaintiffs now argue that they believed fact discovery had not closed until April 2nd (Pl. Mot. at 2), their opposition to Public Resource's motion to extend the case schedule shows that Plaintiffs had always envisioned the close of fact discovery to be January 30th (but allowing the parties time to complete the depositions that they had timely noticed). In their opposition motion, Plaintiffs included a chart comparing the current case schedule with Public Resource's proposed dates and Plaintiffs' alternative dates, copied below as Figure 1. Dkt. No. 76 at 11. Plaintiffs listed "1/30/2015" as the "[c]lose of fact discovery" both in the existing schedule, as well as in Plaintiffs' alternative schedule. *Id.* To accommodate for the depositions that both Plaintiffs and Defendant still needed to take at the time of filing, Plaintiffs proposed schedule included an additional row for "[l]ast date on which depositions may be taken" and included that date "3/13/2015." *Id.* Likewise, Public Resource has agreed that absent intervention from the Court, fact discovery closed on January 30. *See* Dkt. No. 19 (Mar. 19, 2015 Hr'g Tr.) at 28:06-13.

|  | Current Date | Defendant's Proposal | Plaintiffs' Proposal |
|---|---|---|---|
| Close of fact discovery | 1/30/2015 | 4/15/2015 | 1/30/2015 |
| Last date on which depositions may be taken | -- | -- | 3/13/2015 |

**Figure 1: Proposed Schedule from Plaintiffs' Opposition Motion**

3

Plaintiffs have not explained how the taking of three depositions by Public Resource in the last week of March, after the formal close of fact discovery, affects the date on which Plaintiffs are able to produce an opening expert report "on issues for which disclosing party bears the burned of proof." Pl. Mot. at 5. This is probably because the completion of depositions by Public Resource has no bearing on Plaintiffs' ability to produce an expert report addressing issues on which *Plaintiffs* have the burden of proof. Plaintiffs completed their fact discovery in February. They should have either served an opening expert report on the date that it was due according to the case schedule, or promptly sought an extension to the case schedule if they had good cause for exceeding that deadline. Instead, Plaintiffs waited months before even raising the issue.

I. **PLAINTIFFS HAVE SHOWN NEITHER GOOD CAUSE FOR MODIFYING THE SCHEDULING ORDER, NOR EXCUSABLE NEGLECT FOR THEIR FAILURE TO ABIDE BY THE CASE SCHEDULE**

The scheduling order entered by this Court as Docket No. 58 is binding on all parties to the case until modified by the Court. "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. Indeed, disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.,* No. 05–2115(CKK), 2007 WL 1589495, at *5 (D.D.C. June 1, 2007) *aff'd sub nom. Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.,* 630 F.3d 217 (D.C. Cir.2011) (internal quotation and citation omitted). "The Federal Rules of Civil Procedure make plain that a scheduling order 'may be modified only for good cause and with the judge's consent.'" *Saunders v. District of Columbia*, 279 F.R.D. 35, 37 (D.D.C. 2012) (citing FED. R. CIV. P. 16(b)(4)). When a party seeks to modify deadlines in a scheduling order that have *already elapsed*, the party must not only show "good cause" why the deadlines should be

4

modified (as with Federal Rule of Civil Procedure 16(b)(4)), but must additionally show "excusable neglect" for failure to act within the time specified. *Id.* (citing FED. R. CIV. P. 6(b)).

Plaintiffs have not shown good cause as to why the schedule should be modified, nor have Plaintiffs demonstrated excusable neglect explaining why they have not only failed to adhere to the case schedule, but also have not raised a concern with the elapsed deadlines for opening expert disclosures until two months after the first deadline (and did not file their motion until over a month after the Court denied Public Resource's motion to extend the case schedule).

      A.      **Plaintiffs Have not Shown "Good Cause" for Their Failure to Abide by the Existing Case Schedule, Nor Why Such a Lengthy Extension to the Case Schedule is Necessary**

The "good cause" standard is primarily concerned with the diligence of the party seeking to amend the case schedule. *St. Paul Mercury Ins.,* 2007 WL 1589495, at *6 (citing *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992)). Under the "good cause" standard, Plaintiffs have the burden of proving that they could not reasonably meet the existing deadlines despite a diligent attempt to do so. *Saunders,* 279 F.R.D. at 38 (citing *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.,* 630 F.3d 226 (D.C. Cir. 2011)). "[T]o demonstrate diligence under Rule 16's 'good cause' standard, the movant may be required to show the following: ... that [the movant's] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding the [movant's] diligent efforts to comply, because of matters which *could not have been reasonably foreseen or anticipated* at the time of the Rule 16 scheduling conference, ... and [ ] that [the movant] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the movant] could not comply with that order ...." *St. Paul Mercury Ins*, 2007 WL 1589495, at *7 (quoting *DAG Enters., Inc. v. Exxon Mobil Corp.,* 226 F.R.D. 95, 106 (D.D.C. 2005)) (emphasis in original).

