# EXHIBIT 3

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR TESTING AND
MATERIALS D/B/A ASTM INTERNATIONAL;
NATIONAL FIRE PROTECTION, INC.;
AND AMERICAN SOCIETY OF HEATING,
REFRIGERATING, AND AIR-CONDITIONING
ENGINEERS, INC.

       Plaintiffs,/
       Counter-Defendants,     Case No.:

   vs.                     1:13-cv-01215-EGS

PUBLIC.RESOURCE.ORG, INC.

       Defendant/
       Counter-Plaintiff
_____/

-HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY-

VIDEOTAPED DEPOSITION OF CARL MALAMUD

DATE:        Thursday, February 27, 2015

TIME:        9:11 a.m.

LOCATION:    1 Market Street, Spear Tower, Suite
            2000, San Francisco, California

Reported by:  Ashley Soevyn
              Certified Shorthand Reporter
              License Number 12019

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

14

| | | |
|---|---|---|
| 1 | Q    Okay.  When -- do you recall the first | 9:16:05AM |
| 2 | time you saw an ASTM logo? | 9:16:07AM |
| 3 | A    No. | 9:16:10AM |
| 4 | Q    Do you acknowledge that the ASTM logo has | 9:16:12AM |
| 5 | been used in connection with standards for at least | 9:16:15AM |
| 6 | a decade? | 9:16:19AM |
| 7 | MR. BRIDGES:  Objection, calls for a | |
| 8 | conclusion, lacks foundation, assumes facts not in | 9:16:21AM |
| 9 | evidence, vague and ambiguous. | 9:16:24AM |
| 10 | THE WITNESS:  I don't know. | 9:16:27AM |
| 11 | BY MR. FEE: | 9:16:27AM |
| 12 | Q    Do you acknowledge that the ASTM name is | |
| 13 | well-known name? | 9:16:30AM |
| 14 | MR. BRIDGES:  All the same objections and | 9:16:31AM |
| 15 | argumentative. | 9:16:34AM |
| 16 | THE WITNESS:  American Society of Testing | 9:16:36AM |
| 17 | and Materials is certainly well-known to me. | 9:16:37AM |
| 18 | BY MR. FEE: | 9:16:40AM |
| 19 | Q    Is the ASTM abbreviation also well-known | 9:16:41AM |
| 20 | to you? | 9:16:45AM |
| 21 | MR. BRIDGES:  Objection, all the same | 9:16:46AM |
| 22 | objections. | 9:16:47AM |
| 23 | THE WITNESS:  It's known to me yes. | 9:16:48AM |
| 24 | BY MR. FEE: | 9:16:51AM |
| 25 | Q    Do you recall when you first encountered | 9:16:53AM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

15

```
1      any NFPA trademark?                            9:16:54AM

2             MR. BRIDGES:  All the same objections.  9:16:57AM

3             THE WITNESS:  No, I don't.              9:16:58AM

4      BY MR. FEE:                                    9:16:59AM

5         Q    Is the NFPA name well-known to you?    9:17:00AM

6             MR. BRIDGES:  All the same objections.  9:17:05AM

7             THE WITNESS:  Yes.                       9:17:07AM

8      BY MR. FEE:                                    9:17:07AM

9         Q    Is the NFPA logo well-known to you?    9:17:07AM

10             MR. BRIDGES:  All the same objections.  9:17:10AM

11             THE WITNESS:  Yeah, I -- yes.           9:17:14AM

12     BY MR. FEE:                                    9:17:15AM

13        Q    Do you recall when you first encountered 9:17:17AM

14     any ASHRAE trademark?                          9:17:18AM

15             MR. BRIDGES:  All the same objections.  9:17:20AM

16             THE WITNESS:  No.                       9:17:22AM

17     BY MR. FEE:                                    9:17:22AM

18        Q    Is the ASHRAE name known -- well-known to 9:17:23AM

19     you?                                           9:17:26AM

20             MR. BRIDGES:  All the same objections.  9:17:27AM

21             THE WITNESS:  Yes.                       9:17:28AM

22     BY MR. FEE:                                    9:17:28AM

23        Q    Is the ASHRAE logo well-known to you?  9:17:29AM

24             MR. BRIDGES:  All the same objections.  9:17:32AM

25             THE WITNESS:  No.                       9:17:33AM
```

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

28

| | | |
|---|---|---|
| 1 | make -- to make copies that are similar to the | 9:33:23AM |
| 2 | standards actually sold by ASTM available on its | 9:33:33AM |
| 3 | website? | 9:33:36AM |
| 4 | MR. BRIDGES:  Okay.  Objection, calls for | 9:33:40AM |
| 5 | a legal conclusion, argumentative, lacks | 9:33:41AM |
| 6 | foundation, vague and ambiguous. | 9:33:46AM |
| 7 | THE WITNESS:  Could you repeat the | 9:33:49AM |
| 8 | question, please? | 9:33:50AM |
| 9 | BY MR. FEE: | 9:33:51AM |
| 10 | Q    Sure.  Is it Public Resource's intention | 9:33:51AM |
| 11 | to make copies that are similar to the standards | 9:33:53AM |
| 12 | actually sold by ASTM available on its website? | 9:33:56AM |
| 13 | MR. BRIDGES:  Objection, assumes facts | |
| 14 | in evidence, lacks foundation, argumentative | 9:34:01AM |
| 15 | vague and ambiguous. | 9:34:03AM |
| 16 | THE WITNESS:  No. | 9:34:05AM |
| 17 | BY MR. FEE: | 9:34:05AM |
| 18 | Q    Why is that not the intention? | 9:34:07AM |
| 19 | MR. BRIDGES:  All the same objections. | 9:34:09AM |
| 20 | THE WITNESS:  We post standards that have | 9:34:13AM |
| 21 | been explicitly and specifically incorporated | 9:34:15AM |
| 22 | by reference into federal or state law. | 9:34:18AM |
| 23 | | |
| 24 | BY MR. FEE: | 9:34:21AM |
| 25 | Q    And when those standards are posted by | 9:34:22AM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

29

1    you, it's your intention to make them as close as    9:34:24AM

2    possible to the actual standard published by the    9:34:29AM

3    author of that standard, correct?    9:34:35AM

4            MR. BRIDGES:  Objection, argumentative,    9:34:38AM

5        lacks foundation, vague and ambiguous.    9:34:38AM

6            THE WITNESS:  Our goal is replication and    9:34:41AM

7        transformation of that standard to make it    9:34:45AM

8        accessible.    9:34:48AM

9    BY MR. FEE:    9:34:51AM

10       Q    Do you intend the text to be identical to    9:34:51AM

11   the text that was in the originally published    9:34:53AM

12   standard?    9:34:56AM

13           MR. BRIDGES:  Objection, assumes facts    

14       in evidence, lacks foundation, vague and    9:35:00AM

15       ambiguous.    9:35:01AM

16           THE WITNESS:  Text is identical.    9:35:07AM

17   BY MR. FEE:    9:35:09AM

18       Q    At least that's the intention at the time    9:35:11AM

19   you post those standards on the website, right?    9:35:13AM

20           MR. BRIDGES:  All the same objections.    9:35:16AM

21           THE WITNESS:  Yes.    9:35:17AM

22   BY MR. FEE:    9:35:18AM

23       Q    Now, at the time that you were posting    

24   plaintiffs' standards on Public Resource's website,    9:35:25AM

25   you understood that the plaintiffs owned trademarks    9:35:28AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

32

1          THE WITNESS:  It sounds like you're

2          me about legal advice.                    9:37:09AM

3     BY MR. FEE:                                     9:37:09AM

4          Q    You're wrong.  I'm asking if you had a  9:37:09AM

5     thought.  At the time that you were posting     9:37:12AM

6     something on the website, did you think I'm about

7     post a standard that features somebody else's   9:37:17AM

8     trademark on my website at the time that you posted9:37:20AM

9     it on the website?                              9:37:22AM

10          MR. BRIDGES:  All the same objections and9:37:25AM

11          lacks foundation.                         9:37:26AM

12          THE WITNESS:  I was aware that the ASTM   9:37:28AM

13          logo was included in the standards at issue, 9:37:30AM

14          which we scanned and posted on our website.  9:37:33AM

15     BY MR. FEE:                                     9:37:37AM

16          Q    And you thought it was okay for you to  9:37:37AM

17     post an ASTM standard with an ASTM trademark on

18     website, correct?                              9:37:44AM

19          MR. BRIDGES:  Objection, argumentative,   9:37:45AM

20          lacks foundation, assumes facts not in    9:37:46AM

21          evidence, vague and ambiguous and calls for a 9:37:53AM

22          legal conclusion.                         9:37:57AM

23          THE WITNESS:  Incorporation by reference  9:37:58AM

24          of a standard into the Code of Federal    9:38:00AM

25          Regulation is the incorporation of the entire 9:38:01AM

Capital Reporting Company
Malamud, Carl (Confidential) 02-27-2015

33

1           document, and I'm not in a position to decide    9:38:06AM

2           which portions of that document are or not the   9:38:08AM

3           law.  They -- the entire document is             9:38:11AM

4           incorporated by reference into law.              9:38:13AM

5    BY MR. FEE:                                             9:38:18AM

6           Q    At the time that you were posting the       9:38:18AM

7    other plaintiffs' standards on your website, you        9:38:19AM

8    also were aware of the fact that they had an            9:38:22AM

9    ownership interest in their logos, weren't you?         9:38:25AM

10              MR. BRIDGES:  All the same objections.       9:38:28AM

11              THE WITNESS:  That's the same question

12          just asked me about ASTM.  I'm not qualified     9:38:31AM

13          to -- to comment on that.                        9:38:34AM

14   BY MR. FEE:                                             9:38:35AM

15          Q    But you are aware that you were posting     9:38:37AM

16   trademarks owned by another person on your website      9:38:40AM

17   at the time, aren't you?                                9:38:43AM

18              MR. BRIDGES:  All the same objections and    9:38:44AM

19          asked and answered.                              9:38:46AM

20              THE WITNESS:  The same answer I just gave     9:38:47AM

21          you; I'm not qualified to discuss that.          9:38:49AM

22   BY MR. FEE:                                             9:38:51AM

23          Q    So it never occurred to you that the        9:38:55AM

24   on NFPA's or ASHRAE's standards may be trademarks       9:38:55AM

25   owned by them at the time that you were posting

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

46

| | | |
|---|---|---|
| 1 | lacks foundation, vague and ambiguous. | 9:52:12AM |
| 2 | THE WITNESS:  There is one specific | 9:52:18AM |
| 3 | version of A106 on our website. | 9:52:19AM |
| 4 | BY MR. FEE: | 9:52:22AM |
| 5 | Q    Okay.  What version is that? | 9:52:22AM |
| 6 | MR. BRIDGES:  Same objections. | 9:52:24AM |
| 7 | THE WITNESS:  I'd have to look it up. | 9:52:25AM |
| 8 | BY MR. FEE: | 9:52:26AM |
| 9 | Q    Well, you know there's at least one | 9:52:27AM |
| 10 | version of A106 on your website, correct? | 9:52:28AM |
| 11 | MR. BRIDGES:  All the same objections. | 9:52:32AM |
| 12 | THE WITNESS:  Correct. | 9:52:33AM |
| 13 | BY MR. FEE: | 9:52:34AM |
| 14 | Q    And you expect visitors to your website | |
| 15 | understand that the copy of A106 that you have on | 9:52:38AM |
| 16 | your website is or at least contains all the same | 9:52:42AM |
| 17 | text that appears in the original ASTM Standard | |
| 18 | of the year that you purport it to be? | 9:52:55AM |
| 19 | MR. BRIDGES:  Objection, assumes facts | |
| 20 | in evidence, lacks foundation, argumentative, | 9:53:01AM |
| 21 | vague and ambiguous. | 9:53:02AM |
| 22 | THE WITNESS:  It's a scan of the exact | 9:53:03AM |
| 23 | standard, yes. | 9:53:05AM |
| 24 | BY MR. FEE: | 9:53:06AM |
| 25 | Q    And when you post HTML versions of ASTM | |

47

1    other plaintiffs' standards, you expect the viewers    9:53:12AM

2    of those standards at your website to understand    9:53:17AM

3    that the language or text that you're posting as

4    standard is, in fact, the standard that you purport    9:53:24AM

5    it to be?    9:53:28AM

6            MR. BRIDGES:  Objection, lacks

7        argumentative, may be hypothetical, vague and    9:53:31AM

8        ambiguous.    9:53:37AM

9            THE WITNESS:  Yes.    9:53:42AM

10   BY MR. FEE:    9:53:42AM

11       Q    And that's the whole point of your    9:53:43AM

12   website, right, is to provide access to the    9:53:44AM

13   standards?    9:53:48AM

14           MR. BRIDGES:  Objection, argumentative,    9:53:48AM

15       misstates testimony, lacks foundation, vague    9:53:48AM

16       and ambiguous.    9:53:52AM

17           THE WITNESS:  The purpose of our service    9:53:53AM

18       is to make the law available to citizens.    9:53:56AM

19   BY MR. FEE:    9:53:58AM

20       Q    Including standards incorporated by    9:54:00AM

21   reference, correct?    9:54:03AM

22       A    Yes.    9:54:03AM

23       Q    Now, Public Resource solicits donations

24   its website, doesn't it?    9:54:23AM

25       A    We have -- yes.    9:54:26AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

55

```
 1              THE WITNESS:  I do not recall the      10:02:00AM
 2         specifics of every proposal that's there, and10:02:01AM
 3         so I cannot answer that question for you.    10:02:03AM
 4    BY MR. FEE:                                       10:02:06AM
 5         Q    What is Kickstarter?                    10:02:13AM
 6              MR. BRIDGES:  Objection, vague and      10:02:16AM
 7         ambiguous.                                   10:02:16AM
 8              THE WITNESS:  It's an Internet service
 9         crowd funding projects.                      10:02:21AM
10    BY MR. FEE:                                       10:02:22AM
11         Q    Have you ever used Kickstarter before?  10:02:23AM
12         A    Yes.                                    10:02:26AM
13         Q    Have you ever used Kickstarter on behalf10:02:31AM
14    of Public Resource before?                        10:02:33AM
15         A    Yes.                                    10:02:34AM
16         Q    Can you describe the circumstances under10:02:36AM
17    which that occurred?                              10:02:38AM
18         A    We did an unsuccessful campaign for     10:02:41AM
19    something called Codes of the World.              10:02:45AM
20         Q    What was Codes of the World?            10:02:48AM
21         A    It was an attempt to fund a double-
22    of standards.                                     10:02:53AM
23         Q    Would that include double-keying of     10:02:56AM
24    plaintiffs' standards?                            10:02:58AM
25         A    The focus was international.            10:03:01AM
```

56

```
 1        Q    So would that include the standards of
 2   plaintiffs or not?                          10:03:08AM
 3        A    It did not preclude that.         10:03:09AM
 4        Q    In connection with your Kickstarter 10:03:12AM
 5   campaign, did you ever reference any of the 10:03:14AM
 6   plaintiffs' standards?                      10:03:16AM
 7            MR. BRIDGES:  Objection, vague and 10:03:18AM
 8       ambiguous.                              10:03:20AM
 9            THE WITNESS:  Yes, I did.          10:03:20AM
10   BY MR. FEE:                                 10:03:21AM
11        Q    Under what circumstances did you do that?
12        A    I had a photograph of a stack of old
13   standards that was included as a graphic    10:03:28AM
14   illustration.                               10:03:32AM
15        Q    Did you include any other references to 10:03:34AM
16   ASTM in your Kickstarter campaign?          10:03:37AM
17            MR. BRIDGES:  Objection, vague and 10:03:39AM
18       ambiguous.                              10:03:40AM
19            THE WITNESS:  Yes.                 10:03:41AM
20   BY MR. FEE:                                 10:03:41AM
21        Q    Please describe those for me.     10:03:42AM
22        A    I would want to review the text of the 10:03:49AM
23   Kickstarter to describe the specific
24        Q    You don't recall anything about the 10:03:56AM
25   circumstances under which you were referencing
```

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

57

1    standards in your Kickstarter campaign other than  10:04:01AM

2    the fact that you had a photograph of some of

3    standards?                                          10:04:06AM

4         MR. BRIDGES:  Objection, vague and            10:04:07AM

5    ambiguous.                                          10:04:08AM

6         THE WITNESS:  I don't recall where in

7    Kickstarter campaign it was, and that's why I10:04:09AM

8    would want to review the text.                      10:04:12AM

9  BY MR. FEE:                                           10:04:14AM

10    Q    Do you recall referring to any other          10:04:14AM

11 plaintiffs' standards in connection with your         10:04:16AM

12 Kickstarter campaign?                                 10:04:18AM

13         MR. BRIDGES:  Objection, vague and            10:04:20AM

14    ambiguous.                                          10:04:21AM

15         THE WITNESS:  Again, I would want to          10:04:21AM

16    review the text.                                    10:04:23AM

17 BY MR. FEE:                                           10:04:24AM

18    Q    Sitting here right now, you don't recall?

19         MR. BRIDGES:  Same objections.               10:04:27AM

20         THE WITNESS:  I -- I -- I do not recall 10:04:28AM

21    specifically, no.                                   10:04:30AM

22         MS. RUBEL:  Ashley, what exhibit number 10:05:17AM

23    are we up to?                                       10:05:18AM

24         THE REPORTER:  57.                            10:05:21AM

25         (Exhibit 57 marked for identification.)      11:31:27AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

58

| | | |
|---|---|---|
| 1 | BY MR. FEE: | 10:05:21AM |
| 2 | Q    Mr. Malamud, I'm going to hand you | |
| 3 | 57.  It's an e-mail from Kickstarter to you, Bates | 10:05:23AM |
| 4 | label PRO_167895 through -896. | 10:05:25AM |
| 5 | Can you identify Exhibit 57 as an e-mail | 10:05:59AM |
| 6 | from Kickstarter to you? | 10:06:03AM |
| 7 | A    This is an e-mail from me to the | 10:06:06AM |
| 8 | subscribers to the Kickstarter campaign. | 10:06:09AM |
| 9 | Q    And the title of this says, "Project | 10:06:16AM |
| 10 | Update No. 1, 106 new ASTM standards converted." | |
| 11 | you see that? | 10:06:23AM |
| 12 | A    I do. | 10:06:24AM |
| 13 | Q    Why were you reporting to the people | 10:06:24AM |
| 14 | involved in your Kickstarter campaign that you had | 10:06:27AM |
| 15 | converted 106 ASTM standards? | 10:06:30AM |
| 16 | A    Because we had.  It was an update on -- | |
| 17 | what we were doing. | 10:06:39AM |
| 18 | Q    Look at the second paragraph of this | 10:06:50AM |
| 19 | document.  You see it says, you can really see the | 10:06:52AM |
| 20 | difference between the original HTML and the | |
| 21 | HTML." | 10:07:00AM |
| 22 | Do you see that? | 10:07:00AM |
| 23 | A    I do. | 10:07:01AM |
| 24 | Q    What does that mean? | 10:07:02AM |
| 25 | A    It's actually a typo.  It's -- you can | 10:07:09AM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

