**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a/ ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>             Plaintiffs/<br>             Counter-Defendants,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>             Defendant/<br>             Counter-Plaintiff. | Case No. 1:13-cv-01215-TSC-DAR |

## DEFENDANT PUBLIC.RESOURCE.ORG'S STATEMENT OF MATERIAL FACTS

## REDACTED VERISON

Pursuant to Local Rule 7(h), Public.Resource.org ("Public Resource") contends that there are no genuine disputes as to the following facts.  Each of the following facts supports Public Resource's Motion for Summary Judgment.

GLOSSARY OF CITATIONS

| Short Form Citation | Document Title |
|---|---|
| M. Becker Decl. | Declaration of Matthew Becker in support of Defendant-Counterclaimant's Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction |
| C. Malamud Decl. | Declaration of Carl Malamud in support of Defendant-Counterclaimant's Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction |
| Pls. Mem. | Plaintiffs Memorandum of Law in support of Their Motion for Summary Judgment and for a Permanent Injunction, ECF No. 118-1 |
| RJN | Request for Judicial Notice in support of Defendant-Counterclaimant Public.Resource.Org, Inc.'s Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction |
| Fruchterman Rep. | Expert Report of James R. Fruchterman, dated April 13, 2015 |
| Jarosz Rep. | Expert Report of John Jarosz, dated June 5, 2015, ECF No. 117-1 |
| Bliss Dep. | Videotaped 30(b)(6) deposition of Donald P. Bliss, March 3, 2015 |
| Comstock Dep. | Videotaped 30(b)(6) deposition of Steven Comstock, March 5, 2015 |
| Dubay Dep. | Videotaped 30(b)(6) deposition of National Fire Protection Association, Inc. by Christian Dubay, April 1, 2015 |
| Fruchterman Dep. | Videotaped 30(b)(6) deposition of James Fruchterman, July 31, 2015 |

B9620/00403/SF/5540930.15

| Short Form Citation | Document Title |
|---|---|
| Grove Dep. | Videotaped 30(b)(6) deposition of American Standards Society For Testing and Materials, Inc. by Jeffrey Grove, March 4, 2015 |
| Jarosz Dep. | Videotaped deposition of John C. Jarosz, August 27, 2015 |
| Mullen Dep. | Videotaped 30(b)(6) deposition of National Fire Protection Association, Inc., by Bruce Mullen, March 31, 2015 |
| Reiniche Dep. | Videotaped 30(b)(6) deposition of American Society of Heating, Refrigerating, and Air-Conditioning Engineers, Inc., March 30, 2015 |
| Smith Dep. | Videotaped 30(b)(6) deposition of American Society for Testing & Materials, through Daniel Smith, July 24, 2015 |

B9620/00403/SF/5540930.15

1.      Public.Resource.org is a nonprofit corporation, funded entirely by donations, contributions, and grants. C. Malamud Decl. ¶ 3.

2.      Public Resource's core mission is to make the law and other government materials more widely available so that people, businesses, and organizations can easily read and discuss our laws and the operations of government. C. Malamud Decl. ¶ 4, Ex. 1.

3.      Public Resource maintains an archive of laws and other government authored materials on several domains under the public.resource.org website. C. Malamud Decl. ¶ 10.

4.      Public Resource has made judicial opinions, Internal Revenue Service records, patent filings, and safety regulations accessible on the Internet. Beginning in 2008, Public Resource began posting state safety regulations and statutes online, including portions of the incorporated standards in this case. In 2012, Public Resource began to post copies of standards incorporated by reference into law on its website. Public Resource began by purchasing paper copies of 73 standards, copying them and placing a cover sheet and notice of incorporation on each one, and sending the copies and additional material to government officials and ten SDOs, including Plaintiffs. Then, Public Resource began searching for copies of additional incorporated standards, many of which were not available from the SDOs, likely because the version incorporated into law had been superseded by a later version of the standard. C. Malamud Decl. ¶¶ 9–15, 20–21, 23.

5.      Public Resource does not charge for access to the archive of laws and other government authored materials on several domains under the public.resource.org website. C. Malamud Decl. ¶ 23.

6.      Public Resource does not accept donations or gifts that are tied to the posting of specific standards or groups of standards. C. Malamud Decl. ¶ 29.

B9620/00403/SF/5540930.15

7.      Public Resource's operating income is not based on the amount of traffic its websites receive. Public Resource does practice search engine optimization to improve the accuracy of how information on its websites is described. Public Resource does not advertise on its websites.  C. Malamud Decl. ¶ 30.

8.      Plaintiffs are three standards development organizations ("SDOs") that publish voluntary consensus standards. Pls. Mem. 4–9; Compl. Ex. A–C.

9.      According to Plaintiffs, ASTM has published approximately 12,000 standards, NFPA has published over 300 standards, and ASHRAE has published over 100 standards. Jarosz Rep. ¶ 13 (ASTM); ¶ 17 (NFPA), ECF No. 117-1; Reiniche Decl. ¶ 2, ECF No. 118-10 (ASHRAE).

10.     ASTM's Mission Statement reads: "To be recognized globally as the premier developer and provider of voluntary consensus standards, related technical information, and services that promote public health and safety, support the protection and sustainability of the environment, and the overall quality of life; contribute to the reliability of materials, products, systems and services; and facilitate international, regional, and national commerce." M. Becker Decl. ¶ 98, Ex. 100.

11.     NFPA's "About NFPA" webpage states: "Founded in 1896, NFPA is a global, nonprofit organization devoted to eliminating death, injury, property and economic loss due to fire, electrical and related hazards. The association delivers information and knowledge through more than 300 consensus codes and standards, research, training, education, outreach and advocacy; and by partnering with others who share an interest in furthering the NFPA mission." M. Becker Decl. ¶ 99, Ex. 101.

12.     ASHRAE's Mission is "To advance the arts and sciences of heating, ventilation,

B9620/00403/SF/5540930.15

air conditioning and refrigeration to serve humanity and promote a sustainable world." M. Becker Decl. ¶ 100, Ex. 102.

13.     Some of the standards Plaintiffs publish are adopted into law or incorporated by reference into federal, state, or local law; many are not. Pls. Mem. 9.

14.     In order to enact rules, a federal agency must follow minimum procedures to guarantee adequate public notice and opportunity to comment. 5 U.S.C. §553.

15.     A federal agency must publish proposed rule changes in the Federal Register, including changes to a standard incorporated by reference into the Code of Federal Regulations. 5 U.S.C. §553(b); 1 C.F.R. § 51.11(a) (2015).

16.     A standard incorporated by reference into the Code of Federal Regulations must be a "proposed rule" or "final rule" of a federal agency. 1 C.F.R. §51.5(a)-(b) (2015).

17.     Before the federal government incorporates a standard by reference into law as a final rule, it must be approved by the Director of the Federal Register. 1 C.F.R. § 51.3 (2015).

18.     Standards are incorporated by reference—as opposed to reprinting the entire text of the standards—to limit the length of the Code of Federal Regulations. RJN ¶ 1.

19.     Standards incorporated by reference into the Code of Federal Regulations are made available in the Washington D.C. reading room of the Office of the Federal Register, or for purchase from the Plaintiffs. The OFR directs people who want to read incorporated standards to "contact the standards organization that developed the material." Alternatively, one may submit a written request to the OFR to  inspect (and make limited photocopies of) an incorporated standard in Washington, D.C. RJN ¶ 1.

