UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR TESTING AND
MATERIALS D/B/A ASTM INTERNATIONAL,
NATIONAL, FIRE PROTECTION
ASSOCIATION, INC., and AMERICAN
SOCIETY OF HEATING REFRIGERATING,
AND AIR CONDITIONING ENGINEERS,

                Plaintiff(s),

    v.

PUBLIC.RESOURCE.ORG, INC.

                Defendant.

1:13-CV-01215 (TSC)

**AMICUS CURIAE BRIEF OF AMERICAN INSURANCE ASSOCIATION
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

ROBINS KAPLAN LLP

Meegan F. Hollywood
601 Lexington Avenue
Suite 3400
New York, NY 10022
(212) 980-7400
MHollywood@RobinsKaplan.com
Bar No. NY0206

Of Counsel:
James S. Harrington
Jonathan D. Mutch
800 Boylston Street, Suite 2500
Boston, MA 02199
(617) 267-2300
JHarrington@RobinsKaplan.com
JMutch@RobinsKaplan.com

*Attorneys for American Insurance Association*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

STATEMENT OF INTEREST IN THE CASE.................................................................... 1

ARGUMENT ....................................................................................................................... 2

    1.    The NFPA is essential not only to the insurance industry that formed it, but also to the architects, sprinkler designers and installers, builders, fire departments, building owners and many others who rely on its published standards............................ 3

    2.    The copyright protection of the works of NFPA, ASTM and ASHRAE serves the important societal goal of funding the fire prevention and safety engineering work of these organizations. ................................................................................................. 11

CONCLUSION.................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Computer, Inc. v. Franklin Computer Corp.*,
   714 F.2d 1240 (3d Cir.1983)...................................................11

*Brosville Community Fire Dept. v. Navistar, Inc.*
   2014 U.S. Dist. Lexis 173422 (W.D. Va. 2014)...................12

*Fox Television Stations, Inc. v. Filmon X LLC*,
   966 F.Supp.2d 30 (D.D.C. 2013)......................................11, 13

*Sarro v. Philip Morris USA*,
   857 F.Supp.2d 182 (D. Mass. 2012).....................................12

*Veeck v. Southern Building Code Congress International*,
   293 F.3d 791 (5th Cir. 2002)(Judge Wiener's dissenting opinion) .......................12

**Statutes**

National Technology and Transfer Act of 1995, P.L. 104-113, § 12(d), 110 Stat.
   783 (1996)...............................................................................9

**Other Authorities**

*A Partial Record of the Transactions at First Annual Meeting of the National Fire
   Protection Association*, Executive Committee Report, National Fire Protection
   Association, Standard Publishing Company, 1897, p. 13 .........................4

Bryner, Nelson, *Reconstructing the Station Nightclub Fire – Computer Modeling
   of the Fire Growth and Spread,* National Institute of Standards and
   Technology, 2006, p.1, fire.nist.gov/bfrlpubs/fire07/PDF/f07062.pdf......................8

Bugbee, P., *Men Against Fire: The Story of the National Fire Protection
   Association*, 1896-1971, National Fire Protection Association, 1971, pp. 1-4.........................3

Cheit, Ross E., *Setting Safety Standards: Regulation in the Public and Private
   Sectors,* Berkeley:  University of California Press, c. 1990.
   http://ark.cdlib.org/ark:/13030/ft8f59p27j/ ...............................................2

Cote, Arthur E., (Ed.), *Organizing For Fire and Rescue Services,* National Fire
   Protection Association, http://www.worldcat.org/title/organizing-for-fire-and-
   rescue-services-a-special-edition-of-the-fire-protection-
   handbook/oclc/54832159/viewport.........................................................10

35598622.1

**Page(s)**

Cote, Arthur E., *History of Fire Protection Engineering*, Fire Protection
    Engineering Magazine, October 2008, http://magazine.sfpe.org/professional-
    practice/history-fire-protection-engineering ................................................................8

