# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR TESTING
AND MATERIALS d/b/a/ ASTM
INTERNATIONAL;

NATIONAL FIRE PROTECTION
ASSOCIATION, INC.; and

AMERICAN SOCIETY OF HEATING,
REFRIGERATING, AND AIR
CONDITIONING ENGINEERS,

    *Plaintiffs/Counter-Defendants*,

    v.

PUBLIC.RESOURCE.ORG, INC.,

    *Defendant/Counter-Plaintiff.*

No. 1:13-cv-1215 (TSC/DAR)

---

**BRIEF OF PUBLIC KNOWLEDGE, KNOWLEDGE ECOLOGY INTERNATIONAL, AND THE AMERICAN LIBRARY ASSOCIATION AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT/COUNTER-PLAINTIFF PUBLIC.RESOURCE.ORG, INC.**

Charles Duan (D.C. Bar No. 1013998)
Public Knowledge
1818 N Street NW, Suite 410
Washington, DC 20036
(202) 861-0020
cduan@publicknowledge.org

*Counsel for amici curiae*

January 11, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   Enacted and Incorporated Laws Are Non-Expressive Works Not Entitled to Copyright Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   The Wording of Laws Cannot Be Copyrighted Because Precise Wording Is Determinative of the Law's Implementation . . . . . . . . . . . . . . . . . . . . . 3

    B.   Adopting Draft Language into Law Erases the Expression/Fact Dichotomy and Renders the Adopted Language Factual as a Statement of the Law . . . . . . . . . 6

II.  The Policy Preventing Copyright Protection for Law Has an Impeccable Historical Pedigree . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.   To Be Accessible, Laws Must Be Freely and Readily Available to the Public and Are Not Amenable to Copyright . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.   Access Has Always Required The Ability To Distribute, Not Just The Ability To Read . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**Cases**

*Banks & Bros. v. West Publishing Co.*,
  27 F. 50 (C.C.D. Minn. 1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7–8

*Banks v. Manchester*,
  128 U.S. 244 (1888) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8–10

*Building Officials & Code Administration v. Code Technology, Inc.*,
  628 F.2d 730 (1st Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.*,
  44 F.3d 61 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Chosun International, Inc. v. Chrisha Creations, Ltd.*,
  413 F.3d 324 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*,
  97 F.3d 1504 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Consumer Product Safety Commission v. GTE Sylvania, Inc.*,
  447 U.S. 102 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
  499 U.S. 340 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2–3, 6–7

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*Nash v. Lothrop*,
  142 Mass. 29 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8–9

*National Nonwovens, Inc. v. Consumer Products Enterprises, Inc.*,
  397 F. Supp. 2d 245 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*New York Trust Co. v. Eisner*,
  256 U.S. 345 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Publications International, Ltd. v. Meredith Corp.*,
  88 F.3d 473 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Veeck v. Southern Building Code Congress International, Inc.*,
  293 F.3d 791 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3–6, 9–10

*Wheaton v. Peters*,
  33 U.S. 591 (1834) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8–9

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Statutes**

17 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

——— § 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

——— § 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other Sources**

Michael W. Carroll, *The Movement for Open Access Law*, 10 Lewis & Clark L. Rev. 741 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cong. Research Serv., *Report No. 97-589, Statutory Interpretation: General Principles and Recent Trends* (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3–4

George S. Grossman, *Legal Research: Historical Foundations of the Electronic Age* (1994) . 10

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (1996) . . . . . . . . . . . . 4, 9

William F. Patry, *Copyright Law and Practice* (1994) . . . . . . . . . . . . . . . . . . 9

L. Ray Patterson & Craig Joyce, *Monopolizing the Law: The Scope of Copyright Protections for Law Reports and Statutory Compilations*, 36 UCLA L. Rev. 719 (1989) . . . . . . . . . 9

E.C. Surrency, *A History of American Law Publishing* (1990) . . . . . . . . . . . . . . . 10

Julia Wentz, *Justice Requires Access to the Law*, 36 Loy. U. Chi. L.J. 641 (2005) . . . . . . 11

### INTEREST OF *AMICI CURIAE*

Public Knowledge[1] is a non-profit organization that is dedicated to preserving the openness of the Internet and the public's access to knowledge, promoting creativity through balanced intellectual property rights, and upholding and protecting the rights of consumers to use innovative technology lawfully. Public Knowledge advocates on behalf of the public interest for a balanced patent system, particularly with respect to new and emerging technologies.

