# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>      Plaintiffs-Counterdefendants,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>      Defendant-Counterclaimant. | Case No. 1:13-cv-01215-TSC-DAR |

**PROPOSED BRIEF OF AMICUS CURIAE THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS IN SUPPORT OF DEFENDANT-COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS-COUNTERDEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND FOR A PERMANENT INJUNCTION**

---

Bruce D. Brown (D.C. Bar No. 457317)
Gregg P. Leslie (D.C. Bar No. 426092)
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1250
Washington, D.C. 20005
(202) 795-9301
Counsel of record for Amicus Curiae

**TABLE OF CONTENTS**

**Page**

IDENTITY OF AMICUS CURIAE ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.    Allowing public laws to be shielded from scrutiny due to alleged copyright interests places a dangerous burden on journalism and harms the public interest. ....................................................................................... 2

        A.    Incorporation by reference is a common practice under which the public may have to pay significant sums of money to read the law. ......................... 3

        B.    Plaintiffs' position harms the public's ability to remain informed by impeding newsgathering on matters of public importance. ........................... 5

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks v. Manchester*, 128 U.S. 244 (1888) .................................................................................. 5

*Mills v. Alabama*, 384 U.S. 214 (1966) ....................................................................................... 6

*New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964) .................................................................. 6

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ......................................................... 6

*Richmond Newspapers v. Virginia,* 448 U.S. 555 (1980) .............................................................. 6

*Saxbe v. Wash. Post Co.*, 417 U.S. 843 (1974) .............................................................................. 6

*Wheaton v. Peters*, 33 U.S. 591 (1834) ......................................................................................... 5

**Other Authorities**

Emily S. Bremer, *On the Cost of Private Standards in Public Law*, 63 Kan. L.

Rev. 279 (2015) ........................................................................................................  3, 8

Jane Bellmyer, *Maryland, Rising Sun Adopt National Fire Code*, Cecli Daily (Dec. 14, 2015

4:30 PM), http://www.cecildaily.com/news/local_news/article_80595162-3612-5c52-803a-

b124adccb791.html .................................................................................................................. 4

Letter from James Madison to W.T. Barry (Aug. 4, 1822), in *9 The Writings of James Madison*

(G. Hunt ed., 1910) ................................................................................................................... 6

Michael Herz et al., *Comment of the Section of Admin. Law & Regulatory Practice, Am. Bar

Ass'n*, Public.Resource.Org (June 1, 2012),

https://law.resource.org/pub/us/cfr/regulations.gov.docket.01/0900006481025ea4.pdf ............ 7

Natalie Hayes, *Lincolnwood Says its Fire Code is 'Excessive and Outdated,'* ChicagoTribune (Dec. 4, 2015, 6:03 PM), http://www.chicagotribune.com/suburbs/ lincolnwood/news/ct-lwr-building-sprinklers-tl-1210-20151204-story.html .................................................................................... 4

Nina A. Mendelson, *Private Control Over Access to the Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737 (2014). .............................. 3, 5, 7

Peter L. Strauss, *Private Standards Organizations and Public Law*, 22 Wm. & Mary Bill of Rts. J. 497 (2013)................................................................................................ 4, 5

Potter Stewart, *"Or of the Press,"* 26 Hastings L.J. 631 (1975)....................................................... 6

## Regulations

29 C.F.R. § 1910.179(b)(1) (2012) ................................................................................................ 8

49 C.F.R. § 192.7(b) (1993)........................................................................................................... 4

**IDENTITY OF AMICUS CURIAE**

The Reporters Committee for Freedom of the Press (the "Reporters Committee")[1] is a voluntary, unincorporated association of reporters and editors that works to defend the First Amendment rights and freedom of information interests of the news media. The Reporters Committee has provided representation, guidance, and research in First Amendment and Freedom of Information Act litigation since 1970. Because this case touches upon the important question of whether access restrictions can be placed on a category of information that is fundamental to the workings of government – the law – the Reporters Committee's interest in this litigation is great. The authority to file derives from LCvR 7(o).[2]

**ARGUMENT**

Because all citizens should be able to readily access the laws that governs their actions, the Reporters Committee asks this Court to grant Defendant-Counterclaimant Public.Resource.Org's ("Public Resource") motion for summary judgment and to oppose Plaintiffs-Counterdefendants' ("Plaintiffs") motion for summary judgment and for a permanent injunction. The Reporters Committee writes to emphasize Public Resource's public policy arguments as they relate to the First Amendment and the role of journalism in informing the public.

