**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>    Plaintiffs/Counter-defendants,<br><br>  v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>    Defendant/Counterclaimant. | Case No. 1:13-cv-01215-TSC-DAR<br><br>**DEFENDANT-COUNTERCLAIMANT PUBLIC.RESOURCE.ORG, INC.'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF MATERIAL FACTS (ECF NO. 155-1)**<br><br>Action Filed:  August 6, 2013 |

**<u>REDACTED VERSION SOUGHT TO BE FILED UNDER SEAL</u>**

1

Public.Resource.Org ("Public Resource") submits this Response to Supplemental

Statement of Material Facts in opposition to Plaintiffs' Supplemental Statement of Material Facts

(ECF No. 155-1).

| Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1) | Public.Resource.Org's Response |
|---|---|
| 1. The Chafee Amendment to the Copyright Act provides an avenue for providing access to copyrighted materials to blind people if certain requirements are followed, including only making the materials available to blind people.  Supplemental Declaration of Jordana Rubel ("Rubel Suppl. Decl.") ¶ 4, Ex. 1 (Fruchterman Dep. 52:1-54:2). | This is a legal conclusion, not a fact.  Disputed to the extent that Plaintiffs imply that the Chafee Amendment to the Copyright Act provides the only avenue that is used to provide access to copyrighted materials to people who are blind or visually disabled. Fair use provides another avenue. *See Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 97–98 (2d Cir. 2015).  Irrelevant because Public Resource does not claim to have used the Chafee Amendment as a basis for its posting of the incorporated standards at issue in this litigation. |
| 2. Defendant's expert, James Fruchterman, testified about programs entities that seek to provide access to the materials for the blind use to comply with the requirement of the Chafee Amendment that the materials be made available only to blind people, including collecting certifications of disability from users.  Rubel Suppl. Decl. ¶ 4, Ex. 1 (Fruchterman Dep. 80:9-81:25; 84:7-85:8; 86:7-89:12) | Irrelevant because Public Resource does not claim to have used the Chafee Amendment as a basis for its posting of the incorporated standards at issue in this litigation. |
| 3. Mr. Fruchterman explained that he runs an online library for the visually impaired called Bookshare, which already contains the 2014 edition of the NEC, and that nothing would prevent Carl Malamud or another volunteer from uploading the rest of Plaintiffs' standards to that library.  Rubel Suppl. Decl. ¶ 4, Ex. 1 (Fruchterman Dep. 209:18-213:23). | Disputed to the extent that Plaintiffs allege that "nothing would prevent Carl Malamud or another volunteer from uploading the rest of Plaintiffs' standards to that [Bookshare] library." The cited deposition transcript does not support this conclusion, and the transcript in fact details limitations on what content Bookshare will host in its library.  Disputed as misleading to the extent that Plaintiffs fail to state that the other incorporated standards at issue are not available through Bookshare. |

| Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1) | Public.Resource.Org's Response |
|---|---|
| | Merely legal argument, and disputed, to the extent that Plaintiffs imply that Public Resource should upload the laws that it posts online to Bookshare, rather than hosting them on its own website, or that Bookshare should be the only means for people who are blind or visually disabled to have access to legally binding material such as the incorporated standards at issue. |
| 4. Mr. Fruchterman admitted he could not opine that a visually disabled person would actually be able to use the HTML versions of Plaintiffs' standards posted on Defendant's website.  Rubel Suppl. Decl. ¶ 4, Ex. 1 (Fruchterman Dep. 175:5-176:9, 218:3-23). | Disputed.  Plaintiffs misconstrue the cited deposition testimony.  Mr. Fruchterman stated that he evaluated the accessibility of HTML versions of the standards at issue as posted on the Public Resource website but did not go in to such great detail as to evaluate whether particular sections, such as graphical material singled out by Plaintiffs' counsel, would be fully accessible via a screen reader. Plaintiffs' counsel also asked "Do you have enough information to know whether a visually impaired fire safety professional could use the HTML version of NFPA 101 that is available on Public Resource's website and safely rely on that for professional purposes?" to which Mr. Fruchterman responded: "I am not a fire professional expert, so I can't evaluate how this applies specifically to that profession." Mr. Fruchterman has stated that the incorporated standards in HTML format that he evaluated on the Public Resource website would be accessible to someone who is blind or visually disabled. ECF No. 122-6 (Expert Report of Mr. Fruchterman, Ex. 96 to Public Resource's Motion for Summary Judgment), pp. 14–17. |
| 5. Mr. Fruchterman asked one visually disabled person to evaluate the PDF versions of Plaintiffs' standards that were posted on Defendant's website, and that person informed him that those documents could not be considered to be accessible.  Rubel Suppl. Decl. ¶¶ 4-5, Exs. 1 (Fruchterman Dep. 256:12-259:6), 2 (Exhibit 4006 to Fruchterman Dep.). | Disputed. Plaintiffs have failed to adduce admissible evidence to support this statement, as the communication in question is hearsay.

