# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>        Plaintiffs/Counter-defendants,<br><br>    v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>        Defendant/Counterclaimant. | Case No. 1:13-cv-01215-TSC-DAR<br><br>**PUBLIC RESOURCE'S RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS IN OPPOSITION TO DEFENDANT PUBLIC RESOURCE'S MOTION FOR SUMMARY JUDGMENT**<br><br>Action Filed:   August 6, 2013 |

Public Resource submits the following response to Plaintiffs' evidentiary objections to

Public Resource's Motion for Summary Judgment (ECF 155-2). As a threshold matter, Public

Resource does not believe that Plaintiffs have any basis under LCvR 7(h) to file their Response

to Public Resource's Statement of Disputed Facts (ECF No. 155-3), and Public Resource has

objected to that document and moved to strike it in Public Resource's objections to evidence.

Because Plaintiffs have combined their statement of disputed facts with their objections to

evidence into a single document (ECF 155-2), Public Resource responds only to Plaintiffs'

objections to evidence in that document (distinguished in bold text):

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
| --- | --- | --- |
| 1. Public.Resource.org is a nonprofit corporation, funded entirely by donations, contributions, and grants. C. Malamud Decl. ¶ 3. | Undisputed | |
| 2. Public Resource's core mission is to make the law and other government materials more widely available so that people, businesses, and organizations can easily read and discuss our laws and the operations of government. C. Malamud Decl. ¶ 4, Ex. 1. | Undisputed | |
| 3. Public Resource maintains an archive of laws and other government authored materials on several domains under the public.resource.org website. C. Malamud Decl. ¶ 10. | Disputed to the extent it implies that Plaintiffs' standards and the other standards posted on Defendant's website are themselves laws or government authored materials. | |
| 4. Public Resource has made judicial opinions, Internal Revenue Service records, patent filings, and safety regulations accessible on | Disputed.  The claim that Defendant began posting portions of the standards at issue in this case in 2008 is | If Public Resource was unable to purchase many standards from Plaintiffs after a search, |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| the Internet. Beginning in 2008, Public Resource began posting state safety regulations and statutes online, including portions of the incorporated standards in this case. In 2012, Public Resource began to post copies of standards incorporated by reference into law on its website. Public Resource began by purchasing paper copies of 73 standards, copying them and placing a cover sheet and notice of incorporation on each one, and sending the copies and additional material to government officials and ten SDOs, including Plaintiffs. Then, Public Resource began searching for copies of additional incorporated standards, many of which were not available from the SDOs, likely because the version incorporated into law had been superseded by a later version of the standard. C. Malamud Decl. ¶¶ 9–15, 20–21, 23. | not supported by the cited declaration.  It is undisputed that Public Resource did not post the Works at issue in the Motion for Summary Judgment until 2012. Malamud Decl. ¶ 20; Pls. SUMF ¶ 250.<br><br>**Objection.  Lack of foundation.  The declarant can only testify that he was unable to find standards for purchase from SDOs, and has no foundation for testifying that the standards were actually not available for purchase from the unidentified SDOs. Defendant cites no evidence for the proposition that many of the unidentified standards were unavailable "likely because the version incorporated into law had been superseded."** | then he has a foundation for concluding they were not being offered for sale. Mr. Malamud's opinion as to the cause was based upon his direct experience, not requiring an expert opinion. |
| 5. Public Resource does not charge for access to the archive of laws and other government authored materials on several domains under the public.resource.org website. C. Malamud Decl. ¶ 23. | Disputed to the extent it implies that Plaintiffs' standards and the other standards posted on Defendant's website are themselves laws or government authored materials.<br><br>**The cited declaration testimony does not support this statement.** | Public Resource's Statement of Undisputed Material Facts contains a numbering error. This statement should have referred to Paragraph 24 of Mr. Malamud's Declaration, which supports the statement. |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 6.  Public Resource does not accept donations or gifts that are tied to the posting of specific standards or groups of standards. C. Malamud Decl. ¶ 29. | Disputed to the extent it implies that Defendant has not attempted to obtain donations and/or actually received donations by advertising its plans to post standards of specific SDOs, including Plaintiffs.  *See* Pls. SUMF ¶ 225, 228, 229.  **The cited declaration testimony does not support this statement.** | Public Resource's Statement of Undisputed Material Facts contains a numbering error. This statement should have referred to Paragraph 30 of Mr. Malamud's Declaration, which supports the statement. |
| 7. Public Resource's operating income is not based on the amount of traffic its websites receive. Public Resource does practice search engine optimization to improve the accuracy of how information on its websites is described. Public Resource does not advertise on its websites.  C. Malamud Decl. ¶ 30. | Disputed as to claim that Defendant does not advertise on its websites.  Defendant promotes its own activities and solicits donations on its websites.  Pls. Suppl. SUMF ¶ 27. | |
| 8. Plaintiffs are three standards development organizations ("SDOs") that publish voluntary consensus standards. Pls. Mem. 4–9; Compl. Ex. A–C. | Disputed to the extent it implies that Plaintiffs are merely the publishers, and not the authors, of voluntary consensus standards. | |
| 9. According to Plaintiffs, ASTM has published approximately 12,000 standards, NFPA has published over 300 standards, and ASHRAE has published over 100 standards. Jarosz Rep. ¶ 13 (ASTM); ¶ 17 (NFPA), ECF No. 117-1; Reiniche Decl. ¶ 2, ECF No. 118-10 (ASHRAE). | Disputed to the extent it implies that Plaintiffs are merely the publishers, and not the authors, of voluntary consensus standards. | |
| 10. ASTM's Mission Statement reads: "To be recognized globally as the premier developer and provider of voluntary consensus | Undisputed | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| standards, related technical information, and services that promote public health and safety, support the protection and sustainability of the environment, and the overall quality of life; contribute to the reliability of materials, products, systems and services; and facilitate international, regional, and national commerce." M. Becker Decl. ¶ 98, Ex. 100. | | |
| 11. NFPA's "About NFPA" webpage states: "Founded in 1896, NFPA is a global, nonprofit organization devoted to eliminating death, injury, property and economic loss due to fire, electrical and related hazards. The association delivers information and knowledge through more than 300 consensus codes and standards, research, training, education, outreach and advocacy; and by partnering with others who share an interest in furthering the NFPA mission." M. Becker Decl. ¶ 99, Ex. 101. | Undisputed | |
| 12. ASHRAE's Mission is "To advance the arts and sciences of heating, ventilation, air conditioning and refrigeration to serve humanity and promote a sustainable world." M. Becker Decl. ¶ 100, Ex. 102. | Undisputed. | |
| 13. Some of the standards Plaintiffs publish are adopted into law or incorporated by reference into federal, state, or local law; many are not. Pls. Mem. 9. | Disputed to the extent it implies that Plaintiffs are merely the publishers, and not the authors, of voluntary consensus standards. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 14. In order to enact rules, a federal agency must follow minimum procedures to guarantee adequate public notice and opportunity to comment. 5 U.S.C. §553. | This is a legal conclusion, not a fact. | |
| 15. A federal agency must publish proposed rule changes in the Federal Register, including changes to a standard incorporated by reference into the Code of Federal Regulations. 5 U.S.C. §553(b); 1 C.F.R. § 51.11(a) (2015). | This is a legal conclusion, not a fact. | |
| 16. A standard incorporated by reference into the Code of Federal Regulations must be a "proposed rule" or "final rule" of a federal agency. 1 C.F.R. §51.5(a)-(b) (2015). | This is a legal conclusion, not a fact. Disputed that a "proposed rule" would constitute an incorporation by reference of a standard into the Code of Federal Regulations. | |
| 17. Before the federal government incorporates a standard by reference into law as a final rule, it must be approved by the Director of the Federal Register. 1 C.F.R. § 51.3 (2015). | This is a legal conclusion, not a fact. Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law. | |
| 18. Standards are incorporated by reference—as opposed to reprinting the entire text of the standards—to limit the length of the Code of Federal Regulations. RJN ¶ 1. | **Objection. The OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted (i.e., the purported only reason why standards are incorporated by references as opposed to reprinting the entire text).** Disputed that the sole purpose of incorporating standards by reference is to limit the length of the Code | The Court can take judicial notice of matters communicated to the public on government websites. Additionally, the statement is admissible as a record of the Office of the Federal Register made in the ordinary course of business. |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | of Federal Regulation. Disputed that were it not for concerns about length, the entire text of the standards would be reprinted. The copying of the entire text of standards by the federal government would subject the federal government to liability under 28 U.S.C. § 1498 and/or the takings clause of the Constitution. Pls. MSJ at 27-28. | |
| 19. Standards incorporated by reference into the Code of Federal Regulations are made available in the Washington D.C. reading room of the Office of the Federal Register, or for purchase from the Plaintiffs. The OFR directs people who want to read incorporated standards to "contact the standards organization that developed the material." Alternatively, one may submit a written request to the OFR to inspect (and make limited photocopies of) an incorporated standard in Washington, D.C. RJN ¶ 1. | **Objection.  The OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted.**<br><br>Disputed to the extent it implies that the standards incorporated by reference are only available at the reading room of the Office of the Federal Register or for purchase from Plaintiffs. The standards at issue and many other standards are available for free.  Pls. SUMF ¶¶ 61, 63, 100, 161. In addition, the standards at issue and other standards are available for purchase at reasonable prices.  Pls. SUMF ¶¶ 58, 99, 158. | The Court can take judicial notice of matters communicated to the public on government websites.<br><br>Additionally, the statement is admissible as a record of the Office of the Federal Register made in the ordinary course of business.<br><br>Additionally, the quotation is not offered for the truth of the statement, but rather for the fact that the OFR makes such representation to the public. |
| 20. Public Resource has posted at least some of the incorporated standards at issue online. C. Malamud Decl. ¶ 15–19. | Disputed.  Defendant has posted all of the standards at issue online.  Pls. SUMF ¶ 187. | |
| 21. Plaintiffs have discussed Public Resource's activities at the highest levels of their | Disputed entirely as to ASHRAE's involvement in discussions since 2010. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| organizations since at least 2010, but waited until August 2013 to file this lawsuit. For instance, in 2010 the President of NFPA emailed the President of ASTM to arrange a meeting about Public Resource, stating: "Have you seen this [YouTube clip about Public Resource]? . . . I left a message at your office about possibly planning a strategy together.  This one could heat up fast and I am not too comfortable that we have adequately sensitized policy makers in D.C." M. Becker Decl. ¶ 148, Ex. 150. | Disputed as a vague and misleading with respect to the references to "Public Resource's activities" and "Have you seen this [YouTube clip about Public Resource]."  Defendant misleadingly suggests that Plaintiffs were discussing Public Resource's posting of their standards online in 2010.  In fact, Public Resource did not post Plaintiffs' standards in bulk until December 2012.  *See* Pls. SUMF ¶ 250. | |
| 22. Each standard at issue on Public Resource's websites was incorporated by reference into law. C. Malamud Decl. ¶ 23; Pls. Mem. 9. Nearly all of the standards at issue were promulgated as private industry standards several years before being incorporated into law by government agencies. See, e.g., ASTM D396-1998 "Standard Specification for Fuel Oils", incorporated into reference into law at 41 C.F.R. § 60.17 (2011); M. Becker Decl. ¶ 151, Ex. 153 (ASTM email stating that "[a]n unscientific scan suggests over 90 percent of ASTM standards incorporated by reference are not the most recent versions, and many are way out of date versions"). | Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law. Disputed to the extent it characterizes Plaintiffs' standards as private industry standards. They are voluntary consensus standards. Disputed that "nearly all" of the standards at issue that were developed by NFPA and ASHRAE had existed for several years before they were incorporated by reference.  Defendant offers no evidence supporting this proposition and it is not true. *See* Pls. SUMF ¶ 93 (noting the NEC is updated every three years).<br><br>**Objection as to foundation, relevance and undue prejudice with respect to reliance on an admittedly "unscientific scan" of ASTM standards** | These facts are relevant as they rebut Plaintiffs' claims of market harm and irreparable harm.<br><br>These facts are founded on Mr. Malamud's personal knowledge of the multiplicity of versions of the standards he posted and of which versions are incorporated by reference. *See* ECF No. 118-13, Ex. 36.<br><br>A statement by ASTM's employee is not prejudicial simply because it characterizes a scan as "unscientific." Scientific precision is not required, and the correspondent in an email internal to ASTM had a strong incentive to |

