# EXHIBIT 1

```
 1              UNITED STATES DISTRICT COURT
 2             FOR THE DISTRICT OF COLUMBIA
 3
       AMERICAN SOCIETY FOR    : NO.
 4     TESTING AND MATERIALS   : 1:13-cv-01215-TSC-
 5     d/b/a ASTM              : DAR
 6     INTERNATIONAL;          :
 7     NATIONAL FIRE           :
       PROTECTION              :
 8     ASSOCIATION, INC.;      :
 9     and AMERICAN SOCIETY    :
10     OF HEATING,             :
11     REFRIGERATION, AND      :
12     AIR CONDITIONING        :
13     ENGINEERS,              :
       Plaintiffs              :
14          vs.                :
       PUBLIC.RESOURCE.ORG,    :
15     INC.,                   :
16     Defendant               :
17
              Videotaped deposition of JOHN C.
18     JAROSZ taken at the law offices of Veritext
19     Legal Solutions, 1250 I Street NW,
20     Washington, DC, commencing at 10:09 a.m.
21     THURSDAY, AUGUST 27, 2015, before Debbie
22     Leonard, Registered Diplomate Reporter,
23     Certified Realtime Reporter.
24
25     PAGES 1 - 260
```

Page 1

Page 238

1    a quantitative estimate.  I think that
2    there -- with reasonable probability I
3    can draw this conclusion, but I can't
4    be any more precise than that.
5  BY MR. BRIDGES:
6      Q.   What do you mean, "with
7  reasonable probability"?
8      A.   Based on the information that I
9  have and the training and logic I bring to
10 it, I think there is a -- I say with some
11 confidence what I have said here.
12     Q.   And when you say "likely," do
13 you mean more than 50 percent likely?
14     A.   Not necessarily, no.
15     Q.   Are you aware of other
16 standards development organizations active in
17 the same field as the plaintiffs?
18         MR. FEE:  Objection.  Vague.
19     Form.
20         THE WITNESS:  Perhaps you could
21     tell me what you have in mind with
22     your use of the term "fields."
23 BY MR. BRIDGES:
24     Q.   Well, are you familiar with
25 AHRI?

Page 239

1      A.   I have perhaps seen reference
2  to that.
3      Q.   Do you know with which of these
4  plaintiffs it -- do you -- do you know what
5  field it's in?
6      A.   I don't recall, sitting here
7  right now, no.
8      Q.   Are you familiar with NFRC?
9      A.   I may have seen reference to
10 that acronym.
11     Q.   Do you know what field it's in?
12     A.   Not sitting here right now.
13     Q.   Are you familiar with ICC?
14     A.   I have seen reference to that.
15 I don't recall what it is, sitting here now.
16     Q.   Do you know whether other
17 standards developments organizations would be
18 in a position to step forward and to continue
19 the maintenance and preservation and further
20 development of the standards of plaintiffs
21 here if plaintiffs lose this case?
22         MR. FEE:  Objection to form.
23         THE WITNESS:  I don't know.
24 BY MR. BRIDGES:
25     Q.   Have you done any investigation

Page 240

1  to see what alternatives there are among
2  standards development organizations currently
3  in existence to carry forward the work of
4  plaintiffs if plaintiffs chose to stop
5  standards development as a result of the loss
6  of this case?
7          MR. FEE:  Same objection.
8          THE WITNESS:  Not that I
9      recall, but I am of the understanding
10     that each SDO has a different charter,
11     so I don't know that any SDO has an
12     identical charter to that of any of
13     the three plaintiffs.
14 BY MR. BRIDGES:
15     Q.   Are you aware that these
16 plaintiffs compete with other SDOs in the
17 creation of standards in particular fields?
18         MR. FEE:  Objection to form.
19     Vague.
20         THE WITNESS:  What do you mean
21     by the term "compete with" in this
22     context?
23 BY MR. BRIDGES:
24     Q.   That they consider others
25 rivals for the same market, in part.

