# EXHIBIT 5

Do Not Remove
From Record Room

*EN BANC*

No. 99-40632

# 99-40632

PERMANENT

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**PETER VEECK, doing business as RegionalWeb,**

Appellant,

v.

**SOUTHERN BUILDING CODE CONGRESS INTERNATIONAL INC.,**

Appellee.

**Appeal from the United States District Court
For the Eastern District of Texas
Honorable David Folsom**

**BRIEF OF *AMICUS CURIAE* STATES OF OHIO AND
TEN OTHER STATES AND TERRITORIES SUPPORTING
APPELLANT VEECK UPON REHEARING EN BANC**

U.S. COURT OF APPEALS
**FILED**

NOV 1 3 2001

CHARLES R. FULBRUGE III
CLERK

BETTY D. MONTGOMERY
Attorney General of Ohio

ELISE W. PORTER
MARTIN D. SUSEC
Assistant Attorneys General
Chief Counsel's Staff
30 East Broad Street, 17th Fl.
Columbus, OH  43215-3428
(614) 466-2872
(614) 728-7592 FAX
Attorneys for *Amici* States

# LIST OF ATTORNEYS GENERAL SIGNING ON TO THIS BRIEF

BRUCE M. BOTELHO
Attorney General
State of Alaska

ROBERT A. BUTTERWORTH
Attorney General
State of Florida

CARLA J. STOVALL
Attorney General
State of Kansas

MIKE HATCH
Attorney General
State of Minnesota

MIKE MCGRATH
Attorney General
State of Montana

ANABELLE RODRIGUEZ
Attorney General
Commonwealth of Puerto Rico

PAUL SUMMERS
Attorney General
State of Tennessee

JOHN CORNYN
Attorney General
State of Texas

MARK SHURTLEFF
Attorney General
State of Utah

DARRELL V. MCGRAW, JR.
Attorney General
State of West Virginia

## STATEMENT REGARDING ORAL ARGUMENT

*Amici* State of Ohio and ten other States and territories have moved the Court for 10 additional minutes of argument time. In the alternative, the States have requested to share 10 minutes of the time already reserved for the parties. The *amici* States have not received any opposition to this request.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ................................. i

TABLE OF AUTHORITIES ............................................................ iv

INTEREST OF THE AMICI ............................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................... 2

STATEMENT OF THE FACTS AND OF THE CASE .......................... 7

LAW AND ARGUMENT .............................................................. 10

    A.    The Dictates of Due Process Are Inconsistent With a Private Party Holding a Copyright in the Text of a Law. .... 10

        1. Due Process Requires That the Text of the Law be Freely Available to All Citizens. ..................................................... 10

        2. The Complete Monopoly of Access Makes a Copyright in the Text of a Law Incompatible with Due Process. ............ 14

        3. The Primary Purpose of Copyright Law is not to Provide a Benefit to Authors, But to Provide the Public With Access to Authors' Works. ................................................ 16

        4. The Constitutional Due Process Rights of Citizens Far Outweigh any Public Interests in Copyright. ..................... 18

    B.    A Long-Standing Body of Case Law Supports the Incompatibility of Copyright In, and Access To, the Text of the Law. ...................................................................... 20

        1. The Supreme Court and Other Courts Have Consistently Held that There Can Be No Copyright in the Text of Judicial and Statutory Law. ............................. 20

**Page**

2. The Text of the Law is Public Because of its Nature as the Law, Not Because of the Nature or Employment of the Author.................................................................... 24

3. Cases Cited by SBCCI Are Easily Distinguishable and To the Extent They Are Not, Should Be Disregarded......... 27

C. SBCCI and Similar Organizations Have Waived any Copyright by Actively Lobbying Government to Adopt Their Codes................................................................... 31

CONCLUSION ............................................................................ 32

CERTIFICATE OF SERVICE........................................................ 33

CERTIFICATE OF COMPLIANCE ................................................ 35

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Anderson National Bank v. Luckett,*
 321 U.S. 233 (1944)................................................................ 12

*Banks v. Manchester,*
 128 U.S. 244 (1888)....................................................... 4, 21, 24

*Building Officials Code Adm. v. Code Technology, Inc.,*
 628 F.2d 730 (1st Cir. 1980)............................................... passim

*Callaghan v. Myers,*
 128 U.S. 547 (1888)..................................................... 4, 5, 21, 24

*CCC Information Services, Inc. v.*
 *Maclean Hunter Market Reports,*
 44 F.3d 61 (2nd Cir. 1994) ................................................. passim

*Chicago v. Morales,*
 527 U.S. 41 (1999)................................................................. 11

*Chrysler Corp. v. Brown,*
 441 U.S. 281 (1979)............................................................... 12

*Connecticut v. Gould,*
 34 F. 319 (N.D. N.Y. 1888)............................................... 22, 24

*County of Suffolk New York v.*
 *First American Real Estate Solutions,*
 261 F. 179, 2001 U.S. App. LEXIS 16706 (2nd Cir. 2001) 5, 25, 29

*Davidson v. Wheelock,*
 27 F. 61 (D. Minn. 1866) ........................................................ 21

*Du Puy v. Post Telegram Co.,*
 210 F. 883 (3rd Cir. 1914) ...................................................... 25

**Pages**

*Feist Publications, Inc. v. Rural Telephone Service, Co.,*
   499 U.S. 340 (1991)................................................................ 26

