# EXHIBIT 6

FILE COPY

FILED

OCT 21 2002

CLERK

No. 02-355

In The

# Supreme Court of the United States

SOUTHERN BUILDING CODE CONGRESS INTERNATIONAL, INC.,

*Petitioner,*

v.

PETER VEECK D/B/A REGIONAL WEB,

*Respondent.*

On Petition for a Writ of Certiorari to the United States Court of Appeals for the Fifth Circuit

**BRIEF OF AMICUS CURIAE
ASTM INTERNATIONAL
IN SUPPORT OF PETITION
FOR A WRIT OF CERTIORARI**

THOMAS B. O'BRIEN, JR.*
JOSEPH B. SILVERSTEIN
Klett Rooney Lieber & Schorling
12th Floor, Two Logan Square
Philadelphia, PA 19103
(215) 567-7500 (Phone)
(215) 567-2737 (Fax)
  *Counsel of Record
  Counsel for Amicus Curiae

ST IVES BURRUPS/APPELLATE DIVISION, 1617 JFK BOULEVARD, PHILA., PA. 19103 (215) 563-9000

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| CONSENT TO FILING OF *AMICUS* BRIEF | 1 |
| STATEMENT OF INTEREST | 1 |
|    A. ASTM International | 1 |
|    B. Use of ASTM Standards | 2 |
|    C. ASTM's Revenue Sources | 6 |
|    D. Access to ASTM Standards | 7 |
| SUMMARY OF ARGUMENT | 7 |
| REASONS FOR GRANTING THE WRIT | 7 |
|    A. The Fifth Circuit's Decision Creates a Conflict Among the Circuit Courts of Appeal and Misinterprets Prior Precedent of This Court | 8 |
|    B. Congress Did Not Intend Government Reference to Private Codes to Somehow Transfer or Void the Copyright of Such Codes | 11 |
|    C. SBCCI Was the Author and Copyright Owner of the Code and the Fifth Circuit's Decision Deprived It of This Valuable Right | 14 |
| CONCLUSION | 19 |

# TABLE OF AUTHORITIES
**Cases** — Page

*American Society for Testing & Materials v. Board of Revision of Taxes, Philadelphia County*, 423 Pa. 530, 225 A.2d 557 (1967) ............ 1

*Banks v. Manchester*, 128 U.S. 244 (1888) ....... 9, 10, 11

*Building Officials and Code Admin. v. Code Technology, Inc.*, 628 F.2d 730 (1st Cir. 1980) .. 8, 10

*CCC Information Services, Inc. v. Maclean Hunter Market Reports*, 44 F.3d 61 (2nd Cir. 1994), *cert. denied*, 516 U.S. 817 (1995) ............ 8, 9, 10, 17

*Callaghan v. Myers*, 128 U.S. 617 (1888) ......... 10, 11

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ............ 11

*County of Suffolk, NY v. First Amer. Real Estate Solutions*, 261 F.3d 179 (2nd Cir. 2001) ...... 8, 9, 10

*Davidson v. Wheelock*, 27 F. 61 (D. Minn. 1866) .... 9

*Howell v. Miller*, 91 F. 129 (6th Cir. 1898) ........ 9

*James v. Campbell*, 104 U.S. 356 (1882) .......... 17

*Lane v. First National Bank*, 871 F.2d 166 (1st Cir. 1989) ............ 17

*Nash v. Lathrop*, 142 Mass. 29, 6 N.E. 559 (1886) ... 9

*Practice Management Information Corp. v. The American Medical Association*, 121 F.3d 516 (9th Cir. 1997), *amended*, 133 F.3d 1140 (9th Cir. 1998), *cert. denied*, 522 U.S. 933 (1997) .......... 8, 9, 10

*Roth v. Pritikin*, 710 F.2d 934 (2nd Cir. 1983), *cert. denied*, 464 U.S. 961 (1983) ............... 17

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) .. 17

ii

# TABLE OF AUTHORITIES — *(Continued)*

**Cases** — Page

*Peter Veeck d/b/a Regional Web v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002) (*en banc*) .......... 1, 8-11, 14-18

*Veeck v. Southern Building Code Congress International, Inc.*, 49 F. Supp. 2d 885 (E.D. Tex. 1999), *aff'd*, 241 F.3d 398 (5th Cir. 2001), *rev'd and remanded*, 293 F.3d 721 (5th Cir. 2002) (*en banc*) ............................ 14, 15, 16

