**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL;

NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and

AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,

Plaintiffs/Counter-defendants,

v.

PUBLIC.RESOURCE.ORG, INC.,

Defendant/Counterclaimant.

Case No. 1:13-cv-01215-TSC-DAR

**DEFENDANT PUBLIC RESOURCE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE EXPERT REPORT OF JOHN JAROSZ**

Action Filed: August 6, 2013

**REDACTED VERSION SOUGHT TO BE FILED UNDER SEAL**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ....................................................................................................2

I. MR. JAROSZ LACKS EXPERIENCE OR EXPERTISE TO RENDER MANY OF THE OPINIONS PLAINTIFFS RELY ON IN THEIR MOTION FOR SUMMARY JUDGMENT. ....................................................................................................2

II. JAROSZ DOES NOT USE RELIABLE PRINCIPLES OR METHODOLOGIES TO REACH HIS OPINIONS. ....................................................................................................4

A. Jarosz's Key Opinions Merely Parrot Those of Plaintiffs' Executives Without Independent Validation. ....................................................................................................4

B. Jarosz's Economic Assumptions Are Unfounded. ....................................................................................................5

C. Jarosz Failed to Use Reliable Principles or Methodologies to Render His Opinions Concerning Plaintiffs' Profitability. ....................................................................................................6

D. Jarosz Has Not Identified Reliable Principles or Methods to Determine that Public Resource's Acts Will Affect Standards That Are Not Incorporated by Reference into Law ....................................................................................................7

E. Jarosz's Analysis of Sales Information Is Unreliable. ....................................................................................................7

F. Jarosz's Lack of Reliable Economic Methods Renders His Opinions Inadmissible. ....................................................................................................9

III. JAROSZ IMPERMISSIBLY OPINES ON QUESTIONS OF LAW ....................................................................................................10

CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)....................7

*Capitol Justice LLC v. Wachovia Bank, N.A.*,
706 F. Supp. 2d 34 (D.D.C. 2009)....................3

*Kuhmo Tire Co. v. Carmichael*,
526 U.S. 137 (1999)....................10

*Schwab v. Philip Morris USA, Inc.*,
449 F. Supp. 2d 992 (E.D.N.Y. 2006) ....................3

**RULES**

Fed. R. Evid. 702 ....................1, 3, 9, 10

Fed. R. Evid. 702(a)....................9

Fed. R. Evid. 702(c)....................9

Fed. R. Evid. 702(d)....................9

**OTHER AUTHORITIES**

*Guide to Title 24 California Building Standards Code 2010*, California Building Standards Commission, at 13, *available at* www.documents.dgs.ca.gov/bsc/Title_24/T24TrainingGuide.pdf....................8

*Title 24 Overview: Part 3– California Electrical Code*, California Division of the State Architect (accessed Feb. 3, 2016), http://www.dgs.ca.gov/dsa/Programs/progCodes/title24.aspx#part3 ....................8

## INTRODUCTION

When Public Resource received Mr. Jarosz's expert report, it was so apparent that his opinions were inadmissible and deserved little weight that there was no need to retain an expert to identify the flaws in his opinions. The Court has more than adequate grounds to exclude Jarosz's opinions under Federal Rule of Evidence 702, as unqualified, unreliable, and unhelpful.

With respect to qualifications, the question is not whether Mr. Jarosz has experience as an economist, but whether his qualifications justify admission of his opinions as *expert* opinions. His opinions are largely non-economic in nature; when they touch briefly upon economic expertise, they rest entirely upon the unremarkable proposition that persons generally do and say what they think is to their advantage (*i.e.* "revealed preference theory," *see* Mot. at 18–19). Jarosz's opinions do not rest on his field of expertise but merely repackage conclusory arguments, opinions, and predictions that Plaintiffs have handed him. His background in calculation of monetary damages in IP cases is irrelevant to whether the standards are reasonably available or what standards development organizations would do if they experience a decline in revenue. He has no expertise in the marketplace for standards, in the operations of standards organizations, or in the development of standards.

