UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>    Plaintiffs/<br>    Counter-Defendants,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>    Defendant/<br>    Counter-Plaintiff. | Case No. 1:13-cv-01215-TSC |

**SUPPLEMENTAL DECLARATION OF JAMES T. PAULEY
IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT
AND A PERMANENT INJUNCTION**

I, James T. Pauley, declare as follows:

1. I am the President and Chief Executive Officer of the National Fire Protection Association ("NFPA") and have been since July 1, 2014. I am generally responsible for the management, direction and administration of NFPA and its activities, including NFPA's standards development activities. The following facts are based upon my own personal knowledge, and if called upon to do so, I could and would testify competently thereto.

2. I previously submitted a declaration in November 2015, in support of Plaintiffs' Motion for Summary Judgment (Dkt. 118-8). That declaration provided background regarding NFPA, its standards development process and standards, and the importance of copyright to its

ability to serve its overall mission.  I submit this declaration to provide additional testimony in support of Plaintiffs' Second Motion for Summary Judgement and a Permanent Injunction.

## NFPA Owns Copyrights in Its Standards

3. NFPA owns the copyrights to over 300 standards it has published.  This litigation involves 23 of NFPA's copyrighted standards.

4. True and correct copies of the following NFPA standards are attached as exhibits hereto[1] and filed under seal so they cannot be copied and distributed:

| Designation | Edition | Title | Exhibit |
|---|---|---|---|
| NFPA 1 | 2003 | Uniform Fire Code | A |
| NFPA 1 | 2006 | Uniform Fire Code | B |
| NFPA 10 | 2002 | Standard for Portable Fire Extinguishers | C |
| NFPA 11 | 2005 | Standard for Low Medium and High Expansion Foam | D |
| NFPA 12 | 2005 | Standard on Carbon Dioxide Extinguishing Systems | E |
| NFPA 13 | 2002 | Installation of Sprinkler Systems | F |
| NFPA 25 | 2002 | Inspection, Testing and Maintenance of Water-Based Fire Protection Systems | G |
| NFPA 30 | 2003 | Flammable and Combustible Liquids Code | H |
| NFPA 54 | 2006 | National Fuel Gas Code | I |
| NFPA 58 | 2001 | Liquefied Petroleum Gas Code | J |
| NFPA 58 | 2004 | Liquefied Petroleum Gas Code | K |
| NFPA 59 | 2004 | Utility LP Gas Plant Code | L |
| NFPA 70 | 1999 | National Electrical Code | M |
| NFPA 70 | 2005 | National Electrical Code | N |
| NFPA 70 | 2008 | National Electrical Code | O |
| NFPA 70 | 2014 | National Electrical Code | P |
| NFPA 72 | 2002 | National Fire Alarm Code | Q |
| NFPA 99 | 2005 | Health Care Facilities Code | R |
| NFPA 101 | 2000 | Life Safety Code | S |
| NFPA 101 | 2003 | Life Safety Code | T |
| NFPA 101 | 2006 | Life Safety Code | U |
| NFPA 704 | 2007 | Standard System for the Identification of the Hazards of Materials for Emergency Response | V |

---

[1] NFPA previously filed a true and correct copy of NFPA 70 (2011 ed.), the National Electrical Code ("NEC"), as Exhibit A to the declaration of Christian Dubay, Dkts. 155-6 (redacted); 154-2 (motion to seal), 162 (sealed).

5. NFPA previously submitted the copyright registration certificates for NFPA 70, the National Electrical Code (2011 ed.) and (2014 ed.), as Exhibits A & B to the declaration of Dennis Berry (Dkt. 118-3). Copyright registration certificates for NFPA's other standards at issue in this litigation are attached hereto as set forth below.

6. NFPA owns a United States copyright registration for NFPA 1 (2003 ed.), the Uniform Fire Code. Attached as Exhibit W to this declaration is a true and correct copy of the registration certificate for this work, TX 5-970-602.

7. NFPA owns a United States copyright registration for NFPA 1 (2006 ed.), the Uniform Fire Code. Attached as Exhibit X to this declaration is a true and correct copy of the registration certificate for this work, TX 6-261-668.

8. NFPA owns a United States copyright registration for NFPA 10 (2002 ed.) the Standard for Portable Fire Extinguishers, NFPA 13 (2002 ed.) Installation of Sprinkler Systems, NFPA 25 (2002 ed.) Inspection, Testing and Maintenance of Water-Based Fire Protection Systems, registered under the title "National Fire Codes Vol. 1-12 and Master Index." Attached as Exhibit Y to this declaration is a true and correct copy of the registration certificate for this work, TX 5-752-623.

