# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR TESTING AND
MATERIALS d/b/a ASTM INTERNATIONAL;

NATIONAL FIRE PROTECTION
ASSOCIATION, INC.; and

AMERICAN SOCIETY OF HEATING,
REFRIGERATING, AND AIR CONDITIONING
ENGINEERS,

                Plaintiffs/Counter-defendants,

      v.

PUBLIC.RESOURCE.ORG, INC.,

                Defendant/Counterclaimant.

Case No. 1:13-cv-01215-TSC

**PUBLIC RESOURCE'S MEMORANDUM OF POINTS & AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT
AND PERMANENT INJUNCTION AND IN SUPPORT OF PUBLIC RESOURCE'S
SECOND MOTION FOR SUMMARY JUDGMENT**

**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL]**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 4

    I.    INCORPORATION BY REFERENCE ................................................... 4

        A.    The Nature of Incorporation by Reference .................................... 4

        B.    The Process of Incorporation by Reference .................................. 5

        C.    *Documents* Are the Objects of Incorporation, Not Their Underlying Text ........................................................................... 5

        D.    Incorporation by Reference Versus Extrinsic Unincorporated Standards ..................................................................................... 6

        E.    All Standards Incorporated into Law Are Government Edicts That Also Have the Force of Law ................................................. 7

    II.    THE ASHRAE, ASTM, AND NFPA STANDARDS AS LAW ........................... 8

        A.    The Standards as Laws by Incorporation ...................................... 8

        B.    Discrepancies in the Editions Incorporated into Law .................. 8

        C.    The Standards Are Obsolete as Standards but Still Relevant as Law. ......................................................................................... 10

        D.    Drafting and Publication .............................................................. 10

            1.    The drafters were volunteers who did not need a copyright incentive ......................................................... 10

            2.    Federal Government Employees' Joint Authorship ...................... 11

            3.    Plaintiffs claim a professional and public safety purpose, not a law-promoting purpose, for publishing the standards at issue ........................................................ 11

    III.    STANDARDS THAT HAVE BECOME LAW ARE NOT GENERALLY AND FREELY ACCESSIBLE. ................................................... 12

    IV.    PUBLIC RESOURCE HAS HAD NO EFFECT ON THE STANDARDS' SALES. ................................................................... 13

i

# TABLE OF CONTENTS
## (Continued)

**Page(s)**

V.      AFTER SIX YEARS OF LITIGATION, PLAINTIFFS STILL HAVE NO EVIDENCE OF CONSUMER CONFUSION. ...............................................14

VI.     PUBLIC RESOURCE AND CARL MALAMUD ...............................................15

    A.      Carl Malamud's Record of Public Service ................................................15

    B.      Public Resource's Mission..........................................................................16

PROCEDURAL BACKGROUND............................................................................................16

VII.    THE COORDINATED CASES AND THE EARLIER ORDER.........................16

VIII.   THE COURT OF APPEALS VACATED THE INJUNCTION, RESERVED THE QUESTION OF ENFORCEABILITY OF COPYRIGHT IN THE LAW, AND REMANDED FOR A FULLER FAIR USE ANALYSIS. ...................................................................................17

IX.     INTERACTIONS BETWEEN THE PARTIES AFTER THE APPEAL..............18

ARGUMENT ............................................................................................................................18

I.      PUBLIC RESOURCE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ITS POSTING OF LAWS BY REFERENCE IS A LAWFUL FAIR USE. ...............................................................................18

    A.      The Fair Use Analysis Must Turn on the Special Status of the Works. .......................................................................................................19

    B.      The Section 107 Preamble Describes Public Resource's Actions. .........................................................................................................21

    C.      First Factor: Public Resource's Use is Noncommercial and Transformative.........................................................................................21

    D.      Second Factor: The Nature of the Works Heavily Favors Fair Use. ..........................................................................................................25

    E.      Third Factor: Public Resource Uses No More Than Necessary for Its Purpose. ........................................................................................26

    F.      Fourth Factor: Plaintiffs Have No Evidence of Market Harm...................27

## TABLE OF CONTENTS
### (Continued)

**Page(s)**

II.    PUBLIC RESOURCE'S INCLUSION OF PLAINTIFFS' TRADEMARKS IN POSTED DOCUMENTS IS A NOMINATIVE FAIR USE. ................................................................................................30

    G.    Plaintiffs Distort the Third Circuit's Framework for Nominative Fair Use. ..........................................................................................31

        1.    The incorporated standards at issue are not readily identifiable without use of Plaintiffs' marks. ................................32

        2.    Public Resource includes no more than reasonably necessary. .................................................................................34

        3.    Public Resource has not done anything to suggest sponsorship or endorsement by Plaintiffs. .....................................35

X.    PLAINTIFFS CANNOT JUSTIFY A PERMANENT INJUNCTION. ...............37

    A.    The Standard for a Permanent Injunction After *eBay v. MercExchange*. ....................................................................37

    B.    Plaintiffs Present No Evidence of Irreparable Injury to Any Valid Legal Interest. .................................................................37

    C.    The Balance of Hardships Does Not Favor Plaintiffs' Control Over the Law. .........................................................................39

    D.    A Prior Restraint Would Violate the Constitution and Harm the Public Interest. ........................................................................40

        1.    An injunction would impair First Amendment rights. ...................41

        2.    An injunction would undermine due process and the rule of law. ....................................................................................42

        3.    Plaintiffs have no evidence that development of technical standards would suffer in the absence of an injunction. ................................................................................43

III.    SUBSTANTIAL QUESTIONS OF FACT CONCERNING OWNERSHIP OF THE COPYRIGHTS PRECLUDE SUMMARY JUDGMENT FOR PLAINTIFFS. ..........................................................44

**TABLE OF CONTENTS**
**(Continued)**

**Page(s)**

CONCLUSION.............................................................................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492 (1988)................................................................................................40, 41

*Am. Inst. of Physics v. Winstead PC*,
    No. 3:12–CV–1230–M, 2013 WL 6242843 (N.D. Tex. Dec. 3, 2013) ...................................24

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
    896 F.3d 437 (D.C. Cir. 2018) ................................................................................ *passim*

*Apple, Inc. v. Samsung Elecs. Co.*,
    678 F.3d 1314 (Fed. Cir. 2012).........................................................................................38

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d Cir. 2015)..............................................................................................26

*Aviva USA Corp. v. Vazirani*,
    902 F. Supp. 2d 1246 (D. Ariz. 2012), *aff'd*, 632 Fed. App'x 885 (9th Cir. 2015)................34

*Banks v. Manchester*,
    128 U.S. 244 (1888)................................................................................................7, 25

*Bellwether Props., LLC v. Duke Energy Ind., Inc.*,
    87 N.E.3d 462 (Ind. 2017) .................................................................................................1, 2

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006)..............................................................................................22, 24

*Bldg. Officials & Code Adm. v. Code Tech., Inc.*,
    628 F.2d 730 (1st Cir. 1980)...............................................................................................42

*Bond v. Blum*,
    317 F.3d 385 (4th Cir. 2003) .............................................................................................24

*Bounds v. Smith*,
    430 U.S. 817 (1977)...........................................................................................................42

*Callaghan v. Myers*,
    128 U.S. 617 (1888)............................................................................................................7

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994).....................................................................................................20, 25, 27

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.*
44 F.3d 61 (2d Cir. 1994) ................................................................................................6, 7

*Century 21 Real Estate Corp. v. Lendingtree, Inc.*,
425 F.3d 211 (3d Cir. 2005).........................................................................................31, 33

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*,
97 F.3d 1504 (1st Cir. 1996)............................................................................................44

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)...................................................................................3, 37, 39, 40

*Eldred v. Ashcroft*,
537 U.S. 186 (2003).........................................................................................................19

*First Nat'l Bank of Boston v. Bellotti*,
435 U.S. 765 (1978).........................................................................................................19

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc) ......................................................................38, 39

*Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*,
391 F.3d 312 (1st Cir. 2004) (*per curiam*)................................................................ *passim*

*Globe Newspaper Co. v. Superior Court for Norfolk Cty.*,
457 U.S. 596 (1982).........................................................................................................20

*Golan v. Holder*,
565 U.S. 302 (2012).........................................................................................................19

*Gray v. Russell*,
10 F. Cas. 1035 (C.C.D. Mass. 1839) ..............................................................................7

*Grayned v. City of Rockford*,
408 U.S. 104 (1972).........................................................................................................42

*Griswold v. Connecticut*,
381 U.S. 479 (1965).........................................................................................................19

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985).........................................................................................................28

*Hassett v. Welch*,
303 U.S. 303 (1938).........................................................................................................25

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ...............................................37

*Howell v. Miller*,
   91 F. 129 (6th Cir. 1898) (Harlan, J.) ..................................7

*Hustler Magazine, Inc. v. Moral Majority, Inc.*,
   606 F. Supp. 1526 (C.D. Cal. 1985) ....................................21

*Int'l Code Council, Inc. v. Nat'l Fire Protection Ass'n, Inc.*,
   No. 02 C 5610, 2006 WL 850879 (N.D. Ill. March 27, 2006) ...............44

*Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*,
   846 F.2d 1079 (7th Cir. 1988) ...............................................36

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de CV*,
   762 F.3d 867 (9th Cir. 2014) ...............................................37

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   387 F.3d 522 (6th Cir.) .......................................................24

*Mathews Conveyer Co. v. Palmer-Bee Co.*,
   135 F.2d 73 (6th Cir. 1943) .................................................20

*New Kids on the Block v. News Am. Publ'g, Inc.*,
   971 F.2d 302 (9th Cir. 1992) ........................................ *passim*

*Nieman v. VersusLaw, Inc.*,
   512 Fed. App'x 635 (7th Cir. 2013) ....................................20

*Packingham v. North Carolina*,
   137 S. Ct. 1730 (2017).........................................................19

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) .............................................21

*Playboy Enters., Inc. v. Welles*,
   279 F.3d 796 (9th Cir. 2002) .........................................33, 36

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
   121 F.3d 516 (9th Cir. 1997) ...............................................6

*Righthaven, LLC v. Jama*,
   No. 2:10–CV–1322 JCM (LRL), 2011 WL 1541613 (D. Nev. April 22, 2011) ...............26

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)..................................................................................................26

*Stanley v. Georgia*,
   394 U.S. 557 (1969)..................................................................................................20

*State of Georgia v. Public.Resource.Org, Inc.*,
   U.S. Supreme Court No. 18-1150.........................................................................7, 20

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014)..........................................................................23, 24, 26

*TD Bank N.A. v. Hill*,
   928 F.3d 259 (3d Cir. 2019)................................................................................37, 39

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) .................................................................................36

*TrafficSchool.com, Inc. v. Edriver Inc.*,
   653 F.3d 820 (9th Cir. 2011) ...................................................................................37

*United States v. Myers*,
   553 F.3d 328 (4th Cir. 2009) .................................................................................4, 25

*Veeck v. Southern Building Code Congress International Inc.*,
   293 F.3d 791 (5th Cir. 2002) (en banc), *cert. denied*, 539 U.S. 969 (2003)...............32, 38, 43

*Warren Publ'g Co. v. Spurlock*,
   645 F. Supp. 2d 402 (E.D. Pa. 2009) ......................................................................26

*Wheaton v. Peters*,
   33 U.S. 591 (1834)....................................................................................................25

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)......................................................................................................40

**STATUTES AND REGULATIONS**

1 C.F.R. §§ 51.1–51.11 .................................................................................................4

24 C.F.R. Part 200........................................................................................................33

24 C.F.R. § 3280.4(aa)(4) (2019) .................................................................................6

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

34 C.F.R. § 668.146 .................................................................................................5, 12

