# EXHIBIT 45

```
 1                UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF COLUMBIA
 3    ----------------------------------
      AMERICAN SOCIETY FOR TESTING AND   ) Case No.
 4    MATERIALS d/b/a ASTM INTERNATIONAL;) 1:13-cv-01215-EGS
                                         )
 5    NATIONAL FIRE PROTECTION           )
      ASSOCIATION, INC.; and             )
 6                                       )
      AMERICAN SOCIETY OF HEATING,       )
 7    REFRIGERATING, AND                 )
      AIR-CONDITIONING ENGINEERS, INC.,  )
 8                                       )
                Plaintiffs,              )
 9        vs.                            )
                                         )
10    PUBLIC.RESOURCE.ORG, INC.,         )
                                         )
11              Defendant.               )
      ----------------------------------)
12    AND RELATED COUNTERCLAIMS.         )
      ----------------------------------)
13
14
15       RULE 30(B)(6) VIDEOTAPED DEPOSITION OF AMERICAN
16      STANDARDS SOCIETY FOR TESTING AND MATERIALS, BY AND
17                   THROUGH ITS DESIGNEE,
18                       JEFFREY GROVE
19                      WASHINGTON, D.C.
20               WEDNESDAY, MARCH 4, 2015
21
22    Reported by:
23    NANCY J. MARTIN, CSR No. 9504, RMR
24    Job No. 2010158
25    PAGES 1 - 284

                                               Page 1
```

| | |
|---|---|
| 1      UNITED STATES DISTRICT COURT | 1 APPEARANCES OF COUNSEL:  (CONTINUED) |
| 2     FOR THE DISTRICT OF COLUMBIA | 2 |
| 3 ----------------------------------- | 3    MUNGER, TOLLES & OLSON LLP   (VIA TELECON) |
|   AMERICAN SOCIETY FOR TESTING AND   ) Case No | 4    BY:  THANE REHN, ESQ. |
| 4 MATERIALS d/b/a ASTM INTERNATIONAL;) 1:13-cv-01215-EGS | 5    560 Mission Street |
| 5 NATIONAL FIRE PROTECTION     ) | 6    27th Floor |
|   ASSOCIATION, INC ; and     ) | 7    San Francisco, California  94105 |
| 6        ) | 8    (415) 512-4073 |
|   AMERICAN SOCIETY OF HEATING,   ) | 9    thane.rehn@mto.com |
| 7 REFRIGERATING, AND     ) | 10 |
|   AIR-CONDITIONING ENGINEERS, INC , ) | 11 |
| 8        ) | 12 ALSO PRESENT: |
|     Plaintiffs,    ) | 13    THOMAS B. O'BRIEN, JR., Vice President and |
| 9    vs     ) | 14    General Counsel, ASTM International |
| 10 PUBLIC RESOURCE ORG, INC ,   ) | 15 |
|        ) | 16    CARL MALAMUD, PUBLIC.RESOURCE.ORG (via telecon) |
| 11   Defendant    ) | 17 |
|   -----------------------------------) | 18    CHRIS SOMO, Legal Videographer |
| 12 AND RELATED COUNTERCLAIMS    ) | 19 |
|   -----------------------------------) | 20 |
| 13 | 21 |
| 14 | 22 |
| 15    Rule 30(B)(6) videotaped deposition of American | 23 |
| 16 Standards Society for Testing and Materials, by and | 24 |
| 17 through its designee, JEFFREY GROVE taken at Veritext | 25 |
| 18 Legal Solutions, 1250 Eye Street NW, Suite 1201, | |
| 19 Washington, D C  commencing at 9:20 A M , Wednesday, | |
| 20 March 4, 2015, before Nancy J  Martin, CSR 9504 | |
| 21 RMR | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
|                         Page 2 |                         Page 4 |

| | |
|---|---|
| 1 APPEARANCES OF COUNSEL: | 1         I N D E X |
| 2 | 2 TESTIMONY OF:  JEFFREY GROVE |
| 3 FOR THE PLAINTIFFS: | 3 BY MR. BRIDGES.................................14 |
| 4    MORGAN LEWIS & BOCKIUS LLP | 4 |
| 5    BY: J. KEVIN FEE, ESQ. | 5        --- |
| 6    1111 Pennsylvania Avenue NW | 6     E X H I B I T S |
| 7    Washington, D.C.  20004 | 7        --- |
| 8    (202) 739-5353 | 8 NUMBER      DESCRIPTION      MARKED |
| 9    JKFEE@MORGANLEWIS.COM | 9 Exhibit 1022  Amended Notice of Deposition,   53 |
| 10 | 10     8 pages |
| 11 FOR THE DEFENDANT: | 11 Exhibit 1023  Return of Organization Exempt   56 |
| 12    FENWICK & WEST LLP | 12     from Income Tax, 2012, |
| 13    BY:  ANDREW P. BRIDGES, ESQ. | 13     43 pages |
| 14     MATTHEW BECKER, ESQ. | 14 Exhibit 1024  Email string, ASTM015659 -   57 |
| 15    555 California Street | 15     -15660, 2 pages |
| 16    12th Floor | 16 Exhibit 1025  Comments of ASTM International,   57 |
| 17    San Francisco, California  94104 | 17     ASTM015661 - -15667, 7 pages |
| 18    (415) 875-2389 | 18 Exhibit 1026  Email string, ASTM030644 -   58 |
| 19    abridges@fenwick.com | 19     -30647, 4 pages |
| 20    mbecker@fenwick.com | 20 Exhibit 1027  Email string, ASTM015779 -   61 |
| 21 | 21     -15780, 2 pages |
| 22 | 22 Exhibit 1028  Email string, ASTM015828 -   63 |
| 23 | 23     -15830, 3 pages |
| 24 | 24 |
| 25 | 25 |
|                         Page 3 |                         Page 5 |

2 (Pages 2 - 5)

```
 1              - - -
 2           E X H I B I T S
 3              - - -
 4 NUMBER        DESCRIPTION         MARKED
 5 Exhibit 1029  Email string, ASTM015912 -      64
 6      -15913, 2 pages
 7 Exhibit 1030  Letter dated April 27,          65
 8      2012, ASTM016538 - -16546,
 9      9 pages
10 Exhibit 1031  Email string, ASTM024218 -      67
11      -024219, 2 pages
12 Exhibit 1032  ASTM Standards Regulations      82
13      & Trade, Power Point,
14      22 pages
15 Exhibit 1033  Memo from Jeff to Jim,          83
16      2012 Accomplishments and
17      2013 Objectives,
18      ASTM019297 - -19299,
19      3 pages
20 Exhibit 1034  Email string, ASTM100366 -      84
21      -100368, 3 pages
22 Exhibit 1035  Email string, ASTM101288 -      84
23      -101289, 2 pages
24
25
                                        Page 6
```

```
 1              - - -
 2           E X H I B I T S
 3              - - -
 4 NUMBER        DESCRIPTION         MARKED
 5 Exhibit 1044  Email string, ASTM02893 -      134
 6      -102897, 5 pages
 7 Exhibit 1045  Email string, ASTM022627,      137
 8      1 page
 9 Exhibit 1046  Email string, ASTM022630 -     142
10      -022631, 2 pages
11 Exhibit 1047  Email string, ATM030712,       193
12      1 page
13 Exhibit 1048  Email dated February 7,        195
14      2013, ASTM023336, 1 page
15 Exhibit 1049  Email string, ASTM0255574 -    199
16      -025575, 2 pages
17 Exhibit 1050  Email dated May 13, 2013,      199
18      ASTM027093, 1 page
19 Exhibit 1051  Email dated August 2, 2013,    203
20      ASTM029833 - -029834,
21      2 pages
22 Exhibit 1052  Email string, ASTM027187 -     203
23      -027188, 2 pages
24
25
                                        Page 8
```

```
 1              - - -
 2           E X H I B I T S
 3              - - -
 4 NUMBER        DESCRIPTION         MARKED
 5 Exhibit 1036  Memo from Jeff to ASTM Senior    84
 6      Staff, ASTM101778 - -101779,
 7      2 pages
 8 Exhibit 1037  Email string, ASTM101800,       86
 9      1 page
10 Exhibit 1038  ASTM Organizational Chart as     99
11      of July 1, 2014, ASTM003479 -
12      -003489, 11 pages
13 Exhibit 1039  Email string, ASTM102072 -     103
14      -102076, 5 pages
15 Exhibit 1040  Email string, ASTM102089,      104
16      1 page
17 Exhibit 1041  Email string, ASTM102094,      128
18      1 page
19 Exhibit 1042  Email dated October 17, 2013,  128
20      ASTM102361, 1 page
21 Exhibit 1043  Structural Forum, Building Codes 132
22      and the Public Domain,
23      ASTM102388, 1 page
24
25
                                        Page 7
```

```
 1              - - -
 2           E X H I B I T S
 3              - - -
 4 NUMBER        DESCRIPTION         MARKED
 5 Exhibit 1053  Email string, ASTM098310 -     205
 6      -98311, 2 pages
 7 Exhibit 1054  Email dated April 24, 2014,    206
 8      ASTM103024, 1 page
 9 Exhibit 1055  Email string, ASTM101183 -     208
10      -101186, 4 pages
11 Exhibit 1056  Email string, ASTM102031 -     210
12      -102032, 2 pages
13 Exhibit 1057  Email string, ASTM102042 -     220
14      -102044, 3 pages
15 Exhibit 1058  Email string, ASTM102053 -     228
16      -102055, 3 pages
17 Exhibit 1059  Email string, ASTM018709 -     229
18      -18710, 2 pages
19 Exhibit 1060  ASTM License Agreement         229
20      (Reading Room), ASTM001814 -
21      -001815, 2 pages
22
23
24
25
                                        Page 9
```

3 (Pages 6 - 9)

Page 10

```
1                 - - -
2          E X H I B I T S
3                 - - -
4  NUMBER        DESCRIPTION        MARKED
5  Exhibit 1061  ASTM License Agreement,      230
6              ASTM001788 - -001791,
7              2 pages
8  Exhibit 1062  Email string, ASTM097943 -   232
9              -097945, 3 pages
10 Exhibit 1063  Email string, ASTM097980,     233
11             1 page
12 Exhibit 1064  Email dated July 21, 2011,    238
13             ASTM099269, 1 page
14 Exhibit 1065  Email string, ASTM099366 -    240
15             -099370, 5 pages
16 Exhibit 1066  Email string, ASTM099834,     242
17             1 page
18 Exhibit 1067  Email string, ASTM015162,     243
19             1 page
20 Exhibit 1068  Email string, ASTM0095371 -   257
21             -95372, 2 pages
22 Exhibit 1069  Email string, ASTM092006 -    257
23             -092009, 4 pages
24
25
```

Page 12

```
1               DEPOSITION SUPPORT INDEX
2
3  DIRECTION TO WITNESS NOT TO ANSWER:
4  Page   Line
5
6
7
8  REQUEST FOR PRODUCTION OF DOCUMENTS:
9  Page   Line
10
11
12
13 QUESTIONS MARKED:
14 Page     Line
15
16
17
18
19
20
21
22
23
24
25
```

Page 11

```
1                 - - -
2          E X H I B I T S
3                 - - -
4  NUMBER        DESCRIPTION        MARKED
5  Exhibit 1070  Email string, ASTM095373 -    258
6              ASTM95376, 4 pages
7  Exhibit 1071  Email string, ASTM019650 -    258
8              -19653, 4 pages
9  Exhibit 1072  Form and Style for ASTM       268
10             Standards, January 2015,
11             80 pages
12 Exhibit 1073  Incorporation by Reference    269
13             Public Workshop, July 13,
14             2012, 15 pages
15 Exhibit 1074  Email string, ASTM005399 -    270
16             -5400, 2 pages
17 Exhibit 1075  Email dated August 20, 2014,  271
18             ASTM003314 - -003315,
19             2 pages
20
21
22
23
24
25
```

Page 13

```
1  WASHINGTON, D C , WEDNESDAY, MARCH 4, 2015; 9:20 A M   09:11:47
2           -OoO-            09:11:47
3       THE VIDEOGRAPHER:  Good morning  My name is   09:20:59
4  Chris Somo from Veritext National Deposition Services   09:21:00
5  The date today is March 4, 2015, and the time on the    09:21 06
6  video monitor is 9:20  This deposition is being held    09:21 09
7  at Veritext, Washington, D C  located at         09:21:15
8  1250 I Street, Northwest, Washington, D C  The      09:21:18
9  caption of this case is American Society for Testing   09:21:21
10 and Materials, et al , v  Public Resource O-r-z (sic),   09:21:24
11 Inc  This case is filed in the United States District   09:21:30
12 Court for the District of Columbia, Case          09:21:33
13 No  1:13-CV-01215-EGS  The name of the witness is   09:21:36
14 Jeffrey Grove                        09:21:47
15       At this time the attorneys present in the     09:21:48
16 room and attending remotely, will you please identify   09:21:51
17 yourselves for the record                 09:21:55
18       MR  BRIDGES:  This is Andrew Bridges and    09:21:58
19 Matthew Becker of Fenwick & West representing the    09:21:59
20 defendant, Public Resource Org, and listening in on    09:22 04
21 the telephone is Carl Malamud, M-a-l-a-m-u-d       09:22:08
22       MR  FEE:  Kevin Fee from Morgan Lewis on   09:22:10
23 behalf of ASTM, and I'm joined with -- by Tom O'Brien   09:22:17
24 from ASTM                       09:22:20
25       THE VIDEOGRAPHER:  Would the court reporter,   09:22:24
```

4 (Pages 10 - 13)

1  Nancy Martin, please swear in the witness, and we can    09:22:25
2  begin.                                      09:22:27
3           JEFFREY GROVE,                     09:22:36
4     having been first duly sworn,            09:22:40
5        and testified as follows:             09:22:40
6                                              09:22:40
7           EXAMINATION                        09:22:40
8  BY MR. BRIDGES:                             09:22:40
9     Q. Good morning, Mr. Grove.              09:22:40
10    A. Good morning.                         09:22:41
11    Q. Have you ever been deposed before?    09:22:45
12    A. I have not.                           09:22:46
13    Q. Have you had a chance to meet with ASTM    09:22:49
14 attorneys to prepare you for this deposition?    09:22:51
15    A. I did.                                09:22:57
16    Q. When did you meet with them?          09:22:57
17    A. I met with our attorneys over a period of    09:22:58
18 three days. The last two days, and once in December.    09:23:01
19 A total of 15 hours.                        09:23:06
20    Q. With whom did you meet?               09:23:12
21    A. I met with Kevin Fee and with Jordana Rubel,    09:23:13
22 and with our corporate attorney, Tom O'Brien.    09:23:19
23    Q. You understand that you are testifying today    09:23:32
24 as a representative of ASTM?                 09:23:34
25    A. Yes.                                  09:23:38
                                              Page 14

1    Q. And you understand that you are testifying as    09:23:40
2  a representative of ASTM with respect to certain    09:23:46
3  subject matters?                           09:23:48
4     A. Yes.                                  09:23:49
5     Q. What did you do to educate yourself about    09:23:49
6  those subjects?                            09:23:52
7     A. In addition to the meetings, I reviewed a lot    09:23:53
8  of documents.                              09:23:56
9     Q. And when did you review the documents?    09:24:01
10    A. Over the last few days and in my own personal    09:24:03
11 time before then.                          09:24:07
12    Q. How much time did you spend reviewing    09:24:11
13 documents outside of meetings with attorneys?    09:24:13
14    A. Probably 8 to 10 hours.               09:24:16
15    Q. Did you select those documents, or did the    09:24:23
16 lawyers select the documents?               09:24:25
17    A. Personal knowledge, I selected them.    09:24:26
18    Q. What determined which documents you selected    09:24:38
19 to review?                                 09:24:41
20        MR. FEE: Objection. To the extent that    09:24:42
21 legal counsel or their guidance provided any basis for    09:24:43
22 your determination, I'm going to instruct you not to    09:24:48
23 disclose that. If you have some independent review    09:24:50
24 criteria that you can share with the other side,    09:24:53
25 that's fine.                               09:24:55
                                              Page 15

1        THE WITNESS: I don't have any criteria.    09:24:56
2  Just I thought it would be a good idea to review    09:24:58
3  annual reports and that type of publicly available    09:25:02
4  information about ASTM.                     09:25:04
5  BY MR. BRIDGES:                            09:25:08
6     Q. What else did you review among the documents?    09:25:08
7        MR. FEE: Objection. Are you asking about    09:25:11
8  the ones he selected on his own or the ones --    09:25:12
9        MR. BRIDGES: No --                    09:25:14
10       MR. FEE: Well, I'm going to instruct you not    09:25:14
11 to disclose the documents that you reviewed at the    09:25:16
12 request or direction of counsel. You can disclose any    09:25:18
13 other documents you reviewed.              09:25:21
14       MR. BRIDGES: I think I'm entitled to know    09:25:22
15 what documents he reviewed to prepare for the    09:25:23
16 deposition. It might reveal attorney work product if    09:25:27
17 he told us what documents were discussed with counsel,    09:25:31
18 but I'm entitled to know which documents he reviewed    09:25:36
19 in general.                               09:25:39
20       MR. FEE: I disagree.                 09:25:41
21       You should follow your instruction.   09:25:43
22       THE WITNESS: I have no other documents that    09:25:44
23 I can recall to disclose.                 09:25:46
24 BY MR. BRIDGES:                           09:25:47
25    Q. So you're saying that all the documents -- of    09:25:47
                                              Page 16

1  all the documents you reviewed, only annual reports    09:25:52
2  are those that you thought to review on your own?    09:25:55
3     A. Right. I think the exception to that would    09:25:56
4  be standardization news. I contributed some articles    09:26:01
5  that I thought I should refresh my memory with.    09:26:03
6     Q. What did those articles concern?      09:26:08
7     A. Discussed generally ASTM's mission and work    09:26:13
8  we do to promote ASTM's mission and its important role    09:26:20
9  in protecting everyday citizens due to the development    09:26:24
10 of standards that protect the environment, health, and    09:26:26
11 safety.                                   09:26:31
12       MR. BRIDGES: One thing occurred to me. We    09:26:35
13 may need a short break. I forgot, you know, I was    09:26:37
14 supposed to have real time. Can we get real time?    09:26:39
15       REPORTER MARTIN: Yes, sir. I'm working on    09:26:43
16 it right now.                             09:26:43
17       MR. BRIDGES: Thanks.                 09:26:43
18       MR. BECKER: We also have an email from Thane    09:26:48
19 stating he'd like to listen in. So perhaps we should    09:26:49
20 take a break and set up real-time.         09:26:51
21       MR. BRIDGES: I think we've got a separate    09:26:55
22 bridge. I think Carl dialed in directly. So we're    09:26:57
23 going to have to drop him and set up a bridge.    09:26:59
24       Sorry about this, but let's go off the record    09:27:01
25 for a few minutes.                        09:27:03
                                              Page 17

| | |
|---|---|
| 1     THE VIDEOGRAPHER: We're now going off the   09:27:05 | 1   Q. Did you attach any significance to that   09:41:21 |
| 2 record at 9:26     09:27:05 | 2 figure?     09:41:23 |
| 3     (A recess was taken from 9:26 a m   09:34:30 | 3     MR. FEE: Objection. Vague.   09:41:25 |
| 4   to 9:37 a m )     09:38:32 | 4     THE WITNESS: No.   09:41:28 |
| 5     THE VIDEOGRAPHER: And we're back on the   09:38:33 | 5 BY MR. BRIDGES:     09:41:30 |
| 6 record at 9:37     09:38:34 | 6   Q. Did it strike you as unusual or unexpected in   09:41:30 |
| 7 BY MR BRIDGES:     09:38:48 | 7 any --     09:41:33 |
| 8   Q Do you recall any other documents that you   09:38:48 | 8     MR. FEE: Objection. Vague and compound.   09:41:34 |
| 9 reviewed on your own initiative apart from annual   09:38:50 | 9     THE WITNESS: It did not.   09:41:40 |
| 10 reports and standardization news?   09:38:53 | 10 BY MR. BRIDGES:     09:41:43 |
| 11   A I do not     09:38:59 | 11   Q. Did those figures he gave you accord with   09:41:43 |
| 12   Q Apart from conversations specifically with   09:39:01 | 12 your expectations?     09:41:45 |
| 13 attorneys, did you discuss the topics of today's   09:39:06 | 13   A. Generally, yes.   09:41:51 |
| 14 conversation -- of today's deposition with anyone else   09:39:12 | 14   Q. Did that revenue trend -- strike that.   09:41:56 |
| 15 in preparation for your deposition today?   09:39:18 | 15     Was that revenue trend consistent with   09:42:03 |
| 16   A I made a phone call to our vice president of   09:39:21 | 16 revenue trends over previous years?   09:42:05 |
| 17 sales and publications     09:39:24 | 17     MR. FEE: Objection. Vague.   09:42:09 |
| 18   Q Who is that?     09:39:28 | 18     THE WITNESS: I don't know.   09:42:14 |
| 19   A John Pace     09:39:31 | 19 BY MR. BRIDGES:     09:42:15 |
| 20   Q What did you discuss with him?   09:39:31 | 20   Q. Do you know anything about revenue trends   09:42:15 |
| 21   A Wanted to review ASTM's financials and   09:39:38 | 21 before three years ago?     09:42:17 |
| 22 revenues so I was prepared     09:39:42 | 22     MR. FEE: Same objection.   09:42:19 |
| 23   Q What did you learn from him?   09:39:46 | 23     THE WITNESS: Not that I can produce or   09:42:26 |
| 24   A Not much To be honest, I think I have a   09:39:47 | 24 recall.     09:42:27 |
| 25 good understanding     09:39:52 | 25 BY MR. BRIDGES:     09:42:32 |
| Page 18 | Page 20 |
| 1   Q. What did you ask him about?   09:39:55 | 1   Q. What else did you discuss with Mr. Pace?   09:42:32 |
| 2   A. I wanted to review with him what I knew about   09:39:59 | 2   A. That's all I recall.   09:42:39 |
| 3 sources of ASTM's revenue from the sale publications.   09:40:07 | 3   Q. Did you have conversations with anyone else   09:42:40 |
| 4   Q. What else did you ask him about?   09:40:12 | 4 to prepare for your testimony today?   09:42:43 |
| 5   A. That's all I recall.   09:40:15 | 5     MR. FEE: I assume you're excluding   09:42:49 |
| 6   Q. Did you review -- did you discuss with him   09:40:20 | 6 conversations with counsel for purposes --   09:42:50 |
| 7 any changes in revenue to ASTM from publications?   09:40:25 | 7     MR. BRIDGES: Yes.   09:42:52 |
| 8     MR. FEE: Objection. Form.   09:40:30 | 8     MR. FEE: -- of that question?   09:42:52 |
| 9     THE WITNESS: Not that I recall.   09:40:34 | 9     MR. BRIDGES: Yes.   09:42:54 |
| 10 BY MR. BRIDGES:     09:40:37 | 10     THE WITNESS: Not that I recall.   09:42:55 |
| 11   Q. And did you discuss with him any trends with   09:40:37 | 11 BY MR. BRIDGES:     09:43:04 |
| 12 respect to revenue that ASTM gains from publications?   09:40:42 | 12   Q. How long have you worked for ASTM?   09:43:04 |
| 13     MR. FEE: Objection to form.   09:40:45 | 13   A. Just over 10 years.   09:43:07 |
| 14     Go ahead.     09:40:47 | 14   Q. What have your job titles been?   09:43:11 |
| 15     THE WITNESS: I did ask -- I wanted to learn   09:40:48 | 15   A. My original job title was Washington   09:43:13 |
| 16 over the last couple of years, roughly, what increase   09:40:53 | 16 representative. My second title was director of   09:43:15 |
| 17 in sales we've been experiencing.   09:40:56 | 17 government and industry affairs, and my current title   09:43:21 |
| 18 BY MR. BRIDGES:     09:41:01 | 18 is vice president of global policy and industry   09:43:25 |
| 19   Q. What else?     09:41:01 | 19 affairs.     09:43:29 |
| 20   A. That's all I recall.   09:41:02 | 20   Q. In that job title, what does the word   09:43:39 |
| 21   Q. What did you learn about the increase in   09:41:05 | 21 "industry" refer to?     09:43:41 |
| 22 sales that ASTM has been experiencing?   09:41:07 | 22     MR. FEE: Objection. Vague.   09:43:43 |
| 23   A. That there has been a very slight 2 to 3 to 5   09:41:10 | 23     THE WITNESS: Well, the majority of ASTM   09:43:48 |
| 24 percent increase over the last two to three years.   09:41:18 | 24 members under our system of private sector led   09:43:51 |
| 25 Revenue from sales of publications.   09:41:18 | 25 public/private collaboration come from industry. So I   09:43:56 |
| Page 19 | Page 21 |

Veritext Legal Solutions
866 299-5127

| | |
|---|---|
| 1 work with industry to make them aware of ASTM and to 09:43:59 | 1 curiosity, but the question is broad enough that it 09:47:29 |
| 2 try to get them engaged in our process 09:44:03 | 2 might call for that 09:47:31 |
| 3 BY MR BRIDGES: 09:44:12 | 3 MR FEE: Objection to form 09:47:33 |
| 4 Q So "industry" in that title doesn't refer to 09:44:12 | 4 BY MR BRIDGES: 09:47:34 |
| 5 industry that ASTM is in Instead, it refers to the 09:44:15 | 5 Q You may answer 09:47:34 |
| 6 industries of its members -- 09:44:20 | 6 A So I've been appointed to work for the 09:47:40 |
| 7 MR FEE: Objection to form 09:44:22 | 7 Department of Commerce, Environmental Technology Trade 09:47:42 |
| 8 BY MR BRIDGES: 09:44:28 | 8 Advisory Committee where for the last four years I've 09:47:46 |
| 9 Q -- is that correct? 09:44:28 | 9 served as the vice chairman of regulation, 09:47:55 |
| 10 A Yes 09:44:28 | 10 certification, and standards I'm sorry Vice 09:48:01 |
| 11 Q What was your undergraduate degree? 09:44:40 | 11 chairman, yes 09:48:03 |
| 12 A My undergraduate degree is in -- I'm a double 09:44:44 | 12 Q Is that a USTR committee? 09:48:06 |
| 13 major in political science and public administration 09:44:47 | 13 A It's a U S Department of Commerce 09:48:08 |
| 14 Q What employment did you have before ASTM that 09:45 05 | 14 Congressionally chartered committee 09:48:11 |
| 15 equipped you for your job at ASTM? 09:45:15 | 15 Q What other positions have you held? 09:48:22 |
| 16 MR FEE: Objection Vague 09:45:20 | 16 A There is an organization called the American 09:48:27 |
| 17 THE WITNESS: From 1993 to 2000 I worked for 09:45:21 | 17 National Standards Institute, and I serve on the 09:48:28 |
| 18 the U S House of Representatives in different 09:45:29 | 18 National Policy Committee 09:48:32 |
| 19 positions 09:45:32 | 19 Q What else? 09:48:40 |
| 20 BY MR BRIDGES: 09:45:33 | 20 A In 2009 I served the State Department -- U S 09:48:44 |
| 21 Q What else? 09:45:33 | 21 State Department as a delegate to the -- I want to 09:48:50 |
| 22 A From 2001 to 2004 I worked for the 09:45:37 | 22 make sure I get it right Asia-Pacific Economic 09:48:55 |
| 23 Association for Computing Machinery here in 09:45:42 | 23 Council APEC It involved meetings in Singapore 09:49:00 |
| 24 Washington 09:45:44 | 24 Q What else? 09:49:11 |
| 25 Q What else? 09:45:47 | 25 A That's all I recall 09:49:20 |
| Page 22 | Page 24 |

| | |
|---|---|
| 1 A. 2004, I was hired by ASTM. 09:45:48 | 1 Q. Have you ever heard of an informal 09:49:22 |
| 2 Q. Did you receive any training as an engineer? 09:46:07 | 2 organization called coalition for SDO awareness? 09:49:25 |
| 3 A. I'm not an engineer, no. 09:46:11 | 3 A. I'm not familiar with that title. 09:49:34 |
| 4 Q. Did you receive any scientific technical 09:46:13 | 4 Q. Are you familiar with an organization that 09:49:37 |
| 5 training? 09:46:16 | 5 that title suggests? 09:49:47 |
| 6 MR. FEE: Objection. Vague and compound. 09:46:17 | 6 MR. FEE: Objection. Vague. Calls for 09:49:47 |
| 7 THE WITNESS: No. Science and technology 09:46:20 | 7 speculation. 09:49:47 |
| 8 policy I was involved in, but not a scientist. 09:46:22 | 8 THE WITNESS: I'm not aware of that 09:49:47 |
| 9 BY MR. BRIDGES: 09:46:58 | 9 organization. 09:49:48 |
| 10 Q. In the time you have worked for ASTM, have 09:46:58 | 10 BY MR. BRIDGES: 09:49:48 |
| 11 you held any type of position in any other the 09:47:01 | 11 Q. Are you familiar with the domain name or 09:49:54 |
| 12 organization? 09:47:02 | 12 website SDOAWARENESS.ORG? 09:49:57 |
| 13 MR. FEE: Objection. Vague. 09:47:03 | 13 A. Okay. So I can't speak with certainty, but 09:50:00 |
| 14 THE WITNESS: Could you help define 09:47:05 | 14 that could be referring to work that ASTM and FPA and 09:50:06 |
| 15 "organization." 09:47:07 | 15 ASME undertook together to educate the public about 09:50:10 |
| 16 BY MR. BRIDGES: 09:47:08 | 16 standards back in 2012. 09:50:14 |
| 17 Q. Well, another association or industry group. 09:47:08 | 17 MR. FEE: I'll just remind you to answer 09:50:20 |
| 18 A. Okay. 09:47:16 | 18 about your knowledge. Don't speculate. 09:50:21 |
| 19 Q. Any other entity that you've had a title in. 09:47:16 | 19 THE WITNESS: Thank you. 09:50:26 |
| 20 A. Okay. 09:47:19 | 20 BY MR. BRIDGES: 09:50:37 |
| 21 MR. FEE: Objection. Are you asking about 09:47:20 | 21 Q. Did you understand the work that ASTM and FPA 09:50:37 |
| 22 his personal capacity too? Do you want to know what 09:47:21 | 22 and ASME undertook together to be as part of some 09:50:40 |
| 23 church he belongs to, et cetera, or just as an ASTM 09:47:24 | 23 informal coalition? 09:50:44 |
| 24 employee? 09:47:27 | 24 MR. FEE: Objection. Vague. 09:50:46 |
| 25 MR. BRIDGES: Well, that's not a focus of my 09:47:28 | 25 THE WITNESS: Informal coalition would be my 09:50:49 |
| Page 23 | Page 25 |

7 (Pages 22 - 25)

1 recollection of this group.                    09:50:52
2 BY MR. BRIDGES:                               09:50:56
3    Q. Do you recall any other name for that    09:50:56
4 informal coalition than the name I used a few   09:50:57
5 questions ago?                                09:51:00
6    A. I do not.                               09:51:09
7    Q. Are you aware that that informal coalition 09:51:10
8 retained a lobbyist in Washington?            09:51:10
9       MR. FEE: Objection. Lack of foundation.  09:51:11
10 Calls for speculation.                         09:51:12
11      THE WITNESS: ASTM does not lobby. So I'm  09:51:14
12 not aware that we retained a lobbyist for that  09:51:16
13 coalition.                                    09:51:23
14 BY MR. BRIDGES:                              09:51:25
15    Q. Are you aware of any of the work of an    09:51:25
16 organization called APCO?                     09:51:28
17    A. Yes, I'm aware.                          09:51:29
18    Q. Are you aware of its work with respect to 09:51:30
19 standards development organizations?           09:51:32
20      MR. FEE: Objection. Vague. Calls for     09:51:32
21 speculation.                                   09:51:35
22      THE WITNESS: I'm aware that we worked with 09:51:38
23 an organization called APCO on a public awareness 09:51:40
24 project.                                      09:51:43
25 BY MR. BRIDGES:                              09:51:46

Page 26

1    Q. When you said, "we" in the last answer, who 09:51:46
2 are you referring to?                          09:51:48
3    A. That was jointly undertaken between FPA and 09:51:50
4 FPA and ASME.                                 09:51:55
5    Q. Did ASTM contribute to the payments to APCO? 09:51:55
6    A. We did, yes                             09:52:02
7    Q. You mentioned ASTM and FPA and ASME as part 09:52:17
8 of the group; is that correct?                 09:52:23
9       MR. FEE: Objection Mischaracterizes his  09:52:24
10 testimony and vague                           09:52:25
11      THE WITNESS: My recollection is those are 09:52:33
12 the three organizations, correct              09:52:35
13 BY MR. BRIDGES:                              09:52:38
14    Q. Do you recall whether any other organization 09:52:38
15 participated with those three and the activities 09:52:41
16 relating to APCO?                            09:52:44
17    A. I do not recall any other organizations   09:52:46
18 participating                                  09:52:48
19    Q. Who organized the joint effort of ASTM and 09:52:49
20 FPA and ASME with respect to APCO?          09:52:52
21      MR. FEE: Objection Lack of foundation    09:52:56
22      THE WITNESS: I wouldn't be able to answer 09:53:01
23 that  I believe it --                         09:53:02
24      MR. FEE: If you don't know, you don't know 09:53:04
25      THE WITNESS: I don't know              09:53:07

Page 27

1 BY MR. BRIDGES:                               09:53:07
2    Q. Why do you not know?                    09:53:07
3       MR. FEE: Objection. Vague. Calls for    09:53:09
4 speculation.                                   09:53:11
5       THE WITNESS: I don't know why -- how the 09:53:15
6 organization was formed.                       09:53:18
7 BY MR. BRIDGES:                              09:53:19
8    Q. Did you participate in the organization?  09:53:19
9    A. And, again, I wouldn't call it an         09:53:21
10 organization. It's an informal group. But, yes, I 09:53:23
11 participated.                                  09:53:26
12    Q. Who else participated in the informal group? 09:53:27
13    A. My counterparts, being Washington       09:53:30
14 representatives for ASME and for NFPA.       09:53:32
15    Q. Who are those counterparts?             09:53:40
16    A. At the time, for ASME, it was a         09:53:44
17 representative named Robert Grains, and for NFPA I 09:53:48
18 believe it was Megan Housewright.           09:53:54
19    Q. Do you recall their titles at their       09:54:01
20 respective organizations?                      09:54:03
21    A. I don't.  I do not.                      09:54:04
22    Q. How did you first come to hear about the   09:54:09
23 possibility of these companies working with APCO? 09:54:13
24    A. I don't recall exactly how I came to be aware 09:54:26
25 of it.                                        09:54:30

Page 28

1    Q. What's the first activity that you recall you 09:54:31
2 engaged in with respect to that group?         09:54:37
3    A. I believe that we -- the representatives of 09:54:41
4 the organizations recognized that there was a need to 09:54:48
5 raise a greater awareness about the benefits the U.S. 09:54:52
6 Standards System with our key stakeholders in  09:54:58
7 Washington, D.C. and beyond. So I believe we got -- 09:55:01
8 had that discussion and decided the best way to do 09:55:06
9 that would be to work with a firm that's more familiar 09:55:10
10 with public affairs capabilities and attributes.  09:55:15
11    Q. What was the first activity that you recall 09:55:26
12 you engaged in with respect to that group?     09:55:30
13      MR. FEE: Objection. Asked and answered.  09:55:32
14      THE WITNESS: Identifying what -- some of the 09:55:40
15 activities we'd like to undertake together.      09:55:43
16 BY MR. BRIDGES:                             09:55:52
17    Q. How did you first -- did you propose that 09:55:52
18 these three organizations work together in this 09:55:57
19 fashion?                                     09:56:07
20    A. I don't recall how these three organizations 09:56:07
21 were the ones that worked together.           09:56:09
22    Q. Do you recall -- did somebody take the   09:56:15
23 initiative to convene this group with respect to 09:56:22
24 retaining a firm like APCO?                   09:56:24
25      MR. FEE: Objection. Vague.              09:56:26

Page 29

8 (Pages 26 - 29)

| | |
|---|---|
| 1 THE WITNESS: Right. So I believe we 09:56:29 | 1 BY MR. BRIDGES: 09:58:47 |
| 2 identified the objectives, and I believe the next step 09:56:33 | 2 Q Do you recall any interactions with Lorraine 09:58:47 |
| 3 was to formulate a request for proposal that we wanted 09:56:36 | 3 Carli of NFPA? 09:58:49 |
| 4 to put out to a public affairs firm. 09:56:40 | 4 A I do recall Lorraine Carli 09:58:52 |
| 5 BY MR. BRIDGES: 09:56:46 | 5 Q With respect to this initiative? 09:58:53 |
| 6 Q. Who first brought the idea of this activity 09:56:46 | 6 MR. FEE: Objection Vague 09:58:55 |
| 7 to the attention of the others within this group? 09:56:49 | 7 THE WITNESS: I believe Lorraine is the vice 09:58:57 |
| 8 MR. FEE: Objection. Vague. 09:56:51 | 8 president for public affairs and communications in 09:59:00 |
| 9 THE WITNESS: I just don't recall. 09:56:52 | 9 Battery Park, Massachusetts So I do believe she was 09:59:06 |
| 10 BY MR. BRIDGES: 09:56:54 | 10 involved in this now that you mention it 09:59:09 |
| 11 Q. Was it you? 09:56:54 | 11 BY MR. BRIDGES: 09:59:12 |
| 12 A. I don't think it was me. 09:56:55 | 12 Q How was she involved? 09:59:12 |
| 13 Q. Was it Megan Housewright? 09:57:02 | 13 MR. FEE: Objection Calls for speculation 09:59:14 |
| 14 MR. FEE: Objection. Calls for speculation. 09:57:04 | 14 THE WITNESS: I believe she helped to frame 09:59:16 |
| 15 THE WITNESS: Yeah, I don't know. 09:57:05 | 15 some of the issues that this informal group would want 09:59:19 |
| 16 BY MR. BRIDGES: 09:57:12 | 16 to work with the public affairs firm to assist us, and 09:59:23 |
| 17 Q. Do you know on what occasion the idea these 09:57:12 | 17 perhaps drafted -- helped to draft the RFP 09:59:29 |
| 18 three entities working together in this fashion came 09:57:25 | 18 BY MR. BRIDGES: 09:59:46 |
| 19 about? 09:57:27 | 19 Q Who else provided input for that RFP? 09:59:46 |
| 20 MR. FEE: Objection. Vague. Calls for 09:57:28 | 20 MR. FEE: Objection Calls for speculation 09:59:49 |
| 21 speculation. 09:57:30 | 21 THE WITNESS: I believe both ASTM and ASME 09:59:50 |
| 22 THE WITNESS: Could you restate the question, 09:57:32 | 22 had an opportunity to provide input 09:59:53 |
| 23 please? 09:57:33 | 23 BY MR. BRIDGES: 09:59:59 |
| 24 BY MR. BRIDGES: 09:57:33 | 24 Q And did they provide input? 09:59:59 |
| 25 Q. Do you know on what occasion the idea of 09:57:33 | 25 MR. FEE: Objection Calls for speculation 10:00:01 |
| Page 30 | Page 32 |

| | |
|---|---|
| 1 these three entities working together came about? 09:57:35 | 1 THE WITNESS: I don't recall. 10:00:02 |
| 2 MR. FEE: Same objections. 09:57:38 | 2 BY MR. BRIDGES: 10:00:03 |
| 3 THE WITNESS: I don't recall the occasion. 09:57:46 | 3 Q. Did you provide input? 10:00:03 |
| 4 BY MR. BRIDGES: 09:57:46 | 4 A. I recall that I reviewed it. I don't recall 10:00:04 |
| 5 Q. Do you recall when the idea of these three 09:57:46 | 5 if I commented specifically and requested any changes. 10:00:06 |
| 6 entities working together arose? 09:57:49 | 6 Q. Did anybody else from ASTM review it? 10:00:15 |
| 7 A. Right. I believe it was 2011. 09:57:49 | 7 MR. FEE: Objection. Calls for speculation. 10:00:19 |
| 8 Q. When in 2011? 09:57:52 | 8 THE WITNESS: I probably made our attorney 10:00:22 |
| 9 A. I'm sorry. I don't know -- recall the month. 09:57:54 | 9 aware of and asked for legal counsel advice. 10:00:24 |
| 10 Q. Did this activity arise because of concerns 09:58:12 | 10 BY MR. BRIDGES: 10:00:29 |
| 11 about political policy issues relating to 09:58:16 | 11 Q. Which attorney? 10:00:29 |
| 12 incorporation of standards by reference? 09:58:20 | 12 A. That would be Tom O'Brien, our vice president 10:00:30 |
| 13 MR. FEE: Objection. Vague. Calls for 09:58:21 | 13 and general counsel. 10:00:32 |
| 14 speculation. 09:58:23 | 14 Q. Who's sitting here in the deposition today? 10:00:33 |
| 15 THE WITNESS: I don't recall there being one 09:58:25 | 15 A. Correct. 10:00:35 |
| 16 single reason why -- that motivated the formation of 09:58:26 | 16 Q. Did anybody else at ASTM review it? 10:00:40 |
| 17 this informal group. 09:58:30 | 17 MR. FEE: Objection. Calls for speculation. 10:00:44 |
| 18 BY MR. BRIDGES: 09:58:32 | 18 THE WITNESS: I don't recall. 10:00:49 |
| 19 Q. Was that a reason? 09:58:32 | 19 BY MR. BRIDGES: 10:01:12 |
| 20 MR. FEE: Same objections. 09:58:34 | 20 Q. A few questions ago you said that the 10:01:12 |
| 21 THE WITNESS: It could have been one reason. 09:58:35 | 21 representatives of the organizations recognized that 10:01:14 |
| 22 BY MR. BRIDGES: 09:58:36 | 22 there was a need to raise a greater awareness about 10:01:17 |
| 23 Q. It could have been or it was? 09:58:36 | 23 the benefits of the U.S. Standards System with our key 10:01:22 |
| 24 MR. FEE: Objection. Calls for speculation. 09:58:38 | 24 stakeholders in Washington, D.C. and beyond. Whom 10:01:27 |
| 25 THE WITNESS: I don't recall whether it was. 09:58:42 | 25 were you referring to when you referred to "our key 10:01:33 |
| Page 31 | Page 33 |

9 (Pages 30 - 33)

1 stakeholders in Washington, D.C."?                10:01:37
2        MR. FEE:  Objection to the extent that it    10:01:40
3 isn't an exact quote of what he said.             10:01:40
4        You can answer, if you know.               10:01:43
5        THE WITNESS:  Okay.  I believe that our key 10:01:45
6 stakeholders in Washington, D.C., the business    10:01:46
7 community that's active on shaping and forming     10:01:50
8 Washington.  So that would include organizations like 10:01:57
9 the National Association of Manufacturers.        10:02:00
10 BY MR. BRIDGES:                                   10:02:11
11    Q.  Who else do you include within the scope of 10:02:11
12 "our key stakeholders in Washington, D.C."?       10:02:14
13    A.  The U.S. Chamber of Commerce.             10:02:17
14    Q.  Who else?                                  10:02:24
15    A.  Consumer representatives, such as the     10:02:26
16 Consumer Federation of America.                   10:02:27
17    Q.  Who else?                                  10:02:34
18    A.  The U.S. Public Interest Research Group,   10:02:36
19 known as U.S. PIRG.                                10:02:40
20    Q.  Who else?                                  10:02:40
21    A.  Environmental advocacy groups.  To name one, 10:02:47
22 Friend of the Earth.                               10:02:52
23    Q.  Who else?                                  10:02:59
24    A.  Important research organizations and think 10:03:03
25 tanks, such as the National Academies of Science.  10:03:04
                                           Page 34

1    Q.  Who else?                                   10:03:12
2    A.  The Transportation Resource Board.         10:03:13
3    Q.  Keep going.                                 10:03:17
4    A.  I believe think tanks such as the Brookings 10:03:25
5 Institute.                                          10:03:28
6    Q.  Keep going?                                 10:03:35
7    A.  The Council for Competitiveness.           10:03:36
8    Q.  Keep going.                                 10:03:39
9    A.  The American Enterprise Institute.         10:03:39
10    Q.  Keep going.                                 10:03:44
11    A.  That might close the business and consumer  10:03:54
12 groups stakeholder category.                       10:03:56
13    Q.  Keep going with more stakeholders.         10:03:59
14    A.  Another category, then, would be policy    10:04:01
15 makers in Washington, D.C.                         10:04:03
16    Q.  And please list them.                      10:04:09
17    A.  That could include Congressional staff or the 10:04:10
18 U.S. House of Representatives, the U.S. Senate.    10:04:12
19    Q.  Yes.                                        10:04:18
20    A.  That would include executive branch        10:04:18
21 officials, such as the Office of Management and Budget 10:04:21
22 and specific agencies.                             10:04:23
23    Q.  Yes.                                        10:04:32
24    A.  I believe that's all I can recall at the   10:04:42
25 moment.                                            10:04:44
                                           Page 35

1    Q.  And were these all stakeholders with whom   10:04:49
2 this informal group communicated with respect to the 10:04:51
3 topics for which the group retained APCO?          10:04:57
4        MR. FEE:  Objection  Vague  Calls for       10:05:02
5 speculation                                        10:05:04
6        THE WITNESS:  Generally, this would be the  10:05:07
7 audience that we'd be trying to inform about the   10:05:07
8 importance of the U S  Standards System            10:05:12
9 BY MR  BRIDGES:                                    10:05:15
10    Q  Is this the same audience you would wish to  10:05:15
11 raise the policy issues surrounding incorporation by 10:05:18
12 reference with?                                    10:05:25
13        MR  FEE:  Same objection                   10:05:27
14        THE WITNESS:  I don't recall that in 2011 a 10:05:28
15 corporation by reference  I don't believe there was 10:05:29
16 any legislation or any significant reason to raise 10:05:31
17 IBR                                               10:05:37
18 BY MR  BRIDGES:                                   10:05:44
19    Q  When did it become significant, in your view? 10:05:44
20        MR  FEE:  Objection  Vague  Calls for       10:05:46
21 speculation                                        10:05:48
22        THE WITNESS:  In the course of our meetings 10:05:49
23 and raising a greater awareness about the U S      10:05:50
24 Standards System, we would be asked questions about 10:05:54
25 how organizations like ASTM and FPA and ASME sustained 10:05:57
                                           Page 36

1 their funding model                               10:06:03
2 BY MR  BRIDGES:                                   10:06:08
3    Q  Who asked those questions?                  10:06:08
4    A  That could be any of the stakeholders that we 10:06:09
5 interacted with                                    10:06:12
6    Q  I'm asking you to recall any specific source 10:06:12
7 of that question                                   10:06:14
8    A  I believe during the course of this time,    10:06:22
9 Office of Management and Budget was having a review of 10:06:24
10 the U S  Standards System and asked specific questions 10:06:28
11 about the effectiveness of the U S  Standards System 10:06:35
12 and how the Standard System works                  10:06:37
13    Q  What did you understand to be the reason that 10:06:39
14 prompted OMB's review?  I understand --           10:06:43
15        MR  FEE:  Objection                        10:06:47
16 BY MR  BRIDGES:                                   10:06:47
17    Q  -- you may have been privy to the exact     10:06:47
18 reason, but what did you, at the time, understand to 10:06:49
19 be the reason?                                     10:06:52
20        MR  FEE:  Objection  Compound  Calls for    10:06:54
21 speculation                                        10:06:56
22        THE WITNESS:  I wouldn't know specifically  10:06:56
23 BY MR  BRIDGES:                                   10:06:59
24    Q  You have no idea?                           10:06:59
25        MR  FEE:  Same objections                  10:07:00
                                           Page 37

                                  10 (Pages 34 - 37)

| | Page 38 |
|---|---|

1    THE WITNESS: Right  I believe it hadn't    10:07:01
2  been revised in 10 years  The OMB circular, which    10:07:02
3  provides key important information for federal    10:07:07
4  agencies, informing them that they should work with    10:07:10
5  voluntary consensus standards organizations and use    10:07:11
6  voluntary consensus standards to the extent that it's    10:07:13
7  relevant to their mission  That specific OMB circular    10:07:16
8  had not been revised for a period of 10 years  So    10:07:21
9  there was a fresh look in the new administration, the    10:07:24
10  Obama administration which had come to Washington    10:07:29
11 BY MR BRIDGES:    10:07:33
12    Q  And you have no idea of any particular reason    10:07:33
13  apart from general updating --    10:07:35
14    MR  FEE: Objection    10:07:38
15 BY MR  BRIDGES:    10:07:40
16    Q  -- OMB was --    10:07:40
17    A  I'm not --    10:07:42
18    MR  FEE:  Let me object    10:07:43
19    Objection  Calls for speculation    10:07:44
20    THE WITNESS:  No, I don't have any, why OMB    10:07:47
21  conducted their review    10:07:55
22 BY MR  BRIDGES:    10:08:09
23    Q  When did ASTM start discussing Carl Malamud    10:08:09
24  with its key stakeholders in Washington, D C ?    10:08:18
25    MR  FEE:  Objection  Foundation  Vague    10:08:23

Page 38

1    THE WITNESS:  I wouldn't be able to give you    10:08:25
2  the exact date, but I believe it was 2012    10:08:26
3 BY MR  BRIDGES:    10:08:29
4    Q  What caused ASTM to discuss Carl Malamud with    10:08:29
5  its key stakeholders in Washington, D C ?    10:08:36
6    MR  FEE:  Objection  Vague    10:08:39
7    THE WITNESS:  I believe there was an event    10:08:40
8  where there was a number of ASTM copyrighted standards    10:08:42
9  which were provided to various officials in    10:08:48
10  Washington, D C    10:08:51
11 BY MR  BRIDGES:    10:08:57
12    Q  Is that the first awareness -- strike that    10:08:57
13    Is that the first time that ASTM discussed    10:08:59
14  Carl Malamud with its key stakeholders in Washington,    10:09:12
15  D C ?    10:09:16
16    MR  FEE:  Objection  Vague    10:09:16
17    THE WITNESS:  That's when I recall the    10:09:18
18  Washington office becoming aware of it    10:09:19
19 BY MR  BRIDGES:    10:09:26
20    Q  That wasn't exactly an answer to my question    10:09:26
21  Is that the first time that ASTM discussed Carl    10:09:31
22  Malamud with its key stakeholders in Washington, D C ?    10:09:35
23    MR  FEE:  Same objections    10:09:40
24    THE WITNESS:  To the best of my knowledge    10:09:41
25 BY MR  BRIDGES:    10:10:03

Page 39

1    Q  Did ASTM have any written communications    10:10:03
2  with -- strike that    10:10:11
3    Did ASTM have written communications    10:10:18
4  regarding public resource regarding Carl Malamud or    10:10:21
5  regarding incorporation by reference with any of the    10:10:26
6  following:  Consumer Federation, U.S. public interest    10:10:30
7  groups, Friends of the Earth, Brookings Institute?    10:10:36
8    MR  FEE:  Objection  Compound  Calls for    10:10:53
9  speculation    10:10:54
10    THE WITNESS:  I believe we produced some    10:10:55
11  materials which were distributed broadly to our    10:10:57
12  stakeholders, including the groups that you mentioned,    10:10:59
13  that discussed the benefits of the U.S. Standards    10:11:01
14  System, the independence of our standards development    10:11:04
15  enterprise, and the process by which organizations    10:11:09
16  like ours maintain our independence and keep barriers    10:11:11
17  to participation low by providing our standards,    10:11:16
18  making them widely available at a very reasonable and    10:11:19
19  flexible basis.    10:11:19
20 BY MR  BRIDGES:    10:11:19
21    Q  What were the materials that were    10:11:24
22  distributed?    10:11:26
23    MR  FEE:  Same objections    10:11:27
24    THE WITNESS:  One-pager or two-pager of    10:11:31
25  printed materials.    10:11:33

Page 40

1 BY MR  BRIDGES:    10:11:35
2    Q  Exactly what were they?    10:11:35
3    A  In Washington speak, I believe they're just    10:11:38
4  called "lit pieces."    10:11:40
5    Q  They're called what?    10:11:42
6    A  A literature piece.  Just a one-pager that    10:11:43
7  you prepare that discusses your relevance.    10:11:51
8    Q  How many distinct literature pieces were    10:11:55
9  distributed?    10:12:02
10    MR  FEE:  Objection.  Vague.    10:12:05
11    THE WITNESS:  I wouldn't be able to answer.    10:12:08
12 BY MR  BRIDGES:    10:12:09
13    Q  I don't mean how many copies were circulated.    10:12:09
14  I mean how many different literature pieces did ASTM,    10:12:11
15  either alone or with these other organizations,    10:12:15
16  generate for use with the key stakeholders?    10:12:18
17    MR  FEE:  Objection to form.    10:12:24
18    THE WITNESS:  Yeah.  I'm familiar with more    10:12:25
19  than two.    10:12:27
20 BY MR  BRIDGES:    10:12:28
21    Q  How many?    10:12:28
22    MR  FEE:  Objection.  Asked and answered.    10:12:29
23 BY MR  BRIDGES:    10:12:33
24    Q  How many?    10:12:33
25    MR  FEE:  Objection.    10:12:34

Page 41

11 (Pages 38 - 41)

1       THE WITNESS: I don't have an exact number.   10:12:35
2  BY MR. BRIDGES:                                   10:12:36
3       Q. What's your best estimate?               10:12:36
4          MR. FEE: Objection.                      10:12:37
5       I instruct you not to speculate. If you have 10:12:38
6  an estimate beyond what you've said, then you can go 10:12:42
7  ahead and give it.                                10:12:44
8       THE WITNESS: I'd say three.                 10:12:46
9  BY MR. BRIDGES:                                   10:12:46
10      Q. Who drafted them?                         10:12:46
11         MR. FEE: Objection. Calls for speculation. 10:12:48
12      THE WITNESS: It would be an iterative        10:12:50
13  process. Our public affairs firm would be informed by 10:12:52
14  the interests and comments that we would make to help 10:12:56
15  shape them to reflect more accurately the operations 10:13:01
16  of our organizations.                            10:13:05
17  BY MR. BRIDGES:                                  10:13:08
18      Q. Are you saying that only the public affairs 10:13:08
19  firm drafted those pieces?                       10:13:12
20         MR. FEE: Objection. Vague. Compound.      10:13:17
21      THE WITNESS: I believe you're asking about   10:13:19
22  this APCO related effort.                        10:13:20
23  BY MR. BRIDGES:                                  10:13:20
24      Q. I'm referring to whatever public relations 10:13:22
25  firm you just referred to.                       10:13:23

Page 42

1   A  Yes                                           10:13:25
2   Q  No one else, to your knowledge, drafted the   10:13:25
3  literature pieces you referred to?               10:13:34
4      MR FEE: Objection Vague Compound              10:13:36
5      THE WITNESS: Not that I recall                10:13:38
6  BY MR BRIDGES:                                    10:13:46
7      Q  Was the public affairs firm -- you said it 10:13:46
8  was an iterative process and that the public affairs 10:13:49
9  firm would be informed by the information and comments 10:13:53
10  that were provided  Who, to your knowledge, provided 10:14:00
11  the information and comments?                    10:14:05
12  A  For ASTM, that would be me                    10:14:06
13  Q  Anybody else from ASTM?                        10:14:10
14      MR FEE: Objection Calls for speculation      10:14:13
15      THE WITNESS: No  I think I was the person    10:14:16
16  that directly commented for ASTM on those types of 10:14:19
17  materials                                        10:14:27
18  BY MR BRIDGES:                                   10:14:28
19  Q  How much did ASTM pay to APCO in the course   10:14:28
20  of the engagement?                               10:14:31
21  A  So I believe that we engaged APCO for a       10:14:35
22  period of between 12 months and 18 months, and I 10:14:37
23  believe the billings were between $15- to $20,000 per 10:14:45
24  month divided by the three organizations equally 10:14:49
25  Q  Any further information on how much ASTM paid 10:15:05

Page 43

1  to APCO?                                          10:15:09
2      MR. FEE: Objection. Vague. Asked and         10:15:10
3  answered.                                         10:15:13
4      THE WITNESS: No further information.         10:15:14
5  BY MR. BRIDGES:                                   10:15:15
6      Q. What other public relations or government  10:15:15
7  relations firm -- firms did ASTM work with where the 10:15:18
8  work related in any way to standards incorporated by 10:15:31
9  reference?                                        10:15:37
10      MR. FEE: Objection. Lack of foundation.     10:15:38
11      THE WITNESS: No other public affairs firms  10:15:41
12  or other firms that I'm aware of for this type of 10:15:44
13  activity.                                         10:15:48
14  BY MR. BRIDGES:                                   10:15:52
15      Q. What other -- strike that.               10:15:52
16      Did ASTM engage, during the same period of   10:16:01
17  time, any public relations firms to engage in any 10:16:08
18  other types of public relations from the period 2011 10:16:15
19  to today?                                         10:16:20
20      MR. FEE: Objection. Calls for speculation.  10:16:21
21      MR. BRIDGES: I'm going to change the         10:16:24
22  question because it's inconsistent.              10:16:25
23  BY MR. BRIDGES:                                   10:16:38
24      Q. What other public relations firms has ASTM 10:16:39
25  retained since 2011 to today?                    10:16:45

Page 44

1      MR. FEE: Objection. Calls for speculation.  10:16:45
2  This is clearly outside the scope of his designation. 10:16:46
3      But to the extent you know, you can answer.   10:16:48
4      THE WITNESS: Well, I would -- so I'm not     10:16:50
5  involved in the litigation directly, but --      10:16:54
6      MR. FEE: Hold on. Let me also make sure you  10:16:59
7  don't disclose any communications or actions that were 10:17:01
8  taken at the direction of counsel in connection with 10:17:05
9  this matter.                                      10:17:10
10      THE WITNESS: Right. So any other activity   10:17:10
11  would have been between -- would have involved    10:17:12
12  litigation.                                       10:17:16
13  BY MR. BRIDGES:                                   10:17:23
14      Q. What public relations outreach has ASTM   10:17:23
15  engaged in relating to the litigation?           10:17:28
16      MR. FEE: Objection. Vague. By "outreach,"   10:17:31
17  are you saying not at the direction of counsel and 10:17:34
18  publicly available?                              10:17:38
19  BY MR. BRIDGES:                                   10:17:40
20      Q. I mean outreach meaning communications    10:17:40
21  outside of ASTM and outside the plaintiffs in this 10:17:43
22  case.                                             10:17:46
23      MR. FEE: Okay. Well, I will instruct you    10:17:47
24  not to answer to the extent those communications are 10:17:48
25  not publicly made available and at the direction of 10:17:50

Page 45

12 (Pages 42 - 45)

1 counsel                                        10:17:52

2      MR BRIDGES: Now, I want to be very clear   10:17:54

3 what we mean "publicly made available " In my view,  10:17:56

4 it's fair game for me to get an answer regarding any  10:17:59

5 communication that was not a privileged communication  10:18:02

6      MR FEE: Yeah That's fair Why don't I go    10:18:05

7 outside I'm going to discuss this with him and see   10:18:07

8 if there's really anything to worry about       10:18:10

9      MR BRIDGES: Okay We'll go off the record    10:18:12

10      THE VIDEOGRAPHER: We are off the record at   10:18:15

11 10:17                                           10:18:18

12      (A recess was taken from 10:17 a m           10:26:54

13      to 10:26 a m )                              10:26:54

14      THE VIDEOGRAPHER: We are back on the record  10:26:54

15 at 10:26 a m                                    10:26:55

16 BY MR BRIDGES:                                  10:27:04

17      Q There was a pending question, I think, when  10:27:04

18 we broke The question I had was what public      10:27:06

19 relations outreach was ASTM engaged in relating to the  10:27:12

20 litigation And by "outreach," I mean communications  10:27:16

21 with persons outside ASTM and outside the plaintiff  10:27:19

22 group in this case                              10:27:23

23      MR FEE: Okay I would object               10:27:27

24      And instruct you not to disclose any        10:27:29

25 communications made at the direction of counsel that  10:27:31

Page 46

1 were not disseminated to the public generally.   10:27:34

2      MR. BRIDGES: Okay. I think that's an        10:27:36

3 improper instruction because if a statement was made  10:27:37

4 to the public -- I'm not asking why it was made to the  10:27:41

5 public. I'm not asking for legal discussions that  10:27:45

6 were made about what to make to the public --    10:27:48

7      MR. FEE: And we're not disagreeing with    10:27:54

8 that.                                           10:27:54

9      MR. BRIDGES: Let me make my record, please.  10:27:56

10 But if a statement was made to the public,       10:28:00

11 I'm entitled to know whether it was at the direction  10:28:02

12 of counsel or not. If it was to people outside the  10:28:04

13 plaintiff group, I'm entitled to know.           10:28:07

14      MR. FEE: You're arguing with me about       10:28:10

15 something I'm not instructing him to refuse to answer.  10:28:12

16 If a statement was made to the public that's      10:28:14

17 responsive to that, feel free to answer it.       10:28:14

18      MR. BRIDGES: No. No. That's not my         10:28:16

19 question.                                       10:28:17

20 My question is if a statement was made to any    10:28:17

21 person or entity outside the plaintiff's group and the  10:28:22

22 plaintiff's group counsel, then I would like to know  10:28:27

23 what -- strike that.                            10:28:33

24 If ASTM caused any communication to be made    10:28:35

25 or engaged in any communication to persons or entities  10:28:43

Page 47

1 outside the plaintiffs in this case and their counsel,  10:28:48

2 I would like to know what those communications were  10:28:54

3      MR. FEE: My instruction with respect to that  10:28:57

4 is you could disclose any communications along those  10:28:58

5 lines except communications at the direction of   10:29:02

6 counsel that were not made publicly to persons other  10:29:05

7 than the person receiving the communication from ASTM  10:29:09

8 or its counsel                                   10:29:12

9      THE WITNESS: Okay I recall that in August   10:29:22

10 of 2013 I was invited to be on a panel by the     10:29:23

11 Standards Engineering Society in Ottawa, Canada, to  10:29:26

12 discuss relevant topics with a number of other    10:29:28

13 representatives Washington-related topics in which I  10:29:33

14 was asked and questioned about the status of the  10:29:41

15 lawsuit                                         10:29:46

16 BY MR BRIDGES:                                  10:29:52

17      Q What else?                              10:29:52

18      A I recall that on two occasions in 2013, while  10:29:54

19 serving on the National Policy Committee of ANSI,  10:29:59

20 American National Standards Institute, there were  10:30:03

21 questions about the lawsuit, and again, I gave an  10:30:08

22 update as to the status of the lawsuit           10:30:15

23      Q What else?                              10:30:21

24      A That's all that I specifically recall     10:30:23

25      Q So you recall only instances where ASTM was  10:30:26

Page 48

1 responding to questions from others?             10:30:30

2      MR. FEE: Same instruction, of course, with  10:30:40

3 respect to privilege.                           10:30:43

4      THE WITNESS: Thank you.                     10:30:44

5 That's correct.                                 10:30:44

6 BY MR. BRIDGES:                                 10:30:45

7      Q. You don't recall any instance where ASTM  10:30:45

8 initiated a communication on what you call "relevant  10:30:49

9 topics" without being requested to do so?         10:30:55

10      MR. FEE: Objection. Vague as to "relevant  10:31:00

11 topics."                                        10:31:02

12      THE WITNESS: I don't recall.               10:31:07

13 BY MR. BRIDGES:                                 10:31:11

14      Q. You said that you were invited to a panel by  10:31:11

15 the Standards Engineering Society where you discussed  10:31:12

16 relevant topics with other representatives. What were  10:31:17

17 the "relevant topics" you were referring to in that  10:31:21

18 answer?                                         10:31:23

19      A. Yeah. I believe my comments on my panel  10:31:24

20 involved an update on funding for the National     10:31:28

21 Institute of Standards and Technology, an update that  10:31:35

22 the Office of Management and Budget was still      10:31:36

23 preparing to revise their circular, but it hadn't come  10:31:41

24 out yet. There may have been other actions of     10:31:45

25 interest to the standards community. I believe the  10:31:51

Page 49

Veritext Legal Solutions
866 299-5127

1 National Archives and Records Administration, Office   10:31:55
2 of Federal Register had come out with some additional   10:31:59
3 findings and information.   10:32:02
4     So those are the other kinds of things that I   10:32:04
5 reported on.   10:32:08
6   Q.  What else apart from those?   10:32:09
7   A.  Transatlantic Trade Investment Partnership.   10:32:18
8 The U.S. Free Trade Agreement that's being negotiated   10:32:20
9 with the European commission is of key interest to   10:32:24
10 standards developers.   10:32:28
11   Q.  And you consider that to be a relevant topic?   10:32:38
12     MR. FEE:  Objection.  Vague as to "relevant   10:32:40
13 topic."   10:32:41
14     THE WITNESS:  I do because there's a   10:32:42
15 standards technical barriers to trade chapter to the   10:32:45
16 trade agreement, which many standards developers are   10:32:50
17 quite concerned about.   10:32:53
18 BY MR. BRIDGES:   10:32:54
19   Q.  That's a relevant topic with respect to this   10:32:55
20 case?   10:33:06
21     MR. FEE:  Objection.  Mischaracterizes his   10:33:06
22 previous testimony.   10:33:07
23     MR. BRIDGES:  Well, my question was   10:33:08
24 originally about public relations outreach relating to   10:33:10
25 this litigation.   10:33:13

                                                    Page 50

1     MR. FEE:  And he said that he testified about   10:33:15
2 numerous relevant topics at a presentation.  He didn't   10:33:16
3 say that they were relevant to this litigation.  They   10:33:22
4 were relevant to the presentation.   10:33:24
5     MR. BRIDGES:  Well, my question was about   10:33:24
6 relating to this litigation.   10:33:28
7   Q.  So what discussions at the Canada meeting   10:33:30
8 related to this litigation?   10:33:35
9     MR. FEE:  Objection.  Asked and answered.   10:33:42
10     THE WITNESS:  As I previously stated, I was   10:33:44
11 asked for an update about the status of the lawsuit,   10:33:47
12 and I provided it.   10:33:52
13 BY MR. BRIDGES:   10:33:54
14   Q.  Who asked you for the update?   10:33:54
15   A.  I believe one of the -- the moderator or the   10:33:56
16 session chair for the panel that I was presenting on.   10:34:01
17   Q.  Who is that?   10:34:04
18   A.  He's with the Canadian standards   10:34:04
19 organization.  Doug Morton.   10:34:08
20   Q.  And in referring to that Canadian meeting,   10:34:10
21 you also mentioned "other representatives" in your   10:34:16
22 answer.   10:34:21
23   A.  Uh-huh.   10:34:21
24   Q.  Who are the "other representatives" you're   10:34:21
25 referring to?   10:34:24

                                                    Page 51

1   A.  On the panel that I was a panelist with was   10:34:29
2 the American National Standards Institute.  Someone   10:34:30
3 from their New York office.  I don't recall her name.   10:34:32
4 Myself.  And I'd be speculating to name the other   10:34:37
5 person.  And Doug Morton was the moderator   10:34:45
6 participant.   10:34:47
7   Q.  You have no memory of who that other person   10:34:51
8 was?   10:34:52
9     MR. FEE:  Objection.  Asked and answered.   10:34:56
10     THE WITNESS:  I do not.   10:34:57
11 BY MR. BRIDGES:   10:34:58
12   Q.  Do you recall what organization that person   10:34:58
13 was from?   10:35:00
14   A.  I do not.   10:35:02
15   Q.  Who is on the policy committee of ANSI?   10:35:14
16     MR. FEE:  Objection.  Foundation.  Calls for   10:35:17
17 speculation.  Vague as to time.   10:35:19
18     THE WITNESS:  It's currently chaired by   10:35:28
19 Sharon Stanford from the American Dental Association   10:35:31
20 in Chicago, Illinois.   10:35:35
21 BY MR. BRIDGES:   10:35:35
22   Q.  Is she the only person on the committee?  I   10:35:35
23 asked who was on the committee.   10:35:37
24   A.  In addition, myself.  There's a   10:35:39
25 representative from the Underwriters Laboratories.   10:35:43

                                                    Page 52

1 There's actually many representatives.  There's   10:35:49
2 probably 25 to 30 voting members.   10:35:52
3     REPORTER MARTIN:  35 to -- how many?   10:36:41
4     THE WITNESS:  I said 25 to 30.   10:36:41
5     (Deposition Exhibit 1022 was marked for   10:36:41
6     identification.)   10:36:41
7     MR. BRIDGES:  Mr. Grove, I'd ask you to look   10:36:41
8 at Exhibit 1022.   10:36:44
9   Q.  Do you recognize this as an amended   10:36:46
10 deposition notice with topics for examination for your   10:36:49
11 deposition today?   10:36:55
12   A.  Yes, I do.   10:36:56
13   Q.  Which of these topics are you prepared to   10:36:57
14 testify on?   10:36:59
15     MR. FEE:  I'll answer that question.  He's   10:37:03
16 our designee with respect to all the topics except for   10:37:04
17 Topics 2, 3, and 24.   10:37:08
18 BY MR. BRIDGES:   10:37:15
19   Q.  Do you adopt your counsel's response?   10:37:15
20     MR. FEE:  Counsel, could you repeat which   10:37:18
21 sections I'm not responding --   10:37:20
22     MR. FEE:  2, 3, and 24, I believe are the   10:37:22
23 ones.   10:37:25
24     THE WITNESS:  Yes, I do.   10:37:33
25 BY MR. BRIDGES:   10:37:34

                                                    Page 53

                                        14 (Pages 50 - 53)

1   Q.  Who at ASTM has the most information about   10:37:34
2   questions of copyright -- strike that   10:37:39
3       Who at ASTM do you understand have the most   10:37:49
4   information about the efforts by ASTM to have   10:37:52
5   participants in the standards writing process transfer   10:38:06
6   copyrights in their work to ASTM?   10:38:14
7       MR  FEE:  Objection  Calls for speculation   10:38:18
8   It's beyond the scope of his designation   10:38:18
9       MR  BRIDGES:  I'm asking him, and he can   10:38:23
10  answer based on his personal knowledge   10:38:25
11      MR  FEE:  Calls for a legal conclusion to the   10:38:27
12  extent it implies that an assignment is required   10:38:28
13      You can answer if you know   10:38:32
14      THE WITNESS:  General counsel for ASTM would   10:38:39
15  be responsible for that   10:38:42
16  BY MR  BRIDGES:   10:38:43
17  Q.  Who else would have knowledge of those facts?   10:38:43
18      MR  FEE:  Same objection   10:38:45
19      THE WITNESS:  I guess I wouldn't know   10:38:48
20  specifically   10:38:50
21  BY MR  BRIDGES:   10:38:52
22  Q.  Would you know generally?   10:38:52
23      MR  FEE:  Objection  Vague  Calls for   10:38:53
24  speculation   Asked and answered   10:38:55
25      THE WITNESS:  Our copyright policy is very   10:38:59
                                                    Page 54

1   well known amongst staff.  So it wouldn't surprise me   10:39:01
2   if many members of the ASTM staff are very familiar   10:39:05
3   with the copyright policies that are part of our   10:39:10
4   standards development at enterprise.   10:39:18
5   BY MR. BRIDGES:   10:39:20
6   Q.  I'm not asking, actually, about copyright   10:39:20
7   policies.  I'm asking about actual actions of persons   10:39:23
8   who contribute to the writing of standards to assign   10:39:30
9   their rights to ASTM.   10:39:37
10      MR. FEE:  Objection.   10:39:39
11  BY MR. BRIDGES:   10:39:39
12  Q.  Who would have knowledge of that?   10:39:39
13      MR. FEE:  Objection.  Vague.  Calls for   10:39:40
14  speculation.  Beyond the scope of his designation.   10:39:41
15      THE WITNESS:  I'm not able to answer that.   10:39:46
16  BY MR. BRIDGES:   10:40:04
17  Q.  Who is in charge of receiving and acting on   10:40:04
18  membership applications?   10:40:14
19      MR. FEE:  Objection.  Calls for speculation.   10:40:17
20  Beyond the scope of his designation.   10:40:20
21      THE WITNESS:  We have a membership function   10:40:25
22  at ASTM where there are staff that work closely with   10:40:26
23  our Technical Committee Operations that would be most   10:40:33
24  familiar with membership.   10:40:36
25  BY MR. BRIDGES:   10:40:38
                                                    Page 55

1   Q.  What person who have that membership function   10:40:38
2   would have most information about the receiving of   10:40:45
3   membership applications?   10:40:51
4       MR. FEE:  Objection.  Calls for speculation.   10:40:52
5   Outside the scope of his designation.   10:40:55
6       You can answer if you know.   10:40:58
7       THE WITNESS:  Our membership department   10:41:00
8   reports to our vice president for Technical Committee   10:41:02
9   Operations, Daniel Smith.   10:41:05
10  BY MR. BRIDGES:   10:41:13
11  Q.  And who is the senior most person in the   10:41:13
12  membership department who reports to him?   10:41:16
13      MR. FEE:  Objection.  Beyond the scope of his   10:41:19
14  designation.   10:41:21
15      You can answer if you know.   10:41:23
16      THE WITNESS:  Ileane Smith who is not -- no   10:41:26
17  relation, to my knowledge.   10:41:28
18  BY MR. BRIDGES:   10:41:33
19  Q.  Who within the membership department has most   10:41:33
20  knowledge about the receipt by ASTM of membership   10:41:37
21  renewals?   10:41:44
22      MR. FEE:  Objection.  Calls for speculation.   10:41:45
23  It's beyond the scope of his designation.   10:41:48
24      THE WITNESS:  That, I wouldn't know.   10:41:50
25      (Deposition Exhibit 1023 was marked for   10:42:39
                                                    Page 56

1       identification.)   10:42:39
2       MR. BRIDGES:  Mr. Grove, I've handed you   10:42:39
3   Exhibit 1023.   10:42:42
4   Q.  Do you recognize this as a copy of ASTM's   10:42:43
5   Form 990 filed with the Internal Revenue Service?   10:42:45
6       MR. FEE:  Take a look at the document before   10:42:52
7   you answer that question.   10:42:54
8       (The witness reviewed Exhibit 1024.)   10:43:36
9       THE WITNESS:  Yes, it appears to be our 990   10:43:36
10  forms.   10:43:42
11      (Deposition Exhibit 1024 was marked for   10:44:02
12      identification.)   10:44:02
13      MR. BRIDGES:  Mr. Grove, I've handed you   10:44:14
14  Exhibit 1024.   10:44:14
15  Q.  This is an E-mail exchange between you and   10:44:17
16  James Thomas; correct?   10:44:19
17  A.  Yes, it appears to be an E-mail.   10:44:39
18  Q.  Who is Mr. Thomas?   10:44:42
19  A.  In this instance, Jim Thomas is the president   10:44:44
20  of ASTM International.   10:44:46
21      (Deposition Exhibit 1025 was marked for   10:44:48
22      identification.)   10:45:11
23      MR. BRIDGES:  Mr. Grove.  I've handed you   10:45:11
24  Exhibit 1025.   10:45:13
25  Q.  Is this a copy of the comments that ASTM made   10:45:14
                                                    Page 57

1 to OMB in connection with the OMB activities you 10:45:19
2 described earlier in your testimony? 10:45:23
3      MR. FEE:  Please read that carefully before 10:45:29
4 you answer the question. 10:45:31
5      THE WITNESS:  Okay. 10:45:32
6      (The witness reviewed Exhibit 1025.) 10:45:55
7      THE WITNESS:  It appears to be, yes. 10:45:55
8      (Deposition Exhibit 1026 was marked for 10:46:18
9      identification.) 10:46:18
10      MR. BRIDGES:  Mr. Grove, I've handed you 10:46:18
11 Exhibit 1026. 10:46:20
12      Q.  This is an exchange of E-mails between you 10:46:21
13 and Sarah Petre, and also, Kate McClung; is that 10:46:33
14 correct? 10:46:36
15      (The witness reviewed Exhibit 1026 for 10:46:36
16      identification.) 10:47:14
17      THE WITNESS:  Yes.  It's an E-mail exchange 10:47:14
18 between myself and Sarah and Kate McClung. 10:47:15
19 BY MR. BRIDGES: 10:47:17
20      Q.  Sarah Petre recently left ASTM; correct? 10:47:17
21      A.  She did, correct. 10:47:22
22      Q.  How recently did she leave? 10:47:22
23      A.  February 11 was her last date. 10:47:24
24      Q.  And what was her job title at ASTM? 10:47:26
25      A.  Her final title at ASTM was regulatory 10:47:30

Page 58

1 counsel. 10:47:35
2      Q.  Was she functioning as an attorney or as a 10:47:35
3 government affairs person? 10:47:37
4      MR. FEE:  Objection.  Calls for speculation. 10:47:39
5 Beyond the scope of his designation. 10:47:41
6      THE WITNESS:  I'd have to consult with our 10:47:45
7 attorney to know what functions, if any, she was 10:47:47
8 providing in the form of an attorney. 10:47:51
9 BY MR. BRIDGES: 10:47:55
10      Q.  Insofar as you interacted with her, was she, 10:47:55
11 to your understanding, functioning as an attorney for 10:47:57
12 the organization, or is it a government affairs 10:48:00
13 representative? 10:48:03
14      MR. FEE:  Objection.  Calls for a legal 10:48:04
15 conclusion. 10:48:05
16 BY MR. BRIDGES: 10:48:06
17      Q.  I'm asking for your understanding. 10:48:06
18      MR. FEE:  Same objection. 10:48:09
19      THE WITNESS:  She was providing analysis of 10:48:14
20 rules and regulations to help inform our decision 10:48:15
21 making.  So... 10:48:21
22 BY MR. BRIDGES: 10:48:26
23      Q.  Does she report to you? 10:48:27
24      A.  She does, correct. 10:48:27
25      Q.  Who is Kate McClung? 10:48:28

Page 59

1      A.  Kate McClung is a staff manager for technical 10:48:31
2 committees within ASTM's Technical Committee 10:48:34
3 Operations division. 10:48:39
4      Q.  Who is Dan Smith? 10:48:42
5      A.  At the time of this E-mail, Dan Smith was the 10:48:46
6 associate vice president for Technical Committee 10:48:50
7 Operations and Kate McClung's supervisor. 10:48:53
8      Q.  What is Mr. Smith's role now? 10:48:57
9      A.  He's been promoted to be vice president of 10:49:00
10 TCO, Technical Committee Operations. 10:49:08
11      Q.  To whom does he report? 10:49:08
12      A.  He reports to our executive vice president, 10:49:10
13 Katherine Morgan. 10:49:15
14      Q.  And who is Anthony Quinn? 10:49:20
15      A.  Anthony Quinn works in the Washington office. 10:49:24
16 His title is director of public policy, international 10:49:26
17 trade. 10:49:32
18      Q.  Does he report to you? 10:49:32
19      A.  He does. 10:49:33
20      Q.  Who else reports to you? 10:49:36
21      A.  At ASTM I'm responsible for -- in addition to 10:49:39
22 the Washington office, I'm responsible for corporate 10:49:42
23 communications.  So we have a team of five people at 10:49:44
24 our headquarters in Conshohocken, Pennsylvania that 10:49:48
25 report to me, and that's it for direct reports of ASTM 10:49:52

Page 60

1 employees. 10:49:58
2      Q.  Sarah Petre used to report to you directly? 10:49:59
3      A.  That's correct. 10:50:02
4      Q.  Do any outside vendors report to you 10:50:03
5 directly? 10:50:05
6      MR. FEE:  Objection.  Vague. 10:50:06
7      THE WITNESS:  Not that I can think of.  No, 10:50:15
8 they do not. 10:50:16
9 BY MR. BRIDGES: 10:50:17
10      Q.  Do any outside consultants report to you 10:50:17
11 directly? 10:50:19
12      MR. FEE:  Objection.  Vague. 10:50:20
13      THE WITNESS:  I'm sorry.  I did forget one. 10:50:21
14 We do -- I have a consultant that reports to me in 10:50:23
15 Brussels.  We have an office of -- office of European 10:50:26
16 affairs in Brussels, Belgium. 10:50:29
17 BY MR. BRIDGES: 10:50:33
18      Q.  And who is that person? 10:50:33
19      A.  Her name is Sara Gobbi, G-o-b-b-i. 10:50:34
20      (Deposition Exhibit 1027 was marked for 10:50:36
21      identification.) 10:51:20
22      MR. BRIDGES:  I'm handing you Exhibit 1027. 10:51:21
23 I'd ask you if you've seen that before. 10:51:23
24      (The witness reviewed Exhibit 1027.) 10:51:35
25      THE WITNESS:  I don't recall if I've seen 10:52:05

Page 61

16 (Pages 58 - 61)

---

**Page 62**

1  this before.                        10:52:06
2  BY MR. BRIDGES:                      10:52:07
3     Q.  In your capacity as a representative of ASTM,   10:52:07
4  is it your understanding that this document is a   10:52:11
5  response by Mr. Thomas, whom you identified earlier,   10:52:15
6  to communication from a Boeing representative?   10:52:18
7        MR. FEE:  Objection.  Calls for speculation.   10:52:21
8  He is not designated as to this document.   10:52:24
9        But you can answer if you have an answer in   10:52:28
10  the capacity individually.           10:52:30
11       THE WITNESS:  Right.  Laura Hitchcock serves   10:52:32
12  many roles in the standards community.  So I'm not   10:52:35
13  certain as to what capacity this E-mail is being   10:52:38
14  written to Jim Thomas, but Laura is involved in a   10:52:42
15  number of different standards organizations.   10:52:49
16  BY MR. BRIDGES:                      10:52:55
17     Q.  I'm wanting to focus on Mr. Thomas's   10:52:55
18  response.  Does this response in Exhibit 1027 appear   10:52:58
19  consistent with your understanding of views that ASTM   10:53:03
20  or Mr. Thomas had at about the time of this -- strike   10:53:08
21  that.                                10:53:13
22        Does this response in Exhibit -27 appear   10:53:14
23  consistent with communications that ASTM had outside   10:53:16
24  the organization at approximately the time of this   10:53:23
25  E-mail?                              10:53:26

**Page 63**

1        MR. FEE:  Objection.  Vague.  Calls for   10:53:27
2  speculation.  Beyond the scope of his designation.   10:53:28
3        THE WITNESS:  This may be the first time that   10:53:36
4  I became aware of who Carl Malamud is.   10:53:40
5  BY MR. BRIDGES:                      10:53:47
6     Q.  This E-mail may be?               10:53:47
7     A.  Yes.                          10:53:49
8     Q.  Do you know if she got bcc'd on this?   10:53:50
9     A.  I do not believe -- I do not believe that I   10:53:53
10  was, no.                            10:53:55
11     Q.  Then how would this be the first time you   10:53:56
12  became aware of Carl Malamud?        10:53:58
13     A.  Well, we were referring to the E-mail here,   10:54:00
14  and I'm thinking of the event that this E-mail   10:54:01
15  pertains to.                         10:54:04
16        (Deposition Exhibit 1028 was marked for   10:54:58
17        identification.)                 10:54:58
18  BY MR. BRIDGES:                      10:55:00
19     Q.  Mr. Grove, do you recognize this document?   10:55:00
20        MR. FEE:  Take your time to read it.   10:55:05
21        THE WITNESS:  Okay.             10:55:07
22        (The witness reviewed Exhibit 1028.)   10:56:08
23        THE WITNESS:  Would you please repeat the   10:56:08
24  question now that I've reviewed it.   10:56:12
25  BY MR. BRIDGES:                      10:56:14

**Page 64**

1     Q.  Do you recognize this document?   10:56:14
2     A.  I do, yes                      10:56:15
3     Q.  What is it?                    10:56:15
4     A.  It is an E-mail from Anthony Quinn to myself   10:56:16
5  and Jim Thomas                       10:56:16
6     Q.  What was the ACUS chambered event that is   10:56:16
7  mentioned in the E-mail?             10:56:24
8     A.  Well, I believe the ACUS is the   10:56:25
9  administrative council of the United States  In   10:56:28
10  working with the U S Chamber of Commerce, they had an   10:56:31
11  event highlighting some of the recommendations and   10:56:33
12  discussing the recommendations that came out of ACUS   10:56:37
13  in 2011 on incorporation by reference and   10:56:40
14  international regulatory cooperation   10:56:46
15        (Deposition Exhibit 1029 was marked for   10:56:52
16        identification )                 10:56:52
17        MR  BRIDGES:  Mr Grove, Exhibit 1029 is an   10:58:03
18  E-mail that is produced to us by ASTM, and you're   10:58 06
19  copied on it, it appears                10:58:16
20     Q  Is it correct this is an E-mail from Maureen   10:58:18
21  Brodoff at NFPA to you and others?   10:58:21
22     A  Yes, it appears to be            10:58:30
23     Q  She was forwarding an E-mail from Jonathan   10:58:31
24  Gregory of APCO worldwide; is that correct?   10:58:34
25        MR FEE:  Did you say this was directed to   10:58:38

**Page 65**

1  Jeff Grove?                          10:58:44
2        MR  BRIDGES:  Yes, I did         10:58:46
3        MR  FEE:  Oh, I'm sorry  I missed it  My   10:58:47
4  apologies                            10:58:49
5        THE WITNESS:  It appears that there is   10:58:50
6  something from Jonathan Gregory that's being   10:58:51
7  forwarded, yes                       10:58:53
8  BY MR BRIDGES:                       10:58:54
9     Q  Does this relate to the efforts that ASTM and   10:58:54
10  FPA and ASME were engaged in together with respect to   10:58:58
11  APCO?                                10:59:02
12        MR  FEE:  Objection  Vague  Calls for   10:59:03
13  speculation                         10:59:06
14        THE WITNESS:  Yes  It appears to be an   10:59:08
15  agenda for a conference call          10:59:11
16        (Deposition Exhibit 1030 was marked for   11:00:56
17        identification )                 11 00:56
18        MR  BRIDGES:  I'll hand you Exhibit 1030   11:00:56
19  which is produced to us by ASTM in this litigation   11:01:00
20  This appears to be a letter from ASME regarding the   11:01:06
21  OMB process that you described earlier in your   11:01:14
22  testimony                            11:01:17
23     Q  Is that your understanding?     11:01:18
24        MR  FEE:  Objection  Vague  Calls for   11:01:19
25  speculation  It's beyond the scope of his designation   11:01:21

1  He wasn't designated to describe ASME documents   11:01:42
2      (The witness reviewed Exhibit 1030 )   11:01:48
3      THE WITNESS: It appears there's a response   11:01:49
4  by ASME to various questions posed by OMB on federal   11 01:50
5  participation in the development and use of voluntary   11:01:54
6  consents of standards   11:01:55
7  BY MR BRIDGES:   11:01:55
8      Q  And it is correct that ASTM, NFPA, and ASME   11:01:56
9  shared with each other their drafts of their   11:02:00
10 respective letters to OMB regarding the OMB circular;   11:02:05
11 is that right?   11:02:09
12     MR FEE: Objection  Lack of foundation   11:02:09
13 Calls for speculation   11:02:11
14     THE WITNESS: I don't recall sharing drafts   11:02:14
15 BY MR BRIDGES:   11:02:15
16     Q  You don't have any recollection of that?   11 02:15
17     MR FEE: Objection  Asked and answered   11:02:17
18     THE WITNESS: I don't recall sharing drafts   11:02:24
19 BY MR BRIDGES:   11:02:29
20     Q  Do you recall seeing this letter before?   11:02:29
21     A  I know I have a number of submissions by   11:02:31
22 various organizations as it's a topic I'm very   11 02:33
23 interested in  So it's quite likely I've read this   11:02:35
24 before  I don't believe this is a draft  This is   11:02:38
25 their submission   11:02:48

1      Q  That's right  Do you recall this as being   11:02:48
2  their submission?   11:02:49
3      MR FEE: Objection  Calls for speculation   11:02:51
4  Beyond the scope of his designation   11:02:51
5      THE WITNESS: It appears to be their   11:03:00
6  submission   11:03:02
7      (Deposition Exhibit 1031 was marked for   11:03:54
8      identification )   11:03:54
9      MR BRIDGES: I've handed you Exhibit 1031   11:03:54
10 This appears to be an E-mail between Mr Thomas,   11:03:59
11 ASTM's president, and Mary McKiel at the Environmental   11:04 04
12 Protection Agency   11:04:09
13     Q  Have you seen this document before?   11:04:10
14     (The witness reviewed Exhibit 1031 )   11:04:36
15     THE WITNESS: No, I'm not familiar with this   11:04:36
16 specific document   11 04:37
17 BY MR BRIDGES:   11:04:39
18     Q  This is not one of the documents you reviewed   11:04:39
19 to prepare for this deposition?   11:04:41
20     A  I could have  I just don't recall this   11:04:43
21     Q  Do you recall what the event was that is   11:04:46
22 referred to in the document?   11:04:49
23     MR FEE: Objection  Calls for speculation   11:04:56
24     THE WITNESS: I believe it's referring to a   11:04:58
25 senior staff executive committee of the board retreat   11:05:01

1 BY MR. BRIDGES:   11:05:09
2     Q. Which board?   11:05:09
3     A. The board of ASTM international, and the   11:05:11
4 senior staff of ASTM.   11:05:13
5     Q. You were at that meeting; correct?   11:05:16
6     A. Correct.   11:05:18
7     Q. And you're the "Jeff" that's referred to   11:05:19
8 in -- I've lost where it is. In the last sentence of   11:05:22
9 the first paragraph for Ms. McKiel?   11:05:42
10     MR. FEE: Objection. Calls for speculation.   11:05:44
11     THE WITNESS: I'm sorry. I don't see that.   11:05:49
12 Can I --   11:05:50
13 BY MR. BRIDGES:   11:05:51
14     Q. First paragraph of Exhibit 1031.   11:05:51
15     A. First paragraph?   11:05:55
16     Q. Right. Last sentence. "Brian and Jeff did a   11:05:56
17 great job with the exercise."   11:05:58
18     A. That's correct.   11:06:00
19     Q. Are you that Jeff that --   11:06:02
20     A. I would be that Jeff.   11:06:03
21     MR. FEE: Objection. Same objection.   11:06:04
22 BY MR. BRIDGES:   11:06:05
23     Q. And you did an exercise with someone named   11:06:05
24 Brian?   11:06:08
25     A. We did. We put the board through a branding   11:06:08

1 workshop   11:06:11
2     Q. What was that branding workshop?   11:06:15
3     A. It was -- it was a very iterative process   11:06:17
4 where we asked the board to consider ASTM's brand and   11:06:22
5 ASTM's logo and to reflect on its attributes and its   11:06:30
6 strengths and discuss whether or not it was time to   11:06:37
7 revise our brand and revise our logo   11:06:42
8     Q. What was the outcome of that discussion?   11:06:49
9     A. Well, I believe the executive staff -- the   11:06:53
10 executive committee of the board was excited about the   11 06:56
11 idea of updating or refreshing ASTM's logo and coming   11:06:59
12 out with a strong brand purpose and core purpose as an   11:07:06
13 organization   11:07:12
14     Q. What steps has ASTM taken to do that?   11:07:17
15     MR. FEE: Objection  Lack of foundation   11:07:23
16 BY MR BRIDGES:   11:07:25
17     Q. If any   11:07:25
18     A. We've launched a new brand as of October 1 of   11 07:27
19 last year  We've got a new tag line and a new logo,   11:07:31
20 which just is a -- is a -- it's an evolution over time   11:07:38
21 of ASTM's mission   11:07:49
22     Q. Please describe that evolution over time of   11:07:51
23 ASTM's mission   11:07:53
24     A. Well, so our core purpose is helping our   11:07:57
25 world work better because we believe that's an   11:07:58

```
1  impactful statement that summarizes ASTM's activities  11:08:03
2  to develop 13,000 standards which improve the lives of  11:08:09
3  people every day in countless ways            11:08:11
4      Q  What are some of the main ways in which those  11:08:13
5  standards improve the lives of people every day?  11:08:16
6      A  Sure  Well, just looking around this room,  11:08:18
7  the water that we're drinking out of these bottles,  11:08:22
8  the coffee cups that become compostable and   11:08:25
9  recyclable  The air that we're breathing is probably  11 08:28
10  impacted by a number of ASTM standards  It's   11:08:34
11  difficult to quantify the extent to which ASTM's  11:08:41
12  standards are being used as we speak          11:08:43
13     Q  Pick a standard, and explain to me how it --  11 08:47
14  how many standards did you say ASTM has?       11:08:55
15     A  We've got a volume of 12,700 or so        11:08:58
16     Q  How many of those are incorporated by    11:09:01
17  reference?                                    11:09:03
18     MR FEE: Objection  Calls for speculation  11:09:03
19  Vague                                         11:09:05
20     MR BRIDGES: Let me withdraw that           11:09:13
21     Q  How many of those standards have the force of  11:09:15
22  law because they have been adopted by some government?  11:09:15
23     MR FEE: Objection  Calls for a legal       11 09:18
24  conclusion  Vague as to "adopted "  Calls for  11:09:19
25  speculation                                   11:09:21
                                              Page 70
```

```
1      THE WITNESS: I'm not an attorney.  So I    11:09:22
2  wouldn't be able to comment on whether they had the  11:09:24
3  force of law.                                  11:09:27
4  BY MR. BRIDGES:                                11:09:28
5      Q.  Have you ever expressed the view as to  11:09:28
6  whether any ASTM standard has the force of law?  11:09:30
7      MR. FEE: Objection. Calls for speculation.  11:09:36
8  Calls for a legal conclusion.                  11:09:38
9      THE WITNESS: I'm not familiar -- I don't   11:09:39
10  recall expressing that position.              11:09:41
11  BY MR. BRIDGES:                               11:09:43
12     Q.  You don't recall once --               11:09:43
13     MR. FEE: Objection. Asked and answered.    11:09:45
14  BY MR. BRIDGES:                               11:09:46
15     Q.  -- expressing the view as to whether an ASTM  11:09:46
16  standard has the force of law?                11:09:49
17     MR. FEE: Same objection.                   11:09:51
18     THE WITNESS: Per my previous answer, no.   11:09:52
19  BY MR. BRIDGES:                               11:09:59
20     Q.  Are you familiar with whether any government  11:09:59
21  has adopted ASTM standards as its law or as its  11:10:03
22  regulation?                                   11:10:13
23     MR. FEE: Objection. Calls for a legal      11:10:14
24  conclusion. Vague as to "adopted." Calls for  11:10:15
25  speculation.                                  11:10:21
                                              Page 71
```

```
1      THE WITNESS: I'm not familiar with the term  11:10:22
2  "adopted."                                    11:10:24
3  BY MR. BRIDGES:                               11:10:25
4      Q.  Not at all?                           11:10:25
5      MR. FEE: Objection. Asked and answered.   11:10:25
6      THE WITNESS: That's not a term of art that  11:10:28
7  I'm familiar with in the standards community.  11:10:30
8  BY MR. BRIDGES:                               11:10:34
9      Q.  You've never heard "adopted by reference" as  11:10:34
10  a term in the standards community?           11:10:36
11     A.  Adopted by reference, no.  Adopted as a  11:10:38
12  national standard around the world?  That's a  11:10:40
13  different context. I've heard that context before.  11:10:43
14     Q.  Are you familiar with any ASTM standards  11:10:55
15  being incorporated into law or regulation?    11:10:57
16     MR. FEE: Objection. Vague.                 11:11:00
17     THE WITNESS: And, again, the term          11:11:08
18  "incorporated" isn't the term of art that we would use  11:11:10
19  in the standards community.  I would be speculating as  11:11:12
20  to what that might mean.                      11:11:16
21  BY MR. BRIDGES:                               11:11:17
22     Q.  Have you ever -- are you familiar -- strike  11:11:17
23  that.                                        11:11:22
24     Are you familiar with whether any government  11:11:23
25  has incorporated ASTM standards by reference into law  11:11:26
                                              Page 72
```

```
1  or regulation?                               11:11:34
2      MR. FEE: Objection  Calls or a legal      11:11:42
3  conclusion                                   11:11:42
4      THE WITNESS: I'm familiar with the term   11:11:43
5  "incorporation by reference " I wouldn't be able to  11:11:44
6  comment whether that implies it's law        11:11:47
7  BY MR. BRIDGES:                               11:11:52
8      Q  Are you familiar with any government having  11:11:52
9  incorporated ASTM standards by reference?     11:11:56
10     A  Yes                                    11:12:04
11     Q  What did the government -- please give me any  11:12:05
12  instance that you're aware of where a government has  11:12:11
13  incorporated any ASTM standard by reference  11:12:13
14     A  Okay  There's actually many incorporation by  11:12:20
15  reference of ASTM standards  To pick one, I would  11:12:25
16  pick a specific ASTM standard related to toy safety  11:12:33
17  known as ASTM F963                           11:12:36
18     Q  What governments have incorporated that  11:12:57
19  standard by reference?                       11:12:58
20     MR. FEE: Objection  Calls for speculation  11:12:59
21     THE WITNESS: I'm aware that the U S       11:13:00
22  Consumer Product Safety Commission has incorporated by  11:13:02
23  reference F963, and I'm also aware that other  11:13:05
24  governments around the world have incorporated, by  11:13:10
25  reference, F963 as one pathway towards -- as one of  11:13:14
                                              Page 73
```

19 (Pages 70 - 73)

1 other standards that they reference for toy safety   11:13:23
2 BY MR  BRIDGES:   11:13:31
3    Q  You started to refer to it as "one pathway "   11:13:31
4 Pathway to what?   11:13:35
5    A  Well, I'm familiar with Hong Kong and   11:13:36
6 Singapore having a consumer product safety policy that   11:13:38
7 if a toy meets either ASTM F963, the European norm   11:13:42
8 known as EN 71, or the ISO standard known as ISO 8124,   11:13:48
9 that is the mechanism that their consumer product   11:13:55
10 safety ministry has determined constitutes whether or   11:13:58
11 not a product is deemed to be safe and enter into the   11:14:01
12 marketplace in that country or in those two countries   11:14:04
13    Q  So I still don't understand what the pathway   11:14:07
14 was to in your reference to a pathway   11:14:11
15       MR FEE:  Objection  Asked and answered   11:14:14
16       THE WITNESS:  Right  The government has   11:14:18
17 indicated, as stated in an incorporation by   11:14:19
18 reference-type manner, that the ASTM F963 is one   11:14:23
19 mechanism that they recognize as a pathway to selling   11:14:28
20 their product in their marketplace   11:14:33
21 BY MR  BRIDGES:   11:14:36
22    Q  As a pathway to a governmental permission?   11:14:36
23       MR FEE:  Objection  Lack of foundation  It   11:14:38
24 calls for now, I think, a foreign legal conclusion   11:14:39
25       THE WITNESS:  Yeah  I wouldn't be able to   11:14:44

Page 74

1 speak with certainty.   11:14:46
2 BY MR  BRIDGES:   11:14:47
3    Q  So what did the Consumer Product Safety   11:14:47
4 Council incorporate F963 into?   11:14:50
5       MR  FEE:  Objection. Lack of foundation.   11:14:54
6 Vague as to "incorporate."   11:14:56
7 BY MR  BRIDGES:   11:15:01
8    Q  I'm asking for your understanding.   11:15:01
9    A.  Sure.   11:15:03
10    Q  You used the term "incorporation by   11:15:03
11 reference."  So I'm trying to figure out --   11:15:05
12       MR  FEE:  Your question did not have "by   11:15:07
13 reference."  That was the basis for my objection.   11:15:08
14    MR. BRIDGES:  Then I'll fix that.   11:15:10
15    Q  What did the Consumer Product Safety Council   11:15:12
16 incorporate F963 by reference into?   11:15:14
17    A. So the Consumer Product Safety Commission has   11:15:17
18 the Code of Federal Regulations that's related to   11:15:22
19 consumer product safety, and it's my understanding   11:15:26
20 that they indicate that F963 is one standard that's   11:15:30
21 incorporated by reference.   11:15:34
22    Q  Into the Code of Federal Regulations?   11:15:37
23    A.  That would be correct.   11:15:39
24    Q  What do you understand the Code of Federal   11:15:41
25 Regulations to contain?   11:15:45

Page 75

1       MR. FEE:  Objection.  Calls for speculation.   11:15:45
2 To the extent your understanding is based on your   11:15:47
3 communications with counsel, I'd advise you not to   11:15:49
4 disclose that.  If you have an independent   11:15:51
5 understanding, you can disclose that.   11:15:53
6 BY MR. BRIDGES:   11:15:57
7    Q  Well, if you're ignorant of what the CFR   11:15:58
8 contains on your own, then go ahead and say that.   11:16:00
9       MR. FEE:  Objection.  If you keep up with   11:16:03
10 that, we'll have to take a break here.   11:16:04
11       But you could answer the prior question.   11:16:05
12 Ignore the "ignorant" question. He's not answering a   11:16:10
13 question as "ignorant."   11:16:14
14       MR. BRIDGES:  I'm not accusing him of being   11:16:15
15 an ignorant person, but if he's ignorant of what it   11:16:17
16 contains, that's all right.  There's nothing wrong   11:16:19
17 with that.  Nothing to be embarrassed about.   11:16:21
18       MR. FEE:  I'm instructing him not to answer   11:16:23
19 the question with "ignorant" in it.  If you have   11:16:23
20 another question you want him to answer, you could ask   11:16:26
21 it.   11:16:28
22 BY MR. BRIDGES:   11:16:29
23    Q  What do you understand the Code of Federal   11:16:29
24 Regulations to contain?   11:16:33
25       MR. FEE:  Objection.   11:16:34

Page 76

1       To the extent your understanding is based on   11:16:34
2 communications with counsel, you should not disclose   11:16:36
3 those, but if you have an independent understanding,   11:16:38
4 you can go ahead and answer   11:16:39
5       THE WITNESS:  I mean I've seen the Code of   11:16:46
6 Federal Regulations before  There's a lot of   11:16:49
7 information in it  Sometimes it includes reference --   11:16:52
8 incorporation by reference to specific ASTM standards   11:16:57
9 that I'm aware of  But I'm not -- ASTM is a nonprofit   11:17:01
10 organization, and we're not involved in determining   11:17:05
11 what's -- we don't decide how our standards are   11:17:11
12 applied in the marketplace   11:17:15
13 BY MR  BRIDGES:   11:17:17
14    Q  Well, my question was do you have an   11:17:17
15 understanding as to what the Code of Federal   11:17:18
16 Regulations contains?   11:17:21
17       MR  FEE:  Objection  Asked and answered,   11:17:22
18 plus all my previous objections   11:17:23
19       THE WITNESS:  I believe I answered that  It   11:17:25
20 contains a variety of different information, including   11:17:28
21 it may reference -- incorporate by reference specific   11:17:33
22 ASTM document numbers in addition to numerous other   11:17:38
23 types of supplemental information   11:17:41
24 BY MR  BRIDGES:   11:17:44
25    Q  What else are you aware that the Code of   11:17:45

Page 77

20 (Pages 74 - 77)

1 Federal Regulations contains?  Are you aware it          11:17:48
2 contains federal regulations?                            11:17:49
3        MR. FEE:  Objection.  Compound.                   11:17:51
4        THE WITNESS:  My knowledge of the Code of         11:17:58
5 Federal Regulations is -- I'm not an attorney.  So       11:18:01
6 it's limited.                                            11:18:04
7        Since I've answered that question, this might     11:18:05
8 be a nice time.  Could I take a short break?             11:18:06
9        MR. BRIDGES:  No.  I'm in the middle of a         11:18:09
10 course of questions.  We'll finish my course of         11:18:10
11 questions, and then we can take a break for your        11:18:12
12 convenience.                                            11:18:15
13        MR. FEE:  You can take a break as soon as you    11:18:16
14 finish answering these questions.                       11:18:17
15        THE WITNESS:  No problem.                        11:18:20
16 BY MR. BRIDGES:                                         11:18:21
17     Q.  Do you have any understanding as to what a      11:18:21
18 federal regulation is?                                  11:18:24
19        MR. FEE:  Objection.  Calls for a legal          11:18:27
20 conclusion.                                             11:18:28
21        You shouldn't disclose communications with       11:18:30
22 counsel, but if you have an independent understanding,  11:18:32
23 go ahead and answer it.                                 11:18:35
24        THE WITNESS:  Sure.  My independent              11:18:36
25 understanding would be the federal agency would come    11:18:37
Page 78

1 out with the notice of proposed rulemaking within the   11:18:41
2 areas that they're -- their mission of their agency is  11:18:47
3 responsible for.  It would inform the public that they  11:18:51
4 intend to enact the following regulation and invite     11:18:54
5 the public to comment on that regulation.               11:18:57
6 BY MR. BRIDGES:                                         11:19:00
7     Q.  What do you understand the -- well, what         11:19:01
8 purpose do you understand a regulation to serve in      11:19:04
9 that context that you just cited?                       11:19:09
10        MR. FEE:  Could you read that question back      11:19:11
11 for me, please.                                         11:19:13
12        (Record read.)                                   11:19:30
13        MR. FEE:  Objection.  Vague, and calls for       11:19:31
14 speculation.                                            11:19:33
15        THE WITNESS:  It's an action by an agency        11:19:39
16 describing their expectations for the areas that        11:19:47
17 they're responsible for.                                11:19:50
18 BY MR. BRIDGES:                                         11:19:53
19     Q.  Expectations only?                              11:19:53
20        MR. FEE:  Objection.  Vague.                     11:19:55
21        THE WITNESS:  I think you'd have to --           11:20:00
22 there's so many different regulations, I wouldn't be    11:20:03
23 able to comment.                                        11:20:05
24 BY MR. BRIDGES:                                         11:20:08
25     Q.  You couldn't comment beyond expectations?       11:20:08
Page 79

1        MR. FEE:  Objection.  Asked and answered.         11:20:10
2        THE WITNESS:  No, I can't give you a general      11:20:21
3 answer.  I would be speculating.                        11:20:23
4 BY MR. BRIDGES:                                         11:20:27
5     Q.  Do federal regulations impose requirements on   11:20:27
6 anybody?                                                11:20:32
7        MR. FEE:  Objection.  Calls for speculation      11:20:32
8 and a legal conclusion.                                 11:20:34
9        THE WITNESS:  I'm not an attorney.  I            11:20:36
10 wouldn't know.                                         11:20:37
11 BY MR. BRIDGES:                                         11:20:39
12     Q.  You wouldn't know?  How many years did you     11:20:39
13 spend on the Hill?                                     11:20:43
14     A.  About eight years.                             11:20:47
15     Q.  And what were your jobs on the Hill?           11:20:48
16     A.  I worked as a staff assistant, a legislative  11:20:51
17 assistant, a legislative director, a committee staff  11:20:54
18 person.                                                11:20:58
19     Q.  In each of those jobs, to whom did you        11:21:00
20 report?                                                11:21:02
21        MR. FEE:  Objection.  Compound.                 11:21:04
22        THE WITNESS:  It would -- I would have to       11:21:07
23 state many different individuals, but I guess          11:21:09
24 ultimately, the members of Congress.                   11:21:12
25 BY MR. BRIDGES:                                         11:21:16
Page 80

1     Q.  Whom were your direct superiors in each of      11:21:16
2 those positions?                                        11:21:19
3        MR. FEE:  Objection  Compound                    11:21:21
4        THE WITNESS:  So working backwards from my       11:21:24
5 most recent employment on the Hill, chairperson was     11:21:27
6 Congresswoman Connie Morella from Maryland              11:21:32
7 BY MR. BRIDGES:                                         11:21:40
8     Q  Keep going  I thought you were working           11:21:40
9 backwards                                               11:21:43
10     A  Sure                                            11:21:43
11     Q  So please continue backwards --                 11:21:43
12     A  Sure  I'd be happy to                           11:21:48
13        MR. FEE:  Objection  Compound                   11:21:48
14        Go ahead                                        11:21:50
15        THE WITNESS:  Prior to that, it would have      11:21:54
16 been Congressman Jim Sensenbrenner from Wisconsin      11:21:56
17 Prior to that, it would be Congressman Steven          11:22:00
18 Gunderson from Wisconsin  And that would conclude the  11:22:03
19 three bosses that I served while I was on              11:22:10
20 Capitol Hill                                           11:22:14
21 BY MR. BRIDGES:                                         11:22:16
22     Q  And what committees did you work for?           11:22:16
23        MR FEE:  Same objection  Compound               11:22:18
24        THE WITNESS:  It was the house committee on     11:22:19
25 science and technology  That's the only committee      11:22:26
Page 81

21 (Pages 78 - 81)

```
 1     MR BRIDGES:  We can take a break now      11:22:28
 2     THE WITNESS:  Okay                        11:22:31
 3     THE VIDEOGRAPHER:  We're off the record at 11:22:32
 4 11:31                                         11:22:34
 5     (A recess was taken from 11:31 a m         11:41:41
 6 to 11:40 a m )                                 11:41:41
 7     THE VIDEOGRAPHER:  We're now back on the   11:41:41
 8 record at 11:40                               11:41:42
 9     (Deposition Exhibit 1032 was marked for    11:41:58
10 identification )                              11:41:58
11     MR BRIDGES:  Mr Grove, I've handed you     11:41:58
12 Exhibit 1032  It's double sided flipping up along the  11:42:06
13 side                                          11:42:12
14     Q  Do you recognize this as a document you  11:42:19
15 prepared?                                     11:42:21
16     MR FEE:  Remember to review it first      11:42:22
17     (The witness reviewed Exhibit 1032 )      11:44:07
18     THE WITNESS:  Yes, I recognize the document  11:44:07
19 BY MR BRIDGES:                                11:44:09
20     Q  Do you recognize this as a document that you  11:44:09
21 prepared?                                     11:44:11
22     A  Yes                                    11:44:13
23     Q  Did you show this document at a presentation?  11:44:19
24     MR FEE:  Objection  Vague                 11:44:25
25     THE WITNESS:  My recollection is I did, yes  11:44:27
```
Page 82

```
 1 BY MR BRIDGES:                                11:44:32
 2     Q  Was it at a program referred to on the first  11:44:32
 3 page of Exhibit 1032?                         11:44:34
 4     A  Correct                               11:44:37
 5     Q  When was the presentation?             11:44:42
 6     A  I wouldn't be able to give you an exact date  11:44:43
 7 I want to say 2008 or -9                      11:44:45
 8     (Deposition Exhibit 1033 was marked for    11:45:26
 9 identification )                              11:45:29
10     MR BRIDGES:  I'm handing you Exhibit 1033  11:45:29
11 I'm sorry  I gave you two copies  Please hand one  11:45:30
12 copy to your counsel                          11:45:33
13     Please tell me what that document is       11:45:34
14     (The witness reviewed Exhibit 1033 )      11:46:05
15 BY MR BRIDGES:                                11:46:05
16     Q  Do you recognize the document?         11:46:05
17     (The witness further reviewed Exhibit 1033 )  11:46:12
18     THE WITNESS:  I do recognize the document  11:46:13
19 BY MR BRIDGES:                                11:46:31
20     Q  What is it?                           11:46:31
21     A  I believe it's a statement that my supervisor  11:46:32
22 asked me for, summarizing some of the accomplishments  11:46:35
23 of my previous year of employment, 2012       11:46:39
24 accomplishments, and identifies some goals for 2013  11:46:46
25     Q  Who is the "Jim" that it refers to at the  11:46:49
```
Page 83

```
 1 beginning?                                    11:46:52
 2     A  That would be Jim Thomas, our president.  11:46:52
 3     Q  And this is a document you prepared; correct?  11:46:54
 4     A  It is.  Correct.                       11:46:56
 5     (Deposition Exhibit 1034 for identification.)  11:47:43
 6     MR BRIDGES:  Mr Grove, Exhibit 1034 is an  11:47:44
 7 exchange of -- it's an E-mail thread where you're  11:47:51
 8 either the author or the recipient of each of the  11:47:57
 9 E-mails.                                      11:48:00
10     Q  Is this correct?                       11:48:02
11     (The witness reviewed Exhibit 1034.)      11:48:10
12     THE WITNESS:  That is correct.            11:48:10
13     (Deposition Exhibit 1035 was marked for    11:48:40
14 identification.)                              11:48:40
15     MR BRIDGES:  Mr Grove, Exhibit 1035 is a   11:48:40
16 couple of E-mails from Sarah Petre to you during the  11:48:48
17 time she reported to you.                      11:48:59
18     Q  Is that correct?                       11:49:02
19     (The witness reviewed Exhibit 1035.)      11:49:25
20     THE WITNESS:  Yes, it is.                 11:49:25
21     (Deposition Exhibit 1036 for identification.)  11:51:16
22     MR BRIDGES:  Mr Grove, Exhibit 1036 is a   11:51:16
23 memo from you to ASTM senior staff; is that correct?  11:51:19
24     (The witness reviewed Exhibit 1036.)      11:52:18
25 BY MR. BRIDGES:                               11:52:19
```
Page 84

```
 1     Q.  Is that correct?                      11:52:19
 2     A.  Correct, that is.                     11:52:20
 3     Q.  Whom does "ASTM senior staff" in this memo  11:52:21
 4 refer to?                                     11:52:25
 5     A.  So at ASTM we have a number of staff that are  11:52:30
 6 responsible for the various divisions.  That would be  11:52:37
 7 vice presidents and associate vice presidents.  That's  11:52:40
 8 who senior staff is.                          11:52:49
 9     Q.  Tell me who the persons were that you  11:52:49
10 intended that to refer to?                    11:52:51
11     A.  Sure.  That would be Jim Thomas, our  11:52:53
12 president.  Tom O'Brien, our general counsel.  11:52:57
13 Katherine Morgan, our vice president for technical  11:53:02
14 committees at the time.  Tim Brook, vice president for  11:53:04
15 certification programs.  Phil Lively, president for  11:53:13
16 information technology.  That would include our  11:53:23
17 treasurer, Margaret Cassidy.  And that may include two  11:53:29
18 others that aren't part of senior staff because of a  11:53:36
19 vice president title.  They might be senior enough at  11:53:40
20 associate vice president or assistant vice president  11:53:44
21 level.  That would have been Dan Smith and possibly  11:53:47
22 Jim S. Thomas.                                11:53:52
23     Q.  Is Jim S. Thomas James Thomas's son?   11:53:57
24     A.  That would be correct.  Associate vice  11:54:00
25 president for marketing and sales.            11:54:03
```
Page 85

22 (Pages 82 - 85)

1    Q. Does he still work for ASTM?          11:54:10
2    A. He does.                              11:54:12
3       (Deposition Exhibit 1037 was marked for    11:54:56
4       identification.)                       11:54:56
5 BY MR. BRIDGES:                              11:54:57
6    Q. Mr. Grove, Exhibit 1037 is an exchange of   11:54:57
7 correspondence between you and John Pace; correct?   11:55:01
8    A. Yes.                                   11:55:11
9    Q. And the post that you're referring to is   11:55:12
10 indicated at the URL down below at the bottom of that   11:55:17
11 document; is that correct?                   11:55:20
12    A. That's correct.                       11:55:22
13    Q. What interactions did you have with Emily   11:55:24
14 Bremer?                                      11:55:26
15    A. I forget the time line.  It was probably in   11:55:28
16 2011 but Emily Bremer was the lead investigator or   11:55:31
17 counsel that was working on the administrative counsel   11:55:36
18 of the United States review and potential   11:55:39
19 recommendations on incorporation by reference, and we   11:55:44
20 met on one occasion at my office at her request.   11:55:49
21    Q. Did you meet with her only once?      11:55:55
22    A. Only once professionally.  I see her at   11:55:56
23 various standards community events in Washington quite   11:55:59
24 a bit.                                       11:56:04
25    Q. Are those nonprofessional events?  I don't   11:56:06

Page 86

1 quite understand the --                      11:56:09
2       MR. FEE:  Objection.                    11:56:14
3 BY MR. BRIDGES:                              11:56:15
4    Q. You said you met with her only once    11:56:15
5 professionally, and then you see her at various   11:56:17
6 standards community events in Washington quite a bit.   11:56:19
7    A. Yeah.  Thanks for the opportunity to clarify.   11:56:25
8       MR. FEE:  Objection.  Vague.             11:56:25
9       THE WITNESS:  So I only met in an official   11:56:29
10 capacity to be interviewed to represent ASTM's views   11:56:32
11 once with Emily, but from time to time since then I   11:56:37
12 see her at standards related events and quite possibly   11:56:40
13 would say, "Hi" or "Hello," or "What are you working   11:56:45
14 on" type of networking discussions.          11:56:48
15 BY MR. BRIDGES:                              11:56:53
16    Q. What networking would be going on in those   11:56:53
17 networking discussions?                      11:56:56
18    A. Just in the course of normal relationship,   11:56:57
19 discussions that one might have with a colleague from   11:57:04
20 another organization.                        11:57:07
21    Q. Have you ever met with her alone on any   11:57:11
22 occasion other than the one time you said you were   11:57:14
23 interviewed?                                 11:57:17
24    A. I don't recall, no.  I don't believe I have   11:57:20
25 ever met with her besides the one time.      11:57:21

Page 87

1    Q. How many times have you seen her at standards   11:57:24
2 community events?                            11:57:25
3    A. I'd say at least a dozen.  At least 10 to 12   11:57:31
4 times.                                       11:57:34
5    Q. And what standards community events do you   11:57:35
6 have in mind?  Strike that.                   11:57:40
7       What standards community events do you   11:57:44
8 recall?                                      11:57:46
9    A. I recall there were some subsequent ACUS   11:57:47
10 public stakeholder opportunities for stakeholders to   11:57:50
11 come to ACUS events.  I recall that Emily was at the   11:57:56
12 NIST standards workshop in May of 2012.  I know I've   11:58:03
13 seen her on other occasions at ANSI related events,   11:58:11
14 ANSI sponsors world standards week where there's a   11:58:16
15 number of different opportunities for meetings and   11:58:22
16 topical discussions.  So those would be the -- some of   11:58:27
17 the instances where I may have seen her.     11:58:34
18    Q. What other occasions have you seen her apart   11:58:36
19 from ACUS public stakeholders events, the NIST   11:58:39
20 standards workshop, and ANSI sponsored events?   11:58:42
21    A. I think that represents most of my   11:58:51
22 interactions or times I've seen her in Washington.   11:58:55
23    Q. I understand maybe most.  I want to try to   11:58:58
24 understand every single one that you recall.   11:59:01
25    A. Right.  That's all I recall.          11:59:03

Page 88

1    Q. What were the ANSI sponsored events to which   11:59:07
2 you referred?                                11:59:09
3    A. I recall there was one at the national -- I'm   11:59:10
4 sorry.  It's at the consumer electronics association   11:59:15
5 in Arlington, Virginia.  A panel where Peter Strauss,   11:59:20
6 Emily spoke, and now that you've refreshed my memory,   11:59:24
7 I believe I spoke also on a panel there.  Oh, and the   11:59:28
8 ANSI events, the question.  During world standards   11:59:38
9 week every year there's four or five days in October   11:59:41
10 where each day there's a -- one or more events, such   11:59:45
11 as the organizational member form of ANSI, where   11:59:53
12 organizations that are members of ANSI can come and --   11:59:57
13 for a program.  There's the consumer interest forum or   12:00:02
14 consumer groups that are members of ANSI speak.   12:00:07
15       There's a legal issues forum where members   12:00:13
16 from the standards community might go to discuss legal   12:00:20
17 issues.  And, occasionally, there's official committee   12:00:24
18 meetings, such as the national policy committee, which   12:00:29
19 I belong to, during that week.               12:00:31
20    Q. And did she attend all of those?       12:00:34
21    A. I recall I've seen her at some ANSI events   12:00:36
22 before, but I wouldn't be able to tell you which ones   12:00:38
23 with any certainty.                          12:00:41
24    Q. Are there any other instances that you recall   12:00:43
25 being with her at an event?                   12:00:46

Page 89

23 (Pages 86 - 89)

```
 1    A  Not that I recall              12:00:51
 2    Q  Where is your office?            12 01:08
 3    A  The ASTM Washington office        12:01:10
 4    Q  Where you work?               12:01:15
 5    A  Yeah  It's at 1850 M Street, Northwest,   12:01:16
 6  Suite 1030                          12:01:16
 7    Q  Who else works in ASTM's office there?   12:01:19
 8    A  Currently, Anthony Quinn, our director of  12:01:25
 9  public policy and international trade, and we have a  12:01:27
10  vacancy at the moment  So just the two of us  12:01:32
11    Q  What's the vacancy?            12:01:34
12    A  It will be for a manager of global policy and  12 01:36
13  industry affairs when we fill it       12:01:41
14    REPORTER MARTIN:  What was the last --   12:01:56
15    THE WITNESS:  I'm sorry  Global policy and   12:02:01
16  industry affairs                    12:02:01
17    REPORTER MARTIN:  And you said something   12:02:01
18  towards the end                    12:02:01
19    THE WITNESS:  When we fill it      12:02:01
20  BY MR  BRIDGES:                    12:02:01
21    Q  Do you recall that the Consumer Electronics   12:02:01
22  Associates panel you're on -- I think you said you   12:02:04
23  were on a panel with Ms  Bremer; is that correct?   12:02:11
24    A  I don't think we were on the same panel, but   12:02:13
25  we spoke the same day at the same event       12:02:15
                                        Page 90
```

```
 1    Q  Do you recall being on a panel called      12:02:17
 2  "Towards Greater Government and Industry Cooperation"?  12:02:19
 3    A  That sounds like the panel I was on, yes    12:02:23
 4    Q  Who else was on that panel?            12:02:25
 5    A  I believe Gordon Gillerman from the National  12 02:29
 6  Institute of Standards and Technology  I believe     12:02:34
 7  Scott Cooper from the American National Standards    12:02:37
 8  Institute  There's probably one more  I'm sorry  I  12 02:39
 9  just can't recall                        12:02:46
10    Q  What was the greater government industry    12:02:47
11  cooperation that you were urging?            12:02:49
12    MR  FEE:  Objection  Lack of foundation      12:02:55
13  BY MR  BRIDGES:                        12:02:56
14    Q  Were you urging greater government in      12:02:56
15  industry cooperation?                    12:02:58
16    MR  FEE:  Objection  Vague            12:02:59
17    THE WITNESS:  Yeah  I think -- I don't have    12:03:01
18  my -- I don't recall the specifics of my presentation,  12:03:04
19  but I believe we were outlying ways to make the     12:03:06
20  public/private collaboration in standards development  12:03:10
21  more effective, in our experience         12:03:13
22  BY MR  BRIDGES:                        12:03:17
23    Q  And government cooperation was part of the    12:03:17
24  public/private collaboration to which you just     12:03:22
25  referred?                            12:03:24
                                        Page 91
```

```
 1    A  Government cooperation, you said?  I'm sorry   12:03:26
 2  Could you repeat the question              12:03:28
 3    Q  Yes  Was government cooperation part of the   12:03:31
 4  public/private collaboration to which you just      12:03:34
 5  referred?                            12:03:36
 6    A  Yes                            12:03:37
 7    Q  What government cooperation, if any, did you   12:03:40
 8  suggest would be beneficial when you were on that    12:03:48
 9  panel?                             12:03:55
10    A  I assume I presented some of the best      12:03:56
11  practices that we've observed in the ASTM system for  12:04:00
12  ensuring all diverse stakeholders that work in our   12:04:04
13  open balance and transparent standards development   12:04:07
14  process that results in voluntary consensus standards  12:04:10
15  have a seat at the table, including the U.S.        12:04:14
16  government                          12:04:17
17    Q  So for government cooperation, then, you're   12:04:20
18  suggesting government participation in the standards   12:04:25
19  development process?  Is that what you're referring   12:04:27
20  to?                               12:04:30
21    MR  FEE:  Objection  Vague            12:04:31
22    THE WITNESS:  Yeah, including the government   12:04:32
23  representatives in the process would be included, yes   12:04:33
24  BY MR  BRIDGES:                        12:04:39
25    Q  In the process for developing standards?     12:04:39
                                        Page 92
```

```
 1    A  Correct                        12:04:41
 2    MR  FEE:  Objection  Vague            12:04:41
 3  BY MR  BRIDGES:                        12:04:53
 4    Q  Do you recall that this was a panel moderated  12:04:53
 5  by Scott Cooper, that panelists were Gordon Gillerman  12:04:58
 6  from NIST, Emily Bremer, John Card from EchoStar    12:05:02
 7  Technologies, and you?                   12:05:08
 8    A  Thank you for pointing that out.  I did not   12:05:10
 9  recall that Emily was on the same panel but...      12:05:12
10    Q  Does that refresh your recollection?       12:05:14
11    A  That does                      12:05:15
12    Q  Do you recall that one of the questions      12:05:16
13  identified in the agenda published to the attendees   12:05:22
14  was as follows:  "What factors should government     12:05:27
15  agencies take into consideration when examining      12:05:30
16  industry standards for regulatory purposes"?       12:05:35
17    MR  FEE:  Objection  Calls for speculation    12:05:39
18  To the extent that mischaracterizes the document    12:05:43
19  you're reading, object that you don't give him the   12:05:44
20  document that you're reading  If you're asking him to  12:05:49
21  remember a quote -- and he certainly hasn't been     12:05:52
22  designated as an ASTM witness on quotes from       12:05:54
23  particular slides of presentations              12:05:57
24    But you can answer if you know             12:06:01
25    THE WITNESS:  Okay  That sounds like        12:06:05
                                        Page 93
```

24 (Pages 90 - 93)

1 something that I would speak about.                12:06:06
2 BY MR. BRIDGES:                                    12:06:08
3    Q. So what factors should government agencies   12:06:08
4 take into consideration when examining industry    12:06:08
5 standards for regulatory purposes?                 12:06:10
6    A. Well, one of the most important factors that 12:06:13
7 we believe is important to maintain the robust,    12:06:15
8 system of standardization that we have in the U.S. is 12:06:24
9 looking to see if standards development organizations 12:06:26
10 meet the world trade organizations, technical barriers 12:06:28
11 to trade agreement principles for international    12:06:31
12 standardization.  It's a message that we believe   12:06:34
13 strongly in at ASTM, we've invested heavily in, and we 12:06:37
14 promote it as widely as possible.                  12:06:41
15    Q. What regulatory purposes do you anticipate   12:06:49
16 government agencies have that causes them to examine 12:06:54
17 industry standards?                                12:07:01
18    MR. FEE:  Read that back, please.               12:07:03
19    (Record read.)                                  12:07:13
20    MR. FEE:  Objection.  Calls for speculation.    12:07:14
21 It's beyond the scope of his designation.          12:07:15
22    THE WITNESS:  I don't have an answer for        12:07:23
23 that.  I think you could assume that government     12:07:24
24 participants in the standardization process bring   12:07:30
25 knowledge of regulatory agendas and regulatory needs 12:07:32
Page 94

1 of agencies to the voluntary consensus standards   12:07:37
2 community of which ASTM is one member amongst 225   12:07:40
3 others                                             12:07:45
4 BY MR  BRIDGES:                                    12:07:50
5    Q  This agenda item referred to government      12:07:50
6 agencies examining industry standards for regulatory 12:07:52
7 purposes                                           12:07:56
8    MR  FEE:  Objection  Vague  What agenda --      12:07:57
9 I'm unclear as to what agenda you're referring     12:08:00
10 There's no agenda in front of him                  12:08:04
11    MR  BRIDGES:  That's all right  It's so         12:08:07
12 short, I can read it to him                         12:08:08
13    Q  So my question is what regulatory purposes do 12:08:10
14 you understand government agencies to have when they 12:08:16
15 examine industry standards?                        12:08:20
16    MR  FEE:  Objection  He's not been              12:08:22
17 designated as to speculation as to government      12:08:24
18 regulatory motivations, but to the extent you have an 12:08:26
19 understanding individually, you can try to answer  12:08:31
20 that                                               12:08:34
21    THE WITNESS:  Sure  And I'm not an attorney,    12:08:35
22 but my understanding is the National Technology    12:08:36
23 Transfer and Advancement Act of 1995 combined with the 12:08:38
24 OMB circular A119 lays out criteria or further     12:08:41
25 guidance for federal agencies for them to consider 12:08:50
Page 95

1 when they're looking at participating in standards 12:08:53
2 development activities and utilizing voluntary      12:08:57
3 consensus standards in support of their agency's    12:09:01
4 mission.                                            12:09:03
5 BY MR. BRIDGES:                                     12:09:11
6    Q. So my question is what are the regulatory     12:09:11
7 purposes that in your interactions with government on 12:09:16
8 behalf of ASTM, you believe government agencies have 12:09:20
9 when they examine industry standards?  So I'm asking 12:09:25
10 what do you think the regulatory purposes are.      12:09:29
11    MR. FEE:  Same objections, plus compound.        12:09:31
12    THE WITNESS:  Yeah.  And I don't believe        12:09:33
13 there's any one answer to that.  Each agency that   12:09:34
14 we're aware of that we interact with or that        12:09:38
15 participate in our committees have different needs and 12:09:40
16 different expectations and different motivations for 12:09:42
17 participating in our process.                      12:09:46
18 BY MR. BRIDGES:                                     12:09:48
19    Q. So beyond that, you can't give your testimony 12:09:48
20 as to what you think the government regulatory      12:09:51
21 purposes are on a general basis?                   12:09:54
22    MR. FEE:  Same objections.                       12:09:57
23 BY MR. BRIDGES:                                     12:10:00
24    Q. In using or in examining ASTM's standards.    12:10:00
25    MR. FEE:  Same objections.                       12:10:05
Page 96

1    THE WITNESS:  Yeah.  I think we discussed        12:10:09
2 earlier federal agencies do incorporate, by reference, 12:10:11
3 standards from voluntary consensus standards bodies 12:10:16
4 like ASTM.  So that could be one potential -- one   12:10:19
5 potential factor.                                  12:10:24
6 BY MR. BRIDGES:                                     12:10:28
7    Q. Do you understand what regulatory purposes    12:10:28
8 federal agencies may have in incorporating ASTM     12:10:33
9 standards by reference into CFR?                    12:10:36
10    MR. FEE:  Objection.  Calls for speculation.    12:10:41
11 It's also beyond the scope of his designation.      12:10:42
12    You can answer if you know.                     12:10:44
13    THE WITNESS:  Generally, I believe the EPA      12:10:46
14 would look to -- has a mission of helping to keep the 12:10:48
15 air we breathe, the water we drink and the ground that 12:10:53
16 we habitate on as safe and as clean and sustainable as 12:10:56
17 possible.  So they might look to organizations like 12:11:02
18 ASTM and many others to see what work we're doing in 12:11:05
19 many of these areas and ensure that their employees 12:11:08
20 are participating in our standards development process 12:11:10
21 to reflect the agency's mission.                   12:11:12
22 BY MR. BRIDGES:                                     12:11:17
23    Q. How would the government employees affect --  12:11:17
24 strike that.                                       12:11:22
25    What effect does the presence of government      12:11:26
Page 97

25 (Pages 94 - 97)

1  employees have in the standards development process at   12:11:30
2  ASTM?                                                    12:11:36
3        MR. FEE:  Objection.  Vague.                       12:11:37
4        THE WITNESS:  In my experience, federal            12:11:43
5  government participation in standards development         12:11:45
6  helps to make a more effective public/private            12:11:47
7  collaboration in our process.                            12:11:50
8  BY MR. BRIDGES:                                          12:11:51
9     Q.  How does it help in the drafting of              12:11:52
10 standards?                                               12:11:53
11       MR. FEE:  Objection.  Lack of foundation.          12:11:54
12       THE WITNESS:  In the area of drafting              12:11:58
13 standards, I wouldn't have specific knowledge.           12:11:59
14 BY MR. BRIDGES:                                          12:12:03
15    Q.  Who would?                                        12:12:03
16       MR. FEE:  Objection.  Calls for speculation.       12:12:04
17       THE WITNESS:  Right.  We have 140 different         12:12:07
18 technical committees and over 1,000 individual           12:12:09
19 subcommittees.  So each agency's participation and       12:12:12
20 what role they play in the drafting of standards, I      12:12:15
21 believe was your term, that would vary significantly.    12:12:20
22 BY MR. BRIDGES:                                          12:12:23
23    Q.  Who are two or three people at ASTM you think     12:12:23
24 would be in a best position to answer the question of    12:12:25
25 what effect the presence of government employees has     12:12:32

1  in the creation of standards?                            12:12:38
2        MR. FEE:  Objection.  Calls for speculation.       12:12:43
3  Vague.                                                   12:12:44
4        THE WITNESS:  Well, other than me, I would         12:12:49
5  say I'm one.  Beyond that, you know, ASTM, it's a        12:12:50
6  decentralized process.  So it would really vary again    12:13:01
7  by the individual committees and the actions by the      12:13:05
8  committee officers.  So if I had to give you another     12:13:08
9  name, I would say probably Katherine Morgan, who         12:13:14
10 formerly led our Technical Committee Operations.         12:13:17
11 BY MR. BRIDGES:                                          12:13:23
12    Q.  What is her current post?                         12:13:23
13    A.  She's the executive vice president.               12:13:25
14    Q.  What are her duties?                              12:13:27
15       MR. FEE:  Objection.  Calls for speculation.       12:13:28
16 Beyond the scope of his designation.                     12:13:31
17       THE WITNESS:  Actually, I'm not certain what       12:13:35
18 her new duties are.  She just assumed them in            12:13:36
19 February.  But I would assume she's serving as our --    12:13:39
20 she'll be serving as our president within the next two   12:13:48
21 to three years.  So she's broad supervisory             12:13:51
22 responsibility.                                          12:13:54
23       (Deposition Exhibit 1038 was marked for            12:14:54
24       identification.)                                   12:14:54
25 BY MR. BRIDGES:                                          12:14:55

1     Q.  Have you seen Exhibit 1038 before?               12:14:55
2        (The witness reviewed Exhibit 1038.)               12:15:20
3        THE WITNESS:  Yes, I have.                         12:15:20
4  BY MR. BRIDGES:                                          12:15:22
5     Q.  Is this an organizational chart as of           12:15:22
6  July 21, 2014?                                           12:15:23
7     A.  I believe it is, yes.                            12:15:25
8     Q.  Have you seen a more recent organizational       12:15:27
9  chart of ASTM?                                           12:15:29
10    A.  I have not, but I believe that this is just      12:15:31
11 slightly out of date.                                    12:15:35
12    Q.  What changes are necessary to make it            12:15:36
13 current?                                                 12:15:40
14    A.  Under the direct line from Jim Thomas, that      12:15:46
15 would be a new box that would say, "Kathie Morgan,       12:15:51
16 Executive Vice President," and then a number of          12:15:57
17 departments would be reporting up through Kathie.        12:16:01
18 This is as of just a few weeks ago.                      12:16:04
19    Q.  I see that she is almost directly under          12:16:10
20 Mr. Thomas in what looks like a direct report as vice   12:16:11
21 president of Technical Committee Operations.  Would      12:16:16
22 that be simply changing the title in that box?          12:16:18
23    A.  It would be expanding her responsibilities.      12:16:23
24 For instance, now I report to Kathie Morgan, as does    12:16:25
25 Phil Lively, as does Teresa Cendrowska, as does Tim     12:16:30

1  Brooke, and a new box would need to be created -- or    12:16:38
2  in the old box that said Kathie Morgan, I would put      12:16:48
3  Daniel G. Smith.                                         12:16:51
4     Q.  That's on Page 5 of 11 of the document?          12:16:53
5     A.  Page 6 of 11.  So Kathie has been promoted,      12:16:56
6  and Dan has taken Kathie's old job, if that helps.       12:17:12
7     Q.  All right.  In the standards development but     12:17:16
8  not Technical Committee Operations?  Page 5 of 11 is    12:17:17
9  Technical Committee Operations.  Page 6 of 11 is         12:17:24
10 standards development?                                   12:17:29
11    A.  Yeah.  I actually wouldn't be able to explain    12:17:30
12 the difference between Technical Committee Operations    12:17:32
13 and standards development, and in fact -- I would be     12:17:34
14 able to tell you why we have it displayed that way.      12:17:48
15 We think of them together.                               12:17:48
16    Q.  Where is Ms. Morgan's office?                    12:17:57
17    A.  Kathie is based at our corporate headquarters    12:17:59
18 in Conshohocken, Pennsylvania.                           12:18:02
19    Q.  What offices does ASTM have apart from the       12:18:11
20 Pennsylvania office you just referred to and             12:18:14
21 Washington, D.C.?                                        12:18:18
22    A.  Well, we have an office in Ottawa, Canada,       12:18:24
23 but I believe the person that works for us there is a    12:18:26
24 contractor.                                              12:18:32
25    Q.  Any other offices?                               12:18:33

1      A   I had previously mentioned an office in      12:18:34
2   Brussels, Belgium where we have a contractor         12:18:35
3      Q   Who else?                    12:18:39
4      A   We operated for many years an office in      12:18:40
5   Mexico City   That office, our representative,        12:18:44
6   unfortunately, recently passed away   So we are       12:18:47
7   re-evaluating what we're going to be doing in Mexico    12:18:51
8   City   But I believe we will still have an office       12:18:54
9   there for the time being                  12:18:58
10      Q   Any other offices?              12:18:59
11      A   We do   So we worked in collaboration with an   12:19:01
12   organization called the American Association of State    12:19:04
13   Highway Transportation Officials   It's known as       12:19:09
14   AASHTO, and AASHTO and ASTM work together in a        12:19:12
15   facility in Buckeystown, Maryland, which is -- we do    12:19:16
16   cement and concrete reference, related laboratory      12:19:22
17   inspections   To my knowledge, that's the scope of     12:19:30
18   ASTM's offices                         12:19:35
19      Q   How often do you visit the corporate       12:19:44
20   headquarters in the course of a year?             12:19:47
21      A   In 2013 I made approximately 24 trips to     12:19:50
22   ASTM's headquarters                     12:19:55
23      Q   How often do you speak to Emily Bremer on the   12:20:38
24   telephone?                            12:20:41
25      A   I honestly don't recall speaking with Emily    12:20:46

Page 102

1   Bremer since 2012 on the telephone.             12:20:48
2      Q   What about your staff?  Do you know how often   12:20:50
3   they speak to Emily Bremer on the telephone?         12:20:53
4      MR. FEE:  Objection.  Calls for speculation.     12:20:56
5   Beyond the scope of his designation.             12:20:57
6      THE WITNESS:  I believe my staff would inform    12:21:00
7   me if they spoke with Emily, and I don't recall them    12:21:01
8   speaking with her by phone.                    12:21:08
9      MR. BRIDGES:  I'll hand you Exhibit 1039.      12:21:14
10      (Deposition Exhibit 1039 was marked for        12:21:25
11      identification.)                      12:21:25
12   BY MR. BRIDGES:                        12:21:25
13      Q   Do you recognize this as an E-mail to you    12:21:25
14   from Cicely Enright?  And who is Cicely Enright?      12:21:26
15      MR. FEE:  Objection.  Compound.            12:21:46
16      THE WITNESS:  Yes.  I recognize this is an     12:21:50
17   E-mail from Cicely Enright.  Cicely works as an       12:21:51
18   associate editor of our ASTM magazine known as       12:21:54
19   Standardization News.                      12:21:58
20   BY MR. BRIDGES:                        12:22:00
21      Q   Does this E-mail concern an article to be    12:22:00
22   published in that newsletter?                   12:22:03
23      MR. FEE:  Objection.  Beyond the scope of his   12:22:05
24   designation.                            12:22:07
25      THE WITNESS:  It appears as if it does.  It's    12:22:08

Page 103

1   an interview with Emily that appeared in our magazine.   12:22:11
2      (Deposition Exhibit 1040 was marked for        12:23:27
3      identification.)                      12:23:27
4   BY MR. BRIDGES:                        12:23:27
5      Q   Mr. Grove, have you seen Exhibit 1040 before?   12:23:27
6      MR. FEE:  Read it first.                 12:23:34
7      MR. BRIDGES:  It's pretty short.  It's pretty   12:23:35
8   obvious.                             12:23:37
9      (The witness reviewed Exhibit 1040.)          12:24:02
10      THE WITNESS:  Yes, I'm familiar -- I am on     12:24:07
11   this E-mail, yes.                        12:24:09
12   BY MR. BRIDGES:                        12:24:12
13      Q   All right.  And did you get -- did you see at   12:24:12
14   any point the segment from John Pace to James Thomas    12:24:18
15   up top?                              12:24:22
16      A.  Yes.                          12:24:27
17      Q   Is the "Jeff" in the middle of the large     12:24:30
18   paragraph at the top, do you understand that to be a    12:24:34
19   reference to you?                         12:24:37
20      A.  I believe it is as I'm responsible for the    12:24:39
21   ASTM's reading room.                      12:24:41
22      Q   Why are you responsible for the reading room?   12:24:54
23      MR. FEE:  Objection.  Vague.  Calls for       12:24:57
24   speculation.                           12:24:59
25      THE WITNESS:  For many years I've been         12:25:01

Page 104

1   working with senior staff because of an interest that    12:25:01
2   I have in striking the right balance between providing    12:25:05
3   the public with access to ASTM standards that become     12:25:09
4   incorporated by reference in various laws and          12:25:12
5   regulations while maintaining our ability to sustain      12:25:17
6   our organization through the distribution of our        12:25:25
7   standards under the model that served us so well for      12:25:27
8   118 years.                            12:25:30
9   BY MR. BRIDGES:                        12:25:42
10      Q   How did you come to such an interest?        12:25:42
11      A.  Well, working in Washington for ASTM for as    12:25:45
12   long as I have, I've begun to hear and see the         12:25:48
13   emerging interest in striking this delicate balance,      12:25:56
14   began to see efforts that other organizations were       12:26:04
15   taking, such as the NFPA, which, going back all the      12:26:06
16   way to 2004, started to provide some of their key code    12:26:10
17   documents on their website.  And I've heard some        12:26:15
18   interesting testimony and ideas expressed by people      12:26:21
19   like Peter Strauss, who is a law professor, I believe,    12:26:23
20   and other people associated with ACUS who served on     12:26:31
21   ACUS committees.  So those are some of the factors and   12:26:35
22   things that have influenced my thinking on this        12:26:42
23   reading room.                          12:26:44
24      Q   I understand the factors that influenced your   12:26:47
25   thinking, but how did you come to have such an        12:26:50

Page 105

27 (Pages 102 - 105)

| | | | | |
|---|---|---|---|---|

**Page 106**

1 interest to begin with?                    12:26:52
2      MR. FEE:  Objection.  Asked and answered.    12:26:54
3      THE WITNESS:  Yeah.  I guess I don't know the    12:26:58
4 difference in your question.  ASTM is a nonprofit    12:26:59
5 organization that serves society in a number of    12:27:07
6 different ways.  We're excited about our documents and    12:27:10
7 what they can do, and the idea that we could strike a    12:27:12
8 balance that would allow more access to some of those    12:27:18
9 documents was something that we thought would be a --    12:27:21
10 very good for ASTM's standing in the community, as    12:27:25
11 well as for the public.    12:27:28
12 BY MR. BRIDGES:    12:27:31
13   Q.  Do you have any background in publications    12:27:31
14 before coming to ASTM?    12:27:34
15   A.  I do not.    12:27:37
16   Q.  Do you have any background in libraries    12:27:38
17 before coming to ASTM?    12:27:53
18   A.  No.    12:27:55
19   Q.  Did you have any background in archives    12:27:55
20 before coming to ASTM?    12:27:57
21   A.  No.    12:27:59
22   Q.  Did you have any background in educational    12:28:02
23 policy before coming to ASTM?    12:28:05
24      MR. FEE:  Objection.  Vague.    12:28:08
25      THE WITNESS:  Yeah, it would depend what you    12:28:10

Page 106

**Page 107**

1 mean by "educational policy"    12:28:12
2 BY MR BRIDGES:    12:28:15
3   Q  Did you have any background in promoting    12:28:15
4 education, widespread education before coming to ASTM?    12:28:18
5      MR FEE  Objection  Vague    12:28:24
6      THE WITNESS:  No    12:28:25
7 BY MR BRIDGES:    12:28:26
8   Q  Did you have any background in public access    12:28:26
9 to government sponsored documents before coming to    12:28:31
10 ASTM?    12:28:37
11      MR FEE  Objection  Vague as to "government    12:28:38
12 sponsored documents"    12:28:40
13      THE WITNESS:  I was aware, during my time on    12:28:41
14 Capitol Hill, there was interest in what was called at    12:28:45
15 the time "public access to science," which was mostly    12:28:48
16 about academic journals funded by the National    12:28:56
17 Institute and others, and National Science Foundation    12:28:58
18 BY MR BRIDGES:    12:28:59
19   Q  And what did you understand the interest in    12:28:59
20 public access to mean?    12:29:00
21      MR. FEE:  Objection  This is beyond the    12:29:04
22 scope of his designation    12:29 05
23      You can answer individually    12:29 07
24      THE WITNESS:  My recollection was that there    12:29:09
25 was an idea that if the federal government paid for    12:29:12

Page 107

**Page 108**

1 the development or for the funded research, that the    12:29:14
2 resulting publications should be available to the    12:29:22
3 public for a reasonable amount of time before they    12:29:25
4 were exclusively put into commercial journals and put    12:29:32
5 under that type of control.    12:29:39
6 BY MR. BRIDGES:    12:29:46
7   Q.  When were you first aware of NFPA's actions    12:29:46
8 in giving some public access to its standards?    12:29:52
9      MR. FEE:  Objection.  Vague.  This is also    12:29:59
10 beyond the scope of his designation.    12:30:01
11      THE WITNESS:  I would -- I actually wouldn't    12:30:07
12 be able to give you an exact date, but I would    12:30:09
13 reasonably assume it's been within the last five    12:30:13
14 years.  Probably 2009, 2010.    12:30:16
15 BY MR. BRIDGES:    12:30:19
16   Q.  Because you pointed out in your answer    12:30:19
17 earlier how long NFPA had provided public access to    12:30:24
18 some of the standards.  I think you said going back    12:30:35
19 all the way to 2004.  Is that your understanding?    12:30:38
20   A.  That's based on what the NFPA representatives    12:30:41
21 told me, which was very informational to me once we    12:30:44
22 began to start working with them or start exchanging    12:30:49
23 information about some of the things happening in    12:30:54
24 Washington.  And I learned suddenly that they've    12:30:56
25 already been addressing this issue through some of    12:31:00

Page 108

**Page 109**

1 their codes, and I wouldn't be able to tell you what    12:31 09
2 codes, but I believe it goes all the way back to 2004,    12:31:11
3 2005    12:31:18
4   Q  In the answer you just gave, you referred to    12:31:19
5 when you started working with NFPA and exchanged    12:31:23
6 information with them  When do you date that?    12:31:23
7   A  That would be, I think I've met -- the    12:31:25
8 standards community in Washington is a small    12:31:31
9 community  So I've met the various Washington    12:31:34
10 representatives for agencies  Excuse me  For SDO's,    12:31:35
11 standards development organizations, many times in my    12:31:39
12 career  And I would say I've worked cooperatively and    12:31:41
13 individually whenever necessary throughout my career    12:31:45
14 at ASTM  So    12:31:48
15   Q  Well, I think that doesn't quite answer my    12:31:56
16 question  I think you said you developed this    12:31:59
17 interest when you began to hear -- sorry  When you    12:32:02
18 began to -- when you started working with them on    12:32:06
19 exchanging information  I'm just trying to find out    12:32:10
20 what year you're referring to when you said that    12:32:12
21      MR. FEE:  Objection  Mischaracterizes his    12:32:14
22 testimony    12:32:15
23      THE WITNESS:  I wouldn't be able to give you    12:32:19
24 an exact year except for I know when we began the APCO    12:32:20
25 related work, that was 2011 time frame    12:32:25

Page 109

28 (Pages 106 - 109)

BY MR BRIDGES:                                              12:32:29

2    Q    And did your interest in providing a reading    12:32:31

3 room arise about the same time as the APCO engagement    12:32:32

4 arose?                                                    12:32:38

5    A    Similar time line I believe it began to --      12:32:40

6 I began to introduce the idea and socialize it before    12:32:43

7 then  Maybe a year or so before then                     12:32:45

8    Q    You introduced the idea of a reading room?      12:32:48

9    A    The idea of figuring out a way to strike the    12:32:51

10 right balance  I think another idea we had at the       12:32:53

11 time that I introduced was perhaps figuring out if      12:32:57

12 there was a way we could provide better summaries of    12:33:01

13 our standards to the public rather than relying on      12:33:04

14 abstracts  So there was various ideas that I began to   12:33:07

15 socialize with ASTM staff about how to strike this     12:33:13

16 delicate balance between providing the public with      12:33:17

17 greater access to our documents while still preserving  12:33:20

18 what we need to preserve in order to meet -- continue   12:33:25

19 the enterprise of developing standards, keeping the     12:33:28

20 barriers to participation low, and ensuring that would  12:33:31

21 continue to provide the important value that we do in   12:33:35

22 high-quality market-relevant standards that protect     12:33:39

23 the public                                              12:33:42

24    Q    How did you introduce the idea of providing a  12:33:44

25 reading room in the discussion you were referring to?   12:33:46

                                                          Page 110

1 notice --                                                12:35:38

2       MR FEE:  Objection  Calls for --                  12:35:38

3 BY MR BRIDGES:                                           12:35:38

4    Q    -- from 2004 to 2011?                           12:35:38

5       MR FEE:  Lack of foundation  Calls for            12:35:41

6 speculation  This is beyond his designation as a        12:35:42

7 witness on behalf of ASTM                               12:35:44

8       You can answer if you know                        12:35:46

9       THE WITNESS:  Yeah  In my opinion, access         12:35:47

10 just wasn't an issue that people were bringing to       12:35:50

11 standards development organizations  From ASTM's        12:35:54

12 standpoint, we just were not hearing from the public    12:35:57

13 or from agencies that access to ASTM standards at the   12:36:01

14 reasonable and flexible, widely available way that we   12:36:05

15 provided them, why that wasn't good enough  So this     12:36:10

16 was all informational to me and was significant in the  12:36:14

17 fact that NFPA was doing this                           12:36:19

18 BY MR BRIDGES:                                          12:36:36

19    Q    How did you establish priorities in            12:36:36

20 determining what standards ASTM would make available    12:36:40

21 on its reading room?                                    12:36:45

22       MR FEE:  Objection  Vague                        12:36:47

23       THE WITNESS:  I believe there was some           12:36:51

24 discussion initially about there was a provision        12:36:51

25 introduced in legislation on the Hill that could        12:36:58

                                                          Page 112

1    A.    Right.  It would be as simple as talking to    12:33:52

2 other staff at ASTM about looking at solutions that      12:34:01

3 other organizations are considering or have posted       12:34:04

4 towards providing greater access.                        12:34:09

5    Q.    What other organizations did you mean just      12:34:17

6 now?                                                     12:34:19

7    A.    I believe the NFPA would be one.  The           12:34:19

8 American Petroleum Institute is a trade association      12:34:23

9 that also develops standards, and I believe that they    12:34:25

10 took some steps to provide greater access to their      12:34:30

11 documents that I can recall caught my attention.        12:34:32

12    Q.    What other organizations?                      12:34:39

13    A.    There's probably others, but those are the     12:34:50

14 two I can think of that are what I would call "thought   12:34:51

15 leaders."                                               12:34:56

16    Q.    What made NFPA a thought leader with respect   12:34:58

17 to a reading room?                                       12:35:03

18    A.    The fact that they were making some of their   12:35:05

19 core documents available to the public at no cost to    12:35:07

20 first responders and those that they deemed needed      12:35:11

21 access to them, positioned them in a way that was       12:35:15

22 beyond the norm for standards developers and caught my  12:35:19

23 notice.                                                 12:35:22

24    Q.    Can you explain why it took approximately      12:35:24

25 seven years for NFPA's reading room to catch your       12:35:27

                                                          Page 111

1 potentially put ASTM in the position that if we did      12:37:03

2 not provide public access at no cost to a few specific   12:37:08

3 standards, that an agency would be precluded from        12:37:11

4 utilizing such standards in future rulemakings, and      12:37:16

5 that was a difficult position for ASTM to be put in.     12:37:20

6 BY MR BRIDGES:                                           12:37:25

7    Q.    My question was how did you establish           12:37:25

8 priorities in determining what standards ASTM would      12:37:27

9 make available on its reading room?                      12:37:29

10       MR. FEE:  Same objections.                        12:37:32

11       THE WITNESS:  So that same legislation that I     12:37:33

12 referenced was very specific to an organization called  12:37:38

13 FIMSA or PIMSA, which deals with -- it's a division     12:37:40

14 within the Department of Transportation, which          12:37:43

15 regulates the safety and the safe operation of          12:37:45

16 pipelines and hazardous substances, and particularly    12:37:49

17 for pipelines, this provision that I referred to        12:37:52

18 earlier would have caused this potential barrier on     12:37:56

19 the use of ASTM standards.                               12:38:01

20       So we began -- I began to look at which           12:38:03

21 standards would be impacted by this potential           12:38:06

22 legislation and what steps would ASTM possibly take to  12:38:08

23 address this, either through legislation or through     12:38:15

24 the fact that we make a decision that we'll go ahead    12:38:18

25 and put it up for the public to review.                 12:38:24

                                                          Page 113

29 (Pages 110 - 113)

Page 114

```
 1  BY MR BRIDGES:                          12:38:36
 2    Q  In your last answer you said, "I began to   12:38:36
 3  look at which standards would be impacted by this   12:38:39
 4  potential legislation and what steps would ASTM   12:38:41
 5  possibly take to address this "  What did you mean by   12:38:46
 6  "to address this" in that answer?          12:38:51
 7    A  Well, personally, I felt that there was a   12:38:54
 8  real dilemma for ASTM because, on one hand, we work   12:38:56
 9  with stakeholders who come to ASTM with the   12:39:00
10  expectation at times that we are going to be the   12:39:04
11  foremost developer of information and standards that   12:39:07
12  will help to benefit their industry or protect and   12:39:12
13  ensure their industry is operating safely  So on one   12:39:18
14  hand we have that commitment to our stakeholders to   12:39:21
15  demonstrate our significance, and then on the other   12:39:24
16  hand we had the situation where an agency may be told   12:39:28
17  that they can no longer utilize ASTM standards if ASTM   12:39:32
18  does not make such standards available to the public   12:39:37
19  for free at no cost on an Internet website  So you'd   12:39:39
20  have to read back your question if I failed to answer   12:39:47
21  that                                     12:39:49
22    Q  Thank you  Yeah, I'm not sure you did  I   12:39:49
23  was asking what you meant by "to address this" when   12:39:52
24  you were referring to the discussions around the FIMSA   12:39:55
25  legislation  I'm just trying to find out --   12:40:01
```

Page 115

```
 1    A  Sure                                12:40:07
 2    Q  -- what you meant by "to address this," what   12:40:07
 3  the "this" is and what it meant to address --   12:40:12
 4    MR FEE: Objection to form              12:40:16
 5    Go ahead                              12:40:17
 6    THE WITNESS: I was thinking ahead  I   12:40:18
 7  believe it's my role to anticipate what changes could   12:40:20
 8  be coming from Washington, and the fact that this   12:40:22
 9  legislation was being considered, I thought was   12:40:28
10  significant enough that we should do some internal   12:40:30
11  planning and have some socialization of the issue   12:40:33
12  amongst ASTM's management staff to ensure that we were   12:40:38
13  taking steps to address it should it either be forced   12:40:43
14  upon us or should we decide it's something that we   12:40:47
15  want to do independent of any legislative or   12:40:50
16  government directive                      12:40:53
17  BY MR BRIDGES:                          12:40:57
18    Q  And you testified earlier that you began to   12:40:58
19  look at what steps ASTM would possibly take to address   12:41:00
20  this either through legislation or through the fact   12:41:04
21  that we make a decision that we'll go ahead and put it   12:41:08
22  up for the public to review  What did you mean by   12:41:11
23  "taking steps to address this through legislation"?   12:41:14
24  Did that mean opposing the provisions relating to   12:41:20
25  public access in the FIMSA legislation?   12:41:22
```

Page 116

```
 1    MR. FEE: Objection to form.            12:41:25
 2    THE WITNESS: That's not what I intended in   12:41:26
 3  my answer to your question. Taking steps to me, what   12:41:27
 4  I was implying there was that we were taking steps as   12:41:31
 5  an organization to implement this directive that might   12:41:34
 6  be passed by Congress.                    12:41:39
 7  BY MR. BRIDGES:                          12:41:41
 8    Q. Did, in fact, ASTM argue against the public   12:41:42
 9  access provisions in the FIMSA legislation?   12:41:48
10    MR. FEE: Objection. Vague.             12:41:50
11    THE WITNESS: Right. So I don't recall that   12:41:52
12  we took any official position, wrote any official   12:41:54
13  letters or signed any specific documents, but I do   12:41:57
14  know that we did engage with Congressional staff on   12:42:02
15  this issue to discuss what we thought would be the   12:42:05
16  unintended consequences of this approach on   12:42:09
17  organizations like ASTM and our model of standards   12:42:15
18  development. And I should say we may have signed a   12:42:18
19  letter. I just don't recall. I know there was a   12:42:22
20  letter from SDOs that went to Capitol Hill.   12:42:25
21  BY MR. BRIDGES:                          12:42:29
22    Q. So my question was a straightforward   12:42:30
23  question. Did, in fact, ASTM argue against the public   12:42:31
24  access provisions in the FIMSA legislation?   12:42:34
25    MR. FEE: Objection. Asked and answered now.   12:42:38
```

Page 117

```
 1  The problem is your vague question is "argue." He   12:42:41
 2  answered it.                            12:42:45
 3    But if you have something more to add, go   12:42:45
 4  ahead.                                  12:42:47
 5    THE WITNESS: We engaged Congressional staff   12:42:47
 6  and discussed with them the potential impacts, made   12:42:50
 7  them aware on what impacts could be on ASTM.   12:42:54
 8  BY MR. BRIDGES:                          12:42:59
 9    Q. Well, "engage" is a very bland word.   12:42:59
10    A. Sure.                              12:43:00
11    Q. In that engagement did you express criticisms   12:43:00
12  of those provisions of the legislation?   12:43:04
13    MR. FEE: Objection. Vague.             12:43:06
14    THE WITNESS: Yeah. I recall that I asked   12:43:07
15  what the motivation was because I understood that   12:43:08
16  there was this perception that the consumers or the   12:43:14
17  general public would somehow glean some technical   12:43:16
18  knowledge out of our standards that would help them   12:43:24
19  understand better how pipelines could be made more   12:43:26
20  safely in their communities, and I wanted to -- in   12:43:31
21  fact, at that meeting I believe I brought a copy of an   12:43:35
22  ASTM standard that they were particularly interested   12:43:39
23  in to show them the technical nature of the standard   12:43:44
24  because I felt they were misinformed if that was their   12:43:48
25  perception.                             12:43:51
```

30 (Pages 114 - 117)

1 BY MR. BRIDGES:                              12:44:04
2    Q.  Did your answer mean to imply that ASTM did   12:44:04
3 not criticize the public access provisions of the   12:44:09
4 legislation?  Because your answer avoided my word   12:44:11
5 "criticism" by substituting other words and other   12:44:15
6 activities.                                   12:44:18
7         MR. FEE:  Objection.  Asked and answered.   12:44:19
8 Vague.  He doesn't have to adopt your wording.  He   12:44:20
9 just has to respond substantively to your question.   12:44:22
10        MR. BRIDGES:  He has to answer my question,   12:44:26
11 that's exactly right, and that's all I'm asking him to   12:44:28
12 do.                                          12:44:28
13        MR. FEE:  You can do it again if you have   12:44:28
14 something more to add.                        12:44:30
15        THE WITNESS:  I would add that I did not   12:44:31
16 indicate that ASTM supports their legislation.   12:44:32
17 BY MR. BRIDGES:                               12:44:37
18    Q.  Did my question have the word "support" in?   12:44:37
19        MR. FEE:  He doesn't have to mock your   12:44:39
20 questions.  That's his answer.  If you don't like it,   12:44:41
21 then too bad.                                 12:44:44
22        MR. BRIDGES:  It's not an answer to my   12:44:46
23 question did ASTM criticize the public access   12:44:46
24 provisions of the legislation.                12:44:49
25        MR. FEE:  Objection.  Asked and answered.   12:44:52

Page 118

1         MR. BRIDGES:  It's a yes or no.          12:44:52
2         MR. FEE:  No, it's not a yes or no.       12:44:54
3 Answer however you deem appropriate.           12:44:55
4         THE WITNESS:  I believe I've answered the   12:44:57
5 question.                                     12:44:58
6 BY MR. BRIDGES:                               12:44:58
7    Q.  You're not going to answer this question?   12:44:58
8         MR. FEE:  He's already answered it twice.   12:45:01
9         MR. BRIDGES:  I need a yes or no.         12:45:03
10        MR. FEE:  No, you don't.  You're not getting   12:45:06
11 a yes or no unless that's all you have to say.  You   12:45:07
12 answer the question however you like.          12:45:08
13        THE WITNESS:  I believe I've answered the   12:45:09
14 question.                                     12:45:09
15 BY MR. BRIDGES:                               12:45:09
16    Q.  Are you taking your lawyer's instruction not   12:45:09
17 to give a further answer?                     12:45:14
18        MR. FEE:  I did not instruct him to do that.   12:45:16
19        MR. BRIDGES:  It sounded like it to me.     12:45:17
20        MR. FEE:  He's already answered that three   12:45:17
21 times now.                                    12:45:18
22 BY MR. BRIDGES:                               12:45:19
23    Q.  Yes or no --                           12:45:19
24        MR. FEE:  No.                           12:45:20
25 BY MR. BRIDGES:                               12:45:20

Page 119

1    Q.  -- did ASTM criticize the public access   12:45:20
2 provisions of the FIMSA legislation?           12:45:23
3         MR. FEE:  You can answer that question   12:45:25
4 however you deem appropriate                  12:45:26
5 BY MR. BRIDGES:                               12:45:28
6    Q.  Yes or no?                             12:45:28
7    A.  My previous answer I explained the unintended   12:45:34
8 potential and its consequences and explored the   12:45:41
9 motivation for why they were interested in this   12:45:41
10 legislation                                   12:45:43
11    Q.  Yes or no?                             12:45:48
12        MR. FEE:  Objection  Asked and answered   12:45:54
13        THE WITNESS:  I have nothing to add   12:45:56
14 BY MR. BRIDGES:                               12:46:02
15    Q.  So what other priorities have you had in   12:46:02
16 determining what standards ASTM should make available   12:46:05
17 for public access?                           12:46:13
18        MR. FEE:  Can you read that question back,   12:46:15
19 please                                       12:46:16
20        (Record read )                         12:46:25
21        MR. FEE:  Objection  Vague as to "public   12:46:25
22 access "                                     12:46:27
23        MR. BRIDGES:  I'll rephrase that           12:46:31
24    Q.  What other priorities have you had in   12:46:32
25 determining what standards ASTM should make available   12:46:33

Page 120

1 in this reading room?                         12:46:36
2    A.  Well, on or about that time, I believe that   12:46:39
3 was when scholars, such as Peter Strauss and ACUS was   12:46:41
4 beginning to -- and OMB was beginning to discuss or   12:46:48
5 review how the public currently has access to   12:46:53
6 standards that are incorporated by reference and what   12:46:57
7 "reasonably available" meant, and a lot of interesting   12:47:01
8 discussion was undergoing in Washington.  So I think   12:47:05
9 it's fair to say that when discussing what documents   12:47:09
10 would have a priority that would -- ASTM would put up   12:47:16
11 for public access, we would look at some of the   12:47:20
12 standards that have been identified to us as having   12:47:24
13 been incorporated by reference, by federal agencies.   12:47:27
14 BY MR. BRIDGES:                               12:47:32
15    Q.  Do you know where to go to find a publicly   12:47:32
16 available list of standards that the federal   12:47:38
17 government has incorporated by reference?      12:47:43
18        MR. FEE:  Objection.  Vague as to time.   12:47:45
19        THE WITNESS:  The resource that I'm most   12:47:51
20 familiar with that is almost exclusively I've looked   12:47:52
21 at is called STANDARDS.GOV.  It's a website that's   12:47:55
22 operated by the National Institute of Standards and   12:48:00
23 Technology and includes a database that they provide   12:48:03
24 to the public as to which standards are incorporated   12:48:07
25 by reference in the U.S. Code of Federal Regulations.   12:48:12

Page 121

31 (Pages 118 - 121)

1 BY MR BRIDGES:                              12:48:17
2    Q    How many ASTM standards do you understand are    12:48:17
3 listed at that location?                        12:48:21
4        MR FEE:  Objection  Vague as to time    12:48:23
5        THE WITNESS:  So there's -- if I'm answering    12:48:34
6 your question exactly as you phrased it to me, how    12:48:35
7 many standards, I believe there's 885 or so ASTM    12:48:38
8 standards that are incorporated in the NIST database    12:48:41
9 BY MR BRIDGES:                              12:48:50
10    Q    How many of those standards are currently    12:48:50
11 available at ASTM's reading room?              12:48:52
12    A    Well, if it's in the NIST database, we built    12:48:55
13 the ASTM reading room using the NIST database as a    12:49:02
14 baseline, and we added in other versions of those same    12:49:06
15 885 ASTM standards that have been also incorporated by    12:49:10
16 reference, just an agency, for instance, might    12:49:17
17 reference the same ASTM standard but reference two    12:49:21
18 different versions of the standard              12:49:25
19        So we counted them in the reading room as    12:49:27
20 well, and I believe our reading room has a volume of    12:49:30
21 13- to 1,400 ASTM standards that are available to the    12:49:32
22 public at no cost on our website for their review    12:49:36
23    Q    Are every one of the 885 standards from the    12:49:41
24 NIST database available in the reading room?    12:49:45
25    A    I wouldn't be able to answer that    12:49:51

                                                Page 122

1 specifically.  Using the NIST database as a guideline,    12:49:53
2 we've incorporated, you know, as much of that as    12:50:02
3 possible in the reading room.  At times I believe we    12:50:04
4 also tried to add a little bit more intelligence to it    12:50:06
5 to determine if an agency was undertaking a subsequent    12:50:09
6 rule-making, and we became aware that the agency had    12:50:18
7 published a new final rule which either changed the    12:50:24
8 reference to an ASTM standard that we had placed in    12:50:27
9 the reading room or added a new ASTM standard to the    12:50:31
10 reading room.                                  12:50:38
11        Then we took steps to add that to the reading    12:50:39
12 room.  It's not an exact science.  We don't pay a    12:50:42
13 vendor to perform the service for us.  We rely either    12:50:48
14 exclusively on the NIST database or we -- it's based    12:50:55
15 on intelligence that we've gathered about new    12:50:58
16 rulemakings.                                  12:51:01
17    Q.    How do you gather intelligence about    12:51:03
18 incorporations of ASTM standards by reference?    12:51:08
19    A.    Well, as much as possible we read the federal    12:51:14
20 register.  I'd like to think we read it on a regular    12:51:17
21 basis, but sometimes it's more infrequent than that.    12:51:20
22 So we will search key terms in the federal register to    12:51:24
23 see if it's mentioning ASTM and if there's a rule that    12:51:30
24 has resulted in the publication of standards.  And    12:51:34
25 sometimes we're ahead of it because ASTM has a policy    12:51:38

                                                Page 123

1 of working with agencies during the notice of proposed    12:51:41
2 rule-making process                            12:51:45
3        Any agency that comes to us and asks us to    12:51:46
4 put a standard up for public review during the public    12:51:50
5 review period of a rule, we work with them to make    12:51:53
6 that possible  So at times we know that a certain    12:51:57
7 number of ASTM standards being in a notice to    12:52:01
8 proposed rulemaking and that the new rule's expected    12:52:04
9 to come out, so we can look for it              12:52:08
10    Q    Does ASTM provide assistance to the    12:52:16
11 government in any way when the government is    12:52:18
12 considering whether to incorporate an ASTM standard by    12:52:20
13 reference?                                    12:52:23
14        MR FEE:  Objection  Vague              12:52:24
15        THE WITNESS:  So we do -- I'm familiar with a    12:52:29
16 couple things that either I do or a member of my staff    12:52:31
17 does  We look to see -- when we're aware that an ASTM    12:52:34
18 standard is going to be used and incorporated by    12:52:39
19 reference in some type of an action, we look to see    12:52:43
20 what version of the standard and what designation of    12:52:46
21 the standard is being used, and I believe on occasion    12:52:50
22 if they're using -- proposing to use an outdated    12:52:54
23 version of a standard, or, quite frankly, we've seen    12:52:59
24 errors where they've attempted to use an ASTM biofuel    12:53:02
25 standard, and rather than referencing D6751 they've    12:53:06

                                                Page 124

1 referenced D56571, gotten the numbers wrong, we will    12:53:09
2 engage with an agency and either make them aware    12:53:14
3 there's a more recent version or make them aware that    12:53:16
4 what they are trying to reference doesn't make a lot    12:53:20
5 of sense                                      12:53:22
6 BY MR BRIDGES:                              12:53:23
7    Q    Does ASTM bring standards to the attention of    12:53:26
8 the federal government with some sort of          12:53:36
9 recommendation that the federal government incorporate    12:53:38
10 the standard by reference?                      12:53:41
11        MR FEE:  Objection  Vague              12:53:43
12        THE WITNESS:  That's not part of what we call    12:53:45
13 engaging federal agencies in Congress  What we will    12:53:49
14 do is work with agencies and work with Congress to    12:53:53
15 make them aware of the voluntary consensus standards    12:53:56
16 that we're developing in any given area that they    12:53:59
17 might have an interest  But the ultimate decision of    12:54:02
18 whether or not to utilize and reference those    12:54:07
19 standards we rarely take positions on, and I can't    12:54:08
20 give you a specific example of a time that we have    12:54:14
21 taken an example on -- taken a position on    12:54:17
22 BY MR BRIDGES:                              12:54:23
23    Q    Do any state governments or municipal    12:54:23
24 governments incorporate ASTM standards by reference?    12:54:26
25        MR FEE:  Objection to form              12:54:30

                                                Page 125

                                        32 (Pages 122 - 125)

```
 1      THE WITNESS:  It's my understanding that      12:54:31
 2 state governments act on a parallel system of      12:54:32
 3 incorporation by reference and that many states may in   12:54:37
 4 fact reference ASTM standards in various state      12:54:41
 5 regulations.                                        12:54:45
 6 BY MR. BRIDGES:                                     12:54:47
 7      Q.  When a state or municipal government      12:54:47
 8 incorporates an ASTM standard by reference -- strike   12:54:53
 9 that.                                               12:54:58
10      Are you aware of any ASTM standards that a    12:55:00
11 state or municipal government has incorporated by   12:55:04
12 reference that the federal government has not       12:55:06
13 incorporated by reference?                          12:55:11
14      MR. FEE:  Objection to form.                   12:55:12
15      THE WITNESS:  That's a very difficult one for   12:55:16
16 us because, to my knowledge, there's nothing that   12:55:17
17 parallels the NIST database for states.  It would --   12:55:20
18 to my knowledge, it would require someone to search 50   12:55:24
19 different states and perhaps use vendors and pay for a   12:55:29
20 service to track that.  So I don't have direct      12:55:33
21 knowledge.  From time to time we do get letters from   12:55:36
22 states about proposed rule-making, saying about their   12:55:40
23 interest in referencing standards.  So I would be more   12:55:43
24 familiar with that.                                 12:55:46
25 BY MR. BRIDGES:                                     12:55:49
                                           Page 126
```

```
 1      Q.  I guess my question is are you aware of any   12:55:49
 2 ASTM standards that a state or municipal government   12:55:52
 3 has incorporated by reference that the federal      12:55:56
 4 government has not incorporated by reference?       12:55:58
 5      MR. FEE:  Objection to form.                   12:56:00
 6      THE WITNESS:  I'm not aware of any.            12:56:06
 7 BY MR. BRIDGES:                                     12:56:09
 8      Q.  You're not aware of a single one?         12:56:09
 9      A.  I'm not aware of any.                      12:56:11
10      Q.  I want to go back and continue the thread of   12:56:31
11 questions about priorities and determining what     12:56:33
12 standards to put in the reading room.               12:56:39
13      A.  Before you ask the next question, I would   12:56:41
14 like to notice you that I would like to take a break   12:56:43
15 at the appropriate point here.                      12:56:49
16      Q.  Okay.  Give me a few more minutes, and we'll   12:56:49
17 take a break for lunch.                             12:56:51
18      A.  That's fine.                               12:56:56
19      Q.  I just want to go back to the topic of     12:56:56
20 priorities you have in determining what standards to   12:56:58
21 place in ASTM's reading room.  Are there any other   12:57:00
22 priorities that you have not discussed?             12:57:03
23      MR. FEE:  Objection.  Vague.                   12:57:05
24      THE WITNESS:  No, not that I'm aware of.  Not   12:57:11
25 that I can think of.                                12:57:14
                                           Page 127
```

```
 1      MR. BRIDGES:  Why don't we take our break      12:57:17
 2 now                                                 12:57:18
 3      MR. FEE:  Okay  Great                          12:57:19
 4      THE VIDEOGRAPHER:  Going off the record at     12:57:20
 5 12:56                                               12:57:21
 6      (A recess was taken from 12:56 p m            13:52:05
 7      to 1:59 p m )                                  14:00:46
 8      THE VIDEOGRAPHER:  We are back on the record   14:00:46
 9 at 13:59                                            14:00:47
10      (Deposition Exhibit 1041 was marked for       14:01:06
11      identification )                               14 01:06
12      MR. BRIDGES:  Mr Grover, I'm handing you      14:01:06
13 Exhibit 1041  This is an E-mail exchange between you   14 01:08
14 and Jeff Grove; is that correct?  Sorry  This is an   14:01:19
15 E-mail exchange -- strike that                      14:01:22
16      Q  Exhibit 1041 is an E-mail exchange between   14:01:24
17 you and John Pace; is that correct?                 14:01:26
18      (The witness reviewed Exhibit 1041 )           14:01:57
19      THE WITNESS:  Yes                              14:01:58
20 BY MR  BRIDGES:                                     14:01:58
21      Q  And Mr Pace is head of publications for     14:01:58
22 ASTM; is that correct?                              14:02:02
23      A  That's correct                              14:02:02
24      (Deposition Exhibit 1042 was marked for       14:02:33
25      identification )                               14 02:33
                                           Page 128
```

```
 1      MR. BRIDGES:  I'm handing you Exhibit 1042.    14:02:33
 2      This is an E-mail from you to Sarah Petre,     14:02:41
 3 who reported to you; is that correct?               14:02:43
 4      (The witness reviewed Exhibit 1042.)          14:03:26
 5      THE WITNESS:  Yes.                             14:03:26
 6 BY MR. BRIDGES:                                     14:03:27
 7      Q.  What does "HF" refer to in Exhibit 1042?   14:03:27
 8      MR. FEE:  Objection.  Calls for speculation.   14:03:35
 9      THE WITNESS:  I'd be speculating.  I don't     14:03:41
10 have a guess.                                       14:03:43
11 BY MR. BRIDGES:                                     14:03:43
12      Q.  You'd have no idea?                        14:03:43
13      MR. FEE:  Same objection.                      14:03:46
14      THE WITNESS:  I don't.                         14:03:48
15 BY MR. BRIDGES:                                     14:03:51
16      Q.  Did you discuss with anybody at ASTM in    14:03:51
17 preparation for your -- strike that.                14:03:55
18      Did you review this E-mail in preparation for   14:03:58
19 your testimony today?                               14:04:00
20      A.  I don't recall, no.  I don't think I       14:04:05
21 discussed this, no.                                 14:04:07
22      Q.  I asked if you reviewed the E-mail in      14:04:12
23 preparation for your testimony today.               14:04:14
24      A.  I did not.  I just reviewed it now.        14:04:16
25      Q.  Does HF, as an acronym, apply to any public   14:04:19
                                           Page 129
```

33 (Pages 126 - 129)

1  relations firms that ASTM uses?            14:04:32
2     A  I think that would be in the scope of        14:04:42
3  attorney-client discussions            14:04:43
4     Q  No, that would not            14:04:45
5        MR  FEE:  Actually, it might  We need to go   14:04:46
6  outside for that            14 04:48
7        MR  BRIDGES:  Going off the record        14:04:52
8        THE VIDEOGRAPHER:  Going off the record at   14:04:53
9  2:04            14:04:57
10       (A recess was taken from 2:04 p m        14:06:30
11    to 2:06 p m )            14:07:47
12       THE VIDEOGRAPHER:  We're going back on the   14:07:49
13  record at 14:06            14:07:50
14       MR  FEE:  I'm going to instruct the witness   14:07:53
15  not to answer any questions regarding what's referred   14:07:54
16  to here as "HF call," and we're going to claw back   14:07:56
17  ASTM102361, and we'll replace it with a redacted   14:08:00
18  version that keeps Item No  2 of this E-mail   14:08:04
19  unredacted            14:08:10
20    MR  BRIDGES:  It keeps No  2 unredacted?   14:08:11
21    MR  FEE:  Yes            14:08:13
22    MR  BRIDGES:  I do have a couple of voir dire   14:08:15
23  questions on this            14:08:17
24    Q  Does HF -- is that a mistake for "FH"?   14:08:18
25    MR  FEE:  Objection            14:08:21

Page 130

1        I'm going to instruct you not to answer that   14:08:21
2  question.  I instruct you not to answer.   14:08:23
3        THE WITNESS:  Okay.            14:08:29
4        MR  BRIDGES:  Mr  Fee, did ASTM provide in   14:08:31
5  any privilege log, any records of communications with   14:08:38
6  Fleishman Hillard?            14:08:42
7        MR  FEE:  I have no idea.            14:08:43
8        MR  BRIDGES:  If it wishes to protect   14:08:45
9  information about communications regarding Fleishman   14:08:50
10  Hillard, we would expect to see that on a privilege   14:08:54
11  log.            14:08:56
12       MR  FEE:  Well, we'll certainly give you a   14:08:56
13  privilege log at least for this document.   14:08:57
14       MR  BRIDGES:  Well, I'm asking for a   14:08:59
15  privilege log because it strikes me as though -- this   14:09:00
16  suggests to me that there are relevant and responsive   14:09:03
17  communications in discovery in this case with   14:09:06
18  non-lawyers as to which I'm hearing some work product   14:09:15
19  claims are being asserted, and it appears to me that   14:09:19
20  those communications in which the client participated   14:09:25
21  should be on a privilege log.            14:09:36
22    Q  Mr  Grove, has ASTM ever retained the firm of   14:09:42
23  Fleishman Hillard?            14:09:48
24       MR  FEE:  Objection.            14:09:50
25       I'll instruct you not to answer to the extent   14:09:51

Page 131

1  that your answer would reveal any retention of any   14:09:53
2  firm that was at the direction of counsel in   14:09:56
3  connection with litigation.  Excluding those   14:09:58
4  retentions, you can disclose any others.   14:10:02
5        THE WITNESS:  Based on that direction, I'm   14:10:07
6  unable to answer your question.            14:10:09
7  BY MR. BRIDGES:            14:10:12
8     Q  Do you know whether American Petroleum   14:10:12
9  Institute had retained Fleishman Hillard?   14:10:14
10       MR  FEE:  Objection.  Calls for speculation.   14:10:17
11       THE WITNESS:  I don't know.            14:10:19
12       (Deposition Exhibit 1043 was marked for   14:11:05
13       identification.)            14:11:05
14  BY MR. BRIDGES:            14:11:05
15    Q  Mr. Grove, do you recall having seen   14:11:05
16  Exhibit 1043 before?            14:11:08
17       (The witness reviewed Exhibit 1043.)   14:11:17
18       THE WITNESS:  This is not a document that   14:11:17
19  I've seen that I recall.            14:11:18
20  BY MR. BRIDGES:            14:11:21
21    Q  It was produced to us by ASTM.  Do you know   14:11:21
22  the circumstances in which ASTM possessed this   14:11:26
23  document?            14:11:31
24       MR. FEE:  Objection.  Calls for speculation.   14:11:32
25  It's beyond the scope of his designation.   14:11:34

Page 132

1        THE WITNESS:  I don't.            14:11:36
2  BY MR. BRIDGES:            14:11:40
3     Q  Does this document pertain to incorporations   14:11:40
4  by reference?            14:11:42
5        MR. FEE:  Read the document to answer that   14:11:48
6  question.            14:11:49
7        (The witness further reviewed Exhibit 1043.)   14:12:04
8  BY MR. BRIDGES:            14:13:07
9     Q  Do you need more time to determine if this   14:13:07
10  relates to incorporation --            14:13:09
11    A.  Just about finished.            14:13:11
12       (The witness further reviewed Exhibit 1043.)   14:13:14
13       THE WITNESS:  Great.  I'm sorry.  Could you   14:13:14
14  repeat it?            14:13:19
15  BY MR. BRIDGES:            14:13:21
16    Q  Does this document pertain -- strike that.   14:13:21
17       Does this document pertain to incorporation   14:13:24
18  by reference?            14:13:26
19       MR. FEE:  Objection.  Vague.  The document   14:13:27
20  speaks for itself.            14:13:30
21       THE WITNESS:  My understanding of the   14:13:37
22  article, it's about the relationship between building   14:13:38
23  codes and standards.  So I don't consider that   14:13:43
24  incorporation by reference.            14:13:47
25  BY MR. BRIDGES:            14:14:02

Page 133

34 (Pages 130 - 133)

1    Q.  Do you know who the author of that document   14:14:02
2  is?                                         14:14:04
3    A.  I do not.                              14:14:06
4    Q.  Do you know what the publication is that's   14:14:07
5  indicated at the bottom?                     14:14:09
6    A.  I'd speculate that it's an architectural   14:14:13
7  magazine based on the name.                  14:14:23
8        (Deposition Exhibit 1044 was marked for   14:14:58
9        identification.)                       14:14:58
10       MR. BRIDGES:  I'm handing you Exhibit 1044.   14:14:59
11   Q.  Do you recognize this document?        14:15:15
12       (The witness reviewed Exhibit 1044.)   14:15:38
13       THE WITNESS:  I do.                    14:15:38
14  BY MR. BRIDGES:                             14:15:38
15   Q.  What material is blacked out at the top of   14:15:39
16  Page 1044?                                  14:15:43
17       MR. FEE:  Objection.  Calls for speculation.   14:15:44
18       To the extent that would require you to   14:15:46
19  disclose any privileged information, I would instruct   14:15:47
20  you not to answer that.                     14:15:49
21       THE WITNESS:  And I don't know.        14:15:54
22  BY MR. BRIDGES:                             14:15:57
23   Q.  So I have to say I'm curious as to why   14:15:57
24  something was blacked out because this is an E-mail   14:15:59
25  between you and people at three other organizations;   14:16:05
                                              Page 134

1  correct?  Maureen Brodoff, Lorraine Carli and Joseph   14:16:13
2  Wendler are not within ASTM's organization; is that   14:16:14
3  correct?                                    14:16:18
4        MR. FEE:  Objection.  Vague.  Compound.   14:16:18
5        THE WITNESS:  Correct.                 14:16:22
6  BY MR. BRIDGES:                             14:16:23
7    Q.  And none of them was an attorney for ASTM; is   14:16:23
8  that correct?                               14:16:26
9        MR. FEE:  Objection.  Calls for a legal   14:16:27
10  conclusion.  Calls for speculation.  Beyond the scope   14:16:28
11  of his designation.                        14:16:32
12       THE WITNESS:  My understanding is that   14:16:36
13  Maureen Brodoff is an attorney and acts as an attorney   14:16:38
14  for ASME -- excuse me, for NFPA.            14:16:42
15  BY MR. BRIDGES:                            14:16:46
16   Q.  No.  I'm asking did any of those three   14:16:46
17  persons, Ms. Brodoff, Ms. Carli, and Mr. Wendler act   14:16:48
18  as a lawyer for ASTM, to your knowledge?    14:16:51
19       MR. FEE:  Same objections.             14:16:54
20       THE WITNESS:  Not to my knowledge.     14:16:56
21  BY MR. BRIDGES:                            14:16:57
22   Q.  On July 21, 2011, was ASTM considering filing   14:16:57
23  a lawsuit against Public Resource or Carl Malamud?   14:17:04
24       MR. FEE:  Objection.  I instruct you not to   14:17:10
25  answer that question.                      14:17:11
                                              Page 135

1        THE WITNESS:  That would relate to --   14:17:13
2        MR. FEE:  I instruct you not to answer that   14:17:15
3  question.                                   14:17:16
4        MR. BRIDGES:  Can I get a representation from   14:17:17
5  counsel that this document was in anticipation of   14:17:19
6  litigation against Public Resource?          14:17:22
7        MR. FEE:  I'd have to see what's underneath   14:17:24
8  there to be able to say anything.            14:17:26
9        MR. BRIDGES:  Someone on your team redacted,   14:17:29
10  and I'd like an answer to that at our next break,   14:17:31
11  please.                                    14:17:32
12       MR. FEE:  That's not going to happen.   14:17:32
13       MR. BRIDGES:  Well, then we're going to   14:17:33
14  reserve the right to recall Mr. Grove back for further   14:17:34
15  question because this appears to be a wrongful   14:17:37
16  redaction to me at first blush.             14:17:40
17       MR. FEE:  It doesn't appear that way to me   14:17:42
18  but...                                     14:17:47
19  BY MR. BRIDGES:                            14:17:52
20   Q.  Mr. Grove, the underlying E-mails from Emily   14:17:52
21  Bremer, she's someone we discussed earlier who worked   14:17:57
22  for the administrative conference of the    14:18:00
23  United States; correct?                     14:18:03
24       MR. FEE:  Objection.  Calls for speculation.   14:18:05
25       THE WITNESS:  Yes.                     14:18:08
                                              Page 136

1  BY MR. BRIDGES                              14:18:12
2    Q.  What would you put in a cover E-mail to   14:18:12
3  persons at other organizations in July 21, 2011 that   14:18:14
4  would require a redaction in this case?  Do you know?   14:18:22
5        MR. FEE:  Objection.  Calls for speculation.   14:18:25
6        To the extent your answer to that question   14:18:25
7  would require you to disclose any communications in   14:18:28
8  anticipation of litigation or attorney-client   14:18:31
9  communications, I would instruct you not to answer.   14:18:33
10  If you have an answer otherwise, you can go ahead and   14:18:35
11  answer.                                    14:18:38
12       THE WITNESS:  And I don't recall.       14:18:40
13       (Deposition Exhibit 1045 was marked for   14:19:29
14       identification.)                       14:19:29
15  BY MR. BRIDGES:                            14:19:30
16   Q.  Mr. Grove, have you seen Exhibit 1045 before?   14:19:30
17   A.  I'm familiar with parts of the E-mail that I   14:19:41
18  was -- sent to me.                          14:19:44
19   Q.  You see in the middle Mr. Thomas sent a   14:19:46
20  message saying, "Dear exec members," and the   14:19:50
21  addressees of that E-mail are above the squiggly line   14:19:53
22  in the middle of the page.  Do you see that?   14:20:00
23   A.  I do.                                  14:20:03
24   Q.  Seeing that, do you understand what Mr. --   14:20:04
25  what the reference to "exec members" meant?   14:20:08
                                              Page 137

35 (Pages 134 - 137)

1     MR. FEE:  Objection.  Calls for speculation.    14:20:13
2     THE WITNESS:  I'd speculate that he's    14:20:16
3  referring to members of our board of directors that    14:20:18
4  served on the executive committee.    14:20:22
5  BY MR. BRIDGES:    14:20:26
6     Q.  And do you recognize the names in the "To"    14:20:26
7  field of that E-mail in the middle of the page as    14:20:28
8  members of ASTM's board of directors?    14:20:32
9     A.  At that time, yes.    14:20:38
10     Q.  And was Mary McKiel at the time on the board    14:20:40
11  of directors of ASTM?    14:20:43
12     A.  Yes.    14:20:46
13     Q.  Mr. Thomas referred in his E-mail to being    14:20:50
14  involved in discussions with DIN regarding strategy    14:20:54
15  and next steps.  Do you see that?    14:20:58
16     A.  I see that.    14:21:02
17     Q.  What is DIN?    14:21:03
18     MR. FEE:  Objection.  Calls for speculation.    14:21:06
19     THE WITNESS:  I believe that that would refer    14:21:10
20  to the national standards body of Germany, known as    14:21:12
21  DIN.    14:21:16
22  BY MR. BRIDGES:    14:21:16
23     Q.  What interest does ASTM have in being    14:21:18
24  involved in discussions with the national standards    14:21:21
25  body of Germany regarding strategy and next steps in    14:21:24
Page 138

1  not to disclose that portion of your -- of the answer    14:22:47
2  But anything else, you could disclose    14:22:50
3     THE WITNESS:  That would fall outside of my    14:22:53
4  scope of government relations and would be more of a    14:22:55
5  legal issue    14:22:57
6  BY MR  BRIDGES:    14:23:01
7     Q  Are you saying that this is a legal issue and    14:23:01
8  not a government relations issue in that reference?    14:23:03
9     MR. FEE:  Objection  Calls for speculation    14:23:06
10     THE WITNESS:  It's not a government relations    14:23:09
11  issue that I'm familiar with    14:23:10
12  BY MR  BRIDGES:    14:23:14
13     Q  Who else would be familiar with whether it is    14:23:14
14  a government relations issue?    14:23:16
15     MR. FEE:  Objection  Calls for speculation    14:23:18
16     THE WITNESS:  Our attorney, Tom O'Brien    14:23:27
17  BY MR  BRIDGES:    14:23:30
18     Q  Does Mr  O'Brien work in the field of    14:23:30
19  government relations apart from legal issues?    14:23:36
20     MR. FEE:  Objection  Calls for speculation    14:23:39
21  It's beyond the scope of his designation as well    14:23:41
22     THE WITNESS:  To my knowledge, no  Tom works    14:23:45
23  on legal issues, and I work on government relations    14:23:47
24  issues    14:23:51
25  BY MR  BRIDGES:    14:23:53
Page 140

1  relation to Carl Malamud?    14:21:31
2     MR. FEE:  Objection.  Calls for speculation.    14:21:33
3  Vague.  Ambiguous.    14:21:39
4  BY MR. BRIDGES:    14:21:42
5     Q.  If any.    14:21:42
6     A.  I would -- I would think that that involves a    14:21:46
7  legal issue.  It's the only -- I'm not aware of    14:21:48
8  consulting with DIN on strategy.    14:21:54
9     Q.  Are you saying it refers to a DIN legal    14:21:57
10  issue?    14:22:00
11     A.  It could.    14:22:03
12     Q.  It does?    14:22:04
13     MR. FEE:  Objection.  Calls for speculation.    14:22:06
14     THE WITNESS:  I'm just not certain.    14:22:09
15  BY MR. BRIDGES:    14:22:11
16     Q.  Are you aware that DIN has filed a lawsuit    14:22:11
17  against Mr. Malamud's organization?    14:22:13
18     A.  I'm not aware of that.    14:22:19
19     Q.  In your government relations role, what    14:22:24
20  understanding do you have about discussions of ASTM    14:22:29
21  with DIN regarding strategy as mentioned in this    14:22:35
22  E-mail?    14:22:40
23     MR. FEE:  Objection.    14:22:41
24     To the extent your understanding is based    14:22:42
25  upon counsel -- legal counsel, I would instruct you    14:22:45
Page 139

1     Q  Ms  McKiel, at the top of the E-mail thread    14:23:53
2  says, "I believe the ASTM strategy to this point has    14:23:58
3  proven best "  What do you understand "the ASTM    14:24:05
4  strategy" in the context of this E-mail thread, to    14:24:09
5  have been?    14:24:14
6     MR. FEE:  Objection  Calls for speculation    14:24:16
7     To the extent you have an understanding of    14:24:17
8  the strategy based on legal communications, I'm    14:24:18
9  instructing you not to disclose those  If you have an    14:24:21
10  independent understanding of an ASTM strategy and have    14:24:24
11  some idea what Ms  McKiel is referencing here, you can    14:24:27
12  answer    14:24:30
13  BY MR  BRIDGES:    14:24:31
14     Q  Well, I'm also asking you in your role as a    14:24:31
15  representative of ASTM for purposes of this    14:24:34
16  deposition    14:24:34
17     MR. FEE:  Which topic do you think this    14:24:34
18  relates to?    14:24:37
19     MR  BRIDGES:  I'll show you during a break    14:24:38
20     MR. FEE:  Okay  Well, I --    14:24:41
21     MR  BRIDGES:  I'm not going to take    14:24:41
22  deposition time to go through it    14:24:42
23     MR. FEE:  I think it's beyond the scope of    14:24:44
24  his deposition    14:24:46
25     But you can answer to the extent you know and    14:24:47
Page 141

36 (Pages 138 - 141)

1 won't disclose privileged communications.            14:24:48
2        THE WITNESS: I mean, once again, I'm not in   14:24:52
3 this communication chain between Jim and the executive 14:24:52
4 committee, and it's not a government relations issue   14:24:56
5 I'm working on.                                        14:24:59
6 BY MR. BRIDGES:                                        14:25:00
7     Q. So you did not interpret the ASTM strategy     14:25:00
8 that's mentioned in that E-mail to be a government     14:25:03
9 relations strategy?                                    14:25:06
10       MR. FEE: Objection. Calls for speculation.     14:25:08
11       THE WITNESS: I don't.                          14:25:10
12    (Deposition Exhibit 1046 was marked for            14:25:58
13    identification.)                                   14:25:58
14       MR. BRIDGES: I'll show you Exhibit 1046.        14:25:59
15    Q. Have you seen this document before?            14:26:03
16       (The witness reviewed Exhibit 1046.)           14:26:25
17       THE WITNESS: So the world justice project,     14:26:25
18 the origination of the E-mail, which I received, yes,  14:26:27
19 I believe I reviewed that document. But from beyond    14:26:30
20 that point in the E-mail chain, I do not have          14:26:35
21 recollection of being involved in this.               14:26:38
22 BY MR. BRIDGES:                                        14:26:41
23    Q. Did you review this document in preparation    14:26:41
24 to testify today?                                      14:26:44
25    A. I did not.                                       14:26:50
                                                    Page 142

1    Q. Who at ASTM would have the most knowledge      14:26:53
2 about the content on the front page of Exhibit 1046?   14:26:56
3       MR. FEE: Objection. Vague. Calls for           14:27:01
4 speculation.                                            14:27:04
5       THE WITNESS: Well, my understanding is that    14:27:13
6 this mentions litigation and copyright. I would think  14:27:15
7 it would be legal counsel, Tom O'Brien.                14:27:19
8 BY MR. BRIDGES:                                        14:27:26
9    Q. Who is the Steele, S-t-e-e-l-e, that the       14:27:26
10 first line refers to?                                  14:27:30
11       MR. FEE: Objection. Calls for speculation.     14:27:32
12       THE WITNESS: I would speculate that it would   14:27:35
13 be Rob Steele, who's the secretary general of ISO at   14:27:37
14 this time.                                             14:27:42
15 BY MR. BRIDGES:                                        14:27:50
16    Q. On the third line of Mr. Thomas' E-mail is     14:27:50
17 the sentence, "To date, all of Carl's posting have not 14:27:54
18 had a measurable impact on our finances." Do you       14:27:58
19 that?                                                  14:28:04
20    A. I do see that.                                   14:28:04
21    Q. Was that your understanding at the time?      14:28:05
22    A. January 2013. I'm not aware that we did an    14:28:14
23 analysis that I would be able to comment on based at   14:28:20
24 that point of time.                                    14:28:26
25    Q. What do you understand to have been the basis 14:28:30
                                                    Page 143

1 of Mr. Thomas' statement in that sentence?             14:28:32
2       MR. FEE: Objection. Calls for speculation.     14:28:35
3       THE WITNESS: I understand that there's been    14:28:37
4 an impact and a drag on ASTM's revenues due to        14:28:39
5 confusion in business execution issues due to the fact 14:28:44
6 that some of our standards are now available outside   14:28:49
7 of our licensed distributors and outside of being      14:28:53
8 directly available from ASTM.                          14:28:58
9    Q. So Mr. Thomas was lying in that statement?    14:29:02
10       MR. FEE: Objection. Mischaracterizes his       14:29:07
11 testimony.                                             14:29:07
12       MR. BRIDGES: I'll withdraw it.                 14:29:08
13    Q. You didn't answer my question, Mr. Grove.     14:29:08
14    A. Okay.                                           14:29:10
15    Q. My question is what do you understand to have 14:29:11
16 been the basis of Mr. Thomas' statement in that       14:29:14
17 sentence?                                              14:29:17
18       MR. FEE: Objection. Calls for speculation.    14:29:17
19       THE WITNESS: I wouldn't be able to answer      14:29:20
20 that. I apologize.                                     14:29:20
21 BY MR. BRIDGES:                                        14:29:24
22    Q. When did ASTM first notice a measurable       14:29:24
23 impact on its finances from the activities of         14:29:27
24 Mr. Malamud and Public Resource?                      14:29:30
25       MR. FEE: Objection. Vague.                     14:29:32
                                                    Page 144

1       THE WITNESS: Again, I don't have direct        14:29:39
2 knowledge of such impact                              14:29:42
3 BY MR. BRIDGES:                                        14:29:48
4    Q What other knowledge do you have other than    14:29:48
5 direct knowledge?                                      14:29:51
6       MR FEE: Same objection                         14:29:52
7       THE WITNESS: So to date, I'm aware, based on   14:29:53
8 conversations with our vice president for sales and    14:29:57
9 publications, that the act of putting our standards    14:29:59
10 into the public domain has caused a drag on revenue    14:30:04
11 for ASTM, which has complicated business execution,   14:30:08
12 which has produced some harm to ASTM                   14:30:14
13 BY MR BRIDGES:                                        14:30:25
14    Q The vice president of sales and publications   14:30:25
15 is John Pace; is that correct?                         14:30:26
16    A That's correct                                   14:30:28
17    Q Tell me everything you remember about those    14:30:28
18 conversations  When did you have those conversations?  14:30:31
19    A Yesterday                                        14:30:37
20    Q Did you have any conversations before          14:30:43
21 yesterday on that topic?                               14:30:45
22    A Not that I recall                                14:30:49
23    Q When is the first time you learned of a drag   14:30:54
24 on revenue for ASTM caused by either Mr Malamud or a  14:30:58
25 Public Resource? Was it yesterday?                     14:31:05
                                                    Page 145

37 (Pages 142 - 145)

1    A  I wouldn't be able to give you a specific          14:31:16
2    date, but I understand that that's been the impact to    14:31:18
3    date just through communications and just generally     14:31:20
4    being a member of senior staff at ASTM              14:31:25
5    Q  When is the first time you learned of a drag       14:31:29
6    on revenue for ASTM caused by either Mr Malamud or a   14:31:31
7    Public Resource?                              14:31:37
8        MR FEE:  Objection  Asked and answered          14:31:38
9    Vague                                    14:31:41
10       THE WITNESS:  The first time I've learned of     14:31:53
11   it is probably in the last year                    14:31:54
12   BY MR BRIDGES:                             14:31:58
13   Q  How did you learn of it?                      14:31:58
14   A  Well, I was aware that there was -- some         14:32:03
15   number of our standards have been put into the public  14:32:06
16   domain  I've heard from -- reports from John Pace    14:32:12
17   that this was beginning to have an impact on ASTM, and  14:32:18
18   I just can't recall exactly when that was and in what   14:32:24
19   setting, but it was general knowledge at that point    14:32:27
20   Q  "General knowledge"?                        14:32:30
21   A  My general knowledge                       14:32:31
22   Q  Who else had that general knowledge within      14:32:33
23   ASTM?                                    14:32:35
24       MR FEE:  Objection  Vague                  14:32:36
25       THE WITNESS:  I would assume Jim Thomas        14:32:41

Page 146

1    Q.  Why not?                               14:33:44
2        MR. FEE:  Same objection.  Calls for expert     14:33:47
3    testimony.                                 14:33:48
4        THE WITNESS:  It's hard to quantify.          14:33:50
5    BY MR. BRIDGES:                            14:33:52
6    Q.  Why is it hard to quantify?                  14:33:52
7        MR. FEE:  Same objection.                   14:33:56
8        THE WITNESS:  You'd be speculating based on    14:33:57
9    lost sales.                                 14:33:58
10   BY MR. BRIDGES:                            14:34:00
11   Q.  Okay.  What's the evidence of lost sales?       14:34:00
12       MR. FEE:  Same objection.                   14:34:03
13       THE WITNESS:  So based on my conversation      14:34:06
14   with John Pace, the time that's spent in executing    14:34:08
15   business with customers and with members of the public  14:34:12
16   who are confused or misled to believe that these are   14:34:15
17   the official ASTM standards that are available causes  14:34:18
18   a drag in a time on him and his staff from being able  14:34:27
19   to execute the types of distribution in sales        14:34:31
20   agreements that allow us to fund our enterprise.     14:34:37
21   BY MR. BRIDGES:                            14:34:42
22   Q.  It sounds as though what Mr. Pace described     14:34:42
23   to you was an investment of time dealing with members  14:34:44
24   of the public who were confused or misled.  Is that   14:34:58
25   one component of the harm that ASTM has suffered?    14:35:05

Page 148

1    BY MR. BRIDGES:                            14:32:47
2    Q.  Who else?                              14:32:47
3    A.  I would assume Tom O'Brien.               14:32:49
4    Q.  Who else?                              14:32:52
5    A.  I'd be purely speculating beyond that.         14:32:57
6    Q.  Whom did you consult with to prepare yourself   14:33:00
7    for testimony today about the harms to ASTM from the  14:33:03
8    defendant's activities?                        14:33:06
9        MR. FEE:  Objection.  Asked and answered.      14:33:08
10       THE WITNESS:  As I stated earlier, John Pace.   14:33:10
11   BY MR. BRIDGES:                            14:33:15
12   Q.  Anybody else?                           14:33:15
13   A.  Tom O'Brien was there, or has been involved.   14:33:16
14   Q.  Did he furnish you information for your        14:33:18
15   testimony today?                            14:33:20
16   A.  No.                                  14:33:21
17   Q.  Who else?                              14:33:22
18   A.  That would be it.                         14:33:25
19   Q.  How many dollars has ASTM lost because of the  14:33:31
20   activities of defendants?                       14:33:33
21       MR. FEE:  Objection.  Calls for expert         14:33:34
22   testimony.                                 14:33:37
23       THE WITNESS:  At this time, to my knowledge,   14:33:39
24   we're not able to quantify the loss.               14:33:40
25   BY MR. BRIDGES:                            14:33:44

Page 147

1        MR. FEE:  Objection  Calls for expert          14:35:08
2    testimony  Mischaracterizes his testimony           14:35:09
3    BY MR BRIDGES:                             14:35:13
4    Q  I'm just asking to explore the testimony        14:35:13
5    A  That might be one  Correct                   14:35:16
6    Q  Well, what sales does ASTM believe did not      14:35:21
7    occur because of the activities of defendants in this   14:35:28
8    case?                                    14:35:32
9        MR. FEE:  Objection  Calls for expert          14:35:33
10   testimony                                 14:35:34
11       THE WITNESS:  It's my understanding that       14:35:35
12   something like 88,500 accesses have been made to some  14:35:38
13   of the documents that have been put in the public     14:35:43
14   domain, and my conversations with John Pace indicate   14:35:48
15   that it's reasonable to assume that some of those     14:35:52
16   88,500 downloads of information that's in the public   14:35:55
17   domain would have been captured by ASTM under our    14:36:06
18   distribution and sales possibilities                14:36:11
19   BY MR. BRIDGES:                            14:36:14
20   Q  What information does ASTM have about lost      14:36:14
21   sales apart from the number of accesses to the        14:36:17
22   defendant's website and to the Internet archive?      14:36:21
23       MR. FEE:  Objection  Asked and answered        14:36:26
24   Subject of expert testimony                      14:36:29
25       Sorry  Go ahead                          14:36:32

Page 149

Veritext Legal Solutions
866 299-5127

1      THE WITNESS:  I don't have anything        14:36:33
2  additional.                            14:36:35
3  BY MR. BRIDGES:                        14:36:36
4      Q.  And you're here as a corporate representative  14:36:36
5  of ASTM to provide the information available to ASTM  14:36:37
6  on that topic; correct?                  14:36:37
7      MR. FEE:  Objection.  He's here to provide  14:36:39
8  testimony regarding all the topics we identified  14:36:42
9  earlier today.  Of course, we'll have expert testimony  14:36:42
10  on this subject as well.                 14:36:45
11      You can answer.                    14:36:47
12      THE WITNESS:  Yes.                   14:36:50
13  BY MR. BRIDGES:                        14:36:55
14      Q.  So I need to know every other fact you're  14:36:55
15  aware of that pertains to harms that ASTM has suffered  14:36:57
16  from the defendants.  So, please, I'll take as much  14:37:06
17  time as we need.  Tell me every other fact that you're  14:37:08
18  aware of that pertains to the harm that ASTM has  14:37:11
19  suffered as a consequence of the defendants.  14:37:15
20      MR. FEE:  Objection to form.  Objection.  14:37:18
21  Calls for expert testimony.  Objection to the extent  14:37:19
22  it calls for a narrative.  Objection as to vague.  14:37:21
23  Now, we're talking about harms as opposed to financial  14:37:28
24  harms?  That's how I understand the question.  14:37:30
25      Can you read that back just to make sure I  14:37:34

Page 150

1  don't miss anything?                    14:37:34
2      (Record read.)                      14:37:34
3      MR. BRIDGES:  I'm sorry.  Why do we need  14:38:01
4  to -- just if you got objections, go ahead and state  14:38:02
5  them.                                14:38:02
6      MR. FEE:  Oh, I don't want to hear the  14:38:02
7  objections.                          14:38:02
8      (Record read.)                      14:38:02
9      MR. FEE:  I think that's it.  Okay.  14:38:02
10      THE WITNESS:  Well, ASTM is known globally  14:38:03
11  for the quality and technical excellence of its  14:38:05
12  documents because we have a very robust standards  14:38:08
13  development and quality control process.  My  14:38:14
14  understanding, and based on my direct knowledge of  14:38:19
15  viewing certain documents that have been put in the  14:38:21
16  public domain, these documents contain errors.  I've  14:38:22
17  seen standards where tables have been upside down.  14:38:29
18  I've seen tables and columns and rows that don't align  14:38:34
19  properly.                            14:38:39
20      So if there's a real risk to ASTM's  14:38:41
21  reputation and to ASTM's standing in the global  14:38:44
22  economy, if customers or the public or other  14:38:48
23  stakeholders utilize these documents with the  14:38:52
24  expectation and understanding that these were the  14:38:58
25  official ASTM documents, and products and materials  14:39:00

Page 151

1  failed to perform the way that they expected them to.  14:39:04
2  BY MR. BRIDGES:                        14:39:12
3      Q.  What other harms?                 14:39:12
4      MR. FEE:  Same objections.             14:39:15
5      THE WITNESS:  Well, I would be concerned -- I  14:39:19
6  know the important role our standards play in health,  14:39:21
7  life, and safety.  I would certainly be concerned if  14:39:23
8  some of these documents that contain factual and other  14:39:25
9  errors contributed in any way to property damage,  14:39:30
10  injury or loss of life because of the sensitive,  14:39:33
11  important role that our standards play in protecting  14:39:37
12  people in society.                     14:39:40
13  BY MR. BRIDGES:                        14:39:45
14      Q.  What other harms to ASTM?          14:39:45
15      MR. FEE:  Same objections.             14:39:47
16      THE WITNESS:  I can't think of additional  14:39:58
17  harms at this time.                    14:40:00
18  BY MR. BRIDGES:                        14:40:05
19      Q.  Has ASTM heard from any customers that said,  14:40:05
20  "I didn't buy the standard I was planning to buy  14:40:08
21  because I could find it for free on the Internet from  14:40:10
22  Public Resource or the Internet archive"?  14:40:13
23      MR. FEE:  Objection to form.            14:40:16
24      THE WITNESS:  I don't have knowledge of that.  14:40:20
25  BY MR. BRIDGES:                        14:40:22

Page 152

1      Q.  Does anybody at ASTM have knowledge of that  14:40:22
2  type of communication?                  14:40:24
3      MR. FEE:  Objection.  Calls for speculation.  14:40:27
4      MR. BRIDGES:  I'm asking him as a corporate  14:40:31
5  representative.                        14:40:32
6      MR. FEE:  Same objection.              14:40:34
7      THE WITNESS:  So based on my conversations  14:40:35
8  with John Pace, he -- it's my understanding that there  14:40:36
9  is this confusion with certain customers and certain  14:40:43
10  members of the public that has caused this inability  14:40:47
11  to execute sales on a timely basis.  14:40:51
12  BY MR. BRIDGES:                        14:40:54
13      Q.  Well, what customers?             14:40:54
14      A.  I'm not able to answer that at this time.  14:40:59
15      Q.  What members of the public?         14:41:06
16      A.  I'm not able to answer that at this time.  14:41:09
17      Q.  Did Mr. Pace put a dollar amount on his  14:41:17
18  estimate of lost revenues to ASTM as a consequence of  14:41:19
19  the defendants' actions?                 14:41:23
20      MR. FEE:  Objection to the extent that calls  14:41:25
21  for expert testimony.                   14:41:26
22      THE WITNESS:  In my communications with him,  14:41:29
23  no.                                  14:41:31
24  BY MR. BRIDGES:                        14:41:33
25      Q.  As a representative of ASTM at this  14:41:33

Page 153

39 (Pages 150 - 153)

1  deposition, does ASTM have any estimate of the dollar  14:41:37
2  amount of lost revenues to it as a consequence of the  14:41:42
3  defendants' actions?  14:41:45
4      MR. FEE: Objection. Calls for expert  14:41:46
5  testimony. Let me see if that's really a topic that  14:41:48
6  he's been designated on.  14:41:52
7      MR. BRIDGES: He may answer.  14:41:59
8      MR. FEE: Hold on. I'm waiting to see if  14:42:00
9  that's actually a topic he's been designated on.  14:42:01
10      MR. BRIDGES: Make the objections, and if  14:42:08
11  it's superfluous and he hasn't been designated on.  14:42:11
12  I'd like to go ahead and get an answer.  14:42:11
13      MR. FEE: No. If you want to take off the  14:42:12
14  prelude to your question there, then I'm happy to have  14:42:14
15  his answer without the prelude, but if you're going to  14:42:16
16  have --  14:42:16
17      MR. BRIDGES: Okay. Sure.  14:42:16
18      Q. Does ASTM have any estimate of the dollar  14:42:17
19  amount of lost revenues to it as a consequence of  14:42:20
20  defendants' actions?  14:42:23
21      MR. FEE: Objection. Calls for expert  14:42:25
22  testimony.  14:42:26
23      THE WITNESS: Not to my knowledge.  14:42:27
24  BY MR. BRIDGES:  14:42:30
25      Q. Does ASTM have any facts in its possession  14:42:30

Page 154

1  that suggest to ASTM that it has lost money as a  14:42:39
2  consequence of defendants' actions?  14:42:46
3      MR. FEE: Objection. Asked and answered.  14:42:50
4  Calls for expert testimony. Vague.  14:42:51
5      THE WITNESS: Not that I'm aware of.  14:42:57
6  BY MR. BRIDGES:  14:43:05
7      Q. Is ASTM aware of any property damage, injury,  14:43:05
8  or loss of life that has occurred because of the  14:43:10
9  defendants' actions?  14:43:15
10      MR. FEE: Objection. Calls for expert  14:43:17
11  testimony and speculation.  14:43:19
12      THE WITNESS: Fortunately, not at this time.  14:43:22
13  BY MR. BRIDGES:  14:43:26
14      Q. When did you first -- sorry.  14:43:26
15      When did ASTM first become aware of any  14:43:27
16  errors in connection with the posting of ASTM  14:43:31
17  standards by the defendant?  14:43:36
18      A. I'm just not able to give you a time line.  14:43:51
19  I'm not certain.  14:43:53
20      Q. How long ago was it, to your best estimate?  14:43:55
21      MR. FEE: Objection. Asked and answered.  14:43:57
22  Calls for speculation.  14:43:58
23      THE WITNESS: I'm not certain.  14:44:00
24  BY MR. BRIDGES:  14:44:02
25      Q. Was it more than a year ago?  14:44:02

Page 155

1      MR. FEE: Same objections  14:44:04
2      THE WITNESS: I'm not sure  14:44:08
3      MR. FEE: It's beyond the scope his  14:44:08
4  designation as well  14:44:10
5      Go ahead  14:44:11
6      THE WITNESS: I'm not sure, no  14:44:12
7  BY MR. BRIDGES:  14:44:13
8      Q. Was it more than three years ago?  14:44:13
9      MR. FEE: Same objections  14:44:16
10      THE WITNESS: I'm not sure  14:44:17
11  BY MR. BRIDGES:  14:44:18
12      Q. Was it more than two weeks ago?  14:44:18
13      MR. FEE: Same objection  14:44:21
14      THE WITNESS: I'm not sure  14:44:22
15  BY MR. BRIDGES:  14:44:23
16      Q. Do you know whether ASTM had any knowledge of  14:44:23
17  errors in connection with defendants posting of ASTM  14:44:26
18  standards more than a week ago?  14:44:31
19      MR. FEE: Same objection -- objections, I  14:44:35
20  should say  14:44:36
21      THE WITNESS: More than a week ago, I believe  14:44:38
22  so, yes  14:44:39
23  BY MR. BRIDGES:  14:44:40
24      Q. When did you first learn of any errors in  14:44:40
25  defendants' posting of ASTM standards?  14:44:46

Page 156

1      A. I first learned of it by hearing of it in the  14:44:51
2  last year. I first viewed it yesterday.  14:44:53
3      Q. How many standards posted by defendants  14:44:56
4  contain errors?  14:45:00
5      MR. FEE: Objection. Beyond the scope of his  14:45:01
6  designation. Calls for speculation.  14:45:03
7      THE WITNESS: My understanding is that it  14:45:08
8  would be extremely difficult to do a complete  14:45:10
9  analysis, but based on quick analysis, we found  14:45:14
10  significant errors.  14:45:21
11  BY MR. BRIDGES:  14:45:28
12      Q. What are the significant ones?  14:45:28
13      A. To industries that rely on quality  14:45:30
14  information, yes, I would say so.  14:45:32
15      Q. Tell me some of the most significant ones.  14:45:34
16      A. Well, if a table and a chart don't align  14:45:38
17  correctly, the variables, it is displaying false  14:45:42
18  information. That seems like that could be an error.  14:45:44
19      Q. What other errors are really significant in  14:45:49
20  your mind?  14:45:52
21      A. I'm not certain.  14:45:53
22      Q. Can you think of any other significant errors  14:45:54
23  in defendants posting of standards?  14:45:56
24      MR. FEE: Objection. This is beyond the  14:45:58
25  scope of his designation.  14:45:59

Page 157

40 (Pages 154 - 157)

| | |
|---|---|
| 1   But go ahead.                    14:46:00 | 1   Q. Where has ASTM collected all of the errors   14:48:14 |
| 2   THE WITNESS: A table or chart appearing   14:46:02 | 2 because Mr. Malamud in Public Resource would like to   14:48:17 |
| 3 upside down. If someone is flipping through and   14:46:03 | 3 know them as soon as possible? Has ASTM collected all   14:48:20 |
| 4 reading it or displaying it, that's significant to me.   14:46:05 | 4 of the errors in any place so that it can act on them   14:48:23 |
| 5 BY MR. BRIDGES:                    14:46:11 | 5 right away?                    14:48:26 |
| 6   Q. That's a significant error?          14:46:11 | 6   MR. FEE: Objection. Calls for speculation.   14:48:27 |
| 7   A. Yes.                    14:46:12 | 7 Beyond the scope of his designation.          14:48:28 |
| 8   Q. Is that error going to lead to death or   14:46:12 | 8   THE WITNESS: Not to my knowledge, no.   14:48:32 |
| 9 injury to property?                14:46:14 | 9 BY MR. BRIDGES:                    14:48:33 |
| 10   MR. FEE: Objection. Calls for speculation.   14:46:16 | 10   Q. Because I commit to you that Public Resource   14:48:33 |
| 11 Beyond the scope of his designation as well.   14:46:18 | 11 will immediately make any changes that ASTM calls to   14:48:35 |
| 12   THE WITNESS: I don't know.          14:46:21 | 12 its attention. Is that clear to you?          14:48:39 |
| 13 BY MR. BRIDGES:                    14:46:32 | 13   A. Thank you.                14:48:43 |
| 14   Q. And is ASTM really concerned about death or   14:46:32 | 14   Q. Is that clear to you?             14:48:44 |
| 15 injury to property resulting from the defendants   14:46:36 | 15   MR. FEE: Objection. Vague.          14:48:45 |
| 16 posting of standards?                14:46:39 | 16   THE WITNESS: Yes.             14:48:48 |
| 17   MR. FEE: Objection. Vague. Beyond the   14:46:41 | 17 BY MR. BRIDGES:                    14:48:50 |
| 18 scope of his designation. Calls for speculation.   14:46:42 | 18   Q. Do you think that Public Resource has an   14:48:50 |
| 19   THE WITNESS: I'm concerned about it.   14:46:56 | 19 interest in posting standards to the Internet in a way   14:48:52 |
| 20 BY MR. BRIDGES:                    14:46:58 | 20 that will cause death and injury and loss of property?   14:48:57 |
| 21   Q. Are you really concerned about it?    14:46:58 | 21   MR. FEE: Objection.             14:49:01 |
| 22   MR. FEE: Objection. Asked and answered.   14:46:59 | 22 BY MR. BRIDGES:                    14:49:02 |
| 23   THE WITNESS: Yes.             14:47:02 | 23   Q. Is that ASTM's view of Public Resource?   14:49:02 |
| 24 BY MR. BRIDGES:                    14:47:02 | 24   MR. FEE: Objection. Form. Calls for   14:49:06 |
| 25   Q. Does it frighten you?          14:47:02 | 25 speculation. Beyond the scope of his designation.   14:49:08 |
| Page 158 | Page 160 |
| 1   MR. FEE: Objection. Asked and answered.   14:47:05 | 1   THE WITNESS: I'd be concerned about   14:49:11 |
| 2   THE WITNESS: Frighten? It could.   14:47:10 | 2 unintended consequences of posting documents that   14:49:11 |
| 3 BY MR. BRIDGES:                    14:47:17 | 3 aren't technically correct. I don't believe that   14:49:16 |
| 4   Q. Did it frighten you so much to ensure that   14:47:17 | 4 there's a deliberate attempt to harm the public.   14:49:19 |
| 5 somebody notified defendant that these errors needed   14:47:20 | 5 BY MR. BRIDGES:                    14:49:22 |
| 6 immediate correction to preserve life and safety of   14:47:23 | 6   Q. And what steps do you know of that ASTM has   14:49:22 |
| 7 property?                    14:47:26 | 7 taken to protect the public by notifying Public   14:49:26 |
| 8   MR. FEE: Objection. Beyond the scope of his   14:47:27 | 8 Resource of errors in its transcription of standards?   14:49:32 |
| 9 designation. Calls for speculation as to whether or   14:47:29 | 9   A. I'm not certain.             14:49:38 |
| 10 not that actually has happened.          14:47:32 | 10   Q. Who would know the most about that at ASTM?   14:49:41 |
| 11   THE WITNESS: No.             14:47:38 | 11   MR. FEE: Objection. Calls for speculation.   14:49:43 |
| 12   MR. FEE: You can consider this notice now.   14:47:40 | 12 Beyond the scope of his designation.          14:49:44 |
| 13 You guys should check all of your standards that were   14:47:42 | 13   THE WITNESS: It's a legal matter. So I'd   14:49:47 |
| 14 reproduced and make sure they're correct because it   14:47:45 | 14 refer to counsel.                14:49:49 |
| 15 may be dangerous.                14:47:48 | 15 BY MR. BRIDGES:                    14:49:59 |
| 16   MR. BRIDGES: I'm sorry. Are you becoming a   14:47:50 | 16   Q. Does ASTM ever make any errors in its   14:49:59 |
| 17 witness now?                    14:47:51 | 17 standards?                    14:50:03 |
| 18   MR. FEE: No. No. In case you weren't clear   14:47:52 | 18   MR. FEE: Objection. Beyond the scope of his   14:50:03 |
| 19 about that from the deposition of Mr. Malamud, these   14:47:54 | 19 designation. Calls for speculation.          14:50:04 |
| 20 are important standards, you've now heard. You're now   14:47:56 | 20   THE WITNESS: I'm aware that ASTM has a very   14:50:09 |
| 21 on notice, if you weren't on notice before, that you   14:47:59 | 21 rigorous quality control process. I'm not aware of   14:50:11 |
| 22 should go back and make sure they're actually right.   14:48:01 | 22 any errors, but it wouldn't surprise me to hear that   14:50:15 |
| 23   MR. BRIDGES: You know something? We will.   14:48:06 | 23 there might be one.                14:50:18 |
| 24   MR. FEE: I bet you will.          14:48:07 | 24 BY MR. BRIDGES:                    14:50:19 |
| 25   MR. BRIDGES: And that's a really good point.   14:48:09 | 25   Q. One? Would it surprise you if there were   14:50:20 |
| Page 159 | Page 161 |

41 (Pages 158 - 161)

1   more than one error in the ASTM standards?          14:50:24
2       MR. FEE:  Same objections.              14:50:28
3       THE WITNESS:  I'd be speculating.          14:50:31
4   BY MR. BRIDGES:                  14:50:34
5   Q.  Well, you have testified as to what would     14:50:34
6   surprise you.  I'd like to know what would surprise   14:50:34
7   you.                          14:50:35
8       MR. FEE:  Same objections.              14:50:37
9       THE WITNESS:  I'm aware of ASTM's rigorous   14:50:37
10  quality control process and the value of bringing    14:50:40
11  people together under an open, transparent process and  14:50:42
12  the important role that ASTM staff plays in helping to  14:50:47
13  ensure the quality of our documents.  And I would be   14:50:49
14  skeptical that that could be replicated if any steps   14:50:54
15  were bypassed.  So --                  14:50:59
16  BY MR. BRIDGES:                  14:51:03
17  Q.  Would it surprise you for an ASTM standard to   14:51:03
18  have three or more errors in it?          14:51:05
19      MR. FEE:  Same objections.              14:51:08
20      THE WITNESS:  Would it surprise me?  Yes.     14:51:13
21  BY MR. BRIDGES:                  14:51:16
22  Q.  Are you aware of any ASTM standards with     14:51:16
23  three or more errors?              14:51:19
24      MR. FEE:  Same objections.  Just give me a     14:51:21
25  second to object.                  14:51:23

Page 162

1       THE WITNESS:  I'm not personally, no        14:51:25
2   BY MR  BRIDGES:                  14:51:27
3   Q  Are you aware of how ASTM standards are      14:51:27
4   proofread?                      14:51:44
5       MR. FEE:  Objection  Vague            14:51:47
6       THE WITNESS:  Yes, generally            14:51:51
7   BY MR BRIDGES:                  14:51:53
8   Q  How?                      14:51:53
9   A  There's a rigorous process under which at     14:51:54
10  every point in the standards development process    14:51:58
11  there's peer review of the standard and of the      14:52:00
12  document, and as it goes through the process, as it    14:52:05
13  works through the ASTM process, which involves many   14:52:09
14  steps, at the end there's an editor, an ASTM staff     14:52:13
15  that reviews the standard and insures that the       14:52:21
16  document purports to be what the committee intended it  14:52:26
17  for -- for it to be                  14:52:29
18  Q  And do ASTM editors catch every mistake?      14:52:32
19      MR. FEE:  Objection  Calls for speculation   14:52:36
20      THE WITNESS:  I'm not aware of errors, but it  14:52:44
21  wouldn't surprise me if there were some          14:52:47
22  BY MR  BRIDGES:                  14:52:49
23  Q  Does ASTM ever issue errata to its standards?  14:52:49
24      MR. FEE:  Objection  Vague  I think that's   14:52:55
25  also beyond the scope of his designation          14:52:59

Page 163

1       THE WITNESS:  I'm not familiar with the term   14:53:06
2   "errata."                      14:53:07
3   BY MR. BRIDGES:                  14:53:08
4   Q.  Does ASTM ever issue corrigenda to its      14:53:08
5   standards?                      14:53:13
6       MR. FEE:  Objection.  Vague.  Beyond the      14:53:14
7   scope of his designation.              14:53:15
8       THE WITNESS:  I'm not certain.            14:53:20
9   BY MR. BRIDGES:                  14:53:21
10  Q.  Does ASTM ever issue a notice of errors in    14:53:21
11  any of its standards?              14:53:28
12      MR. FEE:  Same objections.              14:53:31
13      THE WITNESS:  I'm not certain.            14:53:32
14  BY MR. BRIDGES:                  14:53:34
15  Q.  What happens if ASTM publishes and          14:53:34
16  distributes a standard that's widely held by persons   14:53:37
17  and then discovers that there is a mistake in the      14:53:40
18  standard?  How does ASTM notify the public?      14:53:43
19      MR. FEE:  Objection.  Calls for speculation.   14:53:45
20  It's beyond the scope of his designation, and      14:53:47
21  compound.                      14:53:50
22      THE WITNESS:  I'm not able to explain that    14:53:52
23  process.                      14:53:53
24  BY MR. BRIDGES:                  14:53:55
25  Q.  Would it harm ASTM's reputation to issue a    14:53:55

Page 164

1   standard with mistakes?              14:53:58
2       MR FEE:  Objection  Calls for expert        14:53:59
3   testimony  It's beyond the scope of his designation   14:54:01
4       THE WITNESS:  I'm not certain            14:54:07
5   BY MR. BRIDGES:                  14:54:09
6   Q  How has ASTM's reputation suffered from the   14:54:09
7   activities of the defendants?              14:54:15
8       MR. FEE:  Objection  Calls for expert        14:54:24
9   testimony                      14:54:25
10      THE WITNESS:  I'm not certain            14:54:28
11  BY MR. BRIDGES:                  14:54:29
12  Q  Have you noticed an effect on ASTM's          14:54:29
13  reputation as a consequence of the defendants'       14:54:32
14  activities?                      14:54:35
15  A  I have not                    14:54:37
16  Q  What instances is ASTM aware of, of people     14:54:44
17  being confused about the relationship between ASTM and  14:54:50
18  the defendant?                  14:54:57
19      MR. FEE:  Objection  Vague  Asked and        14:54:59
20  answered                      14:55 02
21      THE WITNESS:  Based on communications with    14:55:04
22  our sales and publications vice president          14:55:06
23  BY MR  BRIDGES:                  14:55:09
24  Q  What did those communications convey to you?  14:55:09
25  A  That there was some level of confusion in the   14:55:14

Page 165

42 (Pages 162 - 165)

1 marketplace which was impacting business execution.   14:55:18
2   Q.  What was the confusion in the marketplace?   14:55:26
3   A.  Potential customers thought they would no   14:55:32
4 longer need to access documents through ASTM if they   14:55:38
5 were provided at a different place.   14:55:43
6   Q.  Who were those "potential customers"?   14:55:46
7     MR. FEE:  Objection.  Asked and answered.   14:55:51
8     THE WITNESS:  I don't know.   14:55:51
9 BY MR. BRIDGES:   14:55:59
10   Q.  Is it -- did Mr. Pace identify them to you   14:55:59
11 and you've forgotten them?   14:56:02
12   A.  I don't recall.  I don't think so.   14:56:08
13   Q.  Do you recall Mr. Pace identifying any of   14:56:10
14 those potential customers?   14:56:17
15     MR. FEE:  Objection.  Asked and answered.   14:56:19
16     THE WITNESS:  I don't recall.   14:56:21
17 BY MR. BRIDGES:   14:56:22
18   Q.  Did Mr. Pace tell you how many potential   14:56:23
19 customers had that experience?   14:56:25
20   A.  No.   14:56:30
21   Q.  Did Mr. Pace explain to you any   14:56:30
22 characteristics of the potential customers who had   14:56:34
23 that experience?   14:56:36
24     MR. FEE:  Objection to form.   14:56:37
25     THE WITNESS:  No.   14:56:40

Page 166

1 BY MR. BRIDGES:   14:56:41
2   Q.  Did Mr. Pace give you any kind of description   14:56:41
3 of the potential customers who had that experience?   14:56:43
4     MR. FEE:  Objection to form.   14:56:46
5     THE WITNESS:  No.   14:56:49
6 BY MR. BRIDGES:   14:56:52
7   Q.  Are you aware of any documents in ASTM's   14:56:52
8 possession that identify the potential customers who   14:56:55
9 had that experience?   14:57:00
10   A.  No.   14:57:04
11   Q.  Are you aware -- strike that   14:57:05
12     You mentioned potential customers thought   14:57:13
13 that they would no longer need to access documents   14:57:15
14 through ASTM if they were provided with it at a   14:57:18
15 different place.  Apart from that, what other   14:57:21
16 confusion are you aware of, or is ASTM aware of, in   14:57:25
17 the marketplace that impacted business execution?   14:57:29
18     MR. FEE:  Objection to form   14:57:33
19     THE WITNESS:  I can't think of any at the   14:57:40
20 moment.   14:57:41
21 BY MR. BRIDGES:   14:57:52
22   Q.  Does the presence of the ASTM logo and   14:57:52
23 trademarks on documents posted to the Internet by   14:57:57
24 Public Resource cause any harm to ASTM from ASTM's   14:58:06
25 knowledge?   14:58:15

Page 167

1     MR. FEE:  Objection.  Calls for expert   14:58:15
2 testimony.  Vague.   14:58:17
3     THE WITNESS:  Yes.   14:58:22
4 BY MR. BRIDGES:   14:58:24
5   Q.  What harm does it cause?   14:58:24
6   A.  It creates the impression that this is the   14:58:28
7 official ASTM standard when, in fact, it may not be,   14:58:30
8 may contain errors, or it may be a different version   14:58:35
9 than the version that ASTM is currently maintained.   14:58:40
10   Q.  What harm -- explain to me, please, the facts   14:59:04
11 of the kinds of harm that ASTM suffers if the ASTM   14:59:11
12 logo is on an older version than the current version   14:59:22
13 of an ASTM standard and it is posted to the Internet   14:59:30
14 by Public Resource.   14:59:37
15     MR. FEE:  Objection.  May call for expert   14:59:39
16 testimony.  To form as well.   14:59:41
17     Go ahead.   14:59:44
18 BY MR. BRIDGES:   14:59:48
19   Q.  And to be clear, I want to know what harm   14:59:48
20 ASTM suffers from the presence of the logo on that   14:59:49
21 older version that Public Resource has posted.   14:59:53
22     MR. FEE:  Same objections.   14:59:57
23     THE WITNESS:  Well, by going to a source   15:00:00
24 other than ASTM for a document such as this that   15:00:01
25 contains ASTM's logo, I would be concerned that the   15:00:05

Page 168

1 public isn't accessing the most recent version of a   15:00:15
2 standard which may have been revised to address new   15:00:18
3 hazards in the marketplace or state of the artistry   15:00:21
4 practice that needs to be captured.   15:00:24
5 BY MR. BRIDGES:   15:00:34
6   Q.  Do you understand that Public Resource   15:00:34
7 intends to post to the Internet only those ASTM   15:00:38
8 standards that have been incorporated by reference?   15:00:43
9     MR. FEE:  Objection.  Calls for speculation   15:00:45
10 as to Public Resource's intention.   15:00:48
11     THE WITNESS:  I don't fully understand the   15:00:55
12 strategy.   15:00:59
13 BY MR. BRIDGES:   15:01:00
14   Q.  Do you understand that it is Public   15:01:00
15 Resource's practice to post standards only if they are   15:01:01
16 incorporated by reference?   15:01:04
17     MR. FEE:  Objection.  Lack of foundation.   15:01:06
18 Calls for speculation.   15:01:08
19     THE WITNESS:  Based on the documents I've   15:01:14
20 seen that have been posted, it's my understanding that   15:01:16
21 they have been incorporated by reference, yes.   15:01:18
22 BY MR. BRIDGES:   15:01:21
23   Q.  Is it misleading, in your view, to provide to   15:01:21
24 the public an older version of a standard -- of an   15:01:25
25 ASTM standard where that older version is incorporated   15:01:43

Page 169

43 (Pages 166 - 169)

1 by reference?                          15:01:47
2     MR. FEE: Objection. Vague as to whether or    15:01:48
3 not that older version is authentic.       15:01:51
4     THE WITNESS: Yeah. I'm sorry. Could you    15:01:54
5 just repeat that?                       15:01:55
6 BY MR. BRIDGES:                        15:01:57
7     Q. Is it misleading, in your view, to have the    15:01:57
8 ASTM logo on an older version of an ASTM standard   15:02:01
9 where the older version has been incorporated by    15:02:07
10 reference?                             15:02:09
11    MR. FEE: Same objection as to the vagueness.    15:02:11
12    THE WITNESS: My concern would be that to get    15:02:16
13 the most recent version of any document, you more than    15:02:19
14 likely need to come to ASTM or one of our licensed    15:02:27
15 distributors.                           15:02:31
16 BY MR. BRIDGES:                        15:02:32
17    Q. But if somebody is interested in, let's say,    15:02:32
18 a 2008 standard because the 2008 standard has been    15:02:39
19 incorporated by reference but a more recent standard    15:02:42
20 has not been, what is the harm to ASTM from the    15:02:44
21 inclusion of the ASTM logo on that 2008 standard    15:02:51
22 posted by Public Resource?                  15:02:55
23    MR. FEE: Objection. Calls for speculation.    15:02:58
24    THE WITNESS: Since I'm not an attorney and    15:03:01
25 I'm not familiar with the regulatory -- the connection    15:03:04

Page 170

1 between regulations and law, I will share my    15:03:09
2 observation --                          15:03:12
3 BY MR. BRIDGES:                        15:03:14
4     Q. Please do.                        15:03:14
5     A. -- that just because a version of a standard    15:03:15
6 that's in the law might be outdated, that doesn't seem    15:03:18
7 to stop industry from wanting to use the most recent    15:03:26
8 version of the standard.                   15:03:30
9     Q. And is it ASTM's view that it's misleading to    15:03:35
10 have the ASTM logo on anything that's currently    15:03:39
11 available -- strike that.                   15:03:43
12    Is it ASTM's view that it is misleading to    15:03:48
13 display the ASTM logo on standards currently available    15:03:54
14 on the Internet when the standards are not the most    15:04:03
15 recent versions?                        15:04:09
16    MR. FEE: Objection. To the extent you're    15:04:11
17 using "misleading" as a legal term, I object on that    15:04:13
18 ground. I also object to the vagueness of that    15:04:15
19 because it's not clear whether or not the standards    15:04:18
20 you're referencing are authentic or not.    15:04:21
21    MR. BRIDGES: That's coaching the witness,    15:04:23
22 Mr. Fee.                               15:04:24
23    THE WITNESS: Well, that's exactly the point    15:04:25
24 I thought I was making. I don't -- it's the    15:04:26
25 authenticity of the standard as much as the -- more    15:04:31

Page 171

1 than the dated issue.                     15:04:36
2 BY MR. BRIDGES:                        15:04:38
3     Q. The authenticity of the standard didn't come    15:04:38
4 into your answer until you heard counsel's objection.    15:04:41
5     MR. FEE: That's absolutely false. You    15:04:41
6 should read the transcript when you get done with    15:04:43
7 this.                                  15:04:47
8 BY MR. BRIDGES:                        15:04:49
9     Q. Would it harm ASTM less if defendant took the    15:04:49
10 ASTM logo off the standards that it -- sorry, that it    15:04:53
11 posts?                                 15:04:58
12    MR. FEE: Objection. Calls for speculation,    15:04:59
13 and a hypothetical.                      15:05:01
14    MR. BRIDGES: I'd like to know what ASTM --    15:05:05
15    MR. FEE: Calls for an expert opinion,    15:05:08
16 perhaps, as well.                       15:05:09
17    THE WITNESS: I'm not able to answer that    15:05:10
18 question.                              15:05:12
19 BY MR. BRIDGES:                        15:05:14
20    Q. Would ASTM -- well, would you find it    15:05:14
21 problematic -- I'm just curious. Which would you find    15:05:18
22 to be more of a problem to ASTM, for Public Resource    15:05:21
23 to public -- strike that.                   15:05:27
24    What would ASTM, in your view, find to be    15:05:37
25 more of a problem, for Public Resource to post the    15:05:41

Page 172

1 ASTM standards it posts with the ASTM logo or for    15:05:49
2 Public Resource to publish them without the ASTM logo?    15:05:56
3     MR. FEE: Objection To the extent that    15:06:02
4 you're asking for what would be more problematic from    15:06:03
5 a legal perspective --                    15:06:06
6     MR. BRIDGES: Just please state the basis for    15:06:08
7 your objection instead of --                15:06:10
8     MR. FEE: Andrew, do you forget how your    15:06:11
9 deposition objections went? Do you remember your    15:06:12
10 deposition objections the other day? They were much    15:06:14
11 more talkative than this                   15:06:16
12    MR. BRIDGES: Not so                    15:06:18
13    MR. FEE: I'm going to make my objections    15:06:19
14    To the extent you're asking for a legal    15:06:21
15 conclusion with respect to "problematic," I object on    15:06:22
16 that basis I object because it calls for    15:06:25
17 speculation, and it's a hypothetical question    15:06:28
18 BY MR BRIDGES:                         15:06:35
19    Q You may answer                      15:06:35
20    MR. FEE: Hold on I'm not done objecting    15:06:36
21 yet And objection to form                  15:06:38
22    THE WITNESS: And I'm not able to answer that    15:06:49
23 question                              15:06:50
24 BY MR. BRIDGES:                        15:06:53
25    Q In your position at ASTM, does it make a    15:06:53

Page 173

44 (Pages 170 - 173)

1 difference to you whether the ASTM logo is or is not   15:06:58
2 on the standards, the ASTM standards that defendant   15:07:04
3 has posted to the Internet?   15:07:10
4        MR. FEE: Are you asking him personally now   15:07:13
5 for his opinion?   15:07:14
6        MR. BRIDGES: In his position at ASTM.   15:07:15
7        MR. FEE: Then it's beyond the scope of his   15:07:18
8 designation. I object on that basis. All the other   15:07:19
9 objections as last time, as well.   15:07:22
10       And to the extent that your position is based   15:07:23
11 on legal counsel, I would instruct you not to disclose   15:07:26
12 anything based on legal counsel. If you have an   15:07:29
13 answer still, you can go ahead and answer.   15:07:33
14       THE WITNESS: My position would be based on   15:07:36
15 legal counsel.   15:07:37
16       MR. BRIDGES: There's a misunderstanding. I   15:07:41
17 wasn't asking what your position was. I said, "in   15:07:44
18 your position."   15:07:47
19    Q. In your position at ASTM, does it make a   15:07:47
20 difference to you whether the ASTM logo is or is not   15:07:49
21 on the ASTM standards the defendant has posted to the   15:07:52
22 Internet?   15:07:55
23       MR. FEE: I'll make all the same objections,   15:07:57
24 and to the extent whether or not something makes a   15:07:59
25 difference to you is based upon your understanding   15:08:03

Page 174

1 from legal counsel, I would instruct you not to   15:08:05
2 disclose at least that difference.   15:08:11
3       If you have some other difference --   15:08:13
4       THE WITNESS: I don't. This gets into an   15:08:15
5 area of legal matters that I don't have an opinion.   15:08:16
6 BY MR. BRIDGES:   15:08:20
7    Q. Well, I'm not asking for legal positions.   15:08:20
8 I'm not asking for legal theories. I'm asking for the   15:08:22
9 facts that are available to you. What facts are you   15:08:24
10 aware of that suggests that the presence of the ASTM   15:08:28
11 logo and trademarks on the ASTM standards that   15:08:35
12 defendant has posted to the Internet --   15:08:44
13    A. Uh-huh.   15:08:49
14    Q. -- harms ASTM?   15:08:49
15       MR. FEE: Objection. Asked and answered.   15:08:51
16 Calls for expert testimony.   15:08:54
17       THE WITNESS: I believe I answered the   15:08:58
18 question to the best of my ability.   15:08:59
19 BY MR. BRIDGES:   15:09:04
20    Q. I'm asking you -- I asked different questions   15:09:04
21 earlier. I'm asking for what the facts are that   15:09:07
22 you're aware of now.   15:09:10
23       MR. FEE: Hold on. Is that a new question?   15:09:17
24 BY MR. BRIDGES:   15:09:19
25    Q. What facts are you aware of that suggest that   15:09:19

Page 175

1 the presence of the ASTM logo and trademarks on the   15:09:22
2 ASTM standards that defendant has posted to the   15:09:26
3 Internet harms ASTM?   15:09:30
4       MR. FEE: Objection. Asked and answered   15:09:35
5 Calls for expert testimony.   15 09:37
6       THE WITNESS: It creates the perception,   15:09:42
7 problem that been identified by John Pace as a drag   15:09:45
8 on business execution   15:09:48
9       I'd also like to notice we've been going for   15:09:53
10 over an hour  So at an appropriate time   15:09:56
11       MR. BRIDGES: We can take a break if you   15:10:02
12 want  We can do it now   15:10:02
13       THE WITNESS: All right   15:10:06
14       THE VIDEOGRAPHER: We're going off the record   15:10 07
15 at 15:09   15:10:08
16       (A recess was taken from 3:09 p m   15:26:01
17       to 3:26 p m )   15:26 01
18       THE VIDEOGRAPHER: Back on the record at   15:26:02
19 3:26 p m   15:26:05
20 BY MR BRIDGES:   15:26:07
21    Q  Mr Grove, let me direct your attention back   15:26:07
22 to Exhibit 1044 for a minute  It's one with the   15:26:10
23 redacted band across the top  Does this document   15:26:15
24 refresh your recollection as to whether, roughly,   15:26:22
25 around the time of that document or before the   15:26:24

Page 176

1 document you had received a notice internally to   15:26:25
2 preserve all documents for litigation in this case?   15:26:30
3    A. No, it does not.   15:26:36
4    Q. Did you ever receive such a notice to hold   15:26:37
5 documents for litigation?   15:26:43
6       MR. FEE: Hold on a second. Actually, if   15:26:44
7 you'll agree that's not a waiver of anything,   15:26:46
8 I'll let him answer that.   15:26:49
9       MR. BRIDGES: Correct.   15:26:51
10       THE WITNESS: Can you just restate that one   15:26:54
11 more time? I got lost.   15:26:56
12 BY MR. BRIDGES:   15:26:57
13    Q. Did you ever receive such a notice to hold   15:26:57
14 documents for this litigation?   15:26:59
15    A. Could you define "hold."   15:27:01
16    Q. To preserve documents against disposal or   15:27:03
17 destruction for the purposes of this litigation.   15:27:05
18    A. Yes.   15:27:08
19    Q. Do you know when you received that notice?   15:27:09
20    A. I don't recall.   15:27:12
21    Q. Do you know how long ago it was?   15:27:13
22    A. I don't recall specifically, no.   15:27:20
23    Q. Do you recall what year it was?   15:27:21
24    A. Fall of 2013.   15:27:29
25    Q. Okay. Were you aware of the filing of this   15:27:32

Page 177

45 (Pages 174 - 177)

1 lawsuit being pushed back several months from its     15:27:38
2 originally intended timing?     15:27:40
3        MR. FEE: Objection.     15:27:43
4    To the extent that it would require you to     15:27:43
5 disclose communication with counsel, I instruct you     15:27:46
6 not to answer that. If you became aware otherwise,     15:27:47
7 you can go ahead.     15:27:50
8        THE WITNESS: That would involve     15:27:51
9 communication with counsel.     15:27:52
10 BY MR. BRIDGES:     15:27:55
11    Q. Are you aware that plaintiffs relayed that     15:27:55
12 fact to persons outside the plaintiff group?     15:28:01
13        MR. FEE: Objection. Lack of foundation.     15:28:04
14        THE WITNESS: I'm not aware of that.     15:28:08
15        MR. BRIDGES: Let me turn back to     15:28:15
16 Exhibit 1046.     15:28:16
17    Mr. Fee, I think it would be uncontroversial,     15:28:17
18 does ASTM stipulate to the authenticity of     15:28:20
19 Exhibit 1036?     15:28:24
20        MR. FEE: 1046?     15:28:27
21        MR. BRIDGES: Sorry. 1046, you're right.     15:28:28
22 It's a document that ASTM produced with a Bates     15:28:29
23 022620.     15:28:37
24        MR. FEE: I'm hesitant to do that without     15:28:37
25 knowing more about it, but I would imagine that both     15:28:40
Page 178

1 parties would agree to the authenticity of most, if     15:28:43
2 not all, the E-mails they produced. I'd be happy to     15:28:46
3 talk about this or a broader discussion on that topic     15:28:53
4        MR. BRIDGES: Okay. But for present     15:28:53
5 purposes, I needed to ask him questions about this     15:28:54
6        MR. FEE: Well, you're welcome to ask him     15:28:55
7 whatever questions you want about this. I don't want     15:28:56
8 to do that without examining the issue a little bit     15:28:59
9        MR. BRIDGES: Okay.     15:29:04
10    Q. This document -- do you see where Mr. Thomas     15:29:10
11 said at the top of the page, "We are now live with our     15:29:12
12 reading room"?     15:29:14
13    A. I do     15:29:24
14    Q. What do you understand that statement to     15:29:26
15 mean?     15:29:29
16    A. I'd be speculating     15:29:37
17    Q. Go ahead     15:29:46
18        MR. FEE: Objection. Lack of foundation     15:29:50
19        THE WITNESS: I believe he's announcing the     15:29:53
20 fact that we went live with our reading room, which is     15:29:55
21 the place on ASTM's website where we place all ASTM     15:30:00
22 standards that we're aware of that are incorporated by     15:30:06
23 reference     15:30:08
24 BY MR. BRIDGES:     15:30:09
25    Q. Did ASTM go live with its reading room?     15:30:09
Page 179

1    A. We did, in January of 2013.     15:30:14
2    Q. And what do you mean by "going live" with the     15:30:17
3 reading room?     15:30:21
4        MR. FEE: Objection. Lack of foundation.     15:30:22
5        THE WITNESS: It took a lot of work and     15:30:25
6 resources to build the ASTM reading room, and the     15:30:27
7 executive committee, or in this case the chairman of     15:30:34
8 the board, or whatever capacity Mary McKiel may have     15:30:40
9 been at that time. Jim was communicating to her that     15:30:44
10 I believe -- I'm speculating what Jim is     15:30:46
11 communicating, but I believe he was saying the reading     15:30:50
12 room is up and running.     15:30:52
13 BY MR. BRIDGES:     15:30:55
14    Q. So when you say that ASTM went live with the     15:30:55
15 reading room, what you meant was that ASTM's reading     15:30:59
16 room was available for public access; is that correct?     15:31:03
17        MR. FEE: Objection. Vague.     15:31:11
18        THE WITNESS: Yes.     15:31:12
19 BY MR. BRIDGES:     15:31:13
20    Q. And that happened in January 2013?     15:31:13
21    A. Some documents went up before January, but     15:31:16
22 January of 2013 was when we had set a goal working     15:31:20
23 with IT to try to get these documents on-line.     15:31:27
24    Q. How many documents were on-line at the ASTM     15:31:30
25 reading room in January 2013?     15:31:32
Page 180

1    A I believe close to the full collection. So     15:31:36
2 as many as 1,300 ASTM documents     15:31:38
3    Q. What announcements to the press did ASTM make     15:31:43
4 about its reading room going live?     15:31:48
5    A. I don't recall if we made a lot of     15:31:54
6 announcements when it went live in January. I believe     15:31:55
7 we were concerned about if it would function and work,     15:31:58
8 and I think we wanted to get a little experience with     15:32:05
9 it before we broadcast it too widely     15:32:09
10    Q. Did ASTM ever make announcements to the press     15:32:12
11 about the availability of its reading room?     15:32:15
12        MR. FEE: Objection. Vague     15:32:17
13        THE WITNESS: Yes. Through our flagship     15:32:19
14 communication, Standardization News, which we     15:32:21
15 delivered to all of our members and stakeholders. I     15:32:25
16 believe 30,000 individuals receive it six times a     15:32:27
17 year. Mention of it was made in the magazine     15:32:33
18 BY MR. BRIDGES:     15:32:36
19    Q. When was that?     15:32:36
20    A. I'm sorry. I don't know specifically     15:32:37
21    Q. How long after the launch of the reading room     15:32:39
22 did that occur?     15:32:45
23    A. I'm sorry. I don't recall. It was in 2013     15:32:53
24    Q. Did ASTM ever make an announcement to the     15:32:59
25 press about the availability of its reading room     15:33:03
Page 181

46 (Pages 178 - 181)

1 beyond the announcement in Standardization News?   15:33:08

2        MR. FEE:  Objection to form   15:33:13

3        THE WITNESS:  I believe it was also announced   15:33:15

4 at the ASTM annual business meeting in 2013   15:33:16

5 BY MR. BRIDGES:   15:33:22

6    Q.  The "ASTM business meeting" being a meeting   15:33:22

7 of ASTM members and stakeholders?   15:33:25

8    A.  Yes   15:33:28

9    Q.  What other public announcements did ASTM make   15:33:32

10 about the availability of its reading room beyond   15:33:36

11 announcements to its own members and stakeholders?   15:33:40

12    A.  I also believe that there was a reference to   15:33:44

13 it in the ASTM annual report in 2013, which was   15:33:46

14 published in 2014   15:33:50

15    Q.  What else?   15:33:52

16    A.  I make it part of my message, when I'm   15:33:58

17 visiting with stakeholders that I interact with, that   15:34 01

18 ASTM has this reading room   15:34:05

19    Q.  What else?   15:34:07

20    A.  Jim Thomas, our president, mentions it in his   15:34:08

21 interactions on a worldwide basis   15:34:12

22    Q.  With whom?   15:34:16

23    A.  Jim Thomas is a popular figure in the   15:34:19

24 standards community, a well-known expert, and he   15:34:22

25 speaks to many groups  So I wouldn't be able to give   15:34:25

Page 182

1 you specifics without reviewing his calendar.   15:34:30

2    Q.  What else?   15:34:34

3    A.  ASTM has an electronic newsletter. I believe   15:34:40

4 we mentioned it in the newsletter in 2013.   15:34:45

5    Q.  To ASTM's members and stakeholders?   15:34:49

6    A.  Yes.  To anyone interested in subscribing.   15:34:52

7    Q.  What else?   15:34:54

8    A.  We previously discussed some efforts to   15:35:02

9 educate policy makers and stakeholders in Washington   15:35:07

10 through an APCO public relations campaign. I believe   15:35:10

11 the reading room was part of that messaging as well in   15:35:14

12 2013.   15:35:17

13    Q.  What else?   15:35:19

14    A.  That's all I can recall at this time. It had   15:35:28

15 a place on our website as well.   15:35:34

16    Q.  Of all the persons who had access to --   15:35:40

17 sorry. Were you about to mention another?   15:35:43

18    A.  I'm sorry.  We also sent a few letters to   15:35:46

19 agencies informing them of the creation of the reading   15:35:49

20 room.   15:35:54

21    Q.  By "agencies," do you mean government   15:35:57

22 agencies?   15:35:58

23    A.  To government agencies, to the office of   15:35:58

24 management and budget, and to the office of the   15:36:01

25 federal register at NARA, the National Archives   15:36:04

Page 183

1 Records Administration   15:36:09

2    Q.  What else?   15:36:10

3    A.  And I'm sorry  I believe that concludes all   15:36:12

4 that I can recall   15:36:15

5    Q.  How many of those audiences did not already   15:36:16

6 have -- strike that   15:36:27

7        Were there any announcements to the general   15:36:41

8 public apart from what you would call NFPA members and   15:36:45

9 stakeholders?   15:36:53

10        MR. FEE:  I think you misspoke  You said   15:36:54

11 "NFPA"?   15:36:56

12        MR. BRIDGES:  Yes  Excuse me  Thank you   15:36:57

13 I'm still stuck in yesterday   15:36:58

14    Q.  Was there any -- were there any announcements   15:37:01

15 by ASTM of the availability of the reading room to the   15:37:05

16 general public apart from those whom you would call   15:37:11

17 ASTM members and stakeholders?   15:37:18

18        MR. FEE:  Objection  Vague   15:37:21

19        THE WITNESS:  Yeah  I can recall at least on   15:37:23

20 one occasion when -- we don't get a lot of inquiries   15:37:24

21 from the media on this issue, on public access issues,   15:37:27

22 but I do recall Jim Thomas, our CEO, mentioned it to a   15:37:31

23 reporter that was asking us about public access   15:37:38

24 BY MR. BRIDGES:   15:37:43

25    Q.  Which reporter was that?   15:37:43

Page 184

1    A.  I'm sorry  I don't recall   15:37:44

2    Q.  Was it a reporter for the New Republic?   15:37:45

3    A.  Yeah  I'm sorry  I don't recall   15:37:51

4    Q.  Was it a reporter writing an article about   15:37:53

5 this litigation?   15:37:55

6    A.  Could have been   15:37:59

7    Q.  It was; right?   15:38:00

8        MR. FEE:  Objection  Asked and answered   15:38:01

9 BY MR. BRIDGES:   15:38:05

10    Q.  To the best of your knowledge, it was?   15:38:05

11        MR. FEE:  Same answer -- or same objection   15:38:07

12 Sorry   15:38:09

13        THE WITNESS:  Yes  I think that was the   15:38:09

14 interest   15:38:10

15 BY MR. BRIDGES:   15:38:11

16    Q.  So apart from that, what announcements did   15:38:11

17 ASTM make to the general public beyond its members and   15:38:18

18 stakeholders about the availability of its standards   15:38:22

19 on its reading room?   15:38:25

20        MR. FEE:  Objection  Vague   15:38:27

21    A.  I'm very proud of the reading   15:38:29

22 room  It's something that we worked very hard to do   15:38:30

23 to strike this balance  I believe it's an excellent   15:38:33

24 policy, and we've received a lot of accolades for it   15:38:38

25 So we speak about it freely to anyone that wants to   15:38:45

Page 185

47 (Pages 182 - 185)

1 hear about it.                          15:38:47
2 BY MR. BRIDGES:                          15:38:50
3      Q.  And if you're very proud of it, you would    15:38:50
4 want to make sure that as many people hear about it as   15:38:52
5 possible; is that right?                  15:38:54
6           MR. FEE:  Objection.  This is beyond the    15:38:55
7 scope of his designation, among other things.    15:38:57
8      But you can answer.                 15:38:59
9           THE WITNESS:  I have no concerns with anyone   15:39:01
10 knowing about it.                        15:39:03
11 BY MR. BRIDGES:                          15:39:06
12      Q.  And would you want as many people as possible   15:39:06
13 to know about it?                        15:39:08
14           MR. FEE:  Same objection.  It's vague and    15:39:10
15 asked and answered.                      15:39:11
16           THE WITNESS:  Again, I have no concerns.    15:39:15
17 Yes, I would.                            15:39:16
18 BY MR. BRIDGES:                          15:39:18
19      Q.  So did ASTM issue any broad press releases to   15:39:18
20 the general American public about the availability of    15:39:25
21 any of its standards on its reading room?    15:39:27
22           MR. FEE:  Objection.  Vague.           15:39:31
23           THE WITNESS:  I don't have our press        15:39:36
24 releases.  I know we issued 350 press releases a year.   15:39:37
25 So I'm not certain if we announced it through a press    15:39:40
                                          Page 186

1 release.                                 15:39:44
2 BY MR. BRIDGES:                          15:39:47
3      Q.  How many press releases has ASTM issued, to    15:39:47
4 the best of your knowledge, from January 1, 2013 until   15:39:52
5 now?                                     15:39:56
6           MR. FEE:  Objection.  Beyond the scope of his  15:39:57
7 designation.  Calls for speculation.       15:39:59
8           THE WITNESS:  I'd be speculating, but our    15:40:05
9 ASTM press releases cover member recognition and       15:40:11
10 awards in a variety of things.  So I wouldn't be        15:40:16
11 surprised if it was a couple hundred.      15:40:20
12 BY MR. BRIDGES:                          15:40:23
13      Q.  And how many press releases do you recall     15:40:23
14 announced to the general public the availability of     15:40:27
15 ASTM standards on ASTM's reading room?       15:40:30
16           MR. FEE:  Objection.  Beyond the scope of his  15:40:33
17 designation.                             15:40:34
18      You can answer in your personal capacity if    15:40:35
19 you have an answer.                      15:40:38
20           THE WITNESS:  I don't have a number.       15:40:40
21 BY MR. BRIDGES:                          15:41:41
22      Q.  Did ASTM investigate the sources of Public    15:41:41
23 Resource's funding?                      15:41:45
24           MR. FEE:  Objection.  Vague.           15:41:45
25      To the extent that investigation was done in     15:41:46
                                          Page 187

1 connection with this litigation at the request of       15:41:49
2 counsel, I'd instruct you not to disclose that.  If     15:41:50
3 you're aware of some other investigation, you can       15:41:54
4 answer it, although, also, it's beyond the scope of     15:41:56
5 your designation in this case.             15:41:59
6           THE WITNESS:  I have no knowledge of that.   15:42:03
7 BY MR. BRIDGES:                          15:42:04
8      Q.  You have no knowledge of communicating with    15:42:04
9 David Carmel at International Code Council about what    15:42:06
10 you knew about Public Resource's funding?    15:42:10
11           MR. FEE:  Same instruction.  If it requires   15:42:14
12 you to disclose something you learned through -- at     15:42:22
13 the request of counsel, you should not answer it.       15:42:22
14           MR. BRIDGES:  I'm sorry.  I'm just asking    15:42:23
15 about a disclosure.  You're introducing the concept of   15:42:24
16 how he may have learned about something.  But if he's   15:42:30
17 communicating something to a non-party, then I don't    15:42:33
18 see any protection here.                  15:42:37
19           MR. FEE:  That's not what the work product   15:42:41
20 doctrine covers.                         15:42:43
21      If you did something at the direction of        15:42:46
22 counsel in connection with this litigation, I instruct   15:42:48
23 you not to disclose it in connection with answering    15:42:49
24 that question.  If you did it otherwise, you can        15:42:52
25 answer it.                               15:42:54
                                          Page 188

1           THE WITNESS:  Right.  I thought the question   15:42:55
2 was did ASTM investigate the sources of Google funding   15:42:56
3 to which I said, "No."  That would have been a legal    15:43:00
4 matter.                                  15:43:03
5 BY MR. BRIDGES:                          15:43:05
6      Q.  I said have you no knowledge of communicating   15:43:05
7 to David Carmel at International Code Council about     15:43:07
8 what you knew about Public Resource's funding?   15:43:09
9           MR. FEE:  Same instruction with respect to    15:43:13
10 that.                                    15:43:14
11           THE WITNESS:  I may have.              15:43:18
12 BY MR. BRIDGES:                          15:43:21
13      Q.  Why may you have?  What would be your purpose   15:43:21
14 in doing that?                           15:43:25
15           MR. FEE:  To the extent that you are doing it  15:43:26
16 at the direction of counsel, you should not disclose    15:43:27
17 those communications.                    15:43:30
18           THE WITNESS:  I'm not sure.           15:43:35
19 BY MR. BRIDGES:                          15:43:44
20      Q.  Has ASTM, to your knowledge, ever had a       15:43:44
21 contract or an agreement with International Code        15:43:50
22 Council regarding this litigation?         15:43:52
23           MR. FEE:  Objection.  Let me talk to you     15:43:54
24 about privilege issues with respect to this line of    15:43:58
25 questioning.  Let's take a break.          15:44:00
                                          Page 189

48 (Pages 186 - 189)

| | |
|---|---|
| 1    THE WITNESS: Okay.                  15:44:02 | 1    Q. Well, my curiosity is twice now you've used a   15:48:00 |
| 2    THE VIDEOGRAPHER: We're now off the record   15:44:02 | 2  word or a name that I've never used.               15:48:04 |
| 3  at 15:43                              15:44:03 | 3    A. Right.                              15:48:06 |
| 4    (A recess was taken from 3:43 p m          15:45:10 | 4    Q. And that name is "Google." And you used it    15:48:07 |
| 5  to 3:44 p m )                         15:45:10 | 5  just now. And I had asked you if ASTM had           15:48:12 |
| 6    THE VIDEOGRAPHER: We're back on the record   15:45:10 | 6  investigated the sources of Public Resource's funding, 15:48:21 |
| 7  at 15:44                              15:45:10 | 7  and you said, "I have no knowledge of that." So what  15:48:25 |
| 8    MR FEE: Can you read back the question,     15:45:52 | 8  causes you to associate Google with Public Resource in 15:48:28 |
| 9  please                                15:45:53 | 9  your testimony today?                   15:48:31 |
| 10    (Record read )                       15:46:09 | 10    MR. FEE: Hold on.                     15:48:34 |
| 11    MR FEE: I think you can just go ahead and    15:46:09 | 11    THE WITNESS: Oh, sorry.               15:48:36 |
| 12  answer that question                   15:46:11 | 12    MR. FEE: Objection. Vague. It's beyond the   15:48:36 |
| 13    THE WITNESS: To my knowledge, no, we've had  15:46:12 | 13  scope of his designation.                15:48:37 |
| 14  no contact No                         15:46:16 | 14    To the extent that your association is    15:48:39 |
| 15  BY MR BRIDGES:                        15:46:20 | 15  because of communications with counsel, I'd instruct  15:48:41 |
| 16    Q So a few minutes ago, right before the break, 15:46:20 | 16  you not to disclose those. If you have some other    15:48:43 |
| 17  I was asking you a question about what you knew about 15:46:24 | 17  basis for an association, you can go ahead and answer. 15:48:48 |
| 18  Public Resource's funding, and my question was have  15:46:33 | 18    THE WITNESS: Okay. So my recollection is  15:48:53 |
| 19  you no knowledge of communicating to David Carmel at 15:46:35 | 19  based on information -- privileged information with   15:48:55 |
| 20  International Code Council about what you knew about  15:46:40 | 20  counsel.                              15:49:00 |
| 21  Public Resource's funding  Do you recall my asking   15:46:42 | 21  BY MR. BRIDGES:                        15:49:10 |
| 22  that question?                         15:46:44 | 22    Q. What else -- well, I think we've got a     15:49:10 |
| 23    A Could I ask you to go one question before   15:46:45 | 23  serious waiver issue because I've got a document that  15:49:14 |
| 24  that?                                15:46:48 | 24  shows him communicating information from --          15:49:16 |
| 25    Q Before that was "Did ASTM investigate the  15:46:54 | 25    MR. FEE: Well, show him the document.    15:49:19 |
| Page 190 | Page 192 |

| | |
|---|---|
| 1  sources of Public Resource's funding?"        15:46:57 | 1    MR. BRIDGES: I don't need to show him the   15:49:20 |
| 2    A. Okay.                             15:47:01 | 2  document.                             15:49:21 |
| 3    MR. FEE: He didn't ask you a question. Let   15:47:04 | 3    MR. FEE: Then you're not going to be able to  15:49:22 |
| 4  him get to his question.                 15:47:05 | 4  show there's a waiver.                   15:49:24 |
| 5    What is your question?                 15:47:08 | 5    MR. BRIDGES: I can because I can show the   15:49:26 |
| 6    THE WITNESS: Is there no way I can answer    15:47:15 | 6  document outside of the context of this deposition.   15:49:28 |
| 7  that?                                15:47:15 | 7    MR. FEE: All right. Well, if you don't want  15:49:30 |
| 8    MR. FEE: Was something --              15:47:15 | 8  to ask him about it, then don't ask him about it.    15:49:30 |
| 9    THE WITNESS: I think I said something out of  15:47:15 | 9    MR. BRIDGES: It will get to the broader     15:49:30 |
| 10  sequence here to these questions.          15:47:17 | 10  issues of waiver because it will require a much more  15:49:30 |
| 11    MR. FEE: It's up to him if he wants to      15:47:19 | 11  radical effect than just this deposition.          15:49:32 |
| 12  clarify.                              15:47:21 | 12    MR. FEE: Well, whatever document you're     15:49:41 |
| 13  BY MR. BRIDGES:                        15:47:22 | 13  referencing, if it's -- we may want to claw it back  15:49:42 |
| 14    Q. So, anyway, I had asked you about did ASTM  15:47:22 | 14  depending on what it is. But I can't claw it back    15:49:48 |
| 15  investigate the sources of Public Resource's funding. 15:47:30 | 15  if --                                15:49:51 |
| 16  There was an objection, and you said, "I have no     15:47:38 | 16    MR. BRIDGES: I'll go ahead and do it.     15:49:51 |
| 17  knowledge of that."                    15:47:39 | 17  I'm just going to mark as Exhibit 1048 a           15:49:53 |
| 18    A. And I'm sorry. I inadvertently said -- what  15:47:41 | 18  document for the record.                  15:49:59 |
| 19  I should have said was I did not investigate the     15:47:43 | 19    THE WITNESS: I'm sorry. Was there a 1047.   15:50:07 |
| 20  funding of Google. I'm sorry. Of wherever we're     15:47:46 | 20    (Pause in proceedings.)                 15:50:51 |
| 21  going with this, but I was aware --        15:47:50 | 21    MR. BRIDGES: I'm going to hand the witness  15:50:51 |
| 22    MR. FEE: Remember, don't disclose any       15:47:52 | 22  Exhibit 1047, and I have a quick yes or no answer.   15:50:55 |
| 23  instruction you had from counsel.          15:47:54 | 23    Q. Is this an E-mail that you sent to David   15:51:02 |
| 24    THE WITNESS: Okay.                    15:47:56 | 24  Carmel?                               15:51:04 |
| 25  BY MR. BRIDGES:                        15:48:00 | 25    (Deposition Exhibit 1047 was marked for     15:51:08 |
| Page 191 | Page 193 |

49 (Pages 190 - 193)

1    identification.)                         15:51:08
2    (The witness reviewed Exhibit 1047.)        15:51:13
3 BY MR. BRIDGES:                              15:51:13
4    Q.  What's the answer, Mr. Grove?        15:51:13
5    A.  I am trying to understand this E-mail.   15:51:15
6    (The witness further reviewed Exhibit 1047.)   15:51:18
7       MR. REHN:  This is Thane Rehn, counsel for   15:51:18
8 NFPA.  For the record, will you please read the Bates   15:51:30
9 number.                                      15:51:30
10      MR. BRIDGES:  Yes.  ASTM030712.        15:51:30
11   And for the court reporter, Thane Rehn, for   15:51:30
12 the record, "Can I get a Bates number for this   15:51:32
13 document."                                   15:51:33
14      THE WITNESS:  Yes.  This appears to be an   15:51:38
15 E-mail from myself to David Carmel.          15:51:39
16 BY MR. BRIDGES:                             15:51:42
17   Q.  And were you giving him information that you   15:51:42
18 had received from ASTM's counsel?           15:51:44
19   A.  In this case, no, I am not.           15:51:47
20   Q.  What was the source of your information on   15:51:50
21 that E-mail?                                 15:51:53
22   A.  It looks as if there was a Twitter posting by   15:51:54
23 Carl Malamud that was picked up by other members of   15:51:59
24 the standards, including -- that was forwarded to my   15:52:05
25 attention.                                   15:52:08
                                            Page 194

1    Q.  You were giving Mr. Carmel, at the top line   15:52:33
2 of this E-mail, the same information that you believe   15:52:36
3 was in Twitter at the bottom of this E-mail.  Is that   15:52:39
4 your testimony?                              15:52:42
5    A.  Without seeing the Twitter post, I'm unable   15:52:47
6 to answer that.                              15:52:53
7    Q.  So you're unable to answer whether that   15:52:54
8 Twitter post said the Google foundation grant was   15:52:56
9 expired and not extended or renewed?         15:53:01
10   A.  Yeah.  I don't recall what that Twitter post   15:53:03
11 said.                                        15:53:06
12   Q.  So do you now recall whether that Twitter   15:53:07
13 post was the source of the information you gave to   15:53:09
14 Mr. Carmel?                                  15:53:11
15   A.  I don't recall.                       15:53:15
16   Q.  So do you know what the source of information   15:53:16
17 was, as you sit here, of that statement -- of your   15:53:18
18 statement to Mr. Carmel?                     15:53:21
19   A.  No.  I would be speculating.          15:53:25
20   (Deposition Exhibit 1048 was marked for   15:53:46
21   identification.)                          15:53:46
22      MR. BRIDGES:  I've handed you Exhibit 1048.   15:53:48
23   Q.  Is this an E-mail that you received from   15:53:49
24 Sarah Petre?                                 15:53:51
25   (The witness reviewed Exhibit 1048.)        15:54:50
                                            Page 195

1       THE WITNESS:  Yes, it appears to be an E-mail   15:54:50
2 from Sarah Petre.                            15:54:52
3 BY MR. BRIDGES:                             15:54:55
4    Q.  Does ASTM have a more up-to-date document   15:54:55
5 listing the errors in defendants' work that ASTM is   15:55:01
6 aware of?                                    15:55:08
7       MR. FEE:  Objection to the extent any list   15:55:09
8 was compiled at the direction of counsel in connection   15:55:11
9 with this litigation.                        15:55:13
10   I would instruct you not to disclose that.   15:55:15
11 You could answer otherwise.                  15:55:17
12      THE WITNESS:  I'm not aware of it, no.   15:55:19
13 BY MR. BRIDGES:                            15:55:22
14   Q.  As you sit here today, what errors, other   15:55:22
15 than the errors you've mentioned earlier and any   15:55:24
16 alleged errors in this document, are you aware of in   15:55:27
17 defendants' activities with respect to ASTM standards?   15:55:32
18   A.  I have not done that analysis.  I'm not aware   15:55:39
19 of those errors.                             15:55:42
20      MR. FEE:  Objection.  This is beyond the   15:55:44
21 scope of his designation.                    15:55:45
22      MR. BRIDGES:  I think it's within the scope   15:55:46
23 of the designation.                          15:55:47
24   Q.  Are you aware, on behalf of ASTM, of anything   15:55:49
25 else?                                        15:55:53
                                            Page 196

1       MR. FEE:  Same objection.             15:55:54
2       THE WITNESS:  Aware of errors?  Could you   15:56:02
3 repeat the question, please.                 15:56:04
4 BY MR. BRIDGES:                             15:56:10
5    Q.  Are you aware, on behalf of ASTM, of any   15:56:10
6 errors other than the errors you mentioned earlier   15:56:16
7 today, alleged errors --                     15:56:22
8       MR. FEE:  Objection.                  15:56:25
9 BY MR. BRIDGES:                             15:56:26
10   Q.  -- in 1048 --                         15:56:26
11   My question was interrupted.  So I'll restate   15:56:37
12 it.                                          15:56:40
13   On behalf of ASTM, are you aware of any   15:56:41
14 errors, other than the errors you've testified to   15:56:46
15 earlier today and alleged errors mentioned in   15:56:50
16 Exhibit 1048 and the activities of defendants in   15:56:55
17 connection with defendants' posting of ASTM standards   15:57:07
18 to the Internet?                             15:57:14
19      MR. FEE:  Objection to form.  Objection.   15:57:15
20 Calls for speculation, and beyond the scope of his   15:57:17
21 designation.                                 15:57:20
22   You can answer.                           15:57:22
23      THE WITNESS:  No, I'm not.             15:57:23
24 BY MR. BRIDGES:                             15:57:29
25   Q.  On behalf of ASTM, are you aware of any   15:57:29
                                            Page 197

50 (Pages 194 - 197)

1 deliberation of ASTM as to whether to inform        15:57:36
2 Mr. Malamud or Public Resource of any errors in the    15:57:40
3 documents that they posted to the Internet?           15:57:45
4        MR. FEE:  Objection to form.  Beyond the      15:57:49
5 scope of his designation.  Calls for speculation.     15:57:53
6        To the extent that you were involved in any    15:57:57
7 discussions amongst counsel regarding that subject,    15:57:59
8 you shouldn't disclose those, but if there are other   15:58:02
9 deliberations as the questioner asked, you can         15:58:05
10 identify those.                                        15:58:08
11        THE WITNESS:  I'm reviewing the document.  I   15:58:11
12 see that it was being referred to Tom.  So that would 15:58:12
13 be a legal issue, and I was not involved in any        15:58:16
14 further discussion.                                    15:58:20
15 BY MR. BRIDGES:                                        15:58:35
16    Q.  Is your response to that question limited by   15:58:36
17 the instruction or objection by counsel?              15:58:37
18    A.  Yeah, it may involve attorney-client work.     15:58:37
19    Q.  So there's other information that you would    15:58:38
20 furnish in response to that question except that       15:58:41
21 you're omitting it because you believe it falls within 15:58:43
22 attorney-client privilege or attorney work product?   15:58:47
23        MR. FEE:  Objection.  I instruct you not to    15:58:49
24 answer that question.                                  15:58:50
25        MR. BRIDGES:  I'm entitled to know whether     15:58:54

Page 198

1 that instruction has an effect on his answer.          15:58:55
2        MR. FEE:  Answering that question would         15:58:58
3 disclose the substance of communications that he's     15:59:00
4 aware of that are privileged.                          15:59:02
5 BY MR. BRIDGES:                                        15:59:08
6    Q.  Are you taking your lawyer's instruction?       15:59:08
7    A.  I am.                                            15:59:11
8        (Deposition Exhibit 1049 was marked for        15:59:54
9        identification.)                                15:59:54
10 BY MR. BRIDGES:                                        15:59:54
11    Q.  Mr. Grove, do you recognize Exhibit 1049 as    15:59:54
12 including an E-mail that you sent to James Thomas in   16:00:10
13 the middle?                                            16:00:17
14        MR. FEE:  Objection.  Vague.                   16:00:26
15        THE WITNESS:  Yes.                             16:00:32
16        (Deposition Exhibit 1050 was marked for        16:01:20
17        identification.)                                16:01:20
18        MR. BRIDGES:  We'll need a clip or staple,     16:01:20
19 but the next two documents together are Exhibit 1050.  16:01:22
20        MR. FEE:  Which one are you putting first?     16:01:36
21        MR. BRIDGES:  The E-mail.  The cover E-mail.   16:01:40
22        MR. FEE:  Okay.                                16:01:46
23        MR. BRIDGES:  Exhibit 1050 is an E-mail from   16:01:49
24 Lorraine Carli of NFPA to you, among others, attaching 16:01:51
25 a draft request for proposals.  This is produced as    16:01:55

Page 199

1 ASTM027093 to -097  Do you recognize that document?   16:02:03
2        (The witness reviewed Exhibit 1050 )           16:02:20
3        THE WITNESS:  I recognize the document, yes    16:02:21
4 BY MR  BRIDGES:                                        16:02:22
5    Q  And you received the E-mail on the exhibit?     16:02:22
6    A  Attached -- based on the E-mail saying it was   16:02:29
7 attached, I believe I did, yes                         16:02:32
8    Q  And this was part of the joint effort that      16:02:35
9 ASTM engaged in with NFPA and -- with the NFPA;       16:02:40
10 correct?  Regarding APCO; is that correct?            16:02:49
11    A  Hold on                       16:03:01
12        (Pause in proceedings )                        16:03:20
13 BY MR  BRIDGES:                                        16:03:21
14    Q  Is that correct?                                16:03:21
15        MR  FEE:  Hold on  I'm reviewing this          16:03:22
16 document to figure out if I need to instruct him      16:03:23
17        (The witness further reviewed Exhibit 1050 )  16 03:30
18        MR  FEE:  I need to talk to the witness about  16:03:31
19 this document, about privilege issues                  16:03:31
20        MR  BRIDGES:  We have numerous instances of   16:03:35
21 it in the production                                   16:03:36
22        THE VIDEOGRAPHER:  We're off the record at     16:03:38
23 16:02                       16:03:40
24        (A recess was taken from 4:02 p m               16:09:01
25        to 4:08 p m )                                  16:09 01

Page 200

1        THE VIDEOGRAPHER:  We are back on the record   16:09:01
2 at 16:08                       16:09:02
3        MR  FEE:  Would you read back the question,    16:09:05
4 please                       16:09:07
5        MR  BRIDGES:  I will start a new question      16:09:12
6    Q  Mr Grove, I've shown you Exhibit 1050, and I    16:09:14
7 think you identified this as an E-mail from Lorraine   16:09:18
8 Carli of NFPA to you and others  This pertains to     16:09:22
9 soliciting work that ended up being work performed by  16:09:29
10 APCO; is that correct?                                16:09:36
11        MR  FEE:  Objection  Beyond the scope of his  16:09:39
12 designation                     16:09:40
13        THE WITNESS:  No  The time line of this       16:09:43
14 doesn't correspond with our selection of APCO         16:09:44
15 BY MR  BRIDGES:                                        16:09:49
16    Q  What does this correspond to?                   16:09:49
17        MR  FEE:  Objection  Vague  Beyond the        16:09:51
18 scope of his designation                              16:09:52
19        THE WITNESS:  This was a separate RFP for     16:09:57
20 some continuing work                                  16:09:59
21 BY MR  BRIDGES:                                        16:10:02
22    Q  What work was it continuing?                    16:10:02
23        MR  FEE:  Objection  Beyond the scope of his  16:10:06
24 designation                     16:10:08
25        THE WITNESS:  We were anticipating a lot of   16:10:09

Page 201

51 (Pages 198 - 201)

1 public interest in the interest of public access.   16:10:11
2 BY MR. BRIDGES:   16:10:17
3    Q.  Are you reading from the document?   16:10:17
4    A.  Oh, no.  I just have it in front of me.  We   16:10:19
5 were anticipating a lot of public interest in the   16:10:22
6 issue of public access.  So we were again discussing   16:10:24
7 whether it was necessary to retain a firm to help us.   16:10:28
8    Q.  Did ASTM or any of these companies that   16:10:34
9 you're aware of retain a firm to help in that effort?   16:10:38
10      MR. FEE:  Objection.  Calls for speculation.   16:10:41
11 It's beyond the scope of his designation.   16:10:42
12      THE WITNESS:  Yes.   16:10:47
13 BY MR. BRIDGES:   16:10:49
14    Q.  What firm did you retain?   16:10:49
15    A.  I don't believe this was the final RFP, but   16:10:55
16 we ultimately retained Fleishman Hillard.   16:10:58
17    Q.  Do you know who prepared the draft request   16:11:04
18 for proposals in Exhibit 1050?   16:11:06
19      MR. FEE:  Objection.  Beyond the scope of his   16:11:10
20 designation.  Calls for speculation.   16:11:11
21      THE WITNESS:  I don't know with certainty who   16:11:23
22 prepared it.   16:11:25
23 BY MR. BRIDGES:   16:11:25
24    Q.  You received it from Lorraine Carli --   16:11:25
25    A.  Correct.   16:11:30

                                              Page 202

1      (Deposition Exhibit 1051 was marked for   16:12:31
2      identification.)   16:12:31
3 BY MR. BRIDGES:   16:12:32
4    Q.  Exhibit 1051 is an E-mail that you sent to   16:12:32
5 James Thomas at ASTM; correct?   16:12:34
6    A.  Yes, it appears to be.   16:12:49
7    Q.  Did you draft the text of the E-mail?   16:12:50
8    A.  To the best of my recollection, I did.   16:13:00
9      (Deposition Exhibit 1052 was marked for   16:16:21
10      identification.)   16:16:21
11      MR. BRIDGES:  Mr. Grove, I've handed you   16:16:21
12 Exhibit 1052.   16:16:25
13      MR. FEE:  Objection.  I'm going to claw this   16:16:26
14 document back.  It expressly references legal   16:16:29
15 communications in the first sentence.  I'm going to   16:16:32
16 instruct the witness not to answer any questions, at   16:16:34
17 least about the top portion of this E-mail.   16:16:36
18 BY MR. BRIDGES:   16:16:42
19    Q.  Has Underwriters Laboratories ever been --   16:16:42
20 strike that.   16:16:49
21      To your knowledge, has ASTM ever had an   16:16:50
22 agreement with Underwriters Laboratories to keep   16:16:52
23 communications about potential litigation   16:16:57
24 confidential?   16:16:59
25      MR. FEE:  Objection.   16:17:00

                                              Page 203

1      Actually, you can answer that question yes or   16:17:04
2 no if you're aware.   16:17:07
3      THE WITNESS:  To my knowledge, no.   16:17:10
4 BY MR. BRIDGES:   16:17:11
5    Q.  Okay.  What did you understand to be a reason   16:17:11
6 for Underwriters Laboratories being included in your   16:17:22
7 E-mail -- strike that.   16:17:27
8      What was your reason for including someone   16:17:29
9 from Underwriters Laboratories in your E-mail?   16:17:31
10      MR. FEE:  Objection.   16:17:34
11      I'm going to instruct you not to answer that   16:17:34
12 question.  We have a common interest agreement with   16:17:36
13 Underwriters Laboratory, and this is a privileged   16:17:39
14 communication.   16:17:41
15 BY MR. BRIDGES:   16:17:49
16    Q.  You did send this E-mail, Exhibit 1052, to   16:17:49
17 the addressees indicated in the header; is that   16:17:53
18 correct?   16:17:57
19      MR. FEE:  You can answer yes or no.   16:17:58
20      THE WITNESS:  I didn't personally.  So I   16:18:03
21 don't have knowledge if this was sent.  I'm sorry.   16:18:06
22 Could you restate that?   16:18:11
23 BY MR. BRIDGES:   16:18:12
24    Q.  You did send this E-mail, Exhibit 1052, to   16:18:13
25 the addressees indicated in the header; is that   16:18:16

                                              Page 204

1 correct?   16:18:18
2    A.  I'm sorry.  Yes, I did.  Correct.   16:18:18
3      MR. BRIDGES:  We need to take a short break   16:18:26
4 because, for some reason, my real time is about to run   16:18:28
5 out of battery, but I need it to be very short because   16:18:32
6 we've been taking a lot of breaks.  If we can go off   16:18:34
7 the record briefly, I would appreciate it.   16:18:37
8      THE VIDEOGRAPHER:  We're going off the record   16:18:38
9 at 16:17   16:18:38
10      (A recess was taken from 4:17 p.m.   16:19:34
11      to 4:18 p.m.)   16:19:34
12      THE VIDEOGRAPHER:  We're back on the record   16:19:35
13 at 16:18   16:19:37
14      (Deposition Exhibit 1053 was marked for   16:20:33
15      identification.)   16:20:33
16      MR. BRIDGES:  Mr. Grove, I've handed you --   16:20:34
17      MR. FEE:  Can I get a copy of the exhibit,   16:20:36
18 please   16:20:38
19      MR. BRIDGES:  Mr. Grove, I've handed you a   16:20:40
20 copy of Exhibit 1053   16:20:42
21    Q.  I'd like to know if you've seen this document   16:20:43
22 before   16:20:45
23    A.  Yes, I believe I have   16:21:01
24    Q.  And this is an E-mail from Mr. Thomas, the   16:21:07
25 president of ASTM, to Roger Stoller; is that correct?   16:21:10

                                              Page 205

                                    52 (Pages 202 - 205)

| | |
|---|---|
| 1   A. Yes.                                    16:21:15 | 1   Q. And you understand it went from her to all    16:25:47 |
| 2   Q. Who is Mr. Stoller?                      16:21:20 | 2 the persons identified in this E-mail?    16:25:49 |
| 3   A. At the time of this E-mail, I believe Roger    16:21:25 | 3       MR. FEE: Objection. Calls for speculation.    16:25:52 |
| 4 Stoller was the incoming chairman of our board of    16:21:29 | 4 It's beyond the scope of his designation.    16:25:57 |
| 5 directors.                                    16:21:32 | 5       THE WITNESS: Yes.    16:25:59 |
| 6   Q. What government agency -- strike that.    16:21:33 | 6       (Deposition Exhibit 1055 was marked for    16:26:06 |
| 7       He was at Oakridge National Laboratory; is    16:21:39 | 7       identification.)    16:28:08 |
| 8 that correct?                                  16:21:43 | 8 BY MR. BRIDGES:    16:28:09 |
| 9   A. Yes.                                      16:21:44 | 9   Q. Exhibit 1055 is a series of E-mails between    16:28:09 |
| 10   Q. And was a government employee; is that    16:21:44 | 10 you and a number of persons, including Katherine    16:28:15 |
| 11 correct?                                      16:21:46 | 11 Morgan; is that correct?    16:28:18 |
| 12       MR. FEE: Objection. Calls for a legal    16:21:46 | 12       MR. FEE: Excuse me for one second.    16:28:21 |
| 13 conclusion and speculation. It's beyond the scope of    16:21:48 | 13       (The witness reviewed Exhibit 1055.)    16:29:08 |
| 14 his designation.                              16:21:50 | 14       THE WITNESS: Yes.    16:29:08 |
| 15       THE WITNESS: I'm not certain of that.    16:21:52 | 15 BY MR. BRIDGES:    16:29:37 |
| 16 BY MR. BRIDGES:                               16:21:53 | 16   Q. At the bottom of the second page there's an    16:29:37 |
| 17   Q. Did you understand him to be a government    16:21:53 | 17 E-mail from Phil Lively to you; correct?    16:29:39 |
| 18 employee?                                     16:21:55 | 18   A. From Phil to Jeff, yes.    16:30:03 |
| 19       MR. FEE: Same objections.    16:21:56 | 19   Q. What's Mr. Lively's role within ASTM?    16:30:04 |
| 20       THE WITNESS: Yes.    16:21:58 | 20   A. Phil is the vice president of information    16:30:08 |
| 21       (Deposition Exhibit 1054 was marked for    16:23:28 | 21 technology.    16:30:10 |
| 22       identification.)    16:23:28 | 22   Q. And does this exchange of E-mails refer to    16:30:31 |
| 23       MR. BRIDGES: Please look at Exhibit 1054.    16:23:28 | 23 steps that ASTM took towards creating a reading room    16:30:32 |
| 24   Q. That is an E-mail from Maureen Houck to a    16:23:35 | 24 for public access to ASTM standards?    16:30:37 |
| 25 number of persons, and you are included in the    16:23:38 | 25       MR. FEE: Objection. The document speaks for    16:30:41 |
| Page 206 | Page 208 |

| | |
|---|---|
| 1 addressee list; is that correct?    16:23:46 | 1 itself  Form    16:30:42 |
| 2   A Yes, that's correct    16:24:05 | 2       THE WITNESS: Yes    16:30:53 |
| 3       MR BRIDGES: I'm going to add, as additional    16:24:06 | 3 BY MR BRIDGES:    16:31:09 |
| 4 pages to this, Exhibit ASTM103025 to -103032 Let's    16:24:08 | 4   Q That E-mail follows on E-mails that you sent    16:31:09 |
| 5 make that a continuation exhibit, please    16:24:17 | 5 to some members of ASTM senior management regarding    16:31:12 |
| 6   Q And the pages I've just added were the    16:24:24 | 6 recommendations by the administrative conference of    16:31:20 |
| 7 attachment to the E-mail on Exhibit 1054; right?    16:24:26 | 7 the United States as ascribed in the two underlying    16:31:23 |
| 8       MR FEE: Objection It looks like there    16:24:33 | 8 E-mails in this thread; is that correct?    16:31:29 |
| 9 were two attachments to this E-mail  Are you saying    16:24:34 | 9       MR FEE: Objection  The document speaks for    16:31:31 |
| 10 this is all the attachments?    16:24:37 | 10 itself  Vague    16:31:33 |
| 11       MR BRIDGES: No  I'm omitting an attachment    16:24:54 | 11       THE WITNESS: Yes    16:31:36 |
| 12 written by Carl Malamud that was    16:24:56 | 12 BY MR BRIDGES:    16:31:42 |
| 13 MALAMUDOMB_GOV_201404111 PDF    16:24:58 | 13   Q At the bottom of the page with Bates    16:31:42 |
| 14       MR FEE: Okay  We object to the use of an    16:25:05 | 14 No -101185, there's a reference to a quotation in the    16:31:45 |
| 15 exhibit that's incomplete    16:25:08 | 15 ACUS report  There's a sentence starting the final    16:31:52 |
| 16 BY MR BRIDGES:    16:25:14 | 16 line, carrying over to the next page, "Moreover, ASTM    16:31:58 |
| 17   Q Do you recognize Exhibit 1054 as a cover    16:25:15 | 17 explained that only a small percentage of its    16:32:01 |
| 18 E-mail with one of its attachments being the draft    16:25:17 | 18 standards are truly profitable and many lose money or    16:32:04 |
| 19 records of ASTM to OMB regarding Circular A-119?    16:25:23 | 19 simply break even " Do you see that?    16:32:11 |
| 20       MR FEE: Same objection    16:25:29 | 20   A I do    16:32:16 |
| 21       THE WITNESS: Yes    16:25:30 | 21   Q Was that an accurate representation of ASTM's    16:32:16 |
| 22 BY MR BRIDGES:    16:25:34 | 22 statement?    16:32:19 |
| 23   Q Who is Maureen Houck?    16:25:34 | 23       MR FEE: Objection  Lack of foundation    16:32:21 |
| 24   A Maureen Houck is the executive assistant to    16:25:38 | 24 Calls for speculation  It's beyond the scope of his    16:32:25 |
| 25 our president, Jim Thomas    16:25:40 | 25 designation    16:32:27 |
| Page 207 | Page 209 |

53 (Pages 206 - 209)

1      THE WITNESS: It's a little out of context.      16:32:42
2  BY MR. BRIDGES:                                  16:32:45
3      Q. What would be necessary to add to that      16:32:45
4  statement in order to supply the context?       16:32:50
5      MR. FEE: Same objections.                   16:32:55
6      THE WITNESS: Looking at standards on an      16:33:12
7  individual basis devalues the real value that ASTM  16:33:14
8  standards have as a collection of a whole.       16:33:14
9  BY MR. BRIDGES:                                  16:33:17
10     Q. What is the real value that ASTM standards   16:33:17
11 have as a collection?                            16:33:19
12     A. Customers in the public benefit from getting  16:33:25
13 a collection of standards at a very affordable price  16:33:27
14 point, which allows them to access numerous standards  16:33:32
15 rather than looking at them as individual standards  16:33:39
16 purchased separately.                            16:33:42
17     Q. Is there anything else about the context --  16:33:48
18 sorry. Anything else necessary to supply an      16:33:52
19 appropriate context for that statement?          16:33:54
20     MR. FEE: Objection. Lack of foundation.      16:33:56
21 Calls for speculation. It's beyond the scope of his  16:33:59
22 designation.                                     16:34:01
23     THE WITNESS: No.                             16:34:14
24     (Deposition Exhibit 1056 was marked for       16:34:40
25     identification.)                             16:34:40
                                              Page 210

1  BY MR. BRIDGES:                                  16:34:41
2      Q. Exhibit 1056 consists of a series of E-mails  16:34:41
3  in which you and John Pace were either authors or  16:34:54
4  recipients; correct?                             16:35:04
5      (The witness reviewed Exhibit 1056.)         16:35:28
6      THE WITNESS: Yes, that's correct.            16:35:28
7  BY MR. BRIDGES:                                  16:35:29
8      Q. What did you understand Mr. Pace to mean in  16:35:29
9  the first sentence about "sticking to our guns and  16:35:34
10 doing the reading room exactly as how we have all  16:35:39
11 agreed to date"?                                 16:35:43
12     A. I'd be speculating.                       16:35:48
13     Q. Well, you were a recipient -- the sole     16:35:52
14 recipient of that E-mail. So please tell me what your  16:35:56
15 understanding was.                               16:35:58
16     MR. FEE: Objection. Lack of foundation.      16:35:59
17 Beyond the scope of his designation as well.     16:36:07
18     THE WITNESS: I'd infer from this that John    16:36:10
19 Pace was raising concerns that we had already     16:36:12
20 committed to building a reading room and committed  16:36:15
21 extensive resources of his employees' time to help in  16:36:21
22 compiling the reading room, and now I was suggesting  16:36:26
23 that, in addition to the reading room, we might want  16:36:28
24 to consider other things as well.                16:36:32
25 BY MR. BRIDGES:                                  16:36:38
                                              Page 211

1      Q. What were you suggesting in addition to a    16:36:38
2  reading room?                                    16:36:40
3      A. I see that I was recommending that we       16:36:41
4  consider beefing up -- excuse me -- making our    16:36:42
5  summaries, which the abstracts which we provide to our  16:36:47
6  standards, considering whether those abstracts could  16:36:53
7  be converted to something that's more of a summary.  16:36:57
8      Q. Was that in addition to doing a reading room  16:37:08
9  or instead of doing a reading room?              16:37:10
10     A. Obviously, John was thinking I was suggesting  16:37:20
11 it as an addition, and I'm not sure if I was or not.  16:37:21
12 I was explaining I'm not the IT guy. So I didn't know  16:37:40
13 how difficult this task would be.                16:37:45
14     Q. Did you have in mind providing summaries as  16:37:48
15 opposed to the standards themselves in the reading  16:37:53
16 room?                                            16:37:55
17     MR. FEE: Objection. Are you asking him his    16:37:56
18 personal opinion in this question?               16:37:59
19     MR. BRIDGES: I'm asking him what his state    16:38:02
20 of mind was at the time.                         16:38:03
21     MR. FEE: It's beyond the scope of his        16:38:04
22 designation.                                     16:38:06
23     But you can answer.                          16:38:07
24     THE WITNESS: In our efforts to strike the     16:38:08
25 right balance between providing the public with public  16:38:10
                                              Page 212

1  access to standards incorporated by reference and   16:38:12
2  maintaining our viability of our standards development  16:38:14
3  enterprise, I was recommending that we review a lot of  16:38:18
4  options. One of which was this summaries idea.    16:38:22
5  BY MR. BRIDGES:                                  16:38:26
6      Q. Was it the idea of providing summaries as   16:38:26
7  opposed to the text of the standards themselves?  16:38:29
8      MR. FEE: Same objection.                     16:38:33
9      THE WITNESS: I don't recall.                 16:38:36
10 BY MR. BRIDGES:                                  16:38:41
11     Q. Does someone -- are you familiar with the   16:38:41
12 operation of the reading room for ASTM today?    16:38:44
13     A. Yes.                                      16:38:47
14     Q. Does one have to register to gain access to  16:38:47
15 the reading room?                                16:38:50
16     A. Yes.                                      16:38:51
17     Q. What does one have to do to register to get  16:38:52
18 access to the reading room?                      16:38:55
19     A. Enter a name and E-mail address.           16:38:56
20     Q. What's the purpose of that?               16:39:00
21     A. Well, to ensure that it wasn't -- again, I'm  16:39:02
22 not an IT person, but I believe there's some concerns  16:39:08
23 that bots and other types of automatic -- that perhaps  16:39:10
24 machines could access our system and pull information  16:39:19
25 in ways that perhaps we weren't intending by providing  16:39:22
                                              Page 213

1 this information to the public.                16:39:25
2    Q. Is that the only reason for requiring a name   16:39:29
3 and E-mail address?                           16:39:31
4    A. At one point we discussed -- my goal was to   16:39:31
5 provide access to U.S. citizens, and we discussed   16:39:35
6 whether or not it should be available to the others in   16:39:43
7 addition to the U.S. So providing an E-mail address   16:39:48
8 just might have given us some additional information   16:39:52
9 about who was coming to our website for what purpose.   16:39:54
10    Q. Is that so that you could keep certain   16:40:00
11 persons out of the reading room if they were not from   16:40:02
12 the U.S.?                                     16:40:05
13    A. Actually, I'm aware that we have some   16:40:06
14 restrictions due to the U.S. Treasury Departments OFAC   16:40:09
15 that makes it -- we have to take reasonable steps to   16:40:12
16 prevent technical information from going to whatever   16:40:17
17 countries are designated by the U.S. Department of   16:40:20
18 Treasury as such.                             16:40:23
19    Q. What about apart from those restrictions.   16:40:25
20 Was there an interest in keeping persons from other   16:40:28
21 countries out of the reading room?            16:40:32
22       MR. FEE: Objection. Vague.              16:40:35
23       THE WITNESS: I don't recall.            16:40:37
24 BY MR. BRIDGES:                              16:40:39
25    Q. What else does one have to do to register for   16:40:39
                                              Page 214

1 access to the reading room apart from furnishing an   16:40:42
2 E-mail address?                               16:40:44
3       MR. FEE: My recollection is you have to   16:40:47
4 agree to our policies on the use of the information.   16:40:49
5 BY MR. BRIDGES:                              16:40:55
6    Q. Does that require entering into an   16:40:55
7 enforceable contract with ASTM?               16:40:57
8       MR. FEE: Objection. Calls for a legal   16:41:00
9 conclusion. Beyond the scope of his designation. To   16:41:01
10 the extent it calls for a legal conclusion, you can   16:41:04
11 answer if you know.                           16:41:07
12       THE WITNESS: I'm not an attorney, but I   16:41:09
13 believe it makes very clear that copyright policy on   16:41:11
14 the documents.                                16:41:14
15 BY MR. BRIDGES:                              16:41:16
16    Q. Does somebody have to agree to terms of   16:41:16
17 service in order to get access to the reading room?   16:41:19
18    A. To my knowledge, yes.                   16:41:26
19    Q. And does somebody have to agree about the   16:41:27
20 location of any lawsuit that would be filed for   16:41:29
21 violation of terms of service?                16:41:33
22    A. I'm not certain of that provision.       16:41:38
23    Q. Do you recall seeing something like that?   16:41:40
24       MR. FEE: Objection. Asked and answered.   16:41:43
25       THE WITNESS: No.                        16:41:45
                                              Page 215

1 BY MR. BRIDGES:                              16:41:49
2    Q. Do you recall requiring that people agree to   16:41:49
3 acknowledge ASTM's copyrights from the standards in   16:41:52
4 order to get access?                          16:41:56
5    A. That sounds familiar, yes.              16:41:58
6    Q. And so somebody had an argument that for some   16:42:00
7 reason these standards were not subject to copyright,   16:42:03
8 would that person have to, in your understanding, give   16:42:10
9 up that view in order to get access to the documents   16:42:13
10 in the reading room?                          16:42:17
11       MR. FEE: Objection. Calls for a legal   16:42:19
12 conclusion. To the extent it does, he's not   16:42:20
13 designated for any legal opinions.            16:42:22
14       THE WITNESS: I'm not an attorney, but I   16:42:26
15 believe that it's clear that -- what's intended.   16:42:27
16 Someone could access the information and read the   16:42:34
17 information but is made aware of the fact that ASTM   16:42:36
18 owns the copyright.                           16:42:42
19 BY MR. BRIDGES:                              16:42:44
20    Q. It's not only made aware of it. They're   16:42:44
21 forced to agree that ASTM owns a copyright. Is that   16:42:46
22 not the case?                                 16:42:51
23       MR. FEE: Same objections.               16:42:53
24       THE WITNESS: It could be, yes.           16:42:54
25 BY MR. BRIDGES:                              16:42:55
                                              Page 216

1    Q. And do you see the third bullet in Mr. Pace's   16:42:55
2 message to you at the top of Exhibit 1056. It says,   16:43:01
3 "Reading pane is 5-by-7. So you have to scroll." Do   16:43:06
4 you see that?                                 16:43:13
5    A. I see that in the E-mail.               16:43:15
6    Q. Does 5-by-7 mean 5-by-7 inches?          16:43:17
7    A. I don't have knowledge what exactly he's   16:43:28
8 referring to.                                 16:43:30
9    Q. Do you understand what it means that one has   16:43:31
10 to "scroll"?                                  16:43:33
11    A. Again, I'd speculate that that means you have   16:43:38
12 to navigate your monitor to see it.           16:43:41
13    Q. It means that one would have to scroll down   16:43:46
14 to get a full page of a standard. To read a full page   16:43:50
15 of the standard, one couldn't read a full page and one   16:43:53
16 go without scrolling; correct?               16:43:57
17       MR. FEE: Objection. Vague. Calls for   16:43:59
18 speculation. May call for expert testimony as well.   16:44:01
19       THE WITNESS: That may certainly be possible.   16:44:04
20 BY MR. BRIDGES:                              16:44:08
21    Q. Do you know why that would be a feature of a   16:44:08
22 reading room design?                          16:44:21
23       MR. FEE: Objection. Vague.              16:44:25
24       THE WITNESS: Again, the purpose of the   16:44:31
25 reading room is to provide the public with access to   16:44:32
                                              Page 217

55 (Pages 214 - 217)

1 read the documents.  So we're -- I'm pleased that our  16:44:34
2 reading room gives them the ability to do that.  16:44:39
3 BY MR. BRIDGES:  16:44:41
4     Q. Were you proud of having a design that would  16:44:41
5 require people to scroll to read an entire page?  Were  16:44:44
6 you pleased about that?  16:44:48
7     A. We received a lot of accolades for it, and so  16:44:48
8 to that -- to the fact that the reading room exists.  16:44:53
9 So I haven't heard complaints beyond what's been  16:44:56
10 discussed here today.  16:44:59
11     Q. Does that feature appear to you to be a user  16:45:00
12 friendly feature to design into the reading room?  16:45:04
13        MR. FEE:  Objection.  Vague.  May call for  16:45:07
14 expert testimony.  16:45:09
15        THE WITNESS:  And I'm not an expert, but I've  16:45:12
16 used the reading room and I've read standards through  16:45:14
17 it without any problem.  16:45:16
18 BY MR. BRIDGES:  16:45:24
19     Q. The second paragraph of Mr. Pace's E-mail  16:45:24
20 says, "I haven't chatted with Jim yet."  Does "Jim"  16:45:29
21 refer to James Thomas, the president of ASTM?  16:45:34
22     A. In this context, I believe it does.  16:45:44
23     Q. And a couple of paragraphs down, it says, "On  16:45:47
24 the four bullet points above, I know Phil might think  16:45:50
25 I'm overdoing it a bit."  Whom did you understand  16:45:54

Page 218

1 "Phil" to refer to?  Is that Phil Lively?  16:46:00
2     A. I believe it would be Phil Lively.  16:46:02
3     Q. Who's Bob Dreyfus?  16:46:06
4     A. My understanding is Bob Dreyfus is a  16:46:10
5 consultant that works on various IT projects for ASTM.  16:46:12
6     Q. What other IT projects does he work on?  16:46:16
7     A. I'm afraid I don't have knowledge of that.  16:46:20
8 It's outside of my area.  16:46:22
9     Q. Does ASTM make available on its reading room  16:47:21
10 for public access any of its thousands of standards  16:47:25
11 that have not been incorporated by reference?  16:47:30
12     A. To the best of my knowledge, no.  16:47:38
13     Q. Why not?  16:47:42
14        MR. FEE:  Objection.  Calls for speculation.  16:47:45
15 That's also beyond the scope of his designation.  16:47:48
16        THE WITNESS:  ASTM, we're very proud of the  16:47:53
17 role we've played in society for 115 years in  16:47:55
18 developing high quality, market relevant standards  16:47:59
19 that are open, balanced, transparent process, and  16:48:01
20 putting more documents up in the reading room beyond  16:48:05
21 what's incorporated by reference could have unintended  16:48:11
22 consequences on our ability to maintain our viability  16:48:15
23 as a standards developer and ensure that the proper  16:48:18
24 stakeholders have access to participating in the ASTM  16:48:21
25 standards process under the expectations that they  16:48:25

Page 219

1 have today.  16:48:28
2 BY MR. BRIDGES:  16:48:31
3     Q. Does ASTM have any actual facts causing it to  16:48:31
4 believe that putting more standards in its reading  16:48:36
5 room would affect its viability as a standards  16:48:42
6 developer, or is this conclusion based on speculation?  16:48:46
7        MR. FEE:  Objection to form.  Vague.  May  16:48:50
8 call for expert testimony.  Beyond the scope of his  16:48:54
9 designation, and speculation.  16:48:59
10        THE WITNESS:  I'm just aware that for 115  16:49:05
11 years this is the way our model has operated, and it  16:49:07
12 served society well with very little complaints from  16:49:11
13 our stakeholders.  In fact, this is the first case  16:49:14
14 where this has become an issue.  So that's my answer.  16:49:16
15        (Deposition Exhibit 1057 was marked for  16:49:50
16        identification.)  16:49:50
17 BY MR. BRIDGES:  16:49:51
18     Q. Exhibit 1057 is an E-mail from John Pace to  16:49:51
19 you with earlier E-mails in which you both  16:49:54
20 participate; is that correct?  16:50:02
21        (The witness reviewed Exhibit 1057.)  16:50:15
22        THE WITNESS:  Yes.  16:50:15
23 BY MR. BRIDGES:  16:50:22
24     Q. At the end of that top E-mail Mr. Pace says,  16:50:22
25 "We're getting big bucks annually from DHS."  Do you  16:50:26

Page 220

1 see that?  16:50:30
2     A  I do  16:50:31
3     Q  What did you understand that to refer to?  16:50:32
4     A  I have great respect for John Pace and his  16:50:39
5 experience in --  16:50:41
6        MR BRIDGES: I move to strike  That's not  16:50:42
7 my question  16:50:43
8     Q  I'm asking what --  16:50:46
9        MR FEE:  Don't cut him off  16:50:47
10        Answer your question  16:50:47
11 BY MR  BRIDGES:  16:50:47
12     Q  -- does "We're getting big bucks annually  16:50:47
13 from DHS" refer to?  16:50:47
14        MR FEE:  Answer your question as you were  16:50:50
15 going to answer it  16:50:51
16        THE WITNESS:  I was going to just describe  16:50:52
17 John Pace as a colorful character that's involved in  16:50:55
18 sales, and he's describing the fact that he's very  16:50:58
19 pleased with the relationship that we have with the  16:51:02
20 Department of Homeland Security where we provide 31  16:51:05
21 ASTM standards to the public where they can access  16:51:09
22 print standards, particularly for first responders, at  16:51:12
23 a reasonable price point  16:51:21
24 BY MR  BRIDGES:  16:51:24
25     Q  And what you just said was, in fact, in your  16:51:24

Page 221

56 (Pages 218 - 221)

1  E-mail to him in the middle; right?          16:51:26
2        MR. FEE:  You want him to compare his    16:51:32
3  testimony verbatim to this E-mail?          16:51:33
4  BY MR. BRIDGES:                             16:51:36
5     Q.  What you just said, that comes from your    16:51:36
6  E-mail to him.  I was asking him about his E-mail to    16:51:37
7  you and specifically what you understood him to mean    16:51:40
8  by the statement "We're getting big bucks annually    16:51:43
9  from DHS."  What did you understand that to mean?    16:51:46
10        MR. FEE:  Objection.  Asked and answered.    16:51:50
11        THE WITNESS:  You know, I'm happy to answer    16:51:53
12  what I know about what this could mean.  It could mean    16:51:54
13  that we have a contract with the Department of    16:51:57
14  Homeland Security, or we did at this time, in which    16:52:00
15  ASTM received, I believe, $25,000 in funding in    16:52:03
16  exchange for putting 31 standards up for unlimited    16:52:08
17  print and use.  This was a deep, discounted price that    16:52:11
18  John was very -- this was a deep, discounted price,    16:52:14
19  and this went to the fact that we wanted to get our    16:52:23
20  standards in the hands of Homeland Security -- I'm    16:52:26
21  sorry -- of first responders in a way that still    16:52:28
22  allowed us to recoup some of the cost and expense that    16:52:31
23  ASTM incurs on the development, delivery of standards.    16:52:35
24  BY MR. BRIDGES:                             16:52:38
25     Q.  Is it your testimony that ASTM put 31    16:52:38

                                        Page 222

1  standards up for unlimited print and use by the    16:52:41
2  public?                                     16:52:43
3        MR. FEE:  Objection.  Vague.            16:52:44
4        THE WITNESS:  I'm not certain as to exactly    16:52:46
5  what the portal that may have existed at this site,    16:52:47
6  but at this time in 2012 my understanding was, yes.    16:52:51
7  Because of the relationship we had with DHS, we were    16:52:57
8  allowing the public to come to this website -- come to    16:53:00
9  this portal and access and print, save, and E-mail our    16:53:03
10  standards.  I'm not sure if that was the exact    16:53:11
11  functionality that was provided, but that was my    16:53:13
12  understanding.                              16:53:15
13  BY MR. BRIDGES:                             16:53:16
14     Q.  And you said it was $25,000 in funding in    16:53:16
15  exchange for putting 31 standards up for unlimited    16:53:19
16  print and use.  By "unlimited," did you mean unlimited    16:53:23
17  into the future?                            16:53:27
18        MR. FEE:  Objection.  Vague.            16:53:33
19        THE WITNESS:  And I don't know the    16:53:34
20  particulars of the contractual relationship or the    16:53:35
21  subscription that was negotiated between our sales    16:53:37
22  staff and DHS.                             16:53:39
23  BY MR. BRIDGES:                             16:53:51
24     Q.  What interest did you understand DHS to have    16:53:51
25  for public access to the standards that it paid the    16:53:53

                                        Page 223

1  money for?                                  16:53:57
2        MR. FEE:  Objection  Lack of foundation    16:53:57
3  Beyond the scope of his designation  Calls for    16:53:59
4  speculation                                 16:54:03
5        THE WITNESS:  I would speculate that these    16:54:04
6  standards were viewed as playing an important role in    16:54:06
7  helping first responders carry out their important    16:54:09
8  mission, and DHS came to ASTM and we figured out a    16:54:12
9  very flexible and reasonable agreement to allow that    16:54:19
10  to happen, which we've done for 115 years of our    16:54:21
11  existence                                   16:54:25
12  BY MR BRIDGES:                              16:54:26
13     Q  Were these standards that had been    16:54:26
14  incorporated by reference?                  16:54:28
15     A  I'm afraid I don't know the answer to that    16:54:31
16     Q  Do you know whether ASTM had different    16:54:34
17  licensing practices or prices according to whether    16:54:38
18  standards were incorporated by reference or not?    16:54:41
19        MR FEE:  Objection to form             16:54:45
20        THE WITNESS:  I am not aware of any pricing    16:54:48
21  differential, whether or not an ASTM standard is    16:54:50
22  incorporated by reference or not               16:54:54
23  BY MR BRIDGES:                             16:54:55
24     Q  Are you aware of any other terms of licenses    16:54:55
25  that differed according to whether an ASTM standard    16:55:00

                                        Page 224

1  was incorporated by reference or not?          16:55:04
2        MR FEE:  Objection  Vague  To the extent    16:55:06
3  that calls for a legal conclusion             16:55:08
4        THE WITNESS:  And I'm sorry  You're asking    16:55:13
5  me if under a purchasing agreement with ASTM for a    16:55:14
6  standard?  What's the context of the question?    16:55:19
7  BY MR BRIDGES                              16:55:21
8     Q  Well, I assume that ASTM makes money off of    16:55:21
9  standards in a variety of ways; correct?      16:55:24
10        MR FEE:  Objection  Vague             16:55:26
11        THE WITNESS:  90 percent of ASTM's revenue    16:55:31
12  comes from -- 80 percent of ASTM's revenue comes from    16:55:33
13  the sale of publications of which 90 percent comes    16:55:38
14  from the sale of standards                  16:55:41
15  BY MR BRIDGES:                             16:55:43
16     Q  My question was I assume that ASTM makes    16:55:43
17  money off standards in a variety of ways; correct?    16:55:46
18        MR FEE:  Asked and answered            16:55:52
19        THE WITNESS:  Yeah  I'm not agreeing with    16:55:53
20  that because 90 percent of the revenue we get from    16:55:55
21  standards is due to the sale of standards    16:55:59
22  BY MR BRIDGES:                             16:56:02
23     Q  What did you mean by "the sale of standards"?    16:56:02
24     A  It's what it sounds -- it's our sales staff    16:56:09
25  The public coming to our website  Our sales staff    16:56:11

                                        Page 225

57 (Pages 222 - 225)

1 working with customers, and it's our distributors, our   16:56:15
2 licensed distributors working with customers on a   16:56:17
3 worldwide basis to negotiate payment for the access to   16:56:20
4 our standards.   16:56:24
5   Q. I'm afraid I don't think you answered my   16:56:29
6 question. I said what did you mean by "the sale of   16:56:31
7 standards"?   16:56:35
8   MR. FEE: Objection. Asked and answered.   16:56:36
9 BY MR. BRIDGES:   16:56:41
10   Q. And you say, "our sales staff, the public   16:56:41
11 coming to our website." Those don't seem like answers   16:56:44
12 to my question. What do you mean by "sales of   16:56:46
13 standards"?   16:56:50
14   MR. FEE: Objection. Asked and answered.   16:56:51
15   THE WITNESS: I'm trying to meet you here. I   16:56:57
16 believe it's providing a document in exchange for   16:56:57
17 remuneration.   16:57:06
18 BY MR. BRIDGES:   16:57:07
19   Q. What are the different ways in which ASTM   16:57:07
20 provides documents in exchange for remuneration?   16:57:13
21   A. Well, someone may come to our website, search   16:57:19
22 for a standard, find it in a variety of different   16:57:25
23 formats, and indicate that they'd like to purchase it   16:57:30
24 in one of those formats at the agreed upon price   16:57:35
25 point.   16:57:37

Page 226

1   Q. Now, previously you said that you were   16:57:40
2 unaware of any price differential according to whether   16:57:43
3 a standard was incorporated by reference or not,   16:57:47
4 correct?   16:57:51
5   A. Correct.   16:57:52
6   Q. ASTM engages in some licensing agreements,   16:57:53
7 does it not, with other parties regarding the license   16:57:56
8 of access to the standards; correct?   16:58:01
9   A. That's correct.   16:58:05
10   Q. I'm just talking as a commercial matter --   16:58:06
11   A. Right.   16:58:08
12   Q. -- are you aware of any significant   16:58:08
13 differences in the language of the licenses that ASTM   16:58:10
14 offers for the license of standards incorporated by   16:58:18
15 reference and the language of the licenses that ASTM   16:58:24
16 orders for the license of standards that are not   16:58:30
17 incorporated by reference?   16:58:33
18   MR. FEE: Objection. Vague. To the extent   16:58:34
19 it calls for a legal conclusion.   16:58:37
20   THE WITNESS: No, I'm not aware of that.   16:58:39
21   MR. FEE: Do you want to take a break soon?   16:59:05
22   THE WITNESS: It's been -- yeah. I've been   16:59:07
23 looking at my watch. I think now would be a good   16:59:09
24 time.   16:59:11
25   THE VIDEOGRAPHER: Now off the record at   16:59:12

Page 227

1 2:58   16:59:13
2   (A recess was taken from 4:58 p m   17:08:49
3   to 5:07 p m )   17:08:49
4   THE VIDEOGRAPHER: We're now back on the   17:08:50
5 record at 17:07   17:08:51
6   (Deposition Exhibit 1058 was marked for   17:09:04
7   identification )   17 09:04
8 BY MR BRIDGES:   17:09:04
9   Q Mr Grove, Exhibit 1058 is a series of   17:09:04
10 E-mails that you are -- appear to be part of --   17:09:11
11 intermittently; is that correct?   17:09:24
12   MR FEE: Objection Vague   17:09:26
13   THE WITNESS: Yes   17:09:30
14 BY MR BRIDGES:   17:09:36
15   Q Did ASTM put the wrong version of one of its   17 09 36
16 standards up that PHMSA wanted to reference? PHMSA   17:09:41
17 being spelled P-H-M-S-A   17:09:46
18   A I mean there's --   17:09:51
19   MR FEE: Objection Beyond the scope of his   17:09:53
20 designation   17:09:55
21   THE WITNESS: That's not what most of these   17:10:12
22 E-mails refer to I'm not sure what the context is of   17:10:13
23 that E-mail from Phil to me   17:10:15
24 BY MR BRIDGES:   17:10:22
25   Q Well, there's context in your response to   17:10:22

Page 228

1 Phil at the top --   17:10:23
2   A Right   17:10:26
3   Q -- saying, "Yes That is the version that   17:10:26
4 PHMSA wants to reference I suppose that Malamud will   17:10:26
5 hit us for that too "   17:10:31
6   A Right   17:10:32
7   Q What was the context of your response?   17:10:33
8   MR FEE: Objection Again, beyond the scope   17:10:34
9 of his designation   17:10:37
10   THE WITNESS: It could be that I'd be   17:10:38
11 speculating, but it could be that you're right, that   17:10:40
12 possibly we put the wrong version up when, in fact,   17:10:43
13 NITSA -- excuse me, FIMSA wanted us to reference the   17:10:47
14 '06 version   17:10:50
15   (Deposition Exhibit 1059 was marked for   17:11:47
16   identification )   17:11:47
17 BY MR BRIDGES:   17:11:47
18   Q Exhibit 1059 consists of two E-mails from   17:11:47
19 Sarah Petre at ASTM to someone at the Federal Trade   17:11:52
20 Commission; is that correct?   17:11:55
21   A Yes   17:12:25
22   (Deposition Exhibit 1060 was marked for   17:15:20
23   identification )   17:15:20
24   MR BRIDGES: I'll show you Exhibit 1060, a   17:15:20
25 two-page exhibit   17:15:23

Page 229

58 (Pages 226 - 229)

| | |
|---|---|
| 1 Q. This is the agreement that a member of the 17:15:26 | 1 have separate policies for standards incorporated by 17:19:03 |
| 2 public must agree to in order to gain access to ASTM 17:15:28 | 2 reference versus purchasing standards that are not 17:19:04 |
| 3 incorporated by reference standards in the reading 17:15:36 | 3 incorporated by reference. 17:19:06 |
| 4 room; correct? 17:15:40 | 4 (Deposition Exhibit 1062 was marked for 17:20:35 |
| 5 A. It appears to be, yes. 17:15:48 | 5 identification.) 17:20:35 |
| 6 Q. And the only standards available through this 17:15:49 | 6 BY MR. BRIDGES: 17:20:36 |
| 7 reading room are standards that have been incorporated 17:15:51 | 7 Q. Mr. Grove, Exhibit 1062 is an exchange of 17:20:36 |
| 8 by reference, I believe you said; correct? 17:15:53 | 8 E-mails between you and Mary McKiel with earlier 17:20:51 |
| 9 A. To the best of my knowledge, yes. 17:15:57 | 9 E-mails in the thread; is that correct? 17:20:59 |
| 10 (Deposition Exhibit 1061 was marked for 17:16:32 | 10 A. Yes, it is. 17:21:29 |
| 11 identification.) 17:16:32 | 11 Q. Does this discussion in the middle of the 17:21:31 |
| 12 BY MR. BRIDGES: 17:16:32 | 12 first page of Exhibit 1062 refer to some EPA 17:21:35 |
| 13 Q. Mr. Grove, what is Exhibit 1061? 17:16:32 | 13 incorporations by reference of certain ASTM standards? 17:21:49 |
| 14 (The witness reviewed Exhibit 1061.) 17:17:09 | 14 MR. FEE: Objection. Vague. The document 17:21:53 |
| 15 THE WITNESS: It appears to be a licensing 17:17:09 | 15 speaks for itself. 17:21:58 |
| 16 agreement. 17:17:11 | 16 THE WITNESS: Yeah. This was a project I was 17:21:59 |
| 17 BY MR. BRIDGES: 17:17:12 | 17 excited to be part of. We worked with the EPA and the 17:22:00 |
| 18 Q. For what? 17:17:12 | 18 National Institute of Standards and Technology to 17:22:03 |
| 19 A. For ASTM's copyright protected information. 17:17:13 | 19 remove mercury from thermometers that are used in the 17:22:05 |
| 20 Q. In what circumstances must somebody enter 17:17:22 | 20 United States because of a threat that they posed to 17:22:08 |
| 21 into this license agreement with ASTM? 17:17:24 | 21 children if they were broken or to those in the lab 17:22:10 |
| 22 MR. FEE: Objection. Vague. 17:17:28 | 22 environment. The difficulty was the use of these 17:22:13 |
| 23 THE WITNESS: It's my understanding that a 17:17:33 | 23 standards was mandated by reference. Excuse me. The 17:22:17 |
| 24 user purchaser of ASTM standards would need to agree 17:17:35 | 24 use of these types of measurement devices containing 17:22:20 |
| 25 to a license agreement which authorizes the specific 17:17:40 | 25 mercury were referenced in standards that were 17:22:24 |
| Page 230 | Page 232 |

| | |
|---|---|
| 1 ways in which the information may be used and 17:17:44 | 1 incorporated by reference in the U.S. code. 17:22:26 |
| 2 identifies a number of ways that the information 17:17:48 | 2 (Deposition Exhibit 1063 was marked for 17:23:23 |
| 3 should not be used. 17:17:50 | 3 identification.) 17:23:23 |
| 4 BY MR. BRIDGES: 17:17:57 | 4 BY MR. BRIDGES: 17:23:25 |
| 5 Q. Does this apply to all purchases of ASTM 17:17:57 | 5 Q. Exhibit 1063 is an E-mail from you to your 17:23:25 |
| 6 standards? 17:18:01 | 6 colleague, Anthony Quinn; correct? 17:23:28 |
| 7 MR. FEE: Objection. Calls for speculation. 17:18:04 | 7 A. Yes. Correct. 17:23:41 |
| 8 THE WITNESS: Well, it looks pretty basic to 17:18:11 | 8 Q. And you were commenting upon the information 17:23:44 |
| 9 me. So within my knowledge, I'd say yes. 17:18:13 | 9 relayed to you from Mr. Miller, and before that, from 17:23:48 |
| 10 BY MR. BRIDGES: 17:18:21 | 10 Scott Cooper; is that correct? 17:23:53 |
| 11 Q. Does this apply also to the purchase of paper 17:18:21 | 11 MR. FEE: Objection. The document speaks for 17:23:58 |
| 12 copies of ASTM standards? 17:18:25 | 12 itself. 17:23:59 |
| 13 MR. FEE: Same objection. 17:18:27 | 13 THE WITNESS: Right. I don't think that -- 17:24:01 |
| 14 THE WITNESS: I'm not sure what distinctions 17:18:29 | 14 MR. BRIDGES: Can we stipulate that the 17:24:01 |
| 15 are made between our policy for paper versus other 17:18:31 | 15 document speaks for itself? 17:24:03 |
| 16 formats. 17:18:36 | 16 MR. FEE: The document says what it says. 17:24:04 |
| 17 BY MR. BRIDGES: 17:18:38 | 17 What do you need my stipulation for? 17:24:06 |
| 18 Q. Does this license agreement apply to both the 17:18:38 | 18 MR. BRIDGES: Well, then I need to ask the 17:24:10 |
| 19 purchase of standards incorporated by reference and 17:18:43 | 19 witness some questions. 17:24:11 |
| 20 other standards not incorporated by reference? 17:18:47 | 20 MR. FEE: You're welcome to ask him. 17:24:13 |
| 21 MR. FEE: Hold on a second. 17:18:51 | 21 THE WITNESS: I would actually like to answer 17:24:16 |
| 22 (Pause in proceedings.) 17:19:00 | 22 that because I believe I'm replying to David Miller's 17:24:17 |
| 23 MR. FEE: Same objection. 17:19:00 | 23 interpretation that this means that language in our 17:24:22 |
| 24 You can answer. 17:19:01 | 24 standards that implies some things are "shoulds" and 17:24:24 |
| 25 THE WITNESS: Yeah. I'm not aware that we 17:19:02 | 25 "shalls." This particular agency was going to say 17:24:28 |
| Page 231 | Page 233 |

Veritext Legal Solutions
866 299-5127

1 that they must be -- they have to be referred to as      17:24:32
2 "musts," and this would have the voluntary consensus     17:24:35
3 standards process   This isn't the intention when        17:24:39
4 people come together to work in a voluntary consensus    17:24:43
5 standard environment   They want the words to mean        17:24:47
6 what they carefully craft them to mean in the process,   17:24:49
7 and when -- so I believe that's what I was referring     17:24:52
8 to in this                                               17:24:55
9 BY MR  BRIDGES:                                          17:25:00
10     Q  Well, Mr Miller was not saying that the          17:25:00
11 government was changing the standard  The government     17:25:02
12 was proposing to change the law; correct?               17:25:07
13      MR FEE: Objection  The document speaks for          17:25:11
14 itself  Calls for speculation                           17:25:13
15      THE WITNESS: I guess I would be speculating,        17:25:22
16 but that was my interpretation of what this means       17:25:24
17 BY MR  BRIDGES:                                          17:25:29
18     Q  That the government would be changing the law    17:25:29
19 as the law interprets the standard?                     17:25:31
20      MR FEE: Same objections  And vague                  17:25:36
21      THE WITNESS: Yeah  That the government was          17:25:41
22 interpreting a standard in a way that the voluntary     17:25:43
23 consensus standard group didn't necessarily intend it    17:25:46
24 to without coming back to the organization and working  17:25:50
25 with them                                               17:25:57
                                                  Page 234

1 BY MR  BRIDGES:                                          17:27:38
2     Q  Mr Grove, does ASTM encourage any                 17:27:38
3 governments to incorporate its standards by reference?   17:27:46
4      MR FEE: Objection  Vague                             17:27:49
5      THE WITNESS: As a matter of policy, we make         17:27:54
6 organizations -- sorry -- governments aware of our       17:27:58
7 standards and point out and connect with agency          17:28:04
8 missions  But in the end, we respect that agencies       17:28:07
9 should be the ones that determine whether or not our     17:28:09
10 standards are incorporated or not                       17:28:12
11 BY MR  BRIDGES:                                          17:28:13
12     Q  Is ASTM generally pleased when governments       17:28:13
13 incorporate its standards by reference?                 17:28:20
14      MR FEE: Objection  Vague                            17:28:22
15      THE WITNESS: So I think it speaks to the           17:28:28
16 significance of ASTM and to the breadth of ASTM when     17:28:29
17 you see ASTM standards become incorporated by           17:28:34
18 reference because it does signify that they are widely  17:28:37
19 respected for their technical excellence  I believe     17:28:42
20 that it signifies that the government -- it couldn't     17:28:46
21 do what we've done with the same effectiveness  So      17:28:52
22 they're looking to a voluntary consensus standards      17:28:54
23 group in utilizing those standards                      17:28:57
24      So in some ways I might take pride in the          17:29:00
25 fact that ASTM standards are relied upon by all of our  17:29:04
                                                  Page 235

1 stakeholders because the government is a very            17:29:07
2 important member.                                        17:29:09
3 BY MR. BRIDGES:                                          17:29:11
4     Q. So is the answer to my question "yes"?           17:29:11
5      MR. FEE: Objection.                                 17:29:13
6      You can answer it however you'd like.              17:29:14
7      MR. BRIDGES: He already has.                        17:29:16
8     Q. I'm now asking him is the answer to my           17:29:18
9 question "yes."                                          17:29:20
10      MR. FEE: Same objection. Asked and                 17:29:21
11 answered.                                               17:29:22
12      THE WITNESS: Speaking for Jeff Grove, yes.   17:29:23
13 BY MR. BRIDGES:                                          17:29:26
14     Q. What about speaking for ASTM?                    17:29:26
15      MR. FEE: Objection. Asked and answered.   17:29:28
16      THE WITNESS: I don't believe ASTM would have   17:29:29
17 an official position.                                   17:29:31
18 BY MR. BRIDGES:                                          17:29:35
19     Q. You don't think that ASTM has a view as to      17:29:35
20 whether it is pleased when governments incorporate its   17:29:39
21 standards by reference?                                 17:29:43
22      MR. FEE: Objection. Vague and asked and           17:29:44
23 answered.                                               17:29:46
24      THE WITNESS: It's never been a performance   17:29:49
25 metric for me. So no.                                   17:29:50
                                                  Page 236

1 BY MR. BRIDGES:                                          17:29:58
2     Q. Does ASTM have views about things that are       17:29:58
3 not performance metrics?                                17:30:01
4      MR. FEE: Objection. Beyond the scope of his   17:30:05
5 designation. Vague.                                     17:30:06
6      THE WITNESS: It could.                              17:30:11
7 BY MR. BRIDGES:                                          17:30:14
8     Q. What performance metrics do you have?           17:30:14
9      MR. FEE: Objection. Beyond the scope of his   17:30:16
10 designation.                                            17:30:20
11      THE WITNESS: Generally, my performance is   17:30:23
12 based on the job I've done in removing worldwide        17:30:24
13 barriers to the acceptance and use of ASTM standards.   17:30:27
14 BY MR. BRIDGES:                                          17:30:36
15     Q. Is your -- do your performance reviews ever     17:30:36
16 mention the degree of adoption of ASTM standards by      17:30:39
17 reference -- strike that.                               17:30:44
18      Do your performance reviews ever mention the   17:30:46
19 degree of incorporation of ASTM standards by           17:30:48
20 reference?                                              17:30:50
21      MR. FEE: Objection. Beyond the scope of his   17:30:51
22 designation.                                            17:30:55
23      THE WITNESS: I believe over the years I     17:30:56
24 might have pointed out to my superiors that a standard   17:30:57
25 has become incorporated as something significant.      17:31:00
                                                  Page 237

60 (Pages 234 - 237)

1 BY MR BRIDGES:                              17:31:05

2   Q  As something pertaining to your performance?  17:31:05

3      MR FEE: Same objection  Whatever document   17:31 07

4 that you're referencing will speak for itself as well   17:31:13

5      THE WITNESS: It could              17:31:26

6      (Deposition Exhibit 1064 was marked for      17:32:20

7      identification )                   17:32:20

8      MR BRIDGES: I'll hand you an exhibit marked   17:32:20

9 1064 It consists of Pages ASTM099269 to ASTM099335  17:32:22

10     (The witness reviewed Exhibit 1064 )     17:33:02

11     MR BRIDGES: And, actually, I'm going to add   17:33:03

12 more to the document  It's going to be ASTM099269 to  17:33:04

13 -099360                                17:33:34

14     (Pause in proceedings )             17:33:51

15 BY MR BRIDGES:                           17:33:51

16   Q  How many pieces of paper did I give you?   17:33:51

17   A  Just the cover sheet and this (indicating)  17:33:53

18   Q  Okay  Here's the rest of the exhibit       17:33:56

19   A  Okay                              17:34 03

20     (The witness reviewed Exhibit 1064 )     17:34:21

21 BY MR BRIDGES:                           17:34:21

22   Q  I just want to verify, Mr Grove, that these  17:34:21

23 were produced by ASTM  I just want to verify that   17:34:23

24 Exhibit 1064 consists of an E-mail to you from   17:34:27

25 Lorraine Carli at NFPA --               17:34:31

                                        Page 238

1      MR. FEE: Is this 1065, did you say?    17:34:37

2      MR. BRIDGES: 1064.                 17:34:40

3      MR. FEE: Okay.  Sorry.             17:34:42

4      MR. BRIDGES: -- an E-mail to you by Lorraine  17:34:43

5 Carli of NFPA, including two attachments.  One's   17:34:47

6 called an "SDO Proposal," and the other is called "SDO  17:34:49

7 Power Point Presentation."              17:34:53

8      I'll represent to Mr. Fee that the last    17:34:56

9 attachment is one of these phantom attachments.    17:35:01

10     MR. FEE: Okay.                     17:35:09

11     THE WITNESS: Is there a question?  I'm    17:35:14

12 sorry.                                 17:35:15

13 BY MR. BRIDGES:                          17:35:17

14   Q. Do you recall receiving this E-mail and the  17:35:17

15 attachments from Lorraine Carli at NFPA?     17:35:18

16   A. Yes, I do.                       17:35:23

17   Q. Does this pertain to the retention of APCO,  17:35:24

18 which we referred to -- which you referred to earlier  17:35:26

19 in testimony?                          17:35:29

20     MR. FEE: Objection. Vague. Form.      17:35:30

21     THE WITNESS: Yeah, it appears as if it did.  17:35:36

22 BY MR. BRIDGES:                          17:35:41

23   Q. Does this relate to the engagement that ASTM  17:35:41

24 and NFPA had with APCO for government relations   17:35:50

25 outreach?                              17:35:55

                                        Page 239

1      MR. FEE:  Objection.  Vague.          17:35:58

2      THE WITNESS:  Who are the organizations you  17:36:07

3 mentioned?                             17:36:09

4 BY MR. BRIDGES:                          17:36:09

5   Q. I just mentioned ASTM and NFPA.        17:36:09

6   A.  Yes.                           17:36:13

7      (Deposition Exhibit 1065 was marked for    17:37:17

8      identification.)                  17:37:17

9      MR. BRIDGES:  I've handed you Exhibit 1065.  17:37:17

10   Q. Do you recognize this exhibit?         17:37:20

11     (The witness reviewed Exhibit 1065.)     17:37:30

12     THE WITNESS:  Yes.                 17:37:43

13 BY MR. BRIDGES:                          17:37:44

14   Q. What was redacted from the first page and a  17:37:44

15 half of Exhibit 1065?                   17:37:48

16     MR. FEE:  Objection.  Calls for speculation.  17:37:50

17     THE WITNESS:  Yeah.  I don't have knowledge  17:37:52

18 what was redacted.                     17:37:55

19 BY MR. BRIDGES:                          17:38:05

20   Q. Has ASMA -- has ASME, to your knowledge,   17:38:05

21 entered into any agreement with ASTM regarding   17:38:10

22 potential litigation?                  17:38:15

23     MR. FEE:  Hold on one second.          17:38:18

24     (Pause in proceedings.)             17:38:30

25     MR. FEE:  You can answer that yes or no.   17:38:31

                                        Page 240

1      THE WITNESS:  I don't know            17:38:38

2 BY MR  BRIDGES:                          17:38:40

3   Q  At this time are you aware of whether ASTM   17:38:40

4 was contemplating litigation against Public Resource?  17:38:42

5      MR. FEE:  Objection  To the extent your   17:38:46

6 awareness would be as a result of any communications   17:38:49

7 from counsel, I do instruct you not to answer  If you   17:38:53

8 have an awareness otherwise, you can answer   17:38:53

9      THE WITNESS:  I don't recall           17:39:05

10 BY MR  BRIDGES:                          17:39:07

11   Q  Do you recall what discussions you had with   17:39 07

12 personnel at NFTA or ASME about Emily Bremer?   17:39:11

13   A  I'd be speculating, but I believe it's -- I   17:39:26

14 see that Scott Cooper -- she asked Scott Cooper from   17:39:32

15 ANSI if she would introduce -- "I'd very much   17:39:36

16 appreciate it if you would introduce some of the SDO   17:39:41

17 folks  He introduced me " And that's the extent of   17:39:43

18 the E-mail I see in front of me             17:39:53

19   Q  What's the extent of your knowledge?  I'm   17:39:56

20 asking you apart from that document  What discussions   17:39:59

21 did ASTM have with personnel at NFPA and ASME about   17:40:02

22 Emily Bremer?                          17:40:11

23     MR FEE:  Objection  Beyond the scope of his   17:40:12

24 designation and calls for speculation       17:40:14

25     THE WITNESS:  Yeah  I may have let other   17:40:16

                                        Page 241

1  SDOs, including NFPA and ASME, know that I had the   17:40:18
2  opportunity to speak with Ms Bremer   17:40:25
3  BY MR  BRIDGES:   17:40:30
4    Q  Was there something secret about your   17:40:30
5  conversations with those organizations about   17:40:31
6  Ms Bremer?   17:40:33
7    MR  FEE:  Objection  Vague  Beyond the   17:40:34
8  scope of his designation   17:40:37
9    THE WITNESS:  Not that I recall   17:40:39
10  BY MR  BRIDGES:   17:40:41
11    Q  Is there anything confidential --   17:40:41
12    MR  FEE:  Same objections   17:40:44
13  BY MR  BRIDGES:   17:40:45
14    Q  -- about your interactions with Ms Bremer?   17:40:45
15    MR  FEE:  Same objection, plus potentially   17:40:51
16  calls for a legal conclusion   17:40:52
17    THE WITNESS:  Not that I recall   17:41:05
18    (Deposition Exhibit 1066 was marked for   17:41:36
19    identification )   17:41:36
20    MR  BRIDGES:  Mr Grove, I've shown you   17:41:37
21  Exhibit 1066   17:41:38
22    Q  And I ask is this an E-mail that you received   17:41:40
23  from Len Morrissey?   17:41:45
24    A  Yes   17:41:49
25    Q  Who is Len Morrissey?   17:41:51
Page 242

1  A. Len Morrissey is a staff manager that works   17:41:53
2  with our consumer products safety related committees.   17:41:56
3    (Deposition Exhibit 1067 was marked for   17:43:26
4    identification )   17:43:26
5  BY MR. BRIDGES:   17:43:26
6    Q. Do you -- strike that.   17:43:26
7  Is Exhibit 1067 an exchange of E-mail   17:43:27
8  correspondence between James Thomas and you?   17:43:31
9    (The witness reviewed Exhibit 1067.)   17:43:37
10    THE WITNESS:  Yes, it is.   17:43:37
11  BY MR. BRIDGES:   17:43:42
12    Q. Mr. Thomas wrote down below, "Not much here.   17:43:42
13  I hope this is level of enthusiasm he generates."  Did   17:43:45
14  you understand what he meant by "not much here"?   17:43:50
15    MR. FEE:  Objection.  Calls for speculation.   17:43:55
16  It's beyond the scope of his designation.   17:43:56
17    THE WITNESS:  I don't know what he meant.   17:44:01
18  BY MR. BRIDGES:   17:44:04
19    Q. Where were you at the time that he said to   17:44:04
20  you, "Wear sunscreen and have fun"?   17:44:07
21    A. Well, I believe -- I said, "I'll be coaching   17:44:10
22  Little League this weekend."   17:44:15
23    And he replied, "Wear sunscreen and have   17:44:16
24  fun."   17:44:18
25    Q. What is it about the argument about setting   17:44:20
Page 243

1  standards free, will spur investment and integration   17:44:22
2  that really grated on you?   17:44:27
3    MR. FEE:  Objection.  Beyond the scope of his   17:44:28
4  designation.   17:44:30
5    THE WITNESS:  I would fundamentally disagree   17:44:32
6  with that statement.   17:44:34
7  BY MR. BRIDGES:   17:44:38
8    Q. What's the factual basis for your   17:44:38
9  disagreement?   17:44:41
10    MR. FEE:  Objection.  Beyond the scope of his   17:44:41
11  designation.   17:44:43
12    THE WITNESS:  I believe it's based on a   17:44:45
13  misperception about the -- what's contained in the   17:44:47
14  standards.   17:44:57
15  BY MR. BRIDGES:   17:45:00
16    Q. You think that setting standards for you   17:45:00
17  would not spur investment and innovation?   17:45:03
18    MR. FEE:  Same objection.   17:45:07
19    THE WITNESS:  I believe the best way to spur   17:45:09
20  innovation is to -- using standards, is to work in the   17:45:11
21  voluntary consensus standards environment, open,   17:45:16
22  transparent, with a lot of openness, transparency, and   17:45:20
23  due process where you can work with your peers from   17:45:25
24  all different stakeholder communities to reach a   17:45:28
25  consensus decision.  That's where I believe the   17:45:31
Page 244

1  innovation and the creativity that's involved in the   17:45:34
2  innovation process comes into play.   17:45:37
3  BY MR. BRIDGES:   17:45:41
4    Q. Was it your understanding that Carl Malamud   17:45:41
5  criticized the consensus process of developing the   17:45:48
6  standards?   17:45:52
7    A. I don't recall the specifics, but I believe   17:45:55
8  something like if the standard was available -- more   17:45:57
9  widely available, that would allow others that aren't   17:46:01
10  members of committees to comment and reiterate on the   17:46:07
11  existing standard outside of the normal process of   17:46:14
12  standards development.   17:46:17
13    Q. And you think that would be a bad idea?   17:46:18
14    MR. FEE:  Objection.  This is beyond the   17:46:21
15  scope of his designation again.   17:46:22
16    But you can answer.   17:46:23
17    THE WITNESS:  I do.  I believe the best place   17:46:25
18  to do that is an environment based on consensus, not   17:46:26
19  one person acting independently.   17:46:30
20  BY MR. BRIDGES:   17:46:31
21    Q. Well, what about other people making comments   17:46:32
22  based on their awareness of standards that they had   17:46:34
23  not previously been aware of?   17:46:38
24    MR. FEE:  Objection.  Again, beyond the scope   17:46:40
25  of his designation.   17:46:42
Page 245

62 (Pages 242 - 245)

1 You can answer.                              17:46:44
2 THE WITNESS:  We would welcome them to        17:46:47
3 participate in the standards development process and   17:46:51
4 share their ideas freely with their colleagues to   17:46:53
5 contribute to the development of an appropriate   17:46:57
6 standard.                                     17:46:59
7 BY MR. BRIDGES:                               17:47:02
8 Q.  But not as a member of the public?        17:47:02
9 MR. FEE:  Objection.  Vague.  It's also, I   17:47:04
10 think, beyond the scope of his designation.   17:47:08
11 To the extent you understand the question.   17:47:11
12 THE WITNESS:  So I believe members of the   17:47:13
13 public do, from time to time, comment on ASTM   17:47:14
14 standards and share information with technical   17:47:17
15 committees.  So there's already avenues available to   17:47:20
16 them to work with voluntary consensus standards   17:47:25
17 bodies.                                       17:47:29
18 BY MR. BRIDGES:                              17:47:31
19 Q.  So I didn't hear any of your answers just now   17:47:31
20 referring to the fact that Mr. Malamud had thought   17:47:32
21 that the public should have access to the published   17:47:35
22 standards for free when those standards have been   17:47:37
23 incorporated by reference.  Do you believe that   17:47:41
24 Mr. Malamud's belief that the public should have free   17:47:46
25 and unfettered access to ASTM standards that have been   17:47:50
Page 246

1 incorporated by reference by the federal government is   17:47:56
2 harmful?                                      17:48:04
3 MR. FEE:  Objection.  Vague.  Calls for   17:48:06
4 speculation.  Beyond the scope of his designation.  I   17:48:08
5 object also to the factual statements before the   17:48:16
6 question.                                     17:48:19
7 But you can answer.                           17:48:20
8 THE WITNESS:  Obviously, I find that it would   17:48:22
9 be in the best interests of ASTM to strike a balance   17:48:27
10 in providing the public with some access so they can   17:48:32
11 read standards that are incorporated by reference, and   17:48:35
12 that's why I've worked on this project for years, to   17:48:37
13 get the reading room up and running.  So I don't   17:48:40
14 disagree on that aspect of what you just put in front   17:48:45
15 of me.                                        17:48:47
16 BY MR. BRIDGES:                              17:48:51
17 Q.  You don't disagree with the statement of free   17:48:51
18 and unfettered access by the public to ASTM standards   17:48:57
19 that have been incorporated by reference by the   17:49:02
20 federal government --                         17:49:05
21 A.  Is harmful.                              17:49:21
22 Q.  No.  The transcription here didn't make   17:49:23
23 sense.  So I need to start again.             17:49:28
24 Is it your view -- sorry.  Is it ASTM's view   17:49:30
25 that free and unfettered access by the public to   17:49:37
Page 247

1 ASTM's standards that have been incorporated by   17:49:41
2 reference by the federal government would be harmful   17:49:44
3 to ASTM?                                      17:49:51
4 MR. FEE:  Objection.  Asked and answered.   17:49:54
5 Form.  Vague.                                 17:49:59
6 Go ahead.                                     17:50:07
7 THE WITNESS:  I think that the reading room   17:50:07
8 that we've crafted represented a lot of internal   17:50:08
9 debate and represented the position that the ASTM   17:50:12
10 board of directors felt comfortable with as our   17:50:16
11 solution to providing the public with access to the   17:50:20
12 standards incorporated by reference while retaining   17:50:23
13 our ability to protect the viability of ASTM as a   17:50:26
14 standards development enterprise, to meet our future   17:50:30
15 commitments to our stakeholders.              17:50:33
16 BY MR. BRIDGES:                              17:50:35
17 Q.  So your answer to my question is "yes"?   17:50:35
18 MR. FEE:  Objection.  Mischaracterizes his   17:50:37
19 testimony.                                    17:50:38
20 BY MR. BRIDGES:                              17:50:40
21 Q.  Well, you're making a speech.  I'm asking you   17:50:40
22 to answer my question, please.                17:50:42
23 MR. FEE:  Objection.  Asked and answered.   17:50:44
24 He's done that.                               17:50:44
25 BY MR. BRIDGES:                              17:50:46
Page 248

1 Q.  My question is is it ASTM's view that free   17:50:46
2 and unfettered access by the public to ASTM's   17:50:50
3 standards that have been incorporated by reference by   17:50:56
4 the federal government would be harmful to ASTM?   17:50:58
5 MR. FEE:  Objection.  Vague and ambiguous.   17:51:04
6 BY MR. BRIDGES:                              17:51:12
7 Q.  And I'd like a "yes" or "no" to that, please.   17:51:12
8 MR. FEE:  No.  You will get whatever answer   17:51:15
9 he wants.                                     17:51:18
10 Asked and answered, and form.                17:51:28
11 BY MR. BRIDGES:                              17:51:29
12 Q.  Yes or no?                               17:51:29
13 MR. FEE:  No.  Answer how you feel is   17:51:30
14 appropriate.                                  17:51:32
15 THE WITNESS:  Free and unfettered access at   17:51:33
16 this time, we don't understand what the   17:51:35
17 consequences -- unintended consequences might be on   17:51:37
18 our ability to fund our standards development   17:51:42
19 enterprise.  So I would be concerned.         17:51:47
20 BY MR. BRIDGES:                              17:51:50
21 Q.  As Tim would be concerned.               17:51:50
22 MR. FEE:  Same objection.                    17:51:53
23 THE WITNESS:  Yes.                           17:51:54
24 BY MR. BRIDGES:                              17:51:55
25 Q.  ASTM is afraid?                          17:51:55
Page 249

Page 250

1    MR FEE:  Objection  Vague  This is beyond    17:51:57
2  the scope of his designation  Calls for speculation    17:52:02
3    You can answer if you know how ASTM feels    17:52:09
4    THE WITNESS:  ASTM would be concerned    17:52:16
5  BY MR  BRIDGES:    17:52:19
6    Q  Is it ASTM's view that free and unfettered    17:52:19
7  access to ASTM's standards that have    17:52:22
8  been incorporated by reference by the federal    17:52:27
9  government would be harmful to the public?    17:52:29
10    MR FEE:  Objection  Vague and ambiguous  I    17:52:35
11  think it might be beyond the scope of his designations    17:52:40
12  too  Well, to the extent it's beyond the scope of his    17:52:45
13  designation, I'll object on that and --    17:52:52
14    THE WITNESS:  Okay  And I would answer it    17:52:56
15  could be if it undermined our ability to continue to    17:52:57
16  develop standards under the model we have for 118    17:53:00
17  years, which allows participation of all key    17:53:02
18  stakeholder groups by keeping the barriers low    17:53:02
19  BY MR  BRIDGES:    17:53:07
20    Q  What facts are available to you -- strike    17:53:07
21  that    17:53:11
22    What facts are available to ASTM to indicate    17:53:11
23  that free and unfettered access by the public to the    17:53:17
24  ASTM standards that have been incorporated by    17:53:24
25  reference by the federal government would cause ASTM    17:53:28

Page 251

1  to lose the ability to continue its standards    17:53:35
2  development process to the extent it has done so in    17:53:43
3  the past?    17:53:47
4    MR. FEE:  Objection.  Vague and ambiguous.    17:53:48
5  Lack of foundation.  Calls for expert testimony.    17:53:49
6  Form.    17:53:54
7    THE WITNESS:  And one concern would be that    17:53:57
8  it devalues the collection of standards, the volumes    17:53:58
9  of standards that we sell to our commercial customers    17:54:01
10  in order to fund our standards development enterprise    17:54:05
11  which helps to offset all the various costs that are    17:54:10
12  associated with standards development.    17:54:13
13  BY MR. BRIDGES:    17:54:17
14    Q.  I understand your answer to relate to a    17:54:17
15  concern, but my question was different.  My question    17:54:19
16  was what facts are available to ASTM?  What's your    17:54:22
17  answer?    17:54:28
18    MR. FEE:  Same objections, plus asked and    17:54:29
19  answered.    17:54:31
20    THE WITNESS:  And my facts would be based on    17:54:32
21  conversations with folks like John Pace and other    17:54:34
22  experts on the sale of standards.  The impacts on    17:54:35
23  ASTM's business model.    17:54:42
24  BY MR. BRIDGES:    17:54:44
25    Q.  What conversations have you had with such    17:54:44

Page 252

1  experts other than John Pace?    17:54:46
2    MR. FEE:  Objection.  Vague.    17:54:48
3    THE WITNESS:  I can't recall.    17:54:53
4  BY MR. BRIDGES:    17:54:55
5    Q.  You can't recall any?    17:54:55
6    MR. FEE:  Same objection.    17:54:56
7    THE WITNESS:  No.    17:54:58
8  BY MR. BRIDGES:    17:55:01
9    Q.  Can you recall how many conversations of that    17:55:01
10  sort you've had?    17:55:02
11    A.  I can't recall a number, but it's a frequent    17:55:05
12  topic of discussion with John Pace and I.    17:55:07
13    Q.  Are you aware of any case studies where other    17:55:12
14  voluntary consensus standards have been made available    17:55:21
15  to the public on a free and unfettered basis?    17:55:31
16    MR. FEE:  Objection.  Vague.  Calls for    17:55:35
17  speculation.  Beyond the scope of his designation.    17:55:37
18  May call for expert testimony.    17:55:43
19    THE WITNESS:  I'm not aware of case studies    17:55:47
20  such as you've suggested.    17:55:49
21  BY MR. BRIDGES:    17:55:51
22    Q.  Is ASTM aware of standards -- voluntary    17:55:51
23  consensus standards developed by the Internet    17:55:56
24  engineering task force?    17:56:01
25    MR. FEE:  Objection.  This is beyond the    17:56:03

Page 253

1  scope of his designation.  Calls for speculation to    17:56:04
2  the extent you're asking him to speak on behalf of the    17:56:08
3  company.    17:56:10
4    If you know individually, you can answer.    17:56:11
5    THE WITNESS:  I've heard of the IETF, but we    17:56:13
6  have no interactions with them that I'm aware of.  I    17:56:16
7  don't study their policies.    17:56:19
8  BY MR. BRIDGES:    17:56:23
9    Q.  You're aware that IETF engages in the    17:56:23
10  development of voluntary consensus standards?    17:56:26
11    MR. FEE:  Objection.  Vague.  Calls for    17:56:29
12  speculation.  Beyond the scope of his designation.    17:56:30
13    THE WITNESS:  What I know about IETF is    17:56:34
14  that they're a voluntary -- I'm not aware that they    17:56:37
15  develop voluntary consensus standards under an ANSI    17:56:39
16  accredited process.  I believe they might develop    17:56:42
17  consortia or other types of specifications.  We    17:56:45
18  wouldn't consider those to be voluntary consensus    17:56:49
19  standards.    17:56:52
20  BY MR. BRIDGES:    17:56:56
21    Q.  Are you aware of any shortcomings in the    17:56:56
22  process by which the Internet engineering task force    17:56:58
23  develops standards?    17:57:03
24    MR. FEE:  Objection.  Calls for speculation.    17:57:04
25  It's beyond the scope of his designation.    17:57:06

64 (Pages 250 - 253)

1    MR. BRIDGES:  Strike that.    17:57:10
2    Q.  Is ASTM aware of any shortcomings in the    17:57:12
3  process by which engineering task force develops    17:57:15
4  standards?    17:57:19
5    MR. FEE:  Objection.  Calls for speculation.    17:57:19
6  It's beyond the scope of his designation.  May call    17:57:21
7  for expert testimony.    17:57:23
8    To the extent you know personally, you can    17:57:25
9  answer.    17:57:26
10    THE WITNESS:  Not to my knowledge.    17:57:27
11  BY MR. BRIDGES:    17:57:28
12    Q.  A while back -- excuse me.    17:57:28
13    (Pause in proceedings.)    17:58:18
14  BY MR. BRIDGES:    17:58:18
15    Q.  I believe you said that Mr. Malamud's view    17:58:18
16  that grated on your nerves was based on a    17:58:27
17  misunderstanding of what's in the standards.  Do you    17:58:31
18  recall that testimony?    17:58:33
19    MR. FEE:  Objection.  Mischaracterizes his    17:58:34
20  testimony.  Beyond the scope of his designation.    17:58:36
21    THE WITNESS:  Now that I hear that read back    17:58:44
22  to me, I had a poor choice of words.    17:58:47
23  BY MR. BRIDGES:    17:58:50
24    Q.  What should you have said?    17:58:50
25    A.  I was --    17:58:56

                                                 Page 254

1    MR. FEE:  Just so we're clear, you didn't    17:59:01
2  actually read an answer back to him; right?    17:59:03
3    MR. BRIDGES:  No.    17:59:06
4    THE WITNESS:  Could I refresh my memory or    17:59:08
5  have it read back?    17:59:10
6    (Record read.)    18:00:15
7  BY MR. BRIDGES:    18:00:15
8    Q.  What was the "misperception" that you    18:00:15
9  referred to in that answer?    18:00:17
10    A.  So it would depend on the specific standard,    18:00:21
11  and I don't recall which ones or -- may have been    18:00:23
12  mentioned in the business week article that this    18:00:28
13  discussion was relating to.  But the idea that -- as    18:00:30
14  we discussed earlier, the idea that, outside of a    18:00:38
15  standards development process, there could be    18:00:41
16  innovation around a standard to me raises -- is a    18:00:44
17  misperception because it will just create more    18:00:50
18  confusion in the marketplace where there will be    18:00:53
19  conflicting standards developed by somebody or some    18:00:56
20  group of people who didn't operate under a consensus    18:01:00
21  based accredited process to develop rigorous quality    18:01:05
22  based standards.    18:01:10
23    And that's where I believe ASTM standards    18:01:11
24  empower innovation and creativity.    18:01:14
25    Q.  Does ASTM believe that only its process and    18:01:19

                                                 Page 255

1  standards empower and promote creativity?    18:01:23
2    MR. FEE:  Objection  Beyond the scope of his    18:01:26
3  designation  Calls for speculation  Vague and    18:01:29
4  ambiguous    18:01:35
5    THE WITNESS:  No, I can think of another    18:01:39
6  BY MR. BRIDGES:    18:01:42
7    Q  Do you think it's possible that some new    18:01:42
8  modes of standards development might compete with ASTM    18 01:45
9  in the formulation of standards appropriate for    18:01:51
10  governments to incorporate by reference?    18:01:58
11    MR. FEE:  Objection  Beyond the scope of his    18:02:01
12  designation  Calls for speculation  Vague and    18:02:02
13  ambiguous and hypothetical    18:02 06
14    THE WITNESS:  It's possible    18:02:12
15    MR. BRIDGES:  Why don't we take a break, and    18:02:24
16  I'll sort out how much time we have left    18:02:26
17    THE VIDEOGRAPHER:  Off the record at 18:01    18:02:29
18    (A recess was taken from 6:01 p m    18:14:27
19  to 6:13 p m )    18:14:27
20    THE VIDEOGRAPHER:  Back on the record here at    18:14:27
21  18:13    18:14:29
22    MR. BRIDGES:  Mr Grove, I've shown you    18:14:38
23  Exhibit 1068, which is a document produced by ASTM    18:14:43
24  This is an E-mail from ASTM to someone regarding    18:14:47
25  ASTM's policies in response to a request for    18:14:55

                                                 Page 256

1  permission; is that correct?    18:15:01
2    (Deposition Exhibit 1068 was marked for    18:15:06
3    identification.)    18:15:06
4    THE WITNESS:  It appears to be.    18:15:06
5    (Deposition Exhibit 1069 was marked for    18:15:25
6    identification.)    18:15:25
7  BY MR. BRIDGES:    18:15:25
8    Q.  I ask you to look at Exhibit 1069.  This is a    18:15:25
9  discussion within ASTM with an underlying E-mail    18:15:31
10  thread regarding a request for permission to use    18:15:35
11  material from an ASTM standard; is that correct?    18:15:47
12    MR. FEE:  Objection.  Calls for speculation.    18:15:51
13  Beyond the scope of his designation.    18:15:53
14  BY MR. BRIDGES:    18:15:55
15    Q.  I think it's within the scope of his    18:15:55
16  designation.  That's why I'm asking him about it.    18:15:57
17    MR. FEE:  We can agree to disagree on that.    18:16:01
18    THE WITNESS:  I'm sorry.  What was the    18:16:25
19  question I'm saying "yes" or "no" to?    18:16:26
20  BY MR. BRIDGES:    18:16:30
21    Q.  This is an internal ASTM E-mail; correct?    18:16:30
22    MR. FEE:  Objection.  Lack of foundation.    18:16:35
23    THE WITNESS:  Correct.    18:16:37
24  BY MR. BRIDGES:    18:16:38
25    Q.  Who is Ms. Hooper?    18:16:38

                                                 Page 257

                                      65 (Pages 254 - 257)

| | | |
|---|---|---|
| 1 | A. Kathe Hooper is responsible for permissions | 18:16:38 |
| 2 | at ASTM. | 18:16:47 |
| 3 | Q. Who is Joe Koury? | 18:16:49 |
| 4 | A. Joe Koury is a staff manager that works with | 18:16:51 |
| 5 | technical committees. | 18:16:53 |
| 6 | (Deposition Exhibit 1070 was marked for | 18:17:06 |
| 7 | identification.) | 18:17:06 |
| 8 | MR. BRIDGES: I'm showing you Exhibit 1070. | 18:17:06 |
| 9 | Q. This is an E-mail from Ms. Hooper responding | 18:17:12 |
| 10 | to a permission request; is that correct? | 18:17:17 |
| 11 | (The witness reviewed Exhibit 1070.) | 18:17:58 |
| 12 | THE WITNESS: Yes. | 18:17:59 |
| 13 | (Deposition Exhibit 1071 was marked for | 18:18:11 |
| 14 | identification.) | 18:18:11 |
| 15 | BY MR. BRIDGES: | 18:18:12 |
| 16 | Q. Exhibit 1071 is an E-mail from Sarah Petre to | 18:18:12 |
| 17 | you and others; is that correct? | 18:18:16 |
| 18 | (The witness reviewed Exhibit 1071.) | 18:18:26 |
| 19 | MR. FEE: Objection. Lack of foundation -- | 18:18:26 |
| 20 | strike that. No objection. | 18:18:27 |
| 21 | THE WITNESS: So it's an E-mail between ASTM | 18:18:42 |
| 22 | and Congressional staff and then ASTM staff, correct. | 18:18:44 |
| 23 | BY MR. BRIDGES: | 18:18:48 |
| 24 | Q. And within the ASTM -- | 18:18:48 |
| 25 | A. Correct. | 18:18:51 |

Page 258

| | | |
|---|---|---|
| 1 | Q. And it's discussing Congressional | 18:18:51 |
| 2 | legislation; is that correct? | 18:18:54 |
| 3 | MR. FEE: Objection. The document speaks for | 18:18:56 |
| 4 | itself. | 18:18:57 |
| 5 | THE WITNESS: Legislation passed the House | 18:19:10 |
| 6 | and now it's being referred to the Senate, and Sarah | 18:19:11 |
| 7 | Petre recognized that there's references to ASTM | 18:19:16 |
| 8 | standards which are out of date, and she wanted to | 18:19:18 |
| 9 | contact the staffer to make him aware of that fact. | 18:19:22 |
| 10 | BY MR. BRIDGES: | 18:19:26 |
| 11 | Q. Was this a discussion about incorporation by | 18:19:26 |
| 12 | reference? | 18:19:28 |
| 13 | MR. FEE: Same objection. | 18:19:29 |
| 14 | THE WITNESS: It's a discussion about | 18:19:35 |
| 15 | Congressional intent to use the most recent standard, | 18:19:37 |
| 16 | I believe. | 18:19:40 |
| 17 | BY MR. BRIDGES: | 18:19:41 |
| 18 | Q. Is that for Congress's use in making an | 18:19:41 |
| 19 | incorporation by reference into a federal law of an | 18:19:48 |
| 20 | ASTM standard? | 18:19:52 |
| 21 | MR. FEE: Same objection. | 18:19:54 |
| 22 | THE WITNESS: It appears, yes. | 18:19:55 |
| 23 | BY MR. BRIDGES: | 18:20:01 |
| 24 | Q. Does ASTM have a view as to which versions of | 18:20:01 |
| 25 | its standard Congress should include in its | 18:20:07 |

Page 259

| | | |
|---|---|---|
| 1 | legislation that causes an incorporation by reference? | 18:20:11 |
| 2 | MR. FEE: Can you read that back to me, | 18:20:19 |
| 3 | please. | 18:20:20 |
| 4 | (Record read.) | 18:20:38 |
| 5 | MR. FEE: Objection to form. Beyond the | 18:20:39 |
| 6 | scope of his designation. Calls for speculation. | 18:20:40 |
| 7 | BY MR. BRIDGES: | 18:20:48 |
| 8 | Q. You may answer. | 18:20:48 |
| 9 | MR. FEE: Hold on. | 18:20:49 |
| 10 | Lack of foundation. | 18:20:53 |
| 11 | Go ahead. | 18:20:55 |
| 12 | THE WITNESS: Yeah. So I think we think -- | 18:20:55 |
| 13 | we want to make sure that Congress is aware of the | 18:20:59 |
| 14 | fact there may be a more recent version because | 18:21:02 |
| 15 | oftentimes it may be unintended that they're not using | 18:21:05 |
| 16 | the most recent version. | 18:21:08 |
| 17 | BY MR. BRIDGES: | 18:21:12 |
| 18 | Q. Ms. Petre asked you whether ASTM should | 18:21:12 |
| 19 | request that Congress use the language. Does ASTM | 18:21:17 |
| 20 | ever request Congress to use particular language | 18:21:21 |
| 21 | regarding ASTM standards? | 18:21:25 |
| 22 | MR. FEE: Objection. Beyond the scope of his | 18:21:32 |
| 23 | designation. | 18:21:36 |
| 24 | You can answer. | 18:21:36 |
| 25 | THE WITNESS: Okay. I can think of instances | 18:21:38 |

Page 260

| | | |
|---|---|---|
| 1 | like this where Congress -- what's happening here is | 18:21:40 |
| 2 | this is incorporation by reference by Congress and not | 18:21:45 |
| 3 | by an agency, and the concern that's expressed at | 18:21:48 |
| 4 | times by our committee members is if Congress acts to | 18:21:52 |
| 5 | designate a specific standard in legislation that | 18:21:57 |
| 6 | freezes that piece of -- that reference in statute for | 18:22:02 |
| 7 | years to come and agencies -- since it's something | 18:22:06 |
| 8 | that Congress said, agencies will simply say, "Hey, | 18:22:12 |
| 9 | talk to Congress, not to agencies about it." | 18:22:16 |
| 10 | So that's a concern that I'm familiar with, | 18:22:19 |
| 11 | and I can't tell if that -- I don't recall the | 18:22:21 |
| 12 | circumstances of this here, but that's the most | 18:22:26 |
| 13 | current version language. That's why we're interested | 18:22:29 |
| 14 | in making sure Congress is aware as a more current | 18:22:32 |
| 15 | version. | 18:22:36 |
| 16 | BY MR. BRIDGES: | 18:22:38 |
| 17 | Q. Mr. Grove, again, you didn't answer my | 18:22:38 |
| 18 | question. My question is does ASTM ever request | 18:22:40 |
| 19 | Congress to use particular language regarding ASTM | 18:22:43 |
| 20 | standards? | 18:22:46 |
| 21 | MR. FEE: Same objections. Plus asked and | 18:22:47 |
| 22 | answered. | 18:22:50 |
| 23 | THE WITNESS: Yes. | 18:22:52 |
| 24 | BY MR. BRIDGES: | 18:22:55 |
| 25 | Q. To your knowledge, has ASTM ever asked | 18:22:55 |

Page 261

66 (Pages 258 - 261)

1 Congress or a federal agency not to incorporate any of   18:23:00
2 its standards by reference?                18:23:04
3       MR FEE:  Objection  Beyond the scope of his   18:23:07
4 designation                18:23:09
5       THE WITNESS:  To my knowledge, no  I believe   18:23:15
6 it's possible that there's been reasons why committees   18:23:21
7 haven't wanted to see standards incorporated by   18:23:24
8 reference, but I can't recall an instance       18:23:26
9 BY MR  BRIDGES:                18:23:31
10      Q  Has ASTM ever imposed conditions on whether   18:23:31
11 the federal government may incorporate its standards   18:23:37
12 by reference?                18:23:42
13      MR FEE:  Same objection  Vague as well   18:23:44
14      THE WITNESS:  I don't have direct knowledge   18:23:52
15 It was before my time at ASTM, but I understand at one   18:23:54
16 point in time there was a concern that Congress was   18:23:58
17 perhaps taking ASTM -- taking key content from an ASTM   18:24:03
18 standard and placing it in a piece of legislation and   18:24:09
19 that ASTM would be concerned about that       18:24:13
20 BY MR  BRIDGES:                18:24:16
21      Q  Why would ASTM be concerned about that?   18:24:16
22      MR FEE:  Objection  Beyond the scope of his   18:24:20
23 designation  Calls for speculation  Lack of       18:24:22
24 foundation                18:24:24
25      THE WITNESS:  It would be taking the standard   18:24:26

Page 262

1 out of context from what the voluntary consensus   18:24:27
2 process encompassed in ASTM standards development   18:24:31
3 enterprises wanted to see represented in the standard   18:24:35
4 BY MR  BRIDGES:                18:24:43
5      Q  Has ASTM ever asked an agency to use specific   18:24:43
6 language in a regulation?                18:24:47
7       MR FEE:  Objection  Beyond the scope of his   18:24:50
8 designation                18:24:52
9       THE WITNESS:  It's possible that we have   18:24:54
10 BY MR  BRIDGES:                18:24:55
11      Q  Do you recall a particular -- any instance?   18:24:55
12      MR FEE:  Same objection                18:24:57
13      THE WITNESS:  I don't recall a particular   18:24:59
14 time                18:24:59
15 BY MR  BRIDGES:                18:25:01
16      Q  Do you have an estimate as to the number of   18:25:01
17 times it's occurred?                18:25:06
18      MR FEE:  Objection  Lack of foundation   18:25:08
19 Beyond the scope of his designation  Calls for   18:25:09
20 speculation                18:25:11
21      THE WITNESS:  It's -- there's a process that   18:25:13
22 our committees would have to follow  They would have   18:25:17
23 to -- the executive committee of a committee would   18:25:19
24 have to reach a consensus that they want to see an   18:25:24
25 ASTM standard included in a regulation  And so I   18:25:28

Page 263

1 don't think it happens very often, but I believe it   18:25:33
2 has happened in the last 10 years since I've been at   18:25:35
3 ASTM                18:25:38
4 BY MR  BRIDGES:                18:25:40
5      Q  Are you saying that there has to be a   18:25:40
6 consensus process in order to cooperate with a federal   18:25:42
7 government in incorporating standards by reference?   18:25:46
8       MR FEE:  Objection  Mischaracterizes his   18:25:52
9 testimony  Vague                18:25:54
10      You can answer                18:25:58
11      THE WITNESS:  No, that's not what I'm saying   18:26:00
12 BY MR  BRIDGES:                18:26:14
13      Q  Do you know whether any federal official has   18:26:14
14 taken advantage of the reading room that ASTM provides   18:26:17
15 the public?                18:26:22
16      MR FEE:  Objection  Vague                18:26:23
17      THE WITNESS:  I don't know specifically   18:26:30
18 whether they have  I do know I've received accolades   18:26:31
19 from federal agencies, the fact that it exists  So I   18:26:34
20 would presume that they have       18:26:40
21 BY MR  BRIDGES:                18:26:44
22      Q  How much money has ASTM received from the   18:26:44
23 federal government in each of the last five years?   18:26:49
24      MR FEE:  Objection  Vague                18:26:58
25      THE WITNESS:  Well, I believe we've received   18:27:00

Page 264

1 anywhere from $650,000 to $900,000 per year over the   18:27:04
2 last five years from the federal government.       18:27:11
3 BY MR. BRIDGES:                18:27:17
4      Q.  Were some of that money provided by the   18:27:17
5 federal government in order to facilitate the       18:27:22
6 standards development process?                18:27:25
7       MR. FEE:  Objection.  Calls for speculation.   18:27:27
8 Vague.                18:27:29
9       THE WITNESS:  To my knowledge, none of it   18:27:31
10 was.                18:27:32
11 BY MR. BRIDGES:                18:27:37
12      Q.  What were the main categories of payments by   18:27:37
13 the federal government to ASTM over the last five   18:27:41
14 years?                18:27:46
15      MR. FEE:  Objection.  Vague.       18:27:47
16 BY MR. BRIDGES:                18:27:48
17      Q.  In other words, what were the payments for   18:27:48
18 ASTM to do?                18:27:50
19      MR. FEE:  Same objection, plus form.   18:27:52
20      THE WITNESS:  I can think of -- that we would   18:27:53
21 sell standards to federal agencies.  That would be one   18:27:56
22 source of revenue.                18:28:00
23 BY MR. BRIDGES:                18:28:01
24      Q.  What other sources of revenue?       18:28:01
25      A.  I believe that we have a number of federal   18:28:03

Page 265

67 (Pages 262 - 265)

1 employees that participate in ASTM as full voting 18:28:06
2 members.  So they would pay a $75-per-year fee to be a 18:28:09
3 member of ASTM. 18:28:14
4 Q. And you're counting that in the figures that 18:28:16
5 you gave me earlier? 18:28:18
6 A. Yes. 18:28:19
7 Q. What other sources of funds from the federal 18:28:20
8 government have there been for ASTM? 18:28:23
9 A. Right.  That's all I'm aware of.  That's all 18:28:27
10 I'm aware of.  We also have certification and training 18:28:33
11 programs, which I don't believe the federal government 18:28:41
12 is too involved in, but we receive a small stipend 18:28:44
13 from the U.S. Department of Agriculture to assist them 18:28:49
14 in running a -- the U.S. bio preferred program. 18:28:53
15 Q. Anything else? 18:29:00
16 A. We run a proficiency testing program, which 18:29:06
17 the U.S. Department of Defense participates in.  So 18:29:08
18 it's not related to standards, but it's another source 18:29:14
19 of revenue from the federal government. 18:29:18
20 Q. Does ASTM have any means of identifying who 18:29:22
21 the originator was of any particular language in its 18:29:26
22 standards? 18:29:33
23 MR. FEE:  Objection.  Vague.  Compound.  To 18:29:34
24 the extent it calls for a legal conclusion, I'd also 18:29:43
25 object on that basis. 18:29:46

Page 266

1 Go ahead. 18:29:47
2 THE WITNESS:  To the extent those are legal 18:29:51
3 terms, I'm aware of an ASTM standards development 18:29:52
4 process.  I'm not aware of a way to trace origins back 18:29:56
5 to a specific individual. 18:30:02
6 BY MR. BRIDGES: 18:30:06
7 Q. Is there any -- strike that. 18:30:06
8 How many individuals provide language or 18:30:11
9 edits to the ASTM standards that have been 18:30:19
10 incorporated by reference? 18:30:24
11 MR. FEE:  Objection.  Vague.  Compound. 18:30:25
12 THE WITNESS:  That would be very difficult to 18:30:37
13 calculate.  I need to ask are you referring to 18:30:39
14 standards that have already been incorporated by 18:30:41
15 reference? 18:30:43
16 BY MR. BRIDGES: 18:30:44
17 Q. Yes. 18:30:44
18 A. Presumably, if those standards are being 18:30:47
19 revised by ASTM or re-approved for use, it will have 18:30:49
20 to go through a technical committee.  It has to. 18:30:55
21 That's the process for re-approving or revising 18:30:58
22 standards at ASTM.  So it would depend on how many 18:31:01
23 people are on that committee and what percentage 18:31:05
24 voted. 18:31:07
25 Q. How many individuals have provided language 18:31:11

Page 267

1 or edits to any version of ASTM standards where the 18:31:13
2 current ASTM standards have been incorporated by 18:31:25
3 reference? 18:31:33
4 MR. FEE:  Objection  It's beyond the scope 18:31:34
5 of his designation  Compound  Vague 18:31:35
6 THE WITNESS:  Because of the openness and 18:31:45
7 transparency and iterative innovative process that 18:31:49
8 ASTM encapsulates, I wouldn't know how to answer that 18:31:53
9 question, give you a number 18:31:56
10 MR BRIDGES:  There's one more exhibit I want 18:32:08
11 to find 18:32:10
12 (Deposition Exhibit 1072 was marked for 18:32:35
13 identification ) 18:32:35
14 MR  BRIDGES:  Mr Grove, I've handed you 18:32:35
15 Exhibit 1072 18:32:37
16 Q  What is this document? 18:32:39
17 A  It appears as if this is the ASTM form and 18:32:53
18 style book for how ASTM standards are displayed 18:32:57
19 Q  Does that create standards that persons must 18:33:07
20 follow in participating in the drafting and revision 18:33:15
21 process of ASTM standards? 18:33:18
22 MR FEE:  Objection  Vague  Compound 18:33:22
23 THE WITNESS:  No 18:33:31
24 BY MR  BRIDGES: 18:33:34
25 Q  Does that provide rules that persons must 18:33:34

Page 268

1 follow in participating in the drafting and revision 18:33:38
2 process of ASTM standards? 18:33:40
3 MR. FEE:  Objection.  Vague. 18:33:42
4 THE WITNESS:  Generally, yes. 18:33:44
5 MR. BRIDGES:  Where are we on time? 18:34:06
6 THE VIDEOGRAPHER:  18 minutes left. 18:34:10
7 MR. BRIDGES:  18 minutes left. 18:34:13
8 (Deposition Exhibit 1073 was marked for 18:35:00
9 identification.) 18:35:00
10 BY MR. BRIDGES: 18:35:00
11 Q. Mr. Grove, do you recognize Exhibit 1073? 18:35:00
12 A. I do. 18:35:13
13 Q. Does it represent the views of both ASTM and 18:35:16
14 ANSI? 18:35:20
15 MR. FEE:  Objection.  Compound.  Calls for 18:35:23
16 speculation.  Beyond the scope of his designation. 18:35:25
17 THE WITNESS:  I believe this is an error. 18:35:30
18 No.  I'm not familiar why this page would be stapled 18:35:32
19 to a presentation.  This is a speaker that came before 18:35:36
20 me on a panel followed by -- who probably didn't 18:35:39
21 provide a written presentation, which happens to be 18:35:44
22 stapled to a presentation which begins with the title 18:35:47
23 page on a presentation that I gave. 18:35:51
24 BY MR. BRIDGES: 18:35:54
25 Q. Okay.  So starting -- okay.  So there's a 18:35:54

Page 269

68 (Pages 266 - 269)

1  general workshop  That's reflected on the first page    18:35:56
2  And then there's a listing of Scott Cooper   Then    18:36:00
3  there's your name, and then what follows in the    18:36:03
4  exhibit is a presentation solely by you and not by    18:36:03
5  Mr Cooper; is that correct?    18:36:11
6      A  That would be my recollection of events, yes   18:36:13
7      Q  And then does that remaining portion starting    18:36:17
8  after your name reflect the views of ASTM at the time    18:36:20
9  of your presentation?    18:36:22
10     MR FEE: Objection  Calls for speculation    18:36:24
11  Beyond the scope of his designation  Compound as    18:36:26
12  well    18:36:29
13     You should read the whole thing if he's    18:36:38
14  asking you to verify all the use of ASTM    18:36:39
15     (The witness reviewed Exhibit 1073 )    18:37:01
16     THE WITNESS: Yes  I believe this, to the    18:37:01
17  best of my recollection, was the general views that    18:37:05
18  ASTM would have on this issue at the time of this    18:37:07
19  presentation    18:37:09
20     (Deposition Exhibit 1074 was marked for    18:38:01
21     identification )    18:38:01
22  BY MR BRIDGES:    18:38:01
23     Q  Mr Grove, Exhibit 1074 is a series of    18:38:01
24  E-mails among you and Katherine Morgan, Len Morrissey   18:38:07
25  and John Pace; is that correct?    18:38:15

Page 270

1      A.  Yes, it is.    18:38:26
2      MR. FEE: While I'm thinking of it, I'm going    18:39:08
3  to reserve the right to read and sign.    18:39:12
4      (Deposition Exhibit 1075 was marked for    18:39:29
5      identification.)    18:39:29
6      MR. BRIDGES: I'm handing you an exhibit    18:39:29
7  marked 1075 that consists of pages ASTM003314 to    18:39:31
8  ASTM003315.    18:39:37
9      (The witness reviewed Exhibit 1075.)    18:40:02
10  BY MR. BRIDGES:    18:40:02
11     Q.  Do you recognize this document?    18:40:02
12     A.  I do, yes.    18:40:22
13     Q.  This is an E-mail from Maureen Houck to a    18:40:29
14  number of senior staff at ASTM; is that correct?    18:40:32
15     A.  It is correct.    18:40:37
16     Q.  What does ITC -- sorry.  "ITMC" mean?    18:40:39
17     A.  I believe it's short for the Information    18:40:45
18  Technology Management Committee.    18:40:50
19     Q.  And --    18:40:54
20     MR. FEE: I'm going to object.  This appears    18:40:56
21  to be just one of many attachments to Exhibit 1075.    18:40:58
22     MR. BRIDGES: You know, I'm glad you    18:41:01
23  mentioned that because I don't think we got the other    18:41:02
24  attachments, and I'd like to get them, please.    18:41:04
25     MR. FEE: I don't know if that's true or not.    18:41:06

Page 271

1      MR. BRIDGES: I will check, but if we don't    18:41:09
2  have them, we expect to get them.    18:41:10
3      Q.  Can you please explain to me what the purpose   18:41:16
4  was or what you understood to be the purpose of the    18:41:20
5  page with the Bates number ending in -3315?    18:41:23
6      MR. FEE: Objection.  It's beyond the scope    18:41:33
7  of the designation.  Calls for speculation.    18:41:34
8      THE WITNESS: This represents a project that    18:41:39
9  ASTM staff is undertaking throughout the course of    18:41:42
10  2015 and -- I'm sorry.  2014 and 2015.  These would be    18:41:47
11  the items that are contained in the project.    18:41:53
12  BY MR. BRIDGES:    18:41:58
13     Q.  Has the project been approved?    18:41:58
14     MR. FEE: Objection.  Vague.  Beyond the    18:41:59
15  scope of his designation.    18:42:03
16     THE WITNESS: Project been approved?    18:42:06
17     MR. BRIDGES: Strike that.    18:42:08
18     Q.  Is the project underway?    18:42:09
19     MR. FEE: Objection.  Beyond the scope of his    18:42:11
20  designation.    18:42:13
21     THE WITNESS: So some of these activities may    18:42:16
22  be underway, but we don't believe that we are actively    18:42:18
23  pursuing all of them.    18:42:21
24  BY MR. BRIDGES:    18:42:23
25     Q.  Which ones is ASTM not actively pursuing?    18:42:26

Page 272

1      MR. FEE: Same objection.    18:42:31
2      THE WITNESS: Well, we're taking an    18:42:38
3  inventory.  We don't have great information about the    18:42:41
4  full extent of government participation.  So we're    18:42:45
5  taking an inventory of how many government reps are    18:42:50
6  participating in ASTM technical committees and where.    18:42:52
7  We're trying to find out more about how federal    18:42:56
8  agencies use ASTM standards.    18:42:58
9      MR. FEE: Can you read the question back.    18:43:03
10     MR. BRIDGES: Not when he's in the middle of    18:43:08
11  his answer, please.  Afterwards, you can do that.    18:43:12
12     MR. FEE: He's answering the wrong question.    18:43:14
13     MR. BRIDGES: Well, let him finish.    18:43:16
14     MR. FEE: Read the question back.    18:43:19
15     MR. BRIDGES: No.  No.    18:43:21
16     MR. FEE: Yes.    18:43:21
17     MR. BRIDGES: You stopped your witness from    18:43:22
18  speaking.  That's ridiculous.  That's improper.    18:43:24
19     MR. FEE: Wait until she reads the question    18:43:28
20  back.    18:43:30
21     (Record read.)    18:43:48
22     THE WITNESS: It's really hard to say because    18:43:48
23  we're very early in the process of working on this,    18:43:49
24  but I can tell you it's been scaled back.  This is a    18:43:53
25  pretty ambitious activity.  I believe the last two    18:43:55

Page 273

69 (Pages 270 - 273)

1  bullet points are things that we're not going to be        18:44:04
2  able to accomplish or pursue.        18:44:07
3  BY MR. BRIDGES:        18:44:13
4      Q.  What standards development activities --        18:44:13
5  strike that.        18:44:16
6          What activities has ASTM had to scale back to        18:44:16
7  date as a consequence of the actions of the        18:44:22
8  defendants?        18:44:27
9          MR. FEE:  Objection.  Beyond the scope of the        18:44:29
10  designation.  May call for expert testimony.  Vague        18:44:33
11  and ambiguous.        18:44:38
12          THE WITNESS:  Yeah.  I wouldn't be able to        18:44:41
13  answer what specific activities we've scaled back.        18:44:43
14  BY MR. BRIDGES:        18:44:46
15      Q.  Have any activities been scaled back by ASTM        18:44:46
16  as a consequence of the actions of the defendants?        18:44:49
17          MR. FEE:  Same objections.        18:44:51
18  BY MR. BRIDGES:        18:44:52
19      Q.  Of the defendant, I should say.        18:44:52
20      A.  To the best of my knowledge, no.        18:44:59
21      Q.  Has ASTM changed its standards development        18:45:05
22  process in any way because of the activities of        18:45:11
23  defendant?        18:45:18
24          MR. FEE:  Objection.  To the extent that        18:45:19
25  changes were made at the direction of counsel -- let        18:45:21
                                                          Page 274

1  me think about that.  Hold on one second.        18:45:24
2          (Pause in proceedings.)        18:45:33
3          MR. FEE:  I'm going to object and instruct        18:45:33
4  you not to answer to the extent that activities were        18:45:34
5  changed at the direction of counsel because of        18:45:38
6  activities of the defendant.        18:45:40
7          If there is something done because of        18:45:43
8  defendant, not at the direction of counsel, you can        18:45:44
9  answer that.        18:45:46
10          THE WITNESS:  I'm not aware of changes.        18:45:47
11  BY MR. BRIDGES:        18:45:56
12      Q.  Have you gone to the Public Resource website        18:45:56
13  to find ASTM standards?        18:46:01
14      A.  I have.        18:46:08
15      Q.  Have other persons at ASTM?        18:46:08
16          MR. FEE:  Objection.  Beyond the scope of his        18:46:11
17  designation.  Calls for speculation.        18:46:13
18          THE WITNESS:  I'm aware of at least one        18:46:14
19  person.        18:46:16
20  BY MR. BRIDGES:        18:46:16
21      Q.  Who is that?        18:46:16
22      A.  That would be Sarah Petre, formerly of our        18:46:17
23  staff.        18:46:19
24      Q.  How many times have you visited the Public        18:46:20
25  Resource website?        18:46:22
                                                          Page 275

1          MR. FEE:  Objection.  Beyond the scope of his        18:46:23
2  designation.        18:46:25
3          THE WITNESS:  At least once.        18:46:26
4  BY MR. BRIDGES:        18:46:30
5      Q.  More than five times?        18:46:30
6          MR. FEE:  Same objection.        18:46:32
7          THE WITNESS:  I wouldn't be able to give you        18:46:33
8  a number.  I would say less than five times.        18:46:35
9  BY MR. BRIDGES:        18:46:37
10      Q.  How many times did Ms. Petre go to the Public        18:46:38
11  Resource website?        18:46:41
12          MR. FEE:  Objection.  Beyond the scope of his        18:46:41
13  designation.  Calls for speculation.        18:46:43
14          THE WITNESS:  I wouldn't be able to answer        18:46:45
15  that.  I don't know.        18:46:46
16  BY MR. BRIDGES:        18:46:49
17      Q.  Do you know how many times ASTM or its agents        18:46:49
18  have accessed Public Resource's website --        18:46:53
19          MR. FEE:  Objection.        18:46:59
20  BY MR. BRIDGES:        18:47:01
21      Q.  -- for the purposes of this litigation?        18:47:01
22          MR. FEE:  Objection.  Calls for speculation.        18:47:03
23  Beyond the scope of his designation.        18:47:05
24          To the extent that work was done at the        18:47:07
25  direction or by counsel, that would be responsive to        18:47:09
                                                          Page 276

1  that question, I instruct you not to disclose that.        18:47:13
2          You could otherwise answer.        18:47:17
3          THE WITNESS:  I don't know.        18:47:20
4  BY MR. BRIDGES:        18:47:49
5      Q.  Have you ever participated in something        18:47:49
6  called the "Corner Bakery Group"?        18:47:54
7      A.  Yes, I have.        18:47:55
8      Q.  Did you create it?        18:47:56
9          MR. FEE:  Objection.  Vague.        18:47:58
10          THE WITNESS:  I don't know who created it.  I        18:47:59
11  could have.  I could have.        18:48:01
12  BY MR. BRIDGES:        18:48:04
13      Q.  It involves meetings at a restaurant called        18:48:04
14  the Corner Bakery Cafe; correct?        18:48:06
15      A.  That's correct.        18:48:08
16      Q.  Where is it located in relation to ASTM's        18:48:08
17  Washington office?        18:48:12
18      A.  About two blocks.        18:48:13
19      Q.  What is the most frequent topic of discussion        18:48:19
20  at the Corner Bakery group meetings?        18:48:23
21      A.  It would depend.  It varies from month to        18:48:23
22  month.  I wouldn't be able to give you an answer.        18:48:28
23      Q.  What topics other than Public Resource are        18:48:34
24  most frequently discussed?        18:48:37
25          MR. FEE:  Objection.  Lack of foundation.        18:48:38
                                                          Page 277

1 Misleading.                                          18:48:40
2        THE WITNESS:  Funding for NIST, the National   18:48:42
3 Institute of Standards and Technology.  I recall OFAC,   18:48:45
4 the Treasury Department's restrictions on sharing   18:48:48
5 standards with certain countries.  Congress's interest   18:48:52
6 in energy and dependence.  It's just a way for the   18:48:59
7 Washington representatives of standards organizations   18:49:06
8 to exchange information about what's happening in   18:49:08
9 Washington.                                          18:49:10
10 BY MR. BRIDGES:                                     18:49:12
11    Q.  Who participates in the Corner Bakery group?   18:49:12
12        MR. FEE:  Objection.  Vague.                 18:49:17
13        Remember to give me a second.  Go ahead.     18:49:18
14        THE WITNESS:  I rarely participate.  It's    18:49:21
15 mostly lower level.  Each organization usually assigns   18:49:23
16 the lowest person in their Washington office to   18:49:26
17 attend.                                             18:49:29
18 BY MR. BRIDGES:                                     18:49:30
19    Q.  Who attends for ASTM?                        18:49:30
20    A.  Most often it was Sarah Petre.              18:49:34
21    Q.  Who else from ASTM participated?             18:49:39
22    A.  Well, I recall --                            18:49:42
23        MR. FEE:  Objection.  Vague.                 18:49:42
24        THE WITNESS:  I recall attending two or three   18:49:44
25 meetings in the last 15 months.  And perhaps Anthony   18:49:49

Page 278

1 Quinn from ASTM would attend some months.           18:49:52
2 BY MR. BRIDGES:                                     18:49:58
3    Q.  Are you aware of any government employees     18:49:58
4 ever attending a meeting of the Corner Bakery group?   18:50:00
5    A.  I cannot recall any government employee       18:50:07
6 attending.                                           18:50:09
7    Q.  Whom do you most frequently interact with at   18:50:21
8 NFPA?                                               18:50:25
9        MR. FEE:  Objection.  Beyond the scope of his   18:50:26
10 designation.  Are you asking him personally or as   18:50:28
11 ASTM?                                               18:50:31
12 BY MR. BRIDGES:                                     18:50:32
13    Q.  Him personally.                              18:50:32
14    A.  I would say Megan Housewright in their       18:50:34
15 Washington office.                                  18:50:36
16    Q.  Whom do you interact with most frequently at   18:50:39
17 ASHRAE?                                             18:50:42
18        MR. FEE:  Objection.  Beyond the scope.      18:50:44
19        THE WITNESS:  I'm struggling with his name.   18:50:50
20 His name is Mark.  He's in their Washington office.  I   18:50:51
21 don't have a lot of interaction with him at all.    18:50:55
22 BY MR. BRIDGES:                                     18:51:02
23    Q.  Who do you interact with most frequently at   18:51:02
24 ANSI?                                               18:51:04
25        MR. FEE:  Same objection.                    18:51:06

Page 279

1        THE WITNESS:  Well, I'm involved in a lot of   18:51:07
2 activities for ASTM that -- so my -- probably someone   18:51:08
3 responsible for their global policy, which would be   18:51:15
4 Steve -- I'm sorry  Joe Tretler                     18:51:18
5 BY MR  BRIDGES:                                     18:51:21
6    Q.  Who is Steve Kramer?  Do you know Mr  Kramer?   18:51:27
7    A   I do  Steve Kramer was a member of the board   18:51:30
8 of directors for a period of three years from the    18:51:34
9 University of Wisconsin                             18:51:36
10    Q.  Have you discussed this litigation with him?   18:51:37
11        MR  FEE:  Objection                         18:51:40
12        To the extent you had discussed litigation   18:51:41
13 with him at the request of counsel, I would instruct   18:51:43
14 you not to disclose that, but you can answer        18:51:48
15 otherwise                                           18:51:50
16        THE WITNESS:  I have not discussed litigation   18:51:50
17 with Steve Kramer                                   18:51:52
18 BY MR  BRIDGES:                                     18:51:53
19    Q.  Have you discussed Public Resource with Steve   18:51:53
20 Kramer?                                             18:51:56
21        MR  FEE:  Same instruction                  18:51:56
22        This is also beyond the scope of his         18:51:57
23 designation                                         18:51:58
24        THE WITNESS:  Yes, I might have             18:52:02
25 BY MR  BRIDGES:                                     18:52:03

Page 280

1    Q.  In what context?                             18:52:03
2        MR. FEE:  Same instruction with respect to    18:52:06
3 privileged communications.                          18:52:07
4        And, again, this is beyond the scope of his   18:52:08
5 designation.                                        18:52:11
6        THE WITNESS:  Yeah.  I can't think of a       18:52:13
7 specific instance, but it's possible I've prepared   18:52:14
8 materials for the board that might have referenced the   18:52:17
9 organization you mentioned.                         18:52:21
10 BY MR. BRIDGES:                                     18:52:24
11    Q.  Who is Randy Jennings?                       18:52:24
12    A.  Randy Jennings is a former member of the ASTM   18:52:27
13 board of directors.                                 18:52:32
14        MR. FEE:  We're now at the seven-minute time   18:52:32
15 limit; right?                                       18:52:34
16        THE VIDEOGRAPHER:  (Nods head.)             18:52:35
17        MR. FEE:  Last time you said you'd give      18:52:38
18 ASHRAE two more questions.  So I'll do the same      18:52:40
19 courtesy to you.                                    18:52:43
20        MR. BRIDGES:  That's fine.  Thank you very    18:52:50
21 much, Mr. Grove.                                    18:52:52
22        THE WITNESS:  Thank you.                     18:52:54
23        MR. FEE:  I have no questions.               18:53:00
24        Thane, do you have any questions?            18:53:02
25        MR. REHN:  No questions.                     18:53:03

Page 281

71 (Pages 278 - 281)

| | |
|---|---|
| 1     THE VIDEOGRAPHER: This is the end of the  18:53:06 | 1     ACKNOWLEDGMENT OF DEPONENT |
| 2 deposition of Mr. Jeffrey Grove. We are off the  18:53:08 | 2 |
| 3 record at 18:52.    18:53:13 | 3     I, JEFFREY GROVE, do hereby certify that I |
| 4    (Witness excused.)    18:53:16 | 4 have read the foregoing pages, _____ to _____, |
| 5    (Deposition concluded at 6:52 p.m.)  18:53:16 | 5 and that the same is a correct transcription of the |
| 6 | 6 answers given by me to the questions therein |
| 7 | 7 propounded, except for the corrections or changes in |
| 8 | 8 form or substance, if any, noted in the attached |
| 9 | 9 Errata Sheet. |
| 10 | 10 |
| 11 | 11 _____ |
| 12 | 12 DATE     SIGNATURE |
| ... | ... |
| Page 282 | Page 284 |

1    C E R T I F I C A T E
2    I do hereby certify that the aforesaid
3 testimony was taken before me, pursuant to
4 notice, at the time and place indicated; that
5 said deponent was by me duly sworn to tell
6 the truth, the whole truth, and nothing but
7 the truth; that the testimony of said
8 deponent was correctly recorded in machine
9 shorthand by me and thereafter transcribed
10 under my supervision with computer-aided
11 transcription; that the deposition is a true
12 and correct record of the testimony given by
13 the witness; and that I am neither of counsel
14 nor kin to any party in said action, nor
15 interested in the outcome thereof.

19 Nancy J. Martin, RMR, CSR

22 Dated: March 18, 2015

Page 283

**[& - 15:09]**

| & | | | |
|---|---|---|---|
| **&**   3:4,12 4:3 6:13 13:19 | **1023**   5:11 56:25 57:3 | **1047**   8:11 193:19,22 193:25 194:2,6 | **1072**   11:9 268:12,15 |
| **0** | **1024**   5:14 57:8,11 57:14 | **1048**   8:13 193:17 195:20,22,25 197:10,16 | **1073**   11:12 269:8,11 270:15 |
| **001791**   10:6 | **1025**   5:16 57:21,24 58:6 | **1049**   8:15 199:8,11 | **1074**   11:15 270:20 270:23 |
| **001815**   9:21 | **1026**   5:18 58:8,11 58:15 | **1050**   8:17 199:16,19 199:23 200:2,17 201:6 202:18 | **1075**   11:17 271:4,7 271:9,21 |
| **003315**   11:18 | **1027**   5:20 61:20,22 61:24 62:18 | **1051**   8:19 203:1,4 | **10:17**   46:11,12 |
| **003489**   7:12 | **1028**   5:22 63:16,22 | **1052**   8:22 203:9,12 204:16,24 | **10:26**   46:13,15 |
| **01215**   1:4 2:4 13:13 | **102897**   8:6 | **1053**   9:5 205:14,20 | **11**   7:12 58:23 101:4 101:5,8,9 |
| **022620**   178:23 | **1029**   6:5 64:15,17 | **1054**   9:7 206:21,23 207:7,17 | **1111**   3:6 |
| **022631**   8:10 | **103**   7:13 | **1055**   9:9 208:6,9,13 | **115**   219:17 220:10 224:10 |
| **024219**   6:11 | **1030**   6:7 65:16,18 66:2 90:6 | **1056**   9:11 210:24 211:2,5 217:2 | **118**   105:8 250:16 |
| **025575**   8:16 | **103032**   207:4 | **1057**   9:13 220:15,18 220:21 | **119**   207:19 |
| **027188**   8:23 | **1031**   6:10 67:7,9,14 68:14 | **1058**   9:15 228:6,9 | **11:31**   82:4,5 |
| **029834**   8:20 | **1032**   6:12 82:9,12 82:17 83:3 | **1059**   9:17 229:15,18 | **11:40**   82:6,8 |
| **06**   229:14 | **1033**   6:15 83:8,10 83:14,17 | **1060**   9:19 229:22,24 | **12**   43:22 88:3 |
| **092009**   10:23 | **1034**   6:20 84:5,6,11 | **1061**   10:5 230:10,13 230:14 | **12,700**   70:15 |
| **097**   200:1 | **1035**   6:22 84:13,15 84:19 | **1062**   10:8 232:4,7 232:12 | **1201**   2:18 |
| **097945**   10:9 | **1036**   7:5 84:21,22 84:24 178:19 | **1063**   10:10 233:2,5 | **1250**   2:18 13:8 |
| **099360**   238:13 | **1037**   7:8 86:3,6 | **1064**   10:12 238:6,9 238:10,20,24 239:2 | **128**   7:17,19 |
| **099370**   10:15 | **1038**   7:10 99:23 100:1,2 | **1065**   10:14 239:1 240:7,9,11,15 | **12:56**   128:5,6 |
| **1** | **1039**   7:13 103:9,10 | **1066**   10:16 242:18 242:21 | **12th**   3:16 |
| **1**   1:25 7:9,11,16,18 7:20,23 8:8,12,14 8:18 9:8 10:11,13 10:17,19 69:18 187:4 | **104**   7:15 | **1067**   10:18 243:3,7 243:9 | **13**   8:17 11:13 122:21 |
| **1,000**   98:18 | **1040**   7:15 104:2,5,9 | **1068**   10:20 256:23 257:2 | **13,000**   70:2 |
| **1,300**   181:2 | **1041**   7:17 128:10,13 128:16,18 | **1069**   10:22 257:5,8 | **132**   7:21 |
| **1,400**   122:21 | **1042**   7:19 128:24 129:1,4,7 | **1070**   11:5 258:6,8 258:11 | **134**   8:5 |
| **10**   15:14 21:13 38:2 38:8 88:3 264:2 | **1043**   7:21 132:12,16 132:17 133:7,12 | **1071**   11:7 258:13,16 258:18 | **137**   8:7 |
| **100368**   6:21 | **1044**   8:5 134:8,10 134:12,16 176:22 | | **13:59**   128:9 |
| **101185**   209:14 | **1045**   8:7 137:13,16 | | **14**   5:3 |
| **101186**   9:10 | **1046**   8:9 142:12,14 142:16 143:2 | | **140**   98:17 |
| **101289**   6:23 | **178:16,20,21** | | **142**   8:9 |
| **101779**   7:6 | | | **14:06**   130:13 |
| **102032**   9:12 | | | **15**   11:14 14:19 43:23 278:25 |
| **102044**   9:14 | | | **15660**   5:15 |
| **102055**   9:16 | | | **15667**   5:17 |
| **102076**   7:14 | | | **15780**   5:21 |
| **1022**   5:9 53:5,8 | | | **15830**   5:23 |
| | | | **15913**   6:6 |
| | | | **15:09**   176:15 |

[15:43 - 875-2389]

| | | | |
|---|---|---|---|
| **15:43**   190:3 | **2009**   24:20 108:14 | **240**   10:14 | **4:18**   205:11 |
| **15:44**   190:7 | **2010**   108:14 | **242**   10:16 | **4:58**   228:2 |
| **16546**   6:8 | **2010158**   1:24 | **243**   10:18 | **5** |
| **16:02**   200:23 | **2011**   10:12 31:7,8 | **25**   53:2,4 | **5**   7:14 8:6 10:15 |
| **16:08**   201:2 | 36:14 44:18,25 | **25,000**   222:15 | 19:23 101:4,8 217:3 |
| **16:17**   205:9 | 64:13 86:16 109:25 | 223:14 | 217:6,6 |
| **16:18**   205:13 | 112:4 135:22 137:3 | **257**   10:20,22 | **50**   126:18 |
| **17**   7:19 | **2012**   5:12 6:8,16 | **258**   11:5,7 | **512-4073**   4:8 |
| **17:07**   228:5 | 11:14 25:16 39:2 | **268**   11:9 | **53**   5:9 |
| **18**   43:22 269:6,7 | 83:23 88:12 103:1 | **269**   11:12 | **5400**   11:16 |
| 283:22 | 223:6 | **27**   6:7 62:22 | **555**   3:15 |
| **1850**   90:5 | **2013**   6:17 7:19 8:14 | **270**   11:15 | **56**   5:11 |
| **18710**   9:18 | 8:17,19 48:10,18 | **271**   11:17 | **560**   4:5 |
| **18:01**   256:17 | 83:24 102:21 | **27th**   4:6 | **57**   5:14,16 |
| **18:13**   256:21 | 143:22 177:24 | **284**   1:25 | **58**   5:18 |
| **18:52**   282:3 | 180:1,20,22,25 | **2:04**   130:9,10 | **5:07**   228:3 |
| **19299**   6:18 | 181:23 182:4,13 | **2:06**   130:11 | **6** |
| **193**   8:11 | 183:4,12 187:4 | **2:58**   228:1 | **6**   1:15 2:15 101:5,9 |
| **195**   8:13 | **2014**   7:11 9:7 11:17 | **3** | **61**   5:20 |
| **19653**   11:8 | 100:6 182:14 | **3**   5:23 6:19,21 9:14 | **63**   5:22 |
| **199**   8:15,17 | 272:10 | 9:16 10:9 19:23 | **64**   6:5 |
| **1993**   22:17 | **201404111.pdf.** | 53:17,22 | **65**   6:7 |
| **1995**   95:23 | 207:13 | **30**   1:15 2:15 53:2,4 | **650,000**   265:1 |
| **1:13**   1:4 2:4 13:13 | **2015**   1:20 2:20 | **30,000**   181:16 | **67**   6:10 |
| **1:59**   128:7 | 11:10 13:1,5 272:10 | **30647**   5:19 | **6:01**   256:18 |
| **2** | 272:10 283:22 | **31**   221:20 222:16,25 | **6:13**   256:19 |
| **2**   5:15,21 6:6,11,23 | **202**   3:8 | 223:15 | **6:52**   282:5 |
| 7:7 8:10,16,19,21 | **203**   8:19,22 | **3315**   272:5 | **7** |
| 8:23 9:6,12,18,21 | **205**   9:5 | **35**   53:3 | **7**   5:17 8:13 217:3,6 |
| 10:7,21 11:16,19 | **206**   9:7 | **350**   186:24 | 217:6 |
| 19:23 53:17,22 | **208**   9:9 | **3:09**   176:16 | **71**   74:8 |
| 130:18,20 | **21**   10:12 100:6 | **3:26**   176:17,19 | **739-5353**   3:8 |
| **20**   11:17 | 135:22 137:3 | **3:43**   190:4 | **75**   266:2 |
| **20,000**   43:23 | **210**   9:11 | **3:44**   190:5 | **8** |
| **2000**   22:17 | **22**   6:14 | **4** | **8**   5:10 15:14 |
| **20004**   3:7 | **220**   9:13 | **4**   1:20 2:20 5:19 | **80**   11:11 225:12 |
| **2001**   22:22 | **225**   95:2 | 9:10 10:23 11:6,8 | **8124**   74:8 |
| **2004**   22:22 23:1 | **228**   9:15 | 13:1,5 | **82**   6:12 |
| 105:16 108:19 | **229**   9:17,19 | **415**   3:18 4:8 | **83**   6:15 |
| 109:2 112:4 | **230**   10:5 | **43**   5:13 | **84**   6:20,22 7:5 |
| **2005**   109:3 | **232**   10:8 | **4:02**   200:24 | **86**   7:8 |
| **2008**   83:7 170:18,18 | **233**   10:10 | **4:08**   200:25 | **875-2389**   3:18 |
| 170:21 | **238**   10:12 | **4:17**   205:10 | |
| | **24**   9:7 53:17,22 | | |
| | 102:21 | | |

Page 2

**[88,500 - agency's]**

| | | | |
|---|---|---|---|
| **88,500** 149:12,16 | **academic** 107:16 | **acting** 55:17 245:19 | **addressing** 108:25 |
| **885** 122:7,15,23 | **academies** 34:25 | **action** 79:15 124:19 | **administration** |
| **9** | **acceptance** 237:13 | 283:14 | 22:13 38:9,10 50:1 |
| **9** 6:9 83:7 | **access** 105:3 106:8 | **actions** 45:7 49:24 | 184:1 |
| **90** 225:11,13,20 | 107:8,15,20 108:8 | 55:7 99:7 108:7 | **administrative** 64:9 |
| **900,000** 265:1 | 108:17 110:17 | 153:19 154:3,20 | 86:17 136:22 209:6 |
| **94104** 3:17 | 111:4,10,21 112:9 | 155:2,9 274:7,16 | **adopt** 53:19 118:8 |
| **94105** 4:7 | 112:13 113:2 | **active** 34:7 | **adopted** 70:22,24 |
| **9504** 1:23 2:20 | 115:25 116:9,24 | **actively** 272:22,25 | 71:21,24 72:2,9,11 |
| **95372** 10:21 | 118:3,23 120:1,17 | **activities** 27:15 | 72:11 |
| **98311** 9:6 | 120:22 121:5,11 | 29:15 58:1 70:1 | **adoption** 237:16 |
| **99** 7:10 | 166:4 167:13 | 96:2 118:6 144:23 | **advancement** 95:23 |
| **990** 57:5,9 | 180:16 183:16 | 147:8,20 149:7 | **advantage** 264:14 |
| **9:20** 2:19 13:1,6 | 184:21,23 202:1,6 | 165:7,14 196:17 | **advice** 33:9 |
| **9:26** 18:2,3 | 208:24 210:14 | 197:16 272:21 | **advise** 76:3 |
| **9:37** 18:4,6 | 213:1,14,18,24 | 274:4,6,13,15,22 | **advisory** 24:8 |
| **a** | 214:5 215:1,17 | 275:4,6 280:2 | **advocacy** 34:21 |
| **a.m.** 2:19 13:1 18:3 | 216:4,9,16 217:25 | **activity** 29:1,11 30:6 | **affairs** 21:17,19 |
| 18:4 46:12,13,15 | 219:10,24 221:21 | 31:10 44:13 45:10 | 29:10 30:4 32:8,16 |
| 82:5,6 | 223:9,25 226:3 | 273:25 | 42:13,18 43:7,8 |
| **a119** 95:24 | 227:8 230:2 246:21 | **acts** 135:13 261:4 | 44:11 59:3,12 61:16 |
| **aashto** 102:14,14 | 246:25 247:10,18 | **actual** 55:7 220:3 | 90:13,16 |
| **ability** 105:5 175:18 | 247:25 248:11 | **acus** 64:6,8,12 88:9 | **affect** 97:23 220:5 |
| 218:2 219:22 | 249:2,15 250:7,23 | 88:11,19 105:20,21 | **affordable** 210:13 |
| 248:13 249:18 | **accessed** 276:18 | 121:3 209:15 | **aforesaid** 283:2 |
| 250:15 251:1 | **accesses** 149:12,21 | **add** 117:3 118:14,15 | **afraid** 219:7 224:15 |
| **able** 27:22 39:1 | **accessing** 169:1 | 120:13 123:4,11 | 226:5 249:25 |
| 41:11 55:15 71:2 | **accolades** 185:24 | 207:3 210:3 238:11 | **agencies** 35:22 38:4 |
| 73:5 74:25 79:23 | 218:7 264:18 | **added** 122:14 123:9 | 93:15 94:3,16 95:1 |
| 83:6 89:22 101:11 | **accomplish** 274:2 | 207:6 | 95:6,14,25 96:8 |
| 101:14 108:12 | **accomplishments** | **addition** 15:7 52:24 | 97:2,8 109:10 |
| 109:1,23 122:25 | 6:16 83:22,24 | 60:21 77:22 211:23 | 112:13 121:13 |
| 136:8 143:23 | **accord** 20:11 | 212:1,8,11 214:7 | 124:1 125:13,14 |
| 144:19 146:1 | **accredited** 253:16 | **additional** 50:2 | 183:19,21,22,23 |
| 147:24 148:18 | 255:21 | 150:2 152:16 207:3 | 235:8 261:7,8,9 |
| 153:14,16 155:18 | **accurate** 209:21 | 214:8 | 264:19 265:21 |
| 164:22 172:17 | **accurately** 42:15 | **address** 113:23 | 273:8 |
| 173:22 182:25 | **accusing** 76:14 | 114:5,6,23 115:2,3 | **agency** 67:12 78:25 |
| 193:3 274:2,12 | **acknowledge** 216:3 | 115:13,19,23 169:2 | 79:2,15 96:13 113:3 |
| 276:7,14 277:22 | **acknowledgment** | 213:19 214:3,7 | 114:16 122:16 |
| **abridges** 3:19 | 284:1 | 215:2 | 123:5,6 124:3 125:2 |
| **absolutely** 172:5 | **acronym** 129:25 | **addressee** 207:1 | 206:6 233:25 235:7 |
| **abstracts** 110:14 | **act** 95:23 126:2 | **addressees** 137:21 | 261:3 262:1 263:5 |
| 212:5,6 | 135:17 145:9 160:4 | 204:17,25 | **agency's** 96:3 97:21 |
| | | | 98:19 |

[agenda - apart]

**agenda** 65:15 93:13 95:5,8,9,10
**agendas** 94:25
**agents** 276:17
**ago** 20:21 26:5 33:20 100:18 155:20,25 156:8,12 156:18,21 177:21 190:16
**agree** 177:7 179:1 215:4,16,19 216:2 216:21 230:2,24 257:17
**agreed** 211:11 226:24
**agreeing** 225:19
**agreement** 9:19 10:5 50:8,16 94:11 189:21 203:22 204:12 224:9 225:5 230:1,16,21,25 231:18 240:21
**agreements** 148:20 227:6
**agriculture** 266:13
**ahead** 19:14 42:7 76:8 77:4 78:23 81:14 113:24 115:5 115:6,21 117:4 123:25 137:10 149:25 151:4 154:12 156:5 158:1 168:17 174:13 178:7 179:17 190:11 192:17 193:16 248:6 260:11 267:1 278:13
**aided** 283:10
**air** 1:7 2:7 70:9 97:15
**al** 13:10
**align** 151:18 157:16
**alleged** 196:16 197:7,15

**allow** 106:8 148:20 224:9 245:9
**allowed** 222:22
**allowing** 223:8
**allows** 210:14 250:17
**ambiguous** 139:3 249:5 250:10 251:4 256:4,13 274:11
**ambitious** 273:25
**amended** 5:9 53:9
**america** 34:16
**american** 1:3,6,15 2:3,6,15 13:9 24:16 35:9 48:20 52:2,19 91:7 102:12 111:8 132:8 186:20
**amount** 108:3 153:17 154:2,19
**analysis** 59:19 143:23 157:9,9 196:18
**andrew** 3:13 13:18 173:8
**announced** 182:3 186:25 187:14
**announcement** 181:24 182:1
**announcements** 181:3,6,10 182:9,11 184:7,14 185:16
**announcing** 179:19
**annual** 16:3 17:1 18:9 182:4,13
**annually** 220:25 221:12 222:8
**ansi** 48:19 52:15 88:13,14,20 89:1,8 89:11,12,14,21 241:15 253:15 269:14 279:24
**answer** 12:3 24:5 25:17 27:1,22 34:4 39:20 41:11 45:3,24 46:4 47:15,17 49:18

51:22 53:15 54:10 54:13 55:15 56:6,15 57:7 58:4 62:9,9 71:18 76:11,18,20 77:4 78:23 80:3 93:24 94:22 95:19 96:13 97:12 98:24 107:23 108:16 109:4,15 112:8 114:2,6,20 116:3 118:2,4,10,20,22 119:3,7,12,17 120:3 120:7 122:25 130:15 131:1,2,25 132:1,6 133:5 134:20 135:25 136:2,10 137:6,9,10 137:11 140:1 141:12,25 144:13 144:19 150:11 153:14,16 154:7,12 154:15 172:4,17 173:19,22 174:13 174:13 177:8 178:6 185:11 186:8 187:18,19 188:4,13 188:25 190:12 191:6 192:17 193:22 194:4 195:6 195:7 196:11 197:22 198:24 199:1 203:16 204:1 204:11,19 212:23 215:11 220:14 221:10,14,15 222:11 224:15 231:24 233:21 236:4,6,8 240:25 241:7,8 245:16 246:1 247:7 248:17 248:22 249:8,13 250:3,14 251:14,17 253:4 254:9 255:2,9 260:8,24 261:17 264:10 268:8

273:11 274:13 275:4,9 276:14 277:2,22 280:14
**answered** 29:13 41:22 44:3 51:9 52:9 54:24 66:17 71:13 72:5 74:15 77:17,19 78:7 80:1 106:2 116:25 117:2 118:7,25 119:4,8,13 119:20 120:12 146:8 147:9 149:23 155:3,21 158:22 159:1 165:20 166:7 166:15 175:15,17 176:4 185:8 186:15 215:24 222:10 225:18 226:5,8,14 236:11,15,23 248:4 248:23 249:10 251:19 261:22
**answering** 76:12 78:14 122:5 188:23 199:2 273:12
**answers** 226:11 246:19 284:6
**anthony** 60:14,15 64:4 90:8 233:6 278:25
**anticipate** 94:15 115:7
**anticipating** 201:25 202:5
**anticipation** 136:5 137:8
**anybody** 33:6,16 43:13 80:6 129:16 147:12 153:1
**anyway** 191:14
**apart** 18:9,12 38:13 50:6 88:18 101:19 140:19 149:21 167:15 184:8,16 185:16 214:19 215:1 241:20

[apco - astm]

**apco** 26:16,23 27:5
27:16,20 28:23
29:24 36:3 42:22
43:19,21 44:1 64:24
65:11 109:24 110:3
183:10 200:10
201:10,14 239:17
239:24
**apec** 24:23
**apologies** 65:4
**apologize** 144:20
**appear** 62:18,22
136:17 218:11
228:10
**appearances** 3:1 4:1
**appeared** 104:1
**appearing** 158:2
**appears** 57:9,17
58:7 64:19,22 65:5
65:14,20 66:3 67:5
67:10 103:25
131:19 136:15
194:14 196:1 203:6
230:5,15 239:21
257:4 259:22
268:17 271:20
**applications** 55:18
56:3
**applied** 77:12
**apply** 129:25 231:5
231:11,18
**appointed** 24:6
**appreciate** 205:7
241:16
**approach** 116:16
**appropriate** 119:3
120:4 127:15
176:10 210:19
246:5 249:14 256:9
**approved** 267:19
272:13,16
**approving** 267:21
**approximately**
62:24 102:21
111:24

**april** 6:7 9:7
**architectural** 134:6
**archive** 149:22
152:22
**archives** 50:1
106:19 183:25
**area** 98:12 125:16
175:5 219:8
**areas** 79:2,16 97:19
**argue** 116:8,23
117:1
**arguing** 47:14
**argument** 216:6
243:25
**arlington** 89:5
**arose** 31:6 110:4
**art** 72:6,18
**article** 103:21
133:22 185:4
255:12
**articles** 17:4,6
**artistry** 169:3
**ascribed** 209:7
**ashrae** 279:17
281:18
**asia** 24:22
**asked** 29:13 33:9
36:24 37:3,10 41:22
44:2 48:14 51:9,11
51:14 52:9,23 54:24
66:17 69:4 71:13
72:5 74:15 77:17
80:1 83:22 106:2
116:25 117:14
118:7,25 120:12
129:22 146:8 147:9
149:23 155:3,21
158:22 159:1
165:19 166:7,15
175:15,20 176:4
185:8 186:15
191:14 192:5 198:9
215:24 222:10
225:18 226:8,14
236:10,15,22

241:14 248:4,23
249:10 251:18
260:18 261:21,25
263:5
**asking** 16:7 23:21
37:6 42:21 47:4,5
54:9 55:6,7 59:17
75:8 93:20 96:9
114:23 118:11
131:14 135:16
141:14 149:4 153:4
173:4,14 174:4,17
175:7,8,8,20,21
184:23 188:14
190:17,21 212:17
212:19 221:8 222:6
225:4 236:8 241:20
248:21 253:2
257:16 270:14
279:10
**asks** 124:3
**asma** 240:20
**asme** 25:15,22 27:4
27:7,20 28:14,16
32:21 36:25 65:10
65:20 66:1,4,8
135:14 240:20
241:12,21 242:1
**aspect** 247:14
**asserted** 131:19
**assign** 55:8
**assignment** 54:12
**assigns** 278:15
**assist** 32:16 266:13
**assistance** 124:10
**assistant** 80:16,17
85:20 207:24
**associate** 60:6 85:7
85:20,24 103:18
192:8
**associated** 105:20
251:12
**associates** 90:22
**association** 1:5 2:5
22:23 23:17 34:9

52:19 89:4 102:12
111:8 192:14,17
**assume** 21:5 92:10
94:23 99:19 108:13
146:25 147:3
149:15 225:8,16
**assumed** 99:18
**astm** 1:4 2:4 4:14
5:16 6:12 7:5,10
9:19 10:5 11:9
13:23,24 14:13,24
15:2 16:4 19:7,12
19:22 21:12,23 22:1
22:5,14,15 23:1,10
23:23 25:14,21
26:11 27:5,7,19
32:21 33:6,16 36:25
38:23 39:4,8,13,21
40:1,3 41:14 43:12
43:13,16,19,25 44:7
44:16,24 45:14,21
46:19,21 47:24 48:7
48:25 49:7 54:1,3,4
54:6,14 55:2,9,22
56:20 57:20,25
58:20,24,25 60:21
60:25 62:3,19,23
64:18 65:9,19 66:8
68:3,4 69:14 70:10
70:14 71:6,15,21
72:14,25 73:9,13,15
73:16,17 74:7,18
77:8,9,22 84:23
85:3,5 86:1 90:3
92:11 93:22 94:13
95:2 96:8 97:4,8,18
98:2,23 99:5 100:9
101:19 102:14
103:18 105:3,11
106:4,14,17,20,23
107:4,10 109:14
110:15 111:2 112:7
112:13,20 113:1,5,8
113:19,22 114:4,8,9
114:17,17 115:19

Veritext Legal Solutions
866 299-5127

[astm - attaching]

| | | | |
|---|---|---|---|
| 116:8,17,23 117:7 | 186:19 187:3,9,15 | 274:6,15,21 275:13 | **astm022627** 8:7 |
| 117:22 118:2,16,23 | 187:22 189:2,20 | 275:15 276:17 | **astm022630** 8:9 |
| 120:1,16,25 121:10 | 190:25 191:14 | 278:19,21 279:1,11 | **astm023336** 8:14 |
| 122:2,7,13,15,17,21 | 192:5 196:4,5,17,24 | 280:2 281:12 | **astm024218** 6:10 |
| 123:8,9,18,23,25 | 197:5,13,17,25 | **astm's** 17:7,8 18:21 | **astm0255574** 8:15 |
| 124:7,10,12,17,24 | 198:1 200:9 202:8 | 19:3 57:4 60:2 | **astm027093** 8:18 |
| 125:7,24 126:4,8,10 | 203:5,21 205:25 | 67:11 69:4,5,11,21 | 200:1 |
| 127:2 128:22 | 207:19 208:19,23 | 69:23 70:1,11 87:10 | **astm027187** 8:22 |
| 129:16 130:1 131:4 | 208:24 209:5,16 | 90:7 96:24 102:18 | **astm02893** 8:5 |
| 131:22 132:21,22 | 210:7,10 213:12 | 102:22 104:21 | **astm029833** 8:20 |
| 135:7,18,22 138:11 | 215:7 216:17,21 | 106:10 112:11 | **astm030644** 5:18 |
| 138:23 139:20 | 218:21 219:5,9,16 | 115:12 122:11 | **astm030712** 194:10 |
| 141:2,3,10,15 142:7 | 219:24 220:3 | 127:21 135:2 138:8 | **astm092006** 10:22 |
| 143:1 144:8,22 | 221:21 222:15,23 | 144:4 151:20,21 | **astm095373** 11:5 |
| 145:11,12,24 146:4 | 222:25 224:8,16,21 | 160:23 162:9 | **astm097943** 10:8 |
| 146:6,17,23 147:7 | 224:25 225:5,8,16 | 164:25 165:6,12 | **astm097980** 10:10 |
| 147:19 148:17,25 | 226:19 227:6,13,15 | 167:7,24 168:25 | **astm098310** 9:5 |
| 149:6,17,20 150:5,5 | 228:15 229:19 | 171:9,12 179:21 | **astm099269** 10:13 |
| 150:15,18 151:10 | 230:2,21,24 231:5 | 180:15 183:5 | 238:9,12 |
| 151:25 152:14,19 | 231:12 232:13 | 187:15 194:18 | **astm099335** 238:9 |
| 153:1,18,25 154:1 | 235:2,12,16,16,17 | 209:21 216:3 | **astm099366** 10:14 |
| 154:18,25 155:1,7 | 235:25 236:14,16 | 225:11,12 230:19 | **astm099834** 10:16 |
| 155:15,16 156:16 | 236:19 237:2,13,16 | 247:24 248:1 249:1 | **astm100366** 6:20 |
| 156:17,25 158:14 | 237:19 238:23 | 249:2 250:6,7 | **astm101183** 9:9 |
| 160:1,3,11 161:6,10 | 239:23 240:5,21 | 251:23 256:25 | **astm101288** 6:22 |
| 161:16,20 162:1,12 | 241:3,21 246:13,25 | 277:16 | **astm101778** 7:6 |
| 162:17,22 163:3,13 | 247:9,18 248:3,9,13 | **astm001788** 10:6 | **astm101800** 7:8 |
| 163:14,18,23 164:4 | 249:4,25 250:3,4,22 | **astm001814** 9:20 | **astm102031** 9:11 |
| 164:10,15,18 | 250:24,25 251:16 | **astm003314** 11:18 | **astm102042** 9:13 |
| 165:16,17 166:4 | 252:22 254:2 | 271:7 | **astm102053** 9:15 |
| 167:14,16,22,24 | 255:23,25 256:8,23 | **astm003315** 271:8 | **astm102072** 7:13 |
| 168:7,9,11,11,13,20 | 256:24 257:9,11,21 | **astm003479** 7:11 | **astm102089** 7:15 |
| 168:24 169:7,25 | 258:2,21,22,24 | **astm005399** 11:15 | **astm102094** 7:17 |
| 170:8,8,14,20,21 | 259:7,20,24 260:18 | **astm0095371** 10:20 | **astm102361** 7:20 |
| 171:10,13 172:9,10 | 260:19,21 261:18 | **astm015162** 10:18 | 130:17 |
| 172:14,20,22,24 | 261:19,25 262:10 | **astm015659** 5:14 | **astm102388** 7:23 |
| 173:1,1,2,25 174:1 | 262:15,17,17,19,21 | **astm015661** 5:17 | **astm103024** 9:8 |
| 174:2,6,19,20,21 | 263:2,5,25 264:3,14 | **astm015779** 5:20 | **astm103025** 207:4 |
| 175:10,11,14 176:1 | 264:22 265:13,18 | **astm015828** 5:22 | **astm95376** 11:6 |
| 176:2,3 178:18,22 | 266:1,3,8,20 267:3 | **astm015912** 6:5 | **atm030712** 8:11 |
| 179:21,25 180:6,14 | 267:9,19,22 268:1,2 | **astm016538** 6:8 | **attach** 20:1 |
| 180:24 181:2,3,10 | 268:8,17,18,21 | **astm018709** 9:17 | **attached** 200:6,7 |
| 181:24 182:4,6,7,9 | 269:2,13 270:8,14 | **astm019297** 6:18 | 284:8 |
| 182:13,18 183:3 | 270:18 271:14 | **astm019650** 11:7 | **attaching** 199:24 |
| 184:15,17 185:17 | 272:9,25 273:6,8 | | |

[attachment - beginning]

attachment  207:7
207:11 239:9
attachments  207:9
207:10,18 239:5,9
239:15 271:21,24
attempt  161:4
attempted  124:24
attend  89:20 278:17
279:1
attendees  93:13
attending  13:16
278:24 279:4,6
attends  278:19
attention  30:7
111:11 125:7
160:12 176:21
194:25
attorney  14:22
16:16 33:8,11 59:2
59:7,8,11 71:1 78:5
80:9 95:21 130:3
135:7,13,13 137:8
140:16 170:24
198:18,22,22
215:12 216:14
attorneys  13:15
14:14,17 15:13
18:13
attributes  29:10
69:5
audience  36:7,10
audiences  184:5
august  8:19 11:17
48:9
authentic  170:3
171:20
authenticity  171:25
172:3 178:18 179:1
author  84:8 134:1
authorizes  230:25
authors  211:3
automatic  213:23
availability  181:11
181:25 182:10
184:15 185:18

186:20 187:14
available  16:3 40:18
45:18,25 46:3 108:2
111:19 112:14,20
113:9 114:18
120:16,25 121:7,16
122:11,21,24 144:6
144:8 148:17 150:5
171:11,13 175:9
180:16 214:6 219:9
230:6 245:8,9
246:15 250:20,22
251:16 252:14
avenue  3:6
avenues  246:15
avoided  118:4
awards  187:10
aware  22:1 25:8
26:7,12,15,17,18,22
28:24 33:9 39:18
44:12 63:4,12 73:12
73:21,23 77:9,25
78:1 96:14 107:13
108:7 117:7 123:6
124:17 125:2,3,15
126:10 127:1,6,8,9
127:24 139:7,16,18
143:22 145:7
146:14 150:15,18
155:5,7,15 161:20
161:21 162:9,22
163:3,20 165:16
167:7,11,16,16
175:10,22,25
177:25 178:6,11,14
179:22 188:3
191:21 196:6,12,16
196:18,24 197:2,5
197:13,25 199:4
202:9 204:2 214:13
216:17,20 220:10
224:20,24 227:12
227:20 231:25
235:6 241:3 245:23
252:13,19,22 253:6

253:9,14,21 254:2
259:9 260:13
261:14 266:9,10
267:3,4 275:10,18
279:3
awareness  25:2
26:23 29:5 33:22
36:23 39:12 241:6,8
245:22

b

b   1:4,15 2:4,15 4:13
5:6 6:2 7:2 8:2 9:2
10:2 11:2 61:19,19
back   18:5 25:16
46:14 79:10 82:7
94:18 105:15
108:18 109:2
114:20 120:18
127:10,19 128:8
130:12,16 136:14
150:25 159:22
176:18,21 178:1,15
190:6,8 193:13,14
201:1,3 203:14
205:12 228:4
234:24 254:12,21
255:2,5 256:20
260:2 267:4 273:9
273:14,20,24 274:6
274:13,15
background  106:13
106:16,19,22 107:3
107:8
backwards  81:4,9
81:11
bad   118:21 245:13
bakery   277:6,14,20
278:11 279:4
balance   92:13 105:2
105:13 106:8
110:10,16 185:23
212:25 247:9
balanced   219:19

band  176:23
barrier  113:18
barriers  40:16
50:15 94:10 110:20
237:13 250:18
based  54:10 76:2
77:1 101:17 108:20
123:14 132:5 134:7
139:24 141:8
143:23 145:7 148:8
148:13 151:14
153:7 157:9 165:21
169:19 174:10,12
174:14,25 192:19
200:6 220:6 237:12
244:12 245:18,22
251:20 254:16
255:21,22
baseline  122:14
basic  231:8
basis  15:21 40:19
75:13 96:21 123:21
143:25 144:16
153:11 173:6,16
174:8 182:21
192:17 210:7 226:3
244:8 252:15
266:25
bates  178:22 194:8
194:12 209:13
272:5
battery  32:9 205:5
bcc'd  63:8
becker  3:14 13:19
17:18
becoming  39:18
159:16
beefing  212:4
began  105:14
108:22 109:17,18
109:24 110:5,6,14
113:20,20 114:2
115:18
beginning  84:1
121:4,4 146:17

[begins - bridges]

**begins** 269:22
**begun** 105:12
**behalf** 13:23 96:8
  112:7 196:24 197:5
  197:13,25 253:2
**belgium** 61:16 102:2
**belief** 246:24
**believe** 27:23 28:18
  29:3,7 30:1,2 31:7
  32:7,9,14,21 34:5
  35:4,24 36:15 37:8
  38:1 39:2,7 40:10
  41:3 42:21 43:21,23
  49:19,25 51:15
  53:22 63:9,9 64:8
  66:24 67:24 69:9,25
  77:19 83:21 87:24
  89:7 91:5,6,19 94:7
  94:12 96:8,12 97:13
  98:21 100:7,10
  101:23 102:8 103:6
  104:20 105:19
  109:2 110:5 111:7,9
  112:23 115:7
  117:21 119:4,13
  121:2 122:7,20
  123:3 124:21
  138:19 141:2
  142:19 148:16
  149:6 156:21 161:3
  175:17 179:19
  180:10,11 181:1,6
  181:16 182:3,12
  183:3,10 184:3
  185:23 195:2
  198:21 200:7
  202:15 205:23
  206:3 213:22
  215:13 216:15
  218:22 219:2 220:4
  222:15 226:16
  230:8 233:22 234:7
  235:19 236:16
  237:23 241:13
  243:21 244:12,19

  244:25 245:7,17
  246:12,23 253:16
  254:15 255:23,25
  259:16 262:5 264:1
  264:25 265:25
  266:11 269:17
  270:16 271:17
  272:22 273:25
**belong** 89:19
**belongs** 23:23
**beneficial** 92:8
**benefit** 114:12
  210:12
**benefits** 29:5 33:23
  40:13
**best** 29:8 39:24 42:3
  92:10 98:24 141:3
  155:20 175:18
  185:10 187:4 203:8
  219:12 230:9
  244:19 245:17
  247:9 270:17
  274:20
**bet** 159:24
**better** 69:25 110:12
  117:19
**beyond** 29:7 33:24
  42:6 54:8 55:14,20
  56:13,23 59:5 63:2
  65:25 67:4 79:25
  94:21 96:19 97:11
  99:5,16 103:5,23
  107:21 108:10
  111:22 112:6
  132:25 135:10
  140:21 141:23
  142:19 147:5 156:3
  157:5,24 158:11,17
  159:8 160:7,25
  161:12,18 163:25
  164:6,20 165:3
  174:7 182:1,10
  185:17 186:6 187:6
  187:16 188:4
  192:12 196:20

  197:20 198:4
  201:11,17,23
  202:11,19 206:13
  208:4 209:24
  210:21 211:17
  212:21 215:9 218:9
  219:15,20 220:8
  224:3 228:19 229:8
  237:4,9,21 241:23
  242:7 243:16 244:3
  244:10 245:14,24
  246:10 247:4 250:1
  250:11,12 252:17
  252:25 253:12,25
  254:6,20 256:2,11
  257:13 260:5,22
  262:3,22 263:7,19
  268:4 269:16
  270:11 272:6,14,19
  274:9 275:16 276:1
  276:12,23 279:9,18
  280:22 281:4
**big** 220:25 221:12
  222:8
**billings** 43:23
**bio** 266:14
**biofuel** 124:24
**bit** 86:24 87:6 123:4
  179:8 218:25
**blacked** 134:15,24
**bland** 117:9
**blocks** 277:18
**blush** 136:16
**board** 35:2 67:25
  68:2,3,25 69:4,10
  138:3,8,10 180:8
  206:4 248:10 280:7
  281:8,13
**bob** 219:3,4
**bockius** 3:4
**bodies** 97:3 246:17
**body** 138:20,25
**boeing** 62:6
**book** 268:18

**bosses** 81:19
**bots** 213:23
**bottles** 70:7
**bottom** 86:10 134:5
  195:3 208:16
  209:13
**box** 100:15,22 101:1
  101:2
**branch** 35:20
**brand** 69:4,7,12,18
**branding** 68:25 69:2
**breadth** 235:16
**break** 17:13,20
  76:10 78:8,11,13
  82:1 127:14,17
  128:1 136:10
  141:19 176:11
  189:25 190:16
  205:3 209:19
  227:21 256:15
**breaks** 205:6
**breathe** 97:15
**breathing** 70:9
**bremer** 86:14,16
  90:23 93:6 102:23
  103:1,3 136:21
  241:12,22 242:2,6
  242:14
**brian** 68:16,24
**bridge** 17:22,23
**bridges** 3:13 5:3
  13:18,18 14:8 16:5
  16:9,14,24 17:12,17
  17:21 18:7 19:10,18
  20:5,10,19,25 21:7
  21:9,11 22:3,8,20
  23:9,16,25 24:4
  25:10,20 26:2,14,25
  27:13 28:1,7 29:16
  30:5,10,16,24 31:4
  31:18,22 32:1,11,18
  32:23 33:2,10,19
  34:10 36:9,18 37:2
  37:16,23 38:11,15
  38:22 39:3,11,19,25

[bridges - business]

40:20 41:1,12,20,23
42:2,9,17,23 43:6
43:18 44:5,14,21,23
45:13,19 46:2,9,16
47:2,9,18 48:16
49:6,13 50:18,23
51:5,13 52:11,21
53:7,18,25 54:9,16
54:21 55:5,11,16,25
56:10,18 57:2,13,23
58:10,19 59:9,16,22
61:9,17,22 62:2,16
63:5,18,25 64:17
65:2,8,18 66:7,15
66:19 67:9,17 68:1
68:13,22 69:16
70:20 71:4,11,14,19
72:3,8,21 73:7 74:2
74:21 75:2,7,14
76:6,14,22 77:13,24
78:9,16 79:6,18,24
80:4,11,25 81:7,21
82:1,11,19 83:1,10
83:15,19 84:6,15,22
84:25 86:5 87:3,15
90:20 91:13,22
92:24 93:3 94:2
95:4,11 96:5,18,23
97:6,22 98:8,14,22
99:11,25 100:4
103:9,12,20 104:4,7
104:12 105:9
106:12 107:2,7,18
108:6,15 110:1
112:3,18 113:6
114:1 115:17 116:7
116:21 117:8 118:1
118:10,17,22 119:1
119:6,9,15,19,22,25
120:5,14,23 121:14
122:1,9 125:6,22
126:6,25 127:7
128:1,12,20 129:1,6
129:11,15 130:7,20
130:22 131:4,8,14

132:7,14,20 133:2,8
133:15,25 134:10
134:14,22 135:6,15
135:21 136:4,9,13
136:19 137:1,15
138:5,22 139:4,15
140:6,12,17,25
141:13,19,21 142:6
142:14,22 143:8,15
144:12,21 145:3,13
146:12 147:1,11,25
148:5,10,21 149:3
149:19 150:3,13
151:3 152:2,13,18
152:25 153:4,12,24
154:7,10,17,24
155:6,13,24 156:7
156:11,15,23
157:11 158:5,13,20
158:24 159:3,16,23
159:25 160:9,17,22
161:5,15,24 162:4
162:16,21 163:2,7
163:22 164:3,9,14
164:24 165:5,11,23
166:9,17 167:1,6,21
168:4,18 169:5,13
169:22 170:6,16
171:3,21 172:2,8,14
172:19 173:6,12,18
173:24 174:6,16
175:6,19,24 176:11
176:20 177:9,12
178:10,15,21 179:4
179:9,24 180:13,19
181:18 182:5
184:12,24 185:9,15
186:2,11,18 187:2
187:12,21 188:7,14
189:5,12,19 190:15
191:13,25 192:21
193:1,5,9,16,21
194:3,10,16 195:22
196:3,13,22 197:4,9
197:24 198:15,25

199:5,10,18,21,23
200:4,13,20 201:5
201:15,21 202:2,13
202:23 203:3,11,18
204:4,15,23 205:3
205:16,19 206:16
206:23 207:3,11,16
207:22 208:8,15
209:3,12 210:2,9
211:1,7,25 212:19
213:5,10 214:24
215:5,15 216:1,19
216:25 217:20
218:3,18 220:2,17
220:23 221:6,11,24
222:4,24 223:13,23
224:12,23 225:7,15
225:22 226:9,18
228:8,14,24 229:17
229:24 230:12,17
231:4,10,17 232:6
233:4,14,18 234:9
234:17 235:1,11
236:3,7,13,18 237:1
237:7,14 238:1,8,11
238:15,21 239:2,4
239:13,22 240:4,9
240:13,19 241:2,10
242:3,10,13,20
243:5,11,18 244:7
244:15 245:3,20
246:7,18 247:16
248:16,20,25 249:6
249:11,20,24 250:5
250:19 251:13,24
252:4,8,21 253:8,20
254:1,11,14,23
255:3,7 256:6,15,22
257:7,14,20,24
258:8,15,23 259:10
259:17,23 260:7,17
261:16,24 262:9,20
263:4,10,15 264:4
264:12,21 265:3,11
265:16,23 267:6,16

268:10,14,24 269:5
269:7,10,24 270:22
271:6,10,22 272:1
272:12,17,24
273:10,13,15,17
274:3,14,18 275:11
275:20 276:4,9,16
276:20 277:4,12
278:10,18 279:2,12
279:22 280:5,18,25
281:10,20
**briefly** 205:7
**bring** 94:24 125:7
**bringing** 112:10
162:10
**broad** 24:1 99:21
186:19
**broadcast** 181:9
**broader** 179:3 193:9
**broadly** 40:11
**brodoff** 64:21 135:1
135:13,17
**broke** 46:18
**broken** 232:21
**brook** 85:14
**brooke** 101:1
**brookings** 35:4 40:7
**brought** 30:6 117:21
**brussels** 61:15,16
102:2
**buckeystown**
102:15
**bucks** 220:25
221:12 222:8
**budget** 35:21 37:9
49:22 183:24
**build** 180:6
**building** 7:21
133:22 211:20
**built** 122:12
**bullet** 217:1 218:24
274:1
**business** 34:6 35:11
144:5 145:11
148:15 166:1

[business - characteristics]

167:17 176:8 182:4
182:6 251:23
255:12
**buy** 152:20,20
**bypassed** 162:15

**c**

**c** 283:1,1
**cafe** 277:14
**calculate** 267:13
**calendar** 183:1
**california** 3:15,17
4:7
**call** 18:16 24:2 28:9
49:8 65:15 111:14
125:12 130:16
168:15 184:8,16
217:18 218:13
220:8 252:18 254:6
274:10
**called** 24:16 25:2
26:16,23 41:4,5
91:1 102:12 107:14
113:12 121:21
239:6,6 277:6,13
**calls** 25:6 26:10,20
28:3 30:14,20 31:13
31:24 32:13,20,25
33:7,17 36:4,20
37:20 38:19 40:8
42:11 43:14 44:20
45:1 52:16 54:7,11
54:23 55:13,19 56:4
56:22 59:4,14 62:7
63:1 65:12,24 66:13
67:3,23 68:10 70:18
70:23,24 71:7,8,23
71:24 73:2,20 74:24
76:1 78:19 79:13
80:7 93:17 94:20
97:10 98:16 99:2,15
103:4 104:23 112:2
112:5 129:8 132:10
132:24 134:17
135:9,10 136:24

137:5 138:1,18
139:2,13 140:9,15
140:20 141:6
142:10 143:3,11
144:2,18 147:21
148:2 149:1,9
150:21,22 153:3,20
154:4,21 155:4,10
155:22 157:6
158:10,18 159:9
160:6,11,24 161:11
161:19 163:19
164:19 165:2,8
168:1 169:9,18
170:23 172:12,15
173:16 175:16
176:5 187:7 197:20
198:5 202:10,20
206:12 208:3
209:24 210:21
215:8,10 216:11
217:17 219:14
224:3 225:3 227:19
231:7 234:14
240:16 241:24
242:16 243:15
247:3 250:2 251:5
252:16 253:1,11,24
254:5 256:3,12
257:12 260:6
262:23 263:19
265:7 266:24
269:15 270:10
272:7 275:17
276:13,22
**campaign** 183:10
**canada** 48:11 51:7
101:22
**canadian** 51:18,20
**capabilities** 29:10
**capacity** 23:22 62:3
62:10,13 87:10
180:8 187:18
**capitol** 81:20 107:14
116:20

**caption** 13:9
**captured** 149:17
169:4
**card** 93:6
**career** 109:12,13
**carefully** 58:3 234:6
**carl** 4:16 13:21
17:22 38:23 39:4,14
39:21 40:4 63:4,12
135:23 139:1
194:23 207:12
245:4
**carl's** 143:17
**carli** 32:3,4 135:1,17
199:24 201:8
202:24 238:25
239:5,15
**carmel** 188:9 189:7
190:19 193:24
194:15 195:1,14,18
**carry** 224:7
**carrying** 209:16
**case** 1:3 2:3 13:9,11
13:12 45:22 46:22
48:1 50:20 131:17
137:4 149:8 159:18
177:2 180:7 188:5
194:19 216:22
220:13 252:13,19
**cassidy** 85:17
**catch** 111:25 163:18
**categories** 265:12
**category** 35:12,14
**caught** 111:11,22
**cause** 160:20 167:24
168:5 250:25
**caused** 39:4 47:24
113:18 145:10,24
146:6 153:10
**causes** 94:16 148:17
192:8 260:1
**causing** 220:3
**cement** 102:16
**cendrowska** 100:25

**ceo** 184:22
**certain** 15:2 62:13
99:17 124:6 139:14
151:15 153:9,9
155:19,23 157:21
161:9 164:8,13
165:4,10 186:25
206:15 214:10
215:22 223:4
232:13 278:5
**certainly** 93:21
131:12 152:7
217:19
**certainty** 25:13 75:1
89:23 202:21
**certification** 24:10
85:15 266:10
**certify** 283:2 284:3
**cetera** 23:23
**cfr** 76:7 97:9
**chain** 142:3,20
**chair** 51:16
**chaired** 52:18
**chairman** 24:9,11
180:7 206:4
**chairperson** 81:5
**chamber** 34:13
64:10
**chambered** 64:6
**chance** 14:13
**change** 44:21
234:12
**changed** 123:7
274:21 275:5
**changes** 19:7 33:5
100:12 115:7
160:11 274:25
275:10 284:7
**changing** 100:22
234:11,18
**chapter** 50:15
**character** 221:17
**characteristics**
166:22

Veritext Legal Solutions
866 299-5127

[charge - concern]

charge  55:17
chart  7:10 100:5,9
  157:16 158:2
chartered  24:14
chatted  218:20
check  159:13 272:1
chicago  52:20
children  232:21
choice  254:22
chris  4:18 13:4
church  23:23
cicely  103:14,14,17
  103:17
circular  38:2,7
  49:23 66:10 95:24
  207:19
circulated  41:13
circumstances
  132:22 230:20
  261:12
cited  79:9
citizens  17:9 214:5
city  102:5,8
claims  131:19
clarify  87:7 191:12
claw  130:16 193:13
  193:14 203:13
clean  97:16
clear  46:2 159:18
  160:12,14 168:19
  171:19 215:13
  216:15 255:1
clearly  45:2
client  130:3 131:20
  137:8 198:18,22
clip  199:18
close  35:11 181:1
closely  55:22
coaching  171:21
  243:21
coalition  25:2,23,25
  26:4,7,13
code  75:18,22,24
  76:23 77:5,15,25
  78:4 105:16 121:25

188:9 189:7,21
  190:20 233:1
codes  7:21 109:1,2
  133:23
coffee  70:8
collaboration  21:25
  91:20,24 92:4 98:7
  102:11
colleague  87:19
  233:6
colleagues  246:4
collected  160:1,3
collection  181:1
  210:8,11,13 251:8
colorful  221:17
columbia  1:2 2:2
  13:12
columns  151:18
combined  95:23
come  21:25 28:22
  38:10 49:23 50:2
  78:25 88:11 89:12
  105:10,25 114:9
  124:9 170:14 172:3
  223:8,8 226:21
  234:4 261:7
comes  124:3 222:5
  225:12,12,13 245:2
comfortable  248:10
coming  69:11
  106:14,17,20,23
  107:4,9 115:8 214:9
  225:25 226:11
  234:24
commencing  2:19
comment  71:2 73:6
  79:5,23,25 143:23
  245:10 246:13
commented  33:5
  43:16
commenting  233:8
comments  5:16
  42:14 43:9,11 49:19
  57:25 245:21

commerce  24:7,13
  34:13 64:10
commercial  108:4
  227:10 251:9
commission  50:9
  73:22 75:17 229:20
commit  160:10
commitment  114:14
commitments
  248:15
committed  211:20
  211:20
committee  24:8,12
  24:14,18 48:19
  52:15,22,23 55:23
  56:8 60:2,6,10
  67:25 69:10 80:17
  81:24,25 89:17,18
  99:8,10 100:21
  101:8,9,12 138:4
  142:4 163:16 180:7
  261:4 263:23,23
  267:20,23 271:18
committees  60:2
  81:22 85:14 96:15
  98:18 99:7 105:21
  243:2 245:10
  246:15 258:5 262:6
  263:22 273:6
common  204:12
communicated  36:2
communicating
  180:9,11 188:8,17
  189:6 190:19
  192:24
communication
  46:5,5 47:24,25
  48:7 49:8 62:6
  142:3 153:2 178:5,9
  181:14 204:14
communications
  32:8 40:1,3 45:7,20
  45:24 46:20,25 48:2
  48:4,5 60:23 62:23
  76:3 77:2 78:21

131:5,9,17,20 137:7
  137:9 141:8 142:1
  146:3 153:22
  165:21,24 189:17
  192:15 199:3
  203:15,23 241:6
  281:3
communities  117:20
  244:24
community  34:7
  49:25 62:12 72:7,10
  72:19 86:23 87:6
  88:2,5,7 89:16 95:2
  106:10 109:8,9
  182:24
companies  28:23
  202:8
company  253:3
compare  222:2
compete  256:8
competitiveness
  35:7
compiled  196:8
compiling  211:22
complaints  218:9
  220:12
complete  157:8
complicated  145:11
component  148:25
compostable  70:8
compound  20:8
  23:6 37:20 40:8
  42:20 43:4 78:3
  80:21 81:3,13,23
  96:11 103:15 135:4
  164:21 266:23
  267:11 268:5,22
  269:15 270:11
computer  283:10
computing  22:23
concept  188:15
concern  17:6 103:21
  170:12 251:7,15
  261:3,10 262:16

[concerned - core]

concerned 50:17
152:5,7 158:14,19
158:21 161:1
168:25 181:7
249:19,21 250:4
262:19,21
concerns 31:10
186:9,16 211:19
213:22
conclude 81:18
concluded 282:5
concludes 184:3
conclusion 54:11
59:15 70:24 71:8,24
73:3 74:24 78:20
80:8 135:10 173:15
206:13 215:9,10
216:12 220:6 225:3
227:19 242:16
266:24
concrete 102:16
conditioning 1:7 2:7
conditions 262:10
conducted 38:21
conference 65:15
136:22 209:6
confidential 203:24
242:11
conflicting 255:19
confused 148:16,24
165:17
confusion 144:5
153:9 165:25 166:2
167:16 255:18
congress 80:24
116:6 125:13,14
259:25 260:13,19
260:20 261:1,2,4,8
261:9,14,19 262:1
262:16
congress's 259:18
278:5
congressional 35:17
116:14 117:5
258:22 259:1,15

congressionally
24:14
congressman 81:16
81:17
congresswoman
81:6
connect 235:7
connection 45:8
58:1 132:3 155:16
156:17 170:25
188:1,22,23 196:8
197:17
connie 81:6
consensus 38:5,6
92:14 95:1 96:3
97:3 125:15 234:2,4
234:23 235:22
244:21,25 245:5,18
246:16 252:14,23
253:10,15,18
255:20 263:1,24
264:6
consents 66:6
consequence 150:19
153:18 154:2,19
155:2 165:13 274:7
274:16
consequences
116:16 120:8 161:2
219:22 249:17,17
conshohocken
60:24 101:18
consider 50:11 69:4
95:25 133:23
159:12 211:24
212:4 253:18
consideration 93:15
94:4
considered 115:9
considering 111:3
124:12 135:22
212:6
consistent 20:15
62:19,23

consists 211:2
229:18 238:9,24
271:7
consortia 253:17
constitutes 74:10
consult 59:6 147:6
consultant 61:14
219:5
consultants 61:10
consulting 139:8
consumer 34:15,16
35:11 40:6 73:22
74:6,9 75:3,15,17
75:19 89:4,13,14
90:21 243:2
consumers 117:16
contact 190:14
259:9
contain 75:25 76:24
151:16 152:8 157:4
168:8
contained 244:13
272:11
containing 232:24
contains 76:8,16
77:16,20 78:1,2
168:25
contemplating
241:4
content 143:2
262:17
context 72:13,13
79:9 141:4 193:6
210:1,4,17,19
218:22 225:6
228:22,25 229:7
263:1 281:1
continuation 207:5
continue 81:11
110:18,21 127:10
250:15 251:1
continued 4:1
continuing 201:20
201:22

contract 189:21
215:7 222:13
contractor 101:24
102:2
contractual 223:20
contribute 27:5 55:8
246:5
contributed 17:4
152:9
control 108:5
151:13 161:21
162:10
convene 29:23
convenience 78:12
conversation 18:14
148:13
conversations 18:12
21:3,6 145:8,18,18
145:20 149:14
153:7 242:5 251:21
251:25 252:9
converted 212:7
convey 165:24
cooper 91:7 93:5
233:10 241:14,14
270:2,5
cooperate 264:6
cooperation 64:14
91:2,11,15,23 92:1
92:3,7,17
cooperatively
109:12
copied 64:19
copies 41:13 83:11
231:12
copy 57:4,25 83:12
117:21 205:17,20
copyright 54:2,25
55:3,6 143:6 215:13
216:7,18,21 230:19
copyrighted 39:8
copyrights 54:6
216:3
core 69:12,24
111:19

Veritext Legal Solutions
866 299-5127

[corner - decentralized]

**corner** 277:6,14,20
  278:11 279:4
**corporate** 14:22
  60:22 101:17
  102:19 150:4 153:4
**corporation** 36:15
**correct** 22:9 27:8,12
  33:15 49:5 57:16
  58:14,20,21 59:24
  61:3 64:20,24 66:8
  68:5,6,18 75:23
  83:4 84:3,4,10,12
  84:18,23 85:1,2,24
  86:7,11,12 90:23
  93:1 128:14,17,22
  128:23 129:3 135:1
  135:3,5,8 136:23
  145:15,16 149:5
  150:6 159:14 161:3
  177:9 180:16
  200:10,10,14
  201:10 202:25
  203:5 204:18 205:1
  205:2,25 206:8,11
  207:1,2 208:11,17
  209:8 211:4,6
  217:16 220:20
  225:9,17 227:4,5,8
  227:9 228:11
  229:20 230:4,8
  232:9 233:6,7,10
  234:12 257:1,11,21
  257:23 258:10,17
  258:22,25 259:2
  270:5,25 271:14,15
  277:14,15 283:12
  284:5
**correction** 159:6
**corrections** 284:7
**correctly** 157:17
  283:8
**correspond** 201:14
  201:16
**correspondence**
  86:7 243:8

**corrigenda** 164:4
**cost** 111:19 113:2
  114:19 122:22
  222:22
**costs** 251:11
**council** 24:23 35:7
  64:9 75:4,15 188:9
  189:7,22 190:20
**counsel** 3:1 4:1,14
  15:21 16:12,17 21:6
  33:9,13 45:8,17
  46:1,25 47:12,22
  48:1,6,8 53:20
  54:14 59:1 76:3
  77:2 78:22 83:12
  85:12 86:17,17
  132:2 136:5 139:25
  139:25 143:7
  161:14 174:11,12
  174:15 175:1 178:5
  178:9 188:2,13,22
  189:16 191:23
  192:15,20 194:7,18
  196:8 198:7,17
  241:7 274:25 275:5
  275:8 276:25
  280:13 283:13
**counsel's** 53:19
  172:4
**counted** 122:19
**counterclaims** 1:12
  2:12
**counterparts** 28:13
  28:15
**counting** 266:4
**countless** 70:3
**countries** 74:12
  214:17,21 278:5
**country** 74:12
**couple** 19:16 84:16
  124:16 130:22
  187:11 218:23
**course** 36:22 37:8
  43:19 49:2 78:10,10
  87:18 102:20 150:9

272:9
**court** 1:1 2:1 13:12
  13:25 194:11
**courtesy** 281:19
**cover** 137:2 187:9
  199:21 207:17
  238:17
**covers** 188:20
**craft** 234:6
**crafted** 248:8
**create** 255:17
  268:19 277:8
**created** 101:1
  277:10
**creates** 168:6 176:6
**creating** 208:23
**creation** 99:1
  183:19
**creativity** 245:1
  255:24 256:1
**criteria** 15:24 16:1
  95:24
**criticism** 118:5
**criticisms** 117:11
**criticize** 118:3,23
  120:1
**criticized** 245:5
**csr** 1:23 2:20 283:19
**cups** 70:8
**curiosity** 24:1 192:1
**curious** 134:23
  172:21
**current** 21:17 99:12
  100:13 168:12
  261:13,14 268:2
**currently** 52:18
  90:8 121:5 122:10
  168:9 171:10,13
**customers** 148:15
  151:22 152:19
  153:9,13 166:3,6,14
  166:19,22 167:3,8
  167:12 210:12
  226:1,2 251:9

**cut** 221:9
**cv** 1:4 2:4 13:13

**d**

**d** 1:4 2:4 5:1 13:21
**d.c.** 1:19 2:19 3:7
  13:1,7,8 29:7 33:24
  34:1,6,12 35:15
  38:24 39:5,10,15,22
  101:21
**d56571** 125:1
**d6751** 124:25
**damage** 152:9 155:7
**dan** 60:4,5 85:21
  101:6
**dangerous** 159:15
**daniel** 56:9 101:3
**database** 121:23
  122:8,12,13,24
  123:1,14 126:17
**date** 13:5 39:2 58:23
  83:6 100:11 108:12
  109:6 143:17 145:7
  146:2,3 196:4
  211:11 259:8 274:7
  284:12
**dated** 6:7 7:19 8:13
  8:17,19 9:7 10:12
  11:17 172:1 283:22
**david** 188:9 189:7
  190:19 193:23
  194:15 233:22
**day** 70:3,5 89:10
  90:25 173:10
**days** 14:18,18 15:10
  89:9
**dealing** 148:23
**deals** 113:13
**dear** 137:20
**death** 158:8,14
  160:20
**debate** 248:9
**december** 14:18
**decentralized** 99:6

[decide - develops]

decide   77:11 115:14
decided   29:8
decision   59:20
  113:24 115:21
  125:17 244:25
deem   119:3 120:4
deemed   74:11
  111:20
deep   222:17,18
defendant   1:11 2:11
  3:11 13:20 155:17
  159:5 165:18 172:9
  174:2,21 175:12
  176:2 274:19,23
  275:6,8
defendant's   147:8
  149:22
defendants   147:20
  149:7 150:16,19
  153:19 154:3,20
  155:2,9 156:17,25
  157:3,23 158:15
  165:7,13 196:5,17
  197:16,17 274:8,16
defense   266:17
define   23:14 177:15
degree   22:11,12
  237:16,19
delegate   24:21
deliberate   161:4
deliberation   198:1
deliberations   198:9
delicate   105:13
  110:16
delivered   181:15
delivery   222:23
demonstrate   114:15
dental   52:19
department   24:7,13
  24:20,21 56:7,12,19
  113:14 214:17
  221:20 222:13
  266:13,17
department's   278:4

departments   100:17
  214:14
depend   106:25
  255:10 267:22
  277:21
dependence   278:6
depending   193:14
deponent   283:5,8
  284:1
deposed   14:11
deposition   1:15 2:15
  5:9 12:1 13:4,6
  14:14 16:16 18:14
  18:15 33:14 53:5,10
  53:11 56:25 57:11
  57:21 58:8 61:20
  63:16 64:15 65:16
  67:7,19 82:9 83:8
  84:5,13,21 86:3
  99:23 103:10 104:2
  128:10,24 132:12
  134:8 137:13
  141:16,22,24
  142:12 154:1
  159:19 173:9,10
  193:6,11,25 195:20
  199:8,16 203:1,9
  205:14 206:21
  208:6 210:24
  220:15 228:6
  229:15,22 230:10
  232:4 233:2 238:6
  240:7 242:18 243:3
  257:2,5 258:6,13
  268:12 269:8
  270:20 271:4 282:2
  282:5 283:11
describe   66:1 69:22
  221:16
described   58:2
  65:21 148:22
describing   79:16
  221:18
description   5:8 6:4
  7:4 8:4 9:4 10:4

11:4 167:2
design   217:22 218:4
  218:12
designate   261:5
designated   62:8
  66:1 93:22 95:17
  154:6,9,11 214:17
  216:13
designation   45:2
  54:8 55:14,20 56:5
  56:14,23 59:5 63:2
  65:25 67:4 94:21
  97:11 99:16 103:5
  103:24 107:22
  108:10 112:6
  124:20 132:25
  135:11 140:21
  156:4 157:6,25
  158:11,18 159:9
  160:7,25 161:12,19
  163:25 164:7,20
  165:3 174:8 186:7
  187:7,17 188:5
  192:13 196:21,23
  197:21 198:5
  201:12,18,24
  202:11,20 206:14
  208:4 209:25
  210:22 211:17
  212:22 215:9
  219:15 220:9 224:3
  228:20 229:9 237:5
  237:10,22 241:24
  242:8 243:16 244:4
  244:11 245:15,25
  246:10 247:4 250:2
  250:13 252:17
  253:1,11,25 254:6
  254:20 256:3,12
  257:13,16 260:6,23
  262:4,23 263:8,19
  268:5 269:16
  270:11 272:7,15,20
  274:10 275:17
  276:2,13,23 279:10

280:23 281:5
designations   250:11
designee   1:17 2:17
  53:16
destruction   177:17
determination
  15:22
determine   123:5
  133:9 235:9
determined   15:18
  74:10
determining   77:10
  112:20 113:8
  120:16,25 127:11
  127:20
devalues   210:7
  251:8
develop   70:2 250:16
  253:15,16 255:21
developed   109:16
  252:23 255:19
developer   114:11
  219:23 220:6
developers   50:10,16
  111:22
developing   92:25
  110:19 125:16
  219:18 245:5
development   17:9
  26:19 40:14 55:4
  66:5 91:20 92:13,19
  94:9 96:2 97:20
  98:1,5 101:7,10,13
  108:1 109:11
  112:11 116:18
  151:13 163:10
  213:2 222:23
  245:12 246:3,5
  248:14 249:18
  251:2,10,12 253:10
  255:15 256:8 263:2
  265:6 267:3 274:4
  274:21
develops   111:9
  253:23 254:3

Page 14

[devices - doug]

**devices** 232:24
**dhs** 220:25 221:13
222:9 223:7,22,24
224:8
**dialed** 17:22
**differed** 224:25
**difference** 101:12
106:4 174:1,20,25
175:2,3
**differences** 227:13
**different** 22:18
41:14 62:15 72:13
77:20 79:22 80:23
88:15 96:15,16,16
98:17 106:6 122:18
126:19 166:5
167:15 168:8
175:20 224:16
226:19,22 244:24
251:15
**differential** 224:21
227:2
**difficult** 70:11 113:5
126:15 157:8
212:13 267:12
**difficulty** 232:22
**dilemma** 114:8
**din** 138:14,17,21
139:8,9,16,21
**dire** 130:22
**direct** 60:25 81:1
100:14,20 126:20
145:1,5 151:14
176:21 262:14
**directed** 64:25
**direction** 12:3 16:12
45:8,17,25 46:25
47:11 48:5 132:2,5
188:21 189:16
196:8 274:25 275:5
275:8 276:25
**directive** 115:16
116:5
**directly** 17:22 43:16
45:5 61:2,5,11

100:19 144:8
**director** 21:16 60:16
80:17 90:8
**directors** 138:3,8,11
206:5 248:10 280:8
281:13
**disagree** 16:20
244:5 247:14,17
257:17
**disagreeing** 47:7
**disagreement** 244:9
**disclose** 15:23 16:11
16:12,23 45:7 46:24
48:4 76:4,5 77:2
78:21 132:4 134:19
137:7 140:1,2 141:9
142:1 174:11 175:2
178:5 188:2,12,23
189:16 191:22
192:16 196:10
198:8 199:3 277:1
280:14
**disclosure** 188:15
**discounted** 222:17
222:18
**discovers** 164:17
**discovery** 131:17
**discuss** 18:13,20
19:6,11 21:1 39:4
46:7 48:12 69:6
89:16 116:15 121:4
129:16
**discussed** 16:17
17:7 39:13,21 40:13
49:15 97:1 117:6
127:22 129:21
136:21 183:8 214:4
214:5 218:10
255:14 277:24
280:10,12,16,19
**discusses** 41:7
**discussing** 38:23
64:12 121:9 202:6
259:1

**discussion** 29:8 69:8
110:25 112:24
121:8 179:3 198:14
232:11 252:12
255:13 257:9
259:11,14 277:19
**discussions** 47:5
51:7 87:14,17,19
88:16 114:24 130:3
138:14,24 139:20
198:7 241:11,20
**display** 171:13
**displayed** 101:14
268:18
**displaying** 157:17
158:4
**disposal** 177:16
**disseminated** 47:1
**distinct** 41:8
**distinctions** 231:14
**distributed** 40:11,22
41:9
**distributes** 164:16
**distribution** 105:6
148:19 149:18
**distributors** 144:7
170:15 226:1,2
**district** 1:1,2 2:1,2
13:11,12
**diverse** 92:12
**divided** 43:24
**division** 60:3 113:13
**divisions** 85:6
**doctrine** 188:20
**document** 57:6 62:4
62:8 63:19 64:1
67:13,16,22 77:22
82:14,18,20,23
83:13,16,18 84:3
86:11 93:18,20
101:4 131:13
132:18,23 133:3,5
133:16,17,19 134:1
134:11 136:5
142:15,19,23

163:12,16 168:24
170:13 176:23,25
177:1 178:22
179:10 192:23,25
193:2,6,12,18
194:13 196:4,16
198:11 200:1,3,16
200:19 202:3
203:14 205:21
208:25 209:9
226:16 232:14
233:11,15,16
234:13 238:3,12
241:20 256:23
259:3 268:16
271:11
**documents** 12:8
15:8,9,13,15,16,18
16:6,11,13,15,17,18
16:22,25 17:1 18:8
66:1 67:18 105:17
106:6,9 107:9,12
110:17 111:11,19
116:13 121:9
149:13 151:12,15
151:16,23,25 152:8
161:2 162:13 166:4
167:7,13,23 169:19
177:2,5,14,16
180:21,23,24 181:2
198:3 199:19
215:14 216:9 218:1
219:20 226:20
**doing** 97:18 102:7
112:17 189:14,15
211:10 212:8,9
**dollar** 153:17 154:1
154:18
**dollars** 147:19
**domain** 7:22 25:11
145:10 146:16
149:14,17 151:16
**double** 22:12 82:12
**doug** 51:19 52:5

[downloads - environment]

**downloads**  149:16
**dozen**  88:3
**draft**  32:17 66:24
 199:25 202:17
 203:7 207:18
**drafted**  32:17 42:10
 42:19 43:2
**drafting**  98:9,12,20
 268:20 269:1
**drafts**  66:9,14,18
**drag**  144:4 145:10
 145:23 146:5
 148:18 176:7
**dreyfus**  219:3,4
**drink**  97:15
**drinking**  70:7
**drop**  17:23
**due**  17:9 144:4,5
 214:14 225:21
 244:23
**duly**  14:4 283:5
**duties**  99:14,18

**e**

**e**  5:1,6 6:2 7:2 8:2
 9:2 10:2 11:2 57:15
 57:17 58:12,17 60:5
 62:13,25 63:6,13,14
 64:4,7,18,20,23
 67:10 84:7,9,16
 103:13,17,21
 104:11 128:13,15
 128:16 129:2,18,22
 130:18 134:24
 136:20 137:2,17,21
 138:7,13 139:22
 141:1,4 142:8,18,20
 143:9,9,9,16 179:2
 193:23 194:5,15,21
 195:2,3,23 196:1
 199:12,21,21,23
 200:5,6 201:7 203:4
 203:7,17 204:7,9,16
 204:24 205:24
 206:3,24 207:7,9,18

208:2,9,17,22 209:4
 209:4,8 211:2,14
 213:19 214:3,7
 215:2 217:5 218:19
 220:18,19,24 222:1
 222:3,6,6 223:9
 228:10,22,23
 229:18 232:8,9
 233:5 238:24 239:4
 239:14 241:18
 242:22 243:7
 256:24 257:9,21
 258:9,16,21 270:24
 271:13 283:1,1
**earlier**  58:2 62:5
 65:21 97:2 108:17
 113:18 115:18
 136:21 147:10
 150:9 175:21
 196:15 197:6,15
 220:19 232:8
 239:18 255:14
 266:5
**early**  273:23
**earth**  34:22 40:7
**echostar**  93:6
**economic**  24:22
**economy**  151:22
**editor**  103:18
 163:14
**editors**  163:18
**edits**  267:9 268:1
**educate**  15:5 25:15
 183:9
**education**  107:4,4
**educational**  106:22
 107:1
**effect**  97:25 98:25
 165:12 193:11
 199:1
**effective**  91:21 98:6
**effectiveness**  37:11
 235:21
**effort**  27:19 42:22
 200:8 202:9

**efforts**  54:4 65:9
 105:14 183:8
 212:24
**egs**  1:4 2:4 13:13
**eight**  80:14
**either**  41:15 74:7
 84:8 113:23 115:13
 115:20 123:7,13
 124:16 125:2
 145:24 146:6 211:3
**electronic**  183:3
**electronics**  89:4
 90:21
**email**  5:14,18,20,22
 6:5,10,20,22 7:8,13
 7:15,17,19 8:5,7,9
 8:11,13,15,17,19,22
 9:5,7,9,11,13,15,17
 10:8,10,12,14,16,18
 10:20,22 11:5,7,15
 11:17 17:18
**embarrassed**  76:17
**emerging**  105:13
**emily**  86:13,16
 87:11 88:11 89:6
 93:6,9 102:23,25
 103:3,7 104:1
 136:20 241:12,22
**employee**  23:24
 206:10,18 279:5
**employees**  61:1
 97:19,23 98:1,25
 211:21 266:1 279:3
**employment**  22:14
 81:5 83:23
**empower**  255:24
 256:1
**en**  74:8
**enact**  79:4
**encapsulates**  268:8
**encompassed**  263:2
**encourage**  235:2
**ended**  201:9
**energy**  278:6

**enforceable**  215:7
**engage**  44:16,17
 116:14 117:9 125:2
**engaged**  22:2 29:2
 29:12 43:21 45:15
 46:19 47:25 65:10
 117:5 200:9
**engagement**  43:20
 110:3 117:11
 239:23
**engages**  227:6 253:9
**engaging**  125:13
**engineer**  23:2,3
**engineering**  48:11
 49:15 252:24
 253:22 254:3
**engineers**  1:7 2:7
**enright**  103:14,14
 103:17
**ensure**  97:19 114:13
 115:12 159:4
 162:13 213:21
 219:23
**ensuring**  92:12
 110:20
**enter**  74:11 213:19
 230:20
**entered**  240:21
**entering**  215:6
**enterprise**  35:9
 40:15 55:4 110:19
 148:20 213:3
 248:14 249:19
 251:10
**enterprises**  263:3
**enthusiasm**  243:13
**entire**  218:5
**entities**  30:18 31:1,6
 47:25
**entitled**  16:14,18
 47:11,13 198:25
**entity**  23:19 47:21
**environment**  17:10
 232:22 234:5
 244:21 245:18

[environmental - expert]

**environmental** 24:7
34:21 67:11
**epa** 97:13 232:12,17
**equally** 43:24
**equipped** 22:15
**errata** 163:23 164:2
284:9
**error** 157:18 158:6
158:8 162:1 269:17
**errors** 124:24
151:16 152:9
155:16 156:17,24
157:4,10,19,22
159:5 160:1,4 161:8
161:16,22 162:18
162:23 163:20
164:10 168:8 196:5
196:14,15,16,19
197:2,6,6,7,14,14,15
198:2
**esq** 3:5,13,14 4:4
**establish** 112:19
113:7
**estimate** 42:3,6
153:18 154:1,18
155:20 263:16
**et** 13:10 23:23
**european** 50:9
61:15 74:7
**evaluating** 102:7
**event** 39:7 63:14
64:6,11 67:21 89:25
90:25
**events** 86:23,25 87:6
87:12 88:2,5,7,11
88:13,19,20 89:1,8
89:10,21 270:6
**everyday** 17:9
**evidence** 148:11
**evolution** 69:20,22
**exact** 34:3 37:17
39:2 42:1 83:6
108:12 109:24
123:12 223:10

**exactly** 28:24 39:20
41:2 118:11 122:6
146:18 171:23
211:10 217:7 223:4
**examination** 14:7
53:10
**examine** 94:16
95:15 96:9
**examining** 93:15
94:4 95:6 96:24
179:8
**example** 125:20,21
**excellence** 151:11
235:19
**excellent** 185:23
**exception** 17:3
**exchange** 57:15
58:12,17 84:7 86:6
128:13,15,16
208:22 222:16
223:15 226:16,20
232:7 243:7 278:8
**exchanged** 109:5
**exchanging** 108:22
109:19
**excited** 69:10 106:6
232:17
**excluding** 21:5
132:3
**exclusively** 108:4
121:20 123:14
**excuse** 109:10
135:14 184:12
208:12 212:4
229:13 232:23
254:12
**excused** 282:4
**exec** 137:20,25
**execute** 148:19
153:11
**executing** 148:14
**execution** 144:5
145:11 166:1
167:17 176:8

**executive** 35:20
60:12 67:25 69:9,10
99:13 100:16 138:4
142:3 180:7 207:24
263:23
**exempt** 5:11
**exercise** 68:17,23
**exhibit** 5:9,11,14,16
5:18,20,22 6:5,7,10
6:12,15,20,22 7:5,8
7:10,13,15,17,19,21
8:5,7,9,11,13,15,17
8:19,22 9:5,7,9,11
9:13,15,17,19 10:5
10:8,10,12,14,16,18
10:20,22 11:5,7,9
11:12,15,17 53:5,8
56:25 57:3,8,11,14
57:21,24 58:6,8,11
58:15 61:20,22,24
62:18,22 63:16,22
64:15,17 65:16,18
66:2 67:7,9,14
68:14 82:9,12,17
83:3,8,10,14,17
84:5,6,11,13,15,19
84:21,22,24 86:3,6
99:23 100:1,2 103:9
103:10 104:2,5,9
128:10,13,16,18,24
129:1,4,7 132:12,16
132:17 133:7,12
134:8,10,12 137:13
137:16 142:12,14
142:16 143:2
176:22 178:16,19
193:17,22,25 194:2
194:6 195:20,22,25
197:16 199:8,11,16
199:19,23 200:2,5
200:17 201:6
202:18 203:1,4,9,12
204:16,24 205:14
205:17,20 206:21
206:23 207:4,5,7,15

207:17 208:6,9,13
210:24 211:2,5
217:2 220:15,18,21
228:6,9 229:15,18
229:22,24,25
230:10,13,14 232:4
232:7,12 233:2,5
238:6,8,10,18,20,24
240:7,9,10,11,15
242:18,21 243:3,7,9
256:23 257:2,5,8
258:6,8,11,13,16,18
268:10,12,15 269:8
269:11 270:4,15,20
270:23 271:4,6,9,21
**existed** 223:5
**existence** 224:11
**existing** 245:11
**exists** 218:8 264:19
**expanding** 100:23
**expect** 131:10 272:2
**expectation** 114:10
151:24
**expectations** 20:12
79:16,19,25 96:16
219:25
**expected** 124:8
152:1
**expense** 222:22
**experience** 91:21
98:4 166:19,23
167:3,9 181:8 221:5
**experiencing** 19:17
19:22
**expert** 147:21 148:2
149:1,9,24 150:9,21
153:21 154:4,21
155:4,10 165:2,8
168:1,15 172:15
175:16 176:5
182:24 217:18
218:14,15 220:8
251:5 252:18 254:7
274:10

[experts - fee]

| | | | |
|---|---|---|---|
| experts 251:22 | facilitate 265:5 | federal 38:3 50:2 | 65:12,24 66:12,17 |
| 252:1 | facility 102:15 | 66:4 75:18,22,24 | 67:3,23 68:10,21 |
| expired 195:9 | fact 101:13 111:18 | 76:23 77:6,15 78:1 | 69:15 70:18,23 71:7 |
| explain 70:13 | 112:17 113:24 | 78:2,5,18,25 80:5 | 71:13,17,23 72:5,16 |
| 101:11 111:24 | 115:8,20 116:8,23 | 95:25 97:2,8 98:4 | 73:2,20 74:15,23 |
| 164:22 166:21 | 117:21 126:4 144:5 | 107:25 121:13,16 | 75:5,12 76:1,9,18 |
| 168:10 272:3 | 150:14,17 168:7 | 121:25 123:19,22 | 76:25 77:17 78:3,13 |
| explained 120:7 | 178:12 179:20 | 125:8,9,13 126:12 | 78:19 79:10,13,20 |
| 209:17 | 216:17 218:8 | 127:3 183:25 | 80:1,7,21 81:3,13 |
| explaining 212:12 | 220:13 221:18,25 | 229:19 247:1,20 | 81:23 82:16,24 87:2 |
| explore 149:4 | 222:19 229:12 | 248:2 249:4 250:8 | 87:8 91:12,16 92:21 |
| explored 120:8 | 235:25 246:20 | 250:25 259:19 | 93:2,17 94:18,20 |
| express 117:11 | 259:9 260:14 | 262:1,11 264:6,13 | 95:8,16 96:11,22,25 |
| expressed 71:5 | 264:19 | 264:19,23 265:2,5 | 97:10 98:3,11,16 |
| 105:18 261:3 | factor 97:5 | 265:13,21,25 266:7 | 99:2,15 103:4,15,23 |
| expressing 71:10,15 | factors 93:14 94:3,6 | 266:11,19 273:7 | 104:6,23 106:2,24 |
| expressly 203:14 | 105:21,24 | federation 34:16 | 107:5,11,21 108:9 |
| extended 195:9 | facts 54:17 154:25 | 40:6 | 109:21 112:2,5,22 |
| extensive 211:21 | 168:10 175:9,9,21 | fee 3:5 13:22,22 | 113:10 115:4 116:1 |
| extent 15:20 34:2 | 175:25 220:3 | 14:21 15:20 16:7,10 | 116:10,25 117:13 |
| 38:6 45:3,24 54:12 | 250:20,22 251:16 | 16:20 19:8,13 20:3 | 118:7,13,19,25 |
| 70:11 76:2 77:1 | 251:20 | 20:8,17,22 21:5,8 | 119:2,8,10,18,20,24 |
| 93:18 95:18 131:25 | factual 152:8 244:8 | 21:22 22:7,16 23:6 | 120:3,12,18,21 |
| 134:18 137:6 | 247:5 | 23:13,21 24:3 25:6 | 121:18 122:4 |
| 139:24 141:7,25 | failed 114:20 152:1 | 25:17,24 26:9,20 | 124:14 125:11,25 |
| 150:21 153:20 | fair 46:4,6 121:9 | 27:9,21,24 28:3 | 126:14 127:5,23 |
| 171:16 173:3,14 | fall 140:3 177:24 | 29:13,25 30:8,14,20 | 128:3 129:8,13 |
| 174:10,24 178:4 | falls 198:21 | 31:2,13,20,24 32:6 | 130:5,14,21,25 |
| 187:25 189:15 | false 157:17 172:5 | 32:13,20,25 33:7,17 | 131:4,7,12,24 |
| 192:14 196:7 198:6 | familiar 25:3,4,11 | 34:2 36:4,13,20 | 132:10,24 133:5,19 |
| 215:10 216:12 | 29:9 41:18 55:2,24 | 37:15,20,25 38:14 | 134:17 135:4,9,19 |
| 225:2 227:18 241:5 | 67:15 71:9,20 72:1 | 38:18,25 39:6,16,23 | 135:24 136:2,7,12 |
| 241:17,19 246:11 | 72:7,14,22,24 73:4 | 40:8,23 41:10,17,22 | 136:17,24 137:5 |
| 250:12 251:2 253:2 | 73:8 74:5 104:10 | 41:25 42:4,11,20 | 138:1,18 139:2,13 |
| 254:8 266:24 267:2 | 121:20 124:15 | 43:4,14 44:2,10,20 | 139:23 140:9,15,20 |
| 273:4 274:24 275:4 | 126:24 137:17 | 45:1,6,16,23 46:6 | 141:6,17,20,23 |
| 276:24 280:12 | 140:11,13 164:1 | 46:23 47:7,14 48:3 | 142:10 143:3,11 |
| extremely 157:8 | 170:25 213:11 | 49:2,10 50:12,21 | 144:2,10,18,25 |
| eye 2:18 | 216:5 261:10 | 51:1,9 52:9,16 | 145:6 146:8,24 |
| | 269:18 | 53:15,20,22 54:7,11 | 147:9,21 148:2,7,12 |
| **f** | fashion 29:19 30:18 | 54:18,23 55:10,13 | 149:1,9,23 150:7,20 |
| f 283:1 | feature 217:21 | 55:19 56:4,13,22 | 151:6,9 152:4,15,23 |
| f963 73:17,23,25 | 218:11,12 | 57:6 58:3 59:4,14 | 153:3,6,20 154:4,8 |
| 74:7,18 75:4,16,20 | february 8:13 58:23 | 59:18 61:6,12 62:7 | 154:13,21 155:3,10 |
| | 99:19 | 63:1,20 64:25 65:3 | 155:21 156:1,3,9,13 |

[fee - form]

156:19 157:5,24
158:10,17,22 159:1
159:8,12,18,24
160:6,15,21,24
161:11,18 162:2,8
162:19,24 163:5,19
163:24 164:6,12,19
165:2,8,19 166:7,15
166:24 167:4,18
168:1,15,22 169:9
169:17 170:2,11,23
171:16,22 172:5,12
172:15 173:3,8,13
173:20 174:4,7,23
175:15,23 176:4
177:6 178:3,13,17
178:20,24 179:6,18
180:4,17 181:12
182:2 184:10,18
185:8,11,20 186:6
186:14,22 187:6,16
187:24 188:11,19
189:9,15,23 190:8
190:11 191:3,8,11
191:22 192:10,12
192:25 193:3,7,12
196:7,20 197:1,8,19
198:4,23 199:2,14
199:20,22 200:15
200:18 201:3,11,17
201:23 202:10,19
203:13,25 204:10
204:19 205:17
206:12,19 207:8,14
207:20 208:3,12,25
209:9,23 210:5,20
211:16 212:17,21
213:8 214:22 215:3
215:8,24 216:11,23
217:17,23 218:13
219:14 220:7 221:9
221:14 222:2,10
223:3,18 224:2,19
225:2,10,18 226:8
226:14 227:18,21

228:12,19 229:8
230:22 231:7,13,21
231:23 232:14
233:11,16,20
234:13,20 235:4,14
236:5,10,15,22
237:4,9,21 238:3
239:1,3,8,10,20
240:1,16,23,25
241:5,23 242:7,12
242:15 243:15
244:3,10,18 245:14
245:24 246:9 247:3
248:4,18,23 249:5,8
249:13,22 250:1,10
251:4,18 252:2,6,16
252:25 253:11,24
254:5,19 255:1
256:2,11 257:12,17
257:22 258:19
259:3,13,21 260:2,5
260:9,22 261:21
262:3,13,22 263:7
263:12,18 264:8,16
264:24 265:7,15,19
266:2,23 267:11
268:4,22 269:3,15
270:10 271:2,20,25
272:6,14,19 273:1,9
273:12,14,16,19
274:9,17,24 275:3
275:16 276:1,6,12
276:19,22 277:9,25
278:12,23 279:9,18
279:25 280:11,21
281:2,14,17,23
**feel**  47:17 249:13
**feels**  250:3
**felt**  114:7 117:24
   248:10
**fenwick**  3:12 13:19
**fenwick.com**  3:19
   3:20
**fh**  130:24

**field**  138:7 140:18
**figure**  20:2 75:11
   182:23 200:16
**figured**  224:8
**figures**  20:11 266:4
**figuring**  110:9,11
**filed**  13:11 57:5
   139:16 215:20
**filing**  135:22 177:25
**fill**  90:13,19
**fimsa**  113:13 114:24
   115:25 116:9,24
   120:2 229:13
**final**  58:25 123:7
   202:15 209:15
**finances**  143:18
   144:23
**financial**  150:23
**financials**  18:21
**find**  109:19 114:25
   121:15 152:21
   172:20,21,24
   226:22 247:8
   268:11 273:7
   275:13
**findings**  50:3
**fine**  15:25 127:18
   281:20
**finish**  78:10,14
   273:13
**finished**  133:11
**fire**  1:5 2:5
**firm**  29:9,24 30:4
   32:16 42:13,19,25
   43:7,9 44:7 131:22
   132:2 202:7,9,14
**firms**  44:7,11,12,17
   44:24 130:1
**first**  14:4 28:22 29:1
   29:11,17 30:6 39:12
   39:13,21 63:3,11
   68:9,14,15 82:16
   83:2 104:6 108:7
   111:20 136:16
   143:10 144:22

145:23 146:5,10
   155:14,15 156:24
   157:1,2 199:20
   203:15 211:9
   220:13 221:22
   222:21 224:7
   232:12 240:14
   270:1
**five**  60:23 89:9
   108:13 264:23
   265:2,13 276:5,8
**fix**  75:14
**flagship**  181:13
**fleishman**  131:6,9
   131:23 132:9
   202:16
**flexible**  40:19
   112:14 224:9
**flipping**  82:12 158:3
**floor**  3:16 4:6
**focus**  23:25 62:17
**folks**  241:17 251:21
**follow**  16:21 263:22
   268:20 269:1
**followed**  269:20
**following**  40:6 79:4
**follows**  14:5 93:14
   209:4 270:3
**force**  70:21 71:3,6
   71:16 252:24
   253:22 254:3
**forced**  115:13
   216:21
**foregoing**  284:4
**foreign**  74:24
**foremost**  14:11
**forget**  61:13 86:15
   173:8
**forgot**  17:13
**forgotten**  166:11
**form**  11:9 19:8,13
   22:7 24:3 41:17
   57:5 59:8 89:11
   115:4 116:1 125:25
   126:14 127:5

Page 19

[form - going]

150:20 152:23
160:24 166:24
167:4,18 168:16
173:21 182:2
197:19 198:4 209:1
220:7 224:19
239:20 248:5
249:10 251:6 260:5
265:19 268:17
284:8
**formation** 31:16
**formats** 226:23,24
231:16
**formed** 28:6
**former** 281:12
**formerly** 99:10
275:22
**forming** 34:7
**forms** 57:10
**formulate** 30:3
**formulation** 256:9
**fortunately** 155:12
**forum** 7:21 89:13,15
**forwarded** 65:7
194:24
**forwarding** 64:23
**found** 157:9
**foundation** 26:9
27:21 38:25 44:10
52:16 66:12 69:15
74:23 75:5 91:12
98:11 107:17 112:5
169:17 178:13
179:18 180:4 195:8
209:23 210:20
211:16 224:2 251:5
257:22 258:19
260:10 262:24
263:18 277:25
**four** 24:8 89:9
218:24
**fpa** 25:14,21 27:3,4
27:7,20 36:25 65:10
**frame** 32:14 109:25

**francisco** 3:17 4:7
**frankly** 124:23
**free** 47:17 50:8
114:19 152:21
244:1 246:22,24
247:17,25 249:1,15
250:6,23 252:15
**freely** 185:25 246:4
**freezes** 261:6
**frequent** 252:11
277:19
**frequently** 277:24
279:7,16,23
**fresh** 38:9
**friend** 34:22
**friendly** 218:12
**friends** 40:7
**frighten** 158:25
159:2,4
**front** 95:10 143:2
202:4 241:18
247:14
**full** 181:1 217:14,14
217:15 266:1 273:4
**fully** 169:11
**fun** 243:20,24
**function** 55:21 56:1
181:7
**functionality** 223:11
**functioning** 59:2,11
**functions** 59:7
**fund** 148:20 249:18
251:10
**fundamentally**
244:5
**funded** 107:16
108:1
**funding** 37:1 49:20
187:23 188:10
189:2,8 190:18,21
191:1,15,20 192:6
222:15 223:14
278:2
**funds** 266:7

**furnish** 147:14
198:20
**furnishing** 215:1
**further** 43:25 44:4
83:17 95:24 119:17
133:7,12 136:14
194:6 198:14
200:17
**future** 113:4 223:17
248:14

**g**

**g** 61:19 101:3
**gain** 213:14 230:2
**gains** 19:12
**game** 46:4
**gather** 123:17
**gathered** 123:15
**general** 4:14 16:19
33:13 38:13 54:14
80:2 85:12 96:21
117:17 143:13
146:19,20,21,22
184:7,16 185:17
186:20 187:14
270:1,17
**generally** 17:7 20:13
36:6 47:1 54:22
97:13 146:3 163:6
235:12 237:11
269:4
**generate** 41:16
**generates** 243:13
**germany** 138:20,25
**getting** 119:10
210:12 220:25
221:12 222:8
**gillerman** 91:5 93:5
**give** 39:1 42:7 73:11
80:2 83:6 93:19
96:19 99:8 108:12
109:23 119:17
125:20 127:16
131:12 146:1
155:18 162:24

167:2 182:25 216:8
238:16 268:9 276:7
277:22 278:13
281:17
**given** 125:16 214:8
283:12 284:6
**gives** 218:2
**giving** 108:8 194:17
195:1
**glad** 271:22
**glean** 117:17
**global** 21:18 90:12
90:15 151:21 280:3
**globally** 151:10
**go** 17:24 19:14 42:6
46:6,9 76:8 77:4
78:23 81:14 89:16
113:24 115:5,21
117:3 121:15
127:10,19 130:5
137:10 141:22
149:25 151:4
154:12 156:5 158:1
159:22 168:17
174:13 178:7
179:17,25 190:11
190:23 192:17
193:16 205:6
217:16 248:6
260:11 267:1,20
276:10 278:13
**goal** 180:22 214:4
**goals** 83:24
**gobbi** 61:19
**goes** 109:2 163:12
**going** 15:22 16:10
17:23 18:1 35:3,6,8
35:10,13 44:21 46:7
81:8 87:16 102:7
105:15 108:18
114:10 119:7
124:18 128:4 130:7
130:8,12,14,16
131:1 136:12,13
141:21 154:15

[going - high]

158:8 168:23
173:13 176:9,14
180:2 181:4 191:21
193:3,17,21 203:13
203:15 204:11
205:8 207:3 214:16
221:15,16 233:25
238:11,12 271:2,20
274:1 275:3
**good**   13:3 14:9,10
16:2 18:25 106:10
112:15 159:25
227:23
**google**   189:2 191:20
192:4,8 195:8
**gordon**   91:5 93:5
**gotten**   125:1
**gov**   207:13
**government**   21:17
44:6 59:3,12 70:22
71:20 72:24 73:8,11
73:12 74:16 91:2,10
91:14,23 92:1,3,7
92:16,17,18,22
93:14 94:3,16,23
95:5,14,17 96:7,8
96:20 97:23,25 98:5
98:25 107:9,11,25
115:16 121:17
124:11,11 125:8,9
126:7,11,12 127:2,4
139:19 140:4,8,10
140:14,19,23 142:4
142:8 183:21,23
206:6,10,17 234:11
234:11,18,21
235:20 236:1
239:24 247:1,20
248:2 249:4 250:9
250:25 262:11
264:7,23 265:2,5,13
266:8,11,19 273:4,5
279:3,5
**governmental**   74:22

**governments**   73:18
73:24 125:23,24
126:2 235:3,6,12
236:20 256:10
**grains**   28:17
**grant**   195:8
**grated**   244:2 254:16
**great**   68:17 128:3
133:13 221:4 273:3
**greater**   29:5 33:22
36:23 91:2,10,14
110:17 111:4,10
**gregory**   64:24 65:6
**ground**   97:15
171:18
**group**   23:17 26:1
27:8 28:10,12 29:2
29:12,23 30:7 31:17
32:15 34:18 36:2,3
46:22 47:13,21,22
178:12 234:23
235:23 255:20
277:6,20 278:11
279:4
**groups**   34:21 35:12
40:7,12 89:14
182:25 250:18
**grove**   1:18 2:17 5:2
13:14 14:3,9 53:7
57:2,13,23 58:10
63:19 64:17 65:1
82:11 84:6,15,22
86:6 104:5 128:14
131:22 132:15
136:14,20 137:16
144:13 176:21
194:4 199:11 201:6
203:11 205:16,19
228:9 230:13 232:7
235:2 236:12
238:22 242:20
256:22 261:17
268:14 269:11
270:23 281:21
282:2 284:3

**grover**   128:12
**guess**   54:19 80:23
106:3 127:1 129:10
234:15
**guidance**   15:21
95:25
**guideline**   123:1
**gunderson**   81:18
**guns**   211:9
**guy**   212:12
**guys**   159:13

**h**

**h**   5:6 6:2 7:2 8:2 9:2
10:2 11:2 228:17
**habitate**   97:16
**half**   240:15
**hand**   65:18 83:11
103:9 114:8,14,16
193:21 238:8
**handed**   57:2,13,23
58:10 67:9 82:11
195:22 203:11
205:16,19 240:9
268:14
**handing**   61:22
83:10 128:12 129:1
134:10 271:6
**hands**   222:20
**happen**   136:12
224:10
**happened**   159:10
180:20 264:2
**happening**   108:23
261:1 278:8
**happens**   164:15
264:1 269:21
**happy**   81:12 154:14
179:2 222:11
**hard**   148:4,6 185:22
273:22
**harm**   145:12 148:25
150:18 161:4
164:25 167:24
168:5,10,11,19

170:20 172:9
**harmful**   247:2,21
248:2 249:4 250:9
**harms**   147:7 150:15
150:23,24 152:3,14
152:17 175:14
176:3
**hazardous**   113:16
**hazards**   169:3
**head**   128:21 281:16
**header**   204:17,25
**headquarters**   60:24
101:17 102:20,22
**health**   17:10 152:6
**hear**   28:22 105:12
109:17 151:6
161:22 186:1,4
246:19 254:21
**heard**   25:1 72:9,13
105:17 146:16
152:19 159:20
172:4 218:9 253:5
**hearing**   112:12
131:18 157:1
**heating**   1:6 2:6
**heavily**   94:13
**held**   13:6 23:11
24:15 164:16
**hello**   87:13
**help**   23:14 42:14
59:20 98:9 114:12
117:18 202:7,9
211:21
**helped**   32:14,17
**helping**   69:24 97:14
162:12 224:7
**helps**   98:6 101:6
251:11
**hesitant**   178:24
**hey**   261:8
**hf**   129:7,25 130:16
130:24
**hi**   87:13
**high**   110:22 219:18

Veritext Legal Solutions
866 299-5127

[highlighting - independence]

highlighting  64:11
highway  102:13
hill  80:13,15 81:5,20
    107:14 112:25
    116:20
hillard  131:6,10,23
    132:9 202:16
hired  23:1
hit  229:5
hitchcock  62:11
hold  45:6 154:8
    173:20 175:23
    177:4,6,13,15
    192:10 200:11,15
    231:21 240:23
    260:9 275:1
homeland  221:20
    222:14,20
honest  18:24
honestly  102:25
hong  74:5
hooper  257:25
    258:1,9
hope  243:13
houck  206:24
    207:23,24 271:13
hour  176:10
hours  14:19 15:14
house  22:18 35:18
    81:24 259:5
housewright  28:18
    30:13 279:14
huh  51:23 175:13
hundred  187:11
hypothetical  172:13
    173:17 256:13

                i

ibr  36:17
idea  16:2 30:6,17,25
    31:5 37:24 38:12
    69:11 106:7 107:25
    110:6,8,9,10,24
    129:12 131:7
    141:11 213:4,6

245:13 255:13,14
ideas  105:18 110:14
    246:4
identification  53:6
    57:1,12,22 58:9,16
    61:21 63:17 64:16
    65:17 67:8 82:10
    83:9 84:5,14,21
    86:4 99:24 103:11
    104:3 128:11,25
    132:13 134:9
    137:14 142:13
    194:1 195:21 199:9
    199:17 203:2,10
    205:15 206:22
    208:7 210:25
    220:16 228:7
    229:16,23 230:11
    232:5 233:3 238:7
    240:8 242:19 243:4
    257:3,6 258:7,14
    268:13 269:9
    270:21 271:5
identified  30:2 62:5
    93:13 121:12 150:8
    176:7 201:7 208:2
identifies  83:24
    231:2
identify  13:16
    166:10 167:8
    198:10
identifying  29:14
    166:13 266:20
ietf  253:5,9,13
ignorant  76:7,12,13
    76:15,15,19
ignore  76:12
ileane  56:16
illinois  52:20
imagine  178:25
immediate  159:6
immediately  160:11
impact  143:18 144:4
    144:23 145:2 146:2
    146:17

impacted  70:10
    113:21 114:3
    167:17
impactful  70:1
impacting  166:1
impacts  117:6,7
    251:22
implement  116:5
implies  54:12 73:6
    233:24
imply  118:2
implying  116:4
importance  36:8
important  17:8
    34:24 38:3 94:6,7
    110:21 152:6,11
    159:20 162:12
    224:6,7 236:2
impose  80:5
imposed  262:10
impression  168:6
improper  47:3
    273:18
improve  70:2,5
inability  153:10
inadvertently
    191:18
inches  217:6
include  34:8,11
    35:17,20 85:16,17
    259:25
included  92:23
    204:6 206:25
    263:25
includes  77:7
    121:23
including  40:12
    77:20 92:15,22
    194:24 199:12
    204:8 208:10 239:5
    242:1
inclusion  170:21
income  5:12
incoming  206:4

incomplete  207:15
inconsistent  44:22
incorporate  75:4,6
    75:16 77:21 97:2
    124:12 125:9,24
    235:3,13 236:20
    256:10 262:1,11
incorporated  44:8
    70:16 72:15,18,25
    73:9,13,18,22,24
    75:21 105:4 121:6
    121:13,17,24 122:8
    122:15 123:2
    124:18 126:11,13
    127:3,4 169:8,16,21
    169:25 170:9,19
    179:22 213:1
    219:11,21 224:14
    224:18,22 225:1
    227:3,14,17 230:3,7
    231:19,20 232:1,3
    233:1 235:10,17
    237:25 246:23
    247:1,11,19 248:1
    248:12 249:3 250:8
    250:24 262:7
    267:10,14 268:2
incorporates  126:8
incorporating  97:8
    264:7
incorporation  11:12
    31:12 36:11 40:5
    64:13 73:5,14 74:17
    75:10 77:8 86:19
    126:3 133:10,17,24
    237:19 259:11,19
    260:1 261:2
incorporations
    123:18 133:3
    232:13
increase  19:16,21,24
incurs  222:23
independence  40:14
    40:16

independent  15:23
76:4 77:3 78:22,24
115:15 141:10
independently
245:19
index  12:1
indicate  75:20
118:16 149:14
226:23 250:22
indicated  74:17
86:10 134:5 204:17
204:25 283:4
indicating  238:17
individual  98:18
99:7 210:7,15 267:5
individually  62:10
95:19 107:23
109:13 253:4
individuals  80:23
181:16 267:8,25
industries  22:6
157:13
industry  21:17,18
21:21,25 22:1,4,5
23:17 90:13,16 91:2
91:10,15 93:16 94:4
94:17 95:6,15 96:9
114:12,13 171:7
infer  211:18
influenced  105:22
105:24
inform  36:7 59:20
79:3 103:6 198:1
informal  25:1,23,25
26:4,7 28:10,12
31:17 32:15 36:2
information  16:4
38:3 43:9,11,25
44:4 50:3 54:1,4
56:2 77:7,20,23
85:16 108:23 109:6
109:19 114:11
131:9 134:19
147:14 149:16,20
150:5 157:14,18

192:19,19,24
194:17,20 195:2,13
195:16 198:19
208:20 213:24
214:1,8,16 215:4
216:16,17 230:19
231:1,2 233:8
246:14 271:17
273:3 278:8
informational
108:21 112:16
informed  42:13 43:9
informing  38:4
183:19
infrequent  123:21
initially  112:24
initiated  49:8
initiative  18:9 29:23
32:5
injury  152:10 155:7
158:9,15 160:20
innovation  244:17
244:20 245:1,2
255:16,24
innovative  268:7
input  32:19,22,24
33:3
inquiries  184:20
insofar  59:10
inspections  102:17
instance  49:7 57:19
73:12 100:24
122:16 262:8
263:11 281:7
instances  48:25
88:17 89:24 165:16
200:20 260:25
institute  24:17 35:5
35:9 40:7 48:20
49:21 52:2 91:6,8
107:17 111:8
121:22 132:9
232:18 278:3
instruct  15:22 16:10
42:5 45:23 46:24

119:18 130:14
131:1,2,25 134:19
135:24 136:2 137:9
139:25 174:11
175:1 178:5 188:2
188:22 192:15
196:10 198:23
200:16 203:16
204:11 241:7 275:3
277:1 280:13
instructing  47:15
76:18 141:9
instruction  16:21
47:3 48:3 49:2
119:16 188:11
189:9 191:23
198:17 199:1,6
280:21 281:2
insures  163:15
integration  244:1
intelligence  123:4
123:15,17
intend  79:4 234:23
intended  85:10
116:2 163:16 178:2
216:15
intending  213:25
intends  169:7
intent  259:15
intention  169:10
234:3
interact  96:14
182:17 279:7,16,23
interacted  37:5
59:10
interaction  279:21
interactions  32:2
86:13 88:22 96:7
182:21 242:14
253:6
interest  34:18 40:6
49:25 50:9 89:13
105:1,10,13 106:1
107:14,19 109:17
110:2 125:17

126:23 138:23
160:19 185:14
202:1,1,5 204:12
214:20 223:24
278:5
interested  66:23
117:22 120:9
170:17 183:6
261:13 283:15
interesting  105:18
121:7
interests  42:14
247:9
intermittently
228:11
internal  57:5 115:10
248:8 257:21
internally  177:1
international  1:4
2:4 4:14 5:16 57:20
60:16 64:14 68:3
90:9 94:11 188:9
189:7,21 190:20
internet  114:19
149:22 152:21,22
160:19 167:23
168:13 169:7
171:14 174:3,22
175:12 176:3
197:18 198:3
252:23 253:22
interpret  142:7
interpretation
233:23 234:16
interpreting  234:22
interprets  234:19
interrupted  197:11
interview  104:1
interviewed  87:10
87:23
introduce  110:6,24
241:15,16
introduced  110:8,11
112:25 241:17

[introducing - knowledge]

**introducing** 188:15
**inventory** 273:3,5
**invested** 94:13
**investigate** 187:22
  189:2 190:25
  191:15,19
**investigated** 192:6
**investigation** 187:25
  188:3
**investigator** 86:16
**investment** 50:7
  148:23 244:1,17
**invite** 79:4
**invited** 48:10 49:14
**involve** 178:8
  198:18
**involved** 23:8 24:23
  32:10,12 45:5,11
  49:20 62:14 77:10
  138:14,24 142:21
  147:13 198:6,13
  221:17 245:1
  266:12 280:1
**involves** 139:6
  163:13 277:13
**iso** 74:8,8 143:13
**issue** 108:25 112:10
  115:11 116:15
  139:7,10 140:5,7,8
  140:11,14 142:4
  163:23 164:4,10,25
  172:1 179:8 184:21
  186:19 192:23
  198:13 202:6
  220:14 270:18
**issued** 186:24 187:3
**issues** 31:11 32:15
  36:11 89:15,17
  140:19,23,24 144:5
  184:21 189:24
  193:10 200:19
**itc** 271:16
**item** 95:5 130:18
**items** 272:11

**iterative** 42:12 43:8
  69:3 268:7
**itmc** 271:16

**j**

**j** 1:23 2:20 3:5
  283:19
**james** 57:16 85:23
  104:14 199:12
  203:5 218:21 243:8
**january** 11:10
  143:22 180:1,20,21
  180:22,25 181:6
  187:4
**jeff** 6:15 7:5 65:1
  68:7,16,19,20
  104:17 128:14
  208:18 236:12
**jeffrey** 1:18 2:17 5:2
  13:14 14:3 282:2
  284:3
**jennings** 281:11,12
**jim** 6:15 57:19 62:14
  64:5 81:16 83:25
  84:2 85:11,22,23
  100:14 142:3
  146:25 180:9,10
  182:20,23 184:22
  207:25 218:20,20
**jkfee** 3:9
**job** 1:24 21:14,15,20
  22:15 58:24 68:17
  101:6 237:12
**jobs** 80:15,19
**joe** 258:3,4 280:4
**john** 18:19 86:7
  93:6 104:14 128:17
  145:15 146:16
  147:10 148:14
  149:14 153:8 176:7
  211:3,18 212:10
  220:18 221:4,17
  222:18 251:21
  252:1,12 270:25

**joined** 13:23
**joint** 27:19 200:8
**jointly** 27:3
**jonathan** 64:23 65:6
**jordana** 14:21
**joseph** 135:1
**journals** 107:16
  108:4
**jr** 4:13
**july** 7:11 10:12
  11:13 100:6 135:22
  137:3
**justice** 142:17

**k**

**kate** 58:13,18 59:25
  60:1,7
**kathe** 258:1
**katherine** 60:13
  85:13 99:9 208:10
  270:24
**kathie** 100:15,17,24
  101:2,5,17
**kathie's** 101:6
**keep** 35:3,6,8,10,13
  40:16 76:9 81:8
  97:14 203:22
  214:10
**keeping** 110:19
  214:20 250:18
**keeps** 130:18,20
**kevin** 3:5 13:22
  14:21
**key** 29:6 33:23,25
  34:5,12 38:3,24
  39:5,14,22 41:16
  50:9 105:16 123:22
  250:17 262:17
**kin** 283:14
**kind** 167:2
**kinds** 50:4 168:11
**knew** 19:2 188:10
  189:8 190:17,20
**know** 16:14,18
  17:13 20:18,20

23:22 27:24,24,25
28:2,5 30:15,17,25
31:9 34:4 37:22
45:3 47:11,13,22
48:2 54:13,19,22
56:6,15,24 63:8
66:21 80:10,12
88:12 93:24 97:12
99:5 103:2 106:3
109:24 112:8
116:14,19 121:15
123:2 124:6 132:8
132:11,21 134:1,4
134:21 137:4
141:25 150:14
152:6 156:16
158:12 159:23
160:3 161:6,10
162:6 166:8 168:19
172:14 177:19,21
181:20 186:13,24
195:16 198:25
202:17,21 205:21
212:12 215:11
217:21 218:24
222:11,12 223:19
224:15,16 241:1
242:1 243:17 250:3
253:4,13 254:8
264:13,17,18 268:8
271:22,25 276:15
276:17 277:3,10
280:6
**knowing** 178:25
186:10
**knowledge** 15:17
25:18 39:24 43:2,10
54:10,17 55:12
56:17,20 78:4 94:25
98:13 102:17
117:18 126:16,18
126:21 135:18,20
140:22 143:1 145:2
145:4,5 146:19,20
146:21,22 147:23

[knowledge - long]

151:14 152:24
153:1 154:23
156:16 160:8
167:25 185:10
187:4 188:6,8 189:6
189:20 190:13,19
191:17 192:7
203:21 204:3,21
215:18 217:7 219:7
219:12 230:9 231:9
240:17,20 241:19
254:10 261:25
262:5,14 265:9
274:20
**known** 34:19 55:1
73:17 74:8,8 102:13
103:18 138:20
151:10 182:24
**kong** 74:5
**koury** 258:3,4
**kramer** 280:6,6,7,17
280:20

**l**

**l** 13:21 143:9
**lab** 232:21
**laboratories** 52:25
203:19,22 204:6,9
**laboratory** 102:16
204:13 206:7
**lack** 26:9 27:21
44:10 66:12 69:15
74:23 75:5 91:12
98:11 112:5 169:17
178:13 179:18
180:4 209:23
210:20 211:16
224:2 251:5 257:22
258:19 260:10
262:23 263:18
277:25
**language** 227:13,15
233:23 260:19,20
261:13,19 263:6
266:21 267:8,25

**large** 104:17
**launch** 181:21
**launched** 69:18
**laura** 62:11,14
**law** 70:22 71:3,6,16
71:21 72:15,25 73:6
105:19 171:1,6
234:12,18,19
259:19
**laws** 105:4
**lawsuit** 48:15,21,22
51:11 135:23
139:16 178:1
215:20
**lawyer** 135:18
**lawyer's** 119:16
199:6
**lawyers** 15:16
131:18
**lays** 95:24
**lead** 86:16 158:8
**leader** 111:16
**leaders** 111:15
**league** 243:22
**learn** 18:23 19:15,21
146:13 156:24
**learned** 108:24
145:23 146:5,10
157:1 188:12,16
**leave** 58:22
**led** 21:24 99:10
**left** 58:20 256:16
269:6,7
**legal** 2:18 4:18
15:21 33:9 47:5
54:11 59:14 70:23
71:8,23 73:2 74:24
78:19 80:8 89:15,16
135:9 139:7,9,25
140:5,7,19,23 141:8
143:7 161:13
171:17 173:5,14
174:11,12,15 175:1
175:5,7,8 189:3
198:13 203:14

206:12 215:8,10
216:11,13 225:3
227:19 242:16
266:24 267:2
**legislation** 36:16
112:25 113:11,22
113:23 114:4,25
115:9,20,23,25
116:9,24 117:12
118:4,16,24 120:2
120:10 259:2,5
260:1 261:5 262:18
**legislative** 80:16,17
115:15
**len** 242:23,25 243:1
270:24
**letter** 6:7 65:20
66:20 116:19,20
**letters** 66:10 116:13
126:21 183:18
**level** 85:21 165:25
243:13 278:15
**lewis** 3:4 13:22
**libraries** 106:16
**license** 9:19 10:5
227:7,14,16 230:21
230:25 231:18
**licensed** 144:7
170:14 226:2
**licenses** 224:24
227:13,15
**licensing** 224:17
227:6 230:15
**life** 152:7,10 155:8
159:6
**limit** 281:15
**limited** 78:6 198:16
**line** 12:4,9,14 69:19
86:15 100:14 110:5
137:21 143:10,16
155:18 180:23,24
189:24 195:1
201:13 209:16
**lines** 48:5

**list** 35:16 121:16
196:7 207:1
**listed** 122:3
**listen** 17:19
**listening** 13:20
**listing** 196:5 270:2
**lit** 41:4
**literature** 41:6,8,14
43:3
**litigation** 45:5,12,15
46:20 50:25 51:3,6
51:8 65:19 132:3
136:6 137:8 143:6
177:2,5,14,17 185:5
188:1,22 189:22
196:9 203:23
240:22 241:4
276:21 280:10,12
280:16
**little** 123:4 179:8
181:8 210:1 220:12
243:22
**live** 179:11,20,25
180:2,14 181:4,6
**lively** 85:15 100:25
208:17 219:1,2
**lively's** 208:19
**lives** 70:2,5
**llp** 3:4,12 4:3
**lobby** 26:11
**lobbyist** 26:8,12
**located** 13:7 277:16
**location** 122:3
215:20
**log** 131:5,11,13,15
131:21
**logo** 69:5,7,11,19
167:22 168:12,20
168:25 170:8,21
171:10,13 172:10
173:1,2 174:1,20
175:11 176:1
**long** 21:12 105:12
108:17 155:20
177:21 181:21

[longer - mckiel]

| | | | |
|---|---|---|---|
| **longer** 114:17 166:4 167:13 | **mail** 57:15,17 58:17 60:5 62:13,25 63:6 | **makers** 35:15 183:9 **making** 40:18 59:21 | 203:1,9 205:14 206:21 208:6 |
| **look** 38:9 53:7 57:6 97:14,17 113:20 | 63:13,14 64:4,7,18 64:20,23 67:10 84:7 | 111:18 123:6 124:2 126:22 171:24 | 210:24 220:15 228:6 229:15,22 |
| 114:3 115:19 121:11 124:9,17,19 | 103:13,17,21 104:11 128:13,15 | 212:4 245:21 248:21 259:18 | 230:10 232:4 233:2 238:6,8 240:7 |
| 206:23 257:8 | 128:16 129:2,18,22 | 261:14 | 242:18 243:3 257:2 |
| **looked** 121:20 | 130:18 134:24 | **malamud** 4:16 | 257:5 258:6,13 |
| **looking** 70:6 94:9 | 137:2,17,21 138:7 | 13:21 38:23 39:4,14 | 268:12 269:8 |
| 96:1 111:2 210:6,15 | 138:13 139:22 | 39:22 40:4 63:4,12 | 270:20 271:4,7 |
| 227:23 235:22 | 141:1,4 142:8,18,20 | 135:23 139:1 | **market** 110:22 |
| **looks** 100:20 194:22 | 143:16 193:23 | 144:24 145:24 | 219:18 |
| 207:8 231:8 | 194:5,15,21 195:2,3 | 146:6 159:19 160:2 | **marketing** 85:25 |
| **lorraine** 32:2,4,7 | 195:23 196:1 | 194:23 198:2 | **marketplace** 74:12 |
| 135:1 199:24 201:7 | 199:12,21,21,23 | 207:12 229:4 245:4 | 74:20 77:12 166:1,2 |
| 202:24 238:25 | 200:5,6 201:7 203:4 | 246:20 | 167:17 169:3 |
| 239:4,15 | 203:7,17 204:7,9,16 | **malamud's** 139:17 | 255:18 |
| **lose** 209:18 251:1 | 204:24 205:24 | 246:24 254:15 | **martin** 1:23 2:20 |
| **loss** 147:24 152:10 | 206:3,24 207:7,9,18 | **malamudomb** | 14:1 17:15 53:3 |
| 155:8 160:20 | 208:2,17 209:4 | 207:13 | 90:14,17 283:19 |
| **lost** 68:8 147:19 | 211:14 213:19 | **management** 35:21 | **mary** 67:11 138:10 |
| 148:9,11 149:20 | 214:3,7 215:2 217:5 | 37:9 49:22 115:12 | 180:8 232:8 |
| 153:18 154:2,19 | 218:19 220:18,24 | 183:24 209:5 | **maryland** 81:6 |
| 155:1 177:11 | 222:1,3,6,6 223:9 | 271:18 | 102:15 |
| **lot** 15:7 77:6 121:7 | 228:23 233:5 | **manager** 60:1 90:12 | **massachusetts** 32:9 |
| 125:4 180:5 181:5 | 238:24 239:4,14 | 243:1 258:4 | **material** 134:15 |
| 184:20 185:24 | 241:18 242:22 | **mandated** 232:23 | 257:11 |
| 201:25 202:5 205:6 | 243:7 256:24 257:9 | **manner** 74:18 | **materials** 1:4,16 2:4 |
| 213:3 218:7 244:22 | 257:21 258:9,16,21 | **manufacturers** 34:9 | 2:16 13:10 40:11,21 |
| 248:8 279:21 280:1 | 271:13 | **march** 1:20 2:20 | 40:25 43:17 151:25 |
| **low** 40:17 110:20 | **mails** 58:12 84:9,16 | 13:1,5 283:22 | 281:8 |
| 250:18 | 136:20 179:2 208:9 | **margaret** 85:17 | **matter** 45:9 161:13 |
| **lower** 278:15 | 208:22 209:4,8 | **mark** 193:17 279:20 | 189:4 227:10 235:5 |
| **lowest** 278:16 | 211:2 220:19 | **marked** 5:8 6:4 7:4 | **matters** 15:3 175:5 |
| **lunch** 127:17 | 228:10,22 229:18 | 8:4 9:4 10:4 11:4 | **matthew** 3:14 13:19 |
| **lying** 144:9 | 232:8,9 270:24 | 12:13 53:5 56:25 | **maureen** 64:20 |
| **m** | **main** 70:4 265:12 | 57:11,21 58:8 61:20 | 135:1,13 206:24 |
| | **maintain** 40:16 94:7 | 63:16 64:15 65:16 | 207:23,24 271:13 |
| **m** 13:21,21 90:5 | 219:22 | 67:7 82:9 83:8 | **mbecker** 3:20 |
| 228:17 | **maintained** 168:9 | 84:13 86:3 99:23 | **mcclung** 58:13,18 |
| **machine** 283:8 | **maintaining** 105:5 | 103:10 104:2 | 59:25 60:1 |
| **machinery** 22:23 | 213:2 | 128:10,24 132:12 | **mcclung's** 60:7 |
| **machines** 213:24 | **major** 22:13 | 134:8 137:13 | **mckiel** 67:11 68:9 |
| **magazine** 103:18 | **majority** 21:23 | 142:12 193:25 | 138:10 141:1,11 |
| 104:1 134:7 181:17 | | 195:20 199:8,16 | 180:8 232:8 |

Veritext Legal Solutions
866 299-5127

[mean - narrative]

**mean** 41:13,14
45:20 46:3,20 72:20
77:5 107:1,20 111:5
114:5 115:22,24
118:2 142:2 179:15
180:2 183:21 211:8
217:6 222:7,9,12,12
223:16 225:23
226:6,12 228:18
234:5,6 271:16
**meaning** 45:20
**means** 217:9,11,13
233:23 234:16
266:20
**meant** 114:23 115:2
115:3 121:7 137:25
180:15 243:14,17
**measurable** 143:18
144:22
**measurement**
232:24
**mechanism** 74:9,19
**media** 184:21
**meet** 14:13,16,20
86:21 94:10 110:18
226:15 248:14
**meeting** 51:7,20
68:5 117:21 182:4,6
182:6 279:4
**meetings** 15:7,13
24:23 36:22 88:15
89:18 277:13,20
278:25
**meets** 74:7
**megan** 28:18 30:13
279:14
**member** 89:11 95:2
124:16 146:4 187:9
230:1 236:2 246:8
266:3 280:7 281:12
**members** 21:24 22:6
53:2 55:2 80:24
89:12,14,15 137:20
137:25 138:3,8
148:15,23 153:10

153:15 181:15
182:7,11 183:5
184:8,17 185:17
194:23 209:5
245:10 246:12
261:4 266:2
**membership** 55:18
55:21,24 56:1,3,7
56:12,19,20
**memo** 6:15 7:5
84:23 85:3
**memory** 17:5 52:7
89:6 255:4
**mention** 32:10
181:17 183:17
237:16,18
**mentioned** 27:7
40:12 51:21 64:7
102:1 139:21 142:8
167:12 183:4
184:22 196:15
197:6,15 240:3,5
255:12 271:23
281:9
**mentioning** 123:23
**mentions** 143:6
182:20
**mercury** 232:19,25
**message** 94:12
137:20 182:16
217:2
**messaging** 183:11
**met** 14:17,21 86:20
87:4,9,21,25 109:7
109:9
**metric** 236:25
**metrics** 237:3,8
**mexico** 102:5,7
**middle** 78:9 104:17
137:19,22 138:7
199:13 222:1
232:11 273:10
**miller** 233:9 234:10
**miller's** 233:22

**mind** 88:6 157:20
212:14,20
**ministry** 74:10
**minute** 176:22
281:14
**minutes** 17:25
127:16 190:16
269:6,7
**mischaracterizes**
27:9 50:21 93:18
109:21 144:10
149:2 248:18
254:19 264:8
**misinformed** 117:24
**misleading** 169:23
170:7 171:9,12,17
278:1
**misled** 148:16,24
**misperception**
244:13 255:8,17
**missed** 65:3
**mission** 4:5 17:7,8
38:7 69:21,23 79:2
96:4 97:14,21 224:8
**missions** 235:8
**misspoke** 184:10
**mistake** 130:24
163:18 164:17
**mistakes** 165:1
**misunderstanding**
174:16 254:17
**mock** 118:19
**model** 37:1 105:7
116:17 220:11
250:16 251:23
**moderated** 93:4
**moderator** 51:15
52:5
**modes** 256:8
**moment** 35:25 90:10
167:20
**money** 155:1 209:18
224:1 225:8,17
264:22 265:4

**monitor** 13:6 217:12
**month** 31:9 43:24
277:21,22
**months** 43:22,22
178:1 278:25 279:1
**morella** 81:6
**morgan** 3:4 13:22
60:13 85:13 99:9
100:15,24 101:2
208:11 270:24
**morgan's** 101:16
**morganlewis.com**
3:9
**morning** 13:3 14:9
14:10
**morrissey** 242:23,25
243:1 270:24
**morton** 51:19 52:5
**motivated** 31:16
**motivation** 117:15
120:9
**motivations** 95:18
96:16
**move** 221:6
**mto.com** 4:9
**munger** 4:3
**municipal** 125:23
126:7,11 127:2
**musts** 234:2

**n**

**n** 5:1
**name** 13:3,13 25:11
26:3,4 34:21 52:3,4
61:19 99:9 134:7
192:2,4 213:19
214:2 270:3,8
279:19,20
**named** 28:17 68:23
**names** 138:6
**nancy** 1:23 2:20
14:1 283:19
**nara** 183:25
**narrative** 150:22

**national** 1:5 2:5
13:4 24:17,18 34:9
34:25 48:19,20
49:20 50:1 52:2
72:12 89:3,18 91:5
91:7 95:22 107:16
107:17 121:22
138:20,24 183:25
206:7 232:18 278:2
**nature** 117:23
**navigate** 217:12
**necessarily** 234:23
**necessary** 100:12
109:13 202:7 210:3
210:18
**need** 17:13 29:4
33:22 101:1 110:18
119:9 130:5 133:9
150:14,17 151:3
166:4 167:13
170:14 193:1
199:18 200:16,18
205:3,5 230:24
233:17,18 247:23
267:13
**needed** 111:20
159:5 179:5
**needs** 94:25 96:15
169:4
**negotiate** 226:3
**negotiated** 50:8
223:21
**neither** 283:13
**nerves** 254:16
**networking** 87:14
87:16,17
**never** 72:9 192:2
236:24
**new** 38:9 52:3 69:18
69:19,19 99:18
100:15 101:1 123:7
123:9,15 124:8
169:2 175:23 185:2
201:5 256:7

**news** 17:4 18:10
103:19 181:14
182:1
**newsletter** 103:22
183:3,4
**nfpa** 28:14,17 32:3
64:21 66:8 105:15
108:17,20 109:5
111:7,16 112:17
135:14 184:8,11
194:8 199:24 200:9
200:9 201:8 238:25
239:5,15,24 240:5
241:21 242:1 279:8
**nfpa's** 108:7 111:25
**nfta** 241:12
**nice** 78:8
**nist** 88:12,19 93:6
122:8,12,13,24
123:1,14 126:17
278:2
**nitsa** 229:13
**nods** 281:16
**non** 131:18 188:17
**nonprofessional**
86:25
**nonprofit** 77:9
106:4
**norm** 74:7 111:22
**normal** 87:18
245:11
**northwest** 13:8 90:5
**noted** 284:8
**notice** 5:9 53:10
79:1 111:23 112:1
124:1,7 127:14
144:22 159:12,21
159:21 164:10
176:9 177:1,4,13,19
283:4
**noticed** 165:12
**notified** 159:5
**notify** 164:18
**notifying** 161:7

**number** 5:8 6:4 7:4
8:4 9:4 10:4 11:4
39:8 42:1 48:12
62:15 66:21 70:10
85:5 88:15 100:16
106:5 124:7 146:15
149:21 187:20
194:9,12 206:25
208:10 231:2
252:11 263:16
265:25 268:9
271:14 272:5 276:8
**numbers** 77:22
125:1
**numerous** 51:2
77:22 200:20
210:14
**nw** 2:18 3:6

**o**

**o** 61:19
**o'brien** 4:13 13:23
14:22 33:12 85:12
140:16,18 143:7
147:3,13
**oakridge** 206:7
**obama** 38:10
**object** 38:18 46:23
93:19 162:25
171:17,18 173:15
173:16 174:8
207:14 247:5
250:13 266:25
271:20 275:3
**objecting** 173:20
**objection** 15:20 16:7
19:8,13 20:3,8,17
20:22 21:22 22:7,16
23:6,13,21 24:3
25:6,24 26:9,20
27:9,21 28:3 29:13
29:25 30:8,14,20
31:13,24 32:6,13,20
32:25 33:7,17 34:2
36:4,13,20 37:15,20

38:14,19,25 39:6,16
40:8 41:10,17,22,25
42:4,11,20 43:4,14
44:2,10,20 45:1,16
49:10 50:12,21 51:9
52:9,16 54:7,18,23
55:10,13,19 56:4,13
56:22 59:4,14,18
61:6,12 62:7 63:1
65:12,24 66:12,17
67:3,23 68:10,21,21
69:15 70:18,23 71:7
71:13,17,23 72:5,16
73:2,20 74:15,23
75:5,13 76:1,9,25
77:17 78:3,19 79:13
79:20 80:1,7,21
81:3,13,23 82:24
87:2,8 91:12,16
92:21 93:2,17 94:20
95:8,16 97:10 98:3
98:11,16 99:2,15
103:4,15,23 104:23
106:2,24 107:5,11
107:21 108:9
109:21 112:2,22
115:4 116:1,10,25
117:13 118:7,25
120:12,21 121:18
122:4 124:14
125:11,25 126:14
127:5,23 129:8,13
130:25 131:24
132:10,24 133:19
134:17 135:4,9,24
136:24 137:5 138:1
138:18 139:2,13,23
140:9,15,20 141:6
142:10 143:3,11
144:2,10,18,25
145:6 146:8,24
147:9,21 148:2,7,12
149:1,9,23 150:7,20
150:20,21,22
152:23 153:3,6,20

[objection - opposing]

| | | | |
|---|---|---|---|
| 154:4,21 155:3,10 | 245:14,24 246:9 | **occur**  149:7 181:22 | **older**  168:12,21 |
| 155:21 156:13,19 | 247:3 248:4,18,23 | **occurred**  17:12 | 169:24,25 170:3,8,9 |
| 157:5,24 158:10,17 | 249:5,22 250:1,10 | 155:8 263:17 | **olson**  4:3 |
| 158:22 159:1,8 | 251:4 252:2,6,16,25 | **october**  7:19 69:18 | **omb**  38:2,7,16,20 |
| 160:6,15,21,24 | 253:11,24 254:5,19 | 89:9 | 58:1,1 65:21 66:4 |
| 161:11,18 163:5,19 | 256:2,11 257:12,22 | **ofac**  214:14 278:3 | 66:10,10 95:24 |
| 163:24 164:6,19 | 258:19,20 259:3,13 | **offers**  227:14 | 121:4 207:19 |
| 165:2,8,19 166:7,15 | 259:21 260:5,22 | **office**  35:21 37:9 | **omb's**  37:14 |
| 166:24 167:4,18 | 262:3,13,22 263:7 | 39:18 49:22 50:1 | **omitting**  198:21 |
| 168:1,15 169:9,17 | 263:12,18 264:8,16 | 52:3 60:15,22 61:15 | 207:11 |
| 170:2,11,23 171:16 | 264:24 265:7,15,19 | 61:15 86:20 90:2,3 | **once**  14:18 71:12 |
| 172:4,12 173:3,7,21 | 266:23 267:11 | 90:7 101:16,20,22 | 86:21,22 87:4,11 |
| 175:15 176:4 178:3 | 268:4,22 269:3,15 | 102:1,4,5,8 183:23 | 108:21 142:2 276:3 |
| 178:13 179:18 | 270:10 272:6,14,19 | 183:24 277:17 | **one's**  239:5 |
| 180:4,17 181:12 | 273:1 274:9,24 | 278:16 279:15,20 | **ones**  16:8,8 29:21 |
| 182:2 184:18 185:8 | 275:16 276:1,6,12 | **officers**  99:8 | 53:23 89:22 157:12 |
| 185:11,20 186:6,14 | 276:19,22 277:9,25 | **offices**  101:19,25 | 157:15 235:9 |
| 186:22 187:6,16,24 | 278:12,23 279:9,18 | 102:10,18 | 255:11 272:25 |
| 189:23 191:16 | 279:25 280:11 | **official**  87:9 89:17 | **ooo**  13:2 |
| 192:12 196:7,20 | **objections**  31:2,20 | 116:12,12 148:17 | **open**  92:13 162:11 |
| 197:1,8,19,19 198:4 | 37:25 39:23 40:23 | 151:25 168:7 | 219:19 244:21 |
| 198:17,23 199:14 | 77:18 96:11,22,25 | 236:17 264:13 | **openness**  244:22 |
| 201:11,17,23 | 113:10 135:19 | **officials**  35:21 39:9 | 268:6 |
| 202:10,19 203:13 | 151:4,7 152:4,15 | 102:13 | **operate**  255:20 |
| 203:25 204:10 | 154:10 156:1,9,19 | **offset**  251:11 | **operated**  102:4 |
| 206:12 207:8,20 | 162:2,8,19,24 | **oftentimes**  260:15 | 121:22 220:11 |
| 208:3,25 209:9,23 | 164:12 168:22 | **oh**  65:3 89:7 151:6 | **operating**  114:13 |
| 210:20 211:16 | 173:9,10,13 174:9 | 192:11 202:4 | **operation**  113:15 |
| 212:17 213:8 | 174:23 206:19 | **okay**  23:18,20 25:13 | 213:12 |
| 214:22 215:8,24 | 210:5 216:23 | 34:5 45:23 46:9,23 | **operations**  42:15 |
| 216:11 217:17,23 | 234:20 242:12 | 47:2 48:9 58:5 | 55:23 56:9 60:3,7 |
| 218:13 219:14 | 251:18 261:21 | 63:21 73:14 82:2 | 60:10 99:10 100:21 |
| 220:7 222:10 223:3 | 274:17 | 93:25 127:16 128:3 | 101:8,9,12 |
| 223:18 224:2,19 | **objectives**  6:17 30:2 | 131:3 141:20 | **opinion**  112:9 |
| 225:2,10 226:8,14 | **observation**  171:2 | 144:14 148:11 | 172:15 174:5 175:5 |
| 227:18 228:12,19 | **observed**  92:11 | 151:9 154:17 | 212:18 |
| 229:8 230:22 231:7 | **obvious**  104:8 | 177:25 179:4,9 | **opinions**  216:13 |
| 231:13,23 232:14 | **obviously**  212:10 | 190:1 191:2,24 | **opportunities**  88:10 |
| 233:11 234:13 | 247:8 | 192:18 199:22 | 88:15 |
| 235:4,14 236:5,10 | **occasion**  30:17,25 | 204:5 207:14 | **opportunity**  32:22 |
| 236:15,22 237:4,9 | 31:3 86:20 87:22 | 238:18,19 239:3,10 | 87:7 242:2 |
| 237:21 238:3 | 124:21 184:20 | 250:14 260:25 | **opposed**  150:23 |
| 239:20 240:1,16 | **occasionally**  89:17 | 269:25,25 | 212:15 213:7 |
| 241:5,23 242:7,15 | **occasions**  48:18 | **old**  101:2,6 | **opposing**  115:24 |
| 243:15 244:3,10,18 | 88:13,18 | | |

Veritext Legal Solutions
866 299-5127

[options - people]

**options** 213:4
**order** 110:18 210:4
  215:17 216:4,9
  230:2 251:10 264:6
  265:5
**orders** 227:16
**organization** 5:11
  23:12,15 24:16 25:2
  25:4,9 26:16,23
  27:14 28:6,8,10
  51:19 52:12 59:12
  62:24 69:13 77:10
  87:20 102:12 105:6
  106:5 113:12 116:5
  135:2 139:17
  234:24 278:15
  281:9
**organizational** 7:10
  89:11 100:5,8
**organizations** 26:19
  27:12,17 28:20 29:4
  29:18,20 33:21 34:8
  34:24 36:25 38:5
  40:15 41:15 42:16
  43:24 62:15 66:22
  89:12 94:9,10 97:17
  105:14 109:11
  111:3,5,12 112:11
  116:17 134:25
  137:3 235:6 240:2
  242:5 278:7
**organized** 27:19
**original** 21:15
**originally** 50:24
  178:2
**origination** 142:18
**originator** 266:21
**origins** 267:4
**ottawa** 48:11 101:22
**outcome** 69:8
  283:15
**outdated** 124:22
  171:6
**outlying** 91:19

**outreach** 45:14,16
  45:20 46:19,20
  50:24 239:25
**outside** 15:13 45:2
  45:21,21 46:7,21,21
  47:12,21 48:1 56:5
  61:4,10 62:23 130:6
  140:3 144:6,7
  178:12 193:6 219:8
  245:11 255:14
**overdoing** 218:25
**owns** 216:18,21

**p**

**p** 3:13 228:17
**p.m.** 128:6,7 130:10
  130:11 176:16,17
  176:19 190:4,5
  200:24,25 205:10
  205:11 228:2,3
  256:18,19 282:5
**pace** 18:19 21:1 86:7
  104:14 128:17,21
  145:15 146:16
  147:10 148:14,22
  149:14 153:8,17
  166:10,13,18,21
  167:2 176:7 211:3,8
  211:19 220:18,24
  221:4,17 251:21
  252:1,12 270:25
**pace's** 217:1 218:19
**pacific** 24:22
**page** 7:9,16,18,20,23
  8:8,12,14,18 9:8
  10:11,13,17,19 12:4
  12:9,14 83:3 101:4
  101:5,8,9 134:16
  137:22 138:7 143:2
  179:11 208:16
  209:13,16 217:14
  217:14,15 218:5
  229:25 232:12
  240:14 269:18,23
  270:1 272:5

**pager** 40:24,24 41:6
**pages** 1:25 5:10,13
  5:15,17,19,21,23
  6:6,9,11,14,19,21,23
  7:7,12,14 8:6,10,16
  8:21,23 9:6,10,12
  9:14,16,18,21 10:7
  10:9,15,21,23 11:6
  11:8,11,14,16,19
  207:4,6 238:9 271:7
  284:4
**paid** 43:25 107:25
  223:25
**pane** 217:3
**panel** 48:10 49:14
  49:19 51:16 52:1
  89:5,7 90:22,23,24
  91:1,3,4 92:9 93:4,9
  269:20
**panelist** 52:1
**panelists** 93:5
**paper** 231:11,15
  238:16
**paragraph** 68:9,14
  68:15 104:18
  218:19
**paragraphs** 218:23
**parallel** 126:2
**parallels** 126:17
**park** 32:9
**part** 25:22 27:7 55:3
  85:18 91:23 92:3
  125:12 182:16
  183:11 200:8
  228:10 232:17
**participant** 52:6
**participants** 54:5
  94:24
**participate** 28:8
  96:15 220:20 246:3
  266:1 278:14
**participated** 27:15
  28:11,12 131:20
  277:5 278:21

**participates** 266:17
  278:11
**participating** 27:18
  96:1,17 97:20
  219:24 268:20
  269:1 273:6
**participation** 40:17
  66:5 92:18 98:5,19
  110:20 250:17
  273:4
**particular** 38:12
  93:23 233:25
  260:20 261:19
  263:11,13 266:21
**particularly** 113:16
  117:22 221:22
**particulars** 223:20
**parties** 179:1 227:7
**partnership** 50:7
**parts** 137:17
**party** 188:17 283:14
**passed** 102:6 116:6
  259:5
**pathway** 73:25 74:3
  74:4,13,14,19,22
**pause** 193:20 200:12
  231:22 238:14
  240:24 254:13
  275:2
**pay** 43:19 123:12
  126:19 266:2
**payment** 226:3
**payments** 27:5
  265:12,17
**peer** 163:11
**peers** 244:23
**pending** 46:17
**pennsylvania** 3:6
  60:24 101:18,20
**people** 47:12 60:23
  70:3,5 98:23 105:18
  105:20 112:10
  134:25 152:12
  162:11 165:16
  186:4,12 216:2

[people - posting]

218:5 234:4 245:21
255:20 267:23
**percent** 19:24
225:11,12,13,20
**percentage** 209:17
267:23
**perception** 117:16
117:25 176:6
**perform** 123:13
152:1
**performance** 236:24
237:3,8,11,15,18
238:2
**performed** 201:9
**period** 14:17 38:8
43:22 44:16,18
124:5 280:8
**permission** 74:22
257:1,10 258:10
**permissions** 258:1
**person** 43:15 47:21
48:7 52:5,7,12,22
56:1,11 59:3 61:18
76:15 80:18 101:23
213:22 216:8
245:19 275:19
278:16
**personal** 15:10,17
23:22 54:10 187:18
212:18
**personally** 114:7
163:1 174:4 204:20
254:8 279:10,13
**personnel** 241:12,21
**persons** 46:21 47:25
48:6 55:7 85:9
135:17 137:3
164:16 178:12
183:16 206:25
208:2,10 214:11,20
268:19,25 275:15
**perspective** 173:5
**pertain** 133:3,16,17
239:17

**pertaining** 238:2
**pertains** 63:15
150:15,18 201:8
**peter** 89:5 105:19
121:3
**petre** 58:13,20 61:2
84:16 129:2 195:24
196:2 229:19
258:16 259:7
260:18 275:22
276:10 278:20
**petroleum** 111:8
132:8
**phantom** 239:9
**phil** 85:15 100:25
208:17,18,20
218:24 219:1,1,2
228:23 229:1
**phmsa** 228:16,16
229:4
**phone** 18:16 103:8
**phrased** 122:6
**pick** 70:13 73:15,16
**picked** 194:23
**piece** 41:6 261:6
262:18
**pieces** 41:4,8,14
42:19 43:3 238:16
**pimsa** 113:13
**pipelines** 113:16,17
117:19
**pirg** 34:19
**place** 127:21 160:4
166:5 167:15
179:21,21 183:15
245:17 283:4
**placed** 123:8
**placing** 262:18
**plaintiff** 46:21 47:13
178:12
**plaintiff's** 47:21,22
**plaintiffs** 1:8 2:8 3:3
45:21 48:1 178:11
**planning** 115:11
152:20

**play** 98:20 152:6,11
245:2
**played** 219:17
**playing** 224:6
**plays** 162:12
**please** 13:16 14:1
30:23 35:16 47:9
58:3 63:23 69:22
73:11 79:11 81:11
83:11,13 94:18
120:19 136:11
150:16 168:10
171:4 173:6 190:9
194:8 197:3 201:4
205:18 206:23
207:5 211:14
248:22 249:7 260:3
271:24 272:3
273:11
**pleased** 218:1,6
221:19 235:12
236:20
**plus** 77:18 96:11
242:15 251:18
261:21 265:19
**point** 6:13 104:14
127:15 141:2
142:20 143:24
146:19 159:25
163:10 171:23
210:14 214:4
221:23 226:25
235:7 239:7 262:16
**pointed** 108:16
237:24
**pointing** 93:8
**points** 218:24 274:1
**policies** 55:3,7 215:4
232:1 253:7 256:25
**policy** 21:18 23:8
24:18 31:11 35:14
36:11 48:19 52:15
54:25 60:16 74:6
89:18 90:9,12,15
106:23 107:1

123:25 183:9
185:24 215:13
231:15 235:5 280:3
**political** 22:13 31:11
**poor** 254:22
**popular** 182:23
**portal** 223:5,9
**portion** 140:1
203:17 270:7
**posed** 66:4 232:20
**position** 23:11 71:10
98:24 113:1,5
116:12 125:21
173:25 174:6,10,14
174:17,18,19
236:17 248:9
**positioned** 111:21
**positions** 22:19
24:15 81:2 125:19
175:7
**possessed** 132:22
**possession** 154:25
167:8
**possibilities** 149:18
**possibility** 28:23
**possible** 94:14 97:17
123:3,19 124:6
160:3 186:5,12
217:19 256:7,14
262:6 263:9 281:7
**possibly** 85:21 87:12
113:22 114:5
115:19 229:12
**post** 86:9 99:12
169:7,15 172:25
195:5,8,10,13
**posted** 111:3 157:3
167:23 168:13,21
169:20 170:22
174:3,21 175:12
176:2 198:3
**posting** 143:17
155:16 156:17,25
157:23 158:16
160:19 161:2

Veritext Legal Solutions
866 299-5127

[posting - protected]

194:22 197:17
posts  172:11 173:1
potential  86:18 97:4
  97:5 113:18,21
  114:4 117:6 120:8
  166:3,6,14,18,22
  167:3,8,12 203:23
  240:22
potentially  113:1
  242:15
power  6:13 239:7
practice  169:4,15
practices  92:11
  224:17
precluded  113:3
preferred  266:14
prelude  154:14,15
preparation  18:15
  129:17,18,23
  142:23
prepare  14:14 16:15
  21:4 41:7 67:19
  147:6
prepared  18:22
  53:13 82:15,21 84:3
  202:17,22 281:7
preparing  49:23
presence  97:25
  98:25 167:22
  168:20 175:10
  176:1
present  4:12 13:15
  179:4
presentation  51:2,4
  82:23 83:5 91:18
  239:7 269:19,21,22
  269:23 270:4,9,19
presentations  93:23
presented  92:10
presenting  51:16
preserve  110:18
  159:6 177:2,16
preserving  110:17
president  4:13
  18:16 21:18 32:8

33:12 56:8 57:19
  60:6,9,12 67:11
  84:2 85:12,13,14,15
  85:19,20,20,25
  99:13,20 100:16,21
  145:8,14 165:22
  182:20 205:25
  207:25 208:20
  218:21
presidents  85:7,7
press  181:3,10,25
  186:19,23,24,25
  187:3,9,13
presumably  267:18
presume  264:20
pretty  104:7,7 231:8
  273:25
prevent  214:16
previous  20:16
  50:22 71:18 77:18
  83:23 120:7
previously  51:10
  102:1 183:8 227:1
  245:23
price  210:13 221:23
  222:17,18 226:24
  227:2
prices  224:17
pricing  224:20
pride  235:24
principles  94:11
print  221:22 222:17
  223:1,9,16
printed  40:25
prior  76:11 81:15,17
priorities  112:19
  113:8 120:15,24
  127:11,20,22
priority  121:10
private  21:24,25
  91:20,24 92:4 98:6
privilege  49:3 131:5
  131:10,13,15,21
  189:24 198:22
  200:19

privileged  46:5
  134:19 142:1
  192:19 199:4
  204:13 281:3
privy  37:17
probably  15:14 33:8
  53:2 70:9 86:15
  91:8 99:9 108:14
  111:13 146:11
  269:20 280:2
problem  78:15
  117:1 172:22,25
  176:7 218:17
problematic  172:21
  173:4,15
proceedings  193:20
  200:12 231:22
  238:14 240:24
  254:13 275:2
process  22:2 40:15
  42:13 43:8 54:5
  65:21 69:3 92:14,19
  92:23,25 94:24
  96:17 97:20 98:1,7
  99:6 124:2 151:13
  161:21 162:10,11
  163:9,10,12,13
  164:23 219:19,25
  234:3,6 244:23
  245:2,5,11 246:3
  251:2 253:16,22
  254:3 255:15,21,25
  263:2,21 264:6
  265:6 267:4,21
  268:7,21 269:2
  273:23 274:22
produce  20:23
produced  40:10
  64:18 65:19 132:21
  145:12 178:22
  179:2 199:25
  238:23 256:23
product  16:16 73:22
  74:6,9,11,20 75:3
  75:15,17,19 131:18

188:19 198:22
production  12:8
  200:21
products  151:25
  243:2
professionally  86:22
  87:5
professor  105:19
proficiency  266:16
profitable  209:18
program  83:2 89:13
  266:14,16
programs  85:15
  266:11
project  26:24
  142:17 232:16
  247:12 272:8,11,13
  272:16,18
projects  219:5,6
promote  17:8 94:14
  256:1
promoted  60:9
  101:5
promoting  107:3
prompted  37:14
proofread  163:4
proper  219:23
properly  151:19
property  152:9
  155:7 158:9,15
  159:7 160:20
proposal  30:3 239:6
proposals  199:25
  202:18
propose  29:17
proposed  79:1 124:1
  124:8 126:22
proposing  124:22
  234:12
propounded  284:7
protect  17:10
  110:22 114:12
  131:8 161:7 248:13
protected  230:19

Page 32

[protecting - question]

**protecting** 17:9
152:11
**protection** 1:5 2:5
67:12 188:18
**proud** 185:21 186:3
218:4 219:16
**proven** 141:3
**provide** 32:22,24
33:3 105:16 110:12
110:21 111:10
113:2 121:23
124:10 131:4 150:5
150:7 169:23 212:5
214:5 217:25
221:20 267:8
268:25 269:21
**provided** 15:21
32:19 39:9 43:10,10
51:12 108:17
112:15 166:5
167:14 223:11
265:4 267:25
**provides** 38:3
226:20 264:14
**providing** 40:17
59:8,19 105:2 110:2
110:16,24 111:4
212:14,25 213:6,25
214:7 226:16
247:10 248:11
**provision** 112:24
113:17 215:22
**provisions** 115:24
116:9,24 117:12
118:3,24 120:2
**public** 7:22 11:13
21:25 22:13 25:15
26:23 29:10 30:4
32:8,16 34:18 40:4
40:6 42:13,18,24
43:7,8 44:6,11,17
44:18,24 45:14
46:18 47:1,4,5,6,10
47:16 50:24 60:16
79:3,5 88:10,19

90:9 91:20,24 92:4
98:6 105:3 106:11
107:8,15,20 108:3,8
108:17 110:13,16
110:23 111:19
112:12 113:2,25
114:18 115:22,25
116:8,23 117:17
118:3,23 120:1,17
120:21 121:5,11,24
122:22 124:4,4
129:25 135:23
136:6 144:24
145:10,25 146:7,15
148:15,24 149:13
149:16 151:16,22
152:22 153:10,15
160:2,10,18,23
161:4,7,7 164:18
167:24 168:14,21
169:1,6,10,14,24
170:22 172:22,23
172:25 173:2
180:16 182:9
183:10 184:8,16,21
184:23 185:17
186:20 187:14,22
188:10 189:8
190:18,21 191:1,15
192:6,8 198:2 202:1
202:1,5,6 208:24
210:12 212:25,25
214:1 217:25
219:10 221:21
223:2,8,25 225:25
226:10 230:2 241:4
246:8,13,21,24
247:10,18,25
248:11 249:2 250:7
250:9,23 252:15
264:15 275:12,24
276:10,18 277:23
280:19
**public.resource.o**
13:10

**public.resource.org**
1:10 2:10 4:16
13:20
**publication** 123:24
134:4
**publications** 18:17
19:3,7,12,25 106:13
108:2 128:21 145:9
145:14 165:22
225:13
**publicly** 16:3 45:18
45:25 46:3 48:6
121:15
**publish** 173:2
**published** 93:13
103:22 123:7
182:14 246:21
**publishes** 164:15
**pull** 213:24
**purchase** 226:23
231:11,19
**purchased** 210:16
**purchaser** 230:24
**purchases** 231:5
**purchasing** 225:5
232:2
**purely** 147:5
**purports** 163:16
**purpose** 69:12,12,24
79:8 189:13 213:20
214:9 217:24 272:3
272:4
**purposes** 21:6 93:16
94:5,15 95:7,13
96:7,10,21 97:7
141:15 177:17
179:5 276:21
**pursuant** 283:3
**pursue** 274:2
**pursuing** 272:23,25
**pushed** 178:1
**put** 30:4 68:25
101:2 108:4,4 113:1
113:5,25 115:21
121:10 124:4

127:12 137:2
146:15 149:13
151:15 153:17
222:25 228:15
229:12 247:14
**putting** 145:9
199:20 219:20
220:4 222:16
223:15

## q

**quality** 110:22
151:11,13 157:13
161:21 162:10,13
219:18 255:21
**quantify** 70:11
147:24 148:4,6
**question** 21:8 24:1
30:22 37:7 39:20
44:22 46:17,18
47:19,20 50:23 51:5
53:15 57:7 58:4
63:24 75:12 76:11
76:12,13,19,20
77:14 78:7 79:10
89:8 92:2 95:13
96:6 98:24 106:4
109:16 113:7
114:20 116:3,22,23
117:1 118:9,10,18
118:23 119:5,7,12
119:14 120:3,18
122:6 127:1,13
131:2 132:6 133:6
135:25 136:3,15
137:6 144:13,15
150:24 154:14
172:18 173:17,23
175:18,23 188:24
189:1 190:8,12,17
190:18,22,23 191:3
191:4,5 197:3,11
198:16,20,24 199:2
201:3,5 204:1,12
212:18 221:7,10,14

[question - recommendations]

225:6,16 226:6,12
236:4,9 239:11
246:11 247:6
248:17,22 249:1
251:15,15 257:19
261:18,18 268:9
273:9,12,14,19
277:1
**questioned**  48:14
**questioner**  198:9
**questioning**  189:25
**questions**  12:13
26:5 33:20 36:24
37:3,10 48:21 49:1
54:2 66:4 78:10,11
78:14 93:12 118:20
127:11 130:15,23
175:20 179:5,7
191:10 203:16
233:19 281:18,23
281:24,25 284:6
**quick**  157:9 193:22
**quinn**  60:14,15 64:4
90:8 233:6 279:1
**quite**  50:17 66:23
86:23 87:1,6,12
109:15 124:23
**quotation**  209:14
**quote**  34:3 93:21
**quotes**  93:22

**r**

**r**  13:10 283:1
**radical**  193:11
**raise**  29:5 33:22
36:11,16
**raises**  255:16
**raising**  36:23 211:19
**randy**  281:11,12
**rarely**  125:19
278:14
**reach**  244:24 263:24
**read**  58:3 63:20
66:21,23 79:10,12
94:18,19 95:12

104:6 114:20
120:18,20 123:19
123:20 133:5
150:25 151:2,8
172:6 190:8,10
194:8 201:3 216:16
217:14,15 218:1,5
218:16 247:11
254:21 255:2,5,6
260:2,4 270:13
271:3 273:9,14,21
284:4
**reading**  9:20 93:19
93:20 104:21,22
105:23 110:2,8,25
111:17,25 112:21
113:9 121:1 122:11
122:13,19,20,24
123:3,9,10,11
127:12,21 158:4
179:12,20,25 180:3
180:6,11,15,15,25
181:4,11,21,25
182:10,18 183:11
183:19 184:15
185:19,21 186:21
187:15 202:3
208:23 211:10,20
211:22,23 212:2,8,9
212:15 213:12,15
213:18 214:11,21
215:1,17 216:10
217:3,22,25 218:2,8
218:12,16 219:9,20
220:4 230:3,7
247:13 248:7
264:14
**reads**  273:19
**real**  17:14,14,20
114:8 151:20 205:4
210:7,10
**really**  46:8 99:6
154:5 157:19
158:14,21 159:25
244:2 273:22

**reason**  31:16,19,21
36:16 37:13,18,19
38:12 204:5,8 205:4
214:2 216:7
**reasonable**  40:18
108:3 112:14
149:15 214:15
221:23 224:9
**reasonably**  108:13
121:7
**reasons**  262:6
**recall**  16:23 18:8
19:5,9,20 20:24
21:2,10 24:25 26:3
27:14,17 28:19,24
29:1,11,20,22 30:9
31:3,5,9,15,25 32:2
32:4 33:1,4,4,18
35:24 36:14 37:6
39:17 43:5 48:9,18
48:24,25 49:7,12
52:3,12 61:25 66:14
66:18,20 67:1,20,21
71:10,12 87:24 88:8
88:9,11,24,25 89:3
89:21,24 90:1,21
91:1,9,18 93:4,9,12
102:25 103:7
111:11 116:11,19
117:14 129:20
132:15,19 136:14
137:12 145:22
146:18 166:12,13
166:16 177:20,22
177:23 181:5,23
183:14 184:4,19,22
185:1,3 187:13
190:21 195:10,12
195:15 213:9
214:23 215:23
216:2 239:14 241:9
241:11 242:9,17
245:7 252:3,5,9,11
254:18 255:11
261:11 262:8

263:11,13 278:3,22
278:24 279:5
**receipt**  56:20
**receive**  23:2,4 177:4
177:13 181:16
266:12
**received**  142:18
177:1,19 185:24
194:18 195:23
200:5 202:24 218:7
222:15 242:22
264:18,22,25
**receiving**  48:7 55:17
56:2 239:14
**recess**  18:3 46:12
82:5 128:6 130:10
176:16 190:4
200:24 205:10
228:2 256:18
**recipient**  84:8
211:13,14
**recipients**  211:4
**recognition**  187:9
**recognize**  53:9 57:4
63:19 64:1 74:19
82:14,18,20 83:16
83:18 103:13,16
134:11 138:6
199:11 200:1,3
207:17 240:10
269:11 271:11
**recognized**  29:4
33:21 259:7
**recollection**  26:1
27:11 66:16 82:25
93:10 107:24
142:21 176:24
192:18 203:8 215:3
270:6,17
**recommendation**
125:9
**recommendations**
64:11,12 86:19
209:6

[recommending - remind]

**recommending**
212:3 213:3
**record**   13:17 17:24
18:2,6 46:9,10,14
47:9 79:12 82:3,8
94:19 120:20 128:4
128:8 130:7,8,13
151:2,8 176:14,18
190:2,6,10 193:18
194:8,12 200:22
201:1 205:7,8,12
227:25 228:5 255:6
256:17,20 260:4
273:21 282:3
283:12
**recorded**   283:8
**records**   50:1 131:5
184:1 207:19
**recoup**   222:22
**recyclable**   70:9
**redacted**   130:17
136:9 176:23
240:14,18
**redaction**   136:16
137:4
**refer**   21:21 22:4
74:3 85:4,10 129:7
138:19 161:14
208:22 218:21
219:1 221:3,13
228:22 232:12
**reference**   11:12
31:12 36:12,15 40:5
44:9 64:13 70:17
72:9,11,25 73:5,9
73:13,15,19,23,25
74:1,14,18 75:11,13
75:16,21 77:7,8,21
77:21 86:19 97:2,9
102:16 104:19
105:4 121:6,13,17
121:25 122:16,17
122:17 123:8,18
124:13,19 125:4,10
125:18,24 126:3,4,8

126:12,13 127:3,4
133:4,18,24 137:25
140:8 169:8,16,21
170:1,10,19 179:23
182:12 209:14
213:1 219:11,21
224:14,18,22 225:1
227:3,15,17 228:16
229:4,13 230:3,8
231:19,20 232:2,3
232:13,23 233:1
235:3,13,18 236:21
237:17,20 246:23
247:1,11,19 248:2
248:12 249:3 250:8
250:25 256:10
259:12,19 260:1
261:2,6 262:2,8,12
264:7 267:10,15
268:3
**referenced**   113:12
125:1 232:25 281:8
**references**   203:14
259:7
**referencing**   124:25
126:23 141:11
171:20 193:13
238:4
**referred**   33:25
42:25 43:3 67:22
68:7 83:2 89:2
91:25 92:5 95:5
101:20 109:4
113:17 130:15
138:13 198:12
234:1 239:18,18
255:9 259:6
**referring**   25:14 27:2
33:25 42:24 49:17
51:20,25 63:13
67:24 86:9 92:19
95:9 109:20 110:25
114:24 138:3 217:8
234:7 246:20
267:13

**refers**   22:5 83:25
139:9 143:10
**reflect**   42:15 69:5
97:21 270:8
**reflected**   270:1
**refresh**   17:5 93:10
176:24 255:4
**refreshed**   89:6
**refreshing**   69:11
**refrigerating**   1:7
2:7
**refuse**   47:15
**regarding**   40:4,4,5
46:4 65:20 66:10
130:15 131:9
138:14,25 139:21
150:8 189:22 198:7
200:10 207:19
209:5 227:7 240:21
256:24 257:10
260:21 261:19
**register**   50:2 123:20
123:22 183:25
213:14,17 214:25
**regular**   123:20
**regulates**   113:15
**regulation**   24:9
71:22 72:15 73:1
78:18 79:4,5,8
263:6,25
**regulations**   6:12
59:20 75:18,22,25
76:24 77:6,16 78:1
78:2,5 79:22 80:5
105:5 121:25 126:5
171:1
**regulatory**   58:25
64:14 93:16 94:5,15
94:25,25 95:6,13,18
96:6,10,20 97:7
170:25
**rehn**   4:4 194:7,7,11
281:25
**reiterate**   245:10

**relate**   65:9 136:1
239:23 251:14
**related**   1:12 2:12
42:22 44:8 48:13
51:8 73:16 75:18
87:12 88:13 102:16
109:25 243:2
266:18
**relates**   133:10
141:18
**relating**   27:16 31:11
45:15 46:19 50:24
51:6 115:24 255:13
**relation**   56:17 139:1
277:16
**relations**   42:24 44:6
44:7,17,18,24 45:14
46:19 50:24 130:1
139:19 140:4,8,10
140:14,19,23 142:4
142:9 183:10
239:24
**relationship**   87:18
133:22 165:17
221:19 223:7,20
**relayed**   178:11
233:9
**release**   187:1
**releases**   186:19,24
186:24 187:3,9,13
**relevance**   41:7
**relevant**   38:7 48:12
49:8,10,16,17 50:11
50:12,19 51:2,3,4
110:22 131:16
219:18
**relied**   235:25
**rely**   123:13 157:13
**relying**   110:13
**remaining**   270:7
**remember**   82:16
93:21 145:17 173:9
191:22 278:13
**remind**   25:17

Veritext Legal Solutions
866 299-5127

[remotely - reviewed]

**remotely** 13:16
**remove** 232:19
**removing** 237:12
**remuneration**
  226:17,20
**renewals** 56:21
**renewed** 195:9
**repeat** 53:20 63:23
  92:2 133:14 170:5
  197:3
**rephrase** 120:23
**replace** 130:17
**replicated** 162:14
**replied** 243:23
**replying** 233:22
**report** 59:23 60:11
  60:18,25 61:2,4,10
  80:20 100:20,24
  182:13 209:15
**reported** 1:22 50:5
  84:17 129:3
**reporter** 13:25
  17:15 53:3 90:14,17
  184:23,25 185:2,4
  194:11
**reporting** 100:17
**reports** 16:3 17:1
  18:10 56:8,12 60:12
  60:20,25 61:14
  146:16
**represent** 87:10
  239:8 269:13
**representation**
  136:4 209:21
**representative**
  14:24 15:2 21:16
  28:17 52:25 59:13
  62:3,6 102:5 141:15
  150:4 153:5,25
**representatives**
  22:18 28:14 29:3
  33:21 34:15 35:18
  48:13 49:16 51:21
  51:24 53:1 92:23
  108:20 109:10

278:7
**represented** 248:8,9
  263:3
**representing** 13:19
**represents** 88:21
  272:8
**reproduced** 159:14
**reps** 273:5
**republic** 185:2
**reputation** 151:21
  164:25 165:6,13
**request** 12:8 16:12
  30:3 86:20 188:1,13
  199:25 202:17
  256:25 257:10
  258:10 260:19,20
  261:18 280:13
**requested** 33:5 49:9
**require** 126:18
  134:18 137:4,7
  178:4 193:10 215:6
  218:5
**required** 54:12
**requirements** 80:5
**requires** 188:11
**requiring** 214:2
  216:2
**research** 34:18,24
  108:1
**reserve** 136:14
  271:3
**resource** 35:2 40:4
  121:19 135:23
  136:6 144:24
  145:25 146:7
  152:22 160:2,10,18
  160:23 161:8
  167:24 168:14,21
  169:6 170:22
  172:22,25 173:2
  192:8 198:2 241:4
  275:12,25 276:11
  277:23 280:19
**resource's** 169:10
  169:15 187:23

188:10 189:8
  190:18,21 191:1,15
  192:6 276:18
**resources** 180:6
  211:21
**respect** 15:2 19:12
  26:18 27:20 29:2,12
  29:23 32:5 36:2
  48:3 49:3 50:19
  53:16 65:10 111:16
  173:15 189:9,24
  196:17 221:4 235:8
  281:2
**respected** 235:19
**respective** 28:20
  66:10
**respond** 118:9
**responders** 111:20
  221:22 222:21
  224:7
**responding** 49:1
  53:21 258:9
**response** 53:19 62:5
  62:18,18,22 66:3
  198:16,20 228:25
  229:7 256:25
**responsibilities**
  100:23
**responsibility** 99:22
**responsible** 54:15
  60:21,22 79:3,17
  85:6 104:20,22
  258:1 280:3
**responsive** 47:17
  131:16 276:25
**rest** 238:18
**restate** 30:22 177:10
  197:11 204:22
**restaurant** 277:13
**restrictions** 214:14
  214:19 278:4
**result** 241:6
**resulted** 123:24
**resulting** 108:2
  158:15

**results** 92:14
**retain** 202:7,9,14
**retained** 26:8,12
  36:3 44:25 131:22
  132:9 202:16
**retaining** 29:24
  248:12
**retention** 132:1
  239:17
**retentions** 132:4
**retreat** 67:25
**return** 5:11
**reveal** 16:16 132:1
**revenue** 19:3,7,12
  19:25 20:14,15,16
  20:20 57:5 145:10
  145:24 146:6
  225:11,12,20
  265:22,24 266:19
**revenues** 18:22
  144:4 153:18 154:2
  154:19
**review** 15:9,19,23
  16:2,6 17:2 18:21
  19:2,6 33:6,16 37:9
  37:14 38:21 82:16
  86:18 113:25
  115:22 121:5
  122:22 124:4,5
  129:18 142:23
  163:11 213:3
**reviewed** 15:7 16:11
  16:13,15,18 17:1
  18:9 33:4 57:8 58:6
  58:15 61:24 63:22
  63:24 66:2 67:14,18
  82:17 83:14,17
  84:11,19,24 100:2
  104:9 128:18 129:4
  129:22,24 132:17
  133:7,12 134:12
  142:16,19 194:2,6
  195:25 200:2,17
  208:13 211:5
  220:21 230:14

[reviewed - scope]

238:10,20 240:11
243:9 258:11,18
270:15 271:9
**reviewing**  15:12
183:1 198:11
200:15
**reviews**  163:15
237:15,18
**revise**  49:23 69:7,7
**revised**  38:2,8 169:2
267:19
**revising**  267:21
**revision**  268:20
269:1
**rfp**  32:17,19 201:19
202:15
**ridiculous**  273:18
**right**  17:3,16 24:22
30:1 31:7 38:1
45:10 62:11 66:11
67:1 68:16 74:16
76:16 88:25 95:11
98:17 101:7 104:13
105:2 110:10 111:1
116:11 118:11
136:14 159:22
160:5 176:13
178:21 185:7 186:5
189:1 190:16 192:3
193:7 207:7 212:25
222:1 227:11 229:2
229:6,11 233:13
255:2 266:9 271:3
281:15
**rights**  55:9
**rigorous**  161:21
162:9 163:9 255:21
**risk**  151:20
**rmr**  1:23 2:21
283:19
**rob**  143:13
**robert**  28:17
**robust**  94:7 151:12
**roger**  205:25 206:3

**role**  17:8 60:8 98:20
115:7 139:19
141:14 152:6,11
162:12 208:19
219:17 224:6
**roles**  62:12
**room**  9:20 13:16
70:6 104:21,22
105:23 110:3,8,25
111:17,25 112:21
113:9 121:1 122:11
122:13,19,20,24
123:3,9,10,12
127:12,21 179:12
179:20,25 180:3,6
180:12,15,16,25
181:4,11,21,25
182:10,18 183:11
183:20 184:15
185:19,22 186:21
187:15 208:23
211:10,20,22,23
212:2,8,9,16 213:12
213:15,18 214:11
214:21 215:1,17
216:10 217:22,25
218:2,8,12,16 219:9
219:20 220:5 230:4
230:7 247:13 248:7
264:14
**roughly**  19:16
176:24
**rows**  151:18
**rubel**  14:21
**rule**  1:15 2:15 123:6
123:7,23 124:2,5
126:22
**rule's**  124:8
**rulemaking**  79:1
124:8
**rulemakings**  113:4
123:16
**rules**  59:20 268:25
**run**  205:4 266:16

**running**  180:12
247:13 266:14

**s**

**s**  5:6 6:2 7:2 8:2 9:2
10:2 11:2 85:22,23
143:9 228:17
**safe**  74:11 97:16
113:15
**safely**  114:13 117:20
**safety**  17:11 73:16
73:22 74:1,6,10
75:3,15,17,19
113:15 152:7 159:6
243:2
**sale**  19:3 225:13,14
225:21,23 226:6
251:22
**sales**  18:17 19:17,22
19:25 85:25 145:8
145:14 148:9,11,19
149:6,18,21 153:11
165:22 221:18
223:21 225:24,25
226:10,12
**san**  3:17 4:7
**sara**  61:19
**sarah**  58:13,18,20
61:2 84:16 129:2
195:24 196:2
229:19 258:16
259:6 275:22
278:20
**save**  223:9
**saying**  16:25 42:18
45:17 126:22
137:20 139:9 140:7
180:11 200:6 207:9
229:3 234:10
257:19 264:5,11
**says**  141:2 217:2
218:20,23 220:24
233:16,16
**scale**  274:6

**scaled**  273:24
274:13,15
**scholars**  121:3
**science**  22:13 23:7
34:25 81:25 107:15
107:17 123:12
**scientific**  23:4
**scientist**  23:8
**scope**  34:11 45:2
54:8 55:14,20 56:5
56:13,23 59:5 63:2
65:25 67:4 94:21
97:11 99:16 102:17
103:5,23 107:22
108:10 130:2
132:25 135:10
140:4,21 141:23
156:3 157:5,25
158:11,18 159:8
160:7,25 161:12,18
163:25 164:7,20
165:3 174:7 186:7
187:6,16 188:4
192:13 196:21,22
197:20 198:5
201:11,18,23
202:11,19 206:13
208:4 209:24
210:21 211:17
212:21 215:9
219:15 220:8 224:3
228:19 229:8 237:4
237:9,21 241:23
242:8 243:16 244:3
244:10 245:15,24
246:10 247:4 250:2
250:11,12 252:17
253:1,12,25 254:6
254:20 256:2,11
257:13,15 260:6,22
262:3,22 263:7,19
268:4 269:16
270:11 272:6,15,19
274:9 275:16 276:1
276:12,23 279:9,18

**[scope - somebody]**

280:22 281:4
**scott** 91:7 93:5
  233:10 241:14,14
  270:2
**scroll** 217:3,10,13
  218:5
**scrolling** 217:16
**sdo** 25:2 239:6,6
  241:16
**sdo's** 109:10
**sdoawareness.org**
  25:12
**sdos** 116:20 242:1
**search** 123:22
  126:18 226:21
**seat** 92:15
**second** 21:16 162:25
  177:6 208:12,16
  218:19 231:21
  240:23 275:1
  278:13
**secret** 242:4
**secretary** 143:13
**sections** 53:21
**sector** 21:24
**security** 221:20
  222:14,20
**see** 46:7 59:7 68:11
  86:22 87:5,12 94:9
  97:18 100:19
  104:13 105:12,14
  123:23 124:17,19
  131:10 136:7
  137:19,22 138:15
  138:16 143:18,20
  154:5,8 179:10
  188:18 198:12
  209:19 212:3 217:1
  217:4,5,12 221:1
  235:17 241:14,18
  262:7 263:3,24
**seeing** 66:20 137:24
  195:5 215:23
**seen** 61:23,25 67:13
  77:5 88:1,13,17,18

88:22 89:21 100:1,8
  104:5 124:23
  132:15,19 137:16
  142:15 151:17,18
  169:20 205:21
**segment** 104:14
**select** 15:15,16
**selected** 15:17,18
  16:8
**selection** 201:14
**sell** 251:9 265:21
**selling** 74:19
**senate** 35:18 259:6
**send** 204:16,24
**senior** 7:5 56:11
  67:25 68:4 84:23
  85:3,8,18,19 105:1
  146:4 209:5 271:14
**sense** 125:5 247:23
**sensenbrenner**
  81:16
**sensitive** 152:10
**sent** 137:18,19
  183:18 193:23
  199:12 203:4
  204:21 209:4
**sentence** 68:8,16
  143:17 144:1,17
  203:15 209:15
  211:9
**separate** 17:21
  201:19 232:1
**separately** 210:16
**sequence** 191:10
**series** 208:9 211:2
  228:9 270:23
**serious** 192:23
**serve** 24:17 79:8
**served** 24:9,20
  81:19 105:7,20
  138:4 220:12
**serves** 62:11 106:5
**service** 57:5 123:13
  126:20 215:17,21

**services** 13:4
**serving** 48:19 99:19
  99:20
**session** 51:16
**set** 17:20,23 180:22
**setting** 146:19
  243:25 244:16
**seven** 111:25 281:14
**shalls** 233:25
**shape** 42:15
**shaping** 34:7
**share** 15:24 171:1
  246:4,14
**shared** 66:9
**sharing** 66:14,18
  278:4
**sharon** 52:19
**she'll** 99:20
**sheet** 238:17 284:9
**short** 17:13 78:8
  95:12 104:7 205:3,5
  271:17
**shortcomings**
  253:21 254:2
**shorthand** 283:9
**shoulds** 233:24
**show** 82:23 117:23
  141:19 142:14
  192:25 193:1,4,5
  229:24
**showing** 258:8
**shown** 201:6 242:20
  256:22
**shows** 192:24
**sic** 13:10
**side** 15:24 82:13
**sided** 82:12
**sign** 271:3
**signature** 283:18
  284:12
**signed** 116:13,18
**significance** 20:1
  114:15 235:16
**significant** 36:16,19
  112:16 115:10

157:10,12,15,19,22
  158:4,6 227:12
  237:25
**significantly** 98:21
**signifies** 235:20
**signify** 235:18
**similar** 110:5
**simple** 111:1
**simply** 100:22
  209:19 261:8
**singapore** 24:23
  74:6
**single** 31:16 88:24
  127:8
**sir** 17:15
**sit** 195:17 196:14
**site** 223:5
**sitting** 33:14
**situation** 114:16
**six** 181:16
**skeptical** 162:14
**slides** 93:23
**slight** 19:23
**slightly** 100:11
**small** 109:8 209:17
  266:12
**smith** 56:9,16 60:4,5
  85:21 101:3
**smith's** 60:8
**socialization** 115:11
**socialize** 110:6,15
**society** 1:3,6,16 2:3
  2:6,16 13:9 48:11
  49:15 106:5 152:12
  219:17 220:12
**sole** 211:13
**solely** 270:4
**soliciting** 201:9
**solution** 248:11
**solutions** 2:18 111:2
**somebody** 29:22
  159:5 170:17
  215:16,19 216:6
  230:20 255:19

Veritext Legal Solutions
866 299-5127

[somo - standard]

**somo** 4:18 13:4
**son** 85:23
**soon** 78:13 160:3
  227:21
**sorry** 17:24 24:10
  31:9 61:13 65:3
  68:11 83:11 89:4
  90:15 91:8 92:1
  109:17 128:14
  133:13 149:25
  151:3 155:14
  159:16 170:4
  172:10 178:21
  181:20,23 183:17
  183:18 184:3 185:1
  185:3,12 188:14
  191:18,20 192:11
  193:19 204:21
  205:2 210:18
  222:21 225:4 235:6
  239:3,12 247:24
  257:18 271:16
  272:10 280:4
**sort** 125:8 252:10
  256:16
**sounded** 119:19
**sounds** 91:3 93:25
  148:22 216:5
  225:24
**source** 37:6 168:23
  194:20 195:13,16
  265:22 266:18
**sources** 19:3 187:22
  189:2 191:1,15
  192:6 265:24 266:7
**speak** 25:13 41:3
  70:12 75:1 89:14
  94:1 102:23 103:3
  185:25 238:4 242:2
  253:2
**speaker** 269:19
**speaking** 102:25
  103:8 236:12,14
  273:18

**speaks** 133:20
  182:25 208:25
  209:9 232:15
  233:11,15 234:13
  235:15 259:3
**specific** 35:22 37:6
  37:10 38:7 67:16
  73:16 77:8,21 98:13
  113:2,12 116:13
  125:20 146:1
  230:25 255:10
  261:5 263:5 267:5
  274:13 281:7
**specifically** 18:12
  33:5 37:22 48:24
  54:20 123:1 177:22
  181:20 222:7
  264:17
**specifications**
  253:17
**specifics** 91:18
  183:1 245:7
**speculate** 25:18 42:5
  134:6 138:2 143:12
  217:11 224:5
**speculating** 52:4
  72:19 80:3 129:9
  147:5 148:8 162:3
  179:16 180:10
  187:8 195:19
  211:12 229:11
  234:15 241:13
**speculation** 25:7
  26:10,21 28:4 30:14
  30:21 31:14,24
  32:13,20,25 33:7,17
  36:5,21 37:21 38:19
  40:9 42:11 43:14
  44:20 45:1 52:17
  54:7,24 55:14,19
  56:4,22 59:4 62:7
  63:2 65:13,25 66:13
  67:3,23 68:10 70:18
  70:25 71:7,25 73:20
  76:1 79:14 80:7

93:17 94:20 95:17
  97:10 98:16 99:2,15
  103:4 104:24 112:6
  129:8 132:10,24
  134:17 135:10
  136:24 137:5 138:1
  138:18 139:2,13
  140:9,15,20 141:6
  142:10 143:4,11
  144:2,18 153:3
  155:11,22 157:6
  158:10,18 159:9
  160:6,25 161:11,19
  163:19 164:19
  169:9,18 170:23
  172:12 173:17
  187:7 197:20 198:5
  202:10,20 206:13
  208:3 209:24
  210:21 217:18
  219:14 220:6,9
  224:4 231:7 234:14
  240:16 241:24
  243:15 247:4 250:2
  252:17 253:1,12,24
  254:5 256:3,12
  257:12 260:6
  262:23 263:20
  265:7 269:16
  270:10 272:7
  275:17 276:13,22
**speech** 248:21
**spelled** 228:17
**spend** 15:12 80:13
**spent** 148:14
**spoke** 89:6,7 90:25
  103:7
**sponsored** 88:20
  89:1 107:9,12
**sponsors** 88:14
**spur** 244:1,17,19
**squiggly** 137:21
**staff** 7:6 35:17 55:1
  55:2,22 60:1 67:25
  68:4 69:9 80:16,17

84:23 85:3,5,8,18
  103:2,6 105:1
  110:15 111:2
  115:12 116:14
  117:5 124:16 146:4
  148:18 162:12
  163:14 223:22
  225:24,25 226:10
  243:1 258:4,22,22
  271:14 272:9
  275:23
**staffer** 259:9
**stakeholder** 35:12
  88:10 244:24
  250:18
**stakeholders** 29:6
  33:24 34:1,6,12
  35:13 36:1 37:4
  38:24 39:5,14,22
  40:12 41:16 88:10
  88:19 92:12 114:9
  114:14 151:23
  181:15 182:7,11,17
  183:5,9 184:9,17
  185:18 219:24
  220:13 236:1
  248:15
**standard** 37:12
  70:13 71:6,16 72:12
  73:13,16,19 74:8
  75:20 117:22,23
  122:17,18 123:8,9
  124:4,12,18,20,21
  124:23,25 125:10
  126:8 152:20
  162:17 163:11,15
  164:16,18 165:1
  168:7,13 169:2,24
  169:25 170:8,18,18
  170:19,21 171:5,8
  171:25 172:3
  217:14,15 224:21
  224:25 225:6
  226:22 227:3 234:5
  234:11,19,22,23

Veritext Legal Solutions
866 299-5127

[standard - strike]

237:24 245:8,11
246:6 255:10,16
257:11 259:15,20
259:25 261:5
262:18,25 263:3,25
**standardization**
17:4 18:10 94:8,12
94:24 103:19
181:14 182:1
**standards**  1:16 2:16
6:12 11:10 17:10
24:10,17 25:16
26:19 29:6 31:12
33:23 36:8,24 37:10
37:11 38:5,6 39:8
40:13,14,17 44:8
48:11,20 49:15,21
49:25 50:10,15,16
51:18 52:2 54:5
55:4,8 62:12,15
66:6 70:2,5,10,12
70:14,21 71:21 72:7
72:10,14,19,25 73:9
73:15 74:1 77:8,11
86:23 87:6,12 88:1
88:5,7,12,14,20
89:8,16 91:6,7,20
92:13,14,18,25
93:16 94:5,9,17
95:1,6,15 96:1,3,9
96:24 97:3,3,9,20
98:1,5,10,13,20
99:1 101:7,10,13
105:3,7 108:8,18
109:8,11 110:13,19
110:22 111:9,22
112:11,13,20 113:3
113:4,8,19,21 114:3
114:11,17,18
116:17 117:18
120:16,25 121:6,12
121:16,22,24 122:2
122:7,8,10,15,21,23
123:18,24 124:7
125:7,15,19,24

126:4,10,23 127:2
127:12,20 133:23
138:20,24 144:6
145:9 146:15
148:17 151:12,17
152:6,11 155:17
156:18,25 157:3,23
158:16 159:13,20
160:19 161:8,17
162:1,22 163:3,10
163:23 164:5,11
169:8,15 171:13,14
171:19 172:10
173:1 174:2,2,21
175:11 176:2
179:22 182:24
185:18 186:21
187:15 194:24
196:17 197:17
208:24 209:18
210:6,8,10,13,14,15
212:6,15 213:1,2,7
216:3,7 218:16
219:10,18,23,25
220:4,5 221:21,22
222:16,20,23 223:1
223:10,15,25 224:6
224:13,18 225:9,14
225:17,21,21,23
226:4,7,13 227:8,14
227:16 228:16
230:3,6,7,24 231:6
231:12,19,20 232:1
232:2,13,18,23,25
233:24 234:3 235:3
235:7,10,13,17,22
235:23,25 236:21
237:13,16,19 244:1
244:14,16,20,21
245:6,12,22 246:3
246:14,16,22,22,25
247:11,18 248:1,12
248:14 249:3,18
250:7,16,24 251:1,8
251:9,10,12,22

252:14,22,23
253:10,15,19,23
254:4,17 255:15,19
255:22,23 256:1,8,9
259:8 260:21
261:20 262:2,7,11
263:2 264:7 265:6
265:21 266:18,22
267:3,9,14,18,22
268:1,2,18,19,21
269:2 273:8 274:4
274:21 275:13
278:3,5,7
**standards.gov.**
121:21
**standing**  106:10
151:21
**standpoint**  112:12
**stanford**  52:19
**staple**  199:18
**stapled**  269:18,22
**start**  38:23 108:22
108:22 201:5
247:23
**started**  74:3 105:16
109:5,18
**starting**  209:15
269:25 270:7
**state**  24:20,21 80:23
102:12 125:23
126:2,4,7,11 127:2
151:4 169:3 173:6
212:19
**stated**  51:10 74:17
147:10
**statement**  47:3,10
47:16,20 70:1 83:21
144:1,9,16 179:14
195:17,18 209:22
210:4,19 222:8
244:6 247:17
**statements**  247:5
**states**  1:1 2:1 13:11
64:9 86:18 126:3,17
126:19,22 136:23

209:7 232:20
**stating**  17:19
**status**  48:14,22
51:11
**statute**  261:6
**steele**  143:9,13
**step**  30:2
**steps**  69:14 111:10
113:22 114:4
115:13,19,23 116:3
116:4 123:11
138:15,25 161:6
162:14 163:14
208:23 214:15
**steve**  280:4,6,7,17
280:19
**steven**  81:17
**sticking**  211:9
**stipend**  266:12
**stipulate**  178:18
233:14
**stipulation**  233:17
**stoller**  205:25 206:2
206:4
**stop**  171:7
**stopped**  273:17
**straightforward**
116:22
**strategy**  138:14,25
139:8,21 141:2,4,8
141:10 142:7,9
169:12
**strauss**  89:5 105:19
121:3
**street**  2:18 3:15 4:5
13:8 90:5
**strengths**  69:6
**strike**  20:6,14 39:12
40:2 44:15 47:23
54:2 62:20 72:22
88:6 97:24 106:7
110:9,15 126:8
128:15 129:17
133:16 167:11
171:11 172:23

[strike - testifying]

| | | | |
|---|---|---|---|
| 184:6 185:23 203:20 204:7 206:6 212:24 221:6 237:17 243:6 247:9 250:20 254:1 258:20 267:7 272:17 274:5 | suffers 168:11,20 suggest 92:8 155:1 175:25 suggested 252:20 suggesting 92:18 211:22 212:1,10 suggests 25:5 131:16 175:10 | surrounding 36:11 sustain 105:5 sustainable 97:16 sustained 36:25 swear 14:1 sworn 14:4 283:5 system 21:24 29:6 33:23 36:8,24 37:10 37:11,12 40:14 92:11 94:8 126:2 213:24 | tanks 34:25 35:4 task 212:13 252:24 253:22 254:3 tax 5:12 tco 60:10 team 60:23 136:9 technical 23:4 50:15 55:23 56:8 60:1,2,6 60:10 85:13 94:10 98:18 99:10 100:21 101:8,9,12 117:17 117:23 151:11 214:16 235:19 246:14 258:5 267:20 273:6 |

strikes 131:15
striking 105:2,13
string 5:14,18,20,22 6:5,10,20,22 7:8,13 7:15,17 8:5,7,9,11 8:15,22 9:5,9,11,13 9:15,17 10:8,10,14 10:16,18,20,22 11:5 11:7,15
strong 69:12
strongly 94:13
structural 7:21
struggling 279:19
stuck 184:13
studies 252:13,19
study 253:7
style 11:9 268:18
subcommittees 98:19
subject 15:3 149:24 150:10 198:7 216:7
subjects 15:6
submission 66:25 67:2,6
submissions 66:21
subscribing 183:6
subscription 223:21
subsequent 88:9 123:5
substance 199:3 284:8
substances 113:16
substantively 118:9
substituting 118:5
suddenly 108:24
suffered 148:25 150:15,19 165:6

suite 2:18 90:6
summaries 110:12 212:5,14 213:4,6
summarizes 70:1
summarizing 83:22
summary 212:7
sunscreen 243:20,23
superfluous 154:11
superiors 81:1 237:24
supervision 283:10
supervisor 60:7 83:21
supervisory 99:21
supplemental 77:23
supply 210:4,18
support 12:1 96:3 118:18
supports 118:16
suppose 229:4
supposed 17:14
sure 24:22 45:6 70:6 75:9 78:24 81:10,12 85:11 95:21 114:22 115:1 117:10 150:25 154:17 156:2,6,10,14 159:14,22 186:4 189:18 212:11 223:10 228:22 231:14 260:13 261:14
surprise 55:1 161:22,25 162:6,6 162:17,20 163:21
surprised 187:11

t

t 5:6 6:2 7:2 8:2 9:2 10:2 11:2 143:9 283:1,1
table 92:15 157:16 158:2
tables 151:17,18
tag 69:19
take 17:20 29:22 57:6 63:20 76:10 78:8,11,13 82:1 93:15 94:4 113:22 114:5 115:19 125:19 127:14,17 128:1 141:21 150:16 154:13 176:11 189:25 205:3 214:15 227:21 235:24 256:15
taken 2:17 18:3 45:8 46:12 69:14 82:5 101:6 125:21,21 128:6 130:10 161:7 176:16 190:4 200:24 205:10 228:2 256:18 264:14 283:3
talk 179:3 189:23 200:18 261:9
talkative 173:11
talking 111:1 150:23 227:10

technically 161:3
technologies 93:7
technology 23:7 24:7 49:21 81:25 85:16 91:6 95:22 121:23 208:21 232:18 271:18 278:3
telecon 4:3,16
telephone 13:21 102:24 103:1,3
tell 83:13 85:9 89:22 101:14 109:1 145:17 150:17 157:15 166:18 211:14 261:11 273:24 283:5
teresa 100:25
term 72:1,6,10,17 72:18 73:4 75:10 98:21 164:1 171:17
terms 123:22 215:16 215:21 224:24 267:3
testified 14:5 51:1 115:18 162:5 197:14
testify 53:14 142:24
testifying 14:23 15:1

[testimony - topic]

**testimony** 5:2 21:4
27:10 50:22 58:2
65:22 96:19 105:18
109:22 129:19,23
144:11 147:7,15,22
148:3 149:2,2,4,10
149:24 150:8,9,21
153:21 154:5,22
155:4,11 165:3,9
168:2,16 175:16
176:5 192:9 195:4
217:18 218:14
220:8 222:3,25
239:19 248:19
251:5 252:18 254:7
254:18,20 264:9
274:10 283:3,7,12
**testing** 1:3,16 2:3,16
13:9 266:16
**text** 203:7 213:7
**thane** 4:4 17:18
194:7,11 281:24
**thane.rehn** 4:9
**thank** 25:19 49:4
93:8 114:22 160:13
184:12 281:20,22
**thanks** 17:17 87:7
**theories** 175:8
**thereof** 283:15
**thermometers**
232:19
**thing** 17:12 270:13
**things** 50:4 105:22
108:23 124:16
186:7 187:10
211:24 233:24
237:2 274:1
**think** 16:14 17:3,21
17:22 18:24 30:12
34:24 35:4 43:15
46:17 47:2 61:7
74:24 79:21 88:21
90:22,24 91:17
94:23 96:10,20 97:1
98:23 101:15

108:18 109:7,15,16
110:10 111:14
121:8 123:20
127:25 129:20
130:2 139:6 141:17
141:23 143:6 151:9
152:16 157:22
160:18 163:24
166:12 167:19
178:17 181:8
184:10 185:13
190:11 191:9
192:22 196:22
201:7 218:24 226:5
227:23 233:13
235:15 236:19
244:16 245:13
246:10 248:7
250:11 256:5,7
257:15 260:12,12
260:25 264:1
265:20 271:23
275:1 281:6
**thinking** 63:14
105:22,25 115:6
212:10 271:2
**third** 143:16 217:1
**thomas** 4:13 57:16
57:18,19 62:5,14,20
64:5 67:10 84:2
85:11,22,23 100:14
100:20 104:14
137:19 138:13
143:16 144:1,9,16
146:25 179:10
182:20,23 184:22
199:12 203:5
205:24 207:25
218:21 243:8,12
**thomas's** 62:17
85:23
**thought** 16:2 17:2,5
81:8 106:9 111:14
111:16 115:9
116:15 166:3

167:12 171:24
189:1 246:20
**thousands** 219:10
**thread** 84:7 127:10
141:1,4 209:8 232:9
257:10
**threat** 232:20
**three** 14:18 19:24
20:21 27:12,15
29:18,20 30:18 31:1
31:5 42:8 43:24
81:19 98:23 99:21
119:20 134:25
135:16 156:8
162:18,23 278:24
280:8
**tim** 85:14 100:25
249:21
**time** 13:5,15 15:11
15:12 17:14,14,20
23:10 28:16 37:8,18
39:13,21 44:17
52:17 60:5 62:20,24
63:3,11,20 69:6,20
69:22 78:8 84:17
85:14 86:15 87:11
87:11,22,25 102:9
107:13,15 108:3
109:25 110:3,5,11
121:2,18 122:4
125:20 126:21,21
133:9 138:9,10
141:22 143:14,21
143:24 145:23
146:5,10 147:23
148:14,18,23
150:17 152:17
153:14,16 155:12
155:18 174:9
176:10,25 177:11
180:9 183:14
201:13 205:4 206:3
211:21 212:20
222:14 223:6
227:24 241:3

243:19 246:13,13
249:16 256:16
262:15,16 263:14
269:5 270:8,18
281:14,17 283:4
**timely** 153:11
**times** 88:1,4,22
109:11 114:10
119:21 123:3 124:6
181:16 261:4
263:17 275:24
276:5,8,10,17
**timing** 178:2
**title** 21:15,16,17,20
22:4 23:19 25:3,5
58:24,25 60:16
85:19 100:22
269:22
**titles** 21:14 28:19
**today** 13:5 14:23
18:15 21:4 33:14
44:19,25 53:11
129:19,23 142:24
147:7,15 150:9
192:9 196:14 197:7
197:15 213:12
218:10 220:1
**today's** 18:13,14
**told** 16:17 108:21
114:16
**tolles** 4:3
**tom** 13:23 14:22
33:12 85:12 140:16
140:22 143:7 147:3
147:13 198:12
**top** 104:15,18
134:15 141:1
176:23 179:11
195:1 203:17 217:2
220:24 229:1
**topic** 50:11,13,19
66:22 127:19
141:17 145:21
150:6 154:5,9 179:3
252:12 277:19

[topical – use]

topical  88:16
topics   18:13 36:3
  48:12,13 49:9,11,16
  49:17 51:2 53:10,13
  53:16,17 150:8
  277:23
total  14:19
toy   73:16 74:1,7
trace  267:4
track  126:20
trade   6:13 24:7 50:7
  50:8,15,16 60:17
  90:9 94:10,11 111:8
  229:19
trademarks   167:23
  175:11 176:1
training   23:2,5
  266:10
transatlantic  50:7
transcribed   283:9
transcript  172:6
transcription   161:8
  247:22 283:11
  284:5
transfer   54:5 95:23
transparency
  244:22 268:7
transparent   92:13
  162:11 219:19
  244:22
transportation   35:2
  102:13 113:14
treasurer   85:17
treasury   214:14,18
  278:4
trend   20:14,15
trends   19:11 20:16
  20:20
tretler   280:4
tried   123:4
trips   102:21
true   271:25 283:11
truly   209:18
truth   283:6,6,7

try   22:2 88:23 95:19
  180:23
trying   36:7 75:11
  109:19 114:25
  125:4 194:5 226:15
  273:7
turn   178:15
twice   119:8 192:1
twitter   194:22 195:3
  195:5,8,10,12
two   14:18 19:24
  40:24 41:19 48:18
  74:12 83:11 85:17
  90:10 98:23 99:20
  111:14 122:17
  156:12 199:19
  207:9 209:7 229:18
  229:25 239:5
  273:25 277:18
  278:24 281:18
type   16:3 23:11
  44:12 74:18 87:14
  108:5 124:19 153:2
types   43:16 44:18
  77:23 148:19
  213:23 232:24
  253:17

| u |
| --- |

u  13:21
u.s.   22:18 24:13,20
  29:5 33:23 34:13,18
  34:19 35:18,18 36:8
  36:23 37:10,11 40:6
  40:13 50:8 64:10
  73:21 92:15 94:8
  121:25 214:5,7,12
  214:14,17 233:1
  266:13,14,17
uh   51:23 175:13
ultimate   125:17
ultimately   80:24
  202:16
unable   132:6 195:5
  195:7

unaware   227:2
unclear   95:9
uncontroversial
  178:17
undergoing   121:8
undergraduate
  22:11,12
underlying   136:20
  209:7 257:9
undermined   250:15
underneath   136:7
understand   14:23
  15:1 25:21 37:13,14
  37:18 54:3 74:13
  75:24 76:23 79:7,8
  87:1 88:23,24 95:14
  97:7 104:18 105:24
  107:19 117:19
  122:2 137:24 141:3
  143:25 144:3,15
  146:2 150:24 169:6
  169:11,14 179:14
  194:5 204:5 206:17
  208:1 211:8 217:9
  218:25 221:3 222:9
  223:24 243:14
  246:11 249:16
  251:14 262:15
understanding
  18:25 59:11,17 62:4
  62:19 65:23 75:8,19
  76:2,5 77:1,3,15
  78:17,22,25 95:19
  95:22 108:19 126:1
  133:21 135:12
  139:20,24 141:7,10
  143:5,21 149:11
  151:14,24 153:8
  157:7 169:20
  174:25 211:15
  216:8 219:4 223:6
  223:12 230:23
  245:4
understood   117:15
  222:7 272:4

undertake   29:15
undertaken   27:3
undertaking   123:5
  272:9
undertook   25:15,22
underway   272:18
  272:22
underwriters   52:25
  203:19,22 204:6,9
  204:13
unexpected   20:6
unfettered   246:25
  247:18,25 249:2,15
  250:6,23 252:15
unfortunately   102:6
unintended   116:16
  120:7 161:2 219:21
  249:17 260:15
united   1:1 2:1 13:11
  64:9 86:18 136:23
  209:7 232:20
university   280:9
unlimited   222:16
  223:1,15,16,16
unredacted   130:19
  130:20
unusual   20:6
update   48:22 49:20
  49:21 51:11,14
updating   38:13
  69:11
upside   151:17 158:3
urging   91:11,14
url   86:10
use   38:5 41:16 66:5
  72:18 113:19
  124:22,24 126:19
  171:7 207:14 215:4
  222:17 223:1,16
  232:22,24 237:13
  257:10 259:15,18
  260:19,20 261:19
  263:5 267:19
  270:14 273:8

Veritext Legal Solutions
866 299-5127

[user - washington]

| | | | |
|---|---|---|---|
| **user**  218:11 230:24 | 209:10 214:22 | 260:14,16 261:13 | **visit**  102:19 |
| **uses**  130:1 | 217:17,23 218:13 | 261:15 268:1 | **visited**  275:24 |
| **ustr**  24:12 | 220:7 223:3,18 | **versions**  122:14,18 | **visiting**  182:17 |
| **usually**  278:15 | 225:2,10 227:18 | 171:15 259:24 | **voir**  130:22 |
| **utilize**  114:17 | 228:12 230:22 | **versus**  231:15 232:2 | **volume**  70:15 |
| 125:18 151:23 | 232:14 234:20 | **viability**  213:2 | 122:20 |
| **utilizing**  96:2 113:4 | 235:4,14 236:22 | 219:22 220:5 | **volumes**  251:8 |
| 235:23 | 237:5 239:20 240:1 | 248:13 | **voluntary**  38:5,6 |

**v**

| | | | |
|---|---|---|---|
| **v**  13:10 | 242:7 246:9 247:3 | **viable**  94:7 | 66:5 92:14 95:1 |
| **vacancy**  90:10,11 | 248:5 249:5 250:1 | **vice**  4:13 18:16 | 96:2 97:3 125:15 |
| **vague**  20:3,8,17 | 250:10 251:4 252:2 | 21:18 24:9,10 32:7 | 234:2,4,22 235:22 |
| 21:22 22:16 23:6,13 | 252:16 253:11 | 33:12 56:8 60:6,9 | 244:21 246:16 |
| 25:6,24 26:20 27:10 | 256:3,12 262:13 | 60:12 85:7,7,13,14 | 252:14,22 253:10 |
| 28:3 29:25 30:8,20 | 264:9,16,24 265:8 | 85:19,20,20,24 | 253:14,15,18 263:1 |
| 31:13 32:6 36:4,20 | 265:15 266:23 | 99:13 100:16,20 | **voted**  267:24 |
| 38:25 39:6,16 41:10 | 267:11 268:5,22 | 145:8,14 165:22 | **voting**  53:2 266:1 |
| 42:20 43:4 44:2 | 269:3 272:14 | 208:20 | **vs**  1:9 2:9 |
| 45:16 49:10 50:12 | 274:10 277:9 | **video**  13:6 | |

**w**

| | | | |
|---|---|---|---|
| 52:17 54:23 55:13 | 278:12,23 | **videographer**  4:18 | **wait**  273:19 |
| 61:6,12 63:1 65:12 | **vagueness**  170:11 | 13:3,25 18:1,5 | **waiting**  154:8 |
| 65:24 70:19,24 | 171:18 | 46:10,14 82:3,7 | **waiver**  177:7 192:23 |
| 71:24 72:16 75:6 | **value**  110:21 162:10 | 128:4,8 130:8,12 | 193:4,10 |
| 79:13,20 82:24 87:8 | 210:7,10 | 176:14,18 190:2,6 | **want**  23:22 24:21 |
| 91:16 92:21 93:2 | **variables**  157:17 | 200:22 201:1 205:8 | 32:15 46:2 76:20 |
| 95:8 98:3 99:3 | **varies**  277:21 | 205:12 227:25 | 83:7 88:23 115:15 |
| 104:23 106:24 | **variety**  77:20 | 228:4 256:17,20 | 127:10,19 151:6 |
| 107:5,11 108:9 | 187:10 225:9,17 | 269:6 281:16 282:1 | 154:13 168:19 |
| 112:22 116:10 | 226:22 | **videotaped**  1:15 | 176:12 179:7,7 |
| 117:1,13 118:8 | **various**  39:9 66:4,22 | 2:15 | 186:4,12 193:7,13 |
| 120:21 121:18 | 85:6 86:23 87:5 | **view**  36:19 46:3 | 211:23 222:2 |
| 122:4 124:14 | 105:4 109:9 110:14 | 71:5,15 160:23 | 227:21 234:5 |
| 125:11 127:23 | 126:4 219:5 251:11 | 169:23 170:7 171:9 | 238:22,23 260:13 |
| 133:19 135:4 139:3 | **vary**  98:21 99:6 | 171:12 172:24 | 263:24 268:10 |
| 143:3 144:25 146:9 | **vendor**  123:13 | 216:9 236:19 | **wanted**  18:21 19:2 |
| 146:24 150:22 | **vendors**  61:4 126:19 | 247:24,24 249:1 | 19:15 30:3 117:20 |
| 155:4 158:17 | **verbatim**  222:3 | 250:6 254:15 | 181:8 222:19 |
| 160:15 163:5,24 | **verify**  238:22,23 | 259:24 | 228:16 229:13 |
| 164:6 165:19 168:2 | 270:14 | **viewed**  157:2 224:6 | 259:8 262:7 263:3 |
| 170:2 180:17 | **veritext**  2:17 13:4,7 | **viewing**  151:15 | **wanting**  62:17 171:7 |
| 181:12 184:18 | **version**  124:20,23 | **views**  62:19 87:10 | **wants**  185:25 |
| 185:20 186:14,22 | 125:3 130:18 168:8 | 237:2 269:13 270:8 | 191:11 229:4 249:9 |
| 187:24 192:12 | 168:9,12,12,21 | 270:17 | **washington**  1:19 |
| 199:14 201:17 | 169:1,24,25 170:3,8 | **violation**  215:21 | 2:19 3:7 13:1,7,8 |
| | 170:9,13 171:5,8 | **virginia**  89:5 | 21:15 22:24 26:8 |
| | 228:15 229:3,12,14 | | |

Veritext Legal Solutions
866 299-5127

[washington - witness]

28:13 29:7 33:24
34:1,6,8,12 35:15
38:10,24 39:5,10,14
39:18,22 41:3 48:13
60:15,22 86:23 87:6
88:22 90:3 101:21
105:11 108:24
109:8,9 115:8 121:8
183:9 277:17 278:7
278:9,16 279:15,20
watch 227:23
water 70:7 97:15
way 29:8 44:8
101:14 105:16
108:19 109:2 110:9
110:12 111:21
112:14 124:11
136:17 152:1,9
160:19 191:6
220:11 222:21
234:22 244:19
267:4 274:22 278:6
ways 70:3,4 91:19
106:6 213:25 225:9
225:17 226:19
231:1,2 235:24
we've 17:21 19:17
69:18,19 70:15
92:11 94:13 123:2
123:15 124:23
176:9 185:24
190:13 192:22
205:6 219:17
224:10 235:21
248:8 264:25
274:13
wear 243:20,23
website 25:12
105:17 114:19
121:21 122:22
149:22 179:21
183:15 214:9 223:8
225:25 226:11,21
275:12,25 276:11
276:18

wednesday 1:20
2:19 13:1
week 88:14 89:9,19
156:18,21 255:12
weekend 243:22
weeks 100:18
156:12
welcome 179:6
233:20 246:2
wendler 135:2,17
went 116:20 173:9
179:20 180:14,21
181:6 208:1 222:19
west 3:12 13:19
widely 40:18 94:14
112:14 164:16
181:9 235:18 245:9
widespread 107:4
wisconsin 81:16,18
280:9
wish 36:10
wishes 131:8
withdraw 70:20
144:12
witness 12:3 13:13
14:1 16:1,22 19:9
19:15 20:4,9,18,23
21:10,23 22:17 23:7
23:14 25:8,19,25
26:11,22 27:11,22
27:25 28:5 29:14
30:1,9,15,22 31:3
31:15,21,25 32:7,14
32:21 33:1,8,18
34:5 36:6,14,22
37:22 38:1,20 39:1
39:7,17,24 40:10,24
41:11,18 42:1,8,12
42:21 43:5,15 44:4
44:11 45:4,10 48:9
49:4,12 50:14 51:10
52:10,18 53:4,24
54:14,19,25 55:15
55:21 56:7,16,24
57:8,9 58:5,6,7,15

58:17 59:6,19 61:7
61:13,24,25 62:11
63:3,21,22,23 65:5
65:14 66:2,3,14,18
67:5,14,15,24 68:11
71:1,9,18 72:1,6,17
73:4,21 74:16,25
77:5,19 78:4,15,24
79:15,21 80:2,9,22
81:4,15,24 82:2,17
82:18,25 83:14,17
83:18 84:11,12,19
84:20,24 87:9 90:15
90:19 91:17 92:22
93:22,25 94:22
95:21 96:12 97:1,13
98:4,12,17 99:4,17
100:2,3 103:6,16,25
104:9,10,25 106:3
106:25 107:6,13,24
108:11 109:23
112:7,9,23 113:11
115:6 116:2,11
117:5,14 118:15
119:4,13 120:13
121:19 122:5
124:15 125:12
126:1,15 127:6,24
128:18,19 129:4,5,9
129:14 130:14
131:3 132:5,11,17
132:18 133:1,7,12
133:13,21 134:12
134:13,21 135:5,12
135:20 136:1,25
137:12 138:2,19
139:14 140:3,10,16
140:22 142:2,11,16
142:17 143:5,12
144:3,19 145:1,7
146:10,25 147:10
147:23 148:4,8,13
149:11 150:1,12
151:10 152:5,16,24
153:7,22 154:23

155:5,12,23 156:2,6
156:10,14,21 157:7
158:2,12,19,23
159:2,11,17 160:8
160:16 161:1,13,20
162:3,9,20 163:1,6
163:20 164:1,8,13
164:22 165:4,10,21
166:8,16,25 167:5
167:19 168:3,23
169:11,19 170:4,12
170:24 171:21,23
172:17 173:22
174:14 175:4,17
176:6,13 177:10
177:8,14 179:19
180:5,18 181:13
182:3 184:19
185:13,21 186:9,16
186:23 187:8,20
188:6 189:1,11,18
190:1,13 191:6,9,24
192:11,18 193:19
193:21 194:2,6,14
195:25 196:1,12
197:2,23 198:11
199:15 200:2,3,17
200:18 201:13,19
201:25 202:12,21
203:16 204:3,20
206:15,20 207:21
208:5,13,14 209:2
209:11 210:1,6,23
211:5,6,18 212:24
213:9 214:23
215:12,25 216:14
216:24 217:19,24
218:15 219:16
220:10,21,22
221:16 222:11
223:4,19 224:5,20
225:4,11,19 226:15
227:20,22 228:13
228:21 229:10
230:14,15,23 231:8

[witness - z]

| x | z |
|---|---|
| **x**  5:1,6 6:2 7:2 8:2 9:2 10:2 11:2 | **z**  13:10 |

231:14,25 232:16
233:13,19,21
234:15,21 235:5,15
236:12,16,24 237:6
237:11,23 238:5,10
238:20 239:11,21
240:2,11,12,17
241:1,9,25 242:9,17
243:9,10,17 244:5
244:12,19 245:17
246:2,12 247:8
248:7 249:15,23
250:4,14 251:7,20
252:3,7,19 253:5,13
254:10,21 255:4
256:5,14 257:4,18
257:23 258:11,12
258:18,21 259:5,14
259:22 260:12,25
261:23 262:5,14,25
263:9,13,21 264:11
264:17,25 265:9,20
267:2,12 268:6,23
269:4,17 270:15,16
271:9 272:8,16,21
273:2,17,22 274:12
275:10,18 276:3,7
276:14 277:3,10
278:2,14,24 279:19
280:1,16,24 281:6
281:22 282:4
283:13
**word**   21:20 117:9
118:4,18 192:2
**wording**   118:8
**words**   118:5 234:5
254:22 265:17
**work**   16:16 17:7
22:1 24:6 25:14,21
26:15,18 29:9,18
32:16 38:4 44:7,8
54:6 55:22 69:25
81:22 86:1 90:4
92:12 97:18 102:14
109:25 114:8 124:5

125:14,14 131:18
140:18,23 180:5
181:7 188:19 196:5
198:18,22 201:9,9
201:20,22 219:6
234:4 244:20,23
246:16 276:24
**worked**   21:12 22:17
22:22 23:10 26:22
29:21 80:16 102:11
109:12 136:21
185:22 232:17
247:12
**working**   17:15
28:23 30:18 31:1,6
64:10 81:4,8 86:17
87:13 105:1,11
108:22 109:5,18
124:1 142:5 180:22
226:1,2 234:24
273:23
**works**   37:12 60:15
90:7 101:23 103:17
140:22 163:13
219:5 243:1 258:4
**workshop**   11:13
69:1,2 88:12,20
270:1
**world**   69:25 72:12
73:24 88:14 89:8
94:10 142:17
**worldwide**   64:24
182:21 226:3
237:12
**worry**   46:8
**writing**   54:5 55:8
185:4
**written**   40:1,3 62:14
207:12 269:21
**wrong**   76:16 125:1
228:15 229:12
273:12
**wrongful**   136:15
**wrote**   116:12 243:12

**y**

**yeah**   30:15 41:18
46:6 49:19 74:25
87:7 90:5 91:17
92:22 96:12 97:1
101:11 106:3,25
112:9 114:22
117:14 170:4
184:19 185:3
195:10 198:18
225:19 227:22
231:25 232:16
234:21 239:21
240:17 241:25
260:12 274:12
281:6
**year**   69:19 83:23
89:9 102:20 109:20
109:24 110:7
146:11 155:25
157:2 177:23
181:17 186:24
265:1 266:2
**years**   19:16,24
20:16,21 21:13 24:8
38:2,8 80:12,14
99:21 102:4 104:25
105:8 108:14
111:25 156:8
219:17 220:11
224:10 237:23
247:12 250:17
261:7 264:2,23
265:2,14 280:8
**yesterday**   145:19,21
145:25 157:2
184:13
**york**   52:3

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2014.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.