# EXHIBIT 48

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR TESTING AND
MATERIALS D/B/A ASTM INTERNATIONAL;
NATIONAL FIRE PROTECTION, INC.;
AND AMERICAN SOCIETY OF HEATING,
REFRIGERATING, AND AIR-CONDITIONING
ENGINEERS, INC.

       Plaintiffs,/
       Counter-Defendants,    Case No.:

   vs.                  1:13-cv-01215-EGS

PUBLIC.RESOURCE.ORG, INC.

       Defendant/
       Counter-Plaintiff
_____/

    VIDEOTAPED DEPOSITION OF THE 30 b) 6) OF
          PUBLIC.RESOURCE.ORG

DATE:         Thursday, February 26, 2015

TIME:        10:07

LOCATION:     1 Market Street, Spear Tower, Suite
                2000, San Francisco, California

Reported by:  Ashley Soevyn
              Certified Shorthand Reporter
              License Number 12019

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

**Page 2**

```
 1          A P P E A R A N C E S
 2  For Plaintiff ASTM:
 3     MORGAN LEWIS & BOCKIUS LLP
          BY:  J  KEVIN FEE & JORDANA RUBEL
 4     Attorneys at Law
          1111 Pennsylvania Avenue, NW
 5     Spear Street Tower, 28th Floor
          Washington, DC 20004
 6     jkfee@morganlewis com
          jrubel@morganlewis com
 7     (202) 739-5353
 8  For Plaintiff NFPA:
 9     MUNGER, TOLLES & OLSON LLP
          BY:  THANE REHN & KELLY M  KLAUS
10     Attorneys at Law
          560 Mission Street
11     27th Floor
          San Francisco, California 94105-2907
12     Thane Rehn@mto com
          Kelly Klaus@mto com
13     (415) 512-4073
14  For Plaintiff ASHRAE
15     KING & SPALDING
          BY:  WILLIAM "WES" E  STEIMLE
16     Attorney at Law
          101 Second Street
17     Suite 2300
          San Francisco, California 94105
18     kslaw com
          (415) 318-1259
19
20
21
22
23
24
25
```

**Page 3**

```
 1  APPEARANCES (continued):
 2  For Defendant Public Resource Org and Carl Malamud
 3     FENWICK & WEST LLP
          BY:  ANDREW P  BRIDGES & MATTHEW BECKER
 4     Attorneys at Law
          1191 Second Avenue
 5     10th Floor
          Seattle, Washington 98101
 6     fenwick com
          (415) 875-2389
 7
     For Carl Malamud:
 8
     ELECTRONIC FRONTIER FOUNDATION
 9     BY:  CORYNNE MCSHERRY & MITCH STOLTZ
          Attorneys at Law
10     815 Eddy Street
          San Francisco, California 94109
11     corynne@eff org & mitch@eff org
          (415) 436-9333
12
13
14
     ALSO PRESENT:  Sally Everett, in-house counsel for
15     NFPA (appeared telephonically)
16  Videographer:  Frankie Quirarte
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
 1              I N D E X
 2  WITNESS                    EXAMINATION
 3
     THE 30(b)(6) OF PUBLIC.RESOURCE.ORG
 4  Volume I
 5     BY MR. FEE              9
 6     BY MR. REHN             220
 7     BY MR. STEIMLE          312
 8
 9
10     WITNESS INSTRUCTION NOT TO ANSWER
11     PAGE      LINE
12     37        16
13     59        23
14     102       16
15     103       11
16     111       1
17     112       6
18
19
20
21
22
23
24
25
```

**Page 5**

```
 1          E X H I B I T S
 2                        PAGE
 3  Exhibit 32   Notice of 30(b)(6) Deposition   40
     For Defendant Public Resource Org
 4
     Exhibit 33   E-mail from Carl          89
 5  Malamud to Deborah Hunt dated 6-30-09;
     Bates No  PRO_166616 through PRO_166618
 6
     Exhibit 34   E-mail from Carl          98
 7  Malamud to Seamus Kraft dated 3-12-12;
     Bates No  PRO_213808 through PRO_213810
 8
     Exhibit 35   E-mail chain from Joseph   126
 9  Monin to Carl Malamud dated 5-7-12; Bates
     No  PRO_167245 through PRO_167247
10
     Exhibit 36   E-mail chain to Open       136
11  Government dated 6-2-09; Bates No
     PRO_211406 through PRO_211408
12
     Exhibit 37   Document entitled, "Pipeline   139
13  and Hazardous Materials Safety Administration
     DOT 192 113"
14
     Exhibit 38   Document entitled, "Public   141
15  Safety Standards United States (Federal
     Government); Bates No  PRO_166182 through
16  PRO_166257
17  Exhibit 39   GPO document 192 7          144
18  Exhibit 40   Document entitled "Public    151
     Safety Codes Incorporated By Law; Bates
19  No  PRO_166258 through PRO_166267
20  Exhibit 41   E-mail chain from Rebecca    176
     Malamud to Carl Malamud dated 1-4-14;
21  Bates No  PRO_42286 through PRO_42288
22  Exhibit 42   Public Resource Org's        198
     Response to ASTM International's Second
23  set of Interrogatories (No  16)
24  Exhibit 43   Spreadsheets (printed in     206
     Native format)
25
```

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

---

**6**

E X H I B I T S

             PAGE

Exhibit 44   Spreadsheets (printed in   208
Native format)

Exhibit 45   Spreadsheets (printed in   212
Native format)

Exhibit 46   Spreadsheets (printed in   218
Native fomat)

Exhibit 47   E-mail chain from NFPA to   238
Carl Malamud dated 8-13-08; Bates No  PRO_166295
through PRO_166298

Exhibit 48   Document Bates No  IA-   248
ASTM-0013

Exhibit 49   Spreadsheet; Bates No   248
IA-ASTM-1 through IA-ASTM-12

Exhibit 50   Spreadsheet; Bates No   254
PRO_00232652

Exhibit 51   Search Results document;   259
7 pages

Exhibit 52   GovDocs document; 2 pages   274

Exhibit 53   GovDocs document; 2 pages   288

Exhibit 54   Spreadsheet; Bates No   297
PRO_245530

Exhibit 55   Document entitled, "Show   302
Me The Manual"; Bates No  PRO_167541
through PRO_167549

Exhibit 56   Spreadsheet; Bates No   316
PRO_245530

(Exhibits attached to transcript )

---

**7**

1           P R O C E E D I N G S
2           THE 30(b)(6) OF PUBLIC.RESOURCE.ORG,
3   called as a witness by the Plaintiffs, who, having
4   been duly sworn by me, was examined and testified as
5           hereinafter set forth.
6                   --oOo--
7           THE VIDEOOPERATOR:  Good morning, ladies
8   and gentlemen.  This begins Volume I, Tape No. 1 in
9   the videotaped deposition of Carl Malamud, taken in
10  the matter of National Fire Protection Association,
11  Inc., et al., v. Public.Resource.Org, Inc.  It's
12  being held in the United States District Court for
13  the District of Columbia, Case No.
14  1:13-cv-01215-EGS.
15          This deposition -- this deposition is
16  being held in the office of Morgan Lewis located at
17  One Market Street, Spear Street Tower, in San
18  Francisco, California on February 26, 2015 at
19  approximately 10:07 a.m. My name is Frank Quirarte
20  with the firm of Capital Reporting Company.  I'm a
21  legal -- legal video specialist here with our court
22  reporter, Ashley Soevyn, also in association with
23  Capital Reporting, located at 1050 Northgate Drive,
24  Suite 180, San Rafael, California 94903.
25  At this time will counsel and all present please

---

**8**

1   identify yourself for the record.
2           MR. FEE:  Kevin Fee from Morgan Lewis,
3   along with Jordana Rubel from Morgan Lewis on
4   behalf of ASTM.
5           MR. REHN:  I'm Thane Rehn from Munger,
6   Tolles & Olson along with Kelly Klaus from Munger,
7   Tolles & Olson on behalf of NFPA.
8           MR. STEIMLE:  Wes Steimle with King &
9   Spalding on behalf of American Society of Heating,
10  Refrigerating and Air-Conditioning Engineers.
11          MR. BRIDGES:  Andrew Bridges, Fenwick &
12  West on behalf of Public.Resource.Org.
13          MS. McSHERRY:  Corynne McSherry,
14  Electronic Frontier Foundation on behalf of
15  Public.Resource.Org.
16          MR. BECKER:  Matthew Becker with Fenwick &
17  West on behalf of Public.Resource.Org.
18          THE VIDEOGRAPHER:  On the telephone?
19          MS. EVERETT:  Sally Everett, general
20  counsel, NFPA.
21          THE VIDEOGRAPHER:  Madame Court Reporter,
22  will you please swear in the witness.
23  WHEREUPON,
24                  CARL MALAMUD,
25  was called as a corporate representative witness,

---

**9**

1   and having been duly sworn by the court reporter,
2   was examined and testified as follows:
3           MR. BRIDGES:  I have just a couple of
4   preliminaries, I think the case caption was wrong
5   as read in by the videographer, because I think
6   it's ASTM is the lead plaintiff.  And I'm not sure
7   what the case number is, but I thought I heard him
8   say EGS, whereas the case number I know ends with
9   TSC.
10          MR. FEE:  Yes.  The judge was changed
11  so...
12          MR. BRIDGES:  So it's American Society for
13  Testing and Materials, d/b/a ASTM International, et
14  al. versus Public.Resource.Org, Case No.
15  1:13-cv-01215-TSC, as in Tango, Sierra, Charlie.
16          MR. FEE:  Right.
17          EXAMINATION BY COUNSEL FOR PLAINTIFF ASTM
18  BY MR. FEE:
19      Q   Good morning.
20      A   Good morning, Mr. Fee.
21      Q   Mr. Malamud, have you ever been deposed
22  before?
23      A   No, I haven't.
24          MR. BRIDGES:  One -- one quick thing I
25  want to put on the record.  We do request 30 days

---

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

10

1  to review and correct the transcript. I'm also
2  going to note that, according to the court's
3  scheduling order, discovery closed on January 30.
4  We've had a number of interactions among counsel.
5  We are proceeding with this deposition in the
6  belief and expectation that the parties will work
7  out mutually agreeable dates for all of the
8  depositions and that the -- and we don't expect the
9  plaintiffs to take the -- have the benefit of
10  having taken this one at a time convenient to all
11  without having -- without affording the defendant
12  similar courtesies.
13       MR. FEE:  Well, I think you know what our
14  positions are with respect to depositions, and this
15  is probably not the place or time to get into that
16  any further.  But you have that on the record for
17  whatever that's worth.
18  BY MR. FEE:
19    Q   So, Mr. Malamud --
20       MR. BRIDGES:  I'm sorry.  One last thing.
21       MR. FEE:  Okay.
22       MR. BRIDGES:  I have a -- I just want
23  everybody to know I have a family member in a true
24  life or death medical crisis that's now on its
25  fourth day, so I'm leaving my cell phone on, and I

11

1  ask everybody's indulgence if I have to leave to
2  take it.  It's -- it's a very serious issue and two
3  crash carts in the last two days, so --
4       MR. FEE:  That's fine.  That's fine.
5       MR. BRIDGES:  Thanks.
6  BY MR. FEE:
7    Q   So, Mr. Malamud, I'm sure your counsel has
8  explained to you today that I'm here to ask you, and
9  so are the other plaintiffs' counsel, here to ask
10  you a series of questions.  And I assume you also
11  know that my questions and your answers will be
12  taken down by the court reporter.
13       Do you understand that?
14    A   I do.
15    Q   Okay.  I'm going to ask you to respond to
16  all of our questions verbally because the court
17  reporter can't easily record the nodding of the head
18  or gestures like that.  Okay?
19    A   Yes.
20    Q   Now, I'm going to ask you a series of
21  questions, and if you don't understand any of them,
22  I ask that you let me know that.  Is that okay?
23    A   Yes, it is.
24    Q   And if you answer my question, that would
25  mean that you understood it and your answer is

12

1  responsive; is that fair?
2    A   Yes, it is.
3    Q   Okay.  Is there any reason why you can't
4  testify fully and truthfully today?
5    A   No, there is not.
6       MR. BRIDGES:  I'll ask the witness to give
7  me time to object.  These are not objectionable
8  questions --
9       THE WITNESS:  Okay.
10       MR. BRIDGES:  -- but I do need time.
11       THE WITNESS:  Yes.
12  BY MR. FEE:
13    Q   I just want to spend a couple minutes to
14  understand your background.  Can you tell us what
15  your educational background is post high school?
16    A   I went to Indiana University, where I got
17  a B.S. and an MBA in pursuit of a doctorate which I
18  didn't finish.
19    Q   What was the B.S. in?
20    A   Business economics and public policy.
21    Q   Did the MBA have any focus or
22  concentration?
23    A   Business economics and public policy.
24    Q   When were those degrees awarded?
25    A   I believe 1980 and 1982.  I'd have to

13

1  double-check that.
2    Q   Do you have any technological
3  certifications beyond what you might have picked up
4  during your college years?
5       MR. BRIDGES:  Objection, vague and
6  ambiguous.
7       THE WITNESS:  I'm not sure what you mean
8  by "technological."
9  BY MR. FEE:
10    Q   Any sort of certified engineer or anything
11  along those lines?
12       MR. BRIDGES:  Same objection.
13       THE WITNESS:  I've written eight
14  professional reference books in the field of
15  computer science and networks.
16  BY MR. FEE:
17    Q   Can you tell me a little bit about where
18  your expertise or understanding of computer science
19  comes from?
20       MR. BRIDGES:  Objection, vague and
21  ambiguous.
22       THE WITNESS:  I've had a series of -- of
23  jobs, starting with being a professional staff
24  member at Indiana University's computing center.
25  BY MR. FEE:

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

14

1    Q    Would you briefly walk me through your
2  professional experience post the granting of your
3  MBA from Indiana University?
4    A    After working for the computing center at
5  Indiana University, I worked for the Board of
6  Governors of the Federal Reserve System in
7  Washington, D.C. and subsequently became a
8  consultant to the Board of Governors.
9    Q    During what approximate time frame were
10  you working for the Federal Reserve either as an
11  employee or a consultant?
12    A    Approximately 1983 or so.
13    Q    Did you take employment after that?
14    A    I'm sorry?
15    Q    Were you employed after 1983?
16    A    Yes, I was.  I was a consultant for
17  several years.
18    Q    What type of consultant?
19    A    I was a consultant on relational databases
20  and computer networks to the Department of Defense,
21  to Argonne National Laboratory, to Lawrence
22  Livermore National Laboratory.  Those were the
23  primary on consulting.
24    Q    During what time frame were you acting as
25  a consultant for those clients?

15

1    A    Mid '80s.
2    Q    At some point time did you stop becoming a
3  consultant for those clients?
4    A    I began teaching advanced networking and
5  database seminars.
6        MR. BRIDGES:  I'll ask the witness to
7    listen to the question and answer the question.
8        THE WITNESS:  I'm sorry.  Would you please
9    repeat the question?
10  BY MR. FEE:
11    Q    I just asked you at -- at some point in
12  time did you stop becoming a consultant for those
13  clients that you had mentioned?
14    A    Yes.
15    Q    Okay.  And what did you do after you
16  stopped being a consultant for those clients?
17    A    I began writing and teaching seminars.
18    Q    Where did you write and teach these
19  seminars?
20    A    I taught the seminars all over the world
21  as part of a commercial seminar company.  We -- we
22  basically would go all over the world and book a
23  hotel room and teach, as well as working for private
24  clients.
25    Q    What was the name of that professional

16

1  seminar company?
2    A    You know, I don't remember.
3    Q    Okay.  How long were you doing this work
4  for this seminar company?
5    A    Did it for a few years.
6    Q    Was that still in the '80s?
7    A    Yes.
8    Q    What did you do professionally after you
9  stopped doing those seminars?
10        MR. BRIDGES:  Objection, vague and
11    ambiguous.
12        THE WITNESS:  I -- I -- I -- I shifted
13    towards a focus on -- on writing technical
14    documents.
15  BY MR. FEE:
16    Q    Were you employed by somebody in that
17  capacity?
18    A    I wrote books and I was also a
19  contributing editor to a number of trade
20  publications.
21    Q    Can you identify those publications?
22    A    Data Communications Magazine,
23  Communications Week International.  I also wrote for
24  InfoWorld and the Bangkok Post.
25    Q    Were you a freelance writer for all those

17

1  publications?
2    A    By "freelance," you mean not on staff?
3    Q    Yes.
4    A    Yes, I was.
5    Q    During the time that you were doing this
6  freelance work, did you have any other employment?
7    A    I might have been teaching seminars a few
8  times still during that period.
9    Q    During what approximate time frame were
10  you doing this freelance work that you referenced?
11    A    Late '80s and very early '90s, '91 or so.
12    Q    At some time around 1991, did you begin
13  doing a different type of work?
14    A    In late 1992, I believe, I founded the
15  Internet Multicasting Service, a nonprofit
16  corporation.
17    Q    What was the Internet multitask service?
18        MR. BRIDGES:  Objection, misstates
19    testimony.
20        THE WITNESS:  Internet Multicasting
21    Service.
22
23  BY MR. FEE:
24    Q    Oh, Multicasting.  Okay.
25    A    We were responsible for founding the first

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

18

1   radio station on the Internet and other activities.
2       Q    Is Internet Multicasting Service a
3   corporation?
4       A    A what?
5           MR. BRIDGES:  Objection, vague and
6   ambiguous.
7   BY MR. FEE:
8       Q    Was it incorporated?
9       A    It was, yes.
10      Q    Okay.  Is it still a -- a corporation
11  today?
12      A    No, it is not.
13      Q    Do you know when Internet Multicasting
14  Services stopped being an active corporation?
15      A    It stopped being active in 1997, and I
16  dissolved the corporation -- I think it's the year
17  2000.
18      Q    From 1991 to 1997, was it your primary job
19  to be working for Internet Multicasting Service?
20      A    From 1992 to 1997, yes, it was.
21      Q    In 19 --
22      A    To 1996.
23      Q    In 1996 did you begin some other type of
24  employment?
25          MR. BRIDGES:  Objection, mischaracterizes

19

1   vague and ambiguous.
2           THE WITNESS:  I was appointed as a
3   visiting professor at the MIT Media Lab.
4   BY MR. FEE:
5       Q    What were you teaching there?
6       A    I was doing research on the Internet and
7   writing a book.
8       Q    How long were you working at the MIT Media
9   Lab?
10      A    I did about nine months there before
11  moving to another university.
12      Q    What university did you move to next?
13      A    Keio University in Japan.
14      Q    Can you spell that for the court reporter?
15      A    K-E-I-O.
16      Q    How long were you at Keio University?
17      A    Until mid 1997.
18      Q    What did you do when you left Keio
19  University professionally?
20      A    I spent a few months at RIPE, which is the
21  European Internet Numbers Registry.  I was not
22  employed, but I had an office there.
23      Q    What did you do next professionally?
24      A    I founded a company called Invisible
25  Worlds.

20

1       Q    What was the business of Invisible Worlds?
2       A    Invisible Worlds was one of the first
3   semantic web companies.
4       Q    Can you explain to me what that means?
5       A    We developed a protocol for the transport
6   of metadata and other information across the
7   Internet, similar to a protocol called SOP, which
8   you may have heard of.
9       Q    During what time period approximately were
10  you at Invisible Worlds?
11      A    '98 to 2000.
12      Q    Did you dissolve Invisible Worlds sometime
13  thereafter?
14      A    I was a CEO.  I left as CEO, and after the
15  management there finished their stint, I ended up
16  becoming the chairman and dissolving the
17  corporation.
18          MR. BRIDGES:  I will ask you to listen to
19  his question and to answer his question.  His
20  question was did you dissolve the company.
21          THE WITNESS:  Yes, sir.
22
23  BY MR. FEE:
24      Q    After you left Invisible Worlds, what did
25  you do next professionally?

21

1       A    I started a company called Net-Top Box,
2   Inc.
3       Q    What was the business of Net-Top Box,
4   Inc.?
5       A    A better electronic program guide such as
6   a TV guide.
7       Q    How long were you working at Net-Top Box,
8   Inc.?
9       A    Two years.
10      Q    So approximately 2000 to 2002?
11      A    That's right.
12      Q    Did you wind up dissolving Net-Top Box,
13  Inc.?
14      A    Yes.
15      Q    What did you do after you stopped working
16  for Net-Top Box, Inc.?
17      A    I was hired as a consultant by the
18  Internet Architect Board and the Internet
19  Engineering Task Force.
20      Q    In what role?  Or strike that.
21          Consultant with respect to what?
22      A    I was a consultant charged with examining
23  the governance mechanism for the creation of
24  Internet standards.
25          THE REPORTER:  I'm sorry.  I'm sorry.  One

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

22

1   more time.  I was a consultant charged with?
2        THE WITNESS:  The governance mechanism for
3   the creation of Internet standards.
4        THE REPORTER:  Thank you.
5   BY MR. FEE:
6        Q    For what period of time did you hold that
7   position?
8        A    It was about a year.
9        Q    So 2002 to 2003 approximately?
10       A    '3 to '4 at that point.
11       Q    What did you do professionally after that?
12       A    In 2005 I joined the Center for American
13  Progress as a senior fellow and the chief technology
14  officer.
15       Q    How long did you hold that position for?
16       A    Two years.
17       Q    What did you do next professionally?
18       A    I founded Public.Resource.Org.
19       Q    Was that in 2007?
20       A    Yes, sir.
21       Q    Okay.  Now, throughout the deposition if I
22  refer to Public Resource, will you understand that
23  to be referencing Public.Resource.Org?
24       A    Yes.
25       Q    Are you currently employed by Public

23

1   Resource?
2        A    I am.
3        Q    What is your position at Public Resource
4   at this time?
5        A    I'm the president and founder.
6        Q    Has that been your title ever since you
7   founded Public Resource?
8        A    Yes.
9        Q    Is that a full-time position?
10       A    It is.
11       Q    Do you do any other work that leads to any
12  sort of compensation other than your work for Public
13  Resource at this time?
14       A    I do not.
15       Q    As the president and founder of Public
16  Resource, what are your job responsibilities?
17       MR. BRIDGES:  Objection, vague and
18  ambiguous.
19       THE WITNESS:  I run the corporation.
20  BY MR. FEE:
21       Q    Okay.  Can you be any more specific than
22  that?
23       MR. BRIDGES:  Same objection.
24       THE WITNESS:  I speak.  I program.  I run
25  computers.

24

1   BY MR. FEE:
2        Q    What is Public Resource?
3        MR. BRIDGES:  Objection, vague and
4   ambiguous.
5        THE WITNESS:  A 501(c)(3) nonprofit
6   corporation.
7   BY MR. FEE:
8        Q    What products or services does Public
9   Resource provide?
10       MR. BRIDGES:  Objection, vague and
11  ambiguous, argumentative.
12       THE WITNESS:  We make government
13  information more broadly available to inform
14  citizens.
15  BY MR. FEE:
16       Q    How does Public Resource do that?
17       A    I'm sorry?
18       Q    How does Public Resource do that?
19       A    We use the Internet.
20       Q    At this point in time, do you own any
21  controlling interest in the corporation, or do you
22  hold any positions for any nonprofit organizations
23  other than Public Resource?
24       MR. BRIDGES:  Objection, compound.
25       MR. FEE:  It is compound.  I'll break that

25

1   down.  Let me re-ask that.
2   BY MR. FEE:
3        Q    First of all, do you own a controlling
4   interest in any corporation putting aside what you
5   do for Public Resource?
6        A    No, I do not.
7        Q    Do you have a role in connection with any
8   nonprofit organization other than Public Resource
9   at --
10       MR. BRIDGES:  Objection, vague and
11  ambiguous.
12  BY MR. FEE:
13       Q    -- at this time?
14       MR. BRIDGES:  Objection, vague and
15  ambiguous.
16       THE WITNESS:  I'm on the board of
17  directors of Common Crawl, a 501(c)(3) nonprofit
18  corporation.
19  BY MR. FEE:
20       Q    Any others?
21       A    No, sir.
22       MR. BRIDGES:  Just leave me time to
23  object.  I should have objected to that one.
24  BY MR. FEE:
25       Q    What is Common Crawl?

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

26

1    A   It's a nonprofit corporation that is
2  providing an open crawl of the web.
3    Q   How long have you been on the board of
4  directors of Common Crawl?
5    A   Two or three years.
6    Q   Is that a paid position?
7    A   No, it is not.
8    Q   Are you an officer or director of any
9  other company other than Public Resource at this
10  time?
11    A   No, I'm not.
12    Q   Does Public Resource operate any websites?
13    A   Yes.
14    Q   What web sites does it operate?
15    A   It's a long list.  Public.Resource.Org.
16    Q   Any others?
17    A   Law.Resource.Org; House.Resource.Org;
18  YesWeScan.Org; WWLBD.Org, which stands for What
19  Would Luther Burbank Do; Yo.YourHonor.Org.
20    THE REPORTER:  What is that one?
21    THE WITNESS:  Yo.YourHonor.Org.  Y-O dot
22  Your Honor dot O-R-G.
23    THE REPORTER:  Thank you.
24    THE WITNESS:  In addition we operate all
25  the websites of the Internet Multicasting Service I

27

1  had created, which includes Park.Org, P-A-R-K,
2  Town.Hall.Org; North.Pole.Org.
3    I think that's all of them.  There may be
4  a few more, though.  Museum.Media.Org.
5  BY MR. FEE:
6    Q   Are there any subsidiaries to
7  Public.Resource.Org Inc.?
8    A   No.
9    Q   Is there any parent company to that
10  organization?
11    A   No.
12    Q   Does Public Resource have any relationship
13  with the Internet Archive?
14    MR. BRIDGES:  Objection, vague and
15  ambiguous.
16    THE WITNESS:  I'm not sure what you mean
17  by "relationship."
18  BY MR. FEE:
19    Q   Are you aware of any rights or power that
20  Public.Resource.Org might have that a member of the
21  public such as myself wouldn't have with respect to
22  the Internet Archive?
23    MR. BRIDGES:  Objection, vague and
24  ambiguous.
25    THE WITNESS:  We have no contracts with

28

1  the Internet Archive.  I am a registered user of
2  the Internet Archive, which you, of course, could
3  also be.
4  BY MR. FEE:
5    Q   Do you have any ability to post things to
6  the Internet Archive in a manner that would be
7  different than an ordinary member of the public?
8    MR. BRIDGES:  Objection, lacks foundation,
9  vague and ambiguous.
10    THE WITNESS:  There --
11    MR. BRIDGES:  And to a certain extent,
12  it's hypothetical about how members of the public
13  would have access.
14    THE WITNESS:  I'm a long-time user of the
15  Internet Archive, and I do have administrator
16  privileges, as do many other people.
17  BY MR. FEE:
18    Q   How did you obtain administrator
19  privileges for the Internet Archive?
20    A   Oh, gosh.  I think I got them in 1997 or
21  1998.
22    MR. BRIDGES:  That is not what his
23  question was.
24    THE WITNESS:  Okay.
25    MR. BRIDGES:  I'll ask the court reporter,

29

1  please, to repeat the question and I'll ask the
2  witness to answer.
3    (The reporter read the record
4    as requested.)
5    MR. BRIDGES:  Objection, vague and
6  ambiguous.
7    THE WITNESS:  I don't recall.
8  BY MR. FEE:
9    Q   I believe you just testified that you
10  believe that many people had administrator
11  privileges for the Internet Archive; is that right?
12    MR. BRIDGES:  I think misstates his
13  testimony.
14  BY MR. FEE:
15    Q   Well, is it your understanding that many
16  people have administrator privileges for the
17  Internet Archive?
18    MR. BRIDGES:  Objection, vague and
19  ambiguous.
20    THE WITNESS:  It is my belief that I --
21  there are a -- a fairly large number of people that
22  have the ability to create objects and manage those
23  objects.
24    THE REPORTER:  And manage those objects,
25  you said?

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

30

1      THE WITNESS:  And -- and manage those
2  objects, yes.
3  BY MR. FEE:
4      Q   Can you explain to me what the basis is
5  for that belief?
6      A   Well, there are a large number of
7  collections on the Internet Archive, such as the
8  Grateful Dead Archive, for example.
9      Q   Has Public.Resource.Org ever posted any
10  materials to the Internet Archive?
11      A   Yes.
12      Q   Does Public Resource have any employees
13  besides yourself?
14      A   No.
15      Q   Since its found -- founding, did Public
16  Resource have any employees other than yourself?
17      A   Yes, I had one employee.
18      Q   Who is that?
19      A   Joel Hardi, H-A-R-D-I.
20      Q   What was Joel Hardi's role at Public
21  Resource while he was there?
22      A   He was a systems administrator and
23  programmer.
24      Q   During what time frame did Mr. Hardi work
25  at Public Resource?

31

1      A   2008.
2      Q   Now, besides yourself and Mr. Hardi, there
3  have never been any employees of Public Resource?
4      A   No.
5      Q   That's probably a poorly worded question.
6  Let me ask that one more time to make sure we're
7  clear.
8          Can you identify any employees besides
9  yourself and Mr. Hardi that have ever been employed
10  by Public Resource?
11      A   No.
12      Q   Does Public Resource retain any
13  independent consultants in connection with its work?
14      MR. BRIDGES:  Objection, vague and
15  ambiguous.
16      THE WITNESS:  We have some contractors
17  that work for us.
18  BY MR. FEE:
19      Q   Okay.
20      MR. BRIDGES:  All right.  Again, I'll ask
21  you to --
22      THE WITNESS:  Yes, sir.
23      MR. BRIDGES:  -- answer his question.
24      THE WITNESS:  No.
25  BY MR. FEE:

32

1      Q   Public Resource retains contractors; is
2  that correct?
3      A   Yes.
4      Q   Can you identify what contractors Public
5  Resource currently is working with?
6      A   Yes, I can.
7      Q   Who are those persons or companies?
8      A   Currently?
9      Q   Yes.
10      A   Mike D. Kail, K-A-I-L, is our systems
11  administrator and Point.B Studio, Point period B
12  Studio, is a contractor.  David Halperin is of
13  counsel.
14      THE REPORTER:  H-A-L?
15      THE WITNESS:  H-A-L-P-E-R-I-N.
16  BY MR. FEE:
17      Q   Any other contractors currently?
18      A   That's it.
19      Q   Besides the current contractors, can you
20  identify any other past contractors of Public
21  Resource?
22      A   A firm called HTC.
23      Q   Any others?
24      A   I don't think so.
25      Q   Mr. Malamud, is it your understanding that

33

1  you're testifying today on behalf of Public
2  Resource?
3      A   Yes.
4      Q   Are you represented -- is Public Resource
5  represented by counsel today?
6      A   Yes.
7      Q   Can you identify Public Resources' counsel
8  at the deposition today?
9      A   Currently present are Mr. Bridges, Corynne
10  McSherry and Mr. Becker.
11      Q   Did you do anything to prepare for your
12  deposition today to testify on behalf of the
13  corporation?
14      A   I reviewed the subpoena.
15      MR. BRIDGES:  Objection.  He asked you --
16  I'm sorry.
17      THE WITNESS:  Yes.
18      MR. BRIDGES:  He asked you a question, did
19  you do anything.
20      THE WITNESS:  Yes.
21  BY MR. FEE:
22      Q   What did you do?
23      A   I reviewed the subpoena.
24      Q   Anything else?
25      A   I reviewed my electronic mail.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

34

1    Q   Anything else?
2    A   I reviewed our finances.
3    Q   Anything else?
4    A   I think that's it.
5    Q   Did you have any meetings with any persons
6  in connection with your preparation to testify
7  today?
8         MR. BRIDGES:  I will -- I'll acknowledge
9  that he met with counsel and I'll ask him not to
10  divulge the contents of any communications with
11  counsel on the grounds that it's covered by the
12  attorney-client privilege, and I would instruct the
13  witness not to divulge the contents of any
14  attorney-client communication.
15  BY MR. FEE:
16    Q   Is it correct that you met with counsel to
17  prepare for your deposition today?
18    A   I met with counsel.
19    Q   Okay.  When was that meeting?
20    A   Yesterday.
21    Q   Were there any other meetings prior to
22  yesterday?
23    A   Two weeks ago, I think.
24    Q   Were there any other meetings that were in
25  connection --

35

1         MR. BRIDGES:  His question was were there
2  any other.  He did not say when were other
3  meetings.  Were there any other meetings?
4  BY MR. FEE:
5    Q   Besides the meeting yesterday and the
6  meeting two weeks ago, did you have any other
7  meetings with counsel to prepare for your deposition
8  testimony today?
9    A   No, I did not.
10    Q   Besides meetings with counsel, did you
11  have meetings with any other persons to prepare to
12  testify for your deposition today?
13    A   No, I did not.
14    Q   For example, you didn't meet with or speak
15  with -- well, let me ask -- take a step back.
16         Besides your meetings with counsel, did
17  you have any other conversations or communications
18  with counsel in order to prepare for your deposition
19  today?
20         MR. BRIDGES:  I'm going -- I'm going to
21  actually instruct him not to answer that question.
22         MR. FEE:  You're going to instruct him not
23  to answer if he --
24         MR. BRIDGES:  Yeah, because it's --
25         MR. FEE:  -- had any communications?

36

1         MR. BRIDGES:  It's --
2         MR. FEE:  I didn't ask for the substance
3  of the communications.
4         MR. BRIDGES:  I understand, but I'm -- I'm
5  going to instruct him on that for the reasons that
6  I'm going to maintain -- to maintain the privilege.
7         MR. FEE:  Can you explain how he's unable
8  to disclose whether or not a communication took
9  place?
10         MR. BRIDGES:  Because I think there is a
11  question as to whether certain conversations were
12  about a case generally or just about the
13  deposition.  If you want to ask him about whether
14  there were any other conversations purely about the
15  deposition, you may ask that question.  I won't
16  object.
17         MR. FEE:  Okay.
18         MR. BRIDGES:  I'm not going to allow any
19  questions beyond that.
20  BY MR. FEE:
21    Q   Can you identify -- well, strike that.
22         Are there any communications that you're
23  aware of besides the meetings that you've already
24  identified today in connection with your preparation
25  for testifying today?

37

1         MR. BRIDGES:  So I'm going to object to
2  that.  If you want to ask him if there were any
3  other communications purely about the deposition,
4  feel free.
5         I'm sorry.  I need -- I need a short
6  break.  I've got a call.
7         THE VIDEOGRAPHER:  Going off the record.
8  The time is 10:39 a.m.
9         (Recess taken.)
10         THE VIDEOGRAPHER:  Back on the record.
11  The time is 10:40 a.m.
12         MR. FEE:  And before the break, Andrew, I
13  just want to make sure the record is clear.  Were
14  you instructing the witness not to answer the
15  question I just asked?
16         MR. BRIDGES:  Yeah, because as I said, if
17  you want to ask him if he had questions purely
18  about the deposition, totally fair game, but if
19  you're going to start asking about other
20  conversations or if your question embraces
21  something that's broader than that, where it would
22  start to veer into other topics, then I'm asserting
23  the question -- I'm asserting the privilege and
24  instructing.
25         So ask him that question and you'll get an

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

38

1    answer and no objection from me.
2        MR. FEE:  I think I did just ask him that
3    question, but I'll ask it one more time.
4    BY MR. FEE:
5        Q   Beside the communications that you've
6    already talked about today, can you identify any
7    other communications that you had to prepare for
8    your deposition today?
9        MR. BRIDGES:  That's still not the
10   question I was suggesting --
11       MR. FEE:  Are you instructing him not to
12   answer that question?
13       MR. BRIDGES:  Yeah.
14       MR. FEE:  Okay.  On privilege grounds?
15       MR. BRIDGES:  Yeah.  If you ask him if he
16   had any other -- any other conversations purely
17   about the deposition, I'm not going to -- I'm not
18   going to object to that.  And that's not what
19   you're asking him.
20       MR. FEE:  So your position is I have to
21   say "purely"?  Is that --
22       MR. BRIDGES:  It has to be clear that -- I
23   don't care what the word is, but it has to be a
24   question about whether it was a conversation purely
25   about the deposition.

39

1    BY MR. FEE:
2        Q   You're going to follow your counsel's
3    instruction and not answer that question?
4        A   I will always follow my counsel's
5    instructions.
6        Q   Okay.  Did you meet with or have any
7    communications with Rebecca Malamud in preparing for
8    your deposition today?
9        A   No.
10       Q   When's the last time you had any
11   communication with Ms. Malamud?
12       A   Yesterday.
13       Q   Did you discuss this litigation at all
14   during that conversation?
15       A   No.
16       Q   And was that conversation via telephone?
17       A   No.
18       Q   Was it e-mail?
19       A   Electronic mail.
20       Q   Did you have any discussions with any of
21   the contractors or current or former employees that
22   you had identified today to prepare for your
23   deposition today?
24       A   No.
25       Q   Mr. Malamud, I'm going to hand you what's

40

1    been marked as Exhibit 32.  It's the notice of a
2    30(b)(6) deposition for defendant
3    Public.Resource.Org, Inc.
4        (Exhibit 32 marked for identification.)
5        THE REPORTER:  Kevin, did we just mark
6    that?
7        MR. FEE:  Yes.
8        THE REPORTER:  As 32?
9        MR. FEE:  32.
10       THE REPORTER:  Okay.  Thank you.
11       THE WITNESS:  Yes, sir.
12   BY MR. FEE:
13       Q   Earlier you said you had reviewed a
14   subpoena in preparing for your deposition.  Do you
15   recall that?
16       A   Yes, I do.
17       Q   Okay.  Is this the document that you were
18   referencing as a subpoena?
19       A   It appears to be.
20       Q   It wasn't a trick question.  I'm just
21   asking you to identify --
22       A   Yeah, it appears to be.
23       Q   All right.  If you turn to the seventh
24   page of this document, please, it has a heading in
25   the middle of the page that says Topics on Which

41

1    Examination Is Required.  Did you review these
2    topics yesterday?
3        A   Yes, I did.
4        Q   Did you prepare to testify on behalf of
5    Public Resource on these topics?
6        A   Yes, I did.
7        Q   Were there any topics for which you felt
8    you were unprepared to testify on behalf of Public
9    Resource?
10       A   I'm not sure what you mean by
11   "unprepared."  I -- I -- I did review the list
12   carefully and I -- I believe I'm -- I'm ready to
13   discuss these topics.
14       Q   And you are authorized to speak on behalf
15   of Public Resource on these topics?
16       A   I am indeed.
17       Q   Now, in connection with preparing to
18   testify on the topics listed in Exhibit 32, did you
19   review any particular documents?
20       MR. BRIDGES:  Objection, vague and
21   ambiguous.
22       THE WITNESS:  I believe I already answered
23   that.  You had asked me what I reviewed in
24   preparation.
25   BY MR. FEE:

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

42

1    Q    And you -- you said you reviewed Exhibit
2  32, correct?
3    A    (Witness nodding.)
4    Q    You have to answer verbally.
5    A    Yes.
6    Q    Okay.  You said you reviewed your e-mails,
7  correct?
8    A    Some of them, yes.
9    Q    Okay.  And then some documents regarding
10  the finances of Public Resource?
11    A    Yes.
12    Q    And nothing else?
13    A    I believe that's correct.
14    Q    How did you go about identifying which
15  e-mails you would review in order to prepare for
16  your testimony today?
17    A    I looked at a small subset of the
18  documents that were disclosed to -- as part of the
19  disclosure process.
20    Q    Did you select those documents yourself?
21    A    Yes, I did.
22    Q    How did you go about identifying which
23  documents to review?
24    A    I pulled up the first PDF file and I
25  started looking through it.

43

1    Q    And is it your understanding that you're
2  here to testify on behalf of Public Resource on all
3  38 topics in Exhibit 32?
4    A    Yes.
5    Q    Mr. Malamud, can you tell me when you
6  first became interested in the issue of the
7  availability of documents that have been
8  incorporated by reference by some governmental
9  agency?
10    MR. BRIDGES:  By "you," are you referring
11  to Public.Resource.Org, the deponent at this
12  deposition?
13    MR. FEE:  Yes.
14  BY MR. FEE:
15    Q    I'm asking you in your corporate capacity.
16    A    2008.
17    Q    How did Public.Resource.Org first become
18  interested in this issue?
19    MR. BRIDGES:  Objection, vague and
20  ambiguous.
21    THE WITNESS:  We began Public.Resource.Org
22  by posting legal materials such as Court of Appeals
23  opinions that were not available on the Internet at
24  the time.
25  BY MR. FEE:

44

1    Q    All right.  And did posting those Court of
2  Appeals opinions somehow lead you to a desire to
3  start posting standards incorporated by reference?
4    MR. BRIDGES:  Objection, lacks foundation,
5  vague and ambiguous, argumentative.
6    THE WITNESS:  Legal materials, the law,
7  includes court opinions as well as statutes and
8  regulations, and that was the area that we began
9  working in, was to make the law available to
10  citizens in the United States.
11  BY MR. FEE:
12    Q    And at some point in time Public Resource
13  became interested in making standards incorporated
14  by reference by statutes or regulations available on
15  the Internet; is that right?
16    MR. BRIDGES:  Objection, vague and
17  ambiguous.
18    THE WITNESS:  We posted the California
19  Code of Regulations, which includes Title 24, which
20  are the public safety standards for the state of
21  California.
22
23  BY MR. FEE:
24    Q    At some point in time did Public Resource
25  become interested in posting the standards that were

45

1  incorporated by reference by Title 24?
2    A    I think I just --
3    MR. BRIDGES:  Objection, lacks foundation,
4  vague and ambiguous.
5    THE WITNESS:  I -- I think I answered that
6  yes, in 2008.
7  BY MR. FEE:
8    Q    And can you explain to me how Public
9  Resource first decided that it was going to start
10  posting standards incorporated by reference by
11  statutes as opposed to just the statutes or
12  regulations themselves?
13    MR. BRIDGES:  Objection, vague and
14  ambiguous.
15    THE WITNESS:  Title 24 is part of the
16  California Code of Regulations and it's one of
17  the -- the laws that are in effect in the state of
18  California.
19  BY MR. FEE:
20    Q    I understand that.  And Title 24, just so
21  we're clear, right, is -- is a statute in
22  California?  Is that your understanding?
23    A    No, it's not a statute.  It's a
24  regulation.
25    Q    Statute.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

46

1      A   It's a regulation.
2      Q   Okay.  Okay.  So the regulations that are
3   written by governmental agencies in -- in
4   California, correct?
5          MR. BRIDGES:  Objection, lacks foundation,
6   argumentative, assumes facts not in evidence --
7          THE WITNESS:  Title --
8          MR. BRIDGES:  -- and vague and ambiguous.
9          THE WITNESS:  Title 24 is part of the
10   California Code of Regulations, which are the
11   regulations promulgated by the state.
12   BY MR. FEE:
13      Q   And Title 24 incorporates standards
14   written by private organizations, correct?
15          MR. BRIDGES:  Objection, vague and
16   ambiguous.
17          THE WITNESS:  Title 24 is --
18          MR. BRIDGES:  And -- I'm sorry -- and
19   lacks foundation, assumes facts not in evidence.
20          THE WITNESS:  Title 24 is a publication of
21   the state of California, part of the California
22   Code of Regulations.
23   BY MR. FEE:
24      Q   And it references standards that are not
25   written by any California government employee,

47

1   correct?
2          MR. BRIDGES:  Objection, maybe -- may lack
3   competence, calls for speculation, vague and
4   ambiguous, lacks foundation.
5          THE WITNESS:  Title 24 is published by
6   the -- by the state of California.
7   BY MR. FEE:
8      Q   Right.  Did -- did Title 24 refer to any
9   ASTM standards?
10      A   Refers to, do you -- you mean in -- in
11   the -- I don't know what you mean by "refers to."
12      Q   Does it incorporate by reference any ASTM
13   standard, Title 24?
14      A   Title 24 doesn't incorporate anything by
15   reference.  It's a publication of the state of
16   California.
17      Q   Does Title 24 refer in the text to any
18   ASTM standard?
19          MR. BRIDGES:  Objection, vague and
20   ambiguous.
21          THE WITNESS:  There are numerous
22   references in the -- in Title 24 to ASTM standards
23   in the building code, for example.
24   BY MR. FEE:
25      Q   The ASTM standards themselves are not

48

1   reproduced in Title 24, correct?
2      A   No.
3      Q   I asked a bad question again.
4          Is it true that the ASTM standards are not
5   actually typed into Title 24?
6          MR. BRIDGES:  May lack competence, vague
7   and ambiguous.
8          THE WITNESS:  I don't believe they are.
9   BY MR. FEE:
10      Q   And at some point in time did you decide
11   that you wanted to make standards such as ASTM
12   standards that were referenced in Title 24 available
13   on the Internet?
14          MR. BRIDGES:  Lacks foundation, vague and
15   ambiguous, argumentative.
16          THE WITNESS:  I -- I never -- no.
17   BY MR. FEE:
18      Q   At some point in time did you decide that
19   Public Resource should make standards that are
20   incorporated by reference in Title 24 available on
21   Public Resources' website or websites?
22          MR. BRIDGES:  Objection, lacks foundation,
23   vague and ambiguous, argumentative.
24          THE WITNESS:  Again, I think you're
25   confusing incorporation by reference with the

49

1   publication of the state of California, which is
2   Title 24.  There are other places that incorporate
3   things by reference, but Title 24 is -- is a
4   publication of the building, electrical, fire and
5   other public safety codes.
6          MR. BRIDGES:  Focus on just answering his
7   questions.
8          THE WITNESS:  Yes.  Fine.
9   BY MR. FEE:
10      Q   Maybe we should take a step back.
11          You do at Public Resource have ASTM
12   standards available for the public to view, correct?
13          MR. BRIDGES:  Objection, argumentative,
14   vague and ambiguous, lacks foundation.
15          MR. FEE:  Just go with form.  It covers
16   all those.
17   BY MR. FEE:
18      Q   Go ahead.
19      A   Repeat that question for me, please.
20          (The reporter read the record
21          as requested.)
22          MR. BRIDGES:  And then I had an objection,
23   but I thought --
24          THE REPORTER:  Yes.
25          MR. BRIDGES:  I thought there was a later

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

50

1  question.
2      MR. FEE:  No.  I just suggested you could
3  go with form.  You looked like you were still
4  thinking about other ones.
5      MR. BRIDGES:  I'm sorry.  You just
6  suggested that?
7      MR. FEE:  It doesn't matter.
8      MR. BRIDGES:  I can't hear you that well.
9      MR. FEE:  Move on.
10     THE WITNESS:  Yes.
11     MR. BRIDGES:  I'm sorry.  I don't know --
12  I didn't know that there was a -- a question
13  pending enough to know whether to make an
14  objection, so can you please repeat to me what the
15  last question is in the transcript --
16     THE REPORTER:  Sure.  That was --
17     MR. BRIDGES:  -- the last statement from
18  Mr. Fee?
19     THE REPORTER:  I read --
20     MR. BRIDGES:  The last statement from
21  Mr. Fee.  That wasn't the question.
22     THE REPORTER:  Oh, the last -- that wasn't
23  a question and you asked for a question.
24         (The reporter read the record
25          as requested.)

51

1  BY MR. FEE:
2      Q   Why don't you explain to me why you think
3  Public Resource permitted to post ASTM standards on
4  its website?
5      MR. BRIDGES:  Objection, may call for a
6  legal conclusion, vague and ambiguous, lacks
7  foundation.
8      THE WITNESS:  In the United States the --
9  the law is owned by the people and has no copyright
10  and people are free to read and speak the law to
11  inform other citizens.
12  BY MR. FEE:
13     Q   And is it your belief that at least
14  certain ASTM standards are the law?
15     MR. BRIDGES:  Same objections.
16     THE WITNESS:  Some ASTM standards are
17  incorporated by reference into the Code of Federal
18  Regulations and, therefore, are the law.
19  BY MR. FEE:
20     Q   Prior to making any of the plaintiffs'
21  standards available on a Public Resource website,
22  were you aware of any instances where persons were
23  unable to obtain access to any of the standards that
24  are now available on your website?
25     MR. BRIDGES:  Objection, lacks foundation,

52

1  vague and ambiguous.
2      THE WITNESS:  Yes.  Me, for example.
3  BY MR. FEE:
4      Q   Besides yourself, can you identify any
5  other persons who are unable to access one of
6  plaintiffs' standards prior to you posting on your
7  website?
8      MR. BRIDGES:  Same objections.
9      THE WITNESS:  Yes.  I did meet a lot of
10  people in the state of California that were unable
11  to access California's Title 24.
12  BY MR. FEE:
13     Q   Can you identify the names of any of these
14  people?
15     A   The chief building inspector for Sonoma
16  County was a gentleman by the name of Shems,
17  S-H-E-M-S, Peterson, P-E-T-E-R-S-O-N, I believe.
18  And Mr. Peterson told me that there were many people
19  that he dealt with as a building inspector who were
20  unable to access California's Title 24.
21     MR. BRIDGES:  I'll ask you to listen to
22  his question and answer his question.
23  BY MR. FEE:
24     Q   Can you identify any other persons that
25  you're aware of that you believe had trouble

53

1  accessing one of the plaintiffs' standards that were
2  incorporated by reference --
3      MR. BRIDGES:  Objection.
4  BY MR. FEE:
5      Q   -- prior to them being made available on
6  your website?
7      MR. BRIDGES:  Objection, lacks foundation,
8  vague and ambiguous.
9      THE WITNESS:  No, not by name.
10  BY MR. FEE:
11     Q   Now, this Shamus -- or Shames you said his
12  name was?
13     A   Shems.
14     Q   Shems.  Shems Peterson, did he tell you
15  that he couldn't access a particular ASTM standard
16  that's now available on Public Resource's website?
17     MR. BRIDGES:  Objection, vague and
18  ambiguous.
19     THE WITNESS:  No, we were referring to
20  California's Title 24, not ASTM standards, sir.
21  BY MR. FEE:
22     Q   So Mr. Peterson didn't complain about
23  accessing any of the plaintiffs' standards; is that
24  right?
25     MR. BRIDGES:  Objection, lacks foundation,

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

54

1    argumentative, vague and ambiguous.
2         THE WITNESS:  California Title 24 includes
3    at least one of the plaintiffs' standards.
4    BY MR. FEE:
5         Q    Is that NFPA?
6         A    Yes.
7         Q    So Mr. Peterson never complained about
8    accessing either ASTM or ASHRAE standards to you?
9         MR. BRIDGES:  Objection, lacks foundation,
10   vague and ambiguous.
11        THE WITNESS:  I don't recall.
12   BY MR. FEE:
13        Q    Can you identify any person who has ever
14   complained to you about an inability to access an
15   ASTM standard?
16        MR. BRIDGES:  Objection, vague and
17   ambiguous.
18        THE WITNESS:  Yes.
19   BY MR. FEE:
20        Q    Who?
21        A    I've received electronic mail from people
22   complaining about ASTM standards.
23        Q    Can you identify any of those persons?
24        A    No.  I believe it's in the material we
25   disclosed, though.

55

1         Q    Did -- did these people not have Internet
2    access, to the best of your knowledge?
3         MR. BRIDGES:  Objection, competence,
4    assumes facts not in evidence, may call for
5    speculation.
6         THE WITNESS:  They sent me electronic
7    mail.
8    BY MR. FEE:
9         Q    So it suggests that they have access to
10   the Internet, then, correct?
11        A    Yes.
12        Q    And were they aware that ASTM has a
13   reading room online that has standards incorporated
14   by reference on them?
15        MR. BRIDGES:  Objection, lacks foundation,
16   assumes facts not in evidence, argumentative, vague
17   and ambiguous.
18        THE WITNESS:  I believe electronic mail,
19   at least some of that was received before the
20   reading room took operation.
21   BY MR. FEE:
22        Q    So besides any e-mails that you've
23   received that were produced in this case, can you
24   identify any other persons who had troubles
25   accessing ASTM standards prior to your posting those

56

1    standards on Public Resource's website?
2         MR. BRIDGES:  Objection, vague and
3    ambiguous.
4         THE WITNESS:  I had quite a few meetings
5    with government officials in which they were
6    complaining about lack of availability of standards
7    incorporated by reference.
8    BY MR. FEE:
9         Q    Were they referring to ASTM standards?
10        A    Yes.
11        Q    Who?
12        A    I had several meetings at OSHA, for
13   example.
14        Q    What persons at OSHA complained about
15   access to ASTM standards?
16        A    I met with the administrator of OSHA, a
17   Dr. David Michaels, and his staff, and it was one of
18   his staff members who said that lack of availability
19   is -- is an issue for the agency.
20        Q    Do you know that person's name?
21        A    No.
22        Q    Did that person say he was unable to
23   access ASTM standards?
24        A    He said it was an issue when it came to
25   enforcement more generally.

57

1         Q    So it wasn't a problem he was having
2    accessing the standard as far as you recall?
3         MR. BRIDGES:  Objection, may call for
4    speculation.
5         THE WITNESS:  I don't know.
6    BY MR. FEE:
7         Q    He didn't tell you that he was having
8    trouble personally accessing ASTM standards?
9         MR. BRIDGES:  Lacks foundation, vague and
10   ambiguous.
11        THE WITNESS:  He did not say that
12   specifically the way you did.  He complained about
13   access.
14   BY MR. FEE:
15        Q    When was the first time that you decided
16   to make a copy of one of the plaintiffs' standards?
17        MR. BRIDGES:  Objection.  I'm interpreting
18   you throughout as referring to Public.Resource.Org,
19   but also argumentative and vague and ambiguous.
20        THE WITNESS:  Do you mean a printed copy,
21   sir?
22
23   BY MR. FEE:
24        Q    Any copy, printed or electronic.
25        A    In 2012.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

58

1    Q   How did Public Resource make the decision
2  to make a copy of one of plaintiffs' standards in
3  2012?
4        MR. BRIDGES:  Vague and ambiguous.
5        THE WITNESS:  What do you mean, how did I
6  make the decision?  I -- I made the decision.
7  BY MR. FEE:
8    Q   Right.  You made the decision personally,
9  Carl Malamud?
10   A   Yes.
11   Q   Why did you make that decision?
12   A   Because I felt incorporation by reference
13 at the federal level was an important issue.
14   Q   Did you just come to that conclusion in
15 2012?
16       MR. BRIDGES:  Objection, argumentative,
17 vague and ambiguous.
18       THE WITNESS:  No, I had studied the issue
19 very carefully for several years.
20 BY MR. FEE:
21   Q   Okay.  And why, then, in 2012 did you
22 finally start making copies of plaintiffs'
23 standards?
24       MR. BRIDGES:  Objection, argumentative and
25 lacks foundation.

59

1        THE WITNESS:  Because it's when I decided
2  to do it.
3  BY MR. FEE:
4    Q   There was no triggering event that you
5  could recall sitting here today?
6    A   I had spent a lot of 2011 studying the
7  incorporation by reference issue as part of my
8  membership of the Administrative Conference of the
9  United States.
10   Q   Can you describe how Public Resource went
11 about making the first copies of one or more of
12 plaintiffs' standards in 2012?
13       MR. BRIDGES:  Objection, vague.
14       THE WITNESS:  I purchased 73 standards,
15 scanned them, printed them and bound them with what
16 are known as Chicago screws, which are brass
17 screws.
18 BY MR. FEE:
19   Q   Before you made those copies of the 73
20 standards, did you obtain or did Public Resource
21 obtain any legal opinion with respect to that
22 matter?
23       MR. BRIDGES:  Objection.  Instruct not to
24 answer on the grounds of attorney-client privilege.
25 BY MR. FEE:

60

1    Q   Are you going to follow that instruction?
2    A   Absolutely.
3    Q   Where did Public Resource purchase the 73
4  standards from?
5    A   Off the Internet through a variety of
6  sources.  I believe we furnished our invoices to
7  you.
8    Q   Were any of the standards purchased
9  directly from one of the plaintiffs?
10   A   Yes.
11   Q   Which standards were purchased directly
12 from the plaintiffs?
13   A   I don't recall precisely, but I believe
14 NFPA and perhaps ASTM.
15   Q   In the original -- or strike that.
16       The source copies for the 73 standards
17 that you acquired on -- in connection with this
18 project were all hard copies; is that right?
19   A   Yes.
20   Q   And you said you scanned the -- the --
21 standards that you acquired?
22   A   I did.
23   Q   And Carl Malamud himself did all the
24 scanning?
25   A   I personally did it.

61

1    Q   And you did the printing and binding as
2  well?
3    A   Absolutely.
4    Q   What did you do those with those 73
5  standards?
6        MR. BRIDGES:  Objection, vague and
7  ambiguous.
8        THE WITNESS:  I sent them to ten standards
9  development organizations and to seven government
10 officials.
11       THE REPORTER:  Seven or --
12       THE WITNESS:  Seven.
13 BY MR. FEE:
14   Q   Why did you do that?
15   A   I raised a number of issues in the seven
16 letters to the government officials regarding the
17 availability of standards incorporated by reference
18 and I requested comment back from the ten standards
19 development organizations about those issues.
20   Q   Did you receive any responses from any of
21 the recipients of the copies of the standards that
22 you circulated in 2012?
23       MR. BRIDGES:  Objection, vague and
24 ambiguous.
25       THE WITNESS:  Yes, I did.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

62

1  BY MR. FEE:
2      Q   From whom did you receive responses?
3      A   The Archivist of the United States, the
4  chairman of the Federal Trade Commission and
5  Chairman Darrell Issa of the House of
6  Representatives.
7          THE REPORTER:  I-S?
8          THE WITNESS:  I-S-S-A.
9  BY MR. FEE:
10     Q   Are those all the responses you received?
11         MR. BRIDGES:  Objection, vague and
12  ambiguous.
13         THE WITNESS:  Two organizations returned
14  the boxes.
15  BY MR. FEE:
16     Q   What organizations?
17     A   The White House, British Standards
18  Institution and maybe the National Sanitation
19  Foundation.  I forget.
20     Q   Can you describe the content of the
21  responses from the three people who responded to
22  your delivery of the 73 standards?
23     A   They loved the packaging.
24     Q   Do you recall anything else about any of
25  their responses?

63

1      A   No, that was it.
2          Oh, I'm sorry.  I got e-mail from
3  Mr. Cooper at ANSI as well.
4      Q   Do you recall the substance of that
5  e-mail?
6      A   I think he liked the packaging.
7          THE REPORTER:  You said that he's from
8  ANSI?
9          THE WITNESS:  A-N-S-I, American National
10  Standards Institution -- or Institute.
11  BY MR. FEE:
12     Q   When you were purchasing the 73 standards,
13  why did you decide to buy paper copies as opposed
14  to electronic copies?
15         MR. BRIDGES:  Objection, vague, ambiguous,
16  relevance.
17         THE WITNESS:  It's by far the easiest way
18  to process them.
19  BY MR. FEE:
20     Q   Can you explain why it would be easier to
21  process paper documents than to, for example, print
22  electronic copies?
23     A   A paper document you throw it on a scanner
24  and you scan it.
25     Q   So you take the paper and make an

64

1  electronic copy as opposed to just having the
2  electronic copy?
3          MR. BRIDGES:  I'll object -- I object.
4  Argumentative terminology, vague and ambiguous.
5          THE WITNESS:  Yes, you scan it and make an
6  electronic copy.
7  BY MR. FEE:
8      Q   So wouldn't it have been easier to
9  purchase electronic copies from the standards
10  organizations?
11         MR. BRIDGES:  Objection, lacks foundation,
12  vague and ambiguous, argumentative.
13         THE WITNESS:  No, it wouldn't be.
14  BY MR. FEE:
15     Q   And your decision to buy paper copies as
16  opposed to electronic copies was not in order to
17  avoid any terms of use in connection with a license
18  agreement of an electronic copy?
19         MR. BRIDGES:  Objection, lacks foundation,
20  vague and ambiguous.
21         THE WITNESS:  Both terms of use and the
22  way a PDF document are packaged make them much
23  harder to work with.
24  BY MR. FEE:
25     Q   If you had purchased an electronic copy of

65

1  the standards from the organizations, then it would
2  have been more accurate, wouldn't it have?
3          MR. BRIDGES:  Objection, vague and
4  ambiguous.
5          THE WITNESS:  No, it's the same document.
6  BY MR. FEE:
7      Q   When you made any of the purchases that
8  you identified as direct purchases from one or more
9  of the plaintiffs, did you agree to any terms of --
10  or conditions in connection with those purchases?
11         MR. BRIDGES:  Objection, lacks foundation,
12  may call for a legal conclusion, assumes facts not
13  in evidence, argumentative, vague and ambiguous.
14         THE WITNESS:  And I'm sorry.  Would you
15  repeat that question?
16  BY MR. FEE:
17     Q   When you made any of the purchases that
18  you identified as direct purchases from one or more
19  of the plaintiffs, did you agree to any terms or
20  conditions in connection with those purchases?
21         MR. BRIDGES:  Same objections.
22         THE WITNESS:  I -- I believe there may
23  have been terms and conditions.
24  BY MR. FEE:
25     Q   Do you recall what the terms and

66

1  conditions were for any of those purchases?
2        MR. BRIDGES:  Objection, lacks foundation,
3  vague and ambiguous.
4        THE WITNESS:  No, I don't recall right
5  now.
6  BY MR. FEE:
7     Q   Do you recall which organizations you may
8  have entered into a terms and conditions agreement
9  with?
10       MR. BRIDGES:  Objection, lacks foundation,
11  calls for speculation, may call for a legal
12  conclusion, vague and ambiguous.
13       THE WITNESS:  So as part of the checkout
14  process for purchasing a standard, I believe some
15  of the organizations had a -- a terms of use.
16  BY MR. FEE:
17     Q   Do you recall which organizations?
18     A   Well, I purchased standards directly, like
19  I said before, from NFPA and ASTM, and -- and I -- I
20  believe they probably had terms of use.
21       MR. BRIDGES:  I'll ask the witness not to
22  speculate.  If you -- please testify as to what you
23  recall.
24       THE WITNESS:  Okay.  I -- I --
25       MR. BRIDGES:  Only testify as to what you

67

1  know.
2        THE WITNESS:  I -- I do not recall
3  precisely, no.
4        MR. BRIDGES:  You know, we've been going a
5  little bit over an hour and I need to make a --
6  check in --
7        MR. FEE:  Yeah, we can take a break now.
8  That's fine.
9        MR. BRIDGES:  Okay.
10       THE VIDEOGRAPHER:  We're going off the
11  record.  The time is 11:13 a.m.
12           (Recess taken.)
13       THE VIDEOGRAPHER:  Back on the record, the
14  time is 11:25 a.m.
15  BY MR. FEE:
16     Q   Mr. Malamud, earlier you had said that the
17  terms of use and the way that PDF documents are
18  packaged made them harder to work with.  Do you
19  recall our discussion along those lines?
20     A   Yes, I do.
21     Q   Can you explain to me how the terms of use
22  made it harder to work with electronic documents
23  than paper documents?
24       MR. BRIDGES:  Objection, may call for a
25  legal conclusion, vague and ambiguous.

68

1        THE WITNESS:  I wanted to focus on the
2  core issue of incorporation by reference of the
3  standards in the law and not confuse that with
4  terms of use.
5  BY MR. FEE:
6     Q   So the terms of use didn't make the
7  processing of the document itself more difficult, it
8  made you making your point more difficult; is that
9  fair to say?
10       MR. BRIDGES:  Objection, misstates the --
11  misstates the testimony, argumentative, lacks
12  foundation.
13       THE WITNESS:  Difficulty of processing is
14  the format of the PDF files that you purchase
15  electronically.
16  BY MR. FEE:
17     Q   Okay.  So the actual processing of a PD --
18  of an electronic document as a PDF made it difficult
19  to make paper copies?
20       MR. BRIDGES:  Objection, lacks foundation,
21  I think it misstates testimony, vague and
22  ambiguous, argumentative.
23       THE WITNESS:  And I'm sorry.  Could you
24  repeat that question for me?
25  BY MR. FEE:

69

1     Q   I just want to make sure I understand your
2  testimony about the difficulty in processing the
3  PDFs.  You said that the way they are packaged
4  somehow made it more difficult, correct?
5     A   Yes.
6     Q   Can you explain that to me?
7     A   Yes.  They have digital rights management.
8     Q   Are there any other issues with respect to
9  the way PDFs are packaged other than digital rights
10  management that made it difficult for you to process
11  an electronic file for your copies of the 73
12  standards?
13       MR. BRIDGES:  Objection, vague and
14  ambiguous, lacks foundation.
15       THE WITNESS:  Again, I prefer paper
16  copies.  I just find them easier to process.
17  BY MR. FEE:
18     Q   Earlier we were talking a bit about people
19  who had identified access problems with respect to
20  standards that were incorporated by reference.  Do
21  you recall that?
22     A   Yes, I do.
23     Q   And you had identified, I believe, a
24  couple of governmental officials who you said had
25  identified an access problem; is that right?

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

70

1    A   Yes.
2    Q   Are you aware of any access problem that
3  had been suffered by a person who was actually being
4  governed or regulated by a standard that was
5  incorporated by reference?
6        MR. BRIDGES:  Objection, lacks foundation,
7  argumentative, vague and ambiguous.
8        THE WITNESS:  Yes.
9  BY MR. FEE:
10   Q   Who?
11   A   Mr. Peterson explained that there were
12 several homeowners and --
13       MR. BRIDGES:  His question was --
14       THE WITNESS:  I -- I don't know any
15 specific names.
16 BY MR. FEE:
17   Q   Are you aware of any evidence that any
18 person who is being governed by a standard written
19 by one of the plaintiffs actually had trouble
20 accessing one of the plaintiffs' standards?
21       MR. BRIDGES:  Lacks foundation, assumes
22 facts not in evidence, argumentative, vague and
23 ambiguous.
24       THE WITNESS:  So lack of availability is
25 certainly a general problem that has been discussed

72

1  access.
2    Q   Any others that you can identify?
3        MR. BRIDGES:  Same -- same objections as
4  to my earlier -- as -- as my earlier objections.
5        THE WITNESS:  Again, in the dockets there
6  were a large number of groups that identified
7  access problems.
8  BY MR. FEE:
9    Q   But the only individual that you've
10 identified is Carl Weimer; is that right?
11   A   That I --
12       MR. BRIDGES:  Same -- same objections as
13 my earlier ones.
14       THE WITNESS:  The only one identified by
15 name, yes.
16 BY MR. FEE:
17   Q   And Mr. Weimer, as you said, was the
18 executive director of Pipeline Safety Trust; is that
19 right?
20   A   Yes.
21   Q   And what did he tell you about his
22 inability to access one of the plaintiffs'
23 standards?
24       MR. BRIDGES:  Objection, lacks foundation,
25 vague and ambiguous.

71

1  in many news media reports, for example.
2  BY MR. FEE:
3    Q   Are you aware of any individuals who
4  actually had a problem accessing one of the
5  plaintiffs' standards and -- and that were governed
6  by those standards via incorporation by reference?
7        MR. BRIDGES:  All the same objections as I
8  last said.
9        THE WITNESS:  Yes, I am.
10 BY MR. FEE:
11   Q   Identify all those for me.
12   A   I don't know if I can identify all of
13 them, but can -- can I --
14   Q   Identify all that you can think of sitting
15 here right now.
16   A   Okay.  Mr. Carl Weimer is the executive
17 director of the Pipeline Safety Trust.
18       MR. BRIDGES:  You've been asked to
19 identify the individuals.  That's what he's asked
20 you to do.
21 BY MR. FEE:
22   Q   Who else.
23   A   There were a large number of submissions
24 to federal information gathering that included
25 submissions by groups that complained about lack of

73

1        THE WITNESS:  He spoke at a information
2  gathering process at PHMSA, P-H-M-S-A, which is a
3  federal government agency.
4        MR. BRIDGES:  I'll ask the witness to
5  listen to the question and to answer the question.
6        THE WITNESS:  Okay.
7  BY MR. FEE:
8    Q   So what did Mr. Weimer say about his
9  inability to access plaintiffs' standards?
10       MR. BRIDGES:  Objection, lacks foundation,
11 vague and ambiguous.
12       THE WITNESS:  He said that lack of
13 availability of the standards was a significant
14 issue for him.
15       MR. FEE:  Did he identify the lack of
16 availability of one of the plaintiffs' standards in
17 particular?
18   A   I don't recall.
19   Q   Did he explain to you or to -- this is a
20 group speech he made; is that what you said?  He
21 made a presentation?
22       MR. BRIDGES:  Objection, compound, vague
23 and ambiguous.
24       THE WITNESS:  It was testimony before a
25 federal proceeding.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

74

1  BY MR. FEE:
2     Q   During his testimony did Mr. Weimer
3  explain why he was unable to access any standards
4  through reading rooms who were purchasing copies of
5  those standards?
6        MR. BRIDGES:  Objection, lacks foundation,
7  argumentative, vague and ambiguous.
8        THE WITNESS:  I don't recall.
9  BY MR. FEE:
10    Q   Do you recall any explanation as to why
11  Mr. Weimer could not access any of the plaintiffs'
12  standards?
13        MR. BRIDGES:  Objection, lacks foundation,
14  vague and ambiguous.
15        THE WITNESS:  I don't recall.
16  BY MR. FEE:
17    Q   Do you recall any testimony about why
18  Mr. Weimer couldn't access any standard that had
19  been incorporated by reference by any governmental
20  agency?
21        MR. BRIDGES:  Objection, lacks foundation,
22  vague and ambiguous.
23        THE WITNESS:  I remember the general topic
24  of his testimony, but not the specifics.
25  BY MR. FEE:

75

1     Q   So you can't recall any circumstance that
2  prevented him from accessing any particular
3  standard?
4        MR. BRIDGES:  Objection, lacks foundation,
5  vague and ambiguous.
6        THE WITNESS:  I -- I don't recall.
7  BY MR. FEE:
8     Q   Can you identify any circumstances in
9  which any home builder, for example, was unable to
10  access standards that were incorporated by reference
11  that might be relevant to someone building a home?
12        MR. BRIDGES:  Objection, competence, may
13  call for speculation, vague and ambiguous, lacks
14  foundation.
15        THE WITNESS:  Mr. Peterson related such a
16  story.
17  BY MR. FEE:
18    Q   Any others?
19        MR. BRIDGES:  Same objections.
20        THE WITNESS:  I don't recall.
21  BY MR. FEE:
22    Q   So Mr. Peterson identified one instance in
23  which a home builder was unable to access a standard
24  as incorporated by reference?
25        MR. BRIDGES:  Same objections.

76

1        THE WITNESS:  It's in a video on our
2  website.
3  BY MR. FEE:
4     Q   And it's one home builder?
5        MR. BRIDGES:  Same objection.
6        THE WITNESS:  I -- I don't recall.
7  BY MR. FEE:
8     Q   Do you recall there being more than one
9  home builder that he referenced?
10    A   I'd have to review the transcript to see
11  if he was speaking about one or many.
12        MR. BRIDGES:  The answer (sic) is do you
13  recall.
14        THE WITNESS:  No, I don't.
15        MR. BRIDGES:  Please --
16  BY MR. FEE:
17    Q   Are you aware of any circumstances --
18        MR. BRIDGES:  I've just -- I've got to
19  instruct the witness.  Please listen carefully to
20  his questions and answer his question.
21        THE WITNESS:  Okay.
22
23  BY MR. FEE:
24    Q   Are you aware of any of the circumstances
25  that led to this home builder's inability to access

77

1  standards that he was governed by via incorporation
2  by reference?
3        MR. BRIDGES:  Objection, lacks foundation,
4  assumes facts not in evidence, vague and ambiguous,
5  argumentative.
6        THE WITNESS:  No.
7        MR. BRIDGES:  I'm sorry?
8        THE WITNESS:  No.
9  BY MR. FEE:
10    Q   Are you aware of any evidence that
11  home was actually not built due to this inability to
12  access standards incorporated by reference?
13        MR. BRIDGES:  Objection, completely lacks
14  foundation, vague and ambiguous, argumentative.
15        THE WITNESS:  No.
16  BY MR. FEE:
17    Q   Have you been looking for somebody who you
18  could identify as an example of a person who
19  suffered as a result of inability to access a
20  standard incorporated by reference?
21        MR. BRIDGES:  Objection, argumentative,
22  lacks foundation, argumentative -- or that's -- I
23  guess I said that -- vague and ambiguous.
24        THE WITNESS:  No.
25  BY MR. FEE:

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015

78

1    Q   Besides communications that you've
2  referenced earlier today, can you identify any other
3  evidence that there is a actual problem amongst the
4  public in accessing standards that are incorporated
5  by reference that were authored by one of the
6  plaintiffs in this case?
7        MR. BRIDGES: Objection, vague, ambiguous,
8  argumentative.
9        THE WITNESS: A number of government
10 officials have discussed this as -- as an issue.
11 BY MR. FEE:
12   Q   Is that the only other evidence that
13 you're aware of that indicates that there is an
14 access problem with respect to standards
15 incorporated by reference?
16       MR. BRIDGES: Same objections. I'm also
17 going to include an objection about legal
18 conclusion about evidence.
19       THE WITNESS: And I'm sorry. Could you
20 repeat that question?
21 BY MR. FEE:
22   Q   I said is that the only other evidence
23 that you're aware of that indicates that there is an
24 access problem with respect to standards
25 incorporated by reference?

79

1        MR. BRIDGES: Same objections, lacks
2  foundation, calls for a legal conclusion, assumes
3  facts not in evidence.
4        THE WITNESS: When I testified before
5  Congress, several members of Congress stood up
6  and -- and said that that was an issue that they
7  were concerned about.
8        MR. FEE: Any other evidence that you're
9  aware of on that topic?
10       MR. BRIDGES: All the same objections.
11       THE WITNESS: A large number of news media
12 pieces about this issue.
13 BY MR. FEE:
14   Q   Anything else?
15       MR. BRIDGES: Same objections.
16       THE WITNESS: No.
17 BY MR. FEE:
18   Q   No. Can you describe for me what your
19 understanding is with respect to how standards
20 development organizations create standards?
21       MR. BRIDGES: Objection, competence, vague
22 and ambiguous and -- and lacks -- sorry -- lacks
23 foundation, assumes facts not in evidence.
24       THE WITNESS: Do you have a specific
25 standards organization in mind?

80

1  BY MR. FEE:
2    Q   Well, why don't we go through the
3  plaintiffs here if you want to be more specific.
4        What do you know about how ASTM standards
5  are created?
6        MR. BRIDGES: Objection, vague and
7  ambiguous.
8        THE WITNESS: There's a lot of information
9  on their website about the process of creating ASTM
10 standards.
11       MR. BRIDGES: That didn't answer his
12 question. Please answer his question. Listen to
13 his question.
14       THE WITNESS: I -- I -- I know what I read
15 on the ASTM website.
16 BY MR. FEE:
17   Q   Can 0can you describe your understanding
18 of those materials?
19   A   There's a large number of documents that
20 describe the ASTM standards process.
21   Q   Can you summarize them?
22   A   There's a --
23       MR. BRIDGES: Objection, competence.
24       THE WITNESS: There is a style guide.
25 There's a procedures guide. There's committee

81

1  charters.
2  BY MR. FEE:
3    Q   Do you understand that ASTM members
4  actually draft language that becomes a standard at
5  some point in time?
6        MR. BRIDGES: Objection, vague and
7  ambiguous and lacks foundation.
8        THE WITNESS: I am -- ASTM members or --
9  so are -- are you asking if just ASTM? No, I'm --
10 I'm sorry. Repeat the question, please I'm
11 confused about what you're asking.
12 BY MR. FEE:
13   Q   Who writes these standards that are
14 authored -- or strike that.
15       Who writes the ASTM standards, to the best
16 of your understanding?
17       MR. BRIDGES: Objection, vague and
18 ambiguous.
19       THE WITNESS: Volunteers.
20 BY MR. FEE:
21   Q   Who makes up this group of volunteers that
22 author ASTM standards, to the best of your
23 knowledge?
24       MR. BRIDGES: Vague and ambiguous.
25 Objection. I'm sorry. Could you please repeat the

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

82

1  question for me?
2          (The reporter read the record
3            as requested.)
4          MR. BRIDGES:  Okay.  Objection, vague and
5  ambiguous, argumentative, lacks foundation, assumes
6  facts not in evidence.
7          THE WITNESS:  Each of the committees list
8  the members of those committees and those are the
9  people that draft the standards.
10  BY MR. FEE:
11     Q   Is it your understanding that that's how
12  the process works for all three of the plaintiffs?
13          MR. BRIDGES:  Objection, vague and
14  ambiguous.
15          THE WITNESS:  Volunteers draft the
16  standards for all three of the plaintiffs.
17  BY MR. FEE:
18     Q   Do you understand that those standards are
19  eventually registered with the copyright office?
20          MR. BRIDGES:  Objection, irrelevant, lacks
21  foundation, may call for speculation, vague and
22  ambiguous.
23          THE WITNESS:  I really don't know.
24  BY MR. FEE:
25     Q   Have you ever seen a copyright

83

1  registration for any of the plaintiffs' standards?
2          MR. BRIDGES:  Lacks foundation, vague and
3  ambiguous.
4          THE WITNESS:  Yes.
5  BY MR. FEE:
6     Q   Have you seen copyright registrations for
7  all three of the plaintiffs' works?
8          MR. BRIDGES:  Same objections.
9          THE WITNESS:  I don't know.
10  BY MR. FEE:
11     Q   Which plaintiffs do you recall seeing
12  copyright registrations for?
13          MR. BRIDGES:  Same objections.
14          THE WITNESS:  I actually don't recall.
15  BY MR. FEE:
16     Q   Are you aware of any evidence that any
17  participants in the ASTM standard development
18  process claimed to be the owner of the copyrights
19  for any of the standards that ASTM claims to be
20  infringed in this case?
21          MR. BRIDGES:  Well, objection.  Calls for
22  a legal conclusion, may call for attorney-client
23  communications, in which case I would instruct him
24  not to answer.
25          THE WITNESS:  I don't know.  I'm sorry.

84

1          MR. BRIDGES:  Please let me --
2          THE WITNESS:  I'm sorry.
3          MR. BRIDGES:  -- finish my objections.
4  Assumes facts not in evidence and lacks foundation.
5  BY MR. FEE:
6     Q   Are you aware of any evidence that any
7  participants in the NFPA standard development
8  process claim to be the owner of the copyright for
9  any NFPA standards?
10          MR. BRIDGES:  All the same objections, and
11  I can't remember if I included argumentative.
12          THE WITNESS:  I don't know.
13  BY MR. FEE:
14     Q   You don't know if you're aware or you're
15  not aware of any?
16     A   I -- I'm not aware of any.
17     Q   Are you aware of any evidence that members
18  or participants in the ASHRAE standard development
19  process claimed to be owners of the copyrights that
20  are at issue and were registered by ASHRAE?
21          MR. BRIDGES:  I'm -- I'm sorry.  Can you
22  repeat that, please?
23          (The reporter read the record
24            as requested.)
25          MR. BRIDGES:  Okay.  Calls for a legal

85

1  conclusion, assumes facts not in evidence,
2  argumentative, lacks foundation, vague and
3  ambiguous.
4          THE WITNESS:  I'm not aware of any.
5          MR. BRIDGES:  And -- and one other,
6  please, attorney-client privilege.  I'm asking him
7  not to testify as to -- attorney-client privileged
8  and work product.  Asking you not to testify as to
9  anything you may know from counsel or subject to
10  communication with counsel.
11  BY MR. FEE:
12     Q   Are you aware of any evidence that any
13  participants in the ASTM standard development
14  process claimed to be the owners of the copyrights
15  in the standards that they were involved in?
16          MR. BRIDGES:  All the same objections.
17          THE WITNESS:  Same answer; I'm not aware.
18  BY MR. BRIDGES:
19     Q   You're not aware of any evidence along
20  those lines?
21          MR. BRIDGES:  All the same objections.
22
23  BY MR. FEE:
24     Q   Correct?
25     A   I -- I don't want to discuss

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

86

1   communications with my -- my attorney.
2       Q   I didn't ask you about any communications
3   with your attorney.
4           Are you aware of any evidence that
5   suggests that any participant in the ASTM standard
6   development process claims to be the owner of any
7   ASTM standard?
8           MR. BRIDGES:  And I'm asking him to
9   exclude material that's attorney work products that
10  may have been communicated to him.  So his answers
11  have to exclude any reference to what is currently
12  attorney work product.  And -- and all the same
13  objections I've been making in this series of
14  questions.
15          THE WITNESS:  So in -- in that sense, I am
16  not aware.
17  BY MR. FEE:
18      Q   Have you had any communications with any
19  of the participants in any of the plaintiffs'
20  standard development processes regarding their
21  ownership or potential ownership of any of the
22  plaintiffs' standards?
23          MR. BRIDGES:  That's going to call for
24  attorney work product and attorney-client
25  communications.  I'll instruct him not to respond

87

1   to that extent.  And then beyond that, I think
2   calls for a legal conclusion and vague and
3   ambiguous.
4           THE WITNESS:  Again, not aware.
5   BY MR. FEE:
6       Q   So you've had no communications with
7   persons regarding that subject matter, correct?
8           MR. BRIDGES:  Misstates testimony.  All
9   the same objections as to the previous line of
10  questions.
11          THE WITNESS:  No.
12  BY MR. FEE:
13      Q   I think that was poor phrasing by my
14  question.  Let me try it one more time.
15          Can you identify any communications that
16  you've had with any members or participants in
17  plaintiffs' standard development process regarding
18  whether or not they owned the copyrights to the
19  standards that they were involved in?
20          MR. BRIDGES:  All the same objections.
21          THE WITNESS:  No.
22
23  BY MR. FEE:
24      Q   Okay.  And you have in the past
25  acknowledged that standard development organizations

88

1   have legitimate copyright interests in their
2   standards prior to incorporation by reference,
3   correct?
4           MR. BRIDGES:  Objection, may call for a
5   legal conclusion and lacks foundation, assumes
6   facts not in evidence, vague and ambiguous.
7           THE WITNESS:  The sole extent of my
8   knowledge is that a standard incorporated by
9   reference into law is the law and has no copyright,
10  that's the limit of my ability to comment on
11  the issue of copyright and ownership.
12  BY MR. FEE:
13      Q   Well, in the past, haven't you told others
14  that the standards development organizations have
15  strong copyright interests in the standards prior to
16  incorporation by reference?
17          MR. BRIDGES:  Same objections.
18          THE WITNESS:  Do you have a specific
19  example?  That doesn't sound like something I would
20  say.
21  BY MR. FEE:
22      Q   Do you deny saying that?
23          MR. BRIDGES:  Objection, argumentative,
24  lacks foundation.
25  BY MR. FEE:

89

1       Q   Do you deny saying that?
2       A   I don't think I would ever use the phrase,
3   "strong copyright interests," sir.
4       Q   No?
5       A   That doesn't sound like me.
6       Q   Okay.  Who is Debra Hunt?
7       A   I -- I don't recall.
8       Q   I'm going to hand you what's been marked
9   as Exhibit 33.  It's a series of e-mails between you
10  and Debra Hunt, Bates-labeled PRO_166616 through 18.
11          (Exhibit 33 marked for identification.)
12          THE WITNESS:  Yeah, this appears to be an
13  exchange between me and -- and Ms. Hunt.
14  BY MR. FEE:
15      Q   Have you had a chance to read this e-mail
16  enough to see that you referred to the standards
17  having a strong copyright interest?
18      A   I do indeed.
19      Q   Okay.  Does that refresh your recollection
20  about whether or not you've referred to the
21  standards as having strong copyright interests in
22  the past?
23          MR. BRIDGES:  Objection, may call for a
24  legal conclusion and vague and ambiguous.
25          THE WITNESS:  And I think you've pulled

90

1  that phrase out of context.  What I specifically
2  said is while many of these standards have a strong
3  copyright interest, there is a subset of those that
4  have been incorporated by reference into the Code
5  of Federal Regulations.
6  BY MR. FEE:
7     Q   Right.  And then you say because those
8  subsets have been incorporated by reference, they
9  are not subject to copyright, correct?
10        MR. BRIDGES:  Objection, misstates the
11  document, misstates his testimony.
12        THE WITNESS:  I'm sorry.  Repeat the
13  question, please.
14  BY MR. FEE:
15     Q   I'll actually withdraw the question.
16        Aren't you saying here that the standards
17  have a strong copyright interest up until the point
18  that they are incorporated by reference, at which
19  point they have no copyright interest?
20        MR. BRIDGES:  Objection, misstates the
21  document.
22        THE WITNESS:  That's not what I said.  I
23  say while many of these standards have a strong
24  copyright interest, there is a subset of those that
25  have been incorporated by reference into the Code

91

1  of Federal Regulations.
2  BY MR. FEE:
3     Q   Explain to me why many of these standards
4  have a strong copyright interest.
5        MR. BRIDGES:  Objection, calls for legal
6  conclusion, vague and ambiguous.
7        THE WITNESS:  Many standards have not been
8  incorporated into the Code of Federal Regulations.
9  BY MR. FEE:
10     Q   Okay.  And with respect to those
11  standards, you would say that they have strong
12  copyright interests?
13        MR. BRIDGES:  Objection, calls for a legal
14  conclusion, vague and ambiguous.
15        THE WITNESS:  I -- I have no -- I -- I --
16  I'm not a lawyer.
17  BY MR. FEE:
18     Q   Okay.  Well, that's what you said in
19  Exhibit 33, right?
20        MR. BRIDGES:  Objection, misstates the --
21  misstates the document.  The document speaks for
22  itself.
23  BY MR. FEE:
24     Q   You can answer.
25     A   Again, I say while many of these standards

92

1  have a strong copyright interest, there is a subset
2  of those that are incorporated by reference into the
3  CFR.
4  BY MR. FEE:
5     Q   Okay.  And what was your assertion that
6  many of the standards have a strong copyright
7  interest based upon?
8        MR. BRIDGES:  Objection, may call for a
9  legal conclusion.
10        THE WITNESS:  I believe I was -- I -- I
11  was contrasting the standards that I'm specifically
12  interested, which are those incorporated by
13  reference into the Code of Federal Regulations with
14  those that are not incorporated by reference.
15  BY MR. FEE:
16     Q   Which standards have a strong copyright
17  interest?
18        MR. BRIDGES:  Objection, calls for a legal
19  conclusion, vague and ambiguous.
20        THE WITNESS:  I -- I really am not a
21  copyright expert, and I was simply trying to
22  contrast the -- the standards that were
23  incorporated by reference with those that were not.
24  BY MR. FEE:
25     Q   Do you know who Debra Hunt is now that

93

1  you've seen this e-mail?
2     A   Yes.
3     Q   Who is she?
4        MR. BRIDGES:  I'll ask the witness to
5  testify as to whether he knows or whether he's
6  simply reading from a -- a document.  He should
7  testify about his knowledge.
8        THE WITNESS:  I've never met Ms. Hunt, but
9  her -- her signature line on the electronic mail
10  says that she is manager of the learning commons of
11  the Exploratory.
12  BY MR. FEE:
13     Q   Do you recall how you came in touch with
14  her?
15        MR. BRIDGES:  Objection, vague and
16  ambiguous.
17        THE WITNESS:  No, I don't.
18  BY MR. FEE:
19     Q   Is it your testimony that that's the only
20  time that you've acknowledged that at least some
21  standards may have a strong copyright interest?
22        MR. BRIDGES:  Objection, misstates his
23  testimony, lacks foundation, vague and ambiguous.
24        THE WITNESS:  I don't recall.
25  BY MR. FEE:

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

94

1    Q   So is it possible that you have said in
2  the past that the standards development
3  organizations have strong copyright interests prior
4  to incorporation by reference?
5         MR. BRIDGES:  Objection, calls for
6  speculation, lacks foundation, vague and ambiguous.
7         THE WITNESS:  I -- I don't recall.
8  BY MR. FEE:
9    Q   You don't deny saying that in the past?
10        MR. BRIDGES:  Argumentative, lacks
11  foundation, vague and ambiguous.
12        THE WITNESS:  I -- I don't recall.
13  BY MR. FEE:
14    Q   Okay.  Well, if you don't recall, you
15  can't deny it, correct?
16        MR. BRIDGES:  Objection, argumentative,
17  lacks foundation, vague and ambiguous.
18  BY MR. FEE:
19    Q   So you deny having ever said that
20  standards development organizations have strong
21  copyright interests in works before they're
22  incorporated by reference?
23        MR. BRIDGES:  Objection, argumentative,
24  lacks foundation, vague and ambiguous.
25        THE WITNESS:  I -- I'd be happy to confirm

95

1  a specific thing if you want to talk about that,
2  but I -- I don't recall.
3  BY MR. FEE:
4    Q   It's -- it's possible that you've said
5  that in the past, correct?
6         MR. BRIDGES:  Objection, calls for
7  speculation, asked and answered, vague and
8  ambiguous, lacks foundation.
9         THE WITNESS:  I don't recall.
10  BY MR. FEE:
11    Q   You don't recall if it's possible?
12        MR. BRIDGES:  Objection, asked and
13  answered, lacks foundation, argumentative, vague
14  and ambiguous.
15        THE WITNESS:  I don't recall.
16  BY MR. FEE:
17    Q   Is it possible that you've said that the
18  standards development organizations have strong
19  copyright interests in the past?
20        MR. BRIDGES:  Asked and answered,
21  argumentative, vague and ambiguous, lacks
22  foundation, calls for speculation.
23        THE WITNESS:  I don't recall.
24  BY MR. FEE:
25    Q   You don't recall if it's possible?

96

1    A   No, I don't --
2         MR. BRIDGES:  Excuse me.  You've asked the
3  exact same question.  Asked and answered.  Keep
4  asking it, we'll just keep objecting and you'll
5  keep getting the same answer.  It's asked and
6  answered and all the other objections I've given
7  before.
8  BY MR. FEE:
9    Q   Is that your answer, that you don't recall
10  if it's possible?
11        MR. BRIDGES:  Objection, argumentative.
12        THE WITNESS:  That's not what I said.  I
13  said I don't recall if I did.
14  BY MR. FEE:
15    Q   Okay.  And is it possible that you did?
16        MR. BRIDGES:  Objection, calls for
17  speculation, asked and answered, and all the other
18  objections.
19        THE WITNESS:  I don't recall if I did.
20  BY MR. FEE:
21    Q   Is it possible that you did?
22        MR. BRIDGES:  Asked and answered and all
23  the other objections.
24        THE WITNESS:  I -- I don't recall if I
25  did.

97

1  BY MR. FEE:
2    Q   Do you recall saying that any
3  copyrights -- or strike that.
4         Do you recall saying that standards --
5  actually, do you recall saying that the 73 standards
6  that you made copies of in 2012 were all heavily
7  copyright protected?
8         MR. BRIDGES:  Objection, may call for
9  legal conclusions, vague and ambiguous, lacks
10  foundation.
11        THE WITNESS:  I don't know.  Do you have a
12  specific example for me?
13  BY MR. FEE:
14    Q   Do you recall saying that?  That's my
15  question.
16        MR. BRIDGES:  Same objections.
17        THE WITNESS:  No, I don't recall.
18  BY MR. FEE:
19    Q   Is it possible that you said such a thing?
20        MR. BRIDGES:  Objection, calls for
21  speculation, competence, vague and ambiguous, lacks
22  foundation.
23        THE WITNESS:  I can only tell you what I
24  did or didn't do.  I don't recall.
25  BY MR. FEE:

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015

98

1    Q   I'm going to hand you Exhibit 34. It's an
2   e-mail chain between you and Seamus Kraft,
3   Bates-labeled PRO_213808 through 810.
4        (Exhibit 34 marked for identification.)
5        THE WITNESS:  This appears to be
6   electronic mail that I sent.
7   BY MR. FEE:
8    Q   Who is Seamus Kraft?
9    A   A Seamus Kraft was the -- I believe his
10  title was press officer for the Committee on
11  Oversight & Government Reform of the United States
12  House of Representatives.
13   Q   In this e-mail do you see a reference, 73
14  standards?
15   A   Yes.
16   Q   Are those the 73 standards that we were
17  talking about earlier today?
18   A   Yes.
19   Q   Did those 73 standards include standards
20  that were ASTM standards?
21   A   Yes.
22   Q   Did those 73 standards include NFPA
23  standards?
24   A   Yes.
25   Q   Did those 73 standards include ASHRAE

99

1   standards?
2    A   I don't recall.
3    Q   I want to draw your attention to the first
4   page you see at the top it says -- on March 12, 2012
5   at 12:41 p.m., Seamus Kraft wrote -- and it says,
6   "can you give me a few more details on what is going
7   to happen?"
8        Do you see that?
9    A   Uh-huh. Yes.
10   Q   And then below there is one, two, three,
11  four, five -- six paragraphs and a numbered list of
12  three items. Do you see that?
13   A   Yes, I do.
14   Q   And then your name is below that, correct?
15   A   Yes.
16   Q   And isn't it correct that you wrote those
17  paragraphs that list the three items and your name
18  there?
19   A   Yes.
20   Q   I want to turn your attention to the
21  second paragraph on this, the one that starts with
22  sure. Do you see that?
23   A   Uh-huh. Yes.
24   Q   So the third sentence says all of these
25  standards are heavily copyright protected.

100

1        Do you see that?
2        MR. BRIDGES:  Objection, misstates the
3   document and -- yeah, misstates -- misdescribes the
4   document.
5        THE WITNESS:  I see that sentence in that
6   paragraph, yes.
7   BY MR. FEE:
8    Q   Okay. And you wrote that, correct?
9    A   Yes, I did.
10   Q   And you were referencing the 73 standards,
11  correct?
12   A   Yes, sir.
13   Q   What did you mean when you said that all
14  of the 73 standards are heavily copyright protected?
15       MR. BRIDGES:  Objection to the extent it
16  calls for a legal conclusion, vague and ambiguous.
17       THE WITNESS:  I meant that the standards
18  bodies were very aggressive in claiming copyright
19  on those documents.
20  BY MR. FEE:
21   Q   So you understood that they were copyright
22  protected?
23       MR. BRIDGES:  Objection. That calls for a
24  legal conclusion.
25       THE WITNESS:  That's not what I said.  I

101

1   said that the standards bodies were aggressive in
2   claiming copyright on those documents.
3   BY MR. FEE:
4    Q   Well, but you did say that they were
5   heavily copyright protected, right?
6        MR. BRIDGES:  Objection. The document
7   speaks for itself.
8        THE WITNESS:  By which I meant the
9   standards bodies were aggressive in claiming
10  copyright protection.
11  BY MR. FEE:
12   Q   That's not what you wrote here.
13       MR. BRIDGES:  Objection. You asked him
14  what he meant by what he wrote. The document
15  speaks for itself. You've already asked him what
16  he meant by what he wrote. You've asked him if
17  it's in the document. It's all asked and answered.
18       THE WITNESS:  That's what I meant. I'm
19  not a lawyer, sir.
20  BY MR. FEE:
21   Q   Did you go to law school?
22   A   Yes.
23   Q   Where did you go to law school?
24   A   Georgetown.
25   Q   Did you graduate?

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

102

1    A   No, I didn't.
2    Q   How long did you attend law school?
3    A   I did one year in the night program.
4    Q   Why did you leave Georgetown law school?
5        MR. BRIDGES:  Objection, argumentative,
6    vague and ambiguous, lacks foundation.
7        THE WITNESS:  The Internet was starting to
8    take off and I decided to devote my -- my attention
9    to that.
10   BY MR. FEE:
11   Q   Are you aware of any evidence that any of
12   the plaintiffs' members did not properly transfer
13   their copyright interests to plaintiffs?
14       MR. BRIDGES:  Okay.  I'm going to object
15   to this line of questioning, attorney-client
16   privilege, attorney work product, and instruct the
17   witness not to answer on that topic.
18       MR. FEE:  Even if it's not from you?
19       MR. BRIDGES:  You can ask him if he has
20   any independent nonattorney-related factual
21   knowledge as a percipient witness.  You can ask him
22   that.
23       MR. FEE:  Well, I asked him my question.
24   You can instruct him.
25       MR. BRIDGES:  And I'm instructing him not

103

1    to answer your question as phrased.
2        MR. FEE:  In its entirety?
3        MR. BRIDGES:  Yeah.
4    BY MR. FEE:
5    Q   Are you going to follow that instruction?
6    A   Of course.
7    Q   So you refuse to identify any facts that
8    you're aware of that suggest that there was a
9    problem with any of the assignments at issue in this
10   case?
11       MR. BRIDGES:  I'm objecting and
12   instructing -- and instructing on that basis.  You
13   can ask him a very narrow question that excludes
14   attorney-client, but I am objecting on that basis.
15   BY MR. FEE:
16   Q   You're refusing to answer that question I
17   just asked, correct?
18   A   That's correct.
19   Q   Putting aside whatever you learned from
20   counsel, can you identify any evidence that there's
21   any problems in the attempted transfer of copyright
22   interest from any member of any of the plaintiffs'
23   organizations to the plaintiffs?
24       MR. BRIDGES:  Bearing in mind I want the
25   witness to make sure that he was saying putting

104

1    aside interactions with counsel on this, calls for
2    a legal conclusion, calls for legal expertise and
3    vague and ambiguous.
4        THE WITNESS:  I noticed on the NFPA
5    website that there were a lot of government --
6    federal government employees that had submitted
7    comments and submissions into the standards
8    process.
9    BY MR. FEE:
10   Q   Anything else?
11       MR. BRIDGES:  All the same objections and
12   instruction.
13       THE WITNESS:  I saw that there were a lot
14   of federal government employees who contributed to
15   the standards process for both ASHRAE and ASTM.
16   BY MR. FEE:
17   Q   Where did you see this information that
18   you're referencing?
19       MR. BRIDGES:  I need -- need to instruct
20   him not to refer to any attorney-client
21   communication or any fruit of the attorney-client
22   communication having to do with the assessment,
23   analysis, investigation of this case.  And if he
24   can testify independently of that, he may answer;
25   but otherwise, I'm instructing him not to go there

105

1    in his answer on the basis of attorney-client
2    privilege and work product.
3        THE WITNESS:  On the websites.
4    BY MR. FEE:
5    Q   Can you tell me what exactly you saw on an
6    ASTM website regarding federal government employees'
7    participation in the writing of any particular
8    standard?
9        MR. BRIDGES:  All the same objections and
10   instruction.
11       THE WITNESS:  A large number of the
12   committees that author standards from the ASTM
13   include federal government employees.
14   BY MR. FEE:
15   Q   Did you see anything on these websites
16   regarding the contributions that were actually made
17   by the federal government employees to any
18   particular work?
19       MR. BRIDGES:  Objection, lacks foundation,
20   vague and ambiguous.
21       THE WITNESS:  I noticed many federal
22   government employees played key roles in the
23   committees.
24   BY MR. FEE:
25   Q   Okay.  My question was if you are aware of

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

106

1  any information regarding federal government
2  employees' actual contributions to the writing of
3  standards.
4       MR. BRIDGES:  All the same objections and
5  limitations and instructions as -- as to the
6  earlier questions.
7       THE WITNESS:  I don't want to discuss
8  my -- my discussions with -- with my attorneys on
9  that subject.
10 BY MR. FEE:
11    Q   So you can't identify any nonprivileged
12 information that's responsive to my question?
13      MR. BRIDGES:  Same objections.
14      THE WITNESS:  No, I can't.
15 BY MR. FEE:
16    Q   Is the same true for the other two
17 plaintiffs?
18      MR. BRIDGES:  Objection, vague and
19 ambiguous, lacks foundation and all the other same
20 objections, totally lacks foundation.
21      THE WITNESS:  So for NFPA, I -- I gave you
22 a -- a much more specific example.
23 BY MR. FEE:
24    Q   Okay.  So for NFPA, you were aware of some
25 information regarding specific contributions made by

107

1  federal -- federal government employees to
2  particular standards at issue in this case?
3       MR. BRIDGES:  All the same objections as
4  to the earlier line of questioning.
5       THE WITNESS:  Yes.
6  BY MR. FEE:
7     Q   What about with respect to ASHRAE?
8       MR. BRIDGES:  All the same objections as
9  to the line of questions -- as to the earlier line
10 of questions.
11      THE WITNESS:  The same as with ASTM; a
12 number of government officials played key
13 leadership roles in the formulation of the
14 standards at issue.
15 BY MR. FEE:
16    Q   Do you have any knowledge regarding
17 whether or not these federal government employees
18 purported to assign whatever copyright interests
19 they might have to the plaintiff organizations?
20      MR. BRIDGES:  Objection, lacks competence,
21 may call for speculation, vague and ambiguous, may
22 call for a legal conclusion, argumentative.
23      THE WITNESS:  The submissions on the NFPA
24 website appeared to do that.
25 BY MR. FEE:

108

1     Q   So it's your understanding that the NFPA
2  web -- NFPA website has evidence of federal
3  government employees attempting to assign whatever
4  copyrights they have to NFPA?
5       MR. BRIDGES:  All the same objections as
6  to the earlier line of questions and same
7  instruction.
8       THE WITNESS:  Yes.
9  BY MR. FEE:
10    Q   Did you see similar information with
11 respect to the other plaintiffs in this case?
12      MR. BRIDGES:  All the same objections,
13 plus lacks foundation, vague and ambiguous.
14      THE WITNESS:  I actually don't recall.
15 BY MR. FEE:
16    Q   Aside from federal government employees,
17 are you aware of any other evidence that
18 participants in the standard development for any of
19 the plaintiffs failed to properly transfer their
20 copyright interests to the plaintiffs in this case?
21      MR. BRIDGES:  All the same objections.
22      THE WITNESS:  That's totally beyond my
23 expertise.  I -- I can't answer that question.
24 BY MR. FEE:
25    Q   Does Public Resource claim to be the owner

109

1  of any copyrighted interest in any of the standards
2  at issue in this case?
3       MR. BRIDGES:  Objection, calls for a legal
4  conclusion.
5       THE WITNESS:  No.
6  BY MR. FEE:
7     Q   Do you personally claim to be the owner of
8  any copyright interest for any of the standards at
9  issue in this case?
10      MR. BRIDGES:  Same objections.
11      THE WITNESS:  No.
12 BY MR. FEE:
13    Q   Do you acknowledge that the writing of
14 plaintiffs' standards requires some sort of
15 creativity to actually put words on paper?
16      MR. BRIDGES:  Objection to the extent it
17 calls for a legal conclusion, assumes many facts
18 not in evidence, lacks foundation, competence,
19 calls for speculation and vague and ambiguous.
20      THE WITNESS:  I'm not qualified to answer
21 that question, sir.
22
23 BY MR. FEE:
24    Q   Are you aware of any evidence that would
25 suggest that any of the standards at issue in this

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

110

1  case are an expression that can only be said in one
2  particular way?
3      MR. BRIDGES:  All the same objections.
4      THE WITNESS:  I'm not a lawyer, sir.  I'm
5  not qualified to answer that question.
6  BY MR. FEE:
7    Q   You can't identify any evidence along
8  those lines, then, correct?
9      MR. BRIDGES:  All the same objections.
10  You're asking for legal -- legal opinion.
11     THE WITNESS:  I -- I'm simply not
12  qualified to -- to answer that.
13  BY MR. FEE:
14    Q   Is it Public Resource's position that once
15  a standard is incorporated by reference by any
16  governmental agency in the United States, it loses
17  all of its copyright protection?
18     MR. BRIDGES:  Objection.  The lawyers are
19  stating the legal positions in their formal papers.
20  Calls for a legal conclusion, argumentative and, to
21  the extent it requires the witness to testify about
22  legal strategy analysis and the like, then it's
23  calling for -- for attorney work product and
24  attorney-client communications, and I would
25  instruct the witness not to answer on that basis.

111

1      THE WITNESS:  I'm not going to answer that
2  question.
3  BY MR. FEE:
4    Q   Has Public Resource ever publicly taken
5  the position that once a standard is incorporated by
6  reference, it loses its copyright protection?
7      MR. BRIDGES:  All the same objections with
8  respect to the pleadings in the case.  If you -- if
9  the witness can testify about nonlitigation
10  statements, then subject to objections about
11  calling for a legal opinion, legal conclusion and
12  the like and vague and ambiguous, the witness may
13  testify.
14     THE WITNESS:  In the United States the law
15  is owned by the people and has no copyright.  A
16  standard incorporated by reference into the Code of
17  Federal Regulation is a law and, therefore, has no
18  copyright.
19  BY MR. FEE:
20    Q   Is it Public Resource's position that once
21  a standard is incorporated by reference by a state
22  statute or regulation that it loses all copyright
23  protection?
24     MR. BRIDGES:  All the same objections with
25  respect to attorney work product.  If you want to

112

1  ask what -- if you want to ask a question along the
2  lines of earlier question about what the public
3  statements are that's nonlitigation statements,
4  that's fine, but if you're asking what the legal
5  position is, that's attorney work product and
6  attorney-client communication, and I would instruct
7  not to answer.
8  BY MR. FEE:
9    Q   Are you going to follow that instruction?
10    A   I -- I think he asked what your question
11  was.  Maybe you could restate it.
12     MR. BRIDGES:  Well, no.  And I -- I
13  objected and instructed not to answer this
14  question --
15     THE WITNESS:  Okay.
16     MR. BRIDGES:  -- but if he wants to ask
17  you another question that refers to expressions
18  that Public Resource has made apart from the
19  filings in this case and the characterization of
20  filings in this case, then he could ask that
21  question.
22     THE WITNESS:  Okay.
23     MR. BRIDGES:  It wouldn't be
24  objectionable -- it wouldn't be instructible.
25  BY MR. FEE:

113

1    Q   So you're going to follow an instruction
2  not to answer my last question?
3    A   That's correct.
4    Q   Has Public Resource ever publicly taken
5  the position before that standards incorporated by
6  reference by a state governmental authority lose all
7  their copyright protection?
8      MR. BRIDGES:  And I'm objecting to the
9  extent it may refer to the positions in the
10  pleadings in this case.  The witness may testify
11  beyond that, although it may call for a legal
12  conclusion, is vague and ambiguous.
13     THE WITNESS:  It is my position that the
14  standards incorporated by reference by the states,
15  that we have posted that those specific standards
16  are the law and have no copyright.
17  BY MR. FEE:
18    Q   Does that mean that it -- Public Resource
19  acknowledges that there are some standards that are
20  incorporated by reference by a state governmental
21  authority that maintain their copyright interest?
22     MR. BRIDGES:  Objection, calls for a legal
23  conclusion.  I'm sorry.  Can you please read --
24  read -- read the question?
25        (The reporter read the record

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

---

114

1           as requested.)
2           MR. BRIDGES:  Objection, calls for a legal
3   opinion, argumentative, lacks foundation and
4   may call for attorney work product and
5   attorney-client communications.  If the witness
6   can testify beyond attorney work product and
7   attorney-client communications subject to the
8   other objections, the witness may answer.  I
9   would not instruct.
10          THE WITNESS:  That's a hypothetical
11  question, and so, no, we are not acknowledging
12  that.
13          MR. FEE:  I think we're out of time on the
14  video, so we need to take a short break.
15          MR. BRIDGES:  Okay.
16          THE VIDEOGRAPHER:  We're going off the
17  record.  The time is 12:17 p m.  This marks the end
18  of Disc No. 1 in the deposition of Carl Malamud.
19          (Recess taken.)
20          THE VIDEOGRAPHER:  We're back on the
21  record.  The time is 12:31 p m.  This marks the
22  beginning of Disc No. 2 in the deposition of Carl
23  Malamud.
24  BY MR. FEE:
25      Q   Has Public Resource taken a public

---

115

1   position with respect to whether or not standards
2   incorporated by reference by townships or municipal
3   authorities are capable of copyright protection
4   thereafter?
5           MR. BRIDGES:  Interpreting the question as
6   excluding attorney work product and attorney-client
7   communications, I'll object on the basis of calling
8   for a legal opinion.  My client may testify.  It's
9   vague and ambiguous also.
10          THE WITNESS:  We have not taken a public
11  position on this general principle we have on a
12  specific instance.
13  BY MR. FEE:
14      Q   What instance was that?
15      A   That is the incorporation by the City of
16  Las Vegas of, I believe it was, amusement park
17  standards from ASTM.
18      Q   And is it safe to assume that it was
19  Public Resource's public position that once Vegas
20  had incorporated by reference an ASTM standard, it
21  was no longer capable of copyright protection?
22          MR. BRIDGES:  Objection, argumentative,
23  lacks foundation, assumes facts not in evidence,
24  vague and ambiguous, calls for a legal conclusion.
25          THE WITNESS:  It was our position that

---

116

1   that specific instance of incorporation had, in
2   fact, pulled those standards into the law.
3   BY MR. FEE:
4       Q   What in particular about Las Vegas's
5   incorporation by reference of that ASTM standard led
6   to the conclusion that you've discussed publicly
7   that the ASTM standard had lost its copyright
8   protection?
9           MR. BRIDGES:  Argumentative, misstates
10  testimony, calls for a legal conclusion, assumes
11  facts not in evidence, lacks foundation, vague and
12  ambiguous.
13          THE WITNESS:  It was a specific and
14  deliberate incorporation of a specific standard in
15  a specific year.
16  BY MR. FEE:
17      Q   Anything else?
18      A   No.  That -- that was the criteria.
19          MR. BRIDGES:  Same -- same objections.
20  BY MR. FEE:
21      Q   Is Public Resource taking a public
22  position with respect to whether or not
23  incorporation by reference of a governmental
24  authority outside the United States would eliminate
25  any copyright protection for standards in the United

---

117

1   States?
2           MR. BRIDGES:  Objection, argumentative,
3   assumes facts not in evidence, lacks foundation,
4   vague and ambiguous, calls for a legal
5   conclusion -- legal opinion.
6           THE WITNESS:  I think that's a
7   hypothetical.  I don't believe we've ever
8   encountered that issue.
9   BY MR. FEE:
10      Q   Has Public Resource ever taken a public
11  position with respect to whether or not standards
12  that were incorporated by reference by another
13  standard that was incorporated by reference by a
14  governmental agency loses its protection?
15          MR. BRIDGES:  I'm sorry.  I -- I didn't --
16  just didn't get the question.  If you could --
17          THE REPORTER:  Yeah, it was a bit fast for
18  me, so can we do it one more time?
19          MR. FEE:  Sure.
20  BY MR. FEE:
21      Q   Has Public Resource ever taken a public
22  position about whether a standard that is
23  incorporated by reference by another standard that
24  was incorporated by reference by a governmental
25  authority in the United States loses its copyright

---

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

118

1  protection?
2        MR. BRIDGES:  Objection, argumentative to
3  begin with, lacks foundation, assumes facts not in
4  evidence, calls for a legal conclusion, vague and
5  ambiguous.
6        THE WITNESS:  No.
7  BY MR. FEE:
8     Q   I just want to make sure you understand
9  what I'm saying, because it sounds like some of us
10  are at least confused about this.
11        If, for example, California incorporated
12  by reference the NEC and then the NEC incorporates
13  by reference an ASTM standard, would Public Resource
14  take the position that the ASTM standard has lost
15  its copyright protection?
16        MR. BRIDGES:  Okay.  Argumentative again,
17  assumes facts not in evidence, lacks foundation,
18  calls for a legal conclusion, vague and ambiguous
19  and hypothetical.
20        THE WITNESS:  California did not
21  incorporate by reference the National Electrical
22  Code.
23  BY MR. FEE:
24     Q   Okay.  If -- if any governmental agency
25  incorporated by reference the National Electric Code

119

1  and the National Electric Code incorporates by
2  reference any ASTM standard, is it Public Resource's
3  position that the ASTM standard loses its copyright
4  protection?
5        MR. BRIDGES:  All the same objections.
6        THE WITNESS:  We have not taken a position
7  on that issue.
8  BY MR. FEE:
9     Q   I want to go back to the Las Vegas
10  incorporation by reference of an ASTM standard that
11  you mentioned a moment ago.  At what point in time
12  is it Public Resource's position that the ASTM
13  standard lost its copyright protection as a result
14  of the incorporation by reference by Las Vegas?
15        MR. BRIDGES:  Okay.  Objection, calls for
16  a legal conclusion and argumentative and assumes
17  facts not in evidence, lacks foundation, vague and
18  ambiguous.  And if it's calling for a position
19  within this litigation, it's attorney-client
20  privileged and attorney work product and I would
21  instruct.  But to the extent the witness can
22  testify beyond that subject to those objections,
23  he's free to testify.  And hypothetical.
24        THE WITNESS:  I -- I -- I don't know at
25  what point in time.  I -- I just really don't

120

1  recall.
2  BY MR. FEE:
3     Q   Okay.  Well, can you say that it -- it was
4  as of the day that the standard actually became
5  incorporated by reference by Las Vegas?
6        MR. BRIDGES:  All -- all the same
7  objections.  You're asking him for legal positions,
8  and competence, legal opinion and all the other
9  objections.
10        THE WITNESS:  I -- I don't know at what
11  point in time.  I know that -- that the law in the
12  United States has no copyright because it's owned
13  by the people.
14  BY MR. FEE:
15     Q   So before Las Vegas actually incorporated
16  by reference the ASTM standard, you don't take the
17  position that it was impossible for that standard to
18  be copyright protected, correct?
19        MR. BRIDGES:  Objection.  Objection, calls
20  for a legal conclusion, may call for speculation,
21  competence, lacks foundation, vague and -- assumes
22  facts not in evidence.
23        THE WITNESS:  That's a very broad
24  question.  All I can tell you is that when
25  Las Vegas incorporated that specific year of a

121

1  specific standard, it became the law.
2  BY MR. FEE:
3     Q   When it became incorporated by reference
4  by Las Vegas is what you're saying, right?
5        MR. BRIDGES:  Objection, vague and
6  ambiguous, lacks -- misstates testimony, lacks
7  foundation.
8        THE WITNESS:  Yeah.  What -- what I said
9  is when -- when the City of Las Vegas incorporated
10  the specific addition of a specific standard in the
11  law, it became the law.
12  BY MR. FEE:
13     Q   What happens to the copyright at that
14  point in time?
15        MR. BRIDGES:  Total -- assumes facts not
16  in evidence, lacks foundation, argumentative and
17  calls for a legal conclusion.
18  BY MR. FEE:
19     Q   You can answer.
20     A   All I know is that the law in the United
21  States has no copyright.
22     Q   Are you aware of the fact that ASTM
23  standards are often published along with appendices
24  that are not part of the standard?
25        MR. BRIDGES:  Objection, lacks foundation,

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

122

1  vague and ambiguous, assumes facts not in evidence.
2      THE WITNESS:  I believe your
3  characterization is incorrect.  ASTM standards have
4  normative and nonnormative sections to them, but
5  they're both part of the standard.
6      THE REPORTER:  Have what sections to them?
7      THE WITNESS:  Normative and nonnormative
8  sections.
9  BY MR. FEE:
10     Q   What do you consider to be a nonnormative
11  section of a standard?
12     MR. BRIDGES:  Objection, calls for a legal
13  conclusion, vague and ambiguous, calls for lay
14  opinion.
15     THE WITNESS:  ASTM has defined the
16  normative and the nonnormative portions of the
17  standard, so it's according to their -- their rules
18  as to what that is.
19  BY MR. FEE:
20     Q   Does the public have to follow the
21  nonnormative portions of the standard, to your
22  understanding, if that standard is incorporated by
23  reference?
24     MR. BRIDGES:  Objection, calls for a legal
25  conclusion, lacks foundation, assumes facts not in

123

1  evidence and vague and ambiguous.
2      THE WITNESS:  The Office of the Federal
3  Register has incorporated the entire standard as
4  part of their regulations for incorporation by
5  reference into the Code of Federal Regulations.
6  BY MR. FEE:
7      Q   Does that mean that the public is required
8  to follow the nonnormative portions of the standard
9  in that circumstance --
10     MR. BRIDGES:  Objection.
11  BY MR. FEE:
12     Q   -- to your understanding?
13     MR. BRIDGES:  Objection, calls for a legal
14  conclusion and lacks foundation and assumes facts
15  not in evidence, vague and ambiguous.
16     THE WITNESS:  I specifically asked the
17  Office of the Federal Register whether the entire
18  standard is incorporated by reference into law and
19  the answer was yes.
20  BY MR. FEE:
21     Q   When did you do that?
22     A   Approximately 2011.
23     Q   Do you recall who you spoke to?
24     A   I believe it was in the material we
25  disclosed to you.  It was either the executive

124

1  director or -- his assistant.
2      Q   Is it Public Resource's public position
3  that if complying with a standard is one of many
4  ways to be in compliance with the CFR that that
5  standard is no longer capable of being protected by
6  copyright?
7      MR. BRIDGES:  Objection, calls for a legal
8  opinion, lacks foundation, vague and ambiguous.
9  And to the extent it reflects a litigation
10  position, it's attorney work product and may be the
11  subject of attorney-client privilege, and I would
12  give a limited instruction not to refer to
13  positions in the litigation if there's testimony
14  about what was said.  Entirely outside of the
15  context of the pleadings, he may answer subject to
16  the other objections.
17     THE WITNESS:  Well, as Mr. Boccio from the
18  American National Standards Institute said, a
19  standard incorporated by reference is the law.
20  BY MR. FEE:
21     Q   So even if the standard is just one
22  alternative way of complying with a regulation, it's
23  not capable of being protected by copyright any
24  longer, according to Public Resource?
25     MR. BRIDGES:  Objection, misstates

125

1  testimony, calls for a legal opinion, and I'll add
2  the other objections and partial instruction that I
3  made earlier.
4      THE WITNESS:  That's not what I said.
5  What -- what I said is a standard incorporated by
6  reference into law is the law, and in the United
7  States the law has no copyright.
8  BY MR. FEE:
9      Q   I wasn't purporting to parrot back your
10  answer here.  I'm asking you a question about
11  whether or not it's Public Resource's position that
12  if a standard is one of many ways that a person can
13  comply with the federal regulation, is it Public
14  Resource's position that that is no longer capable
15  of copyright protection?
16     MR. BRIDGES:  All the same objections,
17  calls for a legal conclusion, may call for attorney
18  work product and attorney-client communication.  If
19  you're asking if Public Resources expressed that
20  publicly in those terms, I may -- I would let the
21  question be answered subject to objections.  But it
22  sounds to me as though you're asking for legal
23  analysis of -- of the case, and I would instruct on
24  that basis.
25     THE WITNESS:  It is our position that the

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

126

1  law has no copyright in the United States, and if a
2  standard is incorporated by reference into law, it
3  is the law.
4      THE REPORTER:  Next one is 35.
5      (Exhibit 35 marked for identification.)
6  BY MR. FEE:
7      Q   I'm going to hand you what has been marked
8  as Exhibit 35.  Appears to be a chain of e-mails
9  between you and Joseph Mornin; Bates-labeled
10  PRO_167245 through -47.
11     A   I recall this exchange.
12     Q   So Exhibit 35 is an e-mail between -- or a
13  series of e-mails between and Mr. Mornin; is that
14  right?
15     A   That's correct.
16     Q   I want to turn your attention to the
17  second page of Exhibit 35.  Towards the bottom you
18  see it says, "on 5/1/12 at 11:06 a.m. Carl Malamud
19  wrote."  Do you see that?
20     A   Yes, I do.
21     Q   Okay.  Second paragraph in -- in that
22  e-mail starts with the open task, we have -- are to
23  pick an appropriate state.  Do you see that part?
24     A   Yes, I do.
25     Q   Okay.  The second sentence in that

127

1  paragraph says, "It has to be an explicit
2  incorporation of a specific standard.  Then it
3  falls, under the Veeck decision, e.g., it can't be,
4  quote, you can meet this legal requirement by, for
5  example, using one of these five listed standards.
6  Any version will do.  It has to be, quote, the
7  Secretary of State here -- does hereby incorporate
8  the 1962 version of this standard and it is required
9  by law."
10     Do you see that?
11     A   Yes, I do.
12     Q   Can you explain what you meant there?
13     MR. BRIDGES:  Objection to the extent it
14  calls for a legal conclusion.
15     THE WITNESS:  I meant exactly what I -- I
16  have been -- been telling you, that in order for us
17  to post a standard, it must be explicitly
18  incorporated by law and must be a specific version
19  of that standard.
20  BY MR. FEE:
21     Q   And I want to get a -- your explanation
22  for the part of that quote that we just read where
23  it says, "using one of these five listed standards."
24  Any -- what are you referring to there?
25     MR. BRIDGES:  Objection, calls for a

128

1  hypothetical and implicitly calls for a legal
2  opinion, vague and ambiguous.
3      You can answer.
4      THE WITNESS:  Some states are -- are
5  sloppy and nonspecific, and again, we look for a
6  very specific and deliberate incorporation by
7  reference of a specific standard into the law.
8  BY MR. FEE:
9      Q   So when you're talking about five listed
10  standards there, are you referring to five versions
11  of one standard?  Is that what you're saying?
12     MR. BRIDGES:  Objection, misstates the
13  document, lacks foundation, vague and ambiguous.
14     THE WITNESS:  I was giving Mr. Mornin an
15  example of something that was not a specific
16  reference, a -- a specific incorporation of a
17  specific year of a standard into law, and it was a
18  hypothetical example.
19  BY MR. FEE:
20     Q   Who is Joseph Mornin?
21     A   Mr. Mornin was a Harvard undergrad that
22  was then going to go to Berkeley law school and
23  wanted a job for the summer, and so we gave him a
24  little bit of money -- it was like $1,500 -- and he
25  became a fellow.

129

1      MR. BRIDGES:  I'll ask you to answer the
2  question.
3      THE WITNESS:  Okay.
4  BY MR. FEE:
5      Q   Besides Mr. Mornin, have there been any
6  other fellows of Public Resource since 2007?
7      A   No.
8      Q   Can you describe how Public Resource
9  decided which standards that were incorporated by
10  reference that it would post on its website?
11     A   Looked for these specific incorporation of
12  a specific standard, the deliberate and -- and
13  explicit incorporation of a specific year of a
14  specific standard by a governmental authority into
15  law.
16     Q   How did you decide which of those
17  standards that were specifically incorporated would
18  be first put on the Public Resource website?
19     A   I looked for compelling examples.
20     Q   How did you go about doing that?
21     A   I read through the law and looked at what
22  was incorporated by reference.
23     Q   Did you start with the CFR or some other
24  source of law?
25     A   Well, we began in 2008 with -- with Title

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

130

1  24 of the California Code of Regulations.
2     Q   What made a particular standard a
3  compelling standard for purposes of posting it on
4  your website?
5     A   I looked for standards that I thought were
6  compelling and were critical to the public safety.
7     Q   How did you make an assessment as to
8  whether or not a standard was critical for public
9  safety?
10    A   Well, that was simply my opinion.  I read
11 the standard.
12    Q   After you dealt with Title 24 of the
13 California Code, how did you next go about
14 identifying standards that were incorporated by
15 reference that you would post on the Public Resource
16 website?
17       MR. BRIDGES:  Objection, vague and
18 ambiguous.
19       THE WITNESS:  I did a survey of state
20 regulations looking for similar public safety
21 codes.
22
23 BY MR. FEE:
24    Q   Did you do all that work yourself?
25    A   I did.

131

1     Q   When you're identifying standards to post
2  on Public Resource's website, do you search for a
3  particular standard development organization's
4  standards?
5       MR. BRIDGES:  Objection, vague and
6  ambiguous.
7       THE WITNESS:  I -- I look for particular
8  areas of public safety, like building codes.
9  BY MR. FEE:
10    Q   Any other particular areas that you were
11 looking for?
12    A   I -- I think there are a number of
13 critical areas of public safety in -- in U.S. law,
14 occupational safety, for example.
15    Q   How did you go about reviewing various
16 states' statutes and regulations to identify
17 standards that have been incorporated by reference
18 by those states?
19    A   I read the regulations.
20    Q   While you were reading the regulations of
21 the various states, did you encounter any types of
22 works other than standards that were incorporated by
23 reference by any of the state statutes or
24 regulations that you were reviewing?
25       MR. BRIDGES:  Objection, vague and

132

1  ambiguous, lacks foundation.
2       THE WITNESS:  And I'm sorry.  Could you
3  repeat the question?
4  BY MR. FEE:
5     Q   When you were doing your review of the
6  state regulatory materials and statutes, did you
7  encounter any state statutes or regulatory -- or
8  regulations that incorporated by reference anything
9  other than a standard?
10       MR. BRIDGES:  Objection, vague and
11 ambiguous.
12       THE WITNESS:  "Standard" is a very broad
13 term, sir.
14 BY MR. FEE:
15    Q   Okay.  Well, maybe we should start with
16 that, then.  The -- what is your understanding as to
17 what would be a standard that could be incorporated
18 by reference?
19       MR. BRIDGES:  Objection, may call for a
20 legal opinion, vague and ambiguous, competence.
21       THE WITNESS:  I -- I think it's up to the
22 government to decide what can be incorporated by
23 reference, not me.
24 BY MR. FEE:
25    Q   Okay.  What do you understand a standard

133

1  to be?
2       MR. BRIDGES:  Objection, vague and
3  ambiguous, competence, lacks foundation, calls for
4  speculation.
5       THE WITNESS:  A standard is a document
6  that establishes norms in a particular area of
7  application.
8  BY MR. FEE:
9     Q   Now, is it Public Resource's public
10 position that it can only publish standards
11 incorporated by reference when they are a specific
12 standard in a specific year?
13       MR. BRIDGES:  Objection, calls for a legal
14 opinion, assumes facts not in evidence, lacks
15 foundation.
16       MR. FEE:  I'll actually withdraw that
17 question.
18       MR. BRIDGES:  Okay.
19 BY MR. FEE:
20    Q   Is there -- is it Public Resource's public
21 position that it can only incorporate the precise
22 standard that has been incorporated by reference --
23 strike that.
24       Is it Public Resource's public opinion
25 that it can only copy the precise standards that are

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

---

134

1  incorporated by reference by governmental agencies
2  and not later or earlier versions of those
3  standards?
4      MR. BRIDGES:  Okay.  Objection, calls for
5  a legal opinion, lacks foundation, confusing, vague
6  and ambiguous.  And I'm assuming that the question
7  omits any reference to positions taken in the
8  pleadings in this case.
9      THE WITNESS:  A -- a standard that has
10  been reaffirmed by the standards body as the
11  identical standard is the same as -- as the
12  original standard.
13  BY MR. FEE:
14      Q   Putting aside a reaffirmation of the exact
15  same standard, what is Public Resource's public
16  position with respect to its ability to publish
17  earlier or later versions of a standard that were
18  incorporated by reference?
19      MR. BRIDGES:  Calls for a legal
20  conclusion, also lacks foundation, assumes facts
21  not in evidence, vague and ambiguous,
22  argumentative.
23      THE WITNESS:  Our practice is to look for
24  the specific incorporation of a specific standard.
25  BY MR. FEE:

---

135

1      Q   Does Public Resource take the public
2  position that it is entitled to make copies of
3  subsequent versions of standards that are
4  incorporated by reference?
5      MR. BRIDGES:  Objection, argumentative,
6  lacks foundation, assumes facts not in evidence,
7  calls for a legal opinion --
8      THE WITNESS:  No, we do not.
9      MR. BRIDGES:  -- vague and ambiguous.
10      THE WITNESS:  I'm sorry.  Done?
11      MR. BRIDGES:  I'm sorry.
12      THE WITNESS:  No, we do not.
13  BY MR. FEE:
14      Q   So I just want to make sure I'm clear on
15  this.  Public Resource doesn't take the position
16  publicly that it's entitled to post subsequent
17  versions of standards that have been incorporated by
18  reference?
19      MR. BRIDGES:  Same objections.  And in
20  addition, this question has to be read in the
21  context of the earlier questions and answers that
22  may effectively limit this question.
23      THE WITNESS:  We have not taken a position
24  on that topic.
25  BY MR. FEE:

---

136

1      Q   I'm going to hand you what's been marked
2  as Exhibit 36.  It's an e-mail Bates-labeled
3  PRO_211406 through -08.
4      (Exhibit 36 marked for identification.)
5      THE WITNESS:  Yes, this appears to be a
6  message that I sent.
7  BY MR. FEE:
8      Q   So Exhibit 36 is a message you sent to
9  Open Government.  Do you see that?
10      A   Yes, I do.
11      Q   What is the Open Government e-mail
12  reference?
13      A   It's just a mailing list.
14      Q   Okay.  Is that a mailing list that you
15  have compiled?
16      A   I may have created that group, but I don't
17  recall.
18      Q   I want to turn your attention to --
19  described as the fourth paragraph and start with,
20  "in order to incorporate."
21      Do you see that?
22      A   Uh-huh.  Yes.
23      Q   First of all, you wrote this entire
24  message, correct?
25      A   Yes.

---

137

1      Q   Getting back to that paragraph, it says,
2  "In order to incorporate a standard by inclusion, we
3  must match the exact version of the standard with
4  the language in the Code of Federal Regulations.
5  For example, if the CFR incorporates the 2000
6  version of ANSI's Z21.1-2000, Household Cooking Gas
7  Appliances, we can only incorporate that specific
8  version and not subsequent or prior editions."
9      Do you see that?
10      A   Yes.
11      Q   Okay.  Is that Public Resource's
12  understanding as of today?
13      MR. BRIDGES:  Objection, lacks foundation,
14  misleading based on the document.
15      THE WITNESS:  I was describing --
16      MR. BRIDGES:  Excuse me.  May call for --
17  the question as phrased appears to call for a legal
18  conclusion.  I'm not sure it's about a legal fact.
19      THE WITNESS:  I was describing our
20  specific practice in this case.
21  BY MR. FEE:
22      Q   Has Public Resource taken a different
23  position publicly since the time of this e-mail?
24      MR. BRIDGES:  Objection, lacks foundation.
25  As framed, it's sounding as though it's calling for

---

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

138

1  a legal conclusion, could be misleading, vague and
2  ambiguous.
3      THE WITNESS:  The practice which I've
4  described several times is that we will only post a
5  standard that has been explicitly incorporated by
6  reference with the specific version.
7  BY MR. FEE:
8      Q   Does Public Resource believe that it's
9  entitled to post subsequent versions of standards of
10  incorporation by -- incorporated by reference?
11      MR. BRIDGES:  Objection, asked and
12  answered, calls for a legal conclusion.  To the
13  extent it calls for beliefs obtained in conjunction
14  with attorney representation, calls for attorney
15  work product/attorney-client privilege, and I would
16  instruct on that limited basis.  And -- and also
17  calls for -- may lack foundation, call for -- lack
18  of foundation.
19      THE WITNESS:  We have not taken a public
20  position on that -- that -- that question.
21  BY MR. FEE:
22      Q   And it's your belief that Public Resource
23  has not published any standards other than the
24  precise versions that have been incorporated by
25  reference?

139

1      MR. BRIDGES:  Objection, calls for a legal
2  conclusion, lacks foundation, vague and ambiguous,
3  argumentative.
4      THE WITNESS:  We publish -- post -- I'm
5  sorry -- the specific version of a specific
6  standard that has been deliberately incorporated by
7  reference.
8  BY MR. FEE:
9      Q   And no other standards, correct?
10      MR. BRIDGES:  All the same objections.
11      THE WITNESS:  Correct.
12  BY MR. FEE:
13      Q   I'm going to hand you Exhibit 37, which is
14  a -- which includes -- it's 49 CFR Section 192.113.
15      (Exhibit 37 marked for identification.)
16  BY MR. FEE:
17      Q   First of all, Mr. Malamud, do you
18  recognize this symbol in the top left-hand corner of
19  this document?
20      A   That appears to be the Government Printing
21  Office digital signature, but of course, one can't
22  verify that in a paper copy.
23      Q   And do you see that there's -- that 49
24  CFR, Section 192.113 is contained in Exhibit 37?
25      A   That's what it appears to be, yes.

140

1      Q   And do you see --
2      MR. BRIDGES:  Well, actually, I'm -- I'm
3  concerned as to whether this is an integral
4  document.
5      MR. FEE:  Towards the bottom of the first
6  page of 37.
7      MR. BRIDGES:  Okay.  I -- I -- I reserve
8  objections about the possible integrity of this
9  document.  I -- I don't know enough to able to make
10  a final objection on it.
11  BY MR. FEE:
12      Q   Is Section 192.113 an example of a federal
13  regulation that incorporates standards by reference?
14      MR. BRIDGES:  Objection, may call for a
15  legal conclusion, vague and ambiguous.
16      THE WITNESS:  No, it is not.
17  BY MR. FEE:
18      Q   What is Section 192.113's references to
19  various standards, then?
20      A   It's a listing of standards.
21      Q   Have you cited 49 CFR, Section 192.113 as
22  a basis for publishing any standards of plaintiffs
23  in this case?
24      MR. BRIDGES:  Objection, vague and
25  ambiguous.

141

1      THE WITNESS:  A specific incorporation by
2  reference for PHMSA, of the Pipeline and Hazardous
3  Materials Safety Administration is actually Section
4  192.7 of that section of the CFR.
5  BY MR. FEE:
6      Q   Okay.
7      MR. FEE:  What are we on?
8      THE REPORTER:  Now we're on 38.
9      (Exhibit 38 marked for identification.)
10  BY MR. FEE:
11      Q   I'm going to hand you what's been marked
12  as Exhibit 38.  It's entitled, "Public Safety
13  Standards, United States Federal Government,"
14  PRO_166182 through 166257.
15      MR. BRIDGES:  Do you have any further
16  questions on Exhibit 37 or --
17      MR. FEE:  We're going to be going back to
18  that.
19  BY MR. FEE:
20      Q   Mr. Malamud, do you recognize what Exhibit
21  38 is?
22      A   It appears to be our U.S. manifest for the
23  Code of Federal Regulations.
24      Q   Can you identify a place in Exhibit 38
25  where you identify any standard -- or identified

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

142

1  ASTM Standard A106 and where it's incorporated by
2  reference? I think it's on the page ending with 196
3  if that helps.
4      MR. BRIDGES: Well, I -- I will ask him to
5  check the -- to review the document to the extent
6  he needs to review it.
7      THE WITNESS: Yes, I see Page 196, the
8  Bates number.
9  BY MR. FEE:
10     Q   Okay. And on that Bates number, there's a
11  reference to ASTM Standard A106. Do you see that?
12     A   Yes, I do.
13     Q   Okay. And in the far right-hand column,
14  the row that corresponds with ASTM A106 references
15  49 CFR -- or 49 CFR 192.113. Do you see that?
16     A   Yes.
17     Q   Okay. And that far right column with that
18  CFR reference is supposed to be the CFR authority
19  for incorporation that incorporates by reference the
20  ASTM standard; isn't that right?
21     MR. BRIDGES: Objection, calls for a legal
22  conclusion, lacks foundation, assumes facts not in
23  evidence, argumentative, vague and ambiguous.
24     THE WITNESS: The standard was
25  incorporated in 192.7 and used in 192.113.

143

1  BY MR. FEE:
2      Q   Okay. So is 192.113 the basis for your
3  incorporation -- or the basis for your inclusion of
4  the ASTM A106 standard on your website?
5      MR. BRIDGES: Objection, calls for a legal
6  opinion, lacks foundation, assumes facts not in
7  evidence, vague and ambiguous, argumentative.
8      THE WITNESS: The basis for the decision
9  was 192.7.
10  BY MR. FEE:
11     Q   Okay. The CFR authority was 192.113,
12  right?
13     MR. BRIDGES: Objection, argumentative,
14  misstates testimony. Are you saying what's in the
15  document? I'm sorry. I don't need to ask. Just
16  argumentative, lacks foundation, misstates
17  testimony, vague and ambiguous.
18     THE WITNESS: You're asking whether the --
19  the -- the -- the table header says CFR authority?
20  BY MR. FEE:
21     Q   No. I'm asking you if the CFR authority
22  for the inclusion of ASTM A106 on your website is
23  49 CFR 192.113.
24     MR. BRIDGES: Objection, calls for a legal
25  conclusion, lacks foundation, vague and ambiguous.

144

1      THE WITNESS: And I believe I answered
2  that the explicit incorporation was in 192.7. The
3  use of the standard was in A -- was in 192.113.
4  BY MR. FEE:
5      Q   Okay. And Exhibit 37 is a -- it's saying
6  192.113 that you're referencing?
7      MR. BRIDGES: Objection, asked and
8  answered. The document speaks for itself.
9      THE WITNESS: Exhibit 37 is what purports
10  to be 192.113 of the CFR.
11  BY MR. FEE:
12     Q   Okay. And then looking back at Exhibit
13  37, do you see there's a reference to ASTM A106 at
14  the bottom?
15     A   Uh-huh. Yes.
16     Q   All right. I'm going to hand you Exhibit
17  39, which contains 49 CFR 192.7.
18     (Exhibit 39 marked for identification.)
19  BY MR. FEE:
20     Q   Now, Exhibit 39 is the CFR provision that
21  you were referencing earlier, correct?
22     A   That's correct.
23     Q   All right. And do you see on the second
24  page there is a highlighted section that references
25  an ASTM standard A105 -- oh, A106/A106M-08?

145

1      A   Yes, I see that.
2      Q   Okay. And in -- in this publication, it
3  references a specific date of that, correct?
4      MR. BRIDGES: Objection, lacks foundation,
5  the document speaks for itself, assumes facts not
6  in evidence.
7      THE WITNESS: The 2010 version of the Code
8  of Federal Regulations for this section does, in
9  fact, refer to A106/A106M-08.
10  BY MR. FEE:
11     Q   And then at the end it says, "July 15th,
12  2008," correct?
13     A   That's correct.
14     MR. BRIDGES: All the same --
15     THE WITNESS: I'm sorry.
16     MR. BRIDGES: All the same objections,
17  please.
18  BY MR. FEE:
19     Q   So is that the version of ASTM A106 that
20  should be posted on Public Resource's website.
21     MR. BRIDGES: Argument -- objection,
22  argumentative, calls for a legal conclusion, calls
23  for hypothetical and speculation, lacks foundation,
24  vague and ambiguous.
25     THE WITNESS: I would need to look at two

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

146

1  things.  The first is other versions of the Code of
2  Federal Regulations and the second is whether the
3  2004 standard was reaffirmed in 2008.
4  BY MR. FEE:
5    Q   But either -- well -- getting back to
6  Exhibit 38, what is the purpose of this document?
7      MR. BRIDGES:  Objection, lacks foundation,
8  vague and ambiguous.
9      THE WITNESS:  It's a web page.
10  BY MR. FEE:
11   Q   Why did you spend the time to create this
12  document?
13   A   It's an index to the documents that were
14  on the website.
15   Q   That's all I was trying to ask you.  So
16  every standard that you've listed in Exhibit 38 is a
17  standard that you've posted on your website?  At
18  least that's the -- the goal of this document?
19      MR. BRIDGES:  Objection, lacks foundation,
20  vague and ambiguous.
21      THE WITNESS:  Maybe.
22
23  BY MR. FEE:
24   Q   Why do you say just maybe?
25   A   You're asking me whether every document

147

1  listed here is posted on our website.  I'd want to
2  verify that with the HTML.
3    Q   Okay.  But that was the intent of -- when
4  you were creating Exhibit 38, correct?
5    A   Yes.
6    Q   Then getting back to the ASTM A106
7  reference in Exhibit 38, you indicate that there's a
8  2004 version of that publication on your website in
9  Exhibit 38, correct?
10      MR. BRIDGES:  Objection, lacks foundation.
11  The document speaks for itself.  If he recalls
12  independently he may testify, but otherwise calls
13  for speculation.
14      THE WITNESS:  That's what this HTML page
15  says.
16  BY MR. FEE:
17   Q   And if the cited CFR reference that --
18  that you say is 49 CFR 192.7 refers to a 2008
19  version of the standard, is there a circumstance in
20  which it would be appropriate to have the 2004
21  version on your website?
22      MR. BRIDGES:  Objection, misstates
23  testimony, lacks foundation, calls for a legal
24  conclusion, argumentative.
25      THE WITNESS:  If the 2004 --

148

1      MR. BRIDGES:  And hypothetical.  Sorry.
2      THE WITNESS:  If the 2004 standard was
3  reaffirmed in 2008 or if a prior version of the
4  Code of Federal Regulations incorporated the 2004
5  standard.
6  BY MR. FEE:
7    Q   Those are the only two scenarios under
8  which the 2004 version of ASTM A106 should be posted
9  on your website?
10      MR. BRIDGES:  Objection, misstates
11  testimony, calls for a legal conclusion and the
12  other objections I mentioned earlier.
13      THE WITNESS:  Those are two scenarios in
14  which we would post them.
15  BY MR. FEE:
16   Q   Is there any other scenario that you can
17  identify today under which it would be compliant
18  with Public Resource's policy to post the 2004
19  version of ASTM A106?
20      MR. BRIDGES:  Calls for speculation, vague
21  and ambiguous and lacks foundation.
22      THE WITNESS:  If it were explicitly and
23  deliberately incorporated by reference into state
24  law with the specific version of the standard.
25  BY MR. FEE:

149

1    Q   If that standard, the A106 standard from
2  2004, was incorporated by reference by a state,
3  would there be a document within Public Resource's
4  possession that would identify that as a basis for
5  posting that cite -- or posting that standard?
6      MR. BRIDGES:  Objection, hypothetical,
7  vague and ambiguous, lacks foundation.
8      THE WITNESS:  You asked me whether there
9  were any other circumstances in which we would
10  consider posting a document and I gave you a -- a
11  hypothetical example.  This particular web page
12  appears to identify specific incorporation in the
13  Code of Federal Regulations.
14  BY MR. FEE:
15   Q   Is there an equivalent to Exhibit 38 for
16  state standards -- or standards incorporated by
17  states?
18      MR. BRIDGES:  Objection, vague and
19  ambiguous.
20      THE WITNESS:  Yes, we have a web page
21  that -- that lists state incorporations.
22
23  BY MR. FEE:
24   Q   And so if we looked at that web page to
25  see if there were any references to ASTM A106 and

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

150

1  there are none, are there any other bases other than
2  either a reaffirmation of the 2004 version in 2008 or
3  an older CFR reference to A106's 2004 version that
4  would justify putting the 2004 version of A106 on
5  Public Resource's website?
6      MR. BRIDGES:  Objection, hypothetical,
7  argumentative, calls for a legal conclusion, vague
8  and ambiguous, lacks foundation.
9      THE WITNESS:  You're asking with specific
10  reference to the Code of Federal Regulations as
11  opposed to your hypothetical with the states?
12  BY MR. FEE:
13    Q   No, I'm just trying to --
14      MR. FEE:  Why don't we read back the
15  question.  Would you mind reading that back,
16  please?
17      THE REPORTER:  Sure.
18          (The reporter read the record
19              as requested.)
20      MR. BRIDGES:  And the objections I voiced
21  stand.
22      THE WITNESS:  For incorporation by
23  reference into the Code of Federal Regulations, we
24  look at the versions of the CFR, which could be
25  earlier or later, and we look at the reaffirmation

151

1  of the specific standard.  Those are the two
2  criteria we use.
3      THE REPORTER:  40.
4      (Exhibit 40 marked for identification.)
5  BY MR. FEE:
6    Q   I'm going to hand you what's been marked
7  as Exhibit 40.  It's a -- entitled, "Public Safety
8  Codes Incorporated by Law," PRO_166258 through -267.
9      Mr. Malamud, is Exhibit 40 essentially the
10  state version of Exhibit 38 that you were testifying
11  about earlier?
12      MR. BRIDGES:  Objection, vague and
13  ambiguous.
14      THE WITNESS:  This appears to be an older
15  version of our -- there's no date on this.  When
16  was this screen dump taken?
17  BY MR. FEE:
18    Q   Your -- you produced this document.  Do
19  you see the Bates label?
20    A   Okay.  Yeah, this -- this says, "Public
21  Safety Codes Incorporated by Law" and by States
22  and -- and one city.
23    Q   Do you believe Exhibit 40 to be an old
24  version of this document?
25      MR. BRIDGES:  Objection, vague and

152

1  ambiguous.
2      THE WITNESS:  I don't know.
3  BY MR. FEE:
4    Q   So if a standard isn't listed in either
5  Exhibit 38 or Exhibit 40, is there any circumstance
6  under which it would be consistent with Public
7  Resource's policy to post the standard on its
8  website?
9      MR. BRIDGES:  Objection, hypothetical,
10  vague and ambiguous.
11      THE WITNESS:  The criteria for posting a
12  standard on our website is that it was explicitly
13  incorporated by reference into law and it was a
14  specific version of the standard.
15  BY MR. FEE:
16    Q   And isn't Exhibit 38, when combined with
17  Exhibit 40, the universe of circumstances that
18  Public Resource is currently aware of where that
19  happened?
20      MR. BRIDGES:  Objection, lacks foundation,
21  vague and ambiguous.
22      THE WITNESS:  No, it's not.
23  BY MR. FEE:
24    Q   Where else, if anywhere, has Public
25  Resource identified standards that have been

153

1  incorporated by reference and identify the specific
2  governmental regulation or statute that incorporate
3  that standard?
4      MR. BRIDGES:  Objection, lacks foundation,
5  confusing, vague and ambiguous.
6      THE WITNESS:  It's on the cover page of
7  each of the PDF files.
8  BY MR. FEE:
9    Q   Is there any other list other than Exhibit
10  38 and 40 that you've produced in this case that
11  you're aware of?
12      MR. BRIDGES:  Objection, vague and
13  ambiguous, lacks foundation.  You're asking what --
14  what got produced in the litigation?  Is that what
15  you mean by produced?
16  BY MR. FEE:
17    Q   You can answer.
18      MR. BRIDGES:  And I'm objecting.  I don't
19  understand the question.
20  BY MR. FEE:
21    Q   You can answer.
22    A   Yes.  There's another HTML page that lists
23  the PHMSA standards, the Pipeline Hazardous
24  Materials Safety Administration.
25    Q   Are there any other lists along those

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

154

1  lines?
2       MR. BRIDGES:  Objection, vague and
3  ambiguous.
4       THE WITNESS:  If you go to a directory in
5  the web server, it lists all the files in that
6  directory.  That's a list.
7  BY MR. FEE:
8    Q   But it doesn't identify both the standard
9  and the incorporating reference, correct?
10       MR. BRIDGES:  Objection, lacks foundation,
11  vague and ambiguous.
12       THE WITNESS:  I seem to recall that it
13  might -- I don't know.
14  BY MR. FEE:
15    Q   Are there any other lists of standards
16  incorporated by reference and the authority that
17  incorporated them other than the ones you've
18  testified about now?
19       MR. BRIDGES:  Objection, lacks foundation,
20  vague and ambiguous.
21       THE WITNESS:  I don't think so.
22
23  BY MR. FEE:
24    Q   Is it your understanding that Public
25  Resource posted a copy of every standard that is

155

1  listed in Exhibit 38?
2       MR. BRIDGES:  Objection, argumentative,
3  assumes facts not in evidence, lacks foundation,
4  vague and ambiguous.
5       THE WITNESS:  Maybe.  I'd want to verify
6  the HTML with the actual files.
7  BY MR. FEE:
8    Q   That's the intention of Exhibit 38,
9  though, correct, to list every standard it's posted
10  on the Public Resource website that was incorporated
11  by the federal government?
12       MR. BRIDGES:  Same objections.
13       THE WITNESS:  It was the intent at the
14  time that this page was created to list at least
15  some, if not all, of those standards.
16  BY MR. FEE:
17    Q   And is the same true with respect to state
18  incorporations in Exhibit 40?
19       MR. BRIDGES:  Objection, vague and
20  ambiguous.
21       THE WITNESS:  It lists some, if not all,
22  of the state incorporated codes.
23  BY MR. FEE:
24    Q   So at least as of the date that Exhibit 40
25  was created, you believe it listed some, if not all,

156

1  of the standards that were posted on Public
2  Resource's website as a result of an incorporation
3  by reference by a nonfederal government entity?
4    A   I think so.
5       MR. FEE:  We've been going about an hour
6  again.  Do you want to take a lunch break now?
7       MR. BRIDGES:  If you want.
8       MR. FEE:  Why don't we do that.
9       THE VIDEOGRAPHER:  We're going off the
10  record.  The time is 1:29 p.m.
11       (Lunch recess taken.)
12       THE VIDEOGRAPHER:  We're back on the
13  record.  The time is 2:26 p.m.
14  BY MR. FEE:
15    Q   Mr. Malamud, before lunch we spoke a
16  little bit about the process that you went through
17  in purchasing and making copies of the 73 standards.
18  I -- I want to talk to you now about the process you
19  used to make electronic copies of some of the
20  standards going forward.
21       Can you describe briefly what process you
22  go through to post the standards at issue on your
23  website?
24    A   Step one is to determine whether a
25  standard has been explicitly incorporated by

157

1  reference.  Step two is to get a copy of the
2  standard and scan it.  Step three is to append a
3  cover sheet.  And then Step four is to transfer it
4  onto the htdocs segment of our web server, which is
5  where documents live.
6    Q   And once the document is on your htdocs
7  web server, is it generally accessible to the
8  public?
9    A   Yes.
10    Q   Now, for the standards that are posted on
11  your website, did you always purchase paper copies
12  of those standards and then scan them, or did you
13  buy electronic copies at times?
14    A   For the standards at issue they're all
15  paper copies.
16    Q   Did you purchase any of the paper copies
17  of the standards at issue directly from one of the
18  plaintiffs?
19       MR. BRIDGES:  Objection, asked and
20  answered.
21       THE WITNESS:  We -- we already went over
22  that, I believe, on NFPA and ASTM for --
23  BY MR. FEE:
24    Q   And that was with respect to standards
25  that are on the Public Resource website?  You did

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

---

158

1   purchase directly from NFPA and ASTM?
2        MR. BRIDGES:  Same objection.
3        THE WITNESS:  Yes.
4   BY MR. FEE:
5        Q   And, to the best of your recollection, you
6   never purchased electronic copies of any of the
7   standards at issue; is that right?
8        A   That is correct.
9        Q   Now, how did you determine whether or --
10  strike that.
11       Once you obtained a paper copy of the
12  standard, who scanned that paper copy?
13       A   I did.
14       Q   And that's true for all the standards at
15  issue in this case?
16       A   Yes.
17       Q   In what file format was the output from
18  your scan?
19       MR. BRIDGES:  Objection, vague, ambiguous.
20       THE WITNESS:  PDF.
21  BY MR. FEE:
22       Q   Did you post a PDF copy of every of the
23  standards at issue in this case on the Public
24  Resource website?
25       MR. BRIDGES:  Objection, vague and

---

159

1   ambiguous.
2        THE WITNESS:  Each of the standards at
3   issue were posted on our website.
4   BY MR. FEE:
5        Q   In PDF format?
6        A   In PDF format.
7        Q   Now, is it true that you also posted at
8   least a subset of the standards at issue in a file
9   format other than PDF?
10       A   Yes.
11       Q   How did you go about taking the PDF file
12  format and wind up with some other file format?
13       A   Sent it to our contractor, HTC, which
14  double-keyed the standards into HTML.
15       THE WITNESS:  We're going to be doing a
16  lots of acronyms, so let me know.
17       THE REPORTER:  Okay.  Slow it down.
18  BY MR. FEE:
19       Q   Are there any other steps that were
20  implemented to take the PDF file format and arrive
21  at some other file format that was posted on the
22  Public Resource website?
23       MR. BRIDGES:  Objection, vague and
24  ambiguous.
25       THE WITNESS:  Well, the second step of the

---

160

1   workflow is the double-key operation, um, and
2   that's the conversion into an HTML file with JPG
3   images, J -- J-P-G.
4   BY MR. FEE:
5        Q   Who did the conversion of the HTM -- HTML
6   file into JPG?
7        A   HTC did.
8        THE REPORTER:  HTC?
9        THE WITNESS:  HTC.
10  BY MR. FEE:
11       Q   What would happen after the file was
12  converted into a JPG format and before it was posted
13  on the Public Resource website?
14       A   I'm not sure I understand that question.
15       Q   Okay.  Right.  Isn't it the case that at
16  least with some of the standards at issue you posted
17  file formats that included SVG and/or MathML
18  elements?
19       A   That would be the third step of the
20  workflow after the HTML JPG step.
21       Q   Okay.  That's what I was trying to get at.
22       Who did that work?
23       A   Point.B Studio.
24       Q   And Point.B Studio is run by your wife,
25  Rebecca Malamud, correct?

---

161

1        A   That's correct.
2        Q   Have you read the deposition transcripts
3   of either HTC or Point.B Studio?
4        A   Yes, I did.
5        Q   Did you read both those transcripts?
6        A   Yes, I did.
7        Q   Do you recall there being any errors in
8   the descriptions of how they would process the files
9   that you provided to them?
10       MR. BRIDGES:  Objection.  This is
11  ambiguous.  Are you asking him whether he recalls
12  from those deposition transcripts or -- I'll ask
13  the witness to testify as to what he recalls
14  independently.
15       THE WITNESS:  What I know is what I give
16  them and what I get back.  The -- the rest is
17  really up to my contractors.
18  BY MR. FEE:
19       Q   Do you have any understanding as to how
20  your contractors went about doing the work that you
21  asked them to do in connection with the standards at
22  issue in this case?
23       MR. BRIDGES:  Objection, vague and
24  ambiguous.
25       THE WITNESS:  I -- I have a vague

---

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

162

1    understanding, yes.
2    BY MR. FEE:
3        Q   Do you have any more detailed knowledge
4    regarding the process used that were used by your
5    contractors other than what you've already described
6    to me?
7        MR. BRIDGES:  Objection, argumentative,
8    vague and ambiguous.
9        THE WITNESS:  Yeah, I have a vague and
10   overall understanding of the process they went
11   through.
12   BY MR. FEE:
13       Q   Okay.  Well, let's start with HTC, then.
14   First of all, I want to make sure I understand.  You
15   delivered to HTC PDFs of the standards at issue in
16   this case, correct?
17       A   That's correct.
18       Q   After HTC received the PDF files, what is
19   your understanding as to the next step that was done
20   by HTC Global?
21       A   The next --
22       MR. BRIDGES:  Objection, vague and
23   ambiguous.
24       Sorry.
25       THE WITNESS:  Next step is to take each of

163

1    the images inside of the document and save them as
2    a separate JPG file with a very specific
3    file-naming convention which I gave them.
4    BY MR. FEE:
5        Q   What happens next at HTC, to the best of
6    your knowledge?
7        A   They then go through the double-key
8    process with the text.
9        Q   What is the double-key process?
10       A   In the double-key process, two individuals
11   or two teams of individuals independently type in
12   the document and then the two versions are compared
13   to find any errors.
14       Q   Is it your understanding as of today that
15   HTC Global engaged in a double-key process for the
16   standards at issue?
17       A   Yes.
18       Q   You don't believe that HTC was using OCR
19   software to deliver the HTML that was provided to
20   you?
21       MR. BRIDGES:  Objection, lacks foundation,
22   vague and ambiguous, argumentative.
23       THE WITNESS:  I -- I don't believe they
24   were.
25   BY MR. FEE:

164

1        Q   Why did you decide to ask HTC Global to
2    use a double-key process for the standards at issue?
3        MR. BRIDGES:  Objection, lacks foundation,
4    vague and ambiguous.
5        THE WITNESS:  Because it's the industry
6    standard used by most legal publishers.
7    BY MR. FEE:
8        Q   How did you come to that understanding?
9        A   I read several news reports about
10   organizations such as LexisNexis and their use of
11   double-key.
12       Q   Anything else?
13       A   I asked a -- a -- a person in the industry
14   his advice.
15       Q   Who's that?
16       A   His name is Anurag, A-N-U-R-A-G, Acharya,
17   A-C-H-A-R-Y-A.
18       Q   Was your understanding as to the industry
19   standard based on anything other than those two
20   things?
21       MR. BRIDGES:  Objection, lacks foundation,
22   vague and ambiguous, argumentative.
23       THE WITNESS:  That was my understanding
24   based on my research that -- that double-key is --
25   is what legal publishers use.

165

1    BY MR. FEE:
2        Q   Did you consider using a triple-key
3    process with HTC Global?
4        MR. BRIDGES:  Objection, vague and
5    ambiguous.
6        THE WITNESS:  I asked HTC for a quote for
7    triple-key.
8    BY MR. FEE:
9        Q   Did HTC provide a quote for triple-key?
10       A   They did.
11       Q   I'm going to hand you -- I'm going to hand
12   you what's previously been marked as Exhibit 2.
13   It's an e-mail to you from Hemant Talwalkar,
14   Bates-label PRO_4964.
15       MR. BRIDGES:  I'm sorry.  Can you read
16   back his statement?
17       (The reporter read the record
18       as requested.)
19       MR. BRIDGES:  I'm sorry.
20       THE REPORTER:  Sure.
21   BY MR. FEE:
22       Q   First of all, do you recognize Exhibit 2
23   as an e-mail between you and Hemant Talwalkar?
24       A   It appears to be a message from Hemant to
25   me.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

166

1    Q    Is this the price quote that you were
2    referencing?
3    A    It is, yes.
4    Q    In the chart that has the price quote, do
5    you see that there's a column there that says,
6    "accuracy"?
7    A    Yes.
8    Q    And for double-key compare, it has an
9    accuracy of 99.51 percent.  Do you see that?
10   A    I do.
11        MR. BRIDGES:  Objection.
12        THE WITNESS:  I'm sorry.
13   BY MR. FEE:
14   Q    Do you have an understanding as to what
15   that means?
16        MR. BRIDGES:  Objection, lack of
17   competence, may call for speculation, vague and
18   ambiguous.
19        THE WITNESS:  That is the error tolerance
20   for the double-key versus the triple-key process.
21   BY MR. FEE:
22   Q    Is it your understanding that the e-mail
23   from -- Mr. Talwalkar, first of all, he's from HTC
24   Global, right?
25   A    Yes.

168

1    BY MR. FEE:
2    Q    Was it your understanding that this error
3    tolerance -- or strike that -- accuracy, I should
4    say, rate was based upon a sampling of the materials
5    that you were asking HTC Global to double-key?
6        MR. BRIDGES:  Objection, lacks foundation,
7    assumes facts not in evidence, argumentative, vague
8    and ambiguous.
9        THE WITNESS:  99.51 percent is, I believe,
10   the industry standard for a double-key compare.
11   BY MR. FEE:
12   Q    And HTC Global also provided you with a --
13   a price quote for triple-key compare, correct?
14   A    That's correct.
15   Q    And the accuracy rate for triple-key
16   compare is greater than the double-key compare,
17   right?
18        MR. BRIDGES:  Objection, hypotheticals,
19   lacks foundation, assumes facts not in evidence,
20   argumentative, vague and ambiguous.
21        THE WITNESS:  The maximum error tolerance
22   is less for triple-key than it is for double-key.
23   BY MR. FEE:
24   Q    And triple-keying is more expensive than
25   double-keying, correct?

167

1    Q    Okay.  So does his e-mail to you
2    indicating the double-key compare has an accuracy of
3    99.51 percent mean that there are up to 0.49 percent
4    inaccurate results from double-keying?
5        MR. BRIDGES:  Objection, lacks foundation,
6    assumes facts not in evidence, argumentative, vague
7    and ambiguous.
8        THE WITNESS:  It's -- it's the error
9    tolerance, are -- there are no more than that many
10   errors.
11   BY MR. FEE:
12   Q    You understood that double-key compare
13   would lead to some inaccuracies, right?
14        MR. BRIDGES:  Objection, lacks foundation.
15        THE WITNESS:  Not necessarily.  It depends
16   on the subject matter of -- of the source material.
17   BY MR. FEE:
18   Q    Did you have any reason to believe that
19   the standards at issue if double-keyed would lead to
20   100 percent accuracy?
21        MR. BRIDGES:  Objection, argumentative,
22   lacks foundation, vague and ambiguous.
23        THE WITNESS:  I -- I believe that -- that
24   there would be a -- a maximum error tolerance of --
25   of 99.51 minus 100.

169

1        MR. BRIDGES:  Objection, lacks foundation,
2    vague and ambiguous.
3        THE WITNESS:  On this quote it is.
4    BY MR. FEE:
5    Q    And is it correct that after receiving
6    this quote, Public Resource elected to use
7    double-key compare instead of triple-key compare?
8    A    Yes.
9    Q    Why did it make that decision?
10   A    Again, based on my research on standard
11   industry practices, double-key is what's used in the
12   legal industry.
13   Q    You understood that double-keying would be
14   less accurate than triple-keying in this
15   circumstance, right?
16        MR. BRIDGES:  Objection, misstates
17   testimony, lacks foundation, argumentative and
18   assumes facts not in evidence.
19        THE WITNESS:  Again, I think you
20   misstated.  It's the maximum error tolerance is
21   less on triple-key than on double-key.
22
23   BY MR. FEE:
24   Q    Is it true that Public Resource was
25   willing to live with a higher error tolerance in

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

170

1  order to save money on HTC Global's services?
2       MR. BRIDGES:  Objection, lacks foundation,
3  argumentative, vague and ambiguous.
4       THE WITNESS:  Double-key seemed to be
5  perfectly appropriate for the task at hand.
6  BY MR. FEE:
7   Q   So public Resource was willing to accept
8  the higher error tolerance associated with
9  double-keying --
10       MR. BRIDGES:  Objection --
11  BY MR. FEE:
12   Q   -- right?
13       MR. BRIDGES:  Objection, misstates
14  testimony, lacks foundation, vague and ambiguous
15  and argumentative.
16       THE WITNESS:  It's potentially higher
17  error tolerance under the double-key method.
18  BY MR. FEE:
19   Q   Well, your supplier told you that it was
20  going to be a higher error tolerance, right?
21       MR. BRIDGES:  Objection, lacks foundation,
22  vague and ambiguous.
23       THE WITNESS:  Again, it depends on the
24  nature of the source material.  But, yes, the --
25  the -- error tolerance of double-key is, in

171

1   fact, 99.51 percent, which is what HTC quoted.
2  BY MR. FEE:
3   Q   At any point in time did you suggest to
4  any person working with Public Resource that HTC may
5  not be double-keying the standards that you had
6  provided to it?
7       MR. BRIDGES:  Objection, lacks foundation,
8  vague and ambiguous.
9       THE WITNESS:  I don't recall.
10  BY MR. FEE:
11   Q   Have you ever suggested to Rebecca Malamud
12  that HTC Global may have been cheating and doing OCR
13  in connection with some of the work it was doing for
14  Public Resource?
15       MR. BRIDGES:  Objection, vague and
16  ambiguous.
17       THE WITNESS:  No, I don't recall.  If you
18  have a specific message, I'd be very happy to look
19  at it.
20  BY MR. FEE:
21   Q   I'm going to hand you what's been marked
22  as Exhibit 21.  It's a e-mail chain between
23  Mr. Malamud and Mrs. Malamud, Bates-labeled
24  PRO_42289 through -91.
25       THE REPORTER:  Kevin, you said that was

172

1  previously marked, right --
2       MR. FEE:  Yes.
3       THE REPORTER:  -- as 21?  Thanks.
4       THE WITNESS:  This seems like e-mail
5  between me and Rebecca.
6  BY MR. FEE:
7   Q   I want to draw your attention to the
8  fourth paragraph of this e-mail chain, fourth from
9  the top of the first page.  First of all, that
10  portion of the e-mail is a e-mail written by you to
11  Ms. Malamud, correct?
12   A   That's correct.
13   Q   And do you see the fourth paragraph it
14  says, "All the docs you see are in theory
15  double-keyed.  Of course, they may cheat and do OCR
16  first and then do their QA."
17       Do you recall having that communication
18  with Ms. Malamud?
19   A   Yes.  I just told you that this appears to
20  be e-mail between me and Rebecca.
21   Q   Did you have reason to believe that HTC
22  Global may have been -- may have been cheating and
23  not double-keying the work they were doing for you?
24   A   No.
25   Q   Why did you say that, then?

173

1   A   I was speculating about a theoretical
2  possibility.
3   Q   At the end of that paragraph you say I
4  won't be paying for double-keyed work in the
5  foreseeable future.
6       Do you see that?
7   A   Yes, sir.
8   Q   Okay.  Why weren't you going to be paying
9  for double-keyed work in the foreseeable future?
10   A   I couldn't afford it.
11   Q   Have you stopped posting any standards
12  subsequent to the date of this e-mail, which is
13  January 4th, 2014?
14   A   I'm -- I'm sorry.  Repeat that question.
15   Q   Did you stop converting any PDF file
16  formats into HTML for standards on your website as
17  of the 4th of January 2014?
18       MR. BRIDGES:  Objection, argumentative,
19  lacks foundation, vague and ambiguous, assumes
20  facts not in evidence.
21       THE WITNESS:  I would want to consult the
22  invoices, but I believe that was at the end of the
23  work that I had contracted with HTC for.
24  BY MR. FEE:
25   Q   Have you used any other vendors for doing

174

1 double-key since January of 2014?
2      MR. BRIDGES:  Objection, lacks foundation.
3      THE WITNESS:  No, I have not.
4 BY MR. FEE:
5    Q  If you turn to the next page of Exhibit
6 21, first of all, the first paragraph on Page 42290
7 appears to be a carryover from an e-mail that
8 started on the first page of Exhibit 21 that was
9 written by Rebecca.  Do you see that?
10    A  Yes, I do.
11    Q  Okay.  At the end of the first paragraph
12 do you see Rebecca says, "I found a couple of
13 mistakes that appear to be OCR related like the one
14 below"?
15    A  Okay.  I see what she says.
16    Q  What do you understand that to mean?
17      MR. BRIDGES:  Objection, calls for
18 speculation, lacks competence, vague and ambiguous.
19      THE WITNESS:  Can you show me the
20 screenshot?
21 BY MR. FEE:
22    Q  We actually can in a separate e-mail.  We
23 have that somewhere.
24      While I'm looking for this, let me ask you
25 if you now recall having any conversations with

175

1 Rebecca Malamud or others about the possibility that
2 HTC Global was not double-keying all the work they
3 were doing for Public Resource.
4      MR. BRIDGES:  Objection, vague, ambiguous,
5 lacks foundation.
6      THE WITNESS:  Yeah, I -- I really have no
7 reason to believe they were doing OCR.
8 BY MR. FEE:
9    Q  You said you did read HTC Global's
10 deposition transcript, correct?
11    A  Yes.
12    Q  You don't recall any discussion in that
13 about OCR work done for Public Resource?
14    A  No, but you could refresh my memory.  I'd
15 be happy to -- I mean, it's a long time since I
16 looked at that, but I would be happy to look at it
17 again.
18    Q  Why did you want the standards at issue to
19 be double-keyed as opposed to using OCR -- OCR
20 software to convert the PDF into HTML?
21      MR. BRIDGES:  Objection, lacks foundation,
22 vague and ambiguous, argumentative.
23      THE WITNESS:  There's two reasons.  One
24 is -- is the -- the coding of the source data is
25 better.  But, more importantly, at the same time as

176

1 they were double-keying, they were setting it into
2 HTML.
3      MS. RUBEL:  Is this 41?
4      THE REPORTER:  Yes.
5      (Exhibit 41 marked for identification.)
6 BY MR. FEE:
7    Q  Mr. Malamud, I'm going to hand you Exhibit
8 41, which is an e-mail chain between you and your
9 wife, Bates-labeled PRO_42286 through -88.
10      First of all, do you recognize that as a
11 series of e-mails between you and your wife?
12      MR. BRIDGES:  Hang on.  Make sure he
13 can -- he has time to read it because I'm still
14 looking through it.
15      THE WITNESS:  Yes, it appears to be that.
16 BY MR. FEE:
17    Q  Now, when you were reviewing Exhibit 21,
18 you had asked whether or not we had a copy of the
19 example of a mistake that appeared to be OCR
20 related, according to Ms. Malamud.  And does Exhibit
21 41 have a -- a better version of what that mistake
22 is?
23      MR. BRIDGES:  Objection, vague and
24 ambiguous.
25      THE WITNESS:  The PNG graphic that was not

177

1 shown in the previous message is shown in this one.
2 BY MR. FEE:
3    Q  So now that you have the -- the graphic in
4 Exhibit 41, can you explain whether or not that
5 appears to be an OCR-related mistake by HTC Global?
6      MR. BRIDGES:  Objection, competence, may
7 call for speculation, lacks foundation, vague and
8 ambiguous.
9      THE WITNESS:  Yeah, I have no idea.
10 BY MR. FEE:
11    Q  Do you recall that mistake, as Ms. Malamud
12 referred to it in Exhibit 41, being at least part of
13 the reason why in Exhibit 21 you suggested that HTC
14 Global could be OCR'ing instead of double-keying?
15      MR. BRIDGES:  Objection, misstates
16 testimony, misstates the document, lacks
17 foundation, vague and ambiguous, argumentative.
18      THE WITNESS:  Ms. Malamud was speculating
19 on OCR related.  I -- I look at this diagram here
20 and -- and I -- I don't -- I don't know if it was
21 double-keyed or OCR'd.
22
23 BY MR. FEE:
24    Q  But you saw this mistake, Ms. Malamud
25 suggested it was OCR related, and then you suggested

178

1  that HTC Global may not be double-keying in your
2  responsive e-mail; isn't that right?
3        MR. BRIDGES:  Objection, misstates the
4  document, misstates the testimony, lacks
5  foundation, vague and ambiguous.
6        THE WITNESS:  I said that was certainly a
7  possibility.
8  BY MR. FEE:
9     Q   At any time did you confront HTC Global
10  about whether or not they were double-keying versus
11  OCR?
12        MR. BRIDGES:  Objection, vague and
13  ambiguous, lacks foundation.
14        THE WITNESS:  No, because what I was
15  worried about was what I gave them and what I got
16  back.  And if I got high quality work back, I was
17  happy.
18  BY MR. FEE:
19     Q   Is it your belief that you got high
20  quality work back from HTC Global?
21     A   Absolutely thrilled with the results.
22     Q   Are you aware of any mistakes that were
23  made in HTC Global's work for Public Resource in
24  connection with the standards at issue in this case?
25        MR. BRIDGES:  Objection, lacks foundation,

179

1  vague and ambiguous.
2        THE WITNESS:  Yes.  They had a bad habit
3  of tagging some of the HTML differently than I
4  would have preferred.
5  BY MR. FEE:
6     Q   Are you aware of any other mistakes with
7  respect to HTC Global's work regarding the standards
8  at issue in this case?
9        MR. BRIDGES:  Same objections.
10        THE WITNESS:  HTML syntax issues, which I
11  corrected.
12  BY MR. FEE:
13     Q   Any other mistakes that you're aware of?
14        MR. BRIDGES:  Same objections.
15        THE WITNESS:  In their very first runs
16  they were saving the JPG files as low quality JPG
17  files and I instructed them to save them as higher
18  quality.
19  BY MR. FEE:
20     Q   Any other mistakes that you were aware of?
21        MR. BRIDGES:  Same objections.
22        THE WITNESS:  That's all I remember.
23  BY MR. FEE:
24     Q   Were you aware of any instances where the
25  text came back different from the original?

180

1     A   Not that I'm --
2        MR. BRIDGES:  Same objections.
3        THE WITNESS:  Not that I'm aware of.
4  BY MR. FEE:
5     Q   What, if anything, did Public Resource do
6  to ensure that the text that came back from HTC
7  Global matched the text of the standards at issue?
8        MR. BRIDGES:  Objection, argumentative,
9  lacks foundation, vague and ambiguous.
10        THE WITNESS:  I made spot checks more so
11  earlier in the process, less so as I gained
12  confidence in -- in the quality of their work.
13  BY MR. FEE:
14     Q   Can you describe the process that you used
15  to make these spot checks?
16     A   Sure.  You pull up a page in the scan, you
17  pull up a page in the HTML and you compare the two.
18     Q   And you would do that manually?
19     A   Yes.
20     Q   Were you the only person who did that?
21        MR. BRIDGES:  Objection, lacks foundation,
22  may call for speculation.
23        THE WITNESS:  Yes.
24  BY MR. FEE:
25     Q   Do you have any particular training or

181

1  expertise in doing quality assurance?
2        MR. BRIDGES:  Objection, lacks foundation,
3  vague and ambiguous.
4        THE WITNESS:  I have 35 years of working
5  with large textual databases and transforming them
6  into new formats and making them available on the
7  Internet.
8  BY MR. FEE:
9     Q   Was part of that doing proofreading to
10  compare two versions of the documents' text.
11        MR. BRIDGES:  Objection, argumentative,
12  lacks foundation, vague and ambiguous.
13        THE WITNESS:  Absolutely.  If you're
14  transforming a text into another format, you always
15  have to double-check and make sure you're doing it
16  right.
17  BY MR. FEE:
18     Q   Do you have an estimate as to what portion
19  of the pages that you received from HTC Global you
20  would do this spot check on?
21     A   No, I don't.
22     Q   Was it less than 25 percent of the pages
23  you received back?
24     A   I -- I have no idea what the percentage
25  is.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

182

1    Q   Was it less than half of the pages you
2   received back?
3    A   Yes.
4    Q   But you're not sure if it was less than
5   25 percent?
6    A   No, I'm not.
7    Q   How many pages of scanned text did you
8   receive back from HTC Global?
9        MR. BRIDGES:  Objection, vague and
10  ambiguous.
11       THE WITNESS:  I have no idea how many
12  pages.  I know how many kilo-characters because I
13  know how much I paid them.
14  BY MR. FEE:
15   Q   How many kilo-characters were there?
16   A   Well, we paid $350,000 over the course of
17  the contract from the initial date to the last
18  period and the -- the price per kilo-character, you
19  know, was roughly in the 50 cent per page framework.
20  It varied occasionally based on the volume.
21   Q   So if my math is correct, that's about
22  175,000 pages?
23   A   I have no idea how you convert
24  kilo-characters into pages.  I'm sure we could try
25  to figure that out.

183

1    Q   My math is wrong.  You can go ahead and
2   say it.
3        It's about 175,000 kilo-characters?
4    A   $350,000 --
5        MR. BRIDGES:  The math will speak for
6   itself.
7        THE WITNESS:  Yeah, it's 700,000
8   kilo-characters, right?
9   BY MR. FEE:
10   Q   Oh, you're right.  It's double.  I'm not
11  doing math today.
12       Do you know how many page --
13  kilo-characters there are on an average page in a
14  standard?
15       MR. BRIDGES:  Objection, lacks foundation,
16  vague and ambiguous.
17       THE WITNESS:  I knew that at one point.
18  It's not on -- off the top of my head.
19  BY MR. FEE:
20   Q   So, Mr. Malamud, we were talking about the
21  process by which you took paper versions and they
22  wound up being posted on your website.  And we've
23  now talked a lot about the double-keying that was
24  done by HTC Global.  After you received the results
25  or the end work from HTC Global, what happened next

184

1   in the process at Public Resource?
2    A   Performed quality assurance, validated the
3   HTML, made sure that all the JPG images were there,
4   so did a link validity check, and then pushed them
5   to our web server.
6    Q   And that would complete the process with
7   respect to standards that are posted in HTML format,
8   right?
9    A   That's a good high-level overview of the
10  work flow, yes.
11   Q   Now, you had also mentioned that there
12  were some standards for which Point.B Studios did
13  some additional work; is that right?
14   A   That's correct.
15   Q   Okay.  First of all, how would you go
16  about identifying which standards you would had ask
17  Point.B Studios to do work on?
18   A   Based on my personal judgment of what
19  were -- were compelling standards that deserved that
20  next level of the workflow, given our limited
21  budget.
22   Q   Once you identified an appropriate
23  standard for Point.B Studios to work upon, what
24  happened next?
25   A   The job was very specific: take the HTML

185

1   file and the JPG images, convert the JPG images
2   exactly into SVG -- SVG, silicon vector graphics or
3   whatever that is -- and MathML, which is a language
4   for typesetting mathematical formulas.
5    Q   Prior to the first time you retained
6   Point.B Studios to do this work on converting JPG
7   images, what experience or expertise were you aware
8   of that Point.B Studios had with respect to that
9   type of activity?
10   A   Rebecca Malamud is a expert on SVG graphic
11  design, use of graphic processing tools.
12   Q   Had -- to the best of your knowledge, had
13  Point.B Studios ever done a project similar to what
14  you had asked Point.B Studios to do for Public
15  Resource?
16       MR. BRIDGES:  Objection, competence, vague
17  and ambiguous.
18       THE WITNESS:  I know they had worked
19  extensively with SVG and with the -- tools used
20  to process SVG.
21  BY MR. FEE:
22   Q   Would that include taking JPG file formats
23  and converting them into SVG file formats?
24       MR. BRIDGES:  Same objections.
25       THE WITNESS:  I'm not aware of anyone

186

1   having done that before.
2   BY MR. FEE:
3       Q   Anybody in the world you're saying?
4           MR. BRIDGES:  Same objections.
5           THE WITNESS:  Not to my knowledge, no.
6   BY MR. FEE:
7       Q   Are you aware of any expertise that
8   public -- or strike that.
9           Were you aware of any expertise that
10  Point.B Studios had in connection with converting
11  JPG images into MathML prior to retaining Point.B
12  Studios?
13          MR. BRIDGES:  Objection, vague and
14  ambiguous.
15          THE WITNESS:  Again, long experience with
16  web tools including SVG, MathML, Photoshop and the
17  other things that -- that advanced graphic
18  designers work with.
19  BY MR. FEE:
20      Q   Any particular experience with converting
21  it to MathML that you're aware of?
22          MR. BRIDGES:  Objection, vague and
23  ambiguous.
24          THE WITNESS:  A lot of familiarity with
25  MathML.  I know that.

187

1   BY MR. FEE:
2       Q   Once the files were delivered to Point.B
3   Studios, do you know what Point.B Studios did with
4   those files to convert the JPG images into MathML or
5   SVG?
6       A   They replicated them exactly.
7       Q   Do you know how Point.B Studios went about
8   doing that?
9       A   Again, I have a very vague understanding
10  of the process, but I'm not an expert in -- in
11  graphic design.
12      Q   What is your understanding of the process?
13      A   Speaking in layman's terms, they traced
14  the image.
15      Q   And that's true with respect to converting
16  JPGs to SVG?
17      A   That's correct.
18      Q   Is that also true with respect to the
19  conversion of JPGs to MathML?
20      A   No.  That's a process of reading the
21  formula and coding in the appropriate syntax for
22  MathML for that formula.
23      Q   Do you know who at Point.B Studios
24  actually did that work?
25          MR. BRIDGES:  Objection, may call for

188

1   speculation.
2           THE WITNESS:  No, I don't.
3   BY MR. FEE:
4       Q   Do you know if children did that work?
5           MR. BRIDGES:  Objection, argumentative,
6   lacks foundation.
7           THE WITNESS:  I know Rebecca ran a
8   mentoring program teaching people graphic design
9   skills.
10          MR. BRIDGES:  Please answer his question.
11          THE WITNESS:  Okay.  I'm sorry.  Please
12  repeat the question.
13  BY MR. FEE:
14      Q   My question is if you were aware of
15  whether or not children were doing the conversion
16  from JPG to MathML or SVG.
17          MR. BRIDGES:  Objection, argumentative,
18  lacks foundation, vague and ambiguous.
19          THE WITNESS:  Children.  I'm sorry.  Is --
20  do you have a particular age limit in mind or --
21  BY MR. FEE:
22      Q   Why don't we start with under 18.
23      A   Yes, I believe some students were
24  involved.
25      Q   Do you know which students were involved?

189

1       A   No.
2       Q   Was -- were these students involved
3   through something called Rural Design Collection
4   (sic)?
5       A   That's correct.
6       Q   And are you aware of whether or not Rural
7   Design Collective says that its target group is
8   children ages 7 to 14?
9       A   If that's what it says on their website.
10  I -- I just don't recall.
11      Q   Would it be your expectation that there
12  are children ages 7 to 14 doing the conversion of
13  the JPG file format images to MathML and SVG on --
14  for Public Resource?
15          MR. BRIDGES:  Objection, lacks foundation,
16  vague and ambiguous.
17          THE WITNESS:  I would be speculating, but
18  that sounds awfully advanced for a 7-year-old.
19  BY MR. FEE:
20      Q   Do you have any understanding as to the
21  age range of the kids who are working on a
22  conversion process for Point.B Studios' project for
23  Public Resource?
24          MR. BRIDGES:  Objection, lacks foundation,
25  may call for speculation, vague and ambiguous,

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

190

1  argumentative.
2        THE WITNESS:  My sole point of contact was
3  Rebecca, and the job was very simple:  JPG in, SVG
4  and MathML back out.  And that was my concern.
5  BY MR. FEE:
6    Q   Did you at least understand that a group
7  of students from RDC, Rural Design Collective, were
8  doing the converting of the formulas and graphics on
9  the standards that you asked them to work on?
10  Strike that.
11       Do you at least understand that a group of
12  students from Rural Design Collective were doing the
13  conversion of formulas and graphics for the
14  standards work that you had asked Point.B Studios to
15  do for Public Resource?
16       MR. BRIDGES:  Objection, lacks foundation,
17  argumentative, vague and ambiguous.
18       THE WITNESS:  They did a lot more than
19  standards, the California Code of Regulations, for
20  example, the graphics images in there which are not
21  standards.
22
23  BY MR. FEE:
24    Q   But you understood that children at Rural
25  Design Collective were working on the conversion of

191

1  the standards that you posted on your website?
2        MR. BRIDGES:  Same objections.
3        THE WITNESS:  I know that students were
4  working on a conversion of JPG images into SVG and
5  MathML. I don't know which specific items anybody
6  worked on.
7  BY MR. FEE:
8    Q   And you know that those kids were working
9  on that -- a conversion for work that was requested
10  by Public Resource?
11       MR. BRIDGES:  Same objections.
12       THE WITNESS:  Yes.
13  BY MR. FEE:
14    Q   Were those kids paid?
15       MR. BRIDGES:  Objection, competence, may
16  call for speculation.
17       THE WITNESS:  I really don't know.
18  BY MR. FEE:
19    Q   Did Public Resource provide any funds to
20  Point.B Studios for this student program?
21       MR. BRIDGES:  Objection, lacks foundation,
22  argumentative, vague and ambiguous.
23       THE WITNESS:  Yes.  Several summers in a
24  row I added extra money to the monthly fee that we
25  paid to Point.B with the understanding that it

192

1  would be for the Rural Design Collective mentoring
2  program.
3  BY MR. FEE:
4    Q   But you don't know if any of that money
5  was actually paid to the kids who were doing the
6  conversions?
7        MR. BRIDGES:  Same objections.
8        THE WITNESS:  I really have no idea.
9  BY MR. FEE:
10    Q   Are you knowledgeable about what training,
11  if any, Point.B Studios provided to the kids who
12  were doing the conversion work for Public Resource
13  prior to the work being done?
14       MR. BRIDGES:  Objection, vague and
15  ambiguous, lacks foundation, argumentative.
16       THE WITNESS:  I read some interesting blog
17  posts and web pages that Rebecca put up on her
18  site.
19  BY MR. FEE:
20    Q   Did those web pages speak to the training
21  that she provided to the kids before they did work
22  for Public Resource?
23    A   They described a variety of -- of
24  tutorial-like posts about how to use Inkscape, which
25  is the authoring language, how to code in MathML,

193

1  the types of graphic design techniques for -- for
2  different types of graphics operations.
3        THE REPORTER:  You said Inkscape?
4        THE WITNESS:  Inkscape, yeah.  All one
5  word, I-N-K-S-C-A-P-E.
6        THE REPORTER:  Thank you.
7  BY MR. FEE:
8    Q   Was your son one of the children who was
9  working on this project, to the best of your
10  knowledge?
11    A   You know, he might have been.  I don't
12  know.  I don't know.
13       MR. BRIDGES:  I'm going to ask the witness
14  not to speculate and answer the questions
15  specifically.
16  BY MR. FEE:
17    Q   After Point.B Studios had done its work
18  converting the JPG files, what happened next in the
19  process to get the converted files onto Public
20  Resource's website?
21    A   So what I got back were three items.  I
22  got a SVG html file.  So that's the HTML file, but
23  instead of pointing to all JPG images, it pointed to
24  at least some SVG files.  So that's item one.  Item
25  two is I got a series of SVG files back that were

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

194

1  optimized for viewing on the web in multiple
2  platforms, all right, so there's a -- and then the
3  third item is an SVG source directory, which
4  included the core work files in MathML and the fully
5  editable SVG graphics.
6      Q   What would you do with all those files?
7      MR. BRIDGES:  Objection, vague and
8  ambiguous.
9      THE WITNESS:  A series of quality
10  assurance checks, link validity, HTML validity, a
11  comparison of at least some of the JPGs to the
12  SVGs, a quality assurance step.
13  BY MR. FEE:
14     Q   Did anything else happen after that and
15  before the files were posted to the web?
16     MR. BRIDGES:  Objection, vague and
17  ambiguous.
18     THE WITNESS:  Once I was satisfied that
19  the work was properly done, then we posted it
20  online.
21  BY MR. FEE:
22     Q   Now, for all the files that you posted
23  online, where did you post these files?
24     A   On --
25     MR. BRIDGES:  Objection, lacks foundation

195

1   and vague and ambiguous.
2      THE WITNESS:  On Law.Resource.Org.
3  BY MR. FEE:
4      Q   Did you also post some version of
5  plaintiffs' standards on Internet Archive at or
6  around the same time as you posted them on the
7  Public Resource website?
8      MR. BRIDGES:  Objection, argumentative,
9  lacks foundation, vague and ambiguous.
10     THE WITNESS:  Are we still talking about
11  SVG and HTML files?
12  BY MR. FEE:
13     Q   No.  I'm asking a more general question
14  now.  I -- maybe I should take a step back.
15     Have you completed the story as to how the
16  files received from Point.B Studios go from Point.B
17  Studios to Public Resource to being posted for the
18  public to view on the web.
19     MR. BRIDGES:  Objection, calling for a
20  narrative, vague and ambiguous, argumentative,
21  lacks foundation.
22     THE WITNESS:  That was a high-level
23  overview of the workflow.
24  BY MR. FEE:
25     Q   So at or around the time that any of the

196

1  standards, either in PDF form or HTML with SVG or
2  MathML, are posted on a Public Resource website,
3  would Public Resource also post some version of that
4  standard on the Internet Archive?
5      MR. BRIDGES:  Objection, hypothetical,
6  lacks foundation, vague and ambiguous.
7      THE WITNESS:  Some of the PDF documents
8  were added to my Internet Archive collection.
9  BY MR. FEE:
10     Q   How do you decide which of the PDF
11  documents containing standards were on your Internet
12  Archive collection?
13     MR. BRIDGES:  Objection, vague and
14  ambiguous.
15     THE WITNESS:  I tried to get most of the
16  ones that were PDF files that were standards
17  incorporated by reference into that -- that
18  collection.
19  BY MR. FEE:
20     Q   Why did you only post PDF versions of the
21  standards to the Internet Archive?
22     MR. BRIDGES:  Objection, argumentative,
23  lacks foundation.
24     THE WITNESS:  The Internet Archive doesn't
25  have an HTML viewing capability.

197

1  BY MR. FEE:
2      Q   Besides the PDF version and the HTML
3  versions of the standards that Public Resource has
4  posted to its website, are there any other file
5  formats that Public Resource has posted standards to
6  its website in?
7      MR. BRIDGES:  Objection, vague and
8  ambiguous.
9      THE WITNESS:  For the standards at issue,
10  no.
11  BY MR. FEE:
12     Q   Are there other file formats used for
13  standards besides the standards at issue in this
14  case?
15     MR. BRIDGES:  Same objections.
16     THE WITNESS:  Plain text.
17  BY MR. FEE:
18     Q   Is there a reason why you don't post the
19  standards at issue in plain text format?
20     MR. BRIDGES:  Objection, argumentative,
21  vague and ambiguous.
22     THE WITNESS:  Didn't seem like it would
23  add any value over the PDF, HTML and SVG.
24     THE REPORTER:  One more time.  Didn't seem
25  like it would add --

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

198

1      THE WITNESS:  It didn't seem like it would
2  add any value over the PDF, HTML and SVG.
3      THE REPORTER:  Okay.
4      MS. RUBEL:  We're up to 42?
5      THE REPORTER:  Yes.
6  (Exhibit 42 marked for identification.)
7  BY MR. FEE:
8      Q   I'm going to hand you what's been marked
9  as Exhibit 42.  It's Defendant/Counterclaimant
10  Public.Resource.Org, Inc.'s Response to
11  plaintiff/Counter-Defendant American Society for
12  Testing and Materials, d/b/a ASTM International
13  Second Set of Interrogatories, No. 16.
14      MR. BRIDGES:  Check to make sure you're
15  familiar with the document.
16      THE WITNESS:  Yeah, yeah.  This is a big
17  one.
18  BY MR. FEE:
19      Q   Take your time.
20      A   So this -- yes, okay.  I -- I'm familiar
21  with this document.
22      Q   Is Exhibit 42 Public Resource's response
23  to Interrogatory 16 served by ASTM?
24      A   It appears to be.
25      Q   I want to turn your attention to what

199

1  comes after Page 11.  Do you see there is an
2  Appendix A?
3      A   Uh-huh.
4      Q   Were you involved in the creation of
5  Appendix A?
6      MR. BRIDGES:  Objection, vague and
7  ambiguous.  Are you asking him if he was involved
8  in preparing this document or whether he consulted
9  with his attorneys?  I'm happy to have him testify
10  with respect to his personal -- whether he
11  personally generated this document or not, if
12  you're asking about his interactions with
13  attorneys, then I'm going to object and instruct.
14  BY MR. FEE:
15      Q   Did you create exhibit -- Appendix A?
16      A   Yes.
17      Q   What is Appendix A?
18      A   Appendix A, I believe, is the -- well,
19  hold on.  Let's read the interrogatory.
20      Appendix A is the date on which Public
21  Resource acquired the standard.  Is that correct?
22  No, no, that's not right.
23      Appendix A provides the name of each PDF
24  format file containing a standard at issue and the
25  date that Public Resource's records indicated it

200

1  uploaded each PDF file to the website.
2      Q   How did you compile Appendix A?
3      A   I looked at the date on the server for
4  each file.
5      Q   And how did you come up with the file
6  listed -- the file names listed here?  Same way?
7      A   I said LS-L ASTM star.
8      Q   And you expected that to identify every
9  ASTM standard that was on the Public Resource server
10  at the time?
11      A   Yes.
12      Q   And all those standards are available for
13  the public to view on the Internet?
14      MR. BRIDGES:  Objection, argumentative,
15  vague and ambiguous.
16      THE WITNESS:  I think so.
17  BY MR. FEE:
18      Q   Turn to Appendix B then.
19      A   Okay.
20      Q   What is -- first of all, were you involved
21  in the creation of Appendix B?
22      MR. BRIDGES:  Same objections and
23  instruction as to your initial questions about --
24  BY MR. FEE:
25      Q   Did you create exhibit -- Appendix B?

201

1      A   Yes.
2      Q   What is Appendix B?
3      A   Appendix B is the name of each HTML format
4  file containing a standard at issue and the date
5  that Public Resource's records indicated uploaded
6  each HTML file to the website.
7      Q   Did you create Appendix B in the same
8  manner that you created Appendix A?
9      MR. BRIDGES:  Objection, vague and
10  ambiguous.
11      THE WITNESS:  It was a slightly more
12  involved command, but, yes, it's generally the same
13  method.
14  BY MR. FEE:
15      Q   And it's your expectation that as of the
16  date that you created Appendix B, each of these
17  files were available for the public to view on the
18  Internet?
19      MR. BRIDGES:  Objection, argumentative,
20  vague and ambiguous.
21      THE WITNESS:  Yes.
22
23  BY MR. FEE:
24      Q   Would you turn to Appendix C, please.  Did
25  you create Appendix C?

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

202

1    A   Yes, I did.
2    Q   What is Appendix C?
3    A   Appendix C provides the name of each SVG
4  format file containing a standard at issue and the
5  date that Public Resource's records indicated
6  uploaded each SVG file to the website.
7    Q   How did you create Appendix C?
8    A   I typed LS minus L ASTM star SVG html.
9    Q   Your expectation is that that would
10  identify all SVG file format files that were related
11  to an ASTM standard that were on Public Resource's
12  server?
13       MR. BRIDGES:  Objection, vague and
14  ambiguous.
15       THE WITNESS:  Yes.
16  BY MR. FEE:
17    Q   And to the best of your knowledge, as of
18  the date you created Appendix C, all those files
19  were available on Public Resource's website --
20       MR. BRIDGES:  Objection.
21  BY MR. FEE:
22    Q   -- for the public to view?
23       MR. BRIDGES:  I'm sorry.  What was the
24  ending?
25       MR. FEE:  For the public to view.

203

1       THE REPORTER:  For the public to view.
2       MR. BRIDGES:  Objection, argumentative,
3  vague and ambiguous.
4       THE WITNESS:  Yes.
5  BY MR. FEE:
6    Q   Were you involved in the creation of
7  Appendix D?
8    A   Yes.
9    Q   What is Appendix D?
10    A   Appendix D is the name of each file
11  containing a standard at issue that Public Resource
12  uploaded to the website at www.archive.org and the
13  date that the Internet Archive's records indicate
14  that the file was uploaded.
15    Q   How did you create Appendix D?
16    A   I used the advanced search capability at
17  the Internet Archive, specified a search for
18  gov.law.astm and indicated that I wanted the
19  identifier, the public dates and the title in the
20  output results.
21       MR. FEE:  We need to change the tape now,
22  so we can take a break.
23       THE VIDEOGRAPHER:  We're going off the
24  record.  The time is 3:32 p.m.  This marks the end
25  of Disc No. 2 in the deposition of Carl Malamud.

204

1       (Recess taken.)
2       THE VIDEOGRAPHER:  We're back on the
3  record.  The time is 3:48 p.m.  This marks the
4  beginning of Disc No. 3 in the deposition of Carl
5  Malamud.
6  BY MR. FEE:
7    Q   Mr. Malamud, before you posted any copies
8  of the plaintiffs' standards at issue on the Public
9  Resource website, did you obtain the consent of any
10  of the plaintiffs?
11       MR. BRIDGES:  Objection, argumentative.
12       THE WITNESS:  No.
13  BY MR. FEE:
14    Q   Did you attempt to get the consent of any
15  of the plaintiffs?
16       MR. BRIDGES:  Same objections,
17  argumentative, vague and ambiguous.
18       THE WITNESS:  I talked to at least one of
19  the plaintiffs, NFPA.
20  BY MR. FEE:
21    Q   Did you ask for NFPA's permission to post
22  the standards on the website?
23       MR. BRIDGES:  Objection, argumentative.
24       THE WITNESS:  We discussed broader
25  availability of standards and the issues that were

205

1  involved.
2  BY MR. FEE:
3    Q   But you don't contend that NFPA consented
4  to your posting of the standards on your website,
5  correct?
6       MR. BRIDGES:  Objection.  To the extent it
7  calls for a legal conclusion or position in this
8  lawsuit, that's going to be attorney -- that's
9  going to be legal opinion and attorney-client
10  privileged and attorney work product.  If you want
11  to ask what Public Resource's public statements
12  have been outside the context of this litigation,
13  feel free, but I'm going to instruct him not to
14  talk about what the positions are taken by the
15  counsel in the lawsuit.
16  BY MR. FEE:
17    Q   You're instructing him not answer whether
18  or not NFPA granted consent to the posting of those
19  standards on Mr. Malamud's website on the grounds of
20  privilege?
21       MR. BRIDGES:  I don't think that's what
22  the question -- maybe I'm wrong, but could the
23  court reporter please reread the question?
24       THE REPORTER:  Okay.
25       (The reporter read the record

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

206

1          as requested.)
2          MR. BRIDGES:  Oh, okay.  All right.
3    It's -- it's argumentative and vague and ambiguous.
4          THE WITNESS:  No.
5          MS. RUBEL:  43?
6          THE REPORTER:  43.
7          (Exhibit 43 marked for identification.)
8    BY MR. FEE:
9      Q   Mr. Malamud, I'm going to hand you what's
10   been marked as Exhibit 43.  It is a spreadsheet.  On
11   the first page it has headers of downloads,
12   identifier and title.
13         Can you identify what Exhibit 43 is?
14     A   No.  What is this document?
15     Q   This is a document that was produced in --
16   by your -- your counsel in connection with this
17   case.
18     A   Okay.
19     Q   So what I -- I don't know what this is,
20   obviously, that's why I'm asking, but in the
21   left-hand column you see a reference to downloads.
22   At some point in time did you try to create a
23   spreadsheet that identified the number of downloads
24   of various ASTM standards from your website?
25     A   You know, I don't recall this document.

207

1    Do you have a date?
2      Q   This is the document as it was produced.
3    It's a -- it was produced as an Excel spreadsheet
4    with just this data in it, I believe.  The Bates
5    label for the record is PRO_0023265.
6      A   So when I see the word "identifier," that
7    tells me that this is data obtained from the
8    Internet Archive search engine.
9      Q   Did you at some point in time attempt to
10   determine how many downloads there were from the
11   Internet Archive website of standards that you had
12   posted to the Internet Archive website?
13         MR. BRIDGES:  Objection, vague and
14   ambiguous.
15         THE WITNESS:  Yes, I did.
16   BY MR. FEE:
17     Q   Is that what defendant's exhibit -- or
18   what Exhibit 43 is?
19         MR. BRIDGES:  Objection, may call for
20   speculation, competence.
21         THE WITNESS:  It would require speculation
22   on my part, that's certain.  Yes.
23   BY MR. FEE:
24     Q   Are you able to identify how many times
25   any particular ASTM standard that you posted to the

208

1    Internet Archive had been downloaded by individuals
2    at the Internet Archive website?
3          MR. BRIDGES:  Objection, competence, calls
4    for speculation, vague and ambiguous.
5          THE WITNESS:  I can run the advanced
6    search query and ask for the download identifier
7    and title fields from the Internet Archive.
8    BY MR. FEE:
9      Q   And you had done that before in connection
10   with this matter?
11     A   Yes.
12     Q   But you're not sure if Exhibit 43 is the
13   end result of that search?
14     A   I -- I have no idea if this is
15   intermediate work product, what the date is.  I
16   don't know.
17   BY MR. FEE:
18     Q   I'm going to hand you a spreadsheet that
19   was produced in native format as PRO_00345530.  It's
20   going to be marked as Exhibit 44.
21         (Exhibit 44 marked for identification.)
22
23   BY MR. FEE:
24     Q   Can you identify Exhibit 44?
25     A   This appears to be an initial stats run on

209

1    a number of accesses from our website for the
2    standards at issue.
3      Q   You see one of the columns is labeled
4    "Hits," right?
5      A   Yes.
6      Q   What is a hit for the purposes of this
7    document?
8      A   An access to the document.
9      Q   Does the tally of hits give you any
10   information about whether or not a standard was
11   printed or downloaded and copied?
12     A   Absolutely not, no.
13     Q   So it's just visitors to that page?
14         MR. BRIDGES:  Objection, vague and
15   ambiguous.
16         THE WITNESS:  It's not even that.  It's
17   access to a file.
18   BY MR. FEE:
19     Q   Did you compile the data in Exhibit 44?
20     A   Yes, I did.
21     Q   How did you compile this data?
22     A   It's a fairly complicated process of
23   beginning with the server logs and then a series of
24   operations to determine the number of unique
25   accesses.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

210

1    Q   Do you believe the process to be accurate?
2        MR. BRIDGES:  Objection, lacks foundation,
3    vague and ambiguous.
4        THE WITNESS:  Let's see.  This is data as
5    of February 2014, and I believe at the time it was
6    accurate for the number of -- of what we call
7    status code 200 and 206 accesses, which is
8    transfer -- a successful transfer of the data to a
9    client.
10   BY MR. FEE:
11   Q   Can you describe to me the meaning, if
12   any, of URL identifiers in Exhibit 44?  Is there a
13   naming convention that you used?
14   A   Yes, there is.
15   Q   Okay.  Can you describe that naming
16   convention used in Exhibit 44?
17   A   Would you like me to take the very first
18   item?
19   Q   Sure.
20   A   Okay.  HTTPS means that it's secure HTTP.
21   Law.Resource.Org is the host name section of what we
22   call the URI.  Pub is our publication area.  U.S. is
23   for U.S. standards.  CFR is the Code of Federal
24   Regulations.  IBR is incorporated by reference.
25   Three is a bucket which happens to contain the ASTM

211

1    standards.  And then I rigorously name each of the
2    standards with a -- a regular naming screen --
3    scheme, and so in this case, it's ASTM, the number
4    of the standard, A100.  1969 is the year.  And PDF
5    is the format of the file as opposed to HTML, for
6    example.
7    Q   And is that naming convention used for all
8    the files referenced in Exhibit 44?
9        MR. BRIDGES:  Objection, vague and
10   ambiguous.
11       THE WITNESS:  I'm -- I'm very careful with
12   the naming and -- and very precise on that, so yes.
13   BY MR. FEE:
14   Q   If a file appears on Exhibit 44, it's your
15   expectation at least as of the date this report was
16   written that that file was available sometime prior
17   to the date of the report being compiled on the
18   Public Resource website; is that right?
19       MR. BRIDGES:  Objection, argumentative,
20   may call for speculation, vague and ambiguous.
21       THE WITNESS:  Yes.
22
23   BY MR. FEE:
24   Q   Would you turn to the last page of Exhibit
25   44?  Do you see at the bottom there's a total with a

212

1    number there?
2    A   Yes.
3    Q   Can you explain what that is, please?
4    A   That is the sum of Column D.
5    Q   So it's the total sum of hits of all the
6    files listed in Exhibit 44?
7        MR. BRIDGES:  Objection, misstates
8    testimony.
9        THE WITNESS:  It's a sum of the hits,
10   which is Column D.
11   BY MR. FEE:
12   Q   I'm going to hand you Exhibit 45, which is
13   a printout of a document produced in native format a
14   PRO_00232654.
15       (Exhibit 45 marked for identification.)
16       THE WITNESS:  What is this document?
17   BY MR. FEE:
18   Q   I was going to ask you what Exhibit 45 is.
19   This is a -- a file, an Excel spreadsheet produced
20   by Public Resource in connection with this matter.
21   A   Would you like me to speculate what this
22   is?
23   Q   Do you know what it is or not?
24   A   Not for a fact.
25   Q   Okay.  Do you have an understanding as to

213

1    what this is?
2        MR. BRIDGES:  Objection, vague and
3    ambiguous.
4        THE WITNESS:  This appears to be search
5    terms.
6    BY MR. FEE:
7    Q   Did you do any attempt to collect data
8    regarding search terms in connection with this
9    matter?
10       MR. BRIDGES:  Objection.  I'm going to ask
11   him to exclude from his answer work in conjunction
12   with attorneys in connection with this case as
13   governed by attorney work product and
14   attorney-client communications, so objecting and
15   instructing to that extent.  Beyond that, he may
16   testify.
17       THE WITNESS:  This looks like an --
18       MR. BRIDGES:  I'll ask the witness not to
19   speculate.  If he knows what it is --
20       THE WITNESS:  Could you repeat the
21   question, please?
22
23   BY MR. FEE:
24   Q   Did you do any attempt to identify
25   information regarding searches in connection with

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

214

1  your document production in this case?
2     A   No.
3     Q   Did you do any attempt to quantify the
4  number of searches for any particular standards
5  incorporated by reference in connection with your
6  document production in this case?
7        MR. BRIDGES:  Objection.  I'm going to
8  object and instruct in terms of dealing with the
9  attorneys on this case as attorney work product and
10  attorney-client communication.  If you want to ask
11  him what this document is to his knowledge, you can
12  ask that, but in terms of the process between
13  lawyer and client, I'm going to object and
14  instruct.
15        THE WITNESS:  This sure looks like
16  Webmaster Tools from Google, which is a service
17  which I don't use on a regular basis.  But this
18  looks like a -- a dump.
19  BY MR. FEE:
20     Q   Did you use master tools from Google?
21     A   Webmaster Tools.
22     Q   Oh, Webmaster Tools.  I'm sorry.
23        First of all, what is Webmaster Tools?
24     A   It -- it's part of the Google tools that
25  allow you to manage your website, for example, by

215

1  listing a particular URL not to be in the Google web
2  index.
3     Q   What work, if any, have you done in
4  Webmaster Tools related to any standards at issue in
5  this case?
6        MR. BRIDGES:  Objection.  To the extent
7  there's any work that's in conjunction with
8  attorneys as attorney work product or at the
9  direction or in conjunction with attorneys that are
10  covered by attorney-client privilege, I'll object
11  and instruct.
12        If you can testify beyond that, you may.
13        THE WITNESS:  I really haven't used web
14  tools for the last couple years with the single
15  exception of listing a document so that it is not
16  included in the Google search engine.
17  BY MR. FEE:
18     Q   Have you ever seen a report similar to
19  Exhibit 45 prior to today?
20        MR. BRIDGES:  Objection, vague and
21  ambiguous.
22        THE WITNESS:  Well, that's why I guessed
23  that this was the Webmaster Tools dump.
24  BY MR. FEE:
25     Q   In what circumstance did you encounter a

216

1  Webmaster Tools dump prior to today?
2        MR. BRIDGES:  Same objection, instruction,
3  conditional objection, conditional instruction.
4        THE WITNESS:  Like I said, a couple years
5  ago I looked at their interface and obviously --
6  you know, this is the result of -- of that.  I'm
7  sorry.  That --
8        MR. BRIDGES:  I'm asking the -- I'll
9  direct the witness to testify as to what he knows
10  and not to speculate.
11  BY MR. FEE:
12     Q   Have you ever used Webmaster Tools to try
13  to quantify the amount of clicks or impressions on
14  any pages at your website prior to today?
15     A   No.
16     Q   Do you have an understanding as to what
17  CTR refers to in the context of Webmaster Tools?
18     A   Actually, I have no idea.
19     Q   Do you have any knowledge regarding
20  whatever search terms were used by visitors to your
21  websites to arrive at your website?
22        MR. BRIDGES:  Objection, calls for
23  speculation, competence, vague and ambiguous.
24        THE WITNESS:  No, that's not something I
25  look for.

217

1  BY MR. FEE:
2     Q   Did you provide the spreadsheet that
3  contained the information shown in Exhibit 45 to be
4  produced in connection with this matter?
5        MR. BRIDGES:  Objection, may call for
6  speculation, competence, vague and ambiguous.
7        THE WITNESS:  I'm not sure I understand
8  that question.  Would you mind repeating it?
9  BY MR. FEE:
10     Q   Sure.  Did you provide the data that was
11  reflected in Exhibit 45 in order to have it
12  produced -- be produced in connection with this
13  litigation?
14        MR. BRIDGES:  All the same objections.
15        THE WITNESS:  Well, you just told me we
16  produced this, right?
17  BY MR. FEE:
18     Q   Public Resource produced the data that's
19  shown in this -- in this exhibit.  I'm asking you if
20  that was from you.
21        MR. BRIDGES:  Objection, calls for
22  speculation, competence.  I think he's testified he
23  didn't recognize this document.
24        THE WITNESS:  I -- I really didn't
25  recognize this document.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

218

1  BY MR. FEE:
2     Q   Was anybody besides yourself involved in
3  the document collection process in connection with
4  this litigation, excluding your lawyers?
5     A   No.
6     Q   I'm going to give you Exhibit 46, which is
7  a printout, a spreadsheet produced in native format
8  as PRO_00232655.
9        (Exhibit 46 marked for identification.)
10 BY MR. FEE:
11    Q   Do you know what Exhibit 46 is?
12    A   Was there a date in the metadata for this
13 document?
14    Q   I don't know the answer to that question
15 off the top of my head.
16        Do you know what Exhibit 46 is?
17    A   It appears to be similar to the previous
18 exhibit you showed me.
19    Q   You don't know what it is, though?
20    A   I -- I don't recollect it.
21    Q   And you don't know how to interpret the
22 data contained in Exhibit 46?
23        MR. BRIDGES:  Objection, lacks foundation,
24 assumes facts not in evidence, calls for
25 speculation, vague and ambiguous, argumentative.

219

1        THE WITNESS:  Yeah, I guess I would want
2  to pull up the web page for Webmaster Tools and --
3  and look at the definitions of each of these.
4  BY MR. FEE:
5     Q   Did you create Exhibit 46 in its -- in at
6  least an Excel spreadsheet format?
7        MR. BRIDGES:  Objection.  I think he's
8  testified he didn't recognize the document.
9        THE WITNESS:  I -- I don't recollect the
10 document.  It was obviously on a disk drive
11 someplace.
12 BY MR. FEE:
13    Q   Mr. Malamud, that's all the questions I'm
14 going to have for you in your capacity as a
15 corporate representative.  I'll, of course, have
16 questions for you tomorrow in your individual
17 capacity, but I'm going to turn the proceedings over
18 to the other plaintiffs at this juncture.
19    A   Okay.  Great.  Thank you.
20    Q   Thanks for your time.
21    A   You bet.
22        THE VIDEOGRAPHER:  We're going off the
23 record.  The time is 4:13 p.m.
24        (Recess taken.)
25        THE VIDEOGRAPHER:  We're back on the

220

1  record.  The time is 4:27 p.m.
2        EXAMINATION BY COUNSEL FOR PLAINTIFF NFPA
3  BY MR. REHN:
4     Q   Good afternoon.
5     A   Good afternoon.
6     Q   I'm Thane Rehn and I'm counsel for NFPA.
7  And do you understand that the same basic ground
8  rules apply for my questions as applied for ASTM's
9  questions?
10    A   I do.
11    Q   And that you're still under oath?
12    A   Yes.
13    Q   Now, I would like to direct your attention
14 back to Exhibit 38, which was marked earlier today.
15        THE REPORTER:  We're copying them,
16 Counsel.  Do you have a copy?
17        MR. REHN:  Yeah, I don't have a copy of
18 that.
19        THE REPORTER:  They're being copied.
20        MR. REHN:  Oh, okay.
21        MS. RUBEL:  Here, I still have them.
22        THE REPORTER:  Oh, good.  Thanks, Jordana.
23        Thank you.
24        THE WITNESS:  Exhibit 38?
25 BY MR. REHN:

221

1     Q   Yes.
2     A   Okay.
3     Q   Now, I believe you testified earlier that
4  exhibit -- do you have Exhibit 38?
5     A   Yes, I do.
6     Q   Go ahead and find -- I'm not sure which
7  number it is, I'm trying to find that now, but the
8  one -- Exhibit 40 as well.
9     A   Yes, I have Exhibit 40.
10    Q   Okay.  Let's actually start with Exhibit
11 40.
12        Now, I believe you testified earlier that
13 this is a page from Public Resource's website that
14 you prepared?
15        MR. BRIDGES:  Actually, I'm not sure that
16 was his testimony, but...
17        THE WITNESS:  It appears to be the
18 safety.html page from our website.
19 BY MR. REHN:
20    Q   And did you prepare this page?
21    A   I -- I believe so.
22    Q   And this page has listings of, I believe,
23 all 50 states, and within those listings there are
24 columns labeled; building, fire, mechanical and so
25 forth, do you see that?

222

1     A   Yes, sir.
2          MR. BRIDGES:  Well, are you asking him to
3   verify your statement?  If so, I want him to count
4   the states and to review the document more
5   thoroughly.
6          MR. REHN:  Well, we don't have to --
7   BY MR. REHN:
8     Q   This has listings of a number of states
9   and within each of those listings there are columns
10  labeled building, fire, mechanical and so forth; is
11  that correct?
12    A   Yes.
13    Q   And one of those columns is labeled
14  electrical; is that correct?
15    A   Yes.
16    Q   Now, on -- let -- if we just look at the
17  first state listed, Alabama in that code electrical,
18  do you see what it says there?
19    A   It says NEC 2011.
20    Q   And it says that twice; is that right?
21    A   Yes.
22    Q   Do you know why there's two
23  identifications of NEC 2011?
24    A   Yes, because the original HTML page is in
25  color and one is, I believe, red and one is green.

223

1     Q   And what is the green one?
2     A   That would be an HTML version of that
3   document.
4     Q   And that -- those are the versions you
5   prepared according to the process that you described
6   earlier working with HTC and Point.B Studios?
7     A   For a straight HTML file it would have
8   just been HTC.
9     Q   Okay.  And what about the ones that are in
10  green?  I'm sorry.  The green were the HTML.  The
11  ones that would be in red, what would those be?
12    A   That's a PDF version of the file.
13    Q   And is the PDF version just a scan of the
14  standard as you received it -- as you originally
15  purchased it?
16    A   It's a scan with OCR and a cover sheet.
17         THE REPORTER:  With those what?  With --
18         THE WITNESS:  With OCR --
19         THE REPORTER:  Oh.
20         THE WITNESS:  -- and a cover sheet.
21         THE REPORTER:  Okay.
22
23  BY MR. REHN:
24    Q   So wherever we see two separate links
25  referencing the same standard, one of those links is

224

1   an HTML version that was produced in conjunction
2   with HTC and -- and yourself; is that correct?
3          MR. BRIDGES:  If he's asking about the
4   whole document, then make sure that you understand
5   the whole document and answer the question.
6          THE WITNESS:  Uh-huh.  Yes.
7   BY MR. REHN:
8     Q   And -- and when -- and the other link
9   would generally be a link to a PDF, and -- and the
10  way that that PDF was made was you scanned the
11  standard as it was purchased, ran OCR and uploaded
12  that with your cover page attached as well?
13    A   Yes.
14    Q   And the cover page has a representation
15  these standards have been incorporated by reference;
16  is that right?
17    A   Yes, sir.
18    Q   Now, when we see examples of standards
19  where there's only one link, like if you'll turn to
20  the second page of this document, you'll look, for
21  example, in Connecticut and you'll see in the
22  electrical column there's the NEC 2005.  Do you see
23  that?
24    A   Yes, I do.
25    Q   In that case, do you know which -- do you

225

1   know just by looking at this document which version
2   that would be?  Would it be the HTML or the PDF?
3     A   I don't know by looking at this document.
4   I -- I know that we only have a PDF version of the
5   NEC 2005.
6     Q   So -- so you know by virtue of your own
7   knowledge that that would link to the PDF version?
8     A   Yes.
9     Q   And do you know why you don't have an HTML
10  version of the 2005 NEC?
11    A   Because we didn't give it to HTC to be
12  double-keyed.
13    Q   So only for some of the standards you
14  obtained from NFPA did you do the double-keying
15  process in the conversion to HTML?
16    A   That's correct.
17    Q   And for standards where there is only a
18  PDF version that's linkable from this page, the PDF
19  version is the only version that you're providing on
20  your website?
21    A   I think so.
22         MR. BRIDGES:  I'll ask the witness to
23  testify only as to what he knows.
24  BY MR. REHN:
25    Q   When -- when there's just one link to a

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

226

1  standard and that link takes to you a PDF version,
2  is there -- does that generally mean there is not an
3  HTML version available on the Public Resource
4  website?
5       MR. BRIDGES:  Objection, hypothetical.
6  BY MR. REHN:
7       Q   Well, let's look at the Connecticut
8  listing, for example.  So for the NEC 2005, is there
9  an HTML version available on the Public Resource
10  website?
11      A   No, there is not.
12      Q   Okay.  How about if you look down a little
13  further at Hawaii, you'll see that in the electrical
14  column it says, NEC 2008.  And is it your
15  understanding that that would be a link to the PDF
16  version or to the HTML version?
17      A   To the PDF version.
18      Q   And is that another case where you don't
19  have an HTML version of that code?
20      A   That's correct.
21      Q   So on the Public Resource website the
22  public can download a scanned and OCR'd PDF version
23  of the 2008 National Electrical Code, but there's
24  not an HTML version available?
25      MR. BRIDGES:  Objection, argumentative,

227

1  calls for speculation, vague and ambiguous,
2  compound.
3       THE WITNESS:  We don't have an HTML
4  version of that standard.
5  BY MR. REHN:
6       Q   And you do have a scanned PDF of the
7  standard as you purchased with OCR recognition?
8       A   Yes.
9       Q   And in a case like that, I believe you
10  testified earlier that you scanned those PDFs from
11  paper versions of the standards?
12      A   That's correct.
13      Q   And did you always use paper versions of
14  the standards?
15      MR. BRIDGES:  Objection, lacks foundation,
16  vague and ambiguous.
17      THE WITNESS:  For all the standards at
18  issue we use paper standards.
19  BY MR. REHN:
20      Q   And were -- were there other cases for
21  standards other the ones that are identified in the
22  complaint where you did not use paper standards, you
23  used electric -- electronic versions?
24      MR. BRIDGES:  Objection, lacks foundation,
25  vague and ambiguous.

228

1       THE WITNESS:  For your -- for the
2  plaintiffs?
3  BY MR. REHN:
4       Q   Let start with the plaintiffs.  For any of
5  the plaintiffs, did you upload any standards
6  based -- from electronic versions that you had
7  purchased?
8       A   No.
9       Q   Now, if you'll look at Exhibit 38, and if
10  you can turn to the page that's Bates-stamped
11  166237.  The Bates stamps are the little numbers at
12  the bottom there.
13      A   Yes.  Okay.
14      Q   So you'll see beginning on that page and
15  extending over to the other page there are a number
16  of NFPA standards listed there.
17      A   That's correct.
18      Q   And, again, for some of those standards
19  there are two links -- actually, for the first one
20  for NFPA 10, there are three links; is that right?
21      A   That's correct.
22      Q   And so the -- and, again, the PDF would be
23  as we described it earlier.  That's just a simple
24  scan of the paper version that you purchased with
25  OCR recognition; is that right?

229

1       MR. BRIDGES:  Objection.
2  BY MR. REHN:
3       Q   And the HTML version is the version we
4  discussed earlier.  That would be a double-keyed --
5  or what -- what you paid HTC to double-key as you
6  received from them and then uploaded; is that
7  correct?
8       MR. BRIDGES:  Objection.  I think that
9  misstates his testimony, lacks foundation.
10      THE WITNESS:  It is a double-keyed HTML
11  file with JPG images.
12  BY MR. REHN:
13      Q   Okay.  And then the SVG, the one that's
14  labeled SVG, the next one, what -- what is that?
15      A   That is an HTML file with links to some
16  SVG images and some JPG images.
17      Q   So when it says, SVG, that doesn't
18  necessarily mean that all the graphical information
19  is in SVG format?
20      A   Not necessarily.
21      Q   Some of it may be in the JPG format?
22      A   That's correct.
23      Q   Do you know, did -- was there any reason
24  why you left some of the graphical information in
25  the JPG format and you converted some to SVG?

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

230

1      MR. BRIDGES:  Objection, argumentative,
2  lacks foundation, vague and ambiguous.
3      THE WITNESS:  My instructions to Point.B
4  were to do an exact replication of images, and if
5  for some reason they couldn't do an exact
6  replication, skip them, you know.  So then we stick
7  with the JPG.
8  BY MR. REHN:
9      Q   Okay.  And again, if we -- if we go down a
10  little bit, you'll see NFPA 13 listed here.
11      A   Uh-huh.
12      Q   In that, there's only one link.  Do you
13  know why that is?
14      MR. BRIDGES:  Objection, vague and
15  ambiguous.
16      THE WITNESS:  Because that's how this web
17  page is coded.
18  BY MR. REHN:
19      Q   But do you know if you have a HTML version
20  of the 2002 NFPA 13 standard?
21      A   I don't know.
22      Q   Do you know in general when there is only
23  one link, are there -- are those generally PDF files
24  or HTML files?
25      MR. BRIDGES:  Objection, hypothetical,

231

1  vague and ambiguous, compound.
2      THE WITNESS:  In this particular page, the
3  manifest.us html, if there's only single listing,
4  it's going to be a PDF file.
5  BY MR. REHN:
6      Q   So for NFPA 13, that link would presumably
7  go to a PDF file?
8      THE REPORTER:  One more time, Counsel.
9  Too fast.
10  BY MR. REHN:
11      Q   So for NFPA 13, as listed here, if you
12  clicked on that link on your website, it would
13  deliver a PDF file?
14      A   Presumably, yes.
15      Q   And -- and that -- and again -- and again,
16  that would be a file you had purchased a paper copy
17  and scanned that PDF and uploaded it to this website
18  with OCR recognition?
19      A   Correct.
20      MR. BRIDGES:  Objection, misstates.  Give
21  me time to object.
22      THE REPORTER:  What was your answer?
23      THE WITNESS:  That's correct.
24  BY MR. REHN:
25      Q   And again, for all of the standards listed

232

1  here, you used paper versions that you scanned into
2  PDFs?
3      MR. BRIDGES:  Objection, lacks foundation.
4  What do you mean by all the standards here?
5  BY MR. REHN:
6      Q   For the standard -- for the NFPA standards
7  listed on this page and the following page, the PDF
8  versions of those standards that are on your website
9  are scanned from paper copies that you purchased; is
10  that correct?
11      A   Yes.
12      Q   And you testified about this a little bit
13  earlier, but I -- I just want to come back to it.
14  Was it your understanding that you could purchase
15  PDF versions of the standards directly from NFPA?
16      MR. BRIDGES:  Objection, argumentative,
17  lacks foundation, assumes facts not in evidence,
18  may call for a legal opinion, vague and ambiguous.
19      THE WITNESS:  I am aware that NFPA does
20  have documents available on their website.
21  BY MR. REHN:
22      Q   In PDF format?
23      A   Yes.
24      Q   And you're aware that you can purchase a
25  PDF version of an NFPA standard from the NFPA

233

1  website?
2      MR. BRIDGES:  Objection, argumentative,
3  lacks foundation, assumes facts not in evidence,
4  calls for a legal conclusion and vague and
5  ambiguous.
6      THE WITNESS:  Yes.
7  BY MR. REHN:
8      Q   But -- but you didn't purchase PDFs for
9  these standards; instead, you purchased paper copies
10  and then made your own PDFs based on those paper
11  copies?
12      MR. BRIDGES:  Objection, argumentative,
13  lacks foundation, assumes facts not in evidence,
14  underlying legal opinion and vague and ambiguous --
15      THE WITNESS:  Yes.
16      MR. BRIDGES:  -- and compound.
17      THE WITNESS:  Could you repeat the
18  question, please?
19      THE REPORTER:  All right.
20      (The reporter read the record
21      as requested.)
22      MR. BRIDGES:  Same objections.
23      THE WITNESS:  All of the NFPA standards at
24  issue were -- were based on paper copies.
25  BY MR. REHN:

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015

234

1    Q   And you -- I believe you said earlier that
2  that was because you were concerned about the terms
3  of use that you would have to click through to
4  access the PDF copies from the NFPA; is that
5  correct?
6        MR. BRIDGES:  Objection.  That misstates
7  his testimony.
8        THE WITNESS:  That's not what I stated.
9  It's far easier --
10       MR. BRIDGES:  Answer his question.
11       THE WITNESS:  Will you repeat the
12  question, please?
13           (The reporter read the record
14            as requested.)
15       MR. BRIDGES:  Same objection, misstates
16  testimony.
17       THE WITNESS:  No.
18  BY MR. REHN:
19    Q   You testified earlier that terms of use
20  were one of your concerns with purchasing PDF
21  versions of the standards; is that right?
22       MR. BRIDGES:  Objection.  That misstates
23  his testimony, I believe, and vague and ambiguous.
24       THE WITNESS:  Terms of use are one of the
25  factors that I looked at.

235

1  BY MR. REHN:
2    Q   And was it your understanding that if you
3  purchased an electronic PDF version of a standard
4  from NFPA, that would come with terms of use?
5        MR. BRIDGES:  Objection, lacks foundation,
6  assumes facts not in evidence, calls for a legal
7  conclusion and vague and ambiguous.
8        THE WITNESS:  It was my understanding that
9  a PDF document would come with digital rights
10  management.
11  BY MR. REHN:
12    Q   And what do you mean by "digital rights
13  management"?
14    A   That limits the functionality available
15  for a PDF document.
16    Q   And was it also your understanding that it
17  would be accompanied by terms of use?
18       MR. BRIDGES:  Objection, lacks foundation,
19  vague and ambiguous and -- and may call for a legal
20  conclusion or legal opinion.
21       THE WITNESS:  I don't know.  I didn't buy
22  any PDF documents from the NFPA website.
23  BY MR. REHN:
24    Q   You did not purchase any PDF documents
25  from the NFPA website?

236

1    A   No.
2        MR. BRIDGES:  I need time.
3        Objection, lacks foundation, assumes facts
4  not in evidence, vague and ambiguous,
5  argumentative.
6  BY MR. REHN:
7    Q   What about for standards other than the
8  standards that are listed here and in exhibit -- I
9  believe it was 40.  So there's NFPA -- let's start
10  with this exhibit.  Exhibit 38 lists the NFPA
11  standards we've been looking at.  For those
12  standards, your testimony is that you did not
13  purchase PDF versions of those standards; is that
14  correct?
15       MR. BRIDGES:  Objection, argumentative,
16  completely lacks foundation, vague and ambiguous,
17  calls for a legal conclusion.
18       Just so that my objections are no mystery,
19  is it NFA -- NFPA's position that those
20  documents are available for purchase?  Is
21  that -- is that your position?
22       MR. REHN:  Well, I -- I'm not going to
23  make factual representations on the record.
24       MR. BRIDGES:  Okay.  Well, again, it
25  assumes facts not in evidence.

237

1        MR. REHN:  Okay.
2        MR. BRIDGES:  And just so you're clear,
3  that's -- that's a lot of the basis for my
4  objection.  I'm not sure that -- I'm not sure as a
5  matter of fact that your entire line of questioning
6  is a good-faith -- is grounded, in fact, in good
7  faith.
8  BY MR. REHN:
9    Q   For the NFPA standards on these pages that
10  we've been looking at, you did not purchase PDF
11  versions of those standards from NFPA; is that
12  correct?
13       MR. BRIDGES:  Same objections.
14       THE WITNESS:  Yes, that's correct.
15  BY MR. REHN:
16    Q   And is the same answer true for the NFPA
17  standards listed on Exhibit 40?
18       MR. BRIDGES:  Same objections.
19       THE WITNESS:  Yes, that's correct.
20  BY MR. REHN:
21    Q   Did you purchase PDF versions of any NFPA
22  standards other than the NFPA standards listed on
23  these two exhibits?
24       MR. BRIDGES:  Same objections.
25       I'm sorry.  Could you please -- I may

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

238

1   withdraw those.  Can you please reread the
2   question?
3            (The reporter read the record
4            as requested.)
5       MR. BRIDGES:  Okay.  The same objections.
6       THE WITNESS:  I don't think so.
7       MS. RUBEL:  Exhibit 47?
8       THE REPORTER:  Yep.
9       (Exhibit 47 marked for identification.)
10  BY MR. REHN:
11      Q   I would like to hand you what's been
12  marked as Exhibit 47.  For the record, this is an
13  e-mail with the Bates stamp PRO_00166295.  Do you
14  recognize this as an e-mail to yourself from
15  Custserv@nfpa.org?
16      A   Yes.
17      Q   And could you read the subject of this
18  e-mail, please?
19      A   Order confirmation from NFPA.
20      Q   And then if you go to the second paragraph
21  in this e-mail, beginning with the -- the word
22  because, can you just go ahead and read that
23  paragraph?
24      A   "Because you purchased a PDF file of one
25  of the NFPA's codes and standards."

239

1       Q   Go ahead and read the whole paragraph.
2       A   "Your credit card will be charged within
3   24 hours of receipt of your order and as that
4   portion of your order will be automatically
5   fulfilled once you download the file, click on the
6   following link to see the downloading instructions
7   for your PDF."
8       Q   Now, does this refresh your recollection
9   that you did purchase some PDF files of some NFPA
10  codes and standards from the NFPA?
11      A   Yes, it does.
12      Q   And, in fact, you did so; is that right?
13      MR. BRIDGES:  Does it -- do you recall?
14      THE WITNESS:  Yes.
15  BY MR. REHN:
16      Q   So, for example, if we turn to the second
17  page of this document, it lists NFPA 17.
18      A   Yes.
19      Q   And it -- and that's next to a -- a
20  listing 1702 PDF.
21      A   Uh-huh.
22      Q   And then it says, "NFPA 17 standard for
23  dry chemical extinguishing systems, 2002 edition,
24  328 kb."
25           Do you see that?

240

1       A   Yes, I do.
2       Q   Is it your understanding that that
3   represents a purchase of a PDF file of that NFPA
4   standard from the NFPA?
5       A   Yes.
6       MR. BRIDGES:  Do you have a recollection
7   of that?
8       THE WITNESS:  Yes, I do.
9   BY MR. REHN:
10      Q   Now, that standard is not listed on
11  Exhibits 38 or 40 I don't believe; is that right?
12      A   Which one?
13      Q   The one we just looked at, NFPA 17.
14      A   That's correct.
15      Q   All right.  And you'll see just scrolling
16  down that page there's a -- would you agree with me
17  there's quite a few PDFs?
18      MR. BRIDGES:  Objection, vague and
19  ambiguous.
20  BY MR. REHN:
21      Q   If you look on that page and the following
22  page, maybe a dozen, maybe 15.
23      MR. BRIDGES:  Objection, vague and
24  ambiguous.
25      MR. REHN:  We can count them if you'd

241

1   like.
2       THE WITNESS:  I see 23.
3   BY MR. REHN:
4       Q   Twenty-three.  So does that mean you
5   purchased 23 standards in PDF format from the NFPA
6   on -- on this date in 2008?
7       MR. BRIDGES:  Object to the extent the
8   witness doesn't have an independent recollection.
9       THE WITNESS:  Based on this invoice, I --
10  I would say that's correct.
11  BY MR. REHN:
12      Q   Do you recall downloading those standards?
13      A   No, I don't.
14      Q   Do you recall possessing those standards
15  in PDF format?
16      A   No, I don't recall.
17      Q   Do you have any reason to believe you
18  would have purchased all these standards and you
19  wouldn't have downloaded them?
20      MR. BRIDGES:  Objection, argumentative,
21  vague and ambiguous.
22      THE WITNESS:  No, I have no reason.
23  BY MR. REHN:
24      Q   So you would expect that you would have
25  gone ahead and downloaded the standards that you

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

242

1  purchased?
2      MR. BRIDGES:  Objection, calls for
3  speculation.
4      THE WITNESS:  I'd want to go check on my
5  disk drive and see if they were there.
6  BY MR. REHN:
7      Q   Do you think if -- if you did download
8  them, do you think you would still be in possession
9  of those PDFs?
10     MR. BRIDGES:  Objection, hypothetical.
11     THE WITNESS:  I don't know.
12 BY MR. REHN:
13     Q   Do you remember ever being in possession
14 of a PDF from NFPA specifically, a PDF that you had
15 purchased from NFPA specifically?
16     MR. BRIDGES:  Same objections as earlier,
17 lacks foundation, may assume facts not in evidence.
18     But go ahead.
19     THE WITNESS:  No, I -- I certainly don't
20 remember working with PDF files from NFPA.
21 BY MR. REHN:
22     Q   So you don't remember, for example, seeing
23 a PDF that had a -- a watermark or a -- a stamp
24 along the top of it that represented that it was an
25 NFPA standard.

243

1      A   No, I don't recollect that.
2      Q   Have you seen a PDF like that in somebody
3  else's possession?
4      MR. BRIDGES:  Objection, vague and
5  ambiguous, lacks foundation.
6      THE WITNESS:  No.
7  BY MR. REHN:
8      Q   If I could direct your attention to the
9  page marked -- the page Bates-stamped 166297.
10     A   Uh-huh.
11     Q   And you'll see first standard listed
12 there -- the first complete standard, can you go
13 ahead read that -- the identity of that standard?
14     MR. BRIDGES:  Objection, lacks foundation,
15 vague and ambiguous.
16     THE WITNESS:  This is NFPA 59, Utility LP
17 Gas Plant Code 2004.
18 BY MR. REHN:
19     Q   All right.  And if I could direct your
20 attention back to Exhibit 38.
21     A   Uh-huh.
22     Q   And if you could turn to the page
23 Bates-stamped 166238.
24     A   That number again, 238?
25     Q   Yeah.  Are you there?

244

1      A   Yes.
2      Q   And could you read the first complete --
3  just the number of the first complete standard
4  there?
5      A   NFPA 59.
6      Q   2004 edition?
7      A   That's what it says.
8      Q   Now, is it your understanding that's the
9  NFPA 59 2004 edition that's represented on the
10 invoice at -- at Exhibit 47?
11     MR. BRIDGES:  Objection, lacks foundation,
12 assumes facts not in evidence, vague and ambiguous,
13 argumentative.
14     THE WITNESS:  No, that is not my
15 understanding.
16 BY MR. REHN:
17     Q   And -- and why is that?
18     A   Because I well could have purchased a
19 paper copy of it as well.
20     Q   But is it your understanding that NFPA --
21 the 2004 edition of NFPA 59 is referring to the same
22 document in both of these two exhibits?
23     MR. BRIDGES:  Objection, lacks foundation,
24 vague and ambiguous.
25 BY MR. REHN:

245

1      Q   The same standard?
2      A   It is the same standard.
3      Q   So is it your understanding that prior to
4  posting the 2004 edition of NFPA 59 on your website
5  in PDF format you purchased a PDF version of that
6  standard from NFPA?
7      MR. BRIDGES:  Objection, may call for
8  speculation.  You can ask him about his present
9  memory.
10     THE WITNESS:  According to this invoice in
11 2008, yes.
12 BY MR. REHN:
13     Q   But you don't believe that was the version
14 that you used to post the PDF to your website?
15     MR. BRIDGES:  Objection, vague and
16 ambiguous, lacks foundation.
17     THE WITNESS:  No, I don't believe so.
18 BY MR. REHN:
19     Q   And looking back at Exhibit 47, do you see
20 any indication that you purchased a paper copy of
21 NFPA 59 at this -- on this date?
22     MR. BRIDGES:  Objection, lacks foundation
23 argumentative, vague and ambiguous.
24     THE WITNESS:  Not on that date in that --
25 in this invoice.

246

1  BY MR. REHN:
2     Q   Do you know if you may have purchased a
3  paper version at some other time?
4     A   I don't know specifically for a fact.
5     Q   Okay.  But -- but you're quite sure that
6  the version you posted on your website came from a
7  paper version?
8     A   I think so.
9     Q   Okay.  You can go ahead and put that aside
10 for now.
11    A   Okay.
12    Q   Now, you've testified a little bit about
13 the website Internet Archive today.
14    A   That's correct.
15    Q   And you testified that you have an
16 administrative account with the Internet Archive
17 website?
18    A   No.  I have a user account that has some
19 administrative privileges.
20    Q   Okay.  So you have administrative
21 privileges and you've had those for some time; is
22 that right?
23       MR. BRIDGES:  Objection, vague and
24 ambiguous.
25       THE WITNESS:  Correct.

247

1  BY MR. REHN:
2     Q   Okay.  And you -- you've posted a number
3  of the plaintiffs' standards on the Internet Archive
4  website?
5        MR. BRIDGES:  Objection, vague and
6  ambiguous.
7        THE WITNESS:  That's correct.
8  BY MR. REHN:
9     Q   And for the standards you posted on the
10 Internet Archive website, were those the PDF
11 versions of the -- the same as the PDF versions that
12 were posted on your website?
13       MR. BRIDGES:  Objection, lacks -- lacks
14 foundation, vague and ambiguous.
15       THE WITNESS:  Yes, any document that came
16 from my website would have gone to the Internet
17 Archive.
18 BY MR. REHN:
19    Q   And you posted the HTML versions when you
20 had them as well on the Internet Archive?
21    A   No.  The Internet Archive doesn't have a
22 capability of posting HTML files.
23    Q   So on the Internet Archive, you only
24 posted PDF versions of the standards at issue?
25       MR. BRIDGES:  Objection vague and

248

1  ambiguous.
2     A   That's correct.
3        MR. REHN:  What are we on, 48?
4        THE REPORTER:  48.
5     (Exhibit 48 marked for identification.)
6  BY MR. REHN:
7     Q   Handing you what's been marked as Exhibit
8  48.  And for the record, this is a document
9  Bates-stamped IA-ASTM-0013.
10       Have you ever seen this document before?
11    A   No, I haven't.
12    Q   Do you know what this document is?
13       MR. BRIDGES:  Objection, calls -- it calls
14 for speculation, competence.
15       THE WITNESS:  Not really.  I've never seen
16 this.
17 BY MR. REHN:
18    Q   Okay.  You can set that aside.
19       This will be -- I'll hand you an exhibit
20 that's been marked as Exhibit No. 49.
21    (Exhibit 49 marked for identification.)
22
23 BY MR. REHN:
24    Q   And this is a document Bates-stamped
25 IA-ASTM-0001, and I can represent to you that this

249

1  is a document that was produced pursuant to a
2  subpoena in this litigation by the Internet Archive.
3  And this document has some similarities to an
4  exhibit we looked at earlier where there is a column
5  marked identifier, and then a column marked public
6  date, and then a column marked uploader.
7        Do you see that?
8     A   Yes, I do.
9     Q   And is it your understanding that the
10 identifier column refers to the file name that you
11 gave to plaintiffs' standards that you uploaded to
12 Internet Archive?
13       MR. BRIDGES:  Objection, may call for
14 speculation and vague and ambiguous.
15       THE WITNESS:  The identifier is different
16 than the file name on our site, but I attempt to
17 keep those two labels the same.
18 BY MR. REHN:
19    Q   So the identifier that you use when you
20 upload standards to Internet Archive is different
21 from the identifier you use on your website?
22    A   It could be different.
23    Q   Could be different.  Do you recognize the
24 identifiers listed here as the identifiers you used
25 when you uploaded plaintiffs' standards to the

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

250

1  Internet Archive website?
2       MR. BRIDGES:  Objection, lacks foundation,
3  vague and ambiguous.  Are you talking about
4  particular ones?
5       MR. REHN:  I'm talking about the
6  identifiers listed in Column A there.
7       MR. BRIDGES:  As a whole?
8  BY MR. REHN:
9    Q   Do you recognize that format as the format
10  you used generally speaking?
11       MR. BRIDGES:  Objection, vague and
12  ambiguous.
13       THE WITNESS:  Gov.law. standard name is
14  the naming convention that -- that I use.
15  BY MR. REHN:
16    Q   And if you look at just the first 24 or 25
17  standards, they all have an NFPA -- gov.law.NFPA; is
18  that right?
19    A   That's correct.
20    Q   And is that -- is it your understanding
21  that these are files --
22    A   Twenty-six standards.  I'm sorry, sir.
23  Not 24.
24    Q   The -- right.  Well, Column 1, I think --
25  or row one is just the -- the dummy row, so I think

251

1  it's 24, but -- or 25.  I'm sorry.
2    A   No, 26.
3    Q   Right, but it's Rows 2 through 26?
4    A   Got it.  Okay, 25.  I'll buy that.
5    Q   And do you recognize these as NFPA
6  standards that you uploaded to the Internet Archive
7  website?
8       MR. BRIDGES:  Objection, it calls for
9  speculation.
10  BY MR. REHN:
11    Q   And the titles available on the other side
12  as well?
13    A   These are the identifiers I used.
14    Q   And it -- where it says uploader in each
15  case, it lists Carl@media.org.  Is that your web --
16  your e-mail address?
17    A   Yes, that's my e-mail address.
18    Q   Do you have any reason to believe this
19  doesn't represent the standards that you uploaded to
20  the Internet Archive website?
21       MR. BRIDGES:  Objection, lacks foundation,
22  argumentative.
23       THE WITNESS:  No.
24  BY MR. REHN:
25    Q   And -- and the same question for the other

252

1  standards listed on this document, the ASTM
2  standards and the ASHRAE standards:  Do you have any
3  reason to believe this doesn't identify standards
4  that you uploaded to the Internet Archive website?
5       MR. BRIDGES:  Objection, argumentative --
6  BY MR. REHN:
7    Q   And you can flip through it.  It's your
8  e-mail address on every row.
9       MR. BRIDGES:  It's not his document.
10       THE WITNESS:  So this is, in fact, the
11  naming scheme that -- that I used and I -- I would
12  want to check these all before I say that they are
13  all ones that I uploaded, but it -- it certainly
14  seems to be the same as the standards that we have
15  on our website.
16  BY MR. REHN:
17    Q   And then in the details column, you'll see
18  there's actually a website name, a website address.
19  Column D.
20    A   Yeah.
21    Q   Do you see that?
22    A   Yes, I do.
23    Q   And it's your understanding that if you
24  went to that website address, you could download a
25  version of plaintiffs' standards -- a copy of

253

1  plaintiffs' standards from the Internet Archive
2  website?
3       MR. BRIDGES:  Objection, lacks foundation,
4  may call for speculation.
5       THE WITNESS:  On the Internet Archive an
6  identifier is always used to create what you call
7  the details column, which is actually a -- a URL, a
8  uniform resource locator, URL.
9  BY MR. REHN:
10    Q   Or, in common parlance, a website address?
11       MR. BRIDGES:  Objection, argumentative,
12  assumes facts not in evidence, lacks foundation,
13  vague and ambiguous.
14       THE WITNESS:  On the Internet Archive if
15  you have an identifier, you can access that object
16  by going to https://archive.org/details and then
17  the identifier.
18  BY MR. REHN:
19    Q   And that allows you to download a copy of
20  the standards that are listed here?
21       MR. BRIDGES:  Objection, argumentative,
22  lacks foundation, vague and ambiguous.
23       THE WITNESS:  You can view that web page
24  and do a number of operations.
25  BY MR. REHN:

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

254

1    Q   Including downloading a copy of the
2  standards that are listed here?
3        MR. BRIDGES:  Objection, lacks foundation,
4  assumes facts not in evidence, vague and ambiguous.
5        THE WITNESS:  You can view the object and,
6  yes, they do have a download button.
7  BY MR. REHN:
8    Q   So you could, for example, download a copy
9  to your desktop on your computer at home?
10       MR. BRIDGES:  Objection, hypothetical and
11  assumes facts not in evidence.
12       THE WITNESS:  Yes.
13  BY MR. REHN:
14   Q   If you can take a quick look at another
15  document.  I think this will be No. 50.  Sorry.
16  Wide table here.
17    (Exhibit 50 marked for identification.)
18  BY MR. REHN:
19   Q   And Exhibit 50 has a column marked
20  downloads, then a column marked identifier and a
21  column marked title; is that correct.
22       MR. BRIDGES:  You're asking about the
23  exhibit paper itself, I assume?  Otherwise, I'm
24  objecting.
25       THE WITNESS:  That's what this piece of

255

1  paper says, yes.
2  BY MR. REHN:
3    Q   And I can represent to you that this is a
4  document that Public Resource produced to the
5  plaintiffs in this litigation.
6        MR. BRIDGES:  Do you have a Bates number
7  on that, since this doesn't?
8        MR. REHN:  Hold on.  I e-mailed it to
9  Kevin.  It's the first one e-mailed to you today.
10  It should be like one page.
11       MR. FEE:  PRO_00232652, 232652.
12       MR. BRIDGES:  Thank you.
13  BY MR. REHN:
14   Q   But have you seen this document before?
15   A   Yes.
16   Q   You have seen this document before today?
17   A   I have seen the data on this document.
18   Q   And what's your understanding of what this
19  data represents?
20   A   It's the result of an advanced query on
21  the search interface for the Internet Archive with
22  three pieces of data returned, the number of
23  downloads, the identifier and the title of --
24       THE REPORTER:  I'm sorry.  The three
25  pieces of data returned...

256

1        THE WITNESS:  Which include the downloads,
2  the identifier and the title.
3        THE REPORTER:  Thank you.
4  BY MR. REHN:
5    Q   Did you run that query?
6    A   Yes.
7    Q   To produce this data?
8    A   Yes.
9    Q   Do you remember when you ran that query?
10   A   No.
11   Q   Could you give me a -- was it six months
12  ago, a year ago?  Do you have any rough ballpark
13  recollection?
14   A   January 2014 is my rough recollection.
15   Q   So a little over a year ago?
16   A   Correct.
17   Q   And your understanding is that as of that
18  date, this represents the number of times each of
19  these standards have been downloaded on the Internet
20  Archive website?
21       MR. BRIDGES:  Objection, may call
22  speculation, assumes facts not in evidence, lacks
23  foundation.
24       THE WITNESS:  Download is a very imprecise
25  term.  It's -- it's what the Internet Archive says

257

1  are the number of accesses for each of the
2  standards.
3  BY MR. REHN:
4    Q   Do you know why the column is labeled
5  downloads?
6    A   I have no idea why they labeled it
7  downloads.
8    Q   So what's your understanding of what it
9  means when the Internet Archive uses the term
10  "downloads"?
11       MR. BRIDGES:  Objection, competence, may
12  call for speculation, vague and ambiguous.
13       THE WITNESS:  Number of accesses.
14  BY MR. REHN:
15   Q   So if someone goes to those URLs that we
16  looked at on Exhibit 49 and actually downloads the
17  document to their desktop, that would be an access?
18       MR. BRIDGES:  Objection, argumentative,
19  misstates testimony and lacks foundation.
20       THE WITNESS:  I would want to look at
21  the -- how they calculate their statistics.
22
23  BY MR. REHN:
24   Q   But you're not sure exactly -- so you're
25  not sure exactly what "downloads" represents there?

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015

258

1       MR. BRIDGES: Objection, misstates
2  testimony.
3       THE WITNESS: I believe it's the number of
4  accesses.
5  BY MR. REHN:
6    Q   What do you mean when you say "accesses"?
7    A   The Internet Archive transforms a PDF file
8  into a number of formats, such as an eBook or a
9  streaming PDF file that can be viewed on the
10 Internet Archive website with a pagination
11 capability, and so those are all examples of ways of
12 accessing the information at the same identifier.
13   Q   Okay. So, for example, if we look at --
14 around maybe 60 percent down on -- in these columns,
15 you'll see that National Electrical Code from 2011.
16 Do you see that?
17   A   Yes, I do.
18   Q   And the number of downloads is listed as
19 12,767; is that right?
20      MR. BRIDGES: Well, objection, lacks
21 foundation, may be misleading and confusing.
22      THE WITNESS: Again, the number of
23 accesses is 12,767 according to this report.
24 BY MR. REHN:
25   Q   So what -- what does that represent in

259

1  your understanding?
2       MR. BRIDGES: Objection, competence, lacks
3  foundation -- sorry -- lack -- calls for
4  speculation, vague and ambiguous.
5       THE WITNESS: Again, my understanding is
6  that that's the number of accesses to -- to the
7  documents at that identifier.
8  BY MR. REHN:
9    Q   Okay. And again, you said you -- you
10 think you ran these queries in January of 2014, give
11 or take? That was your understanding?
12      MR. BRIDGES: Objection, vague and
13 ambiguous.
14      THE WITNESS: Approximately.
15      MR. REHN: Go ahead and mark Exhibit 51.
16 Getting better at it.
17   (Exhibit 51 marked for identification.)
18 BY MR. REHN:
19   Q   And I can represent to you that this is a
20 page of search results taken from the Internet
21 Archive website as of yesterday at 11:30 a.m.
22   A   Okay.
23   Q   At 11:36 a.m. to be more accurate. You
24 can see on the bottom there.
25      Does this look familiar to you as the

260

1  interface that's commonly used on the Internet
2  Archive website?
3       MR. BRIDGES: Objection, vague and
4  ambiguous.
5       THE WITNESS: It appears to be the search
6  interface for the Internet Archive.
7  BY MR. REHN:
8    Q   And you'll see there near the top there's
9  a box that says, search, and in that box it says,
10 NFPA?
11   A   Uh-huh. Yes, I see that.
12   Q   So if we look at the first search result,
13 NFPA 11, Standard for Foam, do you see that?
14   A   Yes, I do.
15   Q   And how many downloads are listed there?
16      MR. BRIDGES: Objection, lacks foundation,
17 may be misleading. If you're asking him what the
18 number is that is printed on the page that's one
19 thing. If you're asking whether that is the number
20 of -- of actual downloads then I object.
21      THE WITNESS: This page says downloads,
22 685.
23 BY MR. REHN:
24   Q   And this would be the same data that you
25 used to generate the query that's the -- the

261

1  document that's -- we just looked at as Exhibit 50;
2  is that right?
3       MR. BRIDGES: Objection, lacks foundation,
4  vague and ambiguous.
5       THE WITNESS: I have no idea if they
6  changed the way they calculate that information.
7  BY MR. REHN:
8    Q   But you -- to produce this document in
9  this litigation, you used a query in which you took
10 the downloads data from the Internet Archive website
11 as of the time you ran that query; is that right?
12      MR. BRIDGES: Objection, lacks foundation,
13 vague and ambiguous.
14      THE WITNESS: That's correct.
15 BY MR. REHN:
16   Q   And here we see the Internet Archive
17 website is listing a number of downloads for each of
18 these standards as well.
19   A   Yes. I'm sorry.
20   Q   And if you just look at the four that are
21 listed on this first page of Exhibit 51 and compare
22 them to the four -- the first four -- is that right?
23 No, there is actually a difference. The first one
24 is the same, but they're not exactly the same order.
25 Strike that.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

262

1          Let's go ahead and to the page that's
2     Page 4 of 7 in this Exhibit 51.  And if you look at
3     the bottom of that page, we see that NFPA NEC 2011
4     National Electrical Code.
5          A   Yes, I see that.
6          Q   And then if you turn to Page 5, it -- it
7     lists the number of downloads there.  How many
8     downloads are listed?
9               MR. BRIDGES:  Objection, lacks foundation,
10    vague and ambiguous.
11              THE WITNESS:  This page says downloads,
12    30,350.
13    BY MR. REHN:
14         Q   So the number of downloads that you found
15    in your query from a little over a year ago was
16    around 12,000?
17              MR. BRIDGES:  Objection.
18    BY MR. REHN:
19         Q   Is that right?
20              MR. BRIDGES:  Continuing objection to the
21    use of the word "download" to imply real downloads,
22    lacks foundation, vague and ambiguous.
23    BY MR. REHN:
24         Q   The number of downloads listed in this
25    document produced by PRO, as based on the query you

263

1     ran in January of 2014 was 12,767.
2               MR. BRIDGES:  Same objections.
3               THE WITNESS:  12,767 accesses, yes.
4     BY MR. REHN:
5          Q   And then the number of downloads that --
6     that Internet Archive reported as of yesterday is
7     30,350.
8               MR. BRIDGES:  Same objections.
9               THE WITNESS:  And again, accesses.
10    BY MR. REHN:
11         Q   But -- okay.  But the number of -- the --
12    the -- the thing that they identify on the Internet
13    Archive website as downloads is listed as 30,000 as
14    of yesterday.
15              MR. BRIDGES:  The document speaks for
16    itself.  If you're asking him to testify from his
17    independent knowledge, he can do that, but
18    otherwise, I object on the grounds of calling for
19    speculation and lack of competence.
20              THE WITNESS:  Yes.  This piece of paper
21    definitely says downloads, 30,350.
22
23    BY MR. REHN:
24         Q   And do you see on this document for that
25    standard there's a -- an entry for keywords as well?

264

1          A   Yes.
2          Q   And what does it say under keywords?
3          A   Public.Resource.Org.
4          Q   Do you know how the keywords are
5     identified for a document on the Internet Archive
6     website?
7               MR. BRIDGES:  Objection, may call for
8     speculation, vague and ambiguous.
9               THE WITNESS:  It's something I specify on
10    the API call that creates this object on the
11    Internet Archive.
12    BY MR. REHN:
13         Q   What's an API call?
14         A   API is an application programming
15    interface, and it is the programmatic method that I
16    use to take a PDF document on my server and create
17    an object on the Internet Archive that contains that
18    file.
19         Q   So when you use the API call, you have the
20    option of entering keywords for the document that
21    you're uploading to the archive website?
22         A   That's correct.
23         Q   So when the archive website reports
24    keywords for a document that you uploaded, those
25    would be keywords that you chose?

265

1          A   Yes.
2          Q   So do you know why you chose
3     Public.Resource.Org for this particular document?
4          A   Because every document we upload we put
5     Public.Resource.Org as one of the -- the keywords,
6     or at least I try to.
7          Q   Okay.  So if we go down to Page 6 of this
8     document --
9          A   Uh-huh.
10         Q   -- and you look at the bottom of that
11    page, you see the 2014 National Electrical Code?  Do
12    you see that?
13         A   Yes, I do.
14         Q   And then if you look at the keywords on
15    that listing, could you go ahead and read those
16    keywords?
17         A   Yes.
18              MR. BRIDGES:  Keyword actually -- I'm
19    going to object on the grounds of relevance.  This
20    is not part of this case at the moment, the 2014
21    National Electrical Code.  There's a motion pending
22    that's not part of this case, so I'm going to
23    object on the grounds of relevance and other
24    objections I've given earlier, such as lack of
25    foundation.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

266

1    Go ahead.
2    THE WITNESS:  This piece of paper says,
3  "keywords required in all 50 states, public safety
4  code, legally binding document."
5  BY MR. REHN:
6    Q   Do you know why it doesn't say
7  Public.Resource.Org?
8    MR. BRIDGES:  Objection, argumentative,
9  vague and ambiguous.
10   THE WITNESS:  Because when I created this
11  identifier, I specified these keywords.
12  BY MR. REHN:
13   Q   I believe you testified a few minutes ago
14  that whenever you upload a document to Archive.Org
15  you put the keyword Public.Resource.Org.
16   A   I testified that I try to.  Is that not
17  correct?
18   Q   So -- so you try to use
19  Public.Resource.Org.  Do you know why you sometimes
20  might not use Public.Resource.Org?
21   MR. BRIDGES:  Objection, argumentative,
22  hypothetical.
23   THE WITNESS:  I -- I don't know.  I didn't
24  have coffee that morning.  I -- I really have no
25  idea why.

267

1  BY MR. REHN:
2    Q   And if we could go back to Exhibit No. 49.
3    A   Okay.
4    Q   And if I could just direct you to that
5  identifier column again, and you'll see in Rows 2
6  through 25 each of the standards is listed as
7  gov.law.NFPA followed by the identifier of the
8  standard.
9    MR. BRIDGES:  Objection.
10  BY MR. REHN:
11   Q   Do you see that?
12   MR. BRIDGES:  Objection, mischaracterizes
13  the document.  I think it pretty seriously
14  misidentifies the document.
15   What was your question again, please?  Can
16  the court report please reread it?
17   (The reporter read the record
18      as requested.)
19   MR. BRIDGES:  Objection, misleading, lacks
20  foundation, argumentative, vague and ambiguous.
21   THE WITNESS:  It -- it doesn't say
22  governmental authority.  It says, "G-O-V DOT
23  L-A-W."
24  BY MR. REHN:
25   Q   I -- I think that was a mistake in the --

268

1  how it was typed in --
2    THE REPORTER:  -- in the transcription.
3    MR. REHN:  I'll just repeat the question.
4  BY MR. REHN:
5    Q   Between -- on Rows 2 through 24 in the
6  identifier column, each identifier begins
7  gov.law nfpa and is followed by the number of the
8  standard; is that correct?
9    MR. BRIDGES:  You're talking about the
10  document?  I'll -- I'll object to the extent that
11  you're asking a question beyond what is stated on
12  this document.
13   THE WITNESS:  It is Rows 2 through 25, not
14  Rows 2 through 24, and some of the identifiers have
15  a number and some say NEC.
16  BY MR. REHN:
17   Q   Right.  So, for example, in Row 12 it
18  says, gov.law.nfpa.NEC.2011.
19   A   That is, in fact, what it says.
20   Q   And then on Row 26, what does the
21  identifier say there?
22   MR. BRIDGES:  By the way, objection, lack
23  of foundation, assumes facts not in evidence, vague
24  and ambiguous.
25   THE WITNESS:  It says, NFPA.NEC.2014.

269

1  BY MR. REHN:
2    Q   And is it your understanding that is the
3  identifier you used when you uploaded that
4  particular document to the Internet Archive website?
5    MR. BRIDGES:  Objection, lacks foundation,
6  assumes facts not in evidence and argumentative,
7  vague and ambiguous.
8    THE WITNESS:  It apparently is.
9  BY MR. REHN:
10   Q   I'd invite you just to scroll through this
11  document.  Are there any other standards listed in
12  this document that do not begin gov.law?
13   MR. BRIDGES:  I'm sorry.  Can you -- can I
14  have the court reporter repeat the question?
15   (The reporter read the record
16      as requested.)
17   MR. BRIDGES:  Objection, misleading, lacks
18  foundation, mischaracterizes testimony, I think.
19  And if it presumes to be based on earlier
20  testimony, argumentative and vague and ambiguous.
21   THE WITNESS:  All of the identifiers in
22  Column A, with the exception of Row 26, begin with
23  gov.law.
24  BY MR. REHN:
25   Q   So do you know why you picked a different

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

270

1  identifier than every other one of plaintiffs'
2  standards for this particular standard?
3        MR. BRIDGES:  All the same objections,
4  lacks foundation.
5        THE WITNESS:  I believe the answer would
6  be the same reason that I had a different keyword
7  there, and I don't know why.  Again, perhaps lack
8  of coffee that morning.
9  BY MR. REHN:
10    Q   Okay.  Is that the only morning in the
11  last few years that you didn't have coffee?
12        MR. BRIDGES:  Argumentative.
13        THE WITNESS:  I would say yes.
14  BY MR. REHN:
15    Q   So it would seem.  All right.  Let's go
16  ahead and --
17        MR. BRIDGES:  Actually, how long have we
18  been going?
19        THE VIDEOGRAPHER:  About an hour and a
20  half.
21        MR. BRIDGES:  Yeah, well, let's take a
22  break.
23        THE VIDEOGRAPHER:  We're going off record.
24  The time is 5:26 p.m.  This marks the end of Disc
25  No. 3 in the deposition of Carl Malamud.

271

1        (Recess taken.)
2        THE VIDEOGRAPHER:  We're back on the
3  record.  The time is 5:41 p.m.  This marks the
4  beginning of Disc No. 4 in the deposition of Carl
5  Malamud.
6  BY MR. REHN:
7    Q   Could I just ask you to clarify again what
8  your understanding of the word "access" is -- is, as
9  we've been discussing it?
10        MR. BRIDGES:  Objection to the extent it's
11  not in the context of a particular question, vague
12  and ambiguous, lacks foundation.
13        THE WITNESS:  I can tell you what access
14  means in the context of the web server that I
15  operate.
16  BY MR. REHN:
17    Q   Sure.
18    A   Access is an HTTP GET request from a
19  client, G-E-T, which returns data successfully that
20  the client had asked for.
21    Q   So it means that -- when you say "client,"
22  you mean somebody who is using your website,
23  somebody who is on the Internet and goes to your
24  website?  Is that what you mean by the word "client"
25  in that --

272

1        MR. BRIDGES:  Objection, lacks foundation.
2        THE WITNESS:  I mean another computer on
3  the Internet that contacts the HTTP server on my
4  computer.
5  BY MR. REHN:
6    Q   So when that other computer receives
7  information from your server that they've requested,
8  that's an access?
9    A   The way I count accesses is I look for a
10  status code 200, which is a complete transfer of the
11  requested file, or a series of access codes 206,
12  which are partial transfers as used on, for example,
13  a mobile phone that gets a piece of a document, then
14  another piece, then another piece.
15    Q   And when you have the series of transfers,
16  you only count it as an access if they sum to the
17  entire document?
18    A   No.
19        MR. BRIDGES:  Objection, mischaracterizes
20  his testimony.
21        THE WITNESS:  The way I count it is very
22  specific.  It is the number of 200 or 206 status
23  codes by a unique IP address to a unique document
24  within a given hour.
25  BY MR. REHN:

273

1    Q   So if I were to go to the Public Resource
2  website and access a document -- let's say I were to
3  download that document to my desktop.  You would
4  count that as an access?
5        MR. BRIDGES:  Objection, misstates
6  testimony, compound, lacks foundation,
7  hypothetical.
8        THE WITNESS:  I have no idea if you're
9  downloading it to your desktop.  I know that there
10  was a GET request and a status code 200 and a
11  transfer of the file to another computer.
12  BY MR. REHN:
13    Q   And so that would count as an access?
14    A   Yes.
15    Q   Now, if I went back from the same computer
16  20 minutes later and did the same thing, would
17  you -- you would not count that as a second access?
18        MR. BRIDGES:  Objection, lacks foundation,
19  vague and ambiguous.
20        THE WITNESS:  If it's within the same
21  hour, it would count as a single access.  If it was
22  on the next hour, it would count as two accesses.
23  BY MR. REHN:
24    Q   Is your understanding that's the
25  industry standard for how accesses are counted?

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

274

1      MR. BRIDGES:  Objection, lacks foundation,
2   vague and ambiguous.
3      THE WITNESS:  I know that some people
4   count unique accesses over a 24-hour period, not a
5   one-hour period, so I think I'm actually being more
6   conservative.
7   BY MR. REHN:
8      Q   And do you -- is it your understanding
9   that the Internet Archive's method for counting
10   accesses is similar to what you've described?
11      MR. BRIDGES:  Objection, competence, lacks
12   foundation, may call for speculation, vague and
13   ambiguous.
14      THE WITNESS:  My understanding is that
15   they count over a 24-hour period.
16   BY MR. REHN:
17      Q   I'm going to hand you what we're marking
18   as Exhibit No. 52.
19      (Exhibit 52 marked for identification.)
20   BY MR. REHN:
21      Q   Do you recognize this document?
22      A   I certainly did not produce it.
23      Q   Do you recognize what it is?
24      MR. BRIDGES:  Objection, lacks foundation,
25   vague and ambiguous.

276

1   documents incorporated by a state.
2      Q   So when you upload PDFs to your website or
3   the Internet Archive website, as you testified
4   earlier, those are scans of physical copies of the
5   standards with this cover page that you created
6   placed at the beginning of the PDF; is that correct?
7      MR. BRIDGES:  Objection, vague and
8   ambiguous, lacks foundation.
9      THE WITNESS:  Sometimes; certainly in this
10   case.
11   BY MR. REHN:
12      Q   And do you see some links in a box titled,
13   "View the Book" on the left side of the page?
14      MR. BRIDGES:  Objection, may lack
15   foundation, may call for speculation.
16      THE WITNESS:  Yes, I see that on this
17   page.
18   BY MR. REHN:
19      Q   Do you understand that those links would
20   permit somebody operating a computer on the Internet
21   to download a copy of the 2011 NEC in a variety of
22   formats that are listed here?
23      MR. BRIDGES:  Objection, argumentative,
24   may call for a legal conclusion, lacks foundation,
25   vague and -- vague and ambiguous.  Sorry.

275

1      THE WITNESS:  It's possible it's a screen
2   dump from the Internet Archive.
3   BY MR. REHN:
4      Q   What do you mean by "screen dump"?
5      A   It looks like somebody accessed a -- a URL
6   and hit the print command in this case.
7      Q   So does -- does this appear to be the URL
8   where the 2011 National Electrical Code is on the
9   Internet Archive?
10      A   Yes.
11      Q   And I can represent to you --
12      MR. BRIDGES:  I'm sorry.  I need more time
13   to object.  I am going to object on the basis of
14   vague and ambiguous.
15   BY MR. REHN:
16      Q   Well, I can represent to you that you got
17   it right.  This is the Internet Archive page where
18   the 2011 National Electrical Code is available.  It
19   was accessed yesterday at 11:35 a.m.  And there's a
20   box kind of in the center of the page, and in that
21   box we can see a -- a graphic that says, "notice of
22   incorporation."  Do you see that?
23      A   Yes, I do.
24      Q   And do you recognize what that is?
25      A   It looks like my standard cover page for

277

1      THE WITNESS:  They can access this
2   document in a variety of formats.
3   BY MR. REHN:
4      Q   And by "access," that would encompass the
5   possibility of downloading a copy of the standard to
6   their own computer?
7      MR. BRIDGES:  Objection, argumentative,
8   lacks foundation, assumes facts not in evidence,
9   vague and ambiguous.
10      THE WITNESS:  "Download" is simply not a
11   term that -- it's just not a very precise term.
12   "Access" is the term that I understand and it's
13   when a computer on the Internet accesses an HTTP
14   server on the Internet.
15   BY MR. REHN:
16      Q   Okay.  Is it your understanding that a
17   user of a computer on the Internet can go to this
18   web page and obtain a PDF version of this document,
19   save it to their desktop, from which they can then
20   use it as they see fit, without even being connected
21   to the Internet in the future?
22      MR. BRIDGES:  Lacks foundation, assumes
23   facts not in evidence, vague and ambiguous,
24   hypothetical.
25      THE WITNESS:  Are -- are you asking

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

278

1   whether that capability is possible?
2   BY MR. REHN:
3       Q   Yes, using these links here.
4           MR. BRIDGES:  Objection, may call for
5   speculation, may lack knowledge.
6           THE WITNESS:  It's theoretically possible,
7   yes.
8   BY MR. REHN:
9       Q   So -- so -- and that same user, having
10  that -- a copy of that document saved on their
11  desktop, could, say, print a copy of that document
12  if they have a printer attached to their computer?
13          MR. BRIDGES:  Objection, hypothetical,
14  lacks foundation, assumes facts not in evidence,
15  vague and ambiguous.
16          THE WITNESS:  On -- on some computers,
17  yes.
18  BY MR. REHN:
19      Q   And on those computers from which people
20  can print PDFs that are saved to their desktop, they
21  can print as many copies as they like?
22          MR. BRIDGES:  Objection, hypothetical,
23  lacks foundation, vague and ambiguous,
24  argumentative.
25          THE WITNESS:  It's -- it's very

279

1   hypothetical.  It's if -- if you have a printer on
2   your computer, you can print a piece of paper.
3   BY MR. REHN:
4       Q   And if you have a file that you've
5   accessed and saved to your desktop from the Internet
6   but is now saved on your computer, you can print
7   multiple copies of that file?
8           MR. BRIDGES:  Objection, assumes many
9   facts not in evidence, lacks foundation,
10  hypothetical, vague and ambiguous.
11          THE WITNESS:  I believe you accessed a URL
12  on the Internet and printed a file, so I would say
13  yes, you certainly were capable of doing that.
14          MR. BRIDGES:  Let the record reflect that
15  the client was holding Exhibit 52 up in the air in
16  context with that response.
17  BY MR. REHN:
18      Q   If we could go and look at the information
19  underneath that box in the center, is that
20  information that you entered when you uploaded this
21  document to the Internet Archive website?  For
22  example, where it says "description" and then it
23  says "legally binding document," would that be
24  information you entered?
25          MR. BRIDGES:  Objection, vague and

280

1   ambiguous.  Are you asking specifically about the
2   description?
3           MR. REHN:  We'll start with the
4   description.
5           THE WITNESS:  Yes.
6   BY MR. REHN:
7       Q   And we'll just go through it.  Where it
8   says author, National Fire Protection Association,
9   did you enter that information?
10      A   Yes.
11      Q   When you -- I believe it -- was it the APC
12  call?  What was it?
13      A   API, application programming interface.
14      Q   API call.  So when you use the API, does
15  it give you an option to enter an author?  Is that
16  one of the options that are identified there?
17      A   You can specify any piece of metadata and
18  a value associated with that metadata.
19      Q   And you identified National Fire
20  Protection Association as the author of this
21  document?
22      A   I did.
23      Q   So -- and that was consistent with your
24  understanding that the NFPA is the author of the
25  2011 NEC?

281

1           MR. BRIDGES:  Objection, calls for a legal
2   conclusion, lacks -- calls for a legal opinion,
3   assumes facts not in evidence, lacks foundation,
4   vague and ambiguous.
5           THE WITNESS:  I don't know the precise
6   meaning of the term "author."  They were certainly
7   the source of this document.
8   BY MR. REHN:
9       Q   But you identified them as the author
10  here.
11          MR. BRIDGES:  Objection, asked and
12  answered.
13          THE WITNESS:  Just as you discussed
14  "downloads" as a term.  Yes, I -- I use the word
15  "author."
16  BY MR. REHN:
17      Q   So it was your understanding when you
18  uploaded this document that the NFPA was the author
19  of this document?
20          MR. BRIDGES:  Objection, asked and
21  answered and calls for a legal conclusion, lacks
22  foundation, assumes facts not in evidence, vague
23  and ambiguous.
24          THE WITNESS:  I put the word "author," a
25  colon and National Fire Protection Association.  As

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

282

1   to the technical meaning of the term "author,"
2   that's -- you folks are lawyers.
3   BY MR. REHN:
4       Q   Sure.  But just in the way you understand
5   the term, that's what -- you understood that NFPA
6   was the author?
7           MR. BRIDGES:  Objection, misstates
8   testimony, calls for a legal conclusion, lacks
9   foundation, vague and ambiguous.
10          THE WITNESS:  I put the word "author,"
11  colon and National Fire Protection Association.
12  BY MR. REHN:
13      Q   And if we could turn to the next page,
14  you'll see a section titled, "Selected Metadata."
15      A   Yes, I see that.
16      Q   And do you see a -- a line that says,
17  "credits"?
18      A   I do.
19      Q   And what does that say?
20      A   It was uploaded by Public.Resource.Org.
21      Q   And do you always put that credits line in
22  documents that you upload to the Internet Archive?
23          MR. BRIDGES:  Objection, argumentative.
24          THE WITNESS:  I don't know if I always do.
25  BY MR. REHN:

283

1       Q   Do you always try to put that line when
2   you upload a document?
3           MR. BRIDGES:  Same objection.
4           THE WITNESS:  I -- I certainly did in this
5    case.
6   BY MR. REHN:
7       Q   Is that consistent with your general
8   practice when you upload documents to the Internet
9   Archive website?
10          MR. BRIDGES:  Same objection.
11          THE WITNESS:  I have often done that.
12  BY MR. REHN:
13      Q   And why do you do that?
14      A   Identifies who did the upload.
15      Q   So if you want to identify who did the
16  upload, this is how you would do it?
17      A   That's one way I would do it.
18      Q   And if you didn't want to identify who did
19  the upload, maybe you wouldn't put that line?
20          MR. BRIDGES:  Objection, hypothetical,
21  lacks foundation.
22          THE WITNESS:  It's one of the things I try
23   to do.
24  BY MR. REHN:
25      Q   And then on the next line it says,

284

1   "licensed URL," and then there is a URL for a
2   Creative Commons website that says, "public domain."
3   Did you put that there?
4           MR. BRIDGES:  Objection, lacks foundation,
5    vague and ambiguous.
6           THE WITNESS:  What it actually says is
7   "creativecommons.org/publicdomain/0/1.0."
8   BY MR. REHN:
9       Q   Slash?
10      A   Slash.
11      Q   And did you put that URL there when you
12  uploaded this document?
13      A   I specified in the API what the licensed
14  URL was going to be.
15      Q   Right.  Do you always have to specify a
16  licensed URL when you use API, or is that just an
17  option you have?
18          MR. BRIDGES:  Objection, lacks foundation,
19   vague and ambiguous --
20          THE WITNESS:  If you don't --
21          MR. BRIDGES:  -- and compound.
22          THE WITNESS:  Repeat the question, please.
23  BY MR. REHN:
24      Q   When you use the API to upload a document
25  to the Internet Archive, do you always have to

285

1   specify a licensed URL?
2           MR. BRIDGES:  Objection, vague and
3    ambiguous.
4           THE WITNESS:  You can create an object
5    using the API without specifying a licensed URL.
6   BY MR. REHN:
7       Q   Does that have any effect on the
8   accessibility of that document on the Internet
9   Archive website?
10          MR. BRIDGES:  Objection, may call for
11   speculation.
12          THE WITNESS:  No, it does not.
13  BY MR. REHN:
14      Q   And what -- of these other things we've
15  looked at, do you always have to put credits?
16      A   No.
17      Q   Do you always have to put an author?
18      A   No.
19      Q   So you can select the categories that you
20  want to identify when you upload a document?
21      A   "Categories" is the wrong word.  I can
22  specify metadata and their values.
23      Q   So you could decide to identify an author
24  or not, for example?
25          MR. BRIDGES:  Objection, argumentative as

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

286

1  we've discussed, the word "author," vague and
2  ambiguous.
3      THE WITNESS:  The person who writes the
4  API call specifies what metadata values will be
5  included.
6  BY MR. REHN:
7      Q    Sure.  So let's go back to that licensed
8  URL line.  You chose to specify that Creative
9  Commons URL that you read a short while ago?
10     A    Yes, I did.
11     Q    Do you -- why did you choose that URL?
12 What's the significance of that?
13     A    That is a Creative Commons CC0 universal
14 license.
15     Q    And what does that mean?
16     A    It means no rights asserted.
17     Q    Can you -- no rights asserted by whom?
18     A    By the creator of this Internet Archive
19 object, this identifier.
20     Q    So you're representing that you do not
21 assert any rights --
22     MR. BRIDGES:  Objection.
23 BY MR. REHN:
24     Q    -- in the -- in the document?
25     MR. BRIDGES:  Objection, misstates

287

1  testimony, lacks foundation.
2      THE WITNESS:  By putting a CC0 license on
3  that, I am specifying that I assert no rights over
4  this object.
5  BY MR. REHN:
6      Q    Why does it say "public domain"?
7      MR. BRIDGES:  Objection, misstates the
8  document.
9      THE WITNESS:  It says public domain/0/1.0,
10 and that's the URL that the Creative Commons
11 organization assigned to the CC0 license.
12 BY MR. REHN:
13     Q    Does the CC0 license indicate that the
14 document is in the public domain?
15     A    No, it --
16     MR. BRIDGES:  Objection, may call for
17 speculation, may call for a legal opinion, vague
18 and ambiguous.
19     THE WITNESS:  No, it does not.
20 BY MR. REHN:
21     Q    So you were not representing that this
22 document is in the public domain?
23     MR. BRIDGES:  Objection, lacks foundation,
24 vague and ambiguous.
25     THE WITNESS:  I was asserting that the

288

1  creator of this object was not asserting any
2  rights.
3  BY MR. REHN:
4      Q    What do you mean by "creator of this
5  object"?
6      A    The person who exercised the API call that
7  resulted in the creation of this identifier; me in
8  this case.
9      Q    I'm going to mark Exhibit 53.
10     (Exhibit 53 marked for identification.)
11 BY MR. REHN:
12     Q    Do you recognize this document?
13     A    It appears to be an Internet Archive
14 screen dump like your previous exhibit.
15     Q    And this one is for the 2014 National
16 Electrical Code; is that right?
17     A    That is what it appears to be, yes.
18     Q    Now, this is -- looks pretty similar to
19 Exhibit 52.  Would you agree with that?
20     MR. BRIDGES:  Objection, lacks foundation,
21 vague and ambiguous.
22     THE WITNESS:  There are some similarities.
23 BY MR. REHN:
24     Q    Like there's the box in the middle and
25 then there's options for how to view the book on the

289

1  left?
2      A    Yes.
3      Q    And then there's some information below
4  the box in the middle such as author, subject and so
5  forth?
6      MR. BRIDGES:  Objection, lacks foundation,
7  vague and ambiguous.
8      THE WITNESS:  Yes.
9  BY MR. REHN:
10     Q    And you put that information in this -- in
11 this as well when you used the API interface to
12 upload this document?
13     MR. BRIDGES:  Objection, vague and
14 ambiguous.
15     THE WITNESS:  Yes.
16 BY MR. REHN:
17     Q    So again, you have -- you -- you chose to
18 identify the author as National Fire Protection
19 Association?
20     MR. BRIDGES:  Objection.  To the extent
21 you're asking him a question with significance of
22 legal terms, I'll object on the ground that it
23 calls for a legal opinion.
24     THE WITNESS:  Once again, I put the
25 identifier author, colon, and National Fire

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

290

1    Protection Association in -- in the HTML.
2    BY MR. REHN:
3       Q    And was -- and that was your understanding
4    at the time you uploaded this document, that the
5    National Fire Protection Association was the author
6    as you would use that word?
7          MR. BRIDGES:  Objection, vague and
8    ambiguous, calls -- may call for a legal
9    conclusion, lacks foundation, assumes facts not in
10   evidence.
11         THE WITNESS:  Again, I use the label
12   author and a colon and National Fire Protection
13   Association.
14   BY MR. REHN:
15      Q    And you -- you chose the word "author"?
16      A    Yes.
17      Q    And then under subject, there's a few
18   things listed, and the first one -- what is the
19   first one there?
20         MR. BRIDGES:  Objection, vague and
21   ambiguous.
22         THE WITNESS:  Subject, colon, required in
23   all 50 states, Public Safety Code, legally binding
24   document.
25   BY MR. REHN:

291

1       Q    And did you choose to put those items
2    there under -- under the heading subject?
3       A    Those are the keywords that we
4    previously -- previously discussed and as -- as I
5    told you, yes, I -- I chose those keywords.
6       Q    So the -- the subject line represents the
7    keywords that we looked at in the other document?
8          MR. BRIDGES:  Objection, may be misleading
9    and vague and ambiguous.
10         THE WITNESS:  Yes.
11   BY MR. REHN:
12      Q    And again, if -- if we compare it to
13   Exhibit 52, if -- if you look at Exhibit 52 you
14   put -- oh, I'm sorry.
15         MR. REHN:  This is 53, right?
16         THE REPORTER:  Yes.
17   BY MR. REHN:
18      Q    So if you look at 52, what's the subject
19   that you chose to put on Exhibit 52 when you
20   uploaded that document?
21         MR. BRIDGES:  Objection, argumentative,
22   vague and ambiguous.
23         THE WITNESS:  Public.Resource.Org.
24   BY MR. REHN:
25      Q    And then on Exhibit 53, what are the

292

1    subjects you chose to put?
2          MR. BRIDGES:  Same objection.
3          THE WITNESS:  It's what I just told you,
4    required in all 50 states, Public Safety Code,
5    legally binding document.
6    BY MR. REHN:
7       Q    Do you recall why -- you -- you said
8    earlier you don't have any recollection of why you
9    chose a different set of subjects here.
10      A    This was done at a different point in
11   time.
12      Q    What was the significance of that?
13         MR. BRIDGES:  Objection, argumentative.
14         THE WITNESS:  I did things differently on
15   two different days.
16   BY MR. REHN:
17      Q    Why did you do things differently when you
18   uploaded the 2014 National Electrical Code?
19         MR. BRIDGES:  Objection, argumentative,
20   lacks foundation.
21         THE WITNESS:  I don't know why I did it
22   differently.
23   BY MR. REHN:
24      Q    Do you remember any changes that happened
25   that would have led you to upload standards in a

293

1    different way by the time this one was uploaded?
2          MR. BRIDGES:  Objection, vague and
3    ambiguous.
4          THE WITNESS:  This was done at a -- at a
5    later point in time and I obviously typed different
6    things into the API column.
7    BY MR. REHN:
8       Q    And you don't remember why you did that?
9       A    No.
10      Q    Do you know why you put required in all 50
11   states?
12      A    Oh.  No.
13      Q    Is -- was it your understanding that the
14   2014 National Electrical Code was required in all 50
15   states at the time you uploaded this document?
16      A    No, it was not.
17      Q    Did you have any concern that by putting
18   that, you might mislead somebody who used this
19   website?
20         MR. BRIDGES:  Objection, vague and
21   ambiguous.
22         THE WITNESS:  I had no concern because I
23   obviously was not paying attention to that
24   particular phrase right there.
25   BY MR. REHN:

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

294

1    Q   Where did that phrase come from?
2        MR. BRIDGES:  Objection, vague and
3    ambiguous.
4        THE WITNESS:  I typed it in.
5    BY MR. REHN:
6    Q   So you typed a phrase in without paying
7    attention to it?
8    A   The National Electrical Code is required
9    in all 50 states.  The 2014 version is not yet
10   required in all 50 states, but the National
11   Electrical Code is, in fact, required in all 50
12   states.
13   Q   And so that's why you decided to put that
14   particular subject under the 2014 National
15   Electrical Code?
16       MR. BRIDGES:  Objection, misstates
17   testimony, assumes -- lacks foundation, assumes
18   facts not in evidence.
19       THE WITNESS:  I think we're speculating as
20   to what my state of mind was when I was writing
21   this particular API column, and I don't recollect.
22
23   BY MR. REHN:
24   Q   So you don't remember why you put that
25   particular subject?

295

1        MR. BRIDGES:  Asked and answered.
2        THE WITNESS:  No.
3    BY MR. REHN:
4    Q   But you would agree that it's not,
5    strictly speaking, accurate with respect to this
6    particular version of this standard?
7        MR. BRIDGES:  Objection, lacks foundation,
8    may call for a legal conclusion.
9        THE WITNESS:  I -- I would say that the
10   National Electrical Code is required in all 50
11   states, that's correct.
12   BY MR. REHN:
13   Q   But not this particular version?
14       MR. BRIDGES:  May call for a legal
15   conclusion, vague and ambiguous.
16       THE WITNESS:  The NEC 2014 has not yet
17   been adopted by all 50 states.
18   BY MR. REHN:
19   Q   If we can turn to the next page.
20   A   Uh-huh.
21   Q   And you see the area selected metadata in
22   this document as it was in Exhibit 52 as well?
23   A   Yes, I do.
24   Q   And there's no credits listed under this
25   particular document; is that right?

296

1    A   The credits field is not present in the
2    selected metadata on this one.
3    Q   Do you remember why you chose not to put a
4    credits field in this document?
5        MR. BRIDGES:  Objection, lacks foundation,
6    assumes facts not in evidence, vague and ambiguous.
7        THE WITNESS:  I created this API call at a
8    different time than I created the other API calls
9    and I obviously did something different.
10   BY MR. REHN:
11   Q   And I believe you testified earlier that
12   you would put the credits in when you wanted people
13   to know who had uploaded the standard; is that
14   right?
15   A   That -- that's certainly one reason I -- I
16   put that in there, yes.
17   Q   So is there a reason you didn't want
18   people to know you uploaded this standard?
19       MR. BRIDGES:  Objection, lacks foundation,
20   vague and ambiguous, argumentative.
21       THE WITNESS:  Absolutely not.  I -- I
22   simply omitted putting that field in.
23   BY MR. REHN:
24   Q   And -- and also the -- the name of your
25   organization and the subject as well?

297

1    A   The keywords are different, yes.
2        (Exhibit 54 marked for identification.)
3    BY MR. REHN:
4    Q   I'm going to hand you what we've marked as
5    Exhibit 54.  And this document appears to be a
6    spreadsheet that lists URLs where NFPA standards are
7    available on your website; is that right?
8        MR. BRIDGES:  Objection, vague and
9    ambiguous --
10       THE WITNESS:  Yes.
11       MR. BRIDGES:  -- and argumentative.
12       THE WITNESS:  Yes.
13       MR. BRIDGES:  What's the Bates -- what is
14   the Bates number for this?
15       MR. REHN:  It's actually the same as --
16   it's the same as the previous exhibit, with a
17   similar spreadsheet for ASTM, which was 245530.
18   That's a spreadsheet produced by Public Resource
19   that has three separate tabs, one for each of the
20   plaintiffs.  This is the tab from that spreadsheet
21   that represents NFPA.  We earlier looked at the tab
22   that represents ASTM.
23       MR. BRIDGES:  Okay.  So these are all
24   parts of the same document it sounds like.
25       MR. REHN:  Yes.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

298

1   BY MR. REHN:
2      Q   Have you seen this document before?
3      A   Yes, I have.
4      Q   And could you tell me what it represents?
5      A   The number of accesses to each of these
6   URLs in a given month by a unique IP address in a
7   given hour.
8      Q   And is it your understanding that this
9   represents all of the accesses from April 2013
10  through February 2014 to NFPA standards on your
11  website?
12        MR. BRIDGES:  Objection, vague and
13  ambiguous and misstates his earlier testimony.
14        THE WITNESS:  No, it is not all the
15  accesses from April 2013.  It is the accesses from
16  September 2013 on.
17  BY MR. REHN:
18     Q   All right.  I may have misunderstood
19  earlier.  What does the column representing month
20  represent?
21     A   It's the month of the year.  8 is August,
22  for example.
23     Q   So the first row says 4 --
24     A   Uh-huh.
25     Q   -- 2013.  Would -- would that be April?

299

1      A   That's April 2013.
2      Q   So does this document include accesses
3   beginning in April 2013?
4         MR. BRIDGES:  Objection, vague and
5   ambiguous.
6         THE WITNESS:  You asked if it was all the
7   accesses from April 2013, and it is not.
8   BY MR. REHN:
9      Q   So it -- this represents some accesses
10  from April 2013, but not all of them?
11     A   Our previous document retention policy for
12  logs was to keep logs for two weeks.  After the
13  litigation commenced, we began keeping the logs
14  permanently.
15     Q   I understand.  So it begins in August of
16  2013 with all of the accesses?
17     A   September is a complete month.  Litigation
18  began in mid-August, I believe, right?
19     Q   Right.  August 6th.
20     A   Okay.
21     Q   So at least from September 2013 onward
22  until February 2014?
23     A   Yes, I believe that's correct.
24     Q   With a few -- with some hits noted in
25  earlier months, but not a complete list?

300

1      A   That's correct.
2      Q   And then on the last page of this document
3   there's a box for the total.  What does that
4   represent?
5      A   That is the sum of Column D on the
6   spreadsheet.
7      Q   And what does it represent?
8      A   Total number of accesses represented in
9   this spreadsheet.
10     Q   And this spreadsheet represents NFPA
11  standards that are on your website?
12     A   Yes.
13     Q   So in a -- in the period from September
14  2013 through February 2014 -- that's a six-month
15  period -- there were a 167,982 accesses of NFPA
16  standards on the Public Resource website?
17        MR. BRIDGES:  Objection, misstates
18  testimony, vague and ambiguous, lacks foundation.
19        THE WITNESS:  The total column is the
20  total of Column D, which includes some data from
21  April 2013 to February 2014.
22
23  BY MR. REHN:
24     Q   Right.  So the -- between September 2014
25  and February -- I'll -- I'll -- this is the total

301

1   number of hits that occurred from September 2013
2   through February 2014 plus a -- a sample of the
3   number of hits that occurred between April and
4   September of 2013?
5         MR. BRIDGES:  Objection, misstates
6   testimony, lacks foundation, misleading.
7         THE WITNESS:  It -- it's not a sample,
8   it's the logs that we had.
9   BY MR. REHN:
10     Q   A subset?
11     A   A subset of the total number of hits.
12  That would be a correct characterization.
13     Q   So is it safe to say that between April
14  2013 and February 2014, or a period of around ten
15  months, there were more than 167,000 accesses to
16  NFPA standards on Public Resource's website?
17        MR. BRIDGES:  Calls for -- may call for
18  speculation and vague and ambiguous.
19        THE WITNESS:  Yes.
20  BY MR. REHN:
21     Q   We don't know exactly how many more, but
22  certainly more?
23        MR. BRIDGES:  Argumentative, lacks
24  foundation.
25        THE WITNESS:  Yes, more.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

302

1  BY MR. REHN:
2     Q   We're going to give you a document that
3  we're marking as Exhibit No. 55.  And for the
4  record, this is a document produced by Public
5  Resource in this litigation, Bates-stamped
6  PRO_00167541.
7        (Exhibit 55 marked for identification.)
8  BY MR. REHN:
9     Q   Do you recognize this document?
10       MR. BRIDGES:  He needs to take a look at
11  it first.  I was concerned about the way that was
12  stapled.  It didn't look consistent with my copy of
13  it.
14       MR. REHN:  Have you satisfied your
15  concerns at this point?
16       MR. BRIDGES:  I don't want to take more
17  time.  I'm going to operate on the assumption that
18  it's okay, but I'll look as we go along.
19       THE WITNESS:  This appears to be the
20  transcript for a video called, Show Me the Manual.
21  BY MR. REHN:
22     Q   Is Show Me the Manual a video that Public
23  Resource produced?
24       MR. BRIDGES:  Objection, vague and
25  ambiguous.

303

1        THE WITNESS:  Yeah, we were not the
2  producer of that video, but we --
3        MR. BRIDGES:  That was the end of the
4  question.
5        THE WITNESS:  -- we -- we were not the
6  producer of that video.
7  BY MR. REHN:
8     Q   Did Public Resource create the video?
9        MR. BRIDGES:  Objection, vague and
10  ambiguous.
11       THE WITNESS:  No, it didn't create it.
12  BY MR. REHN:
13     Q   What was Public Resource's involvement in
14  the creation of the Show Me the Manual video?
15       MR. BRIDGES:  Objection, vague and
16  ambiguous.
17       THE WITNESS:  Hired the videographers and
18  the producers and paid the money.
19  BY MR. REHN:
20     Q   So you paid for the creation of the video?
21     A   We did.
22     Q   Did you write the script?
23       MR. BRIDGES:  Objection, vague and
24  ambiguous.
25       THE WITNESS:  There was no script.  It was

304

1  done extemporaneously on -- on camera.
2  BY MR. REHN:
3     Q   And the first identified speaker on this
4  transcript is Man 1.  That's you on the actual
5  video; is that right?
6     A   I am Man 1.
7     Q   And this video is currently available on
8  the Public Resource website?
9     A   It is on Law.Resource.Org.
10     Q   Does this video represent the views of
11  Public Resource?
12       MR. BRIDGES:  Objection, argumentative
13  vague and ambiguous, lacks foundation.
14       THE WITNESS:  It represents the views of a
15  number of people who appeared in the video.
16  BY MR. REHN:
17     Q   And public Resource is putting those views
18  out on its website?
19       MR. BRIDGES:  Objection, argumentative,
20  vague and ambiguous.
21       THE WITNESS:  We published the video on
22  our website, yes.
23  BY MR. REHN:
24     Q   Do the statements that you speak in the
25  video represent your views?

305

1        MR. BRIDGES:  And you need to review the
2  document if you're going to answer that question.
3        And I'll object on the -- to the question
4  as vague and ambiguous.
5        Read the whole document, please.
6        THE WITNESS:  The statements by Man 1 do,
7  in fact, represent my views.
8  BY MR. REHN:
9     Q   And did you make the decision that this
10  video should be posted on Public Resource's website?
11     A   Yes.
12     Q   And do the statements by you in this
13  document represent the views of Public Resource?
14     A   Yes.
15     Q   So let's take a look at the page
16  Bates-stamped 167544.  And it's your view that the
17  National Fire Protection Association does amazing
18  work and saves lives?
19     A   Yes, I said that.
20     Q   And it's your view that the National Fire
21  Protection Association protects the lives of
22  volunteer firefighters?
23       MR. BRIDGES:  Objection.  That misstates
24  the document.
25       THE WITNESS:  No, that's not what I say on

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

306

1    this page.
2  BY MR. REHN:
3      Q   It's your view that the National Fire
4  Protection Association's standards for fire
5  sprinklers, standards for fire hydrants, standards
6  for foam, standards for life safety protect lives of
7  our volunteer firefighters.
8      A   Oh.  Yes.
9      Q   And do you also -- would you also take the
10  view that National Fire Protection itself protects
11  the lives of volunteer firefighers through its
12  activities?
13         MR. BRIDGES:  Objection, argumentative,
14  lacks foundation, vague and ambiguous.
15         THE WITNESS:  I can't speak to that.  I --
16  the standards certainly do.
17  BY MR. REHN:
18      Q   And is it your view that the standards
19  protect the lives of children?
20      A   Yes.
21      Q   And it's your view that it's important
22  that organizations like the National Fire Protection
23  Association continue to survive?
24      A   Absolutely.
25      Q   And would you extend that to other

307

1  standards development organizations as well, that
2  it's important they continue to survive?
3         MR. BRIDGES:  Objection, lacks foundation.
4         THE WITNESS:  Do you have a specific
5  standards organization in mind?
6  BY MR. REHN:
7      Q   How about ASTM.
8      A   I'm a big fan of ASTM.
9      Q   So it's important they continue to
10  survive?
11         MR. BRIDGES:  Objection, argumentative.
12         THE WITNESS:  I think the standards that
13  are -- the subject area of the standards that ASTM
14  works in is very important and we need to continue
15  to have standards in that area.
16  BY MR. REHN:
17      Q   And continue to have organizations that
18  develop standards and keep them up-to-date?
19         MR. BRIDGES:  Objection, argumentative,
20  lacks foundation.
21         THE WITNESS:  Yes, I believe standards are
22  important.
23  BY MR. REHN:
24      Q   And would you say the same about the
25  standards of ASHRAE?

308

1         MR. BRIDGES:  Objection, lacks foundation,
2  vague and ambiguous.
3         THE WITNESS:  I think ASHRAE Standard 90.1
4  is an important standard.
5  BY MR. REHN:
6      Q   Is it your view that standards development
7  organizations need funding to do the work that they
8  do, including standards development?
9         MR. BRIDGES:  Objection, may call for a
10  lay opinion, vague and ambiguous, and --
11         THE WITNESS:  I think --
12         MR. BRIDGES:  -- and to the extent it
13  calls for a legal opinion, I would object on that
14  basis.
15         THE WITNESS:  I would want to analyze the
16  specific standards body and their funding sources
17  and the work that they do.
18  BY MR. REHN:
19      Q   Can you read the first sentence of that
20  paragraph that begins with, Man 1 804, the sentence
21  following Man 1 804?
22      A   "Our goal is here to publish a law to
23  establish the principle that the law become
24  available, but then government should take this over
25  and figure out a way to make the law available and

309

1  do it in a way that the standards bodies that make
2  these standards are able to survive because they do
3  need money."
4      Q   So is it your view that the standards
5  bodies that make these standards need money to
6  survive?
7         MR. BRIDGES:  Objection, calls for lay
8  opinion, vague and ambiguous, lacks foundation.
9         THE WITNESS:  As -- any 501(c)(3)
10  nonprofit needs some source of revenue.  How much
11  that is or how little that is depends on the
12  specific nature of the organization.
13  BY MR. REHN:
14      Q   And is it your view that if Public
15  Resource is successful in its efforts to post
16  standards freely online that government should take
17  this over?
18         MR. BRIDGES:  Objection, calls for a lay
19  opinion, calls for a possible legal conclusion,
20  argumentative, vague and ambiguous, lacks
21  foundation.
22         THE WITNESS:  What do you mean by "take
23  this over"?
24  BY MR. REHN:
25      Q   What did you mean when you said that?

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

310

1      A   I meant the government should figure out a
2   way to make the law available and do it in a way
3   that the standards bodies that make these standards
4   are able to survive.
5      Q   So the government should step in in some
6   way to enable the standards bodies to survive --
7      MR. BRIDGES:  Objection, misstates
8   testimony --
9   BY MR. REHN:
10     Q   -- if Public Resource establishes --
11     THE REPORTER:  One at a time.  One over
12  again.
13     MR. BRIDGES:  Objection, misstates the
14  testimony -- misstates the document.
15     THE WITNESS:  I think government has an
16  obligation to make sure that the laws that we as a
17  people choose to govern ourselves by, our rights
18  and our obligations are available for citizens to
19  know.
20  BY MR. REHN:
21     Q   And if that means that the standards
22  bodies don't have the -- money to develop
23  standards, then you think government should take
24  this over and figure out a way that the standards
25  bodies are able to survive?

311

1      MR. BRIDGES:  Completely misrepresents the
2   testimony and the document --
3      THE WITNESS:  The --
4      MR. BRIDGES:  -- and -- and argumentative,
5   lacks foundation.
6      THE WITNESS:  That's not what I said.  I
7   said the government should figure out a way to make
8   the law available.
9   BY MR. REHN:
10     Q   And go ahead and finish the sentence.
11     A   And do it in a way that the standards
12  bodies that make these standards are able to survive
13  because they do need money.
14     Q   And that is your view?
15     MR. BRIDGES:  Objection, asked and
16  answered --
17     THE WITNESS:  Yes.
18     MR. BRIDGES:  -- the document speaks for
19  itself and he's testified about it.
20     THE WITNESS:  This is what I said.
21     You can tell they are techies because they
22  are all trying to figure out how to keep the
23  lights on.
24     MR. REHN:  I think I don't have any
25  further questions today for the 30(b)(6) portion,

312

1   so if you want to take over.
2      MR. STEIMLE:  I've got just a few, I
3   think.
4      MR. BRIDGES:  I will ask you to sit here
5   for the --
6      THE VIDEOGRAPHER:  Want to go off the
7   record for a minute?
8      THE REPORTER:  Yes.
9      THE VIDEOGRAPHER:  We're going off the
10  record.  The time is 6:29 p.m.
11     (Recess taken.)
12     THE VIDEOGRAPHER:  All right.  We're back
13  on the record.  The time is 6:30 p.m.
14     EXAMINATION BY COUNSEL FOR PLAINTIFF
15  ASHRAE
16  BY MR. STEIMLE:
17     Q   Mr. Malamud, do you feel okay to continue
18  tonight?
19     A   Yes.
20     Q   All right.  Just a few more questions on
21  this particular part of the deposition from me, and
22  then I think we'll adjourn until tomorrow.
23     THE REPORTER:  Can you state your name for
24  the record?
25     MR. STEIMLE:  Sure.  My name is Wes
26  Steimle.  I represent ASHRAE.

313

1   BY MR. STEIMLE:
2      Q   PRO did acquire a copy of the ASHRAE
3   Standard 90.1 2004 version; is that correct?
4      A   I believe that's correct.
5      Q   All right.  It also acquired the 2007
6   version of that same document?
7      MR. BRIDGES:  Objection, vague and
8   ambiguous.
9      THE WITNESS:  A 2007 version of ASHRAE
10  90.1?
11  BY MR. STEIMLE:
12     Q   Correct.
13     A   Yes.
14     Q   And it also acquired the ASHRAE Standard
15  90.1 2010 version, correct?
16     A   That's correct.
17     Q   All right.  Your company also -- your
18  company also acquired a -- the ASHRAE handbook, did
19  it not?
20     MR. BRIDGES:  Objection, lacks foundation,
21  vague and ambiguous.
22     THE WITNESS:  You mean the document ASHRAE
23  Fundamentals Handbook?
24  BY MR. STEIMLE:
25     Q   Yes.

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

314

1     A   Yes.
2     Q   All right.  What was the source -- well,
3  let me ask you this:  Did you acquire all of these
4  documents from the same source or were they
5  different?
6     A   I -- I don't recall.
7     Q   Do you recall the source of any of the
8  documents -- the ASHRAE documents that we just
9  mentioned, where you acquired them?
10     A   I -- I don't recall specifically.
11     Q   Do you recall the format in which you
12  acquired all of these documents?
13     A   Paper.
14     Q   And that's true for all of them?
15     A   Yes.
16     Q   All right.  Did you acquire these
17  documents in any other form other than paper?
18     MR. BRIDGES:  Objection, lacks foundation,
19  vague and ambiguous.
20     THE WITNESS:  I don't recall.
21  BY MR. STEIMLE:
22     Q   All right.  And was it you, Mr. Malamud,
23  personally who acquired them for the company or --
24  or would it have been someone else?
25     MR. BRIDGES:  Objection, vague and

315

1  ambiguous.
2     THE WITNESS:  That would be me.
3  BY MR. STEIMLE:
4     Q   Did you acquire all of these documents at
5  the same time or were -- did you acquire them at
6  different times?
7     A   I don't recall.
8     Q   All right.  And that's true for all of the
9  documents?
10     A   I -- I don't recall.
11     Q   All right.  Let me ask you this:  When did
12  you acquire the 2004 version of ASHRAE Standard
13  90.1?
14     A   I really don't recall.  We did disclose
15  our invoices as part of disclosure.
16     Q   All right.  Would the answer that you do
17  not recall be true of all of the other ASHRAE
18  documents that are at issue in this litigation?
19     A   I -- I do not recall without consulting
20  the -- the paper.  No, I don't recall.
21     Q   All right.  And you believe the paper that
22  was produced in this litigation, to the extent there
23  was such paper, is -- it would accurately reflect
24  the dates of acquisition?
25     MR. BRIDGES:  Objection, lacks foundation.

316

1     THE WITNESS:  The invoices would.
2  BY MR. STEIMLE:
3     Q   All right.  That's actually all I've got.
4     (Sotto voce discussion.)
5     MR. STEIMLE:  Should we mark it?
6     MS. RUBEL:  What exhibit number are we up
7  to?
8     THE REPORTER:  We are 56.
9     (Exhibit 56 marked for identification.)
10  BY MR. STEIMLE:
11     Q   Mr. Malamud, I've handed you what we've
12  marked as Document 56.  Have you had a chance to
13  take a look at that document?
14     MR. BRIDGES:  Can I get the Bates number
15  on this again, just for the record?
16     MR. STEIMLE:  It's PRO_00245530.
17     MR. BRIDGES:  Thank you.
18     THE WITNESS:  Yes, I've examined this
19  document.
20  BY MR. STEIMLE:
21     Q   All right.  And you produced this
22  document, correct?
23     A   I did.
24     Q   All right.  And what does this document
25  refer to or what is it?

317

1     A   It's the number of accesses to documents
2  on a monthly basis.
3     Q   And earlier when discussing the document
4  with respect to the other plaintiffs, you had
5  indicated that the first complete month showing
6  the -- all of the accesses of these documents would
7  have been September of 2013.  Do you recall giving
8  that testimony?
9     A   Yes.
10     Q   Is that also true for these ASHRAE
11  documents?
12     A   That is correct.
13     Q   All right.  When -- previously you
14  testified you identified that the column indicating
15  total represents the sum of all of the -- of all of
16  the what's labeled hits in Column B; is that
17  correct?
18     A   Total is the sum of Column D.
19     Q   All right.
20     MR. STEIMLE:  I don't think I have anymore
21  at this time.  I think we're done for the day.
22     MR. BRIDGES:  Okay.  Yeah, this concludes
23  the Rule 30(b)(6) deposition of public -- of
24  defendant Public.Resource.Org.
25     THE VIDEOGRAPHER:  This concludes today's

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

318

1   deposition of Carl Malamud --
2        MR. BRIDGES:  I'm sorry, Carl.  Is there
3   anything we should designate as confidential?
4        THE WITNESS:  No.
5        MR. BRIDGES:  Okay.  Sorry.  You may
6   proceed.
7        MR. BRIDGES:  We reserve the right -- I
8   believe we have 30 days -- well, if you can --
9   let's go off the record for a second to determine
10  whether we'll go back on the record to make a
11  confidentiality request.
12       THE VIDEOGRAPHER:  Going off the record,
13  the time is 6:37 p.m.
14          (Recess taken.)
15       THE VIDEOGRAPHER:  We're back on the
16  record.  The time is 6:38 p.m.
17       MR. BRIDGES:  Okay.  We can now determine
18  that the deposition is concluded.  We're not making
19  any confidentiality designations.
20       THE VIDEOGRAPHER:  All right.  This
21  concludes today's deposition of Carl Malamud.
22  Master discs of today's deposition will remain in
23  the custody of Capital Reporting.  The time is 6:38
24  p.m.
25       MR. BRIDGES:  I just want to say it's the

319

1   deposition of Public.Resource.Org, not of Carl
2   Malamud.  He was the designated witness of the
3   deponent and the deponent was Public.Resource.Org.
4        THE VIDEOGRAPHER:  The time is 6:38 p.m.
5   We are now off record.
6        (Whereupon, at 6:38 p.m., the deposition of THE
7   30(b)(6) OF PUBLIC.RESOURCE.ORG was concluded.)
8            * * * * *
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

320

1        CERTIFICATION OF DEPOSITION OFFICER
2        I, Ashley Soevyn, CSR, duly authorized to
3   administer oaths pursuant to Section 2093(b) of the
4   California Code of Civil Procedure, hereby certify
5   that the witness in the foregoing deposition was by
6   me sworn to testify to the truth, the whole truth
7   and nothing but the truth in the within-entitled
8   cause; that said deposition was taken at the time
9   and place therein stated; that the testimony of the
10  said witness was thereafter transcribed by means of
11  computer-aided transcription; that the foregoing is
12  a full complete and true record of said testimony;
13  and that the witness was given an opportunity to
14  read and correct said deposition and to subscribe
15  the same.
16     I further certify that I am not of counsel or
17  attorney for either or any of the parties in the
18  foregoing deposition and caption named or in any
19  way interested in the outcome of this cause named
20  in said caption.
21
22
23
24  _____
25  ASHLEY SOEVYN
    CSR No. 12019

321

1   FENWICK & WEST
    CARL MALAMUD
2   c/o ANDREW BRIDGES
    555 California Street
3   12th Floor, San Francisco, CA 94104
    IN RE:  ASTM V  PUBLIC RESOURCE ORG
4   Dear Mr Malamud:
5     Please be advised that, pursuant to California
    Code of Civil Procedure Section 2025 520 or Federal
6   Rule of Civil Procedure 30, the original transcript
    of your deposition, taken Thursday, February 26,
    2014, in the above-referenced matter, has been
8   completed and is not ready for your reading,
    correcting, and signing
9
10    Pursuant to the applicable rles, the transcript
    will be available for 30 days  Any errata changes
11  must be signed by the deponent within the 30-day
    time period
12
      The official transcript for the noticing
13  counsel, with exhibits, will be mailed in
    accordance with said rules, depending on the action
14  of the deponent
15    Please do not hesitate to contact us if you
    have any questions
16
17        Best Regards,
18
19
20        Ashley Soevyn
          CSR No  12019
21
22
    cc:  Original Transcript
23    All Counsel
24
25

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

322

1    A C K N O W L E D G E M E N T   O F   D E P O N E N T
2
3
4    I, Carl Malamud, 30(b(6) witness, do hereby
5    acknowledge I have read and examined the foregoing
6    pages of testimony, and the same is a true, correct
7    and complete transcription of the testimony given
8    by me, and any changes or corrections, if any,
9    appear in the attached errata sheet signed by me.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
     _____  _____
25   Date          Carl Malamud

323

1    Capital Reporting Company
     1821 Jefferson Place, NW
2    Third Floor
     Washington DC 20036
3    (415) 499-DEPO (3376)
4        E R R A T A   S H E E T
5    Case Name: ASTM V  PUBLIC RESOURCE ORG
6    Witness Name:  THE 30(B)(6) OF PUBLIC RESOURCE ORG
7    Deposition Date:  THURSDAY, FEBRUARY 26
8    Page No  Line No   Change/Reason for Change
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
     _____  _____
25   Signature          Date

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 1

---
$
---

**$1,500** 128:24

**$350,000** 182:16
     183:4

---
0
---

**0.49** 167:3

**08** 136:3

**0can** 80:17

---
1
---

**1** 1:18 4:16 7:8
     114:18 250:24
     304:4,6 305:6
     308:20,21

**1:13-cv-01215-EGS**
     1:8 7:14

**1:13-cv-01215-TSC**
     9:15

**1:29** 156:10

**10** 228:20

**10:07** 1:17 7:19

**10:39** 37:8

**10:40** 37:11

**100** 167:20,25

**101** 2:16

**102** 4:14

**103** 4:15

**1050** 7:23

**10th** 3:5

**11** 4:15 199:1 260:13

**11:06** 126:18

**11:13** 67:11

**11:25** 67:14

**11:30** 259:21

**11:35** 275:19

**11:36** 259:23

**111** 4:16

**1111** 2:4

**112** 4:17

**1191** 3:4

**12** 99:4 268:17

**12,000** 262:16

**12,767** 258:19,23
     263:1,3

**12:17** 114:17

**12:31** 114:21

**12:41** 99:5

**12019** 1:20 320:25
     321:20

**126** 5:8

**12th** 321:3

**13** 230:10,20
     231:6,11

**136** 5:10

**139** 5:12

**14** 189:8,12

**141** 5:14

**1-4-14** 5:20

**144** 5:17

**15** 240:22

**151** 5:18

**15th** 145:11

**16** 4:12,14 5:23
     198:13,23

**166237** 228:11

**166238** 243:23

**166257** 141:14

**166297** 243:9

**167,000** 301:15

**167,982** 300:15

**167544** 305:16

**17** 239:17,22 240:13

**1702** 239:20

**175,000** 182:22 183:3

**176** 5:20

**18** 89:10 188:22

**180** 7:24

**1821** 323:1

**19** 18:21

**192.113** 5:13
     139:14,24
     140:12,21
     142:15,25
     143:2,11,23
     144:3,6,10

**192.113's** 140:18

**192.7** 5:17 141:4
     142:25 143:9
     144:2,17 147:18

**196** 142:2,7

**1962** 127:8

**1969** 211:4

**198** 5:22

**1980** 12:25

**1982** 12:25

**1983** 14:12,15

**1991** 17:12 18:18

**1992** 17:14 18:20

**1996** 18:22,23

**1997** 18:15,18,20
     19:17 28:20

**1998** 28:21

---
2
---

**2** 6:15,16 114:22
     165:12,22 203:25
     251:3 267:5
     268:5,13,14

**2:26** 156:13

**20** 273:16

**200** 210:7 272:10,22
     273:10

**2000** 1:18 18:17
     20:11 21:10 137:5

**20004** 2:5

**2002** 21:10 22:9
     230:20 239:23

**2003** 22:9

**20036** 323:2

**2004** 146:3
     147:8,20,25
     148:2,4,8,18 149:2
     150:2,3,4 243:17
     244:6,9,21 245:4
     313:3 315:12

**2005** 22:12 224:22
     225:5,10 226:8

**2007** 22:19 129:6
     313:5,9

**2008** 31:1 43:16 45:6
     129:25 145:12
     146:3 147:18 148:3
     150:2 226:14,23
     241:6 245:11

**2010** 145:7 313:15

**2011** 59:6 123:22
     222:19,23 258:15
     262:3 275:8,18
     276:21 280:25

**2012** 57:25
     58:3,15,21 59:12
     61:22 97:6 99:4

**2013** 298:9,15,16,25
     299:1,3,7,10,16,21
     300:14,21
     301:1,4,14 317:7

**2014** 173:13,17 174:1
     210:5 256:14
     259:10 263:1
     265:11,20 288:15
     292:18 293:14
     294:9,14 295:16
     298:10 299:22
     300:14,21,24
     301:2,14 321:8

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

Page 2

**2015** 1:16 7:18

**202** 2:7

**2025.520** 321:6

**206** 5:24 210:7
  272:11,22

**208** 6:3

**2093(b** 320:3

**21** 171:22 172:3
  174:6,8 176:17
  177:13

**212** 6:4

**218** 6:6

**220** 4:6

**23** 4:13 241:2,5

**2300** 2:17

**232652** 255:11

**238** 6:7 243:24

**24** 44:19 45:1,15,20
  46:9,13,17,20
  47:5,8,13,14,17,22
  48:1,5,12,20 49:2,3
  52:11,20 53:20
  54:2 130:1,12
  239:3 250:16,23
  251:1 268:5,14

**245530** 297:17

**248** 6:9,11

**24-hour** 274:4,15

**25** 181:22 182:5
  250:16 251:1,4
  267:6 268:13

**254** 6:12

**259** 6:14

**26** 1:16 7:18 251:2,3
  268:20 269:22
  321:7 323:7

**267** 151:8

**274** 6:15

**27th** 2:11

**288** 6:16

**28th** 2:5

**297** 6:17

_____

_____ 3 _____

**3** 22:10 204:4 270:25

**3:32** 203:24

**3:48** 204:3

**30** 1:12 9:25 10:3
  318:8 321:7,10

**30(b(6** 4:3 322:4

**30(b)(6** 5:3 7:2 40:2
  311:25 317:23
  319:7 323:6

**30,000** 263:13

**30,350** 262:12
  263:7,21

**302** 6:19

**30-day** 321:11

**312** 4:7

**3-12-12** 5:7

**316** 6:21

**318-1259** 2:18

**32** 5:3 40:1,4,8,9
  41:18 42:2 43:3

**328** 239:24

**33** 5:4 89:9,11 91:19

**3376** 323:3

**34** 5:6 98:1,4

**35** 5:8
  126:4,5,8,12,17
  181:4

**36** 5:10 136:2,4,8

**37** 4:12 5:12
  139:13,15,24 140:6
  141:16 144:5,9,13

**38** 5:14 43:3
  141:8,9,12,21,24
  146:6,16 147:4,7,9

149:15 151:10
152:5,16 153:10
155:1,8 220:14,24
221:4 228:9 236:10
240:11 243:20

**39** 5:17 144:17,18,20

_____ 4 _____

**4** 22:10 262:2 271:4
  298:23

**4:13** 219:23

**4:27** 220:1

**40** 5:3,18
  151:3,4,7,9,23
  152:5,17 153:10
  155:18,24
  221:8,9,11 236:9
  237:17 240:11

**41** 5:20 176:3,5,8,21
  177:4,12

**415** 2:13,18 3:6,11
  323:3

**42** 5:22 198:4,6,9,22

**42290** 174:6

**43** 5:24
  206:5,6,7,10,13
  207:18 208:12

**436-9333** 3:11

**44** 6:3 208:20,21,24
  209:19 210:12,16
  211:8,14,25 212:6

**45** 6:4 212:12,15,18
  215:19 217:3,11

**46** 6:6
  218:6,9,11,16,22
  219:5

**47** 6:7 126:10
  238:7,9,12 244:10
  245:19

**48** 6:9 248:3,4,5,8

**49** 6:11 139:14,23
  140:21 142:15

143:23 144:17
147:18 248:20,21
257:16 267:2

**499-DEPO** 323:3

**4th** 173:13,17

_____ 5 _____

**5** 262:6

**5/1/12** 126:18

**5:26** 270:24

**5:41** 271:3

**50** 6:12 182:19
  221:23
  254:15,17,19 261:1
  266:3 290:23 292:4
  293:10,14
  294:9,10,11
  295:10,17

**501(c)(3** 24:5 25:17
  309:9

**51** 6:14 259:15,17
  261:21 262:2

**512-4073** 2:13

**52** 6:15 274:18,19
  279:15 288:19
  291:13,18,19
  295:22

**53** 6:16 288:9,10
  291:15,25

**54** 6:17 297:2,5

**55** 6:19 302:3,7

**555** 321:2

**56** 6:21 316:8,9,12

**560** 2:10

**5-7-12** 5:9

**59** 4:13 243:16
  244:5,9,21
  245:4,21

_____ 6 _____

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

Page 3

**6** 1:12 4:17 265:7

**6:29** 312:10

**6:30** 312:13

**6:37** 318:13

**6:38** 318:16,23
   319:4,6

**60** 258:14

**6-2-09** 5:11

**6-30-09** 5:5

**685** 260:22

**6th** 299:19

---
7
---

**7** 6:14 189:8,12 262:2

**700,000** 183:7

**73** 59:14,19 60:3,16
   61:4 62:22 63:12
   69:11 97:5
   98:13,16,19,22,25
   100:10,14 156:17

**739-5353** 2:7

**7-year-old** 189:18

---
8
---

**8** 298:21

**804** 308:20,21

**80s** 15:1 16:6 17:11

**810** 98:3

**8-13-08** 6:8

**815** 3:10

**875-2389** 3:6

**88** 176:9

**89** 5:4

---
9
---

**9** 4:5

**90.1** 308:3
   313:3,10,15 315:13

**90s** 17:11

**91** 17:11 171:24

**94104** 321:3

**94105** 2:17

**94105-2907** 2:11

**94109** 3:10

**94903** 7:24

**98** 5:6 20:11

**98101** 3:5

**99.51** 166:9 167:3,25
   168:9 171:1

---
A
---

**a.m** 7:19 37:8,11
   67:11,14 126:18
   259:21,23 275:19

**A100** 211:4

**A105** 144:25

**A106** 142:1,11,14
   143:4,22 144:13
   145:19 147:6
   148:8,19 149:1,25
   150:4

**A106/A106M-08**
   144:25 145:9

**A106's** 150:3

**ability** 28:5 29:22
   88:10 134:16

**able** 140:9 207:24
   309:2 310:4,25
   311:12

**above-referenced**
   321:8

**Absolutely** 60:2 61:3
   178:21 181:13
   209:12 296:21
   306:24

**accept** 170:7

**access** 28:13 51:23
   52:5,11,20 53:15

**54:**14 55:2,9
   56:15,23 57:13
   69:19,25 70:2
   72:1,7,22 73:9
   74:3,11,18
   75:10,23 76:25
   77:12,19 78:14,24
   209:8,17 234:4
   253:15 257:17
   271:8,13,18
   272:8,11,16
   273:2,4,13,17,21
   277:1,4,12

**accessed** 275:5,19
   279:5,11

**accesses** 209:1,25
   210:7 257:1,13
   258:4,6,23 259:6
   263:3,9 272:9
   273:22,25 274:4,10
   277:13 298:5,9,15
   299:2,7,9,16
   300:8,15 301:15
   317:1,6

**accessibility** 285:8

**accessible** 157:7

**accessing** 53:1,23
   54:8 55:25 57:2,8
   70:20 71:4 75:2
   78:4 258:12

**accompanied** 235:17

**accordance** 321:13

**according** 10:2
   122:17 124:24
   176:20 223:5
   245:10 258:23

**account** 246:16,18

**accuracy** 166:6,9
   167:2,20 168:3,15

**accurate** 65:2 169:14
   210:1,6 259:23
   295:5

**accurately** 315:23

**Acharya** 164:16

**A-C-H-A-R-Y-A**
   164:17

**acknowledge** 34:8
   109:13 322:5

**acknowledged** 87:25
   93:20

**acknowledges**
   113:19

**acknowledging**
   114:11

**acquire** 313:2
   314:3,16
   315:4,5,12

**acquired** 60:17,21
   199:21 313:5,14,18
   314:9,12,23

**acquisition** 315:24

**acronyms** 159:16

**across** 20:6

**acting** 14:24

**action** 321:13

**active** 18:14,15

**activities** 18:1 306:12

**activity** 185:9

**actual** 68:17 78:3
   106:2 155:6 260:20
   304:4

**actually** 35:21 48:5
   70:3,19 71:4 77:11
   81:4 83:14 90:15
   97:5 105:16 108:14
   109:15 120:4,15
   133:16 140:2 141:3
   174:22 187:24
   192:5 216:18
   221:10,15 228:19
   252:18 253:7
   257:16 261:23
   265:18 270:17
   274:5 284:6 297:15

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

Page 4

316:3

**add** 125:1 197:23,25
198:2

**added** 191:24 196:8

**addition** 26:24
121:10 135:20

**additional** 184:13

**address** 251:16,17
252:8,18,24 253:10
272:23 298:6

**adjourn** 312:21

**administer** 320:3

**Administration** 5:13
141:3 153:24

**administrative** 59:8
246:16,19,20

**administrator**
28:15,18 29:10,16
30:22 32:11 56:16

**adopted** 295:17

**advanced** 15:4
186:17 189:18
203:16 208:5
255:20

**advice** 164:14

**advised** 321:6

**afford** 173:10

**affording** 10:11

**afternoon** 220:4,5

**age** 188:20 189:21

**agencies** 46:3 134:1

**agency** 43:9 56:19
73:3 74:20 110:16
117:14 118:24

**ages** 189:8,12

**aggressive** 100:18
101:1,9

**ago** 34:23 35:6
119:11 216:5
256:12,15 262:15

266:13 286:9

**agreeable** 10:7

**agreement** 64:18
66:8

**ahead** 49:18 183:1
221:6 238:22 239:1
241:25 242:18
243:13 246:9
259:15 262:1
265:15 266:1
270:16 311:10

**air** 279:15

**Air-Conditioning**
1:5 8:10

**al** 7:11 9:14

**Alabama** 222:17

**allow** 36:18 214:25

**allows** 253:19

**already** 36:23 38:6
41:22 101:15
157:21 162:5

**alternative** 124:22

**am** 23:2 28:1 41:16
71:9 81:8 86:15
92:20 103:14
232:19 275:13
287:3 304:6 320:16

**amazing** 305:17

**ambiguous** 13:6,21
16:11 18:6 19:1
23:18 24:4,11
25:11,15 27:15,24
28:9 29:6,19 31:15
41:21 43:20
44:5,17 45:4,14
46:8,16 47:4,20
48:7,15,23 49:14
51:6 52:1 53:8,18
54:1,10,17 55:17
56:3 57:10,19
58:4,17 61:7,24
62:12 63:15
64:4,12,20 65:4,13

66:3,12 67:25
68:22 69:14
70:7,23 72:25
73:11,23
74:7,14,22 75:5,13
77:4,14,23 78:7
79:22 80:7
81:7,18,24
82:5,14,22 83:3
85:3 87:3 88:6
89:24 91:6,14
92:19 93:16,23
94:6,11,17,24
95:8,14,21 97:9,21
100:16 102:6 104:3
105:20 106:19
107:21 108:13
109:19 111:12
113:12 115:9,24
116:12 117:4
118:5,18 119:18
121:6 122:1,13
123:1,15 124:8
128:2,13 130:18
131:6 132:1,11,20
133:3 134:6,21
135:9 138:2 139:2
140:15,25 142:23
143:7,17,25 145:24
146:8,20 148:21
149:7,19 150:8
151:13 152:1,10,21
153:5,13
154:3,11,20
155:4,20 158:19
159:1,24 161:11,24
162:8,23 163:22
164:4,23 165:5
166:18 167:7,22
168:8,20 169:2
170:3,14,22
171:8,16 173:19
174:18 175:4,22
176:24 177:8,17
178:5,13 179:1
180:9 181:3,12
182:10 183:16
185:17 186:14,23

188:18 189:16,25
190:17 191:22
192:15 194:8,17
195:1,9,20
196:6,14 197:8,21
199:7 200:15
201:10,20 202:14
203:3 204:17 206:3
207:14 208:4
209:15 210:3
211:10,20 213:3
215:21 216:23
217:6 218:25
227:1,16,25
230:2,15 231:1
232:18 233:5,14
234:23 235:7,19
236:4,16 240:19,24
241:21 243:5,15
244:12,24
245:16,23 246:24
247:6,14 248:1
249:14 250:3,12
253:13,22 254:4
257:12 259:4,13
260:4 261:4,13
262:10,22 264:8
266:9 267:20
268:24 269:7,20
271:12 273:19
274:2,13,25 275:14
276:8,25 277:9,23
278:15,23 279:10
280:1 281:4,23
282:9 284:5,19
285:3 286:2
287:18,24 288:21
289:7,14 290:8,21
291:9,22 293:3,21
294:3 295:15
296:6,20 297:9
298:13 299:5
300:18 301:18
302:25
303:10,16,24
304:13,20 305:4
306:14 308:2,10
309:8,20 313:8,21

314:19 315:1

**American** 1:3,4 8:9
9:12 22:12 63:9
124:18 198:11

**among** 10:4

**amongst** 78:3

**amount** 216:13

**amusement** 115:16

**analysis** 104:23
110:22 125:23

**analyze** 308:15

**and/or** 160:17

**Andrew** 3:3 8:11
37:12 321:2

**ANSI** 63:3,8

**A-N-S-I** 63:9

**ANSI's** 137:6

**answer** 4:10 11:24,25
15:7 20:19 29:2
31:23 35:21,23
37:14 38:1,12 39:3
42:4 52:22 59:24
73:5 76:12,20
80:11,12 83:24
85:17 91:24 96:5,9
102:17 103:1,16
104:24 105:1
108:23 109:20
110:5,12,25 111:1
112:7,13 113:2
114:8 121:19
123:19 124:15
125:10 128:3 129:1
153:17,21 188:10
193:14 205:17
213:11 218:14
224:5 231:22
234:10 237:16
270:5 305:2 315:16

**answered** 41:22 45:5
95:7,13,20
96:3,6,17,22
101:17 125:21

138:12 144:1,8
157:20 281:12,21
295:1 311:16

**answering** 49:6

**answers** 11:11 86:10
135:21

**Anurag** 164:16

**A-N-U-R-A-G**
164:16

**anybody** 186:3 191:5
218:2

**anymore** 317:20

**anyone** 185:25

**anything** 13:10
33:11,19,24 34:1,3
47:14 62:24 79:14
85:9 104:10 105:15
116:17 132:8
164:12,19 180:5
194:14 318:3

**anywhere** 152:24

**apart** 112:18

**APC** 280:11

**API** 264:10,13,14,19
280:13,14
284:13,16,24 285:5
286:4 288:6 289:11
293:6 294:21
296:7,8

**apparently** 269:8

**Appeals** 43:22 44:2

**appear** 174:13 275:7
322:9

**APPEARANCES**
3:1

**appeared** 3:15
107:24 176:19
304:15

**appears** 40:19,22
89:12 98:5 126:8
136:5 137:17

139:20,25 141:22
149:12 151:14
165:24 172:19
174:7 176:15 177:5
198:24 208:25
211:14 213:4
218:17 221:17
260:5 288:13,17
297:5 302:19

**append** 157:2

**appendices** 121:23

**Appendix**
199:2,5,15,17,18,2
0,23
200:2,18,21,25
201:2,3,7,8,16,24,2
5 202:2,3,7,18
203:7,9,10,15

**Appliances** 137:7

**applicable** 321:10

**application** 133:7
264:14 280:13

**applied** 220:8

**apply** 220:8

**appointed** 19:2

**appropriate** 126:23
147:20 170:5
184:22 187:21

**approximate** 14:9
17:9

**approximately** 7:19
14:12 20:9 21:10
22:9 123:22 259:14

**April** 298:9,15,25
299:1,3,7,10
300:21 301:3,13

**Architect** 21:18

**archive** 27:13,22
28:1,2,6,15,19
29:11,17 30:7,8,10
195:5
196:4,8,12,21,24
203:17 207:8,11,12

208:1,2,7
246:13,16
247:3,10,17,20,21,
23 249:2,12,20
250:1 251:6,20
252:4 253:1,5,14
255:21 256:20,25
257:9 258:7,10
259:21 260:2,6
261:10,16 263:6,13
264:5,11,17,21,23
269:4 275:2,9,17
276:3 279:21
282:22 283:9
284:25 285:9
286:18 288:13

**Archive.Org** 266:14

**Archive's** 203:13
274:9

**Archivist** 62:3

**area** 44:8 133:6
210:22 295:21
307:13,15

**areas** 131:8,10,13

**Aren't** 90:16

**Argonne** 14:21

**Argument** 145:21

**argumentative** 24:11
44:5 46:6 48:15,23
49:13 54:1 55:16
57:19 58:16,24
64:4,12 65:13
68:11,22 70:7,22
74:7 77:5,14,21,22
78:8 82:5 84:11
85:2 88:23
94:10,16,23
95:13,21 96:11
102:5 107:22
110:20 114:3
115:22 116:9 117:2
118:2,16 119:16
121:16 134:22
135:5 139:3 142:23
143:7,13,16 145:22

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

Page 6

147:24 150:7 155:2
162:7 163:22
164:22 167:6,21
168:7,20 169:17
170:3,15 173:18
175:22 177:17
180:8 181:11
188:5,17 190:1,17
191:22 192:15
195:8,20 196:22
197:20 200:14
201:19 203:2
204:11,17,23 206:3
211:19 218:25
226:25 230:1
232:16 233:2,12
236:5,15 241:20
244:13 245:23
251:22 252:5
253:11,21 257:18
266:8,21 267:20
269:6,20 270:12
276:23 277:7
278:24 282:23
285:25 291:21
292:13,19 296:20
297:11 301:23
304:12,19 306:13
307:11,19 309:20
311:4

**arrive** 159:20 216:21

**Ashley** 1:19 7:22
320:2,24 321:19

**ASHRAE** 2:14 54:8
84:18,20 98:25
104:15 107:7 252:2
307:25 308:3
312:14,25
313:2,9,14,18,22
314:8 315:12,17
317:10

**aside** 25:4 103:19
104:1 108:16
134:14 246:9
248:18

**assert** 286:21 287:3

**asserted** 286:16,17

**asserting** 37:22,23
287:25 288:1

**assertion** 92:5

**assessment** 104:22
130:7

**assign** 107:18 108:3

**assigned** 287:11

**assignments** 103:9

**assistant** 124:1

**associated** 170:8
280:18

**association** 7:10,22
280:8,20 281:25
282:11 289:19
290:1,5,13
305:17,21 306:23

**Association's** 306:4

**assume** 11:10 115:18
242:17 254:23

**assumes** 46:6,19
55:4,16 65:12
70:21 77:4 79:2,23
82:5 84:4 85:1 88:5
109:17 115:23
116:10 117:3
118:3,17 119:16
120:21 121:15
122:1,25 123:14
133:14 134:20
135:6 142:22 143:6
145:5 155:3 167:6
168:7,19 169:18
173:19 218:24
232:17 233:3,13
235:6 236:3,25
244:12 253:12
254:4,11 256:22
268:23 269:6
277:8,22 278:14
279:8 281:3,22
290:9 294:17 296:6

**assuming** 134:6

**assumption** 302:17

**assurance** 181:1
184:2 194:10,12

**ASTM** 1:3 2:2 5:22
8:4 9:6,13,17
47:9,12,18,22,25
48:4,11 49:11
51:3,14,16
53:15,20
54:8,15,22
55:12,25
56:9,15,23 57:8
60:14 66:19
80:4,9,15,20
81:3,8,9,15,22
83:17,19 85:13
86:5,7 98:20
104:15 105:6,12
107:11 115:17,20
116:5,7 118:13,14
119:2,3,10,12
120:16 121:22
122:3,15
142:1,11,14,20
143:4,22 144:13,25
145:19 147:6
148:8,19 149:25
157:22 158:1
198:12,23 200:7,9
202:8,11 206:24
207:25 210:25
211:3 252:1
297:17,22
307:7,8,13 321:4
323:5

**ASTM-0013** 6:10

**ASTM's** 220:8

**attached** 6:25 224:12
278:12 322:9

**attempt** 204:14 207:9
213:7,24 214:3
249:16

**attempted** 103:21

**attempting** 108:3

**assumption** 302:17

**attend** 102:2

**attention** 99:3,20
102:8 126:16
136:18 172:7
198:25 220:13
243:8,20 293:23
294:7

**attorney** 2:16
86:1,3,9,12,24
102:16 110:23
111:25 112:5
114:4,6 115:6
119:20 124:10
125:17 138:14
205:8,10 213:13
214:9 215:8 320:17

**attorney-client**
34:12,14 59:24
83:22 85:6,7 86:24
102:15 103:14
104:20,21 105:1
110:24 112:6
114:5,7 115:6
119:19 124:11
125:18 205:9
213:14 214:10
215:10

**attorneys** 2:4,10
3:4,9 106:8
199:9,13 213:12
214:9 215:8,9

**August** 298:21
299:15,19

**author** 81:22 105:12
280:8,15,20,24
281:6,9,15,18,24
282:1,6,10
285:17,23 286:1
289:4,18,25
290:5,12,15

**authored** 78:5 81:14

**authoring** 192:25

**authorities** 115:3

**authority** 113:6,21

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 7

116:24 117:25
129:14 142:18
143:11,19,21
154:18 267:22

**authorized** 41:14
320:2

**automatically** 239:4

**availability** 43:7
56:6,18 61:17
70:24 73:13,16
204:25

**available** 24:13 43:23
44:9,14 48:12,20
49:12 51:21,24
53:5,16 181:6
200:12 201:17
202:19 211:16
226:3,9,24 232:20
235:14 236:20
251:11 275:18
297:7 304:7
308:24,25 310:2,18
311:8 321:10

**Avenue** 2:4 3:4

**average** 183:13

**avoid** 64:17

**awarded** 12:24

**aware** 27:19 36:23
51:22 52:25 55:12
70:2,17 71:3
76:17,24 77:10
78:13,23 79:9
83:16
84:6,14,15,16,17
85:4,12,17,19
86:4,16 87:4
102:11 103:8
105:25 106:24
108:17 109:24
121:22 152:18
153:11 178:22
179:6,13,20,24
180:3 185:7,25
186:7,9,21 188:14

189:6 232:19,24

**awfully** 189:18

———————
**B**
**B.S** 12:17,19

**background**
12:14,15

**bad** 48:3 179:2

**ballpark** 256:12

**Bangkok** 16:24

**based** 92:7 137:14
164:19,24 168:4
169:10 182:20
184:18 228:6
233:10,24 241:9
262:25 269:19

**bases** 150:1

**basic** 220:7

**basically** 15:22

**basis** 30:4 103:12,14
105:1 110:25 115:7
125:24 138:16
140:22 143:2,3,8
149:4 214:17 237:3
275:13 308:14
317:2

**Bates**
5:5,7,9,11,15,18,21
6:8,9,11,12,17,19,2
1 142:8,10 151:19
207:4 228:11
238:13 255:6
297:13,14 316:14

**Bates-label** 165:14

**Bates-labeled** 89:10
98:3 126:9 136:2
171:23 176:9

**Bates-stamped**
228:10 243:9,23
248:9,24 302:5
305:16

**Bearing** 103:24

**became** 14:7 43:6
44:13 120:4
121:1,3,11 128:25

**Becker** 3:3 8:16
33:10

**become** 43:17 44:25
308:23

**becomes** 81:4

**becoming** 15:2,12
20:16

**begin** 17:12 18:23
118:3 269:12,22

**beginning** 114:22
204:4 209:23
228:14 238:21
271:4 276:6 299:3

**begins** 7:8 268:6
299:15 308:20

**behalf**
8:4,7,9,12,14,17
33:1,12 41:4,8,14
43:2

**belief** 10:6 29:20
30:5 51:13 138:22
178:19

**beliefs** 138:13

**believe** 12:25 17:14
29:9,10 41:12,22
42:13 48:8
52:17,25 54:24
55:18 60:6,13
65:22 66:14,20
69:23 92:10 98:9
115:16 117:7 122:2
123:24 138:8 144:1
151:23 155:25
157:22 163:18,23
167:18,23 168:9
172:21 173:22
175:7 188:23
199:18 207:4
210:1,5
221:3,12,21,22
222:25 227:9

234:1,23 236:9
240:11 241:17
245:13,17 251:18
252:3 258:3 266:13
270:5 279:11
280:11 296:11
299:18,23 307:21
313:4 315:21 318:8

**benefit** 10:9

**Berkeley** 128:22

**Beside** 38:5

**besides** 30:13 31:2,8
32:19 35:5,10,16
36:23 52:4 55:22
78:1 129:5
197:2,13 218:2

**best** 55:2 81:15,22
158:5 163:5 185:12
193:9 202:17
321:17

**bet** 219:21

**better** 21:5 175:25
176:21 259:16

**beyond** 13:3 36:19
87:1 108:22 113:11
114:6 119:22
213:15 215:12
268:11

**binding** 61:1 266:4
279:23 290:23
292:5

**bit** 13:17 67:5 69:18
117:17 128:24
156:16 230:10
232:12 246:12

**blog** 192:16

**board** 14:5,8 21:18
25:16 26:3

**Boccio** 124:17

**BOCKIUS** 2:3

**bodies** 100:18
101:1,9 309:1,5
310:3,6,22,25

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 8

311:12

**body** 134:10 308:16

**book** 15:22 19:7
276:13 288:25

**books** 13:14 16:18

**bottom** 126:17 140:5
144:14 211:25
228:12 259:24
262:3 265:10

**bound** 59:15

**box** 21:1,3,7,12,16
260:9 275:20,21
276:12 279:19
288:24 289:4 300:3

**boxes** 62:14

**brass** 59:16

**break** 24:25 37:6,12
67:7 114:14 156:6
203:22 270:22

**Bridges** 3:3 8:11
9:3,12,24 10:20,22
11:5 12:6,10
13:5,12,20 15:6
16:10 17:18
18:5,25 20:18
23:17,23
24:3,10,24
25:10,14,22
27:14,23
28:8,11,22,25
29:5,12,18
31:14,20,23
33:9,15,18 34:8
35:1,20,24
36:1,4,10,18
37:1,16
38:9,13,15,22
41:20 43:10,19
44:4,16 45:3,13
46:5,8,15,18
47:2,19 48:6,14,22
49:6,13,22,25
50:5,8,11,17,20
51:5,15,25 52:8,21

53:3,7,17,25
54:9,16 55:3,15
56:2 57:3,9,17
58:4,16,24
59:13,23 61:6,23
62:11 63:15
64:3,11,19
65:3,11,21
66:2,10,21,25
67:4,9,24 68:10,20
69:13 70:6,13,21
71:7,18 72:3,12,24
73:4,10,22
74:6,13,21
75:4,12,19,25
76:5,12,15,18
77:3,7,13,21
78:7,16
79:1,10,15,21
80:6,11,23
81:6,17,24
82:4,13,20
83:2,8,13,21
84:1,3,10,21,25
85:5,16,18,21
86:8,23 87:8,20
88:4,17,23 89:23
90:10,20
91:5,13,20 92:8,18
93:4,15,22
94:5,10,16,23
95:6,12,20
96:2,11,16,22
97:8,16,20
100:2,15,23
101:6,13
102:5,14,19,25
103:3,11,24
104:11,19 105:9,19
106:4,13,18
107:3,8,20
108:5,12,21
109:3,10,16
110:3,9,18
111:7,24
112:12,16,23
113:8,22 114:2,15
115:5,22 116:9,19

117:2,15 118:2,16
119:5,15 120:6,19
121:5,15,25
122:12,24
123:10,13 124:7,25
125:16 127:13,25
128:12 129:1
130:17 131:5,25
132:10,19
133:2,13,18
134:4,19
135:5,9,11,19
137:13,16,24
138:11 139:1,10
140:2,7,14,24
141:15 142:4,21
143:5,13,24 144:7
145:4,14,16,21
146:7,19 147:10,22
148:1,10,20
149:6,18 150:6,20
151:12,25 152:9,20
153:4,12,18
154:2,10,19
155:2,12,19 156:7
157:19 158:2,19,25
159:23 161:10,23
162:7,22 163:21
164:3,21
165:4,15,19
166:11,16
167:5,14,21
168:6,18 169:1,16
170:2,10,13,21
171:7,15 173:18
174:2,17 175:4,21
176:12,23 177:6,15
178:3,12,25
179:9,14,21
180:2,8,21
181:2,11 182:9
183:5,15 185:16,24
186:4,13,22 187:25
188:5,10,17
189:15,24 190:16
191:2,11,15,21
192:7,14 193:13
194:7,16,25

195:8,19
196:5,13,22
197:7,15,20 198:14
199:6 200:14,22
201:9,19
202:13,20,23 203:2
204:11,16,23
205:6,21 206:2
207:13,19 208:3
209:14 210:2
211:9,19 212:7
213:2,10,18 214:7
215:6,20
216:2,8,22
217:5,14,21 218:23
219:7 221:15 222:2
224:3 225:22
226:5,25 227:15,24
229:1,8
230:1,14,25 231:20
232:3,16
233:2,12,16,22
234:6,10,15,22
235:5,18
236:2,15,24
237:2,13,18,24
238:5 239:13
240:6,18,23
241:7,20
242:2,10,16
243:4,14 244:11,23
245:7,15,22 246:23
247:5,13,25 248:13
249:13 250:2,7,11
251:8,21 252:5,9
253:3,11,21
254:3,10,22
255:6,12 256:21
257:11,18 258:1,20
259:2,12 260:3,16
261:3,12
262:9,17,20
263:2,8,15 264:7
265:18 266:8,21
267:9,12,19
268:9,22
269:5,13,17
270:3,12,17,21

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015
Page 9

271:10 272:1,19
273:5,18
274:1,11,24 275:12
276:7,14,23
277:7,22
278:4,13,22
279:8,14,25
281:1,11,20
282:7,23
283:3,10,20
284:4,18,21
285:2,10,25
286:22,25
287:7,16,23 288:20
289:6,13,20
290:7,20 291:8,21
292:2,13,19
293:2,20 294:2,16
295:1,7,14
296:5,19
297:8,11,13,23
298:12 299:4
300:17 301:5,17,23
302:10,16,24
303:3,9,15,23
304:12,19 305:1,23
306:13 307:3,11,19
308:1,9,12
309:7,18 310:7,13
311:1,4,15,18
312:4 313:7,20
314:18,25 315:25
316:14,17 317:22
318:2,5,7,17,25
321:2
**briefly** 14:1 156:21
**British** 62:17
**broad** 120:23 132:12
**broader** 37:21
204:24
**broadly** 24:13
**bucket** 210:25
**budget** 184:21
**builder** 75:9,23
76:4,9

**builder's** 76:25
**building** 47:23 49:4
52:15,19 75:11
131:8 221:24
222:10
**built** 77:11
**Burbank** 26:19
**business** 12:20,23
20:1 21:3
**button** 254:6
**buy** 63:13 64:15
157:13 235:21
251:4

———————
C
———————
**c/o** 321:2
**CA** 321:3
**calculate** 257:21
261:6
**California** 1:18
2:11,17 3:10
7:18,24 44:18,21
45:16,18,22
46:4,10,21,25
47:6,16 49:1 52:10
54:2 118:11,20
130:1,13 190:19
320:4 321:2,6
**California's** 52:11,20
53:20
**camera** 304:1
**capability** 196:25
203:16 247:22
258:11 278:1
**capable** 115:3,21
124:5,23 125:14
279:13
**capacity** 16:17 43:15
219:14,17
**Capital** 7:20,23
318:23 323:1
**caption** 9:4

320:18,20
**card** 239:2
**care** 38:23
**careful** 211:11
**carefully** 41:12 58:19
76:19
**Carl** 3:2,7 5:4,6,9,20
6:8 7:9 8:24 58:9
60:23 71:16 72:10
114:18,22 126:18
203:25 204:4
270:25 271:4
318:1,2,21 319:1
321:1 322:4,25
**Carl@media.org**
251:15
**carryover** 174:7
**carts** 11:3
**case** 1:7 7:13
9:4,7,8,14 36:12
55:23 78:6
83:20,23 103:10
104:23 107:2
108:11,20 109:2,9
110:1 111:8
112:19,20 113:10
125:23 134:8
137:20 140:23
153:10 158:15,23
160:15 161:22
162:16 178:24
179:8 197:14
206:17 211:3
213:12 214:1,6,9
215:5 224:25
226:18 227:9
251:15 265:20,22
275:6 276:10 283:5
288:8 323:5
**cases** 227:20
**categories** 285:19,21
**cause** 320:8,19
**cc** 321:22

**CC0** 286:13
287:2,11,13
**cell** 10:25
**cent** 182:19
**center** 13:24 14:4
22:12 275:20
279:19
**CEO** 20:14
**certain** 28:11 36:11
51:14 207:22
**certainly** 70:25 178:6
242:19 252:13
274:22 276:9
279:13 281:6 283:4
296:15 301:22
306:16
**CERTIFICATION**
320:1
**certifications** 13:3
**certified** 1:20 13:10
**certify** 320:4,16
**CFR** 92:3 124:4
129:23 137:5
139:14,24 140:21
141:4 142:15,18
143:11,19,21,23
144:10,17,20
147:17,18 150:3,24
210:23
**chain** 5:4,6,8,10,20
6:7 98:2 126:8
171:22 172:8 176:8
**chairman** 20:16
62:4,5
**chance** 89:15 316:12
**change** 203:21 323:8
**Change/Reason**
323:8
**changed** 9:10 261:6
**changes** 292:24
321:10 322:8

**characterization** 112:19 122:3 301:12

**charged** 21:22 22:1 239:2

**Charlie** 9:15

**chart** 166:4

**charters** 81:1

**cheat** 172:15

**cheating** 171:12 172:22

**check** 67:6 142:5 181:20 184:4 198:14 242:4 252:12

**checkout** 66:13

**checks** 180:10,15 194:10

**chemical** 239:23

**Chicago** 59:16

**chief** 22:13 52:15

**children** 188:4,15,19 189:8,12 190:24 193:8 306:19

**choose** 286:11 291:1 310:17

**chose** 264:25 265:2 286:8 289:17 290:15 291:5,19 292:1,9 296:3

**circulated** 61:22

**circumstance** 75:1 123:9 147:19 152:5 169:15 215:25

**circumstances** 75:8 76:17,24 149:9 152:17

**cite** 149:5

**cited** 140:21 147:17

**citizens** 24:14 44:10

51:11 310:18

**city** 115:15 121:9 151:22

**Civil** 320:4 321:6,7

**claim** 84:8 108:25 109:7

**claimed** 83:18 84:19 85:14

**claiming** 100:18 101:2,9

**claims** 83:19 86:6

**clarify** 271:7

**clear** 31:7 37:13 38:22 45:21 135:14 237:2

**click** 234:3 239:5

**clicked** 231:12

**clicks** 216:13

**client** 115:8 210:9 214:13 271:19,20,21,24 279:15

**clients** 14:25 15:3,13,16,24

**closed** 10:3

**code** 44:19 45:16 46:10,22 47:23 51:17 90:4,25 91:8 92:13 111:16 118:22,25 119:1 123:5 130:1,13 137:4 141:23 145:7 146:1 148:4 149:13 150:10,23 190:19 192:25 210:7,23 222:17 226:19,23 243:17 258:15 262:4 265:11,21 266:4 272:10 273:10 275:8,18 288:16 290:23 292:4,18 293:14 294:8,11,15 295:10

320:4 321:6

**coded** 230:17

**codes** 5:18 49:5 130:21 131:8 151:8,21 155:22 238:25 239:10 272:11,23

**coding** 175:24 187:21

**coffee** 266:24 270:8,11

**collect** 213:7

**collection** 189:3 196:8,12,18 218:3

**collections** 30:7

**Collective** 189:7 190:7,12,25 192:1

**college** 13:4

**colon** 281:25 282:11 289:25 290:12,22

**color** 222:25

**Columbia** 1:2 7:13

**column** 142:13,17 166:5 206:21 212:4,10 224:22 226:14 249:4,5,6,10 250:6,24 252:17,19 253:7 254:19,20,21 257:4 267:5 268:6 269:22 293:6 294:21 298:19 300:5,19,20 317:14,16,18

**columns** 209:3 221:24 222:9,13 258:14

**combined** 152:16

**comes** 13:19 199:1

**command** 201:12 275:6

**commenced** 299:13

**comment** 61:18 88:10

**comments** 104:7

**commercial** 15:21

**Commission** 62:4

**committee** 80:25 98:10

**committees** 82:7,8 105:12,23

**common** 25:17,25 26:4 253:10

**commonly** 260:1

**commons** 93:10 284:2 286:9,13 287:10

**communicated** 86:10

**communication** 34:14 36:8 39:11 85:10 104:21,22 112:6 125:18 172:17 214:10

**communications** 16:22,23 34:10 35:17,25 36:3,22 37:3 38:5,7 39:7 78:1 83:23 86:1,2,18,25 87:6,15 110:24 114:5,7 115:7 213:14

**companies** 20:3 32:7

**company** 7:20 15:21 16:1,4 19:24 20:20 21:1 26:9 27:9 313:17,18 314:23 323:1

**compare** 166:8 167:2,12 168:10,13,16 169:7 180:17 181:10 261:21 291:12

**compared** 163:12

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015
Page 11

comparison 194:11

compelling 129:19
130:3,6 184:19

compensation 23:12

competence 47:3
48:6 55:3 75:12
79:21 80:23 97:21
107:20 109:18
120:8,21 132:20
133:3 166:17
174:18 177:6
185:16 191:15
207:20 208:3
216:23 217:6,22
248:14 257:11
259:2 263:19
274:11

compile 200:2
209:19,21

compiled 136:15
211:17

complain 53:22

complained 54:7,14
56:14 57:12 71:25

complaining 54:22
56:6

complaint 227:22

complete 184:6
243:12 244:2,3
272:10 299:17,25
317:5 320:12 322:7

completed 195:15
321:8

completely 77:13
236:16 311:1

compliance 124:4

compliant 148:17

complicated 209:22

comply 125:13

complying 124:3,22

compound 24:24,25

73:22 227:2 231:1
233:16 273:6
284:21

computer 13:15,18
14:20 254:9
272:2,4,6
273:11,15 276:20
277:6,13,17 278:12
279:2,6

computer-aided
320:11

computers 23:25
278:16,19

computing 13:24
14:4

concentration 12:22

concern 190:4
293:17,22

concerned 79:7
140:3 234:2 302:11

concerns 234:20
302:15

concluded 318:18
319:7

concludes 317:22,25
318:21

conclusion 51:6
58:14 65:12 66:12
67:25 78:18 79:2
83:22 85:1 87:2
88:5 89:24 91:6,14
92:9,19 100:16,24
104:2 107:22
109:4,17 110:20
111:11 113:12,23
115:24 116:6,10
117:5 118:4,18
119:16 120:20
121:17 122:13,25
123:14 125:17
127:14 134:20
137:18 138:1,12
139:2 140:15
142:22 143:25

145:22 147:24
148:11 150:7 205:7
233:4 235:7,20
236:17 276:24
281:2,21 282:8
290:9 295:8,15
309:19

conclusions 97:9

conditional 216:3

conditions
65:10,20,23 66:1,8

Conference 59:8

confidence 180:12

confidential 318:3

confidentiality
318:11,19

confirm 94:25

confirmation 238:19

confront 178:9

confuse 68:3

confused 81:11
118:10

confusing 48:25
134:5 153:5 258:21

Congress 79:5

conjunction 138:13
213:11 215:7,9
224:1

connected 277:20

Connecticut 224:21
226:7

connection 25:7
31:13 34:6,25
36:24 41:17 60:17
64:17 65:10,20
161:21 171:13
178:24 186:10
206:16 208:9
212:20 213:8,12,25
214:5 217:4,12
218:3

consent 204:9,14
205:18

consented 205:3

conservative 274:6

consider 122:10
149:10 165:2

consistent 152:6
280:23 283:7
302:12

consult 173:21

consultant
14:8,11,16,18,19,2
5 15:3,12,16
21:17,21,22 22:1

consultants 31:13

consulted 199:8

consulting 14:23
315:19

contact 190:2 321:15

contacts 272:3

contain 210:25

contained 139:24
217:3 218:22

containing 196:11
199:24 201:4 202:4
203:11

contains 144:17
264:17

contend 205:3

content 62:20

contents 34:10,13

context 90:1 124:15
135:21 205:12
216:17 271:11,14
279:16

continue 306:23
307:2,9,14,17
312:16

continued 3:1

Continuing 262:20

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 12

**contract** 182:17

**contracted** 173:23

**contractor** 32:12
159:13

**contractors** 31:16
32:1,4,17,19,20
39:21 161:17,20
162:5

**contracts** 27:25

**contrast** 92:22

**contrasting** 92:11

**contributed** 104:14

**contributing** 16:19

**contributions** 105:16
106:2,25

**controlling** 24:21
25:3

**convenient** 10:10

**convention** 163:3
210:13,16 211:7
250:14

**conversation** 38:24
39:14,16

**conversations** 35:17
36:11,14 37:20
38:16 174:25

**conversion** 160:2,5
187:19 188:15
189:12,22
190:13,25 191:4,9
192:12 225:15

**conversions** 192:6

**convert** 175:20
182:23 185:1 187:4

**converted** 160:12
193:19 229:25

**converting** 173:15
185:6,23 186:10,20
187:15 190:8
193:18

**Cooking** 137:6

**Cooper** 63:3

**copied** 209:11 220:19

**copies** 58:22
59:11,19 60:16,18
61:21 63:13,14,22
64:9,15,16 68:19
69:11,16 74:4 97:6
135:2 156:17,19
157:11,13,15,16
158:6 204:7 232:9
233:9,11,24 234:4
276:4 278:21 279:7

**copy** 57:16,20,24
58:2 64:1,2,6,18,25
133:25 139:22
154:25 157:1
158:11,12,22
176:18 220:16,17
231:16 244:19
245:20 252:25
253:19 254:1,8
276:21 277:5
278:10,11 302:12
313:2

**copying** 220:15

**copyright** 51:9
82:19,25 83:6,12
84:8 88:1,9,11,15
89:3,17,21
90:3,9,17,19,24
91:4,12
92:1,6,16,21 93:21
94:3,21 95:19 97:7
99:25 100:14,18,21
101:2,5,10 102:13
103:21 107:18
108:20 109:8
110:17
111:6,15,18,22
113:7,16,21
115:3,21 116:7,25
117:25 118:15
119:3,13 120:12,18
121:13,21 124:6,23

125:7,15 126:1

**copyrighted** 109:1

**copyrights** 83:18
84:19 85:14 87:18
97:3 108:4

**core** 68:2 194:4

**corner** 139:18

**corporate** 8:25 43:15
219:15

**corporation** 17:16
18:3,10,14,16
20:17 23:19
24:6,21 25:4,18
26:1 33:13

**correct** 10:1 32:2
34:16 42:2,7,13
46:4,14 47:1 48:1
49:12 55:10 69:4
85:24 87:7 88:3
90:9 94:15 95:5
99:14,16 100:8,11
103:17,18 110:8
113:3 120:18
126:15 136:24
139:9,11 144:21,22
145:3,12,13
147:4,9 154:9
155:9 158:8 160:25
161:1 162:16,17
168:13,14,25 169:5
172:11,12 175:10
182:21 184:14
187:17 189:5
199:21 205:5
222:11,14 224:2
225:16 226:20
227:12 228:17,21
229:7,22 231:19,23
232:10 234:5
236:14
237:12,14,19
240:14 241:10
246:14,25 247:7
248:2 250:19
254:21 256:16

261:14 264:22
266:17 268:8 276:6
295:11 299:23
300:1 301:12
313:3,4,12,15,16
316:22 317:12,17
320:14 322:6

**corrected** 179:11

**correcting** 321:9

**corrections** 322:8

**corresponds** 142:14

**Corynne** 3:9 8:13
33:9

**corynne@eff.org**
3:11

**counsel** 3:14 7:25
8:20 9:17 10:4
11:7,9 32:13 33:5,7
34:9,11,16,18
35:7,10,16,18
85:9,10 103:20
104:1 205:15
206:16 220:2,6,16
231:8 312:14
320:16 321:13,23

**counsel's** 39:2,4

**count** 222:3 240:25
272:9,16,21
273:4,13,17,21,22
274:4,15

**counted** 273:25

**Counter-Defendants**
1:7

**Counter-Plaintiff**
1:10

**counting** 274:9

**County** 52:16

**couple** 9:3 12:13
69:24 174:12
215:14 216:4

**course** 28:2 103:6
139:21 172:15

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 13

182:16 219:15

**court** 1:1 7:12,21
8:21 9:1 11:12,16
19:14 28:25 43:22
44:1,7 205:23
267:16 269:14

**courtesies** 10:12

**court's** 10:2

**cover** 153:6 157:3
223:16,20
224:12,14 275:25
276:5

**covered** 34:11 215:10

**covers** 49:15

**crash** 11:3

**crawl** 25:17,25
26:2,4

**create** 29:22 79:20
146:11 199:15
200:25 201:7,25
202:7 203:15
206:22 219:5 253:6
264:16 285:4
303:8,11

**created** 27:1 80:5
136:16 155:14,25
201:8,16 202:18
266:10 276:5
296:7,8

**creates** 264:10

**creating** 80:9 147:4

**creation** 21:23 22:3
199:4 200:21 203:6
288:7 303:14,20

**Creative** 284:2
286:8,13 287:10

**creativecommons.or
g/
publicdomain/0/1.
0** 284:7

**creativity** 109:15

**creator** 286:18

288:1,4

**credit** 239:2

**credits** 282:17,21
285:15 295:24
296:1,4,12

**crisis** 10:24

**criteria** 116:18 151:2
152:11

**critical** 130:6,8
131:13

**CSR** 320:2,25 321:20

**CTR** 216:17

**current** 32:19 39:21

**currently** 22:25
32:5,8,17 33:9
86:11 152:18 304:7

**custody** 318:23

**Custserv@nfpa.org**
238:15

_____

D

**D.C** 14:7

**d/b/a** 1:3 9:13 198:12

**Darrell** 62:5

**data** 16:22 175:24
207:4,7 209:19,21
210:4,8 213:7
217:10,18 218:22
255:17,19,22,25
256:7 260:24
261:10 271:19
300:20

**database** 15:5

**databases** 14:19
181:5

**date** 1:16 145:3
151:15 155:24
173:12 182:17
199:20,25 200:3
201:4,16 202:5,18
203:13 207:1
208:15 211:15,17

218:12 241:6
245:21,24 249:6
256:18 322:25
323:7,25

**dated** 5:5,7,9,11,20
6:8

**dates** 10:7 203:19
315:24

**David** 32:12 56:17

**day** 10:25 120:4
317:21

**days** 9:25 11:3
292:15 318:8
321:10

**DC** 2:5 323:2

**Dead** 30:8

**dealing** 214:8

**dealt** 52:19 130:12

**Dear** 321:5

**death** 10:24

**Deborah** 5:5

**Debra** 89:6,10 92:25

**decide** 48:10,18
63:13 129:16
132:22 164:1
196:10 285:23

**decided** 45:9 57:15
59:1 102:8 129:9
294:13

**decision** 58:1,6,8,11
64:15 127:3 143:8
169:9 305:9

**defendant** 1:10 3:2
5:3 10:11 40:2
317:24

**Defendant/
Counterclaimant**
198:9

**defendant's** 207:17

**Defense** 14:20

**defined** 122:15

**definitely** 263:21

**definitions** 219:3

**degrees** 12:24

**deliberate** 116:14
128:6 129:12

**deliberately** 139:6
148:23

**deliver** 163:19
231:13

**delivered** 162:15
187:2

**delivery** 62:22

**deny** 88:22 89:1
94:9,15,19

**Department** 14:20

**depending** 321:13

**depends** 167:15
170:23 309:11

**deponent** 43:11
319:3 321:11,14

**deposed** 9:21

**deposition** 1:12 5:3
7:9,15 10:5 22:21
33:8,12 34:17
35:7,12,18
36:13,15 37:3,18
38:8,17,25 39:8,23
40:2,14 43:12
114:18,22 161:2,12
175:10 203:25
204:4 270:25 271:4
312:20 317:23
318:1,18,21,22
319:1,6
320:1,5,8,14,18
321:7 323:7

**depositions** 10:8,14

**describe** 59:10 62:20
79:18 80:17,20
129:8 156:21

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 14

180:14 210:11,15

**described** 136:19
138:4 162:5 192:23
223:5 228:23
274:10

**describing** 137:15,19

**description** 279:22
280:2,4

**descriptions** 161:8

**deserved** 184:19

**design** 185:11 187:11
188:8 189:3,7
190:7,12,25 192:1
193:1

**designate** 318:3

**designated** 319:2

**designations** 318:19

**designers** 186:18

**desire** 44:2

**desktop** 254:9 257:17
273:3,9 277:19
278:11,20 279:5

**detailed** 162:3

**details** 99:6 252:17
253:7

**determine** 156:24
158:9 207:10
209:24 318:9,17

**develop** 307:18
310:22

**developed** 20:5

**development** 61:9,19
79:20 83:17
84:7,18 85:13
86:6,20 87:17,25
88:14 94:2,20
95:18 108:18 131:3
307:1 308:6,8

**devote** 102:8

**diagram** 177:19

**difference** 261:23

**different** 17:13 28:7
137:22 179:25
193:2
249:15,20,22,23
269:25 270:6
292:9,10,15
293:1,5 296:8,9
297:1 314:5 315:6

**differently** 179:3
292:14,17,22

**difficult** 68:7,8,18
69:4,10

**difficulty** 68:13 69:2

**digital** 69:7,9 139:21
235:9,12

**direct** 65:8,18 216:9
220:13 243:8,19
267:4

**direction** 215:9

**directly** 60:9,11
66:18 157:17 158:1
232:15

**director** 26:8 71:17
72:18 124:1

**directors** 25:17 26:4

**directory** 154:4,6
194:3

**Disc** 114:18,22
203:25 204:4
270:24 271:4

**disclose** 36:8 315:14

**disclosed** 42:18 54:25
123:25

**disclosure** 42:19
315:15

**discovery** 10:3

**discs** 318:22

**discuss** 39:13 41:13
85:25 106:7

**discussed** 70:25

78:10 116:6 204:24
229:4 281:13 286:1
291:4

**discussing** 271:9
317:3

**discussion** 67:19
175:12 316:4

**discussions** 39:20
106:8

**disk** 219:10 242:5

**dissolve** 20:12,20

**dissolved** 18:16

**dissolving** 20:16
21:12

**District** 1:1,2 7:12,13

**divulge** 34:10,13

**dockets** 72:5

**docs** 172:14

**doctorate** 12:17

**document**
5:12,14,17,18
6:9,14,15,16,19
40:17,24 63:23
64:22 65:5 68:7,18
90:11,21 91:21
93:6 100:3,4
101:6,14,17 128:13
133:5 137:14
139:19 140:4,9
142:5 143:15 144:8
145:5
146:6,12,18,25
147:11 149:3,10
151:18,24 157:6
163:1,12 177:16
178:4 198:15,21
199:8,11
206:14,15,25 207:2
209:7,8 212:13,16
214:1,6,11 215:15
217:23,25 218:3,13
219:8,10 222:4
223:3 224:4,5,20

225:1,3 235:9,15
239:17 244:22
247:15
248:8,10,12,24
249:1,3 252:1,9
254:15
255:4,14,16,17
257:17 261:1,8
262:25 263:15,24
264:5,16,20,24
265:3,4,8 266:4,14
267:13,14
268:10,12
269:4,11,12
272:13,17,23
273:2,3 274:21
277:2,18 278:10,11
279:21,23 280:21
281:7,18,19 283:2
284:12,24 285:8,20
286:24 287:8,14,22
288:12 289:12
290:4,24 291:7,20
292:5 293:15
295:22,25 296:4
297:5,24 298:2
299:2,11 300:2
302:2,4,9
305:2,5,13,24
310:14 311:2,18
313:6,22
316:12,13,19,22,24
317:3

**documents** 16:14
41:19
42:9,18,20,23 43:7
63:21 67:17,22,23
80:19 100:19 101:2
146:13 157:5
181:10 196:7,11
232:20 235:22,24
236:20 259:7 276:1
282:22 283:8
314:4,8,12,17
315:4,9,18
317:1,6,11

**domain** 284:2

287:6,14,22

**domain/0/1.0** 287:9

**done** 135:10 162:19
  175:13 183:24
  185:13 186:1
  192:13 193:17
  194:19 208:9 215:3
  283:11 292:10
  293:4 304:1 317:21

**dot** 5:13 26:21,22
  267:22

**double** 183:10

**double-check** 13:1
  181:15

**double-key** 160:1
  163:7,9,10,15
  164:2,11,24
  166:8,20 167:2,12
  168:5,10,16,22
  169:7,11,21
  170:4,17,25 174:1
  229:5

**double-keyed** 159:14
  167:19 172:15
  173:4,9 175:19
  177:21 225:12
  229:4,10

**double-keying** 167:4
  168:25 169:13
  170:9 171:5 172:23
  175:2 176:1 177:14
  178:1,10 183:23
  225:14

**download** 208:6
  226:22 239:5 242:7
  252:24 253:19
  254:6,8 256:24
  262:21 273:3
  276:21 277:10

**downloaded** 208:1
  209:11 241:19,25
  256:19

**downloading** 239:6
  241:12 254:1 273:9

277:5

**downloads**
  206:11,21,23
  207:10 254:20
  255:23 256:1
  257:5,7,10,16,25
  258:18
  260:15,20,21
  261:10,17
  262:7,8,11,14,21,2
  4 263:5,13,21
  281:14

**dozen** 240:22

**Dr** 56:17

**draft** 81:4 82:9,15

**draw** 99:3 172:7

**drive** 7:23 219:10
  242:5

**dry** 239:23

**due** 77:11

**duly** 7:4 9:1 320:2

**dummy** 250:25

**dump** 151:16 214:18
  215:23 216:1
  275:2,4 288:14

**during** 13:4 14:9,24
  17:5,8,9 20:9 30:24
  39:14 74:2

_____

         E
_____

**e.g** 127:3

**earlier** 40:13 67:16
  69:18 72:4,13 78:2
  98:17 106:6
  107:4,9 108:6
  112:2 125:3
  134:2,17 135:21
  144:21 148:12
  150:25 151:11
  180:11 220:14
  221:3,12 223:6
  227:10 228:23
  229:4 232:13

234:1,19 242:16
  249:4 265:24
  269:19 276:4 292:8
  296:11 297:21
  298:13,19 299:25
  317:3

**early** 17:11

**easier** 63:20 64:8
  69:16 234:9

**easiest** 63:17

**easily** 11:17

**eBook** 258:8

**economics** 12:20,23

**Eddy** 3:10

**editable** 194:5

**edition** 239:23
  244:6,9,21 245:4

**editions** 137:8

**editor** 16:19

**educational** 12:15

**effect** 45:17 285:7

**effectively** 135:22

**efforts** 309:15

**EGS** 9:8

**eight** 13:13

**either** 14:10 54:8
  123:25 146:5 150:2
  152:4 161:3 196:1
  320:17

**elected** 169:6

**electric** 118:25 119:1
  227:23

**electrical** 49:4
  118:21 222:14,17
  224:22 226:13,23
  258:15 262:4
  265:11,21 275:8,18
  288:16 292:18
  293:14 294:8,11,15
  295:10

**electronic** 3:8 8:14
  21:5 33:25 39:19
  54:21 55:6,18
  57:24 63:14,22
  64:1,2,6,9,16,18,25
  67:22 68:18 69:11
  93:9 98:6 156:19
  157:13 158:6
  227:23 228:6 235:3

**electronically** 68:15

**elements** 160:18

**eliminate** 116:24

**else** 33:24 34:1,3
  42:12 62:24 71:22
  79:14 104:10
  116:17 152:24
  164:12 194:14
  314:24

**else's** 243:3

**e-mail** 5:4,6,8,10,20
  6:7 39:18 63:2,5
  89:15 93:1 98:2,13
  126:12,22 136:2,11
  137:23 165:13,23
  166:22 167:1
  171:22
  172:4,8,10,20
  173:12 174:7,22
  176:8 178:2
  238:13,14,18,21
  251:16,17 252:8

**e-mailed** 255:8,9

**e-mails** 42:6,15 55:22
  89:9 126:8,13
  176:11

**embraces** 37:20

**employed** 14:15
  16:16 19:22 22:25
  31:9

**employee** 14:11
  30:17 46:25

**employees** 30:12,16
  31:3,8 39:21
  104:6,14

105:6,13,17,22
106:2 107:1,17
108:3,16

**employment** 14:13
17:6 18:24

**enable** 310:6

**encompass** 277:4

**encounter** 131:21
132:7 215:25

**encountered** 117:8

**enforcement** 56:25

**engaged** 163:15

**engine** 207:8 215:16

**engineer** 13:10

**Engineering** 21:19

**Engineers** 1:5 8:10

**ensure** 180:6

**enter** 280:9,15

**entered** 66:8
279:20,24

**entering** 264:20

**entire** 123:3,17
136:23 237:5
272:17

**Entirely** 124:14

**entirety** 103:2

**entitled** 5:12,14,18
6:19 135:2,16
138:9 141:12 151:7

**entity** 156:3

**entry** 263:25

**equivalent** 149:15

**errata** 321:10 322:9

**error** 166:19
167:8,24 168:2,21
169:20,25
170:8,17,20,25

**errors** 161:7 163:13
167:10

**essentially** 151:9

**establish** 308:23

**establishes** 133:6
310:10

**estimate** 181:18

**et** 7:11 9:13

**European** 19:21

**event** 59:4

**eventually** 82:19

**Everett** 3:14 8:19

**everybody** 10:23

**everybody's** 11:1

**evidence** 46:6,19
55:4,16 65:13
70:17,22 77:4,10
78:3,12,18,22
79:3,8,23 82:6
83:16 84:4,6,17
85:1,12,19 86:4
88:6 102:11 103:20
108:2,17 109:18,24
110:7 115:23
116:11 117:3
118:4,17 119:17
120:22 121:16
122:1 123:1,15
133:14 134:21
135:6 142:23 143:7
145:6 155:3 167:6
168:7,19 169:18
173:20 218:24
232:17 233:3,13
235:6 236:4,25
242:17 244:12
253:12 254:4,11
256:22 268:23
269:6 277:8,23
278:14 279:9
281:3,22 290:10
294:18 296:6

**exact** 96:3 134:14
137:3 230:4,5

**exactly** 105:5 127:15

185:2 187:6
257:24,25 261:24
301:21

**Examination** 4:2
9:17 41:1 220:2
312:14

**examined** 7:4 9:2
316:18 322:5

**examining** 21:22

**example** 30:8 35:14
47:23 52:2 56:13
63:21 71:1 75:9
77:18 88:19 97:12
106:22 118:11
127:5 128:15,18
131:14 137:5
140:12 149:11
176:19 190:20
211:6 214:25
224:21 226:8
239:16 242:22
254:8 258:13
268:17 272:12
279:22 285:24
298:22

**examples** 129:19
224:18 258:11

**Excel** 207:3 212:19
219:6

**exception** 215:15
269:22

**exchange** 89:13
126:11

**exclude** 86:9,11
213:11

**excludes** 103:13

**excluding** 115:6
218:4

**Excuse** 96:2 137:16

**executive** 71:16
72:18 123:25

**exercised** 288:6

**exhibit**

5:3,4,6,8,10,12,14,
17,18,20,22,24
6:3,4,6,7,9,11,12,1
4,15,16,17,19,21
40:1,4 41:18 42:1
43:3 89:9,11 91:19
98:1,4
126:5,8,12,17
136:2,4,8
139:13,15,24
141:9,12,16,20,24
144:5,9,12,16,18,2
0 146:6,16
147:4,7,9 149:15
151:4,7,9,10,23
152:5,16,17 153:9
155:1,8,18,24
165:12,22 171:22
174:5,8
176:5,7,17,20
177:4,12,13
198:6,9,22 199:15
200:25 206:7,10,13
207:17,18
208:12,20,21,24
209:19 210:12,16
211:8,14,24
212:6,12,15,18
215:19 217:3,11,19
218:6,9,11,16,18,2
2 219:5 220:14,24
221:4,8,9,10 228:9
236:8,10 237:17
238:7,9,12 243:20
244:10 245:19
248:5,7,19,20,21
249:4 254:17,19,23
257:16 259:15,17
261:1,21 262:2
267:2 274:18,19
279:15
288:9,10,14,19
291:13,19,25
295:22 297:2,5,16
302:3,7 316:6,9

**exhibits** 6:25 237:23
240:11 244:22

321:13

**expect** 10:8 241:24

**expectation** 10:6 189:11 201:15 202:9 211:15

**expected** 200:8

**expensive** 168:24

**experience** 14:2 185:7 186:15,20

**expert** 92:21 185:10 187:10

**expertise** 13:18 104:2 108:23 181:1 185:7 186:7,9

**explain** 20:4 30:4 36:7 45:8 51:2 63:20 67:21 69:6 73:19 74:3 91:3 127:12 177:4 212:3

**explained** 11:8 70:11

**explanation** 74:10 127:21

**explicit** 127:1 129:13 144:2

**explicitly** 127:17 138:5 148:22 152:12 156:25

**Exploratory** 93:11

**expressed** 125:19

**expression** 110:1

**expressions** 112:17

**extemporaneously** 304:1

**extend** 306:25

**extending** 228:15

**extensively** 185:19

**extent** 28:11 87:1 88:7 100:15 109:16 110:21 113:9 119:21 124:9

127:13 138:13 142:5 205:6 213:15 215:6 241:7 268:10 271:10 289:20 308:12 315:22

**extinguishing** 239:23

**extra** 191:24

_____

**F**

**fact** 116:2 121:22 137:18 145:9 171:1 212:24 237:5,6 239:12 246:4 252:10 268:19 294:11 305:7

**factors** 234:25

**facts** 46:6,19 55:4,16 65:12 70:22 77:4 79:3,23 82:6 84:4 85:1 88:6 103:7 109:17 115:23 116:11 117:3 118:3,17 119:17 120:22 121:15 122:1,25 123:14 133:14 134:20 135:6 142:22 143:6 145:5 155:3 167:6 168:7,19 169:18 173:20 218:24 232:17 233:3,13 235:6 236:3,25 242:17 244:12 253:12 254:4,11 256:22 268:23 269:6 277:8,23 278:14 279:9 281:3,22 290:9 294:18 296:6

**factual** 102:20 236:23

**failed** 108:19

**fair** 12:1 37:18 68:9

**fairly** 29:21 209:22

**faith** 237:7

**falls** 127:3

**familiar** 198:15,20 259:25

**familiarity** 186:24

**family** 10:23

**fan** 307:8

**fast** 117:17 231:9

**February** 1:16 7:18 210:5 298:10 299:22 300:14,21,25 301:2,14 321:7 323:7

**federal** 5:15 14:6,10 51:17 58:13 62:4 71:24 73:3,25 90:5 91:1,8 92:13 104:6,14 105:6,13,17,21 106:1 107:1,17 108:2,16 111:17 123:2,5,17 125:13 137:4 140:12 141:13,23 145:8 146:2 148:4 149:13 150:10,23 155:11 210:23 321:6

**fee** 2:3 4:5 8:2 9:10,16,18,20 10:13,18,21 11:4,6 12:12 13:9,16,25 15:10 16:15 17:23 18:7 19:4 20:23 22:5 23:20 24:1,7,15,25 25:2,12,19,24 27:5,18 28:4,17 29:8,14 30:3 31:18,25 32:16 33:21 34:15 35:4,22,25 36:2,7,17,20 37:12 38:2,4,11,14,20 39:1 40:7,9,12

41:25 43:13,14,25 44:11,23 45:7,19 46:12,23 47:7,24 48:9,17 49:9,15,17 50:2,7,9,18,21 51:1,12,19 52:3,12,23 53:4,10,21 54:4,12,19 55:8,21 56:8 57:6,14,23 58:7,20 59:3,18,25 61:13 62:1,9,15 63:11,19 64:7,14,24 65:6,16,24 66:6,16 67:7,15 68:5,16,25 69:17 70:9,16 71:2,10,21 72:8,16 73:7,15 74:1,9,16,25 75:7,17,21 76:3,7,16,23 77:9,16,25 78:11,21 79:8,13,17 80:1,16 81:2,12,20 82:10,17,24 83:5,10,15 84:5,13 85:11,23 86:17 87:5,12,23 88:12,21,25 89:14 90:6,14 91:2,9,17,23 92:4,15,24 93:12,18,25 94:8,13,18 95:3,10,16,24 96:8,14,20 97:1,13,18,25 98:7 100:7,20 101:3,11,20 102:10,18,23 103:2,4,15 104:9,16 105:4,14,24 106:10,15,23 107:6,15,25 108:9,15,24

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015
Page 18

109:6,12,23
110:6,13 111:3,19
112:8,25 113:17
114:13,24 115:13
116:3,16,20
117:9,19,20
118:7,23 119:8
120:2,14
121:2,12,18
122:9,19
123:6,11,20 124:20
125:8 126:6 127:20
128:8,19 129:4
130:23 131:9
132:4,14,24
133:8,16,19
134:13,25
135:13,25 136:7
137:21 138:7,21
139:8,12,16
140:5,11,17
141:5,7,10,17,19
142:9 143:1,10,20
144:4,11,19
145:10,18
146:4,10,23 147:16
148:6,15,25
149:14,23
150:12,14 151:5,17
152:3,15,23
153:8,16,20
154:7,14,23
155:7,16,23
156:5,8,14 157:23
158:4,21 159:4,18
160:4,10 161:18
162:2,12 163:4,25
164:7 165:1,8,21
166:13,21
167:11,17
168:1,11,23
169:4,23
170:6,11,18
171:2,10,20
172:2,6 173:24
174:4,21 175:8
176:6,16
177:2,10,23

178:8,18
179:5,12,19,23
180:4,13,24
181:8,17 182:14
183:9,19 185:21
186:2,6,19 187:1
188:3,13,21 189:19
190:5,23
191:7,13,18,24
192:3,9,19
193:7,16 194:13,21
195:3,12,24
196:9,19
197:1,11,17
198:7,18 199:14
200:17,24
201:14,23
202:16,21,25
203:5,21
204:6,13,20
205:2,16 206:8
207:16,23
208:8,17,23 209:18
210:10 211:13,23
212:11,17 213:6,23
214:19 215:17,24
216:11 217:1,9,17
218:1,10 219:4,12
255:11

feel 37:4 205:13
312:16

fellow 22:13 128:25

fellows 129:6

felt 41:7 58:12

Fenwick 3:3 8:11,16
321:1

fenwick.com 3:6

field 13:14
296:1,4,22

fields 208:7

figure 182:25 308:25
310:1,24 311:7,22

file 42:24 69:11
158:17

159:8,11,12,20,21
160:2,6,11,17
163:2 173:15
185:1,22,23 189:13
193:22 197:4,12
199:24 200:1,4,5,6
201:4,6 202:4,6,10
203:10,14 209:17
211:5,14,16 212:19
223:7,12 229:11,15
231:4,7,13,16
238:24 239:5 240:3
249:10,16 258:7,9
264:18 272:11
273:11 279:4,7,12

file-naming 163:3

files 68:14 153:7
154:5 155:6 161:8
162:18 179:16,17
187:2,4
193:18,19,24,25
194:4,6,15,22,23
195:11,16 196:16
201:17 202:10,18
211:8 212:6
230:23,24 239:9
242:20 247:22
250:21

filings 112:19,20

final 140:10

finally 58:22

finances 34:2 42:10

fine 11:4 49:8 67:8
112:4

finish 12:18 84:3
311:10

finished 20:15

fire 1:4 7:10 49:4
221:24 222:10
280:8,19 281:25
282:11 289:18,25
290:5,12 305:17,20
306:3,4,5,10,22

firefighers 306:11

firefighters 305:22
306:7

firm 7:20 32:22

first 17:25 20:2 25:3
42:24 43:6,17 45:9
57:15 59:11 99:3
129:18 136:23
139:17 140:5 146:1
162:14 165:22
166:23 172:9,16
174:6,8,11 176:10
179:15 184:15
185:5 200:20
206:11 210:17
214:23 222:17
228:19 243:11,12
244:2,3 250:16
255:9 260:12
261:21,22,23
290:18,19 298:23
302:11 304:3
308:19 317:5

fit 277:20

five 99:11 127:5,23
128:9,10

flip 252:7

Floor 2:5,11 3:5
321:3 323:2

flow 184:10

foam 260:13 306:6

focus 12:21 16:13
49:6 68:1

folks 282:2

fomat 6:6

Force 21:19

foregoing
320:5,11,18 322:5

foreseeable 173:5,9

forget 62:19

form 49:15 50:3
196:1 314:17

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 19

**formal** 110:19

**format** 5:24 6:3,5
68:14 158:17
159:5,6,9,12,20,21
160:12 181:14
184:7 189:13
197:19 199:24
201:3 202:4,10
208:19 211:5
212:13 218:7 219:6
229:19,21,25
232:22 241:5,15
245:5 250:9 314:11

**formats** 160:17
173:16 181:6
185:22,23 197:5,12
258:8 276:22 277:2

**former** 39:21

**formula** 187:21,22

**formulas** 185:4
190:8,13

**formulation** 107:13

**forth** 7:5 221:25
222:10 289:5

**forward** 156:20

**foundation** 3:8 8:14
28:8 44:4 45:3
46:5,19 47:4
48:14,22 49:14
51:7,25 53:7,25
54:9 55:15 57:9
58:25 62:19
64:11,19 65:11
66:2,10 68:12,20
69:14 70:6,21
72:24 73:10
74:6,13,21 75:4,14
77:3,14,22 79:2,23
81:7 82:5,21 83:2
84:4 85:2 88:5,24
93:23
94:6,11,17,24
95:8,13,22
97:10,22 102:6
105:19 106:19,20

108:13 109:18
114:3 115:23
116:11 117:3
118:3,17 119:17
120:21 121:7,16,25
122:25 123:14
124:8 128:13 132:1
133:3,15 134:5,20
135:6 137:13,24
138:17,18 139:2
142:22 143:6,16,25
145:4,23 146:7,19
147:10,23 148:21
149:7 150:8 152:20
153:4,13 154:10,19
155:3 163:21
164:3,21
167:5,14,22
168:6,19 169:1,17
170:2,14,21 171:7
173:19 174:2
175:5,21 177:7,17
178:5,13,25
180:9,21 181:2,12
183:15 188:6,18
189:15,24 190:16
191:21 192:15
194:25 195:9,21
196:6,23 210:2
218:23 227:15,24
229:9 230:2
232:3,17 233:3,13
235:5,18 236:3,16
242:17 243:5,14
244:11,23
245:16,22 247:14
250:2 251:21
253:3,12,22 254:3
256:23 257:19
258:21 259:3
260:16 261:3,12
262:9,22 265:25
267:20 268:23
269:5,18 270:4
271:12 272:1
273:6,18
274:1,12,24
276:8,15,24

277:8,22 278:14,23
279:9 281:3,22
282:9 283:21
284:4,18 287:1,23
288:20 289:6 290:9
292:20 294:17
295:7 296:5,19
300:18 301:6,24
304:13 306:14
307:3,20 308:1
309:8,21 311:5
313:20 314:18
315:25

**founded** 17:14 19:24
22:18 23:7

**founder** 23:5,15

**founding** 17:25
30:15

**fourth** 10:25 136:19
172:8,13

**frame** 14:9,24 17:9
30:24

**framed** 137:25

**framework** 182:19

**Francisco** 1:18
2:11,17 3:10 7:18
321:3

**Frank** 7:19

**Frankie** 3:16

**free** 37:4 51:10
119:23 205:13

**freelance** 16:25
17:2,6,10

**freely** 309:16

**Frontier** 3:8 8:14

**fruit** 104:21

**fulfilled** 239:5

**full** 320:12

**full-time** 23:9

**fully** 12:4 194:4

**functionality** 235:14

**Fundamentals**
313:23

**funding** 308:7,16

**funds** 191:19

**furnished** 60:6

**future** 173:5,9
277:21

_____

                    G

**gained** 180:11

**game** 37:18

**Gas** 137:6 243:17

**gathering** 71:24 73:2

**general** 8:19 70:25
74:23 115:11
195:13 230:22
283:7

**generally** 36:12
56:25 157:7 201:12
224:9 226:2 230:23
250:10

**generate** 260:25

**generated** 199:11

**gentleman** 52:16

**gentlemen** 7:8

**Georgetown** 101:24
102:4

**gestures** 11:18

**G-E-T** 271:19

**gets** 272:13

**getting** 96:5 137:1
146:5 147:6 259:16

**given** 96:6 184:20
265:24 272:24
298:6,7 320:13
322:7

**giving** 128:14 317:7

**Global** 162:20
163:15 164:1 165:3

166:24 168:5,12
171:12 172:22
175:2 177:5,14
178:1,9,20 180:7
181:19 182:8
183:24,25

**Global's** 170:1 175:9
178:23 179:7

**goal** 146:18 308:22

**gone** 241:25 247:16

**good-faith** 237:6

**Google** 214:16,20,24
215:1,16

**gosh** 28:20

**G-O-V** 267:22

**gov.law** 250:13
269:12,23

**gov.law.astm** 203:18

**gov.law.nfpa** 250:17
267:7 268:7

**gov.law.nfpa.NEC.2
011** 268:18

**GovDocs** 6:15,16

**govern** 310:17

**governance** 21:23
22:2

**governed** 70:4,18
71:5 77:1 213:13

**government** 5:11,15
24:12 46:25 56:5
61:9,16 73:3 78:9
98:11 104:5,6,14
105:6,13,17,22
106:1 107:1,12,17
108:3,16 132:22
136:9,11 139:20
141:13 155:11
156:3 308:24
309:16
310:1,5,15,23
311:7

**governmental** 43:8

46:3 69:24 74:19
110:16 113:6,20
116:23 117:14,24
118:24 129:14
134:1 153:2 267:22

**Governors** 14:6,8

**GPO** 5:17

**graduate** 101:25

**granted** 205:18

**granting** 14:2

**graphic** 176:25 177:3
185:10,11 186:17
187:11 188:8 193:1
275:21

**graphical** 229:18,24

**graphics** 185:2
190:8,13,20 193:2
194:5

**Grateful** 30:8

**Great** 219:19

**greater** 168:16

**green** 222:25
223:1,10

**ground** 220:7 289:22

**grounded** 237:6

**grounds** 34:11 38:14
59:24 205:19
263:18 265:19,23

**group** 73:20 81:21
136:16 189:7
190:6,11

**groups** 71:25 72:6

**guess** 77:23 219:1

**guessed** 215:22

**guide** 21:5,6 80:24,25

———————
H
———————

**habit** 179:2

**H-A-L** 32:14

**half** 182:1 270:20

**Halperin** 32:12

**H-A-L-P-E-R-I-N**
32:15

**hand** 39:25 89:8 98:1
126:7 136:1 139:13
141:11 144:16
151:6 165:11 170:5
171:21 176:7 198:8
206:9 208:18
212:12 238:11
248:19 274:17
297:4

**handbook** 313:18,23

**handed** 316:11

**Handing** 248:7

**Hang** 176:12

**happen** 99:7 160:11
194:14

**happened** 152:19
183:25 184:24
193:18 292:24

**happens** 121:13
163:5 210:25

**happy** 94:25 171:18
175:15,16 178:17
199:9

**hard** 60:18

**harder** 64:23
67:18,22

**Hardi** 30:19,24
31:2,9

**H-A-R-D-I** 30:19

**Hardi's** 30:20

**Harvard** 128:21

**haven't** 9:23 88:13
215:13 248:11

**having** 7:3 9:1
10:10,11 57:1,7
64:1 89:17,21
94:19 104:22

172:17 174:25
186:1 278:9

**Hawaii** 226:13

**Hazardous** 5:13
141:2 153:23

**head** 11:17 183:18
218:15

**header** 143:19

**headers** 206:11

**heading** 40:24 291:2

**hear** 50:8

**heard** 9:7 20:8

**Heating** 1:4 8:9

**heavily** 97:6 99:25
100:14 101:5

**held** 7:12,16

**helps** 142:3

**Hemant**
165:13,23,24

**hereby** 127:7 320:4
322:4

**hereinafter** 7:5

**he's** 36:7 63:7 71:19
93:5 119:23 166:23
217:22 219:7 224:3
311:19

**hesitate** 321:15

**high** 12:15 178:16,19

**higher** 169:25
170:8,16,20 179:17

**high-level** 184:9
195:22

**highlighted** 144:24

**hired** 21:17 303:17

**hit** 209:6 275:6

**hits** 209:4,9 212:5,9
299:24 301:1,3,11
317:16

**hold** 22:6,15 24:22

199:19 255:8

**holding** 279:15

**home** 75:9,11,23
76:4,9,25 77:11
254:9

**homeowners** 70:12

**Honor** 26:22

**host** 210:21

**hotel** 15:23

**hour** 67:5 156:5
270:19 272:24
273:21,22 298:7

**hours** 239:3

**House** 62:5,17 98:12

**House.Resource.Org**
26:17

**Household** 137:6

**HTC** 32:22 159:13
160:7,8,9 161:3
162:13,15,18,20
163:5,15,18 164:1
165:3,6,9 166:23
168:5,12 170:1
171:1,4,12 172:21
173:23 175:2,9
177:5,13
178:1,9,20,23
179:7 180:6 181:19
182:8 183:24,25
223:6,8 224:2
225:11 229:5

**htdocs** 157:4,6

**HTM** 160:5

**HTML** 147:2,14
153:22 155:6
159:14 160:2,5,20
163:19 173:16
175:20 176:2
179:3,10 180:17
184:3,7,25 193:22
194:10 195:11
196:1,25 197:2,23
198:2 201:3,6

211:5 222:24
223:2,7,10 224:1
225:2,9,15
226:3,9,16,19,24
227:3 229:3,10,15
230:19,24
247:19,22 290:1

**HTTP** 210:20 271:18
272:3 277:13

**HTTPS** 210:20

**https://archive.org/
details** 253:16

**Hunt** 5:5 89:6,10,13
92:25 93:8

**hydrants** 306:5

**hypothetical** 28:12
114:10 117:7
118:19 119:23
128:1,18 145:23
148:1 149:6,11
150:6,11 152:9
196:5 226:5 230:25
242:10 254:10
266:22 273:7
277:24 278:13,22
279:1,10 283:20

**hypotheticals** 168:18

---

I

**IA** 6:9

**IA-ASTM-0001**
248:25

**IA-ASTM-0013**
248:9

**IA-ASTM-1** 6:11

**IA-ASTM-12** 6:11

**IBR** 210:24

**I'd** 12:25 76:10 94:25
147:1 155:5 171:18
175:14 242:4
269:10

**idea** 177:9 181:24
182:11,23 192:8

208:14 216:18
257:6 261:5 266:25
273:8

**identical** 134:11

**identification** 40:4
89:11 98:4 126:5
136:4 139:15 141:9
144:18 151:4 176:5
198:6 206:7 208:21
212:15 218:9 238:9
248:5,21 254:17
259:17 274:19
288:10 297:2 302:7
316:9

**identifications**
222:23

**identified** 36:24
39:22 65:8,18
69:19,23,25
72:6,10,14 75:22
141:25 152:25
184:22 206:23
227:21 264:5
280:16,19 281:9
304:3 317:14

**identifier** 203:19
206:12 207:6 208:6
249:5,10,15,19,21
253:6,15,17 254:20
255:23 256:2
258:12 259:7
266:11 267:5,7
268:6,21 269:3
270:1 286:19 288:7
289:25

**identifiers** 210:12
249:24 250:6
251:13 268:14
269:21

**Identifies** 283:14

**identify** 8:1 16:21
31:8 32:4,20 33:7
36:21 38:6 40:21
52:4,13,24
54:13,23 55:24

71:11,12,14,19
72:2 73:15 75:8
77:18 78:2 87:15
103:7,20 106:11
110:7 131:16
141:24,25 148:17
149:4,12 153:1
154:8 200:8 202:10
206:13 207:24
208:24 213:24
252:3 263:12
283:15,18
285:20,23 289:18

**identifying** 42:14,22
130:14 131:1
184:16

**identity** 243:13

**I'll** 12:6 15:6 24:25
28:25 29:1 31:20
34:8,9 38:3 52:21
64:3 66:21 73:4
86:25 90:15 93:4
115:7 125:1 129:1
133:16 161:12
213:18 215:10
216:8 219:15
225:22 248:19
251:4 268:3,10
289:22 300:25
302:18 305:3

**I'm** 7:20 8:5 9:6
10:1,20,25
11:7,8,15,20 13:7
14:14 15:8 21:25
23:5 24:17 25:16
26:11 27:16 28:14
33:16 35:20
36:4,6,18
37:1,5,22,23 38:17
39:25 40:20
41:10,12 43:15
46:18 50:5,11
57:17 63:2 65:14
68:23 77:7
78:16,19
81:9,10,25 83:25

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015

Page 22

84:2,16,21
85:4,6,17 86:8 89:8
90:12 91:16 92:11
98:1 101:18
102:14,25 103:11
104:25 109:20
110:4,11 111:1
113:8,23 117:15
118:9 125:10 126:7
132:2 134:6
135:10,11,14 136:1
137:18 139:4,13
140:2 141:11
143:15,21 144:16
145:15 150:13
151:6 153:18
160:14
165:11,15,19
166:12 171:21
173:14 174:24
176:7,13 180:1,3
182:6,24 183:10
185:25 187:10
188:11,19 193:13
195:13 198:8,20
199:9,13 202:23
205:13,22 206:9,20
208:18 211:11
212:12 213:10
214:7,13,22
216:6,8 217:7,19
218:6 219:13,17
220:6 221:6,7,15
223:10 236:22
237:4,25 250:5,22
251:1 254:23
255:24 261:19
265:18,22 269:13
274:5,17 275:12
288:9 291:14 297:4
302:17 307:8 318:2

**image** 187:14

**images** 160:3 163:1
184:3 185:1,7
186:11 187:4
189:13 190:20
191:4 193:23

229:11,16 230:4

**implemented** 159:20

**implicitly** 128:1

**imply** 262:21

**important** 58:13
306:21
307:2,9,14,22
308:4

**importantly** 175:25

**impossible** 120:17

**imprecise** 256:24

**impressions** 216:13

**inability** 54:14 72:22
73:9 76:25
77:11,19

**inaccuracies** 167:13

**inaccurate** 167:4

**Inc** 1:4,5,9 7:11
21:2,4,8,13,16 27:7
40:3

**Inc.'s** 198:10

**include** 78:17
98:19,22,25 105:13
185:22 256:1 299:2

**included** 71:24 84:11
160:17 194:4
215:16 286:5

**includes** 27:1 44:7,19
54:2 139:14 300:20

**including** 186:16
254:1 308:8

**inclusion** 137:2
143:3,22

**incorporate** 47:12,14
49:2 118:21 127:7
133:21 136:20
137:2,7 153:2

**incorporated** 5:18
18:8 43:8 44:3,13
45:1,10 48:20
51:17 53:2 55:13

56:7 61:17 69:20
70:5 74:19
75:10,24 77:12,20
78:4,15,25 88:8
90:4,8,18,25 91:8
92:2,12,14,23
94:22 110:15
111:5,16,21
113:5,14,20
115:2,20
117:12,13,23,24
118:11,25
120:5,15,25
121:3,9 122:22
123:3,18 124:19
125:5 126:2 127:18
129:9,17,22 130:14
131:17,22
132:8,17,22
133:11,22 134:1,18
135:4,17
138:5,10,24 139:6
142:1,25 148:4,23
149:2,16 151:8,21
152:13 153:1
154:16,17
155:10,22 156:25
196:17 210:24
214:5 224:15 276:1

**incorporates** 46:13
118:12 119:1 137:5
140:13 142:19

**incorporating** 154:9

**incorporation** 48:25
58:12 59:7 68:2
71:6 77:1 88:2,16
94:4 115:15
116:1,5,14,23
119:10,14 123:4
127:2 128:6,16
129:11,13 134:24
138:10 141:1
142:19 143:3 144:2
149:12 150:22
156:2 275:22

**incorporations**

149:21 155:18

**incorrect** 122:3

**indeed** 41:16 89:18

**independent** 31:13
102:20 241:8
263:17

**independently**
104:24 147:12
161:14 163:11

**index** 146:13 215:2

**Indiana** 12:16 13:24
14:3,5

**indicate** 147:7
203:13 287:13

**indicated** 199:25
201:5 202:5 203:18
317:5

**indicates** 78:13,23

**indicating** 167:2
317:14

**indication** 245:20

**individual** 72:9
219:16

**individuals** 71:3,19
163:10,11 208:1

**indulgence** 11:1

**industry** 164:5,13,18
168:10 169:11,12
273:25

**inform** 24:13 51:11

**information** 20:6
24:13 71:24 73:1
80:8 104:17
106:1,12,25 108:10
209:10 213:25
217:3 229:18,24
258:12 261:6 272:7
279:18,20,24 280:9
289:3,10

**InfoWorld** 16:24

**infringed** 83:20

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 23

**in-house** 3:14

**initial** 182:17 200:23
208:25

**Inkscape** 192:24
193:3,4

**I-N-K-S-C-A-P-E**
193:5

**inside** 163:1

**inspector** 52:15,19

**instance** 75:22
115:12,14 116:1

**instances** 51:22
179:24

**instead** 169:7 177:14
193:23 233:9

**Institute** 63:10
124:18

**Institution** 62:18
63:10

**instruct** 34:12
35:21,22 36:5
59:23 76:19 83:23
86:25 102:16,24
104:19 110:25
112:6 114:9 119:21
125:23 138:16
199:13 205:13
214:8,14 215:11

**instructed** 112:13
179:17

**instructible** 112:24

**instructing** 37:14,24
38:11 102:25
103:12 104:25
205:17 213:15

**instruction** 4:10 39:3
60:1 103:5 104:12
105:10 108:7 112:9
113:1 124:12 125:2
200:23 216:2,3

**instructions** 39:5
106:5 230:3 239:6

**integral** 140:3

**integrity** 140:8

**intent** 147:3 155:13

**intention** 155:8

**interactions** 10:4
104:1 199:12

**interest** 24:21 25:4
89:17
90:3,17,19,24 91:4
92:1,7,17 93:21
103:22 109:1,8
113:21

**interested** 43:6,18
44:13,25 92:12
320:19

**interesting** 192:16

**interests** 88:1,15
89:3,21 91:12
94:3,21 95:19
102:13 107:18
108:20

**interface** 216:5
255:21 260:1,6
264:15 280:13
289:11

**intermediate** 208:15

**International** 1:3
9:13 16:23 198:12

**International's** 5:22

**Internet** 17:15,17,20
18:1,2,13,19
19:6,21 20:7
21:18,24 22:3
24:19 26:25
27:13,22
28:1,2,6,15,19
29:11,17 30:7,10
43:23 44:15 48:13
55:1,10 60:5 102:7
181:7 195:5
196:4,8,11,21,24
200:13 201:18
203:13,17

207:8,11,12
208:1,2,7
246:13,16
247:3,10,16,20,21,
23 249:2,12,20
250:1 251:6,20
252:4 253:1,5,14
255:21 256:19,25
257:9 258:7,10
259:20 260:1,6
261:10,16 263:6,12
264:5,11,17 269:4
271:23 272:3 274:9
275:2,9,17
276:3,20
277:13,14,17,21
279:5,12,21 282:22
283:8 284:25 285:8
286:18 288:13

**interpret** 218:21

**interpreting** 57:17
115:5

**Interrogatories** 5:23
198:13

**interrogatory** 198:23
199:19

**investigation** 104:23

**Invisible** 19:24
20:1,2,10,12,24

**invite** 269:10

**invoice** 241:9 244:10
245:10,25

**invoices** 60:6 173:22
315:15 316:1

**involved** 85:15 87:19
188:24,25 189:2
199:4,7 200:20
201:12 203:6 205:1
218:2

**involvement** 303:13

**IP** 272:23 298:6

**irrelevant** 82:20

**I-S** 62:7

**isn't** 99:16 142:20
152:4,16 160:15
178:2

**Issa** 62:5

**I-S-S-A** 62:8

**issue** 11:2 43:6,18
56:19,24 58:13,18
59:7 68:2 73:14
78:10 79:6,12
84:20 88:11 103:9
107:2,14
109:2,9,25 117:8
119:7 156:22
157:14,17
158:7,15,23
159:3,8 160:16
161:22 162:15
163:16 164:2
167:19 175:18
178:24 179:8 180:7
197:9,13,19 199:24
201:4 202:4 203:11
204:8 209:2 215:4
227:18 233:24
247:24 315:18

**issues** 61:15,19 69:8
179:10 204:25

**item** 193:24 194:3
210:18

**items** 99:12,17 191:5
193:21 291:1

**it's** 7:11 9:6,12 11:2
18:16 26:1,15
28:12 34:11 35:24
36:1 40:1 45:16,23
46:1 47:15 54:24
59:1 63:17 65:5
76:1,4 89:9
95:4,11,25 96:5,10
98:1 101:17 102:18
108:1 110:22 115:8
119:18,19 120:12
122:17 124:10,22
125:11 132:21
135:16 136:2,13

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 24

137:18,25 138:8,22
139:14 140:20
141:12 142:1,2
144:5 146:9,13
151:7 152:22 153:6
155:9 164:5 165:13
167:8 169:20
170:16 171:22
175:15
183:3,7,10,18
198:9 201:12,15
206:3 207:3 208:19
209:13,16,22
210:20 211:3,14
212:5,9 214:24
223:16 231:4 234:9
251:1,3 252:7,9,23
255:9,20 256:25
258:3 264:9 271:10
273:20 275:1
277:11,12 278:6,25
279:1 283:22 292:3
295:4 297:15,16
298:21 301:7,8
302:18 305:16,20
306:3,21 307:2,9
316:16 317:1
318:25

I've 13:13,22 37:6
54:21 76:18 86:13
93:8 96:6 138:3
248:15 265:24
312:2 316:3,11,18

_____
J

January 10:3
173:13,17 174:1
256:14 259:10
263:1

Japan 19:13

Jefferson 323:1

jkfee@morganlewis.
com 2:6

job 18:18 23:16
128:23 184:25

190:3

jobs 13:23

Joel 30:19,20

joined 22:12

Jordana 2:3 8:3
220:22

Joseph 5:8 126:9
128:20

JPG 160:2,6,12,20
163:2 179:16 184:3
185:1,6,22 186:11
187:4 188:16
189:13 190:3 191:4
193:18,23
229:11,16,21,25
230:7

J-P-G 160:3

JPGs 187:16,19
194:11

jrubel@morganlewi
s.com 2:6

judge 9:10

judgment 184:18

July 145:11

juncture 219:18

justify 150:4

_____
K

Kail 32:10

K-A-I-L 32:10

kb 239:24

Keio 19:13,16,18

K-E-I-O 19:15

Kelly 2:9 8:6

Kelly.Klaus@mto.co
m 2:12

Kevin 2:3 8:2 40:5
171:25 255:9

key 105:22 107:12

keyword 265:18
266:15 270:6

keywords 263:25
264:2,4,20,24,25
265:5,14,16
266:3,11 291:3,5,7
297:1

kids 189:21 191:8,14
192:5,11,21

kilo-character
182:18

kilo-characters
182:12,15,24
183:3,8,13

King 2:15 8:8

Klaus 2:9 8:6

knew 183:17

knowledge 55:2
81:23 88:8 93:7
102:21 107:16
162:3 163:6 185:12
186:5 193:10
202:17 214:11
216:19 225:7
263:17 278:5

knowledgeable
192:10

known 59:16

Kraft 5:7 98:2,8,9
99:5

kslaw.com 2:18

_____
L

Lab 19:3,9

label 151:19 207:5
290:11

labeled 209:3 221:24
222:10,13 229:14
257:4,6 317:16

labels 249:17

Laboratory 14:21,22

lack 47:2 48:6

56:6,18 70:24
71:25 73:12,15
138:17 166:16
259:3 263:19
265:24 268:22
270:7 276:14 278:5

lacks 28:8 44:4 45:3
46:5,19 47:4
48:14,22 49:14
51:6,25 53:7,25
54:9 55:15 57:9
58:25 64:11,19
65:11 66:2,10
68:11,20 69:14
70:6,21 72:24
73:10 74:6,13,21
75:4,13 77:3,13,22
79:1,22 81:7
82:5,20 83:2 84:4
85:2 88:5,24 93:23
94:6,10,17,24
95:8,13,21 97:9,21
102:6 105:19
106:19,20 107:20
108:13 109:18
114:3 115:23
116:11 117:3
118:3,17 119:17
120:21 121:6,16,25
122:25 123:14
124:8 128:13 132:1
133:3,14 134:5,20
135:6 137:13,24
139:2 142:22
143:6,16,25
145:4,23 146:7,19
147:10,23 148:21
149:7 150:8 152:20
153:4,13 154:10,19
155:3 163:21
164:3,21
167:5,14,22
168:6,19 169:1,17
170:2,14,21 171:7
173:19 174:2,18
175:5,21 177:7,16
178:4,13,25
180:9,21 181:2,12

_____

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015
Page 25

183:15 188:6,18
189:15,24 190:16
191:21 192:15
194:25 195:9,21
196:6,23 210:2
218:23 227:15,24
229:9 230:2
232:3,17 233:3,13
235:5,18 236:3,16
242:17 243:5,14
244:11,23
245:16,22 247:13
250:2 251:21
253:3,12,22 254:3
256:22 257:19
258:20 259:2
260:16 261:3,12
262:9,22 267:19
269:5,17 270:4
271:12 272:1
273:6,18
274:1,11,24
276:8,24 277:8,22
278:14,23 279:9
281:2,3,21 282:8
283:21 284:4,18
287:1,23 288:20
289:6 290:9 292:20
294:17 295:7
296:5,19 300:18
301:6,23 304:13
306:14 307:3,20
308:1 309:8,20
311:5 313:20
314:18 315:25

**ladies** 7:7

**language** 81:4 137:4
185:3 192:25

**large** 29:21 30:6
71:23 72:6 79:11
80:19 105:11 181:5

**Las** 115:16 116:4
119:9,14
120:5,15,25
121:4,9

**last** 10:20 11:3 39:10

50:15,17,20,22
71:8 113:2 182:17
211:24 215:14
270:11 300:2

**late** 17:11,14

**later** 49:25 134:2,17
150:25 273:16
293:5

**law** 2:4,10,16 3:4,9
5:18 44:6,9
51:9,10,14,18 68:3
88:9 101:21,23
102:2,4 111:14,17
113:16 116:2
120:11 121:1,11,20
123:18 124:19
125:6,7 126:1,2,3
127:9,18
128:7,17,22
129:15,21,24
131:13 148:24
151:8,21 152:13
308:22,23,25 310:2
311:8

**L-A-W** 267:23

**Law.Resource.Org**
26:17 195:2 210:21
304:9

**Lawrence** 14:21

**laws** 45:17 310:16

**lawsuit** 205:8,15

**lawyer** 91:16 101:19
110:4 214:13

**lawyers** 110:18 218:4
282:2

**lay** 122:13 308:10
309:7,18

**layman's** 187:13

**lead** 9:6 44:2
167:13,19

**leadership** 107:13

**leads** 23:11

**learned** 103:19

**learning** 93:10

**least** 51:13 54:3
55:19 93:20 118:10
146:18 155:14,24
159:8 160:16
177:12 190:6,11
193:24 194:11
204:18 211:15
219:6 265:6 299:21

**leave** 11:1 25:22
102:4

**leaving** 10:25

**led** 76:25 116:5
292:25

**left-hand** 139:18
206:21

**legal** 7:21 43:22 44:6
51:6 59:21 65:12
66:11 67:25 78:17
79:2 83:22 84:25
87:2 88:5 89:24
91:5,13 92:9,18
97:9 100:16,24
104:2 107:22
109:3,17
110:10,19,20,22
111:11 112:4
113:11,22 114:2
115:8,24 116:10
117:4,5 118:4,18
119:16 120:7,8,20
121:17 122:12,24
123:13 124:7
125:1,17,22
127:4,14 128:1
132:20 133:13
134:5,19 135:7
137:17,18 138:1,12
139:1 140:15
142:21 143:5,24
145:22 147:23
148:11 150:7
164:6,25 169:12
205:7,9 232:18

233:4,14
235:6,19,20 236:17
276:24 281:1,2,21
282:8 287:17
289:22,23 290:8
295:8,14 308:13
309:19

**legally** 266:4 279:23
290:23 292:5

**legitimate** 88:1

**less** 168:22 169:14,21
180:11 181:22
182:1,4

**let's** 162:13 199:19
210:4 221:10 226:7
236:9 262:1
270:15,21 273:2
286:7 305:15 318:9

**letters** 61:16

**level** 58:13 184:20

**Lewis** 2:3 7:16 8:2,3

**LexisNexis** 164:10

**license** 1:20 64:17
286:14 287:2,11,13

**licensed** 284:1,13,16
285:1,5 286:7

**life** 10:24 306:6

**lights** 311:23

**limit** 88:10 135:22
188:20

**limitations** 106:5

**limited** 124:12
138:16 184:20

**limits** 235:14

**line** 4:11 87:9 93:9
102:15 107:4,9
108:6 237:5
282:16,21
283:1,19,25 286:8
291:6 323:8

**lines** 13:11 67:19

85:20 110:8 112:2 154:1

**link** 184:4 194:10 224:8,9,19 225:7,25 226:1,15 230:12,23 231:6,12 239:6

**linkable** 225:18

**links** 223:24,25 228:19,20 229:15 276:12,19 278:3

**list** 26:15 41:11 82:7 99:11,17 136:13,14 153:9 154:6 155:9,14 299:25

**listed** 41:18 127:5,23 128:9 146:16 147:1 152:4 155:1,25 200:6 212:6 222:17 228:16 230:10 231:11,25 232:7 236:8 237:17,22 240:10 243:11 249:24 250:6 252:1 253:20 254:2 258:18 260:15 261:21 262:8,24 263:13 267:6 269:11 276:22 290:18 295:24

**listen** 15:7 20:18 52:21 73:5 76:19 80:12

**listing** 140:20 215:1,15 226:8 231:3 239:20 261:17 265:15

**listings** 221:22,23 222:8,9

**lists** 149:21 153:22,25 154:5,15 155:21 236:10 239:17 251:15 262:7 297:6

**litigation** 39:13 119:19 124:9,13 153:14 205:12 217:13 218:4 249:2 255:5 261:9 299:13,17 302:5 315:18,22

**little** 13:17 67:5 128:24 156:16 226:12 228:11 230:10 232:12 246:12 256:15 262:15 309:11

**live** 157:5 169:25

**Livermore** 14:22

**lives** 305:18,21 306:6,11,19

**LLP** 2:3,9 3:3

**located** 7:16,23

**LOCATION** 1:18

**locator** 253:8

**logs** 209:23 299:12,13 301:8

**long** 16:3 19:8,16 21:7 22:15 26:3,15 102:2 175:15 186:15 270:17

**longer** 115:21 124:5,24 125:14

**long-time** 28:14

**lose** 113:6

**loses** 110:16 111:6,22 117:14,25 119:3

**lost** 116:7 118:14 119:13

**lot** 52:9 59:6 80:8 104:5,13 183:23 186:24 190:18 237:3

**lots** 159:16

**loved** 62:23

**low** 179:16

**LP** 243:16

**LS** 202:8

**LS-L** 200:7

**lunch** 156:6,11,15

**Luther** 26:19

———————
M
———————

**Madame** 8:21

**Magazine** 16:22

**mail** 33:25 39:19 54:21 55:7,18 93:9 98:6

**mailed** 321:13

**mailing** 136:13,14

**maintain** 36:6 113:21

**Malamud** 3:2,7 5:5,7,9,20 6:8 7:9 8:24 9:21 10:19 11:7 32:25 39:7,11,25 43:5 58:9 60:23 67:16 114:18,23 126:18 139:17 141:20 151:9 156:15 160:25 171:11,23 172:11,18 175:1 176:7,20 177:11,18,24 183:20 185:10 203:25 204:5,7 206:9 219:13 270:25 271:5 312:16 314:22 316:11 318:1,21 319:2 321:1,5 322:4,25

**Malamud's** 205:19

**Man** 304:4,6 305:6 308:20,21

**manage** 29:22,24 30:1 214:25

**management** 20:15 69:7,10 235:10,13

**manager** 93:10

**manifest** 141:22

**manifest.us.html** 231:3

**manner** 28:6 201:8

**Manual** 6:19 302:20,22 303:14

**manually** 180:18

**March** 99:4

**mark** 40:5 259:15 288:9 316:5

**marked** 40:1,4 89:8,11 98:4 126:5,7 136:1,4 139:15 141:9,11 144:18 151:4,6 165:12 171:21 172:1 176:5 198:6,8 206:7,10 208:20,21 212:15 218:9 220:14 238:9,12 243:9 248:5,7,20,21 249:5,6 254:17,19,20,21 259:17 274:19 288:10 297:2,4 302:7 316:9,12

**Market** 1:18 7:17

**marking** 274:17 302:3

**marks** 114:17,21 203:24 204:3 270:24 271:3

**master** 214:20 318:22

**match** 137:3

**matched** 180:7

**material** 54:24 86:9 123:24 167:16

170:24

**materials** 1:3 5:13 9:13 30:10 43:22 44:6 80:18 132:6 141:3 153:24 168:4 198:12

**math** 182:21 183:1,5,11

**mathematical** 185:4

**MathML** 160:17 185:3 186:11,16,21,25 187:4,19,22 188:16 189:13 190:4 191:5 192:25 194:4 196:2

**matter** 7:10 50:7 59:22 87:7 167:16 208:10 212:20 213:9 217:4 237:5 321:8

**Matthew** 3:3 8:16

**maximum** 167:24 168:21 169:20

**may** 20:8 27:3 36:15 47:2 48:6 51:5 55:4 57:3 65:12,22 66:7,11 67:24 75:12 82:21 83:22 85:9 86:10 88:4 89:23 92:8 93:21 97:8 104:24 107:21 111:12 113:9,10,11 114:4,8 115:8 120:20 124:10,15 125:17,20 132:19 135:22 136:16 137:16 138:17 140:14 147:12 166:17 171:4,12 172:15,22 177:6 178:1 180:22 187:25 189:25 191:15 207:19 211:20 213:15 215:12 217:5

229:21 232:18 235:19 237:25 242:17 245:7 246:2 249:13 253:4 256:21 257:11 258:21 260:17 264:7 274:12 276:14,15,24 278:4,5 285:10 287:16,17 290:8 291:8 295:8,14 298:18 301:17 308:9 318:5

**maybe** 47:2 49:10 62:18 112:11 132:15 146:21,24 155:5 195:14 205:22 240:22 258:14 283:19

**MBA** 12:17,21 14:3

**mcsherry** 3:9 8:13

**McSherry** 8:13 33:10

**mean** 11:25 13:7 17:2 27:16 41:10 47:10,11 57:20 58:5 100:13 113:18 123:7 153:15 167:3 174:16 175:15 226:2 229:18 232:4 235:12 241:4 258:6 271:22,24 272:2 275:4 286:15 288:4 309:22,25 313:22

**meaning** 210:11 281:6 282:1

**means** 20:4 166:15 210:20 257:9 271:14,21 286:16 310:21 320:10

**meant** 100:17 101:8,14,16,18 127:12,15 310:1

**mechanical** 221:24 222:10

**mechanism** 21:23 22:2

**media** 19:3,8 71:1 79:11

**medical** 10:24

**meet** 35:14 39:6 52:9 127:4

**meeting** 34:19 35:5,6

**meetings** 34:5,21,24 35:3,7,10,11,16 36:23 56:4,12

**member** 10:23 13:24 27:20 28:7 103:22

**members** 28:12 56:18 79:5 81:3,8 82:8 84:17 87:16 102:12

**membership** 59:8

**memory** 175:14 245:9

**mentioned** 15:13 119:11 148:12 184:11 314:9

**mentoring** 188:8 192:1

**message** 136:6,8,24 165:24 171:18 177:1

**met** 34:9,16,18 56:16 93:8

**metadata** 20:6 218:12 280:17,18 282:14 285:22 286:4 295:21 296:2

**method** 170:17 201:13 264:15 274:9

**Michaels** 56:17

**mid** 15:1 19:17

**mid-August** 299:18

**middle** 40:25 288:24

289:4

**Mike** 32:10

**mind** 79:25 103:24 150:15 188:20 217:8 294:20 307:5

**minus** 167:25 202:8

**minute** 312:7

**minutes** 12:13 266:13 273:16

**mischaracterizes** 18:25 267:12 269:18 272:19

**misdescribes** 100:3

**misidentifies** 267:14

**mislead** 293:18

**misleading** 137:14 138:1 258:21 260:17 267:19 269:17 291:8 301:6

**misrepresents** 311:1

**Mission** 2:10

**misstated** 169:20

**misstates** 17:18 29:12 68:10,11,21 87:8 90:10,11,20 91:20,21 93:22 100:2,3 116:9 121:6 124:25 128:12 143:14,16 147:22 148:10 169:16 170:13 177:15,16 178:3,4 212:7 229:9 231:20 234:6,15,22 257:19 258:1 273:5 282:7 286:25 287:7 294:16 298:13 300:17 301:5 305:23 310:7,13,14

**mistake** 176:19,21 177:5,11,24 267:25

**mistakes** 174:13

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 28

178:22 179:6,13,20

**misunderstood**
298:18

**MIT** 19:3,8

**MITCH** 3:9

mitch@eff.org 3:11

**mobile** 272:13

**moment** 119:11
265:20

**money** 128:24 170:1
191:24 192:4
303:18 309:3,5
310:22 311:13

**Monin** 5:9

**month** 298:6,19,21
299:17 317:5

**monthly** 191:24
317:2

**months** 19:10,20
256:11 299:25
301:15

**Morgan** 2:3 7:16
8:2,3

**Mornin** 126:9,13
128:14,20,21 129:5

**morning** 7:7 9:19,20
266:24 270:8,10

**motion** 265:21

**move** 19:12 50:9

**moving** 19:11

**Multicasting**
17:15,20,24
18:2,13,19 26:25

**multiple** 194:1 279:7

**multitask** 17:17

**Munger** 2:9 8:5,6

**municipal** 115:2

**Museum.Media.Org**
27:4

**mutually** 10:7

**myself** 27:21

**mystery** 236:18

_____
N
**narrative** 195:20

**narrow** 103:13

**National** 1:4 7:10
14:21,22 62:18
63:9 118:21,25
119:1 124:18
226:23 258:15
262:4 265:11,21
275:8,18 280:8,19
281:25 282:11
288:15 289:18,25
290:5,12 292:18
293:14 294:8,10,14
295:10 305:17,20
306:3,10,22

**native** 5:24 6:3,5,6
208:19 212:13
218:7

**nature** 170:24 309:12

**NEC** 118:12
222:19,23 224:22
225:5,10 226:8,14
262:3 268:15
276:21 280:25
295:16

**necessarily** 167:15
229:18,20

**Net-Top**
21:1,3,7,12,16

**networking** 15:4

**networks** 13:15
14:20

**news** 71:1 79:11
164:9

**NFA** 236:19

**NFPA** 2:8 3:15 6:7
8:7,20 54:5 60:14
66:19 84:7,9 98:22

104:4 106:21,24
107:23 108:1,2,4
157:22 158:1
204:19 205:3,18
220:2,6 225:14
228:16,20
230:10,20 231:6,11
232:6,15,19,25
233:23 234:4
235:4,22,25
236:9,10
237:9,11,16,21,22
238:19
239:9,10,17,22
240:3,4,13 241:5
242:14,15,20,25
243:16
244:5,9,20,21
245:4,6,21 250:17
251:5 260:10,13
262:3 280:24
281:18 282:5
297:6,21 298:10
300:10,15 301:16

**NFPA.NEC.2014**
268:25

**NFPA's** 204:21
236:19 238:25

**night** 102:3

**nine** 19:10

**nodding** 11:17 42:3

**nonattorney-related**
102:20

**none** 150:1

**nonfederal** 156:3

**nonlitigation** 111:9
112:3

**nonnormative**
122:4,7,10,16,21
123:8

**nonprivileged**
106:11

**nonprofit** 17:15
24:5,22 25:8,17

26:1 309:10

**nonspecific** 128:5

**normative** 122:4,7,16

**norms** 133:6

**North.Pole.Org** 27:2

**Northgate** 7:23

**note** 10:2

**noted** 299:24

**nothing** 42:12 320:7

**notice** 5:3 40:1
275:21

**noticed** 104:4 105:21

**noticing** 321:12

**numerous** 47:21

**NW** 2:4 323:1

_____
O
**oath** 220:11

**oaths** 320:3

**object** 12:7 25:23
36:16 37:1 38:18
64:3 102:14 115:7
199:13 214:8,13
215:10 231:21
241:7 253:15 254:5
260:20 263:18
264:10,17
265:19,23 268:10
275:13 285:4
286:19 287:4
288:1,5 289:22
305:3 308:13

**objected** 25:23
112:13

**objecting** 96:4
103:11,14 113:8
153:18 213:14
254:24

**objection** 13:5,12,20
16:10 17:18
18:5,25 23:17,23

24:3,10,24
25:10,14 27:14,23
28:8 29:5,18 31:14
33:15 38:1 41:20
43:19 44:4,16
45:3,13 46:5,15
47:2,19 48:22
49:13,22 50:14
51:5,25
53:3,7,17,25
54:9,16 55:3,15
56:2 57:3,17
58:16,24 59:13,23
61:6,23 62:11
63:15 64:11,19
65:3,11 66:2,10
67:24 68:10,20
69:13 70:6 72:24
73:10,22
74:6,13,21 75:4,12
76:5 77:3,13,21
78:7,17 79:21
80:6,23 81:6,17,25
82:4,13,20 83:21
88:4,23 89:23
90:10,20
91:5,13,20 92:8,18
93:15,22
94:5,16,23 95:6,12
96:11,16 97:8,20
100:2,15,23
101:6,13 102:5
105:19 106:18
107:20 109:3,16
110:18 113:22
114:2 115:22 117:2
118:2 119:15
120:19 121:5,25
122:12,24
123:10,13 124:7,25
127:13,25 128:12
130:17 131:5,25
132:10,19 133:2,13
134:4 135:5
137:13,24 138:11
139:1 140:10,14,24
142:21 143:5,13,24
144:7 145:4,21

146:7,19 147:10,22
148:10 149:6,18
150:6 151:12,25
152:9,20 153:4,12
154:2,10,19
155:2,19 157:19
158:2,19,25 159:23
161:10,23 162:7,22
163:21 164:3,21
165:4 166:11,16
167:5,14,21
168:6,18 169:1,16
170:2,10,13,21
171:7,15 173:18
174:2,17 175:4,21
176:23 177:6,15
178:3,12,25
180:8,21 181:2,11
182:9 183:15
185:16 186:13,22
187:25 188:5,17
189:15,24 190:16
191:15,21 192:14
194:7,16,25
195:8,19
196:5,13,22
197:7,20 199:6
200:14 201:9,19
202:13,20 203:2
204:11,23 205:6
207:13,19 208:3
209:14 210:2
211:9,19 212:7
213:2,10 214:7
215:6,20
216:2,3,22
217:5,21 218:23
219:7 226:5,25
227:15,24 229:1,8
230:1,14,25 231:20
232:3,16 233:2,12
234:6,15,22
235:5,18 236:3,15
237:4 240:18,23
241:20 242:2,10
243:4,14 244:11,23
245:7,15,22 246:23
247:5,13,25 248:13

249:13 250:2,11
251:8,21 252:5
253:3,11,21
254:3,10 256:21
257:11,18 258:1,20
259:2,12 260:3,16
261:3,12
262:9,17,20 264:7
266:8,21
267:9,12,19 268:22
269:5,17 271:10
272:1,19 273:5,18
274:1,11,24
276:7,14,23 277:7
278:4,13,22
279:8,25
281:1,11,20
282:7,23
283:3,10,20
284:4,18
285:2,10,25
286:22,25
287:7,16,23 288:20
289:6,13,20
290:7,20 291:8,21
292:2,13,19
293:2,20 294:2,16
295:7 296:5,19
297:8 298:12 299:4
300:17 301:5
302:24 303:9,15,23
304:12,19 305:23
306:13 307:3,11,19
308:1,9 309:7,18
310:7,13 311:15
313:7,20 314:18,25
315:25

**objectionable** 12:7
112:24

**objections** 51:15 52:8
65:21 71:7
72:3,4,12 75:19,25
78:16 79:1,10,15
83:8,13 84:3,10
85:16,21 86:13
87:9,20 88:17
96:6,18,23 97:16

104:11 105:9
106:4,13,20
107:3,8
108:5,12,21 109:10
110:3,9
111:7,10,24 114:8
116:19 119:5,22
120:7,9 124:16
125:2,16,21 135:19
139:10 140:8
145:16 148:12
150:20 155:12
179:9,14,21 180:2
185:24 186:4
191:2,11 192:7
197:15 200:22
204:16 217:14
233:22 236:18
237:13,18,24 238:5
242:16 263:2,8
265:24 270:3

**objects** 29:22,23,24
30:2

**obligation** 310:16

**obligations** 310:18

**obtain** 28:18 51:23
59:20,21 204:9
277:18

**obtained** 138:13
158:11 207:7
225:14

**obviously** 206:20
216:5 219:10
293:5,23 296:9

**occasionally** 182:20

**occupational** 131:14

**occurred** 301:1,3

**OCR** 163:18 171:12
172:15 174:13
175:7,13,19 176:19
177:19,25 178:11
223:16,18 224:11
227:7 228:25
231:18

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 30

**OCR'd** 177:21
226:22

**OCR'ing** 177:14

**OCR-related** 177:5

**office** 7:16 19:22
82:19 123:2,17
139:21

**officer** 22:14 26:8
98:10 320:1

**official** 321:12

**officials** 56:5
61:10,16 69:24
78:10 107:12

**oh** 17:24 28:20 50:22
63:2 144:25 183:10
206:2 214:22
220:20,23 223:19
291:14 293:12
306:8

**okay** 10:21
11:15,18,22 12:3,9
15:15 16:3 17:24
18:10 22:21 23:21
28:24 31:19 34:19
36:17 38:14 39:6
40:10,17 42:6,9
46:2 58:21 66:24
67:9 68:17 71:16
73:6 76:21 82:4
84:25 87:24
89:6,19 91:10,18
92:5 94:14 96:15
100:8 102:14
105:25 106:24
112:15,22 114:15
118:16,24 119:15
120:3 126:21,25
129:3 132:15,25
133:18 134:4
136:14 137:11
140:7 141:6
142:10,13,17
143:2,11 144:5,12
145:2 147:3 151:20
159:17 160:15,21

162:13 167:1 173:8
174:11,15 184:15
188:11 198:3,20
200:19 205:24
206:2,18 210:15,20
212:25 219:19
220:20 221:2,10
223:9,21 226:12
228:13 229:13
230:9 236:24 237:1
238:5
246:5,9,11,20
247:2 248:18 251:4
258:13 259:9,22
263:11 265:7 267:3
270:10 277:16
297:23 299:20
302:18 312:16
317:22 318:5,17

**old** 151:23

**older** 150:3 151:14

**Olson** 2:9 8:6,7

**omits** 134:7

**omitted** 296:22

**one-hour** 274:5

**ones** 50:4 72:13
154:17 196:16
223:9,11 227:21
250:4 252:13

**online** 55:13
194:20,23 309:16

**onto** 157:4 193:19

**onward** 299:21

**oOo** 7:6

**open** 5:10 26:2
126:22 136:9,11

**operate** 26:12,14,24
271:15 302:17

**operating** 276:20

**operation** 55:20
160:1

**operations** 193:2

209:24 253:24

**opinion** 59:21 110:10
111:11 114:3 115:8
117:5 120:8 122:14
124:8 125:1 128:2
130:10 132:20
133:14,24 134:5
135:7 143:6 205:9
232:18 233:14
235:20 281:2
287:17 289:23
308:10,13 309:8,19

**opinions** 43:23
44:2,7

**opportunity** 320:13

**opposed** 45:11 63:13
64:1,16 150:11
175:19 211:5

**optimized** 194:1

**option** 264:20 280:15
284:17

**options** 280:16
288:25

**order** 10:3 35:18
42:15 64:16 127:16
136:20 137:2 170:1
217:11 238:19
239:3,4 261:24

**ordinary** 28:7

**O-R-G** 26:22

**organization** 25:8
27:10 79:25 287:11
296:25 307:5
309:12

**organizations** 24:22
46:14 61:9,19
62:13,16 64:10
65:1 66:7,15,17
79:20 87:25 88:14
94:3,20 95:18
103:23 107:19
164:10 306:22
307:1,17 308:7

**organization's** 131:3

**original** 60:15 134:12
179:25 222:24
321:7,22

**originally** 223:14

**OSHA** 56:12,14,16

**others** 25:20 26:16
32:23 72:2 75:18
88:13 175:1

**otherwise** 104:25
147:12 254:23
263:18

**ourselves** 310:17

**outcome** 320:19

**output** 158:17 203:20

**outside** 116:24
124:14 205:12

**overall** 162:10

**Oversight** 98:11

**overview** 184:9
195:23

**owned** 51:9 87:18
111:15 120:12

**owner** 83:18 84:8
86:6 108:25 109:7

**owners** 84:19 85:14

**ownership** 86:21
88:11

---

P

**p.m** 99:5 114:17,21
156:10,13 203:24
204:3 219:23 220:1
270:24 271:3
312:10,13
318:13,16,24
319:4,6

**packaged** 64:22
67:18 69:3,9

**packaging** 62:23
63:6

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 31

page 4:11 5:2 6:2
40:24,25 99:4
126:17 140:6
142:2,7 144:24
146:9 147:14
149:11,20,24
153:6,22 155:14
172:9 174:5,6,8
180:16,17 182:19
183:12,13 199:1
206:11 209:13
211:24 219:2
221:13,18,20,22
222:24
224:12,14,20
225:18
228:10,14,15
230:17 231:2 232:7
239:17
240:16,21,22
243:9,22 253:23
255:10 259:20
260:18,21 261:21
262:1,2,3,6,11
265:7,11
275:17,20,25
276:5,13,17 277:18
282:13 295:19
300:2 305:15 306:1
323:8

pages 6:14,15,16
181:19,22
182:1,7,12,22,24
192:17,20 216:14
237:9 322:6

pagination 258:10

paid 26:6 182:13,16
191:14,25 192:5
229:5 303:18,20

paper 63:13,21,23,25
64:15 67:23 68:19
69:15 109:15
139:22
157:11,15,16
158:11,12 183:21
227:11,13,18,22

228:24 231:16
232:1,9
233:9,10,24 244:19
245:20 246:3,7
254:23 255:1
263:20 266:2 279:2
314:13,17
315:20,21,23

papers 110:19

paragraph 99:21
100:6 126:21 127:1
136:19 137:1
172:8,13 173:3
174:6,11 238:20,23
239:1 308:20

paragraphs 99:11,17

parent 27:9

park 115:16

P-A-R-K 27:1

Park.Org 27:1

parlance 253:10

parrot 125:9

partial 125:2 272:12

participant 86:5

participants 83:17
84:7,18 85:13
86:19 87:16 108:18

participation 105:7

particular 41:19
53:15 73:17 75:2
105:7,18 107:2
110:2 116:4 130:2
131:3,7,10 133:6
149:11 180:25
186:20 188:20
207:25 214:4 215:1
231:24 250:4 265:3
269:4 270:2 271:11
293:24
294:14,21,25
295:6,13,25 312:20

parties 10:6 320:17

past 32:20 87:24
88:13 89:22 94:2,9
95:5,19

paying 173:4,8
293:23 294:6

PD 68:17

PDF 42:24 64:22
67:17 68:14,18
153:7 158:20,22
159:5,6,9,11,20
162:18 173:15
175:20
196:1,7,10,16,20
197:2,23 198:2
199:23 200:1 211:4
223:12,13 224:9,10
225:2,4,7,18
226:1,15,17,22
227:6 228:22
230:23
231:4,7,13,17
232:7,15,22,25
234:4,20
235:3,9,15,22,24
236:13 237:10,21
238:24 239:7,9,20
240:3 241:5,15
242:14,20,23 243:2
245:5,14
247:10,11,24
258:7,9 264:16
276:6 277:18

PDFs 69:3,9 162:15
227:10 232:2
233:8,10 240:17
242:9 276:2 278:20

pending 50:13
265:21

Pennsylvania 2:4

people 28:16
29:10,16,21
51:9,10
52:10,14,18 54:21
55:1 62:21 69:18
82:9 111:15 120:13

188:8 274:3 278:19
296:12,18 304:15
310:17

per 182:18,19

percent 166:9
167:3,20 168:9
171:1 181:22 182:5
258:14

percentage 181:24

percipient 102:21

perfectly 170:5

Performed 184:2

perhaps 60:14 270:7

period 17:8 20:9 22:6
32:11 182:18
274:4,5,15
300:13,15 301:14
321:11

permanently 299:14

permission 204:21

permit 276:20

permitted 51:3

person 54:13 56:22
70:3,18 77:18
125:12 164:13
171:4 180:20 286:3
288:6

personal 184:18
199:10

personally 57:8 58:8
60:25 109:7 199:11
314:23

persons 32:7 34:5
35:11 51:22
52:5,24 54:23
55:24 56:14 87:7

person's 56:20

Peterson 52:17,18
53:14,22 54:7
70:11 75:15,22

P-E-T-E-R-S-O-N

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

Page 32

52:17

**PHMSA** 73:2 141:2
153:23

**P-H-M-S-A** 73:2

**phone** 10:25 272:13

**Photoshop** 186:16

**phrase** 89:2 90:1
293:24 294:1,6

**phrased** 103:1
137:17

**phrasing** 87:13

**physical** 276:4

**pick** 126:23

**picked** 13:3 269:25

**piece** 254:25 263:20
266:2 272:13,14
279:2 280:17

**pieces** 79:12
255:22,25

**Pipeline** 5:12 71:17
72:18 141:2 153:23

**placed** 276:6

**places** 49:2

**plain** 197:16,19

**plaintiff** 2:2,8,14
9:6,17 107:19
220:2 312:14

**plaintiff/Counter-
Defendant** 198:11

**plaintiffs** 1:6 7:3
10:9 11:9 51:20
52:6 53:1,23 54:3
57:16 58:2,22
59:12 60:9,12
65:9,19 70:19,20
71:5 72:22 73:9,16
74:11 78:6 80:3
82:12,16 83:1,7,11
86:19,22 87:17
102:12,13
103:22,23 106:17

108:11,19,20
109:14 140:22
157:18 195:5
204:8,10,15,19
219:18 228:2,4,5
247:3 249:11,25
252:25 253:1 255:5
270:1 297:20 317:4

**Plant** 243:17

**platforms** 194:2

**played** 105:22 107:12

**pleadings** 111:8
113:10 124:15
134:8

**please** 7:25 8:22 15:8
29:1 40:24 49:19
50:14 66:22
76:15,19 80:12
81:10,25 84:1,22
85:6 90:13 113:23
145:17 150:16
188:10,11 201:24
205:23 212:3
213:21 233:18
234:12 237:25
238:1,18 267:15,16
284:22 305:5
321:6,15

**plus** 108:13 301:2

**PNG** 176:25

**point** 15:2,11 22:10
24:20 32:11
44:12,24 48:10,18
68:8 81:5 90:17,19
119:11,25 120:11
121:14 171:3
183:17 190:2
206:22 207:9
292:10 293:5
302:15

**Point.B** 32:11
160:23,24 161:3
184:12,17,23
185:6,8,13,14
186:10,11

187:2,3,7,23
189:22 190:14
191:20,25 192:11
193:17 195:16
223:6 230:3

**pointed** 193:23

**pointing** 193:23

**policy** 12:20,23
148:18 152:7
299:11

**poor** 87:13

**poorly** 31:5

**portion** 172:10
181:18 239:4
311:25

**portions** 122:16,21
123:8

**position** 22:7,15
23:3,9 26:6 38:20
110:14 111:5,20
112:5 113:5,13
115:1,11,19,25
116:22 117:11,22
118:14
119:3,6,12,18
120:17 124:2,10
125:11,14,25
133:10,21 134:16
135:2,15,23 137:23
138:20 205:7
236:19,21

**positions** 10:14 24:22
110:19 113:9 120:7
124:13 134:7
205:14

**possessing** 241:14

**possession** 149:4
242:8,13 243:3

**possibility** 173:2
175:1 178:7 277:5

**possible** 94:1
95:4,11,17,25
96:10,15,21 97:19

140:8 275:1
278:1,6 309:19

**post** 12:15 14:2 16:24
28:5 51:3 127:17
129:10 130:15
131:1 135:16
138:4,9 139:4
148:14,18 152:7
156:22 158:22
194:23 195:4
196:3,20 197:18
204:21 245:14
309:15

**posted** 30:9 44:18
113:15 145:20
146:17 147:1 148:8
154:25 155:9 156:1
157:10 159:3,7,21
160:12,16 183:22
184:7 191:1
194:15,19,22
195:6,17 196:2
197:4,5 204:7
207:12,25 246:6
247:2,9,12,19,24
305:10

**posting** 43:22
44:1,3,25 45:10
52:6 55:25 130:3
149:5,10 152:11
173:11 205:4,18
245:4 247:22

**posts** 192:17,24

**potential** 86:21

**potentially** 170:16

**power** 27:19

**practice** 134:23
137:20 138:3 283:8

**practices** 169:11

**precise** 133:21,25
138:24 211:12
277:11 281:5

**precisely** 60:13 67:3

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015
Page 33

**prefer** 69:15

**preferred** 179:4

**preliminaries** 9:4

**preparation** 34:6
36:24 41:24

**prepare** 33:11 34:17
35:7,11,18 38:7
39:22 41:4 42:15
221:20

**prepared** 221:14
223:5

**preparing** 39:7 40:14
41:17 199:8

**present** 3:14 7:25
33:9 245:8 296:1

**presentation** 73:21

**president** 23:5,15

**press** 98:10

**presumably** 231:6,14

**presumes** 269:19

**pretty** 267:13 288:18

**prevented** 75:2

**previous** 87:9 177:1
218:17 288:14
297:16 299:11

**previously** 165:12
172:1 291:4 317:13

**price** 166:1,4 168:13
182:18

**primary** 14:23 18:18

**principle** 115:11
308:23

**print** 63:21 275:6
278:11,20,21
279:2,6

**printed** 5:24 6:3,4,6
57:20,24 59:15
209:11 260:18
279:12

**printer** 278:12 279:1

**printing** 61:1 139:20

**printout** 212:13
218:7

**prior** 34:21 51:20
52:6 53:5 55:25
88:2,15 94:3 137:8
148:3 185:5 186:11
192:13 211:16
215:19 216:1,14
245:3

**private** 15:23 46:14

**privilege** 34:12 36:6
37:23 38:14 59:24
85:6 102:16 105:2
124:11 138:15
205:20 215:10

**privileged** 85:7
119:20 205:10

**privileges** 28:16,19
29:11,16 246:19,21

**PRO** 262:25 313:2

**PRO_00166295**
238:13

**PRO_00167541**
302:6

**PRO_0023265** 207:5

**PRO_00232652** 6:13
255:11

**PRO_00232654**
212:14

**PRO_00232655**
218:8

**PRO_00245530**
316:16

**PRO_00345530**
208:19

**PRO_166182** 5:15
141:14

**PRO_166257** 5:16

**PRO_166258** 5:19
151:8

**PRO_166267** 5:19

**PRO_166295** 6:8

**PRO_166298** 6:8

**PRO_166616** 5:5
89:10

**PRO_166618** 5:5

**PRO_167245** 5:9
126:10

**PRO_167247** 5:9

**PRO_167541** 6:19

**PRO_167549** 6:20

**PRO_211406** 5:11
136:3

**PRO_211408** 5:11

**PRO_213808** 5:7
98:3

**PRO_213810** 5:7

**PRO_245530** 6:18,21

**PRO_42286** 5:21
176:9

**PRO_42288** 5:21

**PRO_42289** 171:24

**PRO_4964** 165:14

**probably** 10:15 31:5
66:20

**problem** 57:1 69:25
70:2,25 71:4
78:3,14,24 103:9

**problems** 69:19 72:7
103:21

**Procedure** 320:4
321:6,7

**procedures** 80:25

**proceed** 318:6

**proceeding** 10:5
73:25

**proceedings** 219:17

**process** 42:19
63:18,21 66:14

69:10,16 73:2
80:9,20 82:12
83:18 84:8,19
85:14 86:6 87:17
104:8,15
156:16,18,21 161:8
162:4,10
163:8,9,10,15
164:2 165:3 166:20
180:11,14 183:21
184:1,6 185:20
187:10,12,20
189:22 193:19
209:22 210:1
214:12 218:3 223:5
225:15

**processes** 86:20

**processing**
68:7,13,17 69:2
185:11

**produce** 256:7 261:8
274:22

**produced** 55:23
151:18
153:10,14,15
206:15 207:2,3
208:19 212:13,19
217:4,12,16,18
218:7 224:1 249:1
255:4 262:25
297:18 302:4,23
315:22 316:21

**producer** 303:2,6

**producers** 303:18

**product** 85:8
86:12,24 102:16
105:2 110:23
111:25 112:5
114:4,6 115:6
119:20 124:10
125:18 205:10
208:15 213:13
214:9 215:8

**product/attorney-
client** 138:15

**production** 214:1,6

**products** 24:8 86:9

**professional** 13:14,23 14:2 15:25

**professionally** 16:8 19:19,23 20:25 22:11,17

**professor** 19:3

**program** 21:5 23:24 102:3 188:8 191:20 192:2

**programmatic** 264:15

**programmer** 30:23

**programming** 264:14 280:13

**Progress** 22:13

**project** 60:18 185:13 189:22 193:9

**promulgated** 46:11

**proofreading** 181:9

**properly** 102:12 108:19 194:19

**protect** 306:6,19

**protected** 97:7 99:25 100:14,22 101:5 120:18 124:5,23

**protection** 1:4 7:10 101:10 110:17 111:6,23 113:7 115:3,21 116:8,25 117:14 118:1,15 119:4,13 125:15 280:8,20 281:25 282:11 289:18 290:1,5,12 305:17,21 306:4,10,22

**protects** 305:21 306:10

**protocol** 20:5,7

**provide** 24:9 165:9 191:19 217:2,10

**provided** 161:9 163:19 168:12 171:6 192:11,21

**provides** 199:23 202:3

**providing** 26:2 225:19

**provision** 144:20

**Pub** 210:22

**public** 5:14,18 12:20,23 22:22,25 23:3,7,12,15 24:2,8,16,18,23 25:5,8 26:9,12 27:12,21 28:7,12 30:12,15,20,25 31:3,10,12 32:1,4,20 33:1,4,7 41:5,8,15 42:10 43:2 44:12,20,24 45:8 48:19,21 49:5,11,12 51:3,21 53:16 56:1 58:1 59:10,20 60:3 78:4 108:25 110:14 111:4,20 112:2,18 113:4,18 114:25 115:10,19 116:21 117:10,21 118:13 119:2,12 122:20 123:7 124:2,24 125:11,13,19 129:6,8,18 130:6,8,15,20 131:2,8,13 133:9,20,24 134:15 135:1,15 137:11,22 138:8,19,22 141:12 145:20 148:18 149:3 150:5 151:7,20 152:6,18,24 154:24

155:10 156:1 157:8,25 158:23 159:22 160:13 169:6,24 170:7 171:4,14 175:3,13 178:23 180:5 184:1 185:14 186:8 189:14,23 190:15 191:10,19 192:12,22 193:19 195:7,17,18 196:2,3 197:3,5 198:22 199:20,25 200:9,13 201:5,17 202:5,11,19,22,25 203:1,11,19 204:8 205:11 211:18 212:20 217:18 221:13 226:3,9,21,22 249:5 255:4 266:3 273:1 284:2 287:6,9,14,22 290:23 292:4 297:18 300:16 301:16 302:4,22 303:8,13 304:8,11,17 305:10,13 309:14 310:10 317:23

**Public.Resource.Org** 1:9,13 3:2 4:3 5:3 7:2,11 8:12,15,17 9:14 22:18,23 26:15 27:7,20 30:9 40:3 43:11,17,21 57:18 198:10 264:3 265:3,5 266:7,15,19,20 282:20 291:23 317:24 319:1,3,7 321:4 323:5,6

**Public.Resource.Org 's** 5:22

**publication** 46:20 47:15 49:1,4 145:2

147:8 210:22

**publications** 16:20,21 17:1

**publicly** 111:4 113:4 116:6 125:20 135:16 137:23

**publish** 133:10 134:16 139:4 308:22

**published** 47:5 121:23 138:23 304:21

**publishers** 164:6,25

**publishing** 140:22

**pull** 180:16,17 219:2

**pulled** 42:24 89:25 116:2

**purchase** 60:3 64:9 68:14 157:11,16 158:1 232:14,24 233:8 235:24 236:13,20 237:10,21 239:9 240:3

**purchased** 59:14 60:8,11 64:25 66:18 158:6 223:15 224:11 227:7 228:7,24 231:16 232:9 233:9 235:3 238:24 241:5,18 242:1,15 244:18 245:5,20 246:2

**purchases** 65:7,8,10,17,18,20 66:1

**purchasing** 63:12 66:14 74:4 156:17 234:20

**purely** 36:14 37:3,17 38:16,21,24

**purported** 107:18

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 35

**purporting** 125:9

**purports** 144:9

**purpose** 146:6

**purposes** 130:3 209:6

**pursuant** 249:1
320:3 321:6,10

**pursuit** 12:17

**pushed** 184:4

**putting** 25:4
103:19,25 134:14
150:4 287:2 293:17
296:22 304:17

———————
Q
———————

**QA** 172:16

**qualified** 109:20
110:5,12

**quality** 178:16,20
179:16,18 180:12
181:1 184:2
194:9,12

**quantify** 214:3
216:13

**queries** 259:10

**query** 208:6 255:20
256:5,9 260:25
261:9,11 262:15,25

**question** 11:24
15:7,9 20:19,20
28:23 29:1 31:5,23
33:18 35:1,21
36:11,15
37:15,20,23,25
38:3,10,12,24 39:3
40:20 48:3 49:19
50:1,12,15,21,23
52:22 65:15 68:24
70:13 73:5 76:20
78:20 80:12,13
81:10 82:1 87:14
90:13,15 96:3
97:15 102:23
103:1,13,16 105:25

106:12 108:23
109:21 110:5 111:2
112:1,2,10,14,17,2
1 113:2,24 114:11
115:5 117:16
120:24 125:10,21
129:2 132:3 133:17
134:6 135:20,22
137:17 138:20
150:15 153:19
160:14 173:14
188:10,12,14
195:13 205:22,23
213:21 217:8
218:14 224:5
233:18 234:10,12
238:2 251:25
267:15 268:3,11
269:14 271:11
284:22 289:21
303:4 305:2,3

**questioning** 102:15
107:4 237:5

**questions**
11:10,11,16,21
12:8 36:19 37:17
49:7 76:20 86:14
87:10 106:6
107:9,10 108:6
135:21 141:16
193:14 200:23
219:13,16 220:8,9
311:25 312:19
321:15

**quick** 9:24 254:14

**Quirarte** 3:16 7:19

**quite** 56:4 240:17
246:5

**quote** 127:4,6,22
165:6,9 166:1,4
168:13 169:3,6

**quoted** 171:1

———————
R
———————

**radio** 18:1

**Rafael** 7:24

**raised** 61:15

**ran** 188:7 224:11
256:9 259:10
261:11 263:1

**range** 189:21

**rate** 168:4,15

**RDC** 190:7

**RE** 321:4

**reading** 55:13,20
74:4 93:6 131:20
150:15 187:20
321:8

**ready** 41:12 321:8

**reaffirmance** 134:14
150:2

**reaffirmation** 150:25

**reaffirmed** 134:10
146:3 148:3

**real** 262:21

**really** 82:23 92:20
119:25 161:17
175:6 191:17 192:8
215:13 217:24
248:15 266:24
315:14

**re-ask** 25:1

**reason** 12:3 167:18
172:21 175:7
177:13 197:18
229:23 230:5
241:17,22 251:18
252:3 270:6
296:15,17

**reasons** 36:5 175:23

**Rebecca** 5:20 39:7
160:25 171:11
172:5,20 174:9,12
175:1 185:10 188:7
190:3 192:17

**recall** 29:7 40:15

54:11 57:2 59:5
60:13 62:24 63:4
65:25 66:4,7,17,23
67:2,19 69:21
73:18
74:8,10,15,17
75:1,6,20 76:6,8,13
83:11,14 89:7
93:13,24
94:7,12,14
95:2,9,11,15,23,25
96:9,13,19,24
97:2,4,5,14,17,24
99:2 108:14 120:1
123:23 126:11
136:17 154:12
161:7 171:9,17
172:17 174:25
175:12 177:11
189:10 206:25
239:13
241:12,14,16 292:7
314:6,7,10,11,20
315:7,10,14,17,19,
20 317:7

**recalls** 147:11
161:11,13

**receipt** 239:3

**receive** 61:20 62:2
182:8

**received** 54:21
55:19,23 62:10
162:18 181:19,23
182:2 183:24
195:16 223:14
229:6

**receives** 272:6

**receiving** 169:5

**recess** 37:9 67:12
114:19 156:11
204:1 219:24 271:1
312:11 318:14

**recipients** 61:21

**recognition** 227:7

228:25 231:18

**recognize** 139:18
141:20 165:22
176:10 217:23,25
219:8 238:14
249:23 250:9 251:5
274:21,23 275:24
288:12 302:9

**recollect** 218:20
219:9 243:1 294:21

**recollection** 89:19
158:5 239:8 240:6
241:8 256:13,14
292:8

**record** 8:1 9:25 10:16
11:17 29:3
37:7,10,13 49:20
50:24 67:11,13
82:2 84:23 113:25
114:17,21 150:18
156:10,13 165:17
203:24 204:3
205:25 207:5
219:23 220:1
233:20 234:13
236:23 238:3,12
248:8 267:17
269:15 270:23
271:3 279:14 302:4
312:7,10,13,23
316:15
318:9,10,12,16
319:5 320:12

**records** 199:25 201:5
202:5 203:13

**red** 222:25 223:11

**refer** 22:22 47:8,17
104:20 113:9
124:12 145:9
316:25

**reference** 13:14 43:8
44:3,14 45:1,10
47:12,15 48:20,25
49:3 51:17 53:2
55:14 56:7 58:12

59:7 61:17 68:2
69:20 70:5 71:6
74:19 75:10,24
77:2,12,20
78:5,15,25 86:11
88:2,9,16
90:4,8,18,25
92:2,13,14,23
94:4,22 98:13
110:15 111:6,16,21
113:6,14,20
115:2,20 116:5,23
117:12,13,23,24
118:12,13,21,25
119:2,10,14
120:5,16 121:3
122:23 123:5,18
124:19 125:6 126:2
128:7,16 129:10,22
130:15 131:17,23
132:8,18,23
133:11,22
134:1,7,18
135:4,18 136:12
138:6,10,25 139:7
140:13 141:2
142:2,11,18,19
144:13 147:7,17
148:23 149:2
150:3,10,23 152:13
153:1 154:9,16
156:3 157:1 196:17
206:21 210:24
214:5 224:15

**referenced** 17:10
48:12 76:9 78:2
211:8

**references** 46:24
47:22 140:18
142:14 144:24
145:3 149:25

**referencing** 22:23
40:18 100:10
104:18 144:6,21
166:2 223:25

**referred** 89:16,20

177:12

**referring** 43:10
53:19 56:9 57:18
127:24 128:10
244:21

**refers** 47:10,11
112:17 147:18
216:17 249:10

**reflect** 279:14 315:23

**reflected** 217:11

**reflects** 124:9

**Reform** 98:11

**refresh** 89:19 175:14
239:8

**Refrigerating** 1:5
8:10

**refuse** 103:7

**refusing** 103:16

**regarding** 42:9 61:16
86:20 87:7,17
105:6,16 106:1,25
107:16 162:4 179:7
213:8,25 216:19

**Regards** 321:17

**Register** 123:3,17

**registered** 28:1 82:19
84:20

**registration** 83:1

**registrations** 83:6,12

**Registry** 19:21

**regular** 211:2 214:17

**regulated** 70:4

**regulation** 45:24
46:1 111:17,22
124:22 125:13
140:13 153:2

**regulations**
44:8,14,19
45:12,16
46:2,10,11,22

51:18 90:5 91:1,8
92:13 123:4,5
130:1,20
131:16,19,20,24
132:8 137:4 141:23
145:8 146:2 148:4
149:13 150:10,23
190:19 210:24

**regulatory** 132:6,7

**Rehn** 2:9 4:6 8:5
220:3,6,17,20,25
221:19 222:6,7
223:23 224:7
225:24 226:6
227:5,19 228:3
229:2,12 230:8,18
231:5,10,24
232:5,21 233:7,25
234:18 235:1,11,23
236:6,22
237:1,8,15,20
238:10 239:15
240:9,20,25
241:3,11,23
242:6,12,21
243:7,18 244:16,25
245:12,18 246:1
247:1,8,18
248:3,6,17,23
249:18 250:5,8,15
251:10,24 252:6,16
253:9,18,25
254:7,13,18
255:2,8,13 256:4
257:3,14,23
258:5,24
259:8,15,18
260:7,23 261:7,15
262:13,18,23
263:4,10,23 264:12
266:5,12
267:1,10,24
268:3,4,16
269:1,9,24
270:9,14 271:6,16
272:5,25 273:12,23
274:7,16,20

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 37

275:3,15 276:11,18
277:3,15
278:2,8,18
279:3,17 280:3,6
281:8,16
282:3,12,25
283:6,12,24
284:8,23 285:6,13
286:6,23
287:5,12,20
288:3,11,23
289:9,16
290:2,14,25
291:11,15,17,24
292:6,16,23
293:7,25 294:5,23
295:3,12,18
296:10,23
297:3,15,25
298:1,17 299:8
300:23 301:9,20
302:1,8,14,21
303:7,12,19
304:2,16,23 305:8
306:2,17
307:6,16,23
308:5,18 309:13,24
310:9,20 311:9,24

**related** 75:15 174:13
176:20 177:19,25
202:10 215:4

**relational** 14:19

**relationship** 27:12,17

**relevance** 63:16
265:19,23

**relevant** 75:11

**remain** 318:22

**remember** 16:2
74:23 84:11 179:22
242:13,20,22 256:9
292:24 293:8
294:24 296:3

**repeat** 15:9 29:1
49:19 50:14 65:15
68:24 78:20

81:10,25 84:22
90:12 132:3 173:14
188:12 213:20
233:17 234:11
268:3 269:14
284:22

**repeating** 217:8

**replicated** 187:6

**replication** 230:4,6

**report** 211:15,17
215:18 258:23
267:16

**reported** 1:19 263:6

**reporter** 1:20 7:22
8:21 9:1 11:12,17
19:14 21:25 22:4
26:20,23 28:25
29:3,24 32:14
40:5,8,10 49:20,24
50:16,19,22,24
61:11 62:7 63:7
82:2 84:23 113:25
117:17 122:6 126:4
141:8 150:17,18
151:3 159:17 160:8
165:17,20 171:25
172:3 176:4
193:3,6 197:24
198:3,5 203:1
205:23,24,25 206:6
220:15,19,22
223:17,19,21
231:8,22 233:19,20
234:13 238:3,8
248:4 255:24 256:3
267:17 268:2
269:14,15 291:16
310:11 312:8,22
316:8

**Reporting** 7:20,23
318:23 323:1

**reports** 71:1 164:9
264:23

**represent** 248:25
251:19 255:3

258:25 259:19
275:11,16 298:20
300:4,7 304:10,25
305:7,13 312:25

**representation**
138:14 224:14

**representations**
236:23

**representative** 8:25
219:15

**Representatives** 62:6
98:12

**represented** 33:4,5
242:24 244:9 300:8

**representing** 286:20
287:21 298:19

**represents** 240:3
255:19 256:18
257:25 291:6
297:21,22 298:4,9
299:9 300:10
304:14 317:15

**reproduced** 48:1

**request** 9:25 271:18
273:10 318:11

**requested** 29:4 49:21
50:25 61:18 82:3
84:24 114:1 150:19
165:18 191:9 206:1
233:21 234:14
238:4 267:18
269:16 272:7,11

**require** 207:21

**required** 41:1 123:7
127:8 266:3 290:22
292:4 293:10,14
294:8,10,11 295:10

**requirement** 127:4

**requires** 109:14
110:21

**reread** 205:23 238:1
267:16

**research** 19:6 164:24
169:10

**reserve** 14:6,10 140:7
318:7

**resource** 22:22
23:1,3,7,13,16
24:2,9,16,18,23
25:5,8 26:9,12
27:12
30:12,16,21,25
31:3,10,12
32:1,5,21 33:2,4
41:5,9,15 42:10
43:2 44:12,24 45:9
48:19 49:11
51:3,21 58:1
59:10,20 60:3
108:25 111:4
112:18 113:4,18
114:25 116:21
117:10,21 118:13
124:24 129:6,8,18
130:15 135:1,15
137:22 138:8,22
152:18,25 154:25
155:10 157:25
158:24 159:22
160:13 169:6,24
170:7 171:4,14
175:3,13 178:23
180:5 184:1 185:15
189:14,23 190:15
191:10,19
192:12,22 195:7,17
196:2,3 197:3,5
199:21 200:9
203:11 204:9
211:18 212:20
217:18 226:3,9,21
253:8 255:4 273:1
297:18 300:16
302:5,23 303:8
304:8,11,17 305:13
309:15 310:10

**Resources** 33:7 48:21
125:19

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 38

**Resource's** 53:16
56:1 110:14 111:20
115:19 119:2,12
124:2 125:11,14
131:2 133:9,20,24
134:15 137:11
145:20 148:18
149:3 150:5 152:7
156:2 193:20
198:22 199:25
201:5 202:5,11,19
205:11 221:13
301:16 303:13
305:10

**respect** 10:14 21:21
27:21 59:21
69:8,19 78:14,24
79:19 91:10 107:7
108:11 111:8,25
115:1 116:22
117:11 134:16
155:17 157:24
179:7 184:7 185:8
187:15,18 199:10
295:5 317:4

**respond** 11:15 86:25

**responded** 62:21

**response** 5:22
198:10,22 279:16

**responses** 61:20
62:2,10,21,25

**responsibilities**
23:16

**responsible** 17:25

**responsive** 12:1
106:12 178:2

**rest** 161:16

**restate** 112:11

**result** 77:19 119:13
156:2 208:13 216:6
255:20 260:12

**resulted** 288:7

**results** 6:14 167:4

178:21 183:24
203:20 259:20

**retain** 31:12

**retained** 185:5

**retaining** 186:11

**retains** 32:1

**retention** 299:11

**returned** 62:13
255:22,25

**returns** 271:19

**revenue** 309:10

**review** 10:1
41:1,11,19
42:15,23 76:10
132:5 142:5,6
222:4 305:1

**reviewed** 33:14,23,25
34:2 40:13 41:23
42:1,6

**reviewing** 131:15,24
176:17

**right-hand** 142:13

**rights** 27:19 69:7,9
235:9,12
286:16,17,21 287:3
288:2 310:17

**rigorously** 211:1

**RIPE** 19:20

**rles** 321:10

**role** 21:20 25:7 30:20

**roles** 105:22 107:13

**room** 15:23 55:13,20

**rooms** 74:4

**rough** 256:12,14

**roughly** 182:19

**row** 142:14 191:24
250:25 252:8
268:17,20 269:22
298:23

**Rows** 251:3 267:5
268:5,13,14

**Rubel** 2:3 8:3 176:3
198:4 206:5 220:21
238:7 316:6

**Rule** 317:23 321:7

**rules** 122:17 220:8
321:13

**run** 23:19,24 160:24
208:5,25 256:5

**runs** 179:15

**Rural** 189:3,6
190:7,12,24 192:1

_____

S

**safe** 115:18 301:13

**safety** 5:13,15,18
44:20 49:5 71:17
72:18 130:6,9,20
131:8,13,14
141:3,12 151:7,21
153:24 266:3
290:23 292:4 306:6

**safety.html** 221:18

**Sally** 3:14 8:19

**sample** 301:2,7

**sampling** 168:4

**San** 1:18 2:11,17
3:10 7:17,24 321:3

**Sanitation** 62:18

**satisfied** 194:18
302:14

**save** 163:1 170:1
179:17 277:19

**saved** 278:10,20
279:5,6

**saves** 305:18

**saving** 179:16

**saw** 104:13 105:5
177:24

**scan** 63:24 64:5
157:2,12 158:18
180:16 223:13,16
228:24

**scanned** 59:15 60:20
158:12 182:7
224:10 226:22
227:6,10 231:17
232:1,9

**scanner** 63:23

**scanning** 60:24

**scans** 276:4

**scenario** 148:16

**scenarios** 148:7,13

**scheduling** 10:3

**scheme** 211:3 252:11

**school** 12:15
101:21,23 102:2,4
128:22

**science** 13:15,18

**screen** 151:16 211:2
275:1,4 288:14

**screenshot** 174:20

**screws** 59:16,17

**script** 303:22,25

**scroll** 269:10

**scrolling** 240:15

**Seamus** 5:7 98:2,8,9
99:5

**search** 6:14 131:2
203:16,17 207:8
208:6,13 213:4,8
215:16 216:20
255:21 259:20
260:5,9,12

**searches** 213:25
214:4

**Seattle** 3:5

**second** 2:16 3:4 5:22
99:21 126:17,21,25

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 39

144:23 146:2 159:25 198:13 224:20 238:20 239:16 273:17 318:9

**Secretary** 127:7

**section** 122:11 139:14,24 140:12,18,21 141:3,4 144:24 145:8 210:21 282:14 320:3 321:6

**sections** 122:4,6,8

**secure** 210:20

**seeing** 83:11 242:22

**seem** 154:12 197:22,24 198:1 270:15

**seemed** 170:4

**seems** 172:4 252:14

**seen** 82:25 83:6 93:1 215:18 243:2 248:10,15 255:14,16,17 298:2

**segment** 157:4

**select** 42:20 285:19

**selected** 282:14 295:21 296:2

**semantic** 20:3

**seminar** 15:21 16:1,4

**seminars** 15:5,17,19,20 16:9 17:7

**senior** 22:13

**sense** 86:15

**sent** 55:6 61:8 98:6 136:6,8 159:13

**sentence** 99:24 100:5 126:25 308:19,20 311:10

**separate** 163:2

174:22 223:24 297:19

**September** 298:16 299:17,21 300:13,24 301:1,4 317:7

**series** 11:10,20 13:22 86:13 89:9 126:13 176:11 193:25 194:9 209:23 272:11,15

**serious** 11:2

**seriously** 267:13

**served** 198:23

**server** 154:5 157:4,7 184:5 200:3,9 202:12 209:23 264:16 271:14 272:3,7 277:14

**service** 17:15,17,21 18:2,19 26:25 214:16

**services** 18:14 24:8 170:1

**setting** 176:1

**seven** 61:9,11,12,15

**seventh** 40:23

**several** 14:17 56:12 58:19 70:12 79:5 138:4 164:9 191:23

**Shames** 53:11

**Shamus** 53:11

**sheet** 157:3 223:16,20 322:9

**Shems** 52:16 53:13,14

**S-H-E-M-S** 52:17

**shifted** 16:12

**short** 37:5 114:14 286:9

**Shorthand** 1:20

**showed** 218:18

**showing** 317:5

**shown** 177:1 217:3,19

**sic** 76:12 189:4

**Sierra** 9:15

**signature** 93:9 139:21 323:25

**signed** 321:11 322:9

**significance** 286:12 289:21 292:12

**significant** 73:13

**signing** 321:9

**silicon** 185:2

**similar** 10:12 20:7 108:10 130:20 185:13 215:18 218:17 274:10 288:18 297:17

**similarities** 249:3 288:22

**simple** 190:3 228:23

**simply** 92:21 93:6 110:11 130:10 277:10 296:22

**single** 215:14 231:3 273:21

**sir** 20:21 22:20 25:21 31:22 40:11 53:20 57:21 89:3 100:12 101:19 109:21 110:4 132:13 173:7 222:1 224:17 250:22

**sit** 312:4

**site** 192:18 249:16

**sites** 26:14

**sitting** 59:5 71:14

**six** 99:11 256:11

**Shorthand** 1:20

**six-month** 300:14

**skills** 188:9

**skip** 230:6

**Slash** 284:9,10

**slightly** 201:11

**sloppy** 128:5

**Slow** 159:17

**small** 42:17

**Society** 1:3,4 8:9 9:12 198:11

**Soevyn** 1:19 7:22 320:2,24 321:19

**software** 163:19 175:20

**sole** 88:7 190:2

**somebody** 16:16 77:17 243:2 271:22,23 275:5 276:20 293:18

**somehow** 44:2 69:4

**someone** 75:11 257:15 314:24

**someplace** 219:11

**sometime** 20:12 211:16

**somewhere** 174:23

**son** 193:8

**Sonoma** 52:15

**SOP** 20:7

**sorry** 10:20 14:14 15:8 21:25 24:17 33:16 37:5 46:18 50:5,11 63:2 65:14 68:23 77:7 78:19 79:22 81:10,25 83:25 84:2,21 90:12 113:23 117:15 132:2 135:10,11 139:5 143:15 145:15

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 40

148:1 162:24
165:15,19 166:12
173:14 188:11,19
202:23 214:22
216:7 223:10
237:25 250:22
251:1 254:15
255:24 259:3
261:19 269:13
275:12 276:25
291:14 318:2,5

**sort** 13:10 23:12
109:14

**Sotto** 316:4

**sound** 88:19 89:5

**sounding** 137:25

**sounds** 118:9 125:22
189:18 297:24

**source** 60:16 129:24
167:16 170:24
175:24 194:3 281:7
309:10 314:2,4,7

**sources** 60:6 308:16

**Spalding** 2:15 8:9

**speak** 23:24 35:14
41:14 51:10 183:5
192:20 304:24
306:15

**speaker** 304:3

**speaking** 76:11
187:13 250:10
295:5

**speaks** 91:21
101:7,15 144:8
145:5 147:11
263:15 311:18

**Spear** 1:18 2:5 7:17

**specialist** 7:21

**specific** 23:21 70:15
79:24 80:3 88:18
95:1 97:12
106:22,25 113:15
115:12

116:1,13,14,15
120:25 121:1,10
127:2,18
128:6,7,15,16,17
129:11,12,13,14
133:11,12 134:24
137:7,20 138:6
139:5 141:1 145:3
148:24 149:12
150:9 151:1 152:14
153:1 163:2 171:18
184:25 191:5
272:22 307:4
308:16 309:12

**specifically** 57:12
90:1 92:11 123:16
129:17 193:15
242:14,15 246:4
280:1 314:10

**specifics** 74:24

**specified** 203:17
266:11 284:13

**specifies** 286:4

**specify** 264:9 280:17
284:15 285:1,22
286:8

**specifying** 285:5
287:3

**speculate** 66:22
193:14 212:21
213:19 216:10

**speculating** 173:1
177:18 189:17
294:19

**speculation** 47:3 55:5
57:4 66:11 75:13
82:21 94:6 95:7,22
96:17 97:21 107:21
109:19 120:20
133:4 145:23
147:13 148:20
166:17 174:18
177:7 180:22 188:1
189:25 191:16
207:20,21 208:4

211:20 216:23
217:6,22 218:25
227:1 242:3 245:8
248:14 249:14
251:9 253:4 256:22
257:12 259:4
263:19 264:8
274:12 276:15
278:5 285:11
287:17 301:18

**speech** 73:20

**spell** 19:14

**spend** 12:13 146:11

**spent** 19:20 59:6

**spoke** 73:1 123:23
156:15

**spot** 180:10,15
181:20

**spreadsheet**
6:11,12,17,21
206:10,23 207:3
208:18 212:19
217:2 218:7 219:6
297:6,17,18,20
300:6,9,10

**Spreadsheets** 5:24
6:3,4,6

**sprinklers** 306:5

**staff** 13:23 17:2
56:17,18

**stamp** 238:13 242:23

**stamps** 228:11

**stand** 150:21

**standard** 47:13,18
53:15 54:15 57:2
66:14 70:4,18
74:18 75:3,23
77:20 81:4 83:17
84:7,18 85:13
86:5,7,20 87:17,25
88:8 105:8 108:18
110:15 111:5,16,21
115:20 116:5,7,14

117:13,22,23
118:13,14
119:2,3,10,13
120:4,16,17
121:1,10,24
122:5,11,17,21,22
123:3,8,18
124:3,5,19,21
125:5,12 126:2
127:2,8,17,19
128:7,11,17
129:12,14
130:2,3,8,11 131:3
132:9,12,17,25
133:5,12,22
134:9,11,12,15,17,
24 137:2,3 138:5
139:6 141:25
142:1,11,20,24
143:4 144:3,25
146:3,16,17 147:19
148:2,5,24 149:1,5
151:1
152:4,7,12,14
153:3 154:8,25
155:9 156:25 157:2
158:12 164:6,19
168:10 169:10
183:14 184:23
196:4 199:21,24
200:9 201:4
202:4,11 203:11
207:25 209:10
211:4 223:14,25
224:11 226:1
227:4,7 230:20
232:6,25 235:3
239:22 240:4,10
242:25
243:11,12,13 244:3
245:1,2,6 250:13
260:13 263:25
267:8 268:8 270:2
273:25 275:25
277:5 295:6
296:13,18 308:3,4
313:3,14 315:12

**standards** 5:15 21:24

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 41

22:3 44:3,13,20,25
45:10 46:13,24
47:9,22,25
48:4,11,12,19
49:12
51:3,14,16,21,23
52:6 53:1,20,23
54:3,8,22 55:13,25
56:1,6,9,15,23
57:8,16 58:2,23
59:12,14,20
60:4,8,11,16,21
61:5,8,17,18,21
62:17,22 63:10,12
64:9 65:1 66:18
68:3 69:12,20
70:20 71:5,6 72:23
73:9,13,16
74:3,5,12 75:10
77:1,12 78:4,14,24
79:19,20,25
80:4,10,20
81:13,15,22
82:9,16,18 83:1,19
84:9 85:15 86:22
87:19 88:2,14,15
89:16,21
90:2,16,23
91:3,7,11,25
92:6,11,16,22
93:21 94:2,20
95:18 97:4,5
98:14,16,19,20,22,
23,25 99:1,25
100:10,14,17
101:1,9 104:7,15
105:12 106:3
107:2,14
109:1,8,14,25
113:5,14,15,19
115:1,17 116:2,25
117:11 121:23
122:3 124:18
127:5,23 128:10
129:9,17 130:5,14
131:1,4,17,22
133:10,25 134:3,10
135:3,17 138:9,23

139:9
140:13,19,20,22
141:13 149:16
152:25 153:23
154:15 155:15
156:1,17,20,22
157:10,12,14,17,24
158:7,14,23
159:2,8,14 160:16
161:21 162:15
163:16 164:2
167:19 171:5
173:11,16 175:18
178:24 179:7 180:7
184:7,12,16,19
190:9,14,19,21
191:1 195:5
196:1,11,16,21
197:3,5,9,13,19
200:12 204:8,22,25
205:4,19 206:24
207:11 209:2
210:23 211:1,2
214:4 215:4
224:15,18
225:13,17
227:11,14,17,18,21
,22 228:5,16,18
231:25
232:4,6,8,15
233:9,23 234:21
236:7,8,11,12,13
237:9,11,17,22
238:25 239:10
241:5,12,14,18,25
247:3,9,24
249:11,20,25
250:17,22 251:6,19
252:1,2,3,14,25
253:1,20 254:2
256:19 257:2
261:18 267:6
269:11 270:2 276:5
292:25 297:6
298:10 300:11,16
301:16
306:4,5,6,16,18
307:1,5,12,13,15,1

8,21,25 308:6,8,16
309:1,2,4,5,16
310:3,6,21,23,24
311:11,12

**stands** 26:18

**stapled** 302:12

**star** 200:7 202:8

**start** 37:19,22 44:3
45:9 58:22 129:23
132:15 136:19
162:13 188:22
221:10 228:4 236:9
280:3

**started** 21:1 42:25
174:8

**starting** 13:23 102:7

**starts** 99:21 126:22

**state** 44:20 45:17
46:11,21 47:6,15
49:1 52:10 111:21
113:6,20 126:23
127:7 130:19
131:23 132:6,7
148:23 149:2,16,21
151:10 155:17,22
222:17 276:1
294:20 312:22

**stated** 234:8 268:11
320:9

**statement** 50:17,20
165:16 222:3

**statements** 111:10
112:3 205:11
304:24 305:6,12

**states** 1:1 5:15 7:12
44:10 51:8 59:9
62:3 98:11 110:16
111:14 113:14
116:24 117:1,25
120:12 121:21
125:7 126:1 128:4
131:16,18,21
141:13 149:17
150:11 151:21

221:23 222:4,8
266:3 290:23 292:4
293:11,15
294:9,10,12
295:11,17

**stating** 110:19

**station** 18:1

**statistics** 257:21

**stats** 208:25

**status** 210:7
272:10,22 273:10

**statute** 45:21,23,25
111:22 153:2

**statutes** 44:7,14
45:11 131:16,23
132:6,7

**Steimle** 2:15 4:7 8:8
312:2,15,24,25
313:1,11,24 314:21
315:3
316:2,5,10,16,20
317:20

**step** 35:15 49:10
156:24 157:1,2,3
159:25 160:19,20
162:19,25 194:12
195:14 310:5

**steps** 159:19

**stick** 230:6

**stint** 20:15

**STOLTZ** 3:9

**stood** 79:5

**stop** 15:2,12 173:15

**stopped** 15:16 16:9
18:14,15 21:15
173:11

**story** 75:16 195:15

**straight** 223:7

**strategy** 110:22

**streaming** 258:9

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 42

| | | | |
|---|---|---|---|
| **Street** 1:18 2:5,10,16 3:10 7:17 321:2 | 40:14,18 249:2 | 208:12 210:19 214:15 217:7,10 221:6,15 224:4 237:4 246:5 257:24,25 271:17 282:4 286:7 310:16 312:24 | **talked** 38:6 183:23 204:18 |
| **strictly** 295:5 | **subscribe** 320:14 | | **talking** 69:18 98:17 128:9 183:20 195:10 250:3,5 268:9 |
| **strike** 21:20 36:21 60:15 81:14 97:3 133:23 158:10 168:3 186:8 190:10 261:25 | **subsequent** 135:3,16 137:8 138:9 173:12 | | |
| | **subsequently** 14:7 | | |
| | **subset** 42:17 90:3,24 92:1 159:8 301:10,11 | **survey** 130:19 | **tally** 209:9 |
| **strong** 88:15 89:3,17,21 90:2,17,23 91:4,11 92:1,6,16 93:21 94:3,20 95:18 | **subsets** 90:8 | **survive** 306:23 307:2,10 309:2,6 310:4,6,25 311:12 | **Talwalkar** 165:13,23 166:23 |
| | **subsidiaries** 27:6 | | **Tango** 9:15 |
| | **substance** 36:2 63:4 | **SVG** 160:17 185:2,10,19,20,23 186:16 187:5,16 188:16 189:13 190:3 191:4 193:24,25 194:3,5 195:11 196:1 197:23 198:2 202:3,6,10 229:13,14,16,17,19,25 | **tape** 7:8 203:21 |
| **student** 191:20 | **successful** 210:8 309:15 | | **target** 189:7 |
| **students** 188:23,25 189:2 190:7,12 191:3 | **successfully** 271:19 | | **task** 21:19 126:22 170:5 |
| | **suffered** 70:3 77:19 | | **taught** 15:20 |
| **studied** 58:18 | **suggest** 103:8 109:25 171:3 | | **teach** 15:18,23 |
| **Studio** 32:11,12 160:23,24 161:3 | | | **teaching** 15:4,17 17:7 19:5 188:8 |
| | **suggested** 50:2,6 171:11 177:13,25 | | |
| **Studios** 184:12,17,23 185:6,8,13,14 186:10,12 187:3,7,23 189:22 190:14 191:20 192:11 193:17 195:16,17 223:6 | **suggesting** 38:10 | **SVG.html** 193:22 202:8 | **teams** 163:11 |
| | **suggests** 55:9 86:5 | | **techies** 311:21 |
| | **Suite** 1:18 2:17 7:24 | **SVGs** 194:12 | **technical** 16:13 282:1 |
| | **sum** 212:4,5,9 272:16 300:5 317:15,18 | **swear** 8:22 | **techniques** 193:1 |
| | | **sworn** 7:4 9:1 320:6 | **technological** 13:2,8 |
| **studying** 59:6 | **summarize** 80:21 | **symbol** 139:18 | **technology** 22:13 |
| **style** 80:24 | **summer** 128:23 | **syntax** 179:10 187:21 | **telephone** 8:18 39:16 |
| **subject** 85:9 87:7 90:9 106:9 111:10 114:7 119:22 124:11,15 125:21 167:16 238:17 289:4 290:17,22 291:2,6,18 294:14,25 296:25 307:13 | **summers** 191:23 | **System** 14:6 | **telephonically** 3:15 |
| | **supplier** 170:19 | **systems** 30:22 32:10 239:23 | **ten** 61:8,18 301:14 |
| | **supposed** 142:18 | | **term** 132:13 256:25 257:9 277:11,12 281:6,14 282:1,5 |
| | **sure** 9:6 11:7 13:7 27:16 31:6 37:13 41:10 50:16 69:1 99:22 103:25 117:19 118:8 135:14 137:18 150:17 160:14 162:14 165:20 176:12 180:16 181:15 182:4,24 184:3 198:14 | ——————— | |
| | | T | **terminology** 64:4 |
| | | **tab** 297:20,21 | **terms** 64:17,21 65:9,19,23,25 66:8,15,20 67:17,21 68:4,6 125:20 187:13 213:5,8 214:8,12 216:20 234:2,19,24 235:4,17 289:22 |
| **subjects** 292:1,9 | | **table** 143:19 254:16 | |
| **submissions** 71:23,25 104:7 107:23 | | **tabs** 297:19 | |
| | | **tagging** 179:3 | |
| **submitted** 104:6 | | **taking** 116:21 159:11 185:22 | |
| **subpoena** 33:14,23 | | **talk** 95:1 156:18 205:14 | **testified** 7:4 9:2 29:9 |

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

Page 43

79:4 154:18 217:22
219:8 221:3,12
227:10 232:12
234:19 246:12,15
266:13,16 276:3
296:11 311:19
317:14

**testify** 12:4 33:12
34:6 35:12
41:4,8,18 43:2
66:22,25 85:7,8
93:5,7 104:24
110:21 111:9,13
113:10 114:6 115:8
119:22,23 147:12
161:13 199:9
213:16 215:12
216:9 225:23
263:16 320:6

**testifying** 33:1 36:25
151:10

**testimony** 17:19
29:13 35:8 42:16
68:11,21 69:2
73:24 74:2,17,24
87:8 90:11
93:19,23 116:10
121:6 124:13 125:1
143:14,17 147:23
148:11 169:17
170:14 177:16
178:4 212:8 221:16
229:9 234:7,16,23
236:12 257:19
258:2 269:18,20
272:20 273:6 282:8
287:1 294:17
298:13 300:18
301:6 310:8,14
311:2 317:8
320:9,12 322:6,7

**Testing** 1:3 9:13
198:12

**text** 47:17 163:8
179:25 180:6,7
181:10,14 182:7

197:16,19

**textual** 181:5

**Thane** 2:9 8:5 220:6

**Thane.Rehn@mto.c
om** 2:12

**Thank** 22:4 26:23
40:10 193:6 219:19
220:23 255:12
256:3 316:17

**Thanks** 11:5 172:3
219:20 220:22

**that's** 10:17,24 11:4
21:11 27:3 31:5
32:18 34:4 37:21
38:9,18 42:13
53:16 67:8 71:19
77:22 82:11
86:9,23 88:10
90:22 91:18 93:19
96:12 97:14 100:25
101:12,18 103:18
106:12 108:22
112:3,4,5 113:3
114:10 117:6
120:23 125:4
126:15 139:25
144:22 145:13
146:15,18 147:14
154:6 155:8 158:14
160:2,21 161:1
162:17 168:14
172:12 179:22
182:21 184:9,14
187:15,17,20
189:5,9 193:22,24
199:22 205:8,21
206:20 207:22
215:7,22 216:24
217:18 219:13
223:12 225:16,18
226:20 227:12
228:10,17,21,23
229:13,22 230:16
231:23 234:8
237:3,14,19 239:19
240:14 241:10

244:7,8,9 246:14
247:7 248:2,20
250:19 251:17
254:25 259:6
260:1,18,25
261:1,14 262:1
264:22 265:22
272:8 273:24
282:2,5 283:17
287:10 294:13
295:11 296:15
297:18 299:1,23
300:1,14 304:4
305:25 311:6
313:4,16 314:14
315:8 316:3

**themselves** 45:12
47:25

**theoretical** 173:1

**theoretically** 278:6

**theory** 172:14

**thereafter** 20:13
115:4 320:10

**therefore** 51:18
111:17

**therein** 320:9

**there's** 80:8,19,22,25
103:20 124:13
139:23 142:10
144:13 147:7
151:15 153:22
166:5 175:23 194:2
211:25 215:7
222:22 224:19,22
225:25 226:23
230:12 231:3 236:9
240:16,17 252:18
260:8 263:25
265:21 275:19
288:24,25 289:3
290:17 295:24
300:3

**they're** 94:21 122:5
157:14 220:19

261:24

**they've** 272:7

**third** 99:24 160:19
194:3 323:2

**thoroughly** 222:5

**thrilled** 178:21

**throughout** 22:21
57:18

**throw** 63:23

**Thursday** 1:16 321:7
323:7

**title** 23:6 44:19
45:1,15,20
46:7,9,13,17,20
47:5,8,13,14,17,22
48:1,5,12,20 49:2,3
52:11,20 53:20
54:2 98:10 129:25
130:12 203:19
206:12 208:7
254:21 255:23
256:2

**titled** 276:12 282:14

**titles** 251:11

**today** 11:8 12:4
18:11 33:1,5,8,12
34:7,17 35:8,12,19
36:24,25 38:6,8
39:8,22,23 42:16
59:5 78:2 98:17
137:12 148:17
163:14 183:11
215:19 216:1,14
220:14 246:13
255:9,16 311:25

**today's** 317:25
318:21,22

**tolerance** 166:19
167:9,24 168:3,21
169:20,25
170:8,17,20,25

**Tolles** 2:9 8:6,7

**tomorrow** 219:16

Capital Reporting Company
30(b)(6) Public.Resource.Org 02-26-2015
Page 44

312:21

**tonight** 312:17

**tools** 185:11,19
186:16
214:16,20,21,22,23
,24 215:4,14,23
216:1,12,17 219:2

**top** 99:4 139:18
172:9 183:18
218:15 242:24
260:8

**topic** 74:23 79:9
102:17 135:24

**topics** 37:22 40:25
41:2,5,7,13,15,18
43:3

**total** 121:15 211:25
212:5
300:3,8,19,20,25
301:11 317:15,18

**totally** 37:18 106:20
108:22

**touch** 93:13

**towards** 16:13
126:17 140:5

**Tower** 1:18 2:5 7:17

**Town.Hall.Org** 27:2

**townships** 115:2

**traced** 187:13

**trade** 16:19 62:4

**training** 180:25
192:10,20

**transcribed** 320:10

**transcript** 6:25 10:1
50:15 76:10 175:10
302:20 304:4
321:7,10,12,22

**transcription** 268:2
320:11 322:7

**transcripts**
161:2,5,12

**transfer** 102:12
103:21 108:19
157:3 210:8 272:10
273:11

**transfers** 272:12,15

**transforming**
181:5,14

**transforms** 258:7

**transport** 20:5

**trick** 40:20

**tried** 196:15

**triggering** 59:4

**triple-key** 165:2,7,9
166:20
168:13,15,22
169:7,21

**triple-keying** 168:24
169:14

**trouble** 52:25 57:8
70:19

**troubles** 55:24

**true** 10:23 48:4
106:16 155:17
158:14 159:7
169:24 187:15,18
237:16 314:14
315:8,17 317:10
320:12 322:6

**Trust** 71:17 72:18

**truth** 320:6,7

**truthfully** 12:4

**try** 87:14 182:24
206:22 216:12
265:6 266:16,18
283:1,22

**trying** 92:21 146:15
150:13 160:21
221:7 311:22

**TSC** 9:9

**turn** 40:23 99:20
126:16 136:18

174:5 198:25
200:18 201:24
211:24 219:17
224:19 228:10
239:16 243:22
262:6 282:13
295:19

**tutorial-like** 192:24

**TV** 21:6

**Twenty-six** 250:22

**Twenty-three** 241:4

**twice** 222:20

**type** 14:18 17:13
18:23 163:11 185:9

**typed** 48:5 202:8
268:1 293:5
294:4,6

**types** 131:21 193:1,2

**typesetting** 185:4

——————
U
——————

**U.S** 131:13 141:22
210:22,23

**Uh-huh** 99:9,23
136:22 144:15
199:3 224:6 230:11
239:21 243:10,21
260:11 265:9
295:20 298:24

**um** 160:1

**unable** 36:7 51:23
52:5,10,20 56:22
74:3 75:9,23

**undergrad** 128:21

**underlying** 233:14

**underneath** 279:19

**understand** 11:13,21
12:14 22:22 36:4
45:20 69:1 81:3
82:18 118:8 132:25
153:19 160:14
162:14 174:16

190:6,11 217:7
220:7 224:4 276:19
277:12 282:4
299:15

**understanding** 13:18
29:15 32:25 43:1
45:22 79:19 80:17
81:16 82:11 108:1
122:22 123:12
132:16 137:12
154:24 161:19
162:1,10,19 163:14
164:8,18,23
166:14,22 168:2
187:9,12 189:20
191:25 212:25
216:16 226:15
232:14 235:2,8,16
240:2 244:8,15,20
245:3 249:9 250:20
252:23 255:18
256:17 257:8
259:1,5,11 269:2
271:8 273:24
274:8,14 277:16
280:24 281:17
290:3 293:13 298:8

**understood** 11:25
100:21 167:12
169:13 190:24
282:5

**uniform** 253:8

**unique** 209:24
272:23 274:4 298:6

**United** 1:1 5:15 7:12
44:10 51:8 59:9
62:3 98:11 110:16
111:14 116:24,25
117:25 120:12
121:20 125:6 126:1
141:13

**universal** 286:13

**universe** 152:17

**university** 12:16
14:3,5

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015

Page 45

19:11,12,13,16,19

**University's** 13:24

**unprepared** 41:8,11

**upload** 228:5 249:20
265:4 266:14 276:2
282:22
283:2,8,14,16,19
284:24 285:20
289:12 292:25

**uploaded** 200:1
201:5 202:6
203:12,14 224:11
229:6 231:17
249:11,25 251:6,19
252:4,13 264:24
269:3 279:20
281:18 282:20
284:12 290:4
291:20 292:18
293:1,15 296:13,18

**uploader** 249:6
251:14

**uploading** 264:21

**upon** 92:7 168:4
184:23

**up-to-date** 307:18

**URI** 210:22

**URL** 210:12 215:1
253:7,8 275:5,7
279:11
284:1,11,14,16
285:1,5 286:8,9,11
287:10

**URLs** 257:15 297:6
298:6

**user** 28:1,14 246:18
277:17 278:9

**Utility** 243:16

———————
V
———————

**vague** 13:5,20 16:10
18:5 19:1 23:17
24:3,10 25:10,14

27:14,23 28:9
29:5,18 31:14
41:20 43:19
44:5,16 45:4,13
46:8,15 47:3,19
48:6,14,23 49:14
51:6 52:1 53:8,17
54:1,10,16 55:16
56:2 57:9,19
58:4,17 59:13
61:6,23 62:11
63:15 64:4,12,20
65:3,13 66:3,12
67:25 68:21 69:13
70:7,22 72:25
73:11,22
74:7,14,22 75:5,13
77:4,14,23 78:7
79:21 80:6
81:6,17,24
82:4,13,21 83:2
85:2 87:2 88:6
89:24 91:6,14
92:19 93:15,23
94:6,11,17,24
95:7,13,21 97:9,21
100:16 102:6 104:3
105:20 106:18
107:21 108:13
109:19 111:12
113:12 115:9,24
116:11 117:4
118:4,18 119:17
120:21 121:5
122:1,13 123:1,15
124:8 128:2,13
130:17 131:5,25
132:10,20 133:2
134:5,21 135:9
138:1 139:2
140:15,24 142:23
143:7,17,25 145:24
146:8,20 148:20
149:7,18 150:7
151:12,25
152:10,21 153:5,12
154:2,11,20
155:4,19 158:19,25

159:23 161:23,25
162:8,9,22 163:22
164:4,22 165:4
166:17 167:6,22
168:7,20 169:2
170:3,14,22
171:8,15 173:19
174:18 175:4,22
176:23 177:7,17
178:5,12 179:1
180:9 181:3,12
182:9 183:16
185:16 186:13,22
187:9 188:18
189:16,25 190:17
191:22 192:14
194:7,16
195:1,9,20
196:6,13 197:7,21
199:6 200:15
201:9,20 202:13
203:3 204:17 206:3
207:13 208:4
209:14 210:3
211:9,20 213:2
215:20 216:23
217:6 218:25
227:1,16,25
230:2,14 231:1
232:18 233:4,14
234:23 235:7,19
236:4,16 240:18,23
241:21 243:4,15
244:12,24
245:15,23 246:23
247:5,14,25 249:14
250:3,11 253:13,22
254:4 257:12
259:4,12 260:3
261:4,13 262:10,22
264:8 266:9 267:20
268:23 269:7,20
271:11 273:19
274:2,12,25 275:14
276:7,25 277:9,23
278:15,23
279:10,25 281:4,22
282:9 284:5,19

285:2 286:1
287:17,24 288:21
289:7,13 290:7,20
291:9,22 293:2,20
294:2 295:15
296:6,20 297:8
298:12 299:4
300:18 301:18
302:24 303:9,15,23
304:13,20 305:4
306:14 308:2,10
309:8,20 313:7,21
314:19,25

**validated** 184:2

**validity** 184:4 194:10

**value** 197:23 198:2
280:18

**values** 285:22 286:4

**varied** 182:20

**variety** 60:5 192:23
276:21 277:2

**various** 131:15,21
140:19 206:24

**vector** 185:2

**Veeck** 127:3

**veer** 37:22

**Vegas** 115:16,19
119:9,14
120:5,15,25
121:4,9

**Vegas's** 116:4

**vendors** 173:25

**verbally** 11:16 42:4

**verify** 139:22 147:2
155:5 222:3

**version** 127:6,8,18
137:3,6,8 138:6
139:5 145:7,19
147:8,19,21
148:3,8,19,24
150:2,3,4
151:10,15,24

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 46

152:14 176:21
195:4 196:3 197:2
223:2,12,13 224:1
225:1,4,7,10,18,19
226:1,3,9,16,17,19,
22,24 227:4 228:24
229:3 230:19
232:25 235:3
245:5,13 246:3,6,7
252:25 277:18
294:9 295:6,13
313:3,6,9,15
315:12

**versions** 128:10
134:2,17 135:3,17
138:9,24 146:1
150:24 163:12
181:10 183:21
196:20 197:3 223:4
227:11,13,23 228:6
232:1,8,15 234:21
236:13 237:11,21
247:11,19,24

**versus** 9:14 166:20
178:10

**via** 39:16 71:6 77:1

**video** 7:21 76:1
114:14 302:20,22
303:2,6,8,14,20
304:5,7,10,15,21,2
5 305:10

**videographer** 3:16
7:7 8:18,21 9:5
37:7,10 67:10,13
114:16,20 156:9,12
203:23 204:2
219:22,25
270:19,23 271:2
312:6,9,12 317:25
318:12,15,20 319:4

**videographers**
303:17

**videotaped** 1:12 7:9

**view** 49:12 195:18
200:13 201:17

202:22,25 203:1
253:23 254:5
276:13 288:25
305:16,20
306:3,10,18,21
308:6 309:4,14
311:14

**viewed** 258:9

**viewing** 194:1 196:25

**views**
304:10,14,17,25
305:7,13

**virtue** 225:6

**visiting** 19:3

**visitors** 209:13
216:20

**voce** 316:4

**voiced** 150:20

**volume** 4:4 7:8
182:20

**volunteer** 305:22
306:7,11

**volunteers** 81:19,21
82:15

**vs** 1:8

_____
W
**walk** 14:1

**Washington** 2:5 3:5
14:7 323:2

**wasn't** 40:20
50:21,22 57:1
125:9

**watermark** 242:23

**ways** 124:4 125:12
258:11

**web** 20:3 26:2,14
108:2 146:9
149:11,20,24 154:5
157:4,7 184:5
186:16 192:17,20
194:1,15 195:18

215:1,13 219:2
230:16 251:15
253:23 271:14
277:18

**Webmaster**
214:16,21,22,23
215:4,23
216:1,12,17 219:2

**website** 48:21
51:4,21,24 52:7
53:6,16 56:1 76:2
80:9,15 104:5
105:6 107:24 108:2
129:10,18 130:4,16
131:2 143:4,22
145:20 146:14,17
147:1,8,21 148:9
150:5 152:8,12
155:10 156:2,23
157:11,25 158:24
159:3,22 160:13
173:16 183:22
189:9 191:1 193:20
195:7 196:2
197:4,6 200:1
201:6 202:6,19
203:12 204:9,22
205:4,19 206:24
207:11,12 208:2
209:1 211:18
214:25 216:14,21
221:13,18 225:20
226:4,10,21
231:12,17 232:8,20
233:1 235:22,25
245:4,14
246:6,13,17
247:4,10,12,16
249:21 250:1
251:7,20
252:4,15,18,24
253:2,10 256:20
258:10 259:21
260:2 261:10,17
263:13 264:6,21,23
269:4 271:22,24
273:2 276:2,3

279:21 283:9 284:2
285:9 293:19 297:7
298:11 300:11,16
301:16 304:8,18,22
305:10

**websites** 26:12,25
48:21 105:3,15
216:21

**Week** 16:23

**weeks** 34:23 35:6
299:12

**Weimer** 71:16
72:10,17 73:8
74:2,11,18

**we'll** 96:4 280:3,7
312:21 318:10

**we're** 31:6 45:21
67:10 114:13,16,20
141:8,17 156:9,12
159:15 198:4
203:23 204:2
219:22,25 220:15
270:23 271:2
274:17 294:19
302:2,3 312:9,12
317:21 318:15,18

**Wes** 2:15 8:8 312:24

**West** 3:3 8:12,17
321:1

**we've** 10:4 67:4
117:7 156:5 183:22
236:11 237:10
271:9 285:14 286:1
297:4 316:11

**whatever** 10:17
103:19 107:18
108:3 185:3 216:20

**whenever** 266:14

**When's** 39:10

**whereas** 9:8

**Whereupon** 8:23
319:6

Capital Reporting Company
30(b)(6) Public.Resource.Org  02-26-2015
Page 47

| | | | |
|---|---|---|---|
| **wherever** 223:24 | 46:7,9,17,20 | 115:10,25 116:13 | 196:7,15,24 |
| **whether** 36:8,11,13 | 47:5,21 48:8,16,24 | 117:6 118:6,20 | 197:9,16,22 |
| 38:24 50:13 87:18 | 49:8 50:10 51:8,16 | 119:6,21,24 | 198:1,16 200:16 |
| 89:20 93:5 107:17 | 52:2,9 53:9,19 | 120:10,23 121:8 | 201:11,21 202:15 |
| 115:1 116:22 | 54:2,11,18 55:6,18 | 122:2,7,15 | 203:4 204:12,18,24 |
| 117:11,22 123:17 | 56:4 57:5,11,20 | 123:2,16 124:17 | 206:4 207:15,21 |
| 125:11 130:8 140:3 | 58:5,18 59:1,14 | 125:4,25 127:15 | 208:5 209:16 210:4 |
| 143:18 146:2,25 | 61:8,12,25 62:8,13 | 128:4,14 129:3 | 211:11,21 212:9,16 |
| 149:8 156:24 158:9 | 63:9,17 64:5,13,21 | 130:19 131:7 | 213:4,17,18,20 |
| 161:11 176:18 | 65:5,14,22 | 132:2,12,21 133:5 | 214:15 215:13,22 |
| 177:4 178:10 | 66:4,13,21,24 67:2 | 134:9,23 | 216:4,9,24 |
| 188:15 189:6 | 68:1,13,23 69:15 | 135:8,10,12,23 | 217:7,15,24 |
| 199:8,10 205:17 | 70:8,14,24 71:9 | 136:5 137:15,19 | 219:1,9 220:24 |
| 209:10 260:19 | 72:5,14 | 138:3,19 139:4,11 | 221:17 223:18,20 |
| 278:1 318:10 | 73:1,4,6,12,24 | 140:16 141:1 | 224:6 225:22 |
| | 74:8,15,23 | 142:7,24 143:8,18 | 227:3,17 228:1 |
| **White** 62:17 | 75:6,15,20 | 144:1,9 | 229:10 230:3,16 |
| **whole** 224:4,5 239:1 | 76:1,6,14,19,21 | 145:7,15,25 | 231:2,23 232:19 |
| 250:7 305:5 320:6 | 77:6,8,15,24 | 146:9,21 147:14,25 | 233:6,15,17,23 |
| | 78:9,19 | 148:2,13,22 | 234:8,11,17,24 |
| **whom** 62:2 286:17 | 79:4,11,16,24 | 149:8,20 150:9,22 | 235:8,21 237:14,19 |
| **Who's** 164:15 | 80:8,14,24 81:8,19 | 151:14 152:2,11,22 | 238:6 239:14 240:8 |
| **Wide** 254:16 | 82:7,15,23 | 153:6 154:4,12,21 | 241:2,8,9,22 |
| | 83:4,9,14,25 | 155:5,13,21 157:21 | 242:4,11,19 |
| **wife** 160:24 176:9,11 | 84:2,12 85:4,17 | 158:3,20 | 243:6,16 244:14 |
| **WILLIAM** 2:15 | 86:15 87:4,11,21 | 159:2,15,25 160:9 | 245:10,17,24 |
| **willing** 169:25 170:7 | 88:7,18 89:12,25 | 161:13,15,25 | 246:25 247:7,15 |
| **wind** 21:12 159:12 | 90:12,22 91:7,15 | 162:9,25 163:23 | 248:15 249:15 |
| | 92:10,20 | 164:5,23 165:6 | 250:13 251:23 |
| **withdraw** 90:15 | 93:4,8,17,24 | 166:12,19 | 252:10 253:5,14,23 |
| 133:16 238:1 | 94:7,12,25 | 167:8,15,23 | 254:5,12,25 |
| **within-entitled** 320:7 | 95:9,15,23 | 168:9,21 169:3,19 | 256:1,24 257:13,20 |
| **witness** 4:2,10 7:3 | 96:12,19,24 | 170:4,16,23 | 258:3,22 259:5,14 |
| 8:22,25 12:6,9,11 | 97:11,17,23 98:5 | 171:9,17 172:4 | 260:5,21 261:5,14 |
| 13:7,13,22 15:6,8 | 100:5,17,25 | 173:21 174:3,19 | 262:11 263:3,9,20 |
| 16:12 17:20 19:2 | 101:8,18 | 175:6,23 176:15,25 | 264:9 266:2,10,23 |
| 20:21 22:2 | 102:7,17,21 103:25 | 177:9,18 178:6,14 | 267:21 268:13,25 |
| 23:19,24 24:5,12 | 104:4,13 | 179:2,10,15,22 | 269:8,21 270:5,13 |
| 25:16 26:21,24 | 105:3,11,21 | 180:3,10,23 | 271:13 272:2,21 |
| 27:16,25 | 106:7,14,21 | 181:4,13 182:11 | 273:8,20 274:3,14 |
| 28:10,14,24 | 107:5,11,23 | 183:7,17 185:18,25 | 275:1 276:9,16 |
| 29:2,7,20 30:1 | 108:8,14,22 | 186:5,15,24 | 277:1,10,25 |
| 31:16,22,24 32:15 | 109:5,11,20 | 188:2,7,11,19 | 278:6,16,25 279:11 |
| 33:17,20 34:13 | 110:4,11,21,25 | 189:17 190:2,18 | 280:5 281:5,13,24 |
| 37:14 40:11 41:22 | 111:1,9,12,14 | 191:3,12,17,23 | 282:10,24 |
| 42:3 43:21 44:6,18 | 112:15,22 | 192:8,16 193:4,13 | 283:4,11,22 |
| 45:5,15 | 113:10,13 | 194:9,18 | 284:6,20,22 |
| | 114:5,8,10 | 195:2,10,22 | 285:4,12 286:3 |

287:2,9,19,25
288:22 289:8,15,24
290:11,22
291:10,23
292:3,14,21
293:4,22 294:4,19
295:2,9,16
296:7,21 297:10,12
298:14 299:6
300:19 301:7,19,25
302:19
303:1,5,11,17,25
304:14,21 305:6,25
306:15 307:4,12,21
308:3,11,15
309:9,22 310:15
311:3,6,17,20
313:9,22 314:20
315:2 316:1,18
318:4 319:2
320:5,10,13 322:4
323:6

**worded** 31:5

**work** 10:6 16:3
17:6,10,13
23:11,12 30:24
31:13,17 64:23
67:18,22 85:8
86:9,12,24 102:16
105:2,18 110:23
111:25 112:5
114:4,6 115:6
119:20 124:10
125:18 130:24
138:15 160:22
161:20 171:13
172:23 173:4,9,23
175:2,13
178:16,20,23 179:7
180:12 183:25
184:10,13,17,23
185:6 186:18
187:24 188:4
190:9,14 191:9
192:12,13,21
193:17 194:4,19
205:10 208:15

213:11,13 214:9
215:3,7,8 305:18
308:7,17

**worked** 14:5 185:18
191:6

**workflow** 160:1,20
184:20 195:23

**working** 14:4,10
15:23 18:19 19:8
21:7,15 32:5 44:9
171:4 181:4 189:21
190:25 191:4,8
193:9 223:6 242:20

**works** 82:12 83:7
94:21 131:22
307:14

**world** 15:20,22 186:3

**Worlds** 19:25
20:1,2,10,12,24

**worried** 178:15

**worth** 10:17

**wound** 183:22

**write** 15:18 303:22

**writer** 16:25

**writes** 81:13,15
286:3

**writing** 15:17 16:13
19:7 105:7 106:2
109:13 294:20

**written** 13:13
46:3,14,25 70:18
172:10 174:9
211:16

**wrong** 9:4 183:1
205:22 285:21

**wrote** 16:18,23
99:5,16 100:8
101:12,14,16
126:19 136:23

**WWLBD.Org** 26:18

**www.archive.org**

203:12

_____

        Y

**Yep** 238:8

**yesterday** 34:20,22
35:5 39:12 41:2
259:21 263:6,14
275:19

**YesWeScan.Org**
26:18

**yet** 294:9 295:16

**Y-O** 26:21

**Yo.YourHonor.Org**
26:19,21

**you'll** 37:25 96:4
224:19,20,21
226:13 228:9,14
230:10 240:15
243:11 252:17
258:15 260:8 267:5
282:14

**yourself** 8:1 30:13,16
31:2,9 42:20 52:4
130:24 218:2 224:2
238:14

**you've** 36:23 38:5
55:22 71:18 72:9
78:1 87:6,16
89:20,25 93:1,20
95:4,17 96:2
101:15,16 116:6
146:16,17 153:10
154:17 162:5
246:12,21 247:2
274:10 279:4

_____

        Z

**Z21.1-2000** 137:6