# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>       Plaintiffs/<br>       Counter-Defendants,<br><br>   v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>       Defendant/<br>       Counter-Plaintiff. | Case No. 1:13-cv-01215-TSC |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS AND OBJECTIONS TO CERTAIN EVIDENCE IN OPPOSITION TO PRO'S SECOND SUPPLEMENTAL STATEMENT OF MATERIAL FACTS**

**[REDACTED]**

Pursuant to Local Civil Rule 7(h), Plaintiffs submit the following Statement of Disputed

Facts in opposition to PRO's Second Motion for Summary Judgment and in support of Plaintiffs'

Motion for Summary Judgment and Permanent Injunction.  Instead of filing separate documents

objecting to evidence PRO attempted to introduce through its Second Supplemental Statement of

Facts, Plaintiffs have objected to the proposed evidence in this consolidated document.[1]

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| **I.      INCORPORATION BY REFERENCE** | |
| **A.      The Nature of Incorporation by Reference** | |
| 1.      Incorporation by reference is an alternative to direct inclusion of language into a government's published laws or regulations. *See* 5 U.S.C. §552(a)(1); 1 C.F.R. §§ 51.1-51.11. | This is a legal conclusion, not a fact. Moreover, in many circumstances, "direct inclusion of language" from a privately authored standard is prohibited by the Copyright Act, 17 U.S.C. § 106, requires a license, and/or requires payment of reasonable and entire compensation for such use, 28 U.S.C. § 1498. |
| 2.      The Office of the Federal Register has explained that material incorporated by reference is "like any other properly issued rule, has the force and effect of law."  Dkt. 122-9 at 86. | Objection.  This statement is inadmissible hearsay to the extent it is offered to prove the truth of the matter asserted. <br><br> The statements as to the legal effect of incorporation by reference are legal conclusions, not facts. |
| 3.      The federal government initiated the practice of incorporating some materials by reference instead of reproducing them to limit the bulk of the Code of Federal Regulations ("CFR").  Dkt. 122-9 at 86. | Objection.  This statement is inadmissible hearsay to the extent it is offered to prove the truth of the matter asserted.  It is otherwise irrelevant. |

---

[1] Likewise, Plaintiffs have not submitted separate evidentiary objections to the declarations that PRO submitted, but does not rely on in its Second Supplemental Statement of Facts.  That evidence is all irrelevant.  Plaintiffs reserve their right to object to those declarations if/when PRO seeks to rely upon them, either at this summary judgment stage or at another point in the proceeding.

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed to the extent it suggests that the federal government's only or principal reason for endorsing incorporation by reference is to limit the bulk of the Code of Federal Regulations.  As explained in Plaintiffs' briefing, that is inaccurate.  Reply at Background Part A. |
| 4.      States and municipalities also turn standards into law, through incorporation by reference and in other instances by reproducing an entire standard verbatim in the text of the law. *See, e.g.*, Minn. Admin. Rule 4761.2460, Subp. 2(C); California Code of Regulations, Title 24, Part 3. | Objection.  This statement is irrelevant to the extent it relates to incorporation of standards that are not at issue in this case.  Plaintiffs further object that the statement is a legal conclusion, not a fact.

Disputed.  PRO failed to cite any evidentiary support for this proposition.  Disputed to the extent that "turn standards into law" implies that incorporation by reference of a standard makes the standard itself law.

Disputed to the extent it implies that California Code of Regulations Title 24, Part 3 reproduces an entire standard verbatim in the text of a law. *E.g.*, Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 43:4-9 (noting California amendments in Title 24, Part 3). |
| 5.      Governments may prosecute and punish persons for failing to obey standards that have become law.  To take just two examples: The Supreme Court of Virginia treated violation of the National Electrical Code as equivalent to a violation of the Virginia Building Code, which incorporated the NEC by reference, and subject to criminal sanctions. *Virginia Elec. & Power Co. v. Savoy Const. Co.*, 294 S.E.2d 811, 816-17 (Va. 1982). | Objection.  This is a legal conclusion, not a fact.

Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law.

Disputed to the extent PRO suggests that governments prosecute standards and punish persons for failing to obey standards.  Additionally, the cited reference does not support the statement, as it involves a civil lawsuit initiated by a private party. |
| 6.      After the deadly "Ghost Ship" fire in Oakland, California, prosecutors charged | Objection.  Relevance.  The cited material does not indicate that any of the Plaintiffs |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| principal tenant and alleged manager of the building with manslaughter for violation of fire safety codes that are incorporated by reference. Supplemental Declaration of Matthew Becker in support of Public Resource's Opposition to Plaintiffs' Second Motion for Summary Judgment and in Support of Public Resource's Second Motion for Summary Judgment ("Becker Decl.") ¶ 59, Ex. 93 (Declaration in Support of Probable Cause, *California v. Harris*, No. 17-CR-017349A (Cal. Super. Ct. June 5, 2017), *available at* https://www.scribd.com/document/350446988/Ghost-Ship-fire-criminal-charges; Becker Decl. ¶ 60, Ex. 94 (Criminal Complaint, *California v. Harris*, No. 17-CR-017349A (Cal. Super. Ct. June 5, 2017)), *available at* https://web.archive.org/web/20170729051241/https://cbssanfran.files.wordpress.com/2017/06/almena-and-harris-complaint.pdf.). | developed any of the referenced "fire safety codes" or that any of those codes are at issue in this case. PRO's characterization of the prosecution documents is a legal conclusion, not a fact. There is no evidence that these charges are related to any standard at issue in this case.<br><br>It is undisputed that the Ghost Ship fire was a tragedy and resulted in prosecutions; however, these facts underscore the importance of Plaintiffs and their standards to the public interest in safety and, as a result, the risk posed by PRO's conduct, which undermines Plaintiffs' source of revenue. PRO's statement that "prosecutors charged principal tenant and alleged manager of the building with manslaughter for violation of fire safety codes that are incorporated by reference" is also inaccurate and misleading. The cited criminal complaint does not link the manslaughter charges to violations of the safety codes. The declaration in support of probable cause outlines numerous allegations of dangerous conduct, including violations of incorporated safety codes, violations of municipal codes that do not incorporate safety codes, and conduct that an ordinarily careful person would not undertake. |
| 7. ASTM has publicly stated that "[k]nowledge of ASTM standards is important for complying with U.S. regulations and procurement requirements" Dkt. 122-3 (Grove Ex. 1032 "ASTM Standards Regulations & Trade, Power Point") at 21. | ASTM admits that an ASTM employee stated that "[k]nowledge of ASTM standards is important for complying with U.S. regulations and procurement requirements." |
| 8. NFPA acknowledges that failure to comply with the standards incorporated by law may result in penalties. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 37:1–19. | Objection. The witness was testifying regarding his time as a government employee, not making a statement on behalf |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | of NFPA.  Becker Decl. ¶ 13, Ex. 46 (Bliss Depo.) at 33:8-12. |
| | Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law.  PRO further mischaracterizes the evidence.  The cited reference states that when the witness was acting as a government employee, he would sometimes provide a property owner with a written report identifying any ways in which the property owner was not in compliance with applicable codes.  Becker Decl. ¶ 13, Ex. 46 (Bliss Depo.) at 37:1–19; *see also* Bliss Depo. at 34:3-8.  The witness stated that this written report typically did not cite the specific provision with which the owner was not in compliance, but that a follow-up letter or document would.  *Id.* at 37:7–19.  The cited reference does not include any discussion of penalties—nor does it indicate that any such penalties could arise from violation of codes that incorporated privately developed standards, much less any standards at issue in this case. |
| 9.      The former head of Massey Energy was convicted of conspiring to violate safety standards. Dkt. 122-9, Ex. 156-157. | Objection.  Relevance.  The cited material does not indicate that any of the relevant safety standards were privately developed standards incorporated by reference or, to the extent that they were, that they were developed by any of the Plaintiffs or are at issue in this case.  Plaintiffs object to this statement as hearsay to the extent PRO relies on them for the truth of the matter asserted.

There is no evidence that this conviction related in any way to a standard at issue in this case. |
| **B.      The Process of Incorporation by Reference** | |
| 10.     The process of incorporation by reference is careful and deliberate. At the | Objection.  This is a legal conclusion, not a fact. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| federal level, it starts when an agency responsible for regulating an industry publishes a notice in the Federal Register concerning the agency's intent to incorporate a standard into law and asks the public to submit comments. 5 U.S.C. §553. | Disputed. This statement is entirely unsupported. Defendant has presented no evidence that the process of incorporation by reference is careful or deliberate, or how federal agencies initiate the process of incorporation by reference. The cited reference relates to agency rulemaking generally; it does not relate to how federal agencies incorporate material by reference. |
| 11.      A federal agency must publish proposed rule changes in the Federal Register, including changes to a standard incorporated by reference into the Code of Federal Regulations. 5 U.S.C. §553(b); 1 C.F.R. § 51.11(a) (2015). | Objection. This is a legal conclusion, not a fact. |
| 12.      A standard incorporated by reference into the Code of Federal Regulations must be a "proposed rule" or "final rule" of a federal agency. 1 C.F.R. §51.5(a)-(b) (2019). Before the federal government incorporates a standard by reference into law as a final rule, the Director of the Federal Register must approve the incorporation. 1 C.F.R. § 51.3 (2019). | Objection. This is a legal conclusion, not a fact.<br><br>Disputed to the extent it suggests that the cited reference states that an incorporated standard is itself is a "proposed rule" or a "final rule." Disputed that a "proposed rule" would constitute an incorporation by reference of a standard into the Code of Federal Regulations. Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law. |
| 13.      Standards are incorporated by reference—as opposed to reprinting the entire text of the standards—to limit the length of the Code of Federal Regulations. Dkt. 122-9 at 86 ("Incorporation by Reference" webpage of the Office of the Federal Register, http://www.archives.gov/federal-register/cfr/ibr-locations.html). | Objection. The OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted (i.e., the purported only reason why standards are incorporated by references as opposed to reprinting the entire text). It is otherwise irrelevant to the question of fair use.<br><br>Disputed that the only or principal purpose of incorporating standards by reference is to limit the length of the Code of Federal Regulations; as explained in Plaintiffs' briefing, that is inaccurate. Reply at Background Part A.   Disputed that were it |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | not for concerns about length, the entire text of the standards would be reprinted. The copying of the entire text of standards by the federal government would subject the federal government to liability under 28 U.S.C. § 1498 and/or the takings clause of the Constitution. ECF No. 118-1 (Pls.' Mem.) at 27-28. |
| 14.    Standards are also incorporated by reference into state and local laws. *See, e.g.*, Md. Admin. Rule 09.12.26.06(E)(1)(c)(i); Minn. Admin. Rule 4761.2460, Subp. 2(C). | Objection. Relevance. The cited administrative rules do not indicate that any of the Works at issue have been incorporated by reference into state or local law. This is a legal conclusion, not a fact. <br><br> Disputed to the extent it suggests that Plaintiffs' standards are themselves law. |
| 15.    State adoptions are equally rigorous. For example, the State of California incorporates model codes into Title 24 of the California Code of Regulations on a triennial cycle, with a 45-day public-comment period, a six-month publication requirement, and a three-month delay to allow local governments to implement them. The California Building Standards Law precisely defines this process. *See* Cal. Dep't of Gen. Servs., *2015 Triennial Code Adoption Cycle* (Dec. 2014), https://web.archive.org/web/20170207201000/https://www.documents.dgs.ca.gov/BSC/2015TriCycle/2015TricycleTimeline.pdf; *18-Month Code Adoption Cycle*, Cal. Bldg. Standards Comm'n, https://www.dgs.ca.gov/BSC/Rulemaking (last visited Nov. 8, 2019). | Objection. This statement is either a legal conclusion or an inadmissible opinion, not a statement of fact, and is entirely unsupported. Defendant has presented no evidence that the process of incorporation by reference by any state, let alone all states, is "equally rigorous" to that of the federal government. Even if it had, the statement would be meaningless as PRO has not presented any evidence regarding how "rigorous" the federal government's incorporation process is. <br><br> To the extent PRO relies on the content of websites not attached to the brief, Plaintiffs object to PRO's summaries of documents that have not been included in the record. Plaintiffs further object to the information on the websites as hearsay to the extent PRO relies on them for the truth of the matter asserted. They are otherwise irrelevant. <br><br> Objection. Relevance. California's incorporation practices are irrelevant and immaterial to the question of fair use and do |

| **DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT** | **PLAINTIFFS' RESPONSE** |
|---|---|
| | not dictate the extent to which, if at all, portions are necessary to comply with a legal duty.  Neither the statement nor the cited material identifies a Work at issue allegedly incorporated by reference into California law.<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law. |
| 16.     The Office of the Federal Register (OFR) states: "The legal effect of incorporation by reference is that the material is treated as if it were published in the Federal Register and CFR. This material, like any other properly issued rule, has the force and effect of law. Congress authorized incorporation by reference in the Freedom of Information Act to reduce the volume of material published in the Federal Register and CFR."  Dkt. 122-9 at 86. | Objection.  This statement is inadmissible hearsay to the extent it is offered to prove the truth of the matter asserted.  It is otherwise irrelevant to the question of fair use.<br><br>The statements as to the legal effect of incorporation by reference are legal conclusions, not facts.<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law. |
| 17.     In addition, when the Code of Federal Regulations incorporates a standard, the code itself informs readers that they may obtain a copy of the standards from the Office of the Federal Register ("OFR") or from the SDO that published the standard, effectively promoting sales of the standard.  Dkt. 122-9 at 86. | Objection.  This statement is inadmissible hearsay to the extent it is offered to prove the truth of the matter asserted.  It is otherwise irrelevant.  The assertion that the C.F.R. is "effectively promoting sales of the standard" is PRO's argument and not supported by the citation.<br><br>The statements as to the legal effect of incorporation by reference are legal conclusions, not facts.<br><br>This statement is entirely unsupported by the document cited.  Defendant has presented no evidence that the cited statement "effectively promotes sales of the standards," which does not appear in the cited document. |
| 18.     In order to enact rules, a federal agency must follow minimum procedures to guarantee | This is a legal conclusion, not a fact. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| adequate public notice and opportunity to comment. 5 U.S.C. §553. | |
| 19.     A federal agency must publish proposed rule changes in the Federal Register, including changes to a standard incorporated by reference into the Code of Federal Regulations. 5 U.S.C. §553(b); 1 C.F.R. § 51.11(a) (2015). | This is a legal conclusion, not a fact. |
| 20.     Standards incorporated by reference into the Code of Federal Regulations are made available in the Washington D.C. reading room of the Office of the Federal Register, or for purchase from the Plaintiffs. The OFR directs people who want to read incorporated standards to "contact the standards organization that developed the material." Alternatively, one may submit a written request to the OFR to inspect (and make limited photocopies of) an incorporated standard in Washington, D.C. Dkt. 122-9 at 86; Becker Decl. ¶ 58, Ex. 92 (printout of National Archives website on incorporation by reference). | Objection. The OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted.

Disputed to the extent it implies that the standards incorporated by reference are only available at the reading room of the Office of the Federal Register or for purchase from Plaintiffs.  All of the standards at issue for which PRO has accurately identified a regulation incorporating the standard by reference and many other standards are available for free in Plaintiffs' reading rooms.  ECF No. 118-2 (Pls.' SMF) ¶¶ 61, 63, 100, 161; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 85.  In addition, the standards at issue and other standards are available for purchase at reasonable prices.  ECF No. 118-2 (Pls.' SMF) ¶¶ 58, 99, 158; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 77. |
| 21.     The Office of the Federal Register is required to maintain a copy of each incorporated standard. It makes a copy of each standard available for public viewing, upon written request for an appointment, at its Washington, D.C. reading room. Dkt. 122-9 at 86. | Objection. The cited OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted.

Disputed to the extent it implies that the standards incorporated by reference are only available at the reading room of the Office of the Federal Register or for purchase from Plaintiffs.  All of the standards at issue for which PRO has accurately identified a regulation incorporating the standard by reference and many other standards are available for free in Plaintiffs' reading |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | rooms.  ECF No. 118-2 (Pls.' SMF) ¶¶ 61, 63. 100, 161; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 85.  In addition, the standards at issue and other standards are available for purchase at reasonable prices.  ECF No. 118-2 (Pls.' SMF) ¶¶ 58, 99, 158; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 77. |

## C.     Objects of Incorporation

| | |
|---|---|
| 22.     According to the Office of the Federal Register's Incorporation by Reference ("IBR") Handbook, any time a federal agency refers to material when it is developing regulations, it must consider two questions:  First, "does it have a legal citation?"  If yes, the agency must use the legal citation.  If not, the agency then must consider the second question: "Is it required to understand or comply with the regulations? Do your regulations require that a party "resort to" material that is not published in the *Federal Register*?"  If the material is necessary to understand or comply with the regulation, the agency must seek IBR approval from the Director of the Federal Register.  Becker Decl., ¶ 25, Ex. 58 (IBR Handbook) at p. 2 (citing 5 U.S.C. § 552(a)). | Objection.  The OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted.  This portion of the 2018 IBR Handbook is otherwise irrelevant, especially with respect to any regulation for which IBR approval was sought prior to the Handbook's effective date of July 2018 or that was promulgated before that date. <br><br> Plaintiffs object that the 2018 IBR Handbook does not state that "If the material is necessary to understand or comply with the regulation, the agency must seek IBR approval from the Director of the Federal Register." <br><br> This is a legal conclusion, not a fact. |
| 23.     Only the Director of the Federal Register can approve IBR requests, and "[p]ublication in the *Federal Register* of a document containing reference(s) to incorporated material does not in itself constitute an approval of the IBR by the Director."  Becker Decl., ¶ 25, Ex. 58 (IBR Handbook) at 6. | Objection.  The OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted.  This portion of the 2018 IBR Handbook is otherwise irrelevant, especially with respect to any regulation for which IBR approval was sought prior to the Handbook's effective date of July 2018 or that was promulgated before that date. <br><br> This is a legal conclusion, not a fact. |
| 24.     Similarly, the Federal Register may contain references to incorporated material, but the referenced material is not actually incorporated by reference when it has not | Objection.  The OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted.  This portion of the 2018 IBR Handbook is otherwise irrelevant, |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| received the Director's formal approval. Becker Decl., ¶ 25, Ex. 58 (IBR Handbook) at 11. | especially with respect to any regulation for which IBR approval was sought prior to the Handbook's effective date of July 2018 or that was promulgated before that date.<br><br>This is a legal conclusion, not a fact. |
| 25.     To be eligible for incorporation by reference, the material must be *published* and "impossible or impractical" to print in the C.F.R.   Becker Decl., ¶ 25, Ex. 58 (IBR Handbook) at 6.   This means it is typically documents, or portions of documents, that are incorporated by reference—not mere text, which could otherwise be printed in the C.F.R. *See* Becker Decl., ¶ 25, Ex. 58 (IBR Handbook) at 11-12. | Objection.  The OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted.  This portion of the 2018 IBR Handbook is otherwise irrelevant, especially with respect to any regulation for which IBR approval was sought prior to the Handbook's effective date of July 2018 or that was promulgated before that date.<br><br>The statement that the referenced portion of the 2018 IBR Handbook "means it is typically documents, or portions of documents, that are incorporated by reference—not mere text, which could otherwise be printed in the C.F.R." is PRO's argument, not fact.<br><br>The statement about what is typically incorporated and that "mere text" could be printed in the C.F.R. is not supported by the cited document.  As explained in Plaintiffs' briefing, agencies use and the federal government endorses incorporation by reference for reasons other than simply reducing the bulk of the Code of Federal Regulations.  Reply at Background Part A. |
| 26.     According to the Director of Legal Affairs and Policy at the Office of the Federal Register, if an agency identifies a document in its IBR language and does not specify a specific section of that document, the entire document is incorporated by reference.   Malamud Decl. ¶ 40, Ex. 34. | This is a legal conclusion, not a fact.<br><br>Objection.  The OFR statement is hearsay and is inadmissible to prove the truth of the matter asserted.  It is otherwise irrelevant as the privately expressed views of one federal employee do not dictate agency policy or practice.  It also is improper opinion testimony. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | PRO's paraphrase of the email exchange mischaracterizes it.  PRO concedes in the same document that the proposition is not supported by any OFR document, handbook, or other policy.<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law and, as explained in Plaintiffs' Reply, Plaintiffs dispute PRO's conclusions from this inaccurate premise. |

**D.   Incorporation of Parts of Documents Versus Incorporation of Complete Documents**

| | |
|---|---|
| 27.    Where a federal agency seeks to incorporate only parts of a standards document, it is explicit.    For example, 24 CFR § 3280.4(aa)(4) (2019) states that only specific parts of the 2005 edition of the National Electrical Code, NFPA 70, are incorporated into law:<br><br>(a) The specifications, standards, and codes of the following organizations are incorporated by reference in 24 CFR part 3280 (this Standard) pursuant to 5 U.S.C. 552(a) and 1 CFR part 51 as though set forth in full.<br><br>…<br><br>(aa)    National    Fire    Protection Association (NFPA), 1 Batterymarch Park, Quincy, MA 02269, phone number 617-770-3000, fax number 617-770-0700,    Web    site: http://www.nfpa.org.<br><br>… | This is a legal conclusion, not a fact.<br><br>Disputed.  The cited reference neither states nor supports PRO's statement that "[w]here a federal agency seeks to incorporate only parts of a standards document, it is explicit."  PRO offers no evidence regarding the reason that the cited reference identifies specific portions of NFPA 70 and the cited reference does not indicate any.  Further, while PRO draws an inference that because this regulation identifies certain sections of the standard, regulations that do not identify particular sections of a standard should be treated differently, there is no factual or legal basis for such an inference; PRO offers no evidence that this particular regulation is representative of regulations from the promulgating agency or from other agencies across the federal government. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| (4) NFPA No. 70-2005, National Electrical Code, IBR approved as follows:<br>(i) Article 110.22, IBR approved for §§ 3280.803(k) and 3280.804(k).<br>(ii) Article 210.12(A) and (B), IBR approved for § 3280.801(b).<br>(iii) Article 220.61, IBR approved for § 3280.811(b).<br>(iv) Article 230, IBR approved for §§ 3280.803(k) and 3280.804(k).<br><br>…<br><br>24 CFR § 3280.4(aa)(4)(i)-(iv). | |
| 28.      In contrast, the full 2005 edition of the National Electrical Code, NFPA 70, is incorporated by reference at 49 C.F.R. § 192.7 (2009):<br><br>§ 192.7 What documents are incorporated by reference partly or wholly in this part?<br>(a) Any documents or portions thereof incorporated by reference in this part are included in this part as though set out in full. When only a portion of a document is referenced, the remainder is not incorporated in this part.<br>(b) . . . These materials have been approved for incorporation by reference by the Director of the Federal Register in accordance with 5 U.S.C. 552(a) and 1 CFR part 51. . . .<br>F.    National    Fire    Protection Association (NFPA): . . .<br>(4) NFPA 70 (2005) ''National Electrical Code.'' | This is a legal conclusion, not a fact.<br><br>Disputed to the extent PRO intends this citation to support the previous paragraph's statement that "[w]here a federal agency seeks to incorporate only parts of a standards document, it is explicit." PRO offers no evidence regarding the reason that the cited reference refers to NFPA 70 as it does, and the cited reference does not indicate any. Further, while PRO draws an inference that because one regulation (identified in ¶ 27) identifies certain sections of the standard, regulations that do not identify particular sections of a standard should be treated differently, there is no factual or legal basis for such an inference; PRO offers no evidence that the identified regulation is representative of regulations from the promulgating agency or from other agencies across the federal government.<br><br>Disputed to the extent PRO suggests that the cited reference does not identify specific portions of NFPA 70. The cited reference identifies two regulations for which the standard is being incorporated: |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | §§ 192.163(e) and 192.189(c).  49 C.F.R. § 192.7 (2009).  Section 192.163(e) states that "[e]lectrical equipment and wiring installed in compressor stations must conform to the National Electrical Code, ANSI/NFPA 70, so far as that code is applicable."  49 C.F.R. § 192.163(e) (2009).  Section 192.189(c) states that "[e]lectrical equipment in vaults must conform to the applicable requirements of Class 1, Group D, of the National Electrical Code, ANSI/NFPA 70."  Both of the regulations in the cited reference thus identify specific fields ("electrical equipment and wiring installed in compressor stations"; "electrical equipment in vaults") and specific provisions ("applicable" provisions; "applicable requirements of Class 1, Group D"). |
| **E.     Incorporation by Reference Versus Extrinsic Unincorporated Standards** | |
| 29.     Sometimes external documents are referred to in the C.F.R. or in other government edicts but not formally incorporated into law. When a document is referenced but not formally incorporated, it serves as only an "extrinsic standard".  *See, e.g.*, *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516 (9th Cir. 1997) (regulations required Medicare and Medicaid claimants to use a private medical coding system but did not incorporate the medical coding system into law).  Likewise, *CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.*, concerned a document that was one of several automobile valuation references that regulations approved for use in insurance adjusting.  44 F.3d 61 (2d Cir. 1994).  The regulation stated "[m]anuals approved for use are…The Redbook….," without any mention of incorporating those manuals into enforceable laws.  *See* N.Y. Comp. Codes, R. & Regs. tit. 11, | This is a legal conclusion, not a fact.  Objection.  This is attorney argument not fact and consists of an incorrect legal interpretation of the cases, not a fact.  It also is vague to the extent it refers to "government edicts."  It is also irrelevant.  PRO mischaracterizes the cases.  The quoted language "extrinsic standard" does not appear in *Practice Management Information Corp. v. American Medical Association*, 121 F.3d 516 (9th Cir. 1997), which involved IBR:  "HCFA published notices in the Federal Register incorporating the CPT in HCFA's Common Procedure Coding System, *see* 48 Fed. Reg. 16750, 16753 (1983); 50 Fed. Reg. 40895, 40897 (1985), and adopted regulations requiring applicants for Medicaid reimbursement to use the CPT. *See* 42 C.F.R. § 433.112(b)(2) (requiring compliance with Part 11 of the State |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| § 216.7(c)(1)(i) (West 1999), *cited in CCC*, 44 F.3d at 73 n.29. | Medicaid Manual, which requires states receiving federal funding for Medicaid to adopt the Administration's Common Procedure Coding System as the exclusive medical procedure coding system)."  *Id.* at 518; *see also id.* n.3 (citing additional IBRs). Likewise, the Court's holding in *CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.*, 44 F.3d 61 (2d Cir. 1994) presumed IBR status and nevertheless found in favor of the copyright holder.  These cases do not say what PRO purports that they say and do not help PRO.<br><br>Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law. |

## II. STANDARDS THAT HAVE BECOME LAW ARE NOT GENERALLY AND FREELY ACCESSIBLE

| | |
|---|---|
| 30.   Without the database that Public Resource provides, citizens have few options for accessing laws and regulations by incorporation.   First, one may make an appointment to visit the National Archives in Washington, D.C., to read a paper version of a federally incorporated standard. *See, e.g.*, 10 C.F.R. § 433.3.  This option does not provide meaningful access for persons without the means to travel to Washington, or persons with visual disabilities, and it does not allow computer-aided analysis. | Objection. This statement is PRO's argument not based on any cited facts and, in any event, would be irrelevant to the extent it relates to any standards other than the Works.   The statement's discussion of access for individuals with visual disabilities is irrelevant, as the D.C. Circuit previously held that "the district court properly rejected some of PRO's arguments as to its transformative use—for instance, that PRO was converting the works into a format more accessible for the visually impaired or that it was producing a centralized database of all incorporated standards." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018).<br><br>Disputed. The statement is entirely unsupported.<br><br>Disputed to the extent it implies that any of the standards at issue are not reasonably |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | available.  Standards are only eligible to be incorporated by reference if they are reasonably available.  1 C.F.R. § 51.7.  There are numerous options for accessing the Works in addition to visiting the National Archives.  Plaintiffs provide read-only access to the Works for free—excluding certain of the Works that are not incorporated by reference as claimed by PRO—on their websites, and sometimes linked through other websites, such as local and state government websites.  *See* ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 85.  The Works are also available for purchase at reasonable prices.  ECF No. 118-2 (Pls.' SMF) ¶¶ 57-61, 99, 158; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 77, and are often available through subscription services.  ECF No. 118-2 (Pls.' SMF) ¶ 160; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 78; Declaration of Thomas O'Brien, Jr. dated Dec. 20, 2019 (O'Brien Decl. III") ¶¶ 9-10.  Plaintiffs' standards are also available through third-party subscription services.  O'Brien Decl. III ¶¶ 9-10.<br><br>Disputed to the extent PRO intends to suggest that it provides citizens with "options for accessing laws and regulations by incorporation."  PRO's copies of standards contain errors; PRO does not provide comprehensive information regarding where standards have been incorporated by reference; and, to the extent PRO does identify information about any incorporating regulations, that information is often inaccurate.  Mot. 15 & n.10.<br><br>Disputed to the extent PRO intends to suggest that it provides meaningful access for persons with visual disabilities.  Public Resource's copies also are not meaningfully |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | accessible to persons with visual disabilities. ECF No. 155-1 (Pls.' Supp. SMF ¶¶ 4-7). |
| 31.    Second, one can sometimes purchase copies.  This can be not only expensive but also difficult, because where, as here, the standards are currently effective as law, but are obsolete as standards, at least some publishers apparently see little reason to make them widely available.  Some standards are available only on paper because the sponsoring standards development organization (SDO) has not authorized electronic versions, and thus they are unavailable to persons with visual disabilities or for computer-aided analysis.  Becker Decl. ¶ 62, Ex. 96 (Fruchterman expert report).  Even when available, the standards can cost hundreds of dollars, plus shipping and handling.  *See* Plaintiffs Second Supplemental Statement of Material Facts ("Plf. SSSMF") ¶ 78.  And many older standards are not available for purchase. *See, e.g.*, *Getty Petroleum Mktg., Inc.*, 391 F.3d at 320-21, 330 (1st Cir. 2004) (court and parties unable to locate NFPA standard). | Objection.  This statement is PRO's argument and, in any event, would be irrelevant to the extent it relates to any standards other than the Works, and it contains inadmissible opinion testimony with respect to the characterizations that purchasing standards can be expensive and difficult.  The statement's discussion of access for individuals with visual disabilities is irrelevant, as the D.C. Circuit previously held that "the district court properly rejected some of PRO's arguments as to its transformative use—for instance, that PRO was converting the works into a format more accessible for the visually impaired or that it was producing a centralized database of all incorporated standards." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018).

