# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR TESTING AND
MATERIALS d/b/a ASTM INTERNATIONAL;

NATIONAL FIRE PROTECTION
ASSOCIATION, INC.; and

AMERICAN SOCIETY OF HEATING,
REFRIGERATING, AND AIR CONDITIONING
ENGINEERS,

                Plaintiffs/Counter-defendants,

     v.

PUBLIC.RESOURCE.ORG, INC.,

                Defendant/Counterclaimant.

Case No. 1:13-cv-01215-TSC

## PUBLIC RESOURCE'S REPLY IN SUPPORT OF ITS
## SECOND MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

I.      PUBLIC RESOURCE IS ENTITLED TO SUMMARY JUDGMENT
        BECAUSE ITS POSTING OF LAWS BY REFERENCE IS A
        LAWFUL FAIR USE. ...............................................................................2

        A.      The Government Has Already Told Us What Is and Is Not
                Essential to Understanding a Legal Duty for Purposes of the Fair
                Use Analysis. ................................................................................2

                1.      Federal regulations make clear that incorporation by
                        reference adopts documents as the government's own
                        expression and creates binding obligations.........................2

                2.      The formal incorporation by reference procedure
                        precisely identifies what the government has decided to
                        incorporate into law. .........................................................3

                3.      Vagueness as to what is incorporated will invalidate a
                        regulation. ......................................................................4

                4.      Ranking agency officials confirmed that the text of an
                        incorporation must be treated as a precise articulation of
                        the matter incorporated. ...................................................5

                5.      When agencies seek to reference an extrinsic standard
                        without incorporating it by reference into law, they know
                        how to do so.....................................................................5

                6.      Plaintiffs' alternative approach is inconsistent with the
                        appellate opinion and unworkable for the Court, the
                        parties, and the public. .....................................................6

                7.      Courts and citizens need a practical test. .........................8

        B.      First Factor: the Purpose and Character of Public Resource's
                Use Favors Fair Use For All Standards At Issue. .....................11

                1.      Public Resource's Use is Noncommercial and
                        Transformative.................................................................11

**TABLE OF CONTENTS**
(Continued)

Page

C.   Second Factor: The Nature of the Works Heavily Favors Fair Use. ...........................................................................................14

D.   Third Factor: Public Resource Limits Its Use to the Material Designated by Law. ....................................................................14

E.   Fourth Factor: Plaintiffs Have No Evidence of Market Harm..................15

II.   PUBLIC RESOURCE'S INCLUSION OF PLAINTIFFS' TRADEMARKS IN POSTED DOCUMENTS IS A NOMINATIVE FAIR USE...................................................................................................17

A.   Public Resource Uses Plaintiffs' Trademarks to Refer to Plaintiffs' Publications, As Does the Government. ...................17

B.   Plaintiffs Cannot Meet Their Initial Burden Under the Third Circuit's Burden-Shifting Framework. .......................................18

C.   All Three *New Kids* Factors Are Present, Establishing Nominative Fair Use. ..................................................................19

III.   PLAINTIFFS CANNOT JUSTIFY A PERMANENT INJUNCTION. ...............22

A.   The Plaintiffs' Deliberate Avoidance of Other Available Remedies Weighs Against an Injunction...................................22

B.   After Years of Litigation, the Plaintiffs Still Cannot Show Irreparable Harm.........................................................................23

C.   The Balance of Hardships Disfavors an Injunction. ..................................24

D.   The Plaintiffs Failed to Prove that an Injunction Would Serve the Public Interest. .......................................................................25

IV.   PLAINTIFFS FAIL TO PROVIDE ADEQUATE EVIDENCE OF COPYRIGHT OWNERSHIP TO SUPPORT THEIR "JOINT WORKS" THEORY. .........................................................................................25

CONCLUSION.....................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.V. ex rel. Vanderhye v. iParadigms, LLC,*
  562 F.3d 630 (4th Cir. 2009) ...................................................................11

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
  486 U.S. 492 (1988)................................................................................25

*Am. Soc'y for Testing & Mat'ls v. Public.Resource.Org, Inc.,*
  896 F.3d 437 (D.C. Cir. 2018) ...................................................... *passim*

*Appalachian Power Co. v. Train,*
  566 F.2d 451 (4th Cir. 1977) .....................................................................4

*Arista Records LLC v. Lime Group LLC,*
  784 F. Supp.2d 313 (S.D.N.Y. 2011)................................................23, 24

*Blanch v. Koons,*
  467 F.3d 244 (2d Cir. 2006)....................................................................16

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (1994)................................................................................16

*Century 21 Real Estate Corp. v. Lendingtree, Inc.,*
  425 F.3d 211 (3d Cir. 2005)...............................................................19, 20

*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006)...........................................................................22, 23

*Fogerty v. Fantasy, Inc.,*
  510 U.S. 517 (1994)................................................................................17

*Georgia v. Public.Resource.Org., Inc.,*
  No. 18-1150 (argued Dec. 2, 2019) .........................................................14

*Higgins v. Detroit Educ. Television Found.,*
  4 F.Supp.2d 701 (E.D. Mich. 1998)........................................................15

*Hustler Magazine, Inc. v. Moral Majority, Inc.,*
  606 F. Supp. 1526 (C.D. Cal. 1985) .......................................................11

*New Kids on the Block v. News America Publishing, Inc.,*
  971 F.2d 302 (9th Cir. 1992) .......................................................19, 20, 21

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Princeton Univ. Press v. Mich. Doc. Servs., Inc.*,
    99 F.3d 1381 (6th Cir. 1996) ...............................................................15

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...........................................................14, 16, 17

*Super Future Equities v. Wells Fargo Bank*,
    553 F. Supp. 2d 680 (N.D. Tex. 2008) ....................................16

*Swatch Group Management Services v. Bloomberg LP.*,
    756 F.3d 73 (2d. Cir. 2014) ......................................................12

*Thomas Jefferson University v. Shalala*,
    512 U.S. 504 (1994) .................................................................3

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
    610 F.3d 1171 (9th Cir. 2010) .................................................22

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ...................................................................8

*United States v. Myers*,
    553 F.3d 328 (4th Cir. 2009) ....................................................14

**STATUTES**

1 C.F.R. § 51 .........................................................................3, 4, 10

24 C.F.R. Part 200 .......................................................................20

24 C.F.R. § 3280.4(aa)(4) (2019) ................................................10

30 C.F.R. § 1915.507(d)(5) ............................................................9

40 C.F.R. § 86.113-04(a)(1) ...........................................................8

41 C.F.R. § 60.17 (2011) .............................................................20

5 U.S.C. 552(a) ..............................................................................3

17 U.S.C. § 101 ("Copyright Act") ...............................................17

17 U.S.C. § 107 ............................................................................13

17 U.S.C. §107(1) ........................................................................11

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

17 U.S.C. §107(2) ................................................................................................14

17 U.S.C. § 121(Chafee Amendment) ................................................................13

17 U.S.C. § 409(2) ..............................................................................................25

H.R. Rep. No. 94–1476 (1976), 1976 U.S.C.C.A.N. 5686 .................................13

