# Exhibit B

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNICOLORS, INC., a California Corporation,<br><br>*Plaintiff-Appellee*,<br><br>v.<br><br>H&M HENNES & MAURITZ, L.P., a New York limited partnership,<br>*Defendant-Appellant.* | Nos. 18-56253<br>18-56548<br><br>D.C. No.<br>2:16-cv-02322-AB-SK<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Submitted March 30, 2020[*]
Pasadena, California

Filed May 29, 2020

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

2    UNICOLORS V. H&M HENNES & MAURITZ

Before:  Carlos T. Bea and Bridget S. Bade, Circuit Judges,
and Jon P. McCalla,** District Judge.

Opinion by Judge Bea

**SUMMARY***

**Copyright**

The panel reversed the district court's judgment after a
jury trial and award of attorneys' fees in favor of the plaintiff
in a copyright infringement action, and remanded for further
proceedings concerning copyright registration.

The district court denied defendant's motion for
judgment as a matter of law on the ground that plaintiff's
copyright registration was invalid because it secured the
registration by including known inaccuracies in its
application for registration.

The panel held that under 17 U.S.C. § 411(b)(1)–(2),
once a defendant alleges that (1) a plaintiff's certificate of
registration contains inaccurate information; (2) "the
inaccurate information was included on the application for
copyright registration;" and (3) the inaccurate information
was included on the application "with knowledge that it was
inaccurate," a district court is then required to submit a

_____

** The Honorable Jon P. McCalla, United States District Judge for
the Western District of Tennessee, sitting by designation.

*** This summary constitutes no part of the opinion of the court. It
has been prepared by court staff for the convenience of the reader.

request to the Register of Copyrights "to advise the court whether the inaccurate information, if known, would have caused [it] to refuse registration." In other words, courts may not consider in the first instance whether the Register of Copyrights would have refused registration due to the inclusion of known inaccuracies in a registration application.

The panel held that the district court erred in imposing an intent-to-defraud requirement for registration invalidation. The district court further erred in concluding that plaintiff's application for copyright registration of a collection of works did not contain inaccuracies. The panel held that single-unit registration requires that the registrant first published a collection of works in a singular, bundled collection. The panel also concluded that the undisputed evidence adduced at trial showed that plaintiff included the inaccurate information with knowledge that it was inaccurate. Accordingly, the district court was required to request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register to refuse registration. The panel reversed and remanded for the district to complete this statutorily required request.

---

## COUNSEL

Staci Jennifer Riordan, Aaron Brian, and Dale A. Hudson, Nixon Peabody LLP, Los Angeles, California, for Defendant-Appellant.

Stephen M. Doniger, Scott Alan Burroughs, and Trevor W. Barrett, Doniger / Burroughs, Venice, California, for Plaintiff-Appellee.

4     UNICOLORS V. H&M HENNES & MAURITZ

**OPINION**

BEA, Circuit Judge:

This is a copyright-infringement action brought by Unicolors, Inc. ("Unicolors"), a company that creates designs for use on textiles and garments, against H&M Hennes & Mauritz L.P. ("H&M"), which owns domestic retail clothing stores. Unicolors alleges that a design it created in 2011 is remarkably similar to a design printed on garments that H&M began selling in 2015. The heart of this case is the factual issue whether H&M's garments bear infringing copies of Unicolors's 2011 design. Presented with that question, a jury reached a verdict in favor of Unicolors, finding the two works at least substantially similar. On appeal, however, we must decide a threshold issue whether Unicolors has a valid copyright registration for its 2011 design, which is a precondition to bringing a copyright-infringement suit.

I

Unicolors's business model is to create artwork, copyright it, print the artwork on fabric, and market the designed fabrics to garment manufacturers. Sometimes, though, Unicolors designs "confined" works, which are works created for a specific customer. This customer is granted the right of exclusive use of the confined work for at least a few months, during which time Unicolors does not offer to sell the work to other customers. At trial, Unicolors's President, Nader Pazirandeh, explained that customers "ask for privacy" for confined designs, in respect of which Unicolors holds the confined designs for a "few months" from other customers. Mr. Pazirandeh added that his staff follows instructions not to offer confined designs for sale to customers generally, and Unicolors does not even

place confined designs in its showroom until the exclusivity period ends.

