UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>    Plaintiffs/<br>    Counter-Defendants,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>    Defendant/<br>    Counter-Plaintiff. | Case No. 1:13-cv-01215-TSC |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *GEORGIA v. PUBLIC.RESOURCE.ORG, INC.***

Pursuant to this Court's July 9, 2020 Minute Order, Plaintiffs respectfully submit this supplemental brief "regarding the impact, if any," of *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498 (2020), "on the parties' pending summary judgment motions." July 9, 2020 Minute Order; *see also* Pls' Second Mot. Summ. J., Dkt. 198; Public.Resource.Org, Inc. ("PRO") Second Mot. for Summ. J., Dkt. 202.

**INTRODUCTION**

Despite PRO having urged adoption of a much broader rule, the Supreme Court in *Georgia* issued a narrow decision that does not impact the pending summary judgment motions. Specifically, the Supreme Court held only that, because the annotations to Georgia's official code "are *authored* by an arm of the legislature in the course of its legislative duties, the

1

government edicts doctrine puts them outside the reach of copyright protection." *Georgia*, 140 S. Ct. at 1504 (emphasis added).  Plaintiffs are private organizations, not judges or legislators, and there is no evidence any judge or legislator authored any part of any of the works in this case.  *A fortiori*, *Georgia* does not affect the pending motions regarding the copyright question the D.C. Circuit remanded to this Court:  whether PRO's copying of the entirety of Plaintiffs' published standards qualifies for the fair use defense.

Because *Georgia* does not impact the pending motions, PRO may use its supplemental brief to raise arguments beyond *Georgia*—as PRO has done previously.  *See* PRO's Response to Pls' Request for a Telephonic Status Conference; Citation of Suppl. Authorities on Pending Mots. for Summ. J., Dkt. 222, at 4-8 ("PRO Response") (requesting new motion practice on multiple issues other than fair use).  This Court has held there are to be no more motions until "after a ruling on the current motions and anticipated supplemental briefs."  July 9, 2020 Minute Order.  Plaintiffs respectfully urge the Court to disregard whatever extraneous arguments PRO raises at this juncture and disallow PRO from expanding the scope of the D.C. Circuit's remand and further delaying these proceedings.

## ARGUMENT

I. ***GEORGIA* HAS NO BEARING ON THE FAIR USE INQUIRY THE D.C. CIRCUIT REMANDED FOR THIS COURT TO RESOLVE**

### A. The *Georgia* Decision

The dispute in *Georgia* arose out of PRO's copying and distribution of the "Official Code of Georgia Annotated" ("OCGA").  The OCGA included both the text of state statutes and annotations appearing below each statutory section that "generally include summaries of judicial decisions applying a given provision, summaries of any pertinent opinions of the state attorney general, and a list of related law review articles and similar reference materials," as well as

"editor's notes" regarding the origin of statutory language. *Georgia*, 140 S. Ct. at 1504. Georgia sued PRO for infringing the State's copyright in the annotations portion of the OCGA.

The annotations were the product of Georgia's "Code Revision Commission," an arm of the state legislature. A majority of the Commission's members are required to be state legislators, and the state legislature funds the Commission and staffs it with employees of the Office of Legislative Counsel. *Id*. The Commission contracts with Matthew Bender & Co. (part of LexisNexis) to prepare the annotations "in the first instance . . . pursuant to a work-for-hire agreement." *Id.* at 1505. Accordingly, the Commission is deemed "the sole 'author' of the work" under the Copyright Act. *Id.* at 1508; *see also id.* at 1505 (noting that the contract expressly provides that the copyright in the OCGA "vests exclusively in the State of Georgia, acting through the Commission" (quotations omitted)). Additionally, "the Commission supervises [Matthew Bender & Co.'s] work and specifies what the annotations must include in exacting detail." *Id.* at 1505. The Commission presents the statutory text and annotations to the legislature each year, and the legislature votes to "enact" the text, "merge" the text and annotations, and "publish" the final product as the OCGA. *Id*. at 1504-05 (quotations and alterations omitted).

