**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL; | Case No. 1:13-cv-01215-TSC |
| NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and | |
| AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS, | |
| Plaintiffs/Counter-defendants, | |
| v. | |
| PUBLIC.RESOURCE.ORG, INC., | |
| Defendant/Counterclaimant. | |

**PUBLIC.RESOURCE.ORG'S SUPPLEMENTAL BRIEF ON THE IMPACT OF**
***GEORGIA V. PUBLIC.RESOURCE.ORG, INC.***

## TABLE OF CONTENTS

                                                                                              **Page**

INTRODUCTION ................................................................................................................. 1

I.   THE GEORGIA DECISION AND ITS PROGENY SUPPORT A FAIR USE
     DETERMINATION. ................................................................................................... 2

     A.   *Georgia*'s Government Edicts Analysis Supports A Fair Use Finding Where,
          as Here, a Party Has the Courage to Speak the Law............................................ 2

          1.   Factor One: The Supreme Court Recognized Public Resource's Public
               Interest Mission........................................................................................ 2

          2.   Factor Two: *Georgia* Underscored the Factual Nature of the Works........ 4

          3.   Factor Three: *Georgia* Stressed the Need to Access the Whole Work...... 5

          4.   Factor Four: *Georgia* Gave Short Shrift to Similar Claims of Market
               Harm. ........................................................................................................ 6

     B.   A Sister Court's Recent Interpretation of *Georgia* Further Supports a Fair Use
          Finding Here. ...................................................................................................... 6

          1.   The Purpose and Character of the Defendant's Use ................................. 7

          2.   The Nature of the Works............................................................................ 8

          3.   The Amount and Substantiality of the Use ............................................... 8

          4.   Effect on Market Value............................................................................. 8

          5.   Following the *UpCodes* analysis, this Court should find fair use here...... 9

II.  THE *GEORGIA* DECISION MANDATES FURTHER CONSIDERATION OF
     COPYRIGHT ELIGIBILITY ................................................................................... 9

     A.   As Clarified by the Supreme Court, the Government Edicts Doctrine
          Encompasses Standards Incorporated by Reference........................................... 10

     B.   The Standards Here, Adopted as Laws Through Incorporation by Reference,
          Are Ineligible for Copyright Under the *UpCodes* Test....................................... 14

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
  896 F.3d 437 (D.C. Cir. 2018)...................................................................................1

*Banks v. Manchester*,
  128 U.S. 244 (1888)..............................................................................................10

*Bellwether Properties, LLC v. Duke Energy Indiana, Inc.*,
  87 N.E. 3d 462 (Ind. 2017) ..............................................................................5, 12

*Georgia v. Public.Resource.Org, Inc.*,
  590 U.S. __, 140 S. Ct. 1498 (2020) ......................................................... *passim*

*Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*,
  391 F.3d 312 (1st Cir. 2004) (*per curiam*)............................................................12

*International Code Council v UpCodes, Inc.*,
  No. 17 Civ 6261 VM, Dkt. 105 (S.D.N.Y. May 27, 2020).......................7, 8, 9, 14

*Mistretta v. United States*,
  488 U.S. 361 (1989)...............................................................................................11

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  No. 18-56253 (9th Cir. May 27, 2020) ...................................................................3

*Virginia Elec. & Power Co. v. Savoy Const. Co.*,
  294 S.E.2d 811 (Va. 1982)....................................................................................15

STATUTES

5 U.S.C. § 552(a)(1)...................................................................................................11

17 U.S.C. § 101............................................................................................................3

Cal. Civil Code § 22...................................................................................................11

OTHER AUTHORITIES

1 C.F.R. §§ 51.1–51.11 ..............................................................................................11

1 C.F.R. § 51.7(a) (1973) ...........................................................................................13

1 C.F.R. § 51.9(a)-(b).................................................................................................12

Goldstein on Copyright 3d ed. § 2.5.2 .......................................................................13

