UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL;<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and<br><br>AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS,<br><br>    Plaintiffs/<br>    Counter-Defendants,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>    Defendant/<br>    Counter-Plaintiff. | Case No. 1:13-cv-01215-TSC |

**PLAINTIFFS' RESPONSE TO PRO'S SUPPLEMENTAL BRIEF REGARDING**
***GEORGIA v. PUBLIC.RESOURCE.ORG, INC.***

  PRO's brief on the impact of *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498 (2020), is an exercise in indirection. The D.C. Circuit did not merely "suggest[]" that this Court resolve the validity of PRO's fair use defense. PRO Supp. Br. 1 (Dkt. 226). The D.C. Circuit remanded to this Court precisely so it could consider, in the first instance, whether PRO could establish the validity of that defense under the D.C. Circuit's standards, in particular whether each portion of each standard PRO copied and distributed is "*essential* to complying with [a] legal duty," as compared to just "help[ing] inform one's understanding of the law." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018) ("*ASTM II*") (emphasis added). That is the point of the remand. Nor is there any merit to PRO's claim that resolving the fair use issue and concluding proceedings in this Court will lead to

multiple trips back and forth to the D.C. Circuit.  PRO Supp. Br. 1.  To the extent PRO has preserved its copyright eligibility arguments, which were already extensively briefed and presented to this Court during the first round of summary judgment motions, PRO can make arguments based on *International Code Council, Inc. v. Upcodes, Inc.*, No. 17 Civ. 6261 (VM), 2020 WL 2750636 (S.D.N.Y. May 27, 2020) ("*UpCodes*"), or any other intervening decisions when this case returns to the D.C. Circuit.

PRO recognizes that it cannot prevail on its fair use defense under the D.C. Circuit's standards.  It therefore contorts *Georgia* into supposedly establishing that Plaintiffs' privately authored standards are "government edicts," when the case makes clear they are not; and mischaracterizes *Georgia* as "offer[ing] observations" that support PRO's fair use defense, PRO Supp. Br. 2, when the case did not analyze the fair use factors at all.  None of PRO's arguments withstand scrutiny.

**I.     PLAINTIFFS' STANDARDS ARE NOT GOVERNMENT EDICTS UNDER *GEORGIA* OR ANY PRECEDENT ON WHICH THE SUPREME COURT RELIED**

PRO makes the incredible argument that Plaintiffs' works, authored by *private parties*, "are government edicts," PRO Supp. Br. 1, even though there is no evidence that any legislator or judge wrote any portion of any of Plaintiffs' works.[1]  PRO's argument cannot be squared with the Supreme Court's clear statement—which PRO ignores—that the "straightforward rule" of the government edicts doctrine "*does not apply* . . . to works created by government officials (*or private parties*) who lack the authority to make or interpret the law."  *Georgia*, 140 S. Ct. at 1507

---

[1] Even if PRO had evidence (which it does not) that a legislator or judge wrote some portion of a work in suit, PRO still would have to show that they did so in their official capacities as legislators or judges.  *Georgia*, 140 S. Ct. at 1508.  PRO has no evidence of any of this.  Thus, PRO's assertion that "federal, state, and local governments may indeed be joint authors," PRO Supp. Br. 3 n.1, is specious.

(emphasis added). PRO's attempt to shoehorn this case into the *Georgia* rule on government edicts is fallacious.

PRO bases its argument on the erroneous premise that the Supreme Court found the Georgia Legislature to be the "author" of the annotations in two respects: (1) by virtue of the work-made-for-hire doctrine; and (2) "by its government power [the Legislature] was the author of the government edicts that the annotations constituted." PRO Supp. Br. 3. PRO admits that the first of these rationales—work-made-for-hire—is inapplicable here, but insists that the second purported rationale does apply: "once incorporated into law, [Plaintiffs' standards] are recreated as—transformed into—government edicts." *Id*. at 3-4.

