# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL; | Case No. 1:13-cv-01215-TSC |
| NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and |  |
| AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS, |  |
| Plaintiffs/Counter-defendants, |  |
| v. |  |
| PUBLIC.RESOURCE.ORG, INC., |  |
| Defendant/Counterclaimant. |  |

**PUBLIC.RESOURCE.ORG'S SUPPLEMENTAL REPLY BRIEF ON THE IMPACT OF**
***GEORGIA V. PUBLIC.RESOURCE.ORG, INC.***

# <u>TABLE OF CONTENTS</u>

Page

I.     THIS COURT SHOULD ADDRESS THE GOVERNMENT EDICTS DOCTRINE...... 1

II.    THIS CASE IS ABOUT *THE LAW*, THE ESSENCE OF A GOVERNMENT EDICT; AND HOW *THE LAW* WAS DRAFTED MAKES NO DIFFERENCE TO ITS STATUS AS A GOVERNMENT EDICT .................................................................................. 2

III.   *GEORGIA*'S IMPLICATIONS FOR THE FAIR USE ANALYSIS HERE ARE CLEAR. ......................................................................................................................... 5

       A.     First Factor: The Purpose and Character of the Use ............................. 5

       B.     Second Factor: The Nature of the Work ............................................... 6

       C.     Third Factor: The Amount Used .......................................................... 7

       D.     Fourth Factor: Impact on the Market ................................................... 8

CONCLUSION ............................................................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**C**ASES

*Bellwether Prop., L.L.C. v. Duke Energy Indiana, Inc.*,
  87 N.E.3d 462 (Ind. 2017) ...................................................................................6

*Callaghan v. Myers*,
  128 U.S. 617 (1888) ...........................................................................................4

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994).............................................................................................5

*Georgia v. Public.Resource.Org, Inc.*,
  590 U.S. ___, 140 S. Ct. 1498 ................................................................. *passim*

**R**ULES

Fed. R. Civ. P. Rule 52 ............................................................................................3

Fed. R. Civ. P. 56(f)..................................................................................................2

Public.Resource.Org responds to the Plaintiffs' further supplemental brief regarding the pending summary judgment motions. The Supreme Court's decision in *Georgia v. Public.Resource.Org* has changed the law directly relevant to this case, compelling a decision that Plaintiffs cannot use copyright claims to stop Public Resource from posting documents that government agencies and legislatures have adopted as their own and made into law.

## I.      THIS COURT SHOULD ADDRESS THE GOVERNMENT EDICTS DOCTRINE.

As Public Resource stated in its previous brief, this Court can and should address the effect of the government edicts doctrine, as affirmed by the Supreme Court in *Georgia v. Public.Resource.Org*, on the enforceability of copyright in standards that have become adopted as laws through incorporation by reference. Plaintiffs wrongly argue that on remand this Court may consider only the fair use issues.  In fact, the Court of Appeals vacated this Court's earlier grant of partial summary judgment and the injunction, and it remanded "for further proceedings consistent with this opinion."  The Court of Appeals did not retain jurisdiction over the case, which would have limited the scope of proceedings on remand. Nor did it did rule on the broader constitutional issues.

While courts prefer to avoid *constitutional* questions on issues that may be resolved on a statutory basis, that is no reason for this Court to sidestep the government edicts doctrine here. In *Georgia v. Public.Resource.Org*, the Supreme Court addressed the government edicts doctrine as a feature of copyright law and interpretation of the Copyright Act; the decision did not turn on constitutional grounds.  *See Georgia v. Public.Resource.Org, Inc.,* 590 U.S. ___, 140 S. Ct. 1498, 1503-04 (announcing the case holding as rooted in the Copyright Act).

Moreover, the Supreme Court in *Georgia* expressed a clear preference for bright-line rules, in its words a "clear path" through application of the government edicts doctrine, over the "notoriously fact sensitive" fair use doctrine that may stifle the "less bold."  *Georgia,* 140 S.Ct.

at 1513.  That decision changed the landscape and supersedes the D.C. Circuit's preference for fair use.  And the "clear path" that the government edicts doctrine provides makes it especially amenable to summary judgment on the current motions.

