IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL; <br><br> NATIONAL FIRE PROTECTION ASSOCIATION, INC.; and <br><br> AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR CONDITIONING ENGINEERS, <br><br>     Plaintiffs/Counter-defendants, <br><br>     v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br>     Defendant/Counterclaimant. | Case No. 1:13-cv-01215-TSC |

**PUBLIC.RESOURCE.ORG'S NOTICE OF THE U.S. SUPREME COURT'S DECISION ON FAIR USE IN *GOOGLE LLC V. ORACLE AMERICA, INC.,* AS SUPPLEMENTAL AUTHORITY ON THE PENDING MOTIONS FOR SUMMARY JUDGMENT**

  Defendant Public.Resource.Org (Public Resource) respectfully submits this Notice of Supplemental Authority regarding the Supreme Court's recent landmark decision on fair use in *Google LLC v Oracle America, Inc.,* No. 18-956 (Apr. 5, 2021).[1]  The decision, which has prompted widespread notice and commentary, bears directly on whether Public Resource's posting of standards incorporated by reference into law is a fair use. Indeed, the Supreme Court's decision compels a ruling in Public Resource's favor.

  Public Resource addressed with Plaintiffs its intent to provide this notice of supplemental authority, and it described this filing.  Plaintiffs declined to participate in a joint request for

---

[1] Available at https://www.supremecourt.gov/opinions/20pdf/18-956_new_o7jp.pdf.

1

supplemental briefing, stating that they did not think briefing of the Supreme Court's decision was necessary, and that any direction to file supplemental notice should come from the Court. They indicated, however, that they reserved the right to respond to this notice.

Public Resource previously argued that the Supreme Court's intervening decision in *Georgia v. Public.Resource.Org, Inc.*, 140 S.Ct. 1498 (2020) —holding that texts adopted by government branches in their law-creating capacity, edicts of government, are ineligible for copyright protection—requires judgment in Public Resource's favor, even apart from fair use. Dkts. 222, 223, 226, and 228. But to the extent this Court focuses on fair use as a rationale for its decision, the new *Google* decision justifies summary judgment for Public Resource on that issue.

The questions before the Supreme Court in *Google* were (1) whether the application programming interfaces (APIs) at issue were copyrightable; and, if so, (2) whether Google's use of them was a lawful fair use. The Court did not reach the first question, because it concluded that Google's use of the code at issue was fair.

Several elements of the Court's analysis are relevant here. To begin, although in the *Google* case the Supreme Court reversed an appellate decision overturning a jury verdict of fair use, it did not merely reinstate the jury verdict. It ruled that Google's use of Oracle's code was a fair use *as a matter of law*. Slip op. at 35. This Court should conclude that Public Resource's uses of the standards that embody and have the force of law, are also fair as a matter of law.

The majority opinion explained the basic function of fair use: to "provide a context-based check that can help to keep a copyright monopoly within its lawful bounds." Slip op. at 17.

Unusually, but tellingly, the Court's analysis began with the second factor, the nature of the work, recognizing that in some circumstances that factor is crucial. That factor tilted firmly toward Google given that (1) the copyrightable aspects of the code were far from the core of

copyright protection; and (2) those aspects were inextricably bound to uncopyrightable features such as a system of computer tasks and their organization and the use of specific programming commands. The same holds true here: the standards at issue have functional purposes; they frequently describe themselves as procedures, processes, methods of operation, and principles; and they codify best practices recommended by a consensus of experts from a variety of stakeholders, including government employees. Whatever copyrightable expression (if any) may exist within the standards, the standards are far from the core of copyright protection. Moreover, *as laws* after incorporation by reference, those standards took on new significance as facts that were essential elements of enforceable law. The law became inextricably bound to the expression of the standards, because the law rests in the expression itself (even if incorporated by reference).