5

Plaintiffs were not diligent in raising the need to amend the scheduling order "once it became apparent that [Plaintiffs] could not comply with that order."  *Id.*  Plaintiffs had an opportunity to raise this concern with the Court in their opposition to Public Resource's motion to extend the case schedule, and they could have raised it when they went before the Court on March 19th.  Instead they waited another month before filing the instant motion.

Plaintiffs do not mention the good cause standard in their brief,[3] nor do they explain why they were unable to serve a report by the opening expert deadline or raise this issue with the Court at a more appropriate time.  When meeting and conferring with counsel for Public Resource on April 17th, Plaintiffs stated that they envisioned serving a single opening expert report, but would not state what that report was intended to address.  Nor do Plaintiffs state in their motion what opening report they envisioned serving.  Without an explanation of the subject of any report that Plaintiffs intend to serve, it is impossible for the Court to assess whether Plaintiffs actually needed any information from Public Resource in order to produce this report.  For instance, if their opening expert report was to address the alleged harm to Plaintiffs attributed to Public Resource's actions, such a report would presumably rely on records already in Plaintiffs' possession, such as sales figures, and Plaintiffs would be unable to demonstrate that the proximity of the deposition of Carl Malamud to the deadline for the opening expert disclosures had prevented them from serving their report in a timely manner.  But without any explanation of what report Plaintiffs intend to produce (assuming they have even decided what report they want to produce), it is impossible for the Court to determine if they had good cause for failing to meet the opening expert disclosure deadline—especially when Plaintiffs' fact discovery had already concluded prior to that deadline.

---

[3] There are no citations to case law or rules of procedure in Plaintiffs' motion.

6

Waiting for Public Resource to complete its final three depositions of Plaintiffs is not "good cause." Rather, Plaintiffs were sitting on their hands while Public Resource completed its fact investigation, and did not even raise the issue of expert reports until a week and a half after Public Resource took its final deposition. In contrast, despite the fact that Public Resource was completing its final depositions, Public Resource simultaneously worked with its expert to prepare an opposition expert report that it timely served in accordance with the November 25, 2014 scheduling order.[4]

Moreover, Plaintiffs have not established why it is that they need an extension until June 5th to serve their opening expert disclosures. Under the case calendar as it currently stands, opening expert disclosures were due thirty-one days after the close of fact discovery. June 5th is over three months after Plaintiffs took their final deposition in this case and over two months after Public Resource took its last deposition. Far from showing good cause for why such distant deadlines should be chosen, Plaintiffs have not provided any explanation for these lengthy dates in their motion. This is particularly odd because when Plaintiffs opposed Public Resource's motion to extend the case schedule, they did so in part on the basis that an extension of the case schedule by even one month would prejudice Plaintiffs. Dkt. No. 76 at 11. Now they seek to push the opening expert disclosure deadline back three months.[5]

### B. Plaintiffs Have Not Shown "Excusable Neglect" for Their Failure to Act Within the Time Specified

Even were Plaintiffs to show good cause, they must also demonstrate excusable neglect concerning their failure to serve either an opening expert report or an opposition expert report

---

[4] Public Resource's opposition expert report addresses factors that Plaintiffs must establish in order to be granted an injunction.

[5] Plaintiffs' proposed modifications of the case schedule would push the deadlines for this case past the deadlines in the parallel case, *Am. Educ. Research Ass'n, et al. v. Public.Resource.Org*, No. 1:14-cv-00857-TSC-DAR (D.D.C.), which was filed nine months later.

according to the deadlines in the case calendar. FED. R. CIV. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect."). As recognized by the D.C. Circuit, the Supreme Court has established four factors to consider when determining whether neglect may be termed "excusable": "(1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *In re Vitamins Antitrust Class Actions,* 327 F.3d 1207, 1209 (D.C. Cir. 2003) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)).

Of all four *Pioneer* factors, the third factor—fault—is commanding. *See Jarvis v. Parker*, 13 F. Supp. 3d 74, 78–79 (D.D.C. 2014) (citing *Inst. for Policy Studies v. C.I.A.,* 246 F.R.D. 380, 383 (D.D.C. 2007); *Webster v. Pacesetter, Inc.,* 270 F. Supp. 2d 9, 14–15 (D.D.C. 2003); *Wilson v. Prudential Fin.,* 218 F.R.D. 1, 3 (D.D.C. 2003)). In *Jarvis*, the court held that although three of the four factors favored the movant (there was no danger of prejudice to the opposing party, the length of delay was only a matter of days, and there was no bad faith in the movant's failure to meet his filing deadline), the movant's neglect was not excusable because the movant was at fault for miscalculating a deadline. 13 F. Supp. 3d at 79; *see also Pioneer Inv. Servs.*, 507 U.S. at 392 (stating that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect").