60

| 1 | expected people to be able to see other than the | 10:08:29AM |
| 2 | ones you just referenced? | 10:08:31AM |
| 3 | MR. BRIDGES:  Objection, vague and | 10:08:35AM |
| 4 | ambiguous. | 10:08:35AM |
| 5 | THE WITNESS:  No, I think that was it. | 10:08:41AM |
| 6 | BY MR. FEE: | 10:08:42AM |
| 7 | Q    And you thought that the original scan | 10:08:43AM |
| 8 | looked different than the HTML version of this | |
| 9 | Standard A47? | 10:08:49AM |
| 10 | MR. BRIDGES:  Objection, misstates | 10:08:52AM |
| 11 | testimony, lacks foundation, vague and | 10:08:53AM |
| 12 | ambiguous. | 10:08:55AM |
| 13 | THE WITNESS:  You can see the difference | 10:08:56AM |
| 14 | in the sense of readability.  It wasn't a | 10:08:58AM |
| 15 | different standard, though. | 10:09:02AM |
| 16 | BY MR. FEE: | 10:09:04AM |
| 17 | Q    Understood.  After those two bullet | 10:09:04AM |
| 18 | points, you say one of the hopes as we move beyond | 10:09:08AM |
| 19 | the rekey stage is that we can do more than simply | 10:09:12AM |
| 20 | recover text, but start adding true value. | 10:09:15AM |
| 21 | Do you see that? | 10:09:18AM |
| 22 | A    I do. | 10:09:19AM |
| 23 | Q    What did you mean when you said that? | 10:09:21AM |
| 24 | A    As that paragraph says, for example, | 10:09:24AM |
| 25 | rekeying the mathematical formulas into MathML, | 10:09:26AM |

61

1    adding section ID headers so you could permanently    10:09:29AM

2    not only to the full standard, but to a specific    10:09:34AM

3    section of the standard and converting graphics to    10:09:39AM

4    the vector format, which is SVG program that we    10:09:41AM

5    previously described to you.    10:09:47AM

6              THE REPORTER:  Which is what, SVG?    10:09:48AM

7              THE WITNESS:  SVG program.    10:09:48AM

8    BY MR. FEE:    10:09:48AM

9         Q    So you didn't consider the conversion of    10:09:49AM

10   the scanned PDF to rekeyed HTML to be adding true    10:09:54AM

11   value?    10:10:00AM

12             MR. BRIDGES:  Objection, argumentative,    10:10:04AM

13        vague and ambiguous.    10:10:04AM

14             THE WITNESS:  No, that would not be    10:10:09AM

15        correct.  We did add true value by -- by    10:10:10AM

16        putting the -- the double-keyed HTML up.    10:10:13AM

17   BY MR. FEE:    10:10:17AM

18        Q    Why did you then say that you were going    10:10:17AM

19   to start adding true value after you got the    10:10:19AM

20   rekeying done?    10:10:22AM

21             MR. BRIDGES:  Objection, argumentative.    10:10:23AM

22             THE WITNESS:  Probably for the same

23        I made a typo originally when I said original    10:10:27AM

24        HTML instead of original PDF.  Continue

25        true value would be a -- a better    10:10:34AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

                                                                    62

1          characterization of that process.          10:10:36AM

2    BY MR. FEE:                                       10:10:37AM

3          Q    The next paragraph you say, "we'll have 10:10:39AM

4    another 100 or so ASTM standards done in a couple 10:10:42AM

5    weeks."                                            10:10:46AM

6               Do you see that?                        10:10:47AM

7          A    I do.                                   10:10:48AM

8          Q    Why are you telling people that you're 10:10:48AM

9    asking for money that you're about to post 100 or

10   additional ASTM standards to your website?         10:10:54AM

11         A    Because in this update I was discussing 10:10:57AM

12   what we were doing with ASTM standards.            10:11:00AM

13         Q    Did you expect that potential donors

14   be interested to know that you were about to post 10:11:04AM

15   the 100 ASTM standards on your website for free?   10:11:07AM

16              MR. BRIDGES:  Objection, argumentative, 10:11:11AM

17         lacks foundation.                            10:11:11AM

18              THE WITNESS:  I don't know.  I thought

19         was an interesting update.                   10:11:13AM

20   BY MR. FEE:                                        10:11:15AM

21         Q    And you believed that that update would

22   interesting to potential donors as well, right?    10:11:19AM

23         A    I believe it was an interesting         10:11:27AM

24   description of the technical work that we were      10:11:29AM

25   doing.                                             10:11:34AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

63

1        Q    I'm going to hand you Exhibit 58, which

2    another e-mail that says it's from Kickstarter to   10:12:15AM

3    you, Bates-labeled PRO_168379 through -81.          10:12:20AM

4        (Exhibit 58 marked for identification.)         10:12:53AM

5    BY MR. FEE:                                          10:12:53AM

6        Q    Can you identify Exhibit 58 as another      10:12:54AM

7    update you made to your Kickstarter campaign?        10:12:56AM

8        MR. BRIDGES:  Objection, vague and              10:12:59AM

9    ambiguous.                                           10:13:00AM

10   BY MR. FEE:                                          10:13:01AM

11       Q    Okay.  What's Exhibit 58?                   10:13:01AM

12       A    It looks like part of an update that I

13   sent for the Kickstarter campaign.  It looks like   10:13:12AM

14   some of it was cut off, however.                     10:13:15AM

15       Q    What portion do you believe to be cut off?

16       A    On Page 2, Bates number 168380, at the     10:13:21AM

17   bottom it says, "when I started to publish federal  10:13:27AM

18   law, I sent the ASTM and nine other."  And then     10:13:31AM

19   after that it says -- I continue publishing the

20   of our land on the next page.  It sure looks like   10:13:38AM

21   something is missing in the middle there.           10:13:41AM

22       Q    Do you know why that text is missing

23   the document production that your company made?     10:13:48AM

24       A    I have no idea.                            10:13:52AM

25       Q    Do you have any reason to doubt the        10:13:53AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

64

1    authenticity of the text that is on the first page    10:13:55AM

2    of this document and whether or not you wrote it?    10:13:59AM

3        A    I wrote this.                                10:14:02AM

4        Q    Why did you make this Project Update No.    10:14:08AM

5    8?                                                    10:14:10AM

6        A    For the same reason I did Update No. 1,

7    let people know the technical work that we were     10:14:17AM

8    doing.                                                10:14:20AM

9        Q    Did you expect that providing updates to    10:14:20AM

10   the Kickstarter community would help you raise       10:14:22AM

11   additional funds?                                     10:14:25AM

12       A    Yes.                                         10:14:35AM

13       Q    I want to draw your attention to the        10:14:38AM

14   second paragraph of the update.  Do you see you

15   "Today I published 130 more ASTM standards that

16   been rekeyed into HTML?"  Do you see that?           10:14:49AM

17       A    Yes, I do.                                   10:14:51AM

18       Q    All right.  Why were you telling the        10:14:52AM

19   Kickstarter community about your additional

20   of ASTM standards?                                    10:15:00AM

21       A    Because I think they would be interested    10:15:04AM

22   in the high quality of the technical work.           10:15:06AM

23       Q    Were you hopeful that advising them of

24   high quality copies of the ASTM standards that       10:15:20AM

25   you're making available would lead to additional     10:15:23AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

65

```
1    donations from the campaign?                  10:15:26AM
2              MR. BRIDGES:  Objection, argumentative, 10:15:27AM
3         assumes facts not in evidence, incorporates a10:15:28AM
4         legal term that may call for a legal       10:15:36AM
5         conclusion, argumentative, vague and
6              THE WITNESS:  You're going to have to  10:15:43AM
7         repeat the question.  I'm sorry.           10:15:43AM
8              MR. FEE:  Could you read it back, please?
9              THE REPORTER:  Sure.                   10:15:45AM
10                   (The reporter read the record 10:15:45AM
11                    as requested.)                  9:21:05AM
12             MR. BRIDGES:  All the same objections.  10:15:59AM
13             THE WITNESS:  I think all the updates
14        an attempt to show people the high quality of10:16:04AM
15        the work we were doing and to, therefore,
16        the campaign successful.                   10:16:09AM
17   BY MR. FEE:                                     10:16:10AM
18        Q    And the definition of a successful    10:16:11AM
19   campaign was if you could raise $100,000; is that 10:16:13AM
20   right?                                          10:16:16AM
21             MR. BRIDGES:  Objection, argumentative, 10:16:18AM
22        vague and ambiguous.                       10:16:19AM
23             THE WITNESS:  Yes.                     10:16:22AM
24             MR. FEE:  Why don't we take a quick
25             THE REPORTER:  Let's do that.         10:16:28AM
```

66

| | | |
|---|---|---|
| 1 | MR. FEE:  We can go off the record for a | 10:16:29AM |
| 2 | little bit and try to fix these things. | 10:16:31AM |
| 3 | MR. BRIDGES:  Okay. | 10:16:36AM |
| 4 | MR. FEE:  We're going to go off the | 10:16:36AM |
| 5 | record. | 10:16:38AM |
| 6 | THE VIDEOGRAPHER:  They are going to | 10:16:41AM |
| 7 | check.  We're going off the record.  The time | 10:16:42AM |
| 8 | is 10:16 a.m. | 10:16:45AM |
| 9 | (Recess taken.) | 10:27:41AM |
| 10 | THE VIDEOGRAPHER:  Back on the record. | 10:31:01AM |
| 11 | The time is 10:30 a.m. | 10:31:03AM |
| 12 | BY MR. FEE: | 10:31:05AM |
| 13 | Q    Mr. Malamud, I have one or two more | 10:31:05AM |
| 14 | questions on Exhibit 58, so you might want to grab | 10:31:08AM |
| 15 | that again. | 10:31:11AM |
| 16 | On the first page after you talk about | 10:31:13AM |
| 17 | publishing 130 more ASTM standards, you say they | 10:31:17AM |
| 18 | are -- and then underlined -- available for open | 10:31:20AM |
| 19 | access without restriction from our servers. | 10:31:22AM |
| 20 | Do you see that? | 10:31:27AM |
| 21 | MR. BRIDGES:  Objection, misstates the | 10:31:27AM |
| 22 | document, I think. | 10:31:28AM |
| 23 | Go ahead. | 10:31:33AM |
| 24 | Lacks foundation, vague and ambiguous. | 10:31:35AM |
| 25 | THE WITNESS:  That is the third sentence | 10:31:38AM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

67

| | | |
|---|---|---|
| 1 | of that paragraph. | 10:31:39AM |
| 2 | BY MR. FEE: | 10:31:40AM |
| 3 | Q    And when you refer to "they" in that | 10:31:41AM |
| 4 | sentence, you're referring to the 130 more ASTM | 10:31:44AM |
| 5 | standards, aren't you? | 10:31:47AM |
| 6 | A    Actually, I'm referring to the 328 ASTM | 10:31:51AM |
| 7 | files as scans from PDF and 256 as open HTML. | 10:31:54AM |
| 8 | Q    Why did you underline "available for | |
| 9 | access without restriction"? | 10:32:02AM |
| 10 | A    That's one that's a hyperlink.  When you | 10:32:03AM |
| 11 | click on it, you go to another web page. | 10:32:05AM |
| 12 | Q    So that's a link to the list of the ASTM | 10:32:08AM |
| 13 | standards that are available for free? | 10:32:12AM |
| 14 | MR. BRIDGES:  Objection, lacks | |
| 15 | argumentative, vague and ambiguous. | 10:32:15AM |
| 16 | THE WITNESS:  I'd have to check what | |
| 17 | specifically linked to.  It's someplace on | |
| 18 | web server. | 10:32:27AM |
| 19 | BY MR. FEE: | 10:32:28AM |
| 20 | Q    When you refer to "open access without | 10:32:46AM |
| 21 | restriction," what does that mean? | 10:32:49AM |
| 22 | A    It means that I impose no restrictions | |
| 23 | use. | 10:32:59AM |
| 24 | Q    Does "open access" also means that it's | 10:32:59AM |
| 25 | available for free? | 10:33:01AM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

68

1       MR. BRIDGES:  Objection, lacks

2    argumentative, vague and ambiguous.        10:33:03AM

3       THE WITNESS:  We have never charged for 10:33:06AM

4    access to any information on our website.   10:33:08AM

5  BY MR. FEE:                                   10:33:13AM

6    Q    What did you expect persons to do with

7  328 ASTM files that were available for open access10:33:17AM

8  without restriction?                          10:33:21AM

9       MR. BRIDGES:  Objection.  Same

10      THE WITNESS:  To inform themselves as   10:33:26AM

11   citizens of the laws.                        10:33:28AM

12 BY MR. FEE:                                    10:33:30AM

13   Q    Anything else?                          10:33:30AM

14      MR. BRIDGES:  Same objections.           10:33:36AM

15      THE WITNESS:  People do many things with10:33:38AM

16   the law.                                     10:33:39AM

17 BY MR. FEE:                                    10:33:39AM

18   Q    Is there anything else that you        10:33:40AM

19 anticipated users of the Public Resource website

20 do with the 328 ASTM files that were made available?

21      MR. BRIDGES:  Same objections.           10:33:50AM

22      THE WITNESS:  We make the law available  10:33:53AM

23   for people to use as they see fit.           10:33:55AM

24 BY MR. FEE:                                    10:34:00AM

25   Q    Did you anticipate users of the Public 10:34:01AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

                                                                    69

1       Resource website to make copies of plaintiffs'      10:34:03AM

2       standards that were made available on Public        10:34:06AM

3       Resource's website?                                 10:34:09AM

4            MR. BRIDGES:  Objection, vague and             10:34:11AM

5            ambiguous, calls for a legal conclusion,       10:34:12AM

6            possibly because of the terminology, lacks     10:34:14AM

7            foundation, vague and ambiguous.               10:34:18AM

8            THE WITNESS:  We expected people to

9            these standards and to use them as they see

10           because they're the law.                       10:34:28AM

11      BY MR. FEE:                                          10:34:29AM

12           Q    Would that include the users making --    10:34:29AM

13      making additional print versions based upon the     10:34:32AM

14      standards that they downloaded from your website?   10:34:35AM

15           MR. BRIDGES:  Objection, lacks

16           vague and ambiguous.                            10:34:38AM

17           THE WITNESS:  Again, we impose no              10:34:43AM

18           restrictions on use.  They can do whatever

19           want.                                           10:34:47AM

20      BY MR. FEE:                                          10:34:47AM

21           Q    I'm asking now what you expect users of   10:34:47AM

22      your website to do.  Do you expect them to ever     10:34:49AM

23      print one of plaintiffs' standards from your        10:34:52AM

24      website?                                             10:34:56AM

25           MR. BRIDGES:  Objection, vague and             10:34:57AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

72

```
 1              themselves of the laws and to use that law to  10:36:29AM

 2              inform themselves of their rights and        10:36:31AM

 3              obligations.                                 10:36:33AM

 4    BY MR. FEE:                                            10:36:33AM

 5         Q    Do you have any idea what people do with     10:36:34AM

 6    the standards that they access from your website?      10:36:35AM

 7              MR. BRIDGES:  Objection, lacks

 8              assumes facts not in evidence, vague and     10:36:40AM

 9              ambiguous, argumentative.                    10:36:42AM

10              THE WITNESS:  I know people read them.       10:36:44AM

11    BY MR. FEE:                                            10:36:45AM

12         Q    Do you have -- beyond reading them, do

13    have any idea what people do with the standards

14    you make available on your website?                    10:36:51AM

15              MR. BRIDGES:  All the same objections.       10:36:53AM

16              THE WITNESS:  Not particularly, no.          10:36:55AM

17    BY MR. FEE:                                            10:36:57AM

18         Q    How do you even know people read them?       10:36:59AM

19              MR. BRIDGES:  Lacks foundation, vague

20              ambiguous.                                   10:37:05AM

21              THE WITNESS:  Because I've received          10:37:07AM

22              electronic mail on occasion from people

23              that they've read the standards.             10:37:11AM

24    BY MR. FEE:                                            10:37:12AM

25         Q    Is that the only way?                        10:37:13AM
```

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

73

1          MR. BRIDGES:  Same objections.          10:37:15AM

2          THE WITNESS:  Because I've given

3     and people have come up to me and say that

4     have read the standards.                      10:37:21AM

5  BY MR. FEE:                                      10:37:22AM

6     Q    Any other way?                           10:37:22AM

7          MR. BRIDGES:  Same objections.          10:37:23AM

8          THE WITNESS:  Because we made a video

9     on that video people like Mr. Peterson, who

10    discussed previously, said that -- that he

11    read the standards on our website.            10:37:34AM

12 BY MR. FEE:                                      10:37:37AM

13    Q    Any other way?                           10:37:38AM

14         MR. BRIDGES:  Same objections.          10:37:39AM

15         THE WITNESS:  There have been numerous  10:37:42AM

16    news media reports about me on our site in    10:37:44AM

17    which people have -- or at least I believe

18    that they read them.                          10:37:51AM

19 BY MR. FEE:                                      10:37:53AM

20    Q    Anything else?                           10:37:54AM

21         MR. BRIDGES:  Same objections.          10:37:56AM

22         THE WITNESS:  I -- I -- no.              10:38:03AM

23

24 BY MR. FEE:                                      10:38:03AM

25    Q    Do you have any way of identifying any   10:38:10AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

74

```
1      persons who had printed copies of any of the      10:38:13AM
2      standards you made available on your website?     10:38:17AM
3                MR. BRIDGES:  Objection, lacks
4           vague and ambiguous.                         10:38:21AM
5                THE WITNESS:  No, I do not.              10:38:22AM
6      BY MR. FEE:                                        10:38:23AM
7           Q    Do you have any way of identifying
8      who had saved local versions of any of the
9      that were accessed on your website?               10:38:28AM
10               MR. BRIDGES:  Objection, vague and       10:38:31AM
11          ambiguous, lacks foundation.                  10:38:31AM
12               THE WITNESS:  What do you mean by "saved"?
13     BY MR. FEE:                                        10:38:35AM
14          Q    Saved to their hard drive, let's say.   10:38:36AM
15               MR. BRIDGES:  Same objections.           10:38:40AM
16               THE WITNESS:  I'm sorry.  Repeat that    10:38:55AM
17          question.                                     10:38:56AM
18     BY MR. FEE:                                        10:38:57AM
19          Q    Do you have any way of identifying
20     who had saved to their hard drive or to a server
21     copy of a standard from your website?             10:39:04AM
22               MR. BRIDGES:  Objection, compound, vague 10:39:07AM
23          and ambiguous, may call for legal
24          lacks foundation.                             10:39:15AM
25               THE WITNESS:  No, I don't know if they   10:39:17AM
```

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

75

| | | |
|---|---|---|
| 1 | saved it. | 10:39:19AM |
| 2 | BY MR. FEE: | 10:39:20AM |
| 3 | Q    Do you have any way of identifying | |
| 4 | persons had transferred any standards that were | 10:39:33AM |
| 5 | available from your website to another computer or | 10:39:41AM |
| 6 | person? | 10:39:48AM |
| 7 | MR. BRIDGES:  Same objections. | 10:39:49AM |
| 8 | THE WITNESS:  I do know from our web | 10:39:50AM |
| 9 | server if a GET request resulted in a status | 10:39:52AM |
| 10 | code 200 or 206, that the file in question | |
| 11 | transferred to another computer on the | 10:40:00AM |
| 12 | Internet. | 10:40:02AM |
| 13 | BY MR. FEE: | 10:40:03AM |
| 14 | Q    That means that a file was transferred | 10:40:05AM |
| 15 | from Public Resource's server to a user's server | |
| 16 | computer, correct? | 10:40:12AM |
| 17 | MR. BRIDGES:  Objection, argumentative, | 10:40:13AM |
| 18 | lacks foundation, vague and ambiguous. | 10:40:14AM |
| 19 | THE WITNESS:  Don't know if it's a user. | 10:40:17AM |
| 20 | We know it's another computer. | 10:40:17AM |
| 21 | BY MR. FEE: | 10:40:20AM |
| 22 | Q    Beyond that, does Public Resource have | |
| 23 | available data regarding what was done with any | 10:40:25AM |
| 24 | standard that was downloaded from its website? | 10:40:29AM |
| 25 | MR. BRIDGES:  Objection, vague and | 10:40:34AM |