20.     Public Resource has posted at least some of the incorporated standards at issue online. C. Malamud Decl. ¶ 15–19.

B9620/00403/SF/5540930.15

21.    Plaintiffs have discussed Public Resource's activities at the highest levels of their

organizations since at least 2010, but waited until August 2013 to file this lawsuit. ███████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████ M.

Becker Decl. ¶ 148, Ex. 150.

22.    Each standard at issue on Public Resource's websites was incorporated by

reference into law. C. Malamud Decl. ¶ 23; Pls. Mem. 9. Nearly all of the standards at issue were

promulgated as private industry standards several years before being incorporated into law by

government agencies. *See, e.g.*, ASTM D396-1998 "Standard Specification for Fuel Oils",

incorporated into reference into law at 41 C.F.R. § 60.17 (2011); M. Becker Decl. ¶ 151, Ex. 153

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████

23.    ASTM has publicly stated that "[k]nowledge of ASTM standards is important for

complying with U.S. regulations and procurement requirements" M. Becker Decl. ¶ 21, Ex. 23

(Grove Ex. 1032 "ASTM Standards Regulations & Trade, Power Point" at 21).

24.    The Office of the Federal Register states: "The legal effect of incorporation by

reference is that the material is treated as if it were published in the Federal Register and CFR.

This material, like any other properly issued rule, has the force and effect of law. Congress

authorized incorporation by reference in the Freedom of Information Act to reduce the volume of

material published in the Federal Register and CFR." RJN ¶ 1.

25.     Failure to comply with the standards incorporated by law may result in penalties. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 37:1–19).

26.     The former head of Massey Energy was recently convicted of conspiring to violate safety standards. RJN ¶ 2.

27.     With the exception of the 2014 National Electric Code that was added by amending the complaint, all of the standards at issue have been superseded or withdrawn. M. Becker Decl. ¶¶ 95–97, Exs. 97–99.

28.     Persons who volunteer to create and develop voluntary consensus standards have incentives to do so that are independent of owning the copyright to the standards. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 82:9–17); ¶ 11, Ex. 15 (Smith Dep. 45:16–46:10) ¶ 2, Ex. 4 (Bliss Dep. 21:1–3; 15–17) ¶ 10, Ex. 12 (Reiniche Dep. 50:12–51:6) ¶ 2, Ex. 4 (Bliss Dep. 118:09–119:01).

29.     Plaintiffs have earned revenue from sources other than selling copies of the standards. These sources include revenue from selling interpretative material related to incorporated standards; standards that have not been incorporated into law; membership dues; conference fees; training services; and public grants and contracts M. Becker Decl. ¶ 9, Ex. 11 (Mullen Dep. 130:21–133:03; 228:11–229:23); ¶ 7, Ex. 9 (Jarosz Dep. 192:22–193:6); ¶ 2, Ex. 4 (Bliss Dep. 199:23–201:12; 158:06–159:15); ¶ 6, Ex. 8 (Grove Dep. 264:22–266:19); ¶ 3, Ex. 5 (Comstock Dep. 48:23–56:21; 59:03–60:02; 72:5–74:15). Plaintiffs acknowledge that other standards development organizations operate without asserting a right to exclude. Jarosz Rep. ¶ 81, ECF No. 117-1.

30.     ASHRAE has a Government Affairs office in Washington D.C. M. Becker Decl. ¶ 50, Ex. 52.

B9620/00403/SF/5540930.15

31.     ASHRAE's Government Affairs office has encouraged members of congress and other policy makers to incorporate ASHRAE standards into law. M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 136:11–21; 138:24–140:10; 210:19–211:09).

32.     ASHRAE started a grassroots program to advocate for adoption of building codes into law, including the standard known as ASHRAE 90.1. M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 144:06–145:23).

33.     ASHRAE refers to the citation of ASHRAE 90.1 in the Energy Policy Act ("EPAct") as ASHRAE's "EPAct advantage," because ASHRAE 90.1 is referenced over other energy efficiency commercial building codes. M. Becker Decl. ¶ 48, Ex. 50; ¶ 10, Ex. 12 (Reiniche Dep. 127:13–127:18); ¶ 49, Ex. 51; ¶ 10, Ex. 12 (Reiniche Dep. 128:07–130:21).

34.     ASHRAE has repeatedly entered into a "Memorandum of Understanding" with the Department of Energy (DOE) that states that both organizations are "committed to working together toward . . . [c]ooperating in promotion of ANSI/ASHRAE standards adoption in building codes."  M. Becker Decl. ¶ 47, Ex. 49; ¶ 10, Ex. 12 (Reiniche Dep. 110:20–111:16; 113:13–114:01).

35.     ASTM makes governments aware of ASTM standards, and takes pride in the incorporation by reference of its standards. M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 235:02–236:02).

36.     ASTM reaches out to congressional staffers and government agencies to suggest the use of particular editions of standards and particular language in legislation. M. Becker Decl. ¶ 22, Ex. 24; ¶ 6, Ex. 8 (Grove Dep. 124:10–125:05; 258:16–261:23; 263:05–263:09).

37.     ASTM participated in an "Incorporation by Reference Public Workshop" with the U.S. Department of Transportation on July 13, 2012.  M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep.

B9620/00403/SF/5540930.15

270:7–19).

38.     ASTM has never requested that Congress or a federal agency not incorporate an ASTM standard by reference into law.  M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 261:25–262:08).

39.     On December 3, 2015, ASTM co-sponsored an event in Washington D.C. entitled "What Do Airplanes, Robots, Toys, Flat Screen TVs Amusement Parks & 3D Printing Have in Common?" The promotional literature for the event states that the event "will highlight the importance of government participation in and the reliance on voluntary standards and conformance." M. Becker Decl. ¶ 102, Ex. 104 ("Capitol Hill Event to Feature Policy and Business Leader Insights on Voluntary Standards and Conformance").

40.     NFPA engages in activities to promote the adoption and incorporation by reference of NFPA codes and standards into law.  M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 46:19–48:20; 62:20–63:08; 82:09–18).

41.     NFPA is not aware of any situation where it would discourage the adoption of a standard into law. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 48:21–49:04).

42.     NFPA is "advocating for fire safety" through the adoption and use of its standards by governments and industries. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 82:13–25).

43.     The Office of the Federal Register is required to maintain a copy of each incorporated standard. It makes a copy of each standard available for public viewing, upon written request for an appointment, at its Washington, D.C. reading room. RJN ¶ 1.

44.     According to a statement by the Modification and Replacement Parts Association: "The burden of paying high costs simply to know the requirements of regulations may have the effect of driving small businesses and competitors out of the market, or worse endanger the safety of the flying public by making adherence to regulations more difficult due to fees . . . ."

B9620/00403/SF/5540930.15

M. Becker Decl. ¶ 103, Ex. 105 (ABA Section of Administrative Law and Regulatory Practice Resolution, submitted November 17, 2015).

45.     ASTM gives government bodies like the U.S. Geological Survey and the State of Georgia, fellow standards development organizations like NFPA, IAPMO, and ICC, and favored corporations liberal permission to copy standards in both paper and electronic format, and to use excerpts from standards in other documents. M. Becker Decl. ¶ 105, Ex. 107; ¶ 106, Ex. 108; ¶ 107, Ex. 109; ¶ 108, Ex. 110; ¶ 109, Ex. 111; ¶ 110, Ex. 112.