Grosshandler, William L, et al., Report of the Technical Investigtion of the
    Station Nightclub Fire, National Institute of Standards and Technology, NIST
    NCST Act Report 2, Government Printing Office, June 2005, pp. 8-7 and 8-8,
    www.nist.gov/manuscript-publication-search.cfm?pub_id=100988 .......................8

Home Fire Sprinklers, NFPA.org, fn. 13, www.nfpa.org/safety-information/for-
    consumers/fire-and-safety-equipment/home-fire-sprinklers....................................11

National Safety Council, *Injury Facts, National Safety Council Publications*, 2000 ...................10

NFPA Articles of Organization, www.nfpa.org\about-nfpa\nfpa-
    operations\articles-of-organization .............................................................................4

Station Nightclub Fire, NFPA.org, http://www.nfpa.org/safety-information/for-
    consumers/occupancies/nightclubs-assembly-occupancies/the-station-
    nightclub-fire..............................................................................................................9

iii

## STATEMENT OF INTEREST IN THE CASE

The American Insurance Association (AIA), founded in 1866 as the National Board of Fire Underwriters, is a leading national trade association representing approximately 325 major property and casualty insurance companies based in many states.  AIA members range in size from small companies to the largest insurers with global operations.  These companies underwrite virtually all lines of property and casualty insurance.  AIA advocates sound and progressive public policies on behalf of its members in legislative and regulatory forums nationwide.  AIA also files amicus curiae briefs in significant cases before federal and state courts, including this Court, on issues of importance to the insurance industry and marketplace.

AIA is interested in this lawsuit because of the risks that Defendant's arguments pose to the continued availability of research and guidance provided in the standards promulgated by NFPA, ASTM and ASHRAE, not to mention those promulgated by other standards development organizations (SDOs).  These standards play a central role in the prevention and control of losses and the reduction of insurance risk.  AIA is uniquely positioned to explain (as *amicus curiae*) the industry's use of NFPA and other safety standards and the importance of these standards in protecting the public from fire and other safety hazards.

The Court authorized the filing of *amicus curiae* briefs in this matter by its November 4, 2015 Order and set a filing deadline of January 11, 2016.  Pursuant to the Court's November 4 Order, AIA files this *amicus curiae* brief in support of the Plaintiff's Motion for Summary Judgment.

**ARGUMENT**

The property insurance industry is an active consumer of the standards written and copyrighted by the NFPA, ASTM and ASHRAE.  The insurance industry relies on the objective, high quality research and guidance that underpins the safety standards promulgated by NFPA and the other organizations.  As one commentator has explained, these "[s]afety standards help insurers in two ways:  (1) they provide convenient underwriting criteria, and (2) they promote general loss control."[1]

This brief will explain the role that the standards of NFPA and the other organizations play in the prevention and reduction of insured losses, particularly fire losses.  AIA's goal is to show the Court the critical importance of the continued availability of the fire protection and safety standards at issue in this case to the insurance industry and to fire safety in the United States.  The organizations that produce these standards fund their research and development work, to a significant extent, by the licensing and sale of their copyrighted standards.  Without copyright protection, the critical source of funding that makes possible the production of these world class standards will disappear, calling into question the future independence, quality and even existence of these standards.

---

[1] Cheit, Ross E., *Setting Safety Standards: Regulation in the Public and Private Sectors,* Berkeley:  University of California Press, c.1990.  http://ark.cdlib.org/ark:/13030/ft8f59p27j/.

2

1.      **The NFPA is essential not only to the insurance industry that formed it, but also
to the architects, sprinkler designers and installers, builders, fire departments,
building owners and many others who rely on its published standards.**

The property and casualty insurance industry relies heavily on the standards of the NFPA

and similar organizations.  In fact, "[s]everal major standards setting organizations, including . . .