Knowledge Ecology International ("KEI") is a 501(c)(3) non-profit organization that searches for better outcomes, including new solutions, to the management of knowledge resources. KEI undertakes and publishes research and new ideas, engages in global public interest advocacy, provides technical advice to governments, NGOs and firms, enhances transparency of policy making, monitors actions of key actors, and provides forums for interested persons to discuss and debate knowledge ecology topics.

The American Library Association is a nonprofit professional organization of more than 60,000 librarians dedicated to providing and improving library services and promoting the public interest in a free and open information society.

---

[1]This brief is being tendered with a motion for leave to file this brief. Pursuant to Local Rule 7(o)(5) and Federal Rule of Appellate Procedure 29(c)(5), no counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of the brief. No person or entity, other than *amici*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

The law, for all its importance, lacks the sort of creativity warranting copyright.  Legal language is precise and deliberately chosen to convey highly specific information.  This is doubly true when the language is selected for a specialist or professional audience, such as in the building and electrical codes at issue in this case.  The particular arrangement of words and grammar in a code determines its effect.  As such, the law cannot be "creatively" expressed in an alternate fashion without being fundamentally *incorrect*.  Copyright—a system designed to protect creative expression—has no place suppressing the circulation of something that by its very nature relies on being duplicated *precisely* and *in its entirety* in order to fulfill its function.

Moreover, public access to the law has long been a cornerstone of American jurisprudence.  Copyright, which fundamentally serves to restrict access, directly conflicts with this principle.  Courts have long recognized this conflict and have robustly rejected the notion of "fencing off" the law by extending copyright protection to it.  This Court should follow the clear line of jurisprudential reasoning and decline to extend copyright protection to the codes at issue in this case.

## ARGUMENT

### I.   Enacted and Incorporated Laws Are Non-Expressive Works Not Entitled to Copyright Protection

The Constitution empowers Congress "[t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." U.S. Const. art. I, § 8, cl. 8.  The copyright system protects an author's creative expression.  A work must involve a creative act in order to receive copyright protection. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 340 (1991) ("The constitutional requirement

necessitates independent creation plus a modicum of creativity.").  When that creativity is missing—such as in operative or factual statements—that expression is not eligible for copyright.

The codes at issue in this case are both functional (as operative language) and factual (as restatements of the law).  Accordingly, they are not copyrightable, and this Court should grant Defendant summary judgment.

## A.   The Wording of Laws Cannot Be Copyrighted Because Precise Wording Is Determinative of the Law's Implementation

The Copyright Act specifically excludes from protection "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b); *see also Feist*, 499 U.S. at 350.  "[C]opyright is limited to those aspects of work—termed expression—that display the stamp of the author's originality." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547–48 (1985).  In other words, copyright requires "independent creation plus a modicum of creativity." *Feist*, 499 U.S. at 1285.  The Copyright Act thus excludes from protection "useful articles," defined as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101.

In the context of statutes, the specific wording of the law is, itself, operative.  The specific selection of words used in a statute or code directs its interpretation, both by users and by courts.  "When the meaning of specific statutory language is at issue, courts often need to consider the meaning of particular words or phrases," going so far as to consider grammar and punctuation.  Cong. Research Serv., *Report No. 97-589, Statutory Interpretation:  General Principles and Recent Trends* 5, 11 (2008) [hereinafter *CRS Report*]; *see also Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293

F.3d 791, 801 (5th Cir. 2002) ("Courts routinely emphasize the significance of the precise wording of laws presented for interpretation."). Importantly, "the specific terms of a statute override" more general terms, even when used in the same statute. *CRS Report*, *supra*, at 10.

Alternative framings of statutory language, no matter how creative, are not, and can never be, *the law*. Statutory text is not prose conjured to convey a general sense or narrative; rather, it is "the unique, unalterable expression of the 'idea' that constitutes local law." *Veeck*, 293 F.3d at 801 (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself.")).