---

[1] *Amicus curiae* the Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

[2] Counsel for the amicus curiae declare that they authored this brief in total with no assistance from the parties, and that no individuals or organizations other than the amicus made a monetary contribution to the preparation and submission of this brief.

**I.      Allowing public laws to be shielded from scrutiny due to alleged copyright interests places a dangerous burden on journalism and harms the public interest.**

Journalists need ready access to information to effectively report to the public, as the federal and state governments have recognized through the adoption of freedom of information laws.  And when governments exhibit an intention to make agency records available, it would seem incongruous to suggest that they don't see a greater interest in making the underlying government *regulations* available.  Some of the aspects of federal, state and local laws that are subject to the "incorporation by reference" restrictions, such as fire and safety codes, are also the most important in terms of giving context to a developing news event when compliance with those standards comes into play.

Allowing copyright law to thwart public access to government regulations defeats the promise of self government.  Public Resource argues that once a standard has been incorporated by reference, copyright protection can no longer be asserted in the material incorporated.  *See* Def.'s Mem. of P. & A. 9-34, Dec. 21, 2015, ECF 121-1.  Specifically, Public Resource stresses that the law "'whether articulated in judicial opinions or legislative acts or ordinances, is in the public domain and thus not amenable to copyright.'" *Id.* at 10 (quoting *Veeck v. S. Bldg. Code Cong. Int'l*, 293 F.3d 791, 796 (5th Cir. 2002)).  It further argues that, under the merger doctrine, once standards are incorporated by reference, they become facts and lose copyright protection. *Id.* at 15-17.  Even if copyright protection subsists in material incorporated by reference, Public Resource argues that its conduct constitutes lawful fair use. *Id.* at 35-44.  The public policy considerations in this case involving access to the law support these arguments.

2

### A. Incorporation by reference is a common practice under which the public may have to pay significant sums of money to read the law.

As of late 2015, there were 15,376 instances of standards incorporated by reference in the Code of Federal Regulations ("CFR"). *See Standards Incorporated by Reference (SIBR) Database/Regulatory SIBR (P-SIBR) Statistics*, Standards.gov, https://standards.gov/sibr/query/index.cfm?fuseaction=rsibr.total_regulatory_sibr (last visited Dec. 24, 2015). Although many standards incorporated by reference derive from other federal agencies and state governments, a great number are developed by SDOs like the Plaintiffs. *See id.* (stating that standards developed by the American Society for Testing and Materials ("ASTM") have been listed in the CFR 2,642 times). Standards developed by SDOs and incorporated by reference into law touch many facets of American life, "ranging from toy safety to Medicare prescription-drug-dispensing requirements to nuclear power plant operation." Nina A. Mendelson, *Private Control Over Access to the Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737, 740 (2014).

Although incorporating standards by reference is more efficient and "cost-effective for agencies than creating government-unique standards through the rulemaking process," Emily S. Bremer, *Incorporation by Reference in an Open-Government Age*, 36 Harv. J.L. & Pub. Pol'y 131, 140 (2013), the chief problem with the practice is that "[p]rivate publications incorporated by reference are frequently copyrighted and may be available to the public only by purchase from a private organization," Emily S. Bremer, *On the Cost of Private Standards in Public Law*, 63 Kan. L. Rev. 279, 286 (2015). Thus, with copyright protections in place, access to standards incorporated by reference can be restricted only to those willing to pay for access. *See, e.g.*, *Veeck*, 293 F.3d at 793 (describing how a website operator who was unable to easily locate local building codes paid a $72.00 fee to the private developer of the codes in order to gain access).