Disputed as misleading inaccurate. The cited email in question makes clear that the visually disabled individual was able to read part of the document, and that the optical character recognition feature in the program he was using was not able to process such a large document in its entirety, but that other programs such as Open Book or Kurzweil would allow him to |

| Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1) | Public.Resource.Org's Response |
|---|---|
| | read it in its entirety. In the cited deposition testimony, Mr. Fruchterman clarifies that the visually disabled individual did not think that a PDF version of the standards at issue would meet *Bookshare's* accessibility standard, not that it was *not accessible*. *See* Rubel Suppl. Decl. Exs. 1 (Fruchterman Dep. 259:02–06), 2 (Exhibit 4006 to Fruchterman Dep.). <br><br> Disputed as misleading to the extent that this concerns only a PDF version of on one of the incorporated standards, and not an HTML format version, which is the version that Public Resource has created to be more broadly accessible, and which Mr. Fruchterman directs his analysis to in his report. |
| 6. Mr. Fruchterman did not ask any visually disabled persons to assess the accessibility of Defendant's HTML standards.  *See* Rubel Suppl. Decl. ¶ 4, Ex. 1 (Fruchterman Dep.  142:10-143:24). | Disputed. Plaintiffs have no evidence to support their claim. The cited deposition testimony simply states that Mr. Fruchterman did not ask one particular individual with a visual disability to evaluate the incorporated standards posted on the Public Resource website. As Mr. Fruchterman stated in the cited deposition testimony, he asked a colleague who is visually disabled to confirm that he could not access the incorporated standards on the Plaintiffs' online reading rooms. |
| 7. Fruchterman had not considered and did not know whether visually disabled persons would be able to use any of Plaintiffs' versions of Plaintiffs' standards aside from Plaintiffs' online read-only versions, such as the e-book and PDF versions that Plaintiffs make available for sale.  Nor did he have any knowledge of whether Plaintiffs provide any other accommodations to such persons.  Rubel Suppl. Decl. ¶ 4, Ex. 1 (Fruchterman Dep. 205:20-208:25). | Disputed. In the cited deposition testimony, Plaintiffs' counsel asked if Mr. Fruchterman had evaluated the accessibility of the PDF documents that Plaintiffs sell; he responded that he had not evaluated them, but in his experience most PDF documents are not as accessible to people who are visually disabled as HTML documents. Plaintiffs have no support for their claim that Mr. Fruchterman did not have any knowledge of whether Plaintiffs provide other accommodations to persons who are visually disabled. Disputed as misleading also to the extent that Plaintiffs suggest, without providing evidence, that they have any routine accommodations to persons who are visually disabled. |
| 8. ASTM is not aware of any visually impaired person who has informed ASTM that he/she was having difficulty | Disputed.  Plaintiffs only cite the testimony of one employee of ASTM, who says "I am not aware of any visually-impaired person who has informed ASTM |

| Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1) | Public.Resource.Org's Response |
|---|---|
| accessing an ASTM standard due to a print disability.  If a visually-impaired person requested access to an ASTM standard due to a print disability, ASTM would provide a copy of the relevant standard in a format that accommodated the person's disability at no additional cost to the requester.  Supplemental Declaration of Thomas O'Brien ("O'Brien Suppl. Decl.") ¶ 17. | that he/she was having difficulty accessing an ASTM standard due to print disability."  Plaintiffs have no evidence supporting the broader statement that ASTM, as opposed to a single employee, is not aware of any such contacts with ASTM. <br><br> The second sentence is an opinion, not a fact, and it is a self-serving hypothetical. <br><br> Immaterial and disputed also to the extent that Plaintiffs imply that a person who is visually disabled should have to seek assistance from ASTM in order to perceive the law, or that she should be expected to have sought ASTM's assistance, rather than using alternative options, such as that provided by Public Resource. |
| 9. NFPA has a commitment to make accommodations for persons with disabilities to access NFPA materials.  To date, there has been only one request by a visually impaired individual for access to an NFPA standard and NFPA responded by providing that individual with a PDF copy.  Declaration of Christian Dubay ("Dubay Decl.") ¶¶ 4-5. | Disputed.  The evidence that Plaintiffs cite in paragraphs 4 and 5 of Mr. Dubay's declaration does not support the facts asserted. <br><br> Elsewhere in Mr. Dubay's declaration (paragraph 7), he says "I am aware of one instance in which NFPA received a request for accommodation in accessing an NFPA standard from a person who had low vision." Plaintiffs have no evidence supporting the broader statement that NFPA as a whole has received only one request by a visually impaired individual for access to an NFPA standard. <br><br> Immaterial and disputed also to the extent that Plaintiffs imply that a person who is visually disabled should have to seek assistance from NFPA in order to perceive the law, or that she should be expected to have sought NFPA's assistance, rather than using alternative options, such as that provided by Public Resource. |
| 10. NFPA is not aware of any other individuals who have requested and not received an accommodation.  Dubay Decl. ¶ 4. | Disputed.  The evidence that Plaintiffs cite in paragraph 4 of Mr. Dubay's declaration does not support the fact asserted. |
| 11. ASHRAE is aware of only two instances in which individuals requested that ASHRAE make alternate forms of | Disputed.  Plaintiffs cite the testimony of only one employee of ASHRAE, who said "I recall only two specific examples where individuals requested that |

| **Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1)** | **Public.Resource.Org's Response** |
|---|---|
| access to ASHRAE publications available due to a disability.  In both instances, ASHRAE provided the requested accommodation.  In 2013, ASHRAE sent a digital copy of an ASHRAE published textbook on HVAC systems to a visually impaired student so the student could employ screen reader software to access the material audibly.  A hearing impaired individual also alerted ASHRAE he wished to attend a class related to HVAC design and ASHRAE provided sign-language interpretation.  Declaration of Steven Comstock ("Comstock Decl.") ¶ 4. | ASHRAE make alternate forms of access to ASHRAE publications available due to a disability . . ."  Plaintiffs have no evidence supporting the broader statement that ASHRAE, as opposed to a single employee, is aware of only two instances where individuals requested that ASHRAE make alternate forms of access to ASHRAE publications available due to a disability.<br><br>Immaterial and disputed also to the extent that Plaintiffs imply that a person who is visually disabled should have to seek assistance from ASHRAE in order to perceive the law, or that she should be expected to have sought ASHRAE's assistance, rather than using alternative options, such as that provided by Public Resource. |
| 12. ASHRAE has undertaken efforts to ensure that disabilities do not unnecessarily limit access to ASHRAE's standards and services.  ASHRAR [*sic*] has provided accommodations to individuals with disabilities in the past and intends to continue to do so in the future.  Comstock Decl. ¶¶ 5-6. | Immaterial and disputed also to the extent that Plaintiffs imply that a person who is visually disabled should have to seek assistance from ASHRAE in order to perceive the law, or that she should be expected to have sought ASHRAE's assistance, rather than using alternative options, such as that provided by Public Resource. |
| 13. ASTM consulted with the Copyright Office about how to complete its copyright applications. The Copyright Office instructed ASTM to fill out its copyright applications noting itself as the sole author of the standards.  Rubel Supp. Decl. ¶ 6, Ex. 3 (Dep. of Daniel Smith 126:17-127:4). | Disputed.  Plaintiffs have not adduced admissible evidence to support this contention, and they have not provided any evidence whatever to indicate what information ASTM furnished to the Copyright Office (or to indicate whether that information was truthful and accurate) in that "consultation."  Moreover, the Copyright Office has a long-standing policy of not providing legal advice to persons seeking assistance. *See* United States Copyright Office, *Copyright Basics* (Circular 1) at 12, *available at* http://www.copyright.gov/circs/circ01.pdf ("The Copyright Office may not give legal advice."). |
| 14. ASTM produced evidence that over 25,000 members completed membership renewal forms every year since 2007.  *See, e.g.,* O'Brien Suppl. Decl. ¶¶ 24-26, Exs. 9-10. | Disputed.  Plaintiffs have not adduced admissible evidence to support this contention.<br><br>Disputed to the extent that the evidence cited only establishes that over 25,000 people signed up for new memberships or renewed their membership with |

| Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1) | Public.Resource.Org's Response |
|---|---|
| | ASTM in 2007 (not that they completed forms in order to do so, nor that any information is provided subsequent to 2007). As stated by Mr. O'Brien in paragraphs 25 and 26 to his supplemental declaration, Exhibits 9 and 10 to the O'Brien Supplemental Declaration are purportedly printouts from records of membership forms completed in 2007. This does not establish that over 25,000 members completed membership renewal forms for every year *since* 2007. Moreover, Mr. O'Brien does not say that these are all "renewal" forms, as opposed to membership applications, he instead implies that these are both "new membership and membership renewal" records," as stated in paragraph 24 of his supplemental declaration. This is supported by the fact that some of the promo codes say "MEM.REN.FAX" or "MEM.REN.TELEPHONE" while others do not include the "REN" designation, suggesting that these are not exclusively membership renewals, but are in large part records of new membership applications (which have no relevance to this litigation, because individuals starting their memberships in 2007 or later would not be expected to have been involved in standards created in years or decades prior). The "MEM.REN.TELEPHONE" entries also show that not all renewals required a person to fill out a form. |
| 15. The vast majority of these members completed their membership renewals using the online membership form. *See, e.g.,* O'Brien Suppl. Decl. ¶¶ 24-26, Exs. 9-10. | Disputed.  Plaintiffs have not adduced admissible evidence to support this contention.<br><br>Neither Mr. O'Brien's supplemental declaration nor Exhibits 9 and 10 to his supplemental declaration state that the "vast majority" of membership renewals (or new membership forms for that matter) were completed through ASTM's online membership form. Exhibits 9 and 10 appear to show that this is not the case, because far fewer records under "Promo Codes" say "WEB.WEB.WEB" than say "MAIL", "FAX", "TELEPHONE", "INTERNAL", or are simply left blank.<br><br>As stated by Mr. O'Brien in paragraphs 25 and 26 to his supplemental declaration, Exhibits 9 and 10 to the O'Brien Supplemental Declaration are purportedly |

6

| Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1) | Public.Resource.Org's Response |
|---|---|
|  | printouts from records of membership forms completed in 2007. This does not establish that over 25,000 members completed membership renewal forms for every year *since* 2007. Moreover, Mr. O'Brien does not say that these are all "renewal" forms, as opposed to membership applications, he instead implies that these are both "new membership and membership renewal" records," as stated in paragraph 24 of his supplemental declaration. This is supported by the fact that some of the promo codes say "MEM.REN.FAX" or "MEM.REN.TELEPHONE" while others do not include the "REN" designation, suggesting that these are not exclusively membership renewals, but are in large part records of new membership applications (which have no relevance to this litigation, because individuals starting their memberships in 2007 or later would not be expected to have been involved in standards created in years or decades prior). |
| 16. ASTM produced copies of tens of thousands of paper membership renewal forms to Defendant in this litigation. Rubel Suppl. Decl. ¶ 7. | Immaterial, and disputed as misleading, to the extent that Plaintiffs fail to mention that these membership renewal forms were from 2008 or later, with only one dating from 2007, and therefore were completed after the standards at issue in this litigation were developed and published (and after ASTM obtained copyright registrations on the pretenses that it already owned the copyright to the standards), and these forms are therefore irrelevant.  Plaintiffs' obfuscatory dumping of tens of thousands of irrelevant documents on Public Resource in this litigation is neither admirable nor probative of any issue in this litigation. |
| 17. Michael Collier was the technical contact for ASTM D86-07. Michael Collier renewed his ASTM membership in 2007 using ASTM's online membership renewal form. O'Brien Suppl. Decl. ¶¶ 20, 26, Exs. 5, 10. | Disputed to the extent that Plaintiffs have not adduced evidence that Michael Collier developed copyrightable content or otherwise authored the standard ASTM D86-07. Disputed to the extent that Plaintiffs have not adduced evidence that, if Michael Collier wrote any copyrightable content or otherwise authored the standard ASTM D86-07, he (as opposed to his employer) owned the copyright to that content or had authority to transfer any copyright of his employer to |