7

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | **incorporated by reference.** | convey accurate information. |
| 23. ASTM has publicly stated that "[k]nowledge of ASTM standards is important for complying with U.S. regulations and procurement requirements" M. Becker Decl. ¶ 21, Ex. 23 (Grove Ex. 1032 "ASTM Standards Regulations & Trade, Power Point" at 21). | Undisputed | |
| 24. The Office of the Federal Register states: "The legal effect of incorporation by reference is that the material is treated as if it were published in the Federal Register and CFR. This material, like any other properly issued rule, has the force and effect of law. Congress authorized incorporation by reference in the Freedom of Information Act to reduce the volume of material published in the Federal Register and CFR." RJN ¶ 1. | **Objection.  This statement is inadmissible hearsay to the extent it is offered to prove the truth of the matter asserted.  It is otherwise irrelevant.** The statements as to the legal effect of incorporation by reference are legal conclusions not facts. | The Court can take judicial notice of matters communicated to the public on government websites. Additionally, the statement is admissible as a record of the Office of the Federal Register made in the ordinary course of business. Additionally, the quotation is not offered for the truth of the statement, but rather for the fact that the OFR makes such representation to the public. |
| 25. Failure to comply with the standards incorporated by law may result in penalties. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 37:1–19). | This is a legal conclusion, not a fact. Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law. Defendant provides no support for the contention that the regulations that incorporate by reference each of the standards at issue | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | include penalties for non-compliance. | |
| 26. The former head of Massey Energy was recently convicted of conspiring to violate safety standards.  RJN ¶ 2 | **Objection. Relevance. The cited material does not indicate that any of the relevant safety standards were developed by any of the Plaintiffs or are at issue in this case.**<br><br>Unduly prejudicial.  There is no evidence that this conviction related in any way to a standard at issue in this case. | The statement is relevant to show that legally binding safety standards, of which the standards at issue in this case are examples, are laws that carry criminal penalties.<br><br>Nothing in the statement is prejudicial. |
| 27. With the exception of the 2014 National Electric Code that was added by amending the complaint, all of the standards at issue have been superseded or withdrawn. Becker Decl. ¶¶ 95–97, Exs. 97–99. | Undisputed that the 2014 edition of the NEC is the most recent edition of the NEC.  Undisputed that Plaintiffs have published more recent editions of the other works at issue in this case. Otherwise disputed as argumentative.<br><br>**Objection to Exhibits 97-99 as hearsay and  lacking foundation/personal knowledge.** | Exhibits 97-99 are a compilation of data from Plaintiffs' own publications and websites and are capable of verification by Plaintiffs' employees and records at trial. |
| 28. Persons who volunteer to create and develop voluntary consensus standards have incentives to do so that are independent of owning the copyright to the standards. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 82:9–17); ¶ 11, Ex. 15 (Smith Dep. 45:16–46:10) ¶ 2, Ex. 4 (Bliss Dep. 21:1–3; 15–17) ¶ 10, Ex. 12 (Reiniche Dep. 50:12–51:6) ¶ 2, Ex. 4 (Bliss Dep. 118:09–119:01). | Undisputed that volunteers who assist in the development of voluntary consensus standards participate in the standards development process for a variety of reasons, but those volunteers do not do all of the work that is necessary for the creation and publication of the standards.  Only SDOs such as Plaintiffs do that work.  Pls. SUMF ¶¶ 43, 104, 105, 152.  Disputed to the | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | extent this implies that Plaintiffs would have the incentive to create and develop their standards if they would not own the copyrights in the standards. *See* Pls. SUMF ¶¶ 45-47, 105-08, 152-53. None of the cited evidence suggests otherwise. | |
| 29. Plaintiffs have earned revenue from sources other than selling copies of the standards. These sources include revenue from selling interpretative material related to incorporated standards; standards that have not been incorporated into law; membership dues; conference fees; training services; and public grants and contracts M. Becker Decl. ¶ 9, Ex. 11 (Mullen Dep. 130:21–133:03; 228:11–229:23); ¶ 7, Ex. 9 (Jarosz Dep. 192:22–193:6); ¶ 2, Ex. 4 (Bliss Dep. 199:23–201:12; 158:06–159:15); ¶ 6, Ex. 8 (Grove Dep. 264:22–266:19); ¶ 3, Ex. 5 (Comstock Dep. 48:23–56:21; 59:03–60:02; 72:5–74:15). Plaintiffs acknowledge that other standards development organizations operate without asserting a right to exclude. Jarosz Rep. ¶ 81, ECF No. 117-1. | Undisputed as to the first two sentences.  Plaintiffs acknowledge that certain European standards development organizations do not depend on the sales of their standards to support the development of their standards.  These standards development organizations are funded in a front-loaded fashion, in which they charge members to participate and contribute to the standards development process.  Jarosz Rep. ¶ 81.  Unlike Plaintiffs, these SDOs do not create voluntary consensus standards that comply with ANSI requirements.  Pl. SUMF ¶¶ 7-8, 12, 88, 139. The funding model these European SDOs use, which Plaintiffs do not use, creates barriers to broad participation in the standard development process.  Pl. SUMF ¶¶ 259-60.<br><br>Disputed to the extent Defendant suggests that these other sources of revenue mean Plaintiffs would not be irreparably harmed by the | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | loss of revenue from standards incorporated by reference.  Reply ISO MSJ 42-45. | |
| 30. ASHRAE has a Government Affairs office in Washington D.C. Becker Decl. ¶ 50, Ex. 52. | It is undisputed that ASHRAE has an office in Washington DC.  Some of the activities that office takes could be characterized as "Government Affairs." | |
| 31. ASHRAE's Government Affairs office has encouraged members of congress and other policy makers to incorporate ASHRAE standards into law.  M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 136:11–21; 138:24–140:10; 210:19–211:09). | **Objection to the relevance of the cited testimony to the extent it refers to ASHRAE standards not at issue in this litigation (Fed. R. Evid. 402).**<br><br>ASHRAE does not dispute that it offers technical assistance to members of congress when requested.  However, Defendant overstates the evidence it cites.  Ms. Reiniche's actual testimony reflects that ASHRAE staff or volunteers would meet with agencies "when they were requesting that type of thing."  The cited testimony also concerns ASHRAE's involvement in a "High-Performance Building Congressional Caucus Coalition" that may meet with congress.  Finally, the cited testimony refers specifically to ASHRAE Standard 161-2007, which is not at issue in this case. | The testimony is relevant to show that ASHRAE has a practice of encouraging policymakers to incorporate ASHRAE standards into law, and employees who do so as part of their duties. |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 32. ASHRAE started a grassroots program to advocate for adoption of building codes into law, including the standard known as ASHRAE 90.1. M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 144:06–145:23). | **Objection to Relevance (Fed. R. Evid. 402).** <br><br> Defendant overstates the testimony, which actually reflects that volunteer members of ASHRAE chapters may speak to local government officials "when we are made aware of references" to standards.  In other words, this grassroots campaign does not necessarily involve adoption of standards but could be about a number of issues and engagement appears to occur once the topic of incorporation by reference has already arisen independent of ASHRAE. Reiniche Dep. 144:06–145:23. | The evidence is relevant to show that ASHRAE has a practice of encouraging policymakers to incorporate ASHRAE standards into law, and expends resources to that end. |
| 33. ASHRAE refers to the citation of ASHRAE 90.1 in the Energy Policy Act ("EPAct") as ASHRAE's "EPAct advantage," because ASHRAE 90.1 is referenced over other energy efficiency commercial building codes.  M. Becker Decl. ¶ 48, Ex. 50; ¶ 10, Ex. 12 (Reiniche Dep. 127:13–127:18); ¶ 49, Ex. 51; ¶ 10, Ex. 12 (Reiniche Dep. 128:07–130:21). | ASHRAE does not dispute that certain ASHRAE documents have referenced an "EPAct advantage." However, EPAct does not require states to adopt Standard 90.1, instead it requires that their standards be "no less stringent" than 90.1 (or no less stringent than a building code from a competing SDO, the International Code Council, depending on building type). Reiniche Dep. 31:6-20; 150:14-151:12. | |
| 34. ASHRAE has repeatedly entered into a "Memorandum of Understanding" with the DOE that states that both orgs are committed | **Objection to Relevance (Fed. R. Evid. 402)** <br><br> ASHRAE admits it has | The evidence is relevant to show that ASHRAE has a practice of collaborating with |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| to working together toward cooperating in promotion of ANSI/ASHRAE standards adoption in building codes. M. Becker Decl. ¶ 47, Ex. 49; ¶ 10, Ex. 12 (Reiniche Dep. 110:20–111:16; 113:13–114:01). | entered a memorandum of understanding with the DOE. However, it disputes that the evidence regarding "adoption into building codes" is relevant. As Ms. Reniche explained in the testimony Defendant cites, this "adoption" most likely pertained to 90.1 serving as an alternate form of compliance to an International Code Council code (not direct incorporation into federal law). Reiniche Dep. 111:4-11; 113:13-114:1. | government officials concerning government use of ASHRAE standards. |
| 35. ASTM makes governments aware of ASTM standards, and takes pride in the incorporation by reference of its standards.   Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 235:02–236:02). | Disputed. Defendant's characterization of the testimony is misleading. Mr. Grove testified: "As a matter of policy, we make organizations – sorry – governments aware of our standards and point out and connection with agency missions. But in the end, we respect that agencies should be the ones that determine whether or not our standards are incorporated or not." Def. Ex. 8 (Grove Dep. 235:5-10). Mr. Grove also testified that he did not believe ASTM would have an official position as to whether it is pleased when governments incorporate its standards by reference. Def. Ex. 8 (Grove Dep. 236:14-25). | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 36. ASTM reaches out to congressional staffers and government agencies to suggest the use of particular editions of standards and particular language in legislation.  Becker Decl. ¶ 22, Ex. 24; ¶ 6, Ex. 8 (Grove Dep. 124:10–125:05; 258:16–261:23; 263:05–263:09). | Disputed.  The cited testimony and exhibit demonstrate that ASTM encourages government agencies who plan to reference an ASTM standard to reference the most up-to-date version of that standard.  ASTM does not lobby for the incorporation by reference of its standards or for the inclusion of any particular language in legislation.  Pls. SUMF ¶ 56. | |
| 37. ASTM participated in an "Incorporation by Reference Public Workshop" with the US Dep't of Transportation on July 13, 2012.  Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 270:7–19). | **Objection.  Relevance.**<br><br>Undisputed | The evidence is relevant to show that ASTM has a practice of collaborating with government officials on the subject of incorporation by reference, implicitly or explicitly promoting such incorporation, and that ASTM expends resources to that end. |
| 38. ASTM has never requested that Congress or a federal agency not incorporate an ASTM standard by reference into law.  Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 261:25–262:08). | **Objection.  Relevance; unduly prejudicial.**<br><br>Disputed to the extent it implies that Congress or any federal agency has ever sought permission from ASTM before incorporating by reference an ASTM standard. | Relevant to rebut Plaintiffs' assertion that they believe incorporation by reference would cause an uncompensated taking.<br><br>The testimony contains nothing that would influence the factfinder on emotional or other improper grounds, thus is not unduly prejudicial. |
| 39. On December 3, 2015, ASTM | **Objection.  Relevance;** | Relevant to demonstrate |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| co-sponsored an event in Washington D.C. entitled "What Do Airplanes, Robots, Toys, Flat Screen TVs Amusement Parks & 3D Printing Have in Common?" The promotional literature for the event states that the event "will highlight the importance of government participation in and the reliance on voluntary standards and conformance."  Becker Decl. ¶ 102, Ex. 104 ("Capitol Hill Event to Feature Policy and Business Leader Insights on Voluntary Standards and Conformance"). | **unduly prejudicial.**<br><br>Disputed as to characterization of the supporting exhibit as "promotional literature."<br><br>Disputed to the extent it falsely suggests that ASTM is referencing anything other than the importance of having government representation in the standards development process, as well as the input of industry, public interest groups and others. ASTM does not lobby for the incorporation by reference of its standards or for the inclusion of any particular language in legislation.  Pls. SUMF ¶ 56. | that ASTM actively promoted incorporation by reference of its standards and close involvement of government officials in the standards development process, which further shows that the standards development process is a forum for the development of laws.<br><br>The document contains nothing that would influence the factfinder on emotional or other improper grounds, thus is not unduly prejudicial. |
| 40. NFPA engages in activities to promote the adoption and incorporation by reference of NFPA codes and standards into law.  M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 46:19–48:20; 62:20–63:08; 82:09–18). | Disputed to the extent this suggests that NFPA's purpose in developing standards is for them to be incorporated by reference. NFPA does not develop any standards solely for that purpose.  Pls. SUMF ¶¶ 90-91. | |
| 41. NFPA is not aware of any situation where it would discourage the adoption of a standard into law.  M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 48:21–49:04). | Undisputed | |
| 42. NFPA is "advocating for fire safety" through the adoption and use of its standards by governments and industries.  M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. | Disputed.  Defendant mischaracterizes the testimony which states "I guess it depends on the, how you would define | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 82:13–25). | 'advocacy.' We're advocating for fire safety, and we believe that the adoption and use of standards promotes fire safety." Def. Ex. 4 (Bliss Dep.) 82:13-16. | |
| 43. The Office of the Federal Register is required to maintain a copy of each incorporated standard. It makes a copy of each standard available for public viewing, upon written request for an appointment, at its Washington, D.C. reading room.  RJN ¶ 1. | **Objection.  The OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted.** Disputed to the extent it implies that the standards incorporated by reference are only available at the reading room of the Office of the Federal Register or for purchase from Plaintiffs. The standards at issue and many other standards are available for free.  Pls. SUMF ¶¶ 61, 63. 100, 161. In addition, the standards at issue and other standards are available for purchase at reasonable prices.  Pls. SUMF ¶¶ 58, 99, 158. | The Court can take judicial notice of matters communicated to the public on government websites.<br><br>Further, the matter quoted is a statement of the content of federal regulations. The Court can take judicial notice of federal regulations. |
| 44. According to a statement by the Modification and Replacement Parts Association: "The burden of paying high costs simply to know the requirements of regulations may have the effect of driving small businesses and competitors out of the market, or worse endanger the safety of the flying public by making adherence to regulations more difficult due to fees . . . ." M. Becker Decl. ¶ 103, Ex. 105 (ABA Section of Administrative Law and Regulatory Practice Resolution, | **Objection.  The cited evidence is hearsay.  It is also irrelevant and unfairly prejudicial, especially since there is no evidence to suggest this statement relates to any standard at issue in this case.** Disputed.  There is no admissible evidence supporting this statement. | The statement is relevant to show the harmful effect of barriers to access to regulations.<br><br>The document contains nothing that would influence the factfinder on emotional or other improper grounds, thus is not unduly prejudicial. Plaintiffs admit that their legally incorporated standards are critical for public |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| submitted November 17, 2015). | | safety. |
| | | The statement is capable of authentication by testimony at trial. |
| 45. ASTM gives government bodies like the US Geological Survey and the State of Georgia, fellow SDOs like NFPA, IAPMO and ICC, and favored corporations liberal permission to copy standards both in paper and electronic format, and to use excerpts from standards in other documents. M. Becker Decl. ¶ 105, Ex. 107; ¶ 106, Ex. 108; ¶ 107, Ex. 109; ¶ 108, Ex. 110; ¶ 109, Ex. 111; ¶ 110, Ex. 112. | **Objection. This statement and the cited evidence are irrelevant and unfairly prejudicial because there is no evidence that these statements relate to any of the standards at issue. Disputed. ASTM routinely grants permission to researchers, academics and others to reproduce its standards at no cost for non-commercial purposes. Pls. SUMF ¶ 68.** | These documents show ASTM's frequent and routine practice of granting liberal permission to selected organizations to reproduce and excerpt ASTM standards. Plaintiffs have stated that they do not treat standards incorporated by reference differently from other standards. <br><br> Nothing in the documents is prejudicial. |
| 46. ASTM regularly refuses to give similar permissions to graduate students, universities, libraries, and smaller businesses. M. Becker Decl. ¶ 128, Ex. 130; ¶ 118, Ex. 120; ¶ 111, Ex. 113; ¶ 129, Ex. 131; ¶ 113, Ex. 115; ¶ 114, Ex. 116; ¶ 115, Ex. 117. | **Objection. This statement and the cited evidence are irrelevant and unfairly prejudicial because there is no evidence that these statements relate to any of the standards at issue. In addition, there is no evidence supporting the proposition that the cited requests are "similar" to the previously mentioned requests.** <br><br> Disputed. ASTM routinely grants permission to researchers, academics and others to reproduce its standards at no cost for non-commercial purposes. Pls. SUMF ¶ 68. ASTM denies | These documents show ASTM's frequent and routine practice. Plaintiffs have stated that they do not treat standards incorporated by reference differently from other standards. <br><br> Nothing in the documents is prejudicial. <br><br> The similarity of the requests to those cited in Paragraph 45 is self-evident. |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | permission to use its standards when the requester seeks to post the standard on a public website with no reasonable time limit and/or with no limitation on the number of people who can access it. *See* Def. Exs. 113, 115, 117, 120, 130; *see also* O'Brien Suppl. Decl. ¶ 16. ASTM may also, as it entitled to do under copyright law, deny permission to a party requesting to make a copy of a complete standard or to make a derivative work based on an ASTM standard. *See* Def. Ex. 116. | Plaintiffs' response asserts an absolute right to grant preferential and discriminatory access to standards incorporated into law. |
| 47. ASTM gave the structural engineering firm SGH, "a big supporter of ASTM," permission to excerpt a number of figures and tables from a standard.  M. Becker Decl. ¶ 110, Ex. 112. | **Objection.  This statement and the cited evidence are irrelevant and unfairly prejudicial because there is no evidence that these statements relate to any of the standards at issue.** | These documents show ASTM's frequent and routine practice. Plaintiffs have stated that they do not treat standards incorporated by reference differently from other standards. |
| 48. ASTM refused to allow an engineering student at the University of Pennsylvania to use "photographs and figures" from another standard in a case study. M. Becker Decl. ¶ 115, Ex. 117. | **Objection.  This statement and the cited evidence are irrelevant and unfairly prejudicial because there is no evidence that these statements relate to any of the standards at issue.**