Page 241

1          MR. FEE:  Objection to form.
2      Vague.
3          THE WITNESS:  I don't recall
4      seeing reference to that, but my
5      memory is not perfect.
6  BY MR. BRIDGES:
7      Q.   The -- in paragraph 131, you
8  say, "Simply put, freely-distributed,
9  unrestricted versions of Plaintiffs'
10 standards that are or could be incorporated
11 by reference can be expected to adversely
12 impact the market for Plaintiffs' standards
13 that are incorporated by reference and to
14 displace sales of these standards by the
15 Plaintiffs - which can be expected to have a
16 material adverse effect on Plaintiffs'
17 revenues."
18         Do you see that?
19     A.   Yes.
20     Q.   By "expected," do you mean more
21 than 50 percent likely?
22     A.   Not necessarily.  I don't have
23 a quantitative assessment of what I mean by
24 "expected."
25     Q.   Do you mean more than 5 percent

```
 1  likely?
 2      A.  I haven't quantified that, but
 3  I would expect that it's -- more than
 4  5 percent would be a reasonable definition of
 5  "expected."
 6      Q.  More than 10 percent?
 7      A.  I don't know.  I've not
 8  quantified that number.
 9      Q.  And what amount of an effect on
10  plaintiffs' revenues have you identified as
11  "material"?
12      A.  I haven't --
13          MR. FEE:  Objection to form.
14          THE WITNESS:  -- been able to
15      quantify the specific effects, so I
16      don't know the amount.
17  BY MR. BRIDGES:
18      Q.  Well, what -- I'm not asking
19  for your quantification of a specific effect,
20  but how large would an effect have to be for
21  to you consider it "a material adverse effect
22  on Plaintiffs' remedies"?
23          MR. FEE:  Objection to form.
24          THE WITNESS:  I don't know that
25      I have a particular quantitative
```
Page 242

```
 1      guideline in mind.
 2  BY MR. BRIDGES:
 3      Q.  Have you ever -- are you
 4  familiar with audit inquiry letters regarding
 5  litigation?
 6      A.  Generally, yes.
 7      Q.  And you're familiar with the
 8  fact that auditors will often specify to
 9  those they send the letters to what amounts
10  would be material for purposes of the audit
11  response?
12      A.  Yes.
13      Q.  So you understand the concept
14  of certain amounts being material to certain
15  companies or entities?
16      A.  Yes, for certain purposes.
17      Q.  So I'd like to know what amount
18  you have identified as being material as an
19  adverse effect on plaintiffs' revenues for
20  each of the three plaintiffs, please.
21          MR. FEE: Objection. Compound.
22      Asked and answered.
23          THE WITNESS:  I have not
24      considered a particular amount.
25  BY MR. BRIDGES:
```
Page 243

```
 1      Q.  Do you consider $100,000 to be
 2  material as an adverse effect on plaintiffs'
 3  revenues?
 4          MR. FEE:  Objection to form.
 5      Compound.
 6          THE WITNESS:  I haven't
 7      considered that question.  I don't
 8      know the answer to it.
 9  BY MR. BRIDGES:
10      Q.  Have you considered whether
11  50,000 is a material amount as an adverse
12  effect on plaintiffs' revenues?
13          MR. FEE:  Same objections.
14          THE WITNESS:  Same answer.
15  BY MR. BRIDGES:
16      Q.  Starting at page -- sorry.
17  Strike that.
18          Starting at paragraph 139, you
19  make several references to Mr. Malamud's
20  theory.
21      A.  I'm sorry.  To -- I missed a
22  word that you said.  References to his what?
23      Q.  To Mr. Malamud's theory --
24      A.  Okay.
25      Q.  -- T-H-E-O-R-Y.  You refer to
```
Page 244

```
 1  it in paragraph 139; 140; 144, with the word
 2  "theorized"; 145, "theory"; 146, "theory."
 3          What facts do you have that
 4  have disproved the theory in paragraph 139?
 5      A.  Perhaps most important is the
 6  revealed preference information.  If the
 7  plaintiffs believed they were better off by
 8  lack of copyright protection, they would have
 9  pursued such a model.
10          They don't believe they're
11  better off.  Moreover, they're expending
12  tremendous resources in bringing and pursuing
13  this litigation to halt the activity at
14  issue.
15      Q.  What other facts, if any, do
16  you have that have disproved Mr. Malamud's
17  theory in paragraph 139?
18      A.  That's what comes to mind right
19  now.
20      Q.  What facts do you have or are
21  you aware of that have disproved
22  Mr. Malamud's theory as you refer to it in
23  paragraph 140?
24      A.  That's the same theory that's
25  being referenced in 139, so there's nothing
```
Page 245

```
 1   not thought about that particular
 2   topic.
 3       MR. BRIDGES: Okay. I think
 4   we'll pause here and reserve the rest
 5   of the time for a later visit with
 6   you, Mr. Jarosz.
 7       Kevin, this is in reliance on
 8   an exchange of correspondence between
 9   Matt and you, I believe. If, for some
10   reason -- well, no. I think that's
11   all.
12       Anything else?
13       MR. FEE: Well, I don't have
14   any questions.
15       Do you guys have any questions?
16       MR. REHN: Not at this time.
17       MR. CUNNINGHAM: No.
18       MR. BRIDGES: Great. Thank
19   you.
20       THE WITNESS: Thank you.
21       THE VIDEOGRAPHER: All right.
22   Off the record at 4:31. This ends
23   media unit number 3 and ends testimony
24   for August 27th, 2015.
25           * * *
```
Page 258

```
 1       (Witness excused.)
 2           * * *
 3       (Off the record at 4:31 p.m.)
 4           * * *
```
Page 259

```
 1                CERTIFICATE
 2
       I do hereby certify that I am a Notary
 3   Public in good standing, that the aforesaid
     testimony was taken before me, pursuant to
 4   notice, at the time and place indicated; that
     said deponent was by me duly sworn to tell
 5   the truth, the whole truth, and nothing but
     the truth; that the testimony of said
 6   deponent was correctly recorded in machine
     shorthand by me and thereafter transcribed
 7   under my supervision with computer-aided
     transcription; that the deposition is a true
 8   and correct record of the testimony given by
     the witness; and that I am neither of counsel
 9   nor kin to any party in said action, nor
     interested in the outcome thereof.
10
       WITNESS my hand and official seal this
11   11th day of September, 2015.
12
13
14
         <%signature%>
15       Debbie Leonard, RDR, CRR
         Notary Public
```
Page 260

66 (Pages 258 - 260)

Veritext Legal Solutions
866 299-5127