*Fox Film Corp. v. Doyal,*
   286 U.S. 123 (1932)...................................................... 2, 14, 17

*Gen. Elec. v. EPA,*
   53 F.3d 1324 (D.C. Cir 1995)...................................... 11

*Giaccio v. Pennsylvania,*
   382 U.S. 399 (1966)........................................... 10, 11

*Gould v. Banks,*
   53 Conn. 415 (1886)................................................ 22

*Hildreth v. Iowa Dep't of Human Servs.,*
   550 N.W.2d 157 (Iowa 1996).................................... 12

*Howell v. Miller,*
   91 F. 129 (6th Cir. 1898) ........................................ 22

*Lambert v. California,*
   355 U.S. 225 (1957).............................................. 13

*McBoyle v. United States,*
   283 U.S. 25 (1931)............................................... 11

*Nash v. Lathrop,*
   142 Mass. 29 (1886) ............................................. 22

*North Laramie Land Co. v. Hoffman,*
   268 U.S. 276 (1925).............................................. 12

*Practice Management Information Corporation v.*
*American Medical Association,*
   121 F.3d 516 (9th Cir. 1997) ....................... 6, 28, 30, 31

**Pages**

*Schnapper Public Affairs Press v. Foley,*
667 F.2d 102 (D.C. Cir. 1981)......................................25

*Sims v. Heckler,*
725 F.2d 1143 (7th Cir.1984) .....................................12

*Sony Corp. of America v. Universal City Studios, Inc.,*
464 U.S. 417 (1984).......................................... 16, 17

*Texaco, Inc. v. Short,*
454 U.S. 516 (1982)................................................ 12

*Twentieth Century Music Corp. v. Aiken,*
422 U.S. 151 (1975)................................................ 17

*United States v. Jefferson County Board of Education,*
380 F.2d 385 (5th Cir. 1967) .................................3, 15

*United States v. One 1973 Rolls Royce,*
43 F.3d 794 (3d Cir. 1994)...................................... 11

*United States v. Paramount Pictures, Inc.,*
334 U.S. 131 (1948)............................................4, 17

*Wheaton v. Peters,*
33 U.S. (8 Peters) 591 (1834) ...............................4, 20

**Other Authorities**

1 *Nimmer on Copyright*, Mathew Bender & Company, Inc.,
§ 5.06[C] ..................................................... 18, 19, 28

Anna, Tex., Ordinance No. 95-15 (Oct. 10, 1995) ...........................7

§ 206.1 Compendium of Copyright Office Practices,
Copyright Office (1984) ............................................ 16

**Pages**

H.R. Rep. No 2222, 60th Cong. 2d Sess., 7 (1909) .......................... 17

Perritt, Sources and Rights to Access Public Information,
   4 *Wm & Mary Bill of Rts. J.* 179 (1995) ...................................... 26

Suetonius, *The Lives of the Twelve Caesars,*
   192 Random House, 1959. .................................................. 3, 16

U.S. Const. Art. I, § 8 .................................................................. 16

## INTEREST OF THE AMICI

*Amici* State of Ohio and ten other States and Territories have a vital interest in the principles at stake in this case. Governments have an imperative obligation to make laws openly available to the public. Governments regulate their citizens through administrative and municipal law in a myriad of areas. Such laws can include both civil and criminal penalties. The *amici* States, through their legislative and administrative systems, have incorporated into law model codes such as the one at issue here. Because administrative regulations have "the force and effect of law," States and local governments have a duty under the Due Process Clause of the United States Constitution—as well as under provisions in their own public records laws and state constitutions—to provide the public unimpeded access to the text of those regulations.

In addition, the States' unique perspective is particularly important in this case, as the parties to this case are both private entities. The outcome of this case will substantially affect the ability of the States to provide unfettered access to their laws. The *amici* States therefore submit this brief to help the Court in understanding the viewpoint of State and local governments, and to

urge the Court to reverse the district court's judgment and hold that no entity, public or private, can hold a copyright in the text of the law.

## INTRODUCTION AND SUMMARY OF ARGUMENT

One of the cornerstones of due process is notice—a citizen must be aware of what the law is before he can be deprived of life, liberty or property for failing to follow it.  A statute, administrative rule or municipal ordinance—like any other law—has the potential to deprive a citizen of a liberty or property right, so the law must be sufficiently clear to give the citizen reasonable notice of what is required or prohibited.

In contrast, one of the cornerstones of the copyright law is that the holder of a copyright "has the right to refuse to publish the copyrighted material at all and may prevent anyone else from doing so, thereby preventing any public access to the material." *Fox Film Corp. v. Doyal*, 286 U.S. 123 (1932).

The complete monopoly in the author of copyright works is incompatible with the due process requirements inherent in the text of a law.  If the right to withhold access to a law is exercised, citizens risk being punished for failure to follow an unavailable law

and the government is unable to discharge its duty towards those citizens to make the law available.

In this case, the Appellee, is a not-for-profit service organization, Southern Building Code Congress International, Inc. ("SBCCI"), whose voting members are local governments. SBCCI successfully lobbied the towns of Savoy and Anna, Texas, to use its model building codes as the building codes for those municipalities. Appellant Peter Veeck wants to post local laws, including the building codes of Anna and Savoy, on his website but SBCCI has insisted that it has a copyright and thus a strict monopoly on copies of the text of the building codes.