*Wheaton v. Peters*, 33 U.S. (8 Pet.) 591 (1834)... 9, 10, 11

**U.S. Constitution, Statutes and Regulations**

U.S. Const. Amend V ...................... 17

1995 P.L. 104-113, 15 U.S.C. § 272 ............ 5, 13

15 U.S.C. § 2051 ........................ 3

17 U.S.C. § 201(e) ....................... 15

17 U.S.C. § 204(a) ....................... 16

42 U.S.C. § 9601 (35)(B)(iv)(II)(2002) ......... 6

63 Fed. Reg. 85,445 (1998) .................. 12

67 Fed. Reg. 49,569 (2002) .................. 4

67 Fed. Reg. 52,780 (2002) .................. 4

67 Fed. Reg. 56,182 (2002) .................. 4

67 Fed. Reg. 42,892 (2002) .................. 4

67 Fed. Reg. 46,852 (2002) .................. 4

**State Statutes**

35 P.S. § 6024.103 ....................... 5

3 P.S. § 132-3 .......................... 5

4 P.S. § 402 ........................... 5, 6

iii

TABLE OF AUTHORITIES — *(Continued)*

|  | Page |
|---|---|
| 75 Pa. C.S § 9002 | 5 |
| Cal. Bus. & Prof. Code § 13710 (2002) | 5 |
| Cal. Health & Safety Code § 108510 (2001) | 6 |
| D.C. Code Ann. § 50-1609 (2001) | 5 |
| Ind. Code § 22-15-7-4 (2001) | 6 |
| La. Rev. Stat. Ann. § 40:1484.4 (2002) | 6 |
| Md. Code Ann., Environ § 7-506 (a)(1)(v) (2001) | 6 |
| Mich. Comp. Laws § 408.684 (2002) | 6 |
| Mo. R.S. § 316.205 (2001) | 6 |
| Mo. R.S. § 160.675 (2001) | 6 |
| N.J. Stat. Ann. § 39:4-10.5 (2002) | 5 |
| N.Y. Veh. & Tran. Law § 1238 (2002) | 5 |
| Ohio Rev. Code Ann. § 1711.53 (2002) | 6 |
| Or. Rev. Stat. § 453.235 (2001) | 6 |
| R.I. Gen. Laws § 23-34.1-5 (2001) | 6 |
| R.I. Gen. Laws § 31-19-2.1 (2001) | 5 |
| Tenn. Code Ann. § 68-131-305 (2001) | 6 |
| Texas Occ. Code § 2151.106 (2002) | 6 |
| W. Va. Code § 17C-11A-3 (2001) | 5 |

*Miscellaneous*

| | |
|---|---|
| Fourth Annual Report on Federal Use of Voluntary Consensus Standards (2000) | 5 |
| NASA's 2001 Annual Report on OMB A-119 | 13 |
| OMB Circular A-119 (63 Fed. Reg. 8545 (rev. 1998)) | 4, 5, 7, 11, 12, 13 |
| Statement of Gregory E. Saunders, Director, Defense Standardization Program Office, Defense Logistics Agency, Before the Subcommittee on Technology, House Committee on Science, March 15, 2000 | 14 |
| U.S. Dept. of Interior, Bureau of Land Management, H 2000-1 Land Exchange Handbook (1997) | 6 |

## CONSENT TO FILING OF *AMICUS* BRIEF

The Southern Building Code Congress International, Inc. ("SBCCI") has filed a Petition for a Writ of Certiorari, requesting that this Court review the decision of the United States Court of Appeals for the Fifth Circuit (*en banc*) in *Peter Veeck d/b/a Regional Web v. Southern Bldg. Code Congress Int'l, Inc.*, 293 F.3d 791 (5th Cir. 2002).

ASTM International files this brief in support of the request for review. In accordance with Supreme Court Rule 37.3(a), ASTM International has obtained written consent to the filing of this brief from counsel of record for both parties. These consents have been previously filed with the Court.

## STATEMENT OF INTEREST[1]

### A. ASTM International

ASTM International *f/k/a* The American Society for Testing & Materials ("ASTM") is a not-for-profit charitable institution organized under the laws of the Commonwealth of Pennsylvania.[2] Founded in 1898, ASTM provides a global forum for the development and publication of voluntary consensus standards for

---

1. In accordance with Supreme Court Rule 37.6, *amicus curiae* states that this brief was not authored, in whole or in part, by counsel to a party, and that no monetary contribution to the preparation or submission of this brief was made by any person or entity other than the *amicus curiae* or its counsel.