Moreover, Jarosz's methods are unreliable and frequently indiscernible. As Plaintiffs acknowledge, he conducted no independent research or analysis of the marketplace for standards, operations of standards development organizations, or development of standards. Therefore, he has done no research to make up for his experience deficit. Most of his facts, data, and opinions come from others who are not qualified economics experts and whose opinions he has not shown would be relied upon by professionals in his field. Even his economic opinions rest on impermissibly shaky ground. He has not examined more than a few years of select Plaintiffs'

sales data, considered the necessity of Plaintiffs' historic costs, or even been able to opine that his predicted outcomes are more likely than not.

If Plaintiffs had retained Jarosz to calculate a reasonable royalty based on his assuming infringement, which appears to be his typical assignment, perhaps he would have provided admissible opinions. But in testimony about whether Plaintiffs would suffer irreparable harm, he failed to offer qualified or reliable opinions. Therefore, his report should be stricken.

## ARGUMENT

### I. MR. JAROSZ LACKS EXPERIENCE OR EXPERTISE TO RENDER MANY OF THE OPINIONS PLAINTIFFS RELY ON IN THEIR MOTION FOR SUMMARY JUDGMENT.

Public Resource does not dispute that Mr. Jarosz would be qualified generally to calculate damages in IP litigation involving ordinary market dynamics. But that is not what he does in this case. His opinions in this case stray far from his expertise. His report is full of opinions unrelated to his economic background, including his opinions that:



results in the "highest quality standards." SMF ¶ 265 (Jarosz Rep. ¶¶ 51–53).

These opinions do not rest on Jarosz's experience observing the workings of the invisible hand of economics but on unfounded assumptions and speculation that Plaintiffs' executives

handed him. Contrary to Plaintiffs' assertion that Jarosz's report merely evaluated the economic impact of intellectual property infringement (Pls. Opp. 4), the opinions identified above reveal that Jarosz's assignment had little to do with evaluating economics. Thus, Plaintiffs' broad assertion that economics expertise applies across industries is irrelevant to the bulk of Jarosz's testimony and cannot establish his qualifications in this case.

Moreover, even when it comes to economic opinions, Jarosz lacks experience or expertise in the particular field that this case concerns. Standards development organizations are nonprofit entities with multiple constituencies including government, the public, industry, and academia. Plaintiffs' standards, even if interpreted as "products," have a number of indirect positive and negative externalities not common to products, like widgets, that are the subject of classic economic theory. Although this distinction underscores the numerous unreliable assumptions Jarosz makes in reaching his conclusions, his lack of familiarity with standards organizations confirms his lack of experience or expertise to apply classical economic principles to these particular facts credibly.

Finally, Plaintiffs contend that Jarosz's lack of relevant experience and expertise goes to the weight of his testimony, not his admissibility. That is contrary to Rule 702 and is not supported by the cases upon which they rely. In *Capitol Justice LLC v. Wachovia Bank, N.A.*, 706 F. Supp. 2d 34, 41 (D.D.C. 2009), the court held that the expert in commercial real estate was adequately qualified under Rule 702 to consider the value of real estate and tribute rights. Further argument about the expert's qualifications went to the weight of his testimony, because the court *had already determined* he met the threshold established by Rule 702. Similarly, in *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1133 (E.D.N.Y. 2006), the dozens of

proposed experts were all qualified in their particular fields and offered opinions relevant to their specific fields of expertise.

Because Jarosz's testimony strays from his expertise and experience, the Court should exclude his opinion.