9. NFPA owns a United States copyright registration for NFPA 11 (2005 ed.) the Standard for Low Medium and High Expansion Foam. Attached as Exhibit Z to this declaration is a true and correct copy of the registration certificate for this work, TX 6-160-768.

10. NFPA owns a United States copyright registration for NFPA 12 (2005 ed.) the Standard on Carbon Dioxide Extinguishing Systems. Attached as Exhibit AA to this declaration is a true and correct copy of the registration certificate for this work, TX 6-232-876.

11.     NFPA owns a United States copyright registration for NFPA 30 (2003 ed.) Flammable and Combustible Liquids Code.  Attached as Exhibit BB to this declaration is a true and correct copy of the registration certificate for this work, TX 5-905-038.

12.     NFPA owns a United States copyright registration for NFPA 54 (2006 ed.) National Fuel Gas Code.  Attached as Exhibit CC to this declaration is a true and correct copy of the registration certificate for this work, TX 6-261-666.

13.     NFPA owns a United States copyright registration for NFPA 58 (2001 ed.) Liquefied Petroleum Gas Code (title registered as "National Fire Codes Vol 3").  Attached as Exhibit DD to this declaration is a true and correct copy of the registration certificate for this work, TX 5-401-672.

14.     NFPA owns a United States copyright registration for NFPA 58 (2004 ed.) Liquefied Petroleum Gas Code.  Attached as Exhibit EE to this declaration is a true and correct copy of the registration certificate for this work, TX 5-956-112.

15.     NFPA owns a United States copyright registration for NFPA 59 (2004 ed.) Utility LP Gas Plant Code.  Attached as Exhibit FF to this declaration is a true and correct copy of the registration certificate for this work, TX 5-953-205.

16.     NFPA owns a United States copyright registration for NFPA 70 (1999 ed.) National Electrical Code.  Attached as Exhibit GG to this declaration is a true and correct copy of the registration certificate for this work, TX 4-092-419.

17.     NFPA owns a United States copyright registration for NFPA 70 (2005 ed.) National Electrical Code.  Attached as Exhibit HH to this declaration is a true and correct copy of the registration certificate for this work, TX 6-108-410.

18.     NFPA owns a United States copyright registration for NFPA 70 (2008 ed.) National Electrical Code.  Attached as Exhibit II to this declaration is a true and correct copy of the registration certificate for this work, TX 6-966-113.

19.     NFPA owns a United States copyright registration for NFPA 72 (2002 ed.) National Fire Alarm Code.  Attached as Exhibit JJ to this declaration is a true and correct copy of the registration certificate for this work, TX 5-841-133.

20.     NFPA owns a United States copyright registration for NFPA 99 (2005 ed.) Health Care Facilities Code.  Attached as Exhibit KK to this declaration is a true and correct copy of the registration certificate for this work, TX 6-153-939.

21.     NFPA owns a United States copyright registration for NFPA 101 (2000 ed.) Life Safety Code.  Attached as Exhibit LL to this declaration is a true and correct copy of the registration certificate for this work, TX 5-371-918.

22.     NFPA owns a United States copyright registration for NFPA 101 (2003 ed.) Life Safety Code.  Attached as Exhibit MM to this declaration is a true and correct copy of the registration certificate for this work, TX 5-841-134.

23.     NFPA owns a United States copyright registration for NFPA 101 (2006 ed.) Life Safety Code.  Attached as Exhibit NN to this declaration is a true and correct copy of the registration certificate for this work, TX 6-294-334.

24.     NFPA owns a United States copyright registration for NFPA 704 (2007 ed.) Standard System for the Identification of the Hazards of Materials for Emergency Response. Attached as Exhibit OO to this declaration is a true and correct copy of the registration certificate for this work, TX 6-445-855.

**Incorporation by Reference of NFPA's Standards**

25. Federal agencies, states, and local governments sometimes incorporate NFPA's standards (or portions thereof) by reference into their regulations, statutes, or ordinances. Such entities frequently set forth their own amendments or modifications that are specific to their respective jurisdictions. We refer to an entity (usually a governmental body) that enforces a standard as an Authority Having Jurisdiction ("AHJ"). It is the incorporating entity of agency or the relevant AHJ, not NFPA, that decides which legal duties will apply, to whom those duties will apply, and the procedures and policies relating to enforcement, within the entity's or the AHJ's jurisdiction.