41 C.F.R. § 60.17 (2011) .............................................................................................32

49 C.F.R. § 192.7 (2009) ..........................................................................................6, 22

5 U.S.C. § 552(a) ..........................................................................................................5

5 U.S.C. § 552(a)(1) ......................................................................................................4

17 U.S.C. § 101 ...........................................................................................................44

17 U.S.C. § 102(b) .......................................................................................................19

17 U.S.C. § 105 ...........................................................................................................44

17 U.S.C. § 107.................................................................................................20, 21, 27

17 U.S.C. § 409(2) .......................................................................................................45

46 U.S.C. § 3306 .........................................................................................................26

46 U.S.C. § 3318 .........................................................................................................26

49 U.S.C. § 60120 ........................................................................................................25

2002 National Electrical Safety Code ("NESC") ...............................................1, 2, 3

Cal. Code of Regs., Title 24, Part 3 ........................................................................4, 5, 8

Federal Register Act (Pub. L. No. 74-220, ch. 417, 49 Stat. 500–503 (July 26, 1935)................42

N.J. Admin. Code 11:3–10.4(a)(1)(iii) (1988).............................................................7

N.Y. Comp. Codes, R. & Regs. tit. 11, § 216.7(c)(1)(i) (1990) ...................................7

Public Law No. 103-41 (1993) ....................................................................................7

U.S. Const. amend. I ........................................................................................... *passim*

U.S. Const. amend. V..........................................................................................3, 41, 42

U.S. Const. amend. XIV ......................................................................................3, 41, 42

U.S. Const. art. I § 8.....................................................................................................19

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

RULES

Minn. Admin. Rule 4761.2460, Subp. 2(C)............................................................................4

OTHER AUTHORITIES

1 Goldstein on Copyright
     § 2.5.2, at 2:51.............................................................................................................40

4 McCarthy on Trademarks and Unfair Competition
     § 23:11 (5th ed.)......................................................................................................34, 35

Nina A Mendelson, *Private Control over Access to Public Law: The Perplexing*
     *Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737, 771 (2014)...............42

Antonin Scalia, *The Rule of Law as a Law of Rules*,
     56 U. Chi. L. Rev 1175, 1179 (1989) ....................................................................................42

Incorporation by Reference (IBR) Handbook of the Office of the Federal Register......................5

Institute of Electrical and Electronic Engineers ("IEEE")........................................................1, 2, 3

National Archives, *Code of Federal Regulations Incorporation by Reference*,
     https://www.archives.gov/federal-register/cfr/ibr-locations.html........................................5, 25

National Electrical Code 2005 Edition ("NFPA")....................................................................2, 6

National Electrical Code ("NEC")........................................................................................34, 41

*Oil Suit Dismissed in Supreme Court*, N.Y. Times, Oct. 2, 1934, at 6..........................................42

U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices (Third)*
     §§ 503.2, 613.5 (2017).............................................................................................................45

## INTRODUCTION

Defendant Public Resource aims to do one simple, important thing: to provide a complete database of laws and regulations so that people can know, understand, and debate the rules that govern them. Public Resource does so by presenting to the public, without fee or restriction, complete laws and regulations. That includes documents that federal and state governments have enacted into law through incorporation by reference, an important and often overlooked category of laws. It makes laws and regulations available online to all, including those who are visually impaired and those who cannot travel to the offices where governments store them.

Public Resource provides a crucial public service. While this lawsuit has been pending, the Indiana Supreme Court experienced the benefits of Public Resource's work firsthand. *See Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 468–69 (Ind. 2017). The court faced a statute of limitations question that turned upon Indiana's adoption and incorporation by reference of the 2002 version of the National Electrical Safety Code (NESC), which the Institute of Electrical and Electronic Engineers (IEEE) had promulgated. *Id.* at 465. The parties hadn't submitted the incorporated NESC, and the Indiana Supreme Court needed to know what the law said. So a court employee asked the relevant government agency to furnish a copy of NESC for the Supreme Court's study. The agency refused, saying the court employee could make an appointment to inspect the NESC, but she could neither get a copy nor check it out for the court because of restrictions imposed by the publisher. *Id*. at 468.

How did Indiana's Supreme Court find the 2002 NESC, to *learn its own state's law*? By visiting the Internet Archive. *Id*. at 469 (citing https://ia600704.us.archive.org/16/items/gov.law.

ieee.c2.2002/ieee.c2.2002.pdf). How did Internet Archive have it? Public Resource put it there.[1] Public Resource's Second Supplemental Statement. of Material Facts (SSSMF) ¶ 80.

The Indiana Supreme Court described the crux of the problem: "If the rule of law means anything, it is that persons have meaningful access to the laws they are obliged to follow, so they can conform their conduct accordingly." *Id*. at 467. The court noted that, if *it* had difficulty accessing the NESC to learn its own Indiana law, perhaps the plaintiff had a similar difficulty, which would bear on application of the discovery rule and the limitations issue in that case. The court remanded the case for a determination of whether, and when, the substance of the Indiana law had become "sufficiently in the public domain." *Id*. at 470.

The Indiana court was not the first to find it hard to learn laws by incorporation. In a published decision, for example, the First Circuit stated that neither counsel nor the court itself could find and access the 1987 version of Plaintiff NFPA's standard NFPA 30, which Rhode Island law had incorporated by reference and on which a counterclaim depended. *See Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 320–21 (1st Cir. 2004) (*per curiam*).[2]

---

[1] Public Resource requests that the Court take judicial notice that the 2002 edition of the NESC that the Indiana Supreme Court cited is a resource on the Internet Archive website by examining the online location cited; that the metadata page for this document indicates that it was "Uploaded by Public.Resource.Org," *see* https://archive.org/details/gov.law.ieee.c2.2002 and https://ia600704.us.archive.org/16/items/gov.law.ieee.c2.2002/ieee.c2.2002.pdf_meta.txt; that Internet Archive hosts Public Resource's materials; and that the "cover sheet" of the document on the Internet Archive website is characteristic of other Public Resource postings of incorporated laws. *See, e.g.*, JA806(ASTM-Dkt-118-12). Public Resource also requests that the Court take judicial notice that IEEE describes the 2002 version of the NESC as "inactive–superseded," even though it is still Indiana law. *See* http://ieeexplore.ieee.org/document/6516109/.

[2] The case turned on compliance with a state law that incorporated the 1987 version of Plaintiff NFPA's standard NFPA 30. Like the standards at issue here, the 1987 version was obsolete as a standard but still relevant as law. The trial judge asked for a copy. Counsel could find the 2000 version but not the 1987 version. The court then searched for a copy but could not locate it. *Id.* at 320. The court ruled against the party relying on the law because no one could find it. *Id.* at 321. A concurring opinion noted that the 1987 edition of NFPA 30 was "not so readily available" and was not retrievable by common legal research methods. *Id.* at 330 (Lipez, J., concurring).

The Indiana and First Circuit decisions illustrate two propositions. First, in this case's unique circumstances, a permanent injunction—the sole relief Plaintiffs seek—cannot be proper. Indeed, had the earlier injunction in this case extended to the 2002 version of the NESC (whose publisher, IEEE, has supported Plaintiffs as amicus), Indiana's highest court might never have found it. That would have harmed the public interest. So would an injunction here. Any injunction here would impose an intolerable burden upon fundamental rights under the First, Fifth, and Fourteenth Amendments. The Supreme Court in *eBay Inc. v. MercExchange, L.L.C.* made it *Plaintiffs'* burden to establish *all four* prerequisites for a permanent injunction in copyright cases, including that the injunction would not disserve the public interest. 547 U.S. 388, 391 (2006).

Second, the courts' difficulties show why the public interest must be the touchstone of the fair use analysis for every incorporated standard at issue here. Public Resource posts the law to serve a public purpose—access to the law—that differs from Plaintiffs' purpose. The works in question are legal facts: as the D.C. Circuit recognized, where the consequence of incorporation by reference is the same as if the document had been copied into legislation, the second factor favors fair use. This is precisely the case here. By the same token, Public Resource has posted only what governments have expressly incorporated into law and, therefore, what is necessary to understand the standards' "legal import." Finally, in six years of litigation Plaintiffs have never produced a shred of evidence of market harm attributable to Public Resource. Nor have they shown any genuine prospect of confusion because the documents bear some of Plaintiffs' marks.

The guideposts of the Constitution and the Copyright Act, and decisions from numerous courts, all call for summary judgment for Public Resource on the copyright claims. Trademark law standards, including nominative fair use and the lack of confusion, also foreclose Plaintiffs' effort to make a trademark law end-run around copyright principles to suppress public access to the law.

## STATEMENT OF FACTS

### I.    INCORPORATION BY REFERENCE

#### A.    The Nature of Incorporation by Reference

Incorporation by reference is an alternative to pasting language into a government's published laws or regulations. *See* 5 U.S.C. § 552(a)(1); 1 C.F.R. §§ 51.1–51.11. As the Office of the Federal Register explained, material incorporated by reference, "like any other properly issued rule, has the force and effect of law." SSSMF ¶ 2; *cf. United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009) (statutory provision incorporated by reference has same force of law as incorporating enactment itself). The federal government began incorporating some materials by reference, instead of reproducing them, to limit the bulk of the Code of Federal Regulations (C.F.R.). SSSMF ¶ 3. It encourages agencies to follow this practice. *Id.*

States and municipalities also turn standards into law through incorporation by reference or by reproducing an entire standard verbatim in the text of the law. *See, e.g.*, Minn. Admin. Rule 4761.2460, Subp. 2(C); Cal. Code of Regs., Title 24, Part 3.

Public Resource intends to post only standards that have become federal or state laws through incorporation by reference. SSSMF ¶ 72. For example, the National Electrical Code has been incorporated by reference into federal law as well as published verbatim in the California Electrical Code. *See* Cal. Code of Regs., Title 24, Part 3.

Standards development organizations (SDOs) often lobby governments to incorporate their standards by reference or otherwise make their standards law. Plaintiffs have extensive lobbying operations to ensure that the standards they publish are incorporated into the law, and existing incorporations are updated to include more recent editions of the standards. SSSMF ¶¶ 49-64.

### B.      The Process of Incorporation by Reference

The process of incorporation by reference is careful and deliberate. At the federal level, it starts when an agency responsible for a regulation publishes a notice in the Federal Register concerning the agency's intent to incorporate a standard into law and asks the public to submit comments. SSSMF ¶ 10. After the notice and comment process, the agency will determine whether to incorporate the standard by reference. SSSMF ¶ 18. If the agency incorporates the standard by reference, and the Director of the Federal Register approves it, the standard becomes the law of the United States. 5 U.S.C. § 552(a).

State adoptions are equally rigorous. For example, California incorporates model codes into Title 24 of its Code of Regulations on a triennial cycle, with a 45-day public-comment period, a six-month publication requirement, and a three-month delay for local governments to implement them. The California Building Standards Law precisely defines this process. SSSMF ¶ 15.

SDOs, including Plaintiffs, benefit from the incorporation of standards into law. SSSMF ¶ 50, 54. Adoption into law promotes efforts of sponsoring SDOs to make their standards influential in industry. In addition, when the Code of Federal Regulations incorporates a standard, the code itself directs readers to the SDO that published the standard, effectively promoting sales of the standard. *E.g.*, 34 C.F.R. § 668.146. The OFR directs people who want to read an incorporated standard to "contact the standards organization that developed the material." SSSMF ¶ 20.