There is no support for the statement that the standards at issue in this lawsuit are (1) expensive, (2) not available for purchase, (3) available only on paper, (4) currently effective as law, or (5) obsolete as standards.

Disputed to the extent that PRO implies that Plaintiffs' standards are unreasonably priced.  There has been "no outcry at all to date from the standards-consuming public about either a lack of access to standards or unreasonably-priced standards.  With the exception of Defendant, Plaintiffs have not received any complaints about lack of accessibility of their standards."  ECF No. 118-12 (Rubel Decl.) ¶ 4, Ex. 1 (Jarosz Report. ¶ 161).

Disputed to the extent it implies that any of the standards at issue are not reasonably |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | available.  Standards are only eligible to be incorporated by reference if they are reasonably available.  1 C.F.R. § 51.7.  None of the Works are available only on paper— all of the Works that have been incorporated by reference are available in a digital format in Plaintiffs' online reading rooms, and many are available for purchase in digital format. ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶¶ 77, 80, 85.  In addition, many of the Works are available in digital format from subscription services.  ECF No. 118-2 (Pls.' SMF) ¶ 160; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 78; O'Brien Decl. III ¶¶ 9-10.  Standards are also available through third-party subscription services that are fully text-searchable. O'Brien Decl. III ¶¶ 9-10.<br><br>PRO mischaracterizes *Getty Petroleum Marketing, Inc. v. Capital Terminal Co.*, 391 F.3d 312, 320 (1st Cir. 2004), which addresses whether Capital Terminal's request for judicial notice was wrongly refused where Capital Terminal failed to supply a certified copy of NFPA 30 (1987) and the court did not find a copy.  First, the case does not stand for the proposition that "many older standards are not available for purchase."  Second, NFPA 30 (1987) is available for purchase on NFPA's website. Supplemental Decl. of Jane Wise ("Wise Decl. II") ¶ 8, Ex. 180.<br><br>The availability of the 1987 version of this publication is also irrelevant because it is not one of the standards at issue.  Finally, this case is hearsay and is inadmissible to prove the truth of the matter asserted.<br><br>Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law.  PRO's |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | assertion that "the standards are currently effective as law" is unsupported by the record evidence and contradicted by PRO's own admission that it has posted standards that are not law: "when attempting to post the relevant law, Public Resource accidentally posted an edition of an ASTM standard that was not the precise edition listed in the C.F.R. incorporating language." ECF No. 203-1, Opp. 6 n.3.<br><br>Disputed that Plaintiffs' standards are not available to persons with visual disabilities. Plaintiffs will make electronic versions of any of the Works available to persons with visual disabilities.  ECF No. 155-1 (Pls.' Supp. SUMF) ¶¶ 8-12.<br><br>Disputed to the extent PRO intends to suggest that it provides meaningful access for persons with visual disabilities.  Public Resource's copies also are not meaningfully accessible to persons with visual disabilities. ECF No. 155-1 (Pls.' Supp. SMF ¶¶ 4-7).<br><br>NFPA has a commitment to make accommodations for persons with disabilities to access NFPA materials.  For each request by a visually impaired individual for access to an NFPA standard, NFPA has responded by providing that individual with a copy they can use at no charge.  ECF No. 155-6 (Dubay Decl.) ¶¶ 6-7.  NFPA is not aware of any other individuals who have requested and not received an accommodation.  *Id.* ¶ 6. |
| 32.     Third, one can search libraries for standards.  Contrary to the SDOs' suggestion, library availability is poor; libraries typically carry current standards but not earlier standards that still function as law, and library copies are typically only on paper.  *See, e.g., Getty* | Objection.  This statement is PRO's argument not based on any cited facts and, in any event, would be irrelevant to the extent it relates to any standards other than the Works. |

18

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| *Petroleum Mktg., Inc.*, 391 F.3d at 320-21, 330 (1st Cir. 2004). | There is no support for the statement that the standards at issue in the lawsuit are unavailable in libraries.<br><br>Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law. PRO's assertion that "standards still function as law" is unsupported by the record evidence and contradicted by PRO's own admission that it has posted standards that are not law: "when attempting to post the relevant law, Public Resource accidentally posted an edition of an ASTM standard that was not the precise edition listed in the C.F.R. incorporating language." ECF No. 203-1, Opp. 6 n.3.<br><br>Disputed to the extent it implies that any of the standards at issue are not reasonably available. Standards are only eligible to be incorporated by reference if they are reasonably available. 1 C.F.R. § 51.7. All of the Works that have been incorporated by reference are available in a digital format in Plaintiffs' online reading rooms, and many are available for purchase in digital format. ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶¶ 77, 80, 85. In addition, many of the Works are available in digital format from subscription services. ECF No. 118-2 (Pls.' SMF) ¶ 160; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 78; O'Brien Decl. III ¶¶ 9-10. Standards are also available through third-party subscription services. O'Brien Decl. III ¶¶ 9-10.<br><br>PRO mischaracterizes *Getty Petroleum Marketing, Inc. v. Capital Terminal Co.*, 391 F.3d 312, 320 (1st Cir. 2004), which addresses whether Capital Terminal's request for judicial notice was wrongly refused where Capital Terminal failed to |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | supply a certified copy of NFPA 30 (1987) and the court did not find a copy.  First, the case does not stand for the proposition that "many older standards are not available for purchase."  Second, NFPA 30 (1987) is available for purchase on NFPA's website. Wise Decl. II") ¶ 8, Ex. 180.<br><br>The availability of the 1987 version of this publication also is irrelevant because it is not one of the standards at issue.  Finally, this case is hearsay and is inadmissible to prove the truth of the matter asserted. |
| 33.     Finally, one can access some standards through online "reading rooms"—all but one of which standards publishers established only after Public Resource embarrassed them by highlighting the lack of public access.   But many standards that are part of the law are not available in any online reading room.  *See, e.g.*, Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.) at 20:19–22. | Objection.  This statement is PRO's argument not based on any cited facts and, in any event, would be irrelevant to the extent it relates to any standards other than the Works.<br><br>There is no support for the statement that standards publishers established reading rooms "only after Public Resource embarrassed them by highlighting the lack of public access."  The cited reference simply addresses ASHRAE's policy regarding which standards to post in its reading rooms—not its (or ASTM's or NFPA's) reasons for establishing the reading rooms. ASTM started planning its reading room in 2011 and NFPA and ASHRAE have provided free read-only access for over a decade.   ECF No. 155-1 (Pls.' Supp. SMF) ¶¶ 23-24.  The statement is irrelevant.  There is no support for the statement that many standards (and all of the Works that were actually incorporated by reference into the C.F.R.) are not available in any online reading room.<br><br>Moreover, the cited reference says nothing of whether many standards incorporated by reference are available on the reading rooms. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | The cited reference merely indicates that ASHRAE sometimes removes older standards from its reading room (but says nothing of whether those standards are incorporated by reference or are the same standards at issue here. Becker Decl. ¶ 11, Ex. 44 (Comstock Depo.) at 20:19–22. And ASHRAE has provided clear testimony that all standards at issue in this case are available on its reading room. Reiniche Decl. [Dkt No. 199-34] ¶ 3.<br><br>Disputed to the extent it implies that any of the standards at issue are not reasonably available. Standards are only eligible to be incorporated by reference if they are reasonably available. 1 C.F.R. § 51.7. All of the Works that have been incorporated by reference are available in a digital format in Plaintiffs' online reading rooms, and many are available for purchase in digital format. ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶¶ 77, 80, 85. In addition, many of the Works are available in digital format from subscription services. ECF No. 118-2 (Pls.' SMF) ¶ 160; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 78.<br><br>Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law. PRO's statement that standards "are part of the law" is unsupported by the record evidence contradicted by PRO's own admission that it has posted standards that are not law: "when attempting to post the relevant law, Public Resource accidentally posted an edition of an ASTM standard that was not the precise edition listed in the C.F.R. incorporating language." ECF No. 203-1, Opp. 6 n.3. |
| 34.    Plaintiffs provide "reading rooms" for some of the incorporated standards. Dkt. 118-11, ¶ 50; Dkt. 118-7, ¶ 60; Dkt. 118-8, ¶ 45; | Disputed.  PRO does not identify any Work that has been incorporated that is not available in one of Plaintiffs' reading rooms. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| Dkt. 188-10, ¶¶ 19–20; Dkt. 198-53, ¶ 3; Dkt. 198-52, ¶ 41 | NFPA makes all of its standards (and one previously edition available online for free read-only access) and both NFPA and ASHRAE make all of their standards that have been incorporated by reference into government regulations available online for free read-only viewing.  ECF No. 118-2 (Pls.' SMF) ¶¶ 100, 161; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 85.  ASTM makes all of the ASTM Works and all ASTM standards that it is aware have been incorporated by reference by the federal government available for read-only viewing in its reading room.  ECF No. 118-2 (Pls.' SMF) ¶ 63; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 85.<br><br>Plaintiffs object to PRO's reliance on ECF No. 188-10, as no such docket entry exists. |
| 35.  Plaintiffs' "reading rooms" do not permit software-based searching and analysis of the incorporated standards. Becker Decl. ¶ 62, Ex. 96 (Fruchterman Rep.) at 6. | Objection.  Inadmissible opinion testimony.  Mr. Fruchterman has been offered as an expert on accessibility of materials to people who are visually impaired.  He is not competent to testify about software-based searching and analysis.<br><br>Disputed that Plaintiffs' standards are not available to persons with visual disabilities.  Plaintiffs make accessible versions of any of the Works available to persons with visual disabilities.  ECF No. 155-1 (Pls.' Supp. SUMF) ¶¶ 8-12. |
| 36.  Plaintiffs online "Reading Rooms" do not allow people with print disabilities to use software based screen readers to access the legally mandated standards. Becker Decl. ¶ 62, Ex. 96 (Fruchterman Rep.) at 7–13. | Objection.  Relevance.  The D.C. Circuit previously held that "the district court properly rejected some of PRO's arguments as to its transformative use—for instance, that PRO was converting the works into a format more accessible for the visually impaired or that it was producing a centralized database of all incorporated standards." *Am. Soc'y for Testing &* |

22

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | *Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018).<br><br>Disputed.  To protect their copyrighted standards from exposure to mass copying, Plaintiffs have provided versions of their standards on their reading rooms that provide read-only access.  *See, e.g.*, ECF No. 204-51, Ex. 45 (Grove Depo.) at 110:8-23; ECF No. 204-47, Ex. 41 (Dubay Depo.) 77:21-78:4; ECF No. 204-50, Ex. 44 (Comstock Depo.) at 10:23-11:3.  There is no evidence that Plaintiffs placed any purposeful restriction on the use of screen readers by people with print disabilities on their reading rooms.  To the extent a screen reader requires the ability to do more than read from an image of the standard on the screen, it is undisputed that the screen reader will not be able to read the versions of Plaintiffs' standards on their reading rooms.<br><br>Disputed that Plaintiffs' standards are not available to persons with visual disabilities. Plaintiffs make accessible versions of any of the Works available to persons with visual disabilities.  ECF No. 155-1 (Pls.' Supp. SUMF) ¶¶ 8-12.<br><br>NFPA has a commitment to make accommodations for persons with disabilities to access NFPA materials.  For each request by a visually impaired individual for access to an NFPA standard, NFPA has responded by providing that individual with a copy they can use at no charge.  ECF No. 155-6 (Dubay Decl.) ¶¶ 6-7.  NFPA is not aware of any other individuals who have requested and not received an accommodation.  *Id*. ¶ 6. |
| 37.     People must register to access the reading rooms established by ASTM and NFPA.  The registration process requires a | Undisputed. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| visitor to provide ASTM and NFPA with their names and email address. ASTM also requires visitors to provide additional information, including the visitors address and phone number. Becker Decl., ¶ 12, Ex. 45(Grove Depo.) at 213:14–19; Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 79:4–7; Becker Decl., ¶ 9, Ex. 42 (Mullen Depo.) at 50:4–18; Dkt. 122-8, Ex. 132 (ASTM Reading Library Registration Screen, Page) at 1; Dkt. 122-8, Ex. 133 (ASTM Reading Library Registration Screen) at 2; Dkt. 122-8, Ex. 138 (NFPA Sign In Webpage). | |
| 38.    NFPA uses the information gathered from visitors to its online Reading Room to send marketing materials. Becker Decl., ¶ 9, Ex. 42(Mullen Depo.) at 51:17–52:2. | Objection.  Relevance. |
| 39.    The visitor to Plaintiffs' reading rooms will find the standard displayed in a small box on the visitor's screen, in text that is sometimes degraded, in a small font size that is difficult for many people to read. Magnification of the text makes the text appear blurry. In general, only a small part of each page of the standard is visible at once, and with greater magnification even a single line cannot be viewed without scrolling. Each page of each standard is stamped over the text with a warning that the material is copyrighted. Becker Decl., ¶ 12, Ex. 45(Grove Depo.) at 217:1–19; Dkt. 122-8, Ex. 140; Dkt. 122-9, Ex. 141; Dkt. 122-9, Ex. 142; Dkt. 122-9, Ex. 143; Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 219:18-221:05; Dkt. 122-8, Ex. 139 (ASHRAE Reading Room Screenshot); Dkt. 118-7. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ **Becker** Decl. ¶ 61, Ex. 95. ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ **Becker Decl.** ¶ 63, Ex. 97. | Objection.  This statement is PRO's argument. Disputed.  There is no support for the contentions that the text of the standards is sometimes degraded, the font size is difficult for many people to read, magnification of the text makes the text appear blurry, or only a small part of each page can be viewed without scrolling.  Not all Plaintiffs stamp each page of the text with a copyright notice.  Objection to the characterization of the ASTM documents based on the best evidence rule. Disputed to the extent it mischaracterizes the statements by ASTM, which speak for themselves and that are quoted out of context.  *See* ECF No. 122-8, Def. Ex. 140, ECF No. 122-9, Def. Ex. 141.  There is no evidence that the standards are displayed in a "small" box.  The only cited evidence of the size is a 5-by-7 pane. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 40.     A user of ASTM's reading room must click a box that states the user agrees to ASTM's end user license agreement before accessing the reading room. NFPA's reading room also contains terms of service. Dkt. 122-8 Ex. 35 (ASTM License Agreement Webpage); Dkt. 122-8 Ex. 135 (ASTM Reading Room Terms); Dkt. 122-8 Ex. 137 (NFPA Free Access Terms). | Undisputed. |
| 41.     ASHRAE posted some of its standards for public viewing in a format that restricted downloading. Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.) at 11:25–12:7. | Undisputed. |
| 42.     ASHRAE posted its standards for public viewing with the intent of increasing demand for the posted standards. Becker Decl., ¶ 11, Ex. 44(Comstock Depo.) at 11:25–12:7. | Undisputed. |
| 43.     ASHRAE removes older standards incorporated by reference from its reading room. Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.) at 20:19–22. | Disputed.  The cited reference says that ASHRAE sometimes takes older standards out of its reading rooms.  It does not say that ASHRAE removes standards that are still incorporated into current laws. *See* Becker Decl. ¶ 11, Ex. 44 (Comstock Depo.) at 20:19–22. |
| 44.     Plaintiffs do not allow people to print or download the standards on their reading rooms. Dkt. 122-8, Ex. 134 (ASTM Reading Room Disclaimer); Dkt. 198-52, ¶ 42. | Undisputed. |
| **III.    THE STANDARDS ARE DESIGNED TO BE FOLLOWED AS LAW** | |
| 45.     Plaintiffs monitor whether people follow the requirements of standards incorporated into law. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 30:1–37:25. | Disputed.  The cited deposition testimony does not describe the actions of Plaintiffs. The testimony describes NFPA's Mr. Bliss's previous "service as a government employee," not his actions on behalf of NFPA. *See, e.g.*, ECF No. 122-1, Def. Ex. 4 (Bliss Depo.) 32:20-33:10.  The evidence is to the contrary.  NFPA standards state |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | expressly "The NFPA has no power nor does it undertake, to police or enforce compliance." *See, e.g.*, Dkt. 199-12 (sealed), Supp. Pauley Decl. Ex. A (NFPA-PR0013033).<br><br>There is no evidence that supports this statement in connection with any Plaintiff, and PRO does not even cite any statement that relates to ASHRAE or ASTM. |
| 46.    Plaintiffs enforce whether people follow the requirements of standards incorporated into law. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 30:1–37:25. | Objection.  The phrase "Plaintiffs enforce" is vague and ambiguous.<br><br>Disputed.  The testimony describes NFPA's Mr. Bliss's previous "service as a government employee," not his actions on behalf of NFPA.  *See, e.g.*, ECF No. 122-1, Def. Ex. 4 (Bliss Depo.) 32:20-33:10.  The evidence is to the contrary.  NFPA standards state expressly "The NFPA has no power nor does it undertake, to police or enforce compliance." *See, e.g.*, Dkt. 199-12 (sealed), Supp. Pauley Decl. Ex. A (NFPA-PR0013033).<br><br>There is no evidence that supports this statement in connection with any Plaintiff, and PRO does not even cite any statement that relates to ASHRAE or ASTM. |
| 47.    The standards at issue are dictated by external factors, including international principles and the desire to satisfy regulations and laws. Dkt. 122-7, Ex. 106 (Public Policy & Corporate Outreach Presentation, Sep. 2015); Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 94:24-95:01. | Disputed.  The proposition that Plaintiffs' standards are dictated by external factors, including international principles and the desire to satisfy laws and regulations, is not supported by the cited testimony or document.<br><br>In response the question "What regulatory purposes do you anticipate government agencies have that causes them to examine industry standards?" the witness answered, "I don't have an answer for that.  I think you |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | could assume that government participants in the standardization process bring knowledge of regulatory agendas and regulatory needs of agencies to the voluntary consensus community of which ASTM is one member amongst others." ECF No. 204-51, Ex. 45 (Grove Depo.) at 94:15-95:3. Similarly, the cited document is a PowerPoint presentation that contains no statements about any factors that dictate the content of Plaintiffs' standards.<br><br>There is no evidence that supports this statement in connection with any Plaintiff, and PRO does not even cite any statement that relates to NFPA or ASHRAE. |
| 48.     NFPA's Style Manual for the NEC, for example, specifies that because the NEC is "intended to be suitable for adoption as a regulatory document, it is important that it contain clearly stated mandatory requirements in the code text" so as to "encourage uniform adoption . . . without alterations." Additionally, ASHRAE circulates a detailed Manual designed to ensure that technical committees draft standards that will be easily adopted as regulations. Dkt. 122-8, Ex. 122 (Style Manual for the NEC) at 4; Dkt. 122-7, Ex. 103 (ASHRAE Guide to Writing Standards in Code Intended Language). | Objection as to completeness.  The NEC Style Manual includes substantial other general and specific guidelines.  *E.g.*, Dkt. 122-8, Ex. 122 at p. 8 (describing annexes inclusion of "nonmandatory material"); *id.* at p. 13 (describing process for drafting nonmandatory permissive rules and informational notes).<br><br>Disputed as to ASTM.  None of the cited evidence relates to ASTM or its standards, yet PRO implies that this statement applies universally to all Plaintiffs. |