H.R. Rep. No. 94–1476, at 73 (1976), 1976 U.S.C.C.A.N. 5659 .......................13

**RULES**

Federal Rule Evid. 803 ..........................................................................................5

Federal Rule Evid. 807 ..........................................................................................5

**OTHER AUTHORITIES**

Federal Register, "OFR Director Charley Barth Stepping Down for New
    Opportunity," ....................................................................................................5

*Incorporation by Reference*, 37 Fed. Reg. 23602 (Nov. 4, 1972)
    (to be codified at 1 C.F.R. 51) ........................................................................3

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:11
    (5th ed. Nov. 2019 update) ............................................................................21

Office of the Federal Register, *Document Drafting Handbook*, Aug. 2018 ed.
    (Rev. 1.1, dated Aug. 9, 2019), Chapter 1.5 ..................................................3

"Read-Only Versions of ASHRAE Standards," ASHRAE (accessed Jan. 16,
    2020), at https://www.ashrae.org/technical-resources/standards-and-
    guidelines/read-only-versions-of-ashrae-standards ....................................13

Report of the Advisory Committee on Accessible Instructional materials in
    Postsecondary Education for Students with Disabilities 43-44 (Dec. 6, 2011),
    http://www2.ed.gov/about/bdscomm/list/aim/meeting/aim-report.pdf ...................13

# INTRODUCTION

The Court should rule for Public Resource on all counts. On copyright fair use, the ASTM Plaintiffs (like the AERA Plaintiffs) depend on a misreading of the Court of Appeals' clear guidance. Properly construed, the appellate opinion supports a fair use finding here. With respect to the first factor, Public Resource's purpose to make the law more accessible to the citizenry, for free, fits comfortably within the spectrum of transformative and public interest purposes that the Court of Appeals recognized in its opinion. *See Am. Soc'y for Testing & Mat'ls v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450-51 (D.C. Cir. 2018). Public Resource also offers a practical rubric for classifying the standards at issue that avoids a legal morass of regulatory interpretation. As for the second factor, it heavily favors fair use where, as here, "the consequence of incorporation by reference is virtually indistinguishable from a situation in which the standard had been expressly copied into law . . . ." *Id.* at 452. On the third factor, Public Resource's posting of the entire document was necessary to present the full law, so that citizens can understand the legal duties that bind us all. Finally, after years of litigation it is clear that none of the plaintiffs have suffered a whit of market harm.

On the trademark claim, there are multiple legal tests for nominative fair use, and every one favors Public Resource.

Finally, on the motion for a permanent injunction, Plaintiffs cannot show any harm from Public Resource's conduct or that an injunction would serve the public interest. Public Resource, by contrast, has shown how an injunction would manifestly disserve the public.

**ARGUMENT**

**I.     PUBLIC RESOURCE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ITS POSTING OF LAWS BY REFERENCE IS A LAWFUL FAIR USE.**

Plaintiffs misunderstand the Court of Appeals to require an unworkable test that would force courts and the public to second-guess regulators and the incorporation by reference process and create a host of unintended consequences. Given that incorporation by reference already requires multiple entities to determine what is and is not the law, the correct question is whether or not the posted standard has been incorporated in full, or has not. The answer to that question guides analysis of the first three fair use factors and informs the fourth. Moreover, where, as here, the use is noncommercial, Plaintiffs must be able to muster some evidence of market harm beyond mere speculation. They have not.

**A.     The Government Has Already Told Us What Is and Is Not Essential to Understanding a Legal Duty for Purposes of the Fair Use Analysis.**

Plaintiffs argue a sentence-by-sentence analysis of standards and regulations is necessary to determine what portions of incorporated material are "essential to complying with a legal duty." ASTM Reply at 7. That approach is neither consistent with the Court of Appeals' instructions nor workable as a practical matter, and ignores clear guidance from the relevant federal government agencies and from the office that administers the incorporation-by-reference process. Moreover, Plaintiffs unduly confine their focus to whether a person needs a standard to understand his or her *own* legal duty. The law binds many different persons and entities, and people need to know the law that binds others as well as themselves, so they can hold all accountable.

**1.     Federal regulations make clear that incorporation by reference adopts documents as the government's own expression and creates binding obligations.**

Federal policy and practice ensure that incorporation by reference creates legal obligations. The Office of the Federal Register's ("OFR") Document Drafting Handbook states that, if an

agency regulation includes a "reference [that] is required to comply with the regulations, [the agency] *must* follow the incorporation by reference requirements in the IBR Handbook." Office of the Federal Register, *Document Drafting Handbook*, Aug. 2018 ed. (Rev. 1.1, dated Aug. 9, 2019), Chapter 1.5 (emphasis added) (attached as Ex. 98 to the Supp. Reply Decl. of Matthew Becker ("Becker Reply Decl.")). Informational references, by contrast, need not follow these rules. *Id*.

Plaintiffs incorrectly dismiss the OFR's IBR Handbook as unworthy of respect. But the Director of the OFR is responsible for the administration of the incorporation by reference procedure and must "interpret and apply" its language. 1 C.F.R. §51.1, 5 U.S.C. 552(a). Accordingly, the OFR's interpretation is due substantial deference. *See Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994).

### 2. The formal incorporation by reference procedure precisely identifies what the government has decided to incorporate into law.

The applicable regulations require an agency to identify *precisely* what it intends to incorporate into law. For example, the original implementing regulations stated: "The language incorporating material by reference shall be *as precise and complete as possible.*" 1 C.F.R. § 51.6(a) (1973) (emphasis added)[1]; *see also* 1 C.F.R. § 51.7(a) (1973) ("Each incorporation by reference shall include an identification and subject description of the matter incorporated, in terms as precise and useful as practicable within the limits of reasonable brevity."). Today, the C.F.R. continues to require that "the language *incorporating a publication* by reference must be precise, complete, and clearly state that the incorporation by reference is intended" and that agencies "inform[] the user that the *incorporated publication* is a requirement." 1 C.F.R. § 51.9(a)-(b) (emphasis added). Whatever an agency specifies as incorporated, is incorporated in full as the law.

---

[1] *See Incorporation by Reference*, 37 Fed. Reg. 23602 (Nov. 4, 1972) (to be codified at 1 C.F.R. 51), attached as Ex. 99 to the Supp. Reply Decl. of Matthew Becker.