In February 2011, Unicolors applied for and received a copyright registration from the U.S. Copyright Office for a two-dimensional artwork called EH101, which is the subject of this suit. Unicolors's registration—No. VA 1-770-400 ("the '400 Registration")—included a January 15, 2011 date of first publication. The '400 Registration is a "single-unit registration" of thirty-one separate designs in a single registration, one of which designs is EH101. The name for twenty-two of the works in the '400 Registration, like EH101, have the prefix "EH"; the other nine works were named with the prefix "CEH." Hannah Lim, a Unicolors textile designer, testified at trial that the "EH" designation stands for "January 2011," meaning these works were created in that month. Ms. Lim added that a "CEH" designation means a work was designed in January 2011 but was a "confined" work.

When asked about the '400 Registration at trial, Mr. Pazirandeh testified that Unicolors submits collections of works in a single copyright registration "for saving money." Mr. Pazirandeh added that the first publication date of January 15, 2011 represented "when [Unicolors] present[ed] [the designs] to [its] salespeople." But these salespeople are Unicolors employees, not the public. And the presentation took place at a company member-only meeting. Following the presentation, according to Mr. Pazirandeh, Unicolors would have placed non-confined designs in Unicolors's showroom, making them "available for public viewing" and purchase. Confined designs, on the other hand, would not be placed in Unicolors's showroom for the public at large to view.

6      UNICOLORS V. H&M HENNES & MAURITZ

H&M owns and operates hundreds of clothing retail stores in the United States. In fall 2015, H&M stores began selling a jacket and skirt made of fabric bearing an artwork design named "Xue Xu." Upon discovering H&M was selling garments bearing the Xue Xu artwork, Unicolors filed this action for copyright infringement, alleging that H&M's sales infringed Unicolors's copyrighted EH101 design. Unicolors alleges that the two works are "row by row, layer by layer" identical to each other.

The case proceeded to trial, at which a jury returned a verdict in Unicolors's favor, finding Unicolors owned a valid copyright in the EH101 artwork, H&M infringed on that copyright by selling the contested skirt and jacket, and H&M's infringement was willful. The jury awarded Unicolors $817,920 in profit disgorgement damages and $28,800 in lost profits.

H&M filed a renewed motion for judgment as a matter of law, or in the alternative, for a new trial. The district court denied H&M's renewed motion for judgment as a matter of law, but conditionally granted H&M's motion for a new trial subject to Unicolors accepting a remittitur of damages to $266,209.33. Unicolors accepted the district court's remittitur and the district court entered judgment against H&M accordingly. Unicolors subsequently moved for attorneys' fees and costs, which the district court awarded in the amounts of $508,709.20 and $5,856.27, respectively. This appeal of both the entry of judgment and award of attorneys' fees in favor of Unicolors followed.

II

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). As to ownership, a registration certificate issued by the U.S. Register of Copyrights constitutes prima facie evidence of the validity of a plaintiff's copyright. 17 U.S.C. § 410(c).

Although proper registration benefits copyright-infringement plaintiffs by imbuing their copyright with a presumption of validity, proper registration is also a burden of sorts, as it is "a precondition to filing an action for copyright infringement." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1144 (9th Cir. 2019); *see* 17 U.S.C. § 411(a).   Proper registration, of course, is not a precondition to copyright protection. 17 U.S.C. § 408(a).   But the Copyright Act expressly prohibits copyright owners from bringing infringement actions without first properly registering their work. *Id.* § 411(a).   Whether a copyright is properly registered is rarely disputed, because the mere receipt of a registration certificate issued by the Register of Copyrights ordinarily satisfies the Copyright Act's registration requirement. *Id.* § 411(b)(1).  But possession of a registration certificate does not satisfy the Copyright Act's registration requirement if the registrant secured the registration by knowingly including inaccurate information in the application for copyright registration that, if known by the Register of Copyrights, would have caused it to deny registration. *Id.*

In practice, once a defendant alleges that (1) a plaintiff's certificate of registration contains inaccurate information; (2) "the inaccurate information was included on the application for copyright registration"; and (3) the inaccurate information was included on the application "with knowledge that it was inaccurate," a district court is then required to submit a request to the Register of Copyrights "to

8      UNICOLORS V. H&M HENNES & MAURITZ

advise the court whether the inaccurate information, if known, would have caused [it] to refuse registration." *Id.* § 411(b)(1)–(2). In other words, courts may not consider in the first instance whether the Register of Copyrights would have refused registration due to the inclusion of known inaccuracies in a registration application.