PRO urged the Supreme Court to extend the government edicts doctrine to *any* work "ultimately adopted by or published under the authority of the State, thus conveying the State's legal authority." PRO Supreme Court Merits Br. 44; *see also id.* at 35. PRO's objective in asking for such a broad rule was obvious: to try to have the issues in this lawsuit, which involve standards authored by private parties, resolved in a case where the legislature authored the works in question.

The Supreme Court did not adopt PRO's broad rule. Instead, the Court held that the proper legal framework is *authorship*—a principle firmly rooted in precedent:

> Over a century ago, we recognized a limitation on copyright protection for certain government work product, rooted in the Copyright Act's "authorship" requirement. Under what has been dubbed the government edicts doctrine, officials empowered to speak with the force of law cannot be the authors of—and therefore cannot copyright—the works they create in the course of their official duties.

*Georgia*, 140 S. Ct. at 1504. The Court, in *Banks v. Manchester*, 128 U.S. 244 (1888), had held that the government edicts doctrine applied to materials created by judges in the course of their official duties. In *Georgia*, the Court held that the doctrine also applies to works created by legislators in the course of their official duties.

The Court summarized both the legal rule it adopted regarding authorship, and the application of that rule in the case before it in the following passage:

> A careful examination of our government edicts precedents reveals a straightforward rule based on the identity of the author. Under the government edicts doctrine, judges—and, we now confirm, legislators—may not be considered the "authors" of the works they produce in the course of their official duties as judges and legislators. That rule applies regardless of whether a given material carries the force of law. And it applies to the annotations here because they are authored by an arm of the legislature in the course of its official duties.

*Georgia*, 140 S. Ct. at 1506. The Court further explained that the "straightforward rule" of the government edicts doctrine "*does not apply* . . . to works created by government officials (*or private parties*) who lack the authority to make or interpret the law." *Id*. at 1507 (emphasis added).

    **B.**    ***Georgia* Does Not Affect The Summary Judgment Motions Now Before This Court**

This is the case for three reasons:

*First*, the Supreme Court made clear that the application of the government edicts doctrine depends entirely "*on the identity of the author,*" specifically, whether the author is a

4

judge or legislator producing a work in the course of their official duties as a judge or legislator. *Georgia*, 140 S. Ct. at 1506 (emphasis added). The Court was clear that the doctrine "does not apply" to "private parties." *Id*. at 1507. It is undisputed that the Plaintiffs in this case are private parties, not judges or legislators.

PRO asserted in its motion for summary judgment that some (unspecified) documents purportedly show that some (unidentified) "federal employees" had some (unexplained) "involvement" in drafting some (unidentified) standards. PRO's Combined Opp. to Pls' Mot. for Summ. J. and Second Mot. for Summ. J., Dkt. 202-2, at 44. The Supreme Court's decision in *Georgia* does not assist PRO at all with this argument. After years of discovery in this case, PRO still cannot point to any evidence that any text in any standard was written by any judge or any legislator—much less any judge or legislator acting in the course of their official duties, as was at issue in *Georgia*.

Even if the Court's analysis extended beyond judges and legislators (which it does not), PRO's argument fails for reasons already briefed. As the D.C. Circuit held, PRO's challenge to Plaintiffs' authorship of the standards is both "forfeited" and "meritless." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 446 (D.C. Cir. 2018) ("*ASTM II*"). That ruling is law of the case for the standards on which Plaintiffs' previously moved. *Trout v. Garrett*, 780 F. Supp. 1396, 1425 & n.71 (D.D.C. 1991). And this Court's reasoning in its prior decision applies with equal force to the remaining standards: merely citing to the participation of volunteers or federal government employees in the code development process does not raise a genuine issue of material fact for trial when PRO has "failed to meet its initial burden" to introduce evidence "disproving Plaintiffs' authorship." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 2017 WL 473822, at *7 (D.D.C. Feb. 2, 2017) ("*ASTM I*"); *Roeslin v.*

*District of Columbia*, 921 F. Supp. 793, 797 (D.D.C. 1995) (finding that, because the copyright registration listed plaintiff as the author, the "burden is thus on the defendant to establish" that plaintiff was not the author).