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

Nina A Mendelson, *Private Control over Access to Public Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737 (2014).......................12

## INTRODUCTION

The *Georgia v. Public.Resource.Org* decision gives this Court a choice: It can focus its analysis solely on fair use, thereby likely prompting at least two more trips to the D.C. Circuit Court of Appeals. Or it can address both copyright enforceability and fair use now, in light of the new guidance the Supreme Court has offered, thereby giving the Court of Appeals a complete record and a single path to resolution of this case. The need for such resolution has never been more obvious or urgent, as the closure of libraries and archives forces many citizens to rely entirely on the Internet to access the law.

This Court ordered briefing on the "impact, if any, of *Georgia v. PRO* on the parties' pending summary judgment motions." July 9, 2020 Minute Order. One impact of the decision is to suggest that this case should be decided on the alternate ground that the standards at issue are government edicts. The Court of Appeals vacated this Court's previous decision and remanded the case with the suggestion that this Court could resolve the case on Public Resource's fair use defense without reaching the question of copyright eligibility and enforceability. The Court of Appeals concluded that Public Resource "raise[d] a serious constitutional concern with permitting private ownership of standards essential to understanding legal obligations," but it chose to focus on fair use and "leave for another day the question of whether the Constitution permits copyright to persist in works incorporated by reference into law." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 447 (D.C. Cir. 2018).

But *Georgia* is clear: the Supreme Court discourages that approach, and favors instead adopting a bright-line rule that government edicts lie outside the copyright statutory monopoly. The Supreme Court worried that, if fair use were the guiding approach, speakers would be unjustly deterred, and thus constitutional rights would not be adequately protected.

In light of the Supreme Court's unambiguous preference for a bright-line rule, as well as

the judicial economy of avoiding multiple additional trips between this Court and the Court of Appeals, this Court should address both fair use and copyrightability/enforceability of codes and standards that have been incorporated by reference into law. Accordingly, this brief will focus first on fair use and then discuss the fundamental copyright eligibility and enforceability issues that the Supreme Court identified in *Georgia*. If it will assist the Court, Public Resource is also prepared to file a new motion for summary judgment on those additional grounds.

## I.   THE GEORGIA DECISION AND ITS PROGENY SUPPORT A FAIR USE DETERMINATION.

### A.   *Georgia*'s Government Edicts Analysis Supports A Fair Use Finding Where, as Here, a Party Has the Courage to Speak the Law.

In *Georgia,* the Supreme Court held that Georgia's "Official Code of Georgia Annotated," including the *official* annotations of the state, was a government edict that was ineligible for copyright protection. Fair use was not before the Court, but the Court offered observations that are relevant to Public Resource's fair use defense here.

The Court worried that, if fair use were the guiding approach, constitutional rights would be imperiled, because "[t]he less bold among us would have to think twice before using official legal works that illuminate the law we are all presumed to know and understand." *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. __, 140 S. Ct. 1498, 1513 (2020). Public Resource did think twice, concluded its work was lawful, and was bold enough to proceed to bring the law— especially the important rules buried in high-priced or hard-to-find standards and codes—within the grasp, at no cost, of every person. That mission-driven activity is both fair and, in a time when libraries and archives are closed or practically inaccessible, more necessary than ever.

#### 1.   Factor One: The Supreme Court Recognized Public Resource's Public Interest Mission.

This first fair use factor examines the purpose and character of the secondary use, including whether the use is noncommercial. Like the D.C. Circuit in this litigation, and on the

basis of an extensive record, the Supreme Court observed that "Public.Resource.Org (PRO) is a nonprofit organization that aims to facilitate public access to government records and legal materials" and that Public Resource made the materials in that case available to the public free of charge, just as it does the standards and codes at issue here. *Georgia* at 1505.