PRO's argument fails because the Supreme Court found the Legislature to be the "author" of the annotations based *only* on the work-made-for-hire ground. Specifically, the Court held that, because the Commission's contract with Lexis provided that the annotations were works made for hire, "[t]he Copyright Act … deems the Commission the sole 'author' of the work. 17 U.S.C. § 201(b)." *Georgia*, 140 S. Ct. at 1508. Section 201(b), which the Court cited, states that "the employer or other person for whom [a work-made-for-hire] was prepared is considered the author for purposes of this title." 17 U.S.C. § 201(b). Because the Commission "functions as an arm [of the Legislature] for the purpose of producing the annotations," the Legislature was the author of the annotations. *Georgia*, 140 S. Ct. at 1508.

The Court did *not* say—as PRO claims it did—that a governmental body becomes an author when the government "re-states and recasts those documents as *the government's own expression*." PRO Supp. Br. 4.[2] On the contrary, the Court specifically noted that the

---

[2] That is unsurprising. The term "author[]" "presuppose[s] a degree of originality" and "[o]riginal, as the term is used in copyright, means . . . that the work was independently created

3

annotations "are not enacted into law through bicameralism and presentment." *Georgia*, 140 S. Ct. at 1509. The only basis for the Court's authorship holding was work-made-for-hire. That rationale gets PRO nowhere in claiming that Plaintiffs' works are government edicts.

PRO's argument also is contrary to the Court's earlier decision in *Callaghan v. Myers*, 128 U.S. 617 (1888), which the Court in *Georgia* cited and discussed with approval. *Georgia*, 140 S. Ct. at 1507. In *Callaghan*, the Court held that the government edicts doctrine did not affect the copyright interest the official reporter for the Illinois Supreme Court had "in several explanatory materials that the reporter had created himself: headnotes, syllabi, tables of contents, and the like." *Id*. In *Callaghan*, those materials were published (as such materials commonly are published) in the same bound volumes that also contained "a great number of the decisions and opinions of the supreme court of Illinois." 128 U.S. at 620. Illinois law specifically created the official reporter's office and established the reporter's duty to prepare and distribute the reports of the state supreme court's decisions. *Id*. at 646. If PRO's argument were correct, the state (either through the legislature or the supreme court) should have been deemed to be the author of the entirety of the bound volume. But that is not what the Court held. It instead held that the official reporter had a valid copyright in "the parts of the book of which he is the author." *Id*. at 650.

In sum, PRO's argument that Plaintiffs' works are government edicts is meritless.

---

by the author (as opposed to copied from other works)." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345-46 (1991). A government body that incorporates a standard by reference does not independently create any expression, and, therefore, it does not become an author of the standard.

## II.     GEORGIA DOES NOT IMPACT THE ANALYSIS OF THE STATUTORY FAIR USE FACTORS

PRO is likewise wrong that *Georgia* "offered observations that are relevant to [PRO's] fair use defense here." PRO Supp. Br. 2. The Supreme Court did not analyze fair use at all, and PRO's efforts to wring out of the Court's opinion fair use holdings favorable to PRO fails.

### A.     Factor One: The Supreme Court Did Not "Recognize" The Purpose Or Character Of PRO's Use *In This Case*

PRO asserts that because the Supreme Court's opinion included a one-sentence general description of PRO ("a nonprofit organization that aims to facilitate public access to government records and legal materials," 140 S. Ct. at 1505), this Court must take it as established in this case that PRO's purpose favors its fair use defense. PRO Supp. Br. 2-3. That is wrong.

PRO certainly proclaims a general interest in facilitating access to "legal materials." The relevant question *in this case*, however, is whether PRO furthers that purpose by "add[ing] something new" that Plaintiffs do not. *Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 176 (2d Cir. 2018). The facts *in this case* show that PRO does not add anything new. PRO does not serve a purpose that is meaningfully different from Plaintiffs' purpose in providing free, read-only access to the same Works. *See* 2d Supp. SMF ¶ 86 (Dkt. 199-2). Plaintiffs' offerings allow anyone to easily view incorporated by reference standards online for free. *Id.* ¶ 85. *See* Pls' Second Mot. Summ. J. 14-16 (Dkt. 199-1).