The record needs no more factual development for this Court to grant summary judgment to Public Resource on the government edicts doctrine.  To the extent the Court desires further briefing, or a supplemental motion, to complete the arguments on that issue, Public Resource would provide additional argument.  It is well settled that a court can grant summary judgment against Plaintiffs on *their* motion based on facts in the record.  Fed. R. Civ. P. 56(f).

## II.   THIS CASE IS ABOUT *THE LAW*, THE ESSENCE OF A GOVERNMENT EDICT; AND HOW *THE LAW* WAS DRAFTED MAKES NO DIFFERENCE TO ITS STATUS AS A GOVERNMENT EDICT.

Plaintiffs obfuscate the fact that government *adoption* of standards *as enforceable law* has transformed what was once a private document into a government edict.  Regardless of how the words of that edict were prepared, and whether the edict incorporates the text from another document physically or by reference, under *Georgia* a government edict is not enforceable under the Copyright Act.

In *Georgia*,  the fact that the state commissioned Lexis Nexis to draft the annotations was not the factor that made them government edicts.  Instead, it was the *adoption* by Georgia of those annotations as part of the state's only *official code* that made them the authoritative edicts of the state.  As the Supreme Court noted, the Georgia legislature received the annotations from the drafters, merged the statutory portion of the codification of Georgia law with the annotations, and then published the final merged version "by authority of the State." *Georgia*, 140 S. Ct. at 1504-05.  Those acts, and not, as Plaintiffs claim, the fact that the texts of the annotations were acquired by a work-for-hire contract, made the State of Georgia the author of a *government edict.*

That a work-for-hire arrangement is not required to animate the government edicts

2

doctrine is evident from some obvious examples.

Lobbyists and trade organizations regularly draft texts of bills, texts they hope the legislature will enact as laws.  As private parties, they may assert copyright rights in the drafts, but once those drafts are made into statutes or regulations, they may not assert a copyright monopoly over their creations because *they have become the law.*

As another example, attorneys regularly draft extensive proposed findings of fact and conclusions of law under Rule 52, Fed. R. Civ. P., for district judges at the conclusion of bench trials.  Sometimes judges will adopt those findings and conclusions entirely.  The result is a government edict—not because a judge or law clerk *crafted the text*, or because there was a work-for-hire agreement (there was not), but because the judge *adopted the document and made it into law*.  Attorneys who might have asserted copyright in their proposals cannot do so after the same text has been adopted by the judge as the findings and conclusions of the court.

Similarly, if a legislature or an agency pasted into a new statute or regulation the entire text of any of the standards at issue in this case, from NFPA 70 to ASTM D86-07, then, under *Georgia*, the legislature or agency would become the author of that new regulatory provision, and the SDO that published the standard could not assert copyright over that statutory or regulatory text.

The fact that governments—federal, state, and local—have adopted the documents at issue here through incorporation by reference does not distinguish this case from *Georgia,* where the state published the annotations in its official volumes.  As the Office of Federal Register has stated, incorporation of materials by reference has the same effect as though the government had pasted them word-for-word into a regulation.  Public Resource's Second Supplemental Statement of Material Facts ("SSSMF"), Dkt. 203-3 ¶ 16 (citing Dkt. 122-9 at 86).

As Public Resource discusses further below, the Supreme Court's opinion in *Georgia* presupposes that binding legal texts are government edicts. Indeed, on this point all nine Justices agreed; what divided them was how much further the government edicts doctrine extended. 140 S. Ct. at 1507 ("This rule applies both to binding works (such as opinions) and to non-binding works (such as headnotes and syllabi)."); *id.* at 1511–13 ("Under the logic of Georgia's 'force of law' test, States would own such [non-binding] materials and could charge the public for access to them."); *id.* at 1515–18 (Thomas, J. dissenting); *id.* at 1522–24 (Ginsburg, J. dissenting). The dissenting Justices drew the line at what is "binding law," and the majority went further to include the results of those who speak with the authority of the force of law, which included the non-binding annotations. *Id.* at 1511–13. Federal, state, and local governments have made the entire standards documents at issue here into government speech, and they have spoken with the authority of the force of law.