The Court observed that the value of the code at issue derived in large part "from the value that those who do not hold copyrights, namely, computer programmers, invest of their own time and effort to learn the API's system. And unlike many other programs, its value lies in its efforts to encourage programmers to learn and to use that system so that they will use (and continue to use) Sun-related implementing programs that Google did not copy." The same is true here: the standards at issue have value in large part *because they are laws* that regulators have approved and the public relies on, or must comply, with them. Thus, a homeowner might study the fire safety code not because of the code's creativity, but because the law compelled contractors and inspectors to comply with that code in building her home. The public investment in learning the standards, in order to learn the law, is at least as significant as the public's investment in learning the Java APIs in the *Google* case.

On the purpose and character of the use, the Court considered whether Google's use—to create a new platform that programmers could use to develop innovative products for

3

smartphones—was consistent "with that creative "progress" that is the basic constitutional objective of copyright itself" and concluded that it was. The same result should occur here: Public Resource has created a new platform for sharing the law, upon which others can build.

On the substantiality of the use, the Supreme Court affirmed that the analysis must turn on whether the secondary user has taken more or less than what is necessary to accomplish the user's purpose. "Google copied those lines not because of their creativity, their beauty, or even (in a sense) because of their purpose."  Here, Public Resource copied the standards at issue not because of their creativity or beauty, but because, just as programmers had learned to work with Sun's API system, the public has learned to work with the codes regulators have anointed as mandates. Indeed, the public does not have a choice.

Finally, on market harm, the Supreme Court noted multiple public interests in play.

> [W]e must take into account the public benefits the copying will likely produce. Are those benefits, for example, related to copyright's concern for the creative production of new expression? Are they comparatively important, or unimportant, when compared with dollar amounts likely lost (taking into account as well the nature of the source of the loss)? Cf. *MCA, INC. v. Wilson*, 677 F. 2d 180, 183 (CA2 1981) (calling for a balancing of public benefits and losses to copyright owner under this factor).

Slip op. at 31.  Here, again, the Supreme Court noted that the value of the work, and Google's need to reproduce it, lay not with its expressive qualities but with third parties' investment in it.

> We have no reason to believe that the Copyright Act seeks to protect third parties' investment in learning how to operate a created work. Cf. *Campbell* [*v. Acuff-Rose Music, Inc.*, 510 U. S. 569], at 591–592 [(1994)] (discussing the need to identify those harms that are "cognizable under the Copyright Act").

> [G]iven programmers' investment in learning the Sun Java API, to allow enforcement of Oracle's copyright here would risk harm to the public. Given the costs and difficulties of producing alternative APIs with similar appeal to programmers, allowing enforcement here would make of the Sun Java API's declaring code a lock limiting the future creativity of new programs. Oracle alone would

> hold the key. The result could well prove highly profitable to Oracle (or other firms holding a copyright in computer interfaces). But those profits could well flow from creative improvements, new applications, and new uses developed by users who have learned to work with that interface. To that extent, the lock would interfere with, not further, copyright's basic creativity objectives.

Slip op. at 34. That analysis applies equally here. The value of the works at issue derives from multiple public investments through incorporation into law, the teaching of the law, and the study of the law. It would be contrary to the public interest and the purpose of copyright to allow Plaintiffs, using copyright, to monopolize access to, the teaching of, and the learning of, the law, particularly given Plaintiffs' failure, after many years, to offer any evidence of any harm.

Dated: April 27, 2021

Respectfully submitted,

/s/   Andrew P. Bridges
Andrew P. Bridges (USDC-DC AR0002)
abridges@fenwick.com
Matthew B. Becker (admitted *pro hac vice*)
mbecker@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:   (650) 988-8500

Corynne McSherry (admitted *pro hac vice*)
corynne@eff.org
Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:   (415) 436-9333

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW 2nd Floor
Washington, DC 20005
Telephone: (202) 905-3434

*Attorneys for Defendant-Counterclaimant*
Public.Resource.Org, Inc.