In their motion, Plaintiffs do not identify why they failed to prepare expert reports in time for the first two expert disclosure deadlines, other than suggesting that they relied on an assumption that Public Resource would again seek to have the case schedule extended after the

Court denied Public Resource's previous request for an extension. But even if Public Resource also sought to move the expert disclosure deadlines, this does not guarantee that the Court would actually grant such a request. *See Saunders*, 279 F.R.D. at 38 (denying in part plaintiff and defendant's joint motion to extend expert deadlines, where the court did not believe that the parties had shown good cause and excusable neglect).

Moreover, it is notable that Plaintiffs' motion does not mention (nor attach) any specific discussion that they had with Public Resource regarding pushing back the expert disclosure deadlines. To be clear, Public Resource did not expressly agree that expert discovery would only commence after all fact depositions had concluded. *Cf.* Pl. Mot. at 2-3. This is because Plaintiffs never raised the issue, instead opting to allow the deadlines to pass while simultaneously opposing Public Resource's motion to extend the case schedule (a motion that would have had the incidental effect of extending the expert disclosure schedule, though not as far as Plaintiffs now seek to have it extended). Indeed, Plaintiffs may have made a strategic decision to allow these expert deadlines to pass without raising the issue, because it would have been contradictory to their opposition to Public Resource's motion if Plaintiffs had voiced their concern that the expert disclosure deadlines might need to be pushed back *even further* than Public Resource had proposed.

Without a clear explanation from Plaintiffs, it is difficult to determine if their failure to abide by the case schedule was due to inadvertence, ignorance of the rules, mistake, or due to a strategic decision on their part to avoid undermining their position (at that time) that an extension in the case schedule would prejudice them. Regardless of the explanation, the outcome is the same: Plaintiffs are at fault for missing the expert disclosure deadlines, and their neglect is not excusable.

Regarding the other three *Pioneer* factors, at least two of them suggest that Plaintiffs' motion should be denied for inexcusable neglect.  First, Plaintiffs' delay in raising the possibility of an extension to the case schedule has impacted Public Resource, causing Public Resource to invest time and resources in preparing and serving an opposition report in reliance on the expectation that the case schedule would not be altered.  A change to the case schedule at this point will prejudice Public Resource.  With pro bono representation and much more limited resources than its well-funded opponents, Public Resource has been forced to make strategic decisions on what expert representation it is capable of obtaining, shaped in part by Public Resource's recognition that opening expert reports were not served by either side.  Public Resource will also be prejudiced because Plaintiffs chose not to raise their concerns about the expert schedule until after Public Resource's motion to extend the case schedule had been denied, basing their opposition in part on their claim that Plaintiffs would be prejudiced by an extension in the schedule of even one month.  Dkt. No. 76 at 11.  Had Plaintiffs confided in the Court that they intended to seek an extension in the case schedule that was even later than the extension that Public Resource had requested, the outcome of Public Resource's motion might have been very different.

Regarding the second factor, the length of delay caused by Plaintiffs and the impact it would have on the judicial proceeding is significant.  Plaintiffs waited months to even raise a concern over the expert deadlines, and now seek to push the case schedule back by months.  Moreover, under Plaintiffs' proposed schedule, they would have over four months to prepare an expert report to rebut the opposition report that Public Resource served them on April 13th.

Finally, regarding the fourth *Pioneer* factor—good faith—it is not clear whether Plaintiffs acted in good faith when they failed to meet the expert disclosure deadlines, and did not raise the

10

issue until over a month after the first expert deadline had passed. If Plaintiffs' did decide to ignore the opening expert disclosure deadline so as to oppose Public Resource's earlier motion, then that would suggest that Plaintiffs' silence was a strategic decision, lacking a good faith justification.

In summary, Plaintiffs' post hoc motion to extend the expert schedule lacks good cause and Plaintiffs' neglect is far from excusable.

## **CONCLUSION**

For the reasons above, Public Resource respectfully requests that the Court deny Plaintiffs' motion to re-set the expert schedule.

Dated: May 11, 2015                                   Respectfully submitted,

*/s/ Andrew P. Bridges*
Andrew P. Bridges (admitted)
abridges@fenwick.com
Kathleen Lu (pro hac vice)
klu@fenwick.com
Matthew B. Becker (pro hac vice)
mbecker@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW
Washington, DC 20005
Telephone: (202) 905-3434

Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
Corynne McSherry (pro hac vice)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile:  (415) 436-9993

*Attorneys for Defendant-Counterclaimant*
*Public.Resource.Org, Inc.*