76

| | | |
|---|---|---|
| 1 | ambiguous, lacks foundation. | 10:40:35AM |
| 2 | THE WITNESS:  As I said, received | 10:40:46AM |
| 3 | occasional electronic mail from people saying | 10:40:47AM |
| 4 | that they have used our site and -- and read | 10:40:49AM |
| 5 | standards. | 10:40:52AM |
| 6 | BY MR. FEE: | 10:40:53AM |
| 7 | Q    That's it? | 10:40:53AM |
| 8 | MR. BRIDGES:  Same objections. | 10:40:56AM |
| 9 | THE WITNESS:  I believe that's it. | 10:40:57AM |
| 10 | MS. RUBEL:  We're up to 59? | 10:41:23AM |
| 11 | THE REPORTER:  Yes. | 10:41:25AM |
| 12 | (Exhibit 59 marked for identification.) | 10:41:26AM |
| 13 | BY MR. FEE: | 10:41:27AM |
| 14 | Q    Mr. Malamud, I'm going to hand you | |
| 15 | 59.  It's another e-mail that's from Kickstarter | |
| 16 | you, Bates-labeled PRO_168360 through -66. | 10:41:34AM |
| 17 | If you've had a chance to look at it, | 10:41:51AM |
| 18 | would you please identify what Exhibit 59 is? | 10:41:52AM |
| 19 | A    This is Update No. 6 from me as part of | 10:42:18AM |
| 20 | the Kickstarter campaign. | 10:42:21AM |
| 21 | Q    So you wrote Exhibit 59, correct? | 10:42:23AM |
| 22 | A    I did. | 10:42:27AM |
| 23 | Q    I want to draw your attention to the | |
| 24 | paragraph of Exhibit 59.  You say I post legally | 10:42:31AM |
| 25 | mandated public safety codes like the National | 10:42:37AM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

77

1        Electrical Code on our website for anybody to

2                    Do you see that?                    10:42:44AM

3        A    I do.                                       10:42:44AM

4        Q    Why were you telling the Kickstarter       10:42:45AM

5    community that you were posting legally mandated    10:42:48AM

6    public safety codes like the National Electric

7    on your website for everybody to read?              10:42:54AM

8        A    Because we did.                             10:42:59AM

9        Q    Did you think that information would be    10:43:01AM

10   helpful in generating enough interest in your       10:43:02AM

11   Kickstarter campaign for it to be successful?       10:43:09AM

12               MR. BRIDGES:  Objection, vague and       10:43:13AM

13           ambiguous.                                   10:43:14AM

14               THE WITNESS:  As with the other project  10:43:15AM

15           updates, an overview of our activities is a  10:43:17AM

16           useful component of a Kickstarter campaign.  10:43:21AM

17   BY MR. FEE:                                          10:43:24AM

18       Q    In the second paragraph you say the

19   of the National Electric Code is a wonderful         10:43:34AM

20   organization called the National Fire Protection    10:43:37AM

21   Association.                                         10:43:39AM

22               Do you see that?                         10:43:40AM

23       A    I do.                                       10:43:41AM

24       Q    And you believed that to be true at the    10:43:43AM

25   time?                                                10:43:44AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

80

| | |
|---|---|
| 1 | THE WITNESS:  I don't want to discuss |
| 2 | donors who are not publicly disclosed on our 10:46:01AM |
| 3 | website. 10:46:05AM |
| 4 | BY MR. FEE: 10:46:05AM |
| 5 | Q    I'm not asking for any names.  I'm just 10:46:05AM |
| 6 | asking you if you're aware of any persons who made |
| 7 | pledge in connection with your Kickstarter |
| 8 | that later, because the Kickstarter campaign was 10:46:12AM |
| 9 | unsuccessful, made a donation through some other 10:46:14AM |
| 10 | means to Public Resource. 10:46:19AM |
| 11 | MR. BRIDGES:  Objection, lacks |
| 12 | vague and ambiguous. 10:46:21AM |
| 13 | THE WITNESS:  Yes. 10:46:22AM |
| 14 | BY MR. FEE: 10:46:25AM |
| 15 | Q    How many? 10:46:25AM |
| 16 | A    I don't know. 10:46:29AM |
| 17 | Q    Mr. Malamud, would you turn back to 10:47:08AM |
| 18 | Exhibit 59?  Do you have that in front of you? 10:47:10AM |
| 19 | A    I do. 10:47:12AM |
| 20 | Q    Turn to -- I think it's the fifth page |
| 21 | the document.  At the top it says, "Point 4, is 10:47:14AM |
| 22 | read-only good enough." 10:47:16AM |
| 23 | Do you see that? 10:47:19AM |
| 24 | A    I do. 10:47:20AM |
| 25 | Q    At the bottom of this page you say in |

81

1    last paragraph, "there's nothing wrong with ANSI

2    that's A-N-S-I -- or ASTM or NFPA putting together

3    website.  That's great.  They should be applauded.  10:47:39AM

4    But just imagine if another law-making agency such  10:47:42AM

5    as OSHA were to put a law on their website and say  10:47:46AM

6    nobody can make a copy of it without prior          10:47:51AM

7    permission and you can't print the law without      10:47:54AM

8    paying more money.  Wouldn't you be totally          10:47:57AM

9    outraged?"                                           10:47:59AM

10        Do you see that?                                10:48:00AM

11    A    I do.                                          10:48:00AM

12    Q    Why did you say that in your Kickstarter       10:48:01AM

13    campaign?                                           10:48:04AM

14    A    Because I think people putting                 10:48:05AM

15    restrictions on access to the law in the United    10:48:06AM

16    States is -- is wrong.                              10:48:09AM

17    Q    Is it important to be able to print the        10:48:11AM

18    standards that are incorporated by reference in

19    mind?                                               10:48:17AM

20        MR. BRIDGES:  Objection, vague and             10:48:19AM

21    ambiguous.                                          10:48:19AM

22        THE WITNESS:  It is important for people       10:48:19AM

23    to be able to use the law of the United

24    as they see fit in order to inform themselves       10:48:23AM

25    and others about their rights and

                                                            82

1    BY MR. FEE:                                      10:48:29AM

2         Q    Including printing?                    10:48:30AM

3         A    As they see fit.                       10:48:32AM

4         Q    Including printing or not?             10:48:33AM

5         A    It's as they see fit.                  10:48:35AM

6         Q    You can't answer that question?        10:48:37AM

7              MR. BRIDGES:  He's answered it, Counsel.10:48:39AM

8              THE WITNESS:  I did.                    10:48:41AM

9    BY MR. FEE:                                      10:48:41AM

10        Q    Is it important for people to be able to10:48:42AM

11   print standards incorporated by reference?       10:48:44AM

12             MR. BRIDGES:  Asked and answered.       10:48:50AM

13             THE WITNESS:  People should be able to

14        the law as they see fit.  If they see fit to 10:48:51AM

15        print, then they -- they should print.       10:48:53AM

16   BY MR. FEE:                                       10:48:55AM

17        Q    And you complain about the fact that    10:48:57AM

18   plaintiffs don't allow printing of electronic

19   of their standards --                             10:49:02AM

20             MR. BRIDGES:  Objection.                10:49:05AM

21   BY MR. FEE:                                       10:49:06AM

22        Q    -- right?                               10:49:06AM

23             MR. BRIDGES:  Objection, misstates the  10:49:07AM

24        document, misstates testimony, lacks         10:49:08AM

25        foundation, vague and ambiguous.             10:49:10AM

83

1          THE WITNESS:  I don't discuss printing
2      this document.                          10:49:16AM
3  BY MR. FEE:                                 10:49:17AM
4      Q    I didn't even reference that document in10:49:17AM
5  my question.                                10:49:19AM
6      A    Okay.  Well, then, please repeat the  10:49:19AM
7  question.                                   10:49:19AM
8      Q    I said you complain about the fact that 10:49:22AM
9  plaintiffs don't allow printing of electronic
10 of their standards --                        10:49:27AM
11          MR. BRIDGES:  Objection.            10:49:28AM
12 BY MR. FEE:                                  10:49:28AM
13     Q    -- don't you?                       10:49:28AM
14          MR. BRIDGES:  Objection, lacks
15      vague and ambiguous, argumentative.     10:49:30AM
16          THE WITNESS:  Yeah, "complain" is a
17      word, but I certainly pointed out that --
18      that inability to print is one of the
19      of -- of some of the places where the -- the 10:49:44AM
20      standards at issue are made available.  10:49:46AM
21 BY MR. FEE:                                  10:49:49AM
22     Q    And you seek to address that concern by 10:49:50AM
23 making standards available on your website that  10:49:54AM
24 could be printed without restriction; isn't that 10:49:57AM
25 true?                                        10:50:02AM

84

1        MR. BRIDGES:  I'm sorry.  Can you read   10:50:04AM

2     that question back?                          10:50:04AM

3                 (The reporter read the record    10:50:12AM

4                 as requested.)                    9:21:05AM

5        MR. BRIDGES:  I object to the extent      10:50:16AM

6     there's a loaded legal term in there that

7     for a legal conclusion, argumentative, vague 10:50:21AM

8     and ambiguous.                               10:50:24AM

9        THE WITNESS:  I intend to make the law    10:50:27AM

10    available for use without restriction, and

11    means that the users should be able to use

12    law as they see fit.                         10:50:35AM

13    BY MR. FEE:                                  10:50:37AM

14       Q    Turn to the next page of Exhibit 59, 10:50:38AM

15    please.  The Bates label ends in 365.        10:50:39AM

16       A    Yes.                                 10:50:50AM

17       Q    Second paragraph, second sentence on 10:50:55AM

18    page says, "if the code people get their way and 10:50:55AM

19    they're the only ones able to post the law on

20    read-only, no print, no save, no copy websites, 10:51:02AM

21    we've made a mockery of constitutional principles

22    due process, equal protection and the freedom of 10:51:09AM

23    speech."                                     10:51:12AM

24       Do you see that?                          10:51:13AM

25       A    I do see that.                       10:51:14AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

85

1      Q    Do you think it's important for the        10:51:18AM

2   citizens to be able to print their own copies of   10:51:19AM

3   standards incorporated by reference?               10:51:23AM

4      A    I think it's -- it's important for          10:51:27AM

5   citizens to be able to use the law without         10:51:29AM

6   restriction as they see fit.                       10:51:31AM

7      Q    Do you think it's important for them to

8   able to print the standards incorporated by        10:51:35AM

9   reference?                                          10:51:38AM

10          MR. BRIDGES:  Objection, asked and          10:51:39AM

11      answered.                                        10:51:40AM

12          THE WITNESS:  I think when it, says no       10:51:41AM

13      print, no save, those are restrictions on

14   BY MR. FEE:                                         10:51:45AM

15      Q    And your goal is to circumvent those        10:51:45AM

16   restrictions on use?                                10:51:54AM

17          MR. BRIDGES:  Objection, calls for a

18      conclusion, argumentative, assumes facts not

19      evidence, vague and ambiguous.                   10:51:55AM

20          THE WITNESS:  I'm not circumventing          10:51:57AM

21      anything.  I'm making the law available.         10:52:00AM

22   BY MR. FEE:                                         10:52:02AM

23      Q    Well, you understand that at least some

24   the code people, as you describe them here, make   10:52:05AM

25   standards available read-only, no print and no

86

| | | |
|---|---|---|
| 1 | right? | 10:52:11AM |
| 2 | MR. BRIDGES: Objection, lacks | |
| 3 | vague and ambiguous. | 10:52:14AM |
| 4 | THE WITNESS: Yes. | 10:52:16AM |
| 5 | BY MR. FEE: | 10:52:16AM |
| 6 | Q And Public Resource takes those same | 10:52:18AM |
| 7 | standards and makes them available so that they | |
| 8 | be printed without restriction and saved without | 10:52:25AM |
| 9 | restriction, correct? | 10:52:29AM |
| 10 | MR. BRIDGES: Objection, argumentative, | 10:52:32AM |
| 11 | calls -- argumentative, lacks foundation, | 10:52:32AM |
| 12 | assumes facts not in evidence, vague and | 10:52:33AM |
| 13 | ambiguous. | 10:52:35AM |
| 14 | THE WITNESS: Again, so that they can | |
| 15 | them as they see fit. | 10:52:38AM |
| 16 | BY MR. FEE: | 10:52:39AM |
| 17 | Q And they can print them as they see fit, | 10:52:40AM |
| 18 | correct? | 10:52:42AM |
| 19 | MR. BRIDGES: Object. All the same | 10:52:42AM |
| 20 | objections going back to the earlier ones. | 10:52:44AM |
| 21 | It's a misleading question, argumentative. | 10:52:46AM |
| 22 | THE WITNESS: It is my belief that there | 10:52:50AM |
| 23 | should be no restrictions on the use of the | |
| 24 | in the United States because in the United | 10:52:54AM |
| 25 | States the law has no copyright. | 10:52:55AM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

87

| | | |
|---|---|---|
| 1 | BY MR. FEE: | 10:52:57AM |
| 2 | Q    Isn't it true that visitors to your | 10:52:58AM |
| 3 | website can print as many copies of a standard as | 10:52:59AM |
| 4 | they like? | 10:53:03AM |
| 5 | MR. BRIDGES:  Objection, calls for | 10:53:04AM |
| 6 | hypothetical, vague and ambiguous, | 10:53:04AM |
| 7 | argumentative. | 10:53:05AM |
| 8 | THE WITNESS:  All I know is that users | 10:53:08AM |
| 9 | access data using the HTTP and FTP protocols | 10:53:10AM |
| 10 | and we transfer that information to their | 10:53:19AM |
| 11 | sites.  What they do with it, we don't know. | 10:53:21AM |
| 12 | BY MR. FEE: | 10:53:23AM |
| 13 | Q    You put no limitations on the ability to | 10:53:23AM |
| 14 | print any of plaintiffs' standards, correct? | 10:53:26AM |
| 15 | MR. BRIDGES:  Objection, argumentative, | 10:53:29AM |
| 16 | lacks foundation, vague and ambiguous. | 10:53:30AM |
| 17 | THE WITNESS:  That is correct. | 10:53:30AM |
| 18 | BY MR. FEE: | 10:53:30AM |
| 19 | Q    And you put no limitations on visitors | |
| 20 | your websites' ability to save versions of the | 10:53:33AM |
| 21 | standards that are owned by the plaintiffs? | 10:53:36AM |
| 22 | MR. BRIDGES:  Objection, argumentative, | 10:53:41AM |
| 23 | lacks foundation, assumes facts not in | 10:53:42AM |
| 24 | evidence, compound in its own way, vague and | 10:53:44AM |
| 25 | ambiguous. | 10:53:47AM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

88

```
1              THE WITNESS:  We impose no restrictions
2         use.                                    10:53:50AM
3    BY MR. FEE:                                   10:53:50AM
4         Q    And you impose no restrictions on saving10:53:50AM
5    plaintiffs' standards in this case?          10:53:53AM
6              MR. BRIDGES:  Same objections.     10:53:55AM
7              THE WITNESS:  We impose no restrictions
8         use and we don't qualify that term.     10:53:58AM
9    BY MR. FEE:                                   10:54:00AM
10        Q    And use would encompass printing and  10:54:00AM
11   saving; isn't that true?                     10:54:03AM
12             MR. BRIDGES:  Objection, argumentative, 10:54:06AM
13        vague and ambiguous.                     10:54:06AM
14             THE WITNESS:  If that's what the user  10:54:08AM
15        decides they -- they want to do with the law.10:54:10AM
16   BY MR. FEE:                                   10:54:12AM
17        Q    And, in fact, there's nothing that you
18   to prevent other parties from accessing standards
19   your website and then posting them on another  10:54:19AM
20   website, is there?                            10:54:21AM
21             MR. BRIDGES:  All the same objections.  10:54:24AM
22             THE WITNESS:  We impose no restrictions
23        use.                                     10:54:27AM
24   BY MR. FEE:                                   10:54:28AM
25        Q    So a visitor to your website could post
```

89

1     standard that they had received from your website

2     a different website, true?                      10:54:33AM

3          MR. BRIDGES:  Objection, hypothetical,   10:54:35AM

4          argumentative, lacks foundation, vague and  10:54:35AM

5          ambiguous.                                 10:54:37AM

6          THE WITNESS:  That's a hypothetical.  We 10:54:38AM

7          impose no restrictions on use.             10:54:40AM

8     BY MR. FEE:                                     10:54:41AM

9          Q    You can't answer that question?       10:54:41AM

10         A    They can do whatever they want.        10:54:43AM

11         MR. BRIDGES:  Excuse me.                    10:54:45AM

12         THE WITNESS:  I'm sorry.                    10:54:46AM

13         MR. BRIDGES:  All the same objections.      10:54:46AM

14    BY MR. FEE:                                     10:54:46AM

15         Q    If I asked you today to take a standard 10:54:47AM

16    from your website and post it on another website, 10:54:49AM

17    are you capable of doing that?                   10:54:52AM

18         MR. BRIDGES:  Objection, hypothetical,    10:54:54AM

19         argumentative, lacks foundation, vague and  10:54:55AM

20         ambiguous.                                 10:54:56AM

21         THE WITNESS:  I have a website.            10:54:59AM

22    BY MR. FEE:                                     10:55:00AM

23         Q    Yeah.  Are you capable of posting one of 10:55:00AM

24    the standards taken from your website on another  10:55:03AM

25    website?                                         10:55:06AM

102

| | | |
|---|---|---|
| 1 | Q    Do you know if this anonymous donor | 11:11:31AM |
| 2 | convinced the fire department that he was | 11:11:35AM |
| 3 | referencing to make a donation to Public Resource? | 11:11:38AM |
| 4 | MR. BRIDGES:  Lacks competence, calls | |
| 5 | speculation, vague and ambiguous. | 11:11:42AM |
| 6 | THE WITNESS:  I've never received any | 11:11:44AM |
| 7 | money from a fire department. | 11:11:45AM |
| 8 | BY MR. FEE: | 11:11:47AM |
| 9 | Q    Have you received any other e-mails that | 11:11:49AM |
| 10 | suggest that somebody is interested in making a | 11:11:54AM |
| 11 | donation in order to avoid paying for NFPA Codes? | 11:11:56AM |
| 12 | A    I don't recall. | 11:12:06AM |
| 13 | MR. BRIDGES:  By the way, right now on | |
| 14 | record I think that on Exhibit 60, the | |
| 15 | exhibit, I think there was an inadvertent | 11:12:13AM |
| 16 | failure to redact the individual's name.  So | |
| 17 | would want to claw that back and we can | 11:12:20AM |
| 18 | substitute for Exhibit 60 a substitute | |
| 19 | without the individual's name.  And that's | |
| 20 | reason why I've designated the transcript as | 11:12:36AM |
| 21 | confidential. | 11:12:39AM |
| 22 | BY MR. FEE: | 11:12:40AM |
| 23 | Q    Mr. Malamud, do you have any | |
| 24 | as to what quality control processes are in place | 11:13:33AM |
| 25 | with respect to ASTM and its standards? | 11:13:38AM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