46.     ASTM regularly refuses to give similar permissions to graduate students, universities, libraries, and smaller businesses. M. Becker Decl. ¶ 128, Ex. 130; ¶ 118, Ex. 120; ¶ 111, Ex. 113; ¶ 129, Ex. 131; ¶ 113, Ex. 115; ¶ 114, Ex. 116; ¶ 115, Ex. 117.

47.     ASTM gave the structural engineering firm SGH, "a big supporter of ASTM," permission to excerpt a number of figures and tables from a standard. M. Becker Decl. ¶ 110, Ex. 112.

48.     ASTM refused to allow an engineering student at the University of Pennsylvania to use "photographs and figures" from another standard in a case study. M. Becker Decl. ¶ 115, Ex. 117.

49.     When an ASTM employee wrote that "we typically do not provide figures [from standards] for reproduction purposes," John Pace, ASTM's Vice President of Publications and Marketing, responded that ASTM has a "'triple standard' here on considerations for such requests," and that the owner of a chemical company, Sheldon Dean, who was "platinum level" because of his "connection status" with ASTM committees, should be given permission to use excerpts from an ASTM standard in a forthcoming book. M. Becker Decl. ¶ 117, Ex. 119.

50.     ASTM refused to allow Columbia Analytical to reproduce several abstracts from

B9620/00403/SF/5540930.15

an ASTM standard. M. Becker Decl. ¶ 118, Ex. 120.

51.     Plaintiffs provide "reading rooms" for some of the incorporated standards. Thomas Decl. ¶ 50, ECF No. 118-11; O'Brien Decl. ¶ 60, ECF No. 118-7; Pauley Decl. ¶ 45, ECF No. 118-8; Reiniche Decl. ¶ 19–20, ECF No. 188-10.

52.     Plaintiffs' "reading rooms" do not permit software-based searching and analysis of the incorporated standards. M. Becker Decl. ¶ 94, Ex. 96 (Fruchterman Rep. ¶ 6).

53.     Plaintiffs online "Reading Rooms" do not allow people with print disabilities to use software based screen readers to access the legally mandated standards. M. Becker Decl. ¶ 94, Ex. 96 (Fruchterman Rep. 7–13).

54.     People must register to access the reading rooms established by ASTM and NFPA. The registration process requires a visitor to provide ASTM and NFPA with their names and email address. ASTM also requires visitors to provide additional information, including the visitors address and phone number. M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 213:14–19); ¶ 2, Ex. 4 (Bliss Dep. 79:4–7); ¶ 9, Ex. 11 (Mullen Dep. 50:4–18.; ¶ 130, Ex. 132 (ASTM Reading Library Registration Screen, Page 1); ¶ 131, Ex. 133 (ASTM Reading Library Registration Screen, Page 2); ¶ 136, Ex. 138 (NFPA Sign In Webpage).

55.     NFPA uses the information gathered from visitors to its online Reading Room to send marketing materials. M. Becker Decl. ¶ 9, Ex. 11 (Mullen Dep. 51:17–52:2).

56.     The visitor to Plaintiffs' reading rooms will find the standard displayed in a small box on the visitor's screen, in text that is sometimes degraded, in a small font size that is difficult for many people to read. Magnification of the text makes the text appear blurry. In general only a small part of each page of the standard is visible at once, and with greater magnification even a single line cannot be viewed without scrolling. Each page of each standard is stamped over the

B9620/00403/SF/5540930.15

text with a warning that the material is copyrighted. M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 217:1–19); ¶ 138, Ex. 140; ¶ 139, Ex. 141; ¶ 140, Ex. 142; ¶ 141, Ex. 143; ¶ 2, Ex. 4 (Bliss Dep. 219:18-221:05); ¶ 137, Ex. 139 (ASHRAE Reading Room Screen Shot). O'Brien Decl. Ex. 18, ECF No. 118-7. ██████████████████████████████████████████████████ *Id.* ¶ 139, Ex. 141. ██████████████████████████████████████████████ ██████████████████████████████████████ *Id.* ¶ 138, Ex. 140.

57.    A user of ASTM's reading room must click a box that states the user agrees to ASTM's end user license agreement before accessing the reading room. NFPA's reading room also contains terms of service. M. Becker Decl. ¶ 134, Ex. 136 (ASTM License Agreement Webpage); ¶ 133, Ex. 135 (ASTM Reading Room Terms); ¶ 135, Ex. 137 (NFPA Free Access Terms).

58.    ASHRAE posted some of its standards for public viewing in a format that restricted downloading. M. Becker ¶ 3, Ex. 5 (Comstock Dep. 11:25–12:7).

59.    ASHRAE posted its standards for public viewing with the intent of increasing demand for the posted standards. M. Becker ¶ 3, Ex. 5 (Comstock Dep. 11:25–12:7).

60.    ASHRAE removes older standards incorporated by reference from its reading room. M. Becker Decl. ¶ 3, Ex. 5 (Comstock Dep. 20:19–22).

61.    Plaintiffs do not allow people to print or download the standards on their reading rooms. M. Becker Decl. ¶ 132, Ex. 134 (ASTM Reading Room Disclaimer)

62.    ASTM defines the standards they produce as documents comprising "specifications, test methods, practices, guides, classification and terminology." M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 14:22–15:6).

63.    ASTM has a form and style guide that sets forth the rules that persons generally

must follow in participating in the drafting and revision process of ASTM standards. M. Becker

Decl. ¶ 6, Ex. 8; ¶ 23, Ex. 25 (Grove Dep. 268:14–269:4).

64.     According to NFPA's corporate designee, Donald Bliss, codes and standards are

procedures and practices. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 21:18–22:11).

65.     ASHRAE described one of the standards at issue, the 1993 ASHRAE Handbook:

Fundamentals, as "a tool for engineers to use when they're working with the topics covered in

that book." M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 158:20–24).

66.     The content of the ASHRAE standards-at-issue is based on a technical

committee's review of the relevant research, public input and committee expertise, all of which

is intended to determine the best rule—the consensus standard—for the relevant industry. M.

Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 140:1–41:4); ¶ 4, Ex. 6 (Dubay Dep. 29:12–21, 68:9–20,

73:16–25); ¶ 10, Ex. 12 (Reiniche Dep. 94–95). Jarosz Rep. 26–30, ECF No. 117-1.

67.     NFPA is committed to reducing "the worldwide burden of fire and other hazards"

by developing and disseminating codes that will minimize fire risk. Jarosz Rep. 29, ECF No.

117-1.

68.     Bliss testified that, when he was a committee member, his motivation was to

develop the "best" standard, and "best" meant "understanding the problem based on past

experience and events, having as much scientifically based research to contribute to the

development of the standard and then a very, very open and transparent consensus process."

After that:

> There's a tremendous amount of public input and vetting of the
> concepts and the actual language which in reality mirrors a
> government adoption of legislative process.

M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 139:07–140:10).

B9620/00403/SF/5540930.15

69. ASHRAE says its standards define "the minimum acceptable performance for the relevant products." Jarosz Rep. 33, ECF No. 117-1.