NFPA, trace their origins to the insurance industry."[2]

In November 1896, twenty fire insurance companies came together at the offices of the

New York Board of Fire Underwriters and formed the National Fire Protection Association.  At

the time, automatic fire sprinklers were growing in popularity as a means to extinguish fires,

reduce fire deaths, and limit fire damage to factories and warehouses.  Sprinkler system failures

were common, however, as there was no consensus standard for the design and installation of

such systems.  The insurance industry recognized the need for reliable sprinkler systems to

effectively control fire losses, and the first order of business for the National Fire Protection

Association was its 1896 approval of a consensus standard for the design and installation of

automatic fire sprinkler systems – the standard that became NFPA 13.[3]

NFPA 13 and related standards, as continuously amended, have been synonymous with

the state of the art in fire sprinkler design and installation for more than a century.  But from the

beginning, the NFPA's mission was broader than sprinklers – the continued improvement and

standardization of all aspects of fire protection:

> To bring together the experience of different sections and different bodies
> of underwriters, to come to a mutual understanding, and if possible an
> agreement in general principles governing fire protection, to harmonize
> and adjust our differences, so that we may go before the public with

---

[2] *Id.*

[3] Bugbee, P., *Men Against Fire:  The Story of the National Fire Protection Association*,
1896-1971, National Fire Protection Association, 1971, pp. 1-4.

> uniform rules and conditions which may appeal to their judgment, is the
> object of this Association.

Executive Committee Report, National Fire Protection Association.[4]  True to its broader mission,

in the 119 years since its formation, the scope of the NFPA's research and guidance has grown

with technology and experience to include all aspects of fire prevention, fire protection, and

firefighting.

The breadth of reliance upon NFPA research and guidance has grown in tandem with the

scope of its work.  Along with the work of ASTM and ASHRAE, NFPA's published research

and guidance are now relied on by insurers, architects, sprinkler professionals, builders, fire

departments, building owners and many others.

NFPA's mission statement is contained in its current Articles of Organization:

> The purposes of the . . . Association . . . shall be to promote the
> science and improve the methods of fire protection and prevention,
> electrical safety and other related safety goals; to obtain and
> circulate information and promote education and research on these
> subjects and to secure the cooperation of its members and the
> public in establishing proper safeguards against loss of life and
> property.

Article 2, NFPA Articles of Organization.[5]  The broad mission of today's NFPA is reflected in

the more than 300 consensus codes and guidance standards published by NFPA, all sharing the

goal of minimizing the risk and effects of fire and related safety hazards.  The following

examples, drawn from the current list of NFPA codes and standards, illustrate the breadth of

industries and professions that (like the property insurance business) have come to routinely rely

---

[4] *A Partial Record of the Transactions at First Annual Meeting of the National Fire Protection Association*, Standard Publishing Company, 1897, p. 13.

[5] The NFPA (1995) Articles of Organization are available at www.nfpa.org\about-nfpa\nfpa-operations\articles-of-organization.

on the research and guidance of the NFPA:

| | |
|---|---|
| NFPA 13: | Standard for Installation of Sprinkler Systems |
| NFPA 31: | Standard for Installation of Oil-Burning Equipment |
| NFPA 37: | Standard for the Installation and Use of Engines and Gas Turbine |
| NFPA 45: | Standard on Fire Protection for Laboratories Using Chemicals |
| NFPA 51B: | Standard for Fire Prevention During Welding, Cutting and Other How Work |
| NFPA 59A: | Standard for the Production, Storage, and Handling of LNG |
| NFPA 70: | National Electrical Code |
| NFPA 86: | Standards for Ovens and Furnaces |
| NFPA 99: | Health Care Facilities Code |
| NFPA 101: | Life Safety Code |
| NFPA 120: | Standard for Fire Prevention and Control in Coal Mines |
| NFPA 312: | Standard for the Fire Protection of Marine Vessels |
| NFPA 407: | Standard for Aircraft Fuel Servicing |
| NFPA 513: | Standard for Motor Freight Terminals |
| NFPA 730: | Guide for Premises Security |
| NFPA 900: | Building Energy Code |
| NFPA 1192: | Standard on Recreational Vehicles |
| NFPA 1616: | Standard for Mass Excavation and Sheltering |
| NFPA 1700: | Guide for Structural Firefighting |
| NFPA 1984: | Standard on Respirators for Wildland Firefighting Operations |
| NFPA 1994: | Standard on Protective Ensembles for CBRN Terrorism First Responders |
| NFPA 1999: | Standard on Protective Clothing for Emergency Medical Operations |
| NFPA 5000: | Building Construction and Safety Code |