Deliberately operative language is not, and has never been, subject to copyright. Courts have consistently held purely functional works such as instructions, recipes, and other descriptions of systems or processes to be non-copyrightable. In *Publications International, Ltd. v. Meredith Corp.*, for example, the Court of Appeals for the Seventh Circuit distinguished between compiling a selection of recipes (which involves some creative choice) and the content of the individual recipes themselves (which were merely descriptions of various procedures to make the dishes in question). 88 F.3d 473, 480–82 (7th Cir. 1996). The Court suggested that a recipe's copyrightability is "doubtful[,] because the content of recipes are clearly dictated by functional considerations, and therefore 'may be said to lack the required element of originality, even though the combination of ingredients contained in the recipes may be original in a noncopyright sense.'" *Id.* at 481 (quoting Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.18[I] (1996)); *see also CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504 (1st Cir. 1996) (functional language instructing listeners how to enroll in radio promotional contest was not protected by copyright); *Nat'l Nonwovens, Inc. v. Consumer Prods. Enters., Inc.*, 397 F. Supp. 2d 245 (D. Mass. 2005) (denying copyright protection for instructions for boiling wool felt where instructions were functional and

merely described a process without accompanying creative expression); *cf. Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324 (2d Cir. 2005) (design elements conceptualized as existing independently of utilitarian function may be eligible for copyright protection).

Statutory language is, if anything, more demanding in its specificity than recipes.  While a chef may choose to measure his ingredients in metric or imperial units, the terms of art necessary to interpreting a statute cannot be substituted with "close enough" equivalents.  They are created to instruct and constrain, and are, by their very nature, functional works.  They do not express creative impulses or strive to elicit emotion; they are written with great deliberateness to convey the most precise information possible.  This is doubly true for building codes, which are promulgated for the health and safety of the public.  Functionality is perhaps the defining characteristic of our laws; to remove this element would be to render laws useless (at best) and deliberately confounding (at worst).

No creative "re-phrasing" of the statue can accurately convey the law.  Enacting a statute renders all alternative expressions of the law invalid; "other methods of expressing the idea are foreclosed. An individual wishing to publish the text of a law cannot develop his own, unique version and still publish an authoritative copy." *Veeck*, 293 F.3d at 416 (Little, J., dissenting) (internal citation omitted); *see also CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 68 (2d Cir. 1994) ("It is also well established that, in order to protect the immunity of ideas from private ownership, when the expression is essential to the statement of the idea, the expression also will be unprotected, so as to insure free public access to the discussion of the idea."); *Veeck*, 293 F.3d at 801 ("If an idea is susceptible to only one form of expression, the merger doctrine applies and § 102(b) excludes the expression from the Copyright Act.").

Whether a model code can, as a *model*, be protected by copyright is a separate question. Once a model code is enacted into law, all alternative expressions of those codes are now foreclosed as inaccurate. There is no way to precisely express the law *except* through the content of the "model" codes. Interpretation and enforcement alike rely on access to the specific wording of the relevant statutes. This emphasis on precision is doubly relevant in the context of building and safety codes, where word choice is so critical that it gives rise to specialty trade associations such as Plaintiffs.

**B.  Adopting Draft Language into Law Erases the Expression/Fact Dichotomy and Renders the Adopted Language Factual as a Statement of the Law**

Just as copyright does not protect purely functional works, it also does not protect bare facts: "The most fundamental axiom of copyright law is that [n]o author may copyright his ideas or the facts he narrates." *Feist*, 499 U.S. at 340 (citing *Harper*, 471 U.S. at 556 (internal quotations removed)). Statements are similarly ineligible for copyright when they are the only way of expressing the idea that they embody. "If an idea is susceptible to only one form of expression, the merger doctrine applies and § 102(b) excludes the expression from the Copyright Act." *Veeck*, 293 F.3d at 801.

Once adopted, the building codes become the letter of the law. Copies of the building code are only useful to the extent that they are reproduced verbatim; "re-interpretations" have no legal standing. The particular phrasing is no longer separable from the meaning it embodies, and the expression/idea distinction vanishes. Legislative adoption thus removes the adopted portions of the work from copyright protection as creative expression, and renders them fundamentally unprotectable as facts. Much like new parents debating the name for their infant, there is a modicum of

6

creativity in the act of deciding; however, as soon as that name is entered onto the birth certificate, it exits the realm of creativity and becomes fact in the form of the child's name.[2]

Moreover, these codes remain the law whether or not Plaintiffs continue to publish them, or develop newer model statutes. Absent fresh legislative action, the incorporated code is no longer purely the product of a standards' body's labor; it is the law of the land, frozen in time. The court in *Feist* emphasized that the subject matter remained true regardless of its subsequent republication. *See* 499 U.S. at 340.