This concern is heightened from the perspective of the news media, as journalists regularly report on fire codes, building codes, and other standards that have been developed by SDOs and incorporated by reference into law. For instance, a search for "fire code" in recent news reporting reveals thousands of recent results, including:

- Jane Bellmyer, *Maryland, Rising Sun Adopt National Fire Code*, Cecli Daily (Dec. 14, 2015 4:30 PM), http://www.cecildaily.com/news/local_news/article_80595162-3612-5c52-803a-b124adccb791.html

- Natalie Hayes, *Lincolnwood Says its Fire Code is 'Excessive and Outdated,'* Chicago Tribune (Dec. 4, 2015, 6:03 PM), http://www.chicagotribune.com/suburbs/lincolnwood/news/ct-lwr-building-sprinklers-tl-1210-20151204-story.html

- Rodd Clayton, *BHC District Board Adopts Updated Fire Code*, Mohave Valley Daily News (Dec. 16, 2015 1:11 AM), http://www.mohavedailynews.com/news/bhc-district-board-adopts-updated-fire-code/article_a9e09268-a3cc-11e5-b680-a320d8b90f73.html

While hard copies of standards incorporated by reference in the CFR must be made available for public inspection in government agency depositories, those facilities are typically located in or around Washington, D.C. *See* Peter L. Strauss, *Private Standards Organizations and Public Law*, 22 Wm. & Mary Bill of Rts. J. 497, 507 (2013) (citing 49 C.F.R. § 192.7(b) (1993)). Because there is no requirement mandating that standards incorporated by reference be posted on the Internet for all to see, "the only practical course for someone in Minnesota, California, or Alabama who is affected by and wishes to learn the resulting law, will usually be to purchase the standard from the SDO whose intellectual property it is, at whatever price that organization chooses to set." *Id.*

In addition, the cost of obtaining access can vary greatly. For instance, the cost of a PDF copy of a toy safety standard developed by ASTM is $76.00. *See ASTM F963-11 Standard Consumer Safety Specification for Toy Safety*, ASTM Int'l, http://www.astm.org/Standards/F963.htm (last visited Dec. 24, 2015); *see also* Bremer, *Incorporation by Reference*, *supra*, at 181. However, it would cost more than $500 to acquire Underwriters Laboratories ("UL") "Standard for Manual Signaling Boxes for Fire Alarm Systems," a standard incorporated by reference in numerous municipal codes, and more than $10,000 to acquire all of the various UL standards that are referred to in that one standard. Strauss, *supra*, at 509. *See also* Mendelson, *supra,* at 743-44 (writing that "[p]rices that SDOs charge for a variety of IBR [incorporation by reference] standards range from fifty to several thousand dollars for the prescription drug compendia incorporated in Medicare rules."). While it is true that some SDOs seek to accommodate the public interest by providing free read-only access to standards incorporated by reference, these organizations "continue to claim a copyright and the entitlement to revoke access at any time." *Id.* at 753.

> **B.     Plaintiffs' position harms the public's ability to remain informed by impeding newsgathering on matters of public importance.**

The law is a category of information long established as free from copyright restrictions. *See Wheaton v. Peters*, 33 U.S. 591, 668 (1834); *Banks v. Manchester*, 128 U.S. 244, 253-254 (1888); *Veeck*, 293 F.3d at 796. Not surprisingly then, the practice of placing copyright protections over this essential category of information directly affects First Amendment interests.

In his concurring opinion in the landmark case of *Richmond Newspapers, Inc. v. Virginia*, a case in which the U.S. Supreme Court held that the news media and public have a qualified First Amendment right of access to criminal trials, Justice Brennan emphasized the "structural role" that the First Amendment "play[s] in securing and fostering our republican system of self-

government." 448 U.S. 555, 587 (1980) (Brennan, J., concurring). "Implicit in this structural role is not only 'the principle that debate on public issues should be uninhibited, robust, and wide-open,' but also the antecedent assumption that valuable public debate – as well as other civic behavior – must be informed." *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)); *see also Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982) ("'[A] major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.' By offering such protection, the First Amendment serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self government." (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966))). Because an important aspect of the First Amendment is ensuring that public debate is informed, the "Court has repeatedly stated that First Amendment concerns encompass the receipt of information and ideas as well as the right of free expression." *Saxbe v. Wash. Post Co.*, 417 U.S. 843, 862-63 (1974) (Powell, J., dissenting) (citations omitted). As James Madison put it, "A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps both." Letter from James Madison to W.T. Barry (Aug. 4, 1822), in *9 The Writings of James Madison* 103 (G. Hunt ed., 1910).