7

| **Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1)** | **Public.Resource.Org's Response** |
|---|---|
| | ASTM. Michael Collier was not an individual member of ASTM; he represented his employer Petroleum Analyzer Co. LP, which had an organizational membership. See Exhibit 5 to the O'Brien Supplemental Declaration (listing a work email address for Michael Collier at Petroleum Analyzer Co. LP); Exhibit 10 to the O'Brien Supplemental Declaration, p. 4 (listing Michael Collier as having registered with ASTM through an organizational membership, as opposed to an individual membership), and Public Resource's Supplemental Statement of Material Facts ("SSMF") ¶ 13, Ex. 7 ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ see also *Membership Types and Benefits*, ASTM.org (accessed Feb. 1, 2016), http://www.astm.org/MEMBERSHIP/MemTypes.htm, SSMF ¶ 13, Ex. 8 (describing that ASTM organizational memberships cost $400 and are intended for organizations, allowing transferable membership between individuals within that organization, in contrast to individual membership which is intended for individuals, costs $75, and is not transferable). |
| 18. John Chandler was the technical contact for ASTM D975-07 and ASTM D396-98.   John Chandler renewed his ASTM membership in 2007 using ASTM's online membership renewal form. O'Brien Supp. Decl. ¶¶ 21, 22, 25, Exs. 6, 7, 9. | Disputed to the extent that Plaintiffs have not adduced evidence that John Chandler wrote copyrightable content or otherwise authored the standards ASTM D975-07 and ASTM D396-98.

Disputed to the extent that Plaintiffs have not adduced evidence that, if John Chandler wrote any copyrightable content or otherwise authored the standards ASTM D975-07 and ASTM D396-98, he (as opposed to his employer) owned the copyright to that content or had authority to transfer any copyright of his employer to ASTM. |
| 19. Jimmy King was the technical contact for ASTM D1217-98.  Jimmy King renewed his ASTM membership in 2007.  O'Brien Supp. Decl. ¶¶ 23, 25, Exs. 8, 9. | Disputed to the extent that Plaintiffs have not adduced evidence that Jimmy King wrote copyrightable content or otherwise authored the standard ASTM D1217-98. Jimmy King was involved in the 1998 "reapproval" of the 1993 version of the ASTM D1217, as opposed to the development |

| Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1) | Public.Resource.Org's Response |
|---|---|
| | or revision of the standard. A "reapproval" means that an older standard is re-evaluated and republished without any changes to its content, meaning that Jimmy King did not make any copyrightable contribution to the standard and therefore had no copyright to assign to ASTM. SSMF ¶ 12. |
| | Disputed to the extent that Plaintiffs have not adduced evidence that Jimmy King renewed his membership in 2007 in a manner that would effectively assign copyright to ASTM. Unlike Michael Collier and John Chandler, Jimmy King renewed his ASTM membership by mail, not by ASTM's online portal. *See* O'Brien Supplemental Declaration Exhibit 9, p. 36 (listing "Jimmy King" as "MEM.RN07.MAIL"). ASTM's postal mail renewal forms do not require members to agree to assign their copyrights to ASTM, and members were frequently able to renew their membership through mail by way of modified forms. Public Resource's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment ("P.R.O. Mem.") at 52–53; Public Resource's Statement of Material Facts in Support of Its Motion for Summary Judgment ("SMF") ¶¶ 158–161. |
| | Disputed to the extent that Plaintiffs have not adduced evidence that, if Jimmy King wrote any copyrightable content or otherwise authored any ASTM standards, he (as opposed to his employer) owned the copyright to that content  or had authority to transfer any copyright of his employer to ASTM. Exhibit 8 to the O'Brien Supplemental Declaration shows Jimmy King's employment email address at ConocoPhillips as his contact information. |
| 20. NFPA provided evidence of assignment forms signed by several contributors to the 2011 and 2014 editions of the NEC.  Pauley Decl. ¶ 31, Exs. A, B. | Disputed to the extent that Plaintiffs imply that these proposal forms are evidence of transfer of copyright to Plaintiffs. Plaintiffs have failed to adduce admissible evidence that any copyrightable content in these proposal forms was incorporated into any of the standards at issue. Plaintiffs have also failed to adduce admissible evidence that the individuals who allegedly filled out these proposal forms owned the copyright to the content listed in these proposal |

| Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1) | Public.Resource.Org's Response |
|---|---|
| | forms, as opposed to ownership by their employers listed on those forms (along with their work email addresses), or that these individuals had authority to transfer any copyright held by their employers. NFPA states that "[m]embership is issued to individuals on behalf of their company or organization." *FAQs*, NFPA.org (accessed Feb. 1, 2016), http://www.nfpa.org/about-nfpa/international/faqs SSMF ¶ 14, Ex. 9. |
| 21. NFPA's copyright assignment forms require the person signing to warrant that he/she has the authority to enter into the assignment.  Pauley Decl. ¶ 31, Ex. B. | Disputed as misleading or immaterial to the extent that Plaintiffs imply that asking someone who lacks authority to enter into an agreement to (incorrectly) state that she does in fact have authority to enter into such an agreement has any legal effect or relevance. If a person does not own a copyright, that person cannot transfer it to Plaintiffs, regardless of whether or not she warrants that she has authority to do so. |
| 22. ASHRAE's copyright assignment forms require the person signing to warrant that he/she has the authority to enter into the assignment.  Reiniche Decl. ¶ 13, Exs. 1, 2. | Disputed as misleading or immaterial to the extent that Plaintiffs imply that asking someone who lacks authority to enter into an agreement to (incorrectly) state that she does in fact have authority to enter into such an agreement has any legal effect or relevance. If a person does not own a copyright, that person cannot transfer it to Plaintiffs, regardless of whether or not she warrants that she has authority to do so. |
| 23. ASTM started planning the launch of its Reading Room in 2011.  Rubel Suppl. Decl. ¶ 8, Ex. 4 (Grove Dep. 109:15-110:7). | Disputed to the extent that Plaintiffs attempt to mislead by implying that ASTM's work on its Reading Room was not in response to public policy issues raised by Public Resource.  See, e.g., P.R.O. Mem. at 73 fn. 22, SMF ¶ 21, Ex. 150. |

| Plaintiff's Supplemental Statement of Material Facts (ECF No. 155-1) | Public.Resource.Org's Response |
|---|---|
|  | ████████████████████████████████<br>████████████████████████████<br>P.R.O. Mem. at 7, SMF ¶ 56, Ex. 141. |
| 24. NFPA and ASHRAE have provided free read-only access to their standards for over a decade.  Pauley Decl. ¶ 45; Rubel Suppl. Decl. ¶ 11, Ex 7. (Comstock Dep. 10:23-11:8). | Disputed as misleading:  Mr. Comstock states in the cited deposition testimony that ASHRAE provided read-only access to only a minority of ASHRAE standards (10 out of approximately 75 standards, as of March 2015). |
| 25. Standard 90.1 is ASHRAE's most popular standard.  It accounts for a significant portion of ASHRAE's publications revenue.  Rubel Suppl. Decl. ¶ 11, Ex. 7 (Comstock Dep. 34:10-37:11). | This is an opinion, not a fact.<br>Disputed to the extent that all editions of ASHRAE 90.1 combined account for a minority of ASHRAE's revenue from the sale of standards, and ASHRAE's revenue from the sale of standards itself accounts for only a minority of ASHRAE's annual revenue. SSMF ¶¶ 15–16, Exs. 10 & 11. |
| 26. The National Electric Code is NFPA's flagship standard.  Pauley Decl. ¶ 7. | This is an opinion, not a fact.  It is not clear what Plaintiffs mean by "flagship." |
| 27. Defendant promotes its own activities and solicits donations on its websites.  Rubel Suppl. Decl. ¶ 9, Ex. 5 (C. Malamud Dep. 47:23-25). | Disputed as misleading and immaterial. Plaintiffs have not adduced admissible evidence to support this statement, as the full text that is cited states "Q: Now, Public Resource solicits donations on its website, doesn't it? A: We have – yes." Public Resource promotes the availability of the law in an accessible format to all citizens. |

Dated:  February 04, 2015                              Respectfully submitted,


                                                       */s/ Andrew P. Bridges*
                                                       Andrew P. Bridges (admitted)
                                                       abridges@fenwick.com
                                                       Kathleen Lu (pro hac vice)
                                                       klu@fenwick.com
                                                       Matthew B. Becker (pro hac vice)
                                                       mbecker@fenwick.com
                                                       FENWICK & WEST LLP
                                                       555 California Street, 12th Floor
                                                       San Francisco, CA 94104
                                                       Telephone:  (415) 875-2300
                                                       Facsimile:  (415) 281-1350

                                                       David Halperin (D.C. Bar No. 426078)
                                                       davidhalperindc@gmail.com
                                                       1530 P Street NW
                                                       Washington, DC 20005
                                                       Telephone: (202) 905-3434

                                                       Mitchell L. Stoltz (D.C. Bar No. 978149)
                                                       mitch@eff.org
                                                       Corynne McSherry (pro hac vice)
                                                       corynne@eff.org
                                                       ELECTRONIC FRONTIER FOUNDATION
                                                       815 Eddy Street
                                                       San Francisco, CA 94109
                                                       Telephone: (415) 436-9333
                                                       Facsimile:  (415) 436-9993

                                                       *Attorneys for Defendant-Counterclaimant*
                                                       *Public.Resource.Org, Inc.*