Disputed.  ASTM denies permission to use its standards when the requester seeks to post the standard on a public website.  Unlike the requested license in ¶ 47, this student was requesting permission to include the standard in an article that | These documents show ASTM's frequent and routine practice. Plaintiffs have stated that they do not treat standards incorporated by reference differently from other standards. |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | would be "posted online through wikispaces." *See* Def. Ex. 117. | |
| 50. ASTM refused to allow Columbia Analytical to reproduce abstracts from a standard. M. Becker Decl. ¶ 118, Ex. 120. | **Objection. This statement and the cited evidence are irrelevant and unfairly prejudicial because there is no evidence that these statements relate to any of the standards at issue.**<br><br>Disputed. ASTM denies permission to use its standards when the requester seeks to post the standard on a public website ASTM denied a request to post abstracts on a publicly available website. *See* Def. Ex. 120; *see also* O'Brien Suppl. Decl. ¶ 16. | These documents show ASTM's frequent and routine practice. Plaintiffs have stated that they do not treat standards incorporated by reference differently from other standards. |
| 51. Plaintiffs provide "reading rooms" for some of the incorporated standards. Thomas Decl. ¶ 50, ECF No. 118-11; O'Brien Decl. ¶ 60, ECF No. 118-7; Pauley Decl. ¶ 45, ECF No. 118-8; Reiniche Decl. ¶ 19–20, ECF No. 188-10. | Disputed. NFPA and ASHRAE make all of their standards that have been incorporated by reference into government regulations available online for free read-only viewing. Pls. SUMF ¶ 100, 161. ASTM makes all standards it is aware have been incorporated by reference by the federal government available for read-only viewing in its reading room. Pls. SUMF ¶ 63. | |
| 52. Plaintiffs' "reading rooms" do not permit software-based searching and analysis of the incorporated standards. M. Becker Decl. ¶ 94, Ex. 96 (Fruchterman Rep. ¶ 6). | **Objection. Inadmissible opinion testimony. Mr. Fruchterman has been offered as an expert on accessibility of materials to people who are visually** | The statement is based on Mr. Fruchterman's percipient testimony about Plaintiffs' websites, not his expert opinion. |