Thus, like Caligula's tax laws, Anna and Savoy's building codes are, at best, "posted up, but in a very narrow place and in excessively small letters, to prevent the making of a copy." *United States v. Jefferson County Board of Education*, 380 F.2d 385, 410-11 (5th Cir. 1967), citing Suetonius, *The Lives of the Twelve Caesars*, 192 Random House, 1959.

But the scope of a copyright owner's right is not unlimited. Indeed, the private reward to the owner of a copyright is "a secondary consideration" to the ultimate aim of the copyright law—

the public benefit.   *United States v. Paramount Pictures, Inc.,* 334 U.S. 131, 158 (1948).

The panel majority incorrectly found that due process rights of citizens in the text of the law are outweighed by SBCCI's copyright interest.   Notwithstanding the opinion of the panel majority, the *amici* States contend that the rights of a copyright owner can never outweigh the due process rights of the citizens to freely read and copy the text of a law.   Copyright, while authorized by the Constitution, is essentially a statutory right.   On the other hand, due process is a constitutional right of the first order.

The incompatibility of copyright and due process in this context, and the idea that the law is in the public domain, is well-established in case law.   *See, e.g., Wheaton v. Peters,* 33 U.S. (8 Peters) 591 (1834); *Banks v. Manchester,* 128 U.S. 244 (1888); *Callaghan v. Myers,* 128 U.S. 547, 645 (1888).

In modern times, this reasoning has been followed by the First Circuit in *Building Officials Code Adm. v. Code Technology, Inc.,* 628 F.2d 730, 734-35 (1st Cir. 1980) ("*BOCA*").   The plaintiff in that case, another code-writing organization, claimed copyright protection in its model building code, which, like SBCCI, it encouraged

4

governments to adopt through a licensing program. The First Circuit was not persuaded by BOCA's reasoning that the law is public only when a public officer is its author.

The text of the law is public not because the public pays the salaries of the authors, but because of its nature as the law. *See Callaghan* (reporter may hold copyright in the title page, table of cases, headnotes, arguments of counsel and index, even though he was a public official, paid from the public treasury), 128 U.S. at 645-50.

The recent case *County of Suffolk New York v. First American Real Estate Solutions*, 261 F. 179, 2001 U.S. App. LEXIS 16706 (2nd Cir. 2001) supports this contention. The *Suffolk* court set forth a test for when a work may be deemed to be in the public domain:

> (1) whether the entity or individual who created the work needs an economic incentive to create or has a proprietary interest in creating the work and (2) whether the public needs notice of this particular work to have notice of the law.

Under the second prong of the *Suffolk* test, due process dictates that SBCCI cannot maintain its copyright. But even under the first prong, there is no need for an economic incentive. SBCCI's primary purpose is to create model codes and have them adopted by

government bodies, not to make money by selling books. Even more important, state and local governments have a duty to create building codes, regardless of the existence of SBCCI and its model code.

The cases cited by SBCCI are easily distinguishable, and to the extent that they are not, *amici* States submit that they are wrongly decided and should not be followed. Both *CCC Information Services, Inc v. Maclean Hunter Market Reports*, 44 F.3d 61 (2nd Cir. 1994); and *Practice Management Information Corporation v. American Medical Association*, 121 F.3d 516 (9th Cir. 1997), can be distinguished from this case and *BOCA* because in both cases, the work was produced by a private entity for a reason other than incorporation into the law. Economic incentives were needed to create the works in those cases, quite apart from their use as standards by the government.

Finally, SBCCI, BOCA and similar not-for-profit organizations have waived their copyright in the text of the law by actively lobbying State and local governments to adopt their model codes. SBCCI cannot have its cake and eat it too—if it lobbies a

6

government to adopt its codes as the text of the law, it has waived its copyright.

## STATEMENT OF THE FACTS AND OF THE CASE

Peter Veeck owns and operates a service, known as "RegionalWeb" which is physically located and operated in Denison, Grayson County, Texas.   R. 92, Plaintiff's Motion for Summary Judgment, p. 4.   Veeck's website provides free access to information by or about the area of Texas north of Dallas, including the area's codes and ordinances.   R. 92, Plaintiff's Motion for Summary Judgment, p. 4.   Two of the local codes published by Veeck on RegionalWeb included the Building Codes of Anna and Savoy, Texas.   R. 516, Plaintiff's First Amended Complaint ¶ III.

The Building Codes of Savoy and Anna, Texas include by reference the 1994 model building code promulgated by Southern Building Code Congress International, Inc. ("SBCCI").   Anna, Tex., Ordinance No. 95-15 (Oct. 10, 1995).   Deposition of SBCCI general counsel Brad Ware, p. 31, lines 18-24.   SBCCI is not-for-profit organization incorporated under the laws of the State of Alabama. R. 388, Affidavit of Brad Ware.   Although SBCCI is a private entity,

SBCCI is itself made up of governmental units or agencies.  Voting power for each "active member" is determined by the population the governmental unit or agency serves.  *See* www.SBCCI.org/membershipservices/mbvinfo.htm.  SBCCI's purpose is to promote and promulgate standards which safeguard life, health and public welfare for all types of buildings and constructions.  R. 388, Affidavit of Brad Ware.  In carrying out its purpose, SBCCl develops and maintains a set of model building codes known as the Standard Building Codes ("Codes").  R. 17, Answer ¶ 4.  These Codes include a Standard Building Code, a Standard Plumbing Code, a Standard Gas Code, and a Standard Fire Prevention Code.  R. 20, Answer ¶ 23.  With SBCCI's express permission, these Codes have been incorporated by reference within the building codes of many municipalities and States across the country.  R. 17, Answer ¶ 4.