2. *See American Society for Testing & Materials v. Board of Revision of Taxes, Philadelphia County*, 423 Pa. 530, 225 A.2d 557 (1967), wherein the Pennsylvania Supreme Court held that the American Society for Testing and Materials ("ASTM") was a "purely public charity" under the Pennsylvania Constitution and discusses ASTM's membership, mission and works.

2

materials, products, systems and services. Over 32,000 individuals from 100 nations are members of ASTM, including manufacturers, retailers, consumers, as well as representatives from government and academia. ASTM develops standards in over 130 areas covering subjects including consumer products, medical services and devices, electronics, metals, paints, plastics, textiles, petroleum, construction, energy and the environment.

ASTM standards are written by its more than 32,000 volunteer members who serve on ASTM's 132 technical committees devoted to specific areas of interest and which pursue standardization issues considered necessary by their members. Committees are divided into smaller entities of sub-committees and task groups that focus more closely on particular areas of a committee's scope.

ASTM memberships are inexpensive, costing $75.00 per year for an individual member and $400.00 per year for an organizational member. Each member yearly receives one free volume of his/her choice of the "Annual Book of ASTM Standards," as well as other membership benefits.

### B. Use of ASTM Standards

More than 11,000 ASTM voluntary consensus standards are published each year in the 73 volumes of the "Annual Book of ASTM Standards." Each standard is copyrighted by ASTM. These standards: (1) promote public health and safety, and the overall quality of life; (2) contribute to the reliability of materials, products, systems and services; and (3) facilitate national, regional and international commerce. ASTM standards are widely used by business, consumers and government.

3

ASTM standards are incorporated into business contracts, used by scientists and engineers in their laboratories, used by architects and designers in their plans and, of course, governments and their agencies use and reference them for a variety of reasons. ASTM does not lobby or urge federal, state or local governments to reference, incorporate or adopt its standards. If a standard does not exist, it is relatively simple to start the ASTM process in motion. Anyone (including a government agency) can submit a written request to ASTM, describing a need for proposed standard activity and listing individuals, companies and organizations that might have an interest. ASTM contacts interested parties to assess that interest and need; if it exists and is within the subject area of an ASTM committee, activity begins. Membership in ASTM is not a pre-requisite to participation in the process (membership, however, is required to vote on acceptance of draft standards by ASTM).

ASTM standards are utilized by all federal government departments and agencies.[3] Federal agencies as varied as the Bureau of Alcohol, Tobacco and Firearms ("ATF"), the Consumer Product Safety Commission ("CPSC"),[4] the Environmental Protection Agency ("EPA"), Food and Drug Administration ("FDA"), the Nuclear Regulatory Commission ("NRC"), and the National Aeronautics and Space Administration ("NASA") reference ASTM standards

---

3. A LEXIS search shows that in the last six months, ASTM standards were referenced in 117 proposed federal agency decisions and/or rules.

4. The Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq.*, requires that the Consumer Product Safety Commission defer to and utilize private voluntary standards rather than produce its own. *Id.* at § 2056.

4

in their regulations and procurement documents. ASTM standards are widely referenced in government bids and contracts because they ensure commercially available, competitively priced goods and services, and the standards are readily available and accessible. The United States Trade Representative (Executive Office of the President) has recently utilized ASTM standards to reference steel products for tariff purposes under § 203 of the Trade Act of 1974. *See* 67 Fed. Reg. 56,182 (2002). The EPA recently referenced ASTM standards in its National Emission Standards for Hazardous Air Pollutants. *See* 67 Fed. Reg. 52,780 (2002) (to be codified at 40 C.F.R. Part 63). The Department of Transportation referenced ASTM standards in recent regulations concerning traffic control devices. *See* 67 Fed. Reg. 49,569 (2002) (to be codified at 23 C.F.R. Part 655). The FDA referenced ASTM standards in its request for reclassification of a certain type of bone cement. *See* 67 Fed. Reg. 46,852 (2002) (to be codified at 21 C.F.R. Part 888). The Federal Railroad Administration recently referenced ASTM standards in its amendment to passenger equipment safety standards. *See* 67 Fed. Reg. 42,892 (2002) (to be codified at 49 C.F.R. Part 238). These are but a few of the many examples of federal agency use of ASTM standards so far this year.