## II. JAROSZ DOES NOT USE RELIABLE PRINCIPLES OR METHODOLOGIES TO REACH HIS OPINIONS.

### A. Jarosz's Key Opinions Merely Parrot Those of Plaintiffs' Executives Without Independent Validation.

Many of Jarosz's supporting facts and conclusions rest on the unvalidated statements of Plaintiffs' executives. *E.g.*, Rubel Decl. Ex. 1 ¶ 76 n.133



¶ 81 n.142 ¶ 84 n. 154 ¶ 107 n. 192 ¶ 108 n. 193–195 ¶ 109–110, n. 196–199

Plaintiffs do not attempt to show that these statements, or similar statements in Jarosz's report, are of the type on which economists normally rely. Plaintiffs further do not attempt to show that Jarosz actually verified or validated these claims. Without more, Plaintiffs cannot show that Jarosz's methodology of relying on Plaintiffs' self-serving and unsupported statements was reliable.

Moreover, Plaintiffs' effort to justify Jarosz's unquestioned reliance on Emily Bremer's two law review articles is not persuasive. Plaintiffs are unable to produce a case showing that law review articles are the kind of resources upon which economists generally rely. (Nor did they offer any expert testimony of Ms. Bremer.) Instead, Plaintiffs cite to authority concerning academic publications generally. Unlike most academic publications, law reviews generally, and the two law reviews in which Ms. Bremer's articles appear, are student-edited, non-peer

reviewed publications. Nor do Plaintiffs provide any credible connection between Ms. Bremer's government experience and either her qualifications or Jarosz's reliance on her conclusions.

**B. Jarosz's Economic Assumptions Are Unfounded.**

Plaintiffs attack a straw-man argument by stating that every issue need not be quantified. The deficiency of Jarosz's report is not merely that it is unquantified but that it is speculative: he revealed at deposition that, when he opined that an event was likely or expected, he did not mean it was more than 50 percent likely. Instead, when he said something was "expected," he meant it was more than five percent likely, but not necessarily more than ten percent likely to occur. Jarosz Dep. 241:07–242:08 (Declaration of Matthew Becker in Support of Public Resource's Reply to its Motion for Summary Judgment ¶ 2, Ex. 1.) Not only does this render his ultimate opinions unreliable, but they are also unhelpful to the factfinder because this Court cannot rely on his statements of future probability as proof by a preponderance of the evidence, or with any reasonable degree of scientific certainty.

Plaintiffs' explanation as to why a statistical model would be an ill fit is similarly lacking. Jarosz did not say that he would be unable to construct a model based on the assumption that Public Resource would make all incorporated standards publicly available, and that Plaintiffs' standards would be incorporated into law at a similar rate they have been in the past. Moreover, the fact that people can copy and redistribute the incorporated standards is not a variable that would need to be calculated in such a model, but rather a factual assumption. And despite Plaintiffs' suggestion to the contrary, this limited opinion that the free availability of incorporated standards would affect Plaintiffs' revenues is not the heart of Jarosz's opinion.

**C. Jarosz Failed to Use Reliable Principles or Methodologies to Render His Opinions Concerning Plaintiffs' Profitability.**

Jarosz opined that [redacted] (Jarosz Rep. ¶ 140). In support of their claims that Public Resource's actions would harm their revenue, rather than help it, Plaintiffs contend that Jarosz also examined the potential for the incorporated standards to compete against free, publicly available versions. Nothing in his report or testimony suggests that he did this. His opinions rest on assumptions about the inability of Plaintiffs to profit without copyright protection, but he does not apply reliable principles or methods to determine what decrease in revenue, if any, would be sufficiently significant to deprive Plaintiffs of the resources necessary to continue developing the standards.

Furthermore, he does not apply reliable principles or methodologies to support his assumption that Plaintiffs could not reduce their costs without degrading the quality of the standards. That assumption is particularly unreliable given Plaintiffs' nonprofit nature and in light of technological developments that reduce the cost and necessity of travel and in-person meetings. Jarosz implicitly assumes, without substantiating, that Plaintiffs' historic costs are indispensable. Although that assumption may be acceptable for a theoretical company selling widgets in a classical economic model, it is not obviously the case for nonprofit standards development organizations that are making tens of millions of dollars in net income from the sale of standards written by volunteers. Plaintiffs also do not experience the pressure from market competition that typically forces businesses to eliminate unnecessary costs. As a result, it is conspicuous that Jarosz fails to address whether Plaintiffs could cut extraneous costs. Without that analysis in Jarosz's report, his conclusions are unreliable.