26. The NFPA standards at issue in this litigation provide that there may be *other ways*, in addition to those set out within a published standard, for persons within a jurisdiction to satisfy their particular legal obligations. For example, NFPA 54, 2006 ed., the National Fuel Gas Code, states that its provisions "are not intended to prevent the use of any material, method of construction, or installation procedure not specifically prescribed by this code, provided any such alternative is acceptable to the authority having jurisdiction." Ex. I at ch. 1.4 "Equivalency" (NFPA-PR0014798). I am aware that substantively similar provisions appear in each of the other standards at issue.

27. Although AHJs or other entities may incorporate our standards by reference, portions within each of our standards provide options or examples. As explained in, for example, the 2014 NEC (NFPA 70), the standards include "Permissive Rules" which are defined as "those that identify actions that are allowed but not required, are normally used to describe options or alternative methods, and are characterized by the use of the terms *shall be permitted* or *shall not be required*." Ex. P at art. 90-5(B) (NFPA-PR0098088). An example of such an optional rule is article 324.56(A) of the 2014 NEC regarding FCC Systems Alterations, which

6

states "Alterations to FCC systems shall be permitted. . . . It shall be permitted to leave unused cable runs and associated cable connectors in place and energized." *Id.* at art. 324.56(A) (NFPA-PR0098260).

28. Further, all of NFPA's standards include text that does not set forth any obligation.  I describe these sections below.

    a. **Prefatory Notices:**  NFPA's standards generally include a section setting forth notices, including information regarding the voluntary consensus standards development process, and disclaimers and copyright information, regarding the publication.

    b. **History, Development and Edition Information:**  NFPA's standards generally include introductory and background information about, for example, the origin of the standards and its purpose, relation to other standards, and edition-specific information.

    c. **Reference and Informational Notes:**  NFPA's standards often include in-line informational notes throughout the text of each standard.  The informational notes provide context, background, cross-references, and other explanatory material.  For some of our standards, the text explicitly qualifies the informational notes as "not enforceable as requirements."  For example, article 90-5(C) of the 2014 NEC (NFPA 70) provides: "Explanatory material, such as references to other standards, references to relates sections of this *Code*, or information related to a *Code* rule, is included in this *Code* in the form of informational notes." Ex. P at art. 90-5(C) (NFPA-PR0098088).  As the NEC makes clear: "such notes are *informational only and are no enforceable as requirements of this Code*." *Id.*

(emphasis added).  An example of the type of material written in informational notes is art. 110-11, Informational Note No. 2, of the same publication: "Some cleaning and lubricating compounds can cause severe deterioration of many plastic materials used for insulating and structural applications in equipment." *Id.* at art. 110-11 n.2 (NFPA-PR0098100).  Someone could paraphrase or use their own words to describe this same information, rather than copying NFPA's words.

d. **Diagrams, Figures, and Illustrations:**  NFPA's standards generally include diagrams, figures, or illustrations that depict material set forth in the text of the standard, but that do not themselves state any legal duty.  For example, in the 2014 NEC, Figure 220.1 provides a graphical summary of how the text of Article 220 is organized.  Ex. P at Figure 220.1 (NFPA-PR0098129).  If someone wanted to write their own description of the organizational structure of Article 220, that person could do so using different words or different illustrations than the one NFPA created.

e. **Examples:**  NFPA's standards generally include non-exhaustive lists or exemplary calculations.  For example, in the 2014 NEC, article 550.4(A) lists examples of a mobile home not intended as a dwelling unit: "those equipped for sleeping purposes only, contractor's on-site offices, construction job dormitories, mobile studio dressing rooms, banks, clinics, mobile stores, or intended for the display or demonstration of merchandise or machinery." *Id.* at art. 550.4(A) (NFPA-PR0098568).  These illustrative examples do not impose any requirement. If someone wanted to create their own list of examples of a mobile home that is not intended as a dwelling unit, that person could come up with their own

8

examples, could use different words to describe even the examples that NFPA provides, and could list their examples in a different order.

f.  **Informational Annexes:**  All of the standards in this litigation, and our standards generally, include informational annexes.  These informational annexes typically provide that they are *informational only*, although they can contain a variety of material.  For example, Annex A to NFPA 13 (2002 ed.), Installation of Sprinkler Systems, is entitled "Explanatory Material," which states "Annex A is not a part of the requirements of this NFPA document but is included for informational purposes only.  This annex contains explanatory material numbered to correspond with the applicable text paragraphs."  Ex. F at Annex A (NFPA-PR0014507). Some informational annexes contain standards that may be binding, but only if an AHJ specifically incorporates the informational annex by reference.  For example, Annex H to NFPA 70 (2014 ed.), the National Electrical Code, is entitled "Administration and Enforcement."  That annex specifically states that it is "not a part of the requirements of this NFPA document and is included for informational purposes only . . . unless specifically adopted by the local jurisdiction adopting the National Electrical Code®."  Ex. P at Annex H (NFPA-PR0098919).

g.  **Proposal Forms:**  Our standards generally include information about the committee process and proposal forms so the reader can submit suggested language for future editions.