### C.      *Documents* Are the Objects of Incorporation, Not Their Underlying Text

The Incorporation by Reference (IBR) Handbook of the Office of the Federal Register specifies that, if an agency refers to material in a regulation, it must consider whether the material is necessary to understand or comply with the regulation. If so, the agency must seek IBR approval

from the Director of the Federal Register. *Id.* at p. 2 (citing 5 U.S.C. § 552(a)). To be eligible for IBR, the material must be *published* and "impossible or impractical" to print in the C.F.R. *Id.* at 6.

According to the Director of Legal Affairs and Policy at the Office of the Federal Register, if an agency identifies a *document* in its IBR language and does not specify a specific section of that document, then the incorporation by reference extends to the *entire document*. Malamud Decl. ¶ 40, Ex. 34. Where a federal agency intends to incorporate only specific provisions of a standards document, it is explicit. For example, 24 C.F.R. § 3280.4(aa)(4) (2019) states that only specific portions of the 2005 edition of the National Electrical Code, NFPA 70, should be incorporated into law. In contrast, 49 C.F.R. § 192.7 (2009) incorporated by reference the full 2005 edition of the National Electrical Code, NFPA 70. As Public Resource shows below and in Exhibits 89-91 to the Declaration of Matthew Becker, federal law has incorporated by reference every one of the documents at issue here at least once, and state laws have incorporated many as well.[3]

### D.    Incorporation by Reference Versus Extrinsic Unincorporated Standards

Government edicts, including the C.F.R., sometimes refer to external documents without formally incorporating them into law. When a document is referred to but not formally incorporated, it is only an "extrinsic standard." *See, e.g.*, *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516 (9th Cir. 1997) (regulations required Medicare and Medicaid claimants to use a medical coding system but did not incorporate the system into law). Likewise, *CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.* concerned one of several automobile

---

[3] Each of the ASHRAE and NFPA standards that Public Resource posted are precisely the editions that are incorporated by reference into law. In a few discrete instances, when attempting to post the relevant law, Public Resource accidentally posted an edition of an ASTM standard that was not the precise edition listed in the C.F.R. incorporating language, but which was very close (often an identical "reissue" of the same standard, that differs only in the addition of a reissue date added to the title of the standard, with no editorial or substantive changes). Public Resource addresses this below.

valuation references that regulations approved for use in insurance adjusting. 44 F.3d 61 (2d Cir.

1994). The regulation stated, "[m]anuals approved for use are…The Redbook," without any

mention of incorporating those manuals into enforceable laws. N.Y. Comp. Codes, R. & Regs. tit.

11, § 216.7(c)(1)(i) (1990), *cited in CCC*, 44 F.3d at 73 n.29; *see also* N.J. Admin. Code 11:3–

10.4(a)(1)(iii) (1988) (same).

### E. All Standards Incorporated into Law Are Government Edicts That Also Have the Force of Law.

In a series of nineteenth-century cases, the United States Supreme Court held that judicial

writings and other official legal works "published under the authority of" the State are not "the

proper subject of private copyright." *Callaghan v. Myers*, 128 U.S. 617, 649–50 (1888) (quoting

*Gray v. Russell*, 10 F. Cas. 1035, 1039 (C.C.D. Mass. 1839) (Story, J.)). This rule is known as the

government edicts doctrine. The rule of course covers texts with binding legal effect, which once

adopted by the State, can be published as "found in any printed book." *Howell v. Miller*, 91 F. 129,

137 (6th Cir. 1898) (Harlan, J.).

By adopting the standards at issue as law, governments made the standards into

government edicts, not subject to copyright. Moreover, those edicts also have the force of law.[4]

---

[4] The government edicts doctrine includes legal works that lack independent, binding force if they embody the legal authority of state actors. *See Banks v. Manchester*, 128 U.S. 244, 253 (1888) (excluding all judicial work from copyright). Many government edicts do not have the force of law. For example, Public Law No. 103-41 (1993) designated a week in 1993 as "Lyme Disease Awareness Week." That was a government edict, to which all persons should have free access, and over which no person should have a copyright monopoly – even if a private party may have drafted the text and even though it imposed no legal obligation and carried no penalty for a violation. The question of whether government edicts are uncopyrightable is currently pending before the U.S. Supreme Court in *State of Georgia v. Public.Resource.Org, Inc.*, U.S. Supreme Court No. 18-1150.

## II.     THE ASHRAE, ASTM, AND NFPA STANDARDS AS LAW

### A.     The Standards as Laws by Incorporation

The federal government has incorporated into law every entire standard at issue. To guide the Court through the relevant regulations, Public Resource has prepared three detailed tables showing the citation and text of at least one federal incorporation into the C.F.R. of each complete standard. Becker Decl. ¶¶ 56-58, Exs. 89-91. Because the C.F.R. may incorporate a standard multiple times, the table lists additional citations where Public Resource is aware of them.

State governments also have incorporated the standards. Where Public Resource knows those incorporations, it has added them as illustrative but not exhaustive examples of state incorporation. Sometimes states do not simply incorporate a standard by reference but publish the text verbatim in their laws or regulations. For example, California publishes the text of the National Electrical Code verbatim in the California Electrical Code. *See* Cal. Code of Regs., Title 24, Part 3. NFPA asserts copyright over this section of the California Code of Regulations and prohibits California from making it freely available to its citizens. SSSMF ¶¶ 236-7.

To avoid burdening the Court beyond the already lengthy documents, Public Resource has included incorporating text for only a single representative example of incorporation by reference of each standard in its table. If the Court requests, Public Resource will submit an amended table with the text of every incorporating regulation it knows of, and it can provide printed copies of respective pages of the C.F.R. and state laws and regulations.

### B.     Discrepancies in the Editions Incorporated into Law

Plaintiffs previously acknowledged in their first motion for summary judgment, Dkt. 118-1 at 9, that "Each standard at issue here has been incorporated by reference by at least one governmental entity." Plaintiffs now belatedly raise two technicalities for the first time.

First, Plaintiffs now state, six years into litigation, that some of the incorporating regulations have been updated to refer to more recent editions of the standards, and current regulations no longer incorporate the standards that Public Resource posted online before this lawsuit. Plfs. SSSMF Section III.B. This is correct, and it is the natural result of Plaintiffs' lobbying at federal, state, and local levels to update incorporations to more recent versions of standards. SSSMF ¶¶ 49-64. While more recent editions of these same standards are now current law, courts still must adjudicate cases concerning regulations that were previously in force. *See, e.g.*, *Getty Petroleum Mktg.*, 391 F.3d at 316 n.5 (1st Circuit panel was unable to find 1987 edition of NFPA 30; it noted that, even after repeal of the incorporating regulation, "to properly address [the legal question at issue] we refer to Rhode Island law as it existed at the time of [the dispute], that is, the provisions in effect in 2000"). Not only are earlier laws by incorporation necessary for courts to know and apply in numerous contexts, but earlier laws by incorporation also remain relevant for research into historical government actions and development of the law.

Second, Plaintiffs state that, in some instances, Public Resource posted editions of ASTM standards that are not the precise editions incorporated into law. Plfs. SSSMF Section III.B. Matching the published editions of a standard with the regulatory text incorporating that standard is a challenging process. One of Plaintiffs' representatives expressed difficulty in identifying which edition of their own standards had been incorporated. SSSMF ¶ 83. ASTM's standards are the most complex to identify. In fact, ASTM devoted over a page of its filing to explaining to the Court how to parse its citations. ASTM SSSMF ¶¶ 33-35. The overwhelming majority of Public Resource's postings are correct, including many instances *ASTM* incorrectly cited in its statement of facts. SSSMF ¶ 82. Although Mr. Malamud sought to post only the incorporated standards, in some instances Public Resource posted an edition of an ASTM standard that is not the precise the

edition named in the C.F.R. In most of these instances, the edition that Public Resource posted is an *identical reissue* of the incorporated standard—meaning the only difference between what was posted and the document cited in the C.F.R. is that the title adds a second, reissue, date in parentheses. All other text is identical. SSSMF ¶ 84.

In a minority of instances, Public Resource posted an edition of the ASTM standard that had a different superscript epsilon designation (i.e. "$^{e1}$"), meaning that there was some minor editorial (not substantive) distinction between the incorporated standard and the edition Public Resource posted. For example, one had added keywords. In very few instances, Public Resource posted an edition of an ASTM standard that ASTM identifies as having what it refers to as a "substantive" difference with the edition incorporated into law. SSSMF ¶ 82..[5]

C.     **The Standards Are Obsolete as Standards but Still Relevant as Law.**

When the Plaintiffs sued, all but *one* of the standards were obsolete as standards yet still relevant as law. Today, all either superseded or withdrawn. Becker Decl. ¶¶ 56-58, Exs. 89-91.

D.     **Drafting and Publication**

1.     **The drafters were volunteers who did not need a copyright incentive.**

The Plaintiffs provide a framework by which a committee of volunteers—government officials, industry representatives, academics, and other technical experts—weigh proposals for appropriate methods, processes, procedures, specifications, and other standards. SSSMF ¶ 184-93. Volunteer committee members suggest and evaluate both new language and revised language, weighing and implementing language proposals from federal, state, and local government

---

[5] Public Resource always strives for accuracy of its postings. Any error is unfortunate, but the existence of errors does not bear on fair use analysis as to standards that are duly incorporated. The Plaintiffs have made their own mistakes, as their frequent errata demonstrate, and they are hypocritical in attacking Public Resource for typographical errors.

employees; academics; and others. *Id*. They debate the scope, structure, and wording of standards, working to a consensus on the final form to reflect either minimally acceptable or best industry practices using the most precise, scientific terms possible. *Id*. Plaintiffs' employees facilitate that process, but they do not author the standards or control the final content. *Id*.

The drafters of the standards received no royalties for their work. SSSMF ¶ 184-93. Instead, their motivation rested upon professional and public interests, including advancing the field of testing and education and obtaining professional recognition. SSSMF ¶ 194-5.

### 2. Federal Government Employees' Joint Authorship.

Plaintiffs' copyright registrations for the standards at issue falsely identified the standards as "works made for hire." SSSMF ¶ 196. Plaintiffs later said they owned the standards by assignment. SSSMF ¶ 199. After discovery showed that Plaintiffs had not obtained valid assignments for nearly every standard at issue, Plaintiffs finally claimed (after discovery had closed) that all contributors to the standards were "joint authors." Among the volunteers who drafted the standards, whom Plaintiffs now claim are joint authors, were federal government employees who were acting in the scope of their official duties as representatives of the federal government. SSSMF ¶ 199-224.

### 3. Plaintiffs claim a professional and public safety purpose, not a law-promoting purpose, for publishing the standards at issue.

Plaintiffs' missions are variously "[t]o advance the arts and sciences of heating, ventilation, air conditioning and refrigeration," "to eliminat[e] death, injury, property and economic loss due to fire, electrical and related hazards," and "[t]o be recognized globally as the premier developer and provider of voluntary consensus standards, related technical information, and services that promote public health and safety, support the protection and sustainability of the environment, and

11

the overall quality of life." SSSMF ¶ 114-16. Public Resource's mission is to share the law. Declaration of Carl Malamud ("Malamud Decl.") ¶ 38.

## III. STANDARDS THAT HAVE BECOME LAW ARE NOT GENERALLY AND FREELY ACCESSIBLE.

Without the database that Public Resource provides, citizens—and, as we have seen, even courts and litigants— have few options for accessing laws and regulations by incorporation.

First, one may make an appointment to visit the National Archives in Washington, D.C., to read a paper version of a federally incorporated standard. *See, e.g.*, 34 C.F.R. § 668.146. This option does not provide meaningful access for persons without the means to travel to Washington, or persons with visual disabilities, and it does not allow computer-aided analysis.