## IV.   PLAINTIFFS LOBBY TO HAVE THEIR STANDARDS MADE LAW

| | |
|---|---|
| 49.     ASTM seeks to get Congress to incorporate the most recent version of any particular standard because incorporation "freezes … that reference in statute for years to come." Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 260:25–261:15. | Disputed.  ASTM does not lobby for incorporation of its standards by reference. However, if a government is going to incorporate an ASTM standard by reference, ASTM believes that it should use the most up-to-date standard rather than outdated materials.  ECF No. 204-51, Ex. 45 (Grove Depo.) at 124:10–125:05. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 50.　　The adoption or incorporation of NFPA codes and standards into law may benefit NFPA financially because it encourages industries to purchase the standard. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 118:23–119:1; Becker Decl., ¶ 5, Ex. 38 (Jarosz Depo.) at 209:16–210:7. | Disputed.  The cited references do not indicate that incorporation encourages industries to purchase standards.  In the deposition of Mr. Bliss, he offered his opinion that individuals might purchase a standard that had been incorporated; he did not identify any evidence that supports PRO's speculation.  In the cited portion of Mr. Jarosz's deposition, he states that incorporation allows Plaintiffs to serve the industry; that testimony does not say that incorporation encourages industries to purchase the standards.  <br><br>Disputed as incomplete.  NFPA has not identified any direct correlation between incorporation by reference and sales. ECF No. 122-2, Def. Ex. 11 (Mullen Depo.) 95:3-25. |
| 51.　　ASHRAE has a Government Affairs office in Washington D.C. Dkt. 122-4, , Ex. 52. | It is undisputed that ASHRAE has an office in Washington DC.  Some of the activities that office takes could be characterized as "Government Affairs." |
| 52.　　ASHRAE's Government Affairs office has encouraged members of congress and other policy makers to incorporate ASHRAE standards into law. Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 136:11–21; 138:24–140:10; 210:19–211:09. | Disputed. ASHRAE does not dispute that it offers technical assistance to members of congress when requested.  However, Defendant overstates the evidence it cites.  Ms. Reiniche's actual testimony reflects that ASHRAE staff or volunteers would meet with agencies "when they were requesting that type of thing."  The cited testimony also concerns ASHRAE's involvement in a "High-Performance Building Congressional Caucus Coalition" that may meet with Congress.  Finally, the cited testimony refers specifically to ASHRAE Standard 161-2007, which is not at issue in this case.  <br><br>Objection to the relevance of the cited testimony to the extent that it refers to |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | ASHRAE standards not at issue in this litigation (Fed. R. Evid. 402). |
| 53.    ASHRAE started a grassroots program to advocate for adoption of building codes into law, including the standard known as ASHRAE 90.1. Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 144:06–145:23. | Objection to Relevance (Fed. R. Evid. 402). Defendant overstates the testimony, which actually reflects that volunteer members of ASHRAE chapters may speak to local government officials "when we are made aware of references" to standards.  In other words, this grassroots campaign does not necessarily involve adoption of standards but could be about a number of issues, and engagement appears to occur once the topic of incorporation by reference has already arisen independent of ASHRAE.  ECF No. 204-49, Ex. 43 (Reiniche Depo.) at 144:06–145:23. |
| 54.    ASHRAE refers to the citation of ASHRAE 90.1 in the Energy Policy Act ("EPAct") as ASHRAE's "EPAct advantage," because ASHRAE 90.1 is referenced over other energy efficiency commercial building codes. Dkt. 122-4, Ex. 50; Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 127:13–127:18, 128:07–130:21. | ASHRAE does not dispute that certain ASHRAE documents have referenced an "EPAct advantage."  However, EPAct does not require states to adopt Standard 90.1; instead it requires that their standards be "no less stringent" than 90.1 (or no less stringent than a building code from a competing SDO, the International Code Council, depending on building type).  ECF No. 204-49, Ex. 43 (Reiniche Depo.) at 31:6-20; 150:14-151:12. |
| 55.    ASHRAE has repeatedly entered into a "Memorandum of Understanding" with the Department of Energy (DOE) that states that both organizations are "committed to working together toward . . . [c]ooperating in promotion of ANSI/ASHRAE standards adoption in building codes."  Dkt. 122-4, Ex. 49; Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 110:20–111:16; 113:13–114:01. | Objection to Relevance (Fed. R. Evid. 402) ASHRAE admits it has entered a memorandum of understanding with the DOE. However, it disputes that the evidence regarding "adoption into building codes" is relevant.  As Ms. Reniche explained in the testimony that Defendant cites, this "adoption" most likely pertained to 90.1 serving as an alternate form of compliance to an International Code Council code (not direct incorporation into federal law).  ECF |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | No. 204-49, Ex. 43 (Reiniche Depo.) at 111:4-11; 113:13-114:1. |
| 56.    ASTM makes governments aware of ASTM standards, and takes pride in the incorporation by reference of its standards. Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 235:02–236:02. | Disputed.  Defendant's characterization of the testimony is misleading.  Mr. Grove testified: "As a matter of policy, we make organizations – sorry – governments aware of our standards and point out and connection with agency missions.  But in the end, we respect that agencies should be the ones that determine whether or not our standards are incorporated or not."  ECF No. 204-51, Ex. 45 (Grove Depo.) at 235:5-10.  Mr. Grove also testified that he did not believe ASTM would have an official position as to whether it is pleased when governments incorporate its standards by reference.  ECF No. 204-51, Ex. 45 (Grove Depo.) at 236:14-25. |
| 57.    ASTM reaches out to congressional staffers and government agencies to suggest the use of particular editions of standards and particular language in legislation. Dkt. 122-3, Ex. 24; Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 124:10–125:05; 258:16–261:23; 263:05–263:09. | Disputed.  The cited testimony and exhibit demonstrate that ASTM encourages government agencies who plan to reference an ASTM standard to reference the most up-to-date version of that standard.  ASTM does not lobby for the incorporation by reference of its standards or for the inclusion of any particular language in legislation.  ECF No. 118-2 (Pls.' SMF) ¶ 56. |
| 58.    ASTM participated in an "Incorporation by Reference Public Workshop" with the U.S. Department of Transportation on July 13, 2012. Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 270:7–19. | Objection.  Relevance.  Undisputed. |
| 59.    ASTM has never requested that Congress or a federal agency not incorporate an ASTM standard by reference into law.  Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 261:25–262:08. | Objection. Relevance.  Disputed to the extent it implies that Congress or any federal agency has ever sought permission from ASTM before |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | incorporating by reference an ASTM standard. |
| 60.   On December 3, 2015, ASTM co-sponsored an event in Washington D.C. entitled "What Do Airplanes, Robots, Toys, Flat Screen TVs Amusement Parks & 3D Printing Have in Common?" The promotional literature for the event states that the event "will highlight the importance of government participation in and the reliance on voluntary standards and conformance." Dkt. 122-7, Ex. 104 ("Capitol Hill Event to Feature Policy and Business Leader Insights on Voluntary Standards and Conformance"). | Objection. Relevance. Objection to the extent that PRO implies that a statement on American National Standard Institute's website about the event is attributed to ASTM.  Objection to the extent it mischaracterizes the document, which states "The event —on December 4, 2015, from 12:00-1:30 p.m. EST—will feature discussions between policy and business leaders who will highlight the importance of government participation in and the reliance on voluntary standards and conformance." Plaintiffs further object to the statement as hearsay.<br><br>Disputed as to characterization of the supporting exhibit as "promotional literature."<br><br>Disputed to the extent it falsely suggests that ASTM is referencing anything other than the importance of having government representation in the standards development process, as well as the input of industry, public interest groups and others. ASTM does not lobby for the incorporation by reference of its standards or for the inclusion of any particular language in legislation. ECF No. 118-2 (Pls.' SMF) ¶ 56. |
| 61.   NFPA engages in activities to promote the adoption and incorporation by reference of NFPA codes and standards into law.   Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 46:19–48:20; 62:20–63:08; 82:09–18. | Disputed to the extent that PRO suggests that NFPA engages in activities with the sole purpose of encouraging the adoption of its standards—as opposed to engaging in activities with another primary purpose (e.g., education of the public or increasing public safety), that have the secondary effect of encouraging jurisdictions to adopt its standards. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed to the extent this suggests that NFPA's purpose in developing standards is for them to be incorporated by reference. NFPA does not develop any standards solely for that purpose.  ECF No. 118-2 (Pls.' SMF) ¶¶ 90-91.<br><br>Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law. |
| 62.      NFPA is not aware of any situation where it would discourage the adoption of a standard into law. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 48:21–49:04. | Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law. |
| 63.      NFPA is "advocating for fire safety" through the adoption and use of its standards by governments and industries. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 82:13–25. | Objection.  The statement is irrelevant to the extent that it relates to ways that industry and government use standards other than incorporation by reference.<br><br>Disputed.  Defendant mischaracterizes the testimony, which states, "I guess it depends on the, how you would define 'advocacy.' We're advocating for fire safety, and we believe that the adoption and use of standards promotes fire safety."  Def. Ex. 4 (Bliss Depo.) 82:13-16. |
| 64.      According to a statement by the Modification and Replacement Parts Association: "The burden of paying high costs simply to know the requirements of regulations may have the effect of driving small businesses and competitors out of the market, or worse endanger the safety of the flying public by making adherence to regulations more difficult due to fees . . . ." Dkt. 122-7, Ex. 105 (ABA Section of Administrative Law and Regulatory Practice Resolution, submitted November 17, 2015). | Objection.  The cited evidence is hearsay.  It is also irrelevant, especially since there is no evidence to suggest this statement relates to any standard at issue in this case.<br><br>Disputed.  There is no admissible evidence supporting this statement. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| **V.    PUBLIC RESOURCE AND CARL MALAMUD** | |
| **A.    Carl Malamud's Record of Public Service** | |
| 65.    Carl Malamud is the President and Founder of Public Resource.  Since the 1980's, Mr. Malamud has dedicated his career to matters of public interest with a focus on Internet connectivity and public access.   Mr. Malamud's career began as a Senior Systems Analyst at Indiana University.     After completing his doctoral coursework with a focus on antitrust and regulation at the Indiana University School of Business, Mr. Malamud left the program to work on early relational database programs and computer networking. Declaration of Carl Malamud in Support of Public Resource's Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Malamud Decl") ¶ 3. In 1984, Mr. Malamud assisted the Board of Governors of the Federal Reserve System in using computer and network technology to improve key indicators such as forecasts of the money    supply.    Malamud    Decl.    ¶ 4. Throughout the rest of the 1980's Mr. Malamud continued his public service as a computer consultant to the Argonne and Lawrence Livermore National Laboratories and the Department of Defense as well as teaching advanced seminars in relational databases and computer networks. Malamud Decl. ¶ 5. In 1993, Mr. Malamud founded the first radio station on the Internet, which he ran as a 501(c)(3) nonprofit public station. Malamud Decl. ¶ 6. | Objection. Relevance.  Mr. Malamud's prior work experience is irrelevant.  Plaintiffs object that the statement that Mr. Malamud founded the first radio station on the internet lacks foundation.  Objection to the extent the statement is not supported by the declaration. |
| 66.    In January 1994, Mr. Malamud began to make government and legal materials more widely available to the public.  Using a National Science Foundation grant, he purchased all electronic filings corporations submitted to the | Objection.  Relevance.  The last sentence is unsupported to the extent that it relies upon inadmissible hearsay to prove the truth of the matter asserted.  Mr. Malamud's prior work experience is also irrelevant. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| Securities and Exchange Commission (SEC) and created the Electronic Data Gathering and Retrieval (EDGAR) service, which he made available for free on the Internet. Malamud Decl. ¶ 7. In August 1995, he donated computers and software to the SEC so the Commission could take over this service. *Id.* The SEC continues to operate this popular service, and reports that the system processes about 3,000 filings per day and 3,000 terabytes of data annually. *See* "About EDGAR," https://www.sec.gov/edgar/aboutedgar.htm. | |
| 67.    Also in 1994, Mr. Malamud obtained the first "new media" credentials from the Radio-TV Gallery of the U.S. House of Representatives and started live-streaming all proceedings from the floors of the House and Senate. Malamud Decl. ¶ 9. He later assisted the Joint Economic Committee in hosting the first congressional hearing on the Internet. Malamud Decl. ¶ 10. That year, Mr. Malamud also purchased feeds of all U.S. patents and made them available for free on the Internet, and later convinced the U.S. Patent and Trademark Office to provide this service to the public itself. Malamud Decl. ¶ 12. | Objection. Relevance. Mr. Malamud's prior work experience is irrelevant. Objection to the New York Times Article, ECF No. 204-8, Def. Ex. 2, as hearsay to the extent PRO relies on it for the truth of the matter asserted therein. |
| 68.    Throughout the 2000s, Mr. Malamud continued his mission of making government information more accessible to the public.  In 2005 and 2006, Mr. Malamud was the Chief Technology Officer for the non-profit education organization Center for American Progress. While there, he focused on developing a plan to make all congressional hearing available to the public as high-resolution video. Malamud Decl. ¶ 13. And, in 2007, Mr. Malamud founded Public Resource.  Through Public Resource, Mr. Malamud has spearheaded successful efforts to make government records and | Objection. Mr. Malamud's prior work experience is irrelevant.

The statement is further disputed to the extent it implies that Mr. Malamud's efforts have not violated copyright law. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| information publicly accessible. Malamud Decl. ¶ 14. | |
| 69.    In January 2009, President Barack Obama's transition effort recruited Mr. Malamud to develop plans and assist with transforming the Federal Register.    The resulting program won the first-ever Walter Gellhorn Award for innovation in government services by the Administrative Conference of the United States. The Archivist of the United States, Hon. David Ferriero, recognized Mr. Malamud's efforts in a letter dated April 2, 2019, stating: "Our Founding Fathers believed that an informed and involved citizenry was key to our democracy and Public Resource helps us make[] this true." Malamud Decl. ¶ 22. | Objection. This statement is unsupported to the extent that it relies upon inadmissible hearsay to prove the truth of the matter asserted. Mr. Malamud's prior work experience is also irrelevant. Plaintiffs further object to the last sentence as incomplete to the extent it selectively quotes from a letter.<br><br>Plaintiffs object to the extent PRO implies that the federal government approves of PRO's posting any of the Works. Numerous federal agencies have explicitly taken the position that incorporation by reference of materials into regulations does not destroy the copyright in those materials.  ECF No. 118-2 (Pls.' SMF) ¶ 177. |
| 70.    Mr. Malamud has been recognized by numerous government officials for his efforts to make government information freely accessible on the Internet.  For example, Hon. Nancy Pelosi, Speaker of the House of Representatives, wrote to Mr. Malamud on April 17, 2008, stating: "I thank you for your work to increase public discourse on technology, public domain, and transparency issues and look forward to continuing to work with you." Malamud Decl. ¶ 13. Hon. John Boehner, then Speaker of the House of Representatives, together with Representative Darrell Issa, Chair of the House Committee on Oversight and Government Reform, wrote to Mr. Malamud on January 5, 2011, stating: "We're writing today to thank you for your nearly two decades of work to increase the availability of public data, and more recently your efforts to publish proceedings of the House Oversight and Government Reform Committee in their entirety," and later recognized Public | Objection.  This statement is unsupported to the extent that it relies upon inadmissible hearsay to prove the truth of the matter asserted.  Mr. Malamud's prior work experience is also irrelevant.  Plaintiffs further object to selective quotes from the attached letters as incomplete.  Plaintiffs object to PRO's reference to receiving commendations from "many others" as vague and ambiguous.  Plaintiffs further object to PRO's reliance on PRO's summaries of purported commendations under FRE 1002, to the extent that PRO fails to attach a writing, recording, or document to the declaration.<br><br>Plaintiffs object to the extent PRO implies that the federal government approves of PRO's posting of the Works. Numerous federal agencies have explicitly taken the position that incorporation by reference of materials into regulations does not destroy |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| Resource from the floor of the House. Malamud Decl. ¶ 15. Mr. Malamud has also received commendations from Hon. Lee H. Rosenthal, Chair of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, and many others. Malamud Decl. ¶ 18. | the copyright in those materials. ECF No. 118-2 (Pls.' SMF) ¶ 177. |
| 71. In addition to recognition from government officials, organizations have routinely recognized Mr. Malamud's efforts to make government information more accessible, including awards from Harvard University, the Society of Professional Journalists, the First Amendment Coalition, and the American Association of Law Libraries. Malamud Decl. ¶ 23. | Objection. Relevance. Plaintiffs further object to PRO's reliance on PRO's summaries of purported awards under FRE 1002 to the extent that PRO fails to attach any writing, recording, or document to the declaration. Plaintiffs object to PRO's characterizations of specific awards received "routinely recognize[ing] Malamud's efforts." As Plaintiffs noted in their opening brief, the Harvard Law Review disputed Mr. Malamud's rights to use the BlueBook without authorization. *See* Dkt. 200 n. 3. |

**B.    Public Resource's Mission**

| | |
|---|---|
| 72. Public Resource is a non-profit charitable organization that provides online access to many kinds of government materials, from judicial opinions to video recordings of congressional hearings. Malamud Decl. ¶ 1. As part of this mission, Public Resource operates a website providing public access to the law, including statutes, judicial opinions, and public safety and other standards that federal and state governments have incorporated into law by reference. Dkt. 121-5. Public Resource also contributes its materials to the Internet Archive. *Id.* Public Resource aims to create a public collection of *government edicts.* Malamud Decl. ¶ 38; *see generally* http://www.public.resource.org/. Public Resource does not limit, or charge for, access to its platform. Dkt. 121-5 ¶ 24. It does not display, or derive any revenue from, | Objection as to relevance of Mr. Malamud's or Public Resource's supposed subjective intent or "aims." As explained in Plaintiffs' briefing, fair use turns on how a work appears to a reasonable observer, not on the infringer's subjective intent. Reply at Part I.A.1.b.

Objection. "Government edicts" is vague and ambiguous and requires a legal conclusion.

Disputed to the extent it suggests that Plaintiffs' standards are themselves law or government-authored materials. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| advertising.  It relies entirely on contributions and grants.  Dkt. 121-5 ¶ 30. | Disputed to the extent it suggests that PRO posts Plaintiffs' standards on PRO's website. |
| 73.  Public Resource promotes public discourse by making laws and regulations, including those incorporated by reference, more accessible.  For example, by reformatting documents, Public Resource allows persons with visual disabilities to enlarge the text or use electronic text-to-speech readers to hear the text.  Dkt. 121-5 ¶ 26.  Similarly, Public Resource often translates images into scalable vector graphics for better enlargement.  Malamud Decl. ¶ 27..  It uses optical character recognition and often painstakingly retypes documents into Hypertext Markup Language ("HTML") and converts formulas to Mathematics Markup Language ("MML").  *Id.* This makes documents newly word-searchable and allows researchers to analyze them at large scale with techniques such as machine learning. *Id.* | Objection.  This statement is irrelevant.  The D.C. Circuit has already rejected Defendant's argument that converting works into a format more accessible for the visually impaired is a transformative use.  *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc*., 896 F.3d 437, 450 (D.C. Cir. 2018) ("[T]he district court properly rejected some of PRO's arguments as to its transformative use—for instance, that PRO was converting the works into a format more accessible for the visually impaired or that it was producing a centralized database of all incorporated standards."). <br><br> Disputed to the extent PRO claims that it "promotes public discourse."  There is no evidentiary support for this claim or any claim as to how persons use PRO's copies of the Works. <br><br> Disputed.  PRO cites no evidence to support its assertion that its postings of the Works have been used by researchers in any way, including to analyze them at large scale with techniques such as machine learning. <br><br> Disputed that PRO "painstakingly retypes documents" to the extent that it suggests that it accurately or carefully retypes documents.  PRO's copies of documents, including of the Works, contain numerous mistakes.  ECF No. 118-2 (Pls.' SMF) ¶¶ 214-19; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶¶ 13-20.  PRO also hired Point.B Studio, which used children from a mentoring program whose target audience was 7- to 14-year-olds to convert formulas to MathML and drawings to SVG.  ECF No. 118-2 (Pls.' SMF) ¶ 199. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed.  PRO's assertion that its copying made documents "newly word-searchable" is unsupported by the record evidence.  Plaintiffs' publish standards in a variety of formats, including searchable PDFs, HTML, and XML.  *See* ECF No. 118-2 (Pls.' SMF) ¶¶ 57, 99, 157.  Standards are also available through third-party subscription services that are fully text-searchable.  O'Brien Decl. III ¶¶ 9-10.<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law or government-authored materials.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. |
| 74.     Public Resource endeavors to post on its website only standards that have become a federal or state law or regulation through incorporation by reference. Malamud Decl. ¶ 38. | Objection as to relevance of Mr. Malamud's or Public Resource's supposed subjective intent.<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law or government-authored materials.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. |
| **C.     Public Resource's Litigation and Other Disputes** | |
| 75.     In January 2013, the Sheet Metal and Air Conditioning Contractors National Association (SMACNA) threatened Public Resource with litigation for posting the "HVAC Air Duct Leakage Test Manual," which was incorporated by reference into 10 CFR § | Objection. Relevance. PRO's characterization of being threatened with litigation by an entity not a party to this action regarding PRO's posting of materials not authored by Plaintiffs and not at issue in this case is irrelevant.  Plaintiffs also object to the statement as hearsay. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 434.403 as well as incorporated into state regulations.  Malamud Decl., ¶ 33. | |
| 76.     Public Resource sued for declaratory relief in the U.S. District Court for the Northern District of California, Case 3:13-cv-00815.  Malamud Decl., ¶ 34.   On July 9, 2013 SMACNA agreed to a stipulated judgment in which it agreed no longer to threaten Public Resource or other parties for the posting of the four standards explicitly incorporated into the CFR, not to assert copyright in those documents, and to pay Public Resource a token one dollar. *See* Malamud Decl., ¶ 34, Ex. 27. | Objection.  Relevance.  PRO's discussion of litigation involving an entity not a party to this action regarding PRO's posting of materials not authored by Plaintiffs and not at issue in this case is irrelevant.  Plaintiffs also object to the statement as hearsay. |
| 77.     When the State of Oregon objected to Public Resource's posting of the Oregon Revised Statutes, Carl Malamud spoke to the Legislative Counsel Committee, a joint committee of the Oregon Legislature chaired by the Speaker of the House and the Senate President.   After hearing him and other witnesses, including the Legislative Counsel, the committee voted to abandon assertions of copyright over the Oregon Revised Statutes. *See* Malamud Decl., ¶ 24, Ex. 23. | Objection.  Relevance.  PRO's discussion of negotiations involving an entity not a party to this action regarding PRO's posting of materials not authored by Plaintiffs and not at issue in this case is irrelevant.  Plaintiffs also object to the statement as hearsay. |
| 78.     Similarly,  in  2012,  after  Public Resource posted the official Code of the District of Columbia, the General Counsel of the District of Columbia studied the situation and decided to produce a better web site for public access to the laws of the District of Columbia. The software is maintained by the non-profit Open  Law  Library  and  available  at https://code.dccouncil.us/. *See* Malamud Decl., ¶ 25. | Objection.  Relevance.  PRO's discussion of activities of an entity not a party to this action related to PRO's posting of materials not authored by Plaintiffs and not at issue in this case is irrelevant.<br><br>Hearsay and lack of foundation/personal knowledge as to what the General Counsel of the District of Columbia studied or what software is maintained by Open Law Library. |
| 79.     The State of Georgia sued Public Resource for posting online the Official Code of Georgia Annotated.  Malamud Decl., ¶ 26. That case concerns Georgia's only official law, | Objection.  Relevance.  PRO's discussion of litigation involving an entity not a party to this action related to PRO's posting of |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| which the state publishes as the "Official Code of Georgia Annotated" with annotations that the state has designated as "official." The Eleventh Circuit held that Public Resource's actions were lawful: it ruled the entire Code, with annotations, is a government edict not subject to copyright. *See Code Revision Commission v. Public.Resource.Org*, 906 F.3d 1229, 1233, 1244 (11th Cir. 2018). That case is now before the U.S. Supreme Court. *See State of Georgia v. Public.Resource.Org, Inc.*, U.S. Supreme Court Docket 18-1150. Malamud Decl., ¶ 26. | materials not authored by Plaintiffs and not at issue in this case is irrelevant.<br><br>Improper opinion testimony regarding the supposed holding. The Eleventh Circuit's ruling regarding Defendant's posting of the Official Code of Georgia Annotated (law authored by the Georgia Legislature), as opposed to standards authored by private entities and allegedly incorporated by reference into law, is irrelevant. *See* ECF No. 195 at 1 (opposing a stay in this case on the basis that "*Georgia v. Public.Resource.Org* is unlikely to affect significantly the questions immediately before this Court, namely fair use and copyright ownership determinations based on the facts of this case.").<br><br>PRO's description of the Eleventh Circuit's holding is a legal conclusion and not a factual statement. |
| 80.     Mr. Malamud and Public Resource posted to the Internet Archive the version of the 2002 version of the National Electrical Safety Code (NESC) that the Indiana Supreme Court reviewed in *Bellwether Properties, LLC, v. Duke Energy Indiana, Inc.*, 87 N.E.3d 462, 468–69 (Ind. 2017), which is located at https://ia600704.us.archive.org/16/items/gov.law.ieee.c2.2002/ieee.c2.2002.pdf. Malamud Decl. ¶ 42. The metadata page for the 2002 version of the NESC indicates that it was "Uploaded by Public.Resource.Org," *see* https://archive.org/details/gov.law.ieee.c2.2002 and https://ia600704.us.archive.org/16/items/gov.law.ieee.c2.2002/ieee.c2.2002.pdf_meta.txt. *Id.* | Objection. Hearsay and lack of foundation/personal knowledge as to whether the Indiana Supreme Court reviewed PRO's website. Defendant's posting of the NESC, a code not authored by Plaintiffs and not at issue in this case, purportedly relied upon by the Indiana Supreme Court, is irrelevant. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| **VI. PUBLIC RESOURCE'S POSTING OF STANDARDS AT ISSUE** | |
| 81. Public Resource has posted the incorporated standards at issue online. Dkt. 121-5 ¶ 15–19. | Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. Disputed to the extent it suggests that PRO's postings accurately and completely reproduce Plaintiffs' standards without any errors. <br><br> Plaintiffs do not dispute that PRO reproduced and displayed versions of the Works, although those versions introduced errors not present in the authentic Works. |
| 82. A "reapproval" of an ASTM standard means that an older standard is re-evaluated and republished without any changes to its content. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 151:01–152:02. | Disputed. Defendant mischaracterizes the testimony, which states that when an ASTM standard is reapproved, there is "nothing technically significant" that differs from the previous version. ECF No. 204-46, Becker Decl. ¶ 7, Ex. 40 (Smith Depo.) at 151:01–152:02. Standards that have been reapproved without a technically significant change are indicated by the year of last reapproval in parentheses as part of the designation number (*e.g.*, C5-79 (1997) indicates that C5 was reapproved in 1997). ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 35. |
| 83. As a public officer (but not as an NFPA employee), NFPA Vice President Donald Bliss has experienced confusion as to which version or edition of the code is in force in a jurisdiction because NFPA produces a number of different editions. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 215:13–23. | Disputed. Mr. Bliss testified that, during his time as a public officer, he had encountered other professionals who had confusion over which version of a code was in force. He neither testified that he experienced any such confusion himself, nor that any confusion was over which version of a standard developed by *NFPA*—or ASTM or ASHRAE—had been incorporated. <br><br> Disputed to the extent it suggests that Plaintiffs' standards are themselves "in |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
|  | force" or are law, which is a legal conclusion. |
| 84.     Each  standard  at  issue  on  Public Resource's  websites  was  incorporated  by reference into law. Dkt. 121-5 ¶ 23; Pls. Mem. 9.  A small minority of the ASTM standards that Public Resource posted were not the precise edition that is mentioned in the C.F.R.  Often this is because Public Resource posted an identical reissue of the standard where it could not obtain the precise edition that was cited. But in several instances, the editions Public Resource posted may have minor editorial differences, or rarely a substantive difference. For a complete listing of the standards at issue, citations to the incorporation, and excerpts of the  incorporating  language,  *see*  the  IBR Reference Tables at Becker Decl. ¶¶ 56-58, Exs. 89-91. | Objection.  The statement is unsupported by the cited evidence. Plaintiffs also object to PRO's misleading reliance on Pls.' Mem. at 9 as evidence, to the extent it relies on Plaintiffs' quoting of PRO's own self-serving and unsupported response to PRO's response to interrogatories.  Plaintiffs likewise object to Dkt. 121-5 ¶ 23 (Malamud Decl.), which does not support the statement that each of the 217 standards at issue in this lawsuit has been incorporated by reference, and merely states that "73 of the documents on the Public Resource web site" that Malamud posted in 2012 appeared in the Standards Incorporated by Reference ("SIBR") database.  That is not sufficient to establish an IBR. To the extent PRO relies on Malamud's testimony for the proposition that standards incorporated by reference constitutes the law, Plaintiffs object that this is improper expert testimony by a lay witness; Malamud's opinions on this issue are irrelevant. Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law. Disputed to the extent that PRO asserts that "Each standard that Public Resource posts is incorporated into law *in its entirety*" or in many cases at all.  This is a legal conclusion and is unsupported by the undisputed record evidence.  PRO admits that "when attempting to post the relevant law, Public Resource accidentally posted an edition of an ASTM standard that was not the precise edition listed in the C.F.R. incorporating |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
|  | language."  ECF No. 203-1, Opp. 6 n.3. PRO ignores numerous examples where it has incorporated the wrong version of an ASTM standard or where the relevant regulation only incorporates a portion of ASTM's standards.  *See* ECF No. 155-3, Pls.' Response to PRO Disputed Facts ¶¶ 36-43.<br><br>Disputed to the extent PRO implies that such errors are immaterial.<br><br>Plaintiffs objects to Defendant's Exhibits 89-91 as irrelevant to the extent that they address ASTM Standards that are not the subject of this motion and legal analyses (not facts).<br><br>PRO relies on its chart of citations to the incorporation, and excerpts of the incorporating language, for the proposition that some version of the C.F.R. previously incorporated at least a similar version of the Works that PRO reproduced and displayed on its website.  However, PRO's Exhibits 89-91 fail to support PRO's statement of fact.  *See* Wise Decl. II, Exs. 175, 176, 186 (Responsive Charts).<br><br>With respect to more than 20% of ASTM Works, PRO identified a citation to the C.F.R. that was not promulgated until years after PRO posted the standards.  This means that (1) PRO did not rely on those incorporations when it posted the standards; and (2) at a minimum, PRO has no defense for its infringement from the time it posted the standards until the IBR it identifies (and even then, for the reasons Plaintiffs' explain, PRO's wholesale copying is not fair use). Wise Decl. II ¶ 4, Ex. 176. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | • PRO Ex. 90 at 40, PRO reproduced and displayed D1298-99, PRO asserts that D1298-99 (2005) was incorporated by 40 C.F.R. § 600.011 (**2013**); |
| | • PRO Ex. 90 at 42, PRO asserts D1335-67 (1972) was incorporated by 24 C.F.R. § 200.942 (**2015**); |
| | • PRO Ex. 90 at 43, PRO reproduced and displayed D1518-85 (1998)e1, PRO asserts *D1518-85 (1990)* was incorporated by 46 C.F.R. § 160.174-3 (**2014**); |
| | • PRO Ex. 90 at 44, PRO asserts D1535-89 was incorporated by 7 C.F.R. § 1755.910 (**2014**); |
| | • PRO Ex. 90 at 48, PRO asserts that D1945-96 was incorporated by 41 C.F.R. § 60.17 (**2019**); |
| | • PRO Ex. 90 at 50, PRO asserts that D2015-96 was incorporated by 40 C.F.R. § 60.17 (**2015**); |
| | • PRO Ex. 90 at 51, PRO asserts that D2216-98 was incorporated by 40 C.F.R. § 258.41 (**2014**); |
| | • PRO Ex. 90 at 62, PRO asserts that D3236-88 (1999) was incorporated by 21 C.F.R. § 177.1520 (**2013**); |
| | • PRO Ex. 90 at 64, PRO asserts that D3371-95 was incorporated by 40 C.F.R. 136.3 (**2014**); |
| | • PRO Ex. 90 at 65, PRO reproduced and displayed D3697-92 (1996), PRO asserts that *D3697-92* was incorporated by reference in 21 C.F.R. § 165.110 (**2015**); |
| | • PRO Ex. 90 at 69, PRO Asserts that D4268-93 was incorporated by 33 C.F.R. § 164.03 (**2014**); |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | • PRO Ex. 90 at 70, PRO asserts that D4329-99 was incorporated by 49 C.F.R. § 571.5 (**2014**); |
| | • PRO Ex. 90 at 71, PRO asserts that D4809-95 was incorporated by 40 C.F.R. § 61.18 (**2014**); |
| | • PRO Ex. 90 at 72, PRO asserts that D4986-98 was incorporated by 46 C.F.R. § 31.01-1 (**2014**); |
| | • PRO Ex. 90 at 74, PRO reproduced and displayed D5489-96a, PRO asserts *D5489-96c* was incorporated by 16 C.F.R. § 423.8 (**2014**); |
| | • PRO Ex. 90 at 76, PRO reproduced and displayed D611-82 (1998), PRO asserts *D611-82* was incorporated by 21 C.F.R. § 176.170 (**2014**); |
| | • PRO Ex. 90 at 77, PRO asserts that D6420-99 was incorporated by 40 C.F.R. § 63.14 (**2019**); |
| | • PRO Ex. 90 at 78, PRO asserts that D665-98 was incorporated by reference at 46 C.F.R. § 61.03-1 (**2014**); |
| | • PRO Ex. 90 at 79, PRO asserts D86-07 was incorporated by reference in 40 C.F.R. § 80.47(r) (**2017**); |
| | • PRO Ex. 90 at 81, PRO asserts E11-95 was incorporated by reference in 33 C.F.R. § 159.4 (**2014**); |
| | • PRO Ex. 90 at 85, PRO asserts E185-82 was incorporated by reference in 10 C.F.R. § 50 App. H (**2014**); |
| | • PRO Ex. 90 at 88, PRO reproduced and displayed E408-71, PRO asserts that *E408-71 (2002)* was incorporated by reference in 16 C.F.R. § 460.5 (**2014**); |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | • PRO Ex. 90 at 92, PRO asserts E773-97 was incorporated by reference in 24 C.F.R. § 3280.4 (**2014**); |
| | • PRO Ex. 90 at 92, PRO asserts E774-97 was incorporated by reference in 24 C.F.R. § 3280.4 (**2014**); |
| | • PRO Ex. 90 at 93, PRO reproduced and displayed E775-87 (1992), PRO asserts that *E775-87 (2004)* was incorporated by reference in 40 C.F.R. § 49.123 (**2014**); |
| | • PRO Ex. 90 at 94, PRO asserts E96-95 was incorporated by reference in 24 C.F.R. § 3280.4 (**2014**); |
| | • PRO Ex. 90 at 95, PRO asserts F1003-86 (1992) was incorporated by reference in 46 C.F.R. § 199.05 (**2014**); |
| | • PRO Ex. 90 at 96, PRO asserts F1014-92 was incorporated by reference in 46 C.F.R. § 199.05 (**2014**); |
| | • PRO Ex. 90 at 98, PRO reproduced and displayed F1121-87 (1998), PRO asserts *F1121-87 (2010)* was incorporated by reference in 46 C.F.R. § 193.01-3 (**2014**); |
| | • PRO Ex. 90 at 98, PRO reproduced and displayed F1121-87 (1998), PRO asserts *F1121-87 (1992)* was incorporated by reference in 33 C.F.R. § 154.106 (**2014**); |
| | • PRO Ex. 90 at 100, PRO asserts F1155-98 was incorporated by reference in 33 C.F.R. § 154.106 (**2014**); |
| | • PRO Ex. 90 at 101, PRO reproduced and displayed F1193-06, PRO asserts that *E1193-97 (2004)* was incorporated by reference in 40 C.F.R. § 799.5087 (**2014**); |
| | • PRO Ex. 90 at 105, PRO reproduced and displayed F1273-91 (1996)e1, PRO |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | asserts that *F1273-91 (2007)* was incorporated by reference in 33 C.F.R. § 154.106 (**2014**); |
| | • PRO Ex. 90 at 105, PRO reproduced and displayed F1273-91 (1996)e1, PRO asserts that *F1273-91 (2007)* was incorporated by reference in 33 C.F.R. § 154.106 (**2014**); |
| | • PRO Ex. 90 at 108, PRO asserts F1951-99 was incorporated by reference in 36 C.F.R. § 1191 App. B (**2014**); |
| | • PRO Ex. 90 at 110, PRO asserts F631-93 was incorporated by reference in 33 C.F.R. § 154.106 (**2014**); |
| | • PRO Ex. 90 at 112, PRO asserts F715-95 was incorporated by reference in 33 C.F.R. § 154.106 (**2014**); |
| | • PRO Ex. 90 at 113, PRO reproduced and displayed F722-82 (1988), PRO asserts *F722-82 (2008)* was incorporated by reference in 33 C.F.R. § 154.106 (**2014**); |
| | • PRO Ex. 90 at 114, PRO asserts G151-97 was incorporated by reference in 49 C.F.R. § 571.5 (**2014**); |
| | • PRO Ex. 90 at 115, PRO reproduced and displayed G154-2000a, PRO asserts *G154-00* was incorporated by reference in 49 C.F.R. § 571.5 (**2014**); and |
| | • PRO Ex. 90 at 115, PRO asserts G21-90 was incorporated by reference in 7 C.F.R. § 1755.910 (**2014**). |
| | Additionally, for 56 ASTM Works, PRO identified a citation to a version of the C.F.R. that had been amended to eliminate reference to the ASTM Work at issue or to incorporate a different standard before PRO posted the Works (and was therefore not an effective |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | regulation at the time PRO posted the Works).  Wise Decl. II ¶ 4, Ex. 176. |
| | • PRO Ex. 90 at 1-12, 15-19, 33-34, 36, 89-90, 109, PRO asserts that A184-79, A185-79, A242-79, A307-78e, A325-79, A36-77ae, A441-79, A449-78a, A490-79, A496-78, A497-79, A500-78, A501-76, A502-76, A514-77, A570-79, A572-79, A588-79a, A611-72 (1979), A615-79, A616-79, A617-79, A82-79, C5-79 (1997), C516-80 (1996)e1, C564-70 (1982), E424-71, E606-80, E695-79 (1997)e1, and F462-79 (1999) were incorporated by reference in 24 C.F.R. Parts 200 to 499 (2005).  That regulation was amended in 2009 to eliminate reference to these ASTM Works and/or incorporate different ASTM standards. |
| | • PRO Ex. 90 at 1, PRO asserts that A106 / A106 M-04b was incorporated by reference in 49 C.F.R. § 192.7 (2010).  That regulation was amended in 2011 to eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s). |
| | • PRO Ex. 90 at 14, PRO asserts that A539-90a was incorporated by reference in 24 C.F.R. § 3280.4 (2004).  That regulation was amended in 2007 to eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s). |
| | • PRO Ex. 90 at 24, PRO asserts that B21-83b was incorporated by reference in 46 C.F.R. § 56.01-2 (1996-2008).  That regulation was amended in 2000 to eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s). |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | • PRO Ex. 90 at 29, PRO asserts that B85-84 was incorporated by reference in 46 C.F.R. § 56.01-2 (1997).  That regulation was amended in 2000 to eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s). |
| | • PRO Ex. 90 at 31, 33, PRO asserts that C150-99a and C330-99 were incorporated by reference in 30 C.F.R. § 250.198 (2007).   That regulation was amended in 2010 to eliminate reference to these ASTM Works and/or to incorporate a different ASTM standards. |
| | • PRO Ex. 90 at 39, PRO asserts that D1266-98 was incorporated by reference in 40 C.F.R. § 1065.1010 (2005).  That regulation was amended in 2006 to eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s). |
| | • PRO Ex. 90 at 51, PRO asserts that D2163-91 (1996) was incorporated by reference in 40 C.F.R. § 1065.1010(a) and Table 1 (2003-2008).  Those regulations were amended in 2008 to eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s). |
| | • PRO Ex. 90 at 59, PRO asserts that D3120-96 was incorporated by reference in 40 C.F.R. § 80.580(b) (2001-2003). That regulation was amended in 2004 to eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s). |
| | • PRO Ex. 90 at 74, PRO asserts that D5373-93 (1997) was incorporated by reference in 40 C.F.R. § 75.6 (2004). That regulation was amended in 2008 to |