State adoptions are equally rigorous. For example, the State of California incorporates model codes into Title 24 of the California Code of Regulations on a triennial code adoption cycle, with a 45-day public comment period, a six-month publication requirement, and a three-month delay to allow local governments to implement them. This includes adoption of the entirety of NFPA's National Electrical Code. SSSMF ¶¶ 225-242. The California Building Standards Law precisely defines the process. SSSMF ¶ 15. Plaintiffs fail to address this or any other state adoption.

### 3.    Vagueness as to what is incorporated will invalidate a regulation.

Agencies have a strong incentive to follow the IBR process carefully and to specify precisely the scope of incorporation: if they fail to do so, their regulations can be held invalid. In *Appalachian Power Co. v. Train*, for example, the Fourth Circuit invalidated an Environmental Protection Agency regulation where the EPA failed to obtain the approval of the Director of the OFR and the regulations had failed to specify precisely what was to be incorporated into law. 566 F.2d 451, 457 (4th Cir. 1977). The regulations stated "(t)he information contained in the [EPA] Development Document shall be considered," but they did not identify whether "the information" meant the entire 273-page document, or some unidentified subsection. *Id*. at 454. Analyzing 1 C.F.R. § 51 (as written at that time), the Fourth Circuit stated that "an incorporation by reference must give one affected enough knowledge so that he may easily and certainly ascertain the conditions by which he is to be bound." *Id*. at 457.

Plaintiffs in this case suggest that the regulations at issue are sufficiently vague as to make sentence-by-sentence comparison necessary. Under *Appalachian Power*, that vagueness would render many of the regulations invalid. Presumably neither the Plaintiffs nor the agencies with which they work would desire that outcome.

Given the care that agencies and the OFR invest in precisely defining the scope of incorporation by reference, neither citizens nor courts should second-guess their judgments. And

their determinations of what has been incorporated are authoritative. When they mean to incorporate complete documents, they do so; when they mean to incorporate only specific sections, they know how to do that too. *See, e.g.*, SSSMF ¶ 27.

### 4. Ranking agency officials confirmed that the text of an incorporation must be treated as a precise articulation of the matter incorporated.

The federal agency officials responsible for implementing and enforcing the IBR process have independently confirmed that, as a matter of government policy and practice, the regulatory text that incorporates material by reference *is* a precise articulation of what has been incorporated.

Plaintiffs trivialize one official, Amy Bunk, as merely "an employee of the National Archives and Records Administration ("NARA"). ASTM Reply at 12. But Ms. Bunk served as the acting Director of the OFR, whose job was to interpret and apply IBR policy.[2] Another, Mary Saunders, a high-ranking official at the National Institute for Standard and Technology, affirmed that "[o]nly the agency would know" precisely what it intended to incorporate by reference into law, and "it would be irresponsible" for NIST to make any assumptions about that intent. Dkt. 204-43 at 191:03-203:12 and Dkt. 204-66. Both officers, speaking from experience, confirmed that actual practice reflects and reinforces the delineations found in the C.F.R.

### 5. When agencies seek to reference an extrinsic standard without incorporating it by reference into law, they know how to do so.

Agencies, like Congress, know perfectly well how *not* to draft a law. If an agency does not intend to require compliance with or review of a document, but simply wishes to refer to it, there

---

[2] *See* Office of the Federal Register, "OFR Director Charley Barth Stepping Down for New Opportunity," accessed Jan. 12, 2020, https://www.federalregister.gov/reader-aids/office-of-the-federal-register-blog/2014/10/ofr-director-charley-barth-stepping-down. Ms. Bunk's statement is a statement of a public office that sets out the office's activities in supervising the IBR process, and there is no reason to doubt the trustworthiness of Ms. Bunk's statement. It therefore qualifies as an exception to the hearsay rules under F.R.E. 803(8), and also qualifies for the residual exception under F.R.E. 807.

are many ways to do so. For example, standards may be cited in agency advisory circulars, guidance documents interpreting the rules in the C.F.R., or policy documents used in conjunction with the C.F.R.[3] Indeed, the Document Drafting Handbook specifies how to refer to documents *not* incorporated by reference, such as including a statement of availability that explains where the reference may be found. But the Handbook is equally clear that "[i]f the reference is required to comply with the regulations, you *must* follow the incorporation by reference requirements in the IBR Handbook." Becker Reply Decl. Ex. 98 at Chapter 1.5 (emphasis added). Where an agency has followed the more rigorous process of incorporating a document by reference into law, it has presumably decided that the document is not a mere extrinsic reference.

### 6. Plaintiffs' alternative approach is inconsistent with the appellate opinion and unworkable for the Court, the parties, and the public.

Contrary to Plaintiffs' interpretation, the Court of Appeals did not suggest that this Court should ignore the OFR and organize its analysis based on a false distinction between IBR'd documents (or portions of documents) that are "essential to complying with a legal duty" and those that are not. *Cf.* ASTM Reply at 7. Instead, the Court of Appeals suggested the documents at issue fall into a "spectrum" that this Court could consider in determining whether factor one—the purpose and character of the use—favors Public Resource. *ASTM*, 896 F.3d at 442-43 ("At one end of this spectrum lie incorporated standards that define one's legal obligations just as much as, say, a local building code . . . . At the other end of the spectrum lie standards that serve as mere references but have no direct legal effect on any private party's conduct."). While the Court of

---

[3] ANSI appears to recognize this distinction, as it has a read-only website listing some standards that have been incorporated by reference into law, but "[s]tandards referenced in advisory circulars and/or policy documents are not accessible via the IBR portal." Dkt. 204-43 at 303:03-304:07 and Dkt. 203-21 at 4 (Ex. 71).

Appeals suggested that posting IBR'd standards at the "reference" end may be *less* transformative, it did not find that such a use was not transformative, much less disfavored. *Id*. at 450.

Each of Public Resource's uses is transformative, and the task at hand is determining how transformative that use is for each incorporated standard. The Court of Appeals suggested that "[w]here an incorporated standard provides information essential to comprehending one's legal duties, for example, [the first fair use] factor would weigh heavily in favor of permitting a nonprofit seeking to inform the public about the law to reproduce in full the relevant portions of that particular standard." *ASTM*, 896 F.3d at 450. If an agency has incorporated material by reference and the Director of the OFR has reviewed and approved the incorporation, the agency has made a judgment that the incorporated material "provides information essential to comprehending one's legal duties." See Section I.A.1-5, above. While Plaintiffs cite the Court of Appeals' statement above to suggest that it intended only specific portions of an incorporated standard to be fair use, ASTM Reply at 10, Plaintiffs are mistaken.

First, the Court should defer to each agency's choice to incorporate all or just some of a standard into law and to the Director of the OFR's review and approval of that incorporation. Subjectively second-guessing that process both undermines that careful process and risks errors from a failure to consider all the factors that the agency and the OFR considered. The same goes for standards adopted by state governments.