Here, following the unfavorable verdict, H&M filed a renewed motion for judgment as a matter of law that contended, in relevant part, that Unicolors's '400 Registration covering the EH101 work was invalid because Unicolors secured the registration by including known inaccuracies in its application for registration. In particular, H&M noted that Unicolors used a single copyright registration to register thirty-one separate works, one of which was EH101. But to register a collection of works as a "single unit" as Unicolors did, H&M maintained that the works must have been first sold or offered for sale in some integrated manner. And because the undisputed evidence adduced at trial showed that Unicolors included in the '400 Registration at least nine confined works that were sold separately and exclusively to individual customers, H&M argued that the collection of works identified in the '400 Registration were not first sold together and at the same time. In turn, H&M contended the district court should find the '400 Registration invalid and enter judgment in favor of H&M.

The district court rejected H&M's argument for invalidating the '400 Registration for two reasons. First, the district court held that invalidation required a showing at trial that Unicolors intended to defraud the Copyright Office, and found no evidence introduced at trial showed such an intent.  Second, the district court held that although Unicolors may have marketed and sold various works

included in the '400 Registration separately, that did not mean all of the works were not first made available to the public—i.e., published—on the same day.

Both the district court's reasons for denying H&M judgment as a matter of law are flawed. To be sure, several opinions from this Court have implied that there is an intent-to-defraud requirement for registration invalidation. *See L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 853–54 (9th Cir. 2012); *see also Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003) (stating that inaccuracies "do not invalidate a copyright . . . [unless] the claimant intended to defraud the Copyright Office by making the misstatement") (quoting *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997)); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486–87 (9th Cir. 2000) (same), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc); *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 487 (9th Cir. 1985) ("Absent fraud, a misstatement or clerical error in the registration application . . . will not invalidate the copyright . . . .") (internal quotation marks omitted), *overruling on other grounds recognized by Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1448 (9th Cir. 1994); 2 M. Nimmer & D. Nimmer, Nimmer on Copyright § 7.20[B][1] (2019). But we recently clarified that there is no such intent-to-defraud requirement. *See Gold Value Int'l Textile, Inc.*, 925 F.3d at 1147 (9th Cir. 2019).

The district court further erred in concluding that Unicolors's application for copyright registration did not contain inaccuracies despite the inclusion of confined designs because single-unit registration requires merely that all works identified in the application be published on the

same date.  Under the Copyright Act, an author may register a collection of published works "as a single work," so that the registrant need pay only one filing fee.  37 C.F.R. § 202.3(b)(4) (effective January 24, 2011).**[1]**  To register such a collection of published works, the works must have been "included in a single unit of publication."  *Id.* § 202.3(b)(4)(i)(A)  "Publication" under the Copyright Act is defined as the initial "distribution" or "offering to distribute" the "work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 101.  As we have explained, publication includes when copies of a work are "made available to the general public . . . even if a sale or other such disposition does not in fact occur."  *Am. Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1027 (9th Cir. 1981) (quoting 1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 4.04 at 4-18 to 4-19 (1978)).  The confined designs, however, were not placed in the showroom for sale at the same time.  And this court has never previously addressed what it means to publish multiple works as a "single unit."**[2]**

We conclude that the plain meaning of "single unit" in § 202.3(b)(4)(i)(A) requires that the registrant first published the collection of works in a singular, bundled

---

**[1]** The current version of § 202.3(b)(4) refers to registration "as one work" rather than "as a single work."  We use the language of the regulation's version effective January 24, 2011, which is the operative version in this case.

**[2]** The Third Circuit discussed the single-unit requirement in a published opinion, but that case provides no help to the matter at hand. *See Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 204–06 (3d Cir. 2005) (mentioning the single-unit registration option and concluding the individual works need not be "related," but not explaining what it means for works to be part of a "single unit").

collection. The relevant language of the regulation provides, in full:

> For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work:
>
> (A) In the case of published works: all copyrightable elements that are *otherwise recognizable as self-contained works*, that are *included in a single unit of publication*, and in which the copyright claimant is the same[.]

37 C.F.R. § 202.3(b)(4)(i)(A) (emphasis added). The plain meaning of the word "single" unsurprisingly commands a sense of singularity. *See Single*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/s ingle (defining "single" as "unaccompanied by others"). The plain meaning of "unit" is no different. *See Unit*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/unit (defining "unit" as "a single thing, person, or group that is a constituent of a whole"). Together, the two words suggest that a "single unit of publication" refers to some singular, bundled item that contains all works identified in the registration.

The proverbial toolkit of statutory interpretation reinforces that a collection of published works that make up "a single unit of publication" must have been first published as part of some singular, bundled collection. The principle of *noscitur a sociis*—"it is known by its associates" or "birds of a feather flock together"—instructs that words in statutes are given more precise content by neighboring words.