*Second*, the D.C. Circuit remanded for further consideration of the defense of fair use, which was not in issue in *Georgia*. The D.C. Circuit's remand order was very specific, directing consideration of whether PRO could establish its affirmative defense of fair use on a standard-by-standard basis.[1] *ASTM II*, 896 F.3d at 447. The critical question that the D.C. Circuit identified for the fair use analysis is whether, for each portion of each standard that PRO copied, the text is "*essential* to complying with [a] legal duty," as compared to just "help[ing] inform one's understanding of the law." *Id*. at 450 (emphasis added). *Georgia* does not impact the question of whether any portion of any standard that PRO copied and distributed is "essential to complying with [a] legal duty." On the contrary, *Georgia* was clear that the applicability of the government edicts doctrine does not turn on "whether a given material carries the force of law." *Georgia*, 140 S. Ct. at 1506.

PRO has argued that *Georgia* affects the fair use inquiry because the Court purportedly laid down "a bright-line rule on copyright enforceability" that takes precedence over the D.C. Circuit's decision to address the fair use defense before reaching PRO's other arguments. PRO Response 2. As PRO admits, however, "fair use was not before the Supreme Court," *id.*, and the Court's opinion did not establish the rule PRO claims it did.

The Court's only discussion of fair use came in explaining why government authorship—and not the legal force of the particular government-authored document—was the touchstone of

---

[1] The D.C. Circuit also remanded for consideration of PRO's trademark fair use defense. It is undisputed that *Georgia* has no bearing on PRO's trademark defense.

the government edicts doctrine. *See Georgia*, 140 S. Ct. at 1512-13. Again, where works are privately authored (as here), the government edicts doctrine has no relevance.[2] The discussion that PRO cites is likewise inapposite. Specifically, the Court observed that:

> If everything short of statutes and opinions were copyrightable, then *States* would be free to offer a whole range of premium legal works for those who can afford the extra benefit. *A State* could monetize its entire suite of legislative history. With today's digital tools, *States* might even launch a subscription or pay-per-law service.

*Id*. (emphasis added). As is clear from the opinion, the Court's concern was with the potential pitfalls of "a State" owning ancillary materials created by judges or legislators. The Court then explained how its holding obviated these concerns as well as any need for a fair use analysis with respect to State-authored works:

> Thankfully, there is a clear path forward that avoids these concerns—the one we are already on. Instead of examining whether given material carries "the force of law," *we ask only whether the author of the work is a judge or a legislator*.

*Id*. at 1513 (emphasis added).

In sum, *Georgia*'s discussion of fair use was all in the context of the government edicts doctrine and the potential for the *State* claiming ownership over the official works of its judges and legislators. The discussion has no bearing on the question here, where private parties are responsible for the creation of the works in suit.

*Third*, PRO undoubtedly will argue that the Supreme Court's statement that "[t]he animating principle behind [the government edicts doctrine] is that no one can own the law," *id*. at 1507, resolves this case. That statement does no such thing. Plaintiffs' case has never been

---

[2] The D.C. Circuit's opinion, which is the law of this case, instructs that where the underlying works are created by *private parties*, the fair use inquiry involves whether the specific text the defendant copies and distributes is "essential to complying with [a] legal duty," as compared to just "help[ing] inform one's understanding of the law." *ASTM II*, 896 F.3d at 450.

about whether they "own the law." It is about whether PRO may copy and distribute Plaintiffs' original works of authorship in their entirety. The Supreme Court made clear in the same paragraph in which the foregoing statement appears that "[o]ur cases give effect to that principle in the copyright context through construction of the statutory term 'author.'" *Id*. (citation omitted). In particular, those cases "bar[] the officials responsible for creating the law from being considered the 'author[s]' of '*whatever work* they perform in their capacity' as lawmakers." *Id.* (quoting *Banks*, 128 U.S. at 253). Under *Georgia*, the question for a court applying the government edicts doctrine is thus simply whether a work is authored by judges or lawmakers in their official capacities. Plaintiffs' standards decidedly were not.