The Court's analysis also reinforces the transformational nature of Public Resource's use. In *Georgia,* the Court focused its analysis on identifying the *author* of a work drafted by a private party under the aegis of a Code Revision Commission, and then adopted by the Georgia legislature: the Official Code of Georgia Annotated (OCGA). In that case, the Commission had two overlapping authorial roles: by contract it was the author of the annotations under the works-made-for-hire doctrine, 17 U.S.C. § 101 (definition of "work made for hire"), but by its government power it was author of the government edicts that the annotations constituted. Thus two different types of "works," with two types of authorship, happened to converge.

Here the standards and codes are also, in effect, two distinct works with two types of authorship. First, they were documents reflecting a broad consensus of government officials, academics, technical experts, and industry representatives reflecting best practices, procedures, methods, and specifications for public safety and technical or industry interactions.[1] Then, once

---

[1] In this case, federal, state, and local governments may indeed be joint authors, with other participants, of the pre-incorporation codes and standards, in which case both the authorship and the works converge as in *Georgia*. To save their standing to sue in this case, where the evidence established that the works were not "works made for hire" as the Plaintiffs' copyright applications and registrations indicated, the Plaintiffs have argued that they were joint authors of all the works. That means that all the governments who employed participants in the standards-making process were also joint authors. As Public Resource indicated in its earlier citation of supplemental authorities, an applicant for copyright registration of a work of joint authorship must identify all joint authors. Plaintiffs have never done so, either to the Copyright Office or in this lawsuit. Before the Court can grant summary judgment to Plaintiffs on their motion, it must refer the registrations to the Copyright Office for a determination of whether the Office would have issued the registrations without an identification of all the joint authors. Dkt. 222 at 5–6 (citing *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, No. 18-56253 (9th Cir. May 27, 2020)).

incorporated into law, they are recreated as—transformed into—government edicts. As when a pleading incorporates material by reference and thereby re-states that material, when a government adopts standards and makes them law through incorporation by reference, the government re-states and recasts those documents as *the government's own expression*. It is little different from a government's adoption as law of a bill drafted by a private interest such as American Legislative Exchange Council or the Sierra Club. While those organizations might assert copyright in their draft bills as ordinary documents, when their documents become law the analysis must change. Otherwise a private interest could control who gets to speak and read the law.

Public Resource, in turn, further transforms the works at issue into a usable and accessible database of government regulations, serving the classic fair use purpose of promoting research and education. It also serves the equally classic fair use purpose of reporting on facts, *i.e.,* the official statement of the law.

If there were any doubt before, the *Georgia* decision dispels it: Public Resource's nonprofit mission serve the public interest. Every consideration informing the first fair use factor overwhelmingly supports fair use and summary judgment for Public Resource.

### 2.     Factor Two: *Georgia* Underscored the Factual Nature of the Works.

As the discussion above explained, the works at issue have taken on new life as *government expressions* and thus as *political facts*. Moreover, the analysis should not turn on whether they have force of law – though they do. The Supreme Court applied the "government edicts" doctrine beyond edicts that have the "force of law." *Georgia* at 1506–08, 1511–12. Under the Supreme Court's reasoning, even *proposed bills* lie outside copyright's protection. *See id*. at

---

9. Materials that are part of the "whole work of [legislators]" must be "'free for publication to all.'" *Id*. at 1508 (citing *Banks*, 128 U.S. at 253).

As *Georgia* recognizes, both laws and government edicts—no matter how they become law—are functional and factual. They are news, which should be reported to the world so that government does not operate in effective secrecy. To the extent they are *not* public, and not widely available, that is a governmental failure in need of a remedy. That much is clear from the opinion of the Indiana Supreme Court in *Bellwether Properties, LLC v. Duke Energy Indiana, Inc.,* 87 N.E. 3d 462, 467-69 (Ind. 2017), where that court complained about its inability through normal channels to access the standard-as-law it was to apply and then revealed that it had discovered the relevant standard-as-law on the Internet Archive, where Public Resource had placed it.