PRO also claims that *Georgia* "reinforces the transformational nature of [PRO's] use" in its discussion of the authorship requirement. PRO Supp. Br. 3. *Georgia* does not discuss transformation in the fair use context at all. PRO's contention that it "transforms the works at issue into a usable and accessible database of government regulations," *id.* at 4, assumes the answer to the question the D.C. Circuit directed this Court to consider: whether each portion of each standard that PRO copied and distributed is *in fact* a governmental regulation as the result

5

of the incorporation by reference. The D.C. Circuit was clear on what this inquiry entails: is each portion in issue "*essential* to complying with [a] legal duty," as compared to just "help[ing] inform one's understanding of the law"? *ASTM II*, 896 F.3d at 450 (emphasis added). PRO was obligated to make this showing "standard by standard and use by use." *Id*. at 451.[3]

PRO failed to meet its fair use burden in response to the D.C. Circuit's question. Many of the Works are not incorporated by the regulation(s) PRO identifies in the cover sheets that it places in front of its copies.[4] Still others are "discretionary reference procedure[s]" that are incorporated in such a manner as to be optional or references—*i.e.*, "*help[ful]*" but not "*essential*," 896 F.3d at 447, 450 (emphasis added), or optional standards and standards that do not govern private conduct. The other works in suit include substantial material that either has nothing to do with compliance or is certainly not "essential" to complying with a legal obligation, including prefatory notes and background information; reference and information notes; diagrams, figures, and illustrations; examples; and informational annexes. *See* Pls' Second Mot. Summ. J. 16-24; 2d Supp. SMF ¶¶ 48-56 (ASTM), *id*. ¶¶ 59-68 (NFPA), *id*. ¶¶ 70-

---

[3] The *UpCodes* court likewise emphasized that the particular context of incorporation is relevant to whether a particular use is transformative. *UpCodes*, 2020 WL 2750636, at *25. The court found that "the record is ambiguous as to whether what the Defendants actually post constitutes 'the law' alone," and that "genuine factual disputes suggesting that at least some codes posted on Current UpCodes [website] have 'indiscriminately mingled' enacted text with unadopted model text," which precluded summary judgment for Defendants on both adopted versions of ICC's model codes and redline derivative works that UpCodes created. *Id*. at *7, *18.

[4] PRO claims that there "a few discrete instances" in which it copied and posted ASTM standards that were not incorporated into law when PRO posted them. PRO Supp. Br. 15 n.4. That grossly understates the scope of PRO's admittedly indefensible copying. For 27 of ASTM's works, ASTM is not aware of any regulation that incorporates the standard by reference, and PRO has not identified any. Pls. 3d. Supp. SMF ¶ 9 (Dkt. 213-1). For more than 20% of the ASTM Works (41 standards), the provision of the Code of Federal Regulations PRO identified as the incorporating reference was not promulgated until *after* PRO posted the standards in 2012. *Id*. ¶ 4. For approximately 30% of the ASTM Works (56 standards), the provision of the Code of Federal Regulation PRO identified was amended to eliminate reference to the ASTM Work at issue prior to the time PRO posted ASTM's Works in 2012. *Id*. ¶ 5.

76 (ASHRAE).  When confronted with its deficient showing, PRO has claimed that a 2018 federal agency handbook on IBR'ing purportedly establishes that everything within an IBR'd standard's covers (unless specifically excluded) is necessary to understand a legal duty.  But the statement on which PRO relies does not mean what PRO says it does; does not carry the force of law; and (in all but a handful of cases) post-dates by several years the implementing regulations on which PRO relies.  Pls' Reply ISO Second Mot. for Summ. J. 8-12 (Dkt. 215).

### B.  Factor Two:  Georgia Does Not Assist PRO On The Nature Of The Works

PRO's argument that *Georgia* establishes that all IBR'd standards "have taken on new life as *government expressions* and thus as *political facts*," PRO Supp. Br. 4, is attorney rhetoric and not a holding of the Supreme Court, for the reasons discussed above.