Finally, Plaintiffs' reliance on *Callaghan v. Myers*, 128 U.S. 617 (1888), misses the point. The Supreme Court in *Georgia* distinguished the explanatory materials in *Callaghan* from the explanatory materials in *Georgia* because the *Callaghan* materials, while published with the official opinions, were published by someone who "had no authority to speak with the force of law." 140 S. Ct. at 1507. In *Callaghan*, the Supreme Court of Illinois never adopted the reporter's words as its own, but the legislature in *Georgia* did so with the annotations penned by Lexis Nexis, and various state and federal agencies did so with the standards at issue in this case. The Supreme Court explicitly identified the "animating principle" throughout all the relevant cases as the fact that "no one can own the law." *Id.*

That is exactly the point here: what once were merely standards are now the law. And, while the Supreme Court in *Georgia* addressed one type of government edicts, it did not restrict

4

the government edicts doctrine to the specifics before it.  While it focused on the acts of a state legislature and discussed the acts of courts, the doctrine logically applies equally to official edicts that the executive branch of government issues through the enactment of regulations.  It is not a "two-branches-of-government edicts doctrine."  An Executive Order of the President is equally a government edict, even if it did not pass through bicameralism and legislative presentment or arise under legislative or judicial authority.  If a private party wrote the text of an Executive Order and the President adopted it, it would still be a government edict, and the drafter could not claim a copyright monopoly to prevent others from reproducing it. The same principle applies to the standards here—some of them incorporated into statutes, and others incorporated into executive branch regulations.

III.   *GEORGIA*'S IMPLICATIONS FOR THE FAIR USE ANALYSIS HERE ARE CLEAR.

Fair use analysis is not, as Plaintiffs argue, completely independent of copyright eligibility questions. The Supreme Court's "recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied," explicitly links these inquiries. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 576 (1994). The *Georgia* decision thus bears directly on this Court's fair use analysis.

A.     First Factor: The Purpose and Character of the Use

On the first fair use factor, Plaintiffs' contortions do nothing to contradict the Supreme Court's clear description of Public Resource's *purpose* as "to facilitate public access to government records and legal materials."  *Georgia,* 140 S.Ct. at 1505. Instead, Plaintiffs deflect to attack Public Resource as itself not "adding anything new" to the Plaintiffs' claimed works. That ignores the obvious.  Governments have added significant new meaning to the Plaintiffs'

works by turning them into the law; and Public Resource, consistent with the purpose the

Supreme Court recognizes, has publicly posted *the law*—including an important but often

overlooked body of law that consists of documents incorporated by reference.  *See Bellwether*

*Prop., L.L.C. v. Duke Energy Indiana, Inc.,* 87 N.E.3d 462, 469 (Ind. 2017) (criticizing lack of

availability of regulations incorporated by reference).  Public Resource's use adds that new

element of *unfettered public access to the law*.  It was the first to do so broadly with materials

adopted into law by incorporation by reference.  And the Supreme Court in *Georgia* emphasized

the importance of free access to the law.  *Georgia*, 140 S.Ct. at 1512 (under Georgia's argument,

it could charge for "access to the law"); *cf. id.*, 140 S.Ct. at 1516 (importance of "free access to

opinions").

   **B.**  **Second Factor: The Nature of the Work**

   On the second factor, Plaintiffs dodge the point that government edicts are facts: as well

as being documents, they are both the substance and the evidence of specific, detailed

government actions.  The documents and the actions merge as facts.  To post a government edict

is to report the fact of the very action that the government took, whether that edict is an

Executive Order, a new regulation, a new court ruling, or a new statute.