103

1       MR. BRIDGES:  Objection, lacks
2    vague and ambiguous.                        11:13:45AM
3       THE WITNESS:  No, I do not.              11:13:46AM
4  BY MR. FEE:                                   11:13:48AM
5    Q   Is it fair to say, then, that you have
6  reason to believe that Public Resource's website  11:13:50AM
7  with HTML versions of ASTM standards underwent    11:13:56AM
8  ASTM's quality control procedures?             11:14:03AM
9       MR. BRIDGES:  I'm sorry.  I -- I think I11:14:10AM
10       heard the question correctly, but I'm not
11       I understand it.  So if the court reporter  11:14:15AM
12       could reread the question to me --       11:14:15AM
13       THE REPORTER:  Sure.                     11:14:15AM
14              (The reporter read the record  11:14:15AM
15                 as requested.)                  9:21:05AM
16       MR. BRIDGES:  Lacks foundation, assumes  11:14:30AM
17       facts not in evidence, argumentative, calls
18       speculation, vague and ambiguous.        11:14:43AM
19       THE WITNESS:  I have no idea what the
20       quality control procedures are.          11:14:48AM
21  BY MR. FEE:                                   11:14:50AM
22    Q   Did you engage in any efforts to comply  11:14:50AM
23  with ASTM quality control procedures before
24  any HTML versions of ASTM standards Public    11:14:56AM
25  Resource's website?                           11:14:59AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

                                                    104
1          MR. BRIDGES:  All the same objections.  11:15:03AM

2          THE WITNESS:  I have no idea what the

3      quality control procedures are.              11:15:06AM

4  BY MR. FEE:                                      11:15:07AM

5      Q    Did you attempt to identify what ASTM's 11:15:08AM

6  quality control procedures were before you started11:15:11AM

7  posting HTML versions of ASTM's standards on your 11:15:14AM

8  website?                                         11:15:17AM

9          MR. BRIDGES:  Objection, lacks

10      assumes facts not in evidence, vague and     11:15:20AM

11      ambiguous, argumentative.                    11:15:20AM

12          THE WITNESS:  No, I did not.             11:15:20AM

13  BY MR. FEE:                                      11:15:21AM

14      Q    Did you attempt to identify the quality 11:15:22AM

15  control standards of any of the plaintiffs before 11:15:24AM

16  you started posting HTML versions of their

17  on your website?                                 11:15:30AM

18          MR. BRIDGES:  All the same objections.  11:15:32AM

19          THE WITNESS:  What do you mean by

20      control standards," sir?                     11:15:35AM

21  BY MR. FEE:                                      11:15:37AM

22      Q    Do you have any idea what quality

23  is?                                              11:15:39AM

24          MR. BRIDGES:  Objection, relevance,

25      foundation, vague and ambiguous.             11:15:44AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

109

1    summarize quality control procedures that are          11:19:13AM

2    implemented by Public Resource?                        11:19:18AM

3              MR. BRIDGES:  Objection, vague and            11:19:20AM

4         ambiguous.                                          11:19:21AM

5              THE WITNESS:  No.                              11:19:22AM

6    BY MR. FEE:                                              11:19:22AM

7         Q    Are you aware of whatever quality             11:19:30AM

8    procedures are implemented by the plaintiffs in         11:19:30AM

9    connection with their development of standards?         11:19:33AM

10             MR. BRIDGES:  Objection, lacks

11        assumes facts not in evidence, vague and            11:19:39AM

12        ambiguous, argumentative.                           11:19:41AM

13             THE WITNESS:  I'm aware that two of the        11:19:44AM

14        publishers, NFPA and ASHRAE, frequently

15        errata when they find mistakes in their             11:19:52AM

16        standards.                                           11:19:56AM

17   BY MR. FEE:                                              11:19:56AM

18        Q    Is that the full extent of your

19   of the quality control procedures that have been        11:19:59AM

20   implemented by any of the plaintiffs?                    11:20:00AM

21             MR. BRIDGES:  All the same objections.         11:20:02AM

22             THE WITNESS:  I have read documents such11:20:09AM

23        as the ASTM style guide and other documents        11:20:11AM

24        that purport to describe the format and use

25        terms in standards.                                 11:20:22AM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

110

| | | |
|---|---|---|
| 1 | BY MR. FEE: | 11:20:27AM |
| 2 | Q    Anything else? | 11:20:27AM |
| 3 | MR. BRIDGES:  All the same objections. | 11:20:28AM |
| 4 | THE WITNESS:  That's all I can recall. | 11:20:29AM |
| 5 | BY MR. FEE: | 11:20:30AM |
| 6 | Q    You mentioned the ASTM style guide.  Did | 11:20:31AM |
| 7 | you consult the ASTM style guide while posting | |
| 8 | standards on your website? | 11:20:37AM |
| 9 | MR. BRIDGES:  Objection, lacks | |
| 10 | vague and ambiguous, argumentative. | 11:20:42AM |
| 11 | THE WITNESS:  I read the document. | 11:20:44AM |
| 12 | BY MR. FEE: | 11:20:45AM |
| 13 | Q    Did you consult the document while you | 11:20:45AM |
| 14 | were posting standards to make sure that the | 11:20:47AM |
| 15 | standards you were posting complied with the style | 11:20:50AM |
| 16 | guidelines? | 11:20:53AM |
| 17 | MR. BRIDGES:  Same objections. | 11:20:54AM |
| 18 | THE WITNESS:  Postings of standards | 11:20:56AM |
| 19 | incorporated by reference is done without any | 11:20:59AM |
| 20 | change to the documents.  What we do is take | 11:21:02AM |
| 21 | the document that was incorporated by | 11:21:05AM |
| 22 | reference, such as an ASTM standard, and post | 11:21:06AM |
| 23 | it exactly as it is on our website. | 11:21:09AM |
| 24 | BY MR. FEE: | 11:21:14AM |
| 25 | Q    There's no difference -- | 11:21:14AM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

116

1          Malamud.                                    11:26:17AM

2                    (Recess taken.)                   10:27:41AM

3               THE VIDEOGRAPHER:  We're back on the   11:45:37AM

4          record.  The time is 11:45 a.m.  This marks

5          beginning of Disc No. 2 in the deposition of 11:45:44AM

6          Carl Malamud.                               11:45:46AM

7     BY MR. FEE:                                      11:45:47AM

8          Q    Mr. Malamud, does Public Resource have

9     quality assurance procedure in place to avoid    11:45:50AM

10    posting upside-down copies or scans of standards? 11:45:54AM

11              MR. BRIDGES:  Objection, vague and      11:45:59AM

12         ambiguous.                                  11:46:00AM

13              THE WITNESS:  If I see an upside-down   11:46:04AM

14         scan, I will rotate it and make it not upside 11:46:06AM

15         down.                                       11:46:09AM

16    BY MR. FEE:                                      11:46:10AM

17         Q    Is there any mechanism in place to

18    to avoid posting pages upside down?              11:46:13AM

19         A    I examine the scans as I do them and see 11:46:17AM

20    if I scan them properly.                         11:46:20AM

21         Q    Is that it?                            11:46:24AM

22         A    That would be it.                      11:46:27AM

23         Q    I'm going to hand you Exhibit 62, which 

24    an e-mail chain between you and Rebecca Malamud,  11:47:18AM

25    Bates-labeled PRO_42334 through -35.             11:47:22AM

117

1        (Exhibit 62 marked for identification.)   11:47:57AM

2  BY MR. FEE:                                      11:47:57AM

3        Q    Do you identify Exhibit 62 as an e-mail 11:47:58AM

4  between you and Mrs. Malamud?                     11:48:00AM

5        A    Yes, it appears to be.                 11:48:02AM

6        Q    I want to draw your attention to, on the11:48:04AM

7  first page -- well, actually, before I do that I  11:48:05AM

8  just want to take a step back.                    11:48:06AM

9        Can you describe the circumstances under11:48:09AM

10  which this series of e-mails went back and forth  11:48:10AM

11  between your wife?                                11:48:14AM

12       A    Well, Rebecca asked me whether she

13  her to -- whether I wanted her to redraw a        11:48:23AM

14  particular illustration and she furnished an

15  of that, which is not -- not rendered in this     11:48:32AM

16  electronic mail message.                          11:48:34AM

17       Q    About midway through the first page, the11:48:51AM

18  one ending in 334, do you see there's an

19  at -- at January 28th, 2014 at 2:04 p.m. Ms.

20  wrote?                                            11:49:04AM

21       A    Yes.                                    11:49:06AM

22       Q    Okay.  And then below that it says --   11:49:06AM

23  first it says, "plus 1," and then it says,

24  I could see that image I sent to you reinterpreted11:49:12AM

25  in our, quote, house style, end quote,

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

120

| | | |
|---|---|---|
| 1 | no damages claim in this case? | 11:51:06AM |
| 2 | A    I do. | 11:51:08AM |
| 3 | Q    Then you continue by saying "and how | 11:51:11AM |
| 4 | absolutely critically important it is that you do | 11:51:14AM |
| 5 | exactly what I ask you to do, which is an exact | 11:51:17AM |
| 6 | copy." | 11:51:21AM |
| 7 | Do you see that? | 11:51:21AM |
| 8 | A    I do. | 11:51:22AM |
| 9 | Q    Okay.  And did you, in fact, tell | 11:51:22AM |
| 10 | Ms. Malamud prior to this e-mail that she was to | 11:51:25AM |
| 11 | make exact copies of everything you sent to her? | 11:51:28AM |
| 12 | A    Since day one of the project of JPG to | 11:51:32AM |
| 13 | SVG, the instructions have been very explicit, do | |
| 14 | exact replica or don't do it. | 11:51:41AM |
| 15 | Q    Exact copy is what you said here, right? | 11:51:43AM |
| 16 | MR. BRIDGES:  Objection to the extent | 11:51:45AM |
| 17 | you're trying to import legal -- specific | |
| 18 | terminology here calling for a legal | 11:51:51AM |
| 19 | conclusion.  If you're asking his lay sense, | |
| 20 | is merely vague and ambiguous. | 11:51:56AM |
| 21 | THE WITNESS:  That was a phrase Rebecca | 11:51:59AM |
| 22 | used and then I repeated it in a message.  An | 11:52:00AM |
| 23 | exact replica is -- is the term that I would | 11:52:05AM |
| 24 | use. | 11:52:07AM |
| 25 | BY MR. FEE: | 11:52:07AM |

127

| | | |
|---|---|---|
| 1 | THE REPORTER:  63. | 11:59:47AM |
| 2 | (Exhibit 63 marked for identification.) | 11:59:49AM |
| 3 | BY MR. FEE: | 11:59:50AM |
| 4 | Q    Mr. Malamud, I'm going to hand you | |
| 5 | 63, which is, I believe, a printout of the PDF | 11:59:52AM |
| 6 | version of ASTM Standard D86-07 from your website. | 11:59:57AM |
| 7 | A    Okay. | 12:01:10PM |
| 8 | Q    Can you identify Exhibit 63 as a | |
| 9 | of ASTM Standard D86-07 from your website? | 12:01:15PM |
| 10 | MR. BRIDGES:  Objection, lacks -- may | |
| 11 | for speculation, vague and ambiguous. | 12:01:24PM |
| 12 | THE WITNESS:  It appears to be.  I would | 12:01:27PM |
| 13 | want to verify it. | 12:01:33PM |
| 14 | BY MR. FEE: | 12:01:34PM |
| 15 | Q    You have no reason to doubt that it is a | 12:01:34PM |
| 16 | copy from your website, do you? | 12:01:37PM |
| 17 | MR. BRIDGES:  Objection, argumentative, | 12:01:39PM |
| 18 | lacks foundation, vague and ambiguous. | 12:01:40PM |
| 19 | THE WITNESS:  I don't know what it | |
| 20 | to be. | 12:01:43PM |
| 21 | BY MR. FEE: | 12:01:43PM |
| 22 | Q    Okay.  I'm going to hand you Exhibit 64, | 12:01:44PM |
| 23 | which appears to be an HTML version of ASTM | |
| 24 | D86-07. | 12:02:03PM |
| 25 | (Exhibit 64 marked for identification.) | 12:02:11PM |

Capital Reporting Company
Malamud, Carl (Confidential) 02-27-2015

128

| | | |
|---|---|---|
| 1 | THE WITNESS: Okay. | 12:03:06PM |
| 2 | BY MR. FEE: | 12:03:06PM |
| 3 | Q Can you identify Exhibit 64 as a | |
| 4 | from Public Resource's website of ASTM Standard | 12:03:10PM |
| 5 | D86-07? | 12:03:15PM |
| 6 | MR. BRIDGES: Objection, may call for | 12:03:16PM |
| 7 | speculation, competence and lacks foundation, | 12:03:18PM |
| 8 | vague and ambiguous. | 12:03:23PM |
| 9 | THE WITNESS: It appears to be. | 12:03:25PM |
| 10 | BY MR. FEE: | 12:03:27PM |
| 11 | Q Okay. The footer at the bottom of Page | 12:03:27PM |
| 12 | 64 -- or bottom of the first page of Exhibit 64 | |
| 13 | an address. Do you see that? | 12:03:37PM |
| 14 | A Yes, I do. | 12:03:39PM |
| 15 | Q Is that the address where you would | |
| 16 | to find ASTM Standard D86-07 on Public Resource's | 12:03:41PM |
| 17 | website? | 12:03:47PM |
| 18 | A Yes. | 12:03:48PM |
| 19 | Q If you turn to Exhibit 63 again for a | 12:03:50PM |
| 20 | second -- | 12:03:53PM |
| 21 | A Uh-huh. | 12:03:57PM |
| 22 | Q -- I want to ask you to turn to Page 18 | |
| 23 | that exhibit. | 12:03:59PM |
| 24 | A Yes, I'm there. | 12:04:11PM |
| 25 | Q Is the diagram on Page 18 or the entire | 12:04:12PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

129

| | | |
|---|---|---|
| 1 | page upside down? | 12:04:15PM |
| 2 | MR. BRIDGES:  I don't think that's Page | |
| 3 | of the exhibit. | 12:04:18PM |
| 4 | MR. FEE:  No, it's Page 18 of the | 12:04:19PM |
| 5 | standard. | 12:04:21PM |
| 6 | THE WITNESS:  The page marked 18? | 12:04:22PM |
| 7 | BY MR. FEE: | 12:04:23PM |
| 8 | Q    Yes. | 12:04:24PM |
| 9 | A    It is upside down in this printed copy, | 12:04:28PM |
| 10 | yes. | 12:04:30PM |
| 11 | Q    And if it was upside down on your | |
| 12 | would that be a mistake? | 12:04:33PM |
| 13 | MR. BRIDGES:  Objection, lacks | |
| 14 | hypothetical, vague and ambiguous. | 12:04:37PM |
| 15 | THE WITNESS:  I don't know if it is | |
| 16 | down. | 12:04:48PM |
| 17 | BY MR. FEE: | 12:04:48PM |
| 18 | Q    Have you tried to put all the pages | |
| 19 | side up on your website? | 12:04:52PM |
| 20 | A    I do. | 12:04:54PM |
| 21 | Q    Okay.  And so if one is upside down, | |
| 22 | somehow slipped through your quality control | 12:04:58PM |
| 23 | procedures? | 12:05:01PM |
| 24 | MR. BRIDGES:  Objection, hypothetical, | 12:05:01PM |
| 25 | lacks foundation, vague and ambiguous. | 12:05:02PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

130

1           THE WITNESS:  If it -- if it is, in

2      upside down, yes, that -- that is something    12:05:07PM

3      that if it was pointed out to me, I would --

4      would correct.                                 12:05:13PM

5  BY MR. FEE:                                        12:05:14PM

6      Q    Mr. Malamud, would you turn to in

7  63 the page that's marked as Page 14 of the        12:05:53PM

8  standard?                                          12:06:01PM

9      A    Okay.                                      12:06:07PM

10     Q    Actually, Mr. Malamud, if you turn to

11 13 -- Page No. 13 at the bottom.                    12:07:10PM

12     A    Okay.                                       12:07:12PM

13     Q    Do you see there's a chart at the top of12:07:13PM

14 that page, Table 6?                                 12:07:15PM

15          MR. BRIDGES:  I'm sorry.  My exhibit       12:07:20PM

16     doesn't have a Page 13.                         12:07:21PM

17          THE WITNESS:  Are you sure?                12:07:27PM

18          MR. BRIDGES:  I'm correct, yeah.           12:07:28PM

19          THE WITNESS:  No, it's there.              12:07:29PM

20          MR. BRIDGES:  No, I'm sorry.  I -- I go    12:07:29PM

21     from -- oh, that's okay.  I guess it's          12:07:30PM

22     backwards.  That may have been a quality        12:07:36PM

23     control issue with this exhibit.                12:07:38PM

24 BY MR. FEE:                                         12:07:41PM

25     Q    The -- do you see Table 6 in the

131

| | | |
|---|---|---|
| 1 | in document -- Exhibit 63? | 12:07:44PM |
| 2 | A    Okay.  So 63 is the printed version. | 12:07:49PM |
| 3 | Q    Right. | 12:07:52PM |
| 4 | A    And you are on Page 13? | 12:07:52PM |
| 5 | Q    Right, Table 6 at the top of the page. | 12:07:54PM |
| 6 | A    It says Table 8. | 12:07:56PM |
| 7 | Q    I'm sorry.  Table 8.  You're right? | 12:07:59PM |
| 8 | A    Yes. | 12:08:02PM |
| 9 | Q    At the bottom of that table you'll see | 12:08:03PM |
| 10 | there's some sort of notation.  It appears to say | |
| 11 | or SF is the average slope or rate of change | 12:08:09PM |
| 12 | calculated in accordance with 13.2. | 12:08:13PM |
| 13 | A    That is what it says. | 12:08:20PM |
| 14 | Q    Okay.  I want you to take a look at | 12:08:21PM |
| 15 | Exhibit 64, which is the HTML version of the | 12:08:23PM |
| 16 | standard, and if you'd turn to Page 15 of 28 -- do | 12:08:29PM |
| 17 | you see the page numbers at the top? | 12:08:35PM |
| 18 | A    Yes. | 12:08:37PM |
| 19 | Q    Do you see the same chart or table, | |
| 20 | 8? | 12:08:41PM |
| 21 | A    Yes, I do. | 12:08:44PM |
| 22 | Q    Okay.  I want to look at the same | |
| 23 | in the HTML version that we just read in the PDF | 12:08:47PM |
| 24 | version.  Do you see it says, "SG or SF is the | 12:08:51PM |
| 25 | average slope or rate of change calculated in | 12:08:53PM |

                                                                    132

1    accordance with 13.2"?                              12:08:57PM

2         A    Yes.                                       12:08:58PM

3         Q    So do you agree with me that that

4    in the PDF version that's marked as 63 is

5    than the language in the HTML version marked as 64?