70. The main benefit of the consensus process, according to ASHRAE, is that it relies on experts who understand "how to make that product or how to construct that building or how to make something more energy efficient." M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 102:23–25).

71. As NFPA puts it, there are two types of changes: technical changes, which are "scientific" and wording changes, which involve making potentially confusing language more clear "to make it easier to interpret of understand what that actual technical requirement is." M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 28:22–30:4).

72. The volunteers who work on the standards don't view them as creative expression.  Volunteers debate wording in the standards so as to have the most precise and accurate description of the process, system, or methods that comprise the standards.  The exact wording matters, and it is not sufficient to try to rephrase this language as rephrasing could introduce errors. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 140:1–140:10).

73. Plaintiffs believe that technical excellence is why their standards are ultimately incorporated by reference. M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 235:2–23).

74. NFPA wants "to make it as easy as possible for users to understand the structure of the standard." M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 138–139).

75. NFPA asserted that "standard developers converge around terminology and format that works for their constituents that utilize their standards." M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 139:03–06).

76. ASHRAE changed its arrangement of 90.1 from one column to two columns, as

well as the chapter organization, to make it shorter. M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 194–198).

77.     The adoption or incorporation of NFPA codes and standards into law may benefit NFPA financially because it encourages industries to purchase the standard. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 118:23–119:1); ¶ 7, Ex. 9 (Jarosz Dep. 209:16–210:7).

78.     Plaintiffs monitor whether people follow the requirements of standards incorporated into law. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 30:1–37:25).

79.     Plaintiffs enforce whether people follow the requirements of standards incorporated into law. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 30:1–37:25).

80.     The standards at issue are dictated by external factors, including international principles and the desire to satisfy regulations and laws. M. Becker Decl. ¶ 104, Ex. 106 (Public Policy & Corporate Outreach Presentation, Sep. 2015); ¶ 6, Ex. 8 (Grove Dep. 94:24-95:01).

81.     NFPA's Style Manual for the NEC, for example, specifies that because the NEC is "intended to be suitable for adoption as a regulatory document, it is important that it contain clearly stated mandatory requirements in the code text" so as to "encourage uniform adoption . . . without alterations." Additionally, ASHRAE circulates a detailed Manual designed to ensure that technical committees draft standards that will be easily adopted as regulations. M. Becker Decl. ¶ 120, Ex. 122 (Style Manual for the NEC at 4); Ex. 103 (ASHRAE Guide to Writing Standards in Code Intended Language).

82.     Public Resource posted some of the incorporated standards at issue in standard Web formats. C. Malamud Decl. ¶ 24–27; M. Becker Decl. ¶  8, Ex. 10 (R. Malamud Dep. 64:10–17); ¶8, Ex. 10 (R. Malamud Dep. 94:11); Jarosz Rep. ¶ 35, ECF No. 117-1.

83.     Public Resource posted the incorporated standards at issue using Hypertext

B9620/00403/SF/5540930.15

Markup Language (HTML), Mathematics Markup Language (MathML), and Scalable Vector Graphics (SVG). Over time, Public Resource used contractors to assist in transforming the standards into HTML format. Two people independently type out most of the standards on Public Resource's websites and compare any discrepancies between their versions to confirm the accuracy of the transcription in a process called "double-keying." Public Resource's contractor also worked with after-school educational programs to convert the diagrams into Scalable Vector Graphics ("SVG") and the mathematical formulae into Mathematics Markup Language ("MathML"), a program that trains high-school and college students how to create Web pages and educates them about democracy.  C. Malamud Decl. ¶ 25.

84.     Hypertext Markup Language (HTML), Mathematics Markup Language (MathML), and Scalable Vector Graphics (SVG) permit users to perform software-based searching and analysis. C. Malamud Decl. ¶ 25.

85.     Public Resource does not restrict the public from viewing any of the incorporated standards at issue on its websites. C. Malamud Decl. ¶ 23.

86.     Public Resource does not require people to log in to its website before viewing any of the incorporated standards at issue on its websites. C. Malamud Decl. ¶ 23.

87.     Public Resource does not require people to pay Public Resource before viewing any of the incorporated standards at issue on its websites. C. Malamud Decl. ¶ 23.

88.     The Public Resource websites are directed at researchers and engaged citizens. C. Malamud Decl. ¶ 4, 26.

89.     Public Resource's stated purpose for providing an archive or laws and other government documents on its websites is to bolster the public's ability "to know and speak the law." C. Malamud Decl. ¶ 28 (https://law.resource.org/pub/12tables.html).

B9620/00403/SF/5540930.15

90. Plaintiffs sell copies of the incorporated standards at issue. Thomas Decl. ¶ 44, ECF No. 118-11; Pauley Decl. ¶ 44, ECF No. 118-8; Rubel Decl. Ex. 8 (Comstock Dep. 104:21–106:23), ECF No. 118-12.

91. Public Resource's versions of the incorporated standards at issue are reasonably accessible to the print-disabled. People who are print-disabled can use screen reader software to read and navigate the HTML versions of the standards. James Fruchterman, Public Resource's expert on accessibility, concluded that "a blind person using a screen reader" can "read the standard . . . navigate to a specific place in the document . . . and search for key terms."). Mr. Fruchterman also observed that "standard HTML" as used by Public Resource "is also highly accessible to people with other print disabilities and the assistive technology they use to access print," such as people with "vision impairment, dyslexia, brain injury and physical disabilities." M. Becker Decl. ¶ 94, Ex. 96 (Fruchterman Rep. 5–7); ¶ 8, Ex. 10 (R. Malamud Dep. 233:15–234:7); ¶ 5, Ex. 7 (Fruchterman Dep. 125:10–11).

92. Plaintiffs' versions of the incorporated standards at issue online are not as accessible to the print-disabled as Public Resource's versions of those standards. None of the Plaintiffs provide free electronic access to standards incorporated into law for people with disabilities. For example, NFPA's website requires visitors to register before viewing the standards, and its registration process cannot be completed by blind users. None of the Plaintiffs provides machine-readable text of the incorporated standards through their free reading portals. They provide only "a picture of the text," which causes screen-reading software to "stop working." Nor do the Plaintiffs' websites provide any means for disabled visitors to search or navigate the documents. Thus, "Public.Resource.Org currently provides the only accessible option for people/citizens with print disabilities to access these standards." M. Becker Decl. ¶ 5,

B9620/00403/SF/5540930.15

Ex. 7 (Fruchterman Dep. 43:21–23; 112:1–8; 133:5; 143:10–14; 165:17–166:7; 167:8; 205:2–

13); ¶ 94, Ex. 96 (Fruchterman Rep. 5–13); ¶ 2, Ex. 4 (Bliss Dep. 220:1–221:25); ¶ 2, Ex. 4

(Bliss Ex. 1003); ¶ 3, Ex. 5 (Comstock Dep. 20:22; 44:1–46:25).

93.     Downloading an incorporated standard allows more flexibility for using and

sharing that standard. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 215:9–15; 215:21–216:1).

94.     It is not Public Resource's intention to make copies that are similar to the

standards actually sold by ASTM available on its website because they post standards that have

been explicitly and specifically incorporated by reference into federal or state law. C. Malamud

Decl. ¶ 4–15.