Some of these standards and codes have been selectively incorporated by reference in law or

governmental regulations, where they have served the public interest in fire safety.  One such

example is NFPA 70, the National Electrical Code, which has been incorporated in whole or in

part in the statutes or regulations of 47 states.  The National Electrical Code maximizes the

5

electrical fire safety of tens of millions of homes and businesses in the United States.  While relatively few NFPA standards have been selectively incorporated in statutes or rules in this manner, all of the standards serve the interests of the public and insurers alike by providing up-to-date best practice guidance.

One example proves the extent to which NFPA standards represent the "gold standard" for fire prevention, fire protection and life safety.  After the Station nightclub fire took 100 lives in Rhode Island in 2003, the U.S. Department of Commerce's National Institute of Standards and Technology ("NIST") Fire Research Division undertook a comprehensive, technical investigation of the fire.  The investigation compared the conditions in the building to the fire protection requirements of NFPA 13 (Sprinklers); NFPA 101 (Life Safety); NFPA 255 (Burn Characteristics of Building Materials); NFPA 1126 (Pyrotechnics); NFPA 5000 (Building Safety), ASTM E84 (Burn Characteristics of Building Materials), and to sections of the International Building Code.

As illustrated by these excerpts from NIST's final report, investigators found that failures to follow the guidance of NFPA and ASTM were "highly relevant and [following the guidance of these standards] would almost certainly have reduced substantially the loss of life":

6

**Table 8-1 Findings Concerning Materials Relevant to Model Codes and Standards**

| Issue | References | Relev. H | M | L |
|---|---|---|---|---|
| **Polyurethane foam used as sound insulation on platform and walls.**<br><br>Foam thermal insulation unprotected in back platform wall. | **ASTM E84 [9]** | X | | |
| | **NFPA 255 [11]** | X | | |
| | NFPA 286 [10] | | X | |
| | IBC:2604 [4] | | X | |
| | 5000:10.4.3.1 [3] | | X | |
| **Pyrotechnic devices were used as part of the theatrics.**<br><br>**Little guidance provided to AHJ\* regarding appropriate use of pyrotechnics.** | **NFPA 1126 [12]** | X | | |

\* Authority Having Jurisdiction

**Table 8-2 Findings Concerning Fire Protection Systems Relevant to  Model Codes and Standards**

| Issue | References | Relev. H | M | L |
|---|---|---|---|---|
| **Automatic sprinklers not required for existing structures.** | **101:13.3.5.1 [7]** | X | | |
| | **5000:16.3.5.1.1 [3]** | X | | |
| | **IBC:903.2.1.2 [4]** | X | | |
| | 101.12.3.5.1 [7] | | | X |

**Table 8-3 Findings Concerning Occupant Load and Egress Relevant to Model Codes and Standards**

| Issue | References | Relev. H | M | L |
|---|---|---|---|---|
| **Main entrance did not have capacity to handle 50% of the occupants on the night of the fire, and 50% would have been insufficient to safely evacuate all occupants in time (1-1/2 minutes).** | **IBC:1024.2 [4]**<br>**5000:16.2.3.3 [3]**<br>**101:12.2.3.3 [7]**<br>**101:13.2.3.3 [7]** | X | | |
| **Festival seating overloaded the exit capacity.** | **5000:16.2.5.4.1 [3]**<br>**101:12.2.5.4.1 [7]**<br>**101:13.2.5.4.1 [7]**<br>**5000:16.2.4.1 [3]** | X<br>X<br>X<br>X | | |

7

35598622.1

National Institute of Standards and Technology, Report of the Technical Investigation of the

Station Nightclub Fire.[6]