## II.   The Policy Preventing Copyright Protection for Law Has an Impeccable Historical Pedigree

Rejection of copyright on legally operative texts such as enacted building codes is supported by strong policy reasons, as elucidated by Defendants and supportive *amici*. But these are not new policy concerns: policy favoring accessibility of laws dates back to the very founding of this nation. Insofar as "a page of history is worth a volume of logic," *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921), this tradition strongly supports Defendant's position.

## A.   To Be Accessible, Laws Must Be Freely and Readily Available to the Public and Are Not Amenable to Copyright

"[I]t is a maxim of universal application that every man is presumed to know the law, and it would seem inherent that freedom of access to the laws, or the official interpretation of those laws, should be co-extensive with the sweep of the maxim. Knowledge is the only just condition of obedience." *Banks & Bros. v. West Publ'g Co.*, 27 F. 50, 57 (C.C.D. Minn. 1886). Federal

---

[2]To the extent that this dissolving of copyrightability raises takings issues, the potentially culpable party is the legislative body who dissolves copyrightability without providing proper compensation to the author of the adopted work—not with citizens who read and distribute the factual content of the enacted law.

statutes and regulations are in the public domain and are indisputably denied copyright protection. 17 U.S.C. § 105. The 1976 Copyright Act thus statutorily reflects the understanding embodied in Supreme Court rulings extending back to the early 19th century; public policy dictates that law must be freely and readily available to the public. *See Wheaton v. Peters*, 33 U.S. 591, 593 (1834) (holding that judicial opinions could not be copyrighted); *Banks v. Manchester*, 128 U.S. 244, 253 (1888) ("[T]here has always been a judicial consensus, from the time of *Wheaton* . . . , that no copyright could, under the statutes passed by Congress, be secured in the products of the labor done by judicial officers in the discharge of their judicial duties. The whole work done by the judges . . . is free for publication to all . . . ."); *see also Nash v. Lothrop*, 142 Mass. 29, 35 (1886) ("[I]t needs no argument to show that justice requires that all should have free access to opinions, and that it is against sound public policy to prevent this, or to suppress and keep from the earliest knowledge of the public the statutes, or the decisions and opinions of the Justices."). In 1886, the Circuit Court for the District of Minnesota drew a direct line between the civic necessity of free promulgation of our laws in an accessible format to the practices of the ancient Roman republic:

> The laws of Rome were written on tablets and posted, that all might read, and all were bound to obedience. The act of that emperor who caused his enactments to be written in small letters, on small tablets, and then posted the latter at such height that none could read the letters, and at the same time insisted upon the rule of obedience, outraging as it did the relations of governor and governed under his own system of government, has never been deemed consistent with or possible under ours.

*West Publ'g*, 27 F. at 57. The distinction between *de jure* and *de facto* availability of the law speaks directly to the issue at hand, particularly in light of Plaintiffs' websites, which are poorly-designed, difficult to navigate, and unusable with assistive software—and thus inaccessible to those users who rely upon such software.

The Court of Appeals for the Fifth Circuit has extended this reasoning to municipal laws.  In *Veeck*, the Court specifically addressed the question of whether an organization that was the author of building codes retained the right to exclude others from copying the model codes "after and only to the extent to which they are adopted as 'the law' of various [municipal] jurisdictions." *Veeck*, 293 F.3d at 794.  The Court cited to *Wheaton*, *Banks* and *Nash* in finding that the building codes in question could not be copyrighted. *Veeck*, 293 F.3d at 795–96.  "Given the state law foundation of *Banks* and its progeny, there is no reason to believe that state or local laws are copyrightable." *Veeck*, 293 F.3d at 795–96 (citing L. Ray Patterson & Craig Joyce, *Monopolizing the Law: The Scope of Copyright Protections for Law Reports and Statutory Compilations*, 36 UCLA L. Rev. 719, 751–58 (1989)); *see also* Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 5.06[c] (1996) ("state statutes, no less than federal statutes, are regarded as being in the public domain"); William F. Patry, *Copyright Law and Practice* 351, 357 (1994).