If one of the general purposes of the First Amendment is to ensure there is an informed electorate, then the press's specific constitutional role is to inform the public by revealing the workings of the government. *See* Potter Stewart, *"Or of the Press,"* 26 Hastings L.J. 631, 634 (1975) (noting that the purpose of the Press Clause was "to create a fourth institution outside the Government as an additional check on the official three branches"); *New York Times Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring) (stating that the press received constitutional protection "so that it could bare the secrets of government and inform the people").

6

In performing its constitutional role and "checking" governmental power, the news media serves as the public's surrogate.

Naturally, the First Amendment's structural role in promoting informed debate and the news media's ability to check governmental power is limited when access to information is restricted. If the news media, the public's surrogate, cannot review the standards incorporated by reference, the public's knowledge of the law will be diminished and the use and potential abuse of governmental power during their development and implementation will go unchecked.

If journalists cannot examine standards incorporated by reference, the public may also have no way of knowing whether a regulation incorporated by reference is arbitrary, dangerously outdated, or the result of undue influence by special interest groups. *See* Michael Herz et al., *Comment of the Section of Admin. Law & Regulatory Practice, Am. Bar Ass'n*, Public.Resource.Org (June 1, 2012), https://law.resource.org/pub/us/cfr/regulations.gov.docket.01/0900006481025ea4.pdf (writing that "[t]ransparency regarding the content of material incorporated by reference is particularly important when that material has been prepared, in the first instance, by private organizations rather than governmental agencies – as when, for example, natural gas pipeline safety rules and offshore oil drilling rules incorporate standards drafted by the American Petroleum Institute or when motor vehicle safety standards incorporate standards drafted by the Society of Automotive Engineers."). A lack of journalistic scrutiny reduces the chances that top officials within agencies will be held accountable to the public they serve for errors made during the incorporation by reference process. Mendelson, *supra*, at 772.

In the context of outdated standards incorporated by reference, the watchful eye of the news media would be valuable. Because agencies must identify specific versions of standards to

7

be incorporated by reference, material incorporated can become outdated, meaning that a new version of the standard is available. Bremer, *Incorporation by Reference*, *supra*, at 137; Bremer, *Cost of Private Standards*, *supra*, at 317. Outdated references can pose a danger to the public, as newer standards are more likely to be safer. Bremer, *Incorporation by Reference*, *supra*, at 137. Such a scenario can be observed by looking to the regulations of the Occupational Safety and Health Administration, which still reference crane standards developed in the 1960s. *Id.* (citing 29 C.F.R. § 1910.179(b)(1) (2012)); *see also* Bremer, *Cost of Private Standards*, *supra*, at 317 (reporting that nearly 70% of standards incorporated by reference by the Pipeline and Hazardous Materials Safety Administration are outdated).

It is essential for the news media to be able to easily obtain standards incorporated by reference to keep the public informed. For instance, if a journalist receives a tip that the most popular nightclub in a given area has sprinklers that fail to comply with the standards set forth in the local fire code, it would be important for the journalist to independently check the requirements set forth in the fire code. While journalists always rely on interviews with experts and other sources, the most important piece of information will often be the literal requirements of the statute. Having these standards in the public domain promotes more accurate journalism for the benefit of the public and the interests of self government.

**CONCLUSION**

For the foregoing reasons, this Court should grant Public Resource's motion for summary judgment and decline Plaintiffs' motion for summary judgment and for a permanent injunction.

Dated: January 11, 2016                                        Respectfully Submitted,

                                                               /s/ Bruce D. Brown
                                                               Bruce D. Brown (D.C. Bar No. 57317)
                                                               THE REPORTERS COMMITTEE
                                                                 FOR FREEDOM OF THE PRESS
                                                               1156 15th St. NW, Ste. 1250
                                                               Washington, D.C. 20005
                                                               Telephone: (202) 795-9303
                                                               Email: bbrown@rcfp.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2016, the foregoing document was filed electronically with the Clerk of the Court through the Court's CM/ECF system, which will automatically serve all counsel of record.

Dated: January 11, 2016  /s/ Bruce D. Brown
Bruce D. Brown (D.C. Bar No. 57317)
THE REPORTERS COMMITTEE
    FOR FREEDOM OF THE PRESS
1156 15th St. NW, Ste. 1250
Washington, D.C. 20005
Telephone: 202.795.9303
Email: bbrown@rcfp.org
*Counsel for Amicus Curiae*