19

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | **impaired.  He is not competent to testify about software-based searching and analysis.** | |
| 53. Plaintiffs online "Reading Rooms" do not allow people with print disabilities to use software based screen readers to access the legally mandated standards.  M. Becker Decl. ¶ 94, Ex. 96 (Fruchterman Rep. 7–13). | Disputed.  To protect their copyrighted standards from exposure to mass copying, Plaintiffs have provided versions of their standards on their reading rooms that provide read-only access. *See, e.g.*, Grove Dep. 110:8-23; Dubay Dep. 77:21-78:4; Comstock Dep. 10:23-11:3.  There is no evidence that Plaintiffs placed any purposeful restriction on the use of screen readers by people with print disabilities on their reading rooms.  To the extent a screen reader requires the ability to do more than read from an image of the standard on the screen, it is undisputed that the screen reader will not be able to read the versions of Plaintiffs' standards on their reading rooms.<br><br>NFPA has a commitment to make accommodations for persons with disabilities to access NFPA materials.  To date, there has been only one request by a visually impaired individual for access to an NFPA standard and NFPA responded by providing that individual with a PDF copy.  Dubay Decl. ¶¶ 6-7.  NFPA is not aware of any other individuals who have | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | requested and not received an accommodation.  *Id.* ¶ 6. | |
| 54. People must register to access the reading rooms established by ASTM and NFPA. The registration process requires a visitor to provide ASTM and NFPA with their names and email address. ASTM also requires visitors to provide additional information, including the visitors address and phone number.  M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 213:14–19); ¶ 2, Ex. 4 (Bliss Dep. 79:4–7); ¶ 9, Ex. 11 (Mullen Dep. 50:4–18.; ¶ 130, Ex. 132 (ASTM Reading Library Registration Screen, Page 1); ¶ 131, Ex. 133 (ASTM Reading Library Registration Screen, Page 2); ¶ 136, Ex. 138 (NFPA Sign In Webpage). | Undisputed | |
| 55. NFPA uses the information gathered from visitors to its online reading room to send marketing materials.  M. Becker Decl. ¶ 9, Ex. 11 (Mullen Dep. 51:17–52:2). | Undisputed | |
| 56. The visitor to Plaintiffs' reading rooms will find the standard displayed in a small box on the visitor's screen, in text that is sometimes degraded, in a small font size that is difficult for many people to read. Magnification of the text makes the text appear blurry.  In general only a small part of each page cannot be viewed without scrolling.  Each page of each standard is stamped over the text with a warning that the material is copyrighted. ASTM admitted that it created its | Disputed.  There is no support for the contentions that the text of the standards is sometimes degraded, the font size is difficult for many people to read, magnification of the text makes the text appear blurry, only a small part of each page can be viewed without scrolling. Not all Plaintiffs stamp each page of the text with a copyright notice.  Objection to the characterization of the ASTM documents based on | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| reading room to be "user unfriendly."  ASTM calls its Reading Room an "IBR [incorporation by reference strategy meant to "take ownership of the issue in a way that ASTM controls."  M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 217:1–19); ¶ 138, Ex. 140; ¶ 139, Ex. 141; ¶ 140, Ex. 142; ¶ 141, Ex. 143; ¶ 2, Ex. 4 (Bliss Dep. 219:18-221:05); ¶ 137, Ex. 139 (ASHRAE Reading Room Screen Shot). O'Brien Decl. Ex. 18, ECF No. 118-7. ASTM admitted that it created its reading room to be "user unfriendly." *Id.* ¶ 139, Ex. 141. ASTM calls its Reading Room an "IBR [incorporation by reference] strategy" meant to "take ownership of the issue in a way that ASTM controls." *Id.* ¶ 138, Ex. 140. | the best evidence rule. Disputed to the extent it mischaracterizes the statements by ASTM, which speak for themselves and that are quoted out of context. *See* Def. Exs. 140, 141. There is no evidence that the standards are displayed in a "small" box.  The only cited evidence of the size is a 5-by-7 pane. | |
| 57. A user of ASTM's reading room must click a box that states the user agrees to ASTM's end user license agreement before accessing the reading room. NFPA's reading room also contains terms of service.  M. Becker Decl. ¶ 134, Ex. 136 (ASTM License Agreement Webpage); ¶ 133, Ex. 135 (ASTM Reading Room Terms); ¶ 135, Ex. 137 (NFPA Free Access Terms). | Undisputed | |
| 58. ASHRAE posted some of its standards for public viewing in a format that restricted downloading.  M. Becker ¶ 3, Ex. 5 (Comstock Dep. 11:25–12:7). | Undisputed | |
| 59. ASHRAE posted its standards for public viewing with the intent | Undisputed | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| of increasing demand for the posted standards.  M. Becker ¶ 3, Ex. 5 (Comstock Dep. 11:25–12:7). | | |
| 60. ASHRAE removes older standards incorporated by reference from its reading room. M. Becker Decl. ¶ 3, Ex. 5 (Comstock Dep. 20:19–22). | It is undisputed that ASHRAE has had a policy of removing older standards from its reading room to encourage use of latest versions.  However, for certain standards that are incorporated by reference, including Standard 90.1, which is the ASHRAE standard at issue here, older versions are still available in the ASHRAE reading room. Reiniche Decl. (Dkt. No. 118-10) at ¶ 19. | |
| 61. Plaintiffs do not allow people to print or download the standards on their reading rooms.  M. Becker Decl. ¶ 132, Ex. 134 (ASTM Reading Room Disclaimer). | Undisputed | |
| 62. ASTM defines the standards they produce as documents comprising "specifications, test methods, practices, guides, classification and terminology." M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 14:22–15:6). | Disputed.  The cited deposition testimony does not support this proposition. | |
| 63. ASTM has a form and style guide that sets forth the rules that persons generally must follow in participating in the drafting and revision process of ASTM standards. M. Becker Decl. ¶ 6, Ex. 8; ¶ 23, Ex. 25 (Grove Dep. 268:14–269:4). | **Objection.  Best evidence rule.**  Disputed.  ASTM's form and style guide sets forth guidelines for drafting different types of ASTM standards, not for participating in the drafting and revision process.  Pls. | The form and style guide is relevant because it exists, and as to how ASTM uses it in the standards development process, not for its contents. The best evidence rule does not apply. |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | SUMF ¶¶ 33-34. | |
| 64. According to NFPA's corporate designee, Donald Bliss, codes and standards are procedures and practices. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 21:18–22:11). | Disputed.  Defendant takes Mr. Bliss's testimony wholly out of context.  Nothing about Mr. Bliss's statement supports the proposition that the standards are systems and methods as Defendant claims.  Def's Opp. at 31. | |
| | In response to the question "What, in your view, makes codes and standards essential to reducing fire loss, fire deaths and property losses?," Mr. Bliss answered, "Codes and standards are the result of a number of things. One is actual lessons learned from events that have happened in the past, fire incidents, electrical problems, electrocutions, explosions. And based on the analysis of those events, we can learn from them and then establish the procedures and practices that should be followed to prevent that from happening. The second way is from actual research, looking at potential problems, looking proactively to determine whether or not a risk or a hazard exists, and then based on that research, generating guidelines and standards that would prevent those events from happening."  Def. Ex. 4 (Bliss Dep.) 21:18-22:11. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 65. ASHRAE described one of the standards at issue, the 1993 ASHRAE Handbook: Fundamentals, as "a tool for engineers to use when they're working with the topics covered in that book."  M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 158:20–24). | Undisputed.<br><br>Objection to relevance (Fed. R. Evid. 402). | |
| 66. The content of the ASHRAE standards-at-issue is based on a technical committee's review of the relevant research, public input and committee expertise, all of which is intended to determine the best rule—the consensus standard—for the relevant industry.  M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 140:1–41:4); ¶ 4, Ex. 6 (Dubay Dep. 29:12–21, 68:9–20, 73:16–25); ¶ 10, Ex. 12 (Reiniche Dep. 94–95). Jarosz Rep. 26–30, ECF No. 117-1. | Disputed to the extent that Ms. Reiniche's cited testimony never makes any qualitative assessment as to whether the ASHRAE standard is the "best rule" for the relevant industry. | |
| 67. NFPA is committed to reducing the worldwide burden of fire and other hazards by developing and disseminating codes that will minimize fire risk. Jarosz Rep. 29, ECF No. 117-1. | Disputed.  Defendant misstates the statement in the report "NFPA's mission is 'to reduce the worldwide burden of fire and other hazards on the quality of life by providing and advocating consensus codes and standards, research, training, and education.'"  *See* Jarosz Rep. ¶ 68. | |
| 68. Bliss testified that, when he was a committee member, his motivation was to develop the "best" standard, and "best" meant "understanding the problem based on past experience and events, having as much scientifically based research to contribute to the | Disputed.  Defendant relies on this mischaracterization to support its claim that the standards are systems and method.  Mr. Bliss's testimony does not support that point:<br><br>Q. And what makes a fire | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| development of the standard and then a very, very open and transparent consensus process." After that:<br><br>There's a tremendous amount of public input and vetting of the concepts and the actual language which in reality mirrors a government adoption of legislative process.  M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 139:07–140:10). | safety standard the best available?<br><br>A. In my view, it's a combination of factors.  One is understanding the problem based on past experience with fires and events, having as much scientifically based research to contribute to the development of the standard and then a very, very open and transparent consensus process.<br><br>Q. And what about the standards make them, makes them the best for adoption into law?<br><br>A. I think for the reasons that I indicated, is that there's lessons learned from past events. There's research that goes into the process. There's a tremendous amount of public input and vetting of the ideas and of the concepts and of the actual language which in reality mirrors a governmental adoption or legislative process. It takes advantage of a wide range of expertise and perspectives. | |
| 69. ASHRAE says its standards define "the minimum acceptable performance for the relevant products."  Jarosz Rep. 33, ECF No. 117-1. | Undisputed. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 70. The main benefit of the consensus process, according to ASHRAE, is that it relies on experts who understand "how to make that product or how to construct that building or how to make something more energy efficient." M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 102:23–25). | Disputed.  The cited testimony does not say that this is the "main benefit" of the consensus process or even that it is a benefit of the consensus process at all.  The testimony discusses why committee members should have some level of expertise in the field. | |
| 71. As NFPA puts it, there are two types of changes: technical changes, which are "scientific," and wording changes which involve making potentially confusing language more clear to make it easier to interpret or understand what the actual technical requirement is.  M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 28:22–30:4). | Disputed to the extent Defendant characterizes changes as merely for clarity.  Mr. Dubay's full testimony makes clear that the standards involve creative judgment and numerous choices to settle on final wording:<br><br>Q: Who determines what wording changes are appropriate in the technical committees?<br><br>A. It's a combination of extensive public review and comment, the committee's review of that and their expertise and with the help of our technical staff to land on the final wording, which is ultimately decided by the technical committee.<br><br>Q. What criteria do the members of the technical committee use in choosing the wording of a code or standard?<br><br>A. Ultimately those decisions are based upon the technical committee members' expertise and knowledge | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | within the field.  Def. Ex. 6 (Dubay Dep.) 29:12-30:4. | |
| 72. The volunteers who work on the standards don't view them as creative expression. Volunteers debate wording in the standards so as to have the most precise and accurate description of the process, system, or methods that comprise the standards. The exact wording matters, and it is not sufficient to try to rephrase this language as rephrasing could introduce errors. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 140:1–140:10). | Disputed.  There is no support for the contention that volunteers do not view their work as creative expression or the implication that they would have to view their expression as creative under copyright law.  There is also no support for the proposition that exact wording matters and rephrasing the language could introduce errors.<br><br>The cited transcript does not support Defendant's purported fact:  "I think for the reasons that I indicated, is that there's lessons learned from past events. There's research that goes into the process. There's a tremendous amount of public input and vetting of the ideas and of the concepts and of the actual language which in reality mirrors a governmental adoption or legislative process.  It takes advantage of a wide range of expertise and perspectives." Bliss Dep. 140:1-10.<br><br>There is also no support for this fact with respect to ASTM or ASHRAE. | |
| 73. Plaintiffs believe that technical excellence is why their standards are ultimately incorporated by reference.  M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 235:2–23). | Undisputed that Plaintiffs believe technical expertise is one reason why their standards are ultimately incorporated by reference. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 74. NFPA wants to make it easy as possible for users to understand the structure of the standard.  M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 138–139). | Undisputed that NFPA seeks to makes it easy for users to understand the structure of its standards, but disputed to the extent that Defendant misleadingly isolates this one snippet of Mr. Dubay's testimony to suggest that this effort  does not require creative expression. See Opp. at 33 (describing the Works as turning on only practical concerns without "a whit of expressive creativity").  As Mr. Dubay testified at length, NFPA's staff, committee members, and members of the public engage in a lengthy standards development process that involves many creative decisions that result in the creation of the final standard. Rubel Dec. Ex. 6 (Dubay Dep. 24-28, 31-33, 50-56, 59-62, 66-69).<br><br>As is clear from the Works filed with the Court, they are each unique and reflect the Plaintiffs' distinct expressive choices.  For example, NFPA and ASHRAE both define "automatic," but author different expressions of that definition.  *Compare* Comstock Decl., Ex. 1 (ASHRAE 90.1-2004) *with* Dubay Decl., Ex. A at 70-26 (NFPA NEC 2011). Likewise, the standards each use drawings in different ways and the style of those drawings is distinct. *Compare* Comstock Decl., | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | Ex. 1 at 18 (straightforward figure style in ASHRAE 90.1-2004) *with* O'Brien Decl. Ex. 6 at 3, 17 (complex drawing style in ASTM in ASTM D86-07). | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 75. NFPA asserted that "standard developers converge around terminology and format that works for constituents that utilize their standards."  M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 139:03–06). | Undisputed that NFPA seeks to use terminology and format that works for constituents that utilize their standards, but disputed to the extent that Defendant misleadingly isolates this one snippet of Mr. Dubay's testimony to suggest that this effort  does not require creative expression. See Opp. at 33 (describing the Works as turning on only practical concerns without "a whit of expressive creativity").  As Mr. Dubay testified at length, NFPA's staff, committee members, and members of the public engage in a lengthy standards development process that involves many creative decisions that result in the creation of the final standard.. Rubel Dec. Ex. 6 (Dubay Dep. 24-28, 31-33, 50-56, 59-62, 66-69).<br><br>As is clear from the Works filed with the Court, they are each unique and reflect the Plaintiffs' distinct expressive choices.  For example, NFPA and ASHRAE both define "automatic," but author different expressions of that definition.  Compare Comstock Decl., Ex. 1 at 5 (ASHRAE 90.1-2004) *with* Dubay Decl., Ex. A at 70-26 (NFPA NEC 2011). Likewise, the standards each use drawings in different ways and the style of those drawings is distinct. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | *Compare* Comstock Decl., Ex. 1 at 18 (straightforward figure style in ASHRAE 90.1-2004) *with* O'Brien Decl. Ex. 6 at 3, 17 (complex drawing style in ASTM in ASTM D86-07). | |
| 76. ASHRAE changed its arrangement of 90.1 from one column to two columns, as well as the chapter organization, to make it shorter. M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 194–198). | While it is undisputed that ASHRAE changed Standard 90.1 to a two column format, ASHRAE disputes the portion of this paragraph regarding chapter organization.  Ms. Reiniche's actual testimony was that chapter organization was altered to "make it flow better and easier for the reader to understand." Reiniche Dep. 120:5-11. <br><br> Disputed to the extent Defendant offers isolated snippets of deposition testimony for a proposition that is belied by the very Works themselves.  *See* Opp. at 33 (describing the Works as turning on only practical concerns without "a whit of expressive creativity").  As clear from the Works filed with the Court, they are each unique and reflect the Plaintiffs' distinct expressive choices.  For example, NFPA and ASHRAE both define "automatic," but express that definition differently. Compare Comstock Decl., Ex. 1 at 5 (ASHRAE 90.1-2004) *with* Dubay Decl., Ex. A at 70-26 (NFPA NEC 2011).  Likewise, the | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | standards each use drawings in different ways and the style of those drawings is distinct.  *Compare* Comstock Decl., Ex. 1 at 18 (straightforward figure style in ASHRAE 90.1-2004) *with* O'Brien Decl. Ex. 6 at 3, 17 (complex drawing style in ASTM in ASTM D86-07). | |
| 77. The adoption or incorporation of NFPA codes and standards into law may benefit NFPA financially because it encourages industries to purchase the standard.  M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 118:23–119:1); ¶ 7, Ex. 9 (Jarosz Dep. 209:16–210:7). | Disputed as incomplete. Evidence from NFPA's former CFO, Mr. Mullen, that Defendant cites in ¶ 123 explains that NFPA has not identified any direct correlation between incorporation by reference and sales. Def. Ex. 11 (Mullen Dep.) 95:3-25. | |
| 78. Plaintiffs monitor whether people follow the requirements of standards incorporated into law. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 30:1–37:25). | Disputed.  The cited deposition testimony does not describe the actions of Plaintiffs.  The testimony describes Mr. Bliss's "role[] . . . as a government employee responsible for enforcement."  *See, e.g.*, Def. Ex. 4 (Bliss Dep.) 32:20-33:10. There is no evidence that supports this statement in connection with ASHRAE or ASTM. | |
| 79. Plaintiffs enforce whether people follow the requirements of standards incorporated into law. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 30:1–37:25). | Disputed.  The cited deposition testimony does not describe the actions of Plaintiffs.  The testimony describes Mr. Bliss's "role[] . . . as a government employee responsible for | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | enforcement." *See, e.g.*, Def. Ex. 4 (Bliss Dep.) 32:20-33:10.  Defendant provides no evidence that ASTM or ASHRAE enforce compliance with their standards. | |
| 80. The standards at issue are dictated by external factors, including international principles and the desire to satisfy laws and regulations. M. Becker Decl. ¶ 104, Ex. 106 (Public Policy & Corporate Outreach Presentation, Sep. 2015); ¶ 6, Ex. 8 (Grove Dep. 94:24-95:01). | Disputed.  The proposition that Plaintiffs' standards are dictated by any factors, including international principles and the desire to satisfy laws and regulations, is not supported by the cited testimony or document.<br><br>In response the question: "What regulatory purposes do you anticipate government agencies have that causes them to examine industry standards?," the witness answered: "I don't have an answer for that.  I think you could assume that government participants in the standardization process bring knowledge of regulatory agendas and regulatory needs of agencies to the voluntary consensus community of which ASTM is one member amongst others."  Def. Ex. 8 (Grove Dep. 94:15-95:3.  Similarly, the cited document is a powerpoint presentation that contains no statements about any factors that dictate the content of Plaintiffs' standards. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 81. NFPA's Style Manual for the NEC, for example, specifies that because the NEC is "intended to be suitable for adoption as a regulatory document, it is important that it contain clearly stated mandatory requirements in the code text" so as to "encourage uniform adoption . . . without alterations." Additionally, ASHRAE circulates a detailed Manual designed to ensure that technical committees draft standards that will be easily adopted as regulations.  M. Becker Decl. ¶ 120, Ex. 122 (Style Manual for the NEC at 4); Ex. 103 (ASHRAE Guide to Writing Standards in Code Intended Language). | **Objection as to completeness.  The NEC Style Manual includes substantial other general and specific guidelines.** Disputed as to ASTM.  None of the cited evidence relates to ASTM or its standards, yet Defendant implies that this statement applies universally to all Plaintiffs. | Plaintiffs do not assert that any other guidelines in the NEC Style Manual, or any other evidence, contradict the quoted statement. |
| 82. Public Resource posted some of the incorporated standards at issue in standard Web formats.   C. Malamud Decl. ¶ 24–27; M. Becker Decl. ¶  8, Ex. 10 (R. Malamud Dep. 64:10–17); ¶8, Ex. 10 (R. Malamud Dep. 94:11); Jarosz Rep. ¶ 35, ECF No. 117-1. | Vague as to what constitutes as "standard Web format." Defendant posted the standards at issue in PDF and/or HTML formats. | |
| 83. Public Resource posted the incorporated standards at issue using HTML, MathML and SVG. Over time, Public Resource used contractors to assist in transforming the standards into HTML format. Two people independently type out most of the standards on Public Resource's websites and compare any discrepancies between their versions to confirm the accuracy of the transcription in a process called double-keying. Public | Disputed that the conversion of standards into HTML was transformative. Disputed as to the process Defendant's contractor used to convert the standards into HTML format.  The contractor testified that it used optical character recognition to extract text unless the image quality of the document was poor.  Pls. SUMF ¶ 192. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| Resource's contractor also worked with after-school educational programs to convert the diagrams into SVG and the mathematical formulae into MathML, a program that trains high-school and college students how to create web pages and educates them about democracy.  C. Malamud Decl. ¶ 25. | Disputed as to age range of students in after-school program at "Public Resource's contractor" (i.e., Mr. Malamud's wife's unincorporated business) who converted diagrams into SVG format and formulas into MathML, which was advertised as 7-14.  Pls. SUMF ¶ 199. | |
| 84. Hypertext Markup Language (HTML), Mathematics Markup Language (MathML), and Scalable Vector Graphics (SVG) permit users to perform software-based searching and analysis.  C. Malamud Decl. ¶ 25. | Undisputed | |
| 85. Public Resource does not restrict the public from viewing any of the incorporated standards at issue on its websites.  C. Malamud Decl. ¶ 23. | Undisputed | |
| 86. Public Resource does not require people to log in to its website before viewing any of the incorporated standards at issue on its websites.   C. Malamud Decl. ¶ 23. | Undisputed | |
| 87. Public Resource does not require people to pay Public Resource before viewing any of the incorporated standards at issue on its websites.  Malamud Decl. ¶ 23. | Undisputed | |
| 88. The Public Resource websites are directed at researchers and engaged citizens.  C. Malamud Decl. ¶ 4, 26. | **Objection as to relevance of Mr. Malamud's or Public Resource's supposed subjective intent.**<br><br>Disputed.  Defendant's | The testimony characterizes the contents of the Public Resource websites and Public Resource's |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | websites are accessible by the general public and Defendant has no way to identify who has downloaded, made additional copies of, or printed the versions of Plaintiffs' standards from its website. Pls. SUMF ¶ 248. | communications to the public, not merely Public Resource's subjective intent.<br><br>In addition, the intent of the use is relevant to a determination of fair use. |
| 89. Public Resource's stated purpose for providing an archive or laws and other government documents on its websites is to bolster the public's ability "to know and speak the law."  C. Malamud Decl. ¶ 28 (https://law.resource.org/pub/12tables.html). | **Objection.  Defendant's stated purpose is irrelevant.  Hearsay to the extent that the out of court statements are relied upon to prove the truth of the matters asserted.** | The material is a statement of opinion by Public Resource offered to show what was communicated to the public, not the truth of the matters asserted.<br><br>In addition, the intent of the use is relevant to a determination of fair use. |
| 90. Plaintiffs sell copies of the incorporated standards at issue. Thomas Decl. ¶ 44, ECF No. 118-11; Pauley Decl. ¶ 44, ECF No. 118-8; Rubel Decl. Ex. 8 (Comstock Dep. 104:21–106:23), ECF No. 118-12. | Undisputed | |
| 91. Public Resource's versions of the incorporated standards at issue are reasonably accessible to the print-disabled. People who are print-disabled can use screen reader software to read and navigate the HTML versions of the standards. James Fruchterman, Public Resource's expert on accessibility, concluded that "a blind person using a screen reader" can "read the standard . . . navigate to a specific place in the document . . . and search for key terms.")। | Disputed.  Mr. Fruchterman admitted he could not opine that a visually disabled person would actually be able to use the HTML versions of Plaintiffs' standards posted on Defendant's website. Pls. Suppl. SUMF ¶ 4 (Fruchterman Dep. 175:5-176:9, 218:3-23).  Mr. Fruchterman also acknowledged that he had asked a visually disabled | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| Mr. Fruchterman also observed that "standard HTML" as used by Public Resource "is also highly accessible to people with other print disabilities and the assistive technology they use to access print," such as people with "vision impairment, dyslexia, brain injury and physical disabilities." M. Becker Decl. ¶ 94, Ex. 96 (Fruchterman Rep. 5–7); ¶ 8, Ex. 10 (R. Malamud Dep. 233:15–234:7); ¶ 5, Ex. 7 (Fruchterman Dep. 125:10–11). | person to evaluate the PDF versions of Plaintiffs' standards that were posted on Defendant's website, and that person informed him that those documents could not be considered to be accessible. Pls. Suppl. SUMF ¶ 5 (Fruchterman Dep. 256:12-259:6).  In addition, the documents posted on Defendant's website are not the standards at issue.  They are Defendant's mistake-laden creations.  Pls. SUMF ¶¶ 182-185, 188-201. | |
| 92. Plaintiffs' versions of the incorporated standards at issue online are not as accessible to the print-disabled as Public Resource's versions of those standards. None of the Plaintiffs provide free electronic access to standards incorporated into law for people with disabilities. For example, NFPA's website requires visitors to register before viewing the standards, and its registration process cannot be completed by blind users. None of the Plaintiffs provides machine-readable text of the incorporated standards through their free reading portals. They provide only "a picture of the text," which causes screen-reading software to "stop working." Nor do the Plaintiffs' websites provide any means for disabled visitors to search or navigate the documents. Thus, "Public.Resource.Org currently provides the only accessible option for people/citizens with print disabilities to access these | Disputed to the extent the statements relates to people with non-print disabilities. To protect their copyrighted standards from exposure to mass copying, Plaintiffs have provided versions of their standards on their reading rooms that provide read-only access. *See, e.g.,* Grove Dep. 110:8-23; Dubay Dep. 77:21-78:4; Comstock Dep. 10:23-11:3. There is no evidence that Plaintiffs placed any purposeful restriction on the use of screen readers by people with print disabilities on their reading rooms.  To the extent a screen reader requires the ability to do more than read from an image of the standard on the screen, it is undisputed that the screen reader will not be able to read the versions of Plaintiffs' standards on their reading rooms.  Mr. Fruchterman admitted he | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| standards." M. Becker Decl. ¶ 5, Ex. 7 (Fruchterman Dep. 43:21–23; 112:1–8; 133:5; 143:10–14; 165:17–166:7; 167:8; 205:2–13); ¶ 94, Ex. 96 (Fruchterman Rep. 5–13); ¶ 2, Ex. 4 (Bliss Dep. 220:1–221:25); ¶ 2, Ex. 4 (Bliss Ex. 1003); ¶ 3, Ex. 5 (Comstock Dep. 20:22; 44:1–46:25). | could not opine that a visually disabled person would actually be able to use the HTML versions of Plaintiffs' standards posted on Defendant's website. Pls. Suppl. SUMF ¶ 4 (Fruchterman Dep. 175:5-176:9, 218:3-23). Mr. Fruchterman also acknowledged that he had asked a visually disabled person to evaluate the PDF versions of Plaintiffs' standards that were posted on Defendant's website, and that person informed him that those documents could not be considered to be accessible. Pls. Suppl. SUMF ¶ 5 (Fruchterman Dep. 256:12-259:6).<br><br>ASTM is not aware of any visually impaired person who has informed ASTM that he/she was having difficulty accessing an ASTM standard due to a print disability. If a visually-impaired person requested access to an ASTM standard due to a print disability, ASTM would provide a copy of the relevant standard in a format that accommodated the person's disability at no additional cost to the requester. Pls. Suppl. SUMF ¶ 8 (citing O'Brien Suppl. Decl. ¶ 17.)<br><br>Mr. Fruchterman testified that the 2014 edition of the NEC is available on Mr. Fruchterman's company's | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | online library for the visually-impaired website. Pls. Suppl. SUMF ¶ 3 (Fruchterman Dep. 209:18-213:23). There is no evidence that the other standards at issue are unavailable on that or similar websites for the visually-impaired. | |
| | NFPA has a commitment to make accommodations for persons with disabilities to access NFPA materials. To date, there has been only one request by a visually impaired individual for access to an NFPA standard and NFPA responded by providing that individual with a PDF copy. Pls. Suppl. SUMF ¶ 9. NFPA is not aware of any other individuals who have requested and not received an accommodation. Pls. Suppl. SUMF ¶ 10. | |
| 93. Downloading an incorporated standard allows more flexibility for using and sharing that standard. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 215:9–15; 215:21–216:1). | Disputed to the extent it suggests that the inability to download a standard would prevent use of the standard. Undisputed that the ability to download a standard makes it easier to share that standard. | |
| 94. It is not Public Resource's intention to make copies that are similar to the standards actually sold by ASTM available on its website because they post standards that have been explicitly and specifically incorporated by reference into federal or state law. | Vague and ambiguous in its entirety.