SBCCI claims a copyright to these Codes, notwithstanding their incorporation into the building codes of many municipalities and States.  R. 17, Answer ¶ 4.  SBCCI claims that it has the *exclusive right to publish or license the reproduction and publication* of these Codes.  R. 17, Answer ¶ 4.

The 1994 model code, incorporated by reference into the municipal codes, was and is only available directly or indirectly through SBCCI in bookstores, through direct sales via telephone, over the Internet, or through SBCCI members. R. 17, Answer ¶ 25. Even copies of the 1994 model act maintained by the local government officials in Savoy, Texas are subject to SBCCI's copyright claims. R. 389, Affidavit of Brad Ware (stating that, "the codes are available for inspection and copying as needed. . . . SBCCI has routinely granted permission for copying of provisions of its code under the fair use doctrine and for non-republishing uses or non-general public distribution uses.").

SBCCI's exclusive control over its Codes generates millions of dollars in revenue from the public, who must obey the laws of the municipalities and States that have incorporated them. The Codes derive their value from their incorporation into the law, not from any other educational or entertainment value. People read them to know the laws they must follow. SBCCI seeks to protect the value that it derives from its exclusive control to the public's access these laws. R. 389, Affidavit of Brad Ware, p. 2.

Veeck filed the underlying declaratory judgment action to clarify the public's right to access municipal building codes that incorporate by reference SBCCI's Codes. SBBCI counterclaimed for copyright infringement.

Veeck argues that SBCCI, by allowing the use of its model codes by municipalities, allowed the codes to become part of the public domain and therefore not subject to copyright protection. Veeck expressed four grounds for finding lack of copyright protection: (1) due process and access to the law, (2) the fact/idea-expression merger, (3) misuse, and (4) waiver. SBCCI argues, in turn, that Veeck has violated the copyrights in its codes.

## LAW AND ARGUMENT

**A.   The Dictates of Due Process Are Inconsistent With a Private Party Holding a Copyright in the Text of a Law.**

**1.   Due Process Requires That the Text of the Law be Freely Available to All Citizens.**

One of the cornerstones of due process is notice—a citizen must be aware of what the law is before he can be deprived of life, liberty or property for failing to follow it. *Giaccio v. Pennsylvania,* 382 U.S. 399 (1966). Notice must be given before a criminal or

significant civil or administrative penalty is imposed.  *See, e.g.,*
*McBoyle v. United States,* 283 U.S. 25 (1931) (criminal sanction);
*United States v. One 1973 Rolls Royce,* 43 F.3d 794 (3rd Cir. 1994)
(civil forfeiture); *Gen. Elec. v. EPA,* 53 F.3d 1324 (D.C. Cir 1995)
(administratively assessed fine).

One of the basic purposes of due process is to protect the
citizen against having burdens imposed on him by the government
"except in accordance with the valid laws of the land." *Giaccio,* 382
U.S. at 403.   "Implicit in this constitutional safeguard is the
premise that the law must be one that carries an understandable
meaning . . . ." *Id.*

In modern jurisprudence, if a law as written or construed does
not give reasonable notice to individuals that their conduct is
illegal, such a law may be considered "void for vagueness." *Id.,*
*Chicago v. Morales,* 527 U.S. 41, 56 (1999).   The "void for
vagueness" doctrine, while normally reserved for criminal statutes,
is not constrained by "the simple label a State chooses to fasten" on
the law. *Giaccio,* 382 U.S. at 402.   "Both liberty and property are
specifically protected" by due process. *Id.*

Due process protections are not limited to statutes and judicial opinions, as administrative rules and municipal ordinances have "the force and effect of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979),[1] *Hildreth v. Iowa Dep't of Human Servs.*, 550 N.W.2d 157, 160 (Iowa 1996).

Therefore, a statute, administrative rule or municipal ordinance—like any other law—may deprive a citizen of a liberty or property right, and must be sufficiently clear to give the citizen reasonable notice of what is required or prohibited.

Normally, to afford citizens adequate notice of its terms, the government need merely "enact and publish the law." *Texaco, Inc. v. Short*, 454 U.S. 516, 531-538 (1982). The citizen is "charged with knowledge of relevant statutory provisions affecting the control or disposition" of the citizen's property. *Texaco*, 454 U.S. at 532. *See, also, North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283 (1925); *Anderson National Bank v. Luckett*, 321 U.S. 233, 243 (1944).

---

[1] However, to have such effect the rule must: "(1) affect individual rights and obligations, (2) have been promulgated in compliance with statutory procedures under a delegation of legislative authority, (3) not be arbitrary and capricious, and (4) be reasonably related to the purposes of the enabling legislation." *Sims v. Heckler*, 725 F.2d 1143 (7th Cir.1984).

However, if the text of the law is unavailable to the citizen, no notice at all has been given—it is the vaguest of vague laws, because the citizen cannot know its content, and may not even know of its existence. *See Lambert v. California*, 355 U.S. 225 (1957) (conviction for failure to exercise a duty is inconsistent with due process where person does not know of the duty). The citizen has no opportunity to determine what behavior is required or expected to comply with such a law.