The United States Congress, at least as far back as 1993, clearly intended that the federal government reference and utilize privately authored voluntary consensus standards. *See* Office of Management and Budget Circular No. A-119 (revised 1993) ("OMB A-119").[5] Congress' intent was reiterated in the

---

5. OMB A-119 (1993) is *available at* (http://clinton1.nara.gov/White_House/EOP/OMB/html/circulars/a119/a119.html.)

5

National Technology Transfer and Advancement Act of 1995 P.L. 104-113, 15 U.S.C. § 272 ("NTTAA"). As a result, federal agency use of ASTM standards (and other privately developed codes and standards) has increased each year and is today pervasive.[6] ASTM standards are currently referenced in 800 federal regulations.

States and their agencies, as well as the federal agencies, utilize and reference many ASTM standards. Just recently, California modified its specification for engine coolants, adopting ASTM standards. *See* Cal. Bus. & Prof. § 13710. Pennsylvania, ASTM's home state, references ASTM standards in many of its laws and regulations, including its agricultural statutes (3 P.S. § 132-3), liquid fuels regulations (75 Pa. C.S. § 9002), amusement ride inspection regulations (4 P.S. § 402), and Safe Packaging Act (35 P.S. § 6024.103). Many states require children's bicycle (and other) helmets comply with, among others, ASTM standards, including New Jersey (N.J. Stat. Ann. § 39:4-10.5 (2002)); New York (N.Y. Veh. & Tr. Law § 1238 (2002)); Rhode Island (R.I. Gen. Laws § 31-19-2.1 (2001)); the District of Columbia (D.C. Code Ann. § 50-1609 (2001)); and West Virginia (W. Va. Code § 17C-11A-3) (2001)).

---

6. The National Institute of Standards and Technology ("NIST"), United States Department of Commerce, is required by the Office of Management and Budget revised Circular A-119 ("OMB A-119") to report annually on the progress made by federal agencies toward using voluntary standards created by the private sector. OMB A-119(9). NIST's *Fourth Annual Report on Federal Use of Voluntary Consensus Standards (available at* (http://ts.nist.gov/ts/htdocs/210/toolkit.htm#ann-rpts)) states that in fiscal year 2000, federal agencies increased their use of voluntary standards to a total of 8,759. *Fourth Annual Report* at p. vi.

6

Many states and municipalities require that amusement park rides comply with ASTM standards. *See* Texas Occ. Code § 2151.106 (2002); R.I. Gen. Laws § 23-34.1-5 (2001); 4 P.S. § 402 (Pa. 2002); Ohio Rev. Code Ann. § 1711.53 (2002); Mo. R.S. § 316.205 (2001); La. Rev. Stat. Ann. 40:1484.4 (2002); Ind. Code § 22-15-7-4 (2001). Several states use ASTM standards to ensure the safety of: school art supplies, *see* Or. Rev. Stat. § 453.235 (2001), Tenn. Code Ann. § 68-131-305 (2001), Cal. Health & Safety Code § 108510 (2001)); playgrounds (*see* Mich. Comp. Laws § 408.684 (2002)); and the walk to school itself. *See* Mo. R.S. § 160.675 (2001) (school warning signs). These are but a few examples of how state governments use and rely on ASTM standards; the list may be endless.[7]

## C. ASTM's Revenue Sources

ASTM's fiscal year budget totals $32,346,800. On a yearly basis, ASTM receives between 75% and 80% of its revenue from the sale of its copyrighted standards. These sales are key to the continuation of ASTM and its mission. Membership fees intentionally make up only a small fraction of ASTM's revenue and budget. This is done to ensure and maintain ASTM's independence as an organization from the interests of its members. Without its revenue from the sale of its copyrighted standards, ASTM could not survive and

---

7. As another example, most states, in their "brownsfield" legislation, require potential applicants to state programs perform "Phase I" and "Phase II" environmental site assessments pursuant to ASTM standards (*see, e.g.*, Md. Code Ann., Environ § 7-506 (a)(1)(v)). The Federal Bureau of Land Management has also adopted ASTM's Phase I and II assessments, *see* U.S. Dept. Interior, Bureau of Land Management, H-2000-1 Land Exchange Handbook 19 (1997), as does the Brownsfields Revitalization Act, 42 U.S.C. § 9601 (35)(B)(iv)(II)(2002).

7

fulfill its mission — to produce fair and balanced voluntary consensus standards.