### D. Jarosz Has Not Identified Reliable Principles or Methods to Determine that Public Resource's Acts Will Affect Standards That Are Not Incorporated by Reference into Law

Plaintiffs contend that Public Resource's acts of posting incorporated standards would be a slippery slope that would harm Plaintiffs' other sources of revenue. Jarosz lacks support for this opinion in his report, and Plaintiffs cannot rehabilitate his opinion by citation to *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994), a case involving whether fair use protected parody. Plaintiffs cannot justify an inference that the facts in this case concerning standards incorporated by reference into the law would have any effect on standards that have never been incorporated into law. Nor does Jarosz identify any reliable economic principles or methodology to determine that Plaintiffs' secondary publications about the standards would lose a competitive advantage, as it does not appear he examined any competitive secondary publications.

### E. Jarosz's Analysis of Sales Information Is Unreliable.

Jarosz's analysis of Plaintiffs' sales is unreliable. He accepted Plaintiffs' representations that some of their "crown jewel" standards drive a majority of sales without verifying those facts. He further accepted, without verification such as through a survey, hearsay speculation about motivations of people in purchasing ASHRAE memberships. Those are not the types of facts that economists generally take at face value without verification. Moreover, his comparison of one annual dip in sales of the 2011 National Electric Code ("NEC") to one annual dip in sales of the 2008 NEC is unreliable. He confused coincidence with causation by failing to eliminate alternative explanations for the decrease in sales of the 2011 NEC, such as that the 2008 NEC had saturated the market, relative demand for construction and engineering services between the two periods, and other factors that affected Plaintiffs' sales.

Moreover, comparing only two isolated points of data is itself a limited sample of data that lacks reliability. Whether there was a causal connection would be better illuminated by

considering a broader range of data. Specifically, data from years when standards were not posted on Public Resource's site is necessary for any principled analysis.

Further, when Plaintiffs say that Public Resource's 2008 posting of the California Electrical Code, which includes an amended version of the 2008 NEC, was an "attenuated link to the 2008 NEC [and] hardly the same as posting the NEC outright" (Pls. Opp. at 18), they overstate the distinctions between the California Code and the 2008 NEC: the California Electric Code contains the NEC, with any California amendments called out in italics.[1] But more fundamentally, Plaintiffs ignore the fact that Public Resource had posted other state codes in 2008 that did include the entire unmodified 2008 NEC, such as the Alabama Building Commission Administrative Code, which consisted of the complete, unmodified 2008 NEC with five pages of Alabama-specific material placed at the front of the document. Supplemental Declaration of Carl Malamud in Further Support of Defendant's Motion for Summary Judgment ¶¶ 5–7, Ex. 16. Moreover, Plaintiffs acknowledge that Jarosz failed to consider that issue entirely. The Court should exclude Jarosz's report because he failed to apply any basic methodologies that economists employ to determine causation.

Plaintiffs also falsely accuse Public Resource of lacking care in reviewing Jarosz's report because they claim that Jarosz excluded Plaintiffs' lobbying expenses from his analysis. That is not the case. Jarosz does not appear to have discounted the fees spent on lobbying efforts in determining Plaintiffs' net income. Jarosz Rep. ¶ 83 ([redacted] Plaintiffs are further

---

[1] *See Title 24 Overview: Part 3– California Electrical Code*, California Division of the State Architect (accessed Feb. 3, 2016), http://www.dgs.ca.gov/dsa/Programs/progCodes/title24.aspx#part3; *Guide to Title 24 California Building Standards Code 2010*, California Building Standards Commission, at 13, *available at* www.documents.dgs.ca.gov/bsc/Title_24/T24TrainingGuide.pdf.

unable to demonstrate that Jarosz applied his methods reliably given his numerous flagrant errors, including the publication date, previous declines in sales, and his assumption that each access to Public Resource's site hosting the incorporated standards constituted a lost sale. Jarosz's report fails to establish either the degree of purported revenue loss that Plaintiffs might experience or that Plaintiffs' purported economic harm is immeasurable.