29.  The non-binding materials I have described in the preceding paragraph serves NFPA's overall goal of public safety by providing the ultimate user of the standard—whether an

engineer, contractor, architect, or anyone else—with additional references or material related to the subject of the standard.

### PRO's Continues to Copy and Distribute NFPA's Standards and Use NFPA's Trademarks and Logo

30.     I am aware that Public.Resource.Org has copied and published NFPA's 2017 National Electrical Code to the Internet Archive website.

31.     In addition, I am aware that after the D.C. Circuit remand, Public.Resource.Org re-posted NFPA's standards to the Internet Archive website.  Those versions have received many more views and downloads since they were reposted.  Anyone can freely download, copy, print and redistribute these versions of NFPA's standards from the Internet Archive website.

32.     I understand that Public.Resource.Org has represented that it has removed all of the Plaintiffs' logos from the versions of the standards it posts to the Internet Archive website. PRO has not removed the trademarked logo for the National Electrical Code.  *See* Berry Decl. ¶¶ 8-9, Exs. H, I (trademarks for NFPA 70 and NEC logo).

### PRO Interferes with NFPA's Actual and Potential Market for Its Standards

33.     NFPA depends on the sale of standards to fuel its overall mission-driven work.  In 2018, NFPA's publication sales accounted for approximately 64% of NFPA's total operating revenues.  The vast majority of that revenue is from the sale of codes and standards, including those standards that have been incorporated by reference.

34.     NFPA's standards are purchased and used predominantly by industry professionals and tradespeople (either individually or by their companies and organizations) who use these standards in the course of their business, such as contractors, engineers, electricians, architects, and electrical equipment manufacturers.

35. The versions of our standards posted by Public.Resource.Org and available for unrestricted download and use compete directly with our standards in the market. If the professionals and tradespeople are able to access and download nearly-identical standards without incurring any cost through Public.Resource.Org's postings to the Internet Archive, they will not buy our publications (or use our free access website, as I discuss more below). This hurts our revenue and, in turn, ability to pursue our overall mission.

36. NFPA also earns significant revenue from licensing its standards to other companies and organizations to use in their products and services, for example, derivative works like checklists based on the standards. Pursuant to those licenses, NFPA provides licensees with copies of its standards or portions thereof in formats that the licensee may use in conjunction with software or other forms of dissemination. NFPA's licenses likely would lose significant value if the licensees or their customers could obtain the same material from Public.Resource.Org in digital format, without cost, and without restrictions on further dissemination.

37. Public.Resource.Org's postings threaten NFPA's ability to control the further dissemination and use of its standards. Because Public.Resource.Org offers unrestricted and anonymous access to NFPA's standards in multiple formats (unlike NFPA's free access), NFPA has absolutely no means of tracking down those individuals who use Public.Resource.Org's versions of NFPA's standards for their commercial businesses, or for sale to other individuals and entities.

38. Although our revenue is somewhat cyclical with our publications (higher when new publications are released), in recent years, NFPA's revenue from the sale of standards has been declining. We attribute this decline, at least in part, to Public.Resource.Org's making

copies of NFPA's standards widely available, including for use by those same industry professionals who would otherwise purchase copies or digital subscription access.

## Public.Resource.Org's Postings Contain Errors

39. I understand that Public.Resource.Org converted NFPA standards to different formats and posted those versions on the internet. The conversion process inevitably resulted in errors. For example, I am aware that the full text version of the 2011 version of the NEC that was posted to Public.Resource.Org's website contains many errors.[2] These include many obvious typographical errors, but they also include errors that distort the meaning of the standard. Some of those errors are:

    a. Article 310.10(F) of the 2011 NEC addresses conductors used in direct-burial applications, and states: "Cables rated above 2000 volts shall be shielded." This requirement that high-voltage cables in direct-burial applications be shielded is important to prevent damage to the cables and a resulting risk of electrical shock. This language, however, is completely omitted from the full text version that was posted on Public.Resource.Org's website.