Second, one can sometimes purchase copies. This can be not only expensive but also sometimes difficult, because where, as here, the standards are currently effective *as law* but obsolete *as standards,* at least some publishers apparently see little reason to make them widely available. Some standards are available only on paper and therefore unavailable to persons with visual disabilities or for computer-aided analysis. SSSMF ¶ 31. And many older standards are not available for purchase. *Id*.

Third, one can search libraries for standards. Contrary to the SDOs' suggestion, library availability is poor; libraries typically carry current standards but not earlier standards that still function as law, and library copies are typically only on paper. *See, e.g.*, *Getty Petroleum Mktg., Inc.*, 391 F.3d at 330 (Lipez, J., concurring).

Finally, one can access some standards through online "reading rooms" that, with one exception (NFPA's), were all established only after Public Resource highlighted the lack of public access. SSSMF ¶ 33. Nevertheless, some laws by incorporation are not available in the reading rooms, including some of the standards Plaintiffs publish. *Id*.

Few take advantage of reading rooms (see Plf. SSSMF ¶ 97-98), for at least one clear reason: Plaintiffs discourage it. ████ created its ████████████ reading room in 2013 as an ████████████████████████████████████████ ████████████ SSSMF ¶ 39. To use ASTM or NFPA's reading rooms, one must first register by providing one's name and email address (for ASTM also a residence address and phone number), and then agree to extensive terms of use that include unfavorable forum selection clauses, consent to jurisdiction in a potentially distant court, and an agreement that ASTM owns copyright over the standards in its reading room. SSSMF ¶ 37-40. NFPA uses personal information it gathers from its reading room for marketing purposes. *Id.*

Having run a registration gauntlet, a visitor can gain access to the standard only in a small box on the screen, with sometimes degraded text and in a small font that is difficult to read. Magnification makes the text blurry. Usually only a small part of each page of the standard is visible at once; with greater magnification a single line cannot be viewed without scrolling. Each page of each standard bears a superimposed warning that the material is copyrighted. Plaintiffs' reading rooms do not allow use by the print-disabled of screen-reading software to access the standards; search or analysis of the standards; or copy/paste, print, or save functions. SSSMF ¶ 44.

## IV.  PUBLIC RESOURCE HAS HAD NO EFFECT ON THE STANDARDS' SALES.

Updated information shows Plaintiffs have suffered no loss from Public Resource. Public Resource first posted NFPA standards in 2008 and began posting ASTM and ASHRAE standards soon afterwards. Despite 11 years of sales data to draw on, including periods when Public Resource posted the standards, Plaintiffs have not produced any concrete example of harm. Instead, Plaintiffs rely on the same speculation that the Court of Appeals found unconvincing.

ASTM had previously admitted ████████████████████████████████
████. SSSMF ¶ 137. Even now, ASTM has no evidence of lost sales. In fact, ASTM's sales have increased despite Public Resource's activities. SSSMF ¶ 153.

ASHRAE stated that it had not attempted to determine what, if any, losses were attributable to Public Resource's activities, and it was unable to identify any evidence of harm in response to a recent interrogatory request. SSSMF ¶ 150, 154.

NFPA asserts that "revenue is somewhat cyclical with publications, but in recent years, NFPA's revenue from the sale of standards has been declining [and] NFPA attributes this decline, at least in part, to PRO's making copies of NFPA's standards . . . ." Plfs. SSSMF ¶ 100. NFPA's only support for this statement is the bare assertion of its CEO. Dkt. 198-50 ¶ 39. NFPA's internal sales reports and analyses show ████████████████████████████████
████████████████████████ Becker Decl. Ex. 77. The "cyclical" nature of publication revenue reflects the fact that once standards become outdated, as every standard at issue is here, revenue plummets, whether posted by Public Resource or not. Plfs. SSSMF ¶ 100.

Plaintiffs' expert, John Jarosz, asserted that Public Resource's activities "would" threaten the market for their products. Four years later, there is no evidence that threat has become a reality. Plfs. SSSMF ¶ 91. Plaintiffs have no evidence that any person who might have viewed a standard provided by Public Resource or the Internet Archive would otherwise have purchased it. The versions Public Resource posts online may be more popular than those available via Plaintiffs' reading rooms, but that is likely due to the challenges of using those rooms.

## V.   AFTER SIX YEARS OF LITIGATION, PLAINTIFFS STILL HAVE NO EVIDENCE OF CONSUMER CONFUSION.

Four years ago, Plaintiffs lacked evidence of a single instance of consumer confusion. After remand to reassess the likelihood of confusion factors on the trademark claim, Plaintiffs still have

no evidence of consumer confusion, eleven years after Public Resource posted the first standards at issue. SSSMF ¶ 133-165.

## VI.     PUBLIC RESOURCE AND CARL MALAMUD

### A.     Carl Malamud's Record of Public Service

Carl Malamud is the president and founder of Public Resource. Since the 1980s, Mr. Malamud has dedicated his career to the public interest. In January 1994, Mr. Malamud began to focus on making government and legal materials more widely available to the public. Using a National Science Foundation grant, for example, he purchased all electronic filings that corporations submitted to the Securities and Exchange Commission (SEC) and he put the Electronic Data Gathering and Retrieval (EDGAR) service on the Internet for free access. Malamud Decl. ¶ 7. In August 1995, he donated computers and software to the SEC so the Commission could take over the online service. *Id*. Mr. Malamud also purchased feeds of all U.S. patents and made them available for free on the Internet. He later convinced the U.S. Patent and Trademark Office to take over providing that service to the public. Malamud Decl. ¶ 12.

Throughout the 2000s, Mr. Malamud continued his mission of making government information more accessible to the public. Government officials and many organizations have applauded Mr. Malamud's efforts to make government information more accessible, including Hon. Nancy Pelosi, Hon John Boehner, Representative Darrell Issa, Hon. Lee H. Rosenthal, (Chair of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States), Harvard University, the Society of Professional Journalists, the First Amendment Coalition, and the American Association of Law Libraries. Malamud Decl. ¶ 23. Archivist of the United States, Hon. David Ferriero that "Our Founding Fathers believed that an informed and involved citizenry was key to our democracy and Public Resource helps us make[] this true." Malamud Decl. ¶ 22.

B.       **Public Resource's Mission**

In 2007, Mr. Malamud founded Public Resource. a non-profit charitable organization that provides online access to many kinds of government materials, from judicial opinions to video recordings of congressional hearings. SSSMF ¶ 68. As part of its mission, Public Resource operates a website providing public access to the law, including statutes, judicial opinions, and public safety and other standards that federal and state governments have incorporated into law by reference. *Id.* Public Resource also contributes its materials to the Internet Archive database. *Id.*

Public Resource promotes public discourse by these documents not just available but more accessible. For example, by reformatting documents, Public Resource allows persons with visual disabilities to enlarge the text or use electronic text-to-speech readers to hear the text of a document. SSSMF ¶ 70, 73. Similarly, Public Resource often translates images into scalable vector graphics for better enlargement. *Id.* It uses optical character recognition, and it often painstakingly retypes documents into Hypertext Markup Language (HTML) and converts formulas to Mathematics Markup Language (MML). *Id.* This makes documents newly word-searchable and allows researchers to analyze them at a large scale. *Id.*

Public Resource does not limit, or charge for, access to its platform. SSSMF ¶ 72. It does not display, or derive any revenue, from advertising. It relies on contributions and grants. *Id.*

## PROCEDURAL BACKGROUND

## VII.   THE COORDINATED CASES AND THE EARLIER ORDER

The ASTM Plaintiffs sue Public Resource for direct and contributory copyright infringement and for trademark infringement involving hundreds of standards. After discovery, the parties filed cross-motions for summary judgment; the ASTM Plaintiffs sought summary judgment on nine standards. This Court heard the motions together, along with the AERA plaintiffs' motion.  It issued one consolidated memorandum opinion granting summary judgment

16

to both sets of plaintiffs (except for AERA Plaintiffs' contributory infringement claim) and permanently enjoining Public Resource from use of the standards that were the subject of the motions and use of the ASTM Plaintiffs' trademarks. Dkt. 117-18. Public Resource appealed.

## VIII. THE COURT OF APPEALS VACATED THE INJUNCTION, RESERVED THE QUESTION OF ENFORCEABILITY OF COPYRIGHT IN THE LAW, AND REMANDED FOR A FULLER FAIR USE ANALYSIS.

The Court of Appeals for the District of Columbia Circuit vacated the injunction and reversed the summary judgment order. *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437 (D.C. Cir. 2018). No part of this Court's earlier order remains in effect. Although the Court of Appeals stated that Public Resource presented "a serious constitutional concern with permitting private ownership of standards essential to understanding legal obligations," it ultimately focused solely on the question of fair use so as "to avoid 'pass[ing] on questions of constitutionality . . . unless such adjudication is unavoidable.'" *Id.* at 447 (quoting *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944)) (alteration in original).

The Court of Appeals ruled that this Court misapplied the fair use standard, and it remanded the case for further proceedings on whether Public Resource's posting of standards was a non-infringing fair use and for further development of the factual record, stating:

> though there is reason to believe "as a matter of law" that PRO's reproduction of certain standards "qualif[ies] as a fair use of the copyrighted work," *id.* (internal quotations and citations omitted), we ultimately think the better course is to remand the case for the district court to further develop the factual record and weigh the factors as applied to PRO's use of each standard in the first instance.

*Id.* at 448–49 (alterations in original). The Court of Appeals directed the parties not to "treat[] the standards interchangeably" and offered additional legal guidance regarding the specific fair use factors, which Public Resource discusses below at Section II. *Id.* at 449.

In a concurring opinion, Judge Katsas was more explicit: "The Court's fair-use analysis faithfully recites the governing four-factor balancing test, yet, in conducting the balancing, it puts a heavy thumb on the scale in favor of an unrestrained ability to say what the law is." *Id.* at 459. He continued:

> Thus, when an incorporated standard sets forth binding legal obligations, and when the defendant does no more and no less than disseminate an exact copy of it, three of the four relevant factors— purpose and character of the use, nature of the copyrighted work, and amount and substantiality of the copying—are said to weigh "heavily" or "strongly" in favor of fair use. . . . [W]here a particular standard *is* incorporated as a binding legal obligation, and where the defendant has done nothing more than disseminate it, the Court leaves little doubt that the dissemination amounts to fair use.

*Id.* Judge Katsas remarked that he joined the Court's opinion with the understanding that, "in the *unlikely* event that disseminating 'the law' might be held not to be fair use," the Court would revisit the question of copyrightability. *Id.* (emphasis added).

## IX.    INTERACTIONS BETWEEN THE PARTIES AFTER THE APPEAL

After the remand on July 17, 2018, Plaintiffs delayed bringing this matter back for further proceedings. After not hearing from Plaintiffs, Public Resource requested a discussion in September 2018, which took place in October. Plaintiffs did not move the Court to reopen the case until February 2019, nearly seven months after the D.C. Circuit vacated the injunction.

## ARGUMENT

## I.    PUBLIC RESOURCE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ITS POSTING OF LAWS BY REFERENCE IS A LAWFUL FAIR USE.

This is not a traditional copyright dispute, yet an important and traditional copyright doctrine can resolve it. Public Resource's posting of documents that have become laws by incorporation, as part of a free, non-profit archive of federal and state laws, is a non-infringing fair use as a matter of law. Moreover, it is a positive public good.

A.      **The Fair Use Analysis Must Turn on the Special Status of the Works.**

While the D.C. Circuit declined to reach the question of copyrightability, it recognized the

need to ground the fair use analysis in the nature of the works at issue: laws by incorporation. The

court recognized that private control over documents that government authorities have transformed

into laws raises a serious constitutional concern, and looked to the fair use doctrine to provide a

path, within the confines of the Copyright Act, to resolve it.