49

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s).<br><br>• PRO Ex. 90 at 79, PRO asserts that D814-95 was incorporated by reference in 40 C.F.R. § 1051.810 (2007).  That regulation was amended in 2008 to eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s).<br><br>• PRO Ex. 90 at 86, 95, 97, 99-100, 103-104, 111, PRO asserts that E23-82, F1006-86 (1997), F1120-87 (1998), F1123-87 (1998), F1139-88 (1998), F1172-88 (1998), F1199-88 (1998), F1200-88 (1998), F1201-88 (1998), and F682-82a (1988) were incorporated by reference in 46 C.F.R. § 56.01-2 (1997).  That regulation was amended in 2000 to eliminate reference to these ASTM Work and/or to incorporate different ASTM standards.<br><br>• PRO Ex. 90 at 90, PRO asserts that E681-85 was incorporated by reference in 49 C.F.R. § 171.7 (2002).  That regulation was amended in 2004 to eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s).<br><br>• PRO Ex. 90 at 106, PRO asserts that F1323-98 was incorporated by reference in 46 C.F.R. § 63.05-1 (2005).  That regulation was amended in 2008 to eliminate reference to this ASTM Work and/or to incorporate a different ASTM standard(s).<br><br>• PRO Ex. 90 at 111, 114, PRO asserts that F631-80 (1985) and F808-83 (1988)e1 were incorporated by reference in 33 C.F.R. § 154.106 (1999).  That regulation |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | was amended in 2009 to eliminate reference to these ASTM Works and/or to incorporate different ASTM standards.<br><br>• PRO Ex. 90 at 112, PRO asserts F715-81 (1986) was incorporated by reference in 33 C.F.R. § 154.106 (1997-2008). That regulation was amended in 2009 to eliminate reference to these ASTM Works and/or to incorporate different ASTM standards.<br><br>Accordingly, even at the time PRO reproduced and displayed numerous ASTM's Works, no regulation identified by PRO incorporated the standard PRO posted.<br><br>Disputed to the extent PRO intends to use this paragraph or Exhibits 89-91 to the Declaration of Matthew Becker to support its claim that "federal law has incorporated by reference every one of the documents at issue here at least once," Opp. 6, or that "[t]he federal government has incorporated into law every entire standard at issue." Opp. 8. For the reasons explained in Plaintiffs' briefing, that claim fails both legally and factually. Reply Br. Part. I.A.1.a. Moreover, the exhibits that PRO has produced do not support the claim; Exhibit 91 does not identify any federal regulation that incorporates any part of NFPA 1 (2003), NFPA 1 (2006), or NFPA 54 (2006). Ex. 91 at 1, 5. Exhibit 91 identifies 24 C.F.R. § 3285.4 (2013) as incorporating NFPA 70 (2008), but, as the "text of incorporation" column shows, that regulation refers to the 2005 edition of NFPA 70, not the 2008 edition, Ex. 91 at 8; Exhibit 91 does not identify any other federal regulation that purportedly incorporates NFPA 70 (2008). *See* Wise Decl. II, Ex. 175. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 85.     Nearly all of the standards at issue were promulgated as private industry standards several years before being incorporated into law by government agencies. *See, e.g.*, ASTM D396-1998 "Standard Specification for Fuel Oils", incorporated into reference into law at 41 C.F.R. § 60.17 (2011); Dkt. 120, Ex. 153 <br><br> ■■■■■■■ | This is a legal conclusion, not a fact. <br><br> Disputed to the extent it implies that incorporation by reference of a standard makes the standard itself law.  Disputed to the extent it characterizes Plaintiffs' standards as private industry standards. They are voluntary consensus standards. ECF No. 118-2 (Pls.' SMF) ¶¶ 8-9, 95, 130. Disputed that "nearly all" of the standards at issue that were developed by NFPA and ASHRAE had existed for many years before they were incorporated by reference. Defendant offers no evidence supporting this proposition and it is not true.  *E.g.*, N.D. Admin. Code 24.1-06-03-01 (IBR of 2017 NEC, effective April 1, 2017) <br><br> Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. <br><br> Objection as to foundation and relevance with respect to reliance on an ■■■■■■■ |
| 86.     Public Resource posted some of the incorporated standards at issue in standard Web formats. Dkt. 121-5 ¶ 24–27; ECF No. 117-1 (Jarosz Rep.) ¶ 35. | Vague as to what constitutes as "standard Web format." <br><br> Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed to the extent it suggests that PRO's postings accurately and completely reproduce Plaintiffs' standards without any errors.  PRO posted versions of the standards at issue, although those versions introduced errors not present in the authentic Works. |
| 87.    Public Resource posted the incorporated standards at issue using Hypertext Markup Language (HTML), Mathematics Markup Language (MathML), and Scalable Vector Graphics (SVG). Over time, Public Resource used contractors to assist in transforming the standards into HTML format.   Two people independently type out most of the standards on Public Resource's websites and compare any discrepancies between their versions to confirm the accuracy of the transcription in a process called "double-keying." Public Resource's contractor also worked to convert the diagrams into Scalable Vector Graphics ("SVG") and the mathematical formulae into Mathematics Markup Language ("MathML"). Dkt. 121-5 ¶ 25. | Disputed that the conversion of standards into HTML or other formats was transformative.  The cited evidence is irrelevant.  The D.C. Circuit considered and rejected this argument. *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018) (citing *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 923–24 (2d Cir. 1994) (holding that photocopying articles "into a form more easily used in a laboratory" does not constitute transformative use but acknowledging "the benefit of a more usable format")).<br><br>Disputed as to the process Defendant's contractor used to convert the standards into HTML format.  The contractor testified that it used optical character recognition to extract text unless the image quality of the document was poor.  ECF No. 118-2 (Pls.' SMF) ¶ 192.<br><br>Disputed to the extent that it suggests that PRO used professional "contractors" to do the conversion of diagrams and formulas. "Public Resource's contractor" (i.e., Mr. Malamud's wife's unincorporated business) used children in an after-school program to convert diagrams into SVG format and formulas into MathML, which was advertised as targeting children aged 7 to 14. ECF No. 118-2 (Pls.' SMF) ¶ 199.<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.<br><br>Disputed to the extent PRO suggests that it posted all of the Works in HTML format. Wise Decl. II ¶ 2, Ex. 174, at Interrog. 2.<br><br>Disputed to the extent it suggests that PRO's postings accurately and completely reproduce Plaintiffs' standards without any errors.  PRO posted versions of the standards at issue, although those versions introduced errors not present in the authentic Works. |
| 88.      Hypertext Markup Language (HTML), Mathematics Markup Language (MathML), and Scalable Vector Graphics (SVG) permit users to perform software-based searching and analysis. Dkt. 121-5 ¶ 25. | Undisputed. |
| 89.      Public Resource does not restrict the public from viewing any of the incorporated standards at issue on its websites. Dkt. 121-5 ¶ 23. | Disputed to the extent it suggests that PRO's postings of the Works are available on PRO's website, rather than on the Internet Archive.<br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.<br><br>Disputed to the extent it suggests that PRO's postings accurately and completely reproduce Plaintiffs' standards without any errors.  PRO posted versions of the standards at issue, although those versions introduced errors not present in the authentic Works. |
| 90.      Public Resource does not require people to log in to its website before viewing any of the | Disputed to the extent it suggests that PRO's postings of the Works are available on |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| incorporated standards at issue on its websites. Dkt. 121-5 ¶ 23. | PRO's website, rather than on the Internet Archive.<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.<br><br>Disputed to the extent it suggests that PRO's postings accurately and completely reproduce Plaintiffs' standards without any errors.  PRO posted versions of the standards at issue, although those versions introduced errors not present in the authentic Works. |
| 91.      Public Resource does not require people to pay Public Resource before viewing any of the incorporated standards at issue on its websites. Dkt. 121-5 ¶ 23. | Disputed to the extent it suggests that PRO's postings of the Works are available on PRO's website, rather than on the Internet Archive.<br><br>Disputed to the extent it suggests Plaintiffs require payment from individuals who access the read-only versions on their websites.<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.<br><br>Disputed to the extent it suggests that PRO's postings accurately and completely reproduce Plaintiffs' standards without any errors.  PRO posted versions of the standards at issue, although those versions introduced errors not present in the authentic Works. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 92.    The Public Resource websites are directed at researchers and engaged citizens. Dkt. 121-5 ¶ 4, 26. | Objection as to relevance of Mr. Malamud's or Public Resource's supposed subjective intent.  Objection as to the relevance, as PRO does not currently post its versions of Plaintiffs' standards on its website.<br><br>Disputed.  Defendant's websites are accessible by the general public and Defendant has both disavowed any desire to know who uses the versions of standards it posts and has no ability to identify who has downloaded, made additional copies of, or printed the versions of Plaintiffs' standards from its website.  ECF No. 118-2 (Pls.' SMF) ¶ 248. |
| 93.    Public Resource's stated purpose for providing an archive or laws and other government documents on its websites is to bolster the public's ability "to know and speak the law."  Dkt. 121-5  ¶ 28 (https://law.resource.org/pub/12tables.html). | Objection.  Defendant's stated purpose is irrelevant.  As explained in Plaintiffs' briefing, fair use turns on how a work appears to a reasonable observer, not on the infringer's subjective intent.  Reply at Part I.A.1.b.<br><br>Hearsay to the extent that the out of court statements are relied upon to prove the truth of the matters asserted.<br><br>Disputed to the extent it suggests that PRO's postings of the Works are available on PRO's website, rather than on the Internet Archive. |
| 94.    Plaintiffs sell copies of the incorporated standards at issue. Thomas Decl. ¶ 44, ECF No. 118-11; Pauley Decl. ¶ 44, ECF No. 118-8; Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.) at 104:21–106:23. | Disputed to the extent it suggests that Plaintiffs' standards are themselves law.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.<br><br>Plaintiffs do not dispute that they sell the Works. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 95.    Public Resource's versions of the incorporated standards at issue are accessible to the print-disabled. People who are print-disabled can use screen reader software to read and navigate the HTML versions of the standards. James Fruchterman, Public Resource's expert on accessibility, concluded that "a blind person using a screen reader" can "read the standard . . . navigate to a specific place in the document . . . and search for key terms."). Mr. Fruchterman also observed that "standard HTML" as used by Public Resource "is also highly accessible to people with other print disabilities and the assistive technology they use to access print," such as people with "vision impairment, dyslexia, brain injury and physical disabilities." Becker Decl. ¶ 62, Ex. 96 (Fruchterman Rep. 5–7); ¶ 17, Ex. 50 (R. Malamud Depo. 233:15–234:7); Becker Decl., ¶ 6, Ex. 39 (Fruchterman Depo.) at 125:10–11. | Objection. The statement's discussion of access for individuals with visual disabilities is irrelevant as the D.C. Circuit previously held that "the district court properly rejected some of PRO's arguments as to its transformative use—for instance, that PRO was converting the works into a format more accessible for the visually impaired or that it was producing a centralized database of all incorporated standards." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018).<br><br>Disputed. Mr. Fruchterman admitted he could not opine that a visually disabled person would actually be able to use the HTML versions of Plaintiffs' standards posted on Defendant's website. ECF No. 155-1 (Pls.' Supp. SUMF) ¶ 4 (Fruchterman Depo. 175:5-176:9, 218:3-23). Mr. Fruchterman also acknowledged that he had asked a visually disabled person to evaluate the PDF versions of Plaintiffs' standards that were posted on Defendant's website, and that person informed him that those documents could not be considered to be accessible. ECF No. 155-1 (Pls.' Supp. SUMF) ¶ 5 (Fruchterman Depo. 256:12-259:6). In addition, the documents posted on Defendant's website are not the standards at issue. They are Defendant's mistake-laded creations. ECF No. 118-2 (Pls.' SMF) ¶¶ 182-185, 188-201. |
| 96.    Plaintiffs' versions of the incorporated standards at issue online are not as accessible to the print-disabled as Public Resource's versions of those standards. None of the Plaintiffs provide free electronic access to standards incorporated into law for people with disabilities. For example, NFPA's website requires visitors to register before viewing the | Objection. The cited evidence is irrelevant and its probative value is substantially outweighed by the unfair prejudice to Plaintiffs. The D.C. Circuit previously held that "the district court properly rejected some of PRO's arguments as to its transformative use—for instance, that PRO was converting the works into a format more accessible for |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| standards, and its registration process cannot be completed by blind users. None of the Plaintiffs provides machine-readable text of the incorporated standards through their free reading portals. They provide only "a picture of the text," which causes screen-reading software to "stop working." Nor do the Plaintiffs' websites provide any means for disabled visitors to search or navigate the documents. Thus, "Public.Resource.Org currently provides the only accessible option for people/citizens with print disabilities to access these standards." Becker Decl., ¶ 6, Ex. 39 (Fruchterman Depo.) at 43:21–23; 112:1–8; 133:5; 143:10–14; 165:17–166:7; 167:8; 205:2–13; Becker Decl. ¶ 62, Ex. 96 (Fruchterman Rep. 5–13); Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 220:1–221:25; ¶ 2, Ex. 4 (Bliss Ex. 1003); Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.) at 20:22; 44:1–46:25. | the visually impaired or that it was producing a centralized database of all incorporated standards." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018).<br><br>Disputed to the extent the statements relates to people with non-print disabilities.  To protect their copyrighted standards from exposure to mass copying, Plaintiffs have provided versions of their standards on their reading rooms that provide read-only access. *See, e.g.*, ECF No. 204-51, Ex. 45 (Grove Depo.) at 110:8-23; ECF No. 204-47, Ex. 41 (Dubay Depo.) 77:21-78:4; ECF No. 204-50, Ex. 44 (Comstock Depo.) at 10:23-11:3.  There is no evidence that Plaintiffs placed any purposeful restriction on the use of screen readers by people with print disabilities on their reading rooms.  To the extent a screen reader requires the ability to do more than read from an image of the standard on the screen, it is undisputed that the screen reader will not be able to read the versions of Plaintiffs' standards on their reading rooms.  Mr. Fruchterman admitted he could not opine that a visually disabled person would actually be able to use the HTML versions of Plaintiffs' standards posted on Defendant's website.  ECF No. 155-1 (Pls. Suppl. SUMF) ¶ 4 (Fruchterman Depo. 175:5-176:9, 218:3-23).  Mr. Fruchterman also acknowledged that he had asked a visually disabled person to evaluate the PDF versions of Plaintiffs' standards that were posted on Defendant's website, and that person informed him that those documents could not be considered to be accessible. ECF No. 155-1 (Pls. Suppl. SUMF) ¶ 5 (Fruchterman Depo. 256:12-259:6). |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | ASTM is not aware of any visually impaired person who has informed ASTM that he/she was having difficulty accessing an ASTM standard due to a print disability.  If a visually impaired person requested access to an ASTM standard due to a print disability, ASTM would provide a copy of the relevant standard in a format that accommodated the person's disability at no additional cost to the requester.  ECF No. 155-1 (Pls. Suppl. SUMF) ¶ 8 (citing O'Brien Suppl. Decl. ¶ 17.)

Mr. Fruchterman testified that the 2014 edition of the NEC is available on Mr. Fruchterman's company's online library for the visually impaired website.  ECF No. 155-1 (Pls. Suppl. SUMF) ¶ 3 (Fruchterman Depo. 209:18-213:23).  There is no evidence that the other standards at issue are unavailable on that or similar websites for the visually impaired.

NFPA has a commitment to make accommodations for persons with disabilities to access NFPA materials.  For each request by a visually impaired individual for access to an NFPA standard, NFPA has responded by providing that individual with a copy they can use at no charge.  ECF No. 155-1 (Pls.' Supp. SUMF) ¶ 9. NFPA is not aware of any other individuals who have requested and not received an accommodation.  ECF No. 155-1 (Pls.' Supp. SUMF) ¶ 10. |
| 97.     Downloading an incorporated standard allows more flexibility for using and sharing that standard. Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 215:9–15; 215:21–216:1. | Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.

Disputed to the extent it suggests that the inability to download a standard would prevent use of the standard.  Undisputed that |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
|  | the ability to download a standard makes it easier to share that standard. |
| 98.      It is not Public Resource's intention to make copies that are similar to the standards actually sold by ASTM available on its website because they post standards that have been explicitly and specifically incorporated by reference into federal or state law. Dkt. 121-5 ¶ 4–15. | Objection as to relevance of PRO's supposed subjective intent.  As explained in Plaintiffs' briefing, fair use turns on how a work appears to a reasonable observer, not on the infringer's subjective intent.  Reply at Part I.A.1.b.<br><br>Vague and ambiguous in its entirety.<br><br>Disputed to the extent it suggests that Defendant has not made copies of standards that ASTM sells available on its website. |
| 99.      Public Resource posted the incorporated standards at issue to inform citizens about the content of the law. Dkt. 121-5 ¶ 4. | Objection as to relevance of Public Resource's supposed subjective intent.  As explained in Plaintiffs' briefing, fair use turns on how a work appears to a reasonable observer, not on the infringer's subjective intent.  Reply at Part I.A.1.b.<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.<br><br>Disputed to the extent it implies PRO places any restrictions on access to the copies of Plaintiffs' Works that it posts online to only citizens interested in the contents of the law or for any educational purpose.  PRO does not prevent individuals from downloading, printing, and making derivative works.  ECF No. 118-2 (Pls.' SMF) ¶ 221-22. |
| 100.      Public Resource posted the incorporated standards at issue on its website in formats | Objection as to relevance of Public Resource's supposed subjective intent.  As explained in Plaintiffs' briefing, fair use |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| meant to increase citizen access to the law. Dkt. 121-5 ¶ 26. | turns on how a work appears to a reasonable observer, not on the infringer's subjective intent.  Reply at Part I.A.1.b.

Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.

Disputed to the extent it suggests that citizens did not have access to Plaintiffs' standards prior to Defendant's posting their infringing copies.  Standards are only eligible to be incorporated by reference if they are reasonably available.  1 C.F.R. § 51.7.  Plaintiffs provide read-only access to the Works—excluding certain of the Works that are not incorporated by reference as claimed by PRO—on their websites, and sometimes linked through other websites, such as local and state government websites. *See* ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 85. |
| 101.    Public Resource posted the incorporated standards at issue for the purpose of transforming the information in the standards by making that information accessible to people who did not necessarily have access to that information before.  Dkt. 121-5 ¶ 35. | Objection as to relevance of Public Resource's supposed subjective intent.  As explained in Plaintiffs' briefing, fair use turns on how a work appears to a reasonable observer, not on the infringer's subjective intent.  Reply at Part I.A.1.b.  Further, the D.C. Circuit previously held that "the district court properly rejected some of PRO's arguments as to its transformative use—for instance, that PRO was converting the works into a format more accessible for the visually impaired or that it was producing a centralized database of all incorporated standards." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018). |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
|  | Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.<br><br>Disputed to the extent it suggests that citizens did not have access to Plaintiffs' standards prior to Defendant's posting their infringing copies.  Standards are only eligible to be incorporated by reference if they are reasonably available.  1 C.F.R. § 51.7.  Plaintiffs provide read-only access to the Works—excluding certain of the Works that are not incorporated by reference as claimed by PRO—on their websites, and sometimes linked through other websites, such as local and state government websites. *See* ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 85.<br><br>Disputed.  Defendant has not transformed the information in the standards.  Plaintiffs make their standards accessible to the general public.  ECF No. 118-2 (Pls.' SMF) ¶¶ 57-69, 99-103, 157-62.<br><br>Disputed to the extent it suggests that Defendant posted the standards to provide access for the visually impaired.  There is no evidence to support that suggestion. |
| 102.    Public Resource does search engine optimization so that the standards are accurately described in search engine results. Dkt. 121-5 ¶ 29. | Disputed to the extent it suggests this is Defendant's only purpose in using search engine optimization.  ECF No. 118-2 (Pls' SUMF) ¶¶ 225-26. |
| **VII.    PLAINTIFFS' LIMIT USE OF THE STANDARDS** | |
| 103.    ASTM gives government bodies like the U.S. Geological Survey and the State of Georgia, fellow standards development | Objection.  This statement and the cited evidence are irrelevant because there is no |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| organizations like NFPA, IAPMO, and ICC, and favored corporations liberal permission to copy standards in both paper and electronic format, and to use excerpts from standards in other documents. Dkt. 122-7, Exs. 107, 108, 109; 110, 111, and 112. | evidence that these statements relate to any of the standards at issue.<br><br>Disputed.  ASTM routinely grants permission to researchers, academics and others to reproduce its standards at no cost for non-commercial purposes.  ECF No. 118-2 (Pls.' SMF) ¶ 68. |
| 104.    ASTM regularly refuses to give similar permissions to graduate students, universities, libraries, and smaller businesses. Dkt. 122-7 Exs. 113, 115, 116, 117, 120; Dkt. 122-8 Exs. 130, 131. | Objection. This statement and the cited evidence are irrelevant because there is no evidence that these statements relate to any of the standards at issue. In addition, there is no evidence supporting the proposition that the cited requests are "similar" to the previously mentioned requests.<br><br>Disputed. ASTM routinely grants permission to researchers, academics and others to reproduce its standards at no cost for non-commercial purposes.  ECF No. 118-2 (Pls.' SMF) ¶ 68. ASTM denies permission to use its standards when the requester seeks to post the standard on a public website with no reasonable time limit and/or with no limitation on the number of people who can access it.  *See* Def. Exs. 113, 115, 117, 120, 130; *see also* O'Brien Suppl. Decl. ¶ 16. ASTM may also, as it entitled to do under copyright law, deny permission to a party requesting to make a copy of a complete standard or to make a derivative work based on an ASTM standard. *See* Def. Ex. 116. |
| 105.    ASTM gave the structural engineering firm SGH, "a big supporter of ASTM," permission to excerpt a number of figures and tables from a standard. Dkt. 122-7, Ex. 112. | Objection.  This statement and the cited evidence are irrelevant because there is no evidence that these statements relate to any of the standards at issue. |
| 106.    ASTM refused to allow an engineering student at the University of Pennsylvania to use | Objection.  This statement and the cited evidence are irrelevant because there is no evidence that these statements relate to any of the standards at issue. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| "photographs and figures" from another standard in a case study. Dkt. 122-7, Ex. 117. | Disputed. ASTM denies permission to use its standards when the requester seeks to post the standard on a public website.  Unlike the requested license in ¶ 105, this student was requesting permission to include the standard in an article that would be "posted online through wikispaces."  *See* ECF No. 122-7, Def. Ex. 117. |
| 107.   When an ASTM employee wrote that "we typically do not provide figures [from standards] for reproduction purposes," John Pace, ASTM's Vice President of Publications and Marketing, responded that ASTM has a "'triple standard' here on considerations for such requests," and that the owner of a chemical company, Sheldon Dean, who was "platinum level" because of his "connection status" with ASTM committees, should be given permission to use excerpts from an ASTM standard in a forthcoming book. Dkt. 122-7, Ex. 119. | Objection.  This statement and the cited evidence are irrelevant because there is no evidence that these statements relate to any of the standards at issue.<br><br>Objection to the extent the quotations imply that ASTM only grants permissions to individuals with a connection to ASTM committees.  The email also states that "the fact that such figures are extracted from various standards so the potential impact on any one [standard] is significantly reduced." Dkt. 122-7, Ex. 119 at ASTM091243.<br><br>Disputed to the extent it suggests that citizens did not have access to Plaintiffs' standards prior to Defendant's posting their infringing copies.  Standards are only eligible to be incorporated by reference if they are reasonably available.  1 C.F.R. § 51.7.  Plaintiffs provide read-only access to the Works—excluding certain of the Works that are not incorporated by reference as claimed by PRO—on their websites, and sometimes linked through other websites, such as local and state government websites. *See* ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶ 85. |
| 108.   ASTM refused to allow Columbia Analytical to reproduce several abstracts from an ASTM standard. Dkt. 122-7, Ex. 120. | Objection.  This statement and the cited evidence are irrelevant because there is no evidence that these statements relate to any of the standards at issue. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed.  ASTM denies permission to use its standards when the requester seeks to post the standard on a public website.  ASTM denied a request to post abstracts on a publicly available website.  *See* ECF No. 122-7, Def. Ex. 120; *see also* ECF No. 118-7, O'Brien Suppl. Decl. ¶ 16. |
| 109.     ASTM has a policy against permitting the posting of ASTM standards on the public internet. Dkt. 122-9, Ex. 144. | Disputed.  ASTM posts many of its own standards on the public internet.  ECF No. 118-2 (Pls.' SMF) ¶¶ 63-64, 66.  ASTM does not allow third parties to post ASTM standards on the public internet. *See, e.g.,* ECF No. 122-7, Def. Ex. 113. |
| 110.     ASTM did not permit a person in the UK to post the information in the ASTM D2000-12 standard. Dkt. 122-9, Ex. 145. | Objection.  Relevance.  This standard is not at issue in this litigation. |
| 111.     Plaintiffs' assertion of copyright in incorporated standards makes it more difficult for others to produce materials such as training and user manuals.  Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 217–224. | Disputed.  This statement is unsupported by the cited source and Defendant provides no other basis for it.  This is also a legal conclusion. |

## VIII.   PLAINTIFFS' MISSIONS AND PURPOSES FOR PUBLISHING STANDARDS DIFFERS FROM PUBLIC RESOURCE'S MISSION AND PURPOSE

| | |
|---|---|
| 112.     Plaintiffs are three standards development organizations ("SDOs") that publish voluntary consensus standards. Dkt. 118-1 at 4–9; Compl. Ex. A–C. | Disputed to the extent it implies that Plaintiffs are merely the publishers, and not the authors, of voluntary consensus standards. |
| 113.     According to Plaintiffs, ASTM has published approximately 12,000 standards, NFPA has published over 300 standards, and ASHRAE has published over 100 standards. ECF No. 117-1 (Jarosz Rep.) ¶ 13 (ASTM); ¶ 17 (NFPA); ECF No. 118-10 (Reiniche Decl.) ¶ 2, (ASHRAE). | Disputed to the extent it implies that Plaintiffs are merely the publishers, and not the authors, of voluntary consensus standards. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 114.    ASTM's Mission Statement reads: "To be recognized globally as the premier developer and provider of voluntary consensus standards, related technical information, and services that promote public health and safety, support the protection and sustainability of the environment, and the overall quality of life; contribute to the reliability of materials, products, systems and services; and facilitate international, regional, and national commerce." Dkt. 122-6, Ex. 100. | Undisputed. |
| 115.    NFPA's "About NFPA" webpage states: "Founded in 1896, NFPA is a global, nonprofit organization devoted to eliminating death, injury, property and economic loss due to fire, electrical and related hazards. The association delivers information and knowledge through more than 300 consensus codes and standards, research, training, education, outreach and advocacy; and by partnering with others who share an interest in furthering the NFPA mission." Dkt. 122-6, Ex. 101. | Disputed to the extent it implies that the NFPA's website currently contains the quoted text.  The cited reference describes NFPA's website as of December 19, 2015. |
| 116.    ASHRAE's Mission is "To advance the arts and sciences of heating, ventilation, air conditioning and refrigeration to serve humanity and promote a sustainable world." Dkt. 122-6, Ex. 102. | Undisputed. |

## IX.    EVEN BEFORE BECOMING LAW, THE STANDARDS WERE FACTUAL WORKS

| | |
|---|---|
| 117.    ASTM defines the standards they produce as documents comprising "specifications, test methods, practices, guides, classification and terminology." Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 14:22–15:6. | Objection.  Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed.  The cited deposition testimony does not support this proposition. |
| 118.    ASTM has a form and style guide that sets forth the rules that persons generally must follow in participating in the drafting and revision process of ASTM standards. Dkt. 122-1, Ex. 8; Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 268:14–269:4. | Objection.  Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination.  Best evidence rule.<br><br>Disputed.  ASTM's form and style guide sets forth guidelines for drafting different types of ASTM standards, not for participating in the drafting and revision process.  ECF No. 118-2 (Pls.' SMF) ¶¶ 33-34. |
| 119.    According   to    NFPA's    corporate designee, Donald Bliss, codes and standards are procedures and practices. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 21:18–22:11. | Objection.  Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination.<br><br>Disputed.  Defendant takes Mr. Bliss's testimony wholly out of context.  Nothing about Mr. Bliss's statement supports the proposition.<br><br>In response to the question "What, in your view, makes codes and standards essential to reducing fire loss, fire deaths and property losses?" Mr. Bliss answered, "Codes and standards are the result of a number of things. One is actual lessons learned from events that have happened in the past, fire incidents, electrical problems, electrocutions, explosions. And based on the analysis of those events, we can learn from them and then establish the procedures and practices |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | that should be followed to prevent that from happening. The second way is from actual research, looking at potential problems, looking proactively to determine whether or not a risk or a hazard exists, and then based on that research, generating guidelines and standards that would prevent those events from happening."  ECF No. 122-1, Def. Ex. 4 (Bliss Depo.) 21:18-22:11. |
| 120.    ASHRAE described one of the standards at issue, the 1993 ASHRAE Handbook: Fundamentals, as "a tool for engineers to use when they're working with the topics covered in that book." Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 158:20–24. | Objection. Relevance. PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination. |
| 121.    The content of the ASHRAE standards-at-issue is based on a technical committee's review of the relevant research, public input and committee expertise, all of which is intended to determine the best rule—the consensus standard—for the relevant industry. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 140:1–41:4; Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 29:12–21, 68:9–20, 73:16–25; Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 94–95; Dkt. 117-1 (Jarosz Rep.) 26–30. | Objection. Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination.

Disputed to the extent that Ms. Reiniche's cited testimony never makes any qualitative assessment as to whether the ASHRAE standard is the "best rule" for the relevant industry. |
| 122.    NFPA is committed to reducing "the worldwide burden of fire and other hazards" by developing and disseminating codes that will minimize fire risk. Dkt. 117-1 (Jarosz Rep. 29). | Objection.  Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination. Disputed.  Defendant misstates the statement in the report "NFPA's mission is 'to reduce the worldwide burden of fire and other hazards on the quality of life by providing |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | and advocating consensus codes and standards, research, training, and education.'" *See* ECF No. 118-12 (Rubel Decl.) Ex. 1 (Jarosz Rep.) ¶ 68. |
| 123. Bliss testified that, when he was a committee member, his motivation was to develop the "best" standard, and "best" meant "understanding the problem based on past experience and events, having as much scientifically based research to contribute to the development of the standard and then a very, very open and transparent consensus process." After that:<br><br>There's a tremendous amount of public input and vetting of the concepts and the actual language which in reality mirrors a government adoption of legislative process.<br><br>Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 139:07–140:10. | Objection. Relevance. PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination.<br><br>Disputed to the extent PRO relies on this mischaracterization to support a claim that the standards are systems and method. Mr. Bliss's testimony does not support that point:<br>Q. And what makes a fire safety standard the best available?<br><br>A. In my view, it's a combination of factors. One is understanding the problem based on past experience with fires and events, having as much scientifically based research to contribute to the development of the standard and then a very, very open and transparent consensus process.<br><br>Q. And what about the standards make them, makes them the best for adoption into law?<br><br>A. I think for the reasons that I indicated, is that there's lessons learned from past events. There's research that goes into the process. There's a tremendous amount of public input and vetting of the ideas and of the concepts and of the actual language which in reality mirrors a governmental adoption or legislative process. It takes advantage of a wide range of expertise and perspectives. |
| 124. ASHRAE says its standards define "the minimum acceptable performance for the | Objection. Relevance. PRO appears to intend to use this statement to support a claim that the standards are "factual" or |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| relevant products." Dkt. 117-1 (Jarosz Rep.) at 33. | otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination.<br><br>Undisputed. |
| 125.   The main benefit of the consensus process, according to ASHRAE, is that it relies on experts who understand "how to make that product or how to construct that building or how to make something more energy efficient." Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 102:23–25. | Objection. Relevance. PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination.<br><br>Disputed.  The cited testimony does not say that this is the "main benefit" of the consensus process or even that it is a benefit of the consensus process at all.  The testimony discusses why committee members should have some level of expertise in the field. |
| 126.   As NFPA puts it, there are two types of changes:  technical  changes,  which  are "scientific"  and  wording  changes,  which involve making potentially confusing language more clear "to make it easier to interpret of understand  what  that  actual  technical requirement is." Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 28:22–30:4. | Objection. Relevance. PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination.<br><br>Disputed to the extent Defendant characterizes changes as merely for clarity. Mr. Dubay's full testimony makes clear that the standards involve creative judgment and numerous choices to settle on final wording:<br><br>Q: Who determines what wording changes are appropriate in the technical committees?<br><br>A. It's a combination of extensive public review and comment, the committee's review of that and their expertise and with the help of our technical staff to land on the |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | final wording, which is ultimately decided by the technical committee. Q. What criteria do the members of the technical committee use in choosing the wording of a code or standard? A. Ultimately those decisions are based upon the technical committee members' expertise and knowledge within the field.  ECF No. 204-47, Ex. 41 (Dubay Depo.) at 29:12-30:4. |
| 127.    The volunteers who draft the standards do not view them as creative expression. Volunteers debate wording in the standards so as to have the most precise and accurate description of the process, system, or methods that comprise the standards.  The exact wording matters, and it is not sufficient to try to rephrase this language as rephrasing could introduce errors. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 140:1–140:10. | Objection.  Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination. Additionally, this statement and the cited evidence are irrelevant because there is no evidence that these statements relate to any of the standards at issue. This statement and the cited evidence also lacks foundation.  The witness lacks personal knowledge as to the state of mind of volunteers who participate in the creation of standards.  The assertion that "it is not sufficient to try to rephrase this language" is inadmissible opinion testimony. Disputed.  There is no support for the contention that volunteers do not view their work as creative expression or the implication that they would have to view their expression as creative under copyright law.  There is also no support for the proposition that exact wording matters and rephrasing the language could introduce errors.  *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 451 (D.C. Cir. 2018) ("PRO's claim that a |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | paraphrase or summary would always be inadequate to serve its purposes seems less persuasive.") |
| | The cited transcript does not support Defendant's purported fact:  "I think for the reasons that I indicated, is that there's lessons learned from past events. There's research that goes into the process. There's a tremendous amount of public input and vetting of the ideas and of the concepts and of the actual language which in reality mirrors a governmental adoption or legislative process.  It takes advantage of a wide range of expertise and perspectives." ECF No. 203-5, Def. Ex. 46 (Bliss Depo.) 140:1-10. |
| | There is also no support for this fact with respect to ASTM or ASHRAE. |
| 128.    Plaintiffs    believe    that    technical excellence is why their standards are ultimately incorporated by reference. M Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 235:2–23. | Objection.  Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination. |
| | Undisputed that Plaintiffs believe technical expertise is one reason why their standards are ultimately incorporated by reference. |
| 129.    NFPA    asserted    that    "standard developers converge around terminology and format that works for their constituents that utilize their standards." Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 139:03–06. | Objection.  Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination. |
| | Undisputed that NFPA seeks to use terminology and format that works for |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | constituents that utilize their standards, but disputed to the extent that Defendant misleadingly isolates this one snippet of Mr. Dubay's testimony to suggest that this effort does not require creative expression.  *See* ECF No. 121-1, Opp. 33 (describing the Works as turning on only practical concerns without "a whit of expressive creativity"). As Mr. Dubay testified at length, NFPA's staff, committee members, and members of the public engage in a lengthy standards development process that involves many creative decisions that result in the creation of the final standard.  ECF No. 204-47, Ex. 41 (Dubay Depo.) at 24-28, 31-33, 50-56, 59-62, 66-69.<br><br>As is clear from the Works filed with the Court, they are each unique and reflect the Plaintiffs' distinct expressive choices.  For example, NFPA and ASHRAE both define "automatic," but author different expressions of that definition.  *Compare* ECF No. 155-5 (Comstock Decl.) Ex. 1 at 5 (ASHRAE 90.1-2004) *with* ECF No. 155-6 (Dubay Decl.) Ex. A at 70-26 (NFPA NEC 2011). Likewise, the standards each use drawings in different ways and the style of those drawings is distinct.  *Compare* ECF No. 155-5 (Comstock Decl.) Ex. 1 at 18 (straightforward figure style in ASHRAE 90.1-2004) *with* ECF No. 118-7 (O'Brien Decl.) Ex. 6 at 3, 17 (complex drawing style in ASTM in ASTM D86-07). |
| 130.    ASHRAE standards take the form of specific requirements that "provide methods of testing equipment so that equipment can be measured [and] compared with similar levels of performance." Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.) at 96:01–22. | Objection.  Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed.  In the cited testimony, the witness does not refer to ASHRAE standards as "specific requirements" (that is how PRO's attorney references them). Also, the quoted text was in response to a specific question about possible uses of ASHRAE standards; it was not a general description of ASHRAE standards provided by the witness.  Becker Decl. ¶ 11, Ex. 44 (Comstock Depo.) at 96:01–22. |
| 131.    ASTM standards are "[s]pecifications, test methods, practices, guides, classifications and terminology." Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 14:22–15:18. | Objection.  Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination.<br><br>Disputed.<br><br>The cited deposition testimony does not support this proposition.<br><br>Disputed to the extent it implies that ASTM standards include only specifications, test methods, practices, guides, classifications, and technology.  ASTM standards also include diagrams, explanatory materials, aids and supplements to the standard.  ECF No. 198-3 ¶¶ 50-51. |
| 132.    An NFPA standard provides a consistent process for fire investigation. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 106:09–24. | Objection.  Relevance.  PRO appears to intend to use this statement to support a claim that the standards are "factual" or otherwise not subject to copyright, but it has made no argument in the present summary judgment briefing on this basis and, in any event, that is a legal determination.<br><br>The statement is also not relevant as it relates to NFPA 971, which is not one of the standards at issue in this litigation. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed to the extent it suggests that all NFPA standards or the particular NFPA standard being discussed provide a consistent process for all fire investigators rather than simply a way in which some fire investigators conducted an investigation. |

## X. PLAINTIFFS HAVE NO EVIDENCE OF HARM

| | |
|---|---|
| 133. Public Resource first posted the 2008 National Electric Code on its website in 2008. Dkt. 164-8 (Supp. Decl. of Carl Malamud) ¶¶ 5–7. | Objection. Hearsay.

Disputed. Mr. Malamud's declaration states that he posted copies of various state codes—not the National Electrical Code.