Second, even if the Court of Appeals did intend that kind of subjective second review, and were this Court to perform it and conclude that some portion was not "essential," that conclusion would not keep the use of remaining portions of the standard from being transformative, only less so. Those portions would still be transformative as educating citizens about the government edict that the incorporation of the entire standard had created.

Third, each standard incorporated by reference is essential to *someone* to comply with a legal duty, even if the standard supplies only reference procedures. For example, while the Court of Appeals cited 40 C.F.R. § 86.113-04(a)(1), which regulates gasoline, as an example of one such reference procedure, automobile manufacturers and auto shops offering emissions testing and credentialing are charged with ensuring they use gasoline that meets these requirements, based on ASTM D86 and *not any other procedure*.

### 7.    Courts and citizens need a practical test.

Public Resource, the Court, and other adjudicating bodies need a workable method to determine what documents should be freely accessible. The Plaintiffs' approach does not offer such a method. To begin with, citizens require access to laws and government edicts far beyond that with which anyone must comply. Is the preamble to the Second Amendment "essential"? Does public access to the text of an oath of office of a state official depend on whether the oath is an enforceable law? Trying to parse these questions does not yield a workable legal test. Moreover, just as the public, and not just Boeing and FAA employees, have an interest in knowing whether the FAA and Boeing followed the law in the certification of the 737 Max for flight, the public must be able to hold government agents and other citizens accountable for their compliance with the law. To do so, the public must be able to know the law.

Moreover, Plaintiffs' approach means disregarding federal agencies' own statements about incorporation by reference and their formal expressions of incorporation which, when part of notice-and-comment rulemaking, is entitled to judicial deference. *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). It also means imposing on courts a tedious and intensive process of reviewing every standard (each of which may be hundreds of pages long); each incorporating regulation, and all related provisions that speak to the purpose and scope of the regulation; the rulemaking history and comments; all relevant enforcement actions by the agencies; and any other

cases where a court may have addressed or interpreted the scope of the incorporation. Each instance is likely to be an issue of first impression, and when a regulation is updated several years later, the analysis would need to be performed anew.

The consequences of imposing such a cumbersome process would extend far beyond this case. In every case, and for every incorporation, a court would necessarily have to determine the scope of the regulation; identify whom it governs and specify how it governs them; and to sort through sometimes very lengthy incorporated documents to determine which paragraphs, sentences, or phrases are relevant to understanding, interpreting, and complying with the regulation. Determinations regarding the same standards might differ from case to case, depending on the resourcefulness of defense counsel in articulating the relevance or implications of relevant language; or else a court might consider an earlier case to be conclusive on the question, which would inevitably affect interpretation of regulations in later disputes, even though the court in the original case would have been unaware of all of the factual nuances at issue in later litigation.

Indeed, Plaintiffs prove just how difficult it is, under their proposal, to determine how to comply with the regulations incorporating the standards at issue. For example, Plaintiffs claim that Public Resource should not have posted chapter 9 of NFPA 12 (2005) because 30 C.F.R. § 1915.5 and 1915.507(d)(5) (2015) ostensibly concern only "land-side facilities." ASTM Reply at 8-9. But NFPA 12 is riddled with cross-references, and includes provisions such as Section 4.5.2 which references chapter 9 on carbon dioxide extinguishing systems, which is the subject of 30 C.F.R. § 1915.507(d)(5). And the Appendix to the standard acknowledges that, with regard to chapter 9, "It is intended that NFPA 12, Standard on Carbon Dioxide Extinguishing Systems, including this chapter [chapter 9], would be used as a stand-alone document for the design, installation, and maintenance of marine carbon dioxide systems." NFPA 12 (2005) at A.9.2.1 (Ex. E to Supp. Decl.

of James Pauley, Dkt. 198-50) (italics omitted). It is hard to see how a layperson could safely conclude any part of this incorporated standard was not "essential" to a legal duty.

Public Resource's approach avoids this morass. The Court can instead focus on what has become law through incorporation by reference. The Court need not make a detailed holding analyzing the scope of each regulation, make law that will affect the rights and obligations of unknown parties in future cases under these regulations, or second-guess the incorporating agencies. If an agency follows all necessary procedures and incorporates *an entire document* into the law, using the process in 1 C.F.R. §§ 51.1-51.11 or other comparable processes, then Public Resource's posting of the entire document to educate the public has a favored purpose. Where federal regulations incorporate only certain specific (and readily identifiable) sections of a document,[4] then posting only those sections similarly has such a favored purpose.

Public Resource's approach gives fair notice to all—agencies, SDOs, and the public —that whatever is formally incorporated by reference into law *is the law* and is fair game for fair use. Agencies, and the SDOs that brag in their briefs about their public-private partnership with government, have the power to indicate explicitly what is incorporated. Instead of incorporating an entire document, they can agree to incorporate by reference, or paste into the text of a statute or regulation, exactly what portions they need, and preserve the rest for private use and, if they wish, private sale. Public Resource would post no more than what becomes the law.

---

[4] *See, e.g.*, SSSMF ¶ 27 (showing how 24 C.F.R. § 3280.4(aa)(4) (2019) incorporates by reference into law only specific portions of the National Electrical Code, such as "Article 110.22" and "Article 210.12(A)" of that document).

B.     **First Factor: the Purpose and Character of Public Resource's Use Favors Fair Use For All Standards At Issue.**

The first fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. §107(1). One common, though non-exclusive, metric for evaluating the first factor, is whether the use is "transformative," one that has a new "intrinsic purpose," and serves an "entirely different function." *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 606 F. Supp. 1526, 1535 (C.D. Cal. 1985). Public Resource's non-commercial and educational posting of each of the IBR standards as part of a legal archive qualifies as transformative use.

1.     **Public Resource's Use is Noncommercial and Transformative.**

Public Resource's posting of incorporated standards is non-commercial. *ASTM*, 896 F.3d at 449-50. It is also "transformative in function [and] purpose." *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009).

As an initial matter, the standards incorporated into law in this case establish legal duties, according to the enacting agencies and the Office of the Federal Register. *See* Section I.A. above. Posting standards that establish a legal duty falls on the transformative side of the spectrum described by the Court of Appeals. Further, the standards that Public Resource posts have also become government edicts, and Public Resource presents them as such.

Moreover, the purpose and character of Public Resource's use could scarcely be more different from that of the Plaintiffs. Plaintiffs' mission is to promote the *current private industry standards*, and develop new versions. Public Resource's mission is to provide to the public, for free, a comprehensive repository of *the law*, including the law that exists in private standards that are obscure to much of the public (and even to some courts). These standards Public Resource

posts are usually obsolete as statements of best practice and technical merit. Only those who seek to know and engage with the law will seek them out, because that is their only remaining value.