12      UNICOLORS V. H&M HENNES & MAURITZ

*See Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 740 (2017); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 195–98 (2012) (describing *noscitur  a sociis* and explaining its meaning as "birds of a feather flock together"). Here, § 202.3(b)(4)(i)(A) refers to "copyrightable *elements* that are *otherwise* recognizable as *self-contained works*, which are included in a single unit of publication." (emphasis added). By referring to "elements" that are "otherwise . . . self-contained works," the regulation unambiguously contemplates that a "single-unit of publication" does not cover separate self-contained works, but instead covers the unification of such works that otherwise could be self-contained.**[3]**

For these reasons, we hold that a collection of works does not qualify as a "single unit of publication" unless all individual works of the collection were first published as a singular, bundled unit. Therefore, it is an inaccuracy for a registrant like Unicolors to register a collection of works (such as the works identified in the '400 Registration) as a single-unit publication when the works were not initially

---

**[3]** Even if the term "single unit" were ambiguous, we would hold the term has the same meaning. If it were ambiguous, we would look to how the U.S. Copyright Office has defined the term in its internal manual, *Compendium of Copyright Office Practices* ("*Compendium*"), which is entitled to *Skidmore* deference. *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041–42 & n.2 (9th Cir. 2014). The *Compendium* details that the "single unit of publication" option applies to a collection of published works "first distributed to the public in the packaged unit." *Compendium* § 1103. In other words, a single unit of publication refers to separately copyrightable works "that are physically bundled together and distributed to the public as a unit, such as a board game containing instructions, a game board, and sculpted playing pieces." *Id.* The *Compendium*'s definition for "single unit" thus aligns with what we ascribe as its unambiguous and plain meaning.

published as a singular, bundled collection.  At a minimum, the confined works included in the '400 Registration were initially made available only to individual, exclusive customers.

The undisputed evidence adduced at trial further shows that H&M included the inaccurate information "with knowledge that it was inaccurate."  17 U.S.C. § 411(b)(1)(A).  And the knowledge inquiry is not whether Unicolors knew that including a mixture of confined and non-confined designs would run afoul of the single-unit registration requirements; the inquiry is merely whether Unicolors knew that certain designs included in the registration were confined and, therefore, were each published separately to exclusive customers.  *See Gold Value Int'l Textile, Inc.*, 925 F.3d at 1147.  At trial, Unicolors admitted to having such knowledge.

Although Unicolors's application for the '400 Registration contained known inaccuracies, that does not mean H&M was entitled to judgment as a matter of law. Rather, the district court was required to "request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register . . . to refuse registration."  17 U.S.C. § 411(b)(2). Because the district court did not make the statutorily required request, we remand the case so that the district court can complete this requirement before deciding whether Unicolors's registration is invalid, which would require dismissing Unicolors's claims and entering judgment in favor of H&M.

III

For the foregoing reasons, we reverse the district court's entry of judgment and award of attorneys' fees in favor of

14    UNICOLORS V. H&M HENNES & MAURITZ

Unicolors and remand to the district court with instructions to submit an inquiry to the Register of Copyrights asking whether the known inaccuracies contained in the '400 Registration application detailed above, if known to the Register of Copyrights, would have caused it to refuse registration. Because the validity of Unicolors's copyright registration is a threshold issue, we do not consider here the many other questions presented on appeal.**[4]** In the event the district court determines on remand—and after submitting the necessary inquiry to the Register of Copyrights—that Unicolors has a valid copyright registration in EH101, this panel retains jurisdiction over any subsequent appeal to review that determination and, if necessary, to decide remaining questions presented in this appeal.

**REVERSED AND REMANDED.**

---

**[4]** As the Supreme Court has explained, the Copyright Act's registration requirement is not a jurisdictional requirement; rather, it is a claim-processing rule. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 163–66 (2010). That does not change that Unicolors's compliance with the Copyright Act's registration requirement is a threshold matter. As the Supreme Court recently clarified, a claim-processing rule can still be "mandatory," which means "that a court must enforce the rule if a party 'properly raise[s]' it." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (alteration in original) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). The *Fort Bend County* Court even noted that "the Copyright Act's requirement that parties register their copyrights" is one such mandatory claim-processing rule. *Id.* Here, the parties do not dispute that H&M properly raised its challenge to Unicolors's compliance with the Copyright Act's registration requirement.