## II. THE *GEORGIA* RULE DOES NOT EXPAND OR PROVIDE CAUSE TO EXPAND, THE SCOPE OF THE D.C. CIRCUIT'S REMAND

In *Georgia*'s wake, PRO asserted that the decision provided cause for disregarding the scope of the D.C. Circuit's remand because "if [the Supreme Court's guidance] had existed, it would have influenced the [prior] decisions of both this Court and the Court of Appeals." PRO Response 1-2. PRO argues that *Georgia* merits reopening questions of copyright enforceability, the merger doctrine under copyright, and copyright ownership—issues that this Court resolved in *ASTM I* and that are not part of the D.C. Circuit's remand. *See id.* at 7. For the reasons explained above—namely, that *Georgia* turned on the identity of the author—the Supreme Court's decision does not change the trajectory of this case.

The D.C. Circuit held that it is "best at this juncture to address only the statutory fair use issue" and "leave for another day the question of whether the Constitution permits copyright to persist in works incorporated by reference into law." *ASTM II*, 896 F.3d at 447. The D.C. Circuit did this in part to avoid "the economic consequences that might result from the SDOs losing copyright" and to avoid "creating a number of *sui generis* caveats to copyright law for

incorporated standards." *Id.* Accordingly, the D.C. Circuit concluded that "the better course is to remand the case for the district court to further develop the factual record and weigh the [fair use] factors as applied to PRO's use of each standard." *Id.* at 448-49. The D.C. Circuit's decision sets the scope of remand proceedings in this case. Contrary to PRO's suggestion, addressing fair use now, as required by the remand, will not result in a "pinball effect" of appeals and remands. PRO Response 4. The issues of copyright enforceability, merger, and copyright ownership remain before the D.C. Circuit and are issues of law for which the record needs no further factual development.

Given PRO's demonstrated penchant for trying to expand the issues in this case and these remand proceedings, PRO likely will use its brief to make arguments and cite cases beyond *Georgia*, for the purpose of re-litigating issues already previously decided in this Court. The Court's July 9, 2020 Minute Order makes clear that any request for new motions may be made, if at all, "*only after* a ruling on the current motions and anticipated supplemental briefs." July 9, 2020, Minute Order (emphasis added). Should PRO use its supplemental brief on the impact of the *Georgia* decision to advocate again for multiplying the issues before the Court, Plaintiffs will respond accordingly in their responsive supplemental brief. At this juncture, it suffices to note that the D.C. Circuit was quite deliberate about limiting the issues for remand.

## CONCLUSION

Plaintiffs submit that *Georgia* does not affect the questions before the Court on the pending motions. Plaintiffs respectfully request that the Court grant their motion for summary judgment and deny PRO's motion.

Dated: July 17, 2020                              Respectfully submitted,


                                        */s/ J. Kevin Fee*

J. Kevin Fee (D.C. Bar: 494016)
Jane W. Wise (D.C. Bar: 1027769)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.739.5353
Email: kevin.fee@morganlewis.com
        jane.wise@morganlewis.com

*Counsel for American Society for Testing and Materials d/b/a ASTM International*


                                        */s/ Kelly M. Klaus*

Kelly M. Klaus (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, CA 94105
Tel: 415.512.4000
Email: Kelly.Klaus@mto.com

Rose L. Ehler (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213.683.9100
Email: Rose.Ehler@mto.com

Rachel G. Miller-Ziegler
MUNGER, TOLLES & OLSON LLP
1155 F St. NW, 7th Floor
Washington, DC 20004
Tel: 202.220.1100
Email: Rachel.Miller-Ziegler@mto.com

*Counsel for National Fire Protection Association, Inc.*

<u>/s/ J. Blake Cunningham</u>

Jeffrey S. Bucholtz (D.C. Bar: 452385)
David Mattern
King & Spalding LLP
1700 Pennsylvania Avenue, NW, Ste. 200
Washington, DC 20006-4707
Tel: 202.737.0500
Email: jbucholtz@kslaw.com

J. Blake Cunningham
King & Spalding LLP
101 Second Street, Ste. 2300
San Francisco, CA 94105
Tel: 415.318.1211
Email: bcunningham@kslaw.com

*Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2020 a true and correct copy of the foregoing document was served via CM/ECF upon all counsel of record.

　　　　　　　　　　　　　　　　*/s/ Jane W. Wise*
　　　　　　　　　　　　　　　　Jane W. Wise