Again, this case is not about standards and codes generally. Public Resource has no interest in posting standards and codes as such. This case is about law and government edicts that have recast the standards as governmental, political expressions and rules. Public Resource's work in identifying and posting the law is, in effect, simply reporting the factual substance of government action, as well as exercising an essential civic function: sharing with fellow citizens the rules that the government has imposed on their conduct and that of the manufacturers, contractors, and institutions upon which they rely.

Factor Two overwhelmingly favors fair use.

### 3.      Factor Three: *Georgia* Stressed the Need to Access the Whole Work.

The Supreme Court held that the "whole work done by [legislators]" is subject to the government edicts doctrine. *Georgia* at 1508 (quoting *Banks*). It follows that Public Resource's posting of standards that governments have adopted into law is reasonable under the third fair-use factor, because every part of each adopted document constitutes a government edict. As

Public Resource has explained, governments frequently incorporate entire *documents* by reference into law, and governments generally do not limit their incorporations-adoptions to specific pages or sections of a document. Public Resource's Memorandum of Points and Authorities in Opposition to Plaintiffs' Second Motion for Summary Judgment and Permanent Injunction and in Support of Public Resource's Second Motion for Summary Judgment ("2nd MSJ MPA"), Dkt. 205-1 at 5–6. If and when governments do engage explicitly only in such partial incorporation, Public Resource would post only those portions that were incorporated.

### 4.    Factor Four: *Georgia* Gave Short Shrift to Similar Claims of Market Harm.

Like the Plaintiffs here with respect to the standards at issue, Justice Thomas raised the specter of disturbing settled expectations and incentives to produce annotations of Georgia's statutes. *See Georgia* at 1517, 1522 (Thomas, J., dissenting). The majority overrode those concerns, and this Court should do the same here. Whatever merit that argument might have for standards and codes that have not been incorporated by reference into law, upon their transformation into government edicts—a transformation that each of the Plaintiffs have promoted or at least tolerated—that consideration pales. No lobbyist or public interest organization needs a copyright incentive to draft text that it proposes as law. There are ample other benefits. Public Resource's Second Supplemental Statement of Material Facts ("SSSMF"), Dkt. 203-3 ¶¶ 49–63. Moreover, the real drafters of the standards and codes in this case—the thousands of volunteers from many different interests—had no apparent copyright incentive in their work, and the Plaintiffs have never provided evidence that a fair-use ruling would impair its value. SSSMF, Dkt. 203-3 ¶¶ 49–63, 194–95; 2nd MSJ MPA, Dkt. 205-1 at 27–30.

### B.    A Sister Court's Recent Interpretation of *Georgia* Further Supports a Fair Use Finding Here.

Shortly after the summary judgment briefing on fair use ended in this case, and after the

*Georgia* opinion had issued, the Southern District of New York ruled on closely analogous

lawsuit, *International Code Council v UpCodes, Inc.*, No. 17 Civ 6261 VM, Dkt. 105 (S.D.N.Y.

May 27, 2020) (hereafter "*UpCodes*"). Like Plaintiffs here, the International Code Council

("ICC") coordinates the preparation of model codes and encourages their adoption into law. Like

Public Resource, UpCodes provides a website that makes codes that have been adopted into law

available online for free; unlike Public Resource, UpCodes provides ancillary services to users

for a price. ICC sued for copyright infringement. On cross-motions for summary judgment, the

court ruled in favor of the defendant on key fair use issues and specifically found fair use as a

matter of law in the dissemination of model codes as adopted.[2]

Given the similarities of the cases, and the Southern District of New York's reliance on

the D.C. Circuit, the Court should give strong consideration to the conclusions of its sister court,

keeping in mind that, given its noncommercial purpose, Public Resource's fair use defense is

even stronger than that of UpCodes.

### 1.    The Purpose and Character of the Defendant's Use

Citing multiple precedents, the Southern District of New York held that the defendant's

use "clearly serves a transformative purpose: specifically, the dissemination of enacted laws for

public awareness."