PRO also claims that *Georgia* assists its showing on factor two because the Court said the government edicts doctrine applies regardless of whether the government-authored material has "force of law."  PRO Supp. Br. 4.  This argument, too, grasps at straws.  The Court rejected "force of law" as the test for the government edicts doctrine, which turns on who authored the work.  The Court said nothing about how the binding or non-binding nature of a portion of an incorporated standard should be weighed on factor two of the fair use defense.

On that issue, the D.C. Circuit's opinion continues to supply the governing test in this case:  this factor "demands an individual appraisal of each standard and its incorporation" inquiring into whether the standard has been incorporated so as to impose a binding legal requirement.  *ASTM II*, 896 F.3d at 451.[5]  PRO will not engage with this issue, and thus cannot prevail on factor two.

---

[5] *UpCodes* recognized that "the D.C. Circuit [in *ASTM II*] faced a wide[] variety of standards and degrees of incorporation by reference," *UpCodes*, 2020 WL 2750636, at *23, and that the degree to which a standard is incorporated by reference "must be considered standard-by-standard." *Id.* at *26.

### C. Factor Three: *Georgia* Does Not Provide Cover For PRO's Wholesale Copying And Distribution Of Plaintiffs' Works

On this factor, too, PRO relies on its erroneous argument that, under *Georgia*, "every part of each adopted document constitutes a government edict." PRO Supp. Br. 5. Again, the D.C. Circuit's opinion supplies the controlling standard: has PRO "limit[ed] its copying to only what is required to fairly describe the standard's legal import." *ASTM II*, 896 F.3d at 452. Under this test, the *UpCodes* court recognized that "the third factor likely weighs against a finding of fair use as to Defendants' copying" that includes text that is not required to describe the standard's legal import. *UpCodes*, 2020 WL 2750636, at *27. And, once again, PRO has not even tried to satisfy the D.C. Circuit's test. Pls' Opp'n and Reply 19-20 (Dkt. 213).

### D. Factor Four: *Georgia* Does Not Support PRO's Request That This Court Ignore The Actual And Potential Harm From PRO's Wholesale, Unrestricted Copying And Distribution Of Plaintiffs' Works

PRO argues that, because Justice Thomas's dissent spoke of potential negative policy ramifications from the majority's decision, this Court should read *Georgia* to "overr[i]de" the market harm factor in fair use. PRO Supp. Br. 6. This argument is bizarre. The majority embraced the authorship test for the government edicts doctrine because it had a clear "textual basis" in the Copyright Act. *Georgia*, 140 S. Ct. at 1512. In this case, the textual basis for assessing market harm is hard-wired into the Copyright Act's test for fair use: the Court *must* consider "the effect of [PRO's] use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).[6]

As this Court has explained, "[i]t is not Plaintiffs' burden to establish that they have been harmed"; rather it is PRO's "burden to affirmatively establish that such conduct could not even

---

[6] *UpCodes* recognized that this factor could weigh against the defendants' copying because "it is fair to say that [the defendant's copies are] an effective substitute for the model code itself." *UpCodes*, 2020 WL 2750636, at *28.

'potentially' harm the Plaintiffs' market." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, No. 13-cv-1215 (TSC), 2017 WL 473822, at *18 (D.D.C. Feb. 2, 2017) ("*ASTM I*"). PRO claims that destroying the economic value of Plaintiffs' works would not undermine the incentives of people who voluntarily participate in the standard-drafting process, PRO Supp. Br. 6, but ignores the fact that the actual copyright owners would lose their incentive to underwrite the standard-development process were PRO's unrestricted dissemination of Plaintiffs' works to be permitted. 2d Supp. SMF ¶ 91 (Jarosz Rpt. ¶¶ 85, 92, 100, 130-49).