   Plaintiffs curiously argue that the majority in *Georgia* relied upon the government edicts

doctrine, and not the force of law, in reaching its decision.  They misconstrue how the "force of

law" entered the debate and how the Court addressed it.  As Public Resource stated above, it is

clear that all nine Justices considered materials that *have* the force of law—like the materials

adopted as law through incorporation by reference at issue in this case—as lying outside

copyright.  The division between the two sides of the Court was over how much more, *beyond*

enforceable law, lay within the government edicts doctrine and outside copyright. *See* p. 4,

above.

The majority in *Georgia* recognized a distinction between edicts that *have (or apply) the force of law,* in the sense of imposing enforceable obligations, and edicts that arise from persons whose *authority to speak has the force of law*. *See Georgia,* 140 S. Ct. at 1504 ("empowered to speak with the force of law"); *id.* at 1507 ("authority to speak with the force of law"); *cf. id.* at 1512 (rejecting the state's argument that the government edicts doctrine is limited to materials that *have* "the force of law); *id.* at 1511 ("[T]hese supplementary materials do not have the force of law, yet they are covered by the doctrine."). The majority found that edicts from those *with authority to speak* with the force of law lie outside copyright; the dissenting Justices sought to limit the doctrine to texts that *have* the force of law, in other words, texts that are enforceable as law. In this case, because the adopted documents have become the authentic expression of the adopting governments *and* have the force of law, the documents fall easily within the government edicts doctrine under *Georgia*. For fair use analysis, the documents and their adoption as law are undeniably factual, and thus their status favors a determination of fair use.

Because the Supreme Court determined that the status of a text as a government edict does not depend on its having the "force of law," the inquiry on that point that the D.C. Circuit proposed no longer has any bearing. In any event, neither the Plaintiffs nor Public Resource argued any relevant distinction among the documents on that basis. The status of all the standards in this case as government edicts means that the fair use doctrine applies equally to all of them.

### C.     Third Factor: The Amount Used

The third factor requires little response from Public Resource. To report in detail the content of the law, or of government edicts, requires the entire law or edict. In statutes, regulations, and judicial opinions, ignorance of details is perilous. Full access to the law, not some non-authoritative "description" of that law (as Plaintiffs appear to urge), is essential.

**D.      Fourth Factor: Impact on the Market**

On the fourth factor, Plaintiffs invoke Justice Thomas's dissent to refer to "potential negative ramifications" of a ruling for Public Resource.  Of course, the majority of the Court in *Georgia* gave that prediction no weight.  This Court should do the same.  This lawsuit has been pending for a full seven years.  Through discovery, Public Resource has exposed that Plaintiffs have not suffered any actual harm from Public Resource's making the law freely available.  Public Resource does not merely argue that Plaintiffs cannot show harm; *the evidence in the record shows no harm*.  SSSMF (Dkt. 203-3) ¶¶ 133–162.  The Plaintiffs' speculation and fears of harm, in self-serving statements and through their mouthpiece expert, create no factual dispute on this point.

<strong>CONCLUSION</strong>

For all these reasons, and those in its earlier briefs, this Court should deny the Plaintiffs' motion for summary judgment and a permanent injunction and grant summary judgment to Public Resource on both copyright eligibility (government edicts doctrine) and fair use grounds.

Dated: August 7, 2020

Respectfully submitted,

*/s/   Andrew P. Bridges*
Andrew P. Bridges (USDC-DC AR0002)
abridges@fenwick.com
Matthew B. Becker (admitted *pro hac vice*)
mbecker@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:   (650) 988-8500

Corynne McSherry (admitted *pro hac vice*)
corynne@eff.org
Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:   (415) 436-9333

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW 2nd Floor
Washington, DC 20005
Telephone: (202) 905-3434

*Attorneys for Defendant-Counterclaimant*
Public.Resource.Org, Inc.