6         A    There is one letter difference, yes.      12:09:11PM

7         Q    Okay.  Do you know how that happened?     12:09:12PM

8         A    It was a mistake.                          12:09:20PM

9         Q    If you would turn in the PDF version to   12:10:00PM

10   Page No. 22 of the standard.                         12:10:02PM

11        A    Okay.                                      12:10:12PM

12        Q    Do you see on the right-hand side there

13   Figure X1.1?                                         12:10:14PM

14        A    Yes.                                       12:10:17PM

15        Q    And in the second row, do you see that    12:10:18PM

16   there is a -- what appears to be a Celsius measure   12:10:21PM

17   for that table?                                      12:10:25PM

18        A    Oh, gosh.  Second column?                  12:10:28PM

19        Q    Right.  Column.  You're right.  I         12:10:31PM

20   apologize.                                           12:10:32PM

21        A    Yes.                                       12:10:34PM

22             MR. BRIDGES:  I'm sorry.  Where -- where  12:10:34PM

23        on Exhibit 64 are we looking?                  12:10:34PM

24             MR. FEE:  63.                              12:10:39PM

25             MR. BRIDGES:  I get 63, but --            12:10:39PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

133

| | | |
|---|---|---|
| 1 | MR. FEE:  We're not on 64 yet. | 12:10:43PM |
| 2 | MR. BRIDGES:  Okay. | 12:10:44PM |
| 3 | THE WITNESS:  No, we're not on 64. | 12:10:45PM |
| 4 | MR. BRIDGES:  Sorry.  What was the | 12:10:45PM |
| 5 | question again? | 12:10:45PM |
| 6 | BY MR. FEE: | 12:10:46PM |
| 7 | Q    In exhibit -- well, in the second column | 12:10:46PM |
| 8 | in the cell that corresponds to 90 percent | 12:10:48PM |
| 9 | recovered, do you see there's a number there that | 12:10:54PM |
| 10 | says 200.4? | 12:10:57PM |
| 11 | A    I'm sorry.  I was not paying attention. | 12:11:03PM |
| 12 | Where are we looking? | 12:11:05PM |
| 13 | Q    For 90 percent recovered, the cell that | 12:11:07PM |
| 14 | corresponds with the second column, it says, | 12:11:10PM |
| 15 | "200.4."  Do you see that? | 12:11:12PM |
| 16 | A    That's the one that's underlined? | 12:11:14PM |
| 17 | Q    Yes. | 12:11:16PM |
| 18 | A    Did you underline that? | 12:11:17PM |
| 19 | Q    Yes. | 12:11:18PM |
| 20 | A    It says, "200.4." | 12:11:18PM |
| 21 | Q    Correct.  Now, if you would turn to | 12:11:20PM |
| 22 | Exhibit 64, Page 23 of 28 -- | 12:11:21PM |
| 23 | A    Uh-huh. | 12:11:29PM |
| 24 | Q    -- do you see you have Figure X.1 or X1.1? | |
| 25 | A    Yes. | 12:11:36PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

134

1      Q    Okay.  And in the cell that corresponds

2    90 percent recovered in the second column, do you      12:11:42PM

3    see there's a 2, then a letter 0, then the number

4    then .4?                                                12:11:48PM

5      A    I see 200.4, yes.                                12:11:52PM

6      Q    Are you suggesting that both those are          12:11:55PM

7    zeros?                                                  12:11:58PM

8           MR. BRIDGES:  Objection.  The document          12:12:00PM

9       speaks for itself.                                  12:12:02PM

10          THE WITNESS:  It's a round oval.                12:12:03PM

11   BY MR. FEE:                                             12:12:10PM

12     Q    Okay.                                            12:12:12PM

13     A    Uh-huh.                                          12:12:12PM

14     Q    So you don't consider that to be a              12:12:12PM

15   mistake?                                                12:12:14PM

16     A    I don't know.                                    12:12:16PM

17     Q    You don't know?                                  12:12:19PM

18     A    I mean, this is a whole series of

19   in that column and this one is 200.4.  I think

20   pretty clear --                                         12:12:30PM

21     Q    Okay.                                            12:12:31PM

22     A    -- what the value is.                            12:12:31PM

23     Q    Let's turn back to Exhibit 63, the PDF          12:12:32PM

24   version of this standard.  On Page 24 of Exhibit

25   at the top of that page, do you see a Figure X3.1?12:13:09PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

135

| | | |
|---|---|---|
| 1 | A    I do. | 12:13:14PM |
| 2 | Q    I'd like to draw your attention to the | 12:13:17PM |
| 3 | cell that corresponds to the number of units being | 12:13:19PM |
| 4 | three, and -- and it's in the second row.  Do you | 12:13:23PM |
| 5 | see it says, "1.15"? | 12:13:27PM |
| 6 | A    The second column "1.15," yes. | 12:13:31PM |
| 7 | Q    All right.  Now, let's look at Exhibit | |
| 8 | your HTML version.  If you go to Page 24 of 28, do | 12:13:36PM |
| 9 | you see the exhibit -- or Figure X3.1?  It starts | |
| 10 | Page 24 of 28 and carries over to Page 25 of 28. | |
| 11 | you see that? | 12:14:02PM |
| 12 | A    Yes, I do. | 12:14:03PM |
| 13 | Q    All right.  And then in the cell that | 12:14:03PM |
| 14 | corresponds to units of three and in the second | 12:14:05PM |
| 15 | column, it says, "1.16."  Do you see that? | 12:14:07PM |
| 16 | A    I do. | 12:14:11PM |
| 17 | Q    Okay.  And in the original PDF, it says, | 12:14:12PM |
| 18 | "1.15" in that same place, correct? | 12:14:15PM |
| 19 | A    It does. | 12:14:20PM |
| 20 | Q    Okay.  Is that a mistake? | 12:14:20PM |
| 21 | A    Those numbers are different. | 12:14:21PM |
| 22 | Q    Did you intend for them to be different? | 12:14:24PM |
| 23 | MR. BRIDGES:  Objection, lacks | |
| 24 | vague and ambiguous. | 12:14:27PM |
| 25 | THE WITNESS:  They should be the same. | 12:14:30PM |

Capital Reporting Company
Malamud, Carl (Confidential) 02-27-2015

136

| | | |
|---|---|---|
| 1 | BY MR. FEE: | 12:14:33PM |
| 2 | Q All right. Let's go back to Table X3.1 | |
| 3 | the PDF version, which is 63, and just move down | |
| 4 | rows to the cell that corresponds with 5? | 12:14:46PM |
| 5 | A Uh-huh. | 12:14:50PM |
| 6 | Q Do you see it says, 1.98 -- or "1.58"? | 12:14:51PM |
| 7 | I'm sorry. | 12:14:55PM |
| 8 | A Really? That looks like a 1.68 to me. | 12:14:59PM |
| 9 | Q Does it? Okay. | 12:15:02PM |
| 10 | MR. BRIDGES: Yeah, it does to me too. | 12:15:03PM |
| 11 | BY MR. FEE: | 12:15:05PM |
| 12 | Q All right. Let's go over -- | 12:15:06PM |
| 13 | MR. BRIDGES: Are you saying -- is it | |
| 14 | representation that it's 1.58? | 12:15:08PM |
| 15 | MR. FEE: I'm just reading it like the | 12:15:11PM |
| 16 | rest of you guys. If you don't -- | 12:15:12PM |
| 17 | MR. BRIDGES: Yeah, well, we're reading | |
| 18 | 1.68. | 12:15:14PM |
| 19 | MR. FEE: That -- that's fine. | 12:15:16PM |
| 20 | BY MR. FEE: | 12:15:16PM |
| 21 | Q Let's look at the cell that corresponds | |
| 22 | Unit 4 and is in the third column. Do you see -- | 12:15:19PM |
| 23 | well, why don't you tell me what number that is. | 12:15:29PM |
| 24 | A These old standards are such poor print | 12:15:37PM |
| 25 | quality. It looks like a 1.56 would be my guess. | |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

137

| | | |
|---|---|---|
| 1 | would want to magnify that, however, before | 12:15:45PM |
| 2 | answering that definitively. | 12:15:48PM |
| 3 | Q    All right.  It looks like a 1.56 to me | 12:15:51PM |
| 4 | too. | 12:15:54PM |
| 5 | Let's look at Exhibit 64, the HTML | 12:15:54PM |
| 6 | version.  In that same column do you see that the | 12:15:57PM |
| 7 | HTML version says that the number is 1.66? | 12:16:01PM |
| 8 | A    It does. | 12:16:05PM |
| 9 | Q    So that's different than how you read | |
| 10 | PDF version, at least without a magnifying glass? | 12:16:11PM |
| 11 | A    Yeah, I would definitely want to pull up | |
| 12 | magnifying glass on something like that. | 12:16:19PM |
| 13 | Q    Okay.  Let's go back to the PDF version, | 12:16:21PM |
| 14 | Exhibit 64.  In the cell that corresponds with | |
| 15 | 8 in the second column, what number does that say? | 12:16:28PM |
| 16 | MR. BRIDGES:  I'm sorry.  What was the | 12:16:37PM |
| 17 | question again? | 12:16:37PM |
| 18 | THE WITNESS:  What's the number in -- | |
| 19 | sorry. | 12:16:40PM |
| 20 | (The reporter read the record | 12:16:50PM |
| 21 | as requested.) | 9:21:05AM |
| 22 | THE WITNESS:  I see a 2.4, and again, I | 12:16:52PM |
| 23 | can't really make out what's there. | 12:16:55PM |
| 24 | BY MR. FEE: | 12:16:59PM |
| 25 | Q    I'm sorry.  You can't read that one? | 12:16:59PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

138

1      A    Again, without magnifying it, I can't.  12:17:08PM

2    It's a 2.4 and then something.                12:17:09PM

3           MR. FEE:  I'm sorry.  What was the     12:17:12PM

4    question again?                               12:17:13PM

5                   (The reporter read the record  12:17:14PM

6                    as requested.)                 9:21:05AM

7           MR. BRIDGES:  Unit 8?                   12:17:28PM

8           THE REPORTER:  Yep.                     12:17:28PM

9           MR. BRIDGES:  Okay.  I -- I believe that12:17:29PM

10    the witness may have been looking at the

11    line.                                        12:17:33PM

12           THE WITNESS:  Unit 8, Column 2, 2.4?   12:17:36PM

13    Is -- am I --                                 12:17:40PM

14    BY MR. FEE:                                   12:17:43PM

15      Q    Yeah.  2.47 is what it looks like to me.12:17:43PM

16      A    Yeah, it's a 2.4 -- it could be a 6, it 12:17:48PM

17    could be something else.  It might be a 6.    12:17:50PM

18      Q    Okay.  If you're not sure, we'll move on12:17:52PM

19    to another one.  There's plenty of these.     12:17:54PM

20           Look in the cell that corresponds to

21    1.  The 12th column, do you see there is a 0.86 --12:18:00PM

22    oh, I'm sorry -- 0.84?                        12:18:16PM

23      A    Which column?                          12:18:22PM

24      Q    I think it's the 12th column.          12:18:24PM

25      A    Yes, I do.                             12:18:26PM

139

| | | |
|---|---|---|
| 1 | Q    Do you see 0.84?  Now, if we go back to | 12:18:29PM |
| 2 | the HTML version, Exhibit 64, do you see that it | 12:18:32PM |
| 3 | says 0.86 in that same place? | 12:18:37PM |
| 4 | A    It does. | 12:18:41PM |
| 5 | Q    So is that a mistake? | 12:18:43PM |
| 6 | MR. BRIDGES:  Objection, lacks | |
| 7 | vague and ambiguous. | 12:18:46PM |
| 8 | THE WITNESS:  Yes. | 12:18:51PM |
| 9 | BY MR. FEE: | 12:18:52PM |
| 10 | Q    Do you know what the significance of any | 12:18:54PM |
| 11 | of these numbers are in this table? | 12:18:56PM |
| 12 | MR. BRIDGES:  Objection, lacks | |
| 13 | assumes facts not in evidence, vague and | 12:19:02PM |
| 14 | ambiguous. | 12:19:09PM |
| 15 | THE WITNESS:  Figure X3.1 can be used to | 12:19:09PM |
| 16 | determine the corrected loss from the | |
| 17 | loss in the barometric pressure in QPAs. | 12:19:17PM |
| 18 | BY MR. FEE: | 12:19:25PM |
| 19 | Q    Do you know what that means? | 12:19:25PM |
| 20 | A    I would have to read the standard. | 12:19:27PM |
| 21 | Q    Okay.  Would you expect to see | |
| 22 | mistakes in some of these tables in this standard | |
| 23 | the HTML version? | 12:19:36PM |
| 24 | A    Given what you've pointed out, I would | 12:19:39PM |
| 25 | want to do a -- a -- a rigorous quality assurance | 12:19:41PM |

140

1    check on this particular standard.                    12:19:43PM

2         Q    Would Exhibit 64 have gone through

3    Resource's ordinary quality control standards or  12:19:56PM

4    procedures prior to being posted on the Internet? 12:20:02PM

5              MR. BRIDGES:  Objection, hypothetical,  12:20:06PM

6         vague and ambiguous, argumentative, lacks    12:20:07PM

7         foundation.                                   12:20:09PM

8              THE WITNESS:  I would expect so.         12:20:10PM

9    BY MR. FEE:                                        12:20:11PM

10        Q    So do you have any reason to believe     12:20:15PM

11   Exhibit 64 did not go through the ordinary quality12:20:15PM

12   control standards or quality controls at Public   12:20:19PM

13   Resource?                                          12:20:21PM

14             MR. BRIDGES:  Same objections.           12:20:22PM

15             THE WITNESS:  I don't know.  I -- I      12:20:22PM

16        have to research when it was done, what batch12:20:25PM

17        it was in and -- and see what was going on.   12:20:29PM

18   BY MR. FEE:                                        12:20:32PM

19        Q    Are these many mistakes in a particular  12:20:42PM

20   standard acceptable from your perspective?         12:20:43PM

21             MR. BRIDGES:  Same objections.           12:20:47PM

22             THE WITNESS:  No.  If anybody notified   12:20:47PM

23        of these, I would do rigorous QA check again  12:20:53PM

24        and would correct any mistakes that were in   12:20:55PM

25        there.                                         12:20:57PM

                                                                    141

1    BY MR. FEE:                                            12:20:58PM

2         Q    Do you have any explanation as to why        12:20:58PM

3    there are these mistakes in Exhibit 64?                12:21:00PM

4              MR. BRIDGES:  Objection, lacks

5         vague and ambiguous, argumentative.               12:21:04PM

6              THE WITNESS:  No.                             12:21:07PM

7    BY MR. FEE:                                            12:21:07PM

8         Q    You're aware of additional mistakes that     12:21:24PM

9    have been made in the standards that you posted

10   were originally published by one of the plaintiffs     12:21:30PM

11   in this case, aren't you?                              12:21:32PM

12             MR. BRIDGES:  Objection, lacks

13        assumes facts not in evidence, argumentative,     12:21:36PM

14        vague and ambiguous.                              12:21:37PM

15             THE WITNESS:  You'd have to refresh my       12:21:40PM

16        memory on specifics.                              12:21:42PM

17   BY MR. FEE:                                            12:21:42PM

18        Q    Are you aware that there's at least one      12:21:44PM

19   additional mistake that's been made in one of the      12:21:47PM

20   plaintiffs' standards other than the ones we just      12:21:49PM

21   identified?                                            12:21:51PM

22             MR. BRIDGES:  Same objections.               12:21:52PM

23             THE WITNESS:  I told you about the one       12:21:53PM

24        that I recollect which is the missing page        12:21:54PM

25        issue.                                            12:21:56PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

142

| | | |
|---|---|---|
| 1 | BY MR. FEE: | 12:21:56PM |
| 2 | Q    Is that the only other mistake that | |
| 3 | aware of? | 12:21:59PM |
| 4 | MR. BRIDGES:  Same objections. | 12:22:00PM |
| 5 | THE WITNESS:  That I can recollect. | 12:22:01PM |
| 6 | MS. RUBEL:  Is this 65? | 12:22:26PM |
| 7 | THE REPORTER:  Yes. | 12:22:28PM |
| 8 | (Exhibit 65 marked for identification.) | 12:22:28PM |
| 9 | BY MR. FEE: | 12:22:29PM |
| 10 | Q    Mr. Malamud -- I'm sorry.  Mr. Malamud, | 12:22:29PM |
| 11 | I'm going to hand you Exhibit 65, which is an e- | |
| 12 | from you to a redacted person, Bates-labeled | 12:22:34PM |
| 13 | PRO_221842. | 12:22:37PM |
| 14 | A    Okay. | 12:23:00PM |
| 15 | Q    First of all, can you identify Exhibit | |
| 16 | as an e-mail that you sent to some donor or | 12:23:04PM |
| 17 | potential donor? | 12:23:07PM |
| 18 | A    It appears to be e-mail from me to -- | 12:23:08PM |
| 19 | MR. BRIDGES:  I need time to object. | 12:23:11PM |
| 20 | Objection, lacks foundation, vague and | 12:23:13PM |
| 21 | ambiguous. | 12:23:15PM |
| 22 | THE WITNESS:  It appears to be e-mail | |
| 23 | me to redacted. | 12:23:19PM |
| 24 | BY MR. FEE: | 12:23:20PM |
| 25 | Q    Do you know the name of the person who | |

Capital Reporting Company
Malamud, Carl (Confidential) 02-27-2015

143

| | | | |
|---|---|---|---|
| 1 | | redacted without telling me the name? | 12:23:23PM |
| 2 | A | I can't -- no. | 12:23:28PM |
| 3 | Q | Now, in this e-mail, the re: line is | |
| 4 | | Is that referring to this lawsuit that we're here | 12:23:38PM |
| 5 | | today about? | 12:23:40PM |
| 6 | A | Might be. | 12:23:43PM |
| 7 | Q | Okay. If you look below the re: line it | 12:23:44PM |
| 8 | | says, "in case you're interested about the | |
| 9 | | at issue, here's a good look." Then you have | |
| 10 | | addresses there, correct? | 12:23:53PM |
| 11 | A | That's correct. | 12:23:55PM |
| 12 | Q | And they reference the standards of the | 12:23:57PM |
| 13 | | three plaintiffs in this case, don't they? | 12:24:00PM |
| 14 | A | Those are Google searches for the term | 12:24:04PM |
| 15 | | NFPA, on the site Law.Resource.Org, so any | 12:24:06PM |
| 16 | | occurrence of that phrase would come up in that | 12:24:11PM |
| 17 | | Google search. | 12:24:14PM |
| 18 | Q | Okay. Then below that you say, "I | 12:24:15PM |
| 19 | | screwed up some of the PDFs and some of the SEO | 12:24:17PM |
| 20 | | stuff." | 12:24:21PM |
| 21 | | Do you see that? | 12:24:21PM |
| 22 | A | I do. | 12:24:21PM |
| 23 | Q | Okay. How did you screw up some of the | 12:24:21PM |
| 24 | | PDFs and some of the SEO stuff? | 12:24:26PM |
| 25 | | MR. BRIDGES: Objection, vague and | 12:24:29PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