95.     Public Resource posted the incorporated standards at issue to inform citizens

about the content of the law. C. Malamud Decl. ¶ 4.

96.     Public Resource posted the incorporated standards at issue on its website in

formats meant to increase citizen access to the law. C. Malamud Decl. ¶ 26.

97.     Public Resource posted the incorporated standards at issue for the purpose of

transforming the information in the standards by making that information accessible to people

who did not necessarily have access to that information before. C. Malamud Decl. ¶ 35.

98.     Public Resource does search engine optimization so that the standards are

accurately described in search engine results. C. Malamud Decl. ¶ 29.

99.     Technology that would allow a blind person access but prevent a non-disabled

person from accessing text does not yet exist. M. Becker Decl. ¶ 94, Ex. 96 (Fruchterman Rep.

101:8–14).

100.    ASTM has a policy against permitting the posting of ASTM standards on the

public internet. M. Becker Decl. ¶ 142, Ex. 144.

B9620/00403/SF/5540930.15

101.    ASTM did not permit a person in the UK to post the information in the ASTM D2000-12 standard. M. Becker Decl. ¶ 143, Ex. 145.

102.    People want to use the most recent version of ASTM's standards, even if an older version is incorporated by reference into law. M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 171:5–8).

103.    ASTM seeks to get Congress to incorporate the most recent version of any particular standard because incorporation "freezes … that reference in statute for years to come." M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 260:25–261:15).

104.    People may want to read older versions of standards because the older version may be the version that is incorporated by reference in a code or regulation. M. Becker Decl. ¶ 3, Ex. 5 (Comstock Dep. 19:20–24).

105.    As a public officer (but not as an NFPA employee), NFPA Vice President Donald Bliss has experienced confusion as to which version or edition of the code is in force in a jurisdiction because NFPA produces a number of different editions. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 215:13–23).

106.    Public Resource's posting of the incorporated standards at issue has not caused Plaintiffs any measurable harm. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 63:3–10; 123:14–18; 136:5–137:24; 155–158; 160:3–6; 177:17–178:5; 212:11–213:3; 214:13–215:3; 245:2–250:11); ¶ 3, Ex. 5 (Comstock Dep. 12:2-11; 63:10-16; 64:20–25).

107.    Public Resource's posting of the incorporated standards at issue has not had a measurable impact on ASTM's finances. M. Becker Decl. ¶ 144, Ex. 146; ¶ 6, Ex. 8 (Grove Dep. 144:22–145:2).

108.    ASTM has no evidence that it has lost sales of any of the incorporated standards at issue because Public Resource made the incorporated standards at issue publicly available. M.

Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 152:19–24).

109.    ASTM has no evidence that Public Resource caused ASTM to lose money. M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 154:25–155:5).

110.    ASTM has no knowledge of any evidence that Public Resource caused ASTM any property damage or injury. M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 155:7–12).

111.    ASTM has no evidence that Public Resource caused ASTM any damage to ASTM's reputation. M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 165:12–15).

112.    Plaintiffs' expert Jarosz was unable to quantify any financial losses to Plaintiffs as a consequence of Public Resource's activities. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 63:3–10).

113.    Plaintiffs' expert Jarosz was not aware of any documents showing NFPA suffered harm from Public Resource's activities.  M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 123:9–18).

114.    Plaintiffs' expert Jarosz's only evidence of harm is statements by plaintiffs' officers. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 155–163).

115.    Plaintiffs' expert Jarosz was not aware of any direct evidence of the impact of Public Resource's activities on Plaintiffs' financials. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 160:3–6).

116.    Plaintiffs' expert Jarosz did not correlate Public Resource's posting of the standards at issue with Plaintiffs' revenues from the sale of the standards at issue. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 177:17–178:5).

117.    Plaintiffs' expert Jarosz did no analysis to distinguish the profitability of the standards at issue from the profitability of standards that have not been incorporated by reference into law. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 183:4–15).

118.    Plaintiffs' expert Jarosz lacks certainty that Public Resource's posting of the

standards at issue caused any economic loss to Plaintiffs. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 212:11–213:3).

119.    Plaintiffs' expert Jarosz did not evaluate the extent of distribution of the standards at issue via Public Resource's website. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 214:13–215:3; 216:2–5; 245–49).

120.    ASHRAE is not aware of any revenue lost from the free availability of ASHRAE standards online. M. Becker Decl. ¶ 3, Ex. 5 (Comstock Depo 12:2–11; 63:10–16; 64:20–25).

121.    ASTM's sales from publications have increased 2% over the past 2–3 years. This was in accord with Grove's expectations. M. Becker Decl. ¶ 6, Ex. 8 (Grove Depo 19:21–20:13).

122.    ASHRAE has not attempted to track losses due to Public Resource's conduct.  M. Becker Decl. ¶ 3, Ex. 5 (Comstock Dep. 63:10–16).

123.    NFPA has not identified "any direct correlation" between adoption of an edition and an increase in sales. "The only general correlation is that once a new version of the code is out, we will sell more of the new edition and less of the old edition, but nothing – no general correlation to adoption or specific spikes." M. Becker Decl. ¶ 9, Ex. 11 (Mullen Dep. 95:3–25).

124.    NFPA does not have a number on any balance sheet that corresponds to the value of the copyrights it holds because NFPA does not "attempt to place any value on any intangible asset." M. Becker Decl. ¶ 9, Ex. 11 (Mullen Dep. 140:11–18).

125.    According to NFPA's Bruce Mullen, "If I had to guess, the non-business or government purchases is probably less than 1 percent of the total sales." M. Becker Decl. ¶ 9, Ex. 11 (Mullen Dep. 187:14–23).

126.    Plaintiffs' assertion of copyright in incorporated standards makes it more difficult for others to produce materials such as training and user manuals. M. Becker Decl. ¶ 7, Ex. 9

B9620/00403/SF/5540930.15

(Jarosz Dep. 217–224).

127.    Allowing "unauthorized persons" to use standards without training is not a cognizable harm. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 227:14–228:14).

128.    "Confusion" between incorporated standards and newer versions of Plaintiffs' standards does not harm Plaintiffs.  M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Depo 254:14–257:9).

129.    Plaintiffs have no evidence that they suffered any loss of revenues in Texas, Louisiana, or Mississippi since 2002, when the Fifth Circuit Court of Appeals decided *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 796 (5th Cir. 2002) (*en banc*). M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 130:6–19).

130.    Almost all of the standards at issue that Plaintiffs registered with the Copyright Office are registered as "works made for hire" (with the exception of one NFPA standard, NFPA 54 National Fuel Gas Code 2006). M. Becker Decl. ¶ 11, Ex. 13 (ASTM Certificates of Registration); ¶ 13, Ex. 15 (NFPA Certificates of Registration ); ¶ 14, Ex. 16 (ASRAE Certificates of Registration).

131.    Plaintiffs have not provided evidence that one standard at issue, ASTM D323 1958 (1968), was ever registered with the copyright office. Complaint, Ex. A at 4, ECF No. 1-1.