There is probably no more powerful, and poignant, example of the value of the existing

independent standards of NFPA and the other organizations than NIST's finding that if the

Station nightclub had been equipped with NFPA 13 compliant sprinklers, the nightclub fire

would have been extinguished in 114 seconds without ever generating the excessive heat or loss

of breathable air quality that took 100 lives.  In the absence of sprinklers, the club reached

excessive temperatures and lost breathable oxygen within 90 seconds, causing 100 deaths.[7]

It is important to note that the standards of NFPA and the other organizations are not

static.  The key value of the standards is that they are regularly updated by committees of

technical experts, particularly in response to major incidents and changes in technology.  As

noted in a Society of Fire Protection Engineers' publication,

> many of the advances in fire protection were brought about as a
> reaction to disastrous fires, and NFPA and its technical committees
> were instrumental. . . . Much of the knowledge for fire protection
> engineering came from loss experience, the development of
> property loss prevention innovations and fire research conducted
> by these founding organizations.

Cote, Arthur E., *History of Fire Protection Engineering*.[8]  The Station Nightclub Fire led to

---

[6] Grosshandler, William L, et al., Report of the Technical Investigation of the Station Nightclub Fire, National Institute of Standards and Technology, NIST NCST Act Report 2, Government Printing Office, June 2005, pp. 8-7 and 8-8, available at www.nist.gov/manuscript-publication-search.cfm?pub_id=100988

[7] *Id.*, pp. 5-19, 5-52, 5-61, 8-3; Bryner, Nelson, *Reconstructing the Station Nightclub Fire – Computer Modeling of the Fire Growth and Spread,* National Institute of Standards and Technology, 2006, p.1, available at fire.nist.gov/bfrlpubs/fire07/PDF/f07062.pdf.

[8] Fire Protection Engineering Magazine, October 2008, available at http://magazine.sfpe.org/professional-practice/history-fire-protection-engineering.

several almost immediate changes to NFPA 101 and NFPA 5000.  These included guidance

requiring automatic fire sprinklers in new nightclubs and for existing clubs that accommodate

more than 100 persons, a requirement that building owners maintain records documenting that

building exits are free of obstructions, a requirement for one trained crowd manager per 250

persons, and a ban on standing assemblies of crowds over 250 unless a fire department life-safety

evaluation has been performed.[9]

    As the NIST's Station Nightclub investigation's reliance on NFPA and ASTM

demonstrates, it is not just insurance companies, architects, sprinkler designers and installers,

builders, electricians, fire departments, and building owners that benefit from the research and

guidance of the NFPA and the other organizations.  In a very real way, the public benefits

because the NFPA and the other organizations lead the way in advancing fire and materials

safety, while government and others follow.

    The American system of generating fire and safety standards is a private one.  This

system can incorporate new knowledge and developments quickly and effectively, and make

standards embodying new guidance available almost immediately.  The system depends on

funding the development of these timely, high quality, and independent standards through the

licensing or sale of copyrighted works.  The system costs the public almost nothing.  There is no

ready substitute for it.  The federal government acknowledges its reliance on private voluntary

consensus standards.[10]  State governments have not done the job either.  States struggle to pass

---

[9] The text of the amendments is available through a link at http://www.nfpa.org/safety-information/for-consumers/occupancies/nightclubs-assembly-occupancies/the-station-nightclub-fire.

[10] National Technology and Transfer Act of 1995, P.L. 104-113, § 12(d), 110 Stat. 783 (1996)("Federal agencies and departments shall use technical standards that are developed or adopted by voluntary consensus standards bodies . . .").

fire safety legislation now, even with the research, guidance and standards provided by NFPA and others.