This Court should rule similarly in the case at hand.  Laws must be freely and readily accessible to the public.  Subjecting law to copyright inherently creates a disincentive against the promulgation of the law.  As Professors Patterson and Joyce have stated, "[e]ducation, livelihood, entertainment, and even participation in the political process, all are governed in some measure by copyright. For the most part, the effect of copyright is affirmative, for it plays a large role in making ideas available.  But the effect becomes negative when it is used to give precedence to private proprietary rights over the civil rights of citizens." Patterson & Joyce, *supra*, at 809–10.

## B.   Access Has Always Required The Ability To Distribute, Not Just The Ability To Read

The history of the law is a history of copying and distribution.  During the colonial period, the British crown required that colonial legislatures send all official copies of statutes to be deposited

in London.  *See* George S. Grossman, *Legal Research: Historical Foundations of the Electronic Age* 145 (1994).  As a result, "[i]n the colonies, ascertaining the law was extremely difficult." *Id.*

To overcome the difficulties of accessing the law, the early colonists thus resorted to creating unofficial codifications of enacted laws, and indeed devised useful innovations therein, including "a topical rearrangement of the Massachusetts statutes." *Id.* at 146.  Thus, "[o]wing to the difficulties of public access to the statutes, the compilation and republication of statutory law became 'a peculiar American practice'—a practice continued after independence by most states and by the federal government." *Id.* (citing E.C. Surrency, *A History of American Law Publishing* 19 (1990)).

Even today, "the open access principle is part of the constitutional bedrock of due process." Michael W. Carroll, *The Movement for Open Access Law*, 10 Lewis & Clark L. Rev. 741, 746 (2006) (citing *Veeck*, 293 F.3d 791; *Banks*, 128 U.S. 244; *Bldg. Officials & Code Admin. v. Code Tech., Inc.*, 628 F.2d 730 (1st Cir. 1980)).  The ability to promulgate, copy, and make useful the law is an essential component of modern civic participation.  It remains true that "[a]ccess to primary and secondary legal materials is a necessary condition for an attorney to provide effective representation, a client to receive such representation, a scholar or student to study the law, and a member of the public to understand and critique the law." *Id.* at 741.  However, as technology makes the law more portable and accessible to more assistive technologies, it is not simply enough to be able to access a static copy of the law, to be read in a prescribed way, by a prescribed device. The ability of individuals to truly access the law depends on their neighbor's ability to copy and distribute it in usable formats for public convenience and necessity.  As one scholar notes,

> Our society cannot be considered truly just if some people are not able to find and utilize the laws that govern daily life and dealings in order to protect their interests. For example, an individual should be able to easily discover that a creditor may not call them after nine o'clock at night, that a utility cannot turn off gas or electricity to a

> residential consumer in Illinois if the temperature is predicted to fall below thirty-two degrees Fahrenheit during the following twenty-four hours, or that a landlord in the city of Chicago is required to return a security deposit within forty-five days after the tenant vacates the dwelling.

Julia Wentz, *Justice Requires Access to the Law*, 36 Loy. U. Chi. L.J. 641, 641 (2005).

For the millions of Americans with various disabilities such as blindness, the ability to locate, search, and cite the law depends entirely on free access in multiple formats optimized for assistive technologies.  Plaintiffs have not provided such formats, and are not required to under the law.  And so, much like the colonists who relied on unofficial compilations rather than overseas official copies out of reach, large portions of the public will depend on specialized third party services to access the law.  Copyright protection should not, and does not, stand in the way of those important rights that inure to all members of the public.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be granted.

Respectfully submitted,

Dated: January 11, 2016

*/s/ Charles Duan*
Charles Duan (D.C. Bar No. 1013998)
Public Knowledge
1818 N Street NW, Suite 410
Washington, DC 20036
(202) 861-0020
cduan@publicknowledge.org

*Counsel for amici curiae*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2016, I caused the foregoing **Brief of Public Knowledge, Knowledge Ecology International, and the American Library Association as *Amici Curiae* in Support of Defendant/Counter-Plaintiff Public.Resource.Org, Inc.** to be electronically filed with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all counsel of record.

Dated: January 11, 2016             */s/ Charles Duan*
                                      Charles Duan
                                      *Counsel for amici curiae*