Disputed to the extent it suggests that Defendant has not made copies of standards that ASTM sells available on its website. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| C. Malamud Decl. ¶ 4–15. | | |
| 95. Public Resource posted the incorporated standards at issue to inform citizens about the content of the law. C. Malamud Decl. ¶ 4. | Disputed to the extent it suggests that Plaintiffs' standards are themselves law. | |
| 96. Public Resource posted the incorporated standards at issue on its website in formats meant to increase citizen access to the law. C. Malamud Decl. ¶ 26. | Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it suggests that citizens did not have access to Plaintiffs' standards prior to Defendant's activities. | |
| 97. Public Resource posted the incorporated standards at issue for the purpose of transforming the information in the standards by making that information accessible to people who did not necessarily have access to that information before.  C. Malamud Decl. ¶ 35. | Disputed.  Defendant has not transformed the information in the standards.  Plaintiffs make their standards accessible to the general public. Pls. SUMF ¶¶ 57-69, 99-103, 157-62.<br><br>Disputed to the extent it suggests that citizens did not have access to Plaintiffs' standards prior to Defendant's activities.<br><br>Disputed to the extent it suggests that Defendant posted the standards to provide access for the visually-impaired. There is no evidence to support that suggestion. | |
| 98. Public Resource does search engine optimization so that the standards are accurately described in search engine results. C. Malamud Decl. ¶ 29. | Disputed to the extent it suggests this is Defendant's only purpose in doing search engine optimization. | |
| 99. Technology that would allow a blind person access but prevent a | Disputed.  The Chafee Amendment to the Copyright | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| non-disabled person from accessing text does not yet exist. M. Becker Decl. ¶ 94, Ex. 96 (Fruchterman Rep. 101:8–14). | Act provides an avenue for providing access to copyrighted materials to blind people if certain requirements are followed, including only making the materials available to blind people.  Pls. Suppl. SUMF ¶ 1 (Fruchterman Dep. 52:1-54:2).  Mr. Fruchterman testified about the types of programs entities that seek to provide access to the materials for the blind use to comply with this requirement of the Chafee Amendment. Pls. Suppl. SUMF ¶ 2 (Fruchterman Dep. 80:9-81:25; 84:7-85:8; 86:7-89:12). | |
| 100. ASTM has a policy against permitting the posting of ASTM standards on the public internet. M. Becker Decl. ¶ 142, Ex. 144. | Disputed.  ASTM posts many of its own standards on the public internet.  Pls. SUMF ¶¶ 63-64, 66.  ASTM does not allow third-parties to post ASTM standards on the public internet. *See, e.g.,* Def. Ex. 113. | |
| 101. ASTM did not permit a person in the UK to post the information in the ASTM D2000-12 standard. M. Becker Decl. ¶ 143, Ex. 145. | **Objection.  Relevance; unfair prejudice.  This standard is not at issue in this litigation.** | Relevant to show Plaintiffs' practice of seeking to limit the online availability of the standards they publish. Plaintiffs have stated that they do not treat standards incorporated by reference differently from other standards. |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 102. People want to use the most recent version of ASTM's standards, even if an older version is incorporated by reference into law. M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 171:5–8). | Disputed to the extent it implies that there is no value to an older version of an ASTM standard or that older versions of ASTM standards do not need copyright protection. | |
| 103. ASTM seeks to get Congress to incorporate the most recent version of any particular standard because incorporation "freezes … that reference in statute for years to come." M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 260:25–261:15). | Disputed. ASTM does not lobby for incorporation of its standards by reference. However, if a government is going to incorporate an ASTM standard by reference, ASTM believes that it should use the most up-to-date standard rather than outdated materials. Def. Ex. 8 (Grove Dep. 124:10–125:05). | |
| 104. People may want to read older versions of standards because the older version may be the version that is incorporated by reference in a code or regulation. M. Becker Decl. ¶ 3, Ex. 5 (Comstock Dep. 19:20–24). | Disputed because this is pure speculation, not a statement of fact.<br><br>**Objection by ASTM and NFPA. The testimony relates only to ASHRAE standards and is irrelevant and unfairly prejudicial to ASTM and NFPA.** | Plaintiffs have suggested no reason why this testimony by ASHRAE is not applicable to ASTM and NFPA, as all three Plaintiffs regularly publish new versions of standards while older versions remain the law. |
| 105. As a public officer (but not as an NFPA employee), NFPA VP Donald Bliss has experienced confusion as to which version or edition of the code is in force in a jurisdiction because NFPA produces a number of different editions. M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 215:13–23). | Undisputed | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 106. Public Resource's posting of the incorporated standards at issue has not caused Plaintiffs any measurable harm.  M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 63:3–10; 123:14–18; 136:5–137:24; 155–158; 160:3–6; 177:17–178:5; 212:11–213:3; 214:13–215:3; 245:2–250:11); ¶ 3, Ex. 5 (Comstock Dep. 12:2-11; 63:10-16; 64:20–25). | Disputed.   While Plaintiffs have not calculated a precise number of damages, the evidence demonstrates that Plaintiffs have been harmed by Defendant's conduct.  Mr. Jarosz stated that Plaintiffs had suffered financial losses but they were exceedingly difficult to quantify.  Pls. SUMF ¶¶ 238-39, 246.<br><br>**ASHRAE also objects to the incredibly  misleading use of Mr. Comstock's testimony, which involved the observed impact of ASHRAE's own postings of standards in its reading room on a read only basis, not Public Resource's posting.  (See Ex. 5 (Comstock Dep.) at 11-12).  Because this testimony does not relate to the posting by Defendant, ASHRAE also objects to the use of the testimony on the basis of relevance (Fed. R. Evid. 402).**<br><br>**ASTM and NFPA object to the use of evidence regarding ASHRAE against them as irrelevant and unfairly prejudicial.** | Mr. Comstock's testimony refers directly to "the defendant's conduct in this case." M. Becker Decl. Ex. 5 (Comstock Dep. 64:7-16). |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 107. Public Resource's posting of the incorporated standards at issue has not had a measurable impact on ASTM's finances. M. Becker Decl. ¶ 144, Ex. 146; ¶ 6, Ex. 8 (Grove Dep. 144:22–145:2). | Disputed.  While ASTM has not calculated a precise number of damages, the evidence demonstrates that ASTM has been harmed by Defendant's conduct.  Mr. Jarosz stated that Plaintiffs had suffered financial losses but they were exceedingly difficult to quantify.  Pls. SUMF ¶¶ 238-39, 246. | |
| 108. ASTM has no evidence that it has lost sales of any of the incorporated standards at issue because Public Resource made the incorporated standards at issue publicly available.  M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 152:19–24). | Disputed.  ASTM presented evidence that many people accessed versions of ASTM standards that Defendant placed online, some of whom may have otherwise purchased the standards from ASTM.  Pls. SUMF ¶¶ 241, 243-44 (showing over 88,000 accesses of ASTM's standards from Defendant's website in 10 month period and thousands of downloads of ASTM's standards from the Internet Archive); Def. Ex. 9 (Jarosz Dep.) 212:16-213:3. | |
| 109. ASTM has no evidence that Public Resource caused ASTM to lose money.  M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 154:25–155:5). | Disputed.  While ASTM has not calculated a precise number of damages, the evidence demonstrates that ASTM has suffered damage as a result of Defendant's conduct. ASTM presented evidence that many people accessed versions of ASTM standards that Defendant placed online, some of whom may have otherwise purchased the standards from ASTM.  Pls. SUMF ¶¶ 241, | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
|  | 243-44 (showing over 88,000 accesses of ASTM's standards from Defendant's website in 10 month period and thousands of downloads of ASTM's standards from the Internet Archive); Def. Ex. 9 (Jarosz Dep.) 212:16-213:3. |  |
| 110. ASTM has no knowledge of any evidence that Public Resource caused ASTM any property damage or injury.  M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 155:7–12). | Undisputed that ASTM has no knowledge of evidence that Defendant caused ASTM property damage.  Disputed as to the existence of evidence that Defendant caused ASTM injury. Pls. SUMF ¶¶ 214-15, 241, 243-45, |  |
| 111. ASTM has no evidence that PR caused ASTM any damage to ASTM's reputation.  M. Becker Decl. ¶ 6, Ex. 8 (Grove Dep. 165:12–15). | Disputed.  Plaintiffs presented evidence of Defendant's posting versions of ASTM standards that contain errors online.  Pls. SUMF ¶¶ 214-15, 245. |  |
| 112. Plaintiffs' expert Jarosz was unable to quantify any financial losses to Plaintiffs as a consequence of Public Resource's activities.  M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 63:3–10). | Disputed.  Mr. Jarosz stated that Plaintiffs had suffered financial losses but they were exceedingly difficult to quantify a precise number for those losses with great certainty.  Pls. SUMF ¶¶ 238-39, 246. |  |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 113. Plaintiffs' expert Jarosz was not aware of any documents showing NFPA suffered harm from Public Resource's activities. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 123:9–18). | Disputed.  This fact is entirely not true as are the claims in Defendant's brief that Mr. Jarosz relied on only conversations for his conclusions.  Opp. at 7.<br><br>The cited testimony does not support the fact and Mr. Jarosz stated numerous times that he relied on documents referenced in paragraph 133 of his report, among others, that show harm. | |
| 114. Plaintiffs' expert Jarosz's only evidence of harm is statements by plaintiffs' officers. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 155–163). | Disputed.  In addition to relying on persons with knowledge of relevant information, Jarosz relied on documentary evidence, including, but not limited to, documents showing the number of downloads of copies of Defendant's copies of Plaintiffs' standards and documents showing that Defendant did not correctly copy Plaintiff's standards. Jarosz also relied on the testimony of Public Resource and Carl Malamud.  *See* Jarosz Report, Tab 2. | |
| 115. Plaintiffs' expert Jarosz was not aware of any direct evidence of the impact of Public Resource's activities on Plaintiffs' financials. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 160:3–6). | Disputed.  Jarosz relied on direct evidence of the harm and its impact to Plaintiffs as cited in response to paragraph 114 above, among other evidence. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 116. Plaintiffs' expert Jarosz did not correlate Public Resource's posting of the standards at issue with Plaintiffs' revenues from the sale of the standards at issue.  M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 177:17–178:5). | Undisputed | |
| 117. Plaintiffs' expert Jarosz did no analysis to distinguish the profitability of the standards at issue from the profitability of standards that have not been incorporated by reference into law. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 183:4–15). | Undisputed | |
| 118. Plaintiffs' expert Jarosz lacks certainty that Public Resource's posting of the standards at issue caused any economic loss to Plaintiffs.  M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 212:11–213:3). | Disputed.  Mr. Jarosz stated that Plaintiffs had suffered financial losses but they were exceedingly difficult to quantify.  Pls. SUMF ¶¶ 238-39, 246.  Additionally, Mr. Jarosz stated that he could say with reasonable certainty that if people had not accessed or downloaded versions of ASTM's standards that Defendant posted online, in some instances they would have obtained the ASTM standards from ASTM through legal means.  Def. Ex. 9 (Jarosz Dep.) 212:16-213:3. | |
| 119. Plaintiffs' expert Jarosz did not evaluate the extent of distribution of the standards at issue via Public Resource's website.  M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 214:13–215:3; 216:2–5; 245–49). | Disputed to the extent it suggests it would be possible to evaluate the extent of distribution of the standards via Defendant's website. Defendant does not know what people do with the | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | versions of Plaintiffs' standards that are posted on Defendant's website. And Defendant admitted it has no way to identify who downloaded, made additional copies of, or printed the versions of Plaintiffs' standards from its website. Pls. SUMF ¶¶ 247-48. | |
| 120. ASHRAE is not aware of any revenue lost from the free availability of ASHRAE standards online. M. Becker Decl. ¶ 3, Ex. 5 (Comstock Depo 12:2–11; 63:10–16; 64:20–25). | Disputed. The citation to Mr. Comstock's testimony, which involved the observed impact of ASHRAE's own postings of standards in its reading room on a read only basis, not Public Resource's posting of standards, is incredibly misleading and does not support the asserted proposition. (See Ex. 5 (Comstock Dep.) at 11-12). **Also, because this testimony does not relate to the posting by Defendant, ASHRAE also objects to the use of the testimony on the basis of relevance (Fed. R. Evid. 402).** **ASHRAE further objects to the extent that the testimony elicited supports the fact that there has been no formal tracking of lost revenue, but that is not to say that no loss occurred – only that it was not tracked. And ASHRAE's witnesses did point to anecdotal evidence of lost revenue due to free availability of the standards online, even if the impact** | Mr. Comstock's testimony refers directly to "the defendant's conduct in this case." M. Becker Decl. Ex. 5 (Comstock Dep. 64:7-16). |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
|  | was not quantified. *See* **Comstock Dep. 63:17-25.** |  |
| 121. ASTM's sales from publications have increased 2% over the past 2–3 years. This was in accord with Grove's expectations. M. Becker Decl. ¶ 6, Ex. 8 (Grove Depo 19:21–20:13). | Undisputed |  |
| 122. ASHRAE has not attempted to track losses due to Public Resource's conduct.  M. Becker Decl. ¶ 3, Ex. 5 (Comstock Dep. 63:10–16). | Undisputed |  |
| 123. NFPA has not identified "any direct correlation" between adoption of an edition and an increase in sales. "The only general correlation is that once a new version of the code is out, we will sell more of the new edition and less of the old edition, but nothing – no general correlation to adoption or specific spikes." M. Becker Decl. ¶ 9, Ex. 11 (Mullen Dep. 95:3–25). | Undisputed |  |
| 124. NFPA does not have a number on any balance sheet that corresponds to the value of the copyrights it holds because NFPA does not "attempt to place any value on any intangible asset."  M. Becker Decl. ¶ 9, Ex. 11 (Mullen Dep. 140:11–18). | Undisputed |  |
| 125. According to NFPA's Bruce Mullen, "If I had to guess, the non-business or government purchases is probably less than 1% of total sales."  M. Becker Decl. ¶ 9, Ex. 11 (Mullen Dep. 187:14–23). | Disputed.  Defendant's purported fact is a quote from an email that was shown to Mr. Mullen at his deposition which he did not author, receive, or recognize.  Mr. Mullen simply did not state | The statement is admissible as the admission of a party, as it was a statement by a Division Director of NFPA. |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | what Defendant alleges he did.<br><br>**Objection.  Inadmissible hearsay.** | |
| 126. Plaintiffs' assertion of copyright in incorporated standards makes it more difficult for others to produce materials such as training and user manuals. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 217–224). | Disputed.  This statement is unsupported by the cited source and Defendant provides no other basis for it. | |
| 127. Allowing "unauthorized persons" to use standards without training is not a cognizable harm. M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 227:14–228:14). | This is a legal conclusion and not a factual statement. | |
| 128. "Confusion" between incorporated standards and newer versions of Plaintiffs' standards does not harm Plaintiffs.  M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Depo 254:14–257:9). | Disputed.  This statement is not supported by the cited source and Defendant provides no other basis for it. | |
| 129. Plaintiffs have no evidence that they suffered any loss of revenues in Texas, Louisiana or Mississippi since 2002 when the 5th Cir decided *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 796 (5th Cir. 2002) (en banc). M. Becker Decl. ¶ 7, Ex. 9 (Jarosz Dep. 130:6–19). | Disputed.  The *Veeck* decision explicitly stated it did not apply to standards incorporated by reference, like Plaintiffs' standards. Thus there would be no basis for expecting Plaintiffs to have suffered loss of revenue as a result of the *Veeck* decision. *See* Pls. MSJ at 26-27. | |
| 130. Almost all of the standards at issue that Plaintiffs registered with the Copyright Office are registered as "works made for hire" (with the exception of one NFPA standard, NFPA 54 National Fuel Gas Code 2006).   M. Becker Decl. ¶ 11, Ex. | Undisputed | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 13 (ASTM Certificates of Registration); ¶ 13, Ex. 15 (NFPA Certificates of Registration ); ¶ 14, Ex. 16 (ASRAE Certificates of Registration). | | |
| 131. Plaintiffs have not provided evidence that one standard at issue, ASTM D323 1958 (1968), was ever registered with the copyright office.  Complaint, Ex. A at 4, ECF No. 1-1. | Undisputed | |
| 132. Each standard at issue was developed by a large number of unpaid volunteers, including federal government employees, state and municipal government employees, employees of private companies and organizations, and ordinary citizens.  M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 56:03–57:06); ¶ 79, Ex. 81; ¶ 6, Ex. 8 (Grove Dep. 97:25–98:07); ¶ 20, Ex.22; ¶ 22, Ex. 24; ¶ 4,  Ex. 6 (Dubay Dep. 15:16–16:10, 51:20–52:15, 75:17–76:11, 240:22–242:04); ¶ 9, Ex. 11 (Mullen Dep. 114:22–115:23); ¶ 10, Ex. 12 (Reiniche Dep. 21:01–23:21, 105:08–106:18 194:04–194:07); ¶ 42, Ex. 44; ¶ 46, Ex. 48. | Disputed to the extent it implies that volunteers were the only developers of the standards.  Plaintiffs presented evidence that their employees drafted language that appears in the standards. Pls. SUMF ¶¶ 34-35, 117, 137-39, 141.  Disputed to the extent it suggests that the volunteers who authored each standard or any portion thereof included federal, state and municipal government employees because Defendant provides no support for this proposition. | |