In short, the government has a positive duty to provide all citizens with unrestricted access to the text of the law, because if "the law is generally available for the public to examine," the citizens "may be considered to have constructive notice of it," and any failure to follow it "results from simple lack of diligence." *Building Officials Code Adm. v. Code Technology, Inc.*, 628 F.2d 730, 734-35 (1980) ("*BOCA*"). But "due process requires people to have notice of what the law requires of them so that they may obey it and avoid its sanctions." *Id.*

### 2.   The Complete Monopoly of Access Makes a Copyright in the Text of a Law Incompatible with Due Process.

One of the cornerstones of the copyright law is that the holder of a copyright "has the right to refuse to publish the copyrighted material at all and may prevent anyone else from doing so, thereby preventing any public access to the material." *Id.* at 735, citing *Fox Film Corp. v. Doyal*, 286 U.S. 123 (1932) (copyright owner "may . . .simply exclude others from using his property").

The complete monopoly in the author of copyright works is incompatible with the due process requirements inherent in the text of a law.  If a copyright owner can "simply exclude others from using his property" in the text of a law, he can, by definition, withdraw or withhold permission for the government to use the text, and for the citizens to obtain access to it.

The danger of a copyrighter's veto is no less real simply because the law may be available at a particular time.  The power of the copyright owner to withhold consent jeopardizes future access to the text of the law.  This is no idle speculation—indeed, SBCCI does not even have a licensing agreement with the municipalities in this case.  The municipalities must incorporate the code in their

14

ordinances by reference only—even the actual ordinance voted on by the municipal body does not contain the text of the law. No contract or licensing agreement precludes SBCCI from refusing to provide access to Anna and Savoy of their own municipal ordinances at any time.

If the right to withhold access to a law is exercised, citizens, who presumably will be expected to continue following the law, will be unable to determine what that law is. A citizen is thus at risk of being punished for failure to follow an unavailable law. In addition, the government will be unable to discharge its duty towards citizens to make the law available.

In short, a copyright in the text of the law puts citizens in the position of the Romans of Caligula's time, when certain taxes "had been proclaimed but not published in writing," so that "many offenses were committed through ignorance of the letter of the law." Even when Caligula was persuaded to "publish" it, he "had the law posted up, but in a very narrow place and in excessively small letters, to prevent the making of a copy." *United States v. Jefferson County Board of Education*, 380 F.2d 385, 410-11 (5th Cir. 1967),

citing Suetonius, *The Lives of the Twelve Caesars,* 192 Random House, 1959.

The severe restrictions placed on municipal codes by SBCCI make them a modern equivalent of Caligula's tax laws. "[T]his aspect of copyright protection can[not] be squared with the right of the public to know the law to which it is subject." *BOCA,* 628 F.2d at 735. Indeed, the United States Copyright Office itself recognizes that there can be no copyright in the law. § 206.1 Compendium of Copyright Office Practices, Copyright Office (1984).

### 3. The Primary Purpose of Copyright Law is not to Provide a Benefit to Authors, But to Provide the Public With Access to Authors' Works.

Further, the scope of a copyright owner's right is not unlimited. The primary purpose of copyright law is "To Promote the Progress of Science and the useful Arts . . . ." U.S. Const. Art. I, § 8. The copyright privileges accorded an owner "are neither unlimited nor primarily designed to provide a special private benefit," but rather to motivate artists and inventors "and to allow the public access to the products of their genius after the limited period of exclusive control has expired." *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 429 (1984).

Indeed, the private reward to the owner of a copyright is "a secondary consideration" to the ultimate aim of the copyright law— the public benefit. *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 158 (1948). "The sole interest of the United States and the primary object in conferring the monopoly lie in the general benefits derived by the public from the labors of authors." *Fox Film*, 256 U.S. at 127; *see, also, Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). Indeed, Congress recognized this interest in the public welfare when enacting the comprehensive revision of the Copyright Act in 1909: "The granting of such exclusive rights, under the proper terms and conditions, confers a benefit upon the public that outweighs the evils of the temporary monopoly." H.R. Rep. No 2222, 60th Cong. 2d Sess., 7 (1909) (Judiciary Committee of the House of Representatives).

Even where material is subject to copyright protection, "[a]ll reproductions of the work . . . are not within the exclusive domain of the copyright owner; some are in the public domain." *Sony*, 464 U.S. at 432. The constraints of due process require that public enactments, such as the laws at issue here, be in the public domain, and not subject to the control of a private copyright owner.

### 4.   The Constitutional Due Process Rights of Citizens Far Outweigh any Public Interests in Copyright.

The District Court and the panel majority incorrectly found that due process rights of citizens in the text of the law are outweighed by SBCCI's copyright interest.   "[A] policy judgment is indispensable to our balancing of the public interests in, on the one hand, encouraging innovation through copyright and, on the other hand, ensuring free access to the law."

The panel came down on the side of copyright, quoting a well-known treatise as its only basis.   *See* 1 *Nimmer on Copyright*, Mathew Bender & Company, Inc., § 5.06[C].   *Nimmer* recognizes the due process implications of holding a copyright in the text of a law, but states that "it is questionable whether that rationale justifies the denial of copyright to a private person or group who produces such a model code." *Id.*

Notwithstanding the opinions of the panel majority and *Nimmer* on this issue, the *amici* States contend that the rights of a copyright owner can never outweigh the due process rights of the citizens in the text of a law.   Copyright, while permitted by the Constitution, is at base only a statutory right.   As discussed above,

the rights of copyright owners are not absolute, and primarily created for the ultimate benefit of the public, rather than authors.