## D. Access to ASTM Standards

The average cost of an ASTM standard is $30.00. Standards can be purchased on-line at the ASTM website (http://www.astm.org), where standards may be instantly downloaded directly to a user's computer. Standards may also be purchased from ASTM by telephone or mail, or through several distributors. Delivery takes place within days, if not sooner.

Many government agencies have complete sets of ASTM standards, as do most (if not all) technical libraries and many other libraries.

## SUMMARY OF ARGUMENT

The *en banc* decision of the Fifth Circuit found that the unilateral action of a government entity — a small municipality — could strip a valuable and protected property right from its owner. This ruling created a conflict in the Circuit Courts of Appeals (and created confusion amongst standard development organizations such as ASTM), conflicts with the clear Congressional intent expressed in OMB A-119 and in the National Technology Transfer and Advancement Act, and fails to adequately address the apparent transformation of private intellectual property into public property. The decision puts at risk the long-term (and successful) co-operative effort between government and private-sector standards development organizations. For these reasons, SBCCI's petition should be granted.

## REASONS FOR GRANTING THE WRIT

The *en banc* Fifth Circuit majority decided the issue of "the extent to which a private organization

may assert copyright protection for its model codes, after the models have been adopted by a legislative body and become the law." *Veeck*, 293 F.3d 791, 793 (5th Cir. 2002). The Fifth Circuit held: ". . . that as law, the model codes enter the public domain and are not subject to the copyright holder's exclusive prerogatives." *Id.* The Fifth Circuit found that once adopted, the private author of a model code loses its copyright. *Id.* at 799.

## A. The Fifth Circuit's Decision Creates a Conflict Among the Circuit Courts of Appeal and Misinterprets Prior Precedent of This Court.

The Fifth Circuit's majority ruling that a municipality's adoption by reference terminates the valid copyright of a work authored by a private entity conflicts with opinions of other Circuit Courts of Appeal, specifically those of the First Circuit in *Building Officials and Code Admin. v. Code Technology, Inc.*, 628 F.2d 730 (1st Cir. 1980) ("*BOCA*"), the Second Circuit in *CCC Information Services, Inc. v. Maclean Hunter Market Reports*, 44 F.3d 61 (2nd Cir. 1994) ("*CCC Info*") and *County of Suffolk, NY v. First Amer. Real Estate Solutions*, 261 F.3d 179 (2nd Cir. 2001), and the Ninth Circuit in *Practice Management Information Corp. v. The American Medical Ass'n*, 121 F.3d 516 (9th Cir. 1997), *amended*, 133 F.3d 1140 (9th Cir. 1998), *cert. denied*, 522 U.S. 933, (1997)("*PMI*").

The Fifth Circuit majority concluded the copyright of a privately authored code was terminated (or transferred to the public) when the code was adopted by reference as a local building code. *Veeck*, 293 F.3d at 802. In similar circumstances, the First, Second and Ninth Circuits have refused to terminate or strip copyrights from building codes (*BOCA*), car valuations (*CCC Info*), tax maps (*County of Suffolk*) and a uniform medical code (*PMI*), all of which had been enacted or adopted into regulations or statutes by some level of government. The First, Second and Ninth Circuits relied principally on the same two opinions of this Court in reaching their decisions, *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591 (1834) and *Banks v. Manchester*, 128 U.S. 244 (1888), as did the Fifth Circuit in the matter at hand. *Veeck*, 293 F.3d at 795.

Neither *Wheaton* nor *Banks* addressed any question of the copyright status of privately authored works. Each addressed the copyright status of judicial opinions, which were not copyrightable.[8] *Banks*, 128 U.S. at 253. Yet from these two opinions flow the Fifth Circuit's conclusion that the code, once adopted, lost its copyright. The Fifth Circuit read *Wheaton* and *Banks* "to enunciate the principle that 'the law,' whether it has its source in judicial opinions or statutes, ordinances or regulations, is not subject to federal copyright law." *Veeck*, 293 F.3d at 800. This was not the Court's holding in either *Wheaton* or *Banks*. The Fifth Circuit's analysis of *Wheaton* and *Banks*, and its conclusion based on this analysis, also conflicts with that of the other Circuit Courts of Appeal which have addressed the issue.