### F. Jarosz's Lack of Reliable Economic Methods Renders His Opinions Inadmissible.

Plaintiffs cannot justify Jarosz's failure to apply any reliable economic theories to the facts in this case. Plaintiffs point to Jarosz's deposition where he claims to have applied price theory to the facts of this case, but they ignore that he was unable to say anything more specific about it. Lu Decl. Ex. 1 172:22–25. Basic price theory states that a price will reflect the interaction of supply and demand. Jarosz could not explain its application to this case because he did not render an opinion on the price of the incorporated standards, and even if he did, that lone theory fails to provide a reliable basis for his numerous other opinions.

Plaintiffs also claim that Jarosz's experience can substitute for reliable principles and methodology, but that distorts Rule 702 and common sense. Rule 702 sets forth an expert's experience and expertise, and use of reliable methods, as separate requirements for admissibility. Even an experienced witness may use unreliable methods. The unreliability of Jarosz's opinions is not the result of a formalistic distinction between scientific and technical knowledge, as Plaintiffs argue. Plaintiffs draw upon language from Rule 702(a), but the relevant failure of Jarosz's testimony is under both Rule 702(c), concerning whether his testimony is the product of reliable principles and methods, and Rule 702(d), concerning whether he applied such principles reliably to the facts of this case.

Nothing in *Kuhmo Tire Co. v. Carmichael*, which Plaintiffs cite in their opposition, supports Plaintiffs' argument here. 526 U.S. 137, 147 (1999). Because Jarosz's opinions are not the product of reliable principles and he did not reliably apply economic principles to the facts of this case, the Court should exclude his opinions.

## III. JAROSZ IMPERMISSIBLY OPINES ON QUESTIONS OF LAW

Jarosz opines on the issues of whether Plaintiffs' injury is immeasurable or incommensurate. These legal conclusions are unhelpful to the Court as trier of fact in this case. Equally important is that Jarosz's opinions did not take into account different potential rulings of this court, including a possible ruling based on copyright fair use. To the extent the Court decides this case on that issue, Jarosz's opinions are simply irrelevant and the Court should exclude them entirely on that additional basis.

## CONCLUSION

The Court should strike Jarosz's report from Plaintiffs' motion for summary judgment. Mr. Jarosz's opinions range far beyond economic prognostication. Plaintiffs rely on Jarosz to parrot their fears and speculations about what will occur once the public learns that they are entitled to access the law without a paywall. In doing so, Jarosz has taken many shortcuts, from adopting far-fetched assumptions to relying uncritically on incomplete facts and data supplied by Plaintiffs. These render his opinion unreliable and unhelpful. And Jarosz lacks the relevant specific experience and expertise to render each of the opinions in his report. Where he does wade into facts and data, his analysis is shallow, relying almost entirely on statements from Plaintiffs' executives made during the course of litigation, and on a single author with close ties to one of the Plaintiffs, who does not claim to be a qualified economist.

Because, for these reasons, Mr. Jarosz's report fails all of the criteria in Rule 702, the Court should exclude it and not consider it on Plaintiffs' motion for summary judgment.

Dated: February 4, 2016

Respectfully submitted,

*/s/ Andrew P. Bridges*

Andrew P. Bridges (admitted)
abridges@fenwick.com
Sebastian E. Kaplan (*pro hac vice* pending)
skaplan@fenwick.com
Matthew Becker (admitted)
mbecker@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Corynne McSherry (admitted *pro hac vice*)
corynne@eff.org
Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW
Washington, DC 20005
Telephone: (202) 905-3434

*Attorneys for Defendant-Counterclaimant*
Public.Resource.Org, Inc.