    b. Article 424.59 of the 2011 NEC states that "heaters installed within 1.2m (4 ft) of the outlet of an air-moving device . . . may require turning vanes, pressure plates, or other devices on the inlet side of the duct heater to ensure an even distribution of air over the face of the heater." In Public.Resource.Org's full text version however, the "m"—representing meters—is incorrectly rendered as "in"—which represents inches. In other words, the Public.Resource.Org version says that the

---

[2] Public.Resource.Org makes this version available at https://archive.org/details/gov.law.nfpa.nec.2011.

requirement is only triggered if a heater is less than 1.2 inches from an air-moving device, rather than the correct and much greater distance of 1.2 meters.

c. Article 430.35(B) of the 2011 NEC states that "motor overload protection shall not be shunted or cut out during the *starting* period if the motor is automatically started" (emphasis added). Inadequate motor overload protection can result in overheating and damage. In Public.Resource.Org's full text version, however, this provision incorrectly says that motor overload protection shall not be shunted or cut out during the "*stalling* period" (emphasis added).[3]

d. There are many typographical errors in the cross-references in Public.Resource.Org's full text version. In order to understand a provision of the NEC that contains a cross-reference, the user must be able to identify and refer to the Article identified in that cross-reference. However, Public.Resource.Org's full text version contains many erroneous cross-references including in Articles 310.10(E), 410.140(D), 430.75, 504.70, 645.10(B), 670.3(B), 680.25(B).

**NFPA Provides Free Access to the Standards**

40. Since 2006, NFPA has offered a dedicated website that provides free access to its standards. It has been and remains committed to providing the full text of NFPA standards that have been incorporated by reference available, without cost, for viewing on its website.

41. Each of the 23 standards at issue in this litigation is available through a link, and after logging into that individual's account, on our free access website, available at https://www.nfpa.org/Codes-and-Standards/All-Codes-and-Standards/Free-access.

---

[3] https://archive.org/stream/gov.law.nfpa.nec.2011/nfpa.nec.2011_djvu.txt (the incorrect language also appears out of order under section 430.42 in the full text version).

42.     This access ensures that if someone does not have ready access to a printed copy of a particular standard, that person can locate and read the material that is of interest to them.[4] Thousands of individuals access NFPA's standards through the free access website each year. This access is "read only," meaning that someone viewing the material online cannot download, copy, or disseminate the published standard.

43.     We believe that our read only access appropriately balances our rights and our need to generate revenue to pursue our mission with the desire of others to read the codes and standards. We also believe that it is efficient to spread the cost of the standards development activity across the world of professionals who use our standards to do their jobs such that any one is paying a reasonable cost (around $100 or less) for a copy of one of our standards. I created a video regarding this balance which is available on our website at https://www.nfpa.org/Codes-and-Standards/All-Codes-and-Standards/Free-access.

44.     When NFPA becomes aware of jurisdictions that incorporate its standards by reference, NFPA encourages those jurisdictions to link their websites to NFPA's free, online version of the standards. NFPA provides a "Free Access Widget" that easily enables such access.

45.     NFPA views this free access as in furtherance of its overall mission. Read only access allows any member of the public wishing to know what an incorporated standard says on any topic that may be of interest to that member of the public. NFPA's free access also encourages increased visits to NFPA's website. Users who visit NFPA's website may engage with NFPA on public-safety awareness efforts, trainings, and publications. NFPA hopes that

---

[4] NFPA makes other accommodations available for visually impaired individuals who can either contact NFPA directly, or use NFPA's standards in accessible format through the National Library System's access for visually impaired individuals.

these individuals may someday become members, contributors, and otherwise involved in NFPA's important work.

### NFPA's CodeFinder™ and Other Informational Resources

46.     NFPA has also devoted resources to researching and consolidating information regarding which jurisdictions have incorporated NFPA standards into local, state, or federal laws or regulations.  This information is provided as an informational and educational resource so the public can know which NFPA standards govern in particular jurisdictions.

47.     NFPA offers two dedicated websites with this information:  The NEC Adoptions Map, https://www.nfpa.org/NEC/NEC-adoption-and-use/NEC-adoption-maps, and CodeFinder™ https://codefinder.nfpa.org.  As NFPA explains to the public when they use the CodeFinder™ tool:  "Publication of this tool is for the sole purpose of creating general public awareness of some of the jurisdictions where [AHJs] may require the use of NFPA codes and/or standards."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed this 4th day of October, 2019 at Quincy, Massachusetts.

                                                                                          _____
                                                                                          JAMES T. PAULEY