This path is logical because fair use has always played a role in resolving tensions between

Article 1 section 8, and the First Amendment. Fair use is one of copyright law's "built-in First

Amendment accommodations." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003); *see also Golan v.

Holder*, 565 U.S. 302, 328–29 (2012).[6]

Where, as here, each of the works in question are laws by incorporation, those

accommodations are particularly important. The right to speak, to celebrate some views, to protest

others, or simply to learn and inquire is core to the First Amendment. *Packingham v. North

Carolina*, 137 S. Ct. 1730, 1735 (2017). Accordingly, the First Amendment protects "public access

to discussion, debate, and the dissemination of information and ideas." *First Nat'l Bank of Boston

v. Bellotti*, 435 U.S. 765, 783 (1978). It also embraces the freedom to teach, *Griswold v.

_____

[6] The other built-in First Amendment accommodation is the distinction between ideas and
expression, with an exclusion from copyright of "any idea, procedure, process, system, method of
operation, concept, principle, or discovery, regardless of the form in which it is described,
explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b); *Eldred*, 537 U.S. at 219.
The doctrine permits "free communication of facts." *Id.* Public Resource previously argued that,
upon incorporation of a standard into law, the entire standard becomes a fact—a government edict
notwithstanding its private origin—and that the law-as-standard becomes available for all to use
freely. It understands that the Court of Appeals reserved a decision on that point, if it remains
necessary, until after this Court addresses the fair use issue again. For that reason, Public Resource
incorporates by reference in this motion and this memorandum all its arguments and evidence on
those points, and all the supporting filings, of its earlier motion, including Dkt. Nos. 120–26, 132–
33, 141, 142, 144, 146, 147, 149, 151, 163–66.

*Connecticut*, 381 U.S. 479, 482 (1965), and the right to receive information and ideas, *Stanley v. Georgia*, 394 U.S. 557, 564 (1969), particularly information about the law, *Nieman v. VersusLaw, Inc.*, 512 Fed. App'x 635, 637–38 (7th Cir. 2013). As the Supreme Court stated, "'a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.' [This] serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 604 (1982) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).

As law professors noted in *State of Georgia*, copyright barriers "substantially impede regulated entities and the public at large from knowing the law, with destructive consequences for fair notice and the public's ability to participate in core government processes." Brief of Amici Curiae Law Professors Mendelson et al., *Georgia et al. v. Public.Resource.Org., Inc.*, U.S. Supreme Court Docket No. 18-1150, filed Oct. 16, 2019, at 3. For example, a California tenant seeking to understand whether her landlord is violating electricity regulations would have to pay $199.95 to find out.[7] She could access it for free in a reading room but cannot search, bookmark or copy relevant selections for later reference.[8]

Fair use provides a path to weigh public access and copyright concerns, with four nonexclusive statutory factors to guide the Court. 17 U.S.C. § 107. Determinations require "a consideration of all the evidence in the case," *Mathews Conveyer Co. v. Palmer-Bee Co.*, 135 F.2d 73, 85 (6th Cir. 1943), and are "not to be simplified with bright-line rules," *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). "All [factors] are to be explored, and the results

---

[7] https://catalog.nfpa.org/NFPA-70-National-Electrical-Code-with-California-Amendments-P17223.aspx

[8] https://www.nfpa.org/codes-and-standards/all-codes-and-standards/codes-and-standards/free-access?mode=view

weighed together, in light of the purposes of copyright." *Campbell,* 510 U.S. at 578. All four factors, the Section 107 preamble, and copyright's constitutional purpose require a determination of fair use as to every standard at issue here.

### B.      The Section 107 Preamble Describes Public Resource's Actions.

While the preamble of Section 107 contains illustrative and non-exhaustive examples of fair use and is not itself a factor, Public Resource's use of each standard fits *all* the preamble's characteristic purposes. Public Resource presents complete laws and regulations as a public archive for "criticism, comment, news reporting, teaching,…scholarship, and research." 17 U.S.C. § 107. Public Resource engages in teaching and news reporting by making the full text of laws by incorporation available. Public Resource fosters research, criticism, comment, and scholarship. There is no better way to teach the law to the public than to *provide the law*. Paraphrases, summaries, and descriptions do not capture precision necessary to know the specifics of the law.

### C.      First Factor: Public Resource's Use is Noncommercial and Transformative.

The first statutory factor considers "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." Public Resource's purpose is noncommercial. *ASTM*, 896 F.3d at 449. Public Resource is non-profit, depends entirely on donations and grants, and does not charge users any fees.

Public Resource builds upon earlier transformations, by governments, of the standards into laws by incorporation. Public Resource further transforms them creating a widely accessible archive and making the laws by incorporation searchable. In this respect its transformation is like that of Google search, which the Ninth Circuit found to be transformative and a fair use in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (use of images from the Web in search engine).   Public Resource has a new "intrinsic purpose," serving an "entirely different function." *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 606 F. Supp. 1526, 1535 (C.D. Cal.

1985); *see also Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609–11 (2d Cir. 2006) (reproductions of posters in book about the Grateful Dead).

The Court of Appeals held explicitly that Public Resource's use was transformative if it posted what was necessary to comprehend a legal duty. 896 F.3d at 450. Public Resource does just that: it posts legally incorporated standards as part of an effort to make all current and historical U.S. law accessible on the Internet, not merely for persons to read but also to analyze, excerpt, and share. Public Resource offers the only archive that allows citizens to fully comprehend the legal duties that govern many industries. Everything Public Resource posts has already been determined, by a federal agency to be necessary to understand or comply with a regulation.

Plaintiffs have no interest is providing that public benefit. Consider just federally incorporated standards. Their availability in libraries is poor and often nonexistent. Citizens can read the laws by incorporation in a Washington, D.C. reading room, if they can travel and have time to submit a written request. Otherwise, they must buy them. The average price for one incorporated pipeline-safety standard is $150, while a complete set of laws by incorporation implementing the Pipeline and Hazardous Materials Safety Act costs nearly $10,000. Moreover, as Plaintiffs concede, some standards that are laws by incorporation are no longer in print; and Plaintiffs expressly assert their right to keep them off the market. Plf. Mot. 44.

Plaintiffs make some (though not all) of the standards at issue available in online "reading rooms," but these do not fill the need. The standards are hard to find and not consistently available. Their read-only facilities display text in small panes that are hard to read and navigate, and they do not allow users to excerpt or annotate text for future reference or other private use. Readers must create accounts, waive rights through adhesion contracts, and agree to jurisdiction and venue in distant places and to indemnification of Plaintiffs—just to access the law. Plaintiffs reserve the

right to revoke that access and shut reading rooms.   And print-disabled citizens who rely on screen-reading software cannot use them without assistance.[9]

██████████████████████████████████████████████████

████████████████████████████ SSSMF ¶ 39. █████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

*Id.* In other words, the true purpose of Plaintiffs' reading rooms was to give Plaintiffs a pretext for *minimizing* access to laws by incorporation. That goal is diametrically opposite to Public Resource's purpose of maximizing access to the law.

Public Resource also transformed use of the standards by adding HTML code, MML descriptions of formulas, and vector graphic representations of diagrams.[10] These enable the public to interact with the texts through word searches, annotations, copy/paste functions, computer-aided analysis, and text-to-speech technologies. They also enable visually disabled persons to access the standards through screen-reading software and other assistive technologies. *Id.* Neither print versions of the standards nor the ASTM Plaintiffs' online reading rooms make that possible. *Id.*

Contrary to Plaintiffs' suggestion, the Court of Appeals did *not* hold that posting "nonessential" text would tilt the first factor against fair use. Like the Second Circuit in *Swatch,* the court recognized that sharing "information of critical importance" that serves a public purpose, particularly one the preamble specifies, can favor fair use under Factor One. *ASTM*, 896 F.3d at 450. In *Swatch*, Bloomberg faced a copyright lawsuit after making a recording of a company's

---

[9] Dkt-122-6 at 139-151; Dkt-122-8 at 162-169 and 172-173; Dkt-122-9 at 3-5; Dkt-120-30; Dkt-120-31; ASTM-Dkt-120-32.

[10] Dkt-122-6 at 139-151.

invitation-only earnings call available to subscribers. *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 78–79 (2d Cir. 2014). The Second Circuit held Bloomberg's dissemination of the full recording to be fair use. *Id.* at 77. It concluded that Bloomberg's "news reporting"—one of the activities in the preamble—favored fair use. *Id.* at 82. The Second Circuit further observed:

> the need to convey information to the public accurately may in some instances make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without alteration. . . . [B]y disseminating not just a written transcript or article but an actual sound recording, Bloomberg was able to convey with precision not only the raw data of the Swatch Group executives' words, but also more subtle indications of meaning inferable from their hesitation, emphasis, tone of voice, and other such aspects of their delivery. This latter type of information may be just as valuable to investors and analysts . . . .

*Id.* at 84. Here, Public Resource seeks to convey and report the law.

In so doing, Public Resource's legal archive treats laws by incorporation not as "[items] of expressive content" but rather as "evidence of the facts within [them]." *Am. Inst. of Physics v. Winstead PC*, No. 3:12–CV–1230–M, 2013 WL 6242843, at *5 (N.D. Tex. Dec. 3, 2013) (use of technical articles in patent proceeding was fair); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 544 (6th Cir.) (no use "for its commercial value *as a copyrighted work*"); *Bill Graham Archives*, 448 F.3d at 609 (use of poster images as "historical artifacts" was transformative); *Bond v. Blum*, 317 F.3d 385, 394–97 (4th Cir. 2003) (use of manuscript for admissions in custody proceeding was fair). Public Resource posted standards not for technical merit, creativity, or effectiveness at promoting safety but for their status as government edicts and laws. Someone researching current industry best practices will not seek out Public Resource's

website, because the laws by incorporation are obsolete *as private standards* while they remain *the law*. Public Resource's website exists for persons to know *the law*.[11]

D.      **Second Factor: The Nature of the Works Heavily Favors Fair Use.**

The second fair use factor, the nature of the copyrighted works, recognizes that "some works are closer to the core of intended copyright protection than others." *Campbell*, 510 U.S. at 586. The holdings of *Wheaton v. Peters,* 33 U.S. 591 (1834), and *Banks v. Manchester*, 128 U.S. 244 (1888), suggest that few things are further from the core of copyright than laws and other government edicts. In addition to due process problems in allowing anyone to own the law, the precise wording of each law by incorporation is itself a legal fact. The D.C. Circuit pulled these strands together, recognizing that "[w]here the consequence of the incorporation by reference is virtually indistinguishable from a situation in which the standard had been expressly copied into law, this factor weighs heavily in favor of fair use." 896 F.3d at 452.

That is the situation here. "The general rule is that when one statute adopts a provision of another statute by specific reference, it is as if the adopting statute had itself spelled out the terms of the adopted provision." *Myers*, 553 F.3d at 331 (citing *Hassett v. Welch*, 303 U.S. 303, 314 (1938)). That is the goal of the incorporation process. "[I]ncorporation by reference is used primarily to make privately developed technical standards Federally enforceable."[12] Enforcement mechanisms, including penalties and injunctions, extend to all duly promulgated regulations including incorporated material. *See, e.g.*, 49 U.S.C. § 60120 (sanctions for violations of pipeline

---

[11] Plaintiffs incorrectly suggest that minor errors in the rendering of a standard weigh against fair use. Nonsense. A book review that happens to quote erroneously from a book still enjoys fair use protection.