Disputed to the extent it suggests that PRO's postings accurately and completely reproduce Plaintiffs' standards without any errors. PRO posted versions of the standards at issue, although those versions introduced errors not present in the authentic Works. |
| 134. Plaintiffs have discussed Public Resource's activities at the highest levels of their organizations since at least 2010, but waited until August 2013 to file this lawsuit. ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ Dkt. 120, Ex. 150. | Disputed entirely as to ASHRAE's involvement in discussions since 2010. Disputed as vague and misleading with respect to the references to █████ ████████████████████████████ ████████████████████████████ ████████████████████████████ In fact, Public Resource did not post Plaintiffs' standards in bulk until December 2012. *See* ECF No. 118-2 (Pls.' SMF) ¶ 250. |
| 135. All of the standards at issue have been superseded or withdrawn. Becker Decl. ¶¶ 56-58, Exs. 89-91 (IBR Reference Tables); Dkt. 122, Exs. 97–99. | Undisputed that Plaintiffs have published more recent editions of the other works at issue in this case. Otherwise disputed as argumentative. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Objection to Exhibits 97-99 as hearsay and lacking foundation/personal knowledge. |
| 136. Public Resource's posting of the incorporated standards at issue has not caused Plaintiffs any measurable harm. Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 63:3–10; 123:14–18; 136:5–137:24; 155–158; 160:3–6; 177:17–178:5; 212:11–213:3; 214:13–215:3; 245:2–250:11; Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.) at 12:2-11; 63:10-16; 64:20–25; *see generally* Becker Decl. ¶¶ 22-23, Exs. 55-56; Becker Decl. ¶¶ 39-47, Exs. 72-80. | Disputed. While Plaintiffs have not calculated a precise number of damages, the evidence demonstrates that Plaintiffs have been harmed by Defendant's conduct. Mr. Jarosz stated that Plaintiffs had suffered financial losses but they were exceedingly difficult to quantify. ECF No. 118-2 (Pls.' SMF) ¶¶ 238-39, 246.<br><br>ASHRAE also objects to the incredibly misleading use of Mr. Comstock's testimony, which involved the observed impact of ASHRAE's own postings of standards in its reading room on a read-only basis, not Public Resource's posting. (*See* Declaration of Jordana Rubel, previously filed at Dkt. 118-12, ¶ 11, Ex. 8 (Comstock Depo.) at 11-12). Because this testimony does not relate to the posting by Defendant, ASHRAE also objects to the use of the testimony on the basis of relevance (Fed. R. Evid. 402).<br><br>ASTM and NFPA object to the use of evidence regarding ASHRAE against them as irrelevant. |
| 137. ███████████████████████ ████████████████████████ Dkt. 120, Ex. 146; Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 144:22–145:2. | Disputed. While ASTM has not calculated a precise number of damages, the evidence demonstrates that ASTM has been harmed by Defendant's conduct. Mr. Jarosz stated that Plaintiffs had suffered financial losses but they were exceedingly difficult to quantify. ECF No. 118-2 (Pls.' SMF) ¶¶ 238-39, 246. |
| 138. ASTM has no evidence that it has lost sales of any of the incorporated standards at issue because Public Resource made the incorporated standards at issue publicly | Disputed. ASTM presented evidence that many people accessed versions of ASTM standards that Defendant placed online, some of whom may have otherwise purchased the |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| available. Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 152:19–24. | standards from ASTM. ECF No. 118-2 (Pls.' SMF) ¶¶ 241, 243-44 (showing over 88,000 accesses of ASTM's standards from Defendant's website in a 10-month period and thousands of downloads of ASTM's standards from the Internet Archive); Def. Ex. 9 (Jarosz Depo.) 212:16-213:3; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶¶ 98-99 (showing the download and access data from PRO's website and in the Internet Archive showing seven times more views than ASTM's total views across all six years). |
| 139.    ASTM has no evidence that Public Resource caused ASTM to lose money. Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 154:25–155:5. | Disputed.  While ASTM has not calculated a precise number of damages, the evidence demonstrates that ASTM has suffered damage as a result of Defendant's conduct. ASTM presented evidence that many people accessed versions of ASTM standards that Defendant placed online, some of whom may have otherwise purchased the standards from ASTM.  ECF No. 118-2 (Pls.' SMF) ¶¶ 241, 243-44 (showing over 88,000 accesses of ASTM's standards from Defendant's website in a 10-month period and thousands of downloads of ASTM's standards from the Internet Archive); Def. Ex. 9 (Jarosz Depo.) 212:16-213:3; ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶¶ 98-99 (showing the download and access data from PRO's website and in the Internet Archive showing seven times more views than ASTM's total views across all six years). |
| 140.    ASTM has no knowledge of any evidence that Public Resource caused ASTM any property damage or injury. Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 155:7–12. | Undisputed that ASTM has no knowledge of evidence that Defendant caused ASTM property damage.  Disputed as to the existence of evidence that Defendant caused ASTM injury. ECF No. 118-2 (Pls.' SMF) ¶¶ 214-15, 241, 243-45. |
| 141.    ASTM has no evidence that Public Resource caused ASTM any damage to | Disputed.  Plaintiffs presented evidence of Defendant's posting versions of ASTM |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| ASTM's reputation. Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 165:12–15. | standards that contain errors online.  ECF No. 118-2 (Pls.' SMF) ¶¶ 214-15, 245. |
| 142.    Plaintiffs' expert Jarosz was unable to quantify any financial losses to Plaintiffs as a consequence of Public Resource's activities. Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 63:3–10. | Disputed.  Mr. Jarosz stated that Plaintiffs had suffered financial losses but they were exceedingly difficult to quantify a precise number for those losses with great certainty. ECF No. 118-2 (Pls.' SMF) ¶¶ 238-39, 246. |
| 143.    Plaintiffs' expert Jarosz was not aware of any documents showing NFPA suffered harm from Public Resource's activities.  Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 123:9–18. | Disputed.  This is not true.  The cited testimony does not support the fact, and Mr. Jarosz stated numerous times that he relied on documents referenced in paragraph 133 of his report, among others, that show harm. |
| 144.    Plaintiffs' expert Jarosz's only evidence of harm is statements by plaintiffs' officers. Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 155–163. | Disputed.  In addition to relying on persons with knowledge of relevant information, Mr. Jarosz relied on documentary evidence, including, but not limited to, documents showing the number of downloads of copies of Defendant's copies of Plaintiffs' standards and documents showing that Defendant did not correctly copy Plaintiff's standards.  Mr. Jarosz also relied on the testimony of Public Resource and Carl Malamud.  *See* Jarosz Report, Tab 2. |
| 145.    Plaintiffs' expert Jarosz was not aware of any direct evidence of the impact of Public Resource's activities on Plaintiffs' financials. Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 160:3–6. | Disputed.  Mr. Jarosz relied on direct evidence of the harm and its impact to Plaintiffs as cited in response to paragraph 144 above, among other evidence. |
| 146.    Plaintiffs'   expert   Jarosz   did   not correlate Public Resource's posting of the standards at issue with Plaintiffs' revenues from the sale of the standards at issue. Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 177:17–178:5. | Undisputed. |
| 147.    Plaintiffs' expert Jarosz did no analysis to distinguish the profitability of the standards at issue from the profitability of standards that have not been incorporated by reference into | Undisputed. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| law. Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 183:4–15. | |
| 148.    Plaintiffs' expert Jarosz lacks certainty that Public Resource's posting of the standards at issue caused any economic loss to Plaintiffs. Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 212:11–213:3. | Disputed.  Mr. Jarosz stated that Plaintiffs had suffered financial losses but they were exceedingly difficult to quantify.  ECF No. 118-2 (Pls.' SMF) ¶¶ 238-39, 246. Additionally, Mr. Jarosz stated that he could say with reasonable certainty that if people had not accessed or downloaded versions of ASTM's standards that Defendant posted online, in some instances they would have obtained the ASTM standards from ASTM through legal means.  Def. Ex. 9 (Jarosz Depo.) 212:16-213:3. |
| 149.    Plaintiffs' expert Jarosz did not evaluate the extent of distribution of the standards at issue via Public Resource's website.  Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 214:13–215:3; 216:2–5; 245–49. | Disputed to the extent it suggests that it would be possible to evaluate the extent of distribution of the standards via Defendant's website.  Defendant does not know what people do with the versions of Plaintiffs' standards that are posted on Defendant's website.  And Defendant admitted it has no way to identify who downloaded, made additional copies of, or printed the versions of Plaintiffs' standards from its website. ECF No. 118-2 (Pls.' SMF) ¶¶ 247-48. |
| 150.    ASHRAE is not aware of any revenue lost from the free availability of ASHRAE standards online. Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.)  at  12:2–11;  63:10–16; 64:20–25. | Disputed.  The citation to Mr. Comstock's testimony, which involved the observed impact of ASHRAE's own postings of standards in its reading room on a read-only basis, not Public Resource's posting of standards, is incredibly misleading and does not support the asserted proposition.  (See ECF No. 204-50 (Def's Ex. 44) (Comstock Depo.) at 11-12).  Also, because this testimony does not relate to the posting by Defendant, ASHRAE also objects to the use of the testimony on the basis of relevance (Fed. R. Evid. 402). |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | ASHRAE further objects to the extent that the testimony elicited supports the fact that there has been no formal tracking of lost revenue, but that is not to say that no loss occurred – only that it was not tracked.  And ASHRAE's witnesses did point to anecdotal evidence of lost revenue due to free availability of the standards online, even if the impact was not quantified. *See* ECF No. 204-50 (Def's Ex. 44) (Comstock Depo.) 63:17-25. |
| 151. ███████████████ █████████████ ████████ Dkt. 163, Ex. 10. | Disputed. ██████████████ ████████████████ ████████████████ ████████ ECF No. 117-2 (Jarosz Rep.) ¶ 95. ████████████████ ████████████████ ████████████████ *See* Dkt. 163, Ex. 10. |
| 152. ███████████████ ████████████████ ████████████████ ████████████ Dkt. 163, Ex. 11. | Disputed. ██████████████ ████████████████ ████████████ ECF No. 117-2 (Jarosz Rep.) ¶ 95. |
| 153.   ASTM's sales from publications have increased 2% during the three years Public Resource was first posting ASTM Standards. This was in accord with Grove's expectations. Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 19:21–20:13. | Undisputed. |
| 154.   ASHRAE has not attempted to track losses  due  to  Public  Resource's  conduct. | Undisputed. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.) at 63:10–16. | |
| 155.    NFPA has not identified "any direct correlation" between adoption of an edition and an increase in sales. "The only general correlation is that once a new version of the code is out, we will sell more of the new edition and less of the old edition, but nothing – no general correlation to adoption or specific spikes." Becker Decl., ¶ 9, Ex. 42 (Mullen Depo.) at 95:3–25. | Undisputed. |
| 156.    NFPA does not have a number on any balance sheet that corresponds to the value of the copyrights it holds because NFPA does not "attempt to place any value on any intangible asset." Becker Decl., ¶ 9, Ex. 42 (Mullen Depo.) at 140:11–18. | Undisputed. |
| 157.    According to NFPA's Bruce Mullen, "If I had to guess, the non-business or government purchases is probably less than 1 percent of the total sales." Becker Decl., ¶ 9, Ex. 42 (Mullen Depo.) at 187:14–23. | Disputed.  Defendant's purported fact is a quote from an email that was shown to Mr. Mullen at his deposition which he did not author, receive, or recognize.  Mr. Mullen simply did not state what Defendant alleges he did.<br><br>Objection.  Inadmissible hearsay. |
| 158.    Allowing "unauthorized persons" to use standards without training is not a cognizable harm. Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 227:14–228:14. | This is a legal conclusion and not a factual statement.<br><br>Disputed.  The cited source addresses the provision of training or guidance by unauthorized persons.  It does not contain any conclusion or opinion that such training is not a cognizable harm or that such training does not cause Plaintiffs other forms of cognizable injuries (e.g., financial harm). |
| 159.    "Confusion" between incorporated standards and newer versions of Plaintiffs' standards does not harm Plaintiffs.   Becker | This is a legal conclusion and not a factual statement. |

81

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 254:14–257:9. | Disputed. This statement is not supported by the cited source and Defendant provides no other basis for it. |
| 160.    In 2002, Plaintiffs NFPA and ASHRAE argued that a lack of private monopoly to control the reproduction of mandatory building codes would "destroy" the "ability of private standards developers to underwrite the development and updating of their standards." Dkt. 122-8, Ex. 121 (Brief of American Medical Assoc. et al. as Amici Curiae at 12, *Veeck v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002) (No. 99-40632)). | Disputed to the extent it suggests that NFPA and ASHRAE described copyright protection as a "private monopoly to control the reproduction of" materials.<br><br>Objection to Exhibit 121 as hearsay and lacking foundation/personal knowledge. |
| 161.    After the *Veeck* decision, ASTM International and many other SDOs filed briefs seeking Supreme Court review.  In those briefs, they insisted, at length, that if that decision stood it would destroy the standards development process. Dkt. 164-14.  Yet certiorari was not granted. | Objection.  This statement is unsupported by the evidence, which attaches an amicus brief filed by ASTM, not "other SDOs."  It is otherwise irrelevant.<br><br>Disputed to the extent it states ASTM was seeking Supreme Court review.  ASTM was not a party in *Veeck* case.  *See Veeck v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002). |
| 162.    Plaintiffs have no evidence that they suffered any loss of revenues in Texas, Louisiana, or Mississippi since 2002, when the Fifth Circuit Court of Appeals decided *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 796 (5th Cir. 2002) (*en banc*). Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 130:6–19. | Disputed.  The *Veeck* decision explicitly stated it did not apply to standards incorporated by reference, like Plaintiffs' standards.  Thus there would be no basis for expecting Plaintiffs to have suffered loss of revenue as a result of the *Veeck* decision. *See* ECF No. 118-1 (Pls.' Mem.) at 26-27.<br><br>Moreover, following the *Veeck* decision, the OFR considered and rejected the argument that the *Veeck* decision resulted in the loss of copyright protection in incorporated standards.  1 C.F.R. § 51 at 66268 ("In our discussion of the copyright issues raised by the petitioners and commenters, we noted |

82

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | that recent developments in Federal law, including the *Veeck* decision and the amendments to FOIA, and the NTTAA have not eliminated the availability of copyright protection for privately developed codes and standards referenced in or incorporated into federal regulations. Therefore, we agreed with commenters who said that when the Federal government references copyrighted works, those works should not lose their copyright.") |
| 163.    Eleven states and United States territories jointly filed an amicus brief in support of Peter Veeck in the case *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 801 (5th Cir. 2002), in which they asserted that "[c]opyright, while permitted by the Constitution, is at base only a statutory right . . . . On the other hand, due process is a constitutional right of the first order." Dkt. 164-13 at 4. | Objection.  This statement is inadmissible hearsay to the extent it is offered to prove the truth of the matter asserted.  It is otherwise irrelevant. |
| 164.    People want to use the most recent version of ASTM's standards, even if an older version is incorporated by reference into law. Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 171:5–8. | Objection.  Lack of foundation/personal knowledge.  The witness lacks a basis for opining about what "people want."<br><br>Disputed to the extent it implies that there is no value to an older version of an ASTM standard or that older versions of ASTM standards do not need copyright protection. |
| 165.    People may want to read older versions of standards because the older version may be the version that is incorporated by reference in a code or regulation. Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.) at 19:20–24. | Objection.  Lack of foundation/personal knowledge.  The witness lacks a basis for opining about what "people want."<br><br>Objection by ASTM and NFPA.  The testimony relates only to ASHRAE standards and is irrelevant to ASTM and NFPA.<br><br>Disputed because this is unsupported speculation, not a statement of fact. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| **XI.   PUBLIC RESOURCE'S NOMINATIVE FAIR USE AND ABSENCE OF CONSUMER CONFUSION** | |
| 166.   Public Resource voluntarily applies notices to the incorporated standards at issue on its website describing the process it uses to copy standards and disclaiming affiliation with any SDOs. *See, e.g.*, an example of one of the standards posted on the Internet Archive, at https://archive.org/details/gov.law.nfpa.13.2002; *see also* Dkt. 121-5 ¶ 30, Ex. 3. | Objection.  Disputed to the extent that PRO failed to attach as evidence the page that appears at the URL https://archive.org/details/gov.law.nfpa.13.2002.  Plaintiffs are unable to tell what information appeared when PRO posted this page, and PRO's disclaimers have changed over time.  ECF No. 198-3 (Pls.' 2d. Supp. SMF) ¶¶ 26-29.  Plaintiffs object to this citation as violating the best evidence rule. <br><br> Disputed.  The cited exhibit shows application of a notice on the HTML version of a standard that PRO posted online in 2015 and is not a Work at issue.  Defendant presented no evidence that it applied this notice on any PDF or HTML version of a standard at issue when it posted it in 2012.  The HTML versions of at least some of the standards at issue in this litigation do not include this disclaimer. *See* Wise Decl. ¶ 166, Ex. 165 (showing HTML version of ASTM standard D86-07). |
| 167.   Each of the incorporated laws at issue has a title that contains one of the Plaintiffs' names. Compl. Exs. A–C, ECF No. 1. | Disputed to the extent it suggests that Plaintiffs' standards are themselves law.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. |
| 168.   Public Resource displays links to standards incorporated by reference into the Code of Federal Regulations in a table that identifies the standards by their alphanumeric code, e.g., ASTM D396-98, its year, the developing organization, the title of the standard, and the C.F.R. section that | Objection.  Defendant's webpage is hearsay if it is offered to prove the truth of any of the matters asserted therein. <br><br> Disputed to the extent PRO suggests that the information contained in the exhibit accurately reflects the current contents of its website.  The page in question does not |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| incorporated the standard by reference. Dkt. 121-5 ¶ 28, Ex. 2. | currently include any standards published by Plaintiffs.  Wise Decl. II ¶ 10, Ex. 182 (https://law.resource.org/pub/us/cfr/manifest.us.html).<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.<br><br>Disputed to the extent it suggests that PRO provides accurate information regarding incorporation by reference.  As explained in Plaintiffs' briefing, PRO often provides inaccurate information.  *E.g.*, Mot. 15 & n.10. |
| 169.   Planintiffs' [sic] names must be used in order to refer to the standards at issue.   For example, ASTM states that the citation format for this standard is: "ASTM D396-98, Standard Specification for Fuel Oils, ASTM International, West Conshohocken, PA, 2001, www.astm.org." Dkt. 122-9, Ex. 147. | Objection.  PRO's reliance on ASTM's citation format to give proper attribution to an ASTM work is irrelevant to the question of whether PRO can use the ASTM trademark in other contexts.<br><br>PRO's statement that "names must be used" is a legal conclusion, not a fact.<br><br>Disputed to the extent it implies PRO has no alternative but to use ASTM's trademark.  PRO cites no evidence to refute the fact that it could refer to ASTM standards by their designation (e.g., D396-98) or by "the standard incorporated by reference in" the relevant incorporating regulation. |
| 170.   Public Resource purchased a physical copy of each of the incorporated laws at issue.  Dkt. 121-5 ¶ 24. | Disputed to the extent it suggests that Plaintiffs' standards are themselves law.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 171.    Public Resource posted on its website a PDF version of each incorporated law at issue. The PDF version accurately appeared as a scan of a physical version of the incorporated law. Dkt. 121-5 ¶ 24. | Disputed.  Defendant added a cover page to the PDF versions of Plaintiffs' standards so PRO's postings do not accurately appear as a scan of a physical version of Plaintiffs' standards.  ECF No. 118-2 (Pls.' SMF) ¶¶ 183-84.  Defendant also admits that it made errors in creating the PDF versions of Plaintiffs' standards, including skipping pages and scanning pages upside down.  ECF No. 118-2 (Pls.' SMF) ¶¶ 214, 216.<br><br>Disputed to the extent it states that Plaintiffs' standards are themselves law.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. |
| 172.    For some of the incorporated laws at issue, Public Resource posted versions in HTML and SVG formats. Dkt. 121-5 ¶ 25–26. | Disputed to the extent it suggests that Plaintiffs' standards are themselves law.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.<br><br>Disputed to the extent it implies that posting versions of Plaintiffs' Works is transformative as addressed in Plaintiffs' brief.  Reply at Part I.A.1.b. |
| 173.    For some of the PDF versions of the incorporated laws, Public Resource attached its own cover page, which indicated where the law was incorporated by reference. Dkt. 121-5 ¶ 20–22; Compl. Ex. G, ECF No. 1-7. | Disputed to the extent it suggests that Plaintiffs' standards are themselves law.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.<br><br>Defendant presented no evidence that it added a cover page to only some, rather than all, of the PDF versions of Plaintiffs' standards.  See ECF No. 118-2 (Pls.' SMF) ¶¶ 183-84. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed to the extent it suggests that PRO provides accurate information regarding incorporation by reference.  As explained in Plaintiffs' briefing, PRO often provides inaccurate information.  *E.g.*, Mot. 15 & n.10. |
| 174.  Public Resource's addition of embedded text and metadata in the PDF versions of incorporated laws on its website did not change the appearance of the PDF versions. Dkt. 121-5 ¶ 25. | Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. |
| 175.   The embedded text in the PDF versions of incorporated laws on Public Resource's website enabled software based searching and text to speech functionality. Dkt. 121-5 ¶ 25. | Objection.  This is statement is supported solely by inadmissible opinion testimony.

Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84.

Disputed to the extent it states that Plaintiffs' standards are themselves laws.  Disputed to the extent it implies any individual who accessed the PDF versions actually performed software based searching and/or used text-to-speech functions.  Disputed to the extent it implies that an individual who used text-to-speech functions would consider the versions of Plaintiffs' standards on Defendant's website to be accessible. *See* Pls.' Supp. SMF ¶ 5 (Fruchterman Depo. 256:12-259:6).

Disputed.  There is no record evidence supporting that the embedded text in the PRO's PDF versions of the Works actually this enabled speech functionality. Additionally, Mr. Fruchterman |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | acknowledged that he had asked a visually disabled person to evaluate the PDF versions of Plaintiffs' standards that were posted on Defendant's website, and that person informed him that those documents could not be considered to be accessible.  ECF No. 155-1 (Pls.' Supp. SMF) ¶ 5 (Fruchterman Depo. 256:12-259:6). |

| A. | The Standards that Plaintiffs Publish Already Have Errors |
|---|---|

| 176.   Public Resource purchased a physical copy of the 2011 NEC, which did not include a requirement that high-voltage cables be shielded. Public Resource posted an electronic version of that physical copy on its website in PDF and HTML formats. Dkt. 121-5 ¶ 34. | Disputed to the extent it suggests that Defendant acted reasonably in posting a version of the 2011 NEC with these errors. The errata in question was issued by NFPA and posted on NFPA's website in April 2011, more than a year before Defendant posted the 2011 NEC on its website. |
| 177.   NFPA issued two errata to the 2011 NEC.  The errata included the addition of a requirement that high-voltage cables be shielded as well as changes to cross-references in various sections. Dkt. 122-8, Exs. 123–24. | Undisputed. |
| 178.   Public Resource promptly corrected the errors to certain HTML versions of incorporated laws that Plaintiffs' counsel identified during the course of the deposition of Carl Malamud. Dkt. 121-5 ¶ 33. | Disputed—PRO has still not corrected the errors.  *See* ECF No. 118-2 (Pls.' SMF) ¶ 218; ECF. No. 198-3 (Pls.' 2d. Supp. SMF) ¶¶ 14-25.<br><br>Disputed to the extent it suggests that Plaintiffs' standards are themselves law. Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. |

| XII. | PUBLIC INTEREST CONSIDERATIONS |
|---|---|

| 179.   It is in the public interest for people to be educated about the NFPA standards. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 121:22–122:4 ("NFPA's standards establish ways to | Disputed to the extent Defendant characterizes Mr. Bliss's testimony as a legal conclusion regarding the public interest or that Mr. Bliss's statement would apply to |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| make buildings safer and processes to be safer and for people to act or react in a more safe manner when it comes to fire, electrical safety and other hazards.  It's in the public interest that people be educated about those requirements or those standards."). | PRO's purported "educational" purpose.  The NFPA and its standard development work more broadly serves the public interest.  ECF No. 118-2 (Pls.' SMF) ¶ 95. |
| 180.    It is in the public interest for people to use the ASTM standards. M. Becker Decl. ¶ 20, Ex. 22 | Undisputed. |
| 181.    Public.Resource.org seeks to inform the public about the content of the law. Dkt. 122-2, Ex. 17 (C. Malamud Ex. 33) (Public Resource "tries to put more government information online. We've had a big impact on putting more judicial information on the Internet, but also do fiche and a variety of other documents such as IRS nonprofit tax returns."). | Objection as to relevance of Mr. Malamud's or PRO's supposed subjective intent.  As explained in Plaintiffs' briefing, fair use turns on how a work appears to a reasonable observer, not on the infringer's subjective intent.  Reply at Part I.A.1.b.  Disputed to the extent it suggests that Plaintiffs' standards are themselves law.  Disputed to the extent it implies that each of the standards at issue has been incorporated by reference in its entirety or at all for the reasons stated in response to Paragraph 84. |
| 182.    The Internet is fast becoming the primary means of obtaining information about government operations and policies. See U.S. Department of Justice, Civil Rights Division, "Accessibility of State and Local Government Websites to People with Disabilities," http://www.ada.gov/websites2.htm.  Accessibility best practices follow the principle of universal design, which states that the best accommodations for people with disabilities are those that benefit everyone: | Objection.  The statement by the Department of Justice, Civil Rights Division is inadmissible hearsay to the extent it is offered to prove the truth of the matter asserted.  The statement is also irrelevant.  The D.C. Circuit has already rejected Defendant's argument that converting works into a format more accessible for the visually impaired is transformative use.  *Am. Soc'y for Testing & Materials*, 896 F.3d at 450. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| When accessible features are built into web pages, websites are more convenient and more available to everyone—including users with disabilities. Web designers can follow techniques developed by private and government organizations to make even complex web pages usable by everyone including people with disabilities.<br><br>*Id.* | This statement also is improper opinion testimony.<br><br>Disputed. This statement is not supported by any admissible evidence. |
| 183.    A special commission of the Department of Education concluded in the field of accessibility for higher education that requiring people with disabilities to use special accommodations from the providers of instructional material is disfavored. "Rather, the ideal is for . . . instructional materials to be available in accessible forms in the same manner that and at the same time as traditional materials." Advisory Commission on Accessible Instructional Materials, Report of the Advisory Commission on Accessible Instructional Materials in Postsecondary Education for Students with Disabilities at 49 (December 6, 2011), http://www2.ed.gov/about/bdscomm/list/aim/meeting/aim-report.pdf. The Chafee Amendment, codified at 17 U.S.C. § 121, has never been the Copyright Act's sole means of promoting accessibility, and federal officials now consider it outdated and in need of reform. *See id.* at 43-44. | Objection. The statement by the Advisory Commission on Accessible Instructional Materials is inadmissible hearsay to the extent it is offered to prove the truth of the matter asserted.<br><br>The statement is also irrelevant. The D.C. Circuit has already rejected Defendant's argument that converting works into a format more accessible for the visually impaired is transformative use. *Am. Soc'y for Testing & Materials*, 896 F.3d at 450.<br><br>This statement also is improper opinion testimony.<br><br>Disputed. This statement is not supported by any admissible evidence. |