Put another way, Public Resource imparts a different message. Plaintiffs' message is that "these are current best practices for the design and operation of buildings and products." Public Resource's message is that "this is the law," and it is bolstered by a collection of essays and video material. This new context reflects and reinforces a distinct purpose. *See Swatch Group Management Services v. Bloomberg LP.*, 756 F.3d 73, 85 (2d. Cir. 2014) ("Bloomberg's message—'This is what they said'—is a very different message from Swatch Group's—'This is what you should believe.'").

In addition, Plaintiffs do not seek to make the standards available to the same public audience as Public Resource, but they exercise their claim to a copyright veto power arbitrarily and against the public interest. Plaintiff ASTM denied a graduate student's request for permission to use excerpts from a standard in a research paper, while allowing friends of the organization to excerpt standards at will. SSSMF ¶¶ 103-111. As jealous gatekeepers, Plaintiffs do not provide free and unrestricted access for those who need to search within standards, copy excerpts, or engage in computer-aided research. Public Resource does, serving a new and different purpose.

The transformative character of Public Resource's use is entirely consistent with *Swatch Group*, in which Swatch, the rightsholder, challenged Bloomberg's dissemination of the audio recording of a phone call, but not a transcript made from the recording (which was a non-infringing derivative of the audio recording). 756 F.3d at 79. The public availability of an alternative format (the transcript) did not make Bloomberg's dissemination of the audio recording unfair. *Id.* at 84. Likewise, Public Resource's posting of the IBR standards in searchable, accessible formats is

12

transformative in purpose, notwithstanding Plaintiffs' provision of the standards in hard copy or in "reading rooms" that are deliberately difficult to use.

Plaintiffs' suggestion that it is enough, for purposes of the fair use analysis, to make a standard "reasonably available," is a red herring. The "reasonably available" requirement governs whether a standard can be incorporated by reference in the first place. The transformative use analysis concerns how the standards may be used *after* IBR. The latter issue is not a "policy judgment best left to Congress"—Congress has expressly authorized courts to develop fair-use jurisprudence, and to make specific fair-use decisions, with guidance from section 107. Moreover, as a factual matter Plaintiffs do not actually make all the incorporated standards at issue available on their reading rooms. For example, ASHRAE still does not make its 1993 Handbook available.[5]

Finally, Public Resource also makes standards accessible to people with print disabilities by posting them in standard formats; Plaintiffs do not. The drafters of the 1976 Copyright Act considered uses in support of accessibility to be a favored purpose under the first fair use factor. H.R. Rep. No. 94–1476, at 73 (1976), 1976 U.S.C.C.A.N. 5659, 5686 (calling accessibility a "special instance illustrating the application of the fair use doctrine."). Plaintiffs again argue that the Chafee Amendment, 17 U.S.C. § 121, casts a shadow over fair use such that accessibility-related uses not covered by the Amendment cannot be fair uses. This is not only wrong but potentially harmful to the print-disabled community, which relies on fair use to permit important accessibility measures not explicitly covered by the Chafee Amendment.[6] The Supreme Court

---

[5] *See* "Read-Only Versions of ASHRAE Standards," ASHRAE (accessed Jan. 16, 2020), at https://www.ashrae.org/technical-resources/standards-and-guidelines/read-only-versions-of-ashrae-standards.

[6] Report of the Advisory Committee on Accessible Instructional materials in Postsecondary Education for Students with Disabilities 43-44 (Dec. 6, 2011), http://www2.ed.gov/about/bdscomm/list/aim/meeting/aim-report.pdf.

explicitly recognized that making materials available to the blind can be a fair use. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 455 n.40 (1984).

### C.    Second Factor: The Nature of the Works Heavily Favors Fair Use.

The second factor considers "the nature of the copyrighted work." 17 U.S.C. §107(2). The Court of Appeals held that "[w]here the consequence of the incorporation by reference is virtually indistinguishable from a situation in which the standard had been expressly copied into law, this factor weighs heavily in favor of fair use." *ASTM*, 896 F.3d at 452. Here, that very consequence applies for all standards incorporated by reference into the Code of Federal Regulations or adopted into state law. Dkt. 122-9 at 86 (material incorporated by reference, "like any other properly issued rule, has the force and effect of law"); *see also United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009) (material incorporated by reference has the same force of law as the regulation itself).

Moreover, it is undisputed that the government's incorporation of the standards at issue is a *fact*: by that incorporation, the standards at issue have become the government's speech and a government edict. Like a lobbyist's draft of a bill that is made into law, once the government has adopted that language as its own, anyone must be free to report what the government said. While the "government edicts" doctrine affecting copyrightability, currently before the United States Supreme Court in *Georgia v. Public.Resource.Org., Inc.*, No. 18-1150 (argued Dec. 2, 2019), is not directly before this Court now, the status of the standards at issue as government edicts establishes the government's speech as a fact, and it shows that propagation of that fact qualifies as a form of news reporting just like conveying the text of a government debate or proclamation.

### D.    Third Factor: Public Resource Limits Its Use to the Material Designated by Law.

Plaintiffs misconstrue the principle and examples provided by the Court of Appeals. ASTM Reply at 19-20. The Court of Appeals did not require this Court to engage in a specific review of

each standard, but created room for evaluation of "groupings" of standards. *ASTM*, 896 F.3d at 449. Moreover, it stated that "If PRO limits its copying to only what is required to fairly describe the standard's legal import, this factor would weigh strongly in favor of finding fair use here, especially given that precision is ten-tenths of the law" but that "where the incorporation merely makes reference to an external standard, but that standard does not govern any conduct, perhaps the copier's purpose could be achieved with only a paraphrase or summary." *Id.* at 896 F.3d at 452. As explained in Section I.A. above, the IBR process requires agencies to differentiate between material that is mandatory and that which is merely informational. Rather than second-guess that process and those determinations, Public Resource has deferred to the government's own statements, and it posted precisely what a given agency has determined to be the law. *See, e.g.* OFR Document Drafting Handbook (Becker Reply Decl. Ex. 98) at Ch. 1.5. Thus, Public Resource has necessarily limited its copying to only what is required to fairly describe a standard's legal import, as determined by the incorporating agencies.

      **E.**      **Fourth Factor: Plaintiffs Have No Evidence of Market Harm.**

After years of litigation and two rounds of discovery, Plaintiffs have failed to offer a single fact showing or suggesting any harm to an existing or potential market from Public Resource's use. Therefore, Plaintiffs insist they have no burden to show any such evidence and effectively ask this Court to rely on an inference of market harm. *See* Opp. at 21-23.