> The underlying I-Codes drafted by ICC primarily serve the
> purpose of model codes, providing recommendations on the
> standards that governments should adopt to improve and safeguard
> their built environments. By contrast, the I-Codes as Adopted are
> actual regulations binding the public and governing its conduct.

---

[2] The Court did not grant summary judgment to Upcodes because, although it found fair use of
the codes as they adopted, Upcodes had also posted redlines of some of the plaintiff's model
codes that were not fully adopted, using redlines to distinguish between what was adopted and
unadopted. There was a dispute of material fact as to fair use on the redlines. *See Upcodes* slip
op. at 12, 76-77.

*UpCodes* slip op. at 80.

Here, the Plaintiffs, like ICC, coordinate the preparation of standards that promote health and safety. Public Resource, like UpCodes, provides access to the subset of those standards—ones that governments have been incorporated into law—to the public, for free, to improve public awareness of them. In both cases, factor one favors fair use.

### 2.      The Nature of the Works

The Southern District of New York also found that the codes at issue stood at "the periphery of copyright protection." "Bearing in mind that the "express text of the law" falls plainly outside the realm of copyright protection," the court held that the second factor "heavily favor[ed] a finding of fair use . . . ." *UpCodes* slip op. at 84. Given that the documents at issue here are also the express text of the law the same analysis should apply.

### 3.      The Amount and Substantiality of the Use

Citing the D.C. Circuit's ruling in this lawsuit, the *UpCodes* court held that the third factor did not weigh against fair use because the defendant's copying was limited to what was "contained in the enacted laws themselves." Slip op. at 86. Again, the same is true here: Public Resource copies and posts precisely what has been incorporated into law. SSSMF ¶ 84.

### 4.      Effect on Market Value

The Southern District of New York expressed uncertainty about the effect of the defendant's use on the market value of the plaintiff's works, but that uncertainty did not affect the overall fair use analysis and a ruling as a matter of law. Drawing upon the D.C. Circuit's decision in this lawsuit, the court noted that the existence of ICC's controlled reading rooms, like those of the plaintiffs in this case "suggest[] the impact of posting the I-Codes as Adopted may not be particularly large." It found the record did not clearly resolve the question of harm, but it was "skeptical that the dispute would be material given the combined weight of the other three

factors and the many grounds counseling that the [codes at issue] are in the public domain regardless." *UpCodes* slip op. at 88-90. This Court should share that skepticism, especially because, years into the litigation, the Plaintiffs still have no evidence of actual harm. 2nd MSJ MPA, Dkt. 205-1 at 27–30.

5.    **Following the *UpCodes* analysis, this Court should find fair use here.**

Drawing all fair-use factors together, the Southern District of New York held that the dissemination of the codes at issue was fair use:

> On balance, the Court is persuaded that accurate posting of the I-Codes as Adopted is a fair use as a matter of law. As noted above, the first and second fair use factors together weigh heavily in Defendants' favor. The ICodes as Adopted are clearly factual rather than fictional, and Defendants posted the works in their capacity as laws, rather than model codes. The purpose for which the I-Codes as Adopted were copied, displayed, and distributed is thus transformative. The third factor does not weigh against such copying either, as accurate copying would entail posting only "ten-tenths of the law." *ASTM*, 896 F.3d at 452. Finally, the Court notes that the overall impact of the fourth fair use factor is ambiguous. . . . [but] the potential harms to ICC's markets for its works cannot outweigh the benefits and necessity of enabling unfettered access to enacted laws. These considerations necessitate a finding of fair use . . . .

*UpCodes* slip op. at 91-92. The same considerations compel the same result here.