Here, too, the D.C. Circuit gave specific directions for this Court and the parties to address on this factor. On each, the undisputed facts show this factor weighs against PRO:

- PRO's wholesale copying and distribution of Plaintiffs' works causes "additional [market] harm," notwithstanding the free access Plaintiffs provide, because Plaintiffs' online reading rooms are read-only, thus allowing educational and informational access to their standards without substituting for the sale of less restricted versions of Plaintiffs' works. 2d Supp. SMF ¶¶ 85, 88.

- There is no basis to find an absence of harm from PRO's copying and distributing only those portions of Plaintiffs' standards that "provide[] information essential to comprehending one's legal duties," *ASTM II*, 896 F.3d at 450, because PRO appropriates the entirety of Plaintiffs' works.

- PRO's use of Plaintiffs' works harms markets for derivative works of Plaintiffs' standard, *id*. at 453, because PRO's use harms the market for the current and most up-to-date works; and PRO's unlimited dissemination of Plaintiffs' works

9

undermines Plaintiffs' "provision of the protected publications in, for example, trainings and seminars."  2d Supp. SMF ¶¶ 83, 84 (Jarosz Rep. ¶ 146).

In sum, *Georgia* provides no support for PRO's argument on any of the four fair use factors.

### III. PRO'S ATTEMPT TO EXPAND THE SCOPE OF THE D.C. CIRCUIT'S REMAND FAILS

As predicted, PRO has used its brief on *Georgia*'s impact to urge the Court to allow a whole new round of briefing on copyright eligibility.  PRO Supp. Br. 9-15.  Plaintiffs have explained in detail why it is improper for PRO to expand the scope of the D.C. Circuit's limited remand.  Pls.' Supp. Br. 8-9 (Dkt. 225); Pls' Reply in Supp. of Mot. for Status Conf. 2-8 (Dkt. 224).  And, this Court has made clear that PRO should not even request further briefing until "after a ruling on the current motions and anticipated supplemental briefs."  Minute Order, July 9, 2020.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for summary judgment and deny PRO's motion.

Dated: July 31, 2020           Respectfully submitted,

           */s/ J. Kevin Fee*

           J. Kevin Fee (D.C. Bar: 494016)
           Jane W. Wise (D.C. Bar: 1027769)
           Morgan, Lewis & Bockius LLP
           1111 Pennsylvania Ave., N.W.
           Washington, D.C. 20004
           Tel: 202.739.5353
           Email: kevin.fee@morganlewis.com
                       jane.wise@morganlewis.com

*Counsel for American Society for Testing and Materials d/b/a ASTM International*

           */s/ Kelly M. Klaus*

           Kelly M. Klaus (*pro hac vice*)
           MUNGER, TOLLES & OLSON LLP
           560 Mission St., 27th Floor
           San Francisco, CA 94105
           Tel: 415.512.4000
           Email: Kelly.Klaus@mto.com

           Rose L. Ehler (*pro hac vice*)
           MUNGER, TOLLES & OLSON LLP
           350 South Grand Ave., 50th Floor
           Los Angeles, CA 90071
           Tel: 213.683.9100
           Email: Rose.Ehler@mto.com

           Rachel G. Miller-Ziegler
           MUNGER, TOLLES & OLSON LLP
           1155 F St. NW, 7th Floor
           Washington, DC 20004
           Tel: 202.220.1100
           Email: Rachel.Miller-Ziegler@mto.com

*Counsel for National Fire Protection Association, Inc.*

*/s/ J. Blake Cunningham*

Jeffrey S. Bucholtz (D.C. Bar: 452385)
David Mattern
King & Spalding LLP
1700 Pennsylvania Avenue, NW, Ste. 200
Washington, DC 20006-4707
Tel: 202.737.0500
Email: jbucholtz@kslaw.com

J. Blake Cunningham
King & Spalding LLP
500 W. 2nd Street, Ste. 1800
Austin, TX 78701
Tel: 512.457.2023
Email: bcunningham@kslaw.com

*Counsel for American Society of Heating, Refrigerating, and Air Conditioning Engineers*

# CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2020 a true and correct copy of the foregoing document was served via CM/ECF upon all counsel of record.

*/s/ Jane W. Wise*
Jane W. Wise