147

1    process as effectively as you would have liked?      12:27:39PM

2        A    The tool I use for doing OCR is Adobe      12:27:43PM

3    Acrobat Pro, which has a batch option, and it         12:27:46PM

4    appears there are occasions when the OCR batch       12:27:51PM

5    option crashes, meaning that some of the files in    12:27:54PM

6    the batch have OCR and others did not.                12:27:57PM

7        Q    And that happened in connection with the   12:28:03PM

8    posting of some of plaintiffs' standards?             12:28:05PM

9            MR. BRIDGES:  Objection, vague and           12:28:10PM

10       ambiguous.                                        12:28:11PM

11           THE WITNESS:  Yes.  I did discover some      12:28:12PM

12       standards in which it appeared OCR had not

13       completed.                                        12:28:17PM

14   BY MR. FEE:                                           12:28:17PM

15       Q    How did that come to your attention?        12:28:18PM

16       A    I pulled up the document and noticed        12:28:21PM

17   that -- that you could not select a piece of text,   12:28:24PM

18   which is an indication that OCR is present.          12:28:28PM

19       Q    So besides the missing page and the        12:28:32PM

20   problems with the OCR, are you aware of any other    12:28:36PM

21   screwups with respect to PDFs of plaintiffs'         12:28:42PM

22   standards that were posted on your website?         12:28:45PM

23       A    Well, missing pages.  We saw the page

24   was upside down.  We saw two pages that were --

25   flipped.  So those are examples of things one can

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

148

| | | |
|---|---|---|
| 1 | wrong with a PDF file. | 12:29:00PM |
| 2 | Q    To your knowledge, did all those | |
| 3 | or screwups take place with respect to at least | |
| 4 | of the plaintiffs' standards? | 12:29:11PM |
| 5 | MR. BRIDGES:  Objection, confusing, | |
| 6 | and ambiguous, lacks foundation. | 12:29:18PM |
| 7 | THE WITNESS:  Well certainly, the | 12:29:23PM |
| 8 | upside-down page occurred with an ASTM | |
| 9 | because you just showed it to me.  The missed | 12:29:28PM |
| 10 | page in the scan issue I don't know -- I -- I | 12:29:32PM |
| 11 | forget where that occurred. | 12:29:34PM |
| 12 | BY MR. FEE: | 12:29:36PM |
| 13 | Q    Would -- and you did say already that | |
| 14 | problem with OCR'ing happened at least in part | |
| 15 | some of the plaintiffs' standards, right? | 12:29:43PM |
| 16 | MR. BRIDGES:  Objection, argumentative, | 12:29:45PM |
| 17 | lacks foundation, vague and ambiguous. | 12:29:45PM |
| 18 | THE WITNESS:  Yes, there were a couple | 12:29:48PM |
| 19 | ASTM standards I discovered. | 12:29:49PM |
| 20 | THE REPORTER:  66. | 12:29:51PM |
| 21 | (Exhibit 66 marked for identification.) | 11:31:27AM |
| 22 | BY MR. FEE: | 12:29:51PM |
| 23 | Q    I'm going to hand you Exhibit 66, which | |
| 24 | an e-mail from you to John Gilmore, Bates-labeled | 12:31:10PM |
| 25 | PRO_211466. | 12:31:14PM |

172

1        legal conclusion, vague and ambiguous,        1:02:25PM

2        argumentative.                                1:02:27PM

3             THE WITNESS:  I -- I'm aware that he sent1:02:27PM

4        me a copy of this document that says ASTM     1:02:29PM

5        license agreement.                            1:02:32PM

6   BY MR. FEE:                                        1:02:34PM

7        Q    And did you understand that to be because1:02:35PM

8   he was accessing the ASTM standards you asked him

9   access subject to these terms?                     1:02:41PM

10            MR. BRIDGES:  Same objections.            1:02:44PM

11            THE WITNESS:  I don't know why he sent me1:02:48PM

12        the ASTM license agreement, frankly.          1:02:50PM

13   BY MR. FEE:                                        1:02:53PM

14        Q    Mr. Malamud, I'm going to hand you

15   69, which is a chain of e-mails between you and    1:03:47PM

16   Mr. Hall, Bates-labeled PRO_167210 through -11.    1:03:49PM

17        (Exhibit 69 marked for identification.)       1:03:55PM

18            THE WITNESS:  Yes, this appears to be an 1:04:21PM

19        exchange between me and Mr. Hall.             1:04:22PM

20   BY MR. FEE:                                        1:04:24PM

21        Q    I want to draw your attention to the top 1:04:24PM

22   of the first page of Exhibit 69.  Do you see

23   an e-mail from you to Mr. Hall?                    1:04:28PM

24        A    I do.                                    1:04:30PM

25        Q    First I want to look at the last couple  1:04:31PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

177

1    Q    Now, getting back to the e-mail, Exhibit    1:07:52PM

2   69, you say you want to look -- "I'd like to look    

3   the docs, but under two provisos: one, you need to    1:07:59PM

4   stay anonymous and mum on this, no bragging about    1:08:04PM

5   it, talking about it, and I'm not going to do that    1:08:08PM

6   either."    1:08:11PM

7        Do you see that?    1:08:11PM

8    A    Yes.    1:08:12PM

9    Q    Why was it important that this be done    1:08:13PM

10   secretly?    1:08:15PM

11        MR. BRIDGES:  Objection, misstates the    1:08:16PM

12        communication, argumentative, lacks    

13        vague and ambiguous.    1:08:24PM

14        THE WITNESS:  Because I did not want him    1:08:27PM

15        through a medium such as blogs or Twitter or    1:08:29PM

16        anything else to be speaking on behalf of    1:08:33PM

17        Public Resource.    1:08:37PM

18   BY MR. FEE:    1:08:38PM

19    Q    Any other reason?    1:08:41PM

20        MR. BRIDGES:  Same objections.    1:08:45PM

21        THE WITNESS:  That is the reason I -- I    1:08:46PM

22        insist on speaking on behalf of Public    1:08:46PM

23        Resource.  I don't like other people to do    1:08:49PM

24        that.    1:08:52PM

25   BY MR. FEE:    1:08:52PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

178

1      Q    But you didn't just tell him not to speak 1:08:52PM

2    on behalf of Public Resource; you told him to not  1:08:54PM

3    say anything about downloading these standards and 1:08:57PM

4    sending them to you, right?                         1:09:00PM

5              MR. BRIDGES:  Objection, mischaracterizes 1:09:01PM

6         the document, mischaracterizes testimony,      1:09:04PM

7         argumentative, lacks foundation.               1:09:06PM

8              THE WITNESS:  I didn't want him speaking   1:09:12PM

9         about doing things for me, Public Resource.    1:09:14PM

10         That -- that's a role that I reserve for       1:09:19PM

11         myself.                                        1:09:22PM

12    BY MR. FEE:                                         1:09:22PM

13      Q    And you also say in No. 2 here, "we're

14    going to use your docs."                            1:09:33PM

15              What does that mean?                      1:09:35PM

16      A    It meant we were not going to post them

17    the Public Resource website even if they were      1:09:40PM

18    incorporated by reference into law.                1:09:43PM

19      Q    Did you eventually post the standards

20    you got from Mr. Hall on Public Resource's website? 1:09:50PM

21              MR. BRIDGES:  Objection, argumentative,   1:09:53PM

22         lacks foundation, vague and misleading.        1:09:54PM

23              THE WITNESS:  No.                          1:09:57PM

24    BY MR. FEE:                                         1:09:58PM

25      Q    Did you post some other copy of the         1:09:59PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

199

| 1 | MR. BRIDGES:  Objection to the extent it | 2:32:12PM |
| 2 | touches on attorney work product or | 2:32:14PM |
| 3 | attorney-client communications and I would | 2:32:16PM |
| 4 | instruct to that extent. | 2:32:20PM |
| 5 | THE WITNESS:  He said he would be willing | 2:32:23PM |
| 6 | to consider it. | 2:32:24PM |
| 7 | BY MR. FEE: | 2:32:25PM |
| 8 | Q    What do you understand "willing to | 2:32:29PM |
| 9 | consider it" to mean? | 2:32:30PM |
| 10 | MR. BRIDGES:  Objection, calls for | 2:32:31PM |
| 11 | speculation, competence. | 2:32:33PM |
| 12 | THE WITNESS:  I don't know because I | 2:32:35PM |
| 13 | turned his contact information over to our | 2:32:36PM |
| 14 | legal team. | 2:32:39PM |
| 15 | BY MR. FEE: | 2:32:39PM |
| 16 | Q    Have you now identified all the persons | 2:32:41PM |
| 17 | with whom you've spoken regarding the possibility | |
| 18 | an affidavit being submitted by them in connection | 2:32:46PM |
| 19 | with this matter? | 2:32:49PM |
| 20 | A    To the best of my recollection. | 2:32:51PM |
| 21 | Q    Mr. Malamud, I'm going to hand you | |
| 22 | 70, which is a printout from archive.org. | 2:33:27PM |
| 23 | (Exhibit 70 marked for identification.) | 2:33:46PM |
| 24 | BY MR. FEE: | 2:33:46PM |
| 25 | Q    Do you recognize Exhibit 70 to be a | 2:34:05PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

200

1    printout from archive.org of a standard that you

2    posted -- of information that you had posted on       2:34:13PM

3    archive.org?                                          2:34:14PM

4              MR. BRIDGES:  Objection, vague and          2:34:17PM

5         ambiguous, lacks foundation.                     2:34:18PM

6              THE WITNESS:  It appears to be.             2:34:22PM

7    BY MR. FEE:                                           2:34:23PM

8         Q    I want to draw your attention to the

9    right below the image on the first page to the

10   where -- you see it says author, subject, language,  2:34:34PM

11   collection on the left-hand side?                    2:34:38PM

12        A    Yes, I see those.                           2:34:42PM

13        Q    Is that information that you would have     2:34:44PM

14   put into archive.org when you uploaded a standard

15   archive.org?                                          2:34:53PM

16        A    Yes.                                        2:34:57PM

17        Q    And at least with respect to this          2:34:59PM

18   particular standard, did you identify the author of  2:35:02PM

19   ASTM D975 to be American Society for Testing and     2:35:06PM

20   Materials?                                            2:35:11PM

21        A    I used the label author, colon, and the    2:35:16PM

22   name of the standards organization, yes.             2:35:19PM

23        Q    Is that your general practice for          2:35:21PM

24   identifying the author of any ASTM standard that

25   upload to archive.org?                               2:35:27PM

201

1         MR. BRIDGES:  Objection to the extent the    2:35:30PM

2      word "author" depends upon a legal conclusion   2:35:33PM

3      and vague and ambiguous, lacks foundation.      2:35:36PM

4         THE WITNESS:  That is a standard label       2:35:41PM

5      that I have used on other ASTM standards.        2:35:44PM

6   BY MR. FEE:                                         2:35:49PM

7      Q    Are you aware of any person or             2:35:59PM

8   organization that has created a new work based on   2:36:02PM

9   any of the plaintiffs' standards that you have      2:36:06PM

10  posted to Public Resource's website?                2:36:09PM

11        MR. BRIDGES:  Objection, may call for a      2:36:11PM

12     legal conclusion, vague and ambiguous.           2:36:13PM

13        THE WITNESS:  What do you mean by "new       2:36:16PM

14     work"?                                           2:36:18PM

15  BY MR. FEE:                                         2:36:18PM

16     Q    Has somebody drafted a different standard  2:36:21PM

17  that was based upon an ASTM standard, for example?  2:36:24PM

18        MR. BRIDGES:  Objection, vague and          2:36:28PM

19     ambiguous.                                       2:36:28PM

20        THE WITNESS:  I'm not aware of anything

21     that sort.                                       2:36:31PM

22  BY MR. FEE:                                         2:36:32PM

23     Q    Are you aware of anybody compiling a       2:36:32PM

24  selection of various standards that are available

25  your website so that all the standards are easily   2:36:40PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

211

| | | |
|---|---|---|
| 1 | business models of standards development | 2:49:35PM |
| 2 | organizations and, in fact, indeed any | 2:49:38PM |
| 3 | organization. | 2:49:40PM |
| 4 | BY MR. FEE: | 2:49:41PM |
| 5 | Q    Okay.  So when he was asking whether or | 2:49:44PM |
| 6 | not you were providing standards for free, it was | 2:49:47PM |
| 7 | going to put ASTM and others in the path of | 2:49:52PM |
| 8 | bankruptcy, you said you didn't think that it would | 2:49:55PM |
| 9 | yield bankruptcy for those organizations, but you | |
| 10 | understand it poses a challenge for their business | 2:50:02PM |
| 11 | models.  Am I missing something there? | 2:50:05PM |
| 12 | A    I think -- | 2:50:08PM |
| 13 | MR. BRIDGES:  Objection, vague and | 2:50:09PM |
| 14 | ambiguous, argumentative. | 2:50:09PM |
| 15 | THE WITNESS:  I think making standards | 2:50:11PM |
| 16 | more freely available by myself or anybody | 2:50:13PM |
| 17 | potentially poses a challenge to the current | 2:50:17PM |
| 18 | business models of the standards development | |
| 19 | of some standards development organizations. | 2:50:21PM |
| 20 | BY MR. FEE: | 2:50:24PM |
| 21 | Q    Would that include the plaintiff standard | 2:50:24PM |
| 22 | development organizations? | 2:50:28PM |
| 23 | MR. BRIDGES:  Objection, competence, | |
| 24 | for speculation, vague and ambiguous. | 2:50:33PM |
| 25 | THE WITNESS:  I actually sincerely | |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

219

1   on those 169 standards as a source of revenue of    3:01:00PM

2   approximately 50 to $100 million, according to you?   3:01:04PM

3          MR. BRIDGES:  Objection, argumentative,    3:01:09PM

4      lacks foundation, vague and ambiguous.    3:01:11PM

5          THE WITNESS:  As you see in the third    3:01:17PM

6      paragraph from the bottom, I -- I state that    3:01:21PM

7      organizations like NFPA get huge benefit from   3:01:25PM

8      being the provider of an important subset of    3:01:28PM

9      the law.    3:01:31PM

10  BY MR. FEE:    3:01:34PM

11     Q    So you were expecting those organizations   3:01:35PM

12  to thank you for posting the standards online that    3:01:37PM

13  accounted for up to $100 million?    3:01:40PM

14          MR. BRIDGES:  Objection, lacks

15      assumes facts not in evidence, argumentative.   3:01:41PM

16          THE WITNESS:  Maybe not on August 2,

17  BY MR. FEE:    3:01:49PM

18     Q    Do you think it's coming someday soon?    3:01:49PM

19          MR. BRIDGES:  Objection, argumentative.   3:01:51PM

20          THE WITNESS:  I'm hopeful.    3:01:54PM

21  BY MR. FEE:    3:01:54PM

22     Q    Okay.  If Public Resource was unable to    3:01:55PM

23  continue to post the standards incorporated by    3:02:03PM

24  reference on its website, what impact, if any,

25  that have on Public Resource's financial ability to   3:02:10PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

220

1    survive long term?                                    3:02:15PM

2              MR. BRIDGES:  Objection, vague and          3:02:17PM

3         ambiguous.                                       3:02:18PM

4              THE WITNESS:  Probably none.                3:02:21PM

5    BY MR. FEE:                                           3:02:22PM

6         Q    Can you identify any harm that would be     3:02:23PM

7    suffered by Public Resource if it was precluded       

8    posting standards incorporated by reference on its    3:02:29PM

9    website?                                              3:02:33PM

10             MR. BRIDGES:  Objection, vague and          3:02:34PM

11        ambiguous.                                       3:02:37PM

12             THE WITNESS:  We put a tremendous amount    3:02:40PM

13        of effort in -- into this and one hates to       

14        wasted that -- that effort.                      3:02:45PM

15   BY MR. FEE:                                           3:02:47PM

16        Q    Anything else that you can think of?        3:02:48PM

17        A    No.                                         3:02:51PM

18        Q    What harm would be suffered by the public   3:03:19PM

19   if Public Resource was unable to post standards       3:03:22PM

20   incorporated by reference on its website in the       3:03:26PM

21   future?                                               3:03:28PM

22        A    I think a large number of people would be   3:03:32PM

23   unable to easily access standards incorporated by     3:03:34PM

24   reference into the law and I think that would have    

25   impact on public safety and -- and inform

Capital Reporting Company
Malamud, Carl (Confidential) 02-27-2015

232

1    BY MR. FEE:                                          3:17:04PM

2        Q    Did Congress amend -- (Cross-talking.)      3:17:06PM

3             MR. BRIDGES:  Allow him to finish and

4        you can ask your questions.                      3:17:08PM

5    BY MR. FEE:                                          3:17:09PM

6        Q    -- the statute as you requested as of       3:17:09PM

7    today?                                               3:17:09PM

8        A    Okay.  So it's really important that we     3:17:10PM

9    allow the court reporter to hear what happens here.  3:17:12PM

10   Okay?                                                3:17:16PM

11       Q    Tell your counsel that.                     3:17:17PM

12       A    No, you -- you interrupted me while I was   3:17:19PM

13   speaking, sir.                                       3:17:22PM

14       Q    Your job here is to answer my questions,    3:17:23PM

15   not to say whatever you feel like.  The question

16   did Congress amend the statute that you asked them   3:17:27PM

17   to amend as of today?                                3:17:31PM

18             MR. BRIDGES:  Objection, argumentative.    3:17:33PM

19             THE WITNESS:  No.                          3:17:36PM

20   BY MR. FEE:                                          3:17:37PM

21       Q    And isn't it also true that you've asked    3:17:37PM

22   the executive branch to make changes to their        3:17:40PM

23   policies or regulations with respect to copyright    3:17:44PM

24   treatment or protection for standards incorporated   3:17:45PM

25   by reference?                                        3:17:52PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

233

1           MR. BRIDGES:  Objection, argumentative,   3:17:53PM

2      lacks foundation, vague and ambiguous.         3:17:54PM

3           THE WITNESS:  We have filed comments on    3:17:55PM

4      the series of government proceedings

5      information from a variety of parties.         3:18:00PM

6  BY MR. FEE:                                         3:18:01PM

7      Q    And isn't it the case that what you       3:18:02PM

8  proposed in those comments have not been adopted by 3:18:06PM

9  any executive branch as of today?                  3:18:10PM

10          MR. BRIDGES:  Same objections.            3:18:12PM

11          THE WITNESS:  You -- you're speaking as

12     we are proposing changes in the law.  And I'm   3:18:24PM

13     not.  There's a long-standing principle that   3:18:29PM

14     the law is available, and we have commented    3:18:34PM

15     and -- and described that principle in a

16     of submissions to government agencies.  We're  3:18:43PM

17     not asking them to change the law.             3:18:49PM

18 BY MR. FEE:                                         3:18:51PM

19     Q    Were you asking the executive branch to   3:18:51PM

20 make any changes to an OMB circular?                3:18:53PM

21          MR. BRIDGES:  Objection, lacks

22     vague and ambiguous.                           3:19:00PM

23          THE WITNESS:   The consideration of OMB   3:19:00PM

24     A-119 is currently underway.                   3:19:04PM

25 BY MR. FEE:                                         3:19:07PM

234

1          Q     Have your proposals for any changes to     3:19:07PM

2     that circular been adopted as of today?             3:19:11PM

3               MR. BRIDGES:  Objection, argumentative,    3:19:15PM

4          lacks foundation, assumes many facts not in     3:19:15PM

5          evidence.                                       3:19:17PM

6               THE WITNESS:  Nobody's chance -- nobody's3:19:19PM

7          changes to that circular have been adopted      3:19:20PM

8          because they're still considering the matter.  3:19:22PM

9     BY MR. FEE:                                          3:19:24PM

10         Q     And isn't it also true that there hasn't 3:19:25PM

11    been an outpouring of donations to help fund Public3:19:27PM

12    Resource's efforts to post standards incorporated

13    reference online?                                    3:19:37PM

14              MR. BRIDGES:  Objection, argumentative,    3:19:38PM

15         lacks foundation, assumes facts not in          3:19:40PM

16         evidence, and extraordinarily vague and         3:19:43PM

17         ambiguous.                                       3:19:48PM

18              THE WITNESS:  Yeah, I don't know what an 3:19:48PM

19         outpouring of donations is in the context of

20         very small 501(c)(3) nonprofit.                 3:19:53PM

21    BY MR. FEE:                                          3:19:56PM

22         Q     Well, we do know that you tried to raise 3:19:57PM

23    $100,000 to Kickstarter and that failed, right?     3:20:00PM

24              MR. BRIDGES:  Objection, lacks

25         vague and ambiguous.                            3:20:04PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