132.    Each standard at issue was developed by a large number of unpaid volunteers, including federal government employees, state and municipal government employees, employees of private companies and organizations, and ordinary citizens. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 56:03–57:06); ¶ 79, Ex. 81; ¶ 6, Ex. 8 (Grove Dep. 97:25–98:07); ¶ 20, Ex.22; ¶ 22, Ex. 24; ¶ 4,  Ex. 6 (Dubay Dep. 15:16–16:10, 51:20–52:15, 75:17–76:11, 240:22–242:04); ¶ 9, Ex. 11 (Mullen Dep. 114:22–115:23); ¶ 10, Ex. 12 (Reiniche Dep. 21:01–23:21, 105:08–106:18 194:04–194:07); ¶ 42, Ex. 44; ¶ 46, Ex. 48.

133.    Volunteers or members of the public proposed the creation or revision of the standards at issue. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 18:05–18:19, 280:10–280:20); ¶ 93, Ex. 95; ¶ 123, Ex. 125, p. 4; ¶ 10, Ex. 12 (Reiniche Dep. 94:20–98:24); ¶ 124, Ex. 126, p. 5 (discussing ASHRAE membership categories).

134.    Volunteers drafted the language for the standards at issue, with public input, and determine the arrangement and inclusion of proposed text.  M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 18:05–18:23, 20:04–20:11); ¶ 93, Ex. 95; ¶ 2, Ex. 4 (Bliss Dep. 45:12–46:02) ("We use a system of volunteers to serve on committees to develop the standard.  It's volunteers that serve on the standards council.  It's volunteers that serve as our membership to make the final voting."); ¶ 2, Ex. 4 (Bliss Dep. 46:03–46:13); ¶ 4, Ex. 6 (Dubay Dep. 29:12–29:21); ¶ 10, Ex. 12 ((Reiniche Dep. 49:08-50:11); ¶ 10, Ex. 12 (Reiniche Dep. 60:05–60:12) ("[ASHRAE] Standard 90.1 is on continuous maintenance, so anyone at any time can propose a change to the standard.  It could be a project committee member or the public.").

135.    Volunteers voted on the final content of the standards at issue at the end of the development or revision process. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 15:25–16:10, 17:14–17:24, 98:07–98:25, 186:21–186:25, 274:23–276:12); ¶ 2, Ex. 4 (Bliss Dep. 45:12–46:13); M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 55:22–57:17); M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 94:20–96:02) (describing the volunteer committee resolution process that votes on drafts and revisions of ASHRAE standards).

136.    The volunteers who developed the standards at issue did so out of service to their country as federal, state, or municipal employees, in furtherance of the business interests of the private companies or organizations they worked for, or because of personal interest.  M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 45:16–46:04) (stating that volunteers develop ASTM standards

B9620/00403/SF/5540930.15

because "a company or an individual would be interested in having an ASTM standard that they could say their product or service is in compliance with"); ¶ 2, Ex. 4 (Bliss Dep. 138:22139:12) (as a public official, Mr. Bliss participated in NFPA standard development because his "motivation was to try and establish the best possible fire safety standards that could be developed"); ¶ 10, Ex. 12 (Reiniche Dep. 50:1251:06) (volunteers or members of the public participate because it affects their business interests and they want to write the language that is adopted into code, or because of personal interest).

137.    Plaintiffs' employees set up meetings to discuss drafts of the standards at issue at public locations, advised the volunteers who drafted the standards, and assisted with formatting. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 268:13–272:25) (listing the ways in which ASTM staff assist the people who actually draft the standards); M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 52:16–53:04) ("NFPA employees are not -- cannot be members of our technical committees. However, as I stated previously, it's important -- there's an important role that NFPA staff plays in guiding, advising the committee, coordinating the activities and providing their technical expertise, especially technical staff liaison into this committee process.  But they do not have -- they're not members of the committee, and they do not carry a vote in the decisions of the committees."); M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 97:13–98:19) (involvement of ASHRAE staff in development and updating of standard 90.1 is limited to reviewing and making suggestions to the volunteers who draft and vote on the text of the standard).

138.    Plaintiffs did not have control over the content of the standards at issue during the development and revision of those standards. The decision to develop or revise the standards at issue was made by volunteers, not by the Plaintiffs. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 15:25–16:10, 17:14–17:24, 98:07–98:25, 186:21–186:25, 274:23–276:12); M. Becker Decl. ¶ 2,

Ex. 4 (Bliss Dep. 45:12–46:02, 46:03–46:13) (NFPA employees assist the volunteers, but the volunteers have the "ultimate decision . . . as to what the language will actually say"); M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 55:22–57:17); M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 94:20–96:02).

139.   NFPA is the only Plaintiff to allege that a work made for hire agreement was signed by developers of the standards at issue.  Plaintiffs' Statement of Material Facts ¶ 115, ECF No. 118-2.  This language attempting to classify the work of volunteers as "work made for hire" was added to NFPA forms only in 2007, after most of the standards at issue were already published, and used inconsistently thereafter.  M. Becker Decl. ¶ 125, Ex. 127, ¶ 126, Ex. 128, ¶ 127, Ex. 129 (compare NEC proposal forms from 2005, 2007, and 2008).

140.   Plaintiffs claim to be assignees of any copyright that the volunteers or members of the public who authored the standards at issue might have had in the standards at issue. Pls. Mem. 16, ECF. No. 118-1.

141.   

M. Becker Decl. ¶ 51, Ex. 53 at p. 6, fn. 4.

142.   ASHRAE claims ownership of its Standards at Issue by virtue of copyright release forms that the people who drafted the standards allegedly signed. M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 192:17–194:03 (stating that ASHRAE claims authorship of the standards at issue "[a]s a basis of the signed copyright assignments that all the members sign when they apply for membership, that the commenters sign when they submit a comment and that the

B9620/00403/SF/5540930.15

members that submit change – or the public that submits change proposals sign when they

submit a change proposal"); Reiniche Dep. 193:08–17 (stating that the people who authored the

standards are not employees of ASHRAE)).

143.     ASHRAE requires volunteers who contribute to standard development to sign a

copyright release explicitly granting ASHRAE "non-exclusive" rights in those contributions. M.

BeckerDecl. ¶ 10, Ex. 12 (Reiniche Dep. 70:02-70:11).

144.     ASHRAE indicated the following language from one of its alleged "assignment"

forms when asked to indicate what language from that form it believes serves as an assignment

of copyright rights:

> If elected as a member of any ASHRAE Standard or Guideline
> Project Committee or appointed as a consultant to such committee
> I hereby grant the American Society of Heating, Refrigerating and
> Air-Conditioning Engineers (ASHRAE) the *non-exclusive, royalty-
> free rights, including nonexclusive, royalty rights in copyright*, to
> any contributions I make to documents prepared by or for such
> committee for ASHRAE publication and I understand that I
> acquire no rights in publication of such documents in which my
> contributions or other similar analogous form are used.  I hereby
> attest that I have the authority and I am empowered to grant this
> copyright release.

M. Becker Decl. ¶ 46, Ex. 48 (Reiniche Ex. 1155) (emphasis added); M. Becker Decl. ¶ 10, Ex.

12 (Reiniche Dep. 94:12–94:14).

145.     Every document that ASHRAE has produced to support its claim that the people

who drafted the ASHRAE standards at issue assigned their copyrights to ASHRAE states

explicitly that the grant of rights is non-exclusive. M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep.

69:19–94:19); M. Becker Decl. ¶ 25–46, Exs. 27–48.

146.     All but four of the 229 ASTM standards at issue in this case were developed and

published prior to 2003. ECF No. 1-1 (Complaint) Ex. A.