The work of NFPA and the other organizations saves lives and property.  Consider the reduction in lives lost in fires over the last century.  In 1918, there were 9.1 fire deaths per 100,000 people in the United States.  By 1998, the fatality rate had been reduced by 87% to 1.1 fire deaths per 100,000 people.[11]



U.S. Fire and Burn Deaths, 1913-99

National Center for Health Statistics, National Safety Council as reprinted in Cote, Arthur E., *Organizing For Fire and Rescue Services,* National Fire Protection Association, 2003, p. 6.[12]   A major fire protection advance in the earlier twentieth century was the improvement and increasing adoption of automatic fire sprinklers through NFPA 13, while a major fire protection advance since 1980 was the improvement and increasing adoption of smoke and fire alarms in commercial and residential space through NFPA 72.[13]   Both were driven by NFPA standards.

---

[11] National Safety Council, *Injury Facts, National Safety Council Publications,* 2000, pp. 38-41; Cote, Arthur E., *Organizing For Fire and Rescue Services,* National Fire Protection Association, 2003, p. 6, available at http://www.worldcat.org/title/organizing-for-fire-and-rescue-services-a-special-edition-of-the-fire-protection-handbook/oclc/54832159/viewport.

[12] Available at http://www.worldcat.org/title/organizing-for-fire-and-rescue-services-a-special-edition-of-the-fire-protection-handbook/oclc/54832159/viewport.

[13] In the residential context, NFPA's published estimate are that working smoke alarms reduce the occupant's risk of dying in the fire by about 50 percent while automatic fire sprinklers

35598622.1

Fire and materials safety advancements are driven by the learning, research, guidance and updated standards of independent standard organizations like NFPA, ASTM and ASHRAE. Advancements are brought forward through voluntary consensus standards developed by leading technical experts and then adopted by government and/or the marketplace.  See e.g. NFPA 13 (Sprinklers); NFPA 72 (Fire and Smoke Alarms); NFPA 101 (Life Safety); NFPA 1500 (Firefighter Safety), NFPA 5000 (Building Safety).  These advancements reduce fire losses and save lives and property.

The "copyright system is intended both to encourage innovation" and "to protect innovative content."  *Fox Television Stations, Inc. v. Filmon X LLC,* 966 F.Supp.2d 30, 39 (D.D.C. 2013).  It is hard to imagine innovation more worthy of copyright protection than the life-saving work of NFPA and other SDOs, or circumstances more prone to irreparable harm in the absence of vigorous copyright enforcement than the circumstances before the court.  This is a case in which truly "the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Id.* at 51,  quoting *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3d Cir.1983).

**2.**      **The copyright protection of the works of NFPA, ASTM and ASHRAE serves the important societal goal of funding the fire prevention and safety engineering work of these organizations.**

The standards developed by NFPA and similar SDOs are in the first instance drafted or amended by a committee of technical experts (including insurance industry professionals) who work as volunteers.  SDO approval and amendment processes are evaluated and accredited by

---

reduce the risk of dying by about 80 percent.  www.nfpa.org/safety-information/for-consumers/fire-and-safety-equipment/home-fire-sprinklers.

35598622.1

the American National Standards Institute for their consensus decision-making, openness,

balancing of interests, and fairness.  Because of the prestige of serving on an SDO committee,

committee expertise is very high, explaining why the standards of organizations like NFPA are

often referred to as the "gold standard." *E.g. Brosville Community Fire Dept. v. Navistar, Inc.*

2014 U.S. Dist. Lexis 173422 at *21, n. 9 (W.D. Va. 2014); *Sarro v. Philip Morris USA*, 857

F.Supp.2d 182, 186, n. 3 (D. Mass. 2012).

     While the written work product of SDOs is generally referred to as a standard or code,[14]

these terms encompass a variety of technical best practices, guidelines, suggested rules, design

and installation procedures, test methods, and specifications.  As with the NFPA's original fire

sprinkler standard or code, the goal is standardization around best practices, not necessarily

legislation.  The SDOs work to integrate standards and codes in related areas, providing safety,

reliability and interoperability.

     SDOs pay for the substantial administrative research and engineering support costs of

developing standards, in whole or significant part, with revenue generated from the sale or

licensing of their copyrighted standards.  This funding mode keeps SDOs independent, objective

and in business, and avoids potential compromises (real and perceived) arising from seeking

funding from industries interested in modifying standards to suit their own special interest.