| 133. Volunteers or members of the public proposed the creation or revision of the standards at issue. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 18:05–18:19, 280:10–280:20); ¶ 93, Ex. 95; ¶ 123, Ex. 125, p. 4; ¶ 10, Ex. 12 (Reiniche Dep. 94:20–98:24); ¶ 124, Ex. 126, p. 5 (discussing ASHRAE membership categories). | Disputed to the extent it omits reference to the Plaintiffs.  Plaintiffs' rules dictate the process and procedures for developing, revising and updating the standards on a regular schedule.  Pls. SUMF ¶¶ 42, 93, 140. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 134. Volunteers drafted the language for the standards at issue, with public input, and determine the arrangement and inclusion of proposed text. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 18:05–18:23, 20:04–20:11); ¶ 93, Ex. 95; ¶ 2, Ex. 4 (Bliss Dep. 45:12–46:02) ("We use a system of volunteers to serve on committees to develop the standard. It's volunteers that serve on the standards council. It's volunteers that serve as our membership to make the final voting."); ¶ 2, Ex. 4 (Bliss Dep. 46:03–46:13); ¶ 4, Ex. 6 (Dubay Dep. 29:12–29:21); ¶ 10, Ex. 12 ((Reiniche Dep. 49:08–50:11); ¶ 10, Ex. 12 (Reiniche Dep. 60:05–60:12) ("[ASHRAE] Standard 90.1 is on continuous maintenance, so anyone at any time can propose a change to the standard. It could be a project committee member or the public."). | Disputed to the extent it implies that volunteers were the only drafters of the standards. Plaintiffs presented evidence that their employees drafted language that appears in the standards. Pls. SUMF ¶¶ 34-35, 117, 137-39, 141. | |
| 135. Volunteers voted on the final content of the standards at issue. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 15:25–16:10, 17:14–17:24, 98:07–98:25, 186:21–186:25, 274:23–276:12); ¶ 2, Ex. 4 (Bliss Dep. 45:12–46:13); M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 55:22–57:17); M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 94:20–96:02) (describing the volunteer committee resolution process that votes on drafts and revisions of ASHRAE standards). | Undisputed | |
| 136. The volunteers who developed the standards at issue | This statement is not supported by the cited | The testimony was based on the personal |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| did so out of service to their country as federal, state, or municipal employees, in furtherance of the business interests of the private companies or organizations they worked for, or because of personal interest. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 45:16–46:04) (stating that volunteers develop ASTM standards because "a company or an individual would be interested in having an ASTM standard that they could say their product or service is in compliance with"); ¶ 2, Ex. 4 (Bliss Dep. 138:22-139:12) (as a public official, Mr. Bliss participated in NFPA standard development because his "motivation was to try and establish the best possible fire safety standards that could be developed"); ¶ 10, Ex. 12 (Reiniche Dep. 50:12¬51:06) (volunteers or members of the public participate because it affects their business interests and they want to write the language that is adopted into code, or because of personal interest). | sources.  Defendant has no basis for drawing any conclusions about the motivations of any, much less all, of the hundreds of thousands of volunteers who participated in Plaintiffs' standards development process.  Disputed to the extent it implies that volunteers were the only developers of the standards. Plaintiffs presented evidence that their employees drafted language that appears in the standards. Pls. SUMF ¶¶ 34-35, 117, 137-39, 141.<br><br>**Objection.  Lack of foundation to the extent Defendant relies on testimony from persons regarding the motivations of anyone other themselves.** | knowledge of Plaintiffs' designated Rule 30(b)(6) witnesses based on their direct knowledge and experience with standards development and personal contact with countless participants. |
| 137.  Plaintiffs' employees set up meetings to discuss drafts of the standards at issue at public locations, advised the volunteers who drafted the standards, and assisted with formatting. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 268:13–272:25) (listing the ways in which ASTM staff assist the people who actually draft the standards); M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 52:16–53:04) ("NFPA employees are not -- cannot be members of our | Disputed to the extent it implies that these are the only tasks performed by Plaintiffs' employees. Plaintiffs presented evidence that their employees drafted language that appears in the standards.  Pls. SUMF ¶¶ 34-35, 117, 137-39, 141. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| technical committees.  However, as I stated previously, it's important -- there's an important role that NFPA staff plays in guiding, advising the committee, coordinating the activities and providing their technical expertise, especially technical staff liaison into this committee process.  But they do not have -- they're not members of the committee, and they do not carry a vote in the decisions of the committees."); M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 97:13–98:19) (involvement of ASHRAE staff in development and updating of standard 90.1 is limited to reviewing and making suggestions to the volunteers who draft and vote on the text of the standard). | | |
| 138.  Plaintiffs did not have control over the content of the standards at issue during the development and revision of those standards. The decision to develop or revise the standards at issue was made by volunteers, not by the Plaintiffs. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 15:25–16:10, 17:14–17:24, 98:07–98:25, 186:21–186:25, 274:23–276:12); M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 45:12–46:02, 46:03–46:13) (NFPA employees assist the volunteers, but the volunteers have the "ultimate decision . . . as to what the language will actually say"); M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 55:22–57:17); M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 94:20–96:02). | **Objection.  Vague and ambiguous as to "control."** Disputed.  Plaintiffs presented evidence that their employees drafted language that appears in the standards. Pls. SUMF ¶¶ 34-35, 117, 137-39, 141. Disputed to the extent it omits reference to the Plaintiffs, to whom the volunteers proposed the creation or revision of the standards. Plaintiffs have a role in deciding whether or not to develop a standard.  *See, e.g.,* Pls. SUMF ¶ 92.  Plaintiffs' rules dictate the process and procedures for developing, revising and updating the | The cited evidence demonstrates that Plaintiffs had no authority over the final contents of any of the standards at issue. |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | standards on a regular schedule. Pls. SUMF ¶¶ 42,93, 140. | |
| 139. NFPA is the only Plaintiff to allege that a work made for hire agreement was signed by developers of the standards at issue. Plaintiffs' Statement of Material Facts ¶ 115, ECF No. 118-2. This language attempting to classify the work of volunteers as "work made for hire" was added to NFPA forms only in 2007, after most of the standards at issue were already published, and used inconsistently thereafter. M. Becker Decl. ¶ 125, Ex. 127, ¶ 126, Ex. 128, ¶ 127, Ex. 129 (compare NEC proposal forms from 2005, 2007, and 2008). | Undisputed that NFPA alleges that a work made for hire agreement was signed by developers of the standards at issue. Disputed that the "work made for hire" language was only added in 2007. The undisputed testimony is that the NFPA committee application form is signed by all members of NFPA technical committees who participate in the development of the standards, and that it has contained unchanged "work made for hire" language "for many years." Pauley Decl. ¶ 34. Defendant's citation to pre-2007 forms is limited only to certain forms for proposals from members of the public, not the committee application.<br><br>Undisputed as to ASTM and ASHRAE. | |
| 140. Plaintiffs claim to be assignees of any copyright that the volunteers or members of the public who authored the standards at issue might have had in the standards at issue. Pls. Mem. 16, ECF. No. 118-1. | Undisputed | |
| 141. In a 2011 memorandum, then-NFPA President James Shannon observed that NFPA and other standards organizations had problems with their copyright | Disputed as incomplete. The footnote states: "Another example of our aggressive steps to protect copyrights the action we took to make | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| assignments, stating: "In the past most standards developers, in accepting proposals, received assignments of intellectual property in those proposals that were less than airtight." M. Becker Decl. ¶ 51, Ex. 53 at p. 6, fn. 4. | the assignments from the submitters of proposals less vulnerable to attack.  In the past, most standards developers, in accepting proposals, received assignments of intellectual property rights in those proposals that were less than airtight. ***NFPA tightened its assignment language in 1997.***"  Def. Ex. 53 at p. 6, fn. 4 (emphasis added).<br><br>Objection.  Lack of foundation as to any Plaintiff other than NFPA.  Hearsay as to any Plaintiff other than NFPA. | |
| 142. ASHRAE claims ownership of its Standards at Issue by virtue of copyright release forms that the people who drafted the standards allegedly signed.  M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 192:17–194:03 (stating that ASHRAE claims authorship of the standards at issue "[a]s a basis of the signed copyright assignments that all the members sign when they apply for membership, that the commenters sign when they submit a comment and that the members that submit change – or the public that submits change proposals sign when they submit a change proposal"); Reiniche Dep. 193:08–17 (stating that the people who authored the standards are not employees of ASHRAE)). | Disputed insofar as an additional basis for claiming ownership of its standards, separate and apart from any assignments from participants in the development process, is based on its role as the organizational author of the standards and its employees' contribution of language in the standards.  MSJ at 16. | |
| 143. ASHRAE requires volunteers who contribute to standard development to sign a copyright | Disputed insofar as the copyright release also contains the following | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| release explicitly granting ASHRAE "non-exclusive" rights in those contributions.  M. BeckerDecl. ¶ 10, Ex. 12 (Reiniche Dep. 70:02-70:11). | language: "I understand that I acquire no rights in publication of such documents in which my contributions or other similar analogous form are used." Reiniche Decl. Ex. 2; *see also* Reiniche Decl. Ex. 1 ("I understand that I acquire no rights in publication of the standard in which my proposals in this or other analogous form is used."). | |
| 144. ASHRAE indicated the following language from one of its alleged "assignment" forms when asked to indicate what language from that form it believes serves as an assignment of copyright rights:<br><br>If elected as a member of any ASHRAE Standard or Guideline Project Committee or appointed as a consultant to such committee I hereby grant the American Society of Heating, Refrigerating and Air-Conditioning Engineers (ASHRAE) the *non-exclusive, royalty-free rights, including nonexclusive, royalty rights in copyright*, to any contributions I make to documents prepared by or for such committee for ASHRAE publication and I understand that I acquire no rights in publication of such documents in which my contributions or other similar analogous form are used.  I hereby attest that I have the authority and I am empowered to grant this copyright release.<br><br>M. Becker Decl. ¶ 46, Ex. 48 (Reiniche Ex. 1155) (emphasis added); M. Becker Decl. ¶ 10, Ex. | Undisputed | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 12 (Reiniche Dep. 94:12–94:14) | | |
| 145. Every document that ASHRAE has produced to support its claim that the people who drafted the ASHRAE standards at issue assigned their copyrights to ASHRAE states explicitly that the grant of rights is non-exclusive. M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 69:19–94:19); M. Becker Decl. ¶ 25–46, Exs. 27–48. | Disputed insofar as the copyright release also contains the following language: "I understand that I acquire no rights in publication of such documents in which my contributions or other similar analogous form are used." Reiniche Decl. Ex. 2; *see also* Reiniche Decl. Ex. 1 ("I understand that I acquire no rights in publication of the standard in which my proposals in this or other analogous form is used."). | |
| 146. All but four of the 229 ASTM standards at issue in this case were developed and published prior to 2003.  ECF No. 1-1 (Complaint) Ex. A. | Undisputed | |
| 147. ASTM admits that it did not request copyright assignments from the people who drafted ASTM standards until approximately 2003.  M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 24:18–26:12; 27:07–27:14; 40:22–41:15; 214:24–215:06). | Undisputed | |
| 148. ASTM has not produced signed copyright assignments for any of the standards at issue.  M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 24:18–26:12; 27:07–27:14; 40:22–41:15; 214:24–215:06). | Disputed. For the four standard for which ASTM moved for summary judgment, ASTM presented evidence that the leader of the group that developed the standard and/or a member of the committee that drafted the standard assigned any copyrights in their individual contributions to the standards | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| | to ASTM.  SUMF ¶¶ 18, 20-24.  With respect to the remaining ASTM standards at issue in this case, ASTM has produced evidence that over 25,000 members completed membership renewal forms every year since 2007.  Pls. Suppl. SUMF ¶ 14.  The vast majority of these members completed their membership renewals using the online membership form.  Pls. Suppl. SUMF ¶ 15. Although ASTM did not request copyright assignments from its members until approximately 2003, the language in the assignments it obtained since then retroactively assigned any copyrights that individual possessed in any ASTM standard to ASTM.  *See* Pls. SUMF ¶ 18. | |
| 149. Prior to 2003, ASTM did not believe that it needed formal assignment agreements.  M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 42:15–42:16) ("[ASTM] didn't feel like we needed any formal, any formal assignment paper."). | Disputed.  Prior to and after 2003, ASTM believed it had a basis for claiming ownership of its standards separate and apart from any assignments from participants in the development process based on its role as the organizational author of the standards and its employees' contribution of language in the standards. MSJ at 16. | |
| 150. ASTM alleges that it relied on an unspoken "basic understanding" that the volunteers who drafted the standards at issue | Disputed.  ASTM's ownership claims do not depend on, but are confirmed by, the understanding of all | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| intended to create standards that ASTM would eventually distribute.  M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 42:18–44:01; 94:01–94:20). | participants in the standard development process intend ASTM to own the copyrights in standards. | |
| 151. ASTM has not produced any evidence of the existence of an alleged "basic understanding" between the creators of the standards at issue and ASTM, nor any evidence of what the contours of this "basic understanding" were. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 44:03–45:14; 104:21–105:24) ("Q: Did Mr. Lively provide any basis for his statement that there was an understanding in the early '80s that ASTM would copyright the material provided by individuals that was incorporated into the standards drafts?  A:  No. I think it was just his belief just as it was my belief."); (Smith Dep. 44:03–45:14) (stating that ASTM "didn't think that documentation [of the alleged 'basic understanding'] was needed"). | Disputed.  ASTM has presented evidence that all participants in the standard development process intend ASTM to own the copyrights in standards.  *See* SUMF ¶ 40; Cramer Decl. ¶¶ 6, 10, 11, 15; Jennings Decl. ¶¶ 7-9, 12. | |
| 152. ASTM claimed that the ASTM "IP Policy" somehow confirms the existence of this alleged "basic understanding."  M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 57:23–59:25). | Undisputed | |
| 153. The earliest IP policy document that ASTM produced in this litigation was approved by ASTM on April 28, 1999 and put into effect thereafter. ASTM had no IP policy prior to April 28, 1999. M. Becker Decl. ¶ 75, Ex. 77, ¶ 77, Ex. 79 [Ex. 1285, 1287, | Undisputed that the earliest IP Policy produced in this litigation was approved on April 28, 1999.  There is no support for the proposition that ASTM had no IP policy prior to that date. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 1288] | | |
| 154. ASTM had no IP Policy prior to April 27, 1999. M. Becker Decl. ¶ 150, Ex.152 (Internet Archive capture of the ASTM home page the day before the ASTM IP Policy was approved, and a capture after the ASTM Policy was approved, showing that the link to the IP Policy in the lower-right corner of the page was not present on April 27, 1999). | **Objection. Hearsay; lack of personal knowledge; irrelevant and prejudicial.** | The evidence is not hearsay because it is not a statement; it is evidence of the non-existence of any statement before a given date.<br><br>Relevant to show that many of the standards at issue were developed in whole or part without any implicit or explicit joint authorship agreement or agreement to assign copyright. |
| 155. In 2010, approximately three years after the publishing of the most recent ASTM standard at issue, the ASTM IP Policy was amended to include the following language: "Each member agrees, by such participation and enjoyment of his/her annual membership benefits, to have transferred any and all ownership interest, including copyright, they possess or may possess in the ASTM IP to ASTM." M. Becker Decl. ¶ 75, Ex. 77, ¶ 77, Ex. 79 (Compare Section V.D. in both documents). | Disputed to the extent it omits reference to the statement in the 1999 IP Policy that "[b]y participating in any ASTM technical committee and /or participating in the creation and adoption of ASTM's Intellectual Property, participants and committee members acknowledge that the copyright to such Intellectual Property resides in ASTM. *See* Def. Ex. 77. | |
| 156. There was no means that ASTM imposed for the volunteers who drafted the ASTM standards to signify that they had read and agreed to the ASTM IP Policy. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 173:10–181:12) (admitting that ASTM does not know if members read or understood the | Disputed. Certain ASTM membership forms stated: "By applying for or renewing your ASTM membership, you acknowledge you have read and agree to abide by ASTM's Intellectual Property Policy." *See, e.g.*, Def. Ex. 87. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| assignment clause, nor whether they assented to transfer their copyright to ASTM). | | |