On the other hand, due process is a constitutional right of the first order—it was considered so important it was included both in the Bill of Rights and in the Fourteenth Amendment.  And the due process right at issue here is of fundamental importance to the operation of a free government.  In our society, the people are assumed to know the law, and are expected to follow it.  Without guaranteed access to the text of the law at all times, this right is not just in jeopardy—it has been abridged.

*Nimmer* admits that allowing a copyright in the text of a law would result in a due process violation, but his solution is to allow the citizen to use the due process and the fair use doctrine as a defense.  "Failure to observe such due process notice requirements would certainly constitute a defense for one charged with violation of the nonpublicized law."

*Amici* States assert that *Nimmer*'s solution is unsatisfactory for several reasons.  It is simply bad government and a violation of due process to restrict a citizen's access to the law hoping that he will have defenses to an infringement suit.  A government should strive

to provide the public with the tools to be good citizens, not merely hope that a citizen will be able to defend an infringement suit when he attempts to learn the law.

Perhaps most important, the chilling effect of a potential copyright suit will prevent many citizens from copying the law, thus presenting them with the classic Hobson's choice—copy the law and risk a copyright suit, or remain ignorant of the law and risk a sanction for breaking it.

In short, regardless of the facts of an individual case, the due process rights of the public in the text of a law far outweigh any possible public benefit from copyright in that same text.

**B.   A Long-Standing Body of Case Law Supports the Incompatibility of Copyright In, and Access To, the Text of the Law.**

**1.   The Supreme Court and Other Courts Have Consistently Held that There Can Be No Copyright in the Text of Judicial and Statutory Law.**

Cases going back at least to 1834 hold that judicial opinions and statutes are in the public domain and not subject to copyright protection.  The first such case was *Wheaton v. Peters*, 33 U.S. (8 Peters) 591 (1834).  In that case, Wheaton, the early reporter for the Supreme Court, claimed a copyright in his reports.  While the main

issue was whether Wheaton had complied with a statutory requirement, the Court also remarked "that the Court are unanimously of the opinion that no reporter has or can have any copyright in the written opinions delivered by this court," and that "the judges thereof cannot confer on any reporter any such right." 33 U.S. at 668.

The Court definitively held that the text of judicial opinions is in the public domain in *Banks v. Manchester,* 128 U.S. 244 (1888). "The whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, *binding on every citizen, is free for publication to all,* whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute." 128 U.S. at 253 (emphasis added). And in *Callaghan v. Myers,* 128 U.S. 547, 645 (1888), the Supreme Court reiterated that a reporter of opinions may hold a copyright in "all but the opinions of the court."

Courts have recognized that statutes as well as judicial opinions are in the public domain, and cannot be copyrighted. For instance, in *Davidson v. Wheelock,* 27 F. 61 (D. Minn. 1866), a federal court in Minnesota held that the publisher "obtained no

exclusive right to print and publish and sell the laws of the state of Minnesota," and went on to hold that "such publications are open to the world. They are public records, subject to inspection by every one . . . ." 27 F. at 62.

Several other courts have followed suit. *Nash v. Lathrop*, 142 Mass. 29, 35 (1886) ("Every citizen is presumed to know the law . . . and it needs no argument to show that justice requires that all should have free access to the opinions . . . ."); *Connecticut v. Gould*, 34 F. 319 (N.D. N.Y. 1888) ("in a country where every person is presumed and required to know the law . . . the fullest and earliest opportunity of access to [judicial opinions] should be afforded."); *Howell v. Miller*, 91 F. 129 (6th Cir. 1898) (the reporter "has no exclusive right in the judicial opinions published," but the reporter's copyright consisted of his index, marginal references, notes, memoranda, table of contents and digests); cf. *Gould v. Banks*, 53 Conn. 415 (1886).

In modern times, this reasoning has been followed by the First Circuit in *BOCA v. CT*. The plaintiff in that case, another code-writing organization, claimed copyright protection in its model building code, which, like SBCCI, it encouraged governments to

adopt through a licensing program.  Massachusetts adopted a code substantially similar to the BOCA model, and the defendant, Code Technology, Inc. ("CT") published and distributed its own edition of the Massachusetts Building Code.  CT argued, as does Veeck here, that the text of the Building Code had entered the public domain and could not be copyrighted.  The district court disagreed and granted a preliminary injunction.

The First Circuit declined to rule on the ultimate merit of the case, but vacated the preliminary injunction, and pointed out that it was not persuaded by BOCA's reasoning, as "the public owns the law."  "The citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process."  628 F.2d at 734.

These cases demonstrate a long-standing principle that the text of a law is, by its very nature, in the public domain and not copyrightable.  In addition, they illustrate that there is no principled reason to differentiate between judicial opinions, statutes and administrative or municipal enactments.