---

8. The Fifth Circuit also relies on *Nash v. Lathrop*, 142 Mass. 29, 6 N.E. 559 (1886), *Davidson v. Wheelock*, 27 F. 61 (D. Minn. 1866), and *Howell v. Miller*, 91 F. 129 (6th Cir. 1898), for its conclusion that government adoption of a privately authored work terminates or transfers its copyright. *Veeck v. Southern Bldg. Code Congress Int'l, Inc.*, 293 F.3d 791, 796 (5th Cir. 2002) (*en banc*). *Nash*, again, dealt with judicial opinions; *Davidson* and *Howell* involved uncopyrightable and publicly "authored" state statutes. All are inapplicable to the matter at hand.

The Fifth Circuit, in reaching its conclusion, rejected the earlier analysis of *Wheaton* and *Banks* enunciated by the First Circuit in *BOCA* (628 F.2d at 734), and adopted by the Second Circuit in *CCC Info* and *County of Suffolk*, and the Ninth Circuit in *PMI*. This analysis is succinctly stated in *County of Suffolk*:

> [T]wo considerations influence whether a particular work may be deemed in the public domain: (1) whether the entity or individual who created the work needs an economic incentive to create or has a proprietary interest in creating the work and (2) whether the public needs notice of this particular work to have notice of the law.

261 F.3d at 194. *See also Veeck*, 293 F.3d at 796-97. The second prong of the *BOCA* analysis is a due process one — so long as the law is generally available, then the public has notice and access.[9] *BOCA*, 628 F.2d 734, *PMI*, 121 F.3d at 518-19. It is this <u>analysis</u>, not the Fifth Circuit's <u>conclusion</u> (that "the law" is not copyrightable), that should determine the present situation.

*Callaghan v. Myers*, 128 U.S. 617 (1888), decided by this Court soon after *Banks*, interpreted *Wheaton* and *Banks*, and focused on the issue of authorship. *Callaghan*, 128 U.S. at 649-50 ("it was held, that the opinions of the court, being published under the authority of Congress, were not the proper subject of private copyright"). The public, or government, was the "author" in *Wheaton*, *Banks* and *Callaghan*. There

---

9. "Access" does not mean Veeck is entitled to a free copy of the code. Access requires fair warning of conduct prohibited or regulated by statute or regulation. *See County of Suffolk, N.Y. v. First Amer. Real Estate Solutions*, 261 F.3d 179, 195 (2nd Cir. 2001).

is no question that SBCCI, a private entity, was the author of the subject code and was entitled to its copyright. *Veeck*, 293 F.3d at 794 and 802. *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) (the author is the party who actually creates work which is entitled to copyright protection).

The Fifth Circuit's reliance on a single sentence in *Banks* for its termination of SBCCI's private copyright ("The whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or statute." *Banks*, 128 U.S. at 253) is misplaced. *Banks* did <u>not</u> decide that a private property right was somehow terminated or converted to a public one by adoption — it simply found that judicial opinions were not copyrightable. Changing circumstances since *Wheaton*, *Banks* and *Callaghan*, and the conflicting interpretation of this Court's opinions by the Circuit Courts of Appeal, dictate that this Court review these important issues.

**B. Congress Did Not Intend Government Reference to Private Codes to Somehow Transfer or Void the Copyright of Such Codes.**

Congress has mandated the federal agencies use private standards and codes whenever possible. As recognized by the *Veeck* dissent, this Congressional intent was clearly enunciated in OMB A-119 and the National Technology Transfer and Advancement Act. *Veeck*, 293 F.3d at 814-15.

OMB A-119, revised in 1993, established the policy to be followed by executive agencies in their utilization of standards.[10] That clearly enunciated policy was for the federal government, in procurement and regulatory activities, to rely on privately developed voluntary consensus standards wherever possible. OMB A-119(6)(a). The Circular also states:

> Voluntary standards adopted by Federal agencies should be referenced, along with their dates of issuance and sources of availability, in appropriate publications, regulatory orders, and related in-house documents. **Such adoption should take into account the requirements of copyright and other restrictions.**

OMB A-119 (7)(a)(5) (1993) (*emphasis added*). OMB A-119 established federal policy governing the adoption of privately authored standards and clearly provided this adoption would have no impact on existing and applicable copyrights. OMB A-119 was revised in 1998[11] to make it consistent with the NTTAA. *See* 63 Fed. Reg. 85,445 (1998). OMB A-119 now <u>mandates</u> use of voluntary consensus standards such as those of ASTM.[12] *See* OMB A-119(6) (1998). The purpose of this mandate is to reduce costs to federal taxpayers of the government producing its own standards. OMB A-119 (2)(a).