[12] National Archives, *Code of Federal Regulations Incorporation by Reference*, https://www.archives.gov/federal-register/cfr/ibr-locations.html.

safety regulations); 46 U.S.C. § 3318 (penalties for violations of regulations, including regulations issued under 46 U.S.C. § 3306 with respect to marine boilers).

As standards, Plaintiffs' documents were already at the factual end of the spectrum from "factual" to "creative." As *laws*, however, the documents have become *authoritatively factual regarding the substance of the laws*. The choice of each word in each document, in each incorporation, has become a relevant legal fact to citizens, groups, and agencies (including courts) researching the law, complying with it, enforcing it, and interpreting it. Notably, Public Resource does not wish to post any documents that are not already the law.

### E.    Third Factor: Public Resource Uses No More Than Necessary for Its Purpose.

The third statutory factor, the amount and substantiality of the portion used, favors fair use where the amount is "reasonable in relation to the purpose of the copying." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 (2d Cir. 2015). Reproduction of entire works is fair use when it reasonably fulfills the user's purpose. *See, e.g.*, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449–50 (1984) (recording of entire television programs for time-shifting); *Swatch*, 756 F.3d at 90 (reproduction and dissemination of entire press-conference recording).

As Public Resource's purpose is to create a thorough and accurate archive of federal law, it was both reasonable and necessary to post the entire laws by incorporation. Posting less would thwart Public Resource's goal and could mislead users who seek complete regulations. *See Righthaven, LLC v. Jama*, No. 2:10–CV–1322 JCM (LRL), 2011 WL 1541613, at *3 (D. Nev. April 22, 2011) (fair use where impracticable to use less of original); *see also Warren Publ'g Co. v. Spurlock*, 645 F. Supp. 2d 402, 418 (E.D. Pa. 2009) (reproduction "virtually the same size as the original" was fair use).

The D.C. Circuit held that "[i]f PRO limits its copying to only what is required to fairly describe the standard's legal import, this factor would weigh strongly in favor of finding fair use." 896 F.3d at 452. The Court of Appeals went on to compare (1) situations where a regulation refers only to a specific portion of a standards; (2) situations where a regulation refers more broadly to a whole standard; and (3) an incorporation that simply refers to a standard but it doesn't that govern conduct. Every standard at issue here has been completely incorporated into federal law; many have also been incorporated into state law as well. As such, each has the force of law.

Plaintiffs complain that Public Resource posts each entire law by incorporation, instead of selecting portions that might be most important to a given audience. But a government entity has incorporated every standard at issue fully. Plaintiffs' approach would put Public Resource and others in an impossible position of deciding what portion of the document the incorporating entity *really* meant when it chose to incorporate a complete document, and what is and is not necessary to comprehend a legal duty. The preamble to Section 107 provides an apt comparison: while some might argue that the examples of fair use are ancillary, most lawyers would view the entire section 107, including the preamble, as necessary to comprehend the statute. Public Resource believes *the law is the law*; consistent with First Amendment, it posts the entire laws by incorporation.

The careful incorporation process gives regulators, the public and the SDOs an opportunity to narrow the scope of incorporation during the comment period. Once incorporation occurs, the object of incorporation becomes a government edict, and Public Resource or some other member of the public should not have to second-guess the scope—and face jeopardy if it guesses wrong.

## F.     Fourth Factor: Plaintiffs Have No Evidence of Market Harm.

The fourth factor, the effect of the use on the potential market for or value of the copyrighted work, concerns only "harm cognizable under the Copyright Act." *Campbell*, 510 U.S. at 592. Courts look to whether a person seeks to "profit from exploitation of the copyrighted

material without paying the customary price." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985).

The Court of Appeals directed the parties to differentiate between standards where appropriate. 896 F.3d at 449. Here, there are differences relevant to the fourth factor among the standards at issue. Some of the standards are available in SDO reading rooms, while others are not. ASTM has no evidence of lost sales, and ASHRAE has not attempted to determine what, if any, losses were attributable to Public Resource's activities, while NFPA has asserted such an effect, though without offering convincing evidence. But no plaintiff has demonstrated, as to any standard, any significant effect of Public Resource's use on the potential market for or value of a work.

As the Court of Appeals held, Public Resource seeks no profit from this use. And the "customary price" for the right to reproduce, disseminate, and provide access to the law is zero. Even apart from that calculus, the commercial value of Plaintiffs' obsolete standards is minimal.

The record shows an *absence* of harm to any legitimate market. All the standards have been superseded as technical documents by later versions, even though they remain laws. JA1689-1724(ASTM-Dkt-122-6 at 193-228); https://catalog.nfpa.org/NFPA-70-National-Electrical-Code-NEC-Softbound-2017-Edition-P16529.aspx (2014 National Electrical Code superseded by 2017 edition). Their obsolescence *as standards* explains the drop in demand and why Plaintiffs have stopped selling many. Set against the public's right to access and share the law, the Plaintiffs' "creative and economic choice" (Plfs. Mot 44), to suppress availability of laws by incorporation is not a traditional or reasonable market interest under the fourth factor.

Finally, the Court of Appeals also asked this Court to consider whether (1) the existence of readings rooms moots any possible claim of market harm; (2) whether any such harm can exist

if standards are only incorporated in part, and Public Resource reproduced only that part; and (3) whether Public Resource's posting harms the market for updates.

On issue (1), Plaintiffs' reading rooms show that making outdated standards available doesn't destroy sales. Plaintiffs concede that reading rooms help them market other activities and products. Plaintiffs may continue selling laws by incorporation along with their other standards and related documents. Publishers of public domain works that are freely available on the Internet, such as legal texts, Shakespeare's works, and the Bible, can still sell them for profit.

Plaintiffs argue that Public Resource's activities could spawn infringement, but they have provided no evidence they have suffered any market harm—including in the two years since the Court of Appeals vacated the injunction. Instead, they offer mere speculation by a purported expert who based his analysis entirely on self-serving opinions the Plaintiffs voiced. His report simply parroted their legal arguments. SSSMF ¶ 144. Mr. Jarosz was unable to identify any losses to Plaintiffs from Public Resource. SSSMF ¶ 142-9. He made no correlation between Public Resource's posting of standards and any change in Plaintiffs' revenues. *Id*. He did not compare profitability of the standards posted by Public Resource to that of Plaintiffs' other standards. *Id*. If Plaintiffs had any evidence of any market harm, evidence that they are best able to provide, they would surely have done so instead of arguing they don't need to.

On issues (2), As it explained earlier, Public Resource posts only fully incorporated standards.

As for issue (3) Plaintiffs have no evidence of harm to the market for new standards. They assert otherwise, but the only "evidence" they offer (at 29) is that updates do not always differ substantially from earlier versions, underpinning mere speculation that persons will seek Public Resource's obsolete versions as substitutes. *Id.* at 29–30. Not only is there no actual evidence of

that occurring, but the reasoning also makes no sense: Because updated standards are *not* freely available, potential customers would be unlikely to know whether revisions were minor.

Furthermore, Plaintiffs' sales numbers have generally gone up, not down, since Public Resource started posting the standards. █████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████ SSSMF ¶ 137. And ASTM's corporate representative, Jeffrey Grove, had no "direct knowledge" of any "measurable impact" on ASTM's finances from Public Resource. (*Id.*) ASTM has no knowledge of lost sales, lost revenues, or reputational harm caused by Public Resource. SSSMF ¶ 138. ASHRAE has not tracked any losses to Public Resource's posting of the standards. SSSMF ¶ 154. Against this backdrop, Plaintiffs cannot show that Public Resource's posting harms either the market for the standards that Public Resource posted or the market for updates.

## II. PUBLIC RESOURCE'S INCLUSION OF PLAINTIFFS' TRADEMARKS IN POSTED DOCUMENTS IS A NOMINATIVE FAIR USE.

Any inclusions of Plaintiffs' marks in the laws by incorporation that Public Resource has posted are nominative fair uses, not trademark infringement. The Court of Appeals endorsed the Ninth Circuit's formulation of the factors for nominative fair use (the "*New Kids* factors") and instructed this Court to consider them on remand. 896 F.3d at 456, 458. The factors ask (1) whether the product or service in question is "not readily identifiable without use of the trademark"; (2) whether "only so much of the mark or marks [has been] used as is reasonably necessary to identify the product or service"; and (3) whether the defendant has done anything "that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

The Court of Appeals did not decide how those factors should be applied, whether as a replacement for the traditional likelihood of confusion factors (following the Ninth Circuit), a

supplement to the traditional likelihood of confusion factors (following the Second Circuit), or an affirmative defense that can overcome a likelihood of confusion (following the Third Circuit). 896 F.3d at 457. Plaintiffs appear to concede that, if they have the burden of proof on the issue, they lose on their trademark claim—which is why they argue the burden point so vigorously. (*See* Pls. Mem. 32–33.) But Public Resource is entitled to summary judgment on the trademark claim no matter who has the burden and under any of the three approaches the Court of Appeals identified.

### G.      Plaintiffs Distort the Third Circuit's Framework for Nominative Fair Use.

Plaintiffs advance an approach to evaluating nominative use cases that no circuit has endorsed. They argue that nominative fair use is an affirmative defense, citing the Third Circuit's decision in *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211 (3d Cir. 2005). (Pls. Mem. 32.) But Plaintiffs cherry-picked a portion of the Third Circuit's approach to nominative fair use, ignoring that *Century 21* adopted a two-step approach that begins with a modified likelihood-of-confusion analysis *before* the burden shifts to the defendant. 425 F.3d at 222. Acknowledging that traditional multi-factor tests for likelihood of confusion poorly fit nominative uses, the court in *Century 21* instructed the trial court to look at just four factors to determine likelihood of confusion: (i) "the intent of the defendant in adopting the mark," (ii) "evidence of actual confusion," (iii) "the length of time the defendant has used the mark without evidence of actual confusion," and (iv) "the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase." *Id.* at 225–26.

Here, all four factors weigh in Public Resource's favor: Public Resource had no intent to confuse the public, there is no evidence of actual confusion, the posted standards including Plaintiffs' marks have been online for years, and persons searching for the law already demonstrate a high level of care. Plaintiffs therefore cannot meet their initial burden to prove a likelihood of

confusion under the Third Circuit's framework, and there is no need to evaluate Public Resource's ability to prove other facts bearing on nominative fair use.

All Three *New Kids* Factors Are Present.

### 1. The incorporated standards at issue are not readily identifiable without use of Plaintiffs' marks.

As the Court of Appeals observed, "it is hard to see how" Public Resource could reproduce the incorporated standards to inform the public about the law "without identifying the standard by its name—the very name also used in the incorporating law." 896 F.3d at 457. Every incorporated standard has a title with one of the Plaintiffs' names, and the incorporating regulations use titles (with names) to identify relevant documents. For example, Public Resource provided a link to ASTM D396-98, one of the standards at issue, referring to that standard by name. ASTM states that the citation format for this standard is "ASTM D396-98, Standard Specification for Fuel Oils, ASTM International, West Conshohocken, PA, 2001, www.astm.org."  SSSMF ¶ 169. 41 C.F.R. § 60.17 (2011) incorporates the standard by reference, identifying it as "ASTM D396-78, 89, 90, 92, 96, 98, Standard Specification for Fuel Oils." It is therefore necessary to identify the standard the same way, including "ASTM."