## XIII.   DRAFTING OF THE STANDARDS AT ISSUE

| | |
|---|---|
| 184.    Each standard at issue was developed by a large number of unpaid volunteers, including federal government employees, state and municipal government employees, employees of private companies and organizations, and ordinary citizens. Becker Decl., ¶ 7, Ex. 40 | Objection. Vague as to the use of the term "developed."<br><br>Disputed to the extent it implies that volunteers were the only developers of the standards. Plaintiffs presented evidence that |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| (Smith Depo.) at 56:03–57:06; ¶ 79, Ex. 81; Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 97:25–98:07; ¶ 20, Ex.22; ¶ 22, Ex. 24; Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 15:16–16:10, 51:20–52:15, 75:17–76:11, 240:22–242:04; Becker Decl., ¶ 9, Ex. 42 (Mullen Depo.) at 114:22–115:23; Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 21:01–23:21, 105:08–106:18 194:04–194:07; ¶ 42, Ex. 44; ¶ 46, Ex. 48. | their employees drafted language that appears in the standards. ECF No. 118-2 (Pls.' SMF) ¶¶ 34-35, 117, 137-39, 141. Disputed to the extent it suggests that the individuals who authored each standard or any portion thereof included federal, state and municipal government employees because Defendant provides no support for this proposition. |
| 185.    Volunteers or members of the public proposed the creation or revision of the standards at issue. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 18:05–18:19, 280:10–280:20; ¶ 93, Ex. 95; ¶ 123, Ex. 125, p. 4; Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 94:20–98:24; ¶ 124, Ex. 126, p. 5 (discussing ASHRAE membership categories). | Disputed.  Plaintiffs' rules dictate the process and procedures for developing, revising and updating the standards on a regular schedule. ECF No. 118-2 (Pls.' SMF) ¶¶ 42, 93, 140. Plaintiffs also have a role in deciding whether or not to develop a standard. *See, e.g.*, ECF No. 118-2 (Pls.' SMF) ¶ 92. Plaintiffs control the development of the standards they publish.  ECF No. 118-2 (Pls.' SMF) ¶¶ 30-36, 117-18, 138-41. Plaintiffs have procedures in place to ensure that standards meet their required form and style guidelines.  ECF No. 118-2 (Pls.' SMF) ¶¶ 34, 118, 139. |
| 186.    Volunteers drafted the language for the standards at issue, with public input, and determine the arrangement and inclusion of proposed text.  Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 18:05–18:23, 20:04–20:11; ¶ 93, Ex. 95; Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 45:12–46:02 ("We use a system of volunteers to serve on committees to develop the standard. It's volunteers that serve on the standards council.   It's volunteers that serve as our membership to make the final voting."); Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 46:03–46:13; Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 29:12–29:21; Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 49:08-50:11; Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 60:05–60:12 | Disputed to the extent it implies that volunteers were the only drafters of the standards. Plaintiffs presented evidence that their employees drafted language that appears in the standards. ECF No. 118-2 (Pls.' SMF) ¶¶ 34-35, 117, 137-39, 141. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| ("[ASHRAE] Standard 90.1 is on continuous maintenance, so anyone at any time can propose a change to the standard. It could be a project committee member or the public."). | |
| 187. Volunteers voted on the final content of the standards at issue at the end of the development or revision process. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 15:25–16:10, 17:14–17:24, 98:07–98:25, 186:21–186:25, 274:23–276:12; Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 45:12–46:13; Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 55:22–57:17; Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 94:20–96:02 (describing the volunteer committee resolution process that votes on drafts and revisions of ASHRAE standards). | Undisputed. |
| 188. The volunteers who developed the standards at issue did so out of service to their country as federal, state, or municipal employees, in furtherance of the business interests of the private companies or organizations they worked for, or because of personal interest. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 45:16–46:04 (stating that volunteers develop ASTM standards because "a company or an individual would be interested in having an ASTM standard that they could say their product or service is in compliance with"); Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 138:22139:12 (as a public official, Mr. Bliss participated in NFPA standard development because his "motivation was to try and establish the best possible fire safety standards that could be developed"); Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 50:12-51:06 (volunteers or members of the public participate because it affects their business interests and they want to write the language that is adopted into code, or because of personal interest). | Objection. Vague as to the use of the term "developed." The motivations of volunteers who participated in Plaintiffs' standards development process is also irrelevant.<br><br>Disputed. This statement is not supported by the cited sources. Defendant has no basis for drawing any conclusions about the motivations of any, much less all, of the hundreds of thousands of volunteers who participated in Plaintiffs' standards development process.<br><br>Disputed to the extent it implies that volunteers were the only developers of the standards. Plaintiffs presented evidence that their employees drafted language that appears in the standards. ECF No. 118-2 (Pls.' SMF) ¶¶ 34-35, 117, 137-39, 141. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 189.    Plaintiffs' employees set up meetings to discuss drafts of the standards at issue at public locations, advised the volunteers who drafted the standards, and assisted with formatting. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 268:13–272:25 (listing the ways in which ASTM staff assist the people who actually draft the standards); Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 52:16–53:04 ("NFPA employees are not -- cannot be members of our technical committees.  However, as I stated previously, it's important -- there's an important role that NFPA staff plays in guiding, advising the committee, coordinating the activities and providing their technical expertise, especially technical staff liaison into this committee process.  But they do not have -- they're not members of the committee, and they do not carry a vote in the decisions of the committees."); Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 97:13–98:19 (involvement of ASHRAE staff in development and updating of standard 90.1 is limited to reviewing and making suggestions to the volunteers who draft and vote on the text of the standard). | Disputed to the extent it implies that these are the only tasks performed by Plaintiffs' employees.   Plaintiffs presented evidence that their employees drafted language that appears in the standards.  ECF No. 118-2 (Pls.' SMF) ¶¶ 34-35, 117, 137-39, 141. |
| 190.    Plaintiffs did not have control over the content of the standards at issue during the development and revision of those standards.  The decision to develop or revise the standards at issue was made by volunteers, not by the Plaintiffs. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 15:25–16:10, 17:14–17:24, 98:07–98:25, 186:21–186:25, 274:23–276:12; Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 45:12–46:02, 46:03–46:13 (NFPA employees assist the volunteers, but the volunteers have the "ultimate decision . . . as to what the language will actually say"); Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 55:22–57:17; Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 94:20–96:02. | Objection.  Vague and ambiguous as to the term "control."<br><br>Disputed.  Plaintiffs presented evidence that their employees drafted language that appears in the standards.  ECF No. 118-2 (Pls.' SMF) ¶¶ 34-35, 117, 137-39, 141.  Disputed to the extent it omits reference to the Plaintiffs, to whom the volunteers proposed the creation or revision of the standards.<br><br>Plaintiffs have a role in deciding whether or not to develop a standard.  *See, e.g.*, ECF No. 118-2 (Pls.' SMF) ¶ 92.  Plaintiffs' rules dictate the process and procedures for |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | developing, revising and updating the standards on a regular schedule.  ECF No. 118-2 (Pls.' SMF) ¶¶ 42, 93, 140.  Plaintiffs control the development of the standards they publish.  ECF No. 118-2 (Pls.' SMF) ¶¶ 30-36, 117-18, 138-41.  Plaintiffs also have procedures in place to ensure that standards meet their required form and style guidelines.  ECF No. 118-2 (Pls.' SMF) ¶¶ 34, 118, 139. |
| 191.  Federal government employees authored parts of the standards at issue. M. Becker Decl. ¶ 20, Ex. 20 at 1; ¶ 21, Ex. 23 at 9.  *See also* Table 6 of "Comment on Safety Standard for Automatic Residential Garage Door Operators", Public.Resource.Org, Nov. 16, 2015, at https://law.resource.org/pub/us/cfr/regulations.gov.docket.15/cpsc.gov.20151116.html#t6 (cata-loguing nineteen textual contributions to the National Electrical Code from Consumer Product Safety Commission staff). | Objection to PRO's reliance on Exhibit 20.  It is hearsay.  As it appears to be a statement Mr. Malamud made to the Ninth Circuit—not any evidence that federal government employees authored standards—it is irrelevant.  Plaintiffs further object to PRO's reliance on Table 6 of "Comment on Safety Standard for Automatic Residential Garage Door Operators" as irrelevant hearsay and for lack of authenticity.  The document was not attached as an exhibit to PRO's motion and the link directs to a letter from Carl Malamud titled: "Status Code 451: Your Request Has Been Denied."  Plaintiffs further object as, to the extent the cited evidence does not relate to one of the Works, it is irrelevant.  <br><br>To the extent PRO intends to rely on the document at the website https://law.resource.org/pub/us/cfr/regulations.gov.docket.15/cpsc.gov.20151116.html, that document's Table 6 offers no support for its self-serving assertion that federal government employees drafted any portion of any standard.  Specifically, all of the links in that Table take a visitor to a Consumer Product Safety Commission website that reads "Be Right Back…"  <br><br>Disputed.  This statement is entirely unsupported by the cited documents. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
|  | Defendant has presented no evidence that federal government employees drafted any language that appears in any of the standards at issue.<br><br>Moreover, federal government employees may participate in the development of private standards without altering the copyrightability of that standard.  Revised OMB Circular No. A-119, 81 FR 4673, (2016). |
| 192.    Employees of third party companies, organizations, or government entities authored parts of the standards at issue in their capacity as employees of those third party companies, organizations, or government entities. Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 163:04–164:19. | Disputed.  Plaintiffs are the organizational authors who oversee the development of the Works.  *See Veeck v. Southern Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 794 (5th Cir. 2003) (en banc).  Moreover, Plaintiffs own copyright registrations for each of the Works.  ECF No. 198-3 (Pls.' SSUMF) ¶¶ 1, 7, 9-10. Defendants also do not dispute that ASTM has copyright registrations that cover each of the standards at issue in this litigation.  ECF No. 155-3 ¶ 70.<br><br>Disputed to the extent it implies that any or all employees of any company, organization or government entity participate in Plaintiffs' standard development processes in their capacity as employees of those entities.  Disputed to the extent it implies that any employees of government entities authored any parts of the standards at issue.  Defendant has presented no evidence to support these assertions.  Defendant does not even cite any evidence related to ASTM or ASHRAE to support this statement. |
| 193.    Plaintiffs have no procedures to ensure that employees of third party companies, organizations, or government entities are capable of transferring any copyright in the standards at issue to Plaintiffs, and that such copyright is not instead held by the employer. | Objection.  Relevance.  Defendant has not identified any language in any of the standards at issue that were authored in whole or in part by an employee of a third-party company, organization, or government entity. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| Plaintiffs do not have any procedures in place to ensure that governmental and private company employees who participate in the development of standards have the authority or ability to transfer copyright to the Plaintiff organizations, and Plaintiffs did not request copyright assignments from the employers of the individuals who authored components of the standards at issue. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 46:12–49:25, 166:17-170:19; Dkt. 120, Ex. 74; Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 220:15–220:25 ("NFPA verifies through our policy the submission from the individual. We do not go to their companies to verify authority of their signature."); Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 92:13–93:07. | Disputed. NFPA's and ASHRAE's assignment forms require the person signing to warrant that he/she has the authority to enter into the assignment. ECF No. 118-8, (Pauley Decl.) ¶ 31, Ex. B (NFPA assignment forms state: I hereby warrant that . . . I have full power and authority to enter into this assignment."); ECF No. 121-2 (Def. SUMF) ¶ 144 (ASHRAE forms state: "I hereby attest that I have the authority and I am empowered to grant this copyright release."). <br><br> Disputed to the extent it implies that Plaintiffs have an affirmative obligation to ensure that individuals who sign assignment forms are authorized to sign such forms. <br><br> Plaintiffs also have intellectual property policies and registration forms that are widely available and distributed. *See, e.g.,* ECF No. 122-5, Def. Ex. 79. To the extent employers direct any employees to participate in the SDO process, they are or should be aware of the conditions under which all individuals participate, including the requirement that they assign any copyright interest that they may have to the SDO. |

**A.      Copyright is not One of the Incentives for Drafting the Standards.**

| | |
|---|---|
| 194.      Persons who volunteer to create and develop voluntary consensus standards have incentives to do so that are independent of owning the copyright to the standards or earning revenue from the sale of the standards. Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 82:9–17; Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 45:16–46:10; Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 21:1–3; 15–17; Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 50:12– | Objection. Lack of foundation and/or personal knowledge. The fact witnesses cited by Defendant lack person knowledge of the incentives of volunteers who create and develop standards. Relevance. The incentives of persons who are not authors of standards at issue are irrelevant. <br><br> Undisputed that volunteers who assist in the development of voluntary consensus |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 51:6; Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 118:09–119:01. | standards participate in the standards development process for a variety of reasons, but those volunteers neither bear the significant costs of creating and publishing of the standards, nor do they do all of the work that is necessary for the creation and publication of the standards. Only SDOs such as Plaintiffs do that work. ECF No. 118-2 (Pls.' SMF) ¶¶ 43, 104, 105, 152. Disputed to the extent this implies that Plaintiffs would have the incentive to create and develop their standards if they did not own the copyrights in the standards. *See* ECF No. 118-2 (Pls.' SMF) ¶¶ 45-47, 105-08, 152-53. None of the cited evidence suggests as much. |
| 195.   Plaintiffs have earned revenue from sources other than selling copies of the standards. These sources include revenue from selling interpretative material related to incorporated standards; standards that have not been incorporated into law; membership dues; conference fees; training services; and public grants and contracts. Becker Decl., ¶ 9, Ex. 42 (Mullen Depo.) at 130:21–133:03; 228:11–229:23; Becker Decl., ¶ 11, Ex. 44 (Jarosz Depo.) at 192:22–193:6; Becker Decl., ¶ 13, Ex. 46 (Bliss Depo.) at 199:23–201:12; 158:06–159:15; Becker Decl., ¶ 12, Ex. 45 (Grove Depo.) at 264:22–266:19; Becker Decl., ¶ 11, Ex. 44 (Comstock Depo.) at 48:23–56:21; 59:03–60:02;    72:5–74:15.    Plaintiffs acknowledge that other standards development organizations operate without asserting a right to exclude. ECF No. 117-1 (Jarosz Rep.) ¶ 81. | Objection. Relevance. The methods of operation of non-party standards development organizations with different business models are irrelevant. Undisputed as to the first two sentences. Plaintiffs acknowledge that certain European standards development organizations do not depend on the sales of their standards to support the development of their standards. These standards development organizations are funded in a front-loaded fashion, in which they charge members to participate and contribute to the standards development process. ECF No. 118-12, Ex. 1 (Jarosz Rep.) ¶ 81. Unlike Plaintiffs, these SDOs do not create voluntary consensus standards that comply with ANSI requirements. ECF No. 118-2 (Pls.' SMF) ¶¶ 7-8, 12, 88, 139. The funding model these European SDOs use, which Plaintiffs do not use, creates barriers to broad participation in the standard development process. ECF No. 118-2 (Pls.' SMF) ¶¶ 259-60. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Disputed to the extent Defendant suggests that these other sources of revenue mean Plaintiffs would not suffer market harm or irreparable harm from the loss of revenue from standards incorporated by reference. ECF No. 155, Pls.' Reply Br. at Parts I.A.4.b and III.B.1. |

**B.     copyright registration and assignment**

| | |
|---|---|
| 196.     Almost all of the standards at issue that Plaintiffs registered with the Copyright Office are registered as "works made for hire" (with the exception of one NFPA standard, NFPA 54 National Fuel Gas Code 2006). Dkt. 122-2 Ex. 13 (ASTM Certificates of Registration); Dkt. 122-2 Ex. 15 (NFPA Certificates of Registration);    ¶ 14, Ex.    16    (ASRAE Certificates of Registration). | Objection.  The deposition testimony cited at ECF No. 122-2, Exhibit 13 is irrelevant.<br><br>Disputed to the extent that Defendant implies that Plaintiffs' ownership of the Works is exclusively pursuant to evidence of work for hire authorship because, even if not necessary, Plaintiffs have submitted additional evidence of ownership via assignments of copyright. *E.g.*, ECF No. 118-2 (Pls.' SMF) ¶¶ 18, 20-24, 112-113, 115; ECF No. 155-1 (Pls.' Supp. SUMF) ¶¶ 14-15, 20-22; *see also Am. Soc'y for Testing & Materials v. Public.Resource.org, Inc.*, No. 13-CV-1215 (TSC), 2017 WL 473822, at *7 (D.D.C. Feb. 2, 2017), *rev'd in part, vacated in part*, 896 F.3d 437 (D.C. Cir. 2018) (finding that Defendant's effort to "point[] to weaknesses in the additional evidence that Plaintiffs proffered to establish their ownership, including questioning whether every one of the hundreds of Plaintiffs' members who contributed to the standards at issue signed an agreement with appropriate language transferring or assigning copyright ownership to Plaintiffs" "did not adduce any additional evidence disproving Plaintiffs' authorship"). |
| 197.     Plaintiffs have not provided evidence that one standard at issue, ASTM D323 1958 | Objection.  Irrelevant.  ASTM D323 1958 (1968) is not at issue in this motion.  *See* ECF 198-2, Pls' Appendix A; ECF No. 202, Def.'s Mot. (moving for summary judgment |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| (1968), was ever registered with the copyright office.  Complaint, Ex. A at 4, ECF No. 1-1. | on the "works listed in Appendix A to Plaintiffs' motion (Dkt. 198-2)"). |
| 198.    NFPA is the only Plaintiff to allege that a work made for hire agreement was signed by developers of the standards at issue.  Plaintiffs' Statement of Material Facts ¶ 115, ECF No. 118-2.  This language attempting to classify the work of volunteers as "work made for hire" was added to NFPA forms only in 2007, after most of the standards at issue were already published, and used inconsistently thereafter.  Dkt. 122-8 Exs. 127, 128, 129 (compare NEC proposal forms from 2005, 2007, and 2008). | Undisputed that NFPA alleges that a work made for hire agreement was signed.<br><br>Disputed that those individuals are the "developers" of the standards at issue, which also includes NFPA staff.<br><br>Disputed that the "work made for hire" language was only added in 2007. The undisputed testimony is that the NFPA committee application form is signed by all members of NFPA technical committees who participate in the development of the standards, and that it has contained unchanged "work made for hire" language "for many years." Pauley Decl. ¶ 34. Defendant's citation to pre-2007 forms is limited only to certain forms for proposals from members of the public, not the committee application.<br><br>Disputed to the extent that PRO implies that ASTM did not offer evidence to support that the ASTM Works are works made for hire of ASTM.  Declaration of Thomas O'Brien, previously filed at Dkt. 118-7, ("O'Brien Decl.") ¶¶ 17-39 (ASTM employees are involved in drafting certain components of "every ASTM standard,"); *see Veeck v. Southern Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 794 (5th Cir. 2003) (en banc) ("As the organizational author of original works, SBCCI indisputably holds a copyright in its model building codes"). |
| 199.    Plaintiffs claim to be assignees of any copyright that the volunteers or members of the public who authored the standards at issue | Disputed to the extent that Defendant implies that the assignments from volunteers and members are the only basis for Plaintiffs' copyright ownership of the Standards at Issue or that the record evidence is |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| might have had in the standards at issue.  Dkt. 118-1 at 16. | insufficient to establish Plaintiffs' ownership of the copyrights in the Works. *E.g.*, ECF No. 155-3 (Pls' Response to PRO's Statement of Disputed Facts) ¶¶ 18, 20-24, 35, 71-76, 112-15, 120-21, 137-146; ECF No. 155-1 (Pls.' Supp. SMF) ¶¶ 14-15, 20-22; ECF No. 204-1 (PRO's Second Supp. Statement of Disputed Facts) ¶ 7 (PRO does not dispute that the copyright registrations for the ASTM standards appearing in bold in Annex A were effective within five years of the date of first publication and thus, under 17 U.S.C. § 410(c), constitute prima facie evidence of the valid copyright in ASTM's standards and its work for hire authorship and ownership of the ASTM Works). |
| 200.  Dkt. 120, Ex. 53 at p. 6, fn. 4. | Disputed as incomplete.  Def. Ex. 53 at p. 6, fn. 4 (emphasis added). Objection.  Lack of foundation as to any Plaintiff other than NFPA.  Hearsay as to any Plaintiff other than NFPA. |
| 201.  ASHRAE claims ownership of its Standards at Issue by virtue of copyright release forms that the people who drafted the standards allegedly signed. Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 192:17–194:03 (stating that ASHRAE claims authorship of the standards at issue "[a]s a basis of the signed copyright assignments that all the members sign when they apply for membership, that the commenters sign when they submit a comment | Disputed insofar as an additional basis for claiming ownership of its standards, separate and apart from any assignments from participants in the development process, is based on its role as the organizational author of the standards and its employees' contribution of language in the standards. ECF No. 118-1 (Pls.' Mem.) at 16. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| and that the members that submit change – or the public that submits change proposals sign when they submit a change proposal"); Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 193:08–17 (stating that the people who authored the standards are not employees of ASHRAE). | |
| 202.   ASHRAE requires volunteers who contribute to standard development to sign a copyright release explicitly granting ASHRAE "non-exclusive" rights in those contributions. Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 70:02-70:11. | Disputed insofar as the copyright release also contains the following language: "I understand that I acquire no rights in publication of such documents in which my contributions or other similar analogous form are used." ECF No. 118-10 (Reiniche Decl.) Ex. 2; *see also* ECF No. 118-10 (Reiniche Decl.) Ex. 1 ("I understand that I acquire no rights in publication of the standard in which my proposals in this or other analogous form is used."). |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 203.   ASHRAE indicated the following language from one of its alleged "assignment" forms when asked to indicate what language from that form it believes serves as an assignment of copyright rights:<br><br>If elected as a member of any ASHRAE Standard or Guideline Project Committee or appointed as a consultant to such committee I hereby grant the American Society of Heating, Refrigerating and Air-Conditioning Engineers (ASHRAE) the *non-exclusive, royalty-free rights, including nonexclusive, royalty rights in copyright*, to any contributions I make to documents prepared by or for such committee for ASHRAE publication and I understand that I acquire no rights in publication of such documents in which my contributions or other similar analogous form are used.  I hereby attest that I have the authority and I am empowered to grant this copyright release.<br><br>M. Becker Decl. ¶ 46, Ex. 48 (Reiniche Ex. 1155) (emphasis added); Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 94:12–94:14. | Undisputed. |
| 204.   Every document that ASHRAE has produced to support its claim that the people who drafted the ASHRAE standards at issue assigned their copyrights to ASHRAE states explicitly that the grant of rights is non-exclusive. Becker Decl., ¶ 10, Ex. 43 (Reiniche Depo.) at 69:19–94:19; Dkt. 122-3, Exs. 27–48. | Disputed insofar as the copyright release also contains the following language: "I understand that I acquire no rights in publication of such documents in which my contributions or other similar analogous form are used."  ECF No. 118-10 (Reiniche Decl.) Ex. 2; *see also* ECF No. 118-10 (Reiniche Decl.) Ex. 1 ("I understand that I acquire no rights in publication of the standard in which my proposals in this or other analogous form is used.").  Further disputed in that this statement addresses forms signed by ASHRAE volunteers but says nothing of documents produced that relate to |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | ASHRAE's argument that ASHRAE is an institutional author and that employees of ASHRAE contribute to authorship of the standards. |
| 205.   All but four of the 229 ASTM standards at issue in this case were developed and published prior to 2003. ECF No. 1-1 (Complaint) Ex. A. | Disputed to the extent Defendant suggests that all but four of the 229 ASTM standards at issue in this case were only published prior to 2003. |
| 206.   ASTM admits that it did not request copyright assignments from the people who drafted ASTM standards until approximately 2003. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at   24:18–26:12;   27:07–27:14;   40:22–41:15; 214:24–215:06. | Undisputed to the extent the statement asserts that ASTM did not have written and executed documents evidencing copyright assignments prior to 2003.  Disputed to the extent it implies ASTM does not own copyrights in the ASTM Works. |
| 207.   ASTM   has   not   produced   signed copyright assignments for any of the standards at issue. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at   24:18–26:12;   27:07–27:14;   40:22–41:15; 214:24–215:06. | Disputed. For the four standards for which ASTM previously moved for summary judgment (ASTM D86-07, ASTM D975-07, ASTM D1217-93, and ASTM D396-98), ASTM presented evidence that it obtained assignments of copyrights from individual contributors to the standards to ASTM. SUMF ¶¶ 18, 20-24.  With respect to the remaining ASTM standards at issue in this case, ASTM has produced evidence that over 25,000 members completed membership renewal forms every year since 2007.  ECF No. 155-1 (Pls. Suppl. SUMF) ¶ 14.  The vast majority of these members completed their membership renewals using the online membership form.  ECF No. 155-1 (Pls. Suppl. SUMF) ¶ 15. Although ASTM did not request signed writings evidencing copyright assignments from its members until approximately 2003, the language in the assignments it obtained since then retroactively assigned any copyrights that individual possessed in any ASTM standard to ASTM.  *See* ECF No. 118-2 (Pls.' SMF) ¶ 18. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 208.   Prior to 2003, ASTM did not believe that it needed formal assignment agreements. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 42:15–42:16 ("[ASTM] didn't feel like we needed any formal, any formal assignment paper."). | Disputed.  Prior to and after 2003, ASTM believed it had a basis for claiming ownership of its standards separate and apart from any assignments from participants in the development process based on its role as the organizational author of the standards and its employees' contribution of language in the standards.  ECF No. 118-1 (Pls.' Mem.) at 16; ECF No. 200 (Pls.' Mem.) at 10-11; *Am. Soc'y for Testing & Materials v. Public.Resource.org, Inc.*, No. 13-CV-1215 (TSC), 2017 WL 473822, at *7 (D.D.C. Feb. 2, 2017), *rev'd in part, vacated in part*, 896 F.3d 437 (D.C. Cir. 2018) ("Defendant has not identified any evidence that . . . the ASTM Plaintiffs . . . do not own the copyrights of the standards, in whole or in part.  The court therefore concludes that the ASTM Plaintiffs . . . are the owners of the copyrights at issue and have standing to bring their claims").  ASTM consulted with the Copyright Office about how to complete its copyright applications.  ECF No. 155-1 (Pls.' Supp. SUMF) ¶ 13.  The Copyright Office instructed ASTM to fill out its copyright applications noting itself as the sole author of the standards as works made for hire.  ECF No. 155-1 (Pls.' Supp. SUMF) ¶ 13. |
| 209.   ASTM now admits that it only started asking for copyright assignments in 2005, Opp. at 32, which is years after 226 of the 229 ASTM standards at issue had been developed. *See* ECF No. 1-1 (Complaint Exhibit A, listing ASTM standards at issue and their date of publication). | Disputed to the extent it implies ASTM does not own copyrights in the ASTM Works.  Although ASTM does not have written and executed documents evidencing copyright assignments prior to 2003, ASTM has produced evidence that over 25,000 members completed membership renewal forms every year since 2007.  ECF No. 155-1 (Pls. Supp. SUMF) ¶ 14.  The vast majority of these members completed their membership renewals using the online membership form.  ECF No. 155-1 (Pls. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Suppl. SUMF) ¶ 15; *Am. Soc'y for Testing & Materials v. Public.Resource.org, Inc.*, No. 13-CV-1215 (TSC), 2017 WL 473822, at *7 (D.D.C. Feb. 2, 2017), *rev'd in part, vacated in part*, 896 F.3d 437 (D.C. Cir. 2018) ("Defendant has not identified any evidence that . . . the ASTM Plaintiffs . . . do not own the copyrights of the standards, in whole or in part.  The court therefore concludes that the ASTM Plaintiffs . . . are the owners of the copyrights at issue and have standing to bring their claims"); ECF No. 204-1 (PRO's Second Supp. Statement of Disputed Facts) ¶ 7 (PRO does not dispute that the copyright registrations for the ASTM standards appearing in bold in Annex A were effective within five years of the date of first publication and thus, under 17 U.S.C. § 410(c), constitute prima facie evidence of the valid copyright in ASTM's standards and its work for hire authorship and ownership of the ASTM Works). |
| 210.    ASTM alleges that it relied on an unspoken "basic understanding" that the volunteers who drafted the standards at issue intended to create standards that ASTM would eventually distribute. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 42:18–44:01; 94:01–94:20. | Disputed.  ASTM's ownership claims do not depend on, but are confirmed by, the understanding of all participants in the standard development process intend ASTM to own the copyrights in standards. |
| 211.    ASTM has not produced any evidence of the existence of an alleged "basic understanding" between the creators of the standards at issue and ASTM, nor any evidence of what the contours of this "basic understanding" were. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 44:03–45:14; 104:21–105:24 ("Q: Did Mr. Lively provide any basis for his statement that there was an understanding in the early '80s that ASTM would copyright the material provided by individuals that was incorporated into the standards drafts? A: No. I think it was just his belief just as it was my | Disputed.  ASTM has presented evidence that participants in the standard development process intend ASTM to own the copyrights in standards.  *See* ECF No. 118-2 (Pls.' SMF) ¶ 40; ECF No. 118-11 (Thomas Decl.) ¶ 23; ECF No. 118-4 (Cramer Decl.) ¶¶ 6, 10, 11, 15; ECF No. 118-6 (Jennings Decl.) ¶¶ 7-9, 12.