Plaintiffs are mistaken. First, the Court of Appeals has found Public Resource's use to be noncommercial. *ASTM,* 896 F.3d at 453. "The burden of proof as to market effect rests with the copyright holder if," as it is here, "the challenged use is of a 'noncommercial' nature." *Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381, 1385 (6th Cir. 1996); *see also Higgins v. Detroit Educ. Television Found.*, 4 F.Supp.2d 701, 709 & n.8 (E.D. Mich. 1998) (granting

summary judgment in favor of copyright defendant on fair use based on plaintiff's failure to show

harm, where use had a non-profit, teaching purpose). The Supreme Court in *Sony* explained that:

> What is necessary is a showing by a preponderance of the evidence
> that some meaningful likelihood of future harm exists. If the
> intended use is for commercial gain, that likelihood may be
> presumed. But if it is for a noncommercial purpose, the likelihood
> must be demonstrated.

*Sony*, 464 U.S. at 451.

Plaintiffs fail to make any such showing. Instead, they insist that, under *Campbell v. Acuff-

Rose Music, Inc.*, 510 U.S. 569 (1994), a copyright defendant bears the burden of proof on the

fourth factor. But *Campbell* itself concerned a *commercial* use. *Id.* at 571-72 (considering whether

a "commercial parody" of a copyrighted song could nonetheless be a fair use); *see also Super

Future Equities v. Wells Fargo Bank,* 553 F. Supp. 2d 680, 701 (N.D. Tex. 2008) (distinguishing

*Campbell* on this basis). Moreover, the *Campbell* decision actually *limited* the scope of any such

presumption even in cases concerning commercial uses. *Campbell,* 510 U.S. at 591 ("No

'presumption' or inference of market harm that might find support in *Sony* is applicable to a case

involving something *beyond mere duplication for commercial purposes*." (emphasis added).

Plaintiffs' assertions of injury themselves are circular. Plaintiffs suggest that their

continued litigation is itself proof of "substantial harm." Opp. at 22. There is no legal or logical

support for the notion that merely maintaining a copyright lawsuit defeats a claim of fair use. *See,

e.g.*, *Blanch v. Koons*, 467 F.3d 244, 258 & n.9 (2d Cir. 2006) (finding fourth factor "greatly"

favored copyright defendant, where plaintiff asserted that she could charge defendant licensing

fees if the court held in her favor). Plaintiffs fail to support their claims of market harm with any

evidence, and they also disregard evidence demonstrating that Public Resource's uses have had *no*

measurable impact on their finances. *See, e.g.*, SSSMF ¶¶ 137, 138, 154. Indeed, Plaintiffs'

carefully ignore the many years' worth of sales data they themselves produced in discovery.

16

Similarly, Plaintiffs' purported "answers" to the three questions that the Court of Appeals raised undermine any claim of genuine market harm. Plaintiffs concede that their reading rooms do not cannibalize the commercial market for their standards, and—as explained above—they fail to offer any evidence that Public Resource's postings have had any substitutional effect. *See* Opp. at 23-24. Nor do they offer support for their assertion that Public Resource's posting of obsolete standards may harm the market for new standards because "newly issued standards may be very similar to older versions that PRO posts." *See id.* at 24. If anything, the existence of those new versions simply demonstrates that Plaintiffs do not need a copyright incentive under copyright law to continue producing new standards. *Sony,* 464 U.S. at 429; ("the limited grant" of rights under the Copyright Act is meant "to motivate the creative activity of authors and inventors"); *accord Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

All four factor favors Public Resource. Accordingly, the Court should grant summary judgment for Public Resource on the copyright claims.

## II.   PUBLIC RESOURCE'S INCLUSION OF PLAINTIFFS' TRADEMARKS IN POSTED DOCUMENTS IS A NOMINATIVE FAIR USE.

Plaintiffs' trademark arguments virtually ignore the Court of Appeals' opinion, which treated the issue as far from a "black-and-white case of trademark infringement." ASTM Reply at 26. Proper consideration of the factors the Court of Appeals identified requires a finding of noninfringement under any circuit's framework.

### A.   Public Resource Uses Plaintiffs' Trademarks to Refer to Plaintiffs' Publications, As Does the Government.

Plaintiffs inexplicably claim that Public Resource "is not using Plaintiffs' trademarks to refer to Plaintiffs' publications," ASTM Reply at 27. Public Resource uses Plaintiffs' marks precisely to identify the documents that it has posted—*i.e.*, Plaintiffs' published standards. Indeed, the Court of Appeals observed that "it is hard to see how" Public Resource could fulfill its goal of

17

educating the public about the content of the standards "without identifying the standard by its name—the very name also used in the incorporating law." *ASTM*, 896 F.3d at 457.

Any alleged errors in Public Resource's reproductions do not alter the nominative character of the use. The Court rejected Public Resource's *Dastar* argument based on Plaintiffs' allegations of material differences, but it did *not* find that those allegations ruled out nominative fair use. *Compare ASTM*, 896 F.3d at 455, *with id.* at 456–57. Nor would such a rule be reasonable. For example, if a journalist reporting on this case refers to "ASTM, NFPA, and ASHRAE's reply brief," that is a nominative use of Plaintiffs' marks, not trademark infringement, regardless of whether the journalist introduces typographical errors into a quotation from the filing.

Finally, Plaintiffs have identified alleged errors in only a small subset of the postings at issue. It is Plaintiffs' burden to prove infringement and entitlement to an injunction, and any argument that depends on the existence of errors in a few of Public Resource's postings cannot possibly justify the issuance of an injunction against those that contain none.

### B. Plaintiffs Cannot Meet Their Initial Burden Under the Third Circuit's Burden-Shifting Framework.

Plaintiffs misconstrue Public Resource's argument regarding the Third Circuit's burden-shifting framework. *See* ASTM Reply at 27. Plaintiffs' error was not a failure to accept the burden of proving likelihood of confusion, but a failure to apply the Third Circuit's modified confusion analysis. *See* PRO Op. Br. at 31. Because Plaintiffs never addressed that modified test until their most recent brief (nor did this Court), their law-of-the-case argument is misplaced. *Cf. ASTM*, 896 F.3d at 456 ("PRO contests neither the enforceability of ASTM's trademarks nor the district court's analysis of *the ordinary likelihood of confusion factors*." (emphasis added)).

That said, Plaintiffs cannot prevail under the Third Circuit's modified test, which depends on four factors: intent, actual confusion, the duration of the defendant's use without actual

confusion, and lack of consumer care. *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 225-26 (3d Cir. 2005). *First*, Plaintiffs err in relying on evidence of intent to copy. *See* ASTM Reply at 27 n.24. In *Century 21*, the Third Circuit explained that this factor looks at intent to *mislead*, not intent to copy. 425 F.3d at 226. *Second*, while actual confusion evidence is not *required* in trademark cases, without such evidence Plaintiffs cannot tilt this factor in their favor. *Third*, Plaintiffs offer no response to Public Resource's observation that the posted standards including their marks have been online for years without causing confusion. And *fourth*, it is Plaintiffs' burden to provide evidence of consumer care, and they have not done so. Having failed to produce evidence on any of the four factors in the Third Circuit's framework, Plaintiffs cannot shift the burden to Public Resource to establish nominative fair use.