II.    **THE *GEORGIA* DECISION MANDATES FURTHER CONSIDERATION OF COPYRIGHT ELIGIBILITY**

If, as the Supreme Court held in *Georgia v. Public.Resource.Org*, Public Resource may post government edicts that were (1) prepared by an outside private party; and (2) formally adopted by a branch of government; but (3) *not* actually incorporated as provisions of law, then surely Public Resource here may post government edicts that were (1) prepared by an outside party; and (2) formally adopted by a branch of government; and (3) *are* actually incorporated into law.

As an initial matter, the *Georgia* decision affirms that private ownership of law

9

implicates vital First Amendment, Fifth Amendment, and Fourteenth Amendment concerns: due process requires unfettered access to the law; and the right to petition government for a redress of grievances, freedom of the press, and freedom of speech require the unfettered ability to learn and speak the law. As the Supreme Court observed, "[N]o one can own the law. 'Every citizen is presumed to know the law,' and 'it needs no argument to show . . . that all should have free access to its contents.'" *Georgia* at 1507 (quoting *Nash v. Lathrop,* 142 Mass. 29 at 35, 6 N.E., at 560 (cited by *Banks v. Manchester,* 128 U.S. at 253-254)). And where "officials are generally empowered to make and interpret law, their 'whole work' is deemed part of the authentic exposition and interpretation of the law' and must be 'free for publication to all.'" *Id*. (citing *Banks*, 128 U.S. at 253).

To accommodate those concerns, the Supreme Court expressed a preference for a bright-line rule that government edicts lie outside the copyright statutory monopoly. This Court should heed that preference and rule on the question here. The Court of Appeals in this case issued its ruling well before the Supreme Court had expressly discouraged relying on fair use to resolve the thorny questions that arise when a private party drafts language that a government transforms into its edict. Now that the parties and the courts have a clearer mandate, judicial efficiency and fundamental justice are best served by a ruling from this Court on all grounds.

### A.   As Clarified by the Supreme Court, the Government Edicts Doctrine Encompasses Standards Incorporated by Reference

While the government edicts doctrine dates back to one of the Supreme Court's earliest decisions, its ruling in *Georgia v Public Resource* marks the doctrine's most complete articulation, and one that resolves the copyright question here. As the Court put it, the government edict doctrine is a "straightforward rule based on identity of the author." *Georgia* at 1506. Because no one can own the law, the doctrine bars officials from being "authors" of any

work associated with their capacity as lawmakers, from legislation and judicial opinions to proposed bills and committee reports. Whether the document is binding is not the question; rather, the question is whether it was produced by an entity acting in a "legislative capacity" or a "judicial capacity."

The same holds true where the lawmaking takes place through incorporation by reference, whether it is a legislature or an agency that effects the incorporation. Law is simply the "solemn expression of the will of the supreme power of the State."[3] Today, that expression often takes place through administrative action, where an agency, implementing statutory mandates, defines public and private rights and duties through the issuance of regulations. Indeed, administrative lawmaking has become a central, defining feature of the modern state in areas as diverse as securities, the environment, and occupational safety. "Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta v. United States,* 488 U.S. 361, 372 (1989). It would be absurd to exclude these kinds of regulations from the government edicts doctrine; no matter who is making the law, whether a state senator or the director of a federal agency, they are necessarily acting in a legislative capacity. By extension, their works are ineligible for copyright protection.

It would be equally absurd to exclude works those regulators incorporate by reference.

*First*, regulatory action creates law. Incorporation by reference is simply an alternative to pasting language from a standard into a government's published laws or regulations, *see* 5 U.S.C. § 552(a)(1); 1 C.F.R. §§ 51.1–51.11, and material incorporated by reference, "like any other properly issued rule, has the force and effect of law." SSSMF ¶ 2. That is why "the language

_____

[3] Cal. Civil Code § 22, available at:
Codehttps://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=CIV&section Num=22.