239

| | | |
|---|---|---|
| 1 | Internet standard series, but some officials I | 3:23:54PM |
| 2 | know -- Dr. Vint Cerf, widely considered as | 3:23:58PM |
| 3 | father of the Internet, spent a considerable | 3:24:02PM |
| 4 | period of time at DARPA, where he wrote a | 3:24:05PM |
| 5 | protocol called the Internet protocol and | 3:24:08PM |
| 6 | worked with his colleague, Dr. Bob Kahn, to | 3:24:11PM |
| 7 | write the transmission control protocol known | 3:24:16PM |
| 8 | as TCP, and TCP/IP is the basis for our modern | 3:24:18PM |
| 9 | Internet. | 3:24:25PM |
| 10 | (Exhibit 73 marked for identification.) | 11:31:27AM |
| 11 | BY MR. FEE: | 3:24:33PM |
| 12 | Q    Mr. Malamud, I'm going to hand you | |
| 13 | 73.  It's an e-mail exchange between -- between you | 3:25:44PM |
| 14 | and Maura, M-A-U-R-A, Marx, M-A-R-X, Bates-labeled | 3:25:47PM |
| 15 | PRO_177934 through -36. | 3:25:53PM |
| 16 | A    Yes, this appears to be an exchange | 3:26:33PM |
| 17 | between me and Ms. Marx. | 3:26:36PM |
| 18 | Q    Who is Ms. Marx? | 3:26:38PM |
| 19 | A    Ms. Marx is currently the acting director | 3:26:41PM |
| 20 | of the Institute of Museum and Library Services, | 3:26:44PM |
| 21 | IMLS, which is an agency of the United States | 3:26:45PM |
| 22 | Government. | 3:26:53PM |
| 23 | Q    About halfway down the first page of | 3:26:55PM |
| 24 | Exhibit 73 you see it says -- there is an e-mail | 3:27:00PM |
| 25 | from you on April 20th, 2012 at 6:39 p.m.? | 3:27:03PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

240

| | | | |
|---|---|---|---|
| 1 | A | Yes. | 3:27:08PM |
| 2 | Q | It says, "BTW" -- by the way; is that | 3:27:09PM |
| 3 | | right? | 3:27:13PM |
| 4 | A | That's correct. | 3:27:13PM |
| 5 | Q | Okay. "This is why I'm going a little | 3:27:13PM |

6    batty by this time on a Friday.  I spent the entire 3:27:17PM

7    week buying standards.  Shopping is tough work in   3:27:21PM

8    this case.  Lots of double-checking to find the    3:27:24PM

9    exact version.  Took me an entire week and over

10   and this is what I have to show for it.  What a way 3:27:32PM

11   to make a living."                                 3:27:38PM

12           Do you see that?                           3:27:40PM

13           MR. BRIDGES:  Objection.  You're reading   3:27:41PM

14       almost all of it.  Let's read the whole        3:27:41PM

15       message --                                     3:27:41PM

16           MR. FEE:  No.                              3:27:42PM

17           MR. BRIDGES:  -- into the record.          3:27:42PM

18       Then I object on the grounds that it's         3:27:43PM

19       selectively misquoting a document.             3:27:44PM

20   BY MR. FEE:                                        3:27:47PM

21       Q   Did you see what I read?                   3:27:48PM

22           MR. BRIDGES:  Why don't you read the

23       thing.                                         3:27:53PM

24           MR. FEE:  Andrew, you can't instruct him   3:27:54PM

25       to do stuff.                                   3:27:55PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

241

| | | |
|---|---|---|
| 1 | MR. BRIDGES:  I can -- I can instruct | 3:27:57PM |
| 2 | the -- | 3:27:58PM |
| 3 | MR. FEE:  You can get -- | 3:27:59PM |
| 4 | MR. BRIDGES:  -- witness to read a | 3:27:59PM |
| 5 | complete exhibit or to read a complete thing. | 3:27:59PM |
| 6 | If you think it's -- that's improper, go ahead | 3:28:01PM |
| 7 | and make your record, you think it's improper. | 3:28:03PM |
| 8 | I'm objecting to the basis that you are | 3:28:04PM |
| 9 | putting in the transcript a misdescription of | 3:28:08PM |
| 10 | this exhibit. | 3:28:12PM |
| 11 | BY MR. FEE: | 3:28:12PM |
| 12 | Q    Did I read an exact quote from your | 3:28:13PM |
| 13 | e-mail? | 3:28:15PM |
| 14 | A    You read a partial quote. | 3:28:16PM |
| 15 | Q    Was it complete and accurate, the portion | 3:28:18PM |
| 16 | I read? | 3:28:20PM |
| 17 | MR. BRIDGES:  Objection.  It was not | 3:28:21PM |
| 18 | complete and accurate as -- as to what the | 3:28:21PM |
| 19 | e-mail was. | 3:28:23PM |
| 20 | THE WITNESS:  It was partial -- | 3:28:24PM |
| 21 | MR. FEE:  I didn't say it was the whole | 3:28:25PM |
| 22 | e-mail, did I? | 3:28:26PM |
| 23 | | |
| 24 | BY MR. FEE: | 3:28:26PM |
| 25 | Q    Did you hear me say that, Mr. Malamud? | 3:28:28PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

242

| | | |
|---|---|---|
| 1 | A | I told you it was a partial quote and so | 3:28:30PM |
| 2 | that -- | | 3:28:31PM |
| 3 | Q | Okay. | 3:28:31PM |
| 4 | A | -- wouldn't be a complete quote, right? | 3:28:32PM |
| 5 | Q | I didn't say it was a complete quote.  It | 3:28:32PM |
| 6 | was a complete quote of the portion that I read.  I | | 3:28:32PM |
| 7 | didn't skip over any words, did I? | | 3:28:38PM |
| 8 | A | No, but you left off the last sentence of | 3:28:40PM |
| 9 | the paragraph. | | 3:28:42PM |
| 10 | Q | All right.  I know you're really dying to | 3:28:43PM |
| 11 | say it, so go ahead.  I don't even care.  It's | | 3:28:43PM |
| 12 | meaningless.  That's why I left it off. | | 3:28:46PM |
| 13 | | Go ahead. | 3:28:46PM |
| 14 | A | No, actually, it's quite important to the | 3:28:47PM |
| 15 | context of that paragraph -- | | 3:28:49PM |
| 16 | Q | Oh, I'm sure it is. | 3:28:51PM |
| 17 | A | -- to it's meaning. | 3:28:52PM |
| 18 | Q | Let's hear it. | 3:28:53PM |
| 19 | A | It says, "what a way to make a living, | 3:28:53PM |
| 20 | much harder than assembling the paper copies." | | 3:28:54PM |
| 21 | Q | Okay.  Terrific. | 3:28:59PM |
| 22 | | Now, isn't it true that you make a living | 3:29:00PM |
| 23 | by copying standards development organization | | 3:29:02PM |
| 24 | standards? | | 3:29:02PM |
| 25 | | MR. BRIDGES:  Objection, argumentative, | 3:29:06PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

243

1        vague and ambiguous.                          3:29:07PM

2            THE WITNESS:  "What a way to make a       3:29:08PM

3        living" was indicating the work I was doing on 3:29:10PM

4        a daily basis as my manual labor.             3:29:13PM

5    BY MR. FEE:                                       3:29:16PM

6        Q    You do make a living by copying standards 3:29:17PM

7    written by other standard development

8    don't you?                                        3:29:23PM

9            MR. BRIDGES:  Objection, argumentative,   3:29:25PM

10        lacks foundation, vague and ambiguous.  He's  3:29:25PM

11        already answered the question.               3:29:28PM

12            THE WITNESS:  That's not correct.  I run

13        501(c)(3) corporation.  We get grants that   3:29:31PM

14        support our overall programs, which include a 3:29:35PM

15        variety of things, such as posting 8 million  3:29:39PM

16        IRS Form 990s, 6,000 government videos from

17        National Archives and the law, including     3:29:47PM

18        standards incorporated by reference.  That's  3:29:51PM

19        how I make a living.                         3:29:53PM

20    BY MR. FEE:                                      3:29:54PM

21        Q    How much have you paid yourself from    3:29:55PM

22    Public Resource since you started Public Resource? 3:29:57PM

23            MR. BRIDGES:  Objection.  Objection,

24        and ambiguous, also irrelevant.              3:30:01PM

25            THE WITNESS:  I can tell you my current   3:30:04PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

244

| | | |
|---|---|---|
| 1 | salary. | 3:30:05PM |
| 2 | BY MR. FEE: | 3:30:06PM |
| 3 | Q    What's that? | 3:30:07PM |
| 4 | A    That's $180,000 per year. | 3:30:07PM |
| 5 | Q    Is that lower than your salary has been | |
| 6 | the past? | 3:30:14PM |
| 7 | MR. BRIDGES:  Objection, assumes facts | |
| 8 | in evidence, lacks foundation, vague and | 3:30:15PM |
| 9 | ambiguous. | 3:30:17PM |
| 10 | THE WITNESS:  I have made more money at | 3:30:17PM |
| 11 | other forms of employ, yes. | 3:30:19PM |
| 12 | BY MR. FEE: | 3:30:20PM |
| 13 | Q    Okay.  Have you made more money while | 3:30:21PM |
| 14 | working at Public Resource in a particular year? | 3:30:22PM |
| 15 | MR. BRIDGES:  Objection, irrelevant, | |
| 16 | foundation, vague and ambiguous. | 3:30:28PM |
| 17 | THE WITNESS:  No, I keep my salary flat. | 3:30:30PM |
| 18 | It's been the same for several years.  I've | 3:30:33PM |
| 19 | never made more than this. | 3:30:36PM |
| 20 | BY MR. FEE: | 3:30:38PM |
| 21 | Q    How many years has your salary been flat? | 3:30:38PM |
| 22 | MR. BRIDGES:  Objection, irrelevant, | |
| 23 | and ambiguous. | 3:30:42PM |
| 24 | THE WITNESS:  I started the organization | 3:30:43PM |
| 25 | in 2007.  At some point I had a -- a moderate | 3:30:44PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

245

| | | |
|---|---|---|
| 1 | bump in salary, so it's been several years | 3:30:48PM |
| 2 | since I've been at 180.  You can -- you can | 3:30:52PM |
| 3 | pull my tax returns.  They're public and, in | 3:30:57PM |
| 4 | fact, they're available on my server, so... | 3:30:59PM |
| 5 | BY MR. FEE: | 3:31:02PM |
| 6 | Q    So over the course of the past seven | 3:31:03PM |
| 7 | years, is it safe to say that you've paid yourself | 3:31:06PM |
| 8 | over a million dollars from Public Resource? | 3:31:10PM |
| 9 | MR. BRIDGES:  Objection, argumentative, | 3:31:13PM |
| 10 | lacks foundation, assumes facts not in | 3:31:13PM |
| 11 | evidence, vague and ambiguous. | 3:31:16PM |
| 12 | THE WITNESS:  Total salary since 2007 is | 3:31:23PM |
| 13 | greater than a million dollars. | 3:31:26PM |
| 14 | BY MR. FEE: | 3:31:28PM |
| 15 | Q    How much have you paid your wife during | 3:31:28PM |
| 16 | that time frame? | 3:31:31PM |
| 17 | MR. BRIDGES:  Objection, lacks | |
| 18 | vague and ambiguous and irrelevant.  "You" at | 3:31:34PM |
| 19 | this deposition is Mr. Malamud.  Are you | |
| 20 | how much he personally has paid his wife? | 3:31:53PM |
| 21 | MR. FEE:  No, the question -- my question | 3:31:55PM |
| 22 | stands. | 3:31:56PM |
| 23 | | |
| 24 | BY MR. FEE: | 3:31:57PM |
| 25 | Q    You can answer it. | 3:31:58PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

246

1        MR. BRIDGES:  Well, there's going to be a  3:31:57PM

2    spousal privilege issue at a certain point.  3:31:57PM

3    That has nothing to do with Public -- if it  3:31:57PM

4    does not have to do with payments by  3:31:57PM

5    Public.Resource.Org.  3:32:05PM

6        THE WITNESS:  Public.Resource.Org paid  3:32:09PM

7    Point.B some money.  Would you like to know  3:32:09PM

8    much that is?  3:32:09PM

9  BY MR. FEE:  3:32:10PM

10     Q    Yes.  3:32:10PM

11     A    Your deposition asked me for that  3:32:11PM

12  information from 2010 to the current.  That's  3:32:16PM

13  approximately $350,000 during that period.  3:32:17PM

14     Q    And Point.B Studios is an unincorporated  3:32:21PM

15  d/b/a used by your wife, correct?  3:32:24PM

16        MR. BRIDGES:  Objection, may call for  3:32:28PM

17    speculation, vague and ambiguous.  3:32:29PM

18        THE WITNESS:  Actually, I don't know her  3:32:30PM

19    corporate structure currently.  3:32:31PM

20  BY MR. FEE:  3:32:32PM

21     Q    But you at least understand that Point.B  3:32:32PM

22  Studios is completely owned by your wife?  3:32:34PM

23        MR. BRIDGES:  Objection, may call for  3:32:40PM

24    speculation, vague and ambiguous.  3:32:40PM

25        THE WITNESS:  I -- I actually don't know  3:32:41PM

263

| | | |
|---|---|---|
| 1 | URL appears to conform to the National | 4:09:44PM |
| 2 | Electrical Code of 2011. | 4:09:47PM |
| 3 | BY MR. REHN: | 4:09:50PM |
| 4 | Q    And you uploaded that document to that | 4:09:50PM |
| 5 | website; is that correct. | 4:09:53PM |
| 6 | MR. BRIDGES:  Objection, lacks | |
| 7 | vague and ambiguous. | 4:09:55PM |
| 8 | THE WITNESS:  I did indeed upload the | 4:09:56PM |
| 9 | National Electrical Code for 2011 to the | 4:09:59PM |
| 10 | Internet Archive. | 4:09:59PM |
| 11 | BY MR. REHN: | 4:10:03PM |
| 12 | Q    Under that identifier that's there on the | 4:10:03PM |
| 13 | URL? | 4:10:06PM |
| 14 | MR. BRIDGES:  Objection, vague and | 4:10:07PM |
| 15 | ambiguous, lacks foundation. | 4:10:07PM |
| 16 | THE WITNESS:  Yes. | 4:10:08PM |
| 17 | BY MR. REHN: | 4:10:10PM |
| 18 | Q    And if you'll turn to the second page of | 4:10:10PM |
| 19 | this document, you'll see where it says, licensed | 4:10:13PM |
| 20 | URL. | 4:10:15PM |
| 21 | A    Uh-huh. | 4:10:15PM |
| 22 | Q    And then there's a URL for a Creative | 4:10:15PM |
| 23 | Commons website. | 4:10:19PM |
| 24 | A    That's correct. | 4:10:20PM |
| 25 | Q    And you put that information into the | 4:10:21PM |

264

1    Internet Archive interface when you uploaded this    4:10:24PM

2    document; is that correct?                            4:10:27PM

3         A    I specified that URL as the copyright       4:10:29PM

4    status.                                               4:10:35PM

5         Q    So for persons who were to refer to this    4:10:35PM

6    information that you posted on the Internet,

7    for the copyright status of this document, you        4:10:43PM

8    directed them to this URL?                            4:10:47PM

9         MR. BRIDGES:  Objection, lacks

10       assumes facts not in evidence, vague and          4:10:50PM

11       ambiguous.                                        4:10:52PM

12       THE WITNESS:  The Creative Commons

13       is actually on the first page, where it says      4:10:56PM

14       CC0 1.0 Universal, and that is underlined,        4:10:58PM

15       which means it goes to a URL.  And that's the     4:11:05PM

16       same URL as you will find on the second page      4:11:08PM

17       where it says, licensed URL.  And again, that     4:11:11PM

18       will go to the Creative Commons CC0 license,      4:11:14PM

19       which means no rights asserted.                   4:11:17PM

20       MR. REHN:  Can I ask the reporter to              4:11:19PM

21       reread the question and ask the witness to        4:11:19PM

22       answer the question I asked read?                 4:11:19PM

23                    (The reporter read the record        4:11:37PM

24                     as requested.)                      4:11:37PM

25   BY MR. REHN:                                          4:11:39PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

265

| | | |
|---|---|---|
| 1 | Q    Correct? | 4:11:39PM |
| 2 | MR. BRIDGES:  Object.  Same -- all the | 4:11:40PM |
| 3 | same objections. | 4:11:41PM |
| 4 | THE WITNESS:  Yes. | 4:11:42PM |
| 5 | BY MR. REHN: | 4:11:42PM |
| 6 | Q    And if you could just look at Exhibit 70 | 4:11:44PM |
| 7 | and you'll see on the first page of Exhibit 70 it | 4:11:50PM |
| 8 | lists Creative Commons license CC0 1.0 Universal. | 4:11:54PM |
| 9 | A    Uh-huh. | 4:12:01PM |
| 10 | Q    And then on the second page, there's the | 4:11:57PM |
| 11 | same URL that we just saw on Exhibit 52? | 4:12:02PM |
| 12 | A    Both of those items are identical on both | 4:12:06PM |
| 13 | of these exhibits. | 4:12:08PM |
| 14 | Q    And your answers with respect to the | 4:12:09PM |
| 15 | significance of that information are the same for | 4:12:11PM |
| 16 | this as they -- it was for Exhibit 52? | 4:12:13PM |
| 17 | MR. BRIDGES:  Objection, lacks | |
| 18 | vague and ambiguous. | 4:12:17PM |
| 19 | THE WITNESS:  Yes.  CC0 is a Creative | 4:12:18PM |
| 20 | Commons CC0 license. | 4:12:21PM |
| 21 | BY MR. REHN: | 4:12:25PM |
| 22 | Q    I'm going to hand you what's been marked | 4:12:25PM |
| 23 | as Exhibit 75. | 4:12:26PM |
| 24 | (Exhibit 75 marked for identification.) | 4:12:35PM |
| 25 | BY MR. REHN: | 4:12:35PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