147.     ASTM admits that it did not request copyright assignments from the people who

drafted ASTM standards until approximately 2003. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 24:18–26:12; 27:07–27:14; 40:22–41:15; 214:24–215:06).

148.    ASTM has not produced signed copyright assignments for any of the standards at issue. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 24:18–26:12; 27:07–27:14; 40:22–41:15; 214:24–215:06).

149.    Prior to 2003, ASTM did not believe that it needed formal assignment agreements. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 42:15–42:16) ("[ASTM] didn't feel like we needed any formal, any formal assignment paper.").

150.    ASTM alleges that it relied on an unspoken "basic understanding" that the volunteers who drafted the standards at issue intended to create standards that ASTM would eventually distribute. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 42:18–44:01; 94:01–94:20).

151.    ASTM has not produced any evidence of the existence of an alleged "basic understanding" between the creators of the standards at issue and ASTM, nor any evidence of what the contours of this "basic understanding" were. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 44:03–45:14; 104:21–105:24) ("Q: Did Mr. Lively provide any basis for his statement that there was an understanding in the early '80s that ASTM would copyright the material provided by individuals that was incorporated into the standards drafts?  A:  No.  I think it was just his belief just as it was my belief."); (Smith Dep. 44:03–45:14) (stating that ASTM "didn't think that documentation [of the alleged 'basic understanding'] was needed").

152.    ASTM claimed that the ASTM "IP Policy" somehow confirms the existence of this alleged "basic understanding." M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 57:23–59:25).

153.    The earliest IP Policy document that ASTM produced in this litigation was approved by ASTM on April 28, 1999 and put into effect thereafter. ASTM had no IP Policy

prior to April 28, 1999. M. Becker Decl. ¶ 75, Ex. 77, ¶ 77, Ex. 79 [Ex. 1285, 1287, 1288].

154.    ASTM had no IP Policy prior to April 28, 1999. M. Becker Decl. ¶ 150, Ex.152

(Internet Archive capture of the ASTM home page the day before the ASTM IP Policy was

approved, and a capture after the ASTM Policy was approved, showing that the link to the IP

Policy in the lower-right corner of the page was not present on April 27, 1999).

155.    In 2010, approximately three years after the publishing of the most recent ASTM

standard at issue, the ASTM IP Policy was amended to include the following language: "Each

member agrees, by such participation and enjoyment of his/her annual membership benefits, to

have transferred any and all ownership interest, including copyright, they possess or may possess

in the ASTM IP to ASTM." M. Becker Decl. ¶ 75, Ex. 77, ¶ 77, Ex. 79 (Compare Section V.D.

in both documents).

156.    There was no means that ASTM imposed for the volunteers who drafted the

ASTM standards at issue to signify that they had read and agreed to the ASTM IP Policy. M.

Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 173:10–181:12) (admitting that ASTM does not know if

members read or understood the assignment clause, nor whether they assented to transfer their

copyright to ASTM).

157.    ASTM has not retained or produced in this litigation completed membership

forms pertaining to any of the standards at issue. The membership forms that ASTM has

produced date from 2008 and later, with only one membership form from 2007. M. Becker Decl.

¶ 90, Ex. 92; M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 258:11–258:23).

158.    ASTM has failed to exercise control over the creation and enforcement of its

membership and participation forms (that it terms copyright "assignments"), resulting in a

multiplicity of forms that either have no assignment language at all, or have various iterations of

language that ASTM claims grants it copyright assignments.  M. Becker Decl. ¶ 11, Ex. 13

(Smith Dep. 216:01–217:12, 225:05–225:19 (membership forms were prepared ad hoc by any

number of people, and he does not know if anyone knows how many different variations of

ASTM membership form were used from 2007 to 2014, because his "experience as being a staff

manager is I don't think people think about the version of an application that's being used.   I

think it's viewed as a tool that enables an individual to join a technical committee."),

159.     Many individuals renew their ASTM memberships through alternate channels

other than using ASTM membership renewal forms or renewing through ASTM's online portal,

and thereby do not encounter or formally assent to any copyright assignment language. M.

Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 278:04–278:18) (ASTM members can renew their

membership by phone or by email, without using the online portal or using ASTM's mail-in

forms); M. Becker Decl. ¶ 92, Ex. 94 (example of an ASTM member renewing by email).

ASTM's online membership agreement process does not require a member to click "yes," or "I

agree," or any other affirmation to the language discussing copyright assignment that appears on

the web page. Instead, members click a button labeled "continue" that appears below the

message: "[c]lick 'continue' to place your ASTM membership renewal in the shopping cart." M.

Becker Decl. ¶ 147, Ex. 149.

160.     The membership forms that ASTM has produced usually do not include language

asking for an assignment of copyright rights. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 211:24-

212:12) (acknowledging ASTM forms that did not have assignment language); M. Becker Decl.

¶¶ 82-84, Exs. 91 ¶¶82–84, Ex. 93 (examples of ASTM forms without any assignment

language).

161.     Of the ASTM forms that do include what ASTM alleges to be assignment

language, there is no means for a person filling out the form to sign her name or show that she agrees to assign her copyright rights to ASTM. M. Becker Decl. ¶¶ 85-89, 78, Exs. 87-91, 80 (ASTM forms with alleged assignment language); M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 173:10–181:12) (admitting that there is nowhere on the alleged copyright assignment for a member to check a box, sign her name, or otherwise indicate that she understands and assents to transfer her copyright to ASTM, and admitting that ASTM does not know if a member who completes the form has read the assignment clause or assents to transfer her copyright to ASTM).

162.    Through at least 2008, NFPA used copyright release language for the creators of the NFPA standards at issue that referred to a grant of non-exclusive rights. M. Becker Decl. ¶¶ 52–71, 73–74, Ex. 54–76; Ex. 129.

163.    For example, an NFPA document soliciting proposed text for the 2011 edition of the National Electrical Code, includes the following text:



M. Becker Decl. ¶ 127, Ex. 129 (emphasis added).

164.    NFPA did not exercise control over the process by which people submitted proposals. NFPA's Rule 30(b)(6) corporate representative Christian Dubay, stated that "in past history over the years . . . there's many different versions of our forms and ways of submission." M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 134:21–134:24.) NFPA would accept retyped versions of the forms that people used when contributing text to a standard draft. M. Becker Decl. ¶ 61, Ex. 63; M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 146:06–146:14). NFPA allowed volunteers to use any existing standard draft contribution form in place of the form that NFPA designated for use for the particular standard. M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 146:06–146:14).

165.    NFPA's current online public comment portal includes the following language under the "Copyright Assignment and Signature" page: "I understand and intend that I acquire no rights, including rights as a joint author, in any publication of the NFPA in which this Public Comment in this or another similar or derivative form is used."  M. Becker Decl. ¶ 152,  Ex. 154 at 10.  In earlier copyright releases, NFPA used similar language that would also effectively bar joint ownership: "I understand that I acquire no rights in any publication of NFPA in which this comment in this or another similar or analogous form is used."  M. Becker Decl. ¶ 71,  Ex. 73. ASHRAE uses almost identical language in its copyright releases: "I understand that I acquire no rights in publication of such documents in which my contributions or other similar analogous form are used." M. Becker Decl. ¶  #,  Ex. 48 [Ex. 1155].