*Veeck v. Southern Building Code Congress International*, 293 F.3d 791, 817 (5th Cir.

2002)(Judge Wiener's dissenting opinion).

     By guaranteeing independence, the funding-by-sale-of-publication model also allows

---

[14] Both standards and codes should be entitled to copyright protection as "privately organized and authored collections of hyper-technical data for use in a specialized segment of today's complex society that benefits from uniformity in those data."  *Veeck* dissent of Judge Wiener, 293 F.3d at 814, n.20.

SDOs the freedom to focus on best practices and fire safety without political distraction – a freedom that has resulted in:

- o High quality, objective standards that save lives and money;

- o Fast and efficient updating of standards to meet emerging fire and life safety issues;

- o Access to state-of-the-art research and guidance for stakeholders and the public at reasonable or no cost;

- o Standardization of practices and products internationally around standards produced by U.S.-based SDOs, fueling foreign demand for U.S. products.

AIA members and others with a business or professional interest in mitigating fire-related losses of life and property directly benefit from the copyright protection that makes possible the high quality standards produced by SDOs.  The importance of copyright protection for SDO works, however, is far broader.  Copyright protection funds the fire and life safety standards upon which the public relies, and protects the nation's access to published research and guidance that saves lives.

But copyright protection is only as strong as its enforcement.  Here, enforcement will best serve the goals of our copyright system -- to encourage innovation and protect innovative content.  *Fox Television Stations, supra* at 39.   Copyright enforcement will in this case preserve the system of fire and life safety standards upon which the public relies and encourage continuous innovation and improvements in the standards.  Only copyright enforcement can "prevent the misappropriation of skills, creative energies, and resources which are invested in the" standards."  *Id.* at 51.

13

**CONCLUSION**

The research and guidance of SDOs and the resulting standards contribute directly to the fire and life safety of the public, while also benefitting numerous stakeholders including the members of AIA.  The Court should uphold copyright protection for the life-saving and property-preserving work of SDOs.

Dated: January 11, 2016

ROBINS KAPLAN LLP

By:  /s/ Meegan F. Hollywood

Meegan F. Hollywood
601 Lexington Avenue
Suite 3400
New York, NY 10022
(212) 980-7400
MHollywood@RobinsKaplan.com
Bar No. NY0206

Of Counsel:

James S. Harrington
Jonathan D. Mutch
800 Boylston Street, Suite 2500
Boston, MA 02199
(617) 267-2300
JMutch@RobinsKaplan.com
JHarrington@RobinsKaplan.com

*Attorneys for*
*American Insurance Association*

35598622.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 11th day of January, 2016 via CM/ECF upon the following:

*Counsel for National Fire Protection Association, Inc.*
Jonathan H. Blavin (Jonathan.Blavin@mto.com)
Anjan Choudhury (Anjan.Choudhury@mto.com)
Kelly M. Klaus (Kelly.Klaus@mto.com)
Nathan M. Rehn (Thane.Rehn@mto.com)

*Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers*
Jeffrey S. Bucholtz (jbucholtz@kslaw.com)
Kenneth L. Steinthal (ksteinthal@kslaw.com)
Joseph R. Wetzel (jwetzel@kslaw.com)
Blake Cunningham (bcunningham@kslaw.com)

*Counsel for Public.Resource.Org, Inc.*
Andrew Bridges (abridges@fenwick.com)
Kathleen Lu (klu@fenwick.com)
David Halperin (davidhalperindc@gmail.com)
Mitchell L. Stoltz (mitch@eff.org)
Corynne McSherry (corynne@eff.org)
Joseph Gratz (jgratz@durietangri.com)
Mark Lemley (mlemley@durietangri.com)

*Counsel For American Society For Testing And Materials d/b/a/ ASTM International*
Michael F. Clayton (mclayton@morganlewis.com)
J. Kevin Fee ( jkfee@morganlewis.com)
Jordana S. Rubel ( jrubel@morganlewis.com)

/s/ Meegan F. Hollywood

35598622.1