| 157. ASTM has not retained or produced in this litigation completed membership forms pertaining to any of the standards at issue. The membership forms that ASTM has produced date from 2008 and later, with only one membership form from 2007. M. Becker Decl. ¶ 90, Ex. 92; M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 258:11–258:23). | Disputed. For the four standard for which ASTM moved for summary judgment, ASTM presented evidence that the leader of the group that developed the standard and/or a member of the committee that drafted the standard assigned any copyrights in their individual contributions to the standards to ASTM.  SUMF ¶¶ 18, 20-24.  With respect to the remaining ASTM standards at issue in this case, ASTM has produced evidence that over 25,000 members completed membership renewal forms every year since 2007, which is as far back as ASTM maintains membership records.  .  Pls. Suppl. SUMF ¶ 14. The vast majority of these members completed their membership renewals using the online membership form.  .  Pls. Suppl. SUMF ¶ 15. Although ASTM did not request copyright assignments from its members until approximately 2003, the language in the assignments it obtained since then retroactively assigned any copyrights that individual possessed in any ASTM standard to ASTM.  *See* Pls. SUMF ¶ 18. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 158. ASTM has failed to exercise control over the creation and enforcement of its membership and participation forms (that it terms copyright "assignments"), resulting in a multiplicity of forms that either have no assignment language at all, or have various iterations of language that ASTM claims grants it copyright assignments.  M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 216:01–217:12, 225:05–225:19 (membership forms were prepared ad hoc by any number of people, and he does not know if anyone knows how many different variations of ASTM membership form were used from 2007 to 2014, because his "experience as being a staff manager is I don't think people think about the version of an application that's being used.   I think it's viewed as a tool that enables an individual to join a technical committee."). | Objection.  Vague and ambiguous as to "exercise control." <br><br> Disputed.  The statement is not supported by the cited testimony. | |
| 159. Many individuals renew their ASTM memberships through alternate channels other than using ASTM membership renewal forms or renewing through ASTM's online portal, and thereby do not encounter or formally assent to any copyright assignment language. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 278:04–278:18) (ASTM members can renew their membership by phone or by email, without using the online portal or using ASTM's mail-in forms); M. Becker Decl. ¶ 92, Ex. 94 (example of an ASTM member renewing by email). | Disputed to the extent that there is no evidence that "many" individuals renew their ASTM memberships through alternate challenge. Defendant has found several isolated instances of ASTM members renewing their ASTM memberships outside of the normal channels. <br><br> Disputed that clicking on "continue" in the online process is not an indication of assent. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| ASTM's online membership agreement process does not require a member to click "yes," or "I agree," or any other affirmation to the language discussing copyright assignment that appears on the web page. Instead, members click a button labeled "continue" that appears below the message: "[c]lick 'continue' to place your ASTM membership renewal in the shopping cart." M. Becker Decl. ¶ 147, Ex. 149. | | |
| 160. The membership forms that ASTM has produced usually do not include language asking for an assignment of copyrights.  M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 211:24-212:12) (acknowledging ASTM forms that did not have assignment language); M. Becker Decl. ¶¶ 82-84, Exs. 91 ¶¶82–84, Ex. 93 (examples of ASTM forms without any assignment language). | Disputed.  The membership form in Defendant's Exhibit 91 includes copyright assignment language. Defendant produced tens of thousands of pages of hard-copy membership forms. Pls. Suppl. SUMF ¶ 16. Defendant identified a very small percentage of those forms that do not include language regarding assignment of copyright.  *See* Def. Ex. 93. | |
| 161. Of the ASTM forms that do include what ASTM alleges to be assignment language, there is no means for a person filling out the form to sign her name or show that she agrees to assign her copyright rights to ASTM.  M. Becker Decl. ¶¶ 85-89, 78, Exs. 87-91, 80 (ASTM forms with alleged assignment language); M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 173:10–181:12) (admitting that there is nowhere on the alleged copyright assignment for a member to check a box, sign her name, or otherwise indicate that | Disputed.  ASTM's online membership forms require the member to assent to the assignment of any copyrights.  *See* Def. Ex. 149.  ASTM's hard copy membership forms contain numerous spaces where a member can sign her name. *See, e.g.,* Def. Ex. 87 (showing examples of members filling in their names and/or signing their names). | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| she understands and assents to transfer her copyright to ASTM, and admitting that ASTM does not know if a member who completes the form has read the assignment clause or assents to transfer her copyright to ASTM). | | |
| 162. Through at least 2008, NFPA used copyright release language for the creators of the NFPA standards at issue that referred to a grant of non-exclusive rights. M. Becker Decl. ¶¶ 52–71, 73–74, Ex. 54–76; Ex. 129. | Disputed as incomplete and **not relevant to the 2011 NEC and 2014 NEC at issue here.** The copyright release language stated: "I hereby grant the NFPA the nonexclusive, royalty-free rights, including nonexclusive, royalty –free rights in copyright, in this proposal, and I understand that I acquire no rights in any publication of NFPA in which this proposal in this or another similar or analogous form is used." *See, e.g.*, Becker Decl. Ex. 54. | Relevant because the 2011 and NEC and 2014 NEC incorporate significant portions of the 2008 NEC. |
| 163. For example, an NFPA document soliciting proposed text for the 2011 edition of the National Electrical Code, includes the following text:<br><br>I hereby grant the NFPA the *non-exclusive*, royalty-free rights, including *non-exclusive*, royalty-free rights in copyright, in this proposal and I understand that I acquire no rights in any publication of NFPA in which this proposal, in this or another similar or analogous form, is used.   M. Becker Decl. ¶ 127, Ex. 129 (emphasis added). | Undisputed | |
| 164.  NFPA did not exercise | Disputed to the extent it | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| control over the process by which people submitted proposals. NFPA's Rule 30(b)(6) corporate representative Christian Dubay, stated that "in past history over the years . . . there's many different versions of our forms and ways of submission." M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 134:21– 134:24.) NFPA would accept retyped versions of the forms that people used when contributing text to a standard draft. M. Becker Decl. ¶ 61, Ex. 63; M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 146:06–146:14). NFPA allowed volunteers to use any existing standard draft contribution form in place of the form that NFPA designated for use for the particular standard. M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 146:06–146:14). | characterizes the existence of different versions of the forms as lacking control. Defendant does not cite to evidence showing material differences between these forms. | |
| 165.  NFPA's current online public comment portal includes the following language under the "Copyright Assignment and Signature" page: "I understand and intend that I acquire no rights, including rights as a joint author, in any publication of the NFPA in which this Public Comment in this or another similar or derivative form is used."  M. Becker Decl. ¶ 152,  Ex. 154 at 10.  In earlier copyright releases, NFPA used similar language that would also effectively bar joint ownership: "I understand that I acquire no rights in any publication of NFPA in which this comment in this or another similar or analogous form | Undisputed | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| is used." M. Becker Decl. ¶ 71, Ex. 73.  ASHRAE uses almost identical language in its copyright releases: "I understand that I acquire no rights in publication of such documents in which my contributions or other similar analogous form are used." M. Becker Decl. ¶  #,  Ex. 48 [Ex. 1155]. | | |
| 166.  Federal government employees authored parts of the standards at issue.  M. Becker Decl. ¶ 20, Ex. 20 at 1; ¶ 21, Ex. 23 at 9. | **Objection to Plaintiff's reliance on Ex. 20.  It is hearsay.**<br><br>Disputed.  This statement is entirely unsupported by the cited documents.  Defendant has presented no evidence that federal government employees drafted any language that appears in any of the standards at issue. | Plaintiffs presented Mr. Malamud with this document at his deposition and questioned him about it. If called at trial, Mr. Malamud could verify the statements within. The document is capable of admission at trial. Fed. R. Civ. P. 56(c)(2). |
| 167. Employees of third party companies, organizations, or government entities authored parts of the standards at issue in their capacity as employees of those third party companies, organizations, or government entities.  M. Becker Decl. ¶ 2, Ex. 4 (Bliss Dep. 163:04–164:19). | Disputed to the extent it implies that all employees of any company, organization or government entity participate in Plaintiffs' standard development processes in their capacity as employees of those entities. Disputed to the extent it implies than any employees of government entities authored any parts of the standards at issue.  Defendant has presented no evidence to support these assertions. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 168. Plaintiffs have no procedures to ensure that employees of third party companies, organizations, or government entities are capable of transferring any copyright in the standards at issue to the plaintiffs, and that such copyright is not instead held by the employer. Plaintiffs do not have any procedures in place to ensure that government and private company employees who participate in the development of standards have the authority or ability to transfer copyright to the plaintiff orgs, and plaintiffs did not request assignments from the employers of individuals who authored components of the standards. M. Becker Decl. ¶ 11, Ex. 13 (Smith Dep. 46:12–49:235); (Smith Dep. 166:17–170:19); M. Becker Decl. ¶ 72, Ex. 74; M. Becker Decl. ¶ 4, Ex. 6 (Dubay Dep. 220:15–220:25) ("NFPA verifies through our policy the submission from the individual.  We do not go to their companies to verify authority of their signature."); M. Becker Decl. ¶ 10, Ex. 12 (Reiniche Dep. 92:13–93:07). | Disputed.  NFPA and ASHRAE's assignment forms require the person signing to warrant that he/she has the authority to enter into the assignment.  Pauley Decl. ¶ 31, Ex. B (NFPA assignment forms state: I hereby warrant that … I have full power and authority to enter into this assignment."); Def. SUMF ¶ 144 (ASHRAE forms state: "I hereby attest that I have the authority and I am empowered to grant this copyright release."). Disputed to the extent it implies that Plaintiffs have an affirmative obligation to ensure that individuals who sign assignment forms are authorized to sign such forms.<br><br>Plaintiffs also have intellectual property policies and registration forms that are widely available and distributed.  *See, e.g.,* Def. Ex. 79.  To the extent employers direct any employees to participate in the SDO process, they are or should be aware of the conditions under which all individuals participate, including the requirement that they assign any copyright interest that they may have to the SDO. | |
| 169. Public Resource voluntarily applies notices to the incorporated standards at issue on its website describing the process it uses to | Disputed.  The cited exhibit shows application of a notice on the HTML version of a standard that it posted online | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| copy standards and disclaiming affiliation with any SDOs. C. Malamud Decl. ¶ 30, Ex. 3. | in 2015 and is not at issue. Defendant presented no evidence that it applied this notice on any PDF or HTML version of a standard at issue when it posted it in 2012.  As of February 2015, the HTML versions of the standards at issue in this litigation do not include this language. *See* Ex. 29 to Rubel declaration (showing HTML version of ASTM standard D86-07 posted on Defendant's website). | |
| 170. Each of the incorporated laws at issue has a title that contains one of the Plaintiffs' names.   Compl. Exs. A–C, ECF No. 1. | Disputed to the extent it states that Plaintiffs' standards are laws. | |
| 171. Public Resource displays links to standards incorporated by reference into the Code of Federal Regulations in a table that identifies the standards by their alphanumeric code, e.g., ASTM D396-98, its year, the developing organization, the title of the standard, and the C.F.R. section that incorporated the standard by reference. The table explains that "In order to promote public education and public safety, equal justice for all, a better informed citizenry, the rule of law, world trade and world peace, this legal document is hereby made available on a noncommercial basis, as it is the right of all humans to know and speak the laws that govern them."  C. Malamud Decl. ¶ 28, Ex. 2. | **Objection.  Defendant's webpage is hearsay if it is offered to prove the truth of any of the matters asserted therein.**<br><br>To the extent the webpage is offered solely to show what a visitor to the website would view at that time, Plaintiffs have no objection.<br><br>Undisputed | Plaintiffs questioned Mr. Malamud at length at deposition about the contents of the Public Resource websites. Mr. Malamud can and would testify to the contents of the websites at trial. The websites are fully capable of being admitted at trial. Fed. R. Civ. P. 56(c)(2). |
| 172. ASTM itself states that the | Disputed to the extent it | The quoted statement is |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| citation format for this standard is: "ASTM D396-98, Standard Specification for Fuel Oils, ASTM International, West Conshohocken, PA, 2001, www.astm.org." M. Becker Decl. ¶ 145, Ex. 147. | implies that Defendant is merely citing the ASTM standards.<br><br>**Objection to Exhibit 147 as hearsay and lacking foundation/personal knowledge.** | admissible as a party admission. ASTM has personal knowledge of statements made on its website. |
| 173.  Public Resource purchased a physical copy of each of the incorporated laws at issue.  C. Malamud Decl. ¶ 24. | Disputed to the extent it states that Plaintiffs' standards are laws. | |
| 174. Public Resource posted on its website a PDF version of each incorporated law at issue. The PDF version accurately appeared as a scan of a physical version of the incorporated law.  C. Malamud Decl. ¶ 24. | Disputed.  Defendant added a cover page to the PDF versions of Plaintiffs' standards. Pls. SUMF ¶¶ 183-84.  Defendant also admits that it made errors in creating the PDF versions of Plaintiffs' standards, including skipping pages and scanning pages upside down. Pls. SUMF ¶ 214, 216. Disputed to the extent it states that Plaintiffs' standards are laws. | |
| 175. For some of the incorporated laws at issue, Public Resource posted versions in HTML and SVG formats.   C. Malamud Decl. ¶ 25–26. | Disputed to the extent it states that Plaintiffs' standards are laws. | |
| 176. For some of the PDF versions of the incorporated laws, Public Resource attached its own cover page, which indicated where the law was incorporated by reference. C. Malamud Decl. ¶ 20–22; Compl. Ex. G, ECF No. 1-7. | Disputed.  Disputed to the extent it states that Plaintiffs' standards are themselves laws.  Defendant presented no evidence that it added a cover page to only some, rather than all, of the PDF versions of Plaintiffs' standards.  *See* Pls. SUMF ¶¶ 183-84 | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 177. Public Resource's addition of embedded text and metadata in the PDF versions of incorporated laws on its website did not change the appearance of the PDF versions. C. Malamud Decl. ¶ 25. | Disputed to the extent it states that Plaintiffs' standards are themselves laws. Otherwise, undisputed. | |
| 178. The embedded text in the PDF versions of incorporated laws on Public Resource's website enabled software based searching and text to speech functionality. C. Malamud Decl. ¶ 25. | Disputed to the extent it states that Plaintiffs' standards are themselves laws.  Disputed to the extent it implies any individual who accessed the PDF versions actually performed software based searching and/or used text to speech functions. Disputed to the extent it implies that individual who used text to speech functions would consider the versions of Plaintiffs' standards on Defendant's website to be accessible. *See* Pls. Suppl. SUMF ¶ 5 (Fruchterman Dep. 256:12-259:6). | |
| 179. The 2011 edition of the National Electric Code ("NEC") spans 886 pages. C. Malamud Decl. ¶ 34. | Undisputed | |
| 180.  Public Resource purchased a physical copy of the 2011 NEC, which did not include a requirement that high-voltage cables be shielded. Public Resource posted an electronic version of that physical copy on its website in PDF and HTML formats.  C. Malamud Decl. ¶ 34. | Disputed to the extent it suggests that Defendant acted reasonably in posting a version of the 2011 NEC with these errors. The errata in question was issued by NFPA and posted on NFPA's website in April 2011, more than a year before Defendant posted the 2011 NEC on its website. | |
| 181. NFPA issued two errata to the | Undisputed | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 2011 NEC.  The errata included the addition of a requirement that high-voltage cables be shielded as well as changes to cross-references in various sections.   M. Becker Decl. Exs. 123–24. | | |
| 182. Public Resource promptly corrected the errors to certain HTML versions of incorporated laws that Plaintiffs' counsel identified during the course of the deposition of Carl Malamud.  C. Malamud Decl. ¶ 33. | Disputed.  *See* Pls.  SUMF ¶ 218. | |
| 183. It is in the public interest for people to be educated about the NFPA standards.  . Becker Decl. ¶2, Ex. 4 (Bliss Dep. 121:22–122:4) ("NFPA's standards establish ways to make buildings safer and processes to be safer and for people to act or react in a more safe manner when it comes to fire, electrical safety and other hazards. It's in the public interest that people be educated about those requirements or those standards."). | Disputed to the extent Defendant characterizes Mr. Bliss's testimony as a legal conclusion.  The NFPA and its standard development work more broadly serves the public interest.  Pls. SUMF ¶ 95. | |
| 184. It is in the public interest for people to use the ASTM standards. M. Becker Decl. ¶ 20, Ex. 22 ("For more than 100 years, ASTM has served society by providing a global forum for the development and publication of voluntary consensus standards for materials, products, systems, and services that are utilized by ninety industrial sectors in the United States and in most geographic regions of the world."). | Undisputed | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 185. Public.Resource.org seeks to inform the public about the content of the law.  M. Becker Decl. ¶15, Ex. 17 (C. Malamud Ex. 33) (Public Resource "tries to put more government information online. We've had a big impact on putting more judicial information on the Internet, but also do fiche and a variety of other documents such as IRS nonprofit tax returns."). | Disputed to the extent it implies that Plaintiffs' standards are themselves laws. | |
| 186. M. Becker Decl. ¶16, Ex. 18 (C. Malamud Ex. 38) ("In order to promote public education and public safety, equal justice for all, a better informed citizenry, the rule of law work trade and world peace, this legal document is hereby made available on a noncommercial basis, as it is the right of all human to know and speak the laws that govern them."); ¶ 17, Ex. 19 (C. Malamud Ex. 57); ¶ 18, Ex. 20 (C. Malamud Ex. 58) (appeal to donors describing mission). | This is not a statement of fact. | |