**2.    The Text of the Law is Public Because of its Nature as the Law, Not Because of the Nature or Employment of the Author.**

The case law demonstrates an important principle that counters one of SBCCI's primary arguments: the text of the law is public not because the public pays the salaries of the authors, but because of its nature as the law.  Although the Supreme Court in *Banks* mentioned that the judges were paid by the public, in its next case on the subject, the Court contradicted such a justification.  In *Callaghan v. Myers,* the Supreme Court held that the reporter may hold a copyright in the title page, table of cases, headnotes, arguments of counsel and index, even though he was a public official, paid from the public treasury.  128 U.S. at 645-50. In *Connecticut v. Gould*, the State also paid the reporter of opinions, yet a lower federal court held that he was allowed to keep a copyright in his index and syllabi (though not in the text of the opinions).  34 F. 319.

Thus, merely because it is authored by a public official whose salary is paid by the public, a document is not exempt from copyright.  It follows that the fact that judges or legislators are paid by the public is irrelevant to the copyrightability of the law—the text

of the law is in the public domain because of its nature as the law, not because of its author. *See, also, Schnapper Public Affairs Press v. Foley*, 667 F.2d 102, 110 (D.C. Cir. 1981), *quoting Du Puy v. Post Telegram Co.*, 210 F. 883 (3rd Cir. 1914).

The recent case *County of Suffolk New York v. First American Real Estate Solutions*, 261 F. 179, 2001 U.S. App. LEXIS 16706 (2nd Cir. 2001), supports this contention. In *Suffolk*, the county had produced tax maps to help it in assessing property tax. The question was whether the county's tax maps were amenable to copyright, or whether they had passed into the public domain. The *Suffolk* court set forth a test for whether a work may be deemed to be in the public domain:

> (1) whether the entity or individual who created the work needs an economic incentive to create or has a proprietary interest in creating the work and (2) whether the public needs notice of this particular work to have notice of the law.

261 F.3d at ___, LEXIS 16706, at *34-35.

Under the second prong of the *Suffolk* test, SBCCI cannot maintain its copyright. As discussed above, due process requires that the public have complete and free access to the text of the law.

The public must have "notice of [the text of the municipal codes at issue here] to have notice of the law."

But even under the first prong—the need for an economic incentive—SBCCI cannot maintain a copyright. The first prong at the *Suffolk* test, like the second, is constitutionally based. The only purpose for copyright is to "promote the progress of science and useful arts." When economic incentive is not needed, the Patents and Copyrights Clause does not authorize a copyright. *See*, Perritt, Sources and Rights to Access Public Information, 4 *Wm & Mary Bill of Rts. J.* 179 (1995); *Feist Publications, Inc. v. Rural Telephone Service, Co.*, 499 U.S. 340, 347-48 (1991).

As stated by SBCCI's own general counsel, SBCCI's primary purpose is to create model codes and have them adopted by government bodies, not to make money by selling books. SBCCI is a not-for-profit organization whose members consist of government units and agencies. SBCCI may have an economic incentive to maintain a copyright in the model codes, but there is no *need* for such an incentive to create the codes. SBCCI and similar organizations would create such codes with or without the copyright incentive.

Even more important, state and local governments have a duty to create building codes, regardless of the existence of SBCCI and its model code.   Thus, copyright law does not need to create any economic incentive in writing codes—they will be written whether governments create them or acquire them from an entity like SBCCI.

### 3. Cases Cited by SBCCI Are Easily Distinguishable and To the Extent They Are Not, Should Be Disregarded.

The cases cited by SBCCI are easily distinguishable, and to the extent that they are not, *amici* States submit that they are wrongly decided and should not be followed.

The first, *CCC Information Services, Inc v. Maclean Hunter Market Reports*, 44 F.3d 61 (2nd Cr. 1994), involved two private, for-profit organizations.   The Appellee, CCC Information Services, had been systematically loading major portions of the Appellant's book of used car valuations commonly known as the Red Book onto its database and republishing the information to its customers.   The Second Circuit held that the Red Book had not fallen into the public domain even though it had been adopted in state statutes regulating insurance payments.

27

*CCC* is distinguishable.  The Red Book itself was not the text of the law, but only one of several alternate standards by which insurers could determine the value of a used car.  The Red Book is not, in and of itself, a regulation—it gives the public no directives to follow or duties to fulfill.  Thus, under the second prong of the *Suffolk* test, the public does not "need notice of this particular work to have notice of the law."  261 F.3d at ___, LEXIS 16706, at *34-35.

In addition, "the adoption of a private work into law might well justify a fair use defense for personal use, but it should not immunize a competitive commercial publisher from liability."  *CCC*, 44 F.3d at 74, footnote 30.  In other words, the private citizen who obtains a copy to ensure that he is following the law is not an infringer, but a commercial entity attempting to profit from the work of another is an infringer.[2]

Similarly, in *Practice Management Information Corporation v. American Medical Association,* 121 F.3d 516 (9th Cir. 1997), the AMA had a copyright on their medical coding system, which had been licensed to the federal Health Care Financing Administration

---

[2] It applied to the text of a law, this is essentially the same flawed rationale used by *Nimmer,* as discussed above.

("HCFA"). However, the license was "non-exclusive, royalty free and irrevocable." HCFA was free to "use, publish and distribute" the code and had the right to cancel the agreement and use a competing system at any time. 121 F.3d at 517.

As with *CCC*, the Ninth Circuit distinguished a user denied access to a standard under the law, and a rival for AMA's business in copying and publishing the code. The Court also pointed out that any attempt by the AMA to restrict access to the text of the code would likely result in termination of its agreement with HCFA.