Agencies have taken Congress' dictates to heart. The National Institute of Standards and Technology ("NIST"), a non-regulatory federal agency within the U.S. Commerce Department (15 U.S.C. § 272), is required by OMB A-119 and the NTTAA to compile annual reports to Congress providing information on federal government use of voluntary consensus standards.[13] These reports document extensive and growing use by federal agencies of copyrighted standards. NASA's 2001 Annual Report on OMB A-119 indicates this single agency alone used 922 voluntary consensus standards in fiscal year 2001.[14] In 1993, pursuant to executive order, a federal government-wide program — Environmentally Preferable Purchasing — was instituted, encouraging agencies to identify and purchase environmentally preferable products and services. EPA administers the program and <u>requested</u> standards development organizations ("SDOs") undertake to develop standards for the program.[15] ASTM, along with other private sector standards organizations, responded — at no cost to the government — to EPA's request. Such participation has now been placed at risk by the Fifth Circuit. The Congressional mandate that federal agencies adopt privately-authored standards and codes — without compromising the authors' copyrights in these stan-

---

10. The 1993 revision of OMB A-119 superseded OMB Circular No. A-119, dated October 26, 1982, which was rescinded.

11. The 1998 revision of OMB A-119 is available at the Defense Standardization Program web site, (http://www.dsp.dla.mil/documents/omb_a119.pdg), and on the White House website, (http://www.whitehouse.gov/omb/circulars/a119/print/a119.html).

12. "All federal agencies must use voluntary consensus standards in lieu of government-unique standards in their procurement and regulatory activities, except where inconsistent with law or otherwise impractical." OMB A-119 (6).

13. NIST's Annual Reports on Implementation of OMB A-119 are *available at* (http://ts.nist.gov/ts/htdocs/210/nttaa/toolkit.htm#ann-rpts).

14. *See* Annual Report for NASA (FY 2001), *available at* (http://standards.nasa.gov/AnnualReportFinal_FY01.pdf).

15. *See* (http://www.epa.gov/opptintr/epp/guidance/standardspage.htm).

dards and codes — has been carried out by federal agencies with great savings to the taxpayers.[16] The Fifth Circuit's opinion places the future of this cooperative arrangement at risk.

### C. SBCCI was the Author and Copyright Owner of the Code and the Fifth Circuit's Decision Deprived It of This Valuable Right.

The Fifth Circuit's opinion terminates or deprives SBCCI of its copyright in the code without any discussion or analysis. The Fifth Circuit initially found: "As the organizational author of original works, SBCCI indisputably holds a copyright in its building codes." *Veeck*, 293 F.3d at 794. The majority continued, however, finding that when two small Texas towns adopted SBCCI's 1984 Standard Building Code,[17] *id.*, SBCCI's copyright somehow terminated, with "the public" then becoming the "final author" and, apparently, its owners. *Id.* at 799.

SBCCI was the author of the code at issue. *Id.* at 794. The copyright in this code, as recognized by the Fifth Circuit, vested in SBCCI at fixation or publica-

---

16. The Department of Defense reported significant cost avoidance or negotiated savings through use of voluntary consensus standards of $106 million for a single year. *Statement of Gregory E. Saunders, Director, Defense Standardization Program Office, Defense Logistics Agency, Before the Subcommittee on Technology, House Committee on Science*, March 15, 2000, available at (http://www.house.gov/science/saunders_031500.htm).

17. The trial court opinion indicates that the two Texas municipalities, Anna and Savoy, "under expressed agreements with SBCCI," enacted ordinances adopting SBCCI's codes by reference. *Veeck v. Southern Bldg. Code Congress Int'l, Inc.*, 49 F.Supp. 2d 885, 887 (E.D. Tex. 1999), *aff'd*, 241 F.3d 398 (5th Cir. 2001), *rev'd and remanded*, 293 F.3d 721 (5th Cir. 2002) (*en banc*).

tion. *Id.* at 794. As a result of the Fifth Circuit's holding, ownership of that bundle of rights was subsequently and involuntarily transferred to the public at the time of its adoption by a local municipality. *Id.* at 799. The legal mechanism of the transfer is neither described nor discussed by the majority. This transfer, on the facts recited, appears to have been involuntary, as SBCCI is nowhere alleged to have consented (and its pleadings and briefs make clear that it did not so consent).[18] The Copyright Act specifically addresses involuntary transfer of copyrights:

> **Involuntary Transfer.** — When an individual author's ownership of a copyright, or any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under Title 11.