Plaintiffs incorrectly argue that *Veeck v. Southern Building Code Congress International Inc.*, 293 F.3d 791 (5th Cir. 2002) (en banc), *cert. denied*, 539 U.S. 969 (2003), demonstrates Public Resource could have posted the text of the standards without referring to Plaintiffs. (Pls. Mem. 33–34.) In *Veeck*, the defendant posted the full text of enacted building codes without identifying the author of the identical model codes. 293 F.3d at 793. Here, the full texts of the laws by incorporation do not appear in the relevant regulations; only references to the titles of the incorporated standards appear. Using the complete reference is therefore necessary to guide people to the correct laws by incorporation.

Plaintiffs' argument that Public Resource should identify the standards by reference to the incorporating regulations—e.g., the "standard adopted by 24 C.F.R. Part 200"—is impractical. Plaintiffs' example (at 34) shows one reason why: 24 C.F.R. Part 200 incorporates dozens of standards, making such a reference of less value. Similarly, one standard may be incorporated by many provisions.

Even setting these practical issues aside, the mere *possibility* of referring to Plaintiffs' standards without using their marks is insufficient to tilt this factor in their favor. *Century 21*, 425 F.3d at 229. Trademark law does not require "resort[ing] to second-best communication." *Id.* As the Ninth Circuit put it, "one might refer to . . . 'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls." *New Kids*, 971 F.2d at 306.

Here, the most straightforward and useful way to refer to Plaintiffs' standards when they have become laws by incorporation is by the same way the incorporating provisions do. For someone who has found a reference to an incorporated standard within a regulation and wants to know what the standard says, the most logical search term is the reference provided. Requiring Public Resource to identify the standards differently would make its posts of the laws by incorporation more difficult to locate. While Plaintiffs might welcome that result, it would not serve the public interest, and trademark law does not require it. *See Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 804 (9th Cir. 2002) (finding nominative fair use where contrary conclusion would make website more difficult to search for and "hinder[] the free flow of information on the internet, something which is certainly not a goal of trademark law").

### 2.   Public Resource includes no more than reasonably necessary.

Public Resource includes only what is necessary to identify standards and to reproduce accurately the material incorporated into law. Plaintiffs do not, and could not, argue that Public Resource's display of their word marks fails to satisfy the second *New Kids* factor.

Nominative fair use requires case-by-case assessment, especially in cases involving communicative uses by non-competitors.[13] 4 McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed.). *See also, e.g.*, *Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1265 (D. Ariz. 2012) (use of logo and distinctive coloring not unreasonable), *aff'd*, 632 Fed. App'x 885 (9th Cir. 2015). The facts here demonstrate fair use: Public Resource did not add any logos that were not included in the standards documents to begin with, and inclusion of the logos inserted by Plaintiffs was reasonably necessary to Public Resource's purpose of communicating the contents of those documents as they were incorporated into law.

In any event, Public Resource has now redacted Plaintiffs' design marks from the posted standards.[14] Public Resource's willingness to narrow the dispute is not an admission of

---

[13] Plaintiffs falsely assert that this Court and the D.C. Circuit "have acknowledged" that Public Resource's use of Plaintiffs' logos "goes beyond what is reasonably necessary to identify Plaintiffs' Works." (Pls. Mem. 34.) This Court did not apply the nominative fair use factors in its pre-remand opinion and therefore made no such finding. *See* Dkt. 175 at 51. And the Court of Appeals did not decide the question, leaving it to this Court in the first instance. 896 at 457–58.

[14] Plaintiffs complain that those removal efforts were insufficiently thorough, pointing to three isolated instances of logos that were not removed. (Pls. Mem. 34.) In two instances, Public Resource left NEC logos intact where NFPA had used them decoratively as part of cover designs rather than as an indication of source. (Pls. 2nd Supp. SMF ¶ 23.) In the third instance, Public Resource redacted an ASTM logo in certain postings of a law by reference but overlooked it in the HTML version. (*Compare id.* ¶ 24 *and* Wise Decl. Ex. 165 *with* https://archive.org/details/gov.law.astm.d86.2007/page/n1 *and* https://ia800700.us.archive .org/20/items/gov.law.astm.d86.2007/astm.d86.2007.pdf. Plaintiffs never complained to Public Resource about this but evidently waited until they could complain to the Court.

wrongdoing. As Public Resource informed the Court before, the inclusion or omission of Plaintiffs' logos is simply not important to Public Resource.

### 3. Public Resource has not done anything to suggest sponsorship or endorsement by Plaintiffs.

Public Resource satisfies the final *New Kids* factor because it has done nothing to encourage a belief that its postings have Plaintiffs' sponsorship or endorsement. Plaintiffs must show language or conduct *in addition to* use of their marks that affirmatively suggests sponsorship or endorsement by Plaintiffs. 4 McCarthy § 23:11; *see also ASTM*, 896 F.3d at 456 ("[T]he user must do nothing that would, *in conjunction with the mark*, suggest sponsorship or endorsement by the trademark holder." (quoting *New Kids*, 971 F.2d at 308) (emphasis added)). Plaintiffs have not done so and cannot do so. On the contrary, Public Resource presents the posted standards as statements of law—not as products put out, sponsored, or endorsed by Plaintiffs.

Plaintiffs' whipsaw arguments show that their trademark claim is a pretextual attempt to circumvent the limits and policies of copyright law. Plaintiffs previously argued that Public Resource's use of their logos was wrong. (Dkt. 118-1 at 51.) But now they argue that Public Resource's *redaction* of their logos is wrong. (Pls. Mem. 37.) Specifically, they complain that Public Resource in some instances covered their logos with black boxes and the text "[Plaintiff] Logo Removed," which they claim "only draws additional attention" to the fact that their logos once appeared there. *Id.* No reasonable juror could conclude that redacting Plaintiffs' logos suggests that Plaintiffs sponsored or endorsed Public Resource's posting of the standards. On the contrary, consumers—many of whom are sure to have encountered content removal notices on various online platforms—will likely conclude correctly that Public Resource is unaffiliated with Plaintiffs and removed the logos in response to an infringement claim.

Public Resource also actively seeks to prevent confusion by using disclaimers, SSSMF ¶ 166, even though disclaimers are *not* necessary for nominative fair use. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1177 (9th Cir. 2010). Their presence can, however, favor a defendant's use by "negat[ing] any hint of sponsorship or endorsement." *Id.*

Each standard Public Resource posted in PDF format has a cover with a prominent disclaimer identifying Public Resource as posting the document and disclaiming any affiliation with, or authorization by, Plaintiffs.[15] SSSMF ¶ 166 Plaintiffs argue that the cover-page disclaimer is ineffective because others could remove it before further dissemination, but the case they cite is inapposite. (Pls. Mem. 36.) There, the defendant included a disclaimer in magazine advertisements but not "on the products themselves, the accompanying literature, or in-store advertisements." *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1093 (7th Cir. 1988). That case does not support holding Public Resource accountable for hypothetical affirmative acts of other persons.

An additional disclaimer appears on the Internet Archive website in the document information below the PDF viewer. SSSMF ¶ 166. It explains that Public Resource posted the document and is not affiliated with, or authorized by, Plaintiffs. (*Id.*) It also explains Public Resource's process for posting the laws by incorporation and notes the possibility of errors, encouraging readers to check with SDOs or governmental authorities "for further information and access to definitive versions of these important laws." (*Id.*) Plaintiffs again rely on inapposite case law to challenge this disclaimer. (Pls. Mem. 36.) In *TrafficSchool*, the Ninth Circuit did not state that a disclaimer one must scroll to see can never be effective. Rather, it noted that the disclaimer

---

[15] Contrary to Plaintiffs (at 34-35), additional disclaimers after this lawsuit began can justify summary judgment to Public Resource and denial of a permanent injunction" (Pls. Mem. 34–35.) *Cf. Welles*, 279 F.3d at 799 (disclaimer added after lawsuit filed). *See also ASTM*, 896 F.3d at 457–58 (acknowledging relevance of revised disclaimers).

"was easy to miss because it was displayed in small font at the bottom of each page, where many consumers would never scroll." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828 (9th Cir. 2011). Here, the disclaimer appears in normal-sized type, in the middle of the page, above information about the incorporation, and immediately to the left of the download links.

Finally, a disclaimer identifying Public Resource as posting the document and disclaiming any affiliation with, or authorization by, Plaintiffs appears at the top of all standards posted by Public Resource in HTML format. SSSMF ¶ 166.[16] Public Resource's disclaimers, especially in combination with the lack of any affirmative suggestion of sponsorship or endorsement, are more than sufficient to satisfy the third *New Kids* factor.

## X. PLAINTIFFS CANNOT JUSTIFY A PERMANENT INJUNCTION.

### A. The Standard for a Permanent Injunction After *eBay v. MercExchange*.

Injunctions are not automatic, regardless of a plaintiff's success on the merits. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 392 (2006). It is a plaintiff's burden to show (1) that it has suffered an irreparable injury; (2) that other remedies are inadequate to compensate for that injury; (3) that the balance of hardships favors an injunction; and (4) that the public interest would not be disserved. *Id.* at 391. *eBay* also applies to trademark infringement claims. *See, e.g.*, *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de CV*, 762 F.3d 867, 879 (9th Cir. 2014).

### B. Plaintiffs Present No Evidence of Irreparable Injury to Any Valid Legal Interest.

Irreparable injury cannot be presumed; Plaintiffs must prove it on both copyright and trademark claims. *See TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019) (copyright); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (trademark).

---

[16] The underlined text provides a link to a copy of the docket for the 2017 appeal in this case, hosted on Public Resource's website.

Plaintiffs cannot meet that burden. While Plaintiffs claim significant revenues from the sale of *unspecified* "publications," most of their publications are not laws by incorporation, and they are not in this case. Plaintiffs shown no harm to their sale of the *standards at issue*. Plaintiffs' failure to offer credible evidence of economic harm shows that no "likelihood of substantial and immediate irreparable injury" exists. *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012) (*quoting O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).

Plaintiffs' repeated inaction also contradicts their assertion of injury. Plaintiffs discussed Public Resource's activities as early as 2010 but waited until August 2013 to sue.[17] (SMF ¶ 21.) Likewise, Plaintiffs now complain about copies of their standards on the website Scribd.com (Pls. Mem. 39), but they present no evidence they ever asked Scribd to remove them. Nor did Plaintiffs seek a preliminary injunction against Public Resource. A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm," and never seeking one is even stronger evidence. *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc) (quoting *Oakland Tribune, Inc. v. Chronicle Publ'g Co.,* 762 F.2d 1374, 1377 (9th Cir. 1985)).[18]

Nor have Plaintiffs shown that their "business model" requires the right to control access to laws by incorporation. (Pls. Mem. 39.) The Fifth Circuit thwarted such a right in *Veeck* in 2002, and Plaintiffs have shown no revenue loss or other harm from that decision. SSSMF ¶ 162. Plaintiffs acknowledge that other SDOs operate without asserting a right to exclude. Neither Public

---

[17] ██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ (SMF ¶ 21.)

[18] Earlier, Plaintiffs filed complete standards publicly, knowing that they would be publicly available through PACER. Dkt. 118-7 (attaching several ASTM standards). Only after Public Resource pointed out the hypocrisy did Plaintiffs begin filing copies of their standards under seal.

Resource's activities nor the status of laws by incorporation affect Plaintiffs' control over other publications, including annotations, training materials, and non-incorporated standards.

Plaintiffs also claim that losing a "right to exclude others from using" the laws by incorporation is itself an irreparable injury. (Pls. Mem. 40–41.) The Supreme Court foreclosed that argument in *eBay*. The Court overturned a ruling that a "statutory right to exclude alone justifies [a] general rule in favor of permanent injunctive relief," because "the creation of a right is distinct from the provision of remedies for violations of that right," and the equitable remedy of injunction requires a full equitable analysis rather than "broad classifications." *eBay*, 547 U.S. at 392–93. *See also TD Bank*, 928 F.3d at 280 ("easily dismiss[ing] TD Bank's contention that continued copyright infringement necessarily constitutes irreparable harm" and explaining that continuing infringement is "necessary," not sufficient, to obtain a permanent injunction).

Finally, Plaintiffs' argument that their reputations will suffer also fails. (*See* Pls. Mem. 41.) Plaintiffs have no evidence that their reputations have suffered because of Public Resource's posting. Nor do they have evidence that any errors in Public Resource's reproduction of the standards are more numerous or damaging than errors in *Plaintiffs' own* standards. SSSMF ¶ 177. Second, Plaintiffs allege errors in a mere handful of the posted standards, yet they seek a permanent injunction as to *all* standards. Third, a plaintiff cannot rely on reputational harm to enjoin copyright violations. *See Garcia*, 786 F.3d at 744–45 (9th Cir. 2015). To justify an injunction, irreparable harm must be of the type that the law aims to protect, and protection of an author's reputation is not a copyright purpose. *Id.* As for Plaintiffs' trademark claims, should the Court ultimately find in Plaintiffs' favor, a disclaimer would forestall any harm.

### C.  The Balance of Hardships Does Not Favor Plaintiffs' Control Over the Law.

Plaintiffs have not experienced, and have shown no likelihood of experiencing, irreparable harm to any legitimate copyright interest. To begin with, Plaintiffs have made no effort to show

any hardship, or impairment to the creative incentive, to the thousands of volunteers who drafted the laws by incorporation and whom Plaintiffs claim are co-own the copyrights. Public Resource's posting some of the results of their work will not harm the volunteers or their employers. They receive no revenue from Plaintiffs' sales of the standards. They do the work with a desire to promote public safety, improve energy efficiency, promote sales of their own products and services, and advance their careers or business interests. (SMF ¶ 28, 136.) Those motivations will persist; as Professor Paul Goldstein has observed, "it is difficult to imagine an area of creative endeavor in which the copyright incentive is needed less." 1 Goldstein on Copyright § 2.5.2, at 2:51.

By contrast, an injunction would harm Public Resource's mission of providing access to the universe of government edicts. It would force Public Resource to omit from its archive a category of regulations that the Supreme Court has recognized as worthy of scrutiny *precisely because* of the conflict between public and private interests. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 500–02 (1988).

### D.    A Prior Restraint Would Violate the Constitution and Harm the Public Interest.

"[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Failure to satisfy this element is sufficient reason to deny an injunction. *See id.* at 23. Moreover, it is not enough to prove that an injunction would serve some conceivable public interest. Instead, Plaintiffs have the burden of establishing that, overall, the requested injunction would not *disserve* the public interest. *See eBay*, 547 U.S. at 391.

They cannot do so here. Plaintiffs want the right to control access to the law: who, where, how, in what media, and at what price. They claim the right to set different prices and terms for

different citizens—and they do this. Rationing access to the law means that an apartment dweller may be unable to verify safety of her electrical and heating systems, or that a citizen journalist cannot afford to study changes to state safety codes. It means that an engineering firm with a favored relationship to ASTM can receive free print copies of standards, while a graduate engineering student cannot excerpt standards in a doctoral thesis. It means courts may be unable to locate the law they should apply.

By contrast, putting the law into the hands of the public—whether to learn the law, to analyze the law using technologies and formats for modern linguistic and data analysis, to criticize the law in digital annotations, and to teach the law by sharing it with others—manifestly serves the public interest. That interest includes strong First Amendment rights to speech and access to information, and Fifth and Fourteenth Amendment rights of due process and access to the law.

### 1.      An injunction would impair First Amendment rights.

The injunction Plaintiffs seek necessarily implicates Public Resource's First Amendment right to speak on, and communicate, matters of public interest. Any prior restraint is *particularly* dangerous where, as here, the laws emerge from private processes. The public cannot blindly rely on the federal or state agencies that adopt private standards into law to ensure that those standards serve the public interest. In *Allied Tube,* 486 U.S. at 500, the Supreme Court observed that, while one may presume that a government acts in the public interest, one may also presume that a private party is acting primarily on its own behalf. It noted that the National Electrical Code (NEC) (at issue here) embodied a restraint of trade "imposed by persons unaccountable to the public and without official authority, many of whom have financial interests in restraining competition." *Id.* at 502. To guard against such abuses, citizens must readily be able to access, analyze, and criticize the laws that emerge from these private processes.

An injunction would interfere with the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. The abilities to *know* the law, to *teach* the law to others, and to *criticize and comment on* the law are fundamental to that right. *See, e.g.*, *Bounds v. Smith,* 430 U.S. 817, 828 (1977) (right of access to courts requires access to law libraries).

## 2.     An injunction would undermine due process and the rule of law.

Due process under the Fifth and Fourteenth Amendments requires meaningful public access to federal and state laws and regulations. As the First Circuit stated:

> [C]itizens must have free access to the laws which govern them.…
> [I]t is hard to see how the public's essential due process right of free
> access to the  law (including a necessary right freely to copy and
> circulate all or part of a given  law for various purposes), can be
> reconciled  with  the  exclusivity  afforded  a  private  copyright
> holder.…

*Bldg. Officials & Code Adm. v. Code Tech., Inc.*, 628 F.2d 730, 734, 736 (1st Cir. 1980).

"Rudimentary justice requires that those subject to the law must have a means of knowing what it prescribes." Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev 1175, 1179 (1989). One of the events leading to the Federal Register Act (Pub. L. No. 74-220, ch. 417, 49 Stat. 500–503 (July 26, 1935)) was government enforcement of an oil quota rule that, it turned out, did not exist. *Oil Suit Dismissed in Supreme Court*, N.Y. Times, Oct. 2, 1934, at 6. The "basic principle of due process," of access to the law, protects citizens' autonomous choice "to steer between lawful and unlawful conduct," to constrain law enforcement, and to prevent chilling First Amendment protected speech. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

This principle is no less important when a law has incorporated material by reference. "[R]egulatory beneficiaries of all sorts, as well as regulated entities, have a strong and direct interest in access to the content of regulatory standards—including [incorporated-by-reference] material— because it directly affects their interests and can potentially affect their conduct. Accordingly, if

notice is to be effective, ready public access must be provided to anyone potentially affected by the law, not just to those who must comply." Nina A Mendelson, *Private Control over Access to Public Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737, 771 (2014). An injunction in this case would thwart those rights and the public interest.

To be clear, Plaintiffs online "reading rooms" will not fill the gap an injunction would create. Pls. Mem. 45. The crux of Plaintiffs' copyright claims is that they have an absolute right to choose where and how to distribute standards or to withdraw them from circulation entirely. There is no guarantee that Plaintiffs would continue to provide free access to any of their standards if an injunction were entered. Moreover, Public Resource showed above, Plaintiffs' "reading rooms"— *deliberately* unhelpful—fall far short of providing meaningful access.

### 3. Plaintiffs have no evidence that development of technical standards would suffer in the absence of an injunction.

Against all this, Plaintiffs argue that an injunction would promote continued development of technical standards. Pls. Mem. 44–45. But there's no genuine evidence to support that. Plaintiffs have suffered no financial harm from Public Resource's conduct since the injunction in this case was lifted; if they had, they might have been more eager to pursue this lawsuit on remand. The thousands of volunteers who contribute to Plaintiffs' standards without receiving sales revenue will doubtless continue to do craft new standards. Plaintiffs will continue to profit from sales and ancillary products, just like other SDOs that operate without stifling access to laws by incorporation. Plaintiffs' speculation cannot outweigh the diminution in public access to the law that is guaranteed to result from an injunction in this case.[19]

---

[19] For a similar analysis, *see Veeck*, 293 F.3d at 805–06.

III.    **SUBSTANTIAL QUESTIONS OF FACT CONCERNING OWNERSHIP OF THE COPYRIGHTS PRECLUDE SUMMARY JUDGMENT FOR PLAINTIFFS.**

Plaintiffs' arguments for ownership of valid copyrights were moving targets in the earlier phase of this case. They initially relied on copyright registrations, which falsely identified the standards as "works made for hire." But the works were not by the Plaintiffs' employees, and they did not qualify as works made for hire.   Plaintiffs then claimed to own the copyrights by assignment, but discovery proved that false because Plaintiffs lacked valid assignments.   Perhaps hoping for "third time lucky," Plaintiffs finally claimed (in their first summary judgment papers, after discovery had closed) that they were "joint authors" with the volunteers.

That last, pretextual, shift opened a can of worms for Plaintiffs. *Many federal government employees* were among the volunteers, so the employees (or the federal government itself) are among the joint authors. Section 101 defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. That section also defines a "work of the United States Government" as "a work prepared by an officer or employee of the United States Government as part of that person's official duties." *Id.* Section 105 of the Copyright Act states, in relevant part, "Copyright protection under this title is not available for any work of the United States Government…." 17 U.S.C. § 105. Therefore, according to the Plaintiffs' own theory of ownership, it is likely that many, if not all, of the standards at issue are in the public domain as *works of the United States Government*.  Plaintiffs have not established that *no federal government employees* participated in drafting standards, and many documents show federal employees' involvement.

Plaintiffs respond by invoking their copyright registrations. But a registration creates only a rebuttable presumption of ownership. *See, e.g., CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1513 (1st Cir. 1996). Where valid ownership is at issue, "the burden of proof

in the sense of the risk of nonpersuasion . . . remains . . . upon the party on whom it was originally cast." *Int'l Code Council, Inc. v. Nat'l Fire Protection Ass'n, Inc.*, No. 02 C 5610, 2006 WL 850879, *17 (N.D. Ill. March 27, 2006) (omissions in original).  Plaintiffs' abandonment of the registrations' "works made for hire" status destroys the presumption.

Moreover, a copyright registration applicant must identify *all* joint authors. 17 U.S.C. § 409(2); U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices (Third)* §§ 503.2, 613.5 (2017). Plaintiffs have never done that. Even as they have adopted their "joint author" revisionist claim to some ownership share of the copyrights, there is no evidence they corrected or amended their copyright registrations, as they should have, by identifying all joint authors, which would clarify the federal employee joint authorship.

With this Court's earlier order vacated, and with Plaintiffs seeking summary judgment, Public Resource raises the issue now[20] and presents sufficient evidence to indicate federal government employee participation in drafting the documents at issue. The burden of proof on ownership of valid copyrights still lies with the Plaintiffs.  On summary judgment they must conclusively prove ownership, and they cannot do so.

## CONCLUSION

For all these reasons, the Court should deny Plaintiffs' motion for summary judgment and for a permanent injunction and grant Defendant's second motion for summary judgment.

---

[20] The Court of Appeals ruled that Public Resource had previously raised the issue too late in the earlier summary judgment proceedings to preserve the issue for appeal.  On a new summary judgment motion, Public Resource now raises it timely.

Dated: November 12, 2019

Respectfully submitted,

/s/   Andrew P. Bridges
Andrew P. Bridges (USDC-DC AR0002)
abridges@fenwick.com
Matthew B. Becker (admitted *pro hac vice*)
mbecker@fenwick.com
Armen N. Nercessian (pending *pro hac vice*)
anercessian@fenwick.com
Shannon E. Turner (pending *pro hac vice*)
sturner@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:    (650) 988-8500

Corynne McSherry (admitted *pro hac vice*)
corynne@eff.org
Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:    (415) 436-9333

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW 2nd Floor
Washington, DC 20005
Telephone: (202) 905-3434

*Attorneys for Defendant-Counterclaimant*
Public.Resource.Org, Inc.

B9620/00403/FW/11117824.10

46