ASTM has always openly claimed ownership of these works without objection.  ECF No. 118-2 (Pls.' SMF) ¶ 26; ECF No. 122-5, Def. Ex. 77 at 6 (ASTM's Intellectual Property |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| belief."); Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 44:03–45:14 (stating that ASTM "didn't think that documentation [of the alleged 'basic understanding'] was needed"). | Policy adopted in 1999); ECF No. 122-5, Def. Ex. 78 at (VI)(A)(1) (ASTM's Intellectual Property Policy 2003); ECF No. 122-5, Def. Ex. 79 at (VI)(A)(1) (ASTM's Intellectual Property Policy 2010). Moreover, many of the participants pay for copies of the ASTM standards from ASTM and bearing ASTM's copyright notice.  ECF No. 118-2 (Pls.' SMF) ¶¶ 16-18, 40.  ASTM is not aware of any individual or other person who claims to own any copyright interest in any ASTM standard.  O'Brien Decl. III ¶ 6.  Since ASTM filed the lawsuit in 2013, no participant or volunteer has contacted ASTM to assert copyright ownership or otherwise challenge ASTM's copyright interest in any of the ASTM Works.  O'Brien Decl. III ¶ 7. |
| 212.    ASTM claimed that the ASTM "IP Policy" somehow confirms the existence of this alleged "basic understanding." Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 57:23–59:25. | Undisputed. |
| 213.    The earliest IP Policy document that ASTM produced in this litigation was approved by ASTM on April 28, 1999 and put into effect thereafter. ASTM had no IP Policy prior to April 28, 1999. Dkt. 122-5, Ex. 77, ¶ 77; Dkt. 122-5 Ex. 79; Dkt. 122-9, Ex. 152 (Internet Archive capture of the ASTM home page the day before the ASTM IP Policy was approved, and a capture after the ASTM Policy was approved, showing that the link to the IP Policy in the lower-right corner of the page was not present on April 27, 1999). | Disputed.  It is undisputed that the earliest IP Policy produced in this litigation was approved on April 28, 1999, but there is no support for the proposition that ASTM had no IP policy prior to that date. |
| 214.    In 2010, approximately three years after the publishing of the most recent ASTM standard at issue, the ASTM IP Policy was amended to include the following language: "Each member agrees, by such participation and enjoyment of his/her annual membership | Objection.  Objection to the characterization of the ASTM documents based on the best evidence rule.  Plaintiffs also object to the quoted text as an incomplete. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| benefits, to have transferred any and all ownership interest, including copyright, they possess or may possess in the ASTM IP to ASTM." Dkt. 122-5, Ex. 77 and Ex. 79 (Compare Section V.D. in both documents). | Disputed to the extent it omits reference to the statement in the 1999 IP Policy that "[b]y participating in any ASTM technical committee and /or participating in the creation and adoption of ASTM's Intellectual Property, participants and committee members acknowledge that the copyright to such Intellectual Property resides in ASTM.  *See* ECF No. 122-5, Def. Ex. 77. |
| 215.    There was no means that ASTM imposed for the volunteers who drafted the ASTM standards at issue to signify that they had read and agreed to the ASTM IP Policy. Becker Decl., ¶ 7, Ex. 40  (Smith Depo.) at 173:10–181:12 (admitting that ASTM does not know if members read or understood the assignment clause, nor whether they assented to transfer their copyright to ASTM). | Disputed.  Certain ASTM membership forms stated: "By applying for or renewing your ASTM membership, you acknowledge you have read and agree to abide by ASTM's Intellectual Property Policy." *See, e.g.*, ECF No. 120-20, Def. Ex. 87.  ASTM has always openly claimed ownership of these works without objection.  ECF No. 118-2 (Pls.' SMF) ¶ 26; ECF No. 122-5, Def. Ex. 77 at 6 (ASTM's Intellectual Property Policy adopted in 1999); ECF No. 122-5, Def. Ex. 78 at (VI)(A)(1) (ASTM's Intellectual Property Policy 2003); ECF No. 122-5, Def. Ex. 79 at (VI)(A)(1) (ASTM's Intellectual Property Policy 2010). Moreover, many of the participants pay for copies of the ASTM standards from ASTM and bearing ASTM's copyright notice.  ECF No. 118-2 (Pls.' SMF) ¶¶ 16-18, 40.  ASTM is not aware of any individual or other person who claims to own any copyright interest in any ASTM standard.  O'Brien Decl. III ¶ 6.  Since ASTM filed the lawsuit in 2013, no participant or volunteer has contacted ASTM to assert copyright ownership or otherwise challenge ASTM's copyright interest in any of the ASTM Works.  O'Brien Decl. III ¶ 7. |
| 216.    ASTM has not retained or produced in this litigation completed membership forms | Disputed. For the four standards for which ASTM moved for summary judgment, |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| pertaining to any of the standards at issue. The membership forms that ASTM has produced date from 2008 and later, with only one membership form from 2007. M. Becker Decl. ¶ 90, Ex. 92; Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 258:11–258:23. | ASTM presented evidence that the leader of the group that developed the standard and/or a member of the committee that drafted the standard assigned any copyrights in their individual contributions to the standards to ASTM.  ECF No. 118-2 (Pls.' SMF) ¶¶ 18, 20-24.  With respect to the remaining ASTM standards at issue in this case, ASTM has produced evidence that over 25,000 members completed membership renewal forms every year since 2007, which is as far back as ASTM maintains membership records.  ECF No 155-1 (Pls.' Supp. SUMF) ¶ 14. The vast majority of these members completed their membership renewals using the online membership form.  ECF No 155-1 (Pls.' Supp. SUMF) ¶ 15.  Although ASTM did not request executed written copyright assignments from its members until approximately 2003, the language in the assignments it obtained since then retroactively assigned any copyrights that individual possessed in any ASTM standard to ASTM.  *See* ECF No. 118-2 (Pls.' SMF) ¶ 18. |
| 217.   ASTM has failed to exercise control over the creation and enforcement of its membership and participation forms (that it terms copyright "assignments"), resulting in a multiplicity of forms that either have no assignment language at all, or have various iterations of language that ASTM claims grants it copyright assignments.  Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 216:01–217:12, 225:05–225:19 (membership forms were prepared ad hoc by any number of people, and he does not know if anyone knows how many different variations of ASTM membership form were used from 2007 to 2014, because his "experience as being a staff manager is I don't think people think about the version of an application that's being used.   I think it's | Objection.  Vague and ambiguous as to the terms "exercise control" and "enforcement." In addition, it is irrelevant whether ASTM exercised control of the creation and enforcement of membership and participation forms, especially with respect to individuals who were not involved with the development of the Works.

Disputed.  The statement is not supported by the cited testimony. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| viewed as a tool that enables an individual to join a technical committee."), | |
| 218.   Many individuals renew their ASTM memberships through alternate channels other than using ASTM membership renewal forms or renewing through ASTM's online portal, and thereby do not encounter or formally assent to any copyright assignment language. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 278:04–278:18 (ASTM members can renew their membership by phone or by email, without using the online portal or using ASTM's mail-in forms); Dkt. 120, Ex. 94 (example of an ASTM member renewing by email). ASTM's online membership agreement process does not require a member to click "yes," or "I agree," or any other affirmation to the language discussing copyright assignment that appears on the web page. Instead, members click a button labeled "continue" that appears below the message: "[c]lick 'continue' to place your ASTM membership renewal in the shopping cart." Dkt. 122-9, Ex. 149. | Disputed to the extent that there is no evidence that "many" individuals renew their ASTM memberships through alternate challenge. Defendant has found several isolated instances of ASTM members renewing their ASTM memberships outside of the normal channels.  These individuals and their renewal methods are irrelevant because there is no evidence that they were involved in the development of any of the Works.

Disputed that clicking on "continue" in the online process is not an indication of assent. |
| 219.   The membership forms that ASTM has produced usually do not include language asking for an assignment of copyright rights. Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 211:24-212:12 (acknowledging ASTM forms that did not have assignment language.  Dkt. 120, Exs. 91 and 93 (examples of ASTM forms without any assignment language). | Objection.  Evidence that persons who were not involved in the development of any ASTM Work at issue is irrelevant.

Disputed.  The membership form in Defendant's Exhibit 91 includes copyright assignment language.  Defendant produced tens of thousands of pages of hard-copy membership forms.  ECF No. 155-1 (Pls. Suppl. SUMF) ¶ 16.   Defendant identified a very small percentage of those forms that do not include language regarding assignment of copyright.  *See* ECF No. 122-6, Def. Ex. 93.

Defendant did not produce any evidence that any of the persons who signed those forms were involved in the development of the |

109

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Works, and therefore, these forms are irrelevant. |
| 220.    Of the ASTM forms that do include what ASTM alleges to be assignment language, there is no means for a person filling out the form to sign her name or show that she agrees to assign her copyright rights to ASTM. Dkt. 120, Exs. 87-91, 80 (ASTM forms with alleged assignment language); Becker Decl., ¶ 7, Ex. 40 (Smith Depo.) at 173:10–181:12 (admitting that there is nowhere on the alleged copyright assignment for a member to check a box, sign her name, or otherwise indicate that she understands and assents to transfer her copyright to ASTM, and admitting that ASTM does not know if a member who completes the form has read the assignment clause or assents to transfer her copyright to ASTM). | Objection.  Evidence that persons who were not involved in the development of any ASTM Work at issue is irrelevant.<br><br>Disputed.  ASTM's online membership forms require the member to assent to the assignment of any copyrights. *See* Def. Ex. 149.  ASTM's hard-copy membership forms contain numerous spaces where a member can sign her name.  *See, e.g.,* Def. Ex. 87 (showing examples of members filling in their names and/or signing their names).  Defendant has not produced any evidence that any person who participated in the development of any ASTM Work at issue failed to execute an assignment. |
| 221.    Through at least 2008, NFPA used copyright release language for the creators of the NFPA standards at issue that referred to a grant of non-exclusive rights. MDkt. 122-4 Exs. 54–76; Dkt. 120 Ex. 129. | Disputed as incomplete and not relevant to the 2011 NEC and 2014 NEC at issue here. The copyright release language stated:  "I hereby grant the NFPA the nonexclusive, royalty-free rights, including nonexclusive, royalty-free rights in copyright, in this proposal, and I understand that I acquire no rights in any publication of NFPA in which this proposal in this or another similar or analogous form is used."  *See, e.g.*, Becker Decl. Ex. 54. |
| 222.    For example, an NFPA document soliciting proposed text for the 2011 edition of the National Electrical Code, includes the following text: | Undisputed. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| ████████████████████<br>M. Becker Decl. ¶ 127, Ex. 129 (emphasis added). | |
| 223.    NFPA did not exercise control over the process by which people submitted proposals. NFPA's Rule 30(b)(6) corporate representative Christian Dubay, stated that "in past history over the years . . . there's many different versions of our forms and ways of submission." Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 134:21–134:24. NFPA would accept retyped versions of the forms that people used when contributing text to a standard draft. M. Becker Decl. ¶ 61, Ex. 63; Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 146:06–146:14. NFPA allowed volunteers to use any existing standard draft contribution form in place of the form that NFPA designated for use for the particular standard. Becker Decl., ¶ 8, Ex. 41 (Dubay Depo.) at 146:06–146:14. | Disputed to the extent it characterizes the existence of different versions of the forms as lacking control.  Defendant does not cite to evidence showing material differences between these forms. |
| 224.    NFPA's online public comment portal includes the following language under the "Copyright Assignment and Signature" page: "I understand and intend that I acquire no rights, including rights as a joint author, in any publication of the NFPA in which this Public Comment in this or another similar or derivative form is used."  Dkt. 122-9, Ex. 154 at 10.  In earlier copyright releases, NFPA used similar language that would also effectively bar joint ownership: "I understand that I acquire no rights in any publication of NFPA in which this comment in this or another similar or analogous form is used."  Dkt. 122-5, Ex. 73.  ASHRAE uses almost identical language in its copyright releases: "I understand that I acquire no rights in publication of such documents in which my | Disputed to the extent it implies that this is an accurate description of NFPA's current website. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| contributions or other similar analogous form are used." Dkt. 122-4, Ex. 48. | |

## XIV.   INCORPORATION OF THE NATIONAL ELECTRICAL CODE INTO CALIFORNIA TITLE 24

| | |
|---|---|
| 225.   The California Building Standards Commission ("CBSC") generally issues a new California Building Standards Code Title 24 every three years.   The current effective California Building Standards Code is a 2016 edition.   The rulemaking processes for the next edition (the 2019 edition) is complete; the new code was published on or around July 1, 2019, and it will become effective January 1, 2020. Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 22:21-23:6, 35:6-25. | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works. <br><br> Objection.  Hearsay. |
| 226.    The California Building Code includes three categories of building standards—namely, (1) reference standards that have been adopted without change; (2) those that have been adopted and adapted from national model code, with amendments; and (3) those authorized by the California legislature but which are not covered by the national model codes.  Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 40:6-41:16, Ex. 3. | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Objection to the relevance of this statement to the extent it does not relate to any of the Works. <br><br> Objection.  Hearsay. <br><br> Objection to the statement's use of "adopted without change" as vague and ambiguous, as there is no indication of what material these reference standards are adopting.  Objection to the use of the undefined terms "national model codes" and "reference standards" as vague and ambiguous. |
| 227.    The CBSC incorporates by reference certain reference standards by making them "part of the model code."   In some cases, the | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| incorporation involves referring to the reference standard, such that a reader might have to refer to a separate reference standard.   In other instances, the reference code may itself be reprinted in the model code.   Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 30:23-31:25, 32:7-15. | briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.<br><br>Objection.  Hearsay.<br><br>Objection to the use of the undefined terms "model code," "reference standards," and "reference code" as vague and ambiguous. |
| 228.   California   Building   Standards   law requires California to adopt the most recent version of model codes that refer to reference standards.   Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 27:17-28:16, 44:14-46:14. | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.<br><br>Objection.  Hearsay.<br><br>Objection to the use of the undefined terms "model codes" and "reference standards" as vague and ambiguous.<br><br>Objection.  Improper opinion/lack of foundation.  This is a legal conclusion, not a fact. |
| 229.    Until the 2019 edition of the California Building Standards Code goes into effect, the 2016 edition is the law. The national model codes adopted into Title 24 apply to all occupancies in California, including residences, office buildings, schools, hospitals, government | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| buildings, etc.   Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 36:1-8, 41:17-43:2, Ex. 3. | to the extent it does not relate to any of the Works.<br><br>Objection.  Hearsay.<br><br>Objection.  Improper opinion/lack of foundation.  This is a legal conclusion, not a fact.<br><br>Objection as incomplete.  As the deponent later explained, Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 182:13-19, Exhibit 3 to the Marvelli deposition reads: "All occupancies in California are subject to national and model codes adopted into Title 24, and occupancies are further subject to amendments adopted by state agencies and ordinances implemented by local jurisdictions' governing bodies."  Wise Decl. II ¶ 11, Ex. 183.  Accordingly, all occupancies in the state must look to state agency amendments and local jurisdictions' rules to determine their conduct.  Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 182:13-184:19. |
| 230.   In a previous role as an architectural associate for the California Department of General Services, Ms. Marvelli developed construction drawings for state building so they complied with the California Building Standards Code.   Multiple state and local agencies enforce compliance with the California Building Codes.  Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 23:7-24:5, 118:6-119:15, 124:3-125:8, 127:15-130:3. | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.<br><br>Objection.  Hearsay.<br><br>Objection.  Improper opinion/lack of foundation as to how state and local agencies act. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 231.   Title 24 contains multiple parts; for example, the 2019 triennial edition of the code has thirteen parts. Each part of Title 24 pertains to a different subject matter.  For instance, Part 1 of Title 24 is the California Administrative Code.  The most relevant one for this case is Part 3, which is the California Electrical Code.  The California Electrical Code has two sources—namely, (1) NFPA 70, also known as the National Electrical Code; and (2) the California amendments.  For instance, the 2019 California Electrical Code is based on the 2017 version of the National Electrical Code; the 2016 California Electrical Code is based on the 2014 version of the National Electrical Code; the 2013 California Electrical Code is based on the 2011 version of the National Electrical Code.   Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 36:1-25, 43:4-44:12, 78:25-79:5. | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.<br><br>Objection.  Hearsay.<br><br>Objection to the use of the phrase "based on" as vague and ambiguous. |
| 232.   Adoption of the code is a deliberative process. Mia Marvelli is Executive Director of the California Building Standards Commission (CBSC), a state commission that administers the California Building Standards process.  The California Building Standards law is found in the California Health and Safety Code, and the CBSC uses the processes under the Administrative Procedure Act to administer the rulemaking process for Title 24 (also known as the California Building Standards Code) of the California Code of Regulations.   The CBSC receives rulemaking documents from State agencies, and then conducts public hearings and public comment periods on the documents.  The CBSC ultimately takes one of four actions on those rulemaking document: (1) approve; (2) approve as amended; (3) disapprove; or (4) further action.   Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 9:25-10:1, 13:14-15:10, 44:14-47:11. | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.<br><br>Objection.  Hearsay.<br><br>Objection to the undefined and subjective term "deliberative process" as vague and ambiguous.<br><br>Disputed that California uses "a deliberative process" as the cited reference does not support this proposition. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| 233.   There are ten commissioners that conduct the rulemakings.   The Governor of California appoints the commissioners under the authority of the California Building Standards law.   Each commissioner represents a different type of interest (e.g., building officials, construction industry), and all the commissioners participate together in a public hearing on the rulemaking.   If the commission approves the regulations, they are assembled for the publisher to the develop the next edition of the California Building Standards Code.   Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 15:13-19, 16:13-19, 16:24-20:3, 22:17-20. | Objection to the relevance of the development of California's Building Standards Code.   As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.   Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.

Objection.   Hearsay. |
| 234.   The "Acknowledgements" section of the California Electrical Code states that "the California Electrical Code was developed through the outstanding collaborative efforts of" a number of State agencies, such as the Department of Housing and Community Development.   Ms. Marvelli was not aware of any State agencies that have sought a copyright in their contributions to any version of the California Electrical Code.   Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 74:12-79:25, Ex. 4. | Objection to the relevance of the development of California's Building Standards Code.   As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.   Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.

Objection.   Hearsay.

Objection.   Improper opinion/lack of foundation and incomplete.   The witness testified that she would "have to research" whether any organizations sought a copyright in the California Electrical Code. Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 77:16-17.

Disputed to the extent PRO attempts to draw any inference from the fact that Ms. Marvelli was unaware of the information in question.

Disputed to the extent it suggests that any state agencies made contributions to any |

116

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | version of the California Electrical Code. The cited reference does not support that proposition. |
| 235.    State agencies apply the nine-point criteria in Section 18930 of the Health and Safety Code in deciding whether to adopt a reference standard into the California Building Code.  If all the criteria are met, the commission generally approves the package.  If one of the criteria is not met, the commission may still approve adoption of the reference standards, as amended.  The nine criteria that state agencies consider are (1) whether the proposed building standards do not conflict with, overlap or duplicate other building standards; (2) whether the proposed building standards are within the parameters established by enabling legislation and are not expressly within the exclusive jurisdiction of another agency; (3) whether the public interest requires the adoption of the building standards; (4) whether the proposed building standards are not unreasonable, arbitrary, unfair or capricious in whole or in part; (5) whether the cost to the public is reasonable, based on the overall benefit to be derived from the building standards; (6) whether the proposed building standard is not unnecessarily ambiguous or vague, in whole or in part; (7) whether the applicable national specifications, published standards, and model codes have been incorporated; (8) whether the format of the proposed building standards is consistent with that adopted by the commission; and (9) whether the proposed building standards, if they promote fire and panic safety as determined by the State Fire Marshal, have the written approval of the State Fire Marshall. Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 29:6-30:14, 103:22-106:22. | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.

Objection.  Hearsay.

Objection.  Improper opinion/lack of foundation. |
| 236.    Portions of California Electrical Code are reproduced with permission from the | Objection to the relevance of the development of California's Building |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| National Electrical Code, and the California Electrical Code states that "no portions of NEC material may be reproduced except with permission of the National Fire Protection Association."  The California Electrical Code includes a legend that tells the reader how to distinguish between model code portions and California amendments.  Aside from appearing in the California Electrical Code itself, California amendments "may or may not" appear in a document called the Final Statement of Reasons that state agencies issue during the rulemaking process; if a California amendment does not appear in the Final Statement of Reasons, Ms. Marvelli did not know how a person would access the amendment without going to the California Electrical Code itself.  Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 61:20-64:12, 65:18-67:25, 68:16-69:8, Ex. 4. | Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.<br><br>Objection.  Hearsay.<br><br>Objection.  Improper opinion/lack of foundation.<br><br>Disputed to the extent PRO attempts to draw any inference from the fact that Ms. Marvelli was unaware of the information in question. |
| 237.   The NFPA and CBSC has a "zero dollar" contract under which NFPA grants CBSC a nonexclusive license to use and copy the National Electrical Code solely to create and publish the California Electrical Code.   In exchange, CBSC grants NFPA "an exclusive, worldwide license to copy, print, publish, distribute and sell the Code and all Code Supplements . . . ."   When asked at her deposition, Ms. Marvelli did not recall whether the NFPA established any method for distribution of the 2016 California Electrical Code in consultation with NFPA.  Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 107:11-23, 108:18-109:12,      134:19-135:17,     Ex.    7 (agreement for 2016 triennial edition of California Electrical Code) at § 4. | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.<br><br>Objection.  Hearsay.<br><br>Objection.  Improper opinion/lack of foundation.<br><br>Objection as incomplete.  The cited provision reads, in full, "CBSC hereby grants NFPA an exclusive, worldwide license to copy, print, publish, distribute and sell the Code and all Code Supplements in accordance with the terms of this |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| | Agreement."   Wise Decl. II ¶ 12, Ex. 184 (Ex. 7 to Marvelli deposition).<br><br>Disputed to the extent PRO attempts to draw any inference from the fact that Ms. Marvelli was unaware of the information in question.<br><br>Disputed to the extent the statement suggests that the cited language is representative or has appeared in all contracts between NFPA and CBSC related to the California Electrical Code. |
| 238.    The contract with NFPA is subject to a noncompetitive bid coordination process. Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 141:21-142:11, Ex. 9 (forms for 2016 triennial edition). | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works.<br><br>Objection.  Hearsay.<br><br>Disputed to the extent the statement suggests that this statement is representative of all contract negotiations between NFPA and CBSC related to the California Electrical Code. |
| 239.    The CBSC administers a web page with information about the part of Title 24 at the following                                   URL: https://www.dgs.ca.gov/BSC/Codes.             But CBSC does not store an accessible version of the 2013, 2016, or 2019 triennial edition of the California Building Standards Code on the webpage.  The CBSC webpage instead points to model code publisher in a section titles "Purchase the Codes", listing the parts that are | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a. Objection to the relevance of this statement to the extent it does not relate to any of the Works. |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| available through each publisher.  The publisher of the 2016 edition of the California Electrical Code is BNi; for the 2019, it is NFPA.  Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 34:18-35:22, 37:1-23, 38:2-19, 51:16-52:2, 53:3-6, 54:9-12, 70:23-74:1, Ex. 84. | Objection.  Hearsay.<br><br>Disputed to the extent the statement suggests that the CBSC website's only link to the codes is under a heading that reads "Purchase the Codes."  The website links to the codes higher up on the page under headings that list the edition (e.g., 2019 Triennial Edition of Title 24) and the Part (e.g., California Electrical Code).  Wise Decl. II ¶ 11, Ex. 183 (Ex. 3 to Marvelli deposition). |
| 240.    CBSC has the practical ability to post a searchable PDF version of the 2016 California Electrical Code on its website, and it has done so in the past by "mistake."  Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 99:22-102:4. | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a.  Objection to the relevance of this statement to the extent it does not relate to any of the Works.<br><br>Objection.  Hearsay.<br><br>Disputed to the extent it suggests that CBSC could post a searchable PDF version of the 2016 California Electrical Code on its website without violating its contractual obligations or without infringing NFPA's copyright. |
| 241.    The CBSC does not know whether the publisher provides full access to the text of the California Electrical Code without payment, or whether the publisher is a commercial actor or not.  In addition, Ms. Marvelli did not know whether the online NFPA viewer could print, copy, or search the text of the 2019 version of the California Electrical Code.  Nor did she know   how   many   screenshots   would   be | Objection to the relevance of the development of California's Building Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a.  Objection to the relevance of this statement |

| DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT | PLAINTIFFS' RESPONSE |
|---|---|
| necessary to reproduce the entire California Electrical Code from the NFPA viewer. The CBSC has received calls where people have been unable to access the California Electrical Code, but it has no ability to fix the access issues and notifies the publisher of the issue. Ms. Marvelli had no knowledge of whether the NFPA had made any efforts to make the California Electrical Code available to print-disabled individuals, mobility-impaired individuals, or individuals who lack eyesight, and the CBSC has not taken steps to make the California Electrical Code available to these persons. Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 56:8-57:20, 57:22-58:7, 58:24-61:19, 70:23-74:1, 82:10-17, 91:10-23, 136:23-138:2, Ex. 4; *see also id.* at 93:17-94:2, 95:14-98:1 (similarly, no knowledge of whether a person can print, copy, or search the text of the California Residential Code, Part 2.5 of Title 24, from the website of the publisher, International Code Council (ICC)). | to the extent it does not relate to any of the Works. <br><br> Objection. Hearsay. <br><br> Disputed. The cited reference does not support PRO's claim that "CBSC does not know" any information. When asked whether "anybody in [Ms. Marvelli's] office know[s] what BNi offers," Ms. Marvelli responded "I don't know that. I wouldn't know that." Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 57:1-6. <br><br> Disputed to the extent it suggests that any individual has been unable to access the California Electrical Code. Ms. Marvelli testified that she was not aware of anyone who wanted to access the California Electrical Code who was unable to do so. Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 179:10-14. <br><br> Disputed to the extent it suggests that any print-disabled individuals, mobility-impaired individuals, or individuals who lack eyesight have been unable to access the California Electrical Code or have requested that the CBSC make the California Electrical Code more accessible. Ms. Marvelli testified that she was not aware of any such individuals having difficulty accessing the California Electrical Code, nor was she aware of any requests for access from such individuals. Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 137:19-21, 137:25-138:2, 179:21-180:17. <br><br> Disputed to the extent PRO attempts to draw any inference from the fact that Ms. Marvelli was unaware of the information in question. |
| 242.     CBSC operates under a legal mandate requiring the publication of codes 180 days | Objection to the relevance of the development of California's Building |

| **DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF FACT** | **PLAINTIFFS' RESPONSE** |
|---|---|
| prior to the effective.  For instance, for the 2016 California Electrical Code, the publication date was required to be July 1, 2016.  But, as of August 2, 2016, the California Electrical Code published by NFPA was not available for online access.   Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 131:3-134:8, Ex. 87. | Standards Code.  As explained in Plaintiffs' briefing, PRO has staked its entire fair use argument on the incorporation by reference process the federal government—not any state—uses.  Reply at Part I.A.1.a.  Objection to the relevance of this statement to the extent it does not relate to any of the Works.

Objection.  Hearsay.  The statement's assertion that the California Electrical Code was not available for online access is based on an email that the deponent did not send and was not even sure if she received.  Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 132:18-22.  Both the deponent's testimony and the underlying email are hearsay to the extent they are used for the truth of the matter asserted.

Disputed.  The deponent testified that she did not know whether the California Electrical Code was available for online access prior to August 1, 2016.  Becker Decl. ¶ 3, Ex. 36 (Marvelli Depo.) at 132:6-8.  When questioned about an email, she said that she read the email as indicating that CBSC did not yet have a link to the California Electrical Code on its website, not that the California Electrical Code was not available for online access on NFPA's or some other website.  *Id.* at 133:20-134:8.  The deponent never stated nor implied that the California Electrical Code was not available for online access as of August 2, 2016.  Further disputed that the 2016 California Electrical Code was "published by NFPA," as acknowledged in 239, BNi published the 2016 California Electrical Code. |

Dated: December 23, 2019          Respectfully submitted,

*/s/ J. Kevin Fee*

J. Kevin Fee (D.C. Bar: 494016)
Jane W. Wise (D.C. Bar: 1027769)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.739.5353
Email: kevin.fee@morganlewis.com
       jane.wise@morganlewis.com

*Counsel For American Society For Testing And Materials d/b/a ASTM International*

*/s/ Kelly M. Klaus*

Kelly M. Klaus (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, CA 94105
Tel: 415.512.4000
Email: Kelly.Klaus@mto.com

Rose L. Ehler (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213.683.9100
Email: Rose.Ehler@mto.com

Rachel G. Miller-Ziegler
MUNGER, TOLLES & OLSON LLP
1155 F St. NW, 7th Floor
Washington, DC 20004
Tel: 202.220.1100
Email: Rachel.Miller-Ziegler@mto.com

*Counsel for National Fire Protection Association, Inc.*

*/s/ J. Blake Cunningham*

Jeffrey S. Bucholtz (D.C. Bar: 452385)
David Mattern
King & Spalding LLP
1700 Pennsylvania Avenue, NW, Ste. 200
Washington, DC 20006-4707
Tel: 202.737.0500
Email: jbucholtz@kslaw.com

J. Blake Cunningham
King & Spalding LLP
101 Second Street, Ste. 2300
San Francisco, CA 94105
Tel: 415.318.1211
Email: bcunningham@kslaw.com

*Counsel for American Society of Heating, Refrigerating,
and Air Conditioning Engineers*