## C.   All Three *New Kids* Factors Are Present, Establishing Nominative Fair Use.

Plaintiffs also attempt to sidestep the Ninth Circuit's test. On factor one, Plaintiffs inexplicably assert that Public Resource "does not argue . . . that [its] identification of Plaintiffs' standards 'would be rendered significantly more difficult without use of' Plaintiffs' marks." ASTM Reply at 28. To the contrary, Public Resource's Opposition explained in detail why the incorporated standards are not readily identifiable without Plaintiffs' marks, providing examples and relevant case law. PRO Op. Br. at 32–33. Those reasons included the presence of Plaintiffs' marks in the titles of their standards and the use of those titles in the incorporating regulations; the lack of a one-to-one correspondence between incorporated standards and incorporating regulations; and searchability considerations.

Plaintiffs claim that Public Resource "could also identify standards by citing the incorporating regulation," ASTM Reply at 28, insisting that Public Resource's alleged failure to research "the incorporating references thoroughly is a reason to *deny* fair use." *Id.* But Public Resource does not claim that it is too difficult to determine all regulations incorporating a given

standard. Rather, the point is that the lack of a one-to-one correspondence compromises the effectiveness of using a regulatory citation to uniquely identify a standard it incorporates.

To adapt a famous example from *New Kids*, Plaintiffs' assertion that Public Resource "could have identified ASTM's Standard Specification for Structural Steel as the 'standard adopted by 24 C.F.R. Part 200'" (ASTM Op. Br. at 34) is like suggesting that a speaker could identify the Chicago Bulls as "the professional basketball team from the United States." *New Kids on the Block v. News America Publishing, Inc.,* 971 F.2d 302 (9th Cir. 1992). Just as that reference would leave ambiguous whether the speaker meant the Bulls or one of the 28 other U.S. NBA teams, a reference to "the standard adopted by 24 C.F.R. Part 200" would fail to indicate which of the dozens of standards incorporated at that location was intended.

Plaintiffs alternatively argue that Public Resource "could reproduce the current text of a regulation and . . . provide a hyperlink to the relevant standard, all without displaying Plaintiffs' word marks or logos in the linked-to content." ASTM Reply at 28–29. Even if the potential for such elaborate workarounds negated a nominative fair use defense—which it does not, *see Century 21*, 425 F.3d at 229; *New Kids*, 971 F.2d at 306—that proposal is nonsensical given that the regulatory text that Plaintiffs propose reproducing *itself* uses their marks to identify the incorporated standards. *See, e.g.*, 41 C.F.R. § 60.17 (2011) (identifying standard incorporated by reference as "ASTM D396-78, 89, 90, 92, 96, 98, Standard Specification for Fuel Oils").

On the second factor, Plaintiffs do not contest that Public Resource's display of their word marks satisfies the second *New Kids* factor. *See* PRO Op. Br. at 34; ASTM Reply at 29–30 (addressing only display of logos under second factor). As for the logos—which Public Resource has already redacted—Public Resource is not Plaintiffs' competitor. It does not sell standards, whether they have become law or not, or otherwise use them commercially. *Cf. ASTM*, 896 F.3d

at 449. It posts only documents that it believes have the force of law. And it has no incentive to create confusion about the sources of those documents.

Plaintiffs also err in suggesting that a logo may be used nominatively only for criticism. *See* ASTM Reply at 29. In the leading trademark treatise, Professor McCarthy describes the factor two analysis for logos as "highly fact-intensive" and provides other examples of nominative fair uses of logos not involving criticism. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:11 (5th ed. Nov. 2019 update). Here, the key consideration should be that Public Resource had a legitimate reason for reproducing Plaintiffs' logos unrelated to exploiting their associated goodwill, just as in the examples Professor McCarthy provides.

Finally, the third *New Kids* factor looks to whether there is language or conduct *in addition to* use of Plaintiffs' marks that affirmatively suggests sponsorship or endorsement.[7] McCarthy, *supra*, § 23:11; *ASTM*, 896 F.3d at 456. Having abandoned their earlier argument that Public Resource's *redaction* of Plaintiffs' logos somehow qualified (*cf.* ASTM Op. Br. at 37), the only additional conduct Plaintiffs now raise is Public Resource's copying of the text of their standards. ASTM Reply at 30. Once again, this is no more than a copyright argument in disguise. By indicating its intent to provide accurate reproductions of the standards incorporated as law, Public Resource does not imply that Plaintiffs have approved or signed off on those reproductions.

As for Public Resource's disclaimers, it bears repeating that *no disclaimers at all* are required because Public Resource has done nothing to affirmatively encourage consumer

---

[7] There are several good reasons why Plaintiffs should bear the burden of proof on this and the other nominative fair use factors (*contra* ASTM Reply at 30 & n.26), including that the reverse burden would require Public Resource to prove a negative and that this factor bears a close relationship to the likelihood of confusion inquiry, on which a plaintiff always carries the burden. And as Public Resource has explained, only the Third Circuit treats nominative fair use as an affirmative defense, and Plaintiffs cannot meet that test's burden-shifting threshold. *See* PRO Opp. at 31–32. Regardless, the allocation of burden should have no impact on the ultimate result here.

confusion as to Plaintiffs' sponsorship or endorsement of its postings. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1177 (9th Cir. 2010). Rather, they function to tip the scales further in Public Resource's favor by affirmatively *dis*couraging such confusion, *see id.*—not to mention their significance in contradicting Plaintiffs' unfounded assertion that Public Resource's conduct "was plainly calculated to confuse consumers," ASTM Reply at 30.

## III. PLAINTIFFS CANNOT JUSTIFY A PERMANENT INJUNCTION.

### A. The Plaintiffs' Deliberate Avoidance of Other Available Remedies Weighs Against an Injunction.

Public Resource may easily dispose of Plaintiffs' first argument in support of injunctive relief, namely that Public Resource ignored the "inadequacy of other available remedies." ASTM Br. at 32. Plaintiffs state "Public Resource has neither the money nor the inclination" to pay damages. *Id*. But Plaintiffs *chose not to sue for damages*, though they *did* demand attorneys' fees; *see* Complaint (Dkt. 1) at 49. The Plaintiffs bear the burden of establishing *all four eBay* factors. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006). Public Resource bears the burden on none. Thus, it was not for Public Resource to suggest or establish the adequacies of other available remedies when none were proposed.

In any event, Plaintiffs do have alternative remedies. They can choose not to promote adoption of their standards as laws through incorporation by reference. Public Resource posts only materials that have become government edicts and laws. They can urge agencies to incorporate only portions of standards. And if they believe adoption of their standards as laws caused a "taking" of their copyrights, they may bring actions against the relevant governments, as they

implied in their original summary judgment motion. *See* Dkt. 155 at 16. They may not like that remedy, because they profit from the legal status of their standards,[8] but it is available.

The fact that the Plaintiffs have deliberately chosen to forgo other remedies does not prove that they lack alternatives. This "remedies" factor thus weighs against a preliminary injunction.

### B.     After Years of Litigation, the Plaintiffs Still Cannot Show Irreparable Harm.

"A plaintiff must demonstrate: (1) that *it has suffered* an irreparable injury . . . ." *eBay*, 547 U.S. at 391 (emphasis added). Plaintiffs have not established *any* actual injuries at all.

Plaintiffs stress repeatedly the "importance" they attach to the standards, but their only evidence is their own choice, observed by their own expert, to file and pursue this lawsuit. ASTM Reply at 34. The Court should give little if any weight to this kind of classic "mouthpiece" testimony by an expert who simply repeat the opinion of a party's management in expert garb. In any event, the testimony does not show any actual economic harm.

Plaintiffs also explain their earlier delay in seeking an injunction by saying they wanted to "develop an evidentiary record before seeking a merits-based decision." ASTM Reply at 34 n.28. But years later, Plaintiffs still cannot attribute any lost sales to Public Resource's conduct.[9]

Plaintiffs' attempt to compare Public Resource to for-profit peer to peer file-sharing companies is specious. Those cases involved claims for billions of dollars in damages against for-profit entities. *See Arista Records LLC v. Lime Group LLC,* 784 F. Supp.2d 313, 317 (S.D.N.Y. 2011). Moreover, the Plaintiffs cite not to a court decision but to a *consent injunction* in the *Lime*

---

[8] As NFPA advertises in e-mail blasts, when selling its standards and ancillary materials, "Be confident your electrical work complies with California law. . . . California has adopted the 2011 NEC. Order the NEC Handbook today and receive FREE tabs!" Dkt. 124-5.

[9] Plaintiffs also falsely assert that they filed suit "only eight months" after Public Resource first began posting the standards at issue. ASTM Reply at 34, n.28. Public Resource posted some of the standards at issue in 2008 and the record shows that Plaintiffs coordinated amongst each other regarding Public Resource for years prior to filing suit. SSSMF ¶¶ 133-134.

*Wire* case in which the parties agreed that the *eBay* standard required a showing that a plaintiff *has suffered* irreparable harm, not that some hypothetical harm might lie in the future. *See Arista Records LLC v. Lime Wire LLC.,* No. 06 Civ. 05936, 2010 WL 10031251, *3 (S.D.N.Y. Aug. 9, 2010). Thus, the Plaintiffs have failed to meet the standard they invoked.

Plaintiffs finally claim that Public Resource's activities threaten their "reputations" but they have no evidence, after years of litigation, to support that conclusion other than a small number of typographical errors in Public Resource's work. Given that Plaintiffs' themselves have had similar error rates in their own publications, the Court need not and should not infer that any such harm, if it exists at all, is attributable to Public Resource. SSSMF ¶¶ 176-178.

### C.     The Balance of Hardships Disfavors an Injunction.

Public Resource explained that an injunction against posting the laws would impair its important non-profit, public interest mission. The Plaintiffs' answer is simply to compare Public Resource to for-profit services that rebroadcast commercial network television programming.

This approach reflects Plaintiffs' consistent blind spot: Public Resource's mission of enabling free access to the law. Indeed, this case involves one of the most obscure but far-reaching sets of laws in the United States. Their inclusion is necessary to the creation of a unitary repository of the law for public study, commentary, and debate. There is no realistic alternative to the public service Public Resource provides, given the cost and difficulty of *purchasing* these obsolete standards that remain the law and that constitute important documentation of laws past and present.

Plaintiffs also fail to identify any legitimate hardship on their part. Once again, they rely solely upon speculation about a likely change in business models. Plaintiffs threaten to *start* charging the actual authors of the standards: the persons (or their employers) who do the drafting and revising. Plaintiffs have not explained what their additional charges would be, which is hardly surprising given that those persons or their employers *already pay* to participate in the standards

drafting, via membership dues, work hours, and travel expenses, and that those who participate reap or seek significant rewards for their efforts. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 502-09 (1988) (discussing both legislative and anticompetitive aims of participants in standard-setting of Plaintiff National Fire Protection Association).

> **D.**    **The Plaintiffs Failed to Prove that an Injunction Would Serve the Public Interest.**

The public interest in Public Resource's continued work, free of any threat of injunction, is clear. Notably, Plaintiffs fail to address two powerful examples of that interest where *courts and litigants* were unable to access standards that had been incorporated into law. *See* Dkt. 202-2 at 1-3, 9, 12. Plaintiffs' standards, as such, may serve the public interest. Allowing Plaintiffs to control who can report, access, learn, teach, annotate, or discuss the subset of standards that have become mandatory, does not. The law should have no gatekeepers, much less arbitrary ones.

## IV.    PLAINTIFFS FAIL TO PROVIDE ADEQUATE EVIDENCE OF COPYRIGHT OWNERSHIP TO SUPPORT THEIR "JOINT WORKS" THEORY.

Plaintiffs acknowledge that errors in copyright registrations affect the presumption of ownership where they are material or fraudulent. ASTM Reply at 26 (citing *Nimmer on Copyright* § 7.20[B][1]). A straightforward application of the Copyright Act suggests that joint authorship with federal government employees, acting in the scope of their employment, causes the standards to become works of the U.S. Government and therefore outside of copyright. Thus, Plaintiffs' failure to identify all joint authors (including U.S. government employees) as 17 U.S.C. § 409(2) requires is material: if they had identified U.S. Government authors, the copyright registration should not have been granted. *See, e.g.*, SSSMF ¶ 191; Becker Reply Decl. Ex. 103.

### CONCLUSION

For all these reasons, the Court should deny Plaintiffs' motion for summary judgment and for a permanent injunction and grant Defendant's second motion for summary judgment.

Dated: January 16, 2020

Respectfully submitted,

*/s/   Andrew P. Bridges*
Andrew P. Bridges (USDC-DC AR0002)
abridges@fenwick.com
Matthew B. Becker (admitted *pro hac vice*)
mbecker@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:    (650) 988-8500

Corynne McSherry (admitted *pro hac vice*)
corynne@eff.org
Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:    (415) 436-9333

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW 2nd Floor
Washington, DC 20005
Telephone: (202) 905-3434

*Attorneys for Defendant-Counterclaimant*
Public.Resource.Org, Inc.