incorporating a publication by reference must be precise, complete, and clearly state that the incorporation by reference is intended" and agencies must "inform[] the user that the incorporated publication is a *requirement*." 1 C.F.R. § 51.9(a)-(b) (emphasis added). That is also why judges go looking for those standards-as-laws and even rely on Public Resource to find them. *See Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 468–69 (Ind. 2017); *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 320–21 (1st Cir. 2004) (*per curiam*). If a judge needs to review an incorporated document to know the law to resolve a legal dispute, surely a citizen should be able to do so freely, as should a journalist seeking to understand laws regulating products, or indeed any ordinary member of the public. *See* Nina A Mendelson, *Private Control over Access to Public Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737, 771 (2014) ("[R]egulatory beneficiaries of all sorts, as well as regulated entities, have a strong and direct interest in access to the content of regulatory standards—including [incorporated-by-reference] material—because it directly affects their interests and can potentially affect their conduct. Accordingly, if notice is to be effective, ready public access must be provided to anyone potentially affected by the law, not just to those who must comply.")

*Second*, the process of their creation and adoption is analogous to that of the OCGA, or the draft judicial opinions and memos discussed in the *Georgia* case. In *Georgia*, Lexis coordinated the creation of the Annotations, operating under the aegis of the Code Revision Commission. The Annotations were later blessed and adopted by the GA state legislature. Here, just as Lexis and the Commission operated as drafters for the legislature, the SDOs operate as a source of legal text for regulators, convening government officials and private persons to articulate best practices for a given industry. SSSMF ¶ 184. As a matter of course and

expectation, and/or vigorous lobbying by the SDOs, regulators adopt a subset of those standards into law, just as the Georgia legislature approves and adopts the OCGA. For example, the State of California incorporates model codes into Title 24 of the California Code of Regulations on a triennial code adoption cycle, with a 45-day public comment period, a six-month publication requirement, and a three-month delay to allow local governments to implement them. SSSMF ¶¶ 225-242. At the federal level, regulatory agencies are required to identify *precisely* what they intend to incorporate into law. *see e.g.* 1 C.F.R. § 51.7(a) (1973).

*Third*, access to the full text, like access to the full OCGA, helps citizens understand their legal rights and duties. If an agency identifies a *document* in its incorporation language and does not specify a specific section of that document, then the incorporation by reference extends to the *entire document*. Malamud Decl., Dkt. 204-4 ¶ 40; Dkt. 204-40 (Ex. 34). That is true for every work at issue here. Moreover, the government edicts doctrine includes a broad array of works, floor statements and committee reports. *Georgia* at 1508; *see also* Goldstein on Copyright 3d ed. § 2.5.2. After *Georgia*, the D.C. Circuit's focus on whether a given text or piece of text seems to resemble a law is no longer the right question; the right question is whether a regulator has adopted the work in its official lawmaking capacity. If so, it is a government edict, free for all to communicate.

*Finally*, restricting freedom to speak the standards at issue creates precisely the incomplete "economy-class" version of the law the Supreme Court condemned. *Georgia* at 1512. Without the database that Public Resource provides, citizens—and, as we have seen, even courts and litigants—have few options for accessing all the laws and regulations created by incorporation, especially in a pandemic when physical access is impracticable at best. As described in detail in Public Resource's opening brief, if Plaintiffs are left to control access,

many important regulations will be locked away behind paywalls or in inaccessible libraries and archives. 2nd MSJ MPA at 2-3, 12-13, and 22-23. The problem becomes even more stark now. Only those who can pay the fee will enjoy full access to the rules and regulations that shape our everyday lives.

      **B.**      **The Standards Here, Adopted as Laws Through Incorporation by Reference, Are Ineligible for Copyright Under the *UpCodes* Test.**

Alternatively, the Court could take the approach outlined by the *UpCodes* court when it addressed the copyright eligibility of model codes in light of the *Georgia* decision. The court outlined five "guideposts" to "assess whether notice of the purported copyrighted work is needed for a person to have notice of 'the law,' such that due process concerns would effectively categorically outweigh the private author's need for economic incentives":

> (1) whether the private author intended or encouraged the work's adoption into law; (2) whether the work comprehensively governs public conduct, such that it resembles a "law of general applicability"; (3) whether the work expressly regulates a broad area of private endeavor; (4) whether the work provides penalties or sanctions for violation of its contents; and (5) whether the alleged infringer has published and identified the work as part of the law, rather than the copyrighted material underlying the law.

*UpCodes* slip op. at 51 (citing *Suffolk*, 261 F.3d at 194).

Here, there is ample evidence that the Plaintiffs encourage regulators to adopt their standards into law. Standards development organizations (SDOs) often lobby governments to incorporate their standards by reference or otherwise make their standards law. Plaintiffs have extensive lobbying operations to ensure that standards they publish are incorporated into the law, and that existing incorporations are updated to include more recent editions of the standards. SSSMF ¶ 49–64.

The works in question regulate broad areas of public conduct and/or private endeavor in multiple ways. For example, the 2019 California Electrical Code incorporates the 2017 NFPA

National Electrical Code, and building construction in California must comply with it. SSSMF ¶¶ 230–231.

Violation can result in penalties and sanctions. To take just two examples: The Supreme Court of Virginia treated violation of the National Electrical Code as equivalent to a violation of the Virginia Building Code, which incorporated the NEC by reference, and subject to criminal sanctions. *Virginia Elec. & Power Co. v. Savoy Const. Co.*, 294 S.E.2d 811, 816-17 (Va. 1982). After the deadly "Ghost Ship" fire in Oakland, California, prosecutors charged principal tenant and alleged manager of the building with manslaughter for violation of fire safety codes that are incorporated by reference. SSSMF ¶ 6.

Finally, Public Resource has been clear from the beginning that it posts only works that have become law. Federal law has incorporated by reference a complete version of every one of the documents at issue here at least once, and state laws have incorporated many as well.[4]

Thus, under either theory, due process concerns necessarily outweigh the SDOs unproven need for economic incentives.

## CONCLUSION

For the reasons Public Resource has explained above and in its prior briefing, the Court should address both copyright enforceability and fair use, grant Public Resource's motion for summary judgment, and deny the Plaintiffs' motion for a permanent injunction and summary judgment.

---

[4] Each of the ASHRAE and NFPA standards that Public Resource posted are precisely the editions that are incorporated by reference into law. In a few discrete instances, when attempting to post the relevant law, Public Resource accidentally posted an edition of an ASTM standard that was not the precise edition listed in the C.F.R. incorporating language, but which was very close (often an identical "reissue" of the same standard, that differs only in the addition of a reissue date added to the title of the standard, with no editorial or substantive changes). Public Resource addresses this in its 2nd MSJ MPA, Dkt. 205-1 at 8–10.

Dated: July 24, 2020                    Respectfully submitted,

                                        /s/   Andrew P. Bridges
                                        Andrew P. Bridges (USDC-DC AR0002)
                                        abridges@fenwick.com
                                        Matthew B. Becker (admitted *pro hac vice*)
                                        mbecker@fenwick.com
                                        FENWICK & WEST LLP
                                        801 California Street
                                        Mountain View, CA 94041
                                        Telephone:   (650) 988-8500

                                        Corynne McSherry (admitted *pro hac vice*)
                                        corynne@eff.org
                                        Mitchell L. Stoltz (D.C. Bar No. 978149)
                                        mitch@eff.org
                                        ELECTRONIC FRONTIER FOUNDATION
                                        815 Eddy Street
                                        San Francisco, CA 94109
                                        Telephone:   (415) 436-9333

                                        David Halperin (D.C. Bar No. 426078)
                                        davidhalperindc@gmail.com
                                        1530 P Street NW 2nd Floor
                                        Washington, DC 20005
                                        Telephone: (202) 905-3434

                                        *Attorneys for Defendant-Counterclaimant*
                                        Public.Resource.Org, Inc.