266

1       Q     And I can represent to you that this is a   4:12:39PM

2    screen capture as of 9:32 a.m. this morning from

3    URL that we just identified on Exhibits 52 and 70.   4:12:47PM

4            Is that what it appears to be to you?   4:12:51PM

5            MR. BRIDGES:  Objection, may lack   4:12:55PM

6        competence, may call for speculation --   4:12:59PM

7            THE WITNESS:  This --   4:13:02PM

8            MR. BRIDGES:  -- and -- and lacks   4:13:02PM

9        foundation.   4:13:03PM

10           THE WITNESS:  This appears to be the CC0   4:13:04PM

11       page.   4:13:07PM

12   BY MR. REHN:   4:13:08PM

13       Q     CC0 1.0 Universal?   4:13:09PM

14       A     That's correct.   4:13:14PM

15       Q     And that's the page that you had   4:13:15PM

16   identified when you uploaded the documents at   4:13:18PM

17   Exhibit 70 and Exhibit 52?   4:13:20PM

18           MR. BRIDGES:  Objection, lacks   4:13:21PM

19       vague and ambiguous.   4:13:24PM

20           THE WITNESS:  That's correct.   4:13:30PM

21   BY MR. REHN:   4:13:30PM

22       Q     And there's a heading -- there -- there   4:13:32PM

23   first go ahead and read the title of the document.   4:13:32PM

24           MR. BRIDGES:  Objection, vague and   4:13:39PM

25       ambiguous.   4:13:40PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

267

| | | |
|---|---|---|
| 1 | THE WITNESS:  CC0 1.0 Universal, CC0 1.0 | 4:13:42PM |
| 2 | Public Domain Dedication. | 4:13:49PM |
| 3 | BY MR. REHN: | 4:13:52PM |
| 4 | Q    Okay.  And then do you see that there's a | 4:13:53PM |
| 5 | section entitled, no copyright? | 4:13:53PM |
| 6 | A    I do. | 4:13:58PM |
| 7 | Q    And if you could read the first sentence | 4:13:59PM |
| 8 | in that section. | 4:14:02PM |
| 9 | A    "The person who associated a work with | 4:14:05PM |
| 10 | this deed has dedicated the work to the public | 4:14:09PM |
| 11 | domain by waiving all of his or her rights to the | 4:14:11PM |
| 12 | work worldwide under copyright law, including all | 4:14:16PM |
| 13 | related and neighboring rights to the extent | |
| 14 | by law." | 4:14:24PM |
| 15 | Q    And do you understand that this informs | 4:14:26PM |
| 16 | the reader that the person that -- who attached | |
| 17 | license has dedicated the work to the public domain? | |
| 18 | MR. BRIDGES:  Objection, lacks | |
| 19 | vague and ambiguous, may call for speculation. | 4:14:39PM |
| 20 | THE WITNESS:  It says the person has | 4:14:44PM |
| 21 | waived all of his or her rights.  I have | |
| 22 | all of my rights to a work by associating this | 4:14:52PM |
| 23 | license. | 4:14:57PM |
| 24 | BY MR. REHN: | 4:14:58PM |
| 25 | Q    Well, what does it actually say the | |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

268

| | | |
|---|---|---|
| 1 | has done?  It doesn't say the person has waived. | 4:15:01PM |
| 2 | Let's say -- the person has what?  What's the verb | 4:15:03PM |
| 3 | there after "has"? | 4:15:07PM |
| 4 | A    Has dedicated. | 4:15:09PM |
| 5 | Q    Okay.  Continue. | 4:15:11PM |
| 6 | A    The work to the public domain by waiving | 4:15:12PM |
| 7 | all of his or her rights to the work worldwide | |
| 8 | copyright law. | 4:15:19PM |
| 9 | Q    So is it your understanding that this | 4:15:20PM |
| 10 | document represents that the person who used this | 4:15:21PM |
| 11 | license has dedicated the work to the public domain? | |
| 12 | MR. BRIDGES:  Objection, may call for a | 4:15:29PM |
| 13 | legal conclusion, lacks foundation, vague and | 4:15:34PM |
| 14 | ambiguous. | 4:15:38PM |
| 15 | THE WITNESS:  It said I waived all my | 4:15:40PM |
| 16 | rights is what it said to the work. | 4:15:42PM |
| 17 | BY MR. REHN: | 4:15:44PM |
| 18 | Q    And it also says, "has dedicated the work | 4:15:45PM |
| 19 | to the public domain"; is that correct? | 4:15:48PM |
| 20 | A    It -- it does by waiving all my rights. | 4:15:50PM |
| 21 | Q    Okay.  What's the -- let's go ahead and | 4:15:54PM |
| 22 | read the second sentence? | 4:15:59PM |
| 23 | A    Uh-huh.  "You can copy, modify, | |
| 24 | and perform the work even for commercial purposes | 4:16:03PM |
| 25 | all without asking information.  See other | 4:16:06PM |

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

269

1    information below."                                   4:16:09PM

2             MR. REHN:  And if we could just reflect  4:16:11PM

3        that the witness misread the document.  It    4:16:12PM

4        says, "all without asking permission."  I     4:16:15PM

5        believe the witness said information.          4:16:16PM

6             THE WITNESS:  No.                          4:16:18PM

7             MR. BRIDGES:  Yeah.  Why don't you read

8        just reread the section.                        4:16:20PM

9    BY MR. REHN:                                        4:16:22PM

10       Q    Yeah, why don't you go ahead reread the   4:16:22PM

11   sentence.                                           4:16:24PM

12       A    "You can copy, modify, distribute and     4:16:25PM

13   perform the work even for commercial purposes all  4:16:27PM

14   without asking permission.  See other information  4:16:31PM

15   below."                                             4:16:34PM

16       Q    And does -- does this indicate to you

17   a person reading this would take from this that

18   could -- can copy, modify, distribute and perform  4:16:42PM

19   the work even for commercial purposes all without  4:16:46PM

20   asking permission?                                  4:16:48PM

21            MR. BRIDGES:  Objection, lacks

22       vague and ambiguous and misstates --

23       use of the document.                            4:16:55PM

24            THE WITNESS:  That's what sentence two of4:17:01PM

25       the description says.                           4:17:03PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

270

```
 1    BY MR. REHN:                                    4:17:04PM

 2         Q    And that's the document you directed  4:17:05PM

 3    people to refer to when you posted the standards in 4:17:07PM

 4    Exhibit 70 and Exhibit 52?                       4:17:11PM

 5              MR. BRIDGES:  Objection, lacks

 6         vague and ambiguous and misleading.         4:17:15PM

 7              THE WITNESS:  Yes, that is the license

 8         this object at this identifier on the Internet 4:17:24PM

 9         Archive.                                    4:17:28PM

10    BY MR. REHN:                                     4:17:30PM

11         Q    Okay.  You can go ahead and set those  4:17:30PM

12    aside.                                           4:17:43PM

13              Prior to posting plaintiffs' standards on 4:17:58PM

14    the Internet, did you consider what the effect that 4:18:01PM

15    would have -- what the effect would be on the     4:18:04PM

16    plaintiffs' ability to continue operating?        4:18:07PM

17              MR. BRIDGES:  Objection, argumentative, 4:18:12PM

18         lacks foundation, vague and ambiguous.       4:18:13PM

19              THE WITNESS:  As I testified before     4:18:18PM

20         Congress, I believe this is potentially a

21         opportunity for the plaintiffs.              4:18:22PM

22    BY MR. REHN:                                     4:18:24PM

23         Q    And did you conduct any sort of analysis 4:18:24PM

24    or talk to anybody with any expertise in reaching 4:18:27PM

25    that conclusion?                                 4:18:29PM
```

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

272

1      just winging it with respect to that issue?        4:19:29PM

2              MR. BRIDGES:  Objection, lacks

3          vague and ambiguous.                            4:19:32PM

4              THE WITNESS:  I don't know.                  4:19:35PM

5      BY MR. REHN:                                        4:19:37PM

6          Q    You may have?                              4:19:37PM

7              MR. BRIDGES:  Objection.  Same

8              THE WITNESS:  I'd be happy to review        4:19:40PM

9          electronic mail.                                4:19:42PM

10     BY MR. REHN:                                        4:19:43PM

11         Q    Let's go ahead and do that.                4:19:44PM

12         (Exhibit 76 marked for identification.)         11:31:27AM

13     BY MR. REHN:

14         Q    I'm going to hand you what's been marked   4:19:55PM

15     as Exhibit 76.  And, for the record, this is a      4:19:57PM

16     document with the Bates stamp PRO_00168373.         4:20:04PM

17             Do you recognize this as a chain of         4:20:12PM

18     e-mails between yourself and Marshall Rose?         4:20:14PM

19         A    That is what it appears to be.             4:20:36PM

20         Q    Do you recall this e-mail conversation

21     had with Mr. Rose?                                  4:20:39PM

22         A    Vaguely.                                   4:20:44PM

23         Q    Who is Marshall Rose?                      4:20:45PM

24         A    Dr. Marshall T. Rose is a distinguished   4:20:50PM

25     computer scientist who has made many contributions 4:20:53PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

290

1              reference into law, which is the only thing    4:39:16PM

2              we're talking about here, are more broadly     4:39:19PM

3              available, I believe that cements the premier  4:39:21PM

4              position of an organization such as the        4:39:25PM

5              National Fire Protection Association.  It

6              their work more visible to more citizens by    4:39:31PM

7              definition, right?  This is about informing

8              citizenry.  And I believe that's a tremendous  4:39:37PM

9              market opportunity to sell, again, simply a    4:39:40PM

10             digitally signed version of a document.        4:39:44PM

11       BY MR. REHN:                                         4:39:49PM

12             Q    Have you ever -- do you have any          4:39:51PM

13       experience with selling publications?                4:39:52PM

14             MR. BRIDGES:  Objection, vague and             4:39:58PM

15             ambiguous.                                      4:39:58PM

16             THE WITNESS:  Yes, I do.  I've written         4:40:00PM

17             eight books.  I have extensive experience      4:40:02PM

18             writing professionally for magazines and --

19             other types of operations.                      4:40:08PM

20       BY MR. REHN:                                         4:40:11PM

21             Q    Have you ever -- has anybody ever told

22       that they think it would improve the ability of the 4:40:15PM

23       standards development organizations to sell --        4:40:19PM

24             THE REPORTER:  Of the what?  Of the            4:40:22PM

25             ability of the --                               4:40:22PM

Capital Reporting Company
Malamud, Carl (Confidential) 02-27-2015

297

```
 1        Q    Do you -- do you hope that your website
 2   the standards that are posted on your website in    4:47:03PM
 3   particular, get a large amount of web traffic?      4:47:07PM
 4            MR. BRIDGES:  Objection, vague and          4:47:10PM
 5       ambiguous.                                       4:47:11PM
 6            THE WITNESS:  No, I don't hope.  I -- I      4:47:14PM
 7       actually -- the -- the numbers really don't      4:47:16PM
 8       matter to me.                                    4:47:18PM
 9   BY MR. REHN:                                         4:47:19PM
10        Q    Have you ever suggested to anyone that
11   are -- would hope that you would get a large amount  4:47:22PM
12   of web traffic?                                      4:47:25PM
13            MR. BRIDGES:  Objection, lacks
14       vague and ambiguous and --                       4:47:28PM
15            THE WITNESS:  Oh, on my -- I'm sorry.        4:47:30PM
16            MR. BRIDGES:  Go ahead.                      4:47:31PM
17            THE WITNESS:  I -- I might have.  I don't    4:47:32PM
18       know.                                            4:47:33PM
19   BY MR. REHN:                                         4:47:40PM
20        Q    I'm going to hand you what we're marking   4:47:41PM
21   as Exhibit 77.                                       4:47:42PM
22        A    This is a long one.                        4:48:09PM
23       (Exhibit 77 marked for identification.)         11:31:27AM
24   BY MR. REHN:                                         4:48:10PM
25        Q    Do you recognize this -- oh, and for the   4:48:10PM
```

298

1       record, this is a document Bates-stamped       4:48:11PM

2       PRO_00213130, and it's got an attachment as well.  4:48:13PM

3               Do you recognize this as an e-mail you    4:48:23PM

4       sent to Josh Greenberg on August 24, 2011?     4:48:25PM

5       A    I'm sorry for the delay.  It's a rather   4:48:38PM

6       long document.                                 4:48:40PM

7       Q    Just looking at the cover e-mail for now,  4:48:47PM

8       but feel free.  Take your time.                4:48:49PM

9       A    This appears to be a proposal that I sent  4:49:29PM

10      to the Sloan Foundation.  Josh Greenberg is a   4:49:34PM

11      program manager there.                          4:49:38PM

12      Q    What's the Sloan Foundation?              4:49:40PM

13      A    The Sloan Foundation is -- is one of the   4:49:44PM

14      preeminent public foundations in the United States. 4:49:47PM

15      They fund a -- a large variety of -- of programs.  4:49:50PM

16      Q    And was this a fundraising proposal that   4:49:58PM

17      you sent them for them to give money to Public  4:50:04PM

18      Resource?                                       4:50:06PM

19              MR. BRIDGES:  Objection, argumentative,  4:50:09PM

20          vague and ambiguous.                        4:50:09PM

21              THE WITNESS:  Yes, it was.              4:50:28PM

22      BY MR. REHN:                                    4:50:30PM

23      Q    Do you remember how much money you were    4:50:31PM

24      asking for?                                     4:50:32PM

25      A    $200,000.                                 4:50:35PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

299

| | | |
|---|---|---|
| 1 | Q    Did the Sloan Foundation give you | |
| 2 | in response to this proposal? | 4:50:41PM |
| 3 | A    The Sloan Foundation has never given me | 4:50:43PM |
| 4 | one cent. | 4:50:46PM |
| 5 | Q    So -- so the proposal was declined? | 4:50:47PM |
| 6 | A    It was declined. | 4:50:50PM |
| 7 | Q    Did they give you a reason for that? | 4:50:51PM |
| 8 | A    They didn't like the proposal. | 4:50:58PM |
| 9 | Q    Did they explain their reasons for not | 4:51:01PM |
| 10 | liking the proposal? | 4:51:11PM |
| 11 | A    No, not to me. | 4:51:14PM |
| 12 | Q    And just to be clear, this is an e-mail | 4:51:16PM |
| 13 | you sent to Josh Greenberg at the Sloan Foundation | 4:51:19PM |
| 14 | and it's attaching a proposal that you had drafted; | 4:51:22PM |
| 15 | is that right? | 4:51:25PM |
| 16 | A    That is correct. | 4:51:27PM |
| 17 | Q    And was part of this proposal connected | |
| 18 | your efforts to post standards that had been | 4:51:33PM |
| 19 | incorporated by reference on your website? | 4:51:36PM |
| 20 | A    No, this was specifically focused on | |
| 21 | 24 of the California Code of Regulations. | 4:51:45PM |
| 22 | Q    And is it your understanding that Title | |
| 23 | incorporates by reference some of plaintiffs' | 4:51:53PM |
| 24 | standards? | 4:52:00PM |
| 25 | A    That is incorrect.  It does not | 4:52:00PM |

300

1     incorporate by reference.  It actually -- it      4:52:03PM

2     publishes a series of documents under the official 4:52:04PM

3     authorship of the state of California.            4:52:10PM

4     Incorporation by reference says this document over 4:52:11PM

5     there is incorporated into this document.  There is 4:52:17PM

6     no incorporation by reference in Title 24.        4:52:19PM

7          Q    So if I could turn your attention to Page 4:52:25PM

8     6 of the proposal, which is the page Bates-stamped 4:52:27PM

9     213136.                                           4:52:30PM

10         A    Yes.                                    4:52:39PM

11         Q    And at the bottom under track 4, the    4:52:39PM

12    second -- or, no, the first sentence, the fourth  4:52:43PM

13    track addresses standards incorporated by reference 4:52:45PM

14    into Title 24, what did you mean when you wrote    4:52:48PM

15    that?                                             4:52:53PM

16         A    Well, what this track proposes is to    4:52:58PM

17    assemble a series of engineers and look at

18    references, so standards that are mentioned in, for 4:53:10PM

19    example, the California Electrical Code.  And it   4:53:12PM

20    says -- if -- if you can turn to Page 7 of the     4:53:17PM

21    proposal, which is the 213137 Bates stamp, the     4:53:21PM

22    second paragraph, it describes the purpose of track 4:53:27PM

23    4.  It says, we don't feel it would be wise to     4:53:32PM

24    simply publish all secondary standards wholesale.  4:53:36PM

25    Rather, our strategy is to assemble a group of     4:53:39PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

308

1          THE WITNESS:  Yes.                        5:00:50PM

2   BY MR. REHN:                                      5:00:51PM

3          Q    And then you go on to say, "Our version  

4   Title 24 should have more users than those that   5:00:54PM

5   purchased the books and DVDs or used the state or 5:00:57PM

6   SDO-provided website."                            5:01:01PM

7          Do you see that?                           5:01:03PM

8          A    I do.                                 5:01:06PM

9          Q    Was it your goal that the version of  

10  24 you were producing would have more users than  

11  websites provided by the standards development    5:01:14PM

12  organizations?                                    5:01:19PM

13          MR. BRIDGES:  Objection, vague and        5:01:20PM

14       ambiguous.                                   5:01:21PM

15          THE WITNESS:  Now, remember Title 24 is a 5:01:22PM

16       publication of the state of California, and  5:01:23PM

17       that's why I was very specific and used the  5:01:24PM

18       state or SDO-provided website.               5:01:26PM

19  BY MR. REHN:                                      5:01:29PM

20          Q    It says SDO-provided website is one of  

21  things you would have more users in; is that      5:01:32PM

22  correct?                                          5:01:33PM

23          A    It says or use the state or SDO-provided 5:01:35PM

24  website.                                          5:01:36PM

25          Q    So was it your goal that your version of 5:01:38PM

Capital Reporting Company
Malamud, Carl (Confidential)  02-27-2015

309

| | |
|---|---|
| 1 | Title 24 would have more users than the SDO- |
| 2 | website?                                      5:01:44PM |
| 3 |         MR. BRIDGES:  Objection, lacks |
| 4 |     vague and ambiguous, argumentative.      5:01:46PM |
| 5 |         THE WITNESS:  And that, of course, |
| 6 |     that they weren't using the -- the work |
| 7 |     that we were doing as part of this project and5:01:52PM |
| 8 |     putting it on their website, and that's  5:01:54PM |
| 9 |     something we would very much welcome and that 5:01:56PM |
| 10 |     would have been counted in these metrics.  5:01:59PM |
| 11 | BY MR. REHN:                                  5:02:01PM |
| 12 |     Q    And then it says, "We'd like to be No. 1 5:02:02PM |
| 13 | in the marketplace by the end of the year."   5:02:03PM |
| 14 |         What did you mean when you wrote that?  5:02:07PM |
| 15 |     A    It meant that I wanted a lot of people to5:02:09PM |
| 16 | use the work that we were doing.              5:02:10PM |
| 17 |     Q    Did you consider yourself to be in a   5:02:15PM |
| 18 | marketplace that also included websites provided by5:02:17PM |
| 19 | the SDOs?                                     5:02:23PM |
| 20 |         MR. BRIDGES:  Objection, argumentative, 5:02:24PM |
| 21 |     lacks foundation, vague and ambiguous.    5:02:26PM |
| 22 |         THE WITNESS:  It's what I put in my   5:02:27PM |
| 23 |     proposal for funding.                     5:02:28PM |
| 24 | BY MR. REHN:                                  5:02:30PM |
| 25 |     Q    So you told your fund -- your prospective5:02:30PM |