166.    Federal government employees authored parts of the standards at issue. M. Becker Decl. ¶ 20, Ex. 20 at 1; ¶ 21, Ex. 23 at 9.

167.    Employees of third party companies, organizations, or government entities authored parts of the standards at issue in their capacity as employees of those third party companies, organizations, or government entities. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 163:04–164:19).

168.    Plaintiffs have no procedures to ensure that employees of third party companies, organizations, or government entities are capable of transferring any copyright in the standards at issue to Plaintiffs, and that such copyright is not instead held by the employer. Plaintiffs do not have any procedures in place to ensure that governmental and private company employees who participate in the development of standards have the authority or ability to transfer copyright to the Plaintiff organizations, and Plaintiffs did not request copyright assignments from the employers of the individuals who authored components of the standards at issue.  M. Becker

Decl. ¶ 11, Ex. 13 (Smith Dep. 46:12–49:235); (Smith Dep. 166:17–170:19); M. Becker Decl.

¶ 72, Ex. 74; M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 220:15–220:25) ("NFPA verifies through

our policy the submission from the individual.  We do not go to their companies to verify

authority of their signature."); M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 92:13–93:07).

169.    Public Resource voluntarily applies notices to the incorporated standards at issue

on its website describing the process it uses to copy standards and disclaiming affiliation with

any SDOs. C. Malamud Decl. ¶ 30, Ex. 3.

170.    Each of the incorporated laws at issue has a title that contains one of the

Plaintiffs' names. Compl. Exs. A–C, ECF No. 1.

171.    Public Resource displays links to standards incorporated by reference into the

Code of Federal Regulations in a table that identifies the standards by their alphanumeric code,

e.g., ASTM D396-98, its year, the developing organization, the title of the standard, and the

C.F.R. section that incorporated the standard by reference. The table explains that "In order to

promote public education and public safety, equal justice for all, a better informed citizenry, the

rule of law, world trade and world peace, this legal document is hereby made available on a

noncommercial basis, as it is the right of all humans to know and speak the laws that govern

them." C. Malamud Decl. ¶ 28, Ex. 2.

172.    ASTM itself states that the citation format for this standard is: "ASTM D396-98,

Standard Specification for Fuel Oils, ASTM International, West Conshohocken, PA, 2001,

www.astm.org." M. Becker Decl. ¶ 145, Ex. 147.

173.    Public Resource purchased a physical copy of each of the incorporated laws at

issue. C. Malamud Decl. ¶ 24.

174.    Public Resource posted on its website a PDF version of each incorporated law at

issue. The PDF version accurately appeared as a scan of a physical version of the incorporated law. C. Malamud Decl. ¶ 24.

175.    For some of the incorporated laws at issue, Public Resource posted versions in HTML and SVG formats. C. Malamud Decl. ¶ 25–26.

176.    For some of the PDF versions of the incorporated laws, Public Resource attached its own cover page, which indicated where the law was incorporated by reference. C. Malamud Decl. ¶ 20–22; Compl. Ex. G, ECF No. 1-7.

177.    Public Resource's addition of embedded text and metadata in the PDF versions of incorporated laws on its website did not change the appearance of the PDF versions. C. Malamud Decl. ¶ 25.

178.    The embedded text in the PDF versions of incorporated laws on Public Resource's website enabled software based searching and text to speech functionality. C. Malamud Decl. ¶ 25.

179.    The 2011 edition of the National Electric Code ("NEC") spans 886 pages. C. Malamud Decl. ¶ 34.

180.    Public Resource purchased a physical copy of the 2011 NEC, which did not include a requirement that high-voltage cables be shielded. Public Resource posted an electronic version of that physical copy on its website in PDF and HTML formats. C. Malamud Decl. ¶ 34.

181.    NFPA issued two errata to the 2011 NEC.  The errata included the addition of a requirement that high-voltage cables be shielded as well as changes to cross-references in various sections. M. Becker Decl. Exs. 123–24.

182.    Public Resource promptly corrected the errors to certain HTML versions of incorporated laws that Plaintiffs' counsel identified during the course of the deposition of Carl

B9620/00403/SF/5540930.15

Malamud. C. Malamud Decl. ¶ 33.

183.    It is in the public interest for people to be educated about the NFPA standards. M.

Becker Decl. ¶2, Ex. 4 (Bliss Dep. 121:22–122:4) ("NFPA's standards establish ways to make

buildings safer and processes to be safer and for people to act or react in a more safe manner

when it comes to fire, electrical safety and other hazards.  It's in the public interest that people be

educated about those requirements or those standards.").

184.    It is in the public interest for people to use the ASTM standards. M. Becker Decl.

¶ 20, Ex. 22 ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

185.    Public.Resource.org seeks to inform the public about the content of the law. M.

Becker Decl. ¶15, Ex. 17 (C. Malamud Ex. 33) (Public Resource "tries to put more government

information online. We've had a big impact on putting more judicial information on the Internet,

but also do fiche and a variety of other documents such as IRS nonprofit tax returns.").

186.    M. Becker Decl. ¶16, Ex. 18 (C. Malamud Ex. 38) ("In order to promote public

education and public safety, equal justice for all, a better informed citizenry, the rule of law work

trade and world peace, this legal document is hereby made available on a noncommercial basis,

as it is the right of all human to know and speak the laws that govern them."); ¶ 17, Ex. 19 (C.

Malamud Ex. 57); ¶ 18, Ex. 20 (C. Malamud Ex. 58) (appeal to donors describing mission).

187.    In 2002, Plaintiffs NFPA and ASHRAE argued that a lack of private monopoly to

control the reproduction of mandatory building codes would "destroy" the "ability of private

standards developers to underwrite the development and updating of their standards." M. Becker

Decl. ¶ 119, Ex. 121 (Brief of American Medical Assoc. et al. as Amici Curiae at 12, *Veeck v.*

*Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002) (No. 99-

40632)).

Dated:  December 21, 2015                            Respectfully submitted,


                                                    */s/ Andrew P. Bridges*
                                                    Andrew P. Bridges (admitted)
                                                    abridges@fenwick.com
                                                    Kathleen Lu (pro hac vice)
                                                    klu@fenwick.com
                                                    Matthew B. Becker (pro hac vice)
                                                    mbecker@fenwick.com
                                                    FENWICK & WEST LLP
                                                    555 California Street, 12th Floor
                                                    San Francisco, CA 94104
                                                    Telephone:  (415) 875-2300
                                                    Facsimile:   (415) 281-1350

                                                    David Halperin (D.C. Bar No. 426078)
                                                    davidhalperindc@gmail.com
                                                    1530 P Street NW
                                                    Washington, DC 20005
                                                    Telephone: (202) 905-3434

                                                    Mitchell L. Stoltz (D.C. Bar No. 978149)
                                                    mitch@eff.org
                                                    Corynne McSherry (pro hac vice)
                                                    corynne@eff.org
                                                    ELECTRONIC FRONTIER FOUNDATION
                                                    815 Eddy Street
                                                    San Francisco, CA 94109
                                                    Telephone: (415) 436-9333
                                                    Facsimile:  (415) 436-9993

                                                    *Attorneys for Defendant-Counterclaimant*
                                                    *Public.Resource.Org, Inc.*

B9620/00403/SF/5540930.15