| Defendant's Statement of Fact | Plaintiffs' Response | Defendant's Reply |
|---|---|---|
| 187. In 2002, Plaintiffs NFPA and ASHRAE argued that a lack of private monopoly to control the reproduction of mandatory building codes would "destroy" the "ability of private standards developers to underwrite the development and updating of their standards."<br><br>M. Becker Decl. ¶ 119, Ex. 121 (Brief of American Medical Assoc. et al. as Amici Curiae at 12, *Veeck v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002) (No. 99-40632)). | Disputed to the extent it suggests that NFPA and ASHRAE described copyright protection as a "private monopoly to control the reproduction" of materials.<br><br>**Objection to Exhibit 121 as hearsay and lacking foundation/personal knowledge.** | The brief is admissible as the admissions of a party. As the quoted statements are statements of NFPA's and ASHRAE's opinion, they require no further foundation. Public Resource does not cite the brief for the truth of its assertions but to show NFPA and ASHRAE's stated opinions. |

Dated: February 4, 2016                    Respectfully submitted,


                                           */s/   Andrew P. Bridges*
                                           Andrew P. Bridges (admitted)
                                           abridges@fenwick.com
                                           Sebastian E. Kaplan (*pro hac vice* pending)
                                           skaplan@fenwick.com
                                           Matthew Becker (admitted)
                                           mbecker@fenwick.com
                                           FENWICK & WEST LLP
                                           555 California Street, 12th Floor
                                           San Francisco, CA 94104
                                           Telephone:    (415) 875-2300
                                           Facsimile:    (415) 281-1350

                                           Corynne McSherry (admitted *pro hac vice*)
                                           corynne@eff.org
                                           Mitchell L. Stoltz (D.C. Bar No. 978149)
                                           mitch@eff.org
                                           ELECTRONIC FRONTIER FOUNDATION
                                           815 Eddy Street
                                           San Francisco, CA 94109
                                           Telephone:    (415) 436-9333
                                           Facsimile:    (415) 436-9993

                                           David Halperin (D.C. Bar No. 426078)
                                           davidhalperindc@gmail.com
                                           1530 P Street NW
                                           Washington, DC 20005
                                           Telephone: (202) 905-3434

                                           *Attorneys for Defendant-Counterclaimant*
                                           Public.Resource.Org, Inc.