Both cases can also be distinguished because in both the work was produced by a private entity for a reason other than incorporation into the law. The government would be highly unlikely, on its own, to create a valuation system for used cars or a medical coding system. This is precisely the distinction made in the first prong of the *Suffolk* test.

In contrast, SBCCI, BOCA, and similar organizations create model codes for the express and primary purpose of persuading States and municipalities to incorporate them as the text of a law. And SBCCI and similar organizations have insisted on very restrictive copyrights, which virtually preclude governments from

providing citizens with the text of the law. (*See* copyright statement, R. 17, Answer ¶ 17.) No one but SBCCI is allowed to copy or distribute the law without SBCCI's permission, not even the governmental entities responsible for enforcing it. Indeed, SBCCI insists that its code be adopted by reference only, so that the text of the law does not even appear in the ordinance or regulation adopting it, or in codified versions of the ordinances or regulations of a government entity. *Id.*

Under these circumstances, nothing in the copyright law prevents SBCCI from simply refusing to make copies of the text available to the public, or even to the governmental entities responsible for enforcing it. This is no less dangerous merely because it is now in SBCCI's commercial interest to allow access. SBCCI, or a successor in interest, could cut off access at any time, for any reason, including bankruptcy, development of new codes not yet adopted by the State or municipality, or even retaliation against a government entity for refusal to adopt other SBCCI codes.

In contrast, the AMA's agreement in *Practice Management* irrevocably allowed the United States the unlimited ability to copy and distribute copies of the code, and allowed the U.S. to revoke the

license at any time and use an alternate coding system.   In *CCC*, the Red Book was only one of several possible methods of valuation that the insurer could use.   Neither case involved a risk that the relevant government or its citizens would lack the necessary tools to know the requirements of the law.

Thus, both *CCC* and *Practice Management* are distinguishable, and alternately, to the extent that those cases stand for the proposition that the text of a law can be copyrighted, they are against the weight of precedent, as well as against sound constitutional principles, and should be ignored.

## C. SBCCI and Similar Organizations Have Waived any Copyright by Actively Lobbying Government to Adopt Their Codes.

SBCCI, BOCA and similar not-for-profit organizations actively lobby State and local governments to adopt their model codes, and yet insist that the text of the codes remain a closely-guarded monopoly.   SBCCI has undoubtedly been aware of the long line of case law precluding a copyright in the text of the law, and yet has continued to conduct its business as if this body of law did not exist.   SBCCI cannot have its cake and eat it too—if it lobbies a government to adopt its codes as the text of the law, it must accept

that the text will pass into the public domain.   SBCCI has waived its copyright.

## CONCLUSION

For the foregoing reasons, *amici* States urge the Court to overrule the decision of the panel and hold that there can be no copyright in the text of a law.

Respectfully submitted,

BETTY D. MONTGOMERY
Attorney General of Ohio

ELISE W. PORTER
MARTIN D. SUSEC
Assistant Attorneys General
Chief Counsel's Staff
30 East Broad Street, 17th Floor
Columbus, OH  43215-3428
(614) 466-2872
(614) 728-7592 FAX
Attorneys for *Amici* States

## CERTIFICATE OF SERVICE

I hereby certify that two true copies of the foregoing Brief of *Amicus* Curiae States of Ohio and Ten Other States and Territories Supporting Appellant Veeck Upon Rehearing En Banc was served, by ordinary U.S. mail (on paper and computer disk), to counsel of record listed below, pursuant to Fed. R. App. P. 25(b), and that the same document was filed, by delivering an original and twenty copies (on paper and computer disk) to the United States Post Office for first-class U.S. mail delivery to the Clerk of the Court, pursuant to Fed. R. App. P. 25(a)(2)(B)(i), on this 6th day of November, 2001, at the following addresses:

Eric Weisberg
200 West Main Street
Denison, TX  75020-3025
*Counsel for Plaintiff-Appellant*

Robert J. Veal
Burr & Forman
South Trust Tower
420 North 20th Street, Suite 3100
Birmingham, AL  35203
*Counsel for Defendant-Appellee*

Michael Lowenberg
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
1700 Pacific Avenue, Suite 4100
Dallas, TX  75201-4618
*Counsel for Amicus AMA*

Karen B. Tripp
1100 Louisiana Street, Suite 2690
Houston, TX  77002
*Counsel for Amici Association of*
*American Physicians & Surgeons, Inc.*
*Eagle Forum Education and Legal Defense Fund*

Mr. Charles R. Fulbruge, III
Clerk of the Court
United States Court of Appeals
    for the Fifth Circuit
600 Camp Street
New Orleans, LA  70130

ELISE W. PORTER
Assistant Attorney General
Chief Counsel's Staff

## CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.2. and 32.3 and Fed. R. App. P. 32(a)(7)(C), the undersigned certifies this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b) and Fed. R. App. P. 29(d).

1.    Exclusive of the exempted portions in 5th Cir. R. 32.2 and Fed. R. App. P. 32.2.7(b)(3), the brief contains 6,728 words.

2.    The brief has been prepared in proportionally spaced typeface using Bookman Old Style 14 point font for text and 12 point font for footnotes produced by Microsoft Word 2000.

3.    An electronic version of the brief has been provided and if the Court so requests, the undersigned will provide a copy of the word or line printout.

4.    The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2, may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

ELISE W. PORTER
Assistant Attorney General

35