17 U.S.C. § 201(e). The Historical and Statutory Notes relating to this sub-section clearly and emphatically state:

> The purpose of this subsection is to reaffirm the basic principle that the United States copyright of an individual author shall be secured to that author, and cannot be taken away by involuntary

---

18. The trial court found that SBCCI expressly reserved its copyright in the codes adopted by the municipalities, and that no waiver of that copyright occurred. *Veeck*, 49 F.Supp 2d at 891.

16

transfer. It is the intent of the subsection that the author be entitled, despite any purported expropriation or involuntary transfer, to continue exercising all rights under the United States statute, and that the governmental body or organization may not enforce or exercise any rights under this title in that situation.

Nothing in the record below demonstrates a voluntary transfer by SBCCI of its copyright in the codes.[19]

The Fifth Circuit's entire discussion of this transfer consists of the following:

> Section 201(e) of the Act reflects Congress' intention to protect copyright's from involuntary appropriation by government entities. 17 U.S.C. § 201(e). This is not, however, a "takings" case, not the least because SBCCI urged localities to adopt its model codes. The issue in the case is not the voluntariness of the appropriation but the legal consequences flowing from the permission that SBCCI gave.

---

19. The Fifth Circuit's own description of the "transactions" between the two municipalities and SBCCI appears to contradict a finding of voluntariness. The Fifth Circuit noted Peter Veeck had easily purchased a copy of the code, which contained a copyright notice and license agreement. *Veeck*, 293 F3d at 793. The Fifth Circuit found ". . . SBCCI continues to assert its copyright prerogatives — exclusively to publish the codes and license their reproduction and distribution — even as to codes that have been adopted by local entities. . . ." *Id.* at 794. The "voluntary" transfer could not have been in writing, as the Fifth Circuit pointed out no licensing agreements are executed by SBCCI in connection with legislative adoption. *Id.* The written documentation requirement of 17 U.S.C. § 204(a) (written instrument required to transfer copyright) was therefore not met. In fact, the trial court's opinion indicates that SBCCI reserved all its rights. *See Veeck*, 49 F.Supp.2d 885, 887 (E.D. Tex. 1999).

17

*Veeck*, 293 F.3d at 803.[20] The Fifth Circuit apparently considered the transfer outside of the scope of § 201(e), although it does not explicitly state this. There is no legal or factual support demonstrated for this proposition.

Intellectual property, as do other types of property, enjoys constitutional protection afforded by the Fifth Amendment's command that "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend V. *See James v. Campbell*, 104 U.S. 356, 358 (1882) (patents); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-04 (1984) (trade secrets). Copyrights are property for purposes of a Fifth Amendment Takings Clause analysis. *See Lane v. First Nat. Bank*, 871 F.2d 166, 174 (1st Cir. 1989); *Roth v. Pritikin*, 710 F.2d 934, 939 (2nd Cir. 1983). The casting of private property into the public domain appears on its face to constitute a government taking; an uncompensated one in the instant case. This issue, potentially affecting a number of organizations and the future ability of all levels of government to utilize privately developed codes, deserves greater explication and analysis then that given to it by the Fifth Circuit. The Fifth Circuit's broad and unsupported holding is

---

20. The Second Circuit Court of Appeals, in *CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.*, 44 F.3d 61 (2nd Cir. 1994), *cert. denied*, 516 U.S. 817 (1995), reached the opposite conclusion: "[A] rule that the adoption of such a reference by a state legislature or administrative body deprived the copyright owner of its property would raise very substantial problems under the Taking Clause of the Constitution." *Id.* at 74.

18

extremely troubling. The lack of legal or factual parameters[21] surrounding this conclusion will inevitably lead to confusion and additional litigation without guidance from this Court.

---

21. The Fifth Circuit does exempt what it terms as "extrinsic standards" from its holding, *Veeck* at 804-05, but otherwise provides no guidance.

19

## CONCLUSION

The Petition for Writ of Certiorari should be granted.

Respectfully submitted,

THOMAS B. O'BRIEN, JR.*
JOSEPH B. SILVERSTEIN
Klett Rooney Lieber & Schorling
12th Floor, Two Logan Square
Philadelphia, PA 19103
(215) 567-7500 (Phone)
(215) 567-2737 (Fax)
 * *Counsel of Record*
